# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                                    Chapter 11

    96 Wythe Acquisition LLC,                      Case No.  21-22108

                        Debtor.                   **Local Rule Statement**

------------------------------------------------------------x

STATE OF NEW YORK   )
                       ) ss:
COUNTY OF NEW YORK  )

        David Goldwasser, as Chief Restructuring Officer of 96 Wythe Acquisition LLC (the "Debtor" or "Borrower"), deposes and says under penalty of perjury, as follows:

        I submit this declaration in accordance with Local Bankruptcy Rule 1007-2 in support of the Debtor's filing of a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

        1.      On or about February 22, 2021, I was appointed Chief Restructuring Officer ("CRO") reporting to Michael Lichtenstein and Toby Moscovits, who control the Debtor by and through the Debtor's parent entities.  I specialize in business restructuring, bankruptcy and litigation planning, including Chapter 11 reorganization, bankruptcy claims, tax liens, and rescue capital for distressed commercial real estate.  I have over 20 years of litigation and crisis management experience and have appeared on behalf of debtors in over thirty bankruptcy cases in the Southern and Eastern Districts of New York.

        2.      On February 23, 2021, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 <u>et</u> <u>seq</u>. (the "Bankruptcy Code").

3.      The Debtor owns and operates the Williamsburg Hotel (the "Hotel")
located at 96 Wythe Avenue, Brooklyn, New York, (the "Property"). The Property is a ten story,
147 room hotel with a rooftop pool, a bar and restaurant and a separate, elevated and enclosed
bar that sits above the pool referred to as the Water Tower Bar.  The Debtor has approximately
80 employees.

4.      On December 13, 2017, the Debtor borrowed $68 million (the "Loan")
from Benefit Street Operating Partnership, L.P. under a loan agreement ("Loan Agreement") to
construct the Hotel.  The Loan was subsequently assigned to BSPRT 2018-FL3 Issuer, Ltd. (the
"Lender" or the "Mortgagee").

5.      The Debtor's financial problems pre-date the COVID-19 pandemic.  They
arise from the Mortgagee's misconduct in: (i) denying that the Debtor had completed
construction; (ii) Lender's consequent demands for additional interest as a result thereof; and (iii)
Lender's ultimate filing of a foreclosure complaint.  Lender's actions obstructed the Debtor's
ability to refinance the Loan.

6.      Under the Loan Agreement, the Debtor had a May 31, 2018 deadline to
complete construction (the "Completion Date"), failing which the Lender would be entitled to a
0.5% increase in the contract interest rate, which would reset once those conditions were
satisfied.

7.      The maturity date was June 7, 2019 (the "Maturity Date").  The Debtor
had the option "to extend the term of the Loan beyond the initial Maturity Date for two (2)
successive terms (the 'Extension Option') of six (6) months each (each, an 'Extension Period') to

2

(i) December 9, 2019 if the first Extension Option was exercised and (ii) June 9, 2020 if the second Extension Option was exercised.

8.      At the closing of the Loan in December 2017, $1,651,000 was placed in a "Business Plan Reserve Account," to ensure adequate funding of the Debtor's contractors, materials and services in the first instance.  Upon the Debtor's certification of completion of such work, lien releases from all contractors and subcontractors, and Lender's construction site visit, the Lender was obligated to "reimburse" the Debtor from the Business Plan Reserve Account.

9.      Work proceeded without controversy or incident, and the Debtor achieved "Completion" of the "Business Plan Work" as defined in the Loan Agreement by the end of June 2018.  The was open for business and operating with all amenities.  Guestrooms, pool and related facilities, and the food and beverage outlets were all operational.

10.      The Debtor notified Lender that it satisfied the Operating Condition by the end of June 2018, thereby terminating the 0.5% Rate Increase Event.

11.      Lender disagreed with Borrower's notification and claimed instead that the Operating Condition had not yet been satisfied. The Lender refused to terminate the 0.5% interest rate increase.  This 0.5% increase constituted, on average, an additional $29,000.00 of interest per month, wrongfully running in favor of Lender and against the Debtor as of, at least, June 30, 2018.

12.       There was no risk of non-payment of this additional interest in the near term as the Lender also held two months of interest reserve under the Loan Agreement.  But the parties would soon be at odds when, as turned out to be the case, the Lender paid itself more interest than was actually owed—by $29,000.00 per month on average—and demanded that the

3

Debtor make up the difference by depositing an extra $29,000.00 of fresh funds into the Interest

Reserve Account to keep the required two months of interest on deposit at all times.

13.    On a without prejudice basis, in an effort to maintain an amicable

relationship with Lender and move the Project forward, the Debtor paid the excess interest rate

for the months of June 2018 and July 2018, and topped up the interest reserve accordingly.

14.    By August 2018, however, Borrower had enough. Lender continued to

refuse to accept that the Operating Condition was satisfied. Indeed, the Project had become fully

operational, and yet Lender continued to saddle Borrower with the additional 0.5% interest rate

averaging $29,000.00 per month. Accordingly, Borrower refused to continue to pay the higher

interest rate.  Instead, Borrower made monthly payments from August 2018 through November

2018 sufficient to fund the Interest Reserve Account in accordance with the Loan Agreement at

the agreed interest rate level, without the unauthorized 0.5% surcharge that had been assessed by

Lender.

15.    In violation of the Loan Agreement, Lender nevertheless continued paying

itself at the higher interest rate from the Interest Reserve Account. Between July 2018 and

December 2018, Lender pocketed approximately $173,777.78 of unauthorized additional interest

from Borrower, based on Lender's refusal to acknowledge that the Operating Condition was

satisfied.

16.    Lender's actions caused the Interest Reserve Account to fall below the

agreed two months of interest payable from the Debtor to Lender.  Naturally, the Lender had the

upper hand.  It could declare the Debtor in default and demand a cure.  That demand would be

made not only to the Debtor, but WH Mezz Lender, LLC, the mezzanine lender (the "Mezz

Lender") who had made a $13,000,000 loan to the Debtor's parent company, secured by the

membership interests in the Debtor.

17.     On November 28, 2018, therefore, in a further attempt to bring this matter

to resolution, Debtor requested another Property site inspection in order to further confirm that

the construction work was completed and the Operating Condition was satisfied. Such an

inspection would also trigger the release of a further construction draw from the Business Plan

Reserve Account in the amount of $300,000.00.  As explained above, the $300,000.00

construction draw would have simply shuffled Borrower's own money to the Interest Reserve

Account, which Borrower also funded.  In other words, Borrower was paying four times—first to

fund the construction reserves, second for the construction itself, third for the interest reserve,

and fourth to pay monthly interest.

18.     Instead of scheduling the site inspection within two to three days as had

customarily occurred, Lender took two weeks to schedule the inspection despite Borrower

furnishing sufficient documentation to support the inspection and making countless attempts to

expedite the process. Nonetheless, Lender refused to schedule the inspection until December 11,

2018.

19.     On information and belief, Lender was in no hurry to schedule the

Property site inspection since Lender knew that if it did not release the construction draw from

the Business Plan Reserve Account until after December 7, 2018, which was the due date for

Borrower's interest payment, Borrower might have considerable difficulty topping up the

Interest Reserve Account by its December 2018 deadline.

20.     Nonetheless, Borrower paid Lender over $300,000.00 between November 28 and December 10, 2018, and, with the rate cap provider, Lender was paid over $319,512.86 during this time frame.

21.     Borrower, aware of its impending December 2018 payment due date and the delayed property site inspection, made numerous requests to Lender in an effort to reach an agreement regarding the release of the $300,000.00 in the Business Plan Reserve Account.

22.     Specifically, Borrower requested that the $300,000.00 in the Business Plan Reserve Account be transferred to the Interest Reserve Account until the delayed inspection could be completed.  As both parties well knew, the requested transfer of Borrower's money from the Business Plan Reserve Account to the Interest Reserve Account would have cost Lender nothing but would have enabled Borrower to make its December 2018 payment without a technical Event of Default under the Loan Documents.

23.     Lender was not interested.  Indeed, its response revealed its true motives. Lender agreed to Borrower's request to transfer $300,000.00 from the Business Plan Reserve Account to the Interest Reserve Account, but only on the condition that Borrower acknowledge that the Business Plan Work had been completed, entitling the Lender to the higher interest rate since June 2018.

24.     At $29,000.00 per month of unwarranted interest from July 2018, the requested concession would likely have amounted to a $348,000 cost to simply move $300,000.00 of Borrower's money from one reserve account to the other.  The Debtor refused.

6

25.     As a result, the Debtor did not make the December 7, 2018 payment, in the belief that the needed funds would be in hand shortly after the December 11, 2018 construction site visit and would soon be paid from the Business Plan Reserve Account.

26.     On December 10, 2018—one day before Borrower's scheduled property site inspection—Borrower received a notice of default letter from Lender for Borrower's failure to make the December 2018 payment.  The default letter notified Borrower that various monetary defaults needed to be cured but did not specify the total amount it claimed to be due with per diem amounts accruing.  The Debtor calculated $1,239,365.45.

27.     Pursuant to an intercreditor agreement ("Intercreditor Agreement"), Mezz Lender also received notice of Borrower's purported default and was given the opportunity to cure such default.

28.     In retrospect, Lender's vagueness on the asserted cure amount intended to obstruct curing the putative "default."

29.     On December 19, 2018, Mezz Lender timely paid the $1,239,365.45 cure amount to Lender via wire transfer (the "First Mezz Lender Cure Payment"). Of the sum paid as a cure amount, Borrower contributed $240,000.00.

30.     The Debtor believes that the First Mezz Lender Cure Payment made Lender whole and cured the pending default in its entirety.  Lender never informed the Debtor it was claiming an additional $94,000.00 for default interest.  Had the Lender told the Debtor, the Debtor could have, and would have, paid the default interest on December 19, 2018.  Indeed, Borrower had well over $94,000.00 in the Interest Reserve Account.

7

31.     Instead, Lender hid the fact that $94,000.00 of default interest was owed, not once disclosing the owed default interest to Borrower despite the numerous communications between Lender and Borrower regarding the default.  Lender's tactic was clear.  Lender not only wanted to prevent Borrower from curing the alleged default, Lender also wanted the $94,000.00 to compound and double in amount.

32.     Thereafter, the Lender sent monthly default letters and the Debtors and Mezz Lender paid the cure the amounts due plus payment of the unwarranted higher interest rate of 0.5% even though the Hotel was fully operational.

33.     On June 3, 2019, Borrower and Lender entered into negotiations in an attempt to the resolve Borrower's alleged defaults under the Loan Documents.

34.     Borrower sought and obtained a term sheet to refinance with a new lender at a low interest rate.  But based on the Loan default notices, the new lender advised that it could not refinance the Loan because it could not lend money to a borrower that had a default under its loan terms.

35.     On June 5, 2019, Borrower received a payoff letter from Lender good through June 7, 2019.  On June 7, 2019, the Lender asserted a maturity default.

36.     Due to Lender's sequential, contrived and overlapping default notices, Borrower was never given the ability to exercise its option under the Loan Agreement to extend the Maturity Date prior to receiving the June 7, 2019 default letter.

37.     The lender commenced a foreclosure action in New York County, Supreme Court (the "Foreclosure Action") four days later.

8

38.     Constantino Sagonas, was appointed temporary receiver ("Receiver") for the Hotel in the Foreclosure Action.  The Receiver is in poor health and a motion was made in the Foreclosure Action to relieve him of control.  Upon the filing of the bankruptcy case, the Receiver has agreed to cooperate in transferring control of the accounts he maintained to the Debtor.  The Debtor's day to day operations are managed by a hotel manager which has managed the business throughout Mr. Sagonas' appointment, as directed by the Court in the Foreclosure Action.  The Debtor intends to maintain the status quo with no change in day-to-day management.

39.     The COVID-19 pandemic and the attendant travel restrictions and quarantine requirements beginning in March 2020 had an immediate impact on the hospitality industry as a whole and caused the Hotel to shut down operations entirely for a period of time. The Debtor has reopened and employs 80 workers.

40.     No pre-petition committee was organized prior to the Order for relief.

41.     A summary of the Debtor's' assets and liabilities is forth on the Debtor's summary of schedules.

42.     The names and addresses of the Debtor's twenty largest unsecured creditors, has been filed with the Petition.

43.     All suits or proceedings in which the Debtor is named as a party will be listed in the Debtor's Statement of Financial Affairs to be filed.

44.     The estimated operating expenses of the Debtors for the next **thirty days** is attached the Debtors' Cash Collateral Motion.

Dated: New York, New York
       February 25, 2021

                                        s/David Goldwasser, as Chief Restructuring Officer

EXHIBIT B

# UNITED STATES BANKRUPTCY COURT

<u>Southern</u>   DISTRICT OF  <u>New York</u>

In Re. 96 Wythe Acquisition LLC

§
§
§
§

Case No.  <u>21-22108</u>

<u>Debtor(s)</u>

☐ Jointly Administered

# Monthly Operating Report

Chapter 11

Reporting Period Ended: <u>06/30/2021</u>

Petition Date: <u>02/23/2021</u>

Months Pending: <u>4</u>

Industry Classification: | 0 | 0 | 0 | 0 |

Reporting Method:                    Accrual Basis ○          Cash Basis ◉

Debtor's Full-Time Employees (current):                    <u>0</u>

Debtor's Full-Time Employees (as of date of order for relief):       <u>0</u>

**Supporting  Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

☒    Statement of cash receipts and disbursements
☐    Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
☐    Statement of operations (profit or loss statement)
☐    Accounts receivable aging
☐    Postpetition liabilities aging
☐    Statement of capital assets
☐    Schedule of payments to professionals
☐    Schedule of payments to insiders
☒    All bank statements and bank reconciliations for the reporting period
☐    Description of the assets sold or transferred and the terms of the sale or transfer

/s/ David Goldwasser

David Goldwasser

Signature of Responsible Party

Printed Name of Responsible Party

07/15/2021

Date

3284 N 29th Court
Hollywood, FL 33020

Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R.
§ 1320.4(a)(2) applies.

Debtor's Name  96 Wythe Acquisition LLC      Case No.  21-22108

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a.   Cash balance beginning of month | $710,237 | |
| b.   Total receipts (net of transfers between accounts) | $2,483,879 | $0 |
| c.   Total disbursements (net of transfers between accounts) | $1,568,092 | $0 |
| d.   Cash balance end of month (a+b-c) | $1,626,024 | |
| e.   Disbursements made by third party for the benefit of the estate | $0 | $0 |
| f.   Total disbursements for quarterly fee calculation (c+e) | $1,568,092 | $0 |

| Part 2:  Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a.   Accounts receivable (total net of allowance) | $86,805 | |
| b.   Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c.   Inventory   ( Book ○   Market ○   Other ◉   (attach explanation)) | $70,711 | |
| d   Total current assets | $1,821,477 | |
| e.   Total assets | $97,282,913 | |
| f.   Postpetition payables (excluding taxes) | $1,542,341 | |
| g.   Postpetition payables past due (excluding taxes) | $0 | |
| h.   Postpetition taxes payable | $603,911 | |
| i.   Postpetition taxes past due | $0 | |
| j.   Total postpetition debt (f+h) | $2,146,252 | |
| k.   Prepetition secured debt | $83,517,770 | |
| l.   Prepetition priority debt | $0 | |
| m.   Prepetition unsecured debt | $0 | |
| n.   Total liabilities (debt) (j+k+l+m) | $85,664,022 | |
| o.   Ending equity/net worth (e-n) | $11,618,891 | |

| Part 3:  Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a.   Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $0 |
| b.   Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c.   Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $0 |

| Part 4:  Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a.   Gross income/sales (net of returns and allowances) | $2,089,877 | |
| b.   Cost of goods sold (inclusive of depreciation, if applicable) | $958,919 | |
| c.   Gross profit (a-b) | $1,130,958 | |
| d.   Selling expenses | $85,046 | |
| e.   General and administrative expenses | $279,776 | |
| f.   Other expenses | $203,093 | |
| g.   Depreciation and/or amortization (not included in 4b) | $0 | |
| h.   Interest | $0 | |
| i.   Taxes (local, state, and federal) | $0 | |
| j.   Reorganization items | $16,180 | |
| k.   Profit (loss) | $546,863 | $0 |

UST Form 11-MOR (06/07/2021)      2

Debtor's Name 96 Wythe Acquisition LLC                                     Case No. 21-22108

| **Part 5: Professional Fees and Expenses** | | | | | | |

|   |   |   | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| a. | Debtor's professional fees & expenses (bankruptcy) *Aggregate Total* | | | | | |
|  | *Itemized Breakdown by Firm* | | | | | |
|  | Firm Name | Role | | | | |
|  | i | | | | | |
|  | ii | | | | | |

|   |   |   | Approved Current Month | Approved Cumulative | Paid Current Month | Paid Cumulative |
|---|---|---|---|---|---|---|
| b. | Debtor's professional fees & expenses (nonbankruptcy) *Aggregate Total* | | | | | |
|  | *Itemized Breakdown by Firm* | | | | | |
|  | Firm Name | Role | | | | |
|  | i | | | | | |
|  | ii | | | | | |
| c. | All professional fees and expenses (debtor & committees) | | | | | |

| **Part 6: Postpetition Taxes** | **Current Month** | **Cumulative** |
|---|---|---|
| a. Postpetition income taxes accrued (local, state, and federal) | $0 | $0 |
| b. Postpetition income taxes paid (local, state, and federal) | $0 | $0 |
| c. Postpetition employer payroll taxes accrued | $0 | $0 |
| d. Postpetition employer payroll taxes paid | $0 | $0 |
| e. Postpetition property taxes paid | $0 | $0 |
| f. Postpetition other taxes accrued (local, state, and federal) | $0 | $0 |
| g. Postpetition other taxes paid (local, state, and federal) | $0 | $0 |

**Part 7: Questionnaire - During this reporting period:**

a. Were any payments made on prepetition debt? (if yes, see Instructions)   Yes ○  No ⦿

b. Were any payments made outside the ordinary course of business without court approval? (if yes, see Instructions)   Yes ○  No ⦿

c. Were any payments made to or on behalf of insiders?   Yes ○  No ⦿

d. Are you current on postpetition tax return filings?   Yes ⦿  No ○

e. Are you current on postpetition estimated tax payments?   Yes ⦿  No ○

f. Were all trust fund taxes remitted on a current basis?   Yes ⦿  No ○

g. Was there any postpetition borrowing, other than trade credit? (if yes, see Instructions)   Yes ○  No ⦿

h. Were all payments made to or on behalf of professionals approved by the court?   Yes ○  No ○  N/A ⦿

i. Do you have:   Worker's compensation insurance?   Yes ⦿  No ○
    If yes, are your premiums current?   Yes ⦿  No ○  N/A ○  (if no, see Instructions)
    Casualty/property insurance?   Yes ⦿  No ○
    If yes, are your premiums current?   Yes ⦿  No ○  N/A ○  (if no, see Instructions)
    General liability insurance?   Yes ⦿  No ○
    If yes, are your premiums current?   Yes ⦿  No ○  N/A ○  (if no, see Instructions)

j. Has a plan of reorganization been filed with the court?   Yes ○  No ⦿

UST Form 11-MOR (06/07/2021)                    3

Debtor's Name 96 Wythe Acquisition LLC | Case No. 21-22108

| | | | |
|---|---|---|---|
| k. | Has a disclosure statement been filed with the court? | Yes ○ | No ● |
| l. | Are you current with quarterly U.S. Trustee fees as set forth under 28 U.S.C. § 1930? | Yes ● | No ○ |

## Part 8: Individual Chapter 11 Debtors (Only)

| | | |
|---|---|---|
| a. | Gross income (receipts) from salary and wages | $0 |
| b. | Gross income (receipts) from self-employment | $0 |
| c. | Gross income from all other sources | $0 |
| d. | Total income in the reporting period (a+b+c) | $0 |
| e. | Payroll deductions | $0 |
| f. | Self-employment related expenses | $0 |
| g. | Living expenses | $0 |
| h. | All other expenses | $0 |
| i. | Total expenses in the reporting period (e+f+g+h) | $0 |
| j. | Difference between total income and total expenses (d-i) | $0 |
| k. | List the total amount of all postpetition debts that are past due | $0 |
| l. | Are you required to pay any Domestic Support Obligations as defined by 11 U.S.C § 101(14A)? | Yes ○ No ● |
| m. | If yes, have you made all Domestic Support Obligation payments? | Yes ○ No ○ N/A ● |

### Privacy Act Statement

28 U.S.C. § 589b authorizes the collection of this information, and provision of this information is mandatory under 11 U.S.C. §§ 704, 1106, and 1107. The United States Trustee will use this information to calculate statutory fee assessments under 28 U.S.C. § 1930(a)(6). The United States Trustee will also use this information to evaluate a chapter 11 debtor's progress through the bankruptcy system, including the likelihood of a plan of reorganization being confirmed and whether the case is being prosecuted in good faith. This information may be disclosed to a bankruptcy trustee or examiner when the information is needed to perform the trustee's or examiner's duties or to the appropriate federal, state, local, regulatory, tribal, or foreign law enforcement agency when the information indicates a violation or potential violation of law. Other disclosures may be made for routine purposes. For a discussion of the types of routine disclosures that may be made, you may consult the Executive Office for United States Trustee's systems of records notice, UST-001, "Bankruptcy Case Files and Associated Records." See 71 Fed. Reg. 59,818 et seq. (Oct. 11, 2006). A copy of the notice may be obtained at the following link: http://www.justice.gov/ust/eo/rules_regulations/index.htm. Failure to provide this information could result in the dismissal or conversion of your bankruptcy case or other action by the United States Trustee. 11 U.S.C. § 1112(b)(4)(F).

**I declare under penalty of perjury that the foregoing Monthly Operating Report and its supporting documentation are true and correct and that I have been authorized to sign this report on behalf of the estate.**

/s/ David Goldwasser | David Goldwasser
Signature of Responsible Party | Printed Name of Responsible Party

Manager | 07/19/2021
Title | Date

**The Williamsburg Hotel**
**Reconciliation Detail**
**1103100 · TD DIP Operating Account...0935, Period Ending 06/30/2021**

| Type | Date | Num | Name | Description | Clr | Amount |
|------|------|-----|------|-------------|-----|--------|
| **Beginning Balance** | | | | | | |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 55 items** | | | | | | |
| Check | 06/01/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -40.52 |
| Check | 06/01/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -38.11 |
| Check | 06/02/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -182.11 |
| Bill Pmt -Check | 06/03/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -22,293.17 |
| Bill Pmt -Check | 06/03/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -8,328.11 |
| Bill Pmt -Check | 06/03/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -1,677.04 |
| Bill Pmt -Check | 06/03/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -841.85 |
| Bill Pmt -Check | 06/03/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -691.47 |
| Bill Pmt -Check | 06/03/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -485.67 |
| Check | 06/03/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -39.20 |
| Check | 06/07/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -215.60 |
| Bill Pmt -Check | 06/09/2021 | ACH | FIRST Ins (Pk | Insurance | √ | -18,495.84 |
| Check | 06/09/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -351.13 |
| Check | 06/10/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -0.80 |
| Check | 06/14/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -129.99 |
| Check | 06/14/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -33.76 |
| Bill Pmt -Check | 06/15/2021 | ACH | Con Edison - ٤ | Utilities | √ | -25,925.81 |
| Bill Pmt -Check | 06/15/2021 | ACH | Con Edison - ٤ | Utilities | √ | -3,235.00 |
| Bill Pmt -Check | 06/15/2021 | ACH | Con Edison - 7 | Utilities | √ | -2,985.05 |
| Bill Pmt -Check | 06/15/2021 | ACH | Con Edison - ٤ | Utilities | √ | -736.08 |
| Bill Pmt -Check | 06/15/2021 | ACH | Con Edison - ٤ | Utilities | √ | -728.17 |
| Check | 06/17/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -103.08 |
| Check | 06/17/2021 | ACH | FISERV MER( | A&G - CC Processing Fe | √ | -0.44 |
| Check | 06/18/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -62.08 |
| Check | 06/21/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -150.00 |
| Check | 06/23/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -282.44 |
| Check | 06/25/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -164.25 |
| General Journal | 06/25/2021 | SQVRFY | Square | A&G - CC Processing Fe | √ | -0.01 |
| Check | 06/28/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -343.91 |
| Check | 06/30/2021 | ACH | FISERV MER( | A&G - Bad Debt Expense | √ | -236.26 |
| Total Checks and Payments | | | | | | -88,796.95 |

**The Williamsburg Hotel**

**Reconciliation Detail**

**1103500 · TD Mgmt Main Account...1596, Period Ending 06/30/2021**

| Type | Date | Num | Name | Description | Clr | Amount |
|------|------|-----|------|-------------|-----|--------|
| **Beginning Balance** | | | | | | |
| **Cleared Transactions** | | | | | | |
| **Checks and Payments - 315 items** | | | | | | |
| Bill Pmt -Check | 03/31/2021 | 1027 | Arctic Glacier - Icesurance | F&B - Equipment Rental (Ice M | √ | -477.96 |
| Bill Pmt -Check | 05/03/2021 | 1046 | Merv Filters LLC | POM - Engineering Supplies | √ | -1,260.00 |
| Bill Pmt -Check | 05/03/2021 | 1047 | Advanced Flameproofing Corp. | POM - Life/Safety | √ | -903.23 |
| Bill Pmt -Check | 05/03/2021 | 1038 | All Squared | Rooms - Travel Agent Commiss | √ | -56.70 |
| Bill Pmt -Check | 05/07/2021 | 1084 | Arctic Glacier - Icesurance | F&B - Equipment Rental (Ice M | √ | -955.92 |
| Bill Pmt -Check | 05/07/2021 | 1078 | Hospitality Resource Industries | POM - Engineering Supplies | √ | -735.41 |
| Check | 05/07/2021 | 1253 | Chun Wong | Payroll Replacement Check (Re | √ | -632.47 |
| Bill Pmt -Check | 05/10/2021 | 1098 | TechGrass | POM - Grounds, Maintenance i | √ | -3,260.25 |
| Bill Pmt -Check | 05/13/2021 | 1104 | Champion Elevator Corp. | POM - Elevator Services | √ | -80.00 |
| Bill Pmt -Check | 05/13/2021 | 1103 | NYC Department of Buildings | A&G - Elevator Fees | √ | -40.00 |
| Bill Pmt -Check | 05/14/2021 | 1111 | Sabre Hospitality Solutions | Rooms - Reservations Services | √ | -7,805.47 |
| Bill Pmt -Check | 05/14/2021 | 1109 | Chun Wong | Payroll Replacement Check (Re | √ | -621.39 |
| Bill Pmt -Check | 05/14/2021 | 1113 | BirchStreet Technologies, LLC | ITS - F&B Accubar Software | √ | -429.33 |
| Bill Pmt -Check | 05/21/2021 | 1155 | White Wall Locations LLC | S&M - Promotion | √ | -4,000.00 |
| Bill Pmt -Check | 05/21/2021 | 1157 | NYC & Company | S&M - Dues & Subscriptions | √ | -2,931.00 |
| Bill Pmt -Check | 05/21/2021 | 1180 | Innovation Shades | Rooms - Operating Supplies | √ | -2,068.62 |
| Bill Pmt -Check | 05/21/2021 | 1159 | Michelle Price | F&B - Music & Entertainment | √ | -1,700.00 |
| Bill Pmt -Check | 05/21/2021 | 1149 | The Regency Group | S&M - Collateral Material | √ | -1,466.07 |
| Bill Pmt -Check | 05/21/2021 | 1162 | GdeP Inc. | F&B - Food | √ | -708.00 |
| Bill Pmt -Check | 05/21/2021 | 1150 | ScentAir Technologies | POM - Engineering Supplies | √ | -646.72 |
| Bill Pmt -Check | 05/21/2021 | 1160 | DNA Illumination, Inc. (xslighting) | F&B - Marketing & Promotion | √ | -500.00 |
| Bill Pmt -Check | 05/21/2021 | 1154 | Bellocq, LLC | F&B - N/A Beverage | √ | -225.62 |
| Bill Pmt -Check | 05/24/2021 | 1164 | Luxury Gourmet Sweets | Minibar - Sundries | √ | -672.20 |
| Bill Pmt -Check | 05/26/2021 | 1195 | Sabre Hospitality Solutions | Rooms - Reservations Services | √ | -7,665.61 |
| Bill Pmt -Check | 05/26/2021 | 1198 | Oracle America Inc. | ITS - Property Management So | √ | -7,068.91 |
| Bill Pmt -Check | 05/26/2021 | 1181 | Joe's Fabric Warehouse | Rooms - Operating Supplies | √ | -5,852.03 |
| Bill Pmt -Check | 05/26/2021 | 1168 | Metro Electrical Contractors, Inc. | POM - Electric Repair | √ | -5,000.00 |
| Bill Pmt -Check | 05/26/2021 | 1175 | Edison Parker & Associates LLC | POM - Plumbing | √ | -4,339.34 |
| Bill Pmt -Check | 05/26/2021 | 1189 | I. Halper | F&B - Supplies | √ | -2,501.10 |
| Check | 05/26/2021 | 1258 | Oracle America Inc. | ITS - Property Management So | √ | -2,344.24 |
| Check | 05/26/2021 | 1257 | Protek | POM - Kitchen Equipment Rep: | √ | -2,193.41 |
| Bill Pmt -Check | 05/26/2021 | 1179 | Champion Elevator Corp. | POM - Elevator Services | √ | -2,186.75 |
| Bill Pmt -Check | 05/26/2021 | 1178 | Royal Waste Services | POM - Waste Removal | √ | -2,159.32 |
| Bill Pmt -Check | 05/26/2021 | 1192 | Ford & Harrison LLP | A&G - Legal Services | √ | -2,100.00 |
| Bill Pmt -Check | 05/26/2021 | 1174 | County Fire Inc. | POM - Life/Safety | √ | -1,994.39 |
| Bill Pmt -Check | 05/26/2021 | 1187 | Arctic Glacier - Icesurance | F&B - Equipment Rental (Ice M | √ | -1,911.84 |
| Bill Pmt -Check | 05/26/2021 | 1190 | White Plains Linen | F&B - Linen Laundry | √ | -1,246.66 |
| Bill Pmt -Check | 05/26/2021 | 1177 | Target Exterminating Inc.- Hotel | POM - Extermination | √ | -979.88 |
| Bill Pmt -Check | 05/26/2021 | 1196 | Fivepals, Inc. | ITS - Alice POM Software | √ | -871.00 |
| Bill Pmt -Check | 05/26/2021 | 1193 | City Marshal Henry Daley | A&G - FDNY Fees | √ | -800.00 |
| Bill Pmt -Check | 05/26/2021 | 1191 | Kaufman Borgeest & Ryan LLP | A&G - Legal Services | √ | -649.00 |
| Bill Pmt -Check | 05/26/2021 | 1173 | Ian Carroll (Tonyblair69) | F&B - Music & Entertainment | √ | -600.00 |
| Bill Pmt -Check | 05/26/2021 | 1183 | New York Post | Rooms - Guest Amenities | √ | -519.68 |
| Bill Pmt -Check | 05/26/2021 | 1186 | AUTOTAP Corporation | F&B - N/A Beverage | √ | -498.15 |
| Bill Pmt -Check | 05/26/2021 | 1171 | Alex Simon Music | F&B - Music & Entertainment | √ | -400.00 |
| Bill Pmt -Check | 05/26/2021 | 1170 | Claudius Raphael | F&B - Music & Entertainment | √ | -400.00 |
| Check | 05/26/2021 | 1256 | IDEAS | ITS - Room Revenue Software | √ | -400.00 |
| Bill Pmt -Check | 05/26/2021 | 1188 | Balter Sales Co. | F&B - Glassware & Supplies | √ | -367.52 |
| Bill Pmt -Check | 05/26/2021 | 1172 | Michelle Valenzuela | F&B - Music & Entertainment | √ | -300.00 |
| Check | 05/26/2021 | 1255 | Front Desk Supply | Rooms - Guest Supplies (Reiss | √ | -290.80 |
| Bill Pmt -Check | 05/26/2021 | 1184 | Dow Jones & Co. | Rooms - Guest Amenities | √ | -38.40 |

| Type | Date | Num | Name | Description | Clr | Amount |
|---|---|---|---|---|---|---|
| Bill Pmt -Check | 05/28/2021 | 1204 | Design Window Covering | Rooms - Operating Supplies | √ | -4,668.02 |
| Check | 05/28/2021 | 1259 | Charter Linen & Laundry Service -Next Gen | Rooms - Linen Laundry (Reissu | √ | -3,498.48 |
| Bill Pmt -Check | 05/28/2021 | 1202 | Simon Warrington | S&M - Contract Labor (Marketi | √ | -1,923.00 |
| Bill Pmt -Check | 05/28/2021 | 1209 | James Billingsley | S&M - Photography | √ | -1,900.00 |
| Bill Pmt -Check | 05/28/2021 | 1203 | Fall Family LLC | POM - Contract Labor (Elevato | √ | -550.40 |
| Bill Pmt -Check | 05/28/2021 | 1205 | Andre Watson | F&B - Music & Entertainment | √ | -550.00 |
| Bill Pmt -Check | 05/31/2021 | 1220 | Design Window Covering | Rooms - Operating Supplies | √ | -4,668.01 |
| Bill Pmt -Check | 05/31/2021 | 1211 | D'Artagnan | F&B - Food | √ | -4,278.19 |
| Bill Pmt -Check | 05/31/2021 | 1212 | Riviera Produce | F&B - Food | √ | -3,631.02 |
| Check | 05/31/2021 | 1262 | Brouqueline, LLC | F&B - Marketing & Promotion (I | √ | -1,575.00 |
| Bill Pmt -Check | 05/31/2021 | 1213 | Alboro National | F&B - Contract Services (Secur | √ | -1,485.04 |
| Check | 05/31/2021 | 1261 | Ella Darr | F&B - Music & Entertainment (F | √ | -700.00 |
| Bill Pmt -Check | 05/31/2021 | 1217 | Ian Carroll (Tonyblair69) | F&B - Music & Entertainment | √ | -600.00 |
| Bill Pmt -Check | 05/31/2021 | 1218 | Lohrasp Kansara | F&B - Music & Entertainment | √ | -500.00 |
| Check | 05/31/2021 | 1260 | Alex Simon Music | F&B - Music & Entertainment (F | √ | -200.00 |
| Bill Pmt -Check | 06/01/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -7,549.39 |
| Bill Pmt -Check | 06/01/2021 | ACH | Sorbis | ITS - IT Contract Services | √ | -6,372.50 |
| Check | 06/01/2021 | ACH | Visa Chase Ink | A&G - Credit Card Payment | √ | -1,000.00 |
| Check | 06/01/2021 | ACH | Bank of America Business Card 7197 | A&G - Credit Card Payment | √ | -1,000.00 |
| Check | 06/01/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -812.54 |
| Bill Pmt -Check | 06/01/2021 | 1200 | Moshe Schepansky | POM - Employee Benefits (Insu | √ | -495.74 |
| Bill Pmt -Check | 06/02/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -14,057.85 |
| Bill Pmt -Check | 06/02/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -3,782.75 |
| Bill Pmt -Check | 06/02/2021 | Wire | Mint Development...0696 | POM - Engineers Contract Labo | √ | -3,275.00 |
| Bill Pmt -Check | 06/02/2021 | ACH | Empire Blue Cross Blue Shield | Employee Health Insurance Mo | √ | -2,214.48 |
| Bill Pmt -Check | 06/02/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,620.09 |
| Bill Pmt -Check | 06/02/2021 | Wire | Janover LLC | Employee Health Insurance Mo | √ | -1,337.94 |
| Check | 06/02/2021 | ACH | Ascentium Capital | Rooms - Cable Television | √ | -1,249.32 |
| Bill Pmt -Check | 06/02/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,029.93 |
| Check | 06/02/2021 | 1306 | Seydou Ouattara | Payroll Replacement Check | √ | -473.66 |
| Bill Pmt -Check | 06/02/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -326.49 |
| Bill Pmt -Check | 06/02/2021 | ACH | Elavon | A&G - CC Processing Fees | √ | -287.52 |
| Bill Pmt -Check | 06/02/2021 | ACH | Verizon | ITS - Elevator Phone Lines Mor | √ | -199.20 |
| Check | 06/02/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Check | 06/02/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/03/2021 | 1226 | Matouk | Rooms - Linen Cost | √ | -7,005.82 |
| Bill Pmt -Check | 06/03/2021 | 1229 | Charter Linen & Laundry Service -Next Gen | Rooms - Linen Laundry | √ | -3,516.71 |
| Check | 06/03/2021 | 1264 | Complete Equipment Rentals | POM - Engineering Supplies (R | √ | -3,320.00 |
| Bill Pmt -Check | 06/03/2021 | 1219 | NYC Hospitality Services LLC | F&B - Marketing & Promotion | √ | -2,500.00 |
| Bill Pmt -Check | 06/03/2021 | 1230 | Boca Terry | Rooms - Linen Cost | √ | -2,177.46 |
| Check | 06/03/2021 | 1263 | Michelle Price | F&B - Music & Entertainment (F | √ | -2,100.00 |
| Check | 06/03/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -1,668.69 |
| Bill Pmt -Check | 06/03/2021 | 1223 | RMAC Supplies Co. | Rooms - Cleaning Supplies | √ | -1,069.44 |
| Bill Pmt -Check | 06/03/2021 | 1224 | Logical Attitude Enterprises Inc. | S&M - Promotion | √ | -1,000.00 |
| Bill Pmt -Check | 06/03/2021 | 1221 | Nassau Candy Distributors Inc. | F&B - Minibar Food | √ | -435.12 |
| Bill Pmt -Check | 06/04/2021 | 1288 | Booking.com | Rooms - OTA Commissions | √ | -8,215.20 |
| Check | 06/04/2021 | Wire | APLBC LTD. | S&M - Marketing | √ | -5,200.00 |
| Bill Pmt -Check | 06/04/2021 | Wire | Mint Development...0696 | POM - Engineers Contract Labo | √ | -3,537.50 |
| Bill Pmt -Check | 06/04/2021 | 1232 | Sogno Toscano Tuscan Dream | F&B - Food | √ | -1,976.56 |
| Check | 06/04/2021 | 1266 | Simon Warrington | S&M - Contract Labor (Marketi | √ | -1,923.00 |
| Bill Pmt -Check | 06/04/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,309.48 |
| Bill Pmt -Check | 06/04/2021 | 1251 | Gray Matter Networks | ITS - Phone Support | √ | -909.83 |
| Bill Pmt -Check | 06/04/2021 | 1243 | Fivepals, Inc. | ITS - Alice POM Software | √ | -871.00 |
| Bill Pmt -Check | 06/04/2021 | 1242 | Big Blue Beer Distributor | F&B - Alcohol | √ | -851.18 |

# The Williamsburg Hotel
## Reconciliation Detail
### 1103500 · TD Mgmt Main Account...1596, Period Ending 06/30/2021

| Type | Date | Num | Name | Description | Clr | Amount |
|------|------|-----|------|-------------|-----|--------|
| Bill Pmt -Check | 06/04/2021 | ACH | Winebow, Inc | F&B - Alcohol | √ | -787.30 |
| Bill Pmt -Check | 06/04/2021 | 1271 | Petty Cash | F&B - Alcohol | √ | -742.36 |
| Check | 06/04/2021 | ACH | Phase Three Capital LLC | F&B - Equipment Rental | √ | -535.93 |
| Bill Pmt -Check | 06/04/2021 | 1235 | Anthony Jones | Payroll Replacement Check | √ | -528.03 |
| Bill Pmt -Check | 06/04/2021 | 1250 | My Mommas Rice LLC | F&B - Music & Entertainment | √ | -500.00 |
| Bill Pmt -Check | 06/04/2021 | 1237 | My Mommas Rice LLC | F&B - Music & Entertainment | √ | -500.00 |
| Bill Pmt -Check | 06/04/2021 | 1249 | DNA Illumination, Inc. (xslighting) | F&B - Marketing & Promotion | √ | -500.00 |
| Bill Pmt -Check | 06/04/2021 | 1239 | GdeP Inc. | F&B - Food | √ | -472.00 |
| Bill Pmt -Check | 06/04/2021 | 1236 | Lohrasp Kansara | F&B - Music & Entertainment | √ | -400.00 |
| Bill Pmt -Check | 06/04/2021 | 1244 | IDEAS | ITS - Room Revenue Software | √ | -400.00 |
| Check | 06/04/2021 | 1265 | Madison Lombard | Payroll Replacement Check (Re | √ | -278.10 |
| Bill Pmt -Check | 06/04/2021 | 1233 | Kennedy Bacchus | Payroll Replacement Check | √ | -228.40 |
| Bill Pmt -Check | 06/04/2021 | 1247 | Alex Simon Music | F&B - Music & Entertainment | √ | -200.00 |
| Bill Pmt -Check | 06/04/2021 | 1246 | Alberto Gomez | F&B - Operating Supplies | √ | -189.61 |
| Bill Pmt -Check | 06/04/2021 | 1238 | Andre Watson | F&B - Marketing & Promotion | √ | -100.00 |
| Check | 06/04/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -50.00 |
| Check | 06/04/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/07/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -4,607.60 |
| Check | 06/07/2021 | Debit Card | Wayfair | F&B - Operating Supplies | √ | -2,808.95 |
| Bill Pmt -Check | 06/07/2021 | 1245 | Alboro National | F&B - Contract Services (Secur | √ | -2,473.08 |
| Bill Pmt -Check | 06/07/2021 | 1248 | Mod Schwalbe Design | S&M - Photography | √ | -800.00 |
| Bill Pmt -Check | 06/08/2021 | ACH | Oxford Health - Combined | Employee Health Insurance Mo | √ | -5,396.28 |
| Bill Pmt -Check | 06/08/2021 | 1277 | NYC Water Board | Utilities | √ | -4,690.74 |
| Bill Pmt -Check | 06/08/2021 | 1283 | D'Artagnan | F&B - Food | √ | -4,684.72 |
| Bill Pmt -Check | 06/08/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,615.05 |
| Bill Pmt -Check | 06/08/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,319.30 |
| Bill Pmt -Check | 06/08/2021 | 1276 | Protek | POM - Kitchen Equipment Repa | √ | -1,200.35 |
| Check | 06/08/2021 | 1305 | Jeffrey Milton | Payroll Replacement Check | √ | -947.93 |
| Bill Pmt -Check | 06/08/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -826.77 |
| Bill Pmt -Check | 06/08/2021 | 1285 | GdeP Inc. | F&B - Food | √ | -767.00 |
| Check | 06/08/2021 | 1307 | Seydou Ouattara | Payroll Replacement Check | √ | -636.17 |
| Check | 06/08/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -576.88 |
| Bill Pmt -Check | 06/08/2021 | 1284 | Sogno Toscano Tuscan Dream | F&B - Food | √ | -392.20 |
| Check | 06/08/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -105.00 |
| Check | 06/08/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -70.00 |
| Check | 06/08/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/09/2021 | 1268 | NYC Hospitality Services LLC | F&B - Marketing & Promotion | √ | -5,500.00 |
| Bill Pmt -Check | 06/09/2021 | ACH | Santec Inc. (Cleanslate) | F&B - Cleaning Supplies | √ | -1,193.03 |
| Check | 06/09/2021 | ACH | Visa Chase Ink | A&G - Credit Card Payment | √ | -1,000.00 |
| Check | 06/09/2021 | ACH | Bank of America Business Card 7197 | A&G - Credit Card Payment | √ | -1,000.00 |
| Bill Pmt -Check | 06/09/2021 | 1267 | Bravo Distributing LLC | F&B - Food | √ | -684.00 |
| Bill Pmt -Check | 06/10/2021 | 1286 | Riviera Produce | F&B - Food | √ | -4,158.65 |
| Bill Pmt -Check | 06/10/2021 | Wire | Mint Development...0696 | POM - Engineers Contract Labo | √ | -3,515.00 |
| Bill Pmt -Check | 06/10/2021 | 1298 | Todd Harris Co, Inc | POM - Engineering Supplies | √ | -2,687.49 |
| Bill Pmt -Check | 06/10/2021 | ACH | Winebow, Inc | F&B - Alcohol | √ | -2,035.90 |
| Bill Pmt -Check | 06/10/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -1,382.48 |
| Bill Pmt -Check | 06/10/2021 | 1280 | Brouqueline, LLC | F&B - Marketing & Promotion | √ | -1,125.00 |
| Check | 06/10/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -1,112.55 |
| Bill Pmt -Check | 06/10/2021 | 1269 | Manhattan Beer Distributors | F&B - Alcohol | √ | -758.68 |
| Bill Pmt -Check | 06/10/2021 | 1270 | Big Blue Beer Distributor | F&B - Alcohol | √ | -604.66 |
| Bill Pmt -Check | 06/10/2021 | 1279 | Andre Watson | F&B - Music & Entertainment | √ | -450.00 |
| Bill Pmt -Check | 06/10/2021 | 1282 | Maria Ton | F&B - Music & Entertainment | √ | -400.00 |
| Bill Pmt -Check | 06/10/2021 | 1281 | Claudius Raphael | F&B - Music & Entertainment | √ | -400.00 |
| Bill Pmt -Check | 06/10/2021 | 1272 | Nassau Candy Distributors Inc. | F&B - Minibar Food | √ | -338.29 |

# The Williamsburg Hotel
## Reconciliation Detail
### 1103500 · TD Mgmt Main Account...1596, Period Ending 06/30/2021

| Type | Date | Num | Name | Description | Clr | Amount |
|---|---|---|---|---|---|---|
| Check | 06/10/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/11/2021 | 1297 | Boruch Bergman | POM - Engineering Supplies | √ | -8,937.64 |
| Bill Pmt -Check | 06/11/2021 | 1313 | Matouk | Rooms - Linen Cost | √ | -7,005.82 |
| Bill Pmt -Check | 06/11/2021 | 1295 | Metro Electrical Contractors, Inc. | POM - Electric Repair | √ | -5,000.00 |
| Check | 06/11/2021 | ACH | Visa Chase Ink | A&G - Credit Card Payment | √ | -4,600.49 |
| Bill Pmt -Check | 06/11/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -3,566.00 |
| Check | 06/11/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -2,406.59 |
| Check | 06/11/2021 | ACH | Bank of America Business Card 7197 | A&G - Credit Card Payment | √ | -2,356.68 |
| Bill Pmt -Check | 06/11/2021 | 1287 | A&L Cesspool Service Corp. | POM - Plumbing | √ | -1,900.00 |
| Bill Pmt -Check | 06/11/2021 | 1351 | The Metro Group, Inc. | POM - Engineering Supplies | √ | -1,780.11 |
| Bill Pmt -Check | 06/11/2021 | 1300 | Fall Family LLC | POM - Contract Labor (Elevato | √ | -1,754.40 |
| Bill Pmt -Check | 06/11/2021 | 1273 | Simon Warrington | S&M - Contract Labor (Marketi | √ | -1,282.00 |
| Bill Pmt -Check | 06/11/2021 | 1312 | Sabre Hospitality Solutions | S&M - Consortia Fees | √ | -907.29 |
| Bill Pmt -Check | 06/11/2021 | 1361 | Balter Sales Co. | F&B - Glassware & Supplies | √ | -675.95 |
| Bill Pmt -Check | 06/11/2021 | 1274 | Vanessa Chu | Payroll Replacement Check | √ | -355.72 |
| Bill Pmt -Check | 06/11/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -339.88 |
| Bill Pmt -Check | 06/11/2021 | Wire | Ralph Ervin | Payroll Replacement Check | √ | -232.99 |
| Bill Pmt -Check | 06/11/2021 | 1275 | Louis Yan | Payroll Replacement Check | √ | -207.17 |
| Check | 06/11/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/14/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -14,624.22 |
| Bill Pmt -Check | 06/14/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -6,152.41 |
| Bill Pmt -Check | 06/14/2021 | ACH | Guard Insurance | Workers Compensation Insurar | √ | -1,375.81 |
| Bill Pmt -Check | 06/15/2021 | 1302 | Darius Designs | Rooms - Operating Supplies | √ | -4,317.39 |
| Bill Pmt -Check | 06/15/2021 | 1292 | In-Room Plus Inc. | F&B - Minibar Food & Sundries | √ | -3,568.06 |
| Bill Pmt -Check | 06/15/2021 | 1294 | Alboro National | F&B - Contract Services (Secur | √ | -3,227.58 |
| Bill Pmt -Check | 06/15/2021 | 1293 | DNA Illumination, Inc. (xslighting) | F&B - Marketing & Promotion | √ | -2,895.25 |
| Bill Pmt -Check | 06/15/2021 | 1367 | Emett Controls Inc. | ITS - System Expenses | √ | -2,351.70 |
| Bill Pmt -Check | 06/15/2021 | 1299 | Champion Elevator Corp. | POM - Elevator Services | √ | -2,186.75 |
| Bill Pmt -Check | 06/15/2021 | 1296 | Protek | POM - Kitchen Equipment Repa | √ | -1,968.27 |
| Bill Pmt -Check | 06/15/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,575.30 |
| Bill Pmt -Check | 06/15/2021 | 1366 | Cristian Ramirez | F&B - Contract Labor (Doormar | √ | -1,500.00 |
| Bill Pmt -Check | 06/15/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,493.67 |
| Bill Pmt -Check | 06/15/2021 | 1357 | Coffee of Grace | F&B - N/A Beverage | √ | -1,135.00 |
| Bill Pmt -Check | 06/15/2021 | 1290 | Bravo Distributing LLC | F&B - Alcohol | √ | -972.00 |
| Bill Pmt -Check | 06/15/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -925.92 |
| Bill Pmt -Check | 06/15/2021 | 1303 | Dr Shade Design Inc | Rooms - Operating Supplies | √ | -468.16 |
| Bill Pmt -Check | 06/15/2021 | 1358 | Fine & Raw Chocolate | F&B - Food | √ | -396.00 |
| Bill Pmt -Check | 06/15/2021 | 1356 | AUTOTAP Corporation | F&B - N/A Beverage | √ | -303.85 |
| Bill Pmt -Check | 06/15/2021 | 1354 | Lavazza Premium Coffees Corp. | F&B - N/A Beverage | √ | -250.00 |
| Bill Pmt -Check | 06/15/2021 | 1359 | Popinsanity | F&B - Minibar Food | √ | -235.00 |
| Bill Pmt -Check | 06/15/2021 | 1360 | Allbridge (DCI-Design) | ITS - Phone Support | √ | -55.00 |
| Bill Pmt -Check | 06/16/2021 | 1352 | NYC Hospitality Services LLC | F&B - Marketing & Promotion | √ | -6,000.00 |
| Bill Pmt -Check | 06/16/2021 | 1311 | Charter Linen & Laundry Service -Next Gen | Rooms - Linen Laundry | √ | -5,399.13 |
| Bill Pmt -Check | 06/16/2021 | 1309 | Horticultural Creations | POM - Grounds, Maintenance & | √ | -1,015.80 |
| Bill Pmt -Check | 06/16/2021 | 1310 | Hospitality Careers Online, Inc. | A&G - Human Resources | √ | -999.00 |
| Bill Pmt -Check | 06/16/2021 | 1308 | GdeP Inc. | F&B - Food | √ | -590.00 |
| Bill Pmt -Check | 06/16/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -427.96 |
| Bill Pmt -Check | 06/17/2021 | ACH | Lobster Place Wholesale Seafood | F&B - Food | √ | -3,775.90 |
| Bill Pmt -Check | 06/17/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -3,217.09 |
| Bill Pmt -Check | 06/17/2021 | ACH | Winebow, Inc | F&B - Alcohol | √ | -2,544.90 |
| Bill Pmt -Check | 06/17/2021 | Wire | Rifka Buls | S&M - Contract Labor (Sales) | √ | -1,500.00 |
| Bill Pmt -Check | 06/17/2021 | ACH | David Bowler Wine | F&B - Alcohol | √ | -306.00 |
| Bill Pmt -Check | 06/17/2021 | Wire | Good Design | F&B - Operating Supplies | √ | -160.00 |
| Check | 06/17/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -50.00 |

# The Williamsburg Hotel
## Reconciliation Detail
### 1103500 · TD Mgmt Main Account...1596, Period Ending 06/30/2021

| Type | Date | Num | Name | Description | Clr | Amount |
|------|------|-----|------|-------------|-----|--------|
| Check | 06/17/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -50.00 |
| Bill Pmt -Check | 06/18/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -3,983.87 |
| Bill Pmt -Check | 06/18/2021 | Wire | Mint Development...0696 | POM - Engineers Contract Labo | √ | -3,515.00 |
| Bill Pmt -Check | 06/18/2021 | 1325 | Krinsky Design | S&M - Photography | √ | -3,264.99 |
| Bill Pmt -Check | 06/18/2021 | ACH | Sorbis | ITS - IT Contract Services | √ | -2,915.58 |
| Bill Pmt -Check | 06/18/2021 | 1315 | Simon Warrington | S&M - Contract Labor (Marketing) | √ | -1,923.00 |
| Bill Pmt -Check | 06/18/2021 | 1314 | Julita Kropiwnicki | A&G - Expense Reimbursemen | √ | -992.59 |
| Bill Pmt -Check | 06/18/2021 | 1318 | Alex Simon Music | F&B - Music & Entertainment | √ | -800.00 |
| Bill Pmt -Check | 06/18/2021 | 1317 | Convenience Kits International Ltd. | F&B - Minibar Sundries | √ | -644.72 |
| Bill Pmt -Check | 06/18/2021 | 1323 | Ian Carroll (Tonyblair69) | F&B - Music & Entertainment | √ | -600.00 |
| Bill Pmt -Check | 06/18/2021 | 1316 | Big Geyser Inc. | F&B - Minibar Food | √ | -356.80 |
| Bill Pmt -Check | 06/18/2021 | 1322 | Need to Know Nightlife (Joseph Greiner) | F&B - Music & Entertainment | √ | -350.00 |
| Bill Pmt -Check | 06/18/2021 | 1320 | Michael Davidson | F&B - Music & Entertainment | √ | -300.00 |
| Bill Pmt -Check | 06/18/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -264.00 |
| Bill Pmt -Check | 06/18/2021 | 1319 | Andre Watson | F&B - Music & Entertainment | √ | -150.00 |
| Bill Pmt -Check | 06/18/2021 | ACH | Con Edison - 1RTL (0300-6) | Utilities | √ | -32.73 |
| Bill Pmt -Check | 06/18/2021 | ACH | Con Edison - 3RTL (0500-1) | Utilities | √ | -32.73 |
| Bill Pmt -Check | 06/18/2021 | ACH | Con Edison - 5RTL (0700-7) | Utilities | √ | -32.73 |
| Check | 06/18/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/21/2021 | ACH | Expedia, Inc. | Rooms - OTA Commissions | √ | -11,911.64 |
| Bill Pmt -Check | 06/21/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -4,580.34 |
| Check | 06/21/2021 | ACH | Bank of America Business Card 7197 | A&G - Credit Card Payment | √ | -2,000.00 |
| Check | 06/21/2021 | ACH | Visa Chase Ink | A&G - Credit Card Payment | √ | -2,000.00 |
| Check | 06/21/2021 | ACH | Intuit Quickbooks | ITS - System Expenses | √ | -383.24 |
| Bill Pmt -Check | 06/22/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -21,404.40 |
| Bill Pmt -Check | 06/22/2021 | Wire | H & A Clarke, Inc | Rooms - Linen Cost | √ | -8,071.25 |
| Check | 06/22/2021 | ACH | Visa Chase Ink | A&G - Credit Card Payment | √ | -5,552.86 |
| Bill Pmt -Check | 06/22/2021 | 1326 | D'Artagnan | F&B - Food | √ | -5,484.84 |
| Bill Pmt -Check | 06/22/2021 | 1330 | Big Blue Beer Distributor | F&B - Alcohol | √ | -2,624.50 |
| Check | 06/22/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -2,214.78 |
| Bill Pmt -Check | 06/22/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -1,678.00 |
| Bill Pmt -Check | 06/22/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,350.56 |
| Bill Pmt -Check | 06/22/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,262.49 |
| Bill Pmt -Check | 06/22/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,012.27 |
| Bill Pmt -Check | 06/22/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -902.68 |
| Check | 06/22/2021 | ACH | Alliance Laundry Services | Rooms - Washer/Dryer Monthly | √ | -324.85 |
| Check | 06/22/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/23/2021 | Wire | Kassatex | Rooms - Linen Cost | √ | -9,989.46 |
| Bill Pmt -Check | 06/23/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -6,930.61 |
| Bill Pmt -Check | 06/23/2021 | 1342 | NYC Hospitality Services LLC | F&B - Marketing & Promotion | √ | -6,000.00 |
| Bill Pmt -Check | 06/23/2021 | Wire | T-Y Group, LLC (Harbor Linen) | Rooms - Linen Cost | √ | -3,730.85 |
| Check | 06/23/2021 | Debit Card | Microsoft Store | ITS - Operating Supplies | √ | -2,740.35 |
| Bill Pmt -Check | 06/23/2021 | ACH | Micros Retail Systems Inc. | ITS - F&B POS Support Monthl | √ | -994.99 |
| Check | 06/23/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Check | 06/23/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Check | 06/24/2021 | ACH | Bank of America Business Card 7197 | A&G - Credit Card Payment | √ | -7,802.41 |
| Bill Pmt -Check | 06/24/2021 | 1331 | Alboro National | F&B - Contract Services (Secur | √ | -2,805.42 |
| Bill Pmt -Check | 06/24/2021 | ACH | Winebow, Inc | F&B - Alcohol | √ | -1,683.00 |
| Bill Pmt -Check | 06/24/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -1,166.76 |
| Bill Pmt -Check | 06/24/2021 | 1343 | Ella Darr | F&B - Music & Entertainment | √ | -1,050.00 |
| Bill Pmt -Check | 06/24/2021 | 1347 | Andre Watson | F&B - Music & Entertainment | √ | -1,000.00 |
| Bill Pmt -Check | 06/24/2021 | 1346 | Alex Simon Music | F&B - Music & Entertainment | √ | -800.00 |
| Bill Pmt -Check | 06/24/2021 | 1345 | Cristian Ramirez | F&B - Contract Labor (Doorman | √ | -750.00 |
| Bill Pmt -Check | 06/25/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -4,445.46 |

**The Williamsburg Hotel**
**Reconciliation Detail**
**1103500 · TD Mgmt Main Account...1596, Period Ending 06/30/2021**

| Type | Date | Num | Name | Description | Clr | Amount |
|------|------|-----|------|-------------|-----|--------|
| Bill Pmt -Check | 06/25/2021 | Wire | Mint Development...0696 | POM - Engineers Contract Labor | √ | -3,575.00 |
| Bill Pmt -Check | 06/25/2021 | ACH | NYSIF-DBL | Insurance - Disability & Paid Fa | √ | -3,085.26 |
| Check | 06/25/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -967.41 |
| Bill Pmt -Check | 06/25/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -648.05 |
| Check | 06/25/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/28/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -4,834.92 |
| Bill Pmt -Check | 06/28/2021 | 1392 | Complete Equipment Rentals | POM - Engineering Supplies | √ | -3,243.26 |
| Bill Pmt -Check | 06/28/2021 | 1369 | Big Blue Beer Distributor | F&B - Alcohol | √ | -2,414.53 |
| Bill Pmt -Check | 06/28/2021 | 1373 | Trummer Hospitality Holdings LLC | F&B - Contract Labor (Beverag | √ | -1,600.00 |
| Bill Pmt -Check | 06/28/2021 | 1372 | Bravo Distributing LLC | F&B - Alcohol | √ | -1,080.00 |
| Bill Pmt -Check | 06/28/2021 | 1382 | Fivepals, Inc. | ITS - Alice POM Software | √ | -871.00 |
| Bill Pmt -Check | 06/28/2021 | ACH | TripAdvisor | S&M - Dues & Subscriptions | √ | -788.33 |
| Check | 06/28/2021 | Debit Card | Print on Broadway | A&G - Printing & Stationery | √ | -734.91 |
| Bill Pmt -Check | 06/29/2021 | ACH | Southern Glazer's of NY Metro | F&B - Alcohol | √ | -23,281.20 |
| Bill Pmt -Check | 06/29/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -8,930.91 |
| Bill Pmt -Check | 06/29/2021 | ACH | Winebow, Inc | F&B - Alcohol | √ | -3,200.00 |
| Check | 06/29/2021 | EFT | American Express - Gold | A&G - Credit Card Payment | √ | -2,788.72 |
| Bill Pmt -Check | 06/29/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,952.59 |
| Bill Pmt -Check | 06/29/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,554.30 |
| Bill Pmt -Check | 06/29/2021 | ACH | Dairyland USA Corp. | F&B - Food, Non-Alcoholic Bev | √ | -1,182.14 |
| Bill Pmt -Check | 06/29/2021 | Wire | Mint Development...0696 | POM - Engineers Contract Labor | √ | -760.00 |
| Bill Pmt -Check | 06/29/2021 | Wire | Luxury Gourmet Sweets | F&B - Minibar Sundries | √ | -672.20 |
| Check | 06/29/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Check | 06/29/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Bill Pmt -Check | 06/30/2021 | ACH | Sorbis | ITS - IT Contract Services | √ | -5,356.46 |
| Bill Pmt -Check | 06/30/2021 | Wire | Onyx CenterSource AS | Rooms - Travel Agent Commiss | √ | -4,601.45 |
| Bill Pmt -Check | 06/30/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -1,298.82 |
| Bill Pmt -Check | 06/30/2021 | 1404 | Bianca Uben | Payroll Replacement Check | √ | -508.38 |
| Bill Pmt -Check | 06/30/2021 | ACH | Empire Merchants, LLC. | F&B - Alcohol | √ | -453.60 |
| Check | 06/30/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |
| Check | 06/30/2021 | ACH | TD Bank 1596 | A&G - Banking Charges | √ | -30.00 |

**Total Checks and Payments**      **-630,890.46**

21-22088-cld  Doc 787-1  Filed 07/20/21  Entered 07/20/21 09:41:51  Main Document
Pg 24 of 86

**The Williamsburg Hotel**
**Reconciliation Detail**
**1103510 · TD Mgmt Payroll Account...1603, Period Ending 06/30/2021**

| | Type | Date | Num | Name | Description | Clr | Amount |
|---|---|---|---|---|---|---|---|
| **Beginning Balance** | | | | | | | |
| **Cleared Transactions** | | | | | | | |
| **Checks and Payments - 14 items** | | | | | | | |
| | Check | 06/01/2021 | ACH | Paychex - Payroll (EIB) | A&G - Payroll Processing Fees | √ | -627.28 |
| | General Journal | 06/04/2021 | PR053021-10 | Payroll Entry | Payroll for 05/24/21 - 05/30/21 #223 | √ | -92,067.10 |
| | General Journal | 06/04/2021 | PR053021-11 | Payroll Entry | Payroll for 05/24/21 - 05/30/21 #223 | √ | -37,509.07 |
| | Check | 06/07/2021 | ACH | Paychex - Payroll (EIB) | A&G - Payroll Processing Fees | √ | -710.95 |
| | General Journal | 06/11/2021 | PR060621-10 | Payroll Entry | Payroll for 05/31/21 - 06/06/21 #224 | √ | -113,582.28 |
| | General Journal | 06/11/2021 | PR060621-11 | Payroll Entry | Payroll for 05/31/21 - 06/06/21 #224 | √ | -48,929.03 |
| | Check | 06/11/2021 | ACH | Paychex - Time & Attend (HRS) | ITS - Time & Attendance Software | √ | -318.85 |
| | Check | 06/14/2021 | ACH | Paychex - Payroll (EIB) | A&G - Payroll Processing Fees | √ | -711.21 |
| | General Journal | 06/18/2021 | PR061321-10 | Payroll Entry | Payroll for 06/07/21 - 06/13/21 #225 | √ | -116,310.52 |
| | General Journal | 06/18/2021 | PR061321-11 | Payroll Entry | Payroll for 06/07/21 - 06/13/21 #225 | √ | -50,574.46 |
| | Check | 06/21/2021 | ACH | Paychex - Payroll (EIB) | A&G - Payroll Processing Fees | √ | -673.59 |
| | General Journal | 06/25/2021 | PR062021-10 | Payroll Entry | Payroll for 06/14/21 - 06/20/21 #226 | √ | -125,372.60 |
| | General Journal | 06/25/2021 | PR062021-11 | Payroll Entry | Payroll for 06/14/21 - 06/20/21 #226 | √ | -52,615.46 |
| | Check | 06/28/2021 | ACH | Paychex - Payroll (EIB) | A&G - Payroll Processing Fees | √ | -750.68 |
| **Total Checks and Payments** | | | | | | | **-640,753.08** |
| **Deposits and Credits - 12 items** | | | | | | | |
| | General Journal | 06/02/2021 | HFAdj3 | Seydou Ouattara | Return Payroll Check due to incorrect deposit inf | √ | 473.66 |
| | General Journal | 06/08/2021 | HFAdj4 | Seydou Ouattara | Return Payroll Check due to incorrect deposit inf | √ | 636.17 |
| | General Journal | 06/08/2021 | HFAdj4 | Jeffrey Milton | Return Payroll Check due to incorrect deposit inf | √ | 947.93 |
| | General Journal | 06/24/2021 | ReturnCh | Joseph Gauthier | Return Payroll Check due to incorrect deposit inf | √ | 302.97 |
| | General Journal | 06/28/2021 | ReturnCh | Frederick Wakkary | Return of stale check | √ | 319.56 |
| | General Journal | 06/28/2021 | ReturnCh | Frederick Wakkary | Return of stale check | √ | 342.33 |
| | General Journal | 06/28/2021 | ReturnCh | Frederick Wakkary | Return of stale check | √ | 392.10 |
| | General Journal | 06/28/2021 | ReturnCh | Frederick Wakkary | Return of stale check | √ | 414.54 |
| **Total Deposits and Credits** | | | | | | | **3,829.26** |

**The Williamsburg Hotel**
**Reconciliation Detail**

**1103520 · TD Mgmt Reserve Account...1611, Period Ending 06/30/2021**

| | Type | Date | Num | Name | Description | Clr | Amount |
|---|------|------|-----|------|-------------|-----|--------|
| **Beginning Balance** | | | | | | | |
| **Cleared Transactions** | | | | | | | |
| **Checks and Payments - 2 items** | | | | | | | |
| | Check | 06/21/2021 | ACH | NYS DTF | Sales Tax Payment | √ | -207,648.35 |
| | Check | 06/30/2021 | ACH | TD Bank 1611 | A&G - Banking Charges | √ | -3.00 |
| | Total Checks and Payments | | | | | | -207,651.35 |

Page 1 of 1

| The Williamsburg Hotel | | |
|---|---|---|
| **Income Statement Summary** | | |
| **June 2021** | | |

| | | **Actual** | **%** |
|---|---|---|---|
| **Paid Occupied Rooms** | | 3,688 | |
| **Occupied Rooms** | | 3,742 | |
| **Available Rooms** | | 4,410 | |
| | | | |
| **Paid Occupancy %** | | 83.6% | |
| **Total Occupancy %** | | 84.9% | |
| **Paid ADR** | $ | 315.38 | |
| **Total ADR** | $ | 310.82 | |
| **RevPAR** | $ | 263.74 | |
| | | | |
| **Revenue** | | | |
| Rooms | $ | 1,163,103.04 | 55.7% |
| Food & Beverage | $ | 866,150.05 | 41.4% |
| Miscellaneous Revenue | $ | 60,624.27 | 2.9% |
| **Total Revenue** | **$** | **2,089,877.36** | **100.0%** |
| | | | |
| **Departmental Expenses** | | | |
| Rooms | $ | 404,690.90 | 34.8% |
| Food & Beverage | $ | 554,227.98 | 64.0% |
| **Total Departmental Expenses** | **$** | **958,918.88** | **45.9%** |
| | | | |
| **Total Departmental Profit** | **$** | **1,130,958.48** | **54.1%** |
| | | | |
| **Undistributed Operating Expenses** | | | |
| Admin & General | $ | 279,776.22 | 13.4% |
| Info & Telecomm Systems | $ | 20,860.00 | 1.0% |
| Sales & Marketing | $ | 85,046.05 | 4.1% |
| Property Operations & Maintenance | $ | 133,999.06 | 6.4% |
| Utilities | $ | 48,234.21 | 2.3% |
| **Total Undistributed Expenses** | **$** | **567,915.54** | **27.2%** |
| | | | |
| **Gross Operating Profit** | **$** | **563,042.94** | **26.9%** |
| | | | |
| Property & Liability Insurance | $ | 16,179.58 | 0.8% |
| | | | |
| **Net Operating Profit** | **$** | **546,863.35** | **26.2%** |

# The Williamsburg Hotel
# Balance Sheet

## Period Ending                                    30-Jun-21

### Assets

| | | |
|---|---|---:|
| Cash And Cash Equivalents | $ | 1,311,811.57 |
| Cash - Sales Tax Reserve | $ | 323,437.41 |
| Net Receivables | $ | 86,804.94 |
| Inventory | $ | 70,710.56 |
| Net Property Plant and Equipment | $ | 95,461,435.57 |
| Prepaid Expenses | $ | 28,712.87 |
| **Total Assets** | **$** | **97,282,912.92** |

### Liabilities

| | | |
|---|---|---:|
| Accounts Payable | $ | 1,021,763.53 |
| Advance Deposits | $ | 516,706.89 |
| Accrued Payroll & Employer Taxes | $ | 280,473.69 |
| Accrued Sales Tax (Rooms) | $ | 246,279.42 |
| Accrued Sales Tax (F&B) | $ | 77,157.99 |
| Long Term Debt | $ | 83,517,769.95 |
| Other Liabilities | $ | 3,870.00 |
| **Total Liabilities** | **$** | **85,664,021.47** |

### Stockholders' Equity

| | | |
|---|---|---:|
| Preferred Stock | $ | 4,000,000.00 |
| Common Stock | $ | 29,346,763.78 |
| Retained Earnings | $ | (22,274,735.68) |
| Net Income | $ | 546,863.35 |
| **Total Stockholder Equity** | **$** | **11,618,891.45** |
| | | |
| **Total Liabilities + Stockholders' Equity** | **$** | **97,282,912.92** |

**TD Bank**

America's Most Convenient Bank®

T    **STATEMENT OF ACCOUNT**

THE WILLIAMSBURG HOTEL BK LLC
PAYROLL ACCOUNT
96 WYTHE AVE
BROOKLYN NY 11249

| | |
|---|---|
| Page: | 1 of 3 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account # | 1603 |

## TD Business Premier Checking

THE WILLIAMSBURG HOTEL BK LLC
PAYROLL ACCOUNT

1603

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 6,214.28 | Average Collected Balance | 19,755.38 |
| Electronic Deposits | 644,789.78 | Interest Earned This Period | 0.00 |
| | | Interest Paid Year-to-Date | 0.00 |
| Electronic Payments | 640,753.08 | Annual Percentage Yield Earned | 0.00% |
| Ending Balance | 10,250.98 | Days in Period | 30 |

### DAILY ACCOUNT ACTIVITY

#### Electronic Deposits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/02 | CCD DEPOSIT, PAYCHEX INC. PAYROLL 8jURg6WiEfWNewv | 473.66 |
| 06/04 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 130,576.17 |
| 06/08 | CCD DEPOSIT, PAYCHEX INC. PAYROLL byIrpS3OiJpleCH | 947.93 |
| 06/08 | CCD DEPOSIT, PAYCHEX INC. PAYROLL yo3oXJSWv8MlNhy | 636.17 |
| 06/11 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 163,511.31 |
| 06/17 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 167,884.98 |
| 06/24 | CCD DEPOSIT, PAYCHEX-RCX PAYROLL 93043400001638X | 302.97 |
| 06/24 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 178,988.06 |
| 06/28 | CCD DEPOSIT, PAYCHEX PAYROLL 92940300008344X | 414.54 |
| 06/28 | CCD DEPOSIT, PAYCHEX PAYROLL 92940300008342X | 392.10 |
| 06/28 | CCD DEPOSIT, PAYCHEX PAYROLL 92940300008341X | 342.33 |
| 06/28 | CCD DEPOSIT, PAYCHEX PAYROLL 92940300008343X | 319.56 |
| | Subtotal: | 644,789.78 |

#### Electronic Payments

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | CCD DEBIT, PAYCHEX EIB INVOICE X92697000047579 | 627.28 |
| 06/04 | CCD DEBIT, PAYCHEX - RCX PAYROLL 92774400001111X | 92,067.10 |
| 06/04 | CCD DEBIT, PAYCHEX TPS TAXES 92772800004231X | 37,509.07 |
| 06/07 | CCD DEBIT, PAYCHEX EIB INVOICE X92779400020453 | 710.95 |
| 06/11 | CCD DEBIT, PAYCHEX PAYROLL 9287180001967X | 113,582.28 |
| 06/11 | CCD DEBIT, PAYCHEX TPS TAXES 92869200001615X | 48,929.03 |
| 06/11 | CCD DEBIT, PAYCHEX-HRS HRS PMT 37560072 | 318.85 |
| 06/14 | CCD DEBIT, PAYCHEX EIB INVOICE X92872900003157 | 711.21 |
| 06/18 | CCD DEBIT, PAYCHEX - RCX PAYROLL 92966100001658X | 116,310.52 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

# How to Balance your Account

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic with-drawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| ❶ | Ending Balance | | 10,250.98 |
|---|---|---|---|
| ❷ | Total Deposits | + | |
| ❸ | Sub Total | | |
| ❹ | Total Withdrawals | - | |
| ❺ | Adjusted Balance | | |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | ❷ |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | ❹ |

## FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

## INTEREST NOTICE

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

## FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.



# **TD** Bank

**America's Most Convenient Bank®**

**STATEMENT OF ACCOUNT**

THE WILLIAMSBURG HOTEL BK LLC
PAYROLL ACCOUNT

| | |
|---|---|
| Page: | 3 of 3 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account #: | 1603 |

---

## DAILY ACCOUNT ACTIVITY

**Electronic Payments (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/18 | CCD DEBIT, PAYCHEX TPS TAXES 92961900004895X | 50,574.46 |
| 06/21 | CCD DEBIT, PAYCHEX EIB INVOICE X92967700016330 | 673.59 |
| 06/25 | CCD DEBIT, PAYCHEX PAYROLL 93058800001143X | 125,372.60 |
| 06/25 | CCD DEBIT, PAYCHEX TPS TAXES 93060700016672X | 52,615.46 |
| 06/28 | CCD DEBIT, PAYCHEX EIB INVOICE X93061700019350 | 750.68 |
| | Subtotal: | 640,753.08 |

---

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 05/31 | 6,214.28 | 06/14 | 7,903.75 |
| 06/01 | 5,587.00 | 06/17 | 175,788.73 |
| 06/02 | 6,060.66 | 06/18 | 8,903.75 |
| 06/04 | 7,060.66 | 06/21 | 8,230.16 |
| 06/07 | 6,349.71 | 06/24 | 187,521.19 |
| 06/08 | 7,933.81 | 06/25 | 9,533.13 |
| 06/11 | 8,614.96 | 06/28 | 10,250.98 |

 **Bank**

America's Most Convenient Bank®

T          **STATEMENT OF ACCOUNT**

THE WILLIAMSBURG HOTEL BK LLC
96 WYTHE AVE
BROOKLYN NY  11249

| | |
|---|---|
| Page: | 1 of 2 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account | 1611 |

## TD Business Convenience Plus

THE WILLIAMSBURG HOTEL BK LLC                                                    1611

---

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 170,888.94 | Average Collected Balance | 174,926.82 |
| Electronic Deposits | 137,351.26 | Interest Earned This Period | 0.00 |
| | | Interest Paid Year-to-Date | 0.00 |
| Electronic Payments | 207,648.35 | Annual Percentage Yield Earned | 0.00% |
| Service Charges | 3.00 | Days in Period | 30 |
| Ending Balance | 100,588.85 | | |

---

### DAILY ACCOUNT ACTIVITY

**Electronic Deposits**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/15 | eTransfer Credit, Online Xfer | 137,351.26 |
| | Transfer from CK 4384910935 | |
| | Subtotal: | 137,351.26 |

**Electronic Payments**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/21 | CCD DEBIT, NYS DTF SALES TAX PAYMNT 000000071311931 | 207,648.35 |
| | Subtotal: | 207,648.35 |

**Service Charges**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/30 | PAPER STATEMENT FEE | 3.00 |
| | Subtotal: | 3.00 |

---

### DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 05/31 | 170,888.94 | 06/21 | 100,591.85 |
| 06/15 | 308,240.20 | 06/30 | 100,588.85 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender 

21-22080-dld Doc 737-1 Filed 07/28/21 Entered 07/28/21 09:41:51 Main Document
declaration Pg 33 of 86

# How to Balance your Account

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| | |
|---|---|
| **① Ending Balance** | 100,588.85 |
| **② Total Deposits** | + |
| **③ Sub Total** | |
| **④ Total Withdrawals** | - |
| **⑤ Adjusted Balance** | |

| ② DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | ② |

| ④ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | ④ |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.

# TD Bank

**America's Most Convenient Bank®**

**STATEMENT OF ACCOUNT**

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108 SDNY
3284 N 29TH CT
HOLLYWOOD FL  33020

| | |
|---|---|
| Page: | 1 of 2 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | `-### |
| Primary Account : | 0927 |

## Chapter 11 Checking

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108 SDNY

0927

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 58,810.19 | Average Collected Balance | 58,810.19 |
| | | Interest Earned This Period | 0.00 |
| Ending Balance | 58,810.19 | Interest Paid Year-to-Date | 0.00 |
| | | Annual Percentage Yield Earned | 0.00% |
| | | Days in Period | 30 |

### DAILY ACCOUNT ACTIVITY

No Transactions this Statement Period

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# How to Balance your Account

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| | |
|---|---|
| **❶ Ending Balance** | 58,810.19 |
| **❷ Total Deposits** | + _____ |
| **❸ Sub Total** | _____ |
| **❹ Total Withdrawals** | - _____ |
| **❺ Adjusted Balance** | _____ |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | ❷ |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | ❹ |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared. When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed. Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.



## Bank
**America's Most Convenient Bank®**

T          **STATEMENT OF ACCOUNT**

Bank on paperless.
Scan the QR code to opt in to paperless statements.

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108-RRD SDNY
3284 N 29TH CT
HOLLYWOOD FL  33020

| | |
|---|---|
| Page: | 1 of 6 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account # | 0935 |

## Chapter 11 Checking

96 WYTHE ACQUISITION LLC DBA                                     0935
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108-RRD SDNY

---

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 399,494.91 | Average Collected Balance | 833,020.35 |
| Electronic Deposits | 2,476,172.05 | Interest Earned This Period | 0.00 |
| Other Credits | 3,877.72 | Interest Paid Year-to-Date | 0.00 |
| | | Annual Percentage Yield Earned | 0.00% |
| Electronic Payments | 1,588,435.41 | Days in Period | 30 |
| Ending Balance | 1,291,109.27 | | |

---

### DAILY ACCOUNT ACTIVITY

#### Electronic Deposits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 43,580.87 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 39,140.71 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 30,933.89 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 27,202.98 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 26,412.42 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 22,409.91 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 12,036.65 |
| 06/01 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 2,557.67 |
| 06/02 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 54,764.71 |
| 06/02 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 8,422.40 |
| 06/03 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 57,413.86 |
| 06/03 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 21,746.28 |
| 06/04 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 30,047.21 |
| 06/04 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 1,089.58 |
| 06/07 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 43,741.40 |
| 06/07 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 35,260.27 |
| 06/07 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 28,598.91 |
| 06/07 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 26,697.23 |
| 06/07 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 14,982.08 |
| 06/07 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 7,923.45 |
| 06/08 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 62,464.10 |
| 06/08 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 36,712.91 |
| 06/09 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 71,470.82 |
| 06/09 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 23,266.61 |
| 06/10 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 64,865.17 |

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# How to Balance your Account

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| | | |
|---|---|---|
| ❶ Ending Balance | | 1,291,109.27 |
| ❷ Total Deposits | + | |
| ❸ Sub Total | | |
| ❹ Total Withdrawals | - | |
| ❺ Adjusted Balance | | |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | ❷ |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | ❹ |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared.  When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed.  Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly.  If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible.  We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error.
  If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.

# TD Bank

**America's Most Convenient Bank®**

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108-RRD SDNY

| | |
|---|---|
| Page: | 3 of 6 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account | 0935 |

## DAILY ACCOUNT ACTIVITY

### Electronic Deposits (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/10 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 21,680.62 |
| 06/11 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 26,439.29 |
| 06/11 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 3,764.35 |
| 06/14 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 67,167.39 |
| 06/14 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 40,957.00 |
| 06/14 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 37,695.14 |
| 06/14 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 37,251.04 |
| 06/14 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 24,972.14 |
| 06/14 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 17,205.27 |
| 06/15 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 80,706.93 |
| 06/15 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 46,436.04 |
| 06/16 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 52,565.95 |
| 06/16 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 21,391.58 |
| 06/17 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 37,553.97 |
| 06/17 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 2,548.08 |
| 06/18 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 39,350.90 |
| 06/18 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 22,399.34 |
| 06/21 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 62,657.19 |
| 06/21 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 50,786.45 |
| 06/21 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 46,154.15 |
| 06/21 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 38,449.99 |
| 06/21 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 16,873.67 |
| 06/21 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 15,097.95 |
| 06/22 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 47,358.48 |
| 06/23 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 115,916.14 |
| 06/23 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 62,323.25 |
| 06/24 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 50,258.49 |
| 06/24 | CCD DEPOSIT, EVENTBRITE, INC. EDI PYMNTS *-***57009 | 9,045.95 |
| 06/24 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 1,724.75 |
| 06/25 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 77,187.20 |
| 06/25 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 6,249.21 |
| 06/25 | ACH DEPOSIT, SQUARE INC SDV-VRFY T****79745961 | 0.01 |
| 06/28 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 52,717.07 |
| 06/28 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 52,687.28 |
| 06/28 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 46,853.42 |
| 06/28 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 40,730.03 |
| 06/28 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 26,756.66 |
| 06/28 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 17,403.89 |
| 06/28 | ACH DEPOSIT, PULSD INC. BILL PMT ****910935 | 6,528.20 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# TD Bank
**America's Most Convenient Bank®**

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108-RRD SDNY

| | |
|---|---|
| Page: | 4 of 6 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account : | 0935 |

## DAILY ACCOUNT ACTIVITY

### Electronic Deposits (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/28 | ACH DEPOSIT, SQUARE INC 210628P2 L****36490666 | 952.75 |
| 06/28 | ACH DEPOSIT, SQUARE INC 210628P2 L****36490667 | 85.69 |
| 06/29 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 69,039.33 |
| 06/29 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 51,035.85 |
| 06/30 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****01938889 | 69,824.05 |
| 06/30 | CCD DEPOSIT, FISERV MERCHANT DEPOSIT ****03671884 | 67,647.83 |
| | Subtotal: | 2,476,172.05 |

### Other Credits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/07 | WIRE TRANSFER INCOMING, WARDROBE TECHNOLOGIES INC. DBA | 2,486.62 |
| 06/14 | WIRE TRANSFER INCOMING, GREEN SKY LABS INC 101 2275 U | 1,391.10 |
| | Subtotal: | 3,877.72 |

### Electronic Payments

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 40.52 |
| 06/01 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 38.11 |
| 06/02 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 24,410.03 |
| 06/02 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 182.11 |
| 06/03 | CCD DEBIT, FISERV MERCHANT INTERCHNG ****01938889 | 22,293.17 |
| 06/03 | CCD DEBIT, FISERV MERCHANT INTERCHNG ****03671884 | 8,328.11 |
| 06/03 | CCD DEBIT, FISERV MERCHANT DISCOUNT ****01938889 | 1,677.04 |
| 06/03 | CCD DEBIT, FISERV MERCHANT FEE ****01938889 | 841.85 |
| 06/03 | CCD DEBIT, FISERV MERCHANT DISCOUNT ****03671884 | 691.47 |
| 06/03 | CCD DEBIT, FISERV MERCHANT FEE ****03671884 | 485.67 |
| 06/03 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 39.20 |
| 06/04 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021603 | 130,576.17 |
| 06/04 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 43,937.87 |
| 06/07 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 215.60 |
| 06/08 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 69,331.73 |
| 06/09 | ELECTRONIC PMT-WEB, FIRST INSURANCE INSURANCE ***-*3537124 | 18,495.84 |
| 06/09 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 351.13 |
| 06/10 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 46,869.25 |
| 06/10 | CCD DEBIT, FISERV MERCHANT FEE ****03671884 | 0.80 |
| 06/11 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021603 | 163,511.31 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# **TD Bank**

America's Most Convenient Bank®

**STATEMENT OF ACCOUNT**

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108-RRD SDNY

| | |
|---|---|
| Page: | 5 of 6 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | ⌐-### |
| Primary Account | 0935 |

## DAILY ACCOUNT ACTIVITY

### Electronic Payments (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/11 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 9,133.64 |
| 06/14 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 22,152.44 |
| 06/14 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 129.99 |
| 06/14 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 33.76 |
| 06/15 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021611 | 137,351.26 |
| 06/15 | ACH DEBIT, CON ED OF NY INTELL CK ****10002602008 | 25,925.81 |
| 06/15 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 12,709.41 |
| 06/15 | ACH DEBIT, CON ED OF NY INTELL CK ****10002608005 | 3,235.00 |
| 06/15 | ACH DEBIT, CON ED OF NY INTELL CK ****10002609003 | 2,985.05 |
| 06/15 | ACH DEBIT, CON ED OF NY INTELL CK ****10002604004 | 736.08 |
| 06/15 | ACH DEBIT, CON ED OF NY INTELL CK ****10002606009 | 728.17 |
| 06/16 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 34,157.08 |
| 06/16 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 30,738.27 |
| 06/17 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021603 | 167,884.98 |
| 06/17 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 41,935.62 |
| 06/17 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 103.08 |
| 06/17 | CCD DEBIT, FISERV MERCHANT FEE ****03671884 | 0.44 |
| 06/18 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 62.08 |
| 06/21 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 150.00 |
| 06/22 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 43,251.86 |
| 06/22 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 21,628.79 |
| 06/22 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 21,404.40 |
| 06/23 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 51,323.11 |
| 06/23 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 7,802.41 |
| 06/23 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 282.44 |
| 06/24 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021603 | 178,988.06 |
| 06/25 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 164.25 |
| 06/25 | ELECTRONIC PMT-WEB, SQUARE INC SDV-VRFY T****79745962 | 0.01 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

**TD Bank**

America's Most Convenient Bank®

**STATEMENT OF ACCOUNT**

96 WYTHE ACQUISITION LLC DBA
THE WILLIAMSBURG HOTEL
DIP CASE 21-22108-RRD SDNY

| | |
|---|---|
| Page: | 6 of 6 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | ⌐-### |
| Primary Account | 0935 |

---

**DAILY ACCOUNT ACTIVITY**

**Electronic Payments (continued)**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/28 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 48,447.38 |
| 06/28 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 46,744.23 |
| 06/28 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 27,048.48 |
| 06/28 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****01938889 | 343.91 |
| 06/29 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 82,176.55 |
| 06/29 | eTransfer Debit, Online Xfer<br>Transfer to CK 4380021596 | 36,124.13 |
| 06/30 | CCD DEBIT, FISERV MERCHANT CHARGEBACK ****03671884 | 236.26 |
| | Subtotal: | 1,588,435.41 |

---

**DAILY BALANCE SUMMARY**

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 05/31 | 399,494.91 | 06/16 | 863,014.52 |
| 06/01 | 603,691.38 | 06/17 | 693,192.45 |
| 06/02 | 642,286.35 | 06/18 | 754,880.61 |
| 06/03 | 687,089.98 | 06/21 | 984,750.01 |
| 06/04 | 543,712.73 | 06/22 | 945,823.44 |
| 06/07 | 703,187.09 | 06/23 | 1,064,654.87 |
| 06/08 | 733,032.37 | 06/24 | 946,696.00 |
| 06/09 | 808,922.83 | 06/25 | 1,029,968.16 |
| 06/10 | 848,598.57 | 06/28 | 1,152,099.15 |
| 06/11 | 706,157.26 | 06/29 | 1,153,873.65 |
| 06/14 | 910,480.15 | 06/30 | 1,291,109.27 |
| 06/15 | 853,952.34 | | |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender 🏠



# TD Bank

**America's Most Convenient Bank®**

T        **STATEMENT OF ACCOUNT**

Go paperless.
Scan the QR code to opt in to paperless statements

THE WILLIAMSBURG HOTEL BK LLC
96 WYTHE AVE
BROOKLYN NY  11249

| | |
|---|---|
| Page: | 1 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account # | 1596 |

## TD Business Premier Checking

THE WILLIAMSBURG HOTEL BK LLC                                    1596

---

### ACCOUNT SUMMARY

| | | | |
|---|---|---|---|
| Beginning Balance | 74,829.60 | Average Collected Balance | 51,661.35 |
| Electronic Deposits | 724,624.95 | Interest Earned This Period | 0.00 |
| Other Credits | 20,056.89 | Interest Paid Year-to-Date | 0.00 |
| | | Annual Percentage Yield Earned | 0.00% |
| Checks Paid | 325,470.69 | Days in Period | 30 |
| Electronic Payments | 274,326.29 | | |
| Other Withdrawals | 54,448.64 | | |
| Ending Balance | 165,265.82 | | |

---

### DAILY ACCOUNT ACTIVITY

**Electronic Deposits**

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/02 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 24,410.03 |
| 06/04 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 43,937.87 |
| 06/08 | ACH RETURNED ITEM, ALL BORO CONSULT SALE | 1,700.00 |
| 06/08 | ACH RETURNED ITEM, AMEX EPAYMENT ACH PMT W8612 | 1,112.55 |
| 06/08 | ACH RETURNED ITEM, NATIONAL GRID NY UTILITYPAY 00021011451 | 485.72 |
| 06/08 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 69,331.73 |
| 06/10 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 46,869.25 |
| 06/11 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 9,133.64 |
| 06/14 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 22,152.44 |
| 06/15 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 12,709.41 |
| 06/16 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 34,157.08 |
| 06/16 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 30,738.27 |
| 06/17 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 41,935.62 |
| 06/22 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 43,251.86 |
| 06/22 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 21,628.79 |

# How to Balance your Account

**Begin by adjusting your account register as follows:**

- Subtract any services charges shown on this statement.

- Subtract any automatic payments, transfers or other electronic withdrawals not previously recorded.

- Add any interest earned if you have an interest-bearing account.

- Add any automatic deposit or overdraft line of credit.

- Review all withdrawals shown on this statement and check them off in your account register.

- Follow instructions 2-5 to verify your ending account balance.

1. Your ending balance shown on this statement is:

2. List below the amount of deposits or credit transfers which do not appear on this statement. Total the deposits and enter on Line 2.

3. Subtotal by adding lines 1 and 2.

4. List below the total amount of withdrawals that do not appear on this statement. Total the withdrawals and enter on Line 4.

5. Subtract Line 4 from 3. This adjusted balance should equal your account balance.

| ❶ Ending Balance | 165,265.82 |
| --- | --- |
| ❷ Total Deposits | + |
| ❸ Sub Total | |
| ❹ Total Withdrawals | - |
| ❺ Adjusted Balance | |

| ❷ DEPOSITS NOT ON STATEMENT | DOLLARS | CENTS |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Deposits** | | ❷ |

| ❹ WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| WITHDRAWALS NOT ON STATEMENT | DOLLARS | CENTS |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Withdrawals** | | ❹ |

**FOR CONSUMER ACCOUNTS ONLY — IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:**

If you need information about an electronic fund transfer or if you believe there is an error on your bank statement or receipt relating to an electronic fund transfer, telephone the bank immediately at the phone number listed on the front of your statement or write to:

**TD Bank, N.A., Deposit Operations Dept, P.O. Box 1377, Lewiston, Maine 04243-1377**

We must hear from you no later than sixty (60) calendar days after we sent you the first statement upon which the error or problem first appeared.  When contacting the Bank, please explain as clearly as you can why you believe there is an error or why more information is needed.  Please include:

- Your name and account number.
- A description of the error or transaction you are unsure about.
- The dollar amount and date of the suspected error.

When making a verbal inquiry, the Bank may ask that you send us your complaint in writing within ten (10) business days after the first telephone call.

We will investigate your complaint and will correct any error promptly.  If we take more than ten (10) business days to do this, we will credit your account for the amount you think is in error, so that you have the use of the money during the time it takes to complete our investigation.

**INTEREST NOTICE**

Total interest credited by the Bank to you this year will be reported by the Bank to the Internal Revenue Service and State tax authorities. The amount to be reported will be reported separately to you by the Bank.

**FOR CONSUMER LOAN ACCOUNTS ONLY — BILLING RIGHTS SUMMARY**

In case of Errors or Questions About Your Bill:

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at P.O. Box 1377, Lewiston, Maine 04243-1377 as soon as possible. We must hear from you no later than sixty (60) days after we sent you the FIRST bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.

You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you are in question.

FINANCE CHARGES: Although the Bank uses the Daily Balance method to calculate the finance charge on your Moneyline/Overdraft Protection account (the term "ODP" or "OD" refers to Overdraft Protection), the Bank discloses the Average Daily Balance on the periodic statement as an easier method for you to calculate the finance charge. The finance charge begins to accrue on the date advances and other debits are posted to your account and will continue until the balance has been paid in full. To compute the finance charge, multiply the Average Daily Balance times the Days in Period times the Daily Periodic Rate (as listed in the Account Summary section on the front of the statement). The Average Daily Balance is calculated by adding the balance for each day of the billing cycle, then dividing the total balance by the number of Days in the Billing Cycle. The daily balance is the balance for the day after advances have been added and payments or credits have been subtracted plus or minus any other adjustments that might have occurred that day. There is no grace period during which no finance charge accrues. Finance charge adjustments are included in your total finance charge.

# TD Bank

**America's Most Convenient Bank®**

STATEMENT OF ACCOUNT

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 3 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -###-###-###-### |
| Primary Account #: | 1596 |

## DAILY ACCOUNT ACTIVITY

### Electronic Deposits (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/22 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 21,404.40 |
| 06/23 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 51,323.11 |
| 06/23 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 7,802.41 |
| 06/28 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 48,447.38 |
| 06/28 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 46,744.23 |
| 06/28 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 27,048.48 |
| 06/29 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 82,176.55 |
| 06/29 | eTransfer Credit, Online Xfer<br>Transfer from CK 4384910935 | 36,124.13 |
| | Subtotal: | 724,624.95 |

### Other Credits

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/08 | RETURNED ITEM | 3,498.48 |
| 06/08 | RETURNED ITEM | 3,300.00 |
| 06/08 | RETURNED ITEM | 2,344.24 |
| 06/08 | RETURNED ITEM | 2,193.41 |
| 06/08 | RETURNED ITEM | 2,100.00 |
| 06/08 | RETURNED ITEM | 1,923.00 |
| 06/08 | RETURNED ITEM | 1,575.00 |
| 06/08 | RETURNED ITEM | 700.00 |
| 06/08 | RETURNED ITEM | 632.47 |
| 06/08 | RETURNED ITEM | 621.39 |
| 06/08 | RETURNED ITEM | 400.00 |
| 06/08 | RETURNED ITEM | 290.80 |
| 06/08 | RETURNED ITEM | 278.10 |
| 06/08 | RETURNED ITEM | 200.00 |
| | Subtotal: | 20,056.89 |

### Checks Paid

No. Checks: 186    *Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT | DATE | SERIAL NO. | AMOUNT |
|---|---|---|---|---|---|
| 06/02 | 1027 | 477.96 | 06/14 | 1078* | 735.41 |
| 06/01 | 1038* | 56.70 | 06/02 | 1084* | 955.92 |
| 06/28 | 1046* | 1,260.00 | 06/01 | 1098* | 3,260.25 |
| 06/14 | 1047 | 903.23 | 06/03 | 1103* | 40.00 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# TD Bank

**America's Most Convenient Bank®**

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 4 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | ¯-### |
| Primary Account : | 1596 |

## DAILY ACCOUNT ACTIVITY

### Checks Paid (continued)

*Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT | DATE | SERIAL NO. | AMOUNT |
|---|---|---|---|---|---|
| 06/04 | 1104 | 80.00 | 06/09 | 1191 | 649.00 |
| 06/07 | 1108* | 632.47 | 06/11 | 1192 | 2,100.00 |
| 06/07 | 1109 | 621.39 | 06/08 | 1193 | 800.00 |
| 06/07 | 1111* | 7,805.47 | 06/07 | 1194 | 2,344.24 |
| 06/17 | 1113* | 429.33 | 06/07 | 1195 | 7,665.61 |
| 06/22 | 1149* | 1,466.07 | 06/02 | 1196 | 871.00 |
| 06/01 | 1150 | 646.72 | 06/07 | 1197 | 400.00 |
| 06/24 | 1154* | 225.62 | 06/07 | 1198 | 7,068.91 |
| 06/03 | 1155 | 4,000.00 | 06/02 | 1200* | 495.74 |
| 06/03 | 1157* | 2,931.00 | 06/01 | 1202* | 1,923.00 |
| 06/02 | 1159* | 1,700.00 | 06/01 | 1203 | 550.40 |
| 06/18 | 1160 | 500.00 | 06/01 | 1204 | 4,668.02 |
| 06/01 | 1162* | 708.00 | 06/14 | 1205 | 550.00 |
| 06/03 | 1164* | 672.20 | 06/07 | 1208* | 3,498.48 |
| 06/01 | 1168* | 5,000.00 | 06/14 | 1209 | 1,900.00 |
| 06/01 | 1170* | 400.00 | 06/25 | 1211* | 4,278.19 |
| 06/01 | 1171 | 400.00 | 06/09 | 1212 | 3,631.02 |
| 06/04 | 1172 | 300.00 | 06/04 | 1213 | 1,485.04 |
| 06/02 | 1173 | 600.00 | 06/07 | 1214 | 200.00 |
| 06/04 | 1174 | 1,994.39 | 06/07 | 1215 | 700.00 |
| 06/11 | 1175 | 4,339.34 | 06/07 | 1216 | 1,575.00 |
| 06/07 | 1176 | 2,193.41 | 06/09 | 1217 | 600.00 |
| 06/14 | 1177 | 979.88 | 06/14 | 1218 | 500.00 |
| 06/04 | 1178 | 2,159.32 | 06/04 | 1219 | 2,500.00 |
| 06/03 | 1179 | 2,186.75 | 06/07 | 1220 | 4,668.01 |
| 06/04 | 1180 | 2,068.62 | 06/08 | 1221 | 435.12 |
| 06/07 | 1181 | 5,852.03 | 06/07 | 1222 | 2,100.00 |
| 06/08 | 1183* | 519.68 | 06/09 | 1223 | 1,069.44 |
| 06/03 | 1184 | 38.40 | 06/10 | 1224 | 1,000.00 |
| 06/07 | 1185 | 290.80 | 06/11 | 1226* | 7,005.82 |
| 06/16 | 1187* | 1,911.84 | 06/07 | 1228* | 3,300.00 |
| 06/04 | 1188 | 367.52 | 06/09 | 1229 | 3,516.71 |
| 06/03 | 1189 | 2,501.10 | 06/10 | 1230 | 2,177.46 |
| 06/04 | 1190 | 1,246.66 | 06/07 | 1231 | 1,923.00 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# TD Bank

**America's Most Convenient Bank®**

**STATEMENT OF ACCOUNT**

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 5 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | `-### |
| Primary Account : | 1596 |

---

## DAILY ACCOUNT ACTIVITY

### Checks Paid (continued)

*Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT | DATE | SERIAL NO. | AMOUNT |
|------|-----------|--------|------|-----------|--------|
| 06/15 | 1232 | 1,976.56 | 06/15 | 1269 | 758.68 |
| 06/09 | 1233 | 228.40 | 06/15 | 1270 | 604.66 |
| 06/07 | 1234 | 278.10 | 06/11 | 1271 | 742.36 |
| 06/09 | 1235 | 528.03 | 06/15 | 1272 | 338.29 |
| 06/14 | 1236 | 400.00 | 06/14 | 1273 | 1,282.00 |
| 06/11 | 1237 | 500.00 | 06/22 | 1274 | 355.72 |
| 06/14 | 1238 | 100.00 | 06/14 | 1275 | 207.17 |
| 06/15 | 1239 | 472.00 | 06/17 | 1276 | 1,200.35 |
| 06/09 | 1242* | 851.18 | 06/23 | 1277 | 4,690.74 |
| 06/14 | 1243 | 871.00 | 06/14 | 1279* | 450.00 |
| 06/15 | 1244 | 400.00 | 06/25 | 1280 | 1,125.00 |
| 06/10 | 1245 | 2,473.08 | 06/16 | 1281 | 400.00 |
| 06/14 | 1246 | 189.61 | 06/28 | 1282 | 400.00 |
| 06/14 | 1247 | 200.00 | 06/15 | 1283 | 4,684.72 |
| 06/09 | 1248 | 800.00 | 06/15 | 1284 | 392.20 |
| 06/18 | 1249 | 500.00 | 06/22 | 1285 | 767.00 |
| 06/11 | 1250 | 500.00 | 06/15 | 1286 | 4,158.65 |
| 06/21 | 1251 | 909.83 | 06/22 | 1287 | 1,900.00 |
| 06/11 | 1253* | 632.47 | 06/22 | 1288 | 8,215.20 |
| 06/11 | 1254 | 621.39 | 06/18 | 1290* | 972.00 |
| 06/15 | 1255 | 290.80 | 06/23 | 1292* | 3,568.06 |
| 06/15 | 1256 | 400.00 | 06/18 | 1293 | 2,895.25 |
| 06/15 | 1257 | 2,193.41 | 06/21 | 1294 | 3,227.58 |
| 06/21 | 1258 | 2,344.24 | 06/18 | 1295 | 5,000.00 |
| 06/14 | 1259 | 3,498.48 | 06/22 | 1296 | 1,968.27 |
| 06/14 | 1260 | 200.00 | 06/18 | 1297 | 8,937.64 |
| 06/18 | 1261 | 700.00 | 06/22 | 1298 | 2,687.49 |
| 06/11 | 1262 | 1,575.00 | 06/21 | 1299 | 2,186.75 |
| 06/16 | 1263 | 2,100.00 | 06/21 | 1300 | 1,754.40 |
| 06/11 | 1264 | 3,320.00 | 06/23 | 1302* | 4,317.39 |
| 06/11 | 1265 | 278.10 | 06/23 | 1303 | 468.16 |
| 06/14 | 1266 | 1,923.00 | 06/21 | 1305* | 947.93 |
| 06/11 | 1267 | 684.00 | 06/21 | 1306 | 473.66 |
| 06/11 | 1268 | 5,500.00 | 06/21 | 1307 | 636.17 |

# TD Bank
**America's Most Convenient Bank®**

STATEMENT OF ACCOUNT

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 6 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | ¯-### |
| Primary Account : | 1596 |

## DAILY ACCOUNT ACTIVITY

### Checks Paid (continued)
*Indicates break in serial sequence or check processed electronically and listed under Electronic Payments

| DATE | SERIAL NO. | AMOUNT | DATE | SERIAL NO. | AMOUNT |
|---|---|---|---|---|---|
| 06/28 | 1308 | 590.00 | 06/28 | 1345* | 750.00 |
| 06/23 | 1309 | 1,015.80 | 06/28 | 1346 | 800.00 |
| 06/25 | 1310 | 999.00 | 06/28 | 1347 | 1,000.00 |
| 06/23 | 1311 | 5,399.13 | 06/22 | 1351* | 1,780.11 |
| 06/25 | 1312 | 907.29 | 06/16 | 1352 | 6,000.00 |
| 06/24 | 1313 | 7,005.82 | 06/23 | 1354* | 250.00 |
| 06/18 | 1314 | 992.59 | 06/29 | 1356* | 303.85 |
| 06/21 | 1315 | 1,923.00 | 06/22 | 1357 | 1,135.00 |
| 06/21 | 1316 | 356.80 | 06/25 | 1358 | 396.00 |
| 06/28 | 1317 | 644.72 | 06/22 | 1359 | 235.00 |
| 06/21 | 1318 | 800.00 | 06/22 | 1360 | 55.00 |
| 06/28 | 1319 | 150.00 | 06/22 | 1361 | 675.95 |
| 06/22 | 1320 | 300.00 | 06/25 | 1366* | 1,500.00 |
| 06/28 | 1322* | 350.00 | 06/28 | 1367 | 2,351.70 |
| 06/23 | 1323 | 600.00 | 06/28 | 1369* | 2,414.53 |
| 06/25 | 1325* | 3,264.99 | 06/30 | 1372* | 1,080.00 |
| 06/25 | 1326 | 5,484.84 | 06/30 | 1373 | 1,600.00 |
| 06/24 | 1330* | 2,624.50 | 06/30 | 1382* | 871.00 |
| 06/29 | 1331 | 2,805.42 | 06/30 | 1392* | 3,243.26 |
| 06/25 | 1342* | 6,000.00 | 06/30 | 1404* | 508.38 |
| 06/29 | 1343 | 1,050.00 | 06/04 | 3186* | 498.15 |
| | | | | Subtotal: | 325,470.69 |

### Electronic Payments

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/01 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 7,549.39 |
| 06/01 | ELECTRONIC PMT-WEB, SORBIS WEBPAYMENT | 6,372.50 |
| 06/01 | TD BILL PAY SERV, BANK OF AMERICA ONLINE PMT TDB212585026POS | 1,000.00 |
| 06/01 | TD BILL PAY SERV, CHASE CARD SERV ONLINE PMT TDB212585026POS | 1,000.00 |
| 06/01 | CCD DEBIT, AMEX EPAYMENT ACH PMT W6866 | 812.54 |
| 06/02 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000667268 | 14,057.85 |
| 06/02 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 3,782.75 |
| 06/02 | CCD DEBIT, EMPIRE BLUE INDIVIDUAL 7113924 | 2,214.48 |
| 06/02 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,620.09 |
| 06/02 | CCD DEBIT, ASCENTIUMCAPITAL LEASECHG 173752 | 1,249.32 |
| 06/02 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,029.93 |
| 06/02 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 326.49 |

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# TD Bank

**America's Most Convenient Bank®**

STATEMENT OF ACCOUNT

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 7 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | `-### |
| Primary Account : | 1596 |

## DAILY ACCOUNT ACTIVITY

### Electronic Payments (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/02 | CCD DEBIT, MERCHANT SERVICE MERCH FEE 8079292879 | 287.52 |
| 06/02 | ELECTRONIC PMT-WEB, VERIZON PAYMENTREC 2515388510001 | 199.20 |
| 06/03 | CCD DEBIT, AMEX EPAYMENT ACH PMT W4876 | 1,668.69 |
| 06/04 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,309.48 |
| 06/04 | CCD DEBIT, WINEBOW NY, NJ, PAYMENT 045590000121161 | 787.30 |
| 06/04 | CCD DEBIT, PHASE THREE CAPI SIGONFILE PZVGJG | 535.93 |
| 06/07 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 4,607.60 |
| 06/07 | DEBIT CARD PURCHASE, AUT 060421 VISA DDA PUR WF  WAYFAIR 3560111651      HTTPSWWW  WAYF * MA 4085404027733868 | 2,808.95 |
| 06/07 | CCD DEBIT, ALL BORO CONSULT SALE | 1,700.00 |
| 06/07 | CCD DEBIT, AMEX EPAYMENT ACH PMT W8612 | 1,112.55 |
| 06/07 | CCD DEBIT, NATIONAL GRID NY UTILITYPAY 00021011451 | 485.72 |
| 06/08 | CTX DEBIT, UNITED HEALTHCAR EDI PAYMTS 636325762788 | 5,396.28 |
| 06/08 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,615.05 |
| 06/08 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,319.30 |
| 06/08 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 7325427 | 826.77 |
| 06/08 | CCD DEBIT, AMEX EPAYMENT ACH PMT W0166 | 576.88 |
| 06/09 | ACH DEBIT, CLEANSLATE PURCHASE | 1,193.03 |
| 06/09 | TD BILL PAY SERV, BANK OF AMERICA ONLINE PMT TDB212585026POS | 1,000.00 |
| 06/09 | TD BILL PAY SERV, CHASE CARD SERV ONLINE PMT TDB212585026POS | 1,000.00 |
| 06/10 | CCD DEBIT, WINEBOW NY, NJ, PAYMENT 045590000122319 | 2,035.90 |
| 06/10 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 6483310 | 1,382.48 |
| 06/10 | CCD DEBIT, AMEX EPAYMENT RETRY PYMT W8612 | 1,112.55 |
| 06/11 | TD BILL PAY SERV, CHASE CARD SERV ONLINE PMT TDB212585026POS | 4,600.49 |
| 06/11 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000670027 | 3,566.00 |
| 06/11 | CCD DEBIT, AMEX EPAYMENT ACH PMT W5740 | 2,406.59 |
| 06/11 | TD BILL PAY SERV, BANK OF AMERICA ONLINE PMT TDB212585026POS | 2,356.68 |
| 06/11 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 339.88 |
| 06/14 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000670496 | 14,624.22 |
| 06/14 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 6,152.41 |
| 06/14 | CCD DEBIT, WESTGUARD INS CO INS PREM WIWC291833 | 1,375.81 |
| 06/15 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,575.30 |
| 06/15 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,493.67 |
| 06/15 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 925.92 |
| 06/16 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000671157 | 427.96 |
| 06/17 | CCD DEBIT, BRONX LOBSTER PL ACH 201-707-4847 | 3,775.90 |
| 06/17 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 7721975 | 3,217.09 |
| 06/17 | CCD DEBIT, WINEBOW NY, NJ, PAYMENT 045590000123466 | 2,544.90 |
| 06/17 | CCD DEBIT, DAVID BOWLER LLC CORP COLL THE WILLIAMSBUR | 306.00 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

# TD Bank

**America's Most Convenient Bank®**

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 8 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | -### |
| Primary Account # | 1596 |

## DAILY ACCOUNT ACTIVITY

### Electronic Payments (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/18 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 3,983.87 |
| 06/18 | ELECTRONIC PMT-WEB, SORBIS WEBPAYMENT | 2,915.58 |
| 06/18 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000671776 | 264.00 |
| 06/18 | ACH DEBIT, CON ED OF NY INTELL CK 622010002605001 | 32.73 |
| 06/18 | ACH DEBIT, CON ED OF NY INTELL CK 622010002607007 | 32.73 |
| 06/18 | ACH DEBIT, CON ED OF NY INTELL CK 622010002603006 | 32.73 |
| 06/21 | CCD DEBIT, EXPEDIA, INC. 10074865_9 127000491943 | 11,911.64 |
| 06/21 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 4,580.34 |
| 06/21 | TD BILL PAY SERV, BANK OF AMERICA ONLINE PMT TDB212585026POS | 2,000.00 |
| 06/21 | TD BILL PAY SERV, CHASE CARD SERV ONLINE PMT TDB212585026POS | 2,000.00 |
| 06/21 | CCD DEBIT, INTUIT QUICKBOOKS 3635696 | 383.24 |
| 06/22 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000672382 | 21,404.40 |
| 06/22 | TD BILL PAY SERV, CHASE CARD SERV ONLINE PMT TDB212585026POS | 5,552.86 |
| 06/22 | CCD DEBIT, AMEX EPAYMENT ACH PMT W8956 | 2,214.78 |
| 06/22 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000672444 | 1,678.00 |
| 06/22 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,350.56 |
| 06/22 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,262.49 |
| 06/22 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,012.27 |
| 06/22 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 7472364 | 902.68 |
| 06/22 | CCD DEBIT, ALLIANCE ACHDEBITS 000102316653001 | 324.85 |
| 06/23 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000672857 | 6,930.61 |
| 06/23 | DEBIT CARD PURCHASE, AUT 062121 VISA DDA PUR MICROSOFT STORE      800 6427676   * WA 4085404027733868 | 2,740.35 |
| 06/23 | CCD DEBIT, MICROS RETAIL SY ACH DEBIT 5292489706 | 994.99 |
| 06/24 | TD BILL PAY SERV, BANK OF AMERICA ONLINE PMT TDB212585026POS | 7,802.41 |
| 06/24 | CCD DEBIT, WINEBOW NY, NJ, PAYMENT 045590000124756 | 1,683.00 |
| 06/24 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 8691031 | 1,166.76 |
| 06/25 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 4,445.46 |
| 06/25 | ELECTRONIC PMT-WEB, NYSIF WEB_PAY 00430616062421 | 3,085.26 |
| 06/25 | CCD DEBIT, AMEX EPAYMENT ACH PMT W1884 | 967.41 |
| 06/25 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 648.05 |
| 06/28 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 4,834.92 |
| 06/28 | ELECTRONIC PMT-WEB, TRIPADVISOR ADVERTSING 7420699 | 788.33 |
| 06/28 | DEBIT CARD PURCHASE, AUT 062421 VISA DDA PUR PAYPAL  PRNTONBROAD      402 935 7733   * NY 4085404027733868 | 734.91 |
| 06/29 | CCD DEBIT, SWS OF AMERICA CORP PMT 450000000674177 | 23,281.20 |
| 06/29 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 4620133 | 8,930.91 |
| 06/29 | CCD DEBIT, WINEBOW NY, NJ, PAYMENT 045590000125733 | 3,200.00 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# **TD** Bank

**America's Most Convenient Bank®**

STATEMENT OF ACCOUNT

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 9 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | `-###` |
| Primary Account : | 1596 |

## DAILY ACCOUNT ACTIVITY

### Electronic Payments (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/29 | CCD DEBIT, AMEX EPAYMENT ACH PMT W2710 | 2,788.72 |
| 06/29 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,952.59 |
| 06/29 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,554.30 |
| 06/29 | CCD DEBIT, CHEFSWAREHOUSEWE PURCHASE THE WILLIAMSBUR | 1,182.14 |
| 06/30 | ELECTRONIC PMT-WEB, SORBIS WEBPAYMENT | 5,356.46 |
| 06/30 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 3695900 | 1,298.82 |
| 06/30 | ELECTRONIC PMT-WEB, EMPIREMERCHANTS INVOICE(S) 3696027 | 453.60 |
| | Subtotal: | 274,326.29 |

### Other Withdrawals

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/02 | WIRE TRANSFER OUTGOING, Mint Development Corp | 3,275.00 |
| 06/02 | WIRE TRANSFER OUTGOING, Janover LLC | 1,337.94 |
| 06/02 | WIRE TRANSFER FEE | 30.00 |
| 06/02 | WIRE TRANSFER FEE | 30.00 |
| 06/04 | WIRE TRANSFER OUTGOING, Aplbc Ltd | 5,200.00 |
| 06/04 | WIRE TRANSFER OUTGOING, Mint Development Corp | 3,537.50 |
| 06/04 | WIRE TRANSFER FEE | 50.00 |
| 06/04 | WIRE TRANSFER FEE | 30.00 |
| 06/08 | OVERDRAFT RET | 105.00 |
| 06/08 | OVERDRAFT PD | 70.00 |
| 06/08 | STOP PAYMENT CHG(S), STOP ITEM | 30.00 |
| 06/10 | WIRE TRANSFER OUTGOING, Mint Development Corp | 3,515.00 |
| 06/10 | WIRE TRANSFER FEE | 30.00 |
| 06/11 | WIRE TRANSFER OUTGOING, Ralph Ervin | 232.99 |
| 06/11 | WIRE TRANSFER FEE | 30.00 |
| 06/17 | WIRE TRANSFER OUTGOING, Sure Rifka Buls | 1,500.00 |
| 06/17 | WIRE TRANSFER OUTGOING, Good Design | 160.00 |
| 06/17 | WIRE TRANSFER FEE | 50.00 |
| 06/17 | WIRE TRANSFER FEE | 50.00 |
| 06/18 | WIRE TRANSFER OUTGOING, Mint Development Corp | 3,515.00 |
| 06/18 | WIRE TRANSFER FEE | 30.00 |
| 06/22 | WIRE TRANSFER OUTGOING, HA Clarke, LLC | 8,071.25 |
| 06/22 | WIRE TRANSFER FEE | 30.00 |
| 06/23 | WIRE TRANSFER OUTGOING, Kassatex Inc. | 9,989.46 |
| 06/23 | WIRE TRANSFER OUTGOING, T-Y Group, LLC | 3,730.85 |
| 06/23 | WIRE TRANSFER FEE | 30.00 |
| 06/23 | WIRE TRANSFER FEE | 30.00 |
| 06/25 | WIRE TRANSFER OUTGOING, Mint Development Corp | 3,575.00 |
| 06/25 | WIRE TRANSFER FEE | 30.00 |

**Call 1-800-937-2000 for 24-hour Bank-by-Phone services or connect to www.tdbank.com**

Bank Deposits FDIC Insured | TD Bank, N.A. | Equal Housing Lender

# TD Bank

**America's Most Convenient Bank®**

THE WILLIAMSBURG HOTEL BK LLC

| | |
|---|---|
| Page: | 10 of 10 |
| Statement Period: | Jun 01 2021-Jun 30 2021 |
| Cust Ref #: | ################-###### |
| Primary Account #: | 1596 |

## DAILY ACCOUNT ACTIVITY

### Other Withdrawals (continued)

| POSTING DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 06/29 | WIRE TRANSFER OUTGOING, Mint Development Corp | 760.00 |
| 06/29 | WIRE TRANSFER OUTGOING, Luxury GS LLC | 672.20 |
| 06/29 | WIRE TRANSFER FEE | 30.00 |
| 06/29 | WIRE TRANSFER FEE | 30.00 |
| 06/30 | WIRE TRANSFER OUTGOING, Onyx Centersource AS | 4,601.45 |
| 06/30 | STOP PAYMENT CHG(S), STOP ITEM | 30.00 |
| 06/30 | WIRE TRANSFER FEE | 30.00 |
| | Subtotal: | 54,448.64 |

## DAILY BALANCE SUMMARY

| DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|
| 05/31 | 74,829.60 | 06/16 | 70,350.63 |
| 06/01 | 40,482.08 | 06/17 | 99,052.68 |
| 06/02 | 30,350.92 | 06/18 | 67,748.56 |
| 06/03 | 16,312.78 | 06/21 | 31,312.98 |
| 06/04 | 36,100.74 | 06/22 | 52,253.08 |
| 06/07 | -27,731.00 | 06/23 | 66,623.06 |
| 06/08 | 53,261.81 | 06/24 | 46,114.95 |
| 06/09 | 38,195.00 | 06/25 | 9,408.46 |
| 06/10 | 71,337.78 | 06/28 | 114,579.44 |
| 06/11 | 39,140.31 | 06/29 | 184,338.79 |
| 06/14 | 24,250.53 | 06/30 | 165,265.82 |
| 06/15 | 16,295.08 | | |



# EXHIBIT C



# G.C. REALTY ADVISORS LLC.

## BANKRUPTCY MANAGEMENT AGREEMENT

AGREEMENT made, by and between, **96 Wythe Acquisition, LLC** (hereinafter referred to as the "Client") and **G.C. Realty Advisors, LLC** (hereinafter referred to as the "Manager"). Whereas Client wishes to retain Manager for purposes to provide analysis and Bankruptcy Management services to the Client, relating to asset valuation and negotiations aimed at alleviating distress and/or facilitating the purchase or re-casting of the first commercial mortgage lien and all other debts of the Client with regard to the Property(ies) (the "Project") of the assets located at **96 Wythe Ave, Brooklyn, NY 11249.** Manager's duties on behalf of client shall include but not be limited to the following, it being understood that Manager's performance of any duties hereunder are subject to Client's prior approval:

A. Provide advice and guidance to the Client regarding to all aspects of Bankruptcy, to include, review of information, preparation of all forms and documents, analysis, as well as handle the direct, non-binding negotiations that will facilitate the settlement of debts to include a modification or re-casting of the existing equity or debt financing. Manager will not finalize or execute any purchase, modification, or re-casting without written authorization from the company.

B. Subject to Client approval, arrange for the engagement of legal counsel, where such counsel is required for the support and implementation of the strategies being utilized by Manager in connection with the Project (as hereinafter defined). Manager shall inform the Client of the advantages of retaining legal counsel and may provide guidance into the selection of said legal counsel, however, any such representation shall be covered by a separate retainer agreement between the Client and the legal counsel.

C. Manager will perform a comprehensive due diligence review of the company and property(ies) including its financial condition, property condition, state of its macro and micro economic market, and competitive position. To accomplish this, our team will begin by reviewing the financial records relating to the property, including, but not limited to, loan docs, leases, management and leasing agreements, budgets, and income projections. Upon mutual agreement as to the necessity, and written agreement, we will then perform an on-site inspection of the property and physical review of the local markets and the larger general market. We will require access to all relevant property specific books, records and in-house personnel. As necessary, we may require meetings with principals, property managers, and third-party managers, including but not limited to, attorneys, accountants, brokers, local government employees and officials. We will use data from these investigations and from our financial and property condition report to produce our own financial models. Our analysis will be based on the documents we receive in response to our document request list as set forth in Schedule 1 ("Document Request Checklist"), as well as additional documentation we receive relevant to the Project and physical site inspection.

# G.C. REALTY ADVISORS LLC.

D. Manager will then arrange a post analysis conference to discuss our findings and present our recommendations to achieve a favorable workout resolution plan.

E. Based upon your decision and with your full consent, we will then draft the Critical Path Method ("CPM") outlining the steps necessary to implement the strategy. The CPM may contain a multi-disciplinarian approach to achieving the resolution and therefore, may require the need for additional third-party resources and expertise (i.e. legal counsel, construction experts, zoning, etc.).

F. Manager will coordinate and intensively manage all the various disciplines and services necessary to achieve the resolution. You will decide whether to utilize any of your existing third-party relationships or whether to make use of our recommended experts.

G. Manager will not engage, advise, or provide any financial or otherwise beneficial information to competitors in the local markets.

H. Manager shall execute a Non- Disclosure and Non-Circumvent Agreement and shall be included as an Exhibit to the Agreement.

In the event that the CPM includes the recommendation to re-cast the existing debt on the Property:

A. Manager will provide advice to the Client regarding all aspects of negotiations that will facilitate the re-casting or purchase of the existing debt.

B. If necessary and consented to, Manager will use its best efforts to arrange additional debt/equity on behalf of the Client to complete the recapitalization assignment.

If necessary and consented to, Manager will represent the Client in negotiations concerning all aspects of arranging a joint venture or partial sale of the property to include the new recapitalization inclusive of equity.

In consideration of the mutual covenants of this Agreement, the parties agree as follows:

1. **TERM:** The term of this agreement shall commence on the date herein and shall terminate upon the earlier of (i) client's termination of this Agreement or (ii) at the final resolution and closure of the bankruptcy case. To the extent this Agreement is entered into before the client files its bankruptcy case, this Agreement will continue in full force and effect, unless previously terminated, after the bankruptcy case is filed. To the extent the client may be required to seek Court approval of this Agreement, client undertakes and agrees to seek such approval of this Agreement from the Bankruptcy Court.

## G.C. REALTY ADVISORS LLC.

2. **BANKRUPTCY MANAGEMENT FEES:** Client agrees to pay to Manager a Retainer Fee of $15,000.00, which will be paid at time of execution of this agreement and deemed earned. There will be a monthly billing for work, in the amount of $15,000 which will begin after 30 days.

Monthly statements will be provided with any pre-approved travel expenses for the project. All invoices will be due 30 days after presentation. Manager's Fees shall be a budgeted item in the Debtor's cash collateral/operation budget for the bankruptcy case, assuming there are enough funds to cover this amount. In the case when there are not enough funds to cover the fee, it will accrue.

3. **SUCCESS FEE:** During the term of this agreement should Client accept in writing a commitment or contract to re-capitalize the asset in accordance with any of the following;

    i.   Should the Advisor arrange a Joint venture, the Success Fee shall be equal to 1.00% percent of the total transaction − if the advisor was the sole broker with no other brokers involved;

    ii.   Should the Advisor procure mezzanine debt then the Success Fee for that debt shall be 1.00% percent of the total mezzanine debt procured, if the advisor was the sole broker with no other brokers involved;

    iii.   Should the Advisor procure Equity, whether preferred or standard equity then the Success Fee for that equity shall be 3.00% percent of the total equity procured, if the advisor was the sole broker with no other brokers involved.

Payment of all fees and reimbursed out-of-pocket expenses shall be made in care of GC Realty Advisors LLC, Attention: David Goldwasser, per the following wire transfer instructions:

Beneficiary Name: GC Realty Advisors, LLC
Beneficiary Account: 635558179
Incoming Domestic Wire Transfer: 267084131
Bank Name: JP Morgan Chase Bank, NA

4. **EARLY TERMINATION:** Client has the right to terminate this Agreement at any time upon five (5) days written notice to the Manager. Upon issuing such a termination notice, no further payments shall be required even if a payment comes due to Manager during the five (5) day notice period. To the extent, however, that this Agreement is terminated, all Fees due Manager through the termination date must be paid in full. In the case where the fees were accruing due to lack of funds, the accruing fees will be added to the creditor list. Whenever a given Project is terminated before completion, Manager shall not be entitled to any further compensation.:

5. **OUT OF POCKET COSTS:** The Client agrees to pay all necessary title, appraisal, inspection,

G.C. REALTY ADVISORS LLC.

recording and legal costs required by the lender in connection with the terms and conditions of any commitment accepted by Client in writing.

6. **PUBLICITY:** The Client agrees to allow the Manager to arrange for the publication, at the expense of the Manager, of one or more stories about the transaction, subject to approval by the client.

7. **AUTHORITY:** The person signing this Agreement certifies that he has the authority as a principal, or as an authorized agent of the Client, to sign this Agreement.

8. **APPLICABLE LAW:** This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

9. **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the parties hereto and supersedes any prior oral or written agreements or understandings. Any modification or amendment to this Agreement must be in writing and signed by both parties.

10. **SUCCESSORS AND ASSIGNS:** This Agreement shall bind and insure to the benefit of Manager and its heirs, executors, successors and assigns and Client and its heirs, executors, successors and permitted assigns.

# G.C. REALTY ADVISORS LLC.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year expressed below.

Agreed and accepted:

96 Wythe Acquisition, LLC:

_____ Date __4|5|21__

Toby Moskovits, Authorized Signor

_____ Date __4|5|21__

Michael Lichtenstein, Authorized Signor

GC Realty Advisors, LLC

_____ Date __4/5/21__

David S. Goldwasser, Managing Member

# G.C. REALTY ADVISORS LLC.

## Information Review List

### 1) The Project

- Proposed restructuring request (brief summary of the proposed structure as see it.)
- Project description
- Appraisal (if available)
- Rent Roll
- Proforma income and expense statement for the next 10 years with additional capital contributions if necessary.
- Historical Operating Statements (3 years)
- Lease(s)
- Plans and Specifications.
- Aerial photograph (if available)
- Area map
- Preliminary title report
- Market analysis (absorption, competing projects, and competitive rent levels)
- Construction cost breakdown

### 2) The Borrowing Entity

- Financial statements for each entity and property within the entity
- Partnership agreement (if applicable)
- Percent ownership breakdown
- Borrower resume
- List of previous projects developed
- List of properties under management

### 3) The Existing Debt

- Note
- Mortgage
- Second Liens
- Guarantees
- Mezzanine instruments
- Additional Equity agreements

*The above information is required in order to adequately analyze the project, and to create the best possible presentation for the restructuring.*

*Please note that it is important to have a Financial Statement from all partners with 10% or more interest. In the credit analysis, it will aid in representing that the partnership has sufficient financial strength.*

# EXHIBIT D

# HOTEL MANAGEMENT AND SERVICES AGREEMENT

between

**96 Wythe Acquisition LLC**
**("Owner")**

and

**The Williamsburg Hotel BK LLC**
**("Manager")**

**November 21, 2017**

*Confidential*

This **HOTEL MANAGEMENT AND SERVICES AGREEMENT** is executed as of November 21, 2017 ("Effective Date"), by and between 96 Wythe Acquisition, a New York limited liability company ("Owner"), and The Williamsburg Hotel BK, LLC, a New York limited liability company ("Manager").

## RECITALS:

A.    Owner is the owner of a property located at 96 Wythe Avenue, Brooklyn, New York (the "Property"), and has developed a new building on the Property, including 147 guest rooms, lobby, restaurant, bars, rooftop, and other amenities (the "Hotel");

B.    Manager has overseen design, branding, programming, furnishing, promoting, managing and operating the property during the pre-development and development phase; and

C.    Owner desires to use the Williamsburg Hotel brand and to retain Manager to brand, manage and operate the Hotel in accordance with this Agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants, conditions, agreements and obligations hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which being hereby acknowledged by the parties hereto, Owner and Manager agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01    Definitions. As used herein, the following terms shall have the indicated meanings:

Affiliate means, with respect to any Person, any other Person that directly or indirectly through one or more intermediaries controls or is controlled by or is under common control with such Person. For purposes of this definition, the term "control," when used with respect to any Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement means this Hotel Management Agreement and all amendments, modifications, supplements, consolidations, extensions and revisions to this Hotel Management Agreement from time to time approved in writing by Owner and Manager.

Books and Records means the books and records of account maintained by the Manager necessary to prepare customary accounting records and financial reports in connection with the operation of the Hotel, but expressly excluding any and all sales and marketing files, guest lists and profiles (including Manager Owned Customer Lists), guest histories, detailed employee records and all standard Manager's materials.

Brand Name means The Williamsburg Hotel.

Budget means a proposed budget for the Hotel setting forth all anticipated income and expenditures to be received or incurred for any Fiscal Year and the marketing and operating plan for any Fiscal Year.

Competitor means a Person engaged, directly or indirectly through an Affiliate, in the business of owning, operating, licensing (as licensor), franchising (as franchisor), or managing a hotel brand or lodging system of hotels that is competitive with Manager or its Affiliates.

Emergency Repairs means, without limitation, repairs which, in Manager's good faith reasonable judgment are necessary to prevent (a) imminent personal injury, (b) imminent damage to the property of third parties, (c) imminent damage to the Hotel, (d) imminent loss or diminution of any material licenses or right to operate the Hotel for its intended purposes, (e) imminent loss or material diminution of any parking, ingress, egress or access relating to the Hotel or (f) a violation of any material Legal Requirements.

1

FF&E means all furniture, furnishings, wall coverings, fixtures, equipment and systems (except equipment and fixtures attached to and forming a part of the Improvements) located at the Hotel and required for the operation of the Improvements as a hotel, including (a) office furnishings and equipment, (b) specialized hotel equipment necessary for the operation of any portion of the Improvements as a hotel, including equipment for kitchens, laundries, dry cleaning facilities, bars, restaurants, dining rooms, public rooms, commercial spaces, and recreational facilities, including Operating Equipment, and all artwork, (c) all other furnishings and equipment (except equipment and fixtures attached to and forming a part of the Improvements) as necessary or desirable in the operation of the Hotel in accordance with the terms and conditions set forth in this Agreement.

Fiscal Year means (i) the period commencing on the first date that the Hotel generates any Gross Revenues and ending on December 31 of the calendar year in which such date occurs, and (ii) any successive yearly period (beginning January 1 and ending December 31) thereafter.

Force Majeure Event means (a) strikes, labor lock-outs, other industrial disputes, accidents, need to remove Hazardous Substances, inability to procure materials, loss of permitting or licensing, recession, governmental action or restriction, regulation or control, failure of power, water, fuel, electricity or other utilities, riots, insurrection, civil commotion, enemy or terrorist action or threat, war, acts of God (including inordinately severe weather conditions), fire or other casualty and (b) any other matter, cause or circumstances which is beyond the reasonable control of Manager in each case to the extent the same has not arisen by reason of any breach by Manager of any of Manager's obligations under this Agreement.

Gross Revenues means any and all income and proceeds of sales received for the use, occupancy or enjoyment of the Hotel or for the sale of any goods, services or other items sold on, or provided from, the Hotel including all proceeds from insurance and all income received from tenants, transient guests, licensees, concessionaires, lessees of retail space, spa and food and beverage service operations at the Hotel excluding the following: (i) any excise, sales or use taxes or similar government charges collected directly from patrons or guests, or as a part of the sales price of any goods, services or displays, such as gross receipts, value added, admission, cabaret or similar or (ii) any security deposits of Hotel tenants, subtenants, or concessionaires (unless and until applied) and any payments by such tenants, subtenants or concessionaires for taxes; (iii) proceeds of collection of accounts receivable; (iv) consideration received at the Hotel for hotel accommodations, goods and services to be provided at other hotels arranged by, for or on behalf of Manager; and (v) discounts, allowances and refunds or credits to patrons or guests.

Improvements means all buildings, structures, improvements and betterments now located or hereafter constructed on the Property and all fixtures and equipment attached to and forming a part of such buildings, structures and improvements (including heating, lighting, plumbing, sanitary sewer, air-conditioning, laundry, refrigeration, kitchen, elevators and similar items).

Independent Accountant means a third party independent certified public accounting firm jointly selected by Owner and Manager.

Legal Requirements means all present and future laws, statutes, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements pertaining to the Hotel and its operation including any applicable insurance, environmental, human health and safety, zoning or building, laws or regulations, Americans with Disabilities Act, fire and fire safety system laws, land use laws, ordinances, rules or regulations and all covenants, restrictions and conditions now or hereafter of record which may be applicable to the Hotel or any portion thereof, or to the use, occupancy, possession, operation, maintenance, alteration, construction or repair of any of the Improvements, including any rules, regulations and requirements of competent authorities relating to permits, consents, licenses and the like which are required for the use, occupancy, possession, operation, maintenance, alteration, construction or repair of any of the Hotel and/or Improvements.

2

Manager Directed Customers means customers of the Manager or its Affiliates, whether or not such customers have at any point in time stayed at the Hotel, hosted an event or was a guest at a food and beverage venue, or who were introduced to the Hotel by Manager or its Affiliates or through their historical relationship with Manager or its Affiliates, during the term of this agreement.

Manager Owned Customer Lists means the customer and guest information, preference and history relating to Manager Directed Customers.

Manager's Expenses means the out-of-pocket expenses and disbursements which are included in the Budget and are reasonably and necessarily incurred by Manager in the performance of its obligations under this Agreement, provided, however, that the same cost shall not be included in more than one category of expense. Manager's Expenses may include the following expenses: travel, business entertainment costs, telephone, air express and other incidental expenses. This shall include: (i) reasonable and customary out-of-pocket expenses properly incurred by Manager on behalf of the Hotel or Owner in order to facilitate the performance of Manager's duties under this Agreement; (ii) other reasonable and customary direct expenses incurred by the Manager in connection with the management or operation of the Hotel; (iii) all costs and expenses incurred by Manager on behalf of the Hotel or Owner, including out-of-pocket expenses related to the time spent by, and travel of, specifically to and from the Hotel in order to facilitate the transition of services in connection with the termination of this Agreement, and (iv) third party contracts with providers in the name of Manager or its Affiliates for the benefit of the Hotel (such as Google search terms, PMX and Synxis) that may be done on a group or individual basis, which amounts shall be included in the Budget (the "Third Party Contract Expenses").

Manager's Fees means, collectively, the Base Management Fee, the Incentive Fee, and any other fees payable to the Manager.

Operating Account means the bank account(s) opened and maintained in Owner's or Manager's name, with a banking institution selected by Manager and reasonably approved by Owner, into which all income, receipts and proceeds included in the definition of Gross Revenues (without exclusion of any of the items excluded from the definition of such term) shall be deposited and from which disbursements shall be made.

Operating Equipment means linens, chinaware, glassware, uniforms, utensils and other items of similar nature.

Person means an individual (and the heirs, executors, administrators, or other legal representatives of an individual), a partnership, a corporation, a limited liability company, a government or any department or agency thereof, a trustee, a trust and any unincorporated organization.

Personnel means all individuals performing services for the benefit of the Hotel as employees of Manager or an Affiliate of Manager.

Personnel Costs means all costs associated with the hiring, employment or termination of Personnel (x) located at and providing services directly and exclusively to the Hotel, on behalf of the Manager, (y) who provide services to the Hotel, and other hotels under developed or operated by Manager and its Affiliates, on a non-exclusive basis, or (z) who are shared employees of any current or future hotels owned and/or operated by Manager or an Affiliate of Manager, including, in each case, compensation (i.e., salaries and bonuses) and benefits, employment taxes, social security contributions, training and severance payments, costs in connection with litigation or consultation and, subject to the Approved Budget, recruitment expenses and the costs of moving executive level Personnel, their families and their belongings to the area in which the Hotel is located at the commencement of their employment.

Working Capital means funds reasonably necessary for the day-to-day operation of the Hotel.

3

## ARTICLE II

### TERM OF AGREEMENT

Section 2.01    Term.  The initial term of this Agreement (the "Initial Term") shall begin on the Effective Date and, subject to the termination rights expressly set forth herein, will terminate on the last day of the tenth (10th) full Fiscal Year.  Thereafter, the Term shall automatically be extended for two successive terms of five (5) years each (each, a "Renewal Term") on the same terms and conditions as set forth in this Agreement unless Manager notifies Owner of its election not to renew at least six (6) months before the end of the Initial Term, or then current Renewal Term. The Initial Term and each Renewal Term are collectively, the "Term." In the event that the Owner is required to terminate this agreement due to lender covenants, immediately upon restoration of the Owner's rights to control the Property, this Agreement shall be immediately reinstated. At any time that the Manager is not in full control of the Property, use of all brand collateral, trademarks, digital and design assets, online presence including website and social media accounts in the name of The Williamsburg Hotel, shall ceased to be associated with the property in any manner and control and ownership of all brand collateral and online and social media accounts shall remain with the Manager.

### ARTICLE III

### OPERATION OF THE HOTEL

Section 3.01    Operation of the Hotel.  Owner hereby retains Manager to manage and operate the Hotel commencing on the Effective Date in a professional manner in accordance with and subject to the terms of this Agreement, and to provide or cause to be provided all amenities in connection with the Hotel which are reasonable and customary for such an operation.

Section 3.02    Manager's Control and Discretion.  Subject to the terms of this Agreement and the Budget, Manager shall manage and operate the Hotel.  Without limiting the generality of the foregoing but subject to the other provisions of this Agreement, Manager's control and discretion shall include, and Manager shall be responsible for, the operation of the Hotel for all customary purposes, and, without limitation thereof, at its discretion to do the following:

(a)    Hire, directly or through an Affiliate, the general manager, the financial controller and other managerial and hourly staff of the Hotel who shall work solely and exclusively for the Manager; provided, that Owner shall have a reasonable opportunity to meet with the general manager before Manager shall hire such person; provided, further, however, that Owner shall have no approval right with respect to any such hiring.  Manager shall also have the right to hire, supervise, promote and discharge all employees performing services in or about the Hotel, all of whom shall be employees of Manager or an Affiliate of Manager.  Owner shall have no right to hire, supervise, promote or discharge any employees of the Hotel, and Owner agrees not to attempt to do so and, not in limitation of the foregoing, in no event shall Owner cause, suffer or permit any Affiliate of Owner, or any person holding, directly or indirectly, a beneficial interest in Owner (other than Manager or an Affiliate of Manager), to participate in or interfere with such supervision.  On reasonable advance notice from Owner to Manager, senior executives of Manager's corporate office (as designated by Manager) shall meet with Owner, either in person or by telephone (at Manager's discretion), to review with Owner the financial performance the Hotel.

(b)    Retain such specialists and consultants as Manager may from time to time reasonably determine to be necessary for the successful operation of the Hotel.

(c)    Determine and implement all labor policies, including with respect to wage and salary rates and terms, fringe benefits, pension, retirement, vacation, bonus and employee benefit plans, all consistent with industry practice.

4

(d)     Supervise and maintain accurate Books and Records, including the books of account and accounting procedures of the Hotel.

(e)     Negotiate, enter into, and modify, leases, subleases, licenses and concession agreements for stores, restaurants, bars and other facilities, and services at the Hotel.

(f)     Make or cause to be made all necessary repairs, replacements and/or additions to the Hotel so that it shall be adequately maintained and furnished at a level of a luxury boutique hotel

(g)     Negotiate and enter into service contracts and software licenses in Owner's or Manager's name required in the ordinary course of business in operating the Hotel, including contracts for electricity, gas, telephone, detective agency protection, information technology, cleaning, trash removal, extermination and other services which Manager deems advisable.

(h)     Select and obtain Consumable Supplies, Operating Equipment and FF&E for the operation of the Hotel in the normal course of business.

(i)     Determine all terms for admittance, charges and rate schedules for guest rooms, function rooms, commercial space privileges, entertainment and food and beverages.

(j)     Determine all credit policies with respect to the operation of the Hotel, including entering into customary credit card and barter agreements.

(k)     Establish food and beverage policies (including pricing) with respect to the Hotel, including the right to conduct catering operations outside the Hotel but for the account of the Hotel.

(l)     Establish and implement all advertising, public relations and promotional policies with respect to the Hotel including exercising the sole and exclusive control over all public statements, whether written or oral and no matter how disseminated, advertising, press releases and conferences;.

(m)     Retain attorneys and other professionals as Manager may reasonably deem necessary to provide advice with respect to operating the Hotel, including with respect to zoning, environmental, employment and litigation matters, and institute any and all legal actions or proceedings as shall be reasonably necessary in the Manager's judgment to collect charges, rent or other income of the Hotel.

(n)     Appear in, defend against and/or settle all legal actions or proceedings brought against Manager or Owner or both in connection with the operation of the Hotel.

(o)     Establish any other policy or perform any other act or function which in the reasonable discretion of Manager is necessary or desirable to operate the Hotel on a day-to-day basis in accordance with the Operating Standard and the terms of this Agreement and perform all other acts within the scope of Manager's duties hereunder.

Section 3.03   Manager Affiliate Services.  In fulfilling its obligations under this Agreement, Manager is hereby authorized to use the services of Manager's Affiliates provided that such services and fees therefor shall be furnished on terms and conditions which are not less favorable to Owner than those obtained in the competitive, open market.

## ARTICLE IV

## MANAGER STATUS; EMPLOYEES

Section 4.01   Manager Status. Nothing herein shall constitute or be construed to be or create a partnership, joint venture or any other similar type of association between Owner and Manager.  Owner covenants that Manager's engagement under this Services Agreement hereunder and right to occupy and manage the Hotel shall be exclusive and undisturbed, subject only to the limitations of this Management

5

and Services Agreement. Owner further covenants that all intellectual property, including brand name, trademarks issued and filed, customer lists, website, social media accounts and all content including photos of the property are the sole property of the Manager. The Manager retains unlimited rights to any content including photos of the property utilized in the any media including all social media accounts of the Williamsburg Hotel, included but not limited to Instagram and Facebook.

Section 4.02    Employees.

(a)    All Personnel shall be employees of Manager or an Affiliate of Manager; provided, however, that Owner shall be obligated to reimburse Manager for all Personnel Costs for such Personnel in accordance with the terms of this Agreement. Reimbursement for Personnel Costs includes any costs incurred as a result of the termination of any Personnel including if such termination is as a result of the termination or sooner expiration of this Agreement. Manager shall have the right to transfer the Personnel to an Affiliate or cause an Affiliate to hire the Personnel, and notwithstanding the foregoing, Manager and its Affiliates shall, in their sole discretion, have any and all rights regarding such Personnel provided hereunder, and in relation thereto. Owner shall not give orders or instructions to any Personnel, including with respect to the operation of the Hotel. In furtherance of the foregoing, Owner and Manager hereby agree that the Manager shall determine, in its sole discretion, the number of employees required to operate the Hotel, the working conditions at the Hotel, the organizational concept and any necessary reorganization and the like in order to properly perform the duties of the Manager under this Agreement.

Section 4.03    Reimbursement of Employee Expenses. All Personnel Costs shall be billed by Manager to, and be reimbursed by, Owner as an operating expense under this Management services agreement. Manager may assign employees of Manager or any of Manager's Affiliates to perform services for the Hotel and Owner shall reimburse Manager for Personnel Costs associated with such employees as an Operating Expense. Employees of Manager other than those regularly employed at the Hotel or otherwise in the New York City metropolitan area shall be entitled to free room and board at such times as they visit the Hotel in connection with the management of the Hotel or are assigned temporarily to the Hotel to perform services for the Hotel. Owner shall reimburse Manager for all reasonable travel expenses to and from the Hotel for such employees. Not in limitation of the provisions of the foregoing, Owner authorizes Manager to make available to employees of Manager and its Affiliates certain benefits in the form of discounted room use at the Hotel as determined in accordance with Manager's then-effective employee discount policy, not to exceed 200 room nights per any calendar year. Owner hereby approves such benefits and acknowledges that it has no claim against Manager with respect thereto, to the extent such discounts do not materially exceed those customary to the hotel industry in the geographic region where the Hotel is located.

ARTICLE V

INDEMNIFICATION

Section 5.01    Indemnification by Owner.

(a)    Owner shall indemnify, defend, and hold Manager and its Affiliates and their respective directors, members, trustees, officers, employees, agents and assigns (collectively, "Manager Indemnified Parties") harmless from and against any and all claims, demands, damages, cost, expense, actions (including enforcement proceedings initiated by any government agency), penalties, suits, and liabilities (including the cost of defense, settlement, appeal, reasonable attorneys' fees and costs and any other amounts that Manager is required to pay to third parties in connection with such matters) which they or any of them may have alleged against them, incur, become responsible for, or pay out for any reason related to the design, management, operation or maintenance of the Hotel or the performance by Manager of the responsibilities and obligations provided in this Agreement, provided, however, that in no event shall Owner's indemnification obligations cover or extend to conduct of Manager or any of Manager's Affiliates that constitutes gross negligence, willful misconduct or fraud. In case of any action, suit or proceeding

6

brought against Manager arising from or relating to matters covered by the indemnity Manager will notify Owner of such action, suit or proceeding, and Manager may, at Owner's expense, by notice to Owner, elect to defend such action, suit or proceeding or cause the same to be defended. Any compromise, settlement or offer of settlement of any claim, action or proceeding that Owner shall be obligated to indemnify Manager Indemnified Parties pursuant to the terms of this Agreement shall require the prior written consent of Manager; provided that no such consent shall be required for any such compromise, settlement or offer which provides for a full release of Manager and its Affiliates.

Section 5.02    Indemnification by Manager.  Manager shall indemnify, defend and hold Owner and its Affiliates and their respective directors, members, officers, employees, agents and assigns (collectively, "Owner Indemnified Parties") harmless from and against any and all claims, demands, damages, cost, expense, actions (including enforcement proceedings initiated by any government agency), penalties, suits, and liabilities (including the cost of defense, settlement, appeal, reasonable attorneys' fees and costs and any other amounts the Owner is required to pay to third parties in connection with such matters, but excluding consequential damages sustained by Owner), which they or any of them may have alleged against them, incur, become responsible for, or pay out for any reason, to the extent such matters are caused by conduct of Manager's or Manager's Affiliates corporate personnel that constitutes gross negligence, willful misconduct or fraud.  In case of any action, suit or proceeding brought against Owner arising from or relating to matters covered by the indemnity, Owner will notify Manager of such action, suit, or proceeding, and Manager may, at Manager's expense, by notice to Owner, defend such action, suit, or proceeding, or cause the same to be defended.  Any compromise, settlement or offer of settlement of any claim, action or proceeding that Manager shall be obligated to indemnify pursuant to the terms of this Agreement shall require the prior written consent of Owner; provided that no such consent shall be required for any such compromise, settlement or offer which provides for a full release of Owner and its Affiliates.

Section 5.03    Survival of Indemnity.  The obligations set forth shall survive any termination or assignment of this Agreement.  In no event shall the settlement by either party in good faith of any claim brought by a third party (including Personnel) in connection with the ownership or operation of the Hotel be deemed to create any presumption of the validity of the claim.  Notwithstanding any contrary provisions, Owner and Manager mutually agree for the benefit of each other to look first to the appropriate insurance coverages in effect in the event any claim or liability occurs as a result of injury to person or damage to property, regardless of the cause of such claim or liability.

ARTICLE VI

BUDGETS

Section 6.01    Budget.  Not later than sixty (60) days prior to the commencement of each Fiscal Year, Manager shall submit the Budget to Owner for Owner's review and approval. The Budget shall contain (i) an estimated profit and loss statement on a monthly basis, (ii) a budget of receipts and expenditures required for the operation of the Hotel pursuant to the terms of this Agreement, (iii) a description of proposed capital improvements to be made and itemized capital expenses, (iv) a statement of cash flow, including a schedule of Working Capital which may be maintained in a sub-account of the Operating Account and (v) any anticipated requirements for funding by Owner.  Owner shall give its written approval or disapproval of the proposed Budget not later than thirty (30) days after receipt thereof. If Owner does not provide its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within such thirty (30) day period, and Manager gives notice (the "Reminder Notice") to Owner of such failure by Owner, then, if Owner still does not provide its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within thirty (30) days after receipt of the Reminder Notice, Owner shall be deemed to have approved such proposed Budget as submitted by Manager. Owner acknowledges that the projections contained in each proposed Budget and the Approved Budget are estimates and are subject to and may be affected by changes in financial, economic and other conditions and circumstances beyond Manager's reasonable control, and the giving of such

projections shall not be construed as a guarantee or warranty by Manager to Owner of any matter or in any way whatsoever.

Section 6.02    Adherence to Budget.

(a)    If the usage of all or any portion of an income-producing facility of the Hotel or the guest occupancy related to such facility, in any period exceeds the usage or occupancy for such facility projected in the Approved Budget for such period, the expense categories in the Approved Budget for such period directly related to servicing such increase in usage or occupancy shall automatically be deemed increased by such reasonable amount as is necessary to accommodate such increased usage or occupancy. Subject to the foregoing sentence and the next following sentence, Manager shall, in the performance of its duties hereunder, (i) adhere to the Budget with respect to expense items set forth in such Budget (it being agreed that Manager shall have no liability for cost overruns beyond its reasonable control) and (ii) use its reasonable good faith efforts to adhere to or exceed the Budget with respect to income items set forth in such Budget.

(b)    If at any time during any Fiscal Year Manager shall, in the performance of its duties hereunder, determine that the Budget relating to such Fiscal Year is no longer appropriate because of unforeseen changes, Manager shall submit to Owner for Owner's review, a revised budget (the "Revised Budget") for the remainder of such Fiscal Year. Owner shall give its written approval or disapproval of the proposed Revised Budget not later than thirty (30) days after receipt thereof. If Owner does not give its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within such thirty (30) day period, and Manager gives the Reminder Notice to Owner, then, if Owner still does not provide its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within thirty (30) days after receipt of the Reminder Notice, Owner shall be deemed to have approved such proposed Revised Budget as submitted by Manager

## ARTICLE VII

### OPERATING EXPENSES

Section 7.01    Payment of Operating Expenses. In performing its authorized duties hereunder, Manager shall promptly pay all Operating Expenses to the extent of available Working Capital. All Operating Expenses incurred by Manager in performing its authorized duties in accordance with the terms of this Agreement shall be reimbursed or borne by Owner. To the extent the funds necessary therefor are not generated by the operation of the Hotel, they shall be supplied by Owner to Manager in the manner provided in Article VIII. Manager shall in no event be required to advance any of its own funds for Operating Expenses.

## ARTICLE VIII

### WORKING CAPITAL AND BANK ACCOUNTS

Section 8.01    Working Capital.

(a)    Owner shall provide the initial funds necessary to supply the Hotel with Working Capital in accordance with the Budget. Thereafter, subject to the Budget, upon request of Manager, Owner shall promptly provide any additional funds necessary to maintain Working Capital at levels reasonably determined by Manager to be necessary to satisfy the needs of the Hotel as its management and operation may from time to time require. Working Capital so provided shall remain the property of Owner throughout the Term, subject to expenditure for Operating Expenses. Upon termination of this Agreement, Owner shall retain any unused Working Capital.

(b)    If Owner does not provide the additional funds required pursuant to Section 8.01(a) or as otherwise required hereunder within five (5) business days after the request is made therefor by

8

Manager, Manager may elect, but shall have no obligation, to provide such additional funds, and shall be promptly reimbursed therefor by Owner with interest thereon at a rate equal to the prime commercial lending rate (the "Prime Rate") plus six percent (6%) per annum, or the highest legal rate, whichever is lower, compounded monthly, such interest accruing from the date the Manager provides such additional funds through and including the date of reimbursement.  If Manager is not reimbursed by Owner within five (5) days after Manager so provides such additional funds, Manager may reimburse itself (with interest as set forth above) out of the Operating Account. The aforementioned right of reimbursement shall be in addition to any other rights which Manager may have with respect to any provision of this Agreement or otherwise.

Section 8.02   Bank Accounts.  All funds to be made available to Manager by Owner for the maintenance and operation of the Hotel shall be deposited in the Operating Account Manager may open separate accounts which are linked to the Operating Account for certain operational purposes, such as by way of example, payment of payroll expenses and travel agent commissions.  Such bank accounts shall be opened and maintained in Manager's name, at the same bank as the Operating Account and provisions in this Agreement regarding the Operating Account shall apply to those accounts.   Manager shall pay all Operating Expenses (including Manager's Expenses and Manager's Fees) and all other amounts as required in connection with the maintenance and operation of the Hotel in accordance with the provisions of this Agreement out of the Operating Accounts.

Section 8.03   Authorized Signatures.  The Operating Account shall be in Owner's or Manager's name and Manager shall be authorized signatory.  Checks or other documents of withdrawal shall be signed by duly authorized individual representatives of Manager; Upon expiration or termination of this Agreement, as provided in this Agreement, all remaining amounts in the referenced accounts shall be made available to Owner, subject to the obligation to pay all amounts due to Manager hereunder.

Section 8.04   Disbursements to Owner.   Contemporaneously with furnishing each Monthly Statement and commencing after the first Fiscal Year, Manager shall disburse to Owner, in the manner directed by Owner, any funds remaining in the Operating Account at the end of such immediately preceding calendar month after: (i) payment of all Operating Expenses to be paid by Manager under this Agreement, Manager's Fees, Centralized Expenses, Manager's Expenses, and any other amounts Manager is permitted or required to make pursuant to this Agreement, (ii)  retention of amounts in the Operating Account necessary to fund Working Capital if any and any other reserves reasonably established by Manager (such as a reserve for litigation costs) and (iii) payment or retention of such other amounts as may be agreed to in writing from time to time by Owner and Manager.   Prior to the expiration of the first Fiscal Year, in order to allow the Hotel to stabilize, Manager shall not be required to make the foregoing monthly disbursements to Owner but shall use commercially reasonable efforts to disburse excess funds to Owner in Manager's discretion. Manager's willingness to defer payment of Management Fees shall not constitute a waiver of monies due to the Manager.

## ARTICLE IX

## BOOKS, RECORDS AND STATEMENTS

Section 9.01   Books and Records.  Manager shall keep full and adequate Books and Records reflecting the results of operation of the Hotel on an accrual basis,, with such exceptions as may be required by the provisions of this Agreement.  All Books and Records, wherever kept, shall be available to Owner and its representatives at all reasonable times for examination.  Upon any termination of this Agreement, a copy of all of such Books and Records forthwith shall be turned over to Owner so as to insure the orderly continuance of the operation of the Hotel, but the original Books and Records, shall be retained by Manager.

9

## ARTICLE X

### MANAGER'S FEES

Section 10.01  Base Management Fee. On the tenth (10th) day of each month during each Fiscal Year, , Owner shall pay to Manager a base management fee (the "Base Management Fee") equal to three percent (3.0%) of Gross Revenues in the first Fiscal Year and for all remaining Fiscal Years in the Term. The Base Management Fee shall be based on the actual monthly Gross Revenues as shown on the monthly Statement for the prior month.

Section 10.02  Reimbursement of Expenses. From time to time as incurred, Owner shall promptly reimburse Manager for any Manager's Expenses to the extent such Manager's Expenses are incurred by Manager in accordance with the provisions of this Agreement.

Section 10.03  Incentive Fee. Within ten (10) days after receipt of the Certified Financial Statements, Owner shall pay Manager an annual incentive management fee in an amount equal to ten percent (10%) of net operating income (the "Incentive Fee").

Section 10.04  Disbursement of Fees. Manager is authorized to disburse to itself from the Operating Account the amounts owing as the Manager's Fees and for reimbursements provided for in the Budget or otherwise expressly permitted by this Agreement, all at the times and in the amounts provided for in this Agreement, but, if insufficient funds are available to do so, such amounts shall accrue with interest thereon at the Prime Rate plus six percent (6%) per annum, or the highest legal rate, whichever is lower, compounded monthly, from the date such payment is due through and including the date of payment, and Owner shall pay same to Manager within ten (10) days after demand by Manager.

### ARTICLE XI

### REPAIRS AND MAINTENANCE AND CAPITAL IMPROVEMENTS

Section 11.01  Repairs and Maintenance.

(a)  Manager shall from time to time make such expenditures for repairs and maintenance to the Hotel, and repairs, maintenance, replacements, renewals and additions to the FF&E, and minor capital improvements (collectively, "Repairs") as are set forth in the Budget. Notwithstanding the foregoing, Manager shall not require the consent of Owner for, and shall be authorized to undertake, Emergency Repairs whether or not the cost of performing such repairs are in the Budget, and Manager may deviate from the Budget and incur additional expenses for Repairs.

### ARTICLE XII

### REAL AND PERSONAL PROPERTY TAXES,
### LOCAL TAXES, LEVIES AND OTHER ASSESSMENTS

Section 12.01  Payment of Real Estate Taxes. Manager shall pay from the Operating Account prior to the dates the same become delinquent all real estate and personal property taxes and all betterment assessments levied against the Hotel or any of its component parts. If Owner shall pay the real estate taxes, Owner shall furnish Manager proof of payments thereof upon request from Manager.

Section 12.02  Owner's Right to Contest. Notwithstanding the foregoing, Owner may, as an Operating Expense, contest the validity or the amount of any such tax or assessment. Manager agrees to cooperate with Owner and execute any documents or pleadings required for such purpose, provided that Manager is satisfied that the facts set forth in such documents or pleadings are accurate and that such execution or cooperation does not impose any unreasonable obligations on Manager, and Owner agrees to reimburse Manager as an Operating Expense for all expenses occasioned to Manager for any such cooperation.

10

## ARTICLE XIII

### TRADEMARKS AND HOTEL NAME

Section 13.01    Primary Name; Other Marks.    During the term of this Agreement, the Hotel shall at all times be known and designated by the name The Williamsburg Hotel (the "Hotel Brand"). Owner acknowledges that the Brand Name is the property of the Manager.

(a)    Manager's Tradename.    Owner and Manager agree that if the Manager utilizes any tradenames, trademarks, service marks, logos or designs owned, created or licensed by Manager or any Affiliate thereof (collectively, "Manager's Tradename") in connection with the management, operation and marketing of the Hotel, such Manager Tradenames shall remain within the sole control and ownership of the Manager. Manager shall have the right to cease using such agreed-upon Primary Name and any other Manager's Tradename with respect to the Hotel if at any time this Agreement is terminated or Owner prevents Manager from operating the Hotel at a level consistent with the Approved Budget and the Operating Standard. Owner hereby acknowledges that it has no right, title or interest in and to Manager's Tradename and covenants (i) not to claim any such interest and (ii) to take such steps as are necessary, in the negotiation, execution and delivery of agreements with third parties, and in any other circumstances which might otherwise suggest erroneously that Manager's Tradename is the property of Owner, to represent that Manager's Tradename is the property of Manager. Except as otherwise expressly provided herein, Owner shall have no right, at any time, to use Manager's Tradename, or any derivation thereof, or the name of any other hotel managed or operated by Manager or its Affiliates, or any derivation thereof, for any reason or purpose whatsoever, without obtaining the prior written consent of Manager, which consent may be withheld in Manager's sole discretion. As between Owner and Manager, all right, title and interest in Manager's Tradename shall, at all times, remain with Manager. Upon the termination of this Agreement for any reason or upon termination of the license agreement governing the use of Manager's Tradenames between Owner and Manager, Manager shall have the right to promptly remove Manager's Tradename from the Hotel and all items (including, by way of example and not by limitation, the Hotel building, all facilities, FF&E, advertising and marketing materials and Consumable Supplies) used at, in connection with or in reference to the Hotel.

(b)    Manager's Materials and Manager's Design Work.    Owner acknowledges that in the design, operation and management of the Hotel, Manager will make use of confidential information regarding Manager's business, operations, clients, investors and business partners and/or information not generally known by Owner in the form in which it is used by Manager, and which gives Owner a competitive advantage over other companies which do not have access to this information, including secret, confidential, or valuable proprietary information, trade secrets or work product of Manager and its Affiliates, conveyed orally or reduced to a tangible form in any medium, including but not limited to information concerning the operations, business plans, financial data and financial plans, architectural plans and designs, marketing plans, techniques and arrangements, manuals and form contracts, Personnel information and files, pricing policies, proprietary databases, internal communication and correspondence, including with Personnel, mailing lists, guest profiles and records, technology, research, future plans, business models, strategies, business methods and employees of Manager and its Affiliates, as well as information about Manager's and its Affiliates' customers, clients and business partners and its operations (collectively, the "Manager's Materials"). During the Term, in the event Owner has access to any Manager's Materials, its use of such Manager's Materials shall not (a) violate the terms of this Agreement, any applicable law or any privacy policies of Manager or any of its Affiliates, (b) interfere with, or be detrimental to, the use and exclusive operation of the Hotel by Manager, and (c) interfere with, or be detrimental to, the financial performance of the Hotel. Owner also acknowledges that in the design, operation and management of the Hotel, Manager may create logos and/or designs and commission artwork, photographs, website design, images of the Hotel, or other decorative specialty items (collectively, the "Manager's Design Work") to be used in connection with Manager's operation of the Hotel. Owner hereby acknowledges that it has no right,

11

title or interest in and to Manager's Materials or Manager's Design Work and covenants (i) not to claim any such interest, (ii) not to disclose or distribute, or contract to disclose or distribute, Manager's Materials or Manager's Design Work to any person without Manager's express written consent except as otherwise expressly provided herein or to the extent required by law, (iii) not to use Manager's Materials or Manager's Design Work in any manner except with the prior consent of Manager which may be withdrawn at any time, and (iv) upon termination of this Agreement for any reason, to cease all use of Manager's Materials (or any part thereof) and Manager's Design Work (or any part thereof) and return to Manager all copies and/or originals of Manager's Material and Manager's Design Work in its possession. When using Manager's Materials or Manager's Design Work with Manager's consent, the same shall be used only for the purpose of furthering the business of the Hotel and not for any other reason. All right, title and interest in and to Manager's Materials and Manager's Design Work, including all copyrights, trademarks and trade secret rights, shall always remain with Manager and may be removed from the Hotel by Manager at any time, including upon a termination or expiration of the Agreement, and Owner shall have no rights with respect thereto.

(c)     Solicitation.  Owner shall not, and shall ensure that its Affiliates do not, directly, or indirectly, for itself or on behalf of any other person, firm or corporation, solicit, hire, retain as a consultant, or use the services of, any person who is, or was in the previous eighteen (18) months (other than a person whose services were terminated by Manager), either an employee (including Personnel) of Manager or an Affiliate of Manager, without Manager's express prior written approval. This provision of shall survive for eighteen (18) months after the termination or expiration of this Agreement.

(d)     Sales of Merchandise.  Owner acknowledges that Manager's Materials, Manager's Design Work and Manager's Tradename are of great commercial value and that, without the covenants contained herein with respect thereto and with respect to Manager's employees set forth above, Manager would not enter into this Agreement. Nothing herein shall prohibit Manager from placing in rooms and other places at and around the Hotel items, such as picture books, identifying other hotels managed or operated by Manager and its Affiliates. In addition, Manager shall have the right to sell merchandise in the rooms in an unobtrusive manner or in the gift shop, at the front desk or in other appropriate locations at the Hotel, provided that the proceeds from such sales shall constitute Gross Revenues and Manager shall provide such merchandise to Owner at a price no less favorable to Owner than that which Manager provides such merchandise to any other hotel operated by Manager or its Affiliates.

## ARTICLE XIV

## ASSIGNMENTS; SALE OF HOTEL

Section 14.01   Assignment by Owner.  Owner shall have no right to transfer or assign any of Owner's interest in this Agreement without the prior written consent of Manager (which consent of Manager may be withheld by Manager in Manager's sole and absolute discretion), except that in connection with a sale of the Hotel or a permitted lease Owner shall, on thirty (30) days' prior written notice to Manager, cause this Agreement to be assigned to, and assumed by, the purchaser of the Hotel. For the avoidance of doubt, if Owner shall sell, assign, transfer or convey the Hotel or a controlling interest therein (including by transfer of ownership interest, merger or other disposition, in one or a series of related transactions) at any time during the Term, Owner shall have no right to terminate this Agreement as a result thereof, and, subject to Manager's right to terminate, this Agreement shall continue in full force and effect and bind Manager and Owner's successors and assigns.

Section 14.02   Assignment by Manager.  Manager is not entitled to assign this Agreement to a third party without the written consent of the Owner, except in connection with a merger or transfer of substantially all of the assets of its parent entity to any corporation, limited liability company, partnership or other business entity, provided that (i) the assignee will assume the obligations of Manager under this

Agreement, and (ii) the Hotel will continue to be operated under the Hotel Brand, in substantially the same manner as it was operated prior to such transfer.

## ARTICLE XV

## TERMINATION

Section 15.01   Termination By Owner.

(a)     Owner shall have the right to terminate this Agreement, without the payment of any fee or penalty, other than Manager's Expenses and accrued and unpaid Manager's Fees payable pursuant to this Agreement and the return of all monies advanced by the Manager, for the following reason only (each, following the provision of notice and the lapse of any applicable cure periods, an "Event of Default"):   the commission by Manager of fraud or willful misconduct in the performance of the duties of Manager under this Agreement

(b)     Owner shall have no right to terminate this Agreement unless Owner shall have given notice of any such event to Manager and such event shall continue unremedied for a period of ninety (90) days after notice, or if the breach is not susceptible of cure within ninety (90) days, such additional period as may be necessary to effect such cure provided that Manager commences such cure promptly within such sixty (60) day period and diligently prosecutes such cure to completion. In addition, but not in limitation of the foregoing, Owner shall have no right to terminate this Agreement unless Owner shall have given notice to Manager of the occurrence of the event which Owner claims is the basis for such termination, such notice to be given within 180 days after the date Owner first obtains actual knowledge of such occurrence or, if such occurrence is ongoing, the date on which Owner first obtains actual knowledge that such occurrence has ceased. Failure by Owner to give such notice within said 180-day period will constitute a waiver of the rights of Owner to terminate this Agreement by reason of the particular occurrence which would have been the basis for such termination, but not, for the avoidance of doubt, with respect to any other occurrence, and shall not limit Owner's other rights and remedies, if any, arising out of such occurrence.

(c)     IN NO EVENT SHALL MANAGER BE DEEMED IN BREACH OF ITS DUTIES HEREUNDER, OR OTHERWISE AT LAW OR IN EQUITY, SOLELY BY REASON OF (I) THE FAILURE OF THE FINANCIAL PERFORMANCE OF THE HOTEL TO MEET OWNER EXPECTATIONS OR INCOME PROJECTIONS OR OTHER MATTERS INCLUDED IN THE OPERATING PLAN, (II) THE ACTS OF HOTEL PERSONNEL, (III) THE INSTITUTION OF LITIGATION OR THE ENTRY OF JUDGMENTS AGAINST OWNER, MANAGER OR THE HOTEL WITH RESPECT TO HOTEL OPERATIONS, OR (IV) ANY OTHER ACTS OR OMISSIONS NOT OTHERWISE CONSTITUTING A BREACH OF THIS AGREEMENT, IT BEING THE INTENTION AND AGREEMENT OF THE PARTIES THAT MANAGER'S SOLE OBLIGATION HEREUNDER SHALL BE TO ACT IN CONFORMITY WITH THE STANDARD OF SKILL, CARE AND DILIGENCE REQUIRED BY THE OPERATING STANDARD, AND OTHERWISE IN CONFORMITY WITH THE EXPRESS TERMS OF THIS AGREEMENT.

Section 15.02   Termination by Manager.

(a)     Manager shall have the right to terminate this Agreement for the following reasons (each, following the provision of notice and the lapse of any applicable cure periods, an "Event of Default"): (i) a monetary or a material non-monetary breach of obligations by Owner under the terms of this Agreement;  (ii) the event of any suspension for a period in excess of thirty (30) days or withdrawal or revocation of any material license or permit required for the Manager's performance under this Agreement or the operation of the Hotel in accordance with the terms hereof, but only if such suspension, withdrawal or revocation is due to circumstances beyond Manager's control or any Force Majeure Event; (iii) Manager is materially limited in operating and maintaining the Hotel in accordance with the requirements of this

13

Agreement because of (x) governmental laws, rules or regulations hereafter enacted of which Manager so notifies Owner in writing, and/or (y) Owner's failure to fund any amounts as required pursuant to the terms of this Agreement; (v) Manager makes a reasonable determination that continued operation of the Hotel will result in an imminent danger to public health or safety; (vi) a failure by Owner to deposit in the Operating Account funds requested by Manager in accordance with the terms hereof; (vii) Owner contests in any court or proceeding Manager's ownership of any of the Manager's Materials, Manager's Design Work and Manager's Tradename; (viii) Owner conceals revenue, maintains false books and records of accounts, submits false reports or information to Manager or otherwise attempts to defraud Manager.

Section 15.03   Transition Procedures.   Upon the expiration or termination of this Agreement, Owner and Manager shall have the following rights and cause the following to occur each of which shall be a covenant of the party obligated hereunder:

(a)   Licenses and Permits.   Manager shall execute all documents and instruments reasonably necessary to transfer (if transferable) to Owner all governmental permits and licenses held by Manager necessary to operate the Hotel.

(b)   Leases and Concessions.   Manager shall assign to Owner or its nominee, and Owner and its nominee, if any, shall assume, all leases and concession agreements in effect with respect to the Hotel in Manager's name.

(c)   Books and Records.   A copy of all Books and Records for the Hotel kept by Manager shall be turned over to Owner, so as to ensure the orderly continuance of the operation of the Hotel, but the original Books and Records, may be kept by Manager.

(d)   Bookings.   Manager shall provide to Owner a complete list of all future bookings together with the pertinent information relevant to such bookings, (i) to be used by Owner solely to honor and complete such bookings and for no other purpose (including marketing) and (ii) subject to Owner's written agreement to Manager's then-current data protection terms, including its privacy, security, access, correction, deletion, data transfer, and incident notification and response requirements. Manager may remove from the Hotel any information (whether in electronic or hard copy format) pertaining to the Manager Owned Customer Lists and/or Manager Directed Customers and Owner shall have no right to retain any originals or copies of the same. In addition, Manager may retain a copy of and utilize, any other customer and guest information, preference and history relating to customers of the Hotel other than Manager Directed Customers without charge. Owner shall have no rights whatsoever to Manager's guest loyalty programs, lists or the information contained therein, or any lists of followers, guests, held in any program utilized by Manager to manage the property, as well as social media platform included but not limited to Instagram and Facebook.

Owner shall pay to Manager all accrued Manager's Fees and Manager's Expenses due through the date of termination of this Agreement as a condition to effective termination. Any and all costs incurred by the Manager and/or its Affiliates, including costs related to the time of, and costs incurred by Personnel, in connection with facilitating the foregoing transition procedures, shall be borne solely by Owner. Manager shall be entitled to take reasonable measures, including restricting access to computer servers or hard copies of files, in order to protect and prevent dissemination of any of the foregoing items set or otherwise that are the property of Manager.

Section 15.04   Termination Procedure.   Upon an election of a non-defaulting party to exercise their right to terminate this Agreement under, the non-defaulting party may, at its option, give to the defaulting party notice of intention to terminate this Agreement, which termination shall be effective after the expiration of a period of ninety (90) days following the date of such termination notice and, upon the expiration of such period, the Term shall expire on the date specified in the notice. Such termination shall be without prejudice to any right to any and all other remedies available at law or in equity subject to the terms of this Agreement.

14

## ARTICLE XVI

### NOTICES

Section 16.01   Notices.

(a)      Any notice, statement or demand required to be given under this Agreement shall be in writing and shall be deemed given or rendered if (i) delivered by hand (against a signed receipt), (ii) sent by certified or registered mail, postage prepaid, return receipt requested, (iii) sent by express or overnight courier, such as by FedEx or UPS, or (iii) sent by facsimile or email transmission, with a confirmation copy sent in a manner provided in one of subclauses (i)-(iii) above, addressed to the parties hereto at their respective addresses listed on Exhibit A.

(b)      All notices, statements, demands and requests shall be effective upon receipt or refusal of delivery.  By giving to the other party at least thirty (30) days written notice thereof, either party shall have the right from time to time and at any time during the term of this Agreement to change their respective addresses for notices, statements, demands and requests, provided such new address shall be within the United States of America. Any consent required to be given under this Agreement in writing shall be delivered in accordance with the terms of this Section 18.01.

## ARTICLE XVII

### ADJUDICATON BY JURY

Section 17.04   Adjudication. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by a Court of Law in New York, NY, before a judge and jury.

## ARTICLE XVIII

### MISCELLANEOUS

Section 18.01   Representations.

(a)      Owner, as an inducement to Manager to enter into this Agreement, hereby represents and warrants and covenants as follows: (a) this Agreement has been duly authorized, executed and delivered and constitutes the legal, valid and binding obligation of Owner enforceable in accordance with the terms hereof; (b) there is no claim, litigation, proceeding or governmental investigation pending (or, to Owner's knowledge, threatened) against Owner, the properties or business of Owner or the

Section 18.02   Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of Owner, its successors and/or permitted assigns, shall be binding upon and inure to the benefit of Manager, its successors and/or permitted assigns.

Section 18.03   Governing Law.  This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

Section 18.04   Confidentiality.    Except disclosure to obtain the advice of professionals or consultants, in connection with the financing of the Hotel from a potential lender, to investors or potential investors in the Hotel, Owner, Manager or any of their respective Affiliates, in furtherance of a permitted assignment of this Agreement, or as may be required by law or by the order of any government or tribunal, Manager, Owner, the direct and indirect beneficial owners of Owner and their respective Affiliates shall each ensure that the terms of this Agreement are not disclosed to the press or to any other third party or entity without the prior consent of Owner and Manager.  In addition, the parties agree to keep confidential

15

all information of a proprietary or confidential nature about or belonging to Owner or Manager to which such Person gains or has access by virtue of the relationship between Owner and Manager. Furthermore, Manager may not disclose any specific information regarding financial performance of the Hotel to any third party, except (i) to obtain the advice of professionals or consultants, (ii) as provided in this Agreement, (iii) on a confidential basis to potential partners and/or investors in the Manager or its Affiliates or to potential new owners of Standard branded properties, or (iv) to a professional data reporting agency in accordance with standard industry practice. The obligations set forth shall survive any termination of this Agreement for a period of two (2) years following such termination. The parties shall coordinate with one another on all public statements, whether written or oral and no matter how disseminated, regarding their contractual relationship as set forth in this Agreement, or the performance by either Owner or Manager of their respective obligations hereunder. Neither party shall have any liability under this Section if such Person uses commercially reasonable efforts to maintain the confidentiality required hereby.

Section 18.05    Standard of Liability; Fiduciary Duties; Irrevocability of Contract; Competition.

(a)    Standard of Liability. Anything contained in any other provision of this Agreement to the contrary notwithstanding, Manager shall not be liable to Owner in any respect, whether during the Term or after any expiration or termination thereof, for the actions or activities of any employees, contractors, consultants or advisors employed or retained by the Hotel, whether or not recommended by Manager or employed by Manager or Manager's Affiliates other than for the gross negligence, fraud or willful misconduct on the part of Manager's corporate personnel in the performance of its duties hereunder. In addition, if an Event of Default by Manager shall have occurred and be continuing hereunder, Owner may seek compensation for actual damages sustained by Owner by reason of such breach, provided, however, that Owner shall not have the right to seek such damages from Manager for Manager's negligent (but not, for the avoidance of doubt, grossly negligent) conduct of its supervisory duties and in no event shall Manager be liable for punitive, exemplary, statutory or treble damages or any incidental or consequential damages with respect to any breach of a material obligation under this Agreement.

(b)    Competition and Corporate Opportunities. Except as provided in subsection (d) below, none of Manager, its Affiliates, nor any of their respective partners, principals, directors, officers, members, managers and employees, shall have any duty to refrain from engaging, directly or indirectly, in (i) the same or similar business activities or lines of business as the Owner or (ii) the business of managing hotels other than the Hotel. In the event that Manager, its Affiliate or any of their respective partners, principals, directors, officers, members, managers and employees, acquire knowledge of a potential transaction or matter which may be a corporate opportunity for any of Owner or Owner's Affiliates (i) neither Owner nor any Affiliate of Owner shall have any expectancy in such corporate opportunity, (ii) such Persons shall not have any duty to communicate or offer such corporate opportunity to Owner or any Affiliate of Owner and (C) such Persons may pursue or acquire such corporate opportunity or direct such corporate opportunity to another Person, including to Manager or any Affiliate of Manager.

Section 18.06    Entire Agreement. This Agreement constitutes the entire Agreement between the parties relating to the subject matter hereof, superseding all prior agreements or undertakings, oral or written. Owner and Manager hereby represent each to the other, that in entering into this Agreement neither has relied on any projection of earnings, statements as to possibility of future success or other similar matters.

Section 18.07    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Such executed counterparts may be delivered by facsimile or electronic mail (via portable document format (pdf)) which, upon transmission to the other Party, shall have the same force and effect as delivery of the original signed counterpart.

16

Section 18.08   Force Majeure.   A party will not be liable to the other party for its inability or failure to perform, or delay in performing, any of its obligations under this Agreement caused by a Force Majeure Event provided that the party affected takes all reasonable steps to reduce the effect of such Force Majeure Event. If a party is unable to perform, in whole or in part, its obligations under this Agreement by reason of a Force Majeure Event, then such party shall be relieved of those obligations to the extent such party is so unable to perform them and such inability to perform so caused shall not make such party liable to the other.

[*Signature page follows*]

IN WITNESS WHEREOF, Owner and Manager have executed this Management and Services Agreement as of the day and year first above written.

**OWNER:**

**96 WYTHE ACQUISITION LLC**

By:  96 W Development LLC, its sole member

By:  96 Wythe Holdings LLC, its Manager

By: _____

Name:  Toby Moskovits
Title:  Authorized Signatory

**MANAGER:**

**WILLIAMSBURG HOTEL BK LLC**

By: _____

Name: Yechial Michael Lichtenstein,
Title:  Authorized Signatory

# Exhibit A

96 Wythe Acquisition LLC,
96 Wythe Avenue
Brooklyn, New York 11249
Attn: Toby Moskovits

The Williamsburg Hotel BK, LLC
1274 49TH Street, Suite 184
Brooklyn, New York 11219
Attn: Yechial Michael Lichtenstein

EXHIBIT E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                                    Chapter 11

      96 Wythe Acquisition LLC                     Case no.  21-22108 (RDD)

             Debtor.

--------------------------------------------------------x

## NOTICE OF HEARING

       PLEASE TAKE NOTICE, that a telephonic or video hearing will be held on September 8, 2021 at 10:00 a.m. (the "Hearing") before the Honorable Robert D. Drain, through www.court-solutions.com or zoom.gov to consider the annexed application ("Application") of the above captioned debtor (the "Debtor") for the entry of an order under sections 105(a), 345, and 363(c)(1), of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the Debtor perform intercompany transactions postpetition.

       PLEASE TAKE FURTHER NOTICE, that objections, if any, must be in writing, served upon the undersigned proposed Debtor's counsel, and filed with the Clerk of the Bankruptcy Court, with a courtesy copy to the Honorable Robert D. Drain's chambers, so as to be received at least seven (7) days before the Hearing date.

Dated: New York, New York
      August 10, 2021

                              BACKENROTH FRANKEL & KRINSKY, LLP

              By:    s/ Mark Frankel
                              800 Third Avenue
                              New York, New York  10022
                              (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                    Chapter 11

      96 Wythe Acquisition LLC                  Case no.  21-22108 (RDD)

               Debtor.
---------------------------------------------------------x

## MOTION TO AUTHORIZE INTERCOMPANY TRANSFERS

      96 Wythe Acquisition LLC (the "Debtor"), as and for its motion for an order

under sections 105(a), 345, 363(c)(1), and 364(a) of chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and rule 4001-2 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Rules") authorizing continued intercompany transfers

from the Debtor to Williamsburg Hotel BK LLC (the "Management Company"), respectfully

states:

## BACKGROUND

      1.      On February 23, 2021, the Debtor filed a Chapter 11 petition under Title

11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

      2.      The Debtor owns the Williamsburg Hotel (the "Hotel") property located at

96 Wythe Avenue, Brooklyn, New York, (the "Property"). The Property is a thirteen story, 160

room hotel with a rooftop pool, a bar and restaurant and a separate, elevated and enclosed bar

that sits above the pool referred to as the Water Tower Bar.  The Hotel is managed by

Williamsburg Hotel BK LLC (the "Management Company"), a non-debtor affiliate, under the

management agreement annexed hereto as Exhibit A ("Management Agreement").  The Management Company has approximately 80 employees servicing the Hotel.

3.      On December 13, 2017, the Debtor borrowed $68 million (the "Loan") from Benefit Street Operating Partnership, L.P. under a loan agreement ("Loan Agreement") to construct the Hotel.  The Loan was subsequently assigned to BSPRT 2018-FL3 Issuer, Ltd. (the "Lender" or the "Mortgagee").

4.      Prior to the Petition Date, in the ordinary course of the Debtor's business, the Debtor and the Management Company employed a cash management system to implement the Management Agreement, and collect, transfer and disburse funds generated by the Hotel. This enabled the Debtor to limit liability on vendor agreements and employee and client related obligations and claims.

5.      The Debtor presently maintains DIP accounts at TD Bank, the last four digits of which are 0935 and 0927 (the "DIP Accounts").  All Debtor/Hotel income is paid into the DIP Account, the last four digits of which are 0935.

6.      To pay Management Company creditors for obligations relating to the Hotel, the Management  Company maintains general disbursement accounts at TD Bank, the last four digits of which are 1596 (the "Disbursement Account"), a payroll account at TD Bank, the last four digits of which are 1603 (the "Payroll Account"), and a sales tax reserve account at TD Bank, the last four digits of which are 1611 (the "Sales Tax Reserve Account").

7.      In summary, virtually all of the Williamsburg Hotel operations are performed by the Management Company under the Management Agreement, and the Management Company's expenses are paid directly out of the Management Company's

2

Disbursement Account, Payroll Account, or Sales Tax Reserve account. The Management

Company opened new accounts post-petition dedicated solely to post-petition disbursements.

8.      To the best of the Debtor's knowledge, TD Bank is insured by the Federal

Deposit Insurance Corporation (the "FDIC") and, therefore, complies with section 345(b) of the

Bankruptcy Code. To the best of the Debtor's knowledge, TD Bank is also a United States

Trustee authorized bank depository.

### RELIEF REQUESTED HEREIN

9.      By this application, the Debtor requests that the Court enter an order

authorizing the Debtor and the Management Company to maintain, service, and administer the

Bank Accounts, without interruption and in the ordinary course of business, in accordance with

the U.S. Trustee Guidelines.

*10.*      Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use

property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C.§

363(c)(1). Thus, bankruptcy courts have routinely permitted chapter 11 debtors to continue to

use their existing cash management systems, generally treating requests for such relief as a

relatively "simple matter." *E.g., In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D.

Ohio 1987); *see also In re Columbia Gas Sys., Inc.*, 136 B.R. at 934 (Bankr. D. Del. 1992), *aff'd

in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).

11.      Here, the Management Agreement reduces expenses and exposure by

enabling the Management Company to limit the Debtor's liability from vendor disputes and

employee and client related obligations and claims.

3

12.     Post-petition adherence to the Management Agreement provides a "business as usual" atmosphere, facilitates the Debtor's stabilization of its business operations, and assists the Debtor in its efforts to reorganize and preserve value.

13.     Conversely, aborting the Management Agreement and operating the Williamsburg Hotel through the Debtor will disrupt relationships with vendors and other key counterparties, all of whom are accustomed to working with the Management Company under the Cash Management System. Furthermore, it will expose the Debtor to a range of potential new liabilities related to the operation of the business. This includes executing new vendor and employment contracts as well as event and sales agreements, thereby subjecting the Debtor and the underlying real estate to all future obligations and liabilities thereof.

14.     Under the Cash Management System, transfers are made between the Debtor and Management Company Accounts that are necessary to fund operations of the Hotel and the Management Company. The Debtor and the Management Company maintain, and will continue to maintain, current records of all transfers and can readily ascertain, trace, and account for all intercompany transactions.  All Debtor and Management Company Bank Statements are included as exhibits to the Debtor's monthly operating reports.

15.     Annexed hereto as Exhibit B is the June operating report.  The transfers from Debtor account 0935 to the Management Company are highlighted on pages 16 to 32 in blue.  The transfers into Management Company accounts 1596, 1603 and 1611 are highlighted in yellow.  Each outgoing transfer from the Debtor account ending in 0935 has a corresponding incoming transfer into one of the management company accounts ending in 1596, 1603 or 1611.

4

If the Debtor discontinued the transfer of funds from the DIP Account to the Management

Company Disbursement, Payroll, and Sales Tax Reserve Accounts, the Cash Management

System and related administrative controls would be disrupted.  The Debtor thus submits that the

continuation of the intercompany funding is in the best interests of the Debtor's estate and

creditors.

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order

granting the relief sought herein, and granting such other, further and different relief as this

Court may deem just and proper.

Dated: New York, New York
      August 10, 2021


**BACKENROTH FRANKEL & KRINSKY, LLP**
**Attorneys for Debtor**


By:   <u>s/Mark Frankel</u>
      800 Third Avenue
      New York, New York 10022
      (212) 593-1100