DAVIDOFF HUTCHER & CITRON LLP  　　　　HEARING DATE: 9/10/2021
*Attorneys for The Williamsburg Hotel BK LLC*  　HEARING TIME: 10:00 a.m.
120 Bloomingdale Road
White Plains, New York 10601
(914) 381-7400
JAMES B. GLUCKSMAN, ESQ.
jbg@dhclegal.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

96 WYTHE ACQUISITION LLC, 　　　　　　　　Chapter 11
　　　　　　　　　　　　　　　　　　　　　　　Case No. 21-22108 (RDD)

　　　　　　　　　Debtor.
-----------------------------------------------------------------X

# NOTICE OF MOTION OF WILLIAMSBURG HOTEL BK LLC TO QUASH DEPOSITION AND <u>DOCUMENT SUPOENAS</u>

**PLEASE TAKE NOTICE,** that The Williamsburg Hotel BK LLC ("Williamsburg") by its attorneys Davidoff Hutcher & Citron, LLP, , on the Motion of Williamsburg and the Declaration of Michael Lichtenstein dated August 20, 2021, will move this court, before the Honorable Robert D. Drain, United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601 on the 10th day of September 2021 at 10:10 a.m. in the forenoon of that day or as soon thereafter as counsel can be heard for the entry of an Order: 1) pursuant to Fed.R.Civ.P. Rule 45(d)(3)(A)(iv) as incorporated by Fed.R.Bankr.P. 9016, quashing the Deposition Subpoena, a copy of which is annexed to the Motion as Exhibit "1" pursuant to Fed.R.Civ.P. Rule 45(d)(2) as incorporated by Fed.R.Bankr.P. 9016, quashing the Requests for Production, a copy of which is annexed to the Motion as Exhibit "2"; and 3) such other and further relief as may be just under the circumstances.

PLEASE TAKE FURTHER NOTICE that any opposition to the Motion shall be in writing and shall conform to the Federal Rules of Bankruptcy Procedure and Local Rules of the Bankruptcy Court, shall set forth the name of the objectant, the basis for the objection, and the specific grounds therefore, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242, as amended, (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disc or compact disc, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-242, and shall further be served upon Davidoff Hutcher & Citron LLP, White Plains, New York 10605, so as to be actually received not less than seven (7) days prior to the hearing date.

Dated:   White Plains, New York
        August 21, 2021

    Davidoff Hutcher & Cit
    Attorney for Anthony Bartolomeo
    120 Bloomingdale Road
    White Plains, NY  10605
    (914) 381-7400

        /s/ Robert L. Rattet
By:_____
    ROBERT L. RATTET

DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for The Williamsburg Hotel BK LLC*
120 Bloomingdale Road
White Plains, New York 10601
(914) 381-7400
JAMES B. GLUCKSMAN, ESQ.
jbg@dhclegal.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

96 WYTHE ACQUISITION LLC,                             Chapter 11
                                                       Case No. 21-22108 (RDD)
                        Debtor.
-------------------------------------------------------------------X

## MOTION OF WILLIAMSBURG HOTEL BK LLC TO QUASH DEPOSITION AND DOCUMENT SUPOENAS

The Williamsburg Hotel BK LLC ("Williamsburg"), by its undersigned attorneys, Davidoff Hutcher & Citron LLP, respectfully moves for the entry of an Order: 1) pursuant to Fed.R.Civ.P. Rule 45(d)(3) as incorporated by Fed.R.Bankr.P. 9016, quashing the Document Production Subpoena, a copy of which is annexed to the declaration of Michael Lichtenberg (the "Lichtenberg Declaration") as Exhibit "1"; and 2) pursuant to Fed.R.Civ.P. Rule 45(d)(2) as incorporated by Fed.R.Bankr.P. 9016, quashing the Deposition Subpoena, a copy of which is annexed to the Lichtenberg Declaration as Exhibit "2" (Exhibits "1" and "2" collectively, where appropriate, together with a non-party subpoena for production of documents directed to Live Oak Banking Company for documents related to Williamsburg, the "Subpoenas") and 3) such other and further relief as may be just under the circumstances.

### PRELIMINARY STATEMENT

1. Williamsburg seeks to quash the subpoenas submitted by Benefit Street Operating

1

Partnership, L.P. ("Benefit Street") because the subpoenas seek information that is either irrelevant or that has already been produced over the course of litigation. Williamsburg has made proper use of its PPP proceeds, the Debtor is not entitled to any of the PPP proceeds as it was a loan provided to Williamsburg for its own purposes, and no such further information should be provided, other than information relating to Williamsburg's transactions with 96 Wythe Acquisitions LLC. (the "Debtor").

## BACKGROUND

2. The factual background is set forth in greater detail in the accompanying Lichtenstein Declaration.

3. On February 23, 2021, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

4. The Debtor owns the Williamsburg Hotel (the "Hotel") property located at 96 Wythe Avenue, Brooklyn, New York, (the "Property"). The Property is a thirteen story, 160 room hotel with a rooftop pool, a bar and restaurant and a separate, elevated and enclosed bar that sits above the pool referred to as the Water Tower Bar. The Hotel is managed by Williamsburg, a non-debtor affiliate. *See* Lichtenstein Decl. ¶ 3. The Management Company has more than 80 employees servicing the Hotel.

5. On December 13, 2017, the Debtor borrowed $68 million (the "Loan") from Benefit Street under a loan agreement ("Loan Agreement") to construct the Hotel. The Loan was subsequently assigned to BSPRT 2018-FL3 Issuer, Ltd. (the "Lender" or the "Mortgagee").

6. Prior to the filing of the Chapter 11 petition, the Debtor and Benefit Street were engaged in literally years of litigation concerning the foreclosure of the Debtor's assets. That litigation concerned, inter alia, the manufacturing of defaults by Benefit Street, first, in order to

2

enable Benefit Street not to lower the interest rate by 0.5% as required by the Loan Agreement, and then to enable Benefit Street to foreclose, rather than be paid under the terms of the Loan Agreement.

7. During that litigation, and thereafter, upon information and belief, virtually all of the documents sought have been produced already, some on multiple occasions. The following documents have been provided to Benefit Street:

From March 2020 through February 2021:

- General ledgers by month
- Bank account statements for the Debtor and the management company
- Available monthly STR reports
- Monthly profit & loss statements
- Quarterly financials provided to the receiver
- Weekly expense approval emails
- Weekly payroll reports
- Weekly financial reports
- Credit card statements
- Receiver final accounting
- Emails to and from the receiver

From March 2021 (after the bankruptcy filing):

- Bank account statements for the Debtor and the management company
- General ledgers by month
- Monthly profit & loss statements
- Balance sheets for each month's end
- Monthly STR reports
- Accounts payable reports
- Accounts receivable reports
- Prepaid revenue reports
- Forward bookings reports
- Cash budgets and actual to budget variance reports
- Payroll reports with position-by-position detail
- Salaried Employees Position Changes
- Credit card statements upon request

8. Benefit Street has embarked on a course of harassment, seeking, repetitively, the

3

same documents that it has already provided, presumably for the litigation purposes of uncovering inconstancies in the production. See Lichtenstein Decl. ¶ 7.

9. On July 28, 2021. Benefit Street filed a motion (the "Motion") to seek further discovery from Williamsburg and Live Oak Banking Company ("Live OakBank") regarding the facts surrounding two government assistance loans that the Hotel Manager obtained in 2020 — a $1,438,000 Paycheck Protection Program ("PPP") loan that was funded in April 2020 and a $150,000 Economic Injury Disaster Loan ("EIDL") that was funded in July 2020.

10. Given the foregoing, it is Williamsburg's position that the information sought is improper, sought to further advance discovery already undertaken in the state court action and the bankruptcy contested matters, is irrelevant to the above captioned proceeding, and has already been produced on multiple occasions. Further, the requests relate to pre-petition loans provided to Williamsburg, a non-debtor third party, which resulted in obligations as between the Small Business Administration and Williamsburg, which are irrelevant to the instant debtor, but only relevant to two non-debtor third parties (Williamsburg and the SBA). Further, as discussed below, Williamsburg is making proper use of its PPP proceeds and no such further information should be provided, other than relating to Williamsburg's transactions with the Debtor.

## JURISDICTION

11. The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

12. As a threshold matter, it is well established hat Rule 2004 examinations are not unlimited. See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("([T]he

4

availability of Rule 2004 as a discovery tool is not unlimited.)") (internal citations omitted); In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (the scope of a 2004 examination is "not without its limits.").

13. In particular, a Rule 2004 examination cannot be unduly burdensome, vexatious, oppressive or duplicative. In re Texaco Inc., 79 B.R. 551, 553, 556 (Bankr. D.N.Y. 1987) (denying Rule 2004 motion in part and reducing range of 2004 examination to a "good faith inquiry"); 9 Collier on Bankruptcy §2004.02[2] ("oppressive and burdensome" 2004 request is proper grounds to deny request). Here, as stated above, and in the annexed Lichtenstein declaration, virtually all of the documents, including financial statements during the pre-petition period subject to the request have been provided on multiple occasions.

14. A party seeking Rule 2004 discovery bears "the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Bankruptcy Court." *In re SunEdison, Inc.*, 562 B.R. at 249; see also *In re AOG Entm't, Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016); *Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*), No. 09-11893, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014). Accordingly, on this Motion, Benefit Street "bears the burden of proving that good cause exists for taking the requested discovery." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985); see also *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (holding that the party requesting Rule 2004 examination "has the burden of showing good cause for the examination which it seeks"). "Generally, this requires the proposed examiner to show that the examination is necessary to establish a claim or that the denial of such a request would cause the examiner undue hardship or injustice." *In re Underwood*, 457 B.R. 635, 643 (Bankr. S.D. Ohio 2011).

15. Benefit Street has failed to meet its burden, and accordingly, the motion should be

5

denied.

16. By its terms, Rule 2004 permits discovery only when it regards "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the *debtor's* estate, or to the *debtor's* right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added). The underlying purpose of Rule 2004 is to "allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate." *Keene Corp. v. Johns–Manville Corp.* (*In re Johns–Manville Corp.*), 42 B.R. 362, 364 (S.D.N.Y. 1984). "A 2004 examination should only be used for the legitimate purpose of obtaining information relating to 'the acts, conduct, or property or to the liabilities and financial condition of the Debtor.'" *See In re Coffee Cupboard*, 128 B.R. at 514.

17. The ostensible purpose of this discovery relates to transactions between two non-debtor third parties, Williamsburg and the SBA. Such has nothing to do with the instant Debtor, who is neither an obligee on such loans, or otherwise entitled to proceeds of such. To conclude otherwise; i.e. that the Debtor is entitled to loan proceeds to which it is not an obligee - -would in effect mean that the SBA is a de facto creditor in the bankruptcy case - -clearly an absurd result. Accordingly, any issues having to do with Williamsburg obtaining loans from the SBA, its use of same, and repayment and/or forgiveness of such liability, is strictly a matter between Williamsburg and the SBA. Here, the discovery request focuses on two loans, the $1,438,000 Paycheck Protection Program ("PPP") loan that was funded in April 2020 and a $150,000 Economic Injury Disaster Loan ("EIDL") that was funded in July 2020. These are prepetition loans between non-debtor third parties. This, on its face, has no relationship to the proper use of a Fed.R.Bankr.P. Rule 2004 examination. FRPB 2004(b) states as follows:  FRPB 2004(b) states as follows:

>   (b) Scope of Examination. The examination of an entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

18. The purpose of Fed.R.Bankr.P. Rule 2004 is not to allow a free-ranging assault upon entities related to the Debtor.

19. Benefit Street is also not entitled to discovery regarding the PPP loan. The purpose of the PPP program is to help companies survive during the COVID pandemic and the resulting cash crunch. For that purpose, the government provided funding to companies to help them. The PPP loan did not bar companies from getting paid for services or from being reimbursed by other entities including, in this case, the Debtor.

20. The Williamsburg Hotel also applied for a PPP loan, and used the moneys in a manner permitted by applicable law. The fact that Benefit Street seeks to make certain inferences, for litigation purposes, is not relevant to this proceeding.

21. Benefit Street is seeking, at most, to vindicate the rights of the IRS with regard to the use of PPP loan proceeds.

22. It is elementary that the IRS party is the only party, if any, to complain. The Court, in Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) stated:

> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, see *id.,* at 756, 104 S.Ct., at 3327; *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972);[1] and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " *Whitmore, supra,* 495 U.S., at 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare *561 Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.,* at 38, 43, 96 S.Ct., at 1924, 1926.
>
> The party invoking federal jurisdiction bears the burden of establishing these elements. See *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990); *Warth, supra,* 422 U.S., at 508, 95 S.Ct., at 2210.
>
> Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)

23. Benefit Street cannot and does not allege any particularized injury entitling it to intrusive discovery. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." Spokeo, Inc. v. Robins, 578 U.S. 856, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016)

24. While the right to 2004 discovery is broad, it is not unlimited. It may not be used for harassment. See, e.g. Martin v. Schaap Moving Sys., Inc., 152 F.3d 919 (2d Cir. 1998) ("There are, however, limits to the scope of Rule 2004 examinations. Significantly, courts may "limit, condition or even forbid the use of Rule 2004" where it is used to "abuse or harass[ ]....."")

25. Benefit Street is an officious intermeddler for asserting the rights of the IRS with

8

regard to the EIDL and PPP loans.

26. At a minimum, the Court should limit any Rule 2004 discovery to the transactions with the Debtor.

27. Lastly, the request is deficient because it does not provide that Lender will bear any of the costs involved in the requested production. See, Walt Disney, 2019 N.Y. Slip Op. 30181(U) at *12 (quoting Tener v. Cremer, 89 A.D. 3d 75, 82 (1st Dep't 2011)) (holding that requesting party "shall be responsible for all reasonable production expenses incurred by [responding party] in responding to the subpoena, which may include attorneys' fees and/or data-vendor costs."); see also, Finkelman v. Klaus, 2007 N.Y. Slip Op. 52331(U) *5 (Sup. Ct. Nassau Co. Nov. 28, 2007) (directing payment of costs and finding "that a 'non-party can demand reimbursement of reasonable production expenses, mirroring CPLR 3111, and may withhold such production until the expenses are paid or the issue is otherwise resolved by the Court.'").

## **CONCLUSION**

28. For the reasons set forth above, the Motion should be denied or appropriately limited.

Dated: August 22, 2021
White Plains, New York

*/s/ James B. Glucksman*
James B. Glucksman
DAVIDOFF HUTCHER & CITRON LLP
*Attorney for The Williamsburg Hotel BK LLC*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 381 7400