UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                                                Chapter 11

       96 Wythe Acquisition LLC                  Case no.  21-22108

                  Debtor.

----------------------------------------------------------x

## NOTICE OF PRESENTMENT

     PLEASE TAKE NOTICE, PLEASE TAKE NOTICE under Bankruptcy Rules 1007 and the Local Rules of this Court, the undersigned will present the attached proposed order to the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601−5008 for signature on September 20, 2021 at 10:00 a.m.

     PLEASE TAKE FURTHER NOTICE that unless a written objection to the proposed order, with proof of service, is filed with the Clerk of the Court at least three days before the date of presentment, there will not be a hearing and the order may be signed.

     PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed, a hearing will be held on a date at time to be announced. The moving and objecting parties are required to attend the hearing, and failure to attend in person or by counsel may result in relief being granted or denied upon default.

     PLEASE TAKE FURTHER NOTICE that the ECF docket number to which the filing relates shall be included in the upper right-hand corner of the caption of all objections.

Dated: New York, New York
       August 27, 2021

                               BACKENROTH FRANKEL & KRINSKY, LLP

                 By:    s/ Mark Frankel
                         800 Third Avenue
                         New York, New York  10022
                         (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                          Chapter 11

     96 Wythe Acquisition LLC                        Case no.  21-22108

                 Debtor.
---------------------------------------------------------x

## APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF GETZLER HENRICH & ASSOCIATES LLC AND HILCO REAL ESTATE LLC AS FINANCIAL ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION, EFFECTIVE AS OF AUGUST 19, 2021

     96 Wythe Acquisition LLC, the debtor and debtor-in-possession in the above-captioned case ("Wythe," or the "Debtor"), as and for its application to retain Getzler Henrich & Associates LLC and Hilco Real Estate, LLC ("Getzler Henrich") to provide restructuring services, respectfully represents as follows:

## BACKGROUND

     1.     On February 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  The Debtor has continued its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or creditors' committee has been appointed.

     2.     The Debtor has determined that in order to successfully effectuate a reorganization, it requires the services of a financial advisor with bankruptcy and restructuring experience.

## JURISDICTION

     3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

       4.     The Debtor seeks to engage Getzler Henrich under an engagement letter, a

copy of which annexed is hereto as Exhibit B (the "Engagement Letter").  Getzler Henrich will

assume the role of financial advisor to assist the Debtor in determining its restructuring

alternatives and developing a Plan of Reorganization, subject to the oversight, guidance, control

and direction of Wythe's members.  The Debtor shall apply to the Bankruptcy Court for

appropriate modification of the order approving this engagement in the event the scope of the

engagement is materially modified.

### **RELIEF REQUESTED**

       5.     By this Application and pursuant to section 327(a) and 328(a) of the

Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, the

Debtor seeks entry of an order, substantially in the form attached hereto as Exhibit C (the

"Order"), authorizing and approving the retention and employment of Getzler Henrich as the

Debtor's financial advisor effective as of August 19, 2021 in accordance with the terms and

conditions set forth in that Engagement Letter between the Debtor and Getzler Henrich dated as

of August19, 2021, a copy of which is attached hereto as Exhibit A. The Debtors further rely on

the Declaration of Mark Podgainy in Support of the Debtor's Application for Entry of an Order

Authorizing the Employment and Retention of Getzler Henrich LLC and Hilco Real Estate LLC

as Financial Advisor for the Debtor and Debtor in Possession, Effective as of August 19,

2021(the "Podgainy Declaration"), a true and complete copy of which is attached hereto as

Exhibit A and which is incorporated herein by reference.

2

## GETZLER HENRICH'S QUALIFICATIONS

6.      Getzler Henrich is one of the oldest and most respected names in middle

market corporate restructuring, assisting companies around the world with an approach that

emphasizes rapid, pragmatic decision making and implementation.  Over the past fifty years,

Getzler Henrich has developed a strong track record, assisting both underperforming and healthy

companies in the middle market.  Getzler Henrich's engagements have spanned across a broad

spectrum of industries.  Getzler Henrich's qualifications, including a description of its staffing

and approach in providing services, are more fully set forth in the annexed Podgainy Declaration.

7.      Getzler Henrich has extensive experience in providing restructuring

consulting services in reorganization proceedings and has an excellent reputation for the services

it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United

States.  The compensation arrangement provided for in this Motion and the Agreement is

consistent with and typical of arrangements entered into by Getzler Henrich and other

restructuring consulting firms with respect to rendering similar services for clients such as the

Debtor.  In summary, Getzler Henrich is well qualified and able to represent the Debtors in a cost

effective, efficient, and timely manner, subject to the jurisdiction and supervision of the Court.

8.      Hilco Real Estate, LLC ("HRE"), a Hilco Global company, is a real estate

services firm dedicated to providing valuation, repositioning and restructuring services for a

company's real estate assets, both owned and leased. Unlike other property resources with

disposition expertise, HRE professionals are experienced attorneys, accountants, advisors,

owners, developers and executive level consultants as to real property. With a singular focus on

3

restructuring services for our client's real property commitments, HRE's assignments always require the optimization of value in the shortest time frame possible.

## SCOPE OF SERVICES

9.     Pursuant to the Engagement Letter,  Getzler Henrich has agreed to provide the Debtor with such financial advisory and consulting services as Getzler Henrich and the Debtor deem appropriate and feasible in order to advise the Debtor in the course of this Chapter 11 case in connection with the potential restructuring, or financing transactions, including but not limited to  the following:

   a)  Assist with the preparation and analysis of restructuring alternatives;

   b)  Assist in the development and negotiation of a Plan of Reorganization;

   c)  Assist with the analysis and reconciliation of claims against the Debtor, as appropriate and required;

   d)  Source alternative or additional debt capital, as appropriate and required;

   e)  Participate in Court hearings and, if necessary, provide testimony in connection with any hearings before the Court; and

   f)  Perform such other tasks as appropriate as may reasonably be requested by the Debtor's management or counsel.

10.     With respect to all such efforts outlined above, Getzler Henrich will interface with and report in a timely manner to Debtor's management any decisions to be considered, furnish to the extent possible all financial or other information requested by or on behalf of management, and attend meetings and report progress on restructuring initiatives and actions instructed by management.  Getzler Henrich will work with other professionals retained by the Debtors to ensure that work is performed efficiently and without duplication of effort.

4

11.     Should the Debtor request Getzler Henrich perform additional services not contemplated by the Engagement Letter, the Debtor and Getzler Henrich shall mutually agree, in advance, upon such services and fees for those services in writing. In the event the additional services require an amendment to the Engagement Letter, the amendment will be subject to this Court's approval upon proper application by the Debtor.

## GETZLER HENRICH'S DISINTERSTEDNESS

12.     To the best of the Debtor's knowledge, information, and belief, other than as set forth in the Podgainy Declaration filed herewith, Getzler Henrich and Podgainy: (a) have no connection with the Debtor, its creditors, other parties in interest, the attorneys or accountants of any of the foregoing, the Office of the United States Trustee for the Southern and Eastern Districts of New York (the "U.S. Trustee"), or any person employed in the Office of the United States Trustee; and (b) holds no interest adverse to the Debtor's estate.

13.     Getzler Henrich has agreed not to share with any person or firm, the compensation to be paid for services provided in connection with this Chapter 11 case.  As set forth in the Podgainy Declaration, there is no relationship between Getzler Henrich or Mr. Podgainy with the Debtor, its creditors, or other parties in interest known to Getzler Henrich. Based upon such disclosures, the Debtor submits that Getzler Henrich is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.  If any new material facts or relationships are discovered or arise, Getzler Henrich will provide the Court with a supplemental declaration disclosing, among other things, any new potential conflicts between the Debtor, Mr. Podgainy, or other significant parties in interest.

5

## PROFESSIONAL COMPENSATION

14.      As set forth in the Podgainy Declaration, the Debtor understands and has

agreed that Getzler Henrich will apply to this Court for allowance of compensation and

reimbursement of expenses in connection with services rendered in this Chapter 11 case in

accordance with the terms of the Engagement Letter, subject to this Court's approval, and in

compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, and any other applicable procedures and orders of this Court.

15.      Financial advisory fees ("Consulting Fees") will be billed on an hourly

basis; our standard hourly rates are as follows:

| | |
|---|---|
| Principal / Managing Director | $575 - $725 (Mr. Podgainy's rate is $625) |
| Director / Specialists | $475 - $695 |
| Associate Professionals | $175 - $475 |

16.      In addition, should alternative or additional capital be required, Getzler

Henrich shall have the right – on a non-exclusive basis - to source such capital, whether debt or

equity. Any outreach with regards to the placement of debt or equity, shall require that the

Debtor approve any such lender or investor outreach in advance. In the event that the Debtor

closes a financing with a financing source introduced by Getzler Henrich, Getzler Henrich shall

be entitled to a success fee ("Success Fee") based on the consummation of such transaction with

an interested party ("Interested Party") introduced to the Debtor by Getzler Henrich, payable in

cash, at the time of the closing of such transaction (a "Financing Transaction").  The Success Fee

is based on the aggregate commitments provided by a lender(s) and the aggregate equity

contributed by an investor(s) (the "Total Consideration"), introduced by Getzler Henrich to the

6

Debtor. The Success Fee for the closing of a Financing Transaction shall be .75% of the Total

Consideration received by the Company from an Interested Party. In the event that a third-party

investment banker or broker sources this financing, Getzler Henrich shall not be due any success

fee and shall only be paid their hourly Consulting Fees.

17.     Getzler Henrich is also entitled to a success fee ("Success Fee") if a

Financing Transaction closes within a twelve-month period from the date of the Company's

signing of this agreement (the "Initial Period"), if Getzler Henrich procured a term sheet at the

time of its introduction.  Getzler Henrich is also be entitled to the Success Fee if a Financing

Transaction closes with an Interested Party within twelve months of the end of the Initial Period

where Getzler Henrich procured a term sheet from such Interested Party (whether or not Getzler

Henrich remained in contact with the Interested Party).

18.     In addition to compensation for professional services rendered by Getzler

Henrich, Getzler Henrich is entitled to seek prompt reimbursement of reasonable out-of-pocket

expenses incurred in connection with the performance of its services under the Engagement

Letter, including, but not limited to air travel, meals, local transportation, lodging, parking,

telephone calls, delivery services, and photocopying.

19.     The Engagement Letter provides for a retainer to Getzler Henrich in the

amount of $40,000, which will be applied to the final bill.  Any amount of this retainer remaining

after application to unpaid fees will be returned to the Debtor.

7

20.     Getzler Henrich shall apply any remaining amounts of its retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor's cash flow.

21.     The Debtor believes that Getzler Henrich's fees and compensation, as set forth herein, are reasonable and justified under the circumstances.

22.     Getzler Henrich's decision to accept the proposed engagement to provide restructuring services to the Debtor is contingent upon its ability to be retained in accordance with the terms and conditions of the Engagement Letter.  Getzler Henrich has indicated that it understands and accepts the terms of the Engagement Letter and that it must be approved by the Court.

23.     No prior application has been made for the relief requested herein.

WHEREFORE, the Debtor respectfully requests that this Court enter the prefixed order and grant such other and further relief as it deems just and proper.

Dated: New York, New York
        August 27, 2021

                                    BACKENROTH FRANKEL & KRINSKY, LLP
                                    Attorneys for the Debtor


                           By:     s/Mark Frankel
                                    800 Third Avenue
                                    New York, New York 10022
                                    (212) 593-1100

8

**EXHIBIT "A"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re                                                    **Chapter 11**
      **96 Wythe Acquisition LLC**          **Case no.  21-22108**
                    **Debtor.**

-----------------------------------------------------------x

**DECLARATION OF SARAH BAKER IN SUPPORT OF DEBTOR'S APPLICATON**
**FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF**
**GETZLER HENRICH & ASSOCIATES LLC AND HILCO REAL ESTATE LLC AS**
**FINANCIAL ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION**,
**<u>EFFECTIVE AS OF AUGUST 19, 2021</u>**

I, Sarah Baker, hereby declare under penalty of perjury as follows:

1.      I am Vice President and Assistant General Counsel of Hilco Trading, LLC, the

parent company and managing member of Hilco Real Estate, LLC ("Hilco").  I submit this

declaration (this "**Declaration**") in support of the *Debtor's Application For Entry of an Order*

*Authorizing Employment and Retention of Getzler Henrich & Associates LLC and Hilco Real*

*Estate LLC as Financial Advisor for the Debtor and Debtor In Possession, Effective As of August*

*19, 2021*  (the "**Application**").[1]  I am authorized to make this Declaration on behalf of Hilco and,

as set forth below, on behalf of Hilco's parent, affiliates and subsidiaries defined below as Hilco

Global.  Unless otherwise stated in this Declaration, I have personal knowledge of the facts set

forth herein.

2.      The facts set forth in my Declaration are based upon my personal knowledge,

information, and belief, and upon records kept in the ordinary course of business that were

---

[1]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the
Application.

reviewed by me or other employees of Hilco or Hilco Global, under my supervision and direction. If called as a witness, I would testify to the facts set forth in this Declaration.

## Hilco's Qualifications

1.      I believe that Hilco and the professionals that it employs are uniquely qualified to advise the Debtor in the matters for which Hilco is proposed to be employed in a cost-effective, efficient, and expert manner.  Hilco is a diversified real estate consulting and advisory firm that evaluates, restructures, and facilitates the acquisition and disposition of various types of real estate assets both nationally and internationally.  The Debtors seek to retain Hilco in particular because of Hilco's substantial experience in real estate restructuring maters.  Hilco has an excellent reputation as a leader in the real estate field and has an experienced team of real estate brokers, attorneys and analysts.

## Engagement of Financial Advisor

2.      Under the Engagement Letter, Getzler Henrich, in conjunction with Hilco Real Estate LLC (collectively, the "**Financial Advisor**"), will assume the role of financial advisor to assist the Debtor in determining its restructuring alternatives and developing a Plan of Reorganization, subject to the oversight, guidance, control and direction of the Debtor's members. The Debtor shall apply to the Bankruptcy Court for appropriate modification of the order approving this engagement in the event the scope of the engagement is materially modified.

3.      The scope of the Financial Advisor's work will include the following:

(a)      Assist with the preparation and analysis of restructuring alternatives;

(b)      Assist in the development and negotiation of a Plan of Reorganization;

(c)      Assist with the analysis and reconciliation of claims against the Debtor, as appropriate and required;

(d)      Source alternative or additional debt capital, as appropriate and required;

(e)      Participate in Court hearings and, if necessary, provide testimony in connection with any hearings before the Court; and

      (f)     Perform such other tasks as appropriate as may reasonably be requested by the Debtor's management or counsel.

4.      It is the intention of the Financial Advisor to seek compensation for services as described herein and in the Application in accordance with customary practices and in accordance the applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and any other applicable orders of this Court and guidelines established by the U.S. Trustee.

5.      The Financial Advisor's fees will be based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of the Financial Advisor to bill clients for travel time consistent with guidelines of the jurisdiction.  For this jurisdiction, therefore, Financial Advisor will apply a 50% discount rate to non-working travel time billed.  Time entries are recorded in six (6) minute increments. Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case.  Financial Advisor does not include support services in the Financial Advisor's overhead for the purpose of establishing billing rates. Billing rates are generally representative of prevailing market rates, as awarded by other Courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements.

6.      Consistent therewith, the Debtor agreed to pay Financial Advisor financial advisory fees ("**Consulting Fees**") and reasonable out-of-pocket expenses incurred by Financial Advisor. Such expenses include, but are not limited to air travel, meals, local transportation, lodging, parking, telephone calls, delivery services, and photocopying.  Consulting Fees will be billed on an hourly basis; our standard hourly rates are as follows:

| | |
|---|---|
| Principal / Managing Director | $575 - $725 (Mr. Podgainy's rate is $625) |
| Director / Specialists | $475 - $695 |

3

Associate Professionals                         $175 - $475

7.      In addition, should alternative or additional capital be required, Financial Advisor

shall have the right – on a non-exclusive basis - to source such capital, whether debt or equity. Any

outreach with regards to the placement of debt or equity, shall require that the Debtor approve any

such lender or investor outreach in advance. In the event that the Debtor closes a financing with a

financing source introduced by Financial Advisor, Financial Advisor shall be entitled to a success

fee ("**Success Fee**") based on the consummation of such transaction with an interested party

("**Interested Party**") introduced to the Debtor by Financial Advisor, payable in cash, at the time

of the closing of such transaction (a "**Financing Transaction**").  The Success fee is based on the

aggregate commitments provided by a lender(s) and the aggregate equity contributed by an

investor(s) (the "**Total Consideration**"), introduced by Financial Advisor to the Debtor. The

Success Fee for the closing of a Financing Transaction shall be .75% of the Total Consideration

received by the Debtor from an Interested Party. In the event that a third-party investment banker

or broker sources this financing, Financial Advisor shall not be due any success fee and shall only

be paid their hourly Consulting Fees.

8.      Financial Advisor is also entitled to a success fee ("**Success Fee**") if a Financing

Transaction closes within a twelve-month period from the date of the Debtor's signing of this

agreement (the "**Initial Period**"), if Financial Advisor procured a term sheet at the time of its

introduction.  Financial Advisor is also be entitled to the Success Fee if a Financing Transaction

closes with an Interested Party within twelve months of the end of the Initial Period where

Financial Advisor procured a term sheet from such Interested Party (whether or not Financial

Advisor remained in contact with the Interested Party).

4

9.      The Agreement provides for a retainer to Financial Advisor in the amount of $40,000, which will be applied to the final bill.  Any amount of this retainer remaining after application to unpaid fees will be returned to the Debtor.

10.      To the extent that any services outside the scope of the engagement are required or requested, the extent of these services, and the additional compensation to be paid to Financial Advisor for such services, shall be agreed upon prior to Financial Advisor beginning to perform such services.  These services will be provided subject to the parties entering into an appropriate amendment to the Agreement, which shall be subject to Bankruptcy Court approval.

11.      Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines and local rules, in addition the aforementioned Success Fee, Financial Advisor will seek payment for compensation of its Consulting Fees on an hourly basis, plus reimbursement of actual and necessary expenses incurred by Financial Advisor including legal fees related to this retention application and future fee applications as approved by the court. Financial Advisor's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application for the employment of Financial Advisor. These hourly rates are adjusted periodically. Financial Advisor shall apply any remaining amounts of its retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor.

**Disinterestedness of Hilco**

12.      Hilco Trading, LLC is the managing member and ultimate parent holding company of (i) Hilco Real Estate, LLC, (ii) Hilco Real Estate, LLC's affiliates (the "**Affiliates**"), and (iii) Hilco Real Estate, LLC's and the Affiliates' subsidiary entities

(collectively, the "**Subsidiaries**," and together with Hilco Trading, LLC, Hilco Real Estate, LLC, and the Affiliates, "**Hilco Global**").  I have authority on behalf of Hilco Global.

13.     In the ordinary course of its business, Hilco Global maintains a database for purposes of performing "conflicts checks."  The database contains information regarding all of Hilco Global's present and past representations and transactions.  I obtained a list of the above-captioned debtor and debtor in possession (collectively, the "**Debtor**"), certain of the Debtor's creditors, and other parties in interest in the above-captioned cases (the "**Potential Parties in Interest**"), from the Debtor for purposes of searching the aforementioned database and determining the connection(s) which Hilco Global has with such entities.  The Potential Parties in Interest list is attached hereto as **Schedule 1**.  Hilco's search of the aforementioned database did not identify any connections to the Potential Parties in Interest listed on Schedule 1.

14.     Except as otherwise set forth herein, to the best of my knowledge, information, and belief, neither Hilco nor any employee of Hilco (i) is a creditor, equity security holder or an insider of the Debtor or (ii) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtor.  In addition, none of the Hilco professionals expected to assist the Debtor in this chapter 11 case are related or connected to any United States Bankruptcy Judge for the Southern District of New York, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

15.     As part of its diverse global activities, Hilco may be involved in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in this chapter 11 case.  Further, Hilco may have in the past, and may in the future, advised and/or have been represented by several attorneys, law firms, and other professionals, some of whom may

6

be involved in this chapter 11 case.  Finally, Hilco may have in the past, and will likely in the future, be working with or against other professionals involved in this chapter 11 case in matters wholly unrelated to this chapter 11 case.  Based upon my current knowledge of the professionals involved in this chapter 11 case, and to the best of my knowledge, none of these business relationships constitute interests adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders in matters upon which Hilco is to be employed, and none are in connection with this Chapter 11 case.

3.     The Debtor has numerous creditors and relationships with a large number of individuals and entities that may be parties in interest in this Chapter 11 case.  Consequently, although every reasonable effort has been made to discover Hilco's connections with the Potential Parties in Interest, Hilco is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party in interest in this Chapter 11 case.  If Hilco discovers any information that is contrary or pertinent to the statements made herein, Hilco will promptly disclose such information to the Court.

4.     For the reasons set forth in this Declaration, Hilco believes that it (a) is a disinterested person as defined in the Bankruptcy Code and (b) does not hold or represent any interest adverse to the Debtor's estate.

5.     The foregoing constitutes the statement of Hilco pursuant to section 504 of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 5002.

*[Rest of Page Left Intentionally Blank]*

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my

information, knowledge, and belief

Dated: August 24, 2021                              _/s/ Sarah Baker_____
                                                   Sarah Baker
                                                   Vice-President & Assistant General Counsel
                                                   Hilco Trading, LLC
                                                   Managing Member of Hilco Real Estate, LLC

**SCHEDULE 1**

**Potential Parties in Interest**


Toby Moskovits
Michael Lichtenstein
The Toby Moskovits Family 2012 GST Exempt Trust
Northside Partners LLC
96 W Development LLC
96 Wythe Ave. Inc.
96 Wythe Holdings LLC
96 Wythe Mezz DE LLC
96 Wythe Acquisition LLC
96 Wythe Borrower DE LLC
OES-Williamsburg Hotel LLC
Yechial Lichtenstein
My 2011 Grand LLC
Yoel Goldman
The Schweid Family Irrevocable Trust
The Schweid Shelter Irrevocable Trust
Claire Benedkit
S&B Monsey LLC
Grand Living LLC II
Grand Living LLC
ER 215 Moore Holdings LLC
Northside Seigel LLC
232 Seigel Development LLC
232 Seigel Acquisition LLC
Benefit Street Partners Realty Operating Partnership L.P.
Franklin Templeton
B in Power Inc.
Decorative Home NY Inc
Dynamic Electric
FIA Heritage Holdings
International Tile
KJ Artistic Inc
NYC Department of Finance
OES – Williamsburg Hotel LLC
Velocity Framers

**United States Trustee – Region 2 (including Manhattan Office Staff)**

William K. Harrington
Linda A. Riffkin
Victor Abriano

Susan Arbeit
Maria Catapano
Shara Cornell
Danny A. Choy
Benjamin J. Higgins
Nadkarni Joseph
Brian S. Masumoto
Ercilia A. Mendoza
Mary V. Moroney
Richard C. Morrissey
Serene Nakano
Alaba Ogunleye
Ilusion Rodriguez
Andrea B. Schwartz
Paul K. Schwartzberg
Shannon Scott
Sylvester Sharp
Andy Velez-Rivera
Madeleine Vescovacci
Greg M. Zipes

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re                                                      Chapter 11

    96 Wythe Acquisition LLC                    Case no.  21-22108

                 Debtor.

--------------------------------------------------------x

**DECLARATION OF MARK PODGAINY IN SUPPORT OF DEBTOR'S APPLICATON
FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
GETZLER HENRICH & ASSOCIATES LLC AND HILCO REAL ESTATE LLC AS
FINANCIAL ADVISOR FOR THE DEBTOR AND DEBTOR IN POSSESSION,
EFFECTIVE AS OF AUGUST 19, 2021**

Under 28 U.S.C. § 1746, Mark Podgainy, declares under penalty of perjury:

1.      I am a managing director of Getzler Henrich & Associates LLC, a Hilco

Global company (either "Getzler Henrich" or the "Firm").  The information included in this

declaration (the "Declaration") concerning Getzler Henrich is based upon my personal

knowledge.  Getzler Henrich has agreed to provide restructuring services to the Debtor in

accordance with the terms and conditions set forth herein, in the Debtor's Motion to retain the

Firm (the "Motion") and in the services agreement between the Debtor and Getzler Henrich (the

"Engagement Letter"), attached as Exhibit B to the Motion.

2.      Getzler Henrich is one of the oldest and most respected names in middle

market corporate restructuring, assisting companies around the world with an approach that

emphasizes rapid, pragmatic decision making and implementation.  Over the past fifty years,

Getzler Henrich has developed a strong track record, assisting both underperforming and healthy

companies in the middle market.  Getzler Henrich's engagements have spanned across a broad

spectrum of industries.

3.      I have more than 20 years of experience in operational roles and

turnaround consulting in a variety of industries. My areas of expertise include operations

restructuring, business plan analysis, performance improvement, cash and vendor management,

bankruptcy consulting and interim management services. I have also worked with law firms on

forensic and litigation support assignments in bankruptcy cases. My clients have primarily been

in the consumer products, apparel and textile, food, hospitality, real estate and retail sectors.

4.      I have extensive experience in the food and hospitality industries,

including line and management positions at Harvey Hotels, Winegardner & Hammons (Holiday

Inn concepts) and Howard Johnson's Restaurants.  My restaurant client list includes KFC, Big

Boy Restaurants, Roadhouse Grill, and Eateries (Garcia's, Garfield's and Pepperoni Grill

concepts), among others.  I have significant consulting experience in the real estate supply chain.

I have advised hospitality, residential and multifamily real estate companies in workout

situations with their lenders and has served as a Chief Restructuring Officer.

5.      I have a master's degree in business administration from Columbia

University and a bachelor's degree from Cornell University's School of Hotel Administration.

He is currently a board member of the NYC chapter of the Turnaround Management

Association; of Neighborhood Housing Services of New York City, Inc., a non-profit that

revitalizes underserved neighborhoods by creating and preserving affordable housing and of 520

West 19th Street Condo Association. I am a member of the American Bankruptcy Institute and

the Cornell Hotel Society and have written frequently on distressed mergers and acquisitions,

real estate and related topics for numerous industry trade publications.  I am a certified

turnaround professional.  In addition, the team at Hilco Real Estate LLC also has extensive

2

expertise in valuing and selling a broad range of property types including managing Hilco

projects for a variety of purposes, including disposition, lending support, bankruptcy,

restructuring, , and investment decision-making.  Under the Engagement Letter, Getzler Henrich,

in conjunction with Hilco Real Estate LLC, will assume the role of financial advisor to assist the

Debtor in determining its restructuring alternatives and developing a Plan of Reorganization,

subject to the oversight, guidance, control and direction of the Debtor's members.  The Debtor

shall apply to the Bankruptcy Court for appropriate modification of the order approving this

engagement in the event the scope of the engagement is materially modified.

6.    The scope of Getzler Henrich's work will include the following:

a.) Assist with the preparation and analysis of restructuring alternatives;

b.) Assist in the development and negotiation of a Plan of Reorganization;

c.) Assist with the analysis and reconciliation of claims against the Debtor, as
appropriate and required;

d.) Source alternative or additional debt capital, as appropriate and required;

e.) Participate in Court hearings and, if necessary, provide testimony in
connection with any hearings before the Court; and

f.) Perform such other tasks as appropriate as may reasonably be requested by the
Debtor's management or counsel.

7.    It is the intention of Getzler Henrich and HRE to seek compensation for

services as described herein and in the Application in accordance with customary practices and

in accordance the applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and

any other applicable orders of this Court and guidelines established by the U.S. Trustee.

8.      Getzler Henrich's fees will be based on actual hours expended to perform its services at standard hourly rates established for each employee, as adjusted annually.  It is the customary practice of the Firm to bill clients for travel time consistent with guidelines of the jurisdiction.  For this jurisdiction, therefore, Getzler Henrich will apply a 50% discount rate to non-working travel time billed.  Time entries are recorded in six (6) minute increments.  Fees reflect economies resulting from the use of paraprofessional and support personnel to develop schedules and analyses, input computer data, perform research, work on fee applications, and other activities necessary to the efficient administration of a case.  Getzler Henrich does not include support services in the Firm's overhead for the purpose of establishing billing rates.  Billing rates are generally representative of prevailing market rates, as awarded by other Courts in similar circumstances, based on the customary compensation charged by comparably skilled practitioners in bankruptcy and non-bankruptcy engagements.

9.      Consistent therewith, the Debtor agreed to pay Getzler Henrich financial advisory fees ("Consulting Fees") and reasonable out-of-pocket expenses incurred by Getzler Henrich.  Such expenses include, but are not limited to air travel, meals, local transportation, lodging, parking, telephone calls, delivery services, and photocopying.  Consulting Fees will be billed on an hourly basis; our standard hourly rates are as follows:

| | |
|---|---|
| Principal / Managing Director | $575 - $725 (Mr. Podgainy's rate is $625) |
| Director / Specialists | $475 - $695 |
| Associate Professionals | $175 - $475 |

10.      In addition, should alternative or additional capital be required, Getzler Henrich shall have the right – on a non-exclusive basis - to source such capital, whether debt or equity. Any outreach with regards to the placement of debt or equity, shall require that the

4

Debtor approve any such lender or investor outreach in advance. In the event that the Debtor

closes a financing with a financing source introduced by Getzler Henrich, Getzler Henrich shall

be entitled to a success fee ("Success Fee") based on the consummation of such transaction with

an interested party ("Interested Party") introduced to the Debtor by Getzler Henrich, payable in

cash, at the time of the closing of such transaction (a "Financing Transaction"). The Success fee

is based on the aggregate commitments provided by a lender(s) and the aggregate equity

contributed by an investor(s) (the "Total Consideration"), introduced by Getzler Henrich to the

Debtor. The Success Fee for the closing of a Financing Transaction shall be .75% of the Total

Consideration received by the Debtor from an Interested Party. In the event that a third-party

investment banker or broker sources this financing, Getzler Henrich shall not be due any success

fee and shall only be paid their hourly Consulting Fees.

11.    Getzler Henrich is also entitled to a success fee ("Success Fee") if a

Financing Transaction closes within a twelve-month period from the date of the Debtor's signing

of this agreement (the "Initial Period"), if Getzler Henrich procured a term sheet at the time of its

introduction. Getzler Henrich is also be entitled to the Success Fee if a Financing Transaction

closes with an Interested Party within twelve months of the end of the Initial Period where

Getzler Henrich procured a term sheet from such Interested Party (whether or not Getzler

Henrich remained in contact with the Interested Party).

12.    The Agreement provides for a retainer to Getzler Henrich in the amount of

$40,000, which will be applied to the final bill. Any amount of this retainer remaining after

application to unpaid fees will be returned to the Debtor.

5

13.     I communicate continually with clients on the status and results of our work efforts and interface with other professionals to improve coordination and ensure that we do not duplicate services rendered by other professionals retained in the case.

14.     To the extent that any services outside the scope of the engagement are required or requested, the extent of these services, and the additional compensation to be paid to Getzler Henrich for such services, shall be agreed upon prior to Getzler Henrich beginning to perform such services.  These services will be provided subject to the parties entering into an appropriate amendment to the Agreement, which shall be subject to Bankruptcy Court approval.

15.     Subject to Court approval and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines and local rules, in addition the aforementioned Success Fee, Getzler Henrich will seek payment for compensation of its Consulting Fees on an hourly basis, plus reimbursement of actual and necessary expenses incurred by Getzler Henrich including legal fees related to this retention application and future fee applications as approved by the court. Getzler Henrich's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application for the employment of Getzler Henrich. These hourly rates are adjusted periodically. Getzler Henrich shall apply any remaining amounts of its retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor.

16.     To the best of my knowledge and belief, insofar as I have been able to ascertain after due inquiry, and as is disclosed herein, none of the managing directors or employees of Getzler Henrich is related to the Debtor, its creditors, other parties in interest, the

United States Trustee for the Southern District of New York or anyone employed in the Office of

the United States Trustee for the Southern District of New York, or holds or represents any

interest adverse to any such party except that Getzler Henrich and myself are connected to the

Debtors by virtue of Getzler Henrich's Engagement Letter.  To the extent Getzler Henrich may

represent, or have represented, any other of the Debtor's creditors or other parties in interest or

interests adverse to such creditors or other parties in interest, such representation has been or is

in matters unrelated to this Chapter 11 Case.

17.     In connection with the preparation of this Declaration, Getzler Henrich

conducted a review of its professional contacts with the Debtor, its affiliates and other interested

parties identified on a list provided to Getzler Henrich by the Debtor's counsel in this Chapter 11

Case (the "Interested Party List").  The Interested Party List included, among others, the

following parties:  the Debtor and its affiliates, the Debtor's creditors as set forth in the Debtor's

schedules, parties that have filed a notice of appearance in this case, the Bankruptcy Judges for

the Southern District of New York, the Clerk of Court for the Southern District of New York,

and United States Trustee for the Southern District of New York.

18.     Getzler Henrich may have worked with or opposite law firms that have

appeared or may appear in this case on unrelated matters in unrelated cases.

19.     Getzler Henrich ran the Interested Party List through the Getzler Henrich

relationship database, a computer database containing names of individuals and entities that are

present or recent former clients of Getzler Henrich.  Getzler Henrich then reviewed the results of

the search.  Pursuant to the results of the conflicts search, I represent that none of the services

that were or will be provided in the course of other engagements (a) is connected in any way to

7

this Chapter 11 Case, (b) will impact or conflict with the rights of the Debtors in this Chapter 11

Case, or (c) will compromise Getzler Henrich's ability to provide services in this Chapter 11

case.

20.     It should be understood that Getzler Henrich's present or former clients

and their affiliates, officers, directors, principal shareholders, and their respective affiliates may

have had relationships with parties in interest in this case of which Getzler Henrich was not

informed or, subsequent to the performance of Getzler Henrich's services, may have developed

relationships with such parties of which Getzler Henrich, and I are unaware.

21.     To the best of Getzler Henrich's knowledge and belief, none of Getzler

Henrich's current or former clients (including their affiliates, officers, directors, principal

shareholders, and their respective affiliates) is connected to the entities listed below, other parties

in interest herein or interests adverse to such parties.

22.     The Debtor first engaged Getzler Henrich pursuant to that certain

engagement letter dated August 19, 2021, to provide financial advisory service and intends to

perform such services from the date of its engagement.

Dated: New York, New York
        August 20, 2021

s/Mark Podgainy_____

8

## **EXHIBIT "B"**

**(Engagement Letter)**



Getzler Henrich & Associates LLC

295 Madison Avenue
20th Floor
New York, NY 10017

T: 212.697.2400
F: 212.697.4812
www.getzlerhenrich.com



August 19, 2021

Toby Moskovits
Michael Lichtenstein
96 Wythe Acquisition LLC
679 Driggs Avenue
Brooklyn, NY  11211

*Via* e-mail: toby@heritage-equity.com
              nycdevmanager@gmail.com

Dear Ms. Moskovits and Mr. Lichtenstein

Thank you for your interest in retaining the services of Getzler Henrich & Associates LLC and Hilco Real Estate, LLC (collectively, "Getzler Henrich").  We appreciate the opportunity to work with 96 Wythe Acquisition LLC and its subsidiaries or affiliates, if any (collectively, "Wythe" or "Company") to provide financial advisory services.

### OUR SERVICES

Financial advisory services include turnarounds and workouts, interim and crisis management, bankruptcy advisory, financial restructuring and forensic/litigation support. We also assist companies in achieving operational excellence through process improvement/ LeanSigma, supply chain solutions, sales and marketing effectiveness, technology advisory and transaction advisory services.  Albeit not all Getzler Henrich's capabilities are required in this case, our breadth of services is briefly summarized on our website www.getzlerhenrich.com.

### OUR FIRM

Getzler Henrich & Associates, a Hilco Global Company, is one of the oldest and most respected names in middle- market corporate restructuring, assisting companies around the world with an approach that emphasizes rapid, pragmatic, decision-making and implementation. Over more than fifty years, Getzler Henrich has developed a strong track record, assisting both underperforming and healthy companies in the middle market. We have a demonstrated ability to generate realistic solutions to challenges confronting businesses or their creditors, and to helping companies improve their operations. Engagements have spanned a broad spectrum of industries. Executing solutions with speed, competence and integrity, we adapt our approach to the precise needs of each individual client and make practical proposals to address specific issues.

### Hilco Real Estate, LLC

Hilco Real Estate, LLC, a Hilco Global company, is a real estate services firm dedicated to providing valuation, repositioning and restructuring services for a company's real estate assets, both owned and leased. Unlike other property resources with disposition expertise, HRE professionals are experienced attorneys, accountants, advisors, owners, developers and executive level consultants as to real property.  With a singular focus on restructuring services for our client's real property commitments, HRE's assignments always require the optimization of value in the shortest time frame possible.



## OUR PEOPLE

Assignments are always managed with a proactive, results-oriented approach.  We believe that to provide valuable guidance and advice to our clients, our people must have first-hand experience running a business.  Therefore, prior to joining the firm, each team leader at Getzler Henrich has gained valuable experience managing companies, ranging from top executive positions at middle market companies to senior management positions at major divisions of multinationals.

The engagement team will be led by Mark Podgainy and may include other Getzler Henrich professionals as appropriate and required, and upon mutual consent.

**Mark D. Podgainy,** managing director, has more than 20 years of experience in operational roles and turnaround consulting in a variety of industries. His areas of expertise include operations restructuring, business plan analysis, performance improvement, cash and vendor management, bankruptcy consulting and interim management services. He has also worked with law firms on forensic and litigation support assignments in bankruptcy cases. His clients have primarily been in the consumer products, apparel and textile, food, hospitality, real estate and retail sectors.

Mark has extensive experience in the food and hospitality industries, including line and management positions at Harvey Hotels, Winegardner & Hammons (Holiday Inn concepts) and Howard Johnson's Restaurants. His restaurant client list includes KFC, Big Boy Restaurants, Roadhouse Grill, and Eateries (Garcia's, Garfield's and Pepperoni Grill concepts), among others. Mark has significant consulting experience in the real estate supply chain.  He has advised hospitality, residential and multifamily real estate companies in workout situations with their lenders and has served as a Chief Restructuring Officer.

Mark has a master's degree in business administration from Columbia University and a bachelor's degree from Cornell University's School of Hotel Administration. He is currently a board member of the NYC chapter of the Turnaround Management Association; of Neighborhood Housing Services of New York City, Inc., a non-profit that revitalizes underserved neighborhoods by creating and preserving affordable housing and of 520 West 19th Street Condo Association. He is a member of the American Bankruptcy Institute and the Cornell Hotel Society and has written frequently on distressed mergers and acquisitions, real estate and related topics for numerous industry trade publications.  He is a certified turnaround professional.

**Adam Zimmerman**, managing director, has been with Hilco Global for over 12 years at Hilco Real Estate Appraisal; he joined Hilco Real Estate (HRE) in 2021 to provide advanced valuation (BOV), yield analysis, disposition support and advisory for HRE's client base of investors, private equity, note and asset sales and bankruptcy real estate practitioners.



Adam has extensive executive expertise in valuing and selling a broad range of property types. Adam's experience includes managing Hilco projects for a variety of purposes including disposition, lending support, bankruptcy, restructuring, financial accounting and investment decision-making. Income methodologies include DCF (Excel) and Argus expertise. He has also worked across the U.S. in the capacity of an expert witness and is actively involved in business development, management and staff training. One of Adam's valuation specialties includes Healthcare (hospitals, assisted living, skilled nursing, urgent care, dialysis facilities and medical office buildings) and Hotels (flagged hotels, boutique hotels and hotel/water (entertainment), golf and resort properties). His expertise extends to tangible and intangible market value, real estate focused market analysis, valuation for both closed or distressed properties and fully operating and stabilized assets.

Adam is a Designated Member of the Appraisal Institute (MAI). He holds Certified General Real Estate Appraiser licenses in the states of Illinois, Arizona, Texas, Georgia, New York and Pennsylvania. He earned his Bachelor of Arts in Journalism at the University of Kansas.

**OUR UNDERSTANDING AND SCOPE**

The Company, which owns and operates The Williamsburg Hotel in Brooklyn, filed a Chapter 11 petition in February 2021 and is now seeking to formulate a plan to exit from bankruptcy. To that end, we understand the Company desires Getzler Henrich to provide financial advisory services to assist in determining its restructuring alternatives and developing a Plan of Reorganization. Upon adoption of a resolution/appointment by the Board of Directors (the "Board") of Wythe, Getzler Henrich will assume the role of Financial Advisor of the Company and shall serve in that capacity subject to the oversight, guidance, control and direction of Wythe's management and Board. The Company shall apply to the Bankruptcy Court for appropriate modification of the order approving this engagement in the event the scope of the engagement is materially modified.

The scope of Getzler Henrich's work will include the following:

- Assist with the preparation and analysis of restructuring alternatives;

- Assist in the development and negotiation of a Plan of Reorganization;

- Assist with the analysis and reconciliation of claims against the Debtors, as appropriate and required;

- Source alternative or additional debt capital, as appropriate and required;

- Participate in Court hearings and, if necessary, provide testimony in connection with any hearings before the Court; and

- Perform such other tasks as appropriate as may reasonably be requested by the Debtor's management or Company counsel.

With respect to all such efforts outlined above, Getzler Henrich will interface with and report in a timely manner to management and the Board any decisions to be considered, furnish to the extent possible all financial or other information requested by or on behalf

of management and the Board, and attend meetings and report progress on restructuring initiatives and actions instructed by management and the Board.  Getzler Henrich will work with other professionals retained by the Debtors to ensure that work is performed efficiently and without duplication of effort.  Moreover, to the extent the Company has resources with capacity and capability to work with and under the guidance of Getzler Henrich, we welcome the opportunity to reduce the bankruptcy's administrative cost.

**FEE STRUCTURE**



<u>Consulting Fees</u>

Getzler Henrich will bill Wythe for financial advisory fees ("Consulting Fees") and reasonable out-of-pocket expenses incurred by Getzler Henrich.  Such expenses include, but are not limited to air travel, meals, local transportation, lodging, parking, telephone calls, delivery services, and photocopying.

Consulting Fees will be billed on an hourly basis; our standard hourly rates are as follows:

| | |
|---|---|
| Principal / Managing Director | $575 - $725 |
| Director / Specialists | $475 - $695 |
| Associate Professionals | $175 - $475 |

More specifically, Mark Podgainy's hourly rate is $625.  Billing rates for additional professionals, should they be required for this engagement, will be at standard hourly rates.

Success Fee

In addition, should alternative or additional capital be required, Getzler Henrich shall have the right – on a non-exclusive basis - to source such capital, whether debt or equity. Any outreach with regards to the placement of debt or equity, shall require that the Company approve any such lender or investor outreach in advance. In the event that the Company closes a financing with a financing source introduced by Getzler Henrich, Getzler Henrich shall be entitled to a success fee ("Success Fee") based on the consummation of such transaction with an Interested Party introduced to the Company by Getzler Henrich, payable in cash, at the time of, as part of, and as a condition of the closing of such transaction (a "Financing Transaction").   The Success fee is based on the aggregate commitments provided by a lender(s) and the aggregate equity contributed by an investor(s) (the "Total Consideration"), introduced by Getzler Henrich to the Company. The Success Fee for the closing of a Financing Transaction shall be .75% of the Total Consideration received by the Company from an Interested Party. In the event that a third-party investment banker or broker sources this financing, Getzler Henrich shall not be due any success fee and shall only be paid their hourly Consulting Fees.



Getzler Henrich shall be entitled to the Success Fee if a Financing Transaction closes within a twelve-month period from the date of the Company's signing of this agreement (the "Initial Period"), if Getzler Henrich procured a term sheet at the time of its introduction. Getzler Henrich shall also be entitled to the Success Fee if a Financing Transaction closes with an Interested Party within twelve months of the end of the Initial Period where Getzler Henrich procured a term sheet from such Interested Party (whether or not Getzler Henrich remained in contact with the Interested Party).

Getzler Henrich does not guarantee that it can or will locate an Interested Party to consummate a Financing Transaction, and the Company acknowledges that the likelihood of a successful effort to consummate a Financing Transaction is uncertain.  The Company may participate actively in any negotiations with the various prospective Interested Parties to the extent the Company deems necessary.

The Company shall promptly file a motion under section 327 and 328 of the Bankruptcy Code (the "Retention Motion"), in form and substance reasonably acceptable to Getzler Henrich, authorizing the Company's entry into this engagement agreement, which the Company agrees to use its reasonable efforts to obtain (the "Retention Order").  The Company will use its reasonable efforts to ensure that such Retention Order shall specifically provide that: (i) Getzler Henrich is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by the Company and is authorized to commence its services as of the date of this engagement agreement; (ii) the payment of all fees and reimbursement of expenses hereunder to Getzler Henrich shall be free and clear of all liens, claims and encumbrances; and (iii)  all such fees and expenses due and owing to Getzler Henrich hereunder shall constitute allowed administrative expenses under section 503(b)(1), with the priority specified in section 507(a) of the Bankruptcy Code.  In addition to the above, contemporaneously with the filing of the Retention Motion, the Company shall file a motion to use cash collateral with the Bankruptcy Court, which motion shall include a budget expressly providing for the payment of Getzler Henrich's fees and expenses due hereunder (the "Cash Collateral Order").  Getzler Henrich's agreement to provide the services set forth herein is expressly conditioned upon the Bankruptcy Court

entering the Cash Collateral Order.  In the event the Bankruptcy Court does not enter the Cash Collateral Order, in form and substance reasonably acceptable to Getzler Henrich, this engagement letter shall be terminated without Getzler Henrich incurring any liability, penalty, or financial penalty to any party.  Company acknowledges that it will pay Getzler Henrich in accordance with orders of the Bankruptcy Court allowing such fees and reimbursement of such expenses.  If the Company fails to do so, Getzler Henrich reserves the right to cease work until the Company complies with such order.



Except as disclosed to the Company and described in a Getzler Henrich Bankruptcy Court retention affidavit, Getzler Henrich confirms that none of its principals or professional staff have any financial interest or business connection with the Company, and Getzler Henrich is aware of no conflicts in connection with this Agreement.

We will strive to perform services in a most expeditious and comprehensive fashion, which will be dependent in part on the quality, sophistication and availability of the Company's existing systems, personnel, processes and reporting procedures and the Company's ability to provide all required financial and operational information and data in a timely fashion and in the required format. We will communicate the project status and direction routinely and immediately identify any issues and/or roadblocks that could impact the project's cost or timeline.  We strongly emphasize employing a collaborative approach with constant communication. Travel time is billed at 50% of the hourly rate.  Hourly rates are revised periodically.  We will notify you of any such changes to our rates.  Note that we do not provide assurance regarding the outcome of our work and our fees will not be contingent on the results of such work.

To the extent that any services outside the scope of this engagement are required or requested, the extent of these services, and the additional compensation to be paid to Getzler Henrich for such services, shall be agreed upon prior to Getzler Henrich beginning to perform such services.  These services will be provided subject to our entering into an appropriate amendment to this letter, which, if applicable, may be subject to bankruptcy court approval.

The Company will, on the signing of this letter, pay Getzler Henrich a retainer in the amount of $40,000, which will be applied to the final bill.  Should this retainer be insufficient because of a change in circumstances, Getzler Henrich reserves the right to request, and the Company agrees to pay, a retainer increase.  Any amount of this retainer remaining after application to unpaid fees and expenses will be returned to the Company. Notwithstanding anything to the contrary contained in this paragraph, Getzler Henrich will be entitled to retain the unused portion of the retainer, if any, upon a showing by motion to the Bankruptcy Court, on appropriate notice, that performance to Getzler Henrich by the Company remains due under the indemnification obligations under this engagement letter.

### TERMS OF ENGAGEMENT

The Terms and Conditions and Definitions are set forth in Annex I and Annex II shall govern this engagement, except to the extent inconsistent with or superseded by the express terms of this letter or any court order approving this engagement.

All notices, requests, consents and other communications hereunder to Getzler Henrich shall be deemed to be sufficient if contained in a written instrument delivered in person or duly sent by certified mail, postage prepaid; by an overnight delivery service, charges prepaid; or by confirmed telecopy; addressed to Getzler Henrich at the address set forth below or such other address as may hereafter be designated in writing:



> Getzler Henrich & Associates LLC
> 295 Madison Avenue, 20th Floor
> New York, NY  10017
> Attention:  Mark D. Podgainy
> Facsimile:  212-697-4812

This Engagement Letter contains the entire agreement among the parties relating to the subject herein.  Any modification or other changes to the terms contained herein, including Annex I, must be in writing and signed by the parties hereto to be enforceable.

If the foregoing is in accordance with our understanding, please sign the attached copy and forward it to our office.  In addition, the retainer and future payments may be wired to Getzler Henrich & Associates LLC c/o JP Morgan Chase Bank, account # 733687336, routing/ABA # 021 0000 21.

Sincerest regards,

**GETZLER HENRICH & ASSOCIATES LLC**

By: _____     Dated: _____
          Mark D. Podgainy
          Managing Director

**HILCO REAL ESTATE, LLC**

By: _____     Dated: August 19, 2021
          Sarah Baker
          VP & AGC, Managing Member

All notices, requests, consents and other communications hereunder to Getzler Henrich shall be deemed to be sufficient if contained in a written instrument delivered in person or duly sent by certified mail, postage prepaid; by an overnight delivery service, charges prepaid; or by confirmed telecopy; addressed to Getzler Henrich at the address set forth below or such other address as may hereafter be designated in writing:



    Getzler Henrich & Associates LLC
    295 Madison Avenue, 20th Floor
    New York, NY 10017
    Attention: Mark D. Podgainy
    Facsimile: 212-697-4812

This Engagement Letter contains the entire agreement among the parties relating to the subject herein. Any modification or other changes to the terms contained herein, including Annex I, must be in writing and signed by the parties hereto to be enforceable.

If the foregoing is in accordance with our understanding, please sign the attached copy and forward it to our office. In addition, the retainer and future payments may be wired to Getzler Henrich & Associates LLC c/o JP Morgan Chase Bank, account # 733687336, routing/ABA # 021 0000 21.

Sincerest regards,

**GETZLER HENRICH & ASSOCIATES LLC**

By: _____    Dated: _8/19/2021_
    Mark D. Podgainy
    Managing Director

**HILCO REAL ESTATE, LLC**

By: _____    Dated: _____
    Sarah Baker
    VP & AGC, Managing Member

**AGREED TO AND ACCEPTED BY:**

96 Wythe Acquisition LLC (and its subsidiaries and affiliates)



Accepted by: _____

Dated:          _____

Print Name: _____

Title:            _____



Ms. Toby Moskovits
Mr. Michael Lichtenstein
96 Wythe Acquisition LLC
Page 9 of 13



**ANNEX I**
**Terms and Conditions**

**1.**     **Access to Company Personnel and Information.**

(a)     The Company agrees to make available to Getzler Henrich all of the Company's financial and operational information and data as requested by Getzler Henrich (all such information so furnished being the "Information") and agrees to permit discussions with Company personnel that Getzler Henrich reasonably requests in connection with the services performed by Getzler Henrich under this Agreement.  The Company will provide Getzler Henrich with full access to all Company personnel, books, and records, including those of the Company's attorneys (subject to such safeguards as may be necessary to preserve applicable attorney client privileged communications) and other agents and third-party representatives. The Company represents and warrants to Getzler Henrich that, except as disclosed to Getzler Henrich in writing, all Information provided or made available to Getzler Henrich by the Company, its directors, officers, employees, representatives, attorneys and agents at any time shall, to the best of the Company's knowledge:  a) be complete and correct in all material respects; and b) not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements not misleading in light of the circumstances under which such statements are made.  The Company agrees that it shall notify Getzler Henrich if it learns subsequently that any Information provided or made available to Getzler Henrich in accordance with this Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

(b)     The Company recognizes and confirms that Getzler Henrich (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same and (b) does not assume responsibility for accurateness or completeness of the Information and such other information and (c) will not make an appraisal of any of the assets or liabilities of the Company.  The Company agrees that Getzler Henrich shall have no duty to verify independently the reliability, accuracy or completeness of any Information or other information.  The Company also agrees that Getzler Henrich shall incur no liability to the Company or any individual or other entity that may arise if any Information or other information proves to be unreliable, inaccurate or incomplete.

**2.**     **Confidential Information.**

(a)     Getzler Henrich shall not publicly disclose the Confidential Information.  Further, Getzler Henrich will use the Confidential Information only for the purpose of providing services to the Company pursuant to this Agreement. "Confidential Information" shall consist only of information that is necessary for Getzler Henrich to perform its services under this Agreement, and that is:  (i) disclosed to Getzler Henrich by the Company, its directors, officers, employees, representatives and agents; (ii) acquired by Getzler Henrich from any inspection of the Company's property in connection with this Agreement; or (iii) information produced by Getzler Henrich, from Confidential Information, in connection with performing services to the Company under this Agreement.

(b)     Confidential Information shall not include information that is:  (i) now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of Getzler Henrich, its employees, agents, or independent contractors; (ii) already known by Getzler Henrich at the time of the disclosure, provided that such information did not come from a source known by Getzler Henrich to be bound by a confidentiality agreement with the Company, or from a source that was otherwise prohibited from disclosing such information under a contractual, legal or fiduciary obligation; (iii) becomes available to Getzler Henrich on a non-confidential basis from a source other than the Company, provided that, to Getzler Henrich's knowledge, the source was not prohibited from disclosing such information to Getzler Henrich under a contractual, legal or fiduciary obligation to the Company; (iv) independently developed by Getzler Henrich, its employees, agents, or independent contractors primarily from information that is not Confidential Information; (v) information that the Company and Getzler Henrich agree, in writing, may be disclosed; (vi) information that is or should be reasonably expected to be disclosed as part of Getzler Henrich's services to the Company; or (vii) information that Getzler Henrich reasonably believes, upon advice of its attorneys, must be disclosed pursuant to applicable law, or regulatory or administrative process, including stock exchange rules.

(c)     Getzler Henrich may disclose Confidential Information:  (i) to third parties in connection with the performance of its services under this Agreement; or (ii) in connection with any dispute between Getzler Henrich and Company under, concerning or arising out of this Agreement.  If Getzler Henrich receives any request by order, subpoena, or other legal process to produce any Confidential Information, then unless otherwise prohibited by law or process, if practicable Getzler Henrich will seek to provide the Company with timely notice of such request.  At the Company's request and expense, and unless otherwise prohibited by law or against a recommendation by Getzler Henrich's counsel, and without relinquishing or modifying Getzler Henrich's authority to disclose information under the terms of this Agreement, Getzler Henrich will cooperate reasonably with the Company in actions that the Company deems necessary or appropriate under the circumstances to protect the confidentiality of the Confidential Information.

(d)     Getzler Henrich may disclose the Company's name for purposes of external marketing materials and will not otherwise disclose Confidential Information as contemplated under this Section 2.

**3.**     **No Third-Party Beneficiaries; Use of Work Product.**  Except as provided with respect to indemnification and exculpation, there are no third-party beneficiaries of this Agreement.  The Company acknowledges that in connection with its engagement Getzler Henrich is acting as an independent contractor with duties owing solely to Company.  The Company

acknowledges that all information, whether written or oral, created, prepared, or compiled by Getzler Henrich in connection with this Agreement is intended solely for the benefit and use of the Company provided, however that Getzler Henrich acknowledges and agrees that Company shall utilize Getzler Henrich's work in negotiations with Company's creditors. No other individual or entity shall be entitled to rely on such information for any purpose. Company agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Company's board of directors or managers, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon Getzler Henrich's prior written consent. Without limiting the foregoing, the Company shall not (and shall not authorize any other individual or entity to) use Getzler Henrich's name or to make available to third parties any information created, prepared, or compiled by Getzler Henrich under this Agreement for any reason, including obtaining or extending credit, offering or selling securities or other assets, or in any representations to third parties without Getzler Henrich's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the Company's dissemination and use of information and work product, Getzler Henrich shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Company concerning any information created, prepared, or compiled, in whole or in part, by Getzler Henrich pursuant to this Agreement, which may be disclosed only after prior written approval by Getzler Henrich or as required by applicable law, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to Getzler Henrich's engagement under this Agreement in required public filings or court documents.



**4.**      <u>Future Performance.</u>

         (a)      The services to the Company under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Company acknowledges that numerous factors may affect the Company's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by Getzler Henrich.

         (b)      Getzler Henrich does not provide assurance regarding the outcome of its engagement and its fees are not contingent on the results of its engagement.

**5.**      <u>Independent Contractor Status.</u> Getzler Henrich is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any Getzler Henrich Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Company, unless expressly agreed to in a writing signed by Company and Getzler Henrich. Getzler Henrich will have exclusive control over the management and operation of Getzler Henrich, including hiring and paying the wages or other compensation of its personnel. The Getzler Henrich personnel that provide services to the Company under this Agreement may also provide services to other past, present or future Getzler Henrich clients. In addition, like other advisory firms, Getzler Henrich may utilize the services of qualified independent project employees, who work under our direct supervision for us on an ad hoc basis as temporary employees, to assist Getzler Henrich with its performance of its services pursuant to this Agreement. This arrangement enables us to reduce our overhead and provide cost-effective services to our clients, who benefit from this saving by our reasonable rate structure.

**6.**      <u>Appointment as Officer and/or Director.</u> Getzler Henrich understands that the Company's officers and directors are covered by appropriate D&O insurance policies. Should the Company with the consent of Getzler Henrich elect a Getzler Henrich Party as an officer or director, the Company shall prior to the effectiveness of such election name such Getzler Henrich Party and Getzler Henrich as additional insureds under these policies and under all such other policies that the Company may purchase during Getzler Henrich's engagement. The Company further agrees to provide evidence of this coverage as soon as it is in place. It is mutually understood that naming such Getzler Henrich representative as an officer or director of the Company, that such Getzler Henrich representative will remain at all times an employee of Getzler Henrich and not become an employee of the Company and will be compensated solely by Getzler Henrich. Upon any cancellation or non-renewal of the D&O policy, then the Company shall exercise their rights to extend the claim period for a one-year "discovery period" and shall exercise such rights and pay such premiums required thereunder.

**7.**      <u>No Fiduciary Relationship.</u> Other than with respect to appointment(s) of a Getzler Henrich Party as an officer and/or director of Company in writing (and then only with respect to such Getzler Henrich Party), nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Company, including without limitation, the Company's directors, officers, members, managers partners, control persons, shareholders, employees, representatives, agents, or creditors (collectively, the "Company parties" and each a "Company Party"), on the one hand; and (b) Getzler Henrich, Getzler Henrich's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of Getzler Henrich or Getzler Henrich affiliates (collectively, the "Getzler Henrich Parties," and each a "Getzler Henrich Party") on the other hand.

**8.**      <u>Indemnity by Company.</u>

         (a)      The Company agrees to indemnify and hold harmless Getzler Henrich and each other Getzler Henrich Party from and against, and Company agrees that no Getzler Henrich Party shall have any liability to the Company or any other Company Party for, any losses, claims, damages, obligations, penalties, judgments, awards, settlements, liabilities, costs, expenses and disbursements (including reasonable attorneys' and consultants' fees and expenses, investigation fees and expenses and court and litigation costs) of any kind or nature whatsoever, known or unknown, foreseen or unforeseen,

contingent or otherwise arising out of or in any way, directly or indirectly, related to (i) Company's actions or failures to act (including statements or omissions made, or information provided, by it or its agents) or (ii) actions or failures to act by an Getzler Henrich Party with Company's consent or in reliance on Company's actions or failures to act, or (B) otherwise related to or arising out of any services rendered by Getzler Henrich or any Getzler Henrich Party pursuant to this Agreement or other services rendered at the request of Company (including service by an Getzler Henrich Party as an officer, director or in any other capacity with Company or any of its affiliates), including costs arising out of any dispute whether or not Getzler Henrich or any other Getzler Henrich Party is a party to such dispute and including any claim brought by, on behalf of or in the name of Company (collectively, "Covered Losses"); provided, however, that this indemnity and exculpation shall not apply where a court of competent jurisdiction has found by a final judgment (not subject to further appeal) that such Covered Losses resulted primarily from willful misconduct on the part of Getzler Henrich in the performance of its services under this Agreement. The Company also agrees to pay Getzler Henrich a fee at Getzler Henrich's regular hourly rates for it or any other Getzler Henrich Party preparing for, or testifying in, any legal proceedings. If multiple claims are brought against any Getzler Henrich Party in any action with respect to at least one of which indemnification is permitted under applicable law and provided for under this agreement, the Company agrees that any judgment, arbitration award or other monetary award shall be conclusively deemed to be based on claims as to which indemnification is provided for and permitted. The Company's obligations hereunder shall be in addition to any rights that any Getzler Henrich Party may have at common law or otherwise. Solely for the purpose of enforcing this agreement, the Company hereby consents to personal jurisdiction and to service and venue in any court in which any claim which is subject to this agreement is brought by or against any Getzler Henrich Party.



(b)        If any action, suit, proceeding or investigation or similar item is commenced as to which a Getzler Henrich Party is entitled to indemnification hereunder, it shall notify Company with reasonable promptness; provided, however, that any failure to so notify Company shall not relieve Company from its obligations hereunder (except to the extent Company is materially and adversely affected by such failure to be given notice). Getzler Henrich shall have the right to retain counsel of its own choice to represent it, and Company shall pay the reasonable fees, expenses and disbursements of such counsel; and such counsel shall to the extent consistent with its professional responsibilities cooperate with Company and any counsel designated by Company. Company shall not without written prior consent of Getzler Henrich, settle or compromise any claim against Getzler Henrich, or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise or consent includes as an unconditional term thereof, the giving by the claimant to Getzler Henrich of an unconditional release from all liability in respect of such claim.

(c)        In order to provide for just and equitable contribution, if a claim for indemnification pursuant to this Indemnification Agreement is made but is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for the indemnification in such case, then Company, on the one hand, and Getzler Henrich, on the other hand, shall contribute to the Covered Losses to which the Indemnified Parties may be subject in accordance with the relative benefits received by Company, on the one hand, and Getzler Henrich, on the other hand, and also the relative fault of Company, on the one hand, and Getzler Henrich, on the other hand, in connection with the statements, acts or omissions which resulted in such Covered Losses and the relevant equitable considerations shall also be considered. Notwithstanding the foregoing, Getzler Henrich shall not be obligated to contribute any amount hereunder that exceeds that amount of fees previously received by Getzler Henrich from Company.

(d)        Neither termination nor completion of the engagement of Getzler Henrich or of this Agreement shall affect these indemnification provisions which shall remain operative and in full force and effect and shall be binding upon any successors or assigns of Company. Each Getzler Henrich Party is an express third-party beneficiary of the provisions of this Section 8.

9.        **Non-Solicitation.**  For a period of twenty four (24) months after the later of:  (a) the completion of all services to be provided by Getzler Henrich under this Agreement; or (b) termination of this Agreement, the Company, including any affiliates thereof, shall not, directly or indirectly, hire, employ, retain or utilize (other than through Getzler Henrich) the services of any current or former employee of Getzler Henrich or independent contractor who provided services under this Agreement at any time without the prior written consent of Getzler Henrich. The Company agrees and acknowledges that the Getzler Henrich's remedy at law for any breach of the provisions of this Section would be inadequate and that for any breach of such provisions Getzler Henrich will, in addition to such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law.

10.        **Joint and Several Liability; Setoff.**  If the Company consists of one or more entities, then the Company's obligations under this Agreement shall be joint and several obligations of each entity comprising the "Company." Without limiting any other remedy that may be available to Getzler Henrich under this Agreement or applicable law, where the "Company" under this Agreement consists of more than one entity, then Getzler Henrich shall have against each such entity a right of setoff (notwithstanding any lack of mutuality) under which Getzler Henrich may set off against any claim against Getzler Henrich by any entity comprising the Company group, all of the claims that Getzler Henrich may have against any or all of the other entities that comprise the Company.

11.        **Limitation of Liability**.  No Getzler Henrich Party shall be liable to the Company, or any party asserting claims on behalf of the Company, except for direct damages found in a final determination to be the direct result of the bad faith, self-dealing, intentional misconduct or gross negligence of such Getzler Henrich Party. The Getzler Henrich Parties shall not be liable for incidental or consequential damages under any circumstances, even if they have been advised of the possibility of such damages. The Getzler Henrich Parties aggregate liability, whether in tort, contract or otherwise, is limited to the amount of fees paid for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of the Getzler Henrich Parties

for any and all claims or demands by anyone with respect to this Agreement, or the services provided hereunder, and the Liability Cap shall be allocated among all such claimants, as appropriate.

      **12.**     **Attorneys' Fees and Expenses.**  The Company shall pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by Getzler Henrich to enforce this Agreement, including, but not limited to any indemnity provision of this Agreement.  This obligation to pay Getzler Henrich's reasonable attorneys' fees and expenses shall apply whether such fees and expenses are incurred during trial or appeal, or in arbitration, a bankruptcy case, or otherwise.  If so required, Getzler Henrich shall additionally be entitled to reimbursement of reasonable legal expenses associated with any required court approval of this Agreement or enforcement of provisions of this Agreement, including, but not limited to, fee applications and the defense of any objections thereto.  Company shall reimburse Getzler Henrich for all such expenses upon presentation of the invoice for the same supported by appropriate documentation.



      **13.**     **Consent; Entire Agreement.**  In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably.  This Agreement contains the entire Agreement of the parties with respect to its subject matter and supersedes all prior agreements and understandings between the Company and Getzler Henrich with respect to such subject matter.  The parties agree that all terms of their agreement and understanding are embodied in this Agreement, and as modified or supplemented from time to time, but only if such modification or supplement is both: (i) in writing, and (ii) signed by all parties.  To the extent that any services outside the scope of this engagement are required or requested, the extent of these services, and the additional compensation to be paid to Getzler Henrich for such services, shall be agreed upon prior to Getzler Henrich beginning to perform such services.

      **14.**     **Choice of Law/Forum.**  The validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, and related matters shall be governed by the internal laws of the State of New York (without reference to choice of law doctrine).  Any legal action or proceeding concerning the validity, interpretation and enforcement of this Agreement, matters arising out of or related to this Agreement or its making, performance or breach, or related matters shall be brought exclusively in the courts of the State of New York in the County of New York or of the United States of America for the Southern District of New York, and all parties consent to the exclusive jurisdiction of those courts, waiving any objection to the propriety or convenience of such venues.  GETZLER HENRICH HEREBY AGREES, AND THE COMPANY HEREBY AGREES ON ITS OWN BEHALF, AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF EACH OTHER COMPANY PARTY, TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTER-CLAIM OR ACTION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF GETZLER HENRICH'S ENGAGEMENT, GETZLER HENRICH'S PERFORMANCE THEREOF, OR THIS AGREEMENT.

      **15.**     **Multiple Originals.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.  This Agreement may be executed by facsimile signatures or signatures forwarded via email.

      **16.**     **Termination.**  Either the Company or Getzler Henrich can terminate this agreement upon written notice, except for Sections 1 thru 3 and 6 thru 12, which shall survive any termination.  Outstanding amounts due Getzler Henrich, if any, will be paid promptly upon receipt of a final invoice that will be provided immediately upon notice of termination by the Company.

**ANNEX II**

**DEFINITIONS (FOR THE PURPOSE OF THIS AGREEMENT):**



Senior Debt means funds (i) received or to be received by the Company, or any entity acquired, or controlled by, or under common control with the Company, in the form of revolving credit facilities, notes, term loans, lines of credit, offering lines, purchase and sale of accounts receivable facilities, or any other type of credit facility, for which the Company or any entity acquired, or controlled, by or under common control with the Company, is obligated to repay the funds on a fixed schedule with interest on the unpaid balance thereof at a fixed interest rate or a floating interest rate, without any profit participation or yield enhancement as a return on the repayment of the funds received by the Company, or any entity acquired, or controlled by, or under common control with the Company, and (ii) for which the lender has a claim to the assets of the Company, or any entity acquired, or controlled by, or under common control with the Company, superior or prior to the claim of the holders of Subordinated Debt.

Subordinated Debt means (a) funds (i) received or to be received by the Company, or any entity acquired, or controlled by, or under common control with the company, or for which the Company, or any entity acquired, or controlled by, or under common control with the Company, is obligated to repay the funds on a fixed schedule with interest on the unpaid balance therefor at a fixed interest rate or a floating rate, and (ii) for which the lender does not have a senior claim to the assets of the Company, or any entity acquired, or controlled by, or under common control with the company, on parity with or prior to the claim of the holders of Senior Debt, or (b) funds (i) received or to be received by the Company, or any entity acquired, or controlled by, or under common control with the company, is obligated to repay the funds on a fixed schedule with interest on the unpaid balance thereof at a fixed interest rate or a floating interest rate, and (ii) for which part of the overall return to the investor on these funds is anticipated to consist of a participation in the profits of the company and/or some other type of income enhancement (whether realized through equity warrants conversions of the debt to equity, or otherwise) which has the effect of raising the overall return on these funds to the investors above the level that could be realized solely due to the receipt of stated interest income.

Equity shall include, but not be limited to, common stock, preferred stock, convertible stock, and the proceeds from any joint venture or similar agreement, including contributions by a joint venture partner involving cash, stock, property, plant and equipment or any other assets, asset sale or assumption or guaranty of liabilities.

## EXHIBIT "C"

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                             Chapter 11
      96 Wythe Acquisition LLC                        Case no.  21-22108
                      Debtor.
-----------------------------------------------------------x

## ORDER AUTHORIZING EMPLOYMENT

Upon the motion ("Motion") of the above-captioned debtor ("Debtor"), requesting authorization to retain Getzler Henrich & Associates LLC and Hilco Real Estate, LLC (collectively, "Getzler Henrich"), subsidiaries of Hilco Global,, pursuant to the engagement letter ("Engagement Letter") annexed as Exhibit A to the Motion, to provide financial advisory services, and upon the Declaration of no adverse interest of Mark Podgainy and Sarah Baker, of Getzler Henrich & Associates LLC and Hilco Real Estate, LLC respectively, and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is ordered that:

1.     The Debtor is hereby authorized to engage Getzler Henrich & Associates LLC and HIlco Real Estate, LLC, divisions of Hilco Global,  to provide the Debtor with financial advisory services subject to the following terms, which apply notwithstanding anything in the Agreement or the Motion or any exhibits related thereto to the contrary:

    (a)    In the event the Debtor seeks to alter or expand the scope of the Engagement Letter, a motion to modify the retention shall be filed.

    (b)    Getzler Henrich shall file with the Court and provide copies to the Office of the United States Trustee for the Southern District of New York ("U.S. Trustee") and all official committees, a report of staffing on the engagement for the previous month.  Such report shall include the names and functions filled of the individuals assigned.  All staffing shall be subject to review by the Court in the event an objection is filed.

(c)     No principal, employee or independent contractor of Getzler Henrich or its affiliates shall serve as a director of the Debtor during the pendency of the Chapter 11 Case.

(d)     Getzler Henrich shall file with the Court and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on a monthly basis.  Such reports shall contain summary charts which describe the time incurred and services provided, identify the compensation earned by each executive officer and staff employee provided and itemize the expenses incurred.  Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, (iii) be organized by project category and (iv) the time entries shall identify the time spent completing each task in six (6) minute increments and the corresponding charge (time multiplied by hourly rate) for each task. All compensation shall be subject to review by the Court in the event an objection is filed.

(e)     For a period of three years after the conclusion of the engagement, neither Getzler Henrich nor any of its affiliates shall make any investments in the Debtor or the reorganized Debtor, if applicable.

(f)     Getzler Henrich shall disclose any and all facts that may have a bearing on whether the firm, its subsidiaries and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest.  The obligation to disclose identified in this subparagraph is a continuing obligation.

(g)     The Debtors are not obligated to reimburse Getzler Henrich for legal counsel.

2.     All compensation and reimbursement due to, and other rights of Getzler Henrich in accordance with the Engagement Letter as modified by this Order, including without limitation indemnification obligations, shall be treated and allowed (subject to the compensation review procedures identified in this Order) as administrative expenses in accordance with section 503 of the Bankruptcy Code and shall be paid in accordance with the Agreement.

3.     Getzler Henrich shall apply any remaining amounts of its advance payments and retainer to allowed post-petition fees and expenses, prior to seeking final payment from the Debtor's cash flows.

2

4.      The terms and conditions of this Order are immediately effective and

enforceable upon its entry.

5.      To the extent there is inconsistency between the terms of the Agreement,

the Motion and this Order, the terms of this Order shall govern.

6.      The Debtor is authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

7.      This Court retains exclusive jurisdiction with respect to all matters arising

from or related to the implementation, interpretation, and enforcement of this Order.

Dated:   White Plains, New York
         August ___, 2021

_____
UNITED STATES BANKRUPTCY JUDGE