Pg 1 of 7

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Proposed Co-Counsel to the Debtor*
*and Debtor in Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>                Debtor. | Chapter 11<br><br>Case No.: 21-22108 (RDD)<br><br>Hearing Date and Time:<br>September 10, 2021 at 10:00 a.m.<br>(prevailing Eastern) |

### DEBTOR'S RESPONSE TO OBJECTION TO MOTION TO QUASH

TO:    THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE:

      96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession (the

"Debtor"), by its undersigned attorneys, Mayer Brown LLP and Backenroth Frankel & Krinsky,

LLP, submits this response (the "Response") to the objection (the "Objection") by Benefit Street

Partners Realty Operating Partnership, L.P. and its purported assignee, BSPRT 2018-FL3 Issuer, Ltd. (collectively, "Benefit Street") to Motion to Quash (the "Motion") filed by Williamsburg Hotel BK LLC (the "Management Company") a non-debtor affiliate.  In support of its Reponses, it is respectfully asserted as follows.

1.  The Debtor files the Response with respect to Benefit Street's Objection to the Motion to clarify certain misleading and/or erroneous statements made by Benefit Street and to update the Court as to the Debtor's exit plan.[1]  Note, Benefit Street served a separate document request upon the Debtor[2], which upon agreement of the parties, the response date has been extended to give the parties a chance to confer further to resolve any open questions, if any.

2.  The Debtor owns and operates the property located at 96 Wythe Avenue in Brooklyn (the "Property"), including the 147-room Williamsburg Hotel with a restaurant and multiple bars (the "Hotel").  Despite the unprecedented effects of the ongoing COVID-19 pandemic that severely curtailed the Debtor's operations early on, and continues to wreak havoc on the hospitality industry as a whole, the Hotel is open and fully operational – *operating profitably and exceeding financial projections*.  For example, in June, the Debtor's net operating profit was nearly $550,000 and it held a cash balance of over $1.3 million.

3.  In addition, the Debtor recently brought on a team of new advisors (to supplement current counsel), including new bankruptcy counsel and financial advisor Hilco Real Estate/Getzler Henrich to assist in preparing for an exit from bankruptcy.[3]  Specifically, the

---

[1] The within Response highlights certain objectionable statements by Benefit Street, and is not exhaustive.  The Debtor reserves all rights with respect to the foregoing.

[2] Asserted to relate to the Debtor's Cash Management Motion.

[3] Retention applications are pending.

2

743743703

Debtor, through its advisors, is finalizing terms for the infusion of up to $8 million in new money (coupled with the estimated cash projected on effective date of a plan, should aggregate close to $10 million in available cash), which would form the predicate for a Chapter 11 restructuring plan and emergence from Chapter 11, while preserving the going concern value of the Hotel (which is significantly greater than in a forced liquidation). The Debtor's plan would greatly benefit not only the Debtor, but all creditors, including the mechanics and materialman, general unsecured creditors and the mezzanine lender, who would otherwise likely be wiped out by a forced liquidation.

4. The Hotel is managed in the ordinary course of business by the Management Company, a non-debtor affiliate, pursuant to that certain Hotel Management and Services Agreement between the Debtor and the Management Company dated November 21, 2017 (the "Hotel Management Agreement").

5. Retention of a hotel manager is common practice in the hospitality industry and this prepetition arrangement of the Debtor was described in the Debtor's Local Rule Statement [Dkt. 8] (the "Local Rule Affidavit" or "LRA") as follows:

> The Debtor's day to day operations are managed by a hotel manager which has managed the business through [the receiver's] appointment [in the Foreclosure Action], as directed by the Court in the Foreclosure Action. The Debtor intends to maintain the status quo with no change in day-to-day management.

LRA ¶ 38.[4]

6. On August 11, 2021, in order to clarify its relationship with the Management Company and in an abundance of caution, to seek authority for certain transfers between the

---

[4] The Debtor's management arrangement was reiterated in the Debtor's Application to Use Cash Collateral. Dkt. 4, ¶ 37.

3

Debtor and Management Company to fund Hotel expenses, the Debtor filed its Motion to Authorize Intercompany Transfers, which specifically detailed the Debtor's cash management system including Debtor and non-Debtor accounts and certain transfers between them [Dkt. 83] (the "Cash Management Motion" or "CMM").[5]  The Motion is currently returnable October 6, 2021.

7.    Benefit Street filed its Objection late Friday, objecting to the Management Company's Motion to Quash, primarily on the basis that they want to revisit their continuing plan to remove the Management Company (based upon alleged pre-bankruptcy conduct) and because Benefit Street asserts some entitlement to funds loaned to the Management Company pre-petition, under the Paycheck Protection Program.

8.    As initial matter, since the state court action, Benefit Street has been looking to replace the Management Company and take control of the Hotel - - without regard for the other creditors, materialman, mechanics, unsecured creditors, and the devastating loss to the value of the property.  Despite such, the state court authorized the independent receiver appointed therein to retain the Management Company, which has continued in place (pursuant to the Hotel Management Agreement).

9.    Further, despite Benefit Street's misleading and/or erroneous statements ostensibly regarding events dating back nearly a year before the bankruptcy filing,  the post-

---

[5] As detailed in the Cash Management Motion, the Cash Management System includes both the DIP Accounts, into which all revenue from the Debtor's operations is deposited, and the Non-Debtor Accounts, which were established in order to pay creditors and employees of the Management Company for services provided to the Hotel, as well as other Hotel expenditures handled by the Management Company.  While these accounts mirror prepetition accounts of both the Debtor and Management Company, the Debtor established the DIP Accounts as of the Petition Date (as the UST was advised at the initial debtor interview) and the Management Company opened the Non-Debtor Accounts post-petition, dedicated solely to post-petition disbursements made on behalf of the Hotel.

743743703

petition operations have been extraordinary, in particular, given the current economy with challenges to the hospitality industry due to COVID-19 and the continuing impact from the uptick in the Delta variant. The Debtor is operating at over 80% occupancy, is surpassing projections, has operated at significant profit; i.e. nearly $550,000 in June alone, and has accumulated a cash balance of over $1.3 million for same period.

10. In addition, despite being contractually obligated, the Management Company is owed over $2 million in accrued and unpaid management fees and has agreed as a part of a plan to be filed with the court that such fees through the Effective Date shall be deferred and shall not be paid until after payment of all other Allowed Claims and Interests - - for the benefit of all creditors and parties.[6]

11. Further, as noted above, the equity owners of the Debtor, have agreed to act as plan sponsor and infuse up to $8 million into the debtor as part of a confirmed plan.

Another words, despite Benefit Street's allegations regarding pre-bankruptcy conduct, no allegations have been raised by Benefit Street regarding the post-petition operations of the Hotel, which has been run profitably, with millions of dollars to be either waived or advanced as part of the exit plan.

12. Moreover, if there is an issue regarding a pre-petition disclosure by a non-debtor third party, that is not a claim against the Debtor. Here, for transparency, upon the filing, all reporting for both the Debtor and Management Company are being provided and filed in the monthly operating reports. In addition, the Debtor has retained Hilco Real Estate and Getzler Henrich to oversee and supplement the CRO, support putting together financials as part of the exit plan, and to assist in exploring alternative sources of capital and financing.

---

[6] Such treatment goes beyond any agreed subordination to Benefit Street.

743743703

13. As to the payment of PPP loans, the Management Company is the party that has contracted with and obligated to pay the employees salaries, as well as the other operating expenses for the Hotel. As such, any PPP loans would necessarily be available only to the Management Company, as operator, and not the Debtor or Benefit Street. Irrespective however, given that the Debtor is filing a Plan which includes agreement that the Management Company will not be paid until after all other creditors and interest holders on over $2 million in claims by the Management Company, and an infusion of new monies up to $8 million as part of an exit plan, any such issues are at best premature (if relevant at all) as the plan will provide for substantial infusion of new monies, waiver of debt, and repayment of claims.

14. Lastly, it appears that the bank statements and tax returns have been filed on the public docket without any redaction to protect personal information, including employee identification numbers and full bank account numbers. This is concerning, and should be refiled in redacted format to delete any such personal information.

For the above reasons, the Debtor respectfully submits that the Motion and Objection be deferred pending filing (and approval) of the Plan, or if the Court denies the Motion, the Debtor reserves all its rights with respect to any requests seeking privileged information, and for such other and further relief as is just and proper.

*[Remainder of Page Left Intentionally Blank]*

Dated: New York, New York
September 7, 2021

**MAYER BROWN LLP**

By: */s/ Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Proposed Co-Counsel to the Debtor
and Debtor in Possession*

**BACKENROTH FRANKEL &
KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor
and Debtor in Possession*