**Hearing Date: 9/10//2021**
**Hearing Time: 10:00 a.m.**

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Proposed Co-Counsel to the Debtor*
*and Debtor in Possession*

Mark Frankel
**BACKENROTH FRANKEL & KRINSKY, LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>                     Debtor. | Chapter 11<br><br>Case No.: 21-22108 (RDD)- |

**REPLY IN SUPPORT OF DEBTOR'S APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(A) AND 328 OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF MAYER BROWN LLP AS CO-COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION,**
***NUNC PRO TUNC* TO AUGUST 9, 2021**

       96 Wythe Acquisition LLC (the "Debtor"), by and through its undersigned proposed counsel, hereby files this reply further in support of its *Application for an Order Pursuant to Sections 327(a) and 328 of the Bankruptcy Code Authorizing the Employment and Retention of*

*Mayer Brown LLP as Co-counsel to the Debtor and Debtor In Possession, Nunc Pro Tunc to August 9, 2021* [ECF No. 89] (the "Application") and respectfully states as follows:

## PRELIMINARY STATEMENT[1]

1. The *Lender's Limited Objection Concerning Debtor's Application to Retain Mayer Brown LLP* of Benefit Street Partners Realty Operating Partnership, L.P. (the "Lender") [ECF No. 92] (hereafter, the "Objection") is the Lender's latest litigation tactic designed to chill the progress of the Chapter 11 Case and any actions that may challenge the Lender, even if such is in the interests of the Debtor, its estate, and other creditors. After stating that it "does not oppose that relief [to retain Mayer Brown LLP] in general", the Lender in fact proceeds to "express its concerns." Obj., ¶ 1. In expressing its "concerns", the Lender shows a complete disregard of the law and the facts.

2. As set out in the Application and further in this reply, the Debtor submits that the retention of Mayer Brown LLP ("Mayer Brown") as co-counsel is in the best interests of the estate, that the Debtor has met its burden of proof, and that the Court should overrule the Objection and grant the relief sought in the Application. In support, the Debtor firmly disagrees with the woefully inadequate arguments (each of which is tellingly not supported by any legal authority or relevant fact) by the Lender. The Debtor further categorically denies the Lender's conclusory allegations and misrepresentation of facts, which are not only irrelevant to the instant Application, but could have been easily avoided by a careful review of what the Debtor already had demonstrated on the record. The Unites States Trustee has indiated its no-objection to the Application.[2]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

[2] The Application is set for interim approval on September 10, 2021, with a final hearing set for October 6, 2021.

743652144

3. On a macro level, the Debtor is seeking today to bring on a team of new advisors (to supplement current counsel), subject to court approval, including new bankruptcy counsel and financial advisor Hilco Real Estate and Getzler Henrich to assist in preparing for an exit from bankruptcy. A separate application to engage Hilo Real Estate and Getzler Henrich is pending. Operationally, despite the significant challenges to the entire hospitality sector as a result of the COVID-19 pandemic, the Debtor has turned around the business, operating profitably and generating nearly $550,000 in net operating profit in June 2021 alone. With respect to an exit plan, the Debtor's plan of reorganization, to be filed shortly, is anticipated to include the infusion of up to $8 million in new money (coupled with the estimated cash projected on effective date of a plan, should aggregate close to $10 million in available cash), which would form the predicate for a Chapter 11 restructuring plan and emergence from Chapter 11 – while preserving the going concern value of the Hotel (which is significantly greater than in a forced liquidation). The Debtor's plan would greatly benefit not only the Debtor but also all of its creditors, including the mechanics and materialman, general unsecured creditors, and the mezzanine lender, who would otherwise likely be wiped out by a forced liquidation.

## OBJECTION IS NOT PERSUASIVE

I. **The Lender Without Support Seeks to Limit the Scope of Retention**

4. First, the Lender questions the progress of the case, yet seeks to block the Debtor from putting in place a team to assist with an exit. Mayer Brown is working with the Debtor's team of professionals in formulating a plan of reorganization, is reviewing the Lender's (and other) claims, and has also reached out to the Lender to engage in a dialogue regarding, amongst other things, the Debtor's exit from bankruptcy. Further, while the Lender states that the Debtor has not engaged financial advisors, the Debtor, by separate application, has sought to engage Hilco Real Estate and Getzler Henrich as co-financial advisors.

5. Second, the Lender attempts to preemptively limit the scope of engagement without citing to any legal authority. *See* Obj., ¶¶ 3-6. However, notwithstanding the need for court approval under 11 U.S.C. § 327, a debtor-in-possession has the "inherent right . . . to employ the counsel of their choice" without interference from creditors. *In re Diamond Mortgage Corporation of Illinois*, 135 B.R. 78, 92 (Bankr. N.D.Ill. 1990); *see In re Magna Prod. Corp.*, 251 F.2d 423, 424 (2d Cir. 1958). "Only in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel", for "[t]he relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously." *In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934) (quoted by *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007)); *In re Codesco, Inc.*, 18 B.R. 997, 999-1000 (Bankr. S.D.N.Y. 1982) (ruling that former counsel to creditors' committee may be appointed to represent the chapter 7 trustee).

6. In addition, the Lender improperly seeks to bar any investigation into its actions, claims, and liens, stating that retention should effectively bar or limit prosecution (and presumably defense) of any claims by or against the Lender.[3] Such position, if adopted, would be an abdication of the Debtor's powers and rights as the debtor-in-possession without due process. Further, the Lender also seeks to argue the merits of claims now before the court, erroneously and summarily asserting that its claim may not be challenged (and that there are no claims of any type or nature against Lender) while in the same breath arguing that the Debtor should not be able to look into any such claim. In fact, the only carve-out provided by the Lender to investigate the extent,

---

[3] The Debtor is reviewing whether Lender's liens are properly perfected, as well as the extent, validity, and priority of Lender's claim, in particular, given additional and continuing claims for default rate interest, Lender's conduct, that a large portion of default interest and fees arose when the hospitality market was virtually shut down due to the COVID-19 pandemic, amongst other things.

743652144

validity, and priority of its claims, was limited to $10,000.[4]  The Lender's arguments are baseless, and run contrary to the Debtor's obligations to the estate and all creditors.

7. As to the scope of services, the Application makes clear that Mayer Brown intends to work as "co-counsel in this chapter 11 case." App., ¶ 6.  The Application further states that Mayer Brown was engaged by the Debtor because of its experience in complex bankruptcy and restructuring matters and its extensive expertise with complex bankruptcy and litigation issues. App., ¶ 11.

8. The scope of services, as detailed in the Application, primarily concerns providing counsel regarding: complex bankruptcy and litigation matters relating to the Debtor's exit from chapter 11; negotiation (and if not resolved, any litigation) concerning the extent, validity, and priority of the Lender's claims and liens; proceedings regarding the confirmation of the Debtor's plan of reorganization; and any attendant litigation regarding the foregoing.  Further, despite the Lender's efforts to spin this as a small and unimportant case, upon information and belief, the Hotel has a value in excess of $100 million, with dozens of other creditor holding millions of dollars in additional claims.

9. Accordingly, since its engagement, Mayer Brown has focused its efforts on the Chapter 11 Case.  To date, the proposed co-counsel has been, among other things, getting up to speed on the background of the case as well as identifying legal issues, communicating with various stakeholders, formulating an exit strategy and a proposed plan of reorganization (which the Debtor intends to file well in advance of the expiration of its exclusivity period of October 21, 2021), reviewing the claims (including the Lender's claim), and assisting the Debtor in its now-

---

[4] Under the interim cash collateral orders entered in the Chapter 11 Case, there is no carve out for estate professionals, and only a $10,000 carve out for a trustee, if any.

filed proposed retention of its financial advisors (which information the Debtor previewed but the Lender conveniently ignored). App., ¶ 13 ("the Debtor expects to submit shortly separate applications to retain financial advisor(s)"); Obj., ¶ 6 ("the Debtor has inexplicably failed to retain a financial professional").

**II.    The Lender Attempts to Mislead the Court Ignoring the Debtor's Representation on the Record**

10. In the Objection, the Lender also makes misleading factual allegations that would be invalidated even by a cursory review of the Application. Due to the sensitive nature of the allegations, the Debtor is compelled to reiterate what it has already represented in the Application.

11. The Lender accuses the Debtor of being wasteful with the retention of Mayer Brown despite multiple reassurances throughout the Application and the Spelfogel Declaration that Mayer Brown will be rendering its professional services alongside the main counsel in a non-duplicative, complementary, and efficient manner. *See* App., ¶¶ 6-9, 13, 17; *see* Spelfogel Declaration ¶ 4. Here, the Lender spends much time asserting that the proposed retention of Mayer Brown would be duplicative. This Lender's assertion ignores the fact that the U.S. Trustee encourages debtors to retain co-counsel to perform services under the Appendix B Guidelines. App., ¶ 7.

12. The Lender's accusation fails for many of the same reasons. Rather than properly address the Application, the Lender sets aside the representations made in the Application altogether and resorts to making a series of incorrect, misleading factual allegations in a conclusory manner. An example of this is the Lender's mischaracterization of counsel who have appeared in the Chapter 11 Case. *See* Obj., ¶¶ 2-3. Jason A. Nagi of Offit Kurman P.A., referred in the Objection, was counsel in the state action court and described himself as proposed special counsel in certain filings before the Court. Before his retention application could be filed, however, the

6

743652144

decision was made to retain another firm as counsel. The other counsel, David McGrail of McGrail & Besinger LLP, referred to in the Objection as counsel that appeared prior to Mr. Nagi, in fact did some work in anticipation of replacing Mr. Nagi and similarly described himself as proposed special litigation counsel, but soon after declined the engagement. None of the counsels made a notice of appearance or a retention application; in fact, Mayer Brown is the **second** group of professionals to formally appear and submit a retention application on behalf of the Debtor. Contrary to what the Lender will lead the Court to believe, the Debtor has seen meaningful progress, including the ongoing formulation of the term sheet and plan of reorganization, since the commencement of the Chapter 11 Case. As such, the Debtor submits that the retention of Mayer Brown as co-counsel will not be duplicative but in fact be in the best interests of the estate.

13. Further, the Lender argues that Mayer Brown's fee should not be paid from cash collateral when the Debtor is not seeking to request that Mayer Brown's fees be paid from the cash collateral budget at this time. Obj., ¶ 7. The Lender may reserve its rights to object to the use of cash collateral at a later time when the Debtors actually seek such relief.

14. Lastly, to the extent there are any claims belonging to the estate that need to be investigated, the Debtor, with the advice of counsel, as fiduciary of the estate. is undoubtedly best-positioned to investigate and prosecute claims on behalf of the estate. Even if the Lender were to argue that an alternate fee arrangement weighs in favor of limiting the scope of engagement – to be clear, the Lender does not make any substantive argument whatsoever in the Objection – the law is well-established in the Second Circuit that a compensation to a debtor's counsel from a third party does not in it and of itself create an interest adverse to the estate. *See In re Lan Dan*

743652144

*Enterprises*, 211 B.R. 93, 96 (Bankr. S.D.N.Y. 1998) (citing a five-factor test to determine whether compensation to the debtor's counsel to a third party is an impermissible conflict of interest).[5 6]

## CONCLUSION

15. In sum, the Objection is a poorly veiled attempt by the Lender to take another jab at the Debtor at the expense of the estate and all stakeholders who must continue to endure and indirectly bear the expense of defending against the Lender's exceedingly aggressive litigation tactics. Contrary to what the Lender argues without any legal or factual support, the proposed retention of Mayer Brown is in the best interests of the estate, and the Debtor has overwhelmingly carried its burden of proof in all respects. As such, the Debtor respectfully requests that the Court enter an order granting the relief requested in the Application and such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

[5] While there is no burden on the Debtor to rebut an argument that the Lender failed to make, the Debtor submits, for the Court's consideration, that the factors in *In re Lan Dan Enterprises* have been met here. Further, Heritage Equity Partner ("**HEP**") and the Debtor have acknowledged that Mayer Brown does not represent HEP and only represents the Debtor consistent with factors set out in *In re Lan Dan*, 221 B.R. at 96. *See* Spelfogel Declaration ¶¶ 7-16

[6] The Lender also objects to any claim by HEP for reimbursement of monies advanced for legal fees and expenses under the engagement. As provided in the Application, no claim has been filed, and while HEP reserves the right to file such, the Application expressly provides (and the order approving the Application may so provide), that any party expressly reserves the right to object to any such claim, if any.

743652144

Dated: New York, New York
      September 7, 2021　　　　　**MAYER BROWN LLP**

By:   */s/ Douglas E. Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Proposed Co-Counsel to the Debtor and Debtor in Possession*

- and -

Mark Frankel
**BACKENROTH FRANKEL & KRINSKY, LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor and Debtor-in-Possession*

743652144