# Kramer Levin

**P. Bradley O'Neill**                          1177 Avenue of the Americas
Partner                                         New York, NY 10036
**T** 212.715.7583                              **T** 212.715.9100
**F** 212.715.8382                              **F** 212.715.8000
boneill@kramerlevin.com

September 7, 2021

<u>BY ECF AND EMAIL</u>

The Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

Re:    <u>*In re 96 Wythe Acquisition LLC*, Case No. 21-22108 (RDD)</u>

As the Court is aware, we represent Benefit Street Partners Realty Operating Partnership, L.P. ("**Benefit Street**").  I write concerning the scheduling of the Motion to Quash Rule 2004 Subpoenas [ECF No. 90] (the "**Motion to Quash**") filed by The Williamsburg Hotel BK LLC (the "**Hotel Manager**") and, in particular, the recent adjournment of the hearing originally scheduled for this Friday, September 10, 2021, over Benefit Street's objection.

The Hotel Manager and Debtor's conflicted controlling insiders are the same. This is a blatant example of a dishonest fiduciary acting to the detriment of the Debtor's estate and creditors. The Hotel Manager – who manages the estate's Hotel and collects its revenues – seeks an order barring Benefit Street's Rule 2004 discovery in its entirety. It does this, even though documents produced by the PPP Loan bank indicate that the Hotel Manager made serial misrepresentations to the bank, and diverted over $1 million in PPP Loan proceeds away from Hotel operations and into an unidentified account that the principals of the Debtor and Hotel Manager refuse to disclose, while allowing millions in real property taxes to go unpaid.  In the process, it provided the bank with tax returns in which the Hotel Manager appears to claim *all* of the Hotel's revenues as its own.  Shockingly, in its reply brief, the Hotel Manager denies none of these facts.  Instead, it argues that if anyone was defrauded it was the PPP lender or the U.S. government – and thus estate stakeholders have no standing to investigate it.  This defense is preposterous.  The Hotel Manager's apparent dishonesty, mismanagement, and potential self-dealing are directly relevant to the operation of the estate.  Not only do these acts give rise to claims by the estate, but such misconduct warrants the appointment of an independent fiduciary.  The discovery Benefit Street seeks – as secured lender in this proceeding – is thus critical to the Debtor's estate and should not be delayed at the unsupported request of the Hotel Manager over the objection of Benefit Street.

The Hotel Manager's adjournment of the Motion to Quash until October should be vacated and the matter heard on September 10, 2021, as originally scheduled.

September 7, 2021
Hon. Robert D. Drain

## Background

The Court is familiar with Benefit Street's efforts to take discovery concerning the PPP Loan obtained by the Hotel Manager in April 2020 – which is controlled by the same insiders who are the controlling fiduciaries of the Debtor.  Initially, Benefit Street sought this information from the Debtor, which produced a handful of documents, some of which were only partial, non-final documents.  At the hearing held on July 20, 2021, the Debtor claimed this production exhausted the responsive materials in its possession.  At the Court's suggestion and with its authorization, on August 2, 2021, Benefit Street therefore served Rule 2004 Subpoenas on the Hotel Manager and on Live Oak Banking Company ("**Live Oak Bank**"), the bank that issued the PPP Loan.

While the Hotel Manager has yet to produce a single piece of paper in response to Benefit Street's subpoenas, Live Oak Bank has produced documents and those documents are profoundly troubling.  Even more troubling, the Hotel Manager has now filed a response *which does not contest the facts these Live Oak Bank materials appear to demonstrate*.  *See* ECF No. 101.

Among other things, Live Oak Bank's documents show that:

- The Hotel Manager, through its principals – *who are also the principals of the Debtor* – had repeated written communications with Live Oak Bank, none of which the Debtor produced;

- The Hotel Manager inexplicably omitted the Debtor from a list of affiliates in two separate PPP loan applications *even though the Debtor was the owner of the Hotel and the loan was based on the Hotel's operations and staff*.  One of the Debtor's principals, acting on behalf of the Hotel Manager, certified these representations were accurate and complete, a certification that appears to have been false;

- The bank did not discover the Hotel Manager's misrepresentations immediately, but when it did, it denied the second loan application, confirming their materiality;

- In a last ditch effort to persuade the bank to issue the second PPP loan based on the Hotel's operations, the Debtor's principals, again acting on behalf of the Hotel Manager, submitted purported tax returns – signed by one of the principals but not the accountant that allegedly prepared them – in which the Hotel Manager claimed that it had earned revenues mirroring those the Debtor's schedules stated the Debtor earned in the same years ($20,034,954 in 2019 and $15,117,101 in 2018) – an apparent impossibility when the Hotel Manager's fees were limited to 3% of revenues (or $601,048 and $453,513, respectively) and the Hotel was the only hotel it managed;

- The Hotel Manager diverted the PPP Loan proceeds from the Hotel's operating accounts into an unidentified account, where at least $1,080,376 (or 75%) of them appear not to have been used to fund payroll or pay other expenses contemplated by the PPP Loan and the CARES Act; and

September 7, 2021
Hon. Robert D. Drain

- The Hotel Manager obtained forgiveness of the PPP Loan based on Hotel bank statements showing that $1,589,802 of payroll expenses and utility payments were funded *out of Hotel revenues* rather than PPP proceeds, even though $1,080,376 of the PPP Loan proceeds may remain in unidentified accounts, available for use by the insiders, rather than the employees and other creditors of the Hotel.

On their face, these documents directly implicate the integrity and fitness of the entity that manages the Hotel and collects its revenues, as well as the principals that control both it and the Debtor. Remarkably, at the same time the Hotel Manager seeks to delay the hearing on its own production, it does not contest what the Live Oak Bank documents appear to show. Instead, in a response filed Monday evening, the Hotel Manager argues only that, even if it defrauded Live Oak Bank, that fraud does not provide the estate with any claim or other basis for Benefit Street to take Rule 2004 discovery. Those assertions are facially wrong. Benefit Street now contests the recent adjournment so that its Rule 2004 discovery of the Hotel Manager can continue in a timely fashion.

## The Contested Adjournment of the Motion to Quash

Benefit Street's subpoenas sought documents concerning the PPP Loan and the Hotel Manager's staff and operations. (Benefit Street later served a 30(b)(6) deposition subpoena on the Hotel Manager, as well). Consistent with the time period specified in the Order authorizing the discovery [ECF No. 80], the subpoenas called for production by August 16, 2021.

Counsel appeared for the Hotel Manager on August 9, a week after service, promising a "comprehensive response" to the document requests. Just two days later, the Hotel Manager requested an extension of time to respond to the subpoenas, which Benefit Street agreed to extend for one week on the understanding the a "comprehensive" production was forthcoming. But on August 22, 2021, the day before the extension of time would expire, having neither made a "comprehensive response" to the subpoenas or even a good faith attempt to meet and confer – the Hotel Manager filed a motion seeking to quash the subpoenas *in toto*. It argued that the discovery was duplicative of the Debtor's production and irrelevant, because the PPP Loan was made to a non-debtor entity and, as such, did not implicate the estate – even though the loan was predicated upon the Debtor Hotel's operations. The Hotel Manager noticed the Motion to be heard this Friday, September 10, 2021 – over a month after service of the subpoenas.

Because of the Motion to Quash, no Rule 2004 discovery has proceeded against the Hotel Manager.

In the weeks after filing the Motion to Quash, the Hotel Manager did not contact Benefit Street, which was preparing its objection to the Motion to Quash. Then, in the middle of the day last Friday, the Hotel Manager's counsel called Benefit Street repeatedly. Within an hour, it contacted the Court's staff, asking for almost a one-month adjournment of the hearing it had itself noticed in its Motion to Quash. Benefit Street objected, but the Court's staff appears to have directed the Hotel Manager's counsel to file a notice of adjournment until October 6.

September 7, 2021
Hon. Robert D. Drain

### No Adjournment of the Motion to Quash Is Warranted

This adjournment, granted to the Hotel Manager without Benefit Street's consent, is highly prejudicial. As the Court knows, Benefit Street has actively pursued discovery concerning the PPP Loan for several months. The pending subpoenas were served at the Court's suggestion and with its authorization. The Hotel Manager has not offered *any* justification for the adjournment of the hearing. Not only has it already replied to Benefit Street's objection, but it cannot claim prejudice. *Because the Hotel Manager is controlled by the very same people who control the Debtor*, it has been aware of the discovery since before the subpoenas were served. Nor did these same individuals – in their capacity as "Hotel Manager" – make any effort to meet and confer with Benefit Street before it filed its blanket Motion to Quash. In fact, their counsel waited until the day Benefit Street's objection to the motion was due (despite knowing that the matter was going to be contested) before seeking an adjournment of the schedule.

As importantly, the Hotel Manager's "relevance" arguments are frivolous. The documents Live Oak Bank produced indicated that the Hotel Manager's principals – who are also the *Debtor's* principals – may have defrauded a bank. The same principals submitted tax returns in support of their loan application that reflect the Hotel Manager claiming revenues that the Debtor's Schedules indicate were earned by the Debtor. Once the PPP Loan proceeds arrived, the Hotel Manager diverted them from the Hotel's master account to an unidentified account and appears to have used around 25% of those proceeds to pay expenses of the type contemplated by the PPP and the CARES Act. At the most basic level, this diversion suggests that the Hotel Manager did not use all available resources to benefit the Hotel it managed. In addition, it appears to have misapplied Hotel revenues (which were Benefit Street's cash collateral) to pay payroll and utility expenses that the federal government had provided already funded. Not only did these machinations deprive the Debtor of over a million dollars in government assistance funds, leaving the Debtor with insufficient funds to pay millions of dollars in real estate taxes (for which it is paying 18% annual interest), but discovery is needed to see whether the Hotel Manager kept loan proceeds for itself or its insiders. Other courts confronted with similar behavior have not been sympathetic. *See In re EHT US1, Inc.*, No. 21-10036 (CSS) (Bankr. D. Del.), May 26, 2021 Hearing Tr. at 49 (PPP loan fraud "is beyond the pale. It was reprehensible. It was a violation of public trust. It's an abuse of Congress' attempt to help businesses survive the pandemic, not to line the pockets of rich people."). Each of these facts suggests that the Debtor's principals are unfit to act as fiduciaries on behalf of this estate and that the estate may have claims against them or the Hotel Manager for mismanagement or conversion, among other things. Regardless, the Hotel Manager's suggestion that these matters are not proper subjects for Rule 2004 discovery is not remotely credible.

In contrast, Benefit Street is prejudiced by the extension. As shown in the Objection it filed Friday evening – that facts of which are not disputed by the Hotel Manager – the discovery Benefit Street seeks is directly relevant to the Debtor's estate, addressing potential claims against the controlling insiders, as well as self-dealing and other misconduct by estate fiduciaries. At the same time, the Hotel Manager's objections are flimsy, at best. By granting the requested adjournment of a contested matter over Benefit Street's objection, the Hotel Manager has been

September 7, 2021

Hon. Robert D. Drain

permitted to award itself an additional 30-day reprieve from critical Rule 2004 discovery directly impacting this case and relevant issues that should be timely addressed by the parties and the Court.

For these reasons, the Court should direct that the Notice of Adjournment be revoked and the hearing on the Motion to Quash proceed on the originally scheduled date of September 10, 2021.

Respectfully submitted,


/s/ P. Bradley O'Neill
P. Bradley O'Neill


Cc:    James Glucksman, Esq.
       Mark Frankel, Esq.
       Jason Nagi, Esq.
       Douglas Spelfogel, Esq.
       Douglas Kellner, Esq.
       Gregory Zipes, Esq.