

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Douglas E. Spelfogel**
T: +1 212 506 2151
DSpelfogel@mayerbrown.com

September 8, 2021

BY EMAIL

The Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

Re:   In re 96 Wythe Acquisitions LLC
      Case No. 21-22108

Dear Judge Drain:

We are writing on behalf of 96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), in response to the letter (the "Letter") filed by Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street") late Tuesday [Dkt.104] in connection with a motion to quash [Dkt. 90] (the "Motion") filed by Williamsburg Hotel BK LLC (the "Management Company"), a non-debtor affiliate managing the Debtor's hotel property (the "Hotel").

In what can be only be termed litigation by ambush, Benefit Street filed the Letter (essentially a sur reply) after the objection and response deadlines for the Motion, repeating and doubling down on a number of false and/or misleading contentions with respect to **pre-petition** conduct by the Management Company – nearly a year **prior** to the petition date – in an apparent effort to revisit its plan to oust the Management Company (which was previously rejected in the state court action) and ultimately force the Hotel into a fire sale liquidation for Benefit Street's own benefit, and to the detriment of other creditors.

To correct the record, the Debtor responds to certain of the more egregious misrepresentations in the Letter as set forth below.

1.      **Facts are Disputed**:  Benefit Street falsely claims that certain "facts" are not contested. To the contrary, the Debtor (as well as the Management Company) filed responses [Dkt. Nos. 102, 101] challenging Benefit Street's contentions in response to the Motion.  Tellingly, Benefit Street doesn't acknowledge, let alone respond to the Debtor's Response.

2.      **The Management Company has operated the Hotel profitably during the bankruptcy**: Benefit Street asserts that the Management Company is a dishonest fiduciary in control of Hotel revenue.  This too is belied by the facts.  As an initial matter, Benefit Street's allegations relate to **pre-bankruptcy** conduct, some year prior to the bankruptcy filing.  There is not a single allegation raised by Benefit Street regarding the **post-petition** operations of the Hotel, which has been run profitably despite the unprecedented effects of the ongoing COVID-

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

743756577

The Honorable Robert D. Drain
September 8, 2021
Page 2

19 pandemic. Benefit Street completely disregards key metrics raised in the Debtor's Response, including the following:

- Despite the unprecedented challenges resulting from COVID-19, the *Debtor is operating profitably and exceeding financial projections*. For example, in June, the Debtor's net operating profit was nearly $550,000 and it held a cash balance of over $1.3 million.

- The Debtor recently brought on a team of new advisors (to supplement current counsel), including new bankruptcy counsel and Hilco Real Estate and Getzler Henrich as co-financial advisors to assist in preparing for an exit from bankruptcy (applications pending).

- The Debtor through its advisors is finalizing terms for a cash infusion by its equity holders of up to **$8 million** into the Reorganized Debtor (which, coupled with the estimated cash projected on the effective date of a plan, should aggregate close to **$10 million** in available cash), which would form the predicate for a Chapter 11 restructuring plan and emergence from Chapter 11, while preserving the going concern value of the Hotel (which is significantly greater than in a forced liquidation).

- The Debtor's plan would greatly benefit not only the Debtor, but all creditors, including the mechanics and materialman, general unsecured creditors and the mezzanine lender, who would otherwise likely be wiped out by a forced liquidation.

- The Management Company has agreed to defer over **$2 million** in accrued and unpaid management fees through the effective date under the plan until after payment of all other allowed claims and interests for the benefit of all creditors and parties-in-interest.[1]

3. **Neither the Debtor nor Benefit Street have any claim to PPP funds.** Benefit Street asserts that $1 million in prepetition funds received by the Management Company through a PPP loan was improperly retained by the Management Company. However, this is at best a contested fact. While the Debtor is reviewing, to date Benefit Street presents no evidence that the funds in question belong to the Debtor or that Benefit Street has any right to such funds. As to the payment of the PPP loan, the Management Company is the party that has contracted with and is obligated to pay the employees' salaries, as well as the other operating expenses for the Hotel.[2] As such, any PPP loans would necessarily be available only to the Management Company as operator, and not the Debtor or Benefit Street. Irrespective however, given that the Debtor is finalizing the terms of a plan which includes agreement that the Management Company will not be paid until after all other creditors and interest holders on over **$2 million** in claims by the

---

[1] Such treatment goes beyond any agreed subordination to Benefit Street.

[2] See Debtor's Response pp. 3-4.

743756577

The Honorable Robert D. Drain
September 8, 2021
Page 3

Management Company, and an infusion by current equity of new monies up to **$8 million** as part of an exit plan, any such issues are at best premature (if relevant at all) as the plan will provide for substantial infusion of new monies, waiver of debt, and repayment of claims.[3]

Further, and tellingly, Benefit Street appears to backpedal at the end of its Letter, which implies (as an alternative argument) that its claim here may not be a fraud at all, but rather, that the Management Company didn't use all available resources for the Hotel. However, there is no such requirement under the Management Agreement – the only contractual relationship is between the Debtor and Management Company. Moreover, given an up to 8X contribution by equity (10X when adding the deferral of the Management Company claim) to fund the plan (hardly a fraud against the Debtor), the issues raised in the Letter are at best premature, and consequently, should be deferred until a chapter 11 plan is submitted and subject to the confirmation process.[4]

The Debtor is available to answer any questions.

Respectfully submitted,


*/s/ Douglas E. Spelfogel*

Douglas E. Spelfogel



cc:    Bradley O'Neil, Esq.
       James Glucksman, Esq.
       Mark Frankel, Esq.
       Gregory Zipes, Esq.

---

[3] Regarding real estate taxes, there is a payment plan that has been signed by the Debtor to pay such taxes in full, which agreement is to be assumed under the Debtor's proposed plan of reorganization.

[4] As provided in the Debtor's Response, if there is an issue regarding a pre-petition disclosure by a non-debtor third party, that is not a claim against the Debtor. Here, for transparency, upon the filing, all reporting for both the Debtor and Management Company are being provided and filed in the monthly operating reports. In addition, the Debtor has retained Hilco Real Estate and Getzler Henrich to oversee and supplement the CRO.

743756577