**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Proposed Co-Counsel to the Debtor*
*and Debtor in Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>                                Debtor. | Chapter 11-<br><br>Case No.: 21-22108 (RDD)<br><br>Hearing Date and Time:<br>September 10, 2021 at 10:00 a.m.<br>(prevailing Eastern time) |

## DEBTOR'S STATUS REPORT

TO:    THE HONORABLE ROBERT D. DRAIN,
         UNITED STATES BANKRUPTCY JUDGE:

      96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession (the

"Debtor"), by its undersigned attorneys, Mayer Brown LLP and Backenroth Frankel & Krinsky,

LLP, submits this status report (the "Report") in connection with the upcoming Court hearings

743781268                                                               1

scheduled for Friday, September 10, 2021. In support of its Report, the Debtor respectfully states as follows.

1. **Application to Engage Mayer Brown LLP [Dkt. 89]:** The Debtor and Benefit Street Partners Realty Operating Partnership, L.P. and its purported assignee, BSPRT 2018-FL3 Issuer, Ltd. (collectively, "Benefit Street"), have agreed to resolve the limited objection filed by Benefit Street [Dkt. 92] with respect to the application to engage Mayer Brown LLP as co-counsel for the Debtor [Dkt. 89] by allowing such retention on an interim basis through October 6, 2021, with the proviso that cash collateral will not be used during such period to pay fees and expenses, without prejudice to all parties' rights, which would be reserved for a final hearing on October 6, 2021. The Motion is going forward.

2. **Motion to Use Cash Collateral [Dkt. 4]:** With respect to use of cash collateral, the Debtor provided Benefit Street with a proposed budget approximately two weeks ago and a proposed form of order last week substantially tracking the form of orders in place for the prior grant of interim use of cash collateral [Dkt. 52]. The proposed form of order provided for use of cash collateral through October 6, 2021 to provide a short period of additional time while the Debtor finalizes its plan of reorganization. To date, the only objection Benefit Street raised to the form of order or budget, is that it does not want professional fees paid from the cash collateral. The Debtor agreed as part of such proposed further interim order to make clear that professional fees will not be paid from Benefit Street's cash collateral during the proposed extension period through October 6, 2021 without prejudice to all parties' rights. Notwithstanding, to date, Benefit Street has not agreed to entry of the proposed form of order. Use of cash

collateral consistent with the budget as modified per above (to make clear that professional fees will not be paid from the cash collateral) is necessary to maintain the Debtor's operations and preserve the value of the Hotel. A copy of the proposed further interim order (with a redline against the last interim order) and budget are attached hereto as **Exhibit "A"**. The Motion is going forward.

3. **Operations:** With respect to operations, the Debtor has continued to operate the Williamsburg Hotel (including its food and beverage and event venues) profitably during the bankruptcy case, despite the continuing unprecedented effects of the ongoing COVID-19 pandemic *and exceeding financial projections*. As provided in the monthly operating reports for the last two reporting periods, in June, the Debtor's net operating profit was nearly $550,000 and it held a net cash balance of over $1.3 million and in July the net operating profit was approximately $671,000 and it held a net cash balance over $1.8 million.

4. **Plan of Reorganization:** As previously reported, the Debtor recently brought on a team of new advisors (to supplement current counsel), including new bankruptcy counsel and financial advisor Hilco Real Estate/Getzler Henrich to assist in preparing for an exit from bankruptcy.[1] Specifically, through its advisors, the Debtor is finalizing terms for the infusion of up to $8 million in new money (coupled with the estimated cash projected on the effective date of a plan should aggregate close to $10 million in available cash), which would form the predicate for a Chapter 11 restructuring plan and emergence from Chapter 11, while preserving the going concern value of the Hotel (which is significantly greater than in a forced liquidation). The

---

[1] Retention applications are pending.

Debtor's plan would greatly benefit not only the Debtor, but all creditors, including the mechanics and materialmen, general unsecured creditors and the mezzanine lender, who would otherwise likely be wiped out by a forced liquidation.

5. **Insurance Lift Stay Motion [Dkt. 45]:** Juan Ramirez filed a motion to permit stay relief to proceed with a state court personal injury action.  In the affirmation annexed to the stay motion, the movant's attorney states that the movant agrees to limit is claims to the Debtor's available insurance coverage.  The stay relief motion does not purport to be filed on behalf of Carmen Nina Ramirez, the other plaintiff in the state court action, and does not include a representation that Mrs. Ramirez agrees to pursue the state court action only to the extent of available coverage.  After being unable to reach counsel for the movant to clarify the motion, the Debtor filed an objection and reservation of rights [Dkt. 99] providing that any stay relief should be limited to Juan Ramirez and only to the extent of insurance coverage, with any claim against the Debtor above coverage, if any, waived, and objecting to any relief as to Carman Nina Ramirez.  The Motion is going forward.

6. **Extend time to Remove**:  There is pending a motion to extend time for the Debtor to file notices of removal of civil action.  This is unopposed.

7. **FRBP 2004 Motion [Dkt. 78]**: Lastly, there is a motion pending by Williamsburg Hotel BK LLC (the "Management Company"), a non-debtor affiliate, to quash a FRBP 2004 request by Benefit Street [Dkt 90].  While the Debtor does not take a position on the substantive relief, the Debtor filed a response [Dkt. 102] to clarify certain misleading and/or erroneous statements asserted by Benefit Street, and requesting that

    the motion be continued for a short period pending the submission (and approval) of the Debtor's plan of reorganization.

8. In response to the Debtor and Management Company [Dkt. 102 and 101] responses, Benefit Street filed two belated documents in further support of its objection to the Management Company's motion to quash [Dkt. 104 and 100], the last filing yesterday is titled objection to Debtor's motion to approve intercompany transfers [Dkt. 106] – which motion is not presently before the court.[2]  The Debtor objects to the belated submission, which provided little if any notice and opportunity to respond, and reserves its right to respond further to such.

9. Without prejudice to the foregoing, the Debtor submits that Benefit Street's assertions that it is only now being made aware of the non-debtor, Management Company bank accounts (and the assertion that Benefit Street is only just being made aware that the Management Company is overseeing the Debtor's day-to-day operations) are false – Benefit Street received copies of bank statements, payroll reports and other documentation going back to before the bankruptcy filing, since March of 2020, disclosing the same.  Further, during the state court foreclosure action and again at the start of the bankruptcy case, 18 months of bank statements from the Management Company were provided.  Benefit Street also receives copies of all bank statements from the Debtor's DIP accounts and the Management Company operating accounts, all

---

[2] At the request of the U.S. Trustee and Benefit Street, the Debtor's Motion to Authorize Intercompany Transfers [Dkt. 83] (the "Cash Management Motion") was adjourned to October 6, 2021 together with the UST's motion to convert or dismiss [Dkt. 87].

of which are filed with the Court.[3]  Further, all Hotel revenues are deposited into the Debtor's DIP accounts, which also hold the cash on hand.

10. While accrued, at no point did the Management Company get paid the management fee, incentive fee, or any expense reimbursement, as Benefit Street is aware from the reporting.  The Motion is going forward.

Dated: New York, New York
September 9, 2021

Respectfully submitted,

**MAYER BROWN LLP**

By: /s/ *Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910

*Proposed Co-Counsel to the Debtor
and Debtor in Possession*

**BACKENROTH FRANKEL & KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor
and Debtor in Possession*

---

[3] On August 11, 2021, in order to clarify its relationship with the Management Company and in an abundance of caution, to seek authority for certain transfers between the Debtor and Management Company to fund Hotel expenses, the Debtor filed its Cash Management Motion. The Cash Management Motion is currently returnable October 6, 2021.