**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
                                                            :
In re:                                                      :   Chapter 11
                                                            :
96 WYTHE ACQUISITION LLC,                                   :   Case No. 21-22108 (RDD)
                                                            :
                    Debtor.                                 :
                                                            :
------------------------------------------------------------X
```

# FIFTH INTERIM ORDER FOR USE OF CASH COLLATERAL

Upon the motion (the "Cash Collateral Motion") of 96 Wythe Acquisition LLC, the debtor and debtor in possession herein (the "Debtor") seeking the entry of an order pursuant to §§ 363(c)(2)(B) and 506(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (A) authorizing the Debtor to use cash collateral, as that term is defined in § 363(a) of the Bankruptcy Code (the "Cash Collateral") on an interim basis in accordance with the Budget annexed to the Cash Collateral Motion as Exhibit A, pending a final hearing (B) granting adequate protection to Benefit Street Partners Realty Operating Partnership, L.P. (the "Lender") and scheduling a Final Hearing (defined below) pursuant to Bankruptcy Rule 4001; and there being due and sufficient notice of the Cash Collateral Motion and the First Interim Hearing, defined below; and upon this Court's prior orders dated March 5, 2021 [ECF No. 15] (the "First Interim Order"), March 19, 2021 [ECF No. 21] (the "Second Interim Order"), April 21, 2021 [ECF No. 28] (the "Third Interim Order") and June 21, 2021 [ECF No. 52] (the "Fourth Interim Order") authorizing the Debtor's use of cash collateral pending the Final Hearing; and

The Court having considered the Cash Collateral Motion, the pleadings filed with the Court, including the objection to the Cash Collateral Motion filed by the Lender, the evidence

1

submitted and arguments proffered or adduced at the first interim hearing (the "First Interim Hearing") held before the Court on March 2, 2021, the second interim hearing (the "Second Interim Hearing") held before the Court on March 15, 2021, the third interim hearing (the "Third Interim Hearing") held before the Court on April 5, 2021, the fourth interim hearing (the "Fourth Interim Hearing") held before the Court on June 2, 2021, and the fifth interim hearing (the "Fifth Interim Hearing") held before the Court on September 10, 2021, and it appearing that granting the interim relief requested as and to the extent provided in this Fifth Interim Order and entering this Fifth Interim Order is necessary to avoid immediate and irreparable harm to the Debtor, its creditors and its estate pending the final hearing to be held on October 6, 2021 at 10:00 a.m. (the "Final Hearing") and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The request to use Cash Collateral is granted on a further interim basis solely in accordance with and subject to the terms and conditions of this Fifth Interim Order and shall terminate on the earliest to occur of (the "Termination Date"): (i) October 6, 2021, unless such date is extended by the Lender or a further extension of authority is granted by the Court, (ii) the entry of an order of this Court terminating such authority; (iii) the dismissal of the chapter 11 case (the "Case") or conversion to a case under chapter 7 of the Bankruptcy Code; and (iv) the date that is five (5) days after the Lender provides a written notice of an Event of Default (the period during which the Debtor is authorized to use Cash Collateral pursuant to this Fifth Interim Order being referred to as the "Interim Period"), except to the extent the Court has entered a further

interim or final order authorizing the Debtor's continued use of Cash Collateral beyond the Interim Period.

2.      The Debtor may use the Cash Collateral during the Interim Period solely to pay the ordinary, necessary and reasonable expenses of operating the Williamsburg Hotel (the "Hotel") that come due (and as they come due in the ordinary course of business) during the Interim Period solely in accordance with and subject to the budget attached hereto as **Exhibit 1** (the "Budget") but expressly excluding professional fees, provided that all parties' rights to payment of such fees are expressly reserved, it being the understanding of the Parties that the line item for professional fees in the Budget shall be deemed deleted, and, for the avoidance doubt, without any prepayment or acceleration of expenses.  The Debtor's actual disbursements shall not exceed 110% of the disbursements projected on a "Departmental" level for any week (the "Permitted Budget Variance").  The Budget and any modification thereto shall be in form and substance acceptable to the Lender in its sole discretion.

3.      Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, the Lender is entitled to adequate protection to the extent that the imposition of the automatic stay under section 362 of the Bankruptcy Code, or any use, sale, lease, depreciation, or disposition of its collateral during the Interim Period results in a diminution in the value of its interests (to the extent valid, perfected and enforceable) in the collateral (including from the use of Cash Collateral) from and after the Petition Date (a "Diminution").  The Lender shall receive the following as adequate protection of such interests:

    a.  ***Adequate Protection Liens.*** To the extent of any Diminution, the Lender is hereby granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (the "Adequate Protection Liens"), without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or

3

other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment, property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and non-wholly owned subsidiaries, money, investment property, and causes of action (including causes of action arising other than, for purposes of this Fifth Interim Order, avoidance actions and the proceeds thereof), and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "Postpetition Collateral"). The Adequate Protection Liens shall be junior only to: (A) the Lender's prepetition liens, and (B) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Lender's prepetition liens; *provided*, however, that the Adequate Protection Liens shall be subject to (x) a $10,000 carve-out for chapter 7 administration expenses to the extent necessary, (y) the Debtor's payment of fees incurred under 28 U.S.C. § 1930 and (z) statutory fees required to be paid to the Clerk of the Court ((x) through (z), the "Carve-Out").

b. ***Superpriority Claim.*** To the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Lender is hereby granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in the Case, with the exception of the Carve-Out, to the extent of any Diminution (the "Superpriority Claim").

c. ***Inspection Rights.*** In addition to any and all rights the Lender has under its prepetition loan documents (the "Prepetition Loan Documents"), upon reasonable notice, the Debtor shall permit representatives, agents and employees of the Lender to (i) have reasonable access to and inspect the Debtor's assets (which access shall not unreasonably interfere with the Debtor's operations at the Hotel), including without limitation the Hotel, the ballroom, the rooftop, the water tower, all kitchens and common areas and a reasonable number of unoccupied hotel rooms on the day of inspection and (ii) examine the Debtor's books and records. The Debtor shall also maintain records regarding the sources and uses of all cash proceeds generated by the Debtor's business (including without limitation the payment of all expenses pursuant to the Budget) and, upon request, in a timely fashion provide the Lender with

4

access to, and copies of, all such records.

d. **Reporting Rights.** In addition to any and all rights the Lender has under the Prepetition Loan Documents, the Debtor shall, reasonably promptly (but no later than the dates set forth below), provide the Lender and counsel to the Lender with accurate current reporting of operating and financial information, including:

  i. monthly forward booking reports for all revenue outlets (rooms, restaurant, banquet, etc.) due thirty (30) calendar days prior to the reporting month;

  ii. monthly bank statements due fifteen (15) business days following the end of the reporting month;

  iii. monthly income statements due fifteen (15) business days following the end of the reporting month;

  iv. monthly prepaid revenue reports due fifteen (15) business days following the end of the reporting month;

  v. monthly accounts receivable reports due fifteen (15) business days following the end of the reporting month;

  vi. monthly accounts payable reports due fifteen (15) business days following the end of the reporting month;

  vii. monthly report of position-by-position personnel expense with compensation reports due fifteen (15) business days following the end of the reporting month;

  viii. monthly report of staffing changes with respect to "salaried" staff for each month with support due thirty (30) calendar days after the reporting month;

  ix. monthly forecast of real estate and other taxes due thirty (30) calendar days prior to the reporting month;

  x. monthly STR Reports due ten (10) business days following Debtor's receipt of the report;

  xi. weekly reports of (i) revenues, (ii) expenses, and (iii) budget variance comparing the Debtor's actual expenses as compared to the Debtor's budget projections, due (30) calendar days after the reporting month starting with the May reporting month; and

    xii. copies of monthly operating reports required by the United States Trustee and copies of all other materials provided to the United States Trustee due within two (2) business days of providing such materials to the United States Trustee (collectively, the "Reports").

  e. **Insurance.** The Debtor shall maintain all necessary insurance as required under the Prepetition Loan Documents, naming the Lender as a notice party and additional insured, and shall promptly provide the Lender with proofs of such insurance for the Hotel (including the Lender's collateral) and copies of all documents related to any insurance premium financing arrangement the Debtor may have.

  f. **Excess Cash Account.** The Debtor shall deposit all cash it collects from the Petition Date in excess of its expenditures into the segregated debtor-in-possession bank account established with TD Bank as depository (the "DIP Bank Account") and shall maintain such cash in the DIP Bank Account until further order of the Court. For the avoidance of doubt, the Lender's security interests in and liens on the Cash Collateral shall extend to the cash in the DIP Bank Account, and such liens shall be automatically perfected without the need to execute any security or control agreements.

4. The following events shall each constitute an event of default hereunder (each, an "Event of Default"): (i) the Debtor's failure to comply with any of the terms of this Fifth Interim Order (including compliance with the Budget); (ii) the obtaining of credit or incurring of indebtedness outside of the ordinary course of business that is either secured by a security interest or lien that is equal or senior to any security interest or lien of the Lender or entitled to priority administrative status that is equal or senior to that granted to the Lender; and (iii) entry of an order by the Court granting relief from or modifying the automatic stay under section 362 of the Bankruptcy Code to allow a creditor to execute upon or enforce a lien or security interest in any collateral that would have a material adverse effect on the business, operations, property or assets of the Debtor.

5. The automatic stay is hereby modified solely to the extent necessary to permit the Debtor to take all actions necessary to implement this Fifth Interim Order.

6. Nothing herein shall impair or modify the application of section 507(b) of

6

the Bankruptcy Code in the event that the adequate protection provided to the Lender hereunder is insufficient to compensate for any Diminution. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Lender that the adequate protection granted herein does in fact adequately protect the Lender against any Diminution.

7. This Fifth Interim Order is without prejudice to the rights of the Lender to seek a modification of this Fifth Interim Order, including a request for additional adequate protection or the termination of the Debtor's right to use Cash Collateral, after notice and a hearing, including a hearing noticed on an emergency basis, or the Debtor's right to oppose such relief. The Lender has expressly reserved, and this Fifth Interim Order is without prejudice to, any and all rights and remedies of the Lender, including as to the appropriateness of any adequate protection that may be proposed in connection with any authorization to use Cash Collateral after the Interim Period. The Debtor expressly reserves the right to seek the use of Cash Collateral beyond the Interim Period, and the Lender reserves the right to oppose such relief.

8. Notwithstanding applicability of any Bankruptcy Rules, the terms and conditions of this Fifth Interim Order shall be immediately effective and enforceable upon its entry.

9. The Court has and will retain jurisdiction to enforce this Fifth Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Fifth Interim Order.

10. The Final Hearing to further consider approval of the use of Cash Collateral on an interim basis, shall be held on October 6, 2021 at 10:00 a.m. at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Robert D. Drain, United States Bankruptcy Judge.

11. Any party who wishes to attend the Final Hearing, which will be a

Zoom.gov hearing, is required to make arrangements through

http://www.nysb.uscourts.gov/ecourt-appearances.

Dated: September 13, 2021
      White Plains, New York

                              /s/ Robert D. Drain
                              HONORABLE ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE