**LOCKE LORD LLP**
Stephanie Wickouski
Chelsey Rosenbloom
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
Telephone:    (212) 912-2824
Facsimile:    (212) 812-8394
*Attorneys for Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>                       Debtor. | Chapter 11<br><br>Case No. 21-22108 (RDD) |

### NOTICE OF EXAMINER'S MOTION TO ENFORCE AND FURTHER AMEND SECOND AMENDED ORDER DIRECTING THE APPOINTMENT OF AN  EXAMINER

**PLEASE TAKE NOTICE** that Eric M. Huebscher, the duly appointed examiner (the "Examiner") for the chapter 11 bankruptcy estate of 96 Wythe Acquisition LLC (the "Debtor"), by and through his undersigned counsel, will move before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court, on **January 10, 2022 at 10:00 A.M. (ET)**, or as soon thereafter as counsel may be heard, for entry of an Order enforcing and further amending this Court's December 14, 2021 *Second Amended Order Directing the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 224] (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that the hearing will be held via Zoom for Government only. To attend the hearing virtually, participants are required to register their appearances by 4:00 p.m. the day before the hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, and shall be filed with the Bankruptcy Court, together with a copy to the Chambers of Judge Drain, and served so as to be received no later than 4:00 p.m. prevailing Eastern Time on **December 29, 2021** (the "Objection Deadline"), upon (i) counsel for the Examiner, Locke Lord LLP, Brookfield Place, 200 Vesey Street, 20th Floor, New York, New York, 10281, Attn: Stephanie Wickouski and Chelsey Rosenbloom (swickouski@lockelord.com and chelsey.rosenbloom@lockelord.com); (ii) counsel for Benefit Street, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Adam C. Rogoff and P. Bradley O'Neill (arogoff@kramerlevin.com and boneill@kramerlevin.com); (iii) co-counsel to the Debtor, Mayer Brown LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Douglas Spelfogel and Leah Eisenberg (dspelfogel@mayerbrown.com and leisenberg@mayerbrown.com); (iv) co-counsel to the Debtor, Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, 11th Floor, New York, NY 10022, Attn: Mark A. Frankel (mfrankel@bfklaw.com); (v) the Office of the U.S. Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, NY 10014, Attn: Greg Zipes, Esq. (greg.zipes@usdoj.gov); and (vi) any party that requests service pursuant to Bankruptcy Rule 2002.

**PLEASE TAKE FURTHER NOTICE** that if no responses or objections are received by the Objection Deadline, the relief may be granted as requested in the Motion without further notice or a hearing.

Dated:   New York, New York               **LOCKE LORD LLP**
           December 22, 2021

                                       By:   */s/ Stephanie Wickouski*
                                       Stephanie Wickouski
                                       Chelsey Rosenbloom
                                       Brookfield Place
                                       200 Vesey Street, 20th Floor
                                       New York, NY 10281-2101
                                       *Attorneys for Examiner*

**Hearing Date:  January 10, 2022 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  December 29, 2021 at 4:00 p.m. (Eastern Time)**

**LOCKE LORD LLP**
Stephanie Wickouski
Chelsey Rosenbloom
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
Telephone:      (212) 912-2824
Facsimile:      (212) 812-8394
*Attorneys for Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

96 WYTHE ACQUISITION LLC,

                        Debtor.

Chapter 11

Case No. 21-22108 (RDD)

### EXAMINER'S MOTION TO ENFORCE AND FURTHER AMEND SECOND AMENDED ORDER DIRECTING THE APPOINTMENT OF AN EXAMINER

Eric M. Huebscher, the duly appointed examiner (the "Examiner") for the chapter 11 bankruptcy estate of 96 Wythe Acquisition LLC (the "Debtor"), by and through his undersigned counsel, hereby submits this motion (the "Motion") seeking entry of an order to enforce and further amend this Court's December 14, 2021 *Second Amended Order Directing the Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 224] (the "Second Amended Examiner Appointment Order"). The Examiner respectfully states as follows:

### PRELIMINARY STATEMENT

1.        At every turn, the Debtor has sought to delay and hinder the investigation ordered by the Court. Indeed, the Debtor has mounted a campaign to prevent the Examiner from reviewing the very transactions that he was appointed to investigate.

2.      The Debtor's efforts to thwart the Examiner's investigation have included withholding of critical documents, failure to make available key witnesses for interviews, failure to ensure cooperation by principals of the Debtor, and failure to provide documents prepared by the Debtor's Chief Restructuring Officer. Numerous of the Examiner's several-week-old document requests remain outstanding.  The Examiner has been unable to conduct a number of necessary interviews, and has been forced to incur additional cost in seeking intervention from the Court and documents from third parties that the Debtor failed to produce.

3.      When the Examiner was appointed and the scope, timeline and budget for his investigation were determined, it was anticipated that the Examiner would have full and immediate access to the documents necessary to conduct his investigation, without significant involvement of counsel or intervention by the Court.  Unfortunately, this has not been the case.  The Examiner has already had to seek this Court's assistance to conduct his investigation on two occasions and to submit four letters in connection with those requests to the Court.[1]  This Motion marks the third time that the Examiner turns to the Court for assistance in carrying out his investigation.

4.      The roadblocks to the Examiner's investigation manufactured by the Debtor were not anticipated and have resulted in delay and increased expense.  Accordingly, through this motion, the Examiner seeks this Court's intervention (i) to reaffirm that the scope of the Examiner's investigation includes the investigation of transfers to principals and affiliates (an issue that the Debtor appears to dispute), (ii) to direct the Debtor and its principals to produce (x) all bank records for accounts that have been linked to Debtor and/or Management Company accounts, (y) all tax returns for the Debtor and the Management Company from 2017 to present, and (z) requested documents prepared by the Debtor's Chief Restructuring Officer in the course of his role

---

[1]      This is in addition to the response required to the letter requesting a status conference and motion filed by the Debtor [ECF # 238, 239].

as the Debtor's Chief Restructuring Officer. Additionally, because of the delays and additional

costs that have been incurred due to the lack of cooperation by the Debtor and its principals, the

Examiner also asks the Court to adjust the cap on fees and expenses of the Examiner and to extend

the deadline by which the Examiner must file his report by at least two weeks (through and

including January 28, 2022).

## JURISDICTION & VENUE

5.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core

proceeding under 28 U.S.C. § 157(b) in which the Court may constitutionally enter a final order.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) to interpret and enforce

the Second Amended Examiner Appointment Order, and to grant the relief requested in this

Motion. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (stating that the Bankruptcy

Court plainly has jurisdiction to interpret and enforce its prior orders); *In re Millennium

Seacarriers, Inc*., 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy courts retain jurisdiction to enforce

and interpret their own orders").

6.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

7.      This Motion is made pursuant to 11 U.S.C. § 1104(c) and 11 U.S.C. 105(a).

## RELIEF REQUESTED

8.      By this Motion, pursuant to 1104(c) and 105(a) of the Bankruptcy Code, the

Examiner respectfully requests that the Court enter the proposed order attached hereto as Exhibit 1.

## BACKGROUND

A.      **General Case Background**

9.      On February 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition

under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern

District of New York (the "Court"). The Debtor continues to operate its business and manage its

3

property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors or trustee has been appointed in this Chapter 11 Case.

10.     The Debtor owns and operates the Williamsburg Hotel, a 147-room hotel located at 96 Wythe Avenue, Brooklyn, New York (the "Hotel"). As described more fully in the *Declaration of David Goldwasser, Chief Restructuring Officer of the Debtor* [ECF # 8] (the "First Day Declaration"), the filing was made, amongst other things, as a result of the COVID-19 pandemic, as well as the Debtor and its lender's (the "Lender") ongoing dispute with respect to various asserted events of default and claims and counterclaims relating to the Hotel.

11.     On October 15, 2021, Benefit Street Partners Realty Operating Partnership, L.P. filed its *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 147], which motion was granted on November 8, 2021 by entry of the *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 178] (the "Original Examiner Appointment Order").

12.     On November 16, 2021, the Court entered the *Order Approving Appointment of Examiner* [ECF # 186] (the "Huebscher Appointment Order"), appointing Eric M. Huebscher as the Examiner in the above-captioned chapter 11 case.

13.     On November 23, 2021, the Court entered the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 193] (the "Amended Examiner Appointment Order"), amending the Original Examiner Appointment Order to permit the Examiner additional time to complete his report and to clarify the Examiner's ability to retain professionals.

14.     On December 14, 2021, the Court entered the Second Amended Examiner Appointment Order extending the deadline for the Examiner to file his report until January 14,

2022, permitting the Examiner to issue Federal Rule of Civil Procedure 45 subpoenas concerning matters within the scope of the Examination Topics (as defined below) without further order of the Court, and permitting the Examiner to file an application to increase the $250,000 cap on fees and expenses of the Examiner and his professionals upon notice to the requisite parties. *See Second Amended Appointment Order*, ¶¶ 6-8.

15.    Pursuant to Paragraph 2 of the Second Amended Examiner Appointment Order, "The Examiner is authorized to investigate and to file a Report on the following matters: those transactions, as determined by the Examiner in the Examiner's sole discretion, that might give rise to potential claims by the Debtor's estate, including, without limitation, actions under sections 544, 547, 548 of the Bankruptcy Code, against Ms. Toby Moskovits, Mr. Michael Lichtenstein and/or the Debtor's other insiders (as such terms is defined in the Bankruptcy Code) (collectively, the "**Examination Topics**"). . . ." Second Amended Examiner Appointment Order, ¶ 2.[2]

16.    Additionally, given the parties' understanding about the readily available information which the Examiner would be able to access for his investigation, the Court established a cap upon the Examiner's fees and expenses in the amount of $250,000.  Second Amended Examiner Appointment Order, ¶ 7; Hr'g Tr. 47:12-20, Oct. 29, 2021([THE COURT:] "I also think that the examination should have a monetary limit to it, again, subject to the examiner coming back, on notice to the parties, to the Court and saying, your assumptions, Judge, behind the dollar cap that you put on my examination has proven not to be borne out by my examination."). As further detailed in this Motion, many of those assumptions have not borne out.

---

[2]    The Examination Topics expressly exclude, "(a) Potential claims belonging to the Debtor's estate based on the loans received by Williamsburg Hotel BK LLC (the "Hotel Manager") pursuant to the Paycheck Protection Program, and related settlement and stipulation; and (b) Potential claims belonging to individual creditors, including as they may pertain to the management agreement between the Debtor and the Hotel Manager." Second Amended Examiner Appointment Order, ¶ 3.

17.     The Second Amended Examiner Appointment Order also provides, "Any applications to increase the cap shall be filed on notice to the Debtor, Benefit Street, and any other party in interest that has filed a notice of appearance and request for notice, and without prejudice to any party's right to object to such applications on any grounds, including on the basis of the cap." Second Amended Examiner Appointment Order, ¶ 7. This Motion constitutes such an application.

**B.      Background Concerning Examiner's Investigation**

18.     Within days of his appointment, on November 21, 2021, the Examiner sent an initial document and information request to counsel to the Debtor.  Huebscher Decl, ¶8.[3] The request included a listing of bank accounts for both the Debtor and the Management Company and the location of the books and records of the Management Company. Huebscher Decl, ¶8.

19.     The following day, on November 22, 2021, Debtor's counsel confirmed that the Debtor was working on putting documents together.  Huebscher Decl, ¶9.

20.     During the morning of November 23, 2021, Debtor's counsel confirmed that the referenced documents would be provided by Wednesday, November 24, 2021.  Huebscher Decl, ¶10.

21.     However, late in the day on November 23, 2021, Debtor's counsel indicated, for the first time, that entry into a confidentiality agreement would be required in order for documents to be provided to the Examiner. Huebscher Decl, ¶11. The Examiner did not sign the proposed agreement because it would have, among other things, restrict the Examiner's ability to interview witnesses and require him to file his report under seal. Huebscher Decl, ¶11.

---

[3]      References to the Huebscher Declaration herein shall be to the *Declaration of Eric M. Huebscher in Support of Examiner's Motion to Enforce and Further Amend Second Amended Order Directing Appointment of an Examiner* filed contemporaneously herewith.

22.     The Debtor's refusal to produce documents in the absence of a confidentiality agreement led the Examiner to seek guidance from the Court via a status conference.  Huebscher Decl, ¶ 12.  *See* [ECF # 199, 202]. At the status conference, the Court directed the Debtor to produce all documents in accordance with a confidentiality protocol that addressed the Examiner's concerns.

23.     Following the status conference held by the Court on December 1, 2021, and in accordance with the Court's instructions, counsel to the Examiner sent counsel to the Debtor a letter confirming the confidentiality protocol applicable to the Examiner's investigation. Huebscher Decl, ¶ 13.

24.     On December 3, 2021, the Examiner received the first production of documents from the Debtor, comprised of only 13 bank statements and assorted credit card statements.[4] Huebscher Decl, ¶14.  Later that day, the Examiner identified omissions in the production and asked the Debtor when the complete information would be provided.  Huebscher Decl, ¶15.

25.     Debtor's counsel subsequently sent additional documents, but the bulk of the information was still missing, including a significant number of bank account statements, as well as other banking records and information previously requested. Huebscher Decl, ¶16.  Despite that the Examiner sent numerous emails to Debtor's counsel identifying large gaps in information, the Debtor's counsel did not address the issues directly and instead simply deflected, suggesting that the Examiner was confused or his communications were unclear.  *Id.*

26.     Throughout this time, the Examiner prepared grids showing the bank account statements that had and had not been provided, and provided them to the Debtor.  Huebscher Decl, ¶. 17.

---

[4]     The production was accompanied by an email from Debtor's counsel that attempted to increase the confidentiality limitations established by this Court's instruction.

27.     On December 14, 2021, the Debtor provided three (3) new bank statements and two (2) new credit card statements, in addition to a 2020 federal tax return.  Huebscher Decl, ¶19.

28.     Other than the additional documents received on December 14, 2021, the Examiner has not received any additional production of documents, despite near daily emails requesting the production and timeline for production of the same.  Huebscher Decl, ¶20.

29.     As of the date of this Motion, large segments of the Examiner's document requests remain outstanding.  The Examiner has prepared grids showing the outstanding requested bank statements, the latest of which is attached as Exhibit A[5] to the Huebscher Declaration submitted contemporaneously herewith.  As demonstrated from a review of Exhibit A to the Huebscher Declaration, there are in excess of 25 bank accounts for which no records have been received. Huebscher Decl, ¶22.  For other accounts, there are multiple year gaps in information. *Id*.

30.     The bank accounts for which information has been requested are either accounts in the name of the Debtor or the Management Company, or accounts that are linked to the foregoing accounts.  Huebscher Decl, ¶23.  Because Debtor's counsel indicated that some of the bank accounts for which bank statements have been requested were closed during some of the time period for which the statements have been requested, the Examiner asked for third party verification of the closure of such accounts.  Huebscher Decl, ¶25.  No such third party verifications have been provided to date.  Huebscher Decl, ¶26.

31.     Rather than cooperate, the Debtor has taken an adversarial approach to the Examiner's investigation, as most recently evidenced by the *Debtor's Motion to Clarify and Amend Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. §*

---

[5]     As explained in the Huebscher Declaration, the information displayed on Exhibit A to the Huebscher Declaration is based on the information currently available, and additional bank accounts may be identified as further information becomes available and is reviewed.  Accordingly, the Examiner reserves the right to update Exhibit A as more information is discovered.

*1104(c); Limit and/or Quash Subpoenas that Exceed Scope of Examination, and Related Relief*

[ECF # 238] (the "<u>Debtor's Motion</u>") and the Debtor's related letter requesting a status conference

[ECF # 239] (the "<u>Debtor's Letter</u>").

32.     Through the Debtor's Motion and the Debtor's Letter, the Debtor seeks to restrict

production of documents to the Examiner include only bank records of the Debtor, the

Management Company and other accounts that the Debtor arbitrarily determined were within the

scope of the Examiner's investigation.  The Debtor's Motion and the Debtor's Letter take the

position that records for certain other bank accounts are outside the scope of the investigation.

However, as noted, each account for which bank records have been requested is either (1) an

account of the Debtor or the management company, or (2) an account which is linked online to

such an account, and to which online banking transfers have been made or from which online

banking transfers have been received, in each case, that are either substantial in amount or in

number.  Huebscher Decl, ¶23.   As such, these bank records may result in a cause of action to the

Debtor's estate and, consequently, are within the scope of the Examination Topics.[6]

33.     More specifically, the Examiner learned through the Debtor's Letter and the

Debtor's Motion that the Debtor does not intend to provide records for what Debtor's counsel has

described as bank accounts that "generally relate to independent companies owned by the Debtor's

principals that have nothing to do with the Hotel operations, transfers, or otherwise." Debtor's

Letter, page 4. The Debtor is mistaken in its very premise that the accounts "have nothing to do"

with the Hotel or transfers.  These accounts have been identified by the Examiner *because* they

are accounts linked to the accounts of the Debtor or the Management Company and have received

or provided transfers thereto or therefrom.  Huebscher Decl, ¶24.  These accounts are the precisely

---

[6]      The Examiner also intends to separately respond to the Debtor's request to quash or limit the third party
subpoenas that the Examiner served because of the Debtor's failure to timely provide documents.

the type that warrant examination.    In fact, upon the Examiner's initial review of the bank statements received from the Debtor, the Examiner discovered that the Debtor and its affiliated Management Company transferred $▓▓▓▓▓▓ out of Debtor and Management Company bank accounts into bank accounts controlled by the Debtor's principals (i.e., Toby Moskovitz and Michael Lichtenstein). Huebscher Decl, ¶7.

34.    In addition to the outstanding bank statement requests as set forth on the grid attached to the Examiner's declaration, the Examiner requested all tax returns for the Debtor and The Williamsburg Hotel BK, LLC (the "Management Company") from and after 2017.  Huebscher Decl, ¶27.   As of the date of this Motion, the Examiner has only received the federal tax return for the Debtor for 2020, but none of the other tax returns requested.  Huebscher Decl, ¶28. Debtor's counsel has refused to provide tax returns for the Management Company as well as various other materials which Debtor's counsel described as "non-debtor" materials. As to the Management Company's tax returns, Debtor's counsel cites, out of context, a sentence in the October 29 hearing transcript where Your Honor stated, "I -- I think that I've been pretty clear that I don't believe there's any basis to have an examiner conduct an examination of the PPP settlement, or the PPP loan, or of any alleged misconduct of the Debtor or its principals, pertaining directly to Benefit Street; namely, the alleged misrepresentation claim on the management contract; *or anything related to the manager's tax returns*." Hr'g Tr. 42:19-25, Oct. 29, 2021 (emphasis added).

35.    Indeed, the Debtor's Letter and the Debtor's Motion propound the theory that requests for the Management Company's tax returns have been expressly excluded from the Examiner's review.  Debtor's Letter, page 5; Debtor's Motion, ¶ 33.  Since the investigation began, the Examiner learned that the Management Company receives 100% of the revenue from the

Debtor.  Huebscher Decl, ¶28.  Accordingly, the Management Company's tax returns are critical to the Examiner's investigation and are within the scope of the Examination.

36.     The Debtor has also refused to turn over any records from its Chief Restructuring Officer, which directly contravenes the Court's direction that the Debtor fully cooperate with the Examiner's performance of his duties.  *Second Examiner Appointment Order,* n. 2. The Debtor's Motion and the Debtor's Letter confirm that the Debtor somehow views records prepared by the Debtor's Chief Restructuring Officer prepared in his role as such, which may inform causes of action of the estate, to be beyond the scope of the Examination Topics.  Debtor's Motion, ¶ 33.

37.     The Debtor's diliatory behavior, refusal to provide requested documents and information, and efforts to thwart the Examiner's investigation have caused the Examiner to request Court intervention twice by status conference, and now, by formal motion.[7]

38.     The Debtor's adversarial approach to the Examiner's investigation has not only impeded and delayed the investigation, it has caused the Examiner to expend additional time and incur additional expenses, including legal fees.

39.     For example, because the Debtor failed to timely produce requested bank statements and tax returns, the Examiner needed to prepare and serve Rule 45 subpoenas against Bank of America, N.A., TD Bank, N.A., JPMorgan Chase Bank, N.A. and Norensberg & Associates Inc. to request materials which the Debtor did not timely produce.  When asked, the Debtor's Counsel would not even provide a timeline by which such documents would be produced to the Examiner.   Through the Debtor's Motion, the Debtor now seeks to quash or limit these subpoenas which its own non-cooperation forced the Examiner to pursue.[8]  *See* Debtor's Motion,

---

[7]     This is in addition to the opposition to the Debtor's Motion and the Debtor's Letter that the Examiner is now forced to prepare.
[8]     On December 21, 2021, the Debtor's counsel sent letters to Bank of America, N.A., TD Bank, N.A., JPMorgan Chase Bank, N.A. and Norensberg & Associates Inc., instructing them not to comply with the Examiner's

¶ 39-44.[9]  Accordingly, through this Motion the Examiner requests entry of an order to enforce the

Second Amended Examiner Appointment Order, and extend the deadline for submission of the

Examiner's report and lift the cap on the Examiner's fees and expenses, for the reasons set forth

in this Motion.

**ARGUMENT**

40.    Section 1104(c) of the Bankruptcy Code provides for the appointment of an

examiner in a chapter 11 case:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

---

subpoenas. The Debtor had no authority to do so. Moreover, the Debtor's  attempt to interfere with non-party subpoenas is contrary to the Debtor's estate's interests, and instead appears designed to shield potentially avoidable transactions from scrutiny.

[9]     The Examiner reserves all rights to object to the Debtor's Motion under separate cover, but previews that the Debtor's Motion is replete with factual inaccuracies upon which it rests – the most blatant of which is the suggestion that the Examiner has requested information about bank accounts that "have nothing to do with" the hotel when the very basis by which the Examiner formed his requests was by virtue of his review of linkages of accounts and/or transfers to or from the Debtor or the Management Company.  Additionally, the Debtor's Motion seeks to redefine the parameters and process for the Examiner's investigation to create a role for the Debtor as the gatekeeper.  That is entirely improper.  The Debtor's Motion suggests that in the event the Examiner discovers a transfer which could potentially lead to a cause of action, he should inform the Debtor who will then "coordinate" further review.  Debtor's Motion, ¶15.  The Debtor should not be – and cannot be – supplanting the Examiner or inserting itself in the Examiner's review.  The Examiner was appointed to conduct an independent investigation.  The Debtor should be aligned with the Examiner in this regard, and it should not try to preempt the investigation.  The Debtor's unprecedented efforts to exercise control over the Examiner's investigation are further evidenced by the fact that Debtor's counsel contacted the banks and accountants upon whom the Examiner filed non-party subopoenas to purportedly instruct them not to comply with the subpoenas. *See infra* n. 8.

12

11 U.S.C. § 1104(c). As evidenced by the Original Examiner Appointment Order, as amended, the Court determined that there are sufficient bases for appointment of an Examiner here.

41.     Pursuant to 1106 of the Bankruptcy Code, an examiner shall "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1104(c).

42.     This Court established the scope of the Examiner's investigation by defining the Examination Topics to include those transactions, as determined by the Examiner in the Examiner's sole discretion that might give rise to potential claims by the Debtor's estate. Examiner Appointment Order ¶ 2.

43.     The Court has the authority to modify and enforce its prior orders. Section 105 of the Bankruptcy Code allows courts to "enforce or implement" their earlier lawful orders – i.e., to "vindicate[] the interests of the court." *See NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.)*, 317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004). "Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out the specific provisions of the Bankruptcy Code." *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3rd Cir. 2000).

44.     Here, the Examiner respectfully requests interpretation, enforcement and modification of the Second Amended Examiner Appointment Order.

45.     With respect to the requested interpretation and enforcement of the Second Amended Examiner Appointment Order, certain documents and information in the possession, custody or control the Management Company and the Debtor's principals directly pertain to potential claims by the Debtor's estate. These documents include tax returns of the Management

Company and bank statements for accounts that have been linked to Debtor accounts. These documents will inform the Examiner's assessment of claims that the Debtor's estate may have and are squarely within the scope of the investigation. Additionally, the Chief Restructuring Officer has refused to produce work product prepared in his role working for the Debtor and related communications. Accordingly, the Examiner requests that the Court direct that such requested materials be immediately turned over to the Examiner.

46.     The Examination Topics include the investigation of potential claims against the principals and affiliates, including avoidable transfers which according to the Bankruptcy Code, include immediate and mediate transfers. In order to pursue that investigation, the Examiner seeks a direction to the Debtor and its principals to produce all requested bank records, including statements pertaining to bank accounts that have been liked to Debtor accounts and/or Management Company accounts, tax returns for the Management Company, and documents prepared by the Debtor's Chief Restructuring Officer in his role as the Debtor's Chief Restructuring Officer and related communications.

47.     The Debtor's resistance to the Examiner's investigation have defied the Court's instructions and regarding cooperation by the Debtor and its principals. As this Court is aware, the Examiner already had to seek guidance from the Court via two status conferences and to submit four letters in connection with those requests, which led to the Second Amended Examiner Appointment Order. The Examiner also requests, pursuant to Second Amended Examiner Appointment Order, ¶ 8, that the Court modify the Second Amended Examiner Appointment Order to extend the Examiner's deadline to file the report by at least two weeks, through and including January 28, 2022. In light of the delay caused by the Debtor and the requests that remain outstanding, the Examiner will, at best, be able to issue his report in late January (assuming full

14

and complete access to the books and records of the Debtor and the Management Company is

provided).  Relatedly, the Examiner and his professionals have expended an inordinate amount of

time in pursuing the requested information from the Debtors, resulting in additional costs.  As such,

the Examiner requests that the cap on the examiner's fees and expenses be adjusted, subject to

review of the fees and expenses incurred by the Examiner in accordance with the applicable

procedures under 11 U.S.C. §§ 330, 331. The fees and costs incurred to date by the examiner

presently are 75% of the cap amount, and the Examiner reasonably anticipates the cap will be

exceeded by $100,000.

WHEREFORE, the Examiner respectfully requests that the Court grant the Motion in its

entirety, and such other and further relief as the Court deems just and proper.


Dated:    New York, New York                    **LOCKE LORD LLP**
          December 22, 2021


                                                By:    _/s/ Stephanie Wickouski_
                                                Stephanie Wickouski
                                                Chelsey Rosenbloom
                                                Brookfield Place
                                                200 Vesey Street, 20th Floor
                                                New York, NY 10281-2101
                                                _Attorneys for Examiner_


15

# EXHIBIT 1

**LOCKE LORD LLP**
Stephanie Wickouski
Chelsey Rosenbloom
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
Telephone:    (212) 912-2824
Facsimile:    (212) 812-8394
*Attorneys for Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-22108 (RDD) |

**ORDER GRANTING EXAMINER'S**
**MOTION TO ENFORCE AND FURTHER AMEND SECOND**
**AMENDED ORDER DIRECTING APPOINTMENT OF AN EXAMINER**

Upon consideration of the Examiner's motion (the "Motion")[10] for entry of an order

enforcing and amending this Court's December 14, 2021 *Second Amended Order Directing the*

*Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)*; and the deadline for filing written

objections to the Motion having been December 29, 2021; and no written objections to the Motion

having been filed; and this Court having held a hearing (the "Hearing") on the Motion on January

10, 2022 at 10:00 AM (ET); and no opposition to the Motion having been raised at the Hearing;

and upon due consideration of the Motion and the arguments raised in support of the Motion at the

Hearing, it is hereby

**ORDERED**, that:

---

[10]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1.      The Motion is granted as set forth herein.

2.      The Second Amended Examiner Appointment Order is hereby modified as set forth herein.

3.      The Examiner's deadline to file his Report shall be January 28, 2022.

4.      The $250,000 cap upon fees and expenses of the Examiner included in Paragraph 8 of the Second Amended Examiner Appointment Order shall be deleted, and, instead, the Examiner's fees and expenses and those of his retained professionals shall be subject to approval by this court pursuant to 11 U.S.C. § 330 and 11 U.S.C. § 331.

5.      The Examiner is directed to investigate the Examination Topics, which expressly include review and analysis of documents and information (including tax returns) of the Management Company to the extent such documents and information may inform potential causes of action of the Debtor.

6.      The Debtor and its principals and employees, including the Chief Restructuring Officer are directed to cooperate with the Examiner's investigation, including by producing to the Examiner (i) the bank statements requested and outstanding as set forth on the grid attached to the Huebscher Declaration as Exhibit A, (ii) third-party confirmation of closure of any bank accounts on the grid attached to the Huebscher Declaration as Exhibit A to the extent that bank records cannot be provided because the applicable account was not operational during the requested time period, (iii) all tax returns for the Debtor and the Management Company from 2017 to present, and (iv) all work product requested from the Chief Restructuring Officer prepared in connection with his work for the Debtor.

7.      Other than as modified herein, the remainder of the Second Amended Examiner Appointment Order shall continue in full force and effect.

2

8.    The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.


Dated: White Plains, New York
       January __, 2022



_____
Honorable Robert D. Drain
United States Bankruptcy Judge