| | |
|---|---|
| WILLIAM K. HARRINGTON<br>United States Trustee for Region 2<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Telephone: (212) 510-0500<br>By: Greg M. Zipes<br>Trial Attorney | Hearing Date: January 27, 2022<br>Hearing Time: 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
: Case No. 21-22108 (RDD)
In re :
: (Chapter 11)
96 WYTHE ACQUISITION LLC, :
:
                Debtor. :
---------------------------------------------------------- x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon the annexed declaration of Greg M. Zipes and the accompanying memorandum of law, William K. Harrington, the United States Trustee for Region 2, will move this Court before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court, 300 Quarropas Street, White Plains, New York 10601 on **January 27, 2022 at 10:00 a.m.**, or as soon thereafter as counsel can be heard, for entry of an order disqualifying Mayer Brown LLP as counsel for 96 Wythe Acquisition LLC.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion shall be filed with the Court and served on the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014, Attention: Greg M. Zipes, Trial Attorney, so as to be received no later than seven days prior to the hearing date. Responsive papers shall state the factual grounds and legal authorities that support the respondent's position, either in the response or in a memorandum of law. Failure to provide this information may be grounds to strike the response

or to grant the Motion by default.

Dated: New York, New York
January 7, 2022

                                        WILLIAM K. HARRINGTON,
                                        UNITED STATES TRUSTEE

*By:*   */s/ Greg M. Zipes*
       Greg M. Zipes
       Annie Wells
       Tara Tiantian
       Trial Attorney
       201 Varick Street, Room 1006
       New York, New York  10014
       Tel. No. (212) 510-0500

Hearing date & time: January 27, 2022, 10:00 a.m.
Objection Deadline: January 20, 2022, 5:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
In re:                                                     :   Chapter 11
                                                           :
96 WYTHE ACQUISITION LLC,                                  :   Case No. 21-22108 (RDD)
                                                           :
                     Debtor.                               :
-----------------------------------------------------------x

### UNITED STATES TRUSTEE'S MOTION TO DISQUALIFY MAYER BROWN LLP AS DEBTOR'S COUNSEL

TO: THE HONORABLE ROBERT D. DRAIN,
    UNITED STATES BANKRUPTCY JUDGE:

This is the motion (the "Motion") of William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") for an order disqualifying Mayer Brown LLP ("Mayer Brown") as counsel for 96 Wythe Acquisition LLC (the "Debtor"). In support thereof, the United States Trustee respectfully represents and states as follows:

**PRELIMINARY STATEMENT**

Mayer Brown was retained as co-counsel to the Debtor based on the disclosures it made in its retention application. Because new information has come to light, the United States Trustee seeks the removal of Mayer Brown because the firm cannot meet the disinterested standards of section 327(a).

By way of background, the principals of this Debtor are two individuals, Ms. Toby Moskovitz and Mr. Michael Lichtenstein (collectively, the "Debtor's Principals"). Recently, upon the motion of a secured creditor, the Court appointed an examiner (the "Examiner") to investigate potentially undisclosed and improper monetary transactions from the Debtor to the Debtor's Principals and a management company controlled by the Debtor's Principals.

Presumably, should the Examiner identify monies improperly transferred from the Debtor, the Debtor would seek to recover such monies.

Unfortunately, based upon pleadings filed by the Examiner, it appears that Mayer Brown, as co-counsel to the Debtor, has not taken any actions to assist the Debtor but has seemingly put stumbling blocks before the Examiner's efforts to reveal potentially recoverable assets. At the same time, the United States Trustee discovered that Mayer Brown was also representing an entity under the control of the Debtor's Principals in another bankruptcy case. In response to questions raised by the Office of the United States Trustee, Mayer Brown belatedly filed a supplemental affidavit in this case disclosing the connections between this case and the other debtor case. These disclosures should have been made at the time Mayer Brown was approached to serve as counsel in the other case. Notably, the same Mayer Brown attorney is appearing in this case as well as the other debtor case.

Representing the Debtor's Principals in the other debtor case while at the same time representing the Debtor here where an examiner is investigating whether there where improper transfers of monies from the Debtor to the Debtor's Principals at the very least gives an appearance of impropriety – that is, are Mayer Brown's loyalties to the Debtor or to the Debtor's Principals? This appearance and potential for a conflict warrants disqualification.

But based on the conduct of Mayer Brown in this case as the *de facto* protector of the interests of the Debtor's Principals, the conflict seems to be not just potential but an actual conflict. For these reasons and as discussed below because Mayer Brown cannot meet the stringent requirements of Section 327(a), it must either voluntarily withdraw as co-counsel or this Court should grant this Motion. The removal of Mayer Brown will not leave the Debtor unrepresented as co-counsel can continue to represent the Debtor.

## FACTUAL BACKGROUND

1. On February 23, 2021, the Debtor filed a voluntary petition under Title 11 of the United States Code, 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code"). *See* Petition [Dkt. No. 1].

2. The Debtor owns real property located in Brooklyn, New York, comprising a thirteen-story, 160-room hotel with a rooftop pool, a bar and restaurant and a separate, elevated and enclosed bar that sits above the pool referred to as the Water Tower Bar (the "Hotel"). According to the Local Rule Affidavit, "[t]he Debtor has approximately 80 employees." *See* Local Rule Affidavit ¶ 2 [Dkt. No. 8].

**A.    The Motion to Covert and the Motion to Appoint Examiner**

3. On August 18, 2021, the United States Trustee filed a motion to convert this case to one under Chapter 7 or to dismiss this case (the "Motion to Convert"). The Motion to Convert was joined by Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street"), the Debtor's secured creditor. *See* Motion to Convert [Dkt. No. 87]; Lender's Joinder [Dkt. No. 127].

4. In the Motion to Convert, the United States Trustee generally asserted that the Debtor made misleading statements and failed to provide basic documents explaining its relationship with certain third parties, including the equity holders. Among other things, after representing in its pleadings that the Debtor has employees, the Debtor later disclosed that its alleged employees were instead employed by the Williamsburg Hotel BK LLC (the "Management Company"). In addition, the Debtor's Chief Restructuring Officer, Mr. David Goldwasser, likewise failed to clarify the relationship of his company, G.C. Realty Advisors LLC, to the Debtor and certain third parties. The United States Trustee also asserted that the Debtor maintained multiple unauthorized bank accounts apart from the debtor-in-possession

3

account, and these unauthorized bank accounts had disbursed a sizeable amount of funds as shown on the Debtor's Monthly Operating Report for June 2021. *See* Motion to Convert ¶¶ 7-13.

5.      The Motion to Convert was opposed by the Debtor and ultimately was denied by the Court. *See Reply to Motion to Convert* [Dkt. No. 135]; *Order Denying Motion to Convert* [Dkt. No. 142].

6.      On October 15, 2021, Benefit Street filed its *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* (the "Examiner Motion") [Dkt. 147], which the Debtor opposed. *See* Debtor's Objection to Examiner Motion [Dkt. No. 151]. In the Examiner Motion, Benefit Street expressed concerns over the release provision that would release claims against Toby Moskovits, Michael Lichtenstein, and the Management Company from the beginning of time through the Confirmation Date, including estate claims based on pre-petition avoidable transfers. Benefit Street asserted that such sweeping releases were not warranted when there had been no statutory committee or independent fiduciary in place to investigate the potential claims held by the estate and evaluate the value of the claims. *See id.* ¶¶ 5-9.

7.      Benefit Street asserted that, *inter alia*, the Debtor's schedules revealed transactions where funds inexplicably left the Debtor, that certain loan proceeds were diverted to non-debtor affiliates, and that the management agreement entered by the Debtor and the Management Company owned by the Debtor's principals was not properly disclosed. *See id.* ¶¶ 2, 11-12.

8.      The Court granted the Examiner Motion on November 8, 2021 and entered the *Order Directing the United States Trustee to Appointment an Examiner Pursuant to 11 U.S.C. § 1104(c)* (the "Original Examiner Appointment Order") [Dkt. No. 178].

4

9. On November 16, 2021, the Court entered the *Order Approving Appointment of the Examiner*, approving the United States Trustee's appointment of Eric Huebscher as the Examiner (the "Examiner") [Dkt. No. 186].

10. By the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)*, dated November 23, 2021, (the "Amended Examiner Order") [Dkt. No. 193], this Court amended the Original Examiner Appointment Order to permit the Examiner additional time to complete his report and to clarify the Examiner's ability to retain professionals.

11. On December 14, 2021, the Court entered the *Second Amended Examiner Appointment Order* ("Second Amended Examiner Order") [Dkt. No. 224], extending the deadline for the Examiner to file his report until January 14, 2022, permitting the Examiner to issue Federal Rule of Civil Procedure 45 subpoenas concerning matters within the scope of the Examination Topics (as defined below) without further order of the Court, and permitting the Examiner to file an application to increase the $250,000 cap on fees and expenses of the Examiner and his professionals upon notice to the requisite parties. *See* Second Amended Examiner Order ¶¶ 6-8. *See* Zipes Decl. Ex. A.

12. Pursuant to the Second Amended Examiner Order, the Examiner is authorized to investigate the "Examination Topics," which are "transactions . . . that might give rise to potential claims by the Debtor's estate, against Ms. Toby Moskovits, Mr. Michael Lichtenstein and/or the Debtor's other insiders, as such terms are defined in the Bankruptcy Code," subject to exclusions for claims based on the Hotel Manager's loans under the Paycheck Protection Program and related settlement and stipulation and potential claims belonging to individual creditors, including relating to the management agreement between the Debtor and Hotel Manager. *See* Second Amended Examiner Order ¶ 2.

5

B.  **Retention of Mayer Brown and Mayer Brown's Initial Conflicts Declaration**

13. On August 19, 2021, the Debtor filed *the Application for an Order Pursuant to Sections 327(a) and 328 of the Bankruptcy Code Authorizing the Employment and Retention of Mayer Brown LLP As Co-Counsel to the Debtor and Debtor in Possession, Nunc Pro Tunc to August 9, 2021* ("Mayer Brown Retention Application") [Dkt. No. 89], by which it sought to retain Mayer Brown as co-counsel to the Debtor. The *Declaration of Douglas Spelfogel*, a bankruptcy partner at Mayer Brown, was attached thereto as Exhibit B (the "Spelfogel Declaration") in support of the Mayer Brown Retention Application.[1]

14. In the Spelfogel Declaration, Mr. Spelfogel stated that Mayer Brown "has reviewed the list of names of individuals and entities that may be parties in interest in this Chapter 11 case ('Potential Parties in Interest') attached as Exhibit 1 to the Spelfogel [Initial] Declaration." *See* Mayer Brown Retention Application, Ex. B ¶ 6.

15. Toby Moskovits and Michael Lichtenstein were on the list of Potential Parties in Interest. The list did not specify the relationship of each party with the Debtor. *See id.* at Ex. 1.

16. In paragraph 11 of the Spelfogel Declaration, Mr. Spelfogel stated:

> Mayer Brown represents and/or represented an affiliate of Franklin Templeton, Clarion Partners, in unrelated matters and Franklin Templeton with respect to certain unrelated trademark matters, neither of which has any connection with the instant matter. Mayer Brown does not represent any Benefit Street entity (including Benefit Street Realty Operating Partnership, L.P.) and the foregoing matters noted have nothing to do the instant Chapter 11 Case. In addition, Mayer Brown represents and/or represented Zurich American Insurance Co. and JP Morgan (the parent company of Chase Paymentech) in unrelated matters. The foregoing has no connection with the instant matter.

*Id.* ¶ 11.

---

[1] Backenroth Frankel & Krinsky, LLP ("BFK") had previously filed an application to be retained as counsel [Dkt. No. 7], but it appears no order of retention has been entered.

6

17. In paragraph 7 of the Spelfogel Declaration, Mr. Spelfogel stated that "to the best interest of his knowledge information and belief, *with respect to Debtor's Chapter 11 case,* except as set forth therein, neither I nor any member, attorney, or employee of Mayer Brown has any *current connection* with the directors and officers of the Debtor, the Debtor's lenders and lienholders, or the Debtor's twenty largest unsecured creditors." *See id.* ¶ 7 (emphasis added).

18. Notably, the disclosure in paragraph 7 did not disclose any connections with any of the Debtor's members (principals, or equity holders). Also, the scope of the disclosure in paragraph 7 was limited by the qualifiers "with respect to the Chapter 11 case" and "current connection," whereas the disclosure in paragraph 11 included both past and present representation in related and unrelated matters.

19. In paragraph 12, Mr. Spelfogel stated that "Mayer Brown is not disqualified from acting as the Debtor's co-counsel merely because it *may* represent creditors, *equity holders*, or other parties in interest in matters unrelated to this Chapter 11 Case." *See id.* ¶ 12 (emphasis added).

20. The Court approved Mayer Brown's retention on October 13, 2021. *See Order Granting Application to Employ Mayer Brown LLP as Co-Counsel to Debtor* [Dkt. No. 145].

**C.    The 286 Rider Ave. Acquisition LLC Chapter 11 Case and Mayer Brown's Supplemental Declaration**

21. On November 15, 2021, approximately a week after the Court entered the Original Examiner Appointment Order, Mayer Brown filed a notice of appearance in the Chapter 11 case of 286 Rider Ave. Acquisition LLC ("Debtor 286 Rider"), Case No. 21-11298-LGB ("286 Rider Case"), as Special Counsel for 286 Rider Ave. Development LLC ("286 Development"). *See* Zipes Decl. Ex. B (Notice of Appearance [286 Rider Dkt. No. 157]).

22. 286 Development owns 100% of the membership interests of Debtor 286 Rider. Ms. Moskovits and Mr. Lichtenstein—the principals of the Debtor—are the principals of 286 Development. *See Motion of 286 Rider Ave Development LLC to Dismiss and Turnover of Membership Interests* ¶¶ 1-2 [286 Rider Case Dkt. 17].

23. Despite Mayer Brown's representation of 286 Development since at least November 15, 2021, it was not until December 21, 2021 that Mayer Brown filed the *Supplemental Declaration of Douglas Spelfogel with Respect to the Employment and Retention of Mayer Brown LLP as Co-counsel to the Debtor and Debtor in Possession* ("Supplemental Spelfogel Declaration") [Dkt. No. 240], on December 21, 2021. *See* Zipes Decl. Ex. C.

24. As relevant here, Mayer Brown disclosed the following in the Supplemental Spelfogel Declaration:

> On November 15, 2021, Mayer Brown were [*sic*] retained in the Chapter 11 case 286 Rider Ave Acquisition LLC ("Rider"), United States Bankruptcy Court for the Southern District of New York, Case No.: 21-11298, as Special Co-counsel, for the equity holder, 286 Rider Ave Development LLC ('Development'). Development is owned by Toby Moskovits and Michael Lichtenstein, the managing members of the Debtor herein. The Rider case has no connection with the instant Debtor's case and/or the Debtor, other than as noted above. In addition, while unrelated to the instant case, the managing members, and Rider are represented by separate counsel.

*Id.* ¶ 4.

25. 286 Development is owned by Ms. Toby Moskovits and Mr. Michael Lichtenstein, and acts as the vehicle through which Ms. Moskovits and Mr. Lichtenstein hold their 100% membership in debtor 286 Rider. *See* Supplemental Spelfogel Declaration ¶ 4; *see also 286 Development's Motion Authorizing Payoff* ¶ 14 [286 Rider Case Dkt. No. 171] ("As is common in the real estate development industry, Moskovits and Lichtenstein hold their ownership interest in the Debtor [286 Rider Acquisition LLC] indirectly through

8

Development."). *See* Zipes Decl. Ex. D (showing Mayer Brown filed *286 Development's Motion Authorizing Payoff*).

26. Mayer Brown represents 286 Development in the 286 Rider Case, filing papers as recently as December 30, 2021 (the "Mayer Brown 286 Letter"). *See* Zipes Decl. Ex. E.

## ARGUMENT

**A.  Mayer Brown's concurrent representation of the Debtor and Debtor's Principals against whom Debtor's estate may hold claims renders Mayer Brown not disinterested**

Section 327 of the Bankruptcy Code governs the employment of professional persons and provides, in part "except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys … that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). The term "disinterested person" means a person that "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14). While the term "adverse interest" is not defined in the Bankruptcy Code, the Second Circuit has adopted the following definition:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999).

"The 'materially adverse' standard incorporated in the disinterestedness test and the 'interest adverse to the estate' language in section 327(a) overlap . . . and form a single test to

9

judge conflicts of interest." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (internal citations omitted). The disinterestedness standard under section 327(a) is designed to guarantee "that the professionals' service presents no conflict of interest." *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001). "What is clear is that undivided loyalty is central to disinterestedness." *In re Angelika Films 57th Inc.*, 227 B.R. 29, 39 (Bankr. S.D.N.Y. 1998).

A disabling adverse interest arises where a professional has "a meaningful incentive, or the perception of one, to act contrary to the interests of the estates." *In re Granite Partners*, 219 B.R. at 36; *Matter of Codesco, Inc.*, 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982) ("There is no question that the purpose of the incorporation of the disinterest requirement in 11 U.S.C. s 327 was to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration. Certainly a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters."); *In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) ("Potential conflicts, no less than actual ones, can provide motives for attorneys to act in ways contrary to the best interests of their clients. Rather than worry about the potential/actual dichotomy, it is more productive to ask whether a professional has "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one.").

Mayer Brown is now simultaneously representing the Debtor in this case and an entity concededly controlled by the Debtor's Principals (against whom Debtor may hold avoidance claims) in the 286 Rider Case, which poses a clear conflict of interest. *See Rome v. Braunstein*, 19 F.3d 54, 60 (1st Cir. 1994) ("Rome's post-May 1990 representation of chapter 7 debtor Leavitt, against whom the CHM chapter 11 estate, also represented by Rome, held claims for the

10

avoidance of alleged preferential and fraudulent transfers, created a clear conflict of interest."); *In re Granite Partners, L.P.*, 219 B.R. at 37 ("The lawyer owes a duty of loyalty to each client, and concurrent representation, *even in unrelated matters,* poses the danger of divided loyalties and affected judgments.") (emphasis added).

First, it should be noted that 286 Development's interest and the interest of the Debtor's Principals in the 286 Rider Case are inseparable and indistinguishable. *See Objection to Debtor's Motion Extending Exclusivity* [286 Rider Case Dkt. No. 129] ("Development, Toby Moskovits and Michael Lichtenstein (collectively 'Objectors') hereby files this Opposition to Debtor's Motion…."); *286 Development's Motion for Payoff* ¶ 1 [286 Rider Case Dkt. No. 171] ("Development, together with its principals Toby Moskovits and Michael Lichtenstein (collectively with Development, 'the Borrower Parties') have arranged for exit refinancing…"); *Reservation of Rights of 286 Development, Toby Moskovits and Michael Lichtenstein* [286 Rider Case Dkt. No. 215] ("286 Rider Ave Development LLC, Toby Moskovits and Yechial Michael Lichtenstein, having fully reserved their respective rights, request that the Court enter an Order …."). In other words, Mayer Brown is effectively representing the Debtor's Principals in the 286 Rider Case while ostensibly also representing the Debtor in this case.

The Debtor's entitlement to receive vigorous advocacy and undivided loyalty is particularly threatened here because the estate's interest and the interest of the Debtor's Principals are now adverse to each other. The Examiner is actively investigating transactions between the Debtor and the Principals, and Mayer Brown now represents both the Debtor and the Principals (through 286 Development). *See* Zipes Decl. Ex. A. (Outlining Examiner's responsibilities). The Debtor's Principals here have incentives to marshal funds from this case for the 286 Rider case as they are trying to pay off the lender and redeem their shares in the 286

11

Rider case. *See* Zipes Decl. Ex. E (Mayer Brown Letter). The Examiner in this case has asserted that the Principals have diverted funds:

> When I interviewed Jeremy Rauch [the Debtor's finance director], I discovered that there may exist bank accounts in the name of either the Debtor or Management Company that have not been turned over to Examiner. This would be in addition to over 25 bank accounts where online transfers were effectuated from known Debtor and Management Company bank accounts to now unknown bank accounts.

*See* Zipes Ex. F (*Declaration of Eric M. Huebscher* dated December 22, 2021) at ¶ 21.[2]

If potential avoidance actions exist and the Debtor files adversary proceedings to recover properties transferred to the Debtor's Principals or the entities they control, Mayer Brown's clients will be both the plaintiff and defendant in the same lawsuit.

**B.   Mayer Brown has a conflict of interest in that it acted differently than it would without the concurrent representation**

"If it is plausible that the representation of another interest may cause the professional to act any differently than they would without that other representation, then that professional would have a conflict and an interest adverse to the estate warranting disqualification." *In re Enron*, No. 01-16034, 2002 WL 32034346 at *1, *8 (Bankr. S.D.N.Y. May 23, 2002). Here, not only is there the appearance or plausibility that Mayer Brown's attorneys may act differently due to the concurrent representation of the Debtor's Principals, but there is also evidence that these attorneys have, in fact, acted differently.

Mayer Brown's conflict has already been manifested in the Examiner's investigation—namely, it appears to be actively impeding the Examiner's efforts to gather information and do his job. The Examiner has encountered tremendous resistance from Debtor's counsel when requesting documents and information concerning transactions that involve the Debtor's Principals and the entities they control. *See, e.g.*, Examiner's Enforcement Motion ¶ 2 [Dkt. No.

---

[2] Upon information and belief, Jeremy Rauch also works for the Debtor's Principals on separate matters.

12

243] ("The Debtor's efforts to thwart the Examiner's investigation have included withholding of critical documents, failure to make available key witnesses for interviews, failure to ensure cooperation by principals of the Debtor..."); ¶ 33 ("…the Debtor does not intend to provide records for what Debtor's counsel has described as bank accounts that 'generally relate to independent companies owned by the Debtor's principals that have nothing to do with the Hotel operations, transfers, or otherwise.'").  In that regard, Mayer Brown is acting as *de facto* counsel to the Principals in looking out for their interests by fighting the Examiner's requests.  *See* Motion to Clarify ¶ 31 [Dkt. No. 238] ("Examiner's unilateral effort to expand the scope of examination … constitutes a global audit of the *business interests of the Principals* over 5 years which is not an examination of the Debtor and is contrary to the purpose of the appointment and Bankruptcy Code.").

The Examiner has unearthed numerous transfers made from the Debtor and Management Company to bank accounts controlled by the Debtor's Principals.  *See* Zipes Decl. Ex. F at ¶ 7.  However, the Debtor, through Mayer Brown, has refused to turn over records and statements related to those bank accounts.  *See* Zipes Decl. Ex. F.  Debtor's counsel went as far as sending letters to the banks subpoenaed by the Examiner to block the production of bank statements concerning the Principals.  *See* Examiner's Enforcement Motion [Dkt. No. 243] ¶ 39, n.8.

The United States Trustee does not take a position on which specific production requests are warranted and which are not.  Instead, he questions Mayer Brown's ability to vigorously and loyally advocate for the Debtor and to protect the estate's interests.  Given what has transpired thus far in this case and the Examiner's investigation, Mayer Brown has shown that it is clearly not able to do so because the very same attorneys (i.e., Mr. Spelfogel and Ms. Eisenberg)—and not just the very same firm—are concurrently working for the Debtor's Principals.  Normally,

13

the Debtor's interest should be aligned with the Examiner's efforts to discover potential opportunities to recover assets for the estate, as the Court itself has recognized. *See* Second Amended Examiner Order ¶ 5 ("The Debtor and the Examiner may enter into a common interest agreement concerning the work of the Examiner to allow for the efficient flow of information between and among those parties …."); *see also* Debtor's Motion to Clarify [Dkt. No. 238] ¶ 1 ("The primary charge of the Examiner's appointment was to review transfers out of the Hotel to related third parties that may constitute avoidable transfers…"). However, the Debtor's actions, through Mayer Brown, has been to the contrary; instead, resisting all attempts by the Examiner to gain information where the requests or productions are even remotely connected to the Principals. It is patently inappropriate for Debtor's counsel to protect or advocate for the Debtor's Principals when the Debtor and its principals are separate entities, and when they are on the opposite sides of the transactions and potential lawsuits in question.

### C.    Any waiver that might exist is ineffective

To date, no waiver of conflict from the Debtor has been filed or disclosed. Even if there was one, it would not be effective, and Mayer Brown must still be disqualified because a "conflict waiver cannot trump the requirements of section 327(a)." *In re Project Orange Assocs., LLC*, 431 B.R. 363, 374 (Bankr. S.D.N.Y. 2010). "Although the client can, under certain circumstances, waive the conflict, the mandatory provisions of section 327(a) do not allow for waiver." *In re Granite Partners, L.P.*, 219 B.R. at 34.

## CONCLUSION

For the reasons set forth above, the United States Trustee respectfully requests that the Court enter an order disqualifying Mayer Brown as counsel for the Debtor and granting such other relief as the Court deems just and proper.

14

Dated: New York, New York
January 7, 2022

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By     *s/ Greg M. Zipes*
Greg Zipes
Annie Wells
Tara Tiantian
Trial Attorneys
Office of the United States Trustee
201 Varick Street, Room 1006
New York, NY 10014
Tel. No. (212) 510-0500

15