**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Co-Counsel to the Debtor*
*and Debtor-in-Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York  10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>          Debtor. | Chapter 11<br><br>Case No.:  21-22108 (RDD) |

**OBJECTION TO UNITED STATES TRUSTEE'S MOTION TO DISQUALIFY**
**MAYER BROWN LLP AS DEBTOR'S COUNSEL**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Angelika Films 57th Inc.*,
227 B.R. 29 (Bankr. S.D.N.Y. 1998) ..................................................................16

*In re Arochem Corp.*,
176 F.3d 610 (2d Cir. 1999) ........................................................................7, 16

*In re Best Craft Gen. Contractor & Design Cabinet, Inc.*,
239 B.R. .................................................................................................15

*In re BH & P, Inc.*,
949 F.2d 1300 (3d Cir. 1991) ......................................................................7, 8

*In re Caesars Entm't Operating Co., Inc.*,
561 B.R. 420 (Bankr. N.D. Ill. 2015) ..............................................................9, 14

*In re Caldor, Inc.*,
193 B.R. 165 (Bankr. S.D.N.Y. 1996) ...................................................................7

*Matter of Codesco*,
18 B.R. 997 (Bankr. S.D.N.Y. 1982) ..................................................................16

*In re Creative Rest. Mgmt., Inc.*,
139 B.R. 902 (Bankr. W.D. Mo. 1992) ................................................................17

*In re Empire State Conglomerates, Inc.*,
546 B.R. 306 (Bankr. S.D.N.Y. 2016) ..................................................................8

*In re Enron Corp.*,
2002 WL 32034346 (Bankr. S.D.N.Y. May 23, 2002), *affirmed*, 2003 WL
223455 (S.D.N.Y. Feb. 3, 2003) ....................................................................12, 16

*In re Enron Corp.*,
2003 WL 223455 (S.D.N.Y. Feb. 3, 2003) ..............................................................8

*In re Granite Partners, L.P.*,
219 B.R. 22 (Bankr. S.D.N.Y. 1998) .................................................................6, 16

*In re Innomed Labs, LLC*,
2008 WL 276490 (S.D.N.Y. Jan. 29, 2008) ............................................................15

*In re Leslie Fay Cos., Inc.*,
175 B.R. 525 (Bankr. S.D.N.Y. 1994) ............................................................. *passim*

*In re Marvel Entm't Grp., Inc.*,
  140 F.3d. 463 (3d Cir. 1998) ................................................................8

*In re Pittsfield Weaving Co.*,
  355 B.R. 404 (Bankr. D.N.H. 2006) ......................................................12

*In re Project Orange Assocs., LLC*,
  431 B.R. 363 (Bankr. S.D.N.Y. 2010) ..................................................16

*Rome v. Braunstein*,
  19 F.3d 54 (1st Cir. 1994) ....................................................................16

*In re Stylianou*,
  2010 WL 3719303 (Bankr. S.D.N.Y. Sept. 15, 2010) ............................8

*TWI Int'l, Inc. v. Vanguard Oil and Serv. Co.*,
  162 B.R. 672, 675 (S.D.N.Y. 1994) ......................................................17

*In re Vebeliunas*,
  231 B.R. 181 (Bankr. S.D.N.Y. 1999) ..................................................15

*In re Vouzianas*,
  259 F.3d 103 (2d Cir. 2001) ................................................................16

*In re Wingspread Corp.*,
  152 B.R. 861 (Bankr. S.D.N.Y. 1993) ................................................7, 8

**Statutes**

11 U.S.C. § 101(14)(C) ..............................................................................6

11 U.S.C. § 327(a) .............................................................................6, 8, 12

11 U.S.C. § 1107(a) ..................................................................................3

11 U.S.C. § 1108 .......................................................................................3

**Other Authorities**

Fed. R. Bankr. P. 2014 ............................................................................14

TO:    THE HONORABLE ROBERT D. DRAIN,
        UNITED STATES BANKRUPTCY JUDGE:

96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), by its undersigned attorneys, Mayer Brown LLP and Backenroth, Frankel & Krinsky, LLP, submits this objection (this "Objection") to the *United States Trustee's Motion to Disqualify Mayer Brown LLP as Debtor's Counsel* [Dkt. No. 275] (the "Motion") in connection with the above-captioned chapter 11 case (the "Chapter 11 Case").  In support of this Objection, the Debtor submits the Declaration of David Goldwasser, attached hereto as **Exhibit A**, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The United States Trustee (the "U.S. Trustee") by its Motion seeks the extraordinary relief of disqualifying Mayer Brown LLP (the "Firm") as counsel, without any basis in fact and law three weeks prior to the scheduled confirmation hearing and two weeks prior to a Court-ordered mediation.

2.      Notwithstanding the zealous efforts by the Firm to represent the Debtor and its estate, by its Motion, the U.S. Trustee asserts that the Firm's recent engagement by a company owned by the principals of the Debtor, in an entirely unrelated bankruptcy case, warrants disqualification.  However, in that unrelated chapter 11 case, the principals have separate counsel, the matter has no relationship to the Chapter 11 Case, and such representation was fully disclosed in the Chapter 11 Case.  The U.S. Trustee further argues for disqualification because the Debtor asked for Court guidance regarding certain concerns it had with the Examiner's (as defined below) investigation, including concerns with respect to maintaining confidentiality, costs, and the scope of the examination.  Not only is such a chilling position unfounded under the law, it is extremely prejudicial to the Debtor, creditors (other than with respect to the Debtor's lender, Benefit Street

Partners ("BSP"), who would like nothing better than to take over the Williamsburg Hotel (the "Hotel") at fire sale), and the ongoing reorganization efforts in the Chapter 11 Case.

3.      Moreover, it is important to put the instant Motion in context.  Since its engagement in August 2021, and after successfully defending against the U.S. Trustee's motion to convert the case to a chapter 7 liquidation, the Firm has taken the lead role in reorganizing the Debtor and preserving the Hotel by, among other things, filing objections to claims, negotiating resolutions with creditors, filing an adversary complaint against BSP, seeking to reduce some $20 million in alleged inflated claims, and defending against a relentless campaign by BSP to take control of the Hotel.  The Firm's representation has culminated in the Court approval of the Debtor's disclosure statement and a pending confirmation hearing of the Debtor's proposed chapter 11 plan of reorganization, which includes preservation of scores of jobs, the infusion of $9 million in new monies,  and payment in full to all creditors, including, mechanics lien holders, taxes, and general unsecured creditors.[1]  The disqualification of counsel at this critical juncture –just prior to the scheduled court-ordered confirmation hearing – would be a death knell for the Debtor's reorganization efforts and would most likely precipitate liquidation, which would be devastating to the estate (a factor which many courts have determined to be in favor of denying a motion to disqualify counsel).

4.      In short, disqualification in the Chapter 11 Case is not warranted by the facts or law and would severely prejudice the Debtor, estate, and all creditors (other than BSP), given the extensive work already expended to bring the case to the cusp of emergence from bankruptcy.  As detailed more fully below, the Debtor submits that the U.S. Trustee has failed to meet its burden

---

[1] Under the Plan, creditors are to be paid over time with interest.

for the extraordinary *and* draconian relief requested and, as such, the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

5.      On February 23, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code initiating the Chapter 11 Case.  The Debtor continues to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      The Debtor owns and operates the property located at 96 Wythe Avenue in Brooklyn, including the 147-room Hotel with a restaurant and multiple bars.  The Hotel is fully operational after being severely curtailed during the initial stages of the COVID-19 pandemic.

7.      The Chapter 11 Case has provided the Debtor with, among other things, a breathing spell to reorganize given the negative impact of the pandemic upon the hospitality industry and the Debtor's business, which had severely impaired the Debtor's ability to obtain replacement mortgage financing and continues to do so.  As noted above, the Debtor's Plan provides for the infusion of $9 million and proposed payment plan to all creditors in full with interest over time. *See* Second Amended Chapter 11 Plan §§ 1.37, 3.2 [Dkt. No. 196, Ex. A] (the "Plan"). The confirmation hearing is scheduled to begin on February 15, 2022.

8.      The Firm was retained as co-counsel for the Debtor by order entered on October 13, 2021, *nunc pro tunc* to August 9, 2021 [Dkt. No. 145].  Since first appearing in the Chapter 11 Case in August 2021, the Firm has zealously represented the interests of the Debtor and its estate.

9.      The Firm's efforts to oversee the Chapter 11 Case were all intended to maximize recoveries and to preserve the going concern value of the Hotel and, since its appointment, the Firm has taken the primary laboring oar in the Chapter 11 Case, assuming lead responsibility for issues, including but not limited to:

- retention of the Firm and other professionals of the Debtor;

- the successful defense against the U.S. Trustee's motion to convert to chapter 7 or to dismiss (which was shut down by the Court);

- Court-appointed mediation to resolve disputes with BSP (pending the mediator's availability);

- formulation and solicitation of votes for the Plan, which presents what the Debtor believes is the best viable chapter 11 exit to preserve the going concern value of the Hotel;

- the successful defense against BSP's motion to terminate exclusivity;

- claim administration and the filing of claim objections, including commencing an adversary proceeding against BSP;

- appointment of, and ongoing investigation by, the Examiner (as defined below); and

- discovery disputes with BSP, including a motion to quash.

10.     In mid-November of last year, months after the instant engagement,[2] the Firm was engaged to represent 286 Rider Ave. Development LLC ( "Development") as special counsel in connection with the chapter 11 case of 286 Rider Ave. Acquisitions LLC ("Rider"), case number 21-11298, pending before Judge Lisa G. Beckerman in the Southern District of New York (the "Rider Case").

11.     Development is the equity holder of Rider and is owned by the Debtor's managing members, Toby Moskovits and Michael Lichtenstein (the "Principals") [Dkt. No. 240].  The Firm provided the U.S. Trustee with a draft supplemental declaration regarding its engagement by Development on December 1, 2021, approximately ten business days after the filing of its notice of appearance in Rider, in response to the U.S. Trustee's suggestion that it be sent a draft prior to filing.  Thereafter, the Firm modified the supplemental declaration in an effort to address the U.S. Trustee's feedback and then filed with the Court on December 21, 2021 [Dkt. No. 240] (the

---

[2] Contrary to the U.S. Trustee's representations, the Firm, in fact, was not retained in connection with the Rider Case when the Debtor sought retention of the Firm in connection with the Chapter 11 Case.

"Supplemental Disclosure").  The Supplemental Disclosure makes clear that the representation of Development is in connection with matters entirely unrelated to the Firm's representation in the Chapter 11 Case.

12.    On November 8, 2021, the Court entered an *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 178], pursuant to which an examiner (the "Examiner") was appointed.  On November 23, 2021, the Court entered the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 193] and entered the *Second Amended Order Directing Appointment of an Examiner* on December 14, 2021 [Dkt. No. 224] (the "Examiner Order").  The Examiner Order includes, amongst other things, a proviso allowing the parties to come back to the Court for resolution of any dispute over the scope of the examination.

13.    Thereafter, consistent with the Examiner Order, the Debtor raised, for the Court's consideration, certain concerns relating to confidentiality and the costs and scope of the Examiner's appointment.  As such, the Debtor filed a *Motion to Clarify and Amend Second Amended Order Directing Appointment* [Dkt. No. 238] ("Motion to Clarify"), which the Examiner opposed.  The Examiner also filed a *Motion to Enforce and Further Amend Second Amended Order Directing the Appointment of an Examiner* [Dkt. No. 243], which the Debtor opposed by filing an *Objection to the Examiner's Motion to Enforce and Further Amend* [Dkt. No. 268] (the "Objection to Motion to Enforce").

14.    As a result of the foregoing motion practice, amongst other things, the Examiner clarified certain items in connection with the scope of his review,  including that he was not seeking information from every employee of the Hotel and was amenable to putting in place a protocol to maintain confidentiality, without which the estate may have been harmed.  In addition, while the

Court permitted the Examiner to proceed with (and essentially self-regulate) his review, the Court did not agree to remove any fee cap for the Examiner and provided for issuance of a report within a limited period of time consistent with the confirmation schedule and upcoming Court-ordered mediation.

15.     In addition, based upon the Court's bench ruling on the same day, the Firm immediately contacted the Debtor and its management team and advised of the Court ruling, including that the Debtor's members were to provide all of the non-Debtor account information requested by the Examiner.  While the Firm does not represent the non-Debtors (The Williamsburg Hotel LLC (the "Management Company") and certain non-Debtors having engaged separate counsel), the Firm provided the directions of the Court and offered (simply as a facilitator) to continue to assemble the information and transmit it to the Examiner upon production.

## ARGUMENT

### A.     There Is No Actual or Potential Conflict of Interest from the Firm's Representation of the Debtor.

16.     Section 327(a) of the Bankruptcy Code imposes two requirements relevant to the continued retention of the chapter 11 debtor's professionals:  *first*, that a professional must not hold or represent an interest adverse to the estate, and *second*, that a professional be disinterested. *See In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).  With respect to the second prong of section 327(a), a "disinterested person" is defined as any person that, among other things, "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."  11 U.S.C. § 101(14)(C).

17.     A law firm's disinterestedness under section 101(14)(C) of the Bankruptcy Code (previously section 101(14)(E)) only applies to a law firm when the law firm itself **personally**

holds a materially adverse interest and *not* where the firm simply represents an entity that may

hold a materially adverse interest. *In re Arochem Corp.*, 176 F.3d 610, 629 (2d Cir. 1999); *see In*

*re BH & P, Inc.*, 949 F.2d 1300, 1310 (3d Cir. 1991) ("[A] person is not disqualified for

employment under [section 327] solely because of such person's employment by or representation

of a creditor, unless . . . there is an actual conflict of interest.") (quoting 11 U.S.C. § 327(c)).

18.     The term adverse interest is not defined under the Bankruptcy Code.  As such,

whether an adverse interest exists, especially in the context of a law firm's disinterestedness,

is determined case-by-case. *See In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996).

This Circuit has recognized the definition of adverse interest to be as follows:

> (1) to possess or assert any economic interest that would tend to
> lessen the value of the bankruptcy estate or that would create either
> an actual or potential dispute in which the estate is  a rival claimant;
> or (2) to possess a predisposition under circumstances that render
> such a bias against the estate.

*In re Arochem Corp.*, 176 F.3d at 623 (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah

1985)).

19.     "Motions to disqualify attorneys are generally disfavored and are subject to fairly

strict scrutiny to ensure that they are not being interposed merely for tactical reasons." *In re*

*Wingspread Corp.*, 152 B.R. 861, 863 (Bankr. S.D.N.Y. 1993) (citations omitted).  Recognizing

the serious impact of attorney disqualification on the client's right to select counsel, the Second

Circuit has indicated that such relief ordinarily should be granted only when a violation of the

applicable rules of professional responsibility poses a significant risk of trial taint. *See id.*

("Recognizing the serious impact of attorney disqualification on the client's right to select counsel,

the Second Circuit has indicated that such relief ordinarily should be granted only when a violation

of [now the Rules of Professional Responsibility] poses a significant risk of trial taint.")  Indeed,

the party seeking disqualification must carry a "heavy burden" and meet a "high standard" of proof before a lawyer is disqualified. *Id.*

20.     Moreover, a party objecting to counsel's representation of a debtor-in-possession must produce more evidence than the mere appearance of a conflict to sustain its burden in the adverse interest test of section 327(a). *In re Marvel Entm't Grp., Inc.*, 140 F.3d. 463, 477 (3d Cir. 1998); *In re BH & P, Inc.*, 949 F.2d at 1314 (interpreting adverse interest under sections 327(a) and (c)). "**Mere speculation will not suffice to establish sufficient grounds for disqualification**." *In re Enron Corp.*, 2003 WL 223455, at *4 (S.D.N.Y. Feb. 3, 2003) (emphasis added); *In re Stylianou*, 2010 WL 3719303, at *4 (Bankr. S.D.N.Y. Sept. 15, 2010) ("Any disqualifying conflict of interest must be either 'actual or reasonably probable' and not 'merely theoretical, and its occurrence . . . merely speculative.'") (quoting *In re Hutter*, 215 B.R. 308, 313 (Bankr. D. Conn. 1997)); *see also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) (finding no conflict of interest existed where moving party speculated about a possible conflict without further explanation).

***The Firm's Representation of Development in the Entirely Separate Rider Case Does Not Create an Adverse Interest to the Estate***

21.     In the Motion, the U.S. Trustee has neither argued nor produced any evidence to support that the Firm *personally* holds any interests adverse to the estate. Rather, the U.S. Trustee characterizes the Firm as somehow counsel for the Principals because it represents another company owned by the Principals in an unrelated case and objected to and sought clarification regarding issues raised during the course of the Examiner's investigation. As with many of the

U.S. Trustee's other contentions in the Chapter 11 Case[3], the assertions draw unsupported conclusions and do not meet the heavy burden to disqualify counsel just *three weeks* prior to the scheduled confirmation hearing (and two weeks prior to Court-ordered mediation).

22.     The U.S. Trustee's assertions are completely speculative.  There is no connection between the two chapter 11 cases, the matters, and the Firm's two clients other than the fact that the Debtor and Development share the Principals as common owners. Further, the Firm does not represent the Principals in the Chapter 11 Case.  The Principals have separate counsel in the Rider Case, Offit Kurman, P.A.

23.     In addition, representation of Development (or the Principals) as special counsel in unrelated matters is not a conflict of interest in connection with the Firm's representation of the Debtor in *this* Chapter 11 Case.  *See In re Caesars Entm't Operating Co., Inc.*, 561 B.R. 420, 433 (Bankr. N.D. Ill. 2015) (holding that counsel's representation of indirect principal's portfolio companies in matters unrelated to the bankruptcy case was too attenuated to find that counsel would act adversely to the estate).

24.     Here, as provided above, in mid-November of last year, months after the instant engagement, the Firm was engaged to represent Development as special counsel in connection

---

[3] In support of the Motion, the U.S. Trustee continues to press inaccurate contentions from many of its failed arguments from prior motions.  For example:

- The U.S. Trustee contends that the Debtor made misleading statements in connection with the bankruptcy filing – submitted before the Firm was even engaged – that the Debtor's employees worked for the Hotel when they were employed through the management company.  This argument was rejected by the Court in the context of the U.S. Trustee's motion to convert to chapter 7 or to dismiss.

- The U.S. Trustee alleges that the Debtor was diverting funds into unauthorized accounts by transferring funds from the debtor-in-possession accounts to the management accounts (such transfers all fully disclosed and, consistent with industry practice, intended to pay operating expenses) as an unauthorized diversion of estate funds.  This argument was also rejected by the Court in the context of the U.S. Trustee's motion to convert to chapter 7 or to dismiss.

- The U.S. Trustee adopts assertions made by BSP relating to the execution of the management agreement in BSP's *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* that have been challenged by the Debtors, have nothing to do with disqualification, and were not deemed grounds for relief by the Court.

9

with the chapter 11 case of Rider.  Development is the equity holder of Rider and, as fully disclosed

(discussed further below), is owned by the Debtor's managing members.  Rider is currently run by

a manager appointed by the secured lender in such case, and the Firm's representation in the Rider

Case involves addressing the pending disputes between Development as equity holder with such

lender and potential settlement of the claim.

25.    There is no connection with such representation and the representation of the instant

Debtor.  In addition, as the U.S. Trustee knows from filings in that case, Development has recently

lined up independent third-party financing to pay off the secured claims (which were paid) so that

it could regain control of Rider.  Accordingly, the Firm's representation of Development in the

unrelated matters does not raise any conflict in connection with the Firm's representation of the

Debtor, and the U.S. Trustee has not provided support otherwise.

### _Issues Raised by the Debtor to the Examiner Do Not Create an Adverse Interest to the Estate_

26.    The U.S. Trustee also takes issue with the Debtor's efforts to clarify certain issues

relating to the Examiner appointed in the Chapter 11 Case and objections made to the Examiner's

production requests, asserting that the Firm should not have objected to the Examiner's requests

and should have ensured production of all Debtor and non-Debtor documents.

27.    As an initial matter, the Examiner Order authorized the Debtor to come back to the

Court to address any issues thereunder, including the issues raised regarding confidentiality, scope,

and costs.  In addition, substantially all of the Debtor documents were provided to the Examiner,

and the Examiner's contentions were responded to (as detailed in the Debtor's _Motion to Clarify_

and _Objection to Motion to Enforce_), which the Examiner did not challenge.

28.    Regarding production of non-Debtor documents, while the non-Debtors have

advised that all or substantially all of the requested documents that exist were provided to the

Examiner on Friday, January 14, 2022[4], the Firm does not represent or control the non-Debtors (with the Management Company and certain non-Debtors having engaged separate counsel). Accordingly, the U.S. Trustee's assertions that the Firm can only represent the Debtor on the one hand, but simultaneously alleging that the Firm should somehow be representing or acting on behalf of the non-Debtors, creates a Gordian knot.  This is untenable and simply no basis to disqualify the Firm.

29.    In sum, as noted above, the U.S. Trustee's assertions of a conflict of interest are hypothetical speculation and, at best, based upon contested and misleading facts that clearly fall short of establishing facts to sustain the U.S. Trustee's heavy burden.  Nor does the Firm's advocacy of the Debtor's and the estate's interest in connection with the Examiner's investigation give rise to any conflict of interest, and doing so would essentially require a mini-trial without evidence. Here, the Debtor communicated its concerns with the Examiner but was unable to find a consensual resolution on many issues.  Consistent with the Examiner Order, the Debtor promptly sought Court guidance with respect to each of these issues.  Such guidance was sought in the interests of the Debtor, as the Debtor would ultimately be funding the Examiner's investigation. While the Court allowed the examination to continue and deferred to the Examiner to regulate himself in terms of scope, the Court granted the Debtor's request to keep the investigation confidential and denied the Examiner's request to eliminate any cap on fees.  Simply because the Debtor raised objections and sought clarification on certain issues impacting the Debtor is not grounds for the extraordinary relief of disqualification.  Indeed, if the Examiner has an issue with production by non-Debtors (or otherwise), the course of action for the Examiner would be to come

---

[4] The Examiner challenges whether the non-Debtor entities' production was complete.

back to the Court to compel compliance, with notice and opportunity for the non-Debtors and their counsel to appear and be heard.

30.    As the Motion fails to demonstrate that the Firm **personally** holds a materially adverse interest or any conflict of interest other than through mere speculation, the Court's analysis should stop here.  However, the Debtor further asserts, that even assuming, *arguendo*, that the Court were to find a potential conflict of interest (which the Debtor submits is not the case), the Court should nonetheless decline to disqualify the Firm.  *See, e.g.*, *In re Pittsfield Weaving Co.*, 355 B.R. 404, 406 (Bankr. D.N.H. 2006) (allowing debtor's counsel to continue representation despite representing a potential investor/lender or entities controlled by such investor/lender in another chapter 11 case); *see In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994) (failure to disclose would not amount to disqualification of counsel).

### B.    The Debtor's Disclosure Was Appropriate Under the Circumstances.

31.    While a law firm seeking employment as counsel has a duty to disclose all of its connections to the debtor,creditors, or any other parties in interest (and such disclosures were timely provided herein), it does not have to disclose every conceivable interpretation of its connections or to predict all possible consequences resulting from those connections.  *See In re Enron Corp.*, 2002 WL 32034346, at *5 (Bankr. S.D.N.Y. May 23, 2002) (ruling with respect to the counsel to unsecured creditors' committee), *affirmed*, 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003).

32.    Here, the U.S. Trustee erroneously contends that the Firm's *Application for an Order Pursuant to Sections 327(a) and 328 of the Bankruptcy Code Authorizing the Employment and Retention of Mayer Brown LLP as Co-Counsel to the Debtor and Debtor in Possession* [Dkt. No. 89] (the "Retention Application") somehow did not disclose the Firm's representation of the

Principals.  However, the Firm did not and does not represent the Principals.  Further, the Rider

engagement was only recently entered into in November 2021, months after the initial retention

herein.  Prior to the Rider engagement, the Firm did not represent any entity connected with the

Debtor.  The Retention Application in the Chapter 11 Case makes that clear.

33.     In addition, the Firm timely prepared the Supplemental Disclosure advising the

Court and all parties of the Firm's separate retention in the Rider Case.  While not mentioned in

the Motion, as noted above, Mr. Greg Zipes, attorney for the U.S. Trustee, initially suggested that

a draft declaration be provided to him in advance of any filing.  In response to the request, the Firm

sent a draft declaration to the U.S. Trustee on December 1, 2021 (approximately ten business days

after filing the notice of appearance for the new engagement).  The Firm then made certain

revisions to the disclosure incorporating the U.S. Trustee's comments prior to filing with the Court

on December 21, 2021.[5]

34.     The foregoing Supplemental Disclosure detailed the new limited engagement.

Importantly, the Supplemental Disclosure reads, in connection with the Rider Case:

> On November 15, 2021, Mayer Brown were retained in the Chapter
> 11 case 286 Rider Ave Acquisition LLC ("Rider"), United States
> Bankruptcy Court for the Southern District of New York, Case No.:
> 21-11298, as Special Co-counsel, for the equity holder, 286 Rider
> Ave Development LLC ("Development"). Development is owned
> by Toby Moskovits and Michael Lichtenstein, the managing
> members of the Debtor herein. The Rider case has no connection
> with the instant Debtor's case and/or the Debtor, other than as noted
> above. In addition, while unrelated to the instant case, the managing
> members, and Rider are represented by separate counsel.

---

[5] As disclosed in the Retention Application, the Firm also represented certain creditors in unrelated matters. It should also be noted that the Retention Application and declaration filed in support thereof identified the Principals as managers of the Debtor.  Retention App., at 8 n.4.

Supplemental Disclosure, at ¶ 4.  The Firm submits that all connections are duly disclosed therein, in compliance with the requirements under Bankruptcy Rule 2014 and to ensure full transparency.

35.    Such disclosure details the unrelated engagement, which, as provided above, has nothing to do with the Firm's engagement by the Debtor in the Chapter 11 Case.  In addition, it should be noted that in *Leslie Fay*, a case cited in the Motion, the court found that disqualification of the chapter 11 debtor's counsel was not warranted, even when the law firm failed to make the requisite disclosure of potential conflicts that might have impaired its investigation into fraud by the debtor's management.  *In re Leslie Fay Cos., Inc.*, 175 B.R. at 533.  The *Leslie Fay* court found that, although the debtor did not reveal that it represented companies whose principals, as outside directors of debtor, were potential targets of a fraud investigation that the debtor would pursue, such failure to disclose would not amount to disqualification of counsel.  *Id.* at 536-39.  In doing so, the *Leslie Fay* court factored into consideration that the debtor's counsel otherwise rendered services competently and loyally to the debtors and that counsel's removal from the chapter 11 case 20 months into the reorganization effort would cause severe harm to the debtor.  *Id.* at 527.

36.    Moreover, a showing of potential conflict of interest in and of itself is ***not*** enough to warrant disqualification of counsel; when the court determines that there is a potential conflict of interest, then the court must also consider whether the law firm failed to disclose such potential conflicts under applicable law.  Not only does the U.S. Trustee fail to establish potential, let alone actual conflicts (as set out above), but it also fails to point out how the Debtor's disclosure may not meet the standard under Bankruptcy Rule 2014.  Instead, the Motion simply repeats language in the declarations submitted on behalf of the Debtor and leaves it to the Court to make its own inferences.  *See In re Caesars Entm't Operating Co., Inc.*, 561 B.R. at 433 ("But the Committee offered no evidence that the existing representations or [counsel]'s interest in additional ones

would influence [counsel]'s representation of the debtors; the Committee simply left the inference out there to be drawn.  The inference is not reasonable.").

37.    The Firm provided timely, appropriate, and sufficient disclosures under the circumstances.  The Debtor submits that disclosure was made diligently, especially given that the Firm was retained, in both instances, well into the respective chapter 11 cases.  Even if the U.S. Trustee could establish that the disclosure was insufficient, that by itself would not warrant disqualification of the Firm from this case.  *See In re Best Craft Gen. Contractor & Design Cabinet, Inc.*, 239 B.R. at 470 (where undisclosed facts did not "evidence any actual conflict of interest," the court held that such deficiency in disclosure was harmless and did not warrant disqualification).  Further, in the alternative, the Debtor urges the Court to follow the direction of the *Leslie Fay* court, reflecting certain other equitable considerations as set forth below.

### C.    Disqualification of the Firm Will Deal a Fatal Blow to the Debtor.

38.    Disqualification of a debtor-in-possession's counsel is rare in this Circuit and "has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of [the Rules of Professional Responsibility] undermines the Court's confidence in the vigor of counsel's representation, or, more commonly, (2) when the attorney is at least potentially in a situation to use privileged information concerning the other side through prior representation."  *In re Vebeliunas*, 231 B.R. 181, 195 (Bankr. S.D.N.Y. 1999) (citations omitted) (where the court disqualified the chapter 7 trustee's attorney based on the attorney's attempt to justify his bias against the debtor in an affidavit filed with the court).

39.    Courts in this Circuit have discretion to carefully engage in a "flexible, fact specific analysis" to determine if disqualification is warranted.  *In re Innomed Labs, LLC*, 2008 WL 276490, at *7 (S.D.N.Y. Jan. 29, 2008) (quoting *In re Huntco, Inc.*, 288 B.R. 229, 234 (Bankr.

E.D. Mo. 2002)); *see also In re AroChem*, 176 F.3d at 621 ("When evaluating [a] proposed retention, a bankruptcy court 'should exercise its discretionary powers over the approval of professionals in a matter which takes into account the particular facts and circumstances surrounding each case…'") (quoting 3 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 327.04[1][a] (15th ed. rev. 1998)).

40.    Further, in a case cited by the U.S. Trustee[6], *Rome v. Braunstein*, the court observed:

> Of course, disclosure of facts suggesting a conflict is not invariably followed by disqualification.  In special circumstances, for example, the bankruptcy court could determine, in the sound exercise of its discretion, that any potential impairment of its institutional integrity, or risk of divided loyalty by counsel, **was substantially outweighed by the benefits to be derived from counsel's continued representation** of multiple entities or the impracticability of disentangling multiple interests "without unreasonable delay and expense."

*Rome v. Braunstein*, 19 F.3d 54, 60 n.3 (1st Cir. 1994) (citation omitted) (emphasis added).

---

[6] In addition to *Rome* and *Leslie Fay*, none of the cases cited by the U.S. Trustee support disqualification.  Specifically:

(a)    Certain cases are favorable to the Debtor's position, as the courts in those cases have, in fact, allowed counsel to continue with its representation.  *See In re Arochem Corp.*, 176 F.3d at 630; *Matter of Codesco*, 18 B.R. 997, 1001 (Bankr. S.D.N.Y. 1982) (allowing the former creditor's committee counsel in the chapter 11 case to represent the chapter 7 trustee after conversion of the case to chapter 7); *In re Enron*, No. 01-16034, 2002 WL 32034346, at *11 n.11 ("the speculation that Milbank may become a defendant or witness is not sufficient to warrant a finding of adverse interest on Milbank's part."); *see generally In re Vouzianas*, 259 F.3d 103 (2d Cir. 2001) (where the chapter 7 trustee sought to substitute, *not* disqualify, the debtor's counsel, who has worked on the case for years, with his own choice of counsel).

(b)    *In re Granite Partners, L.P.* and *In re Project Orange Assocs., LLC* are factually distinguishable because the law firms in those cases stated that they would refuse to sue a particular party with whom they had a relationship if a claim were actually to arise against said party.  *See In re Granite Partners, L.P.*, 219 B.R. at 27; *see In re Project Orange Assocs., LLC*, 431 B.R. 363, 368 (Bankr. S.D.N.Y. 2010).

(c)    *In re Angelika Films 57th Inc.* is distinguishable because the law firm showed clear bias against the debtor's interests when it moved to assign the debtor's lease to a corporate insider for far below the stated market value.  *In re Angelika Films 57th Inc.*, 227 B.R. 29, 41 (Bankr. S.D.N.Y. 1998).

41.     As explained above, as a matter of law, there is no basis to disqualify the Firm. Further, as a matter of equity, as contemplated by many courts in this Circuit, including the *Leslie Fay* court (which was cited by the U.S. Trustee), the Court should also factor into consideration the facts and circumstances to determine the impact of the Firm's absence from the Chapter 11 Case.  The Debtor submits that the Firm has rendered services competently and loyally to the Debtor and continues to do so on the eve of Plan confirmation.

42.     Moreover, as detailed in the Goldwasser Declaration, the Debtor further submits that the Firm's disqualification will result in a severe prejudice to the Debtor at a critical juncture of the reorganization, even with the Debtor's co-counsel staying behind, given the extremely contentious nature of the Chapter 11 Case, the Firm's lead with the Debtor's restructuring efforts, and the timing of the Motion in the Chapter 11 Case.  In this regard, the U.S. Trustee's contention that co-counsel to the Debtor, Backenroth Frankel & Krinsky, LLP, can step in if the Firm is disqualified, ignores the realities of the current representation.  As detailed above, the Firm was engaged and has taken the lead on nearly every matter since it was retained and has a large team that has been handling multiple matters simultaneously.And while there is no reason the Firm cannot bring claims and causes of action on behalf of the Debtor, if the Court is concerned with such, the more sensible resolution would be to simply have Backenroth Frankel bring such actions, if any, if and when any such viable cause of action is identified.[7]

*[Remainder of Page Intentionally Left Blank]*

---

[7] Courts have allowed professionals to overcome disinterestedness concerns as they relate to potential conflicts, provided they take actions to terminate the connection giving rise to the conflict.  *See TWI Int'l, Inc. v. Vanguard Oil and Serv. Co.*, 162 B.R. 162 B.R. 672, 675 (S.D.N.Y. 1994) (permitting attorney to withdraw from representation of debtor's insider in breach of contract action); *In re Creative Rest. Mgmt., Inc.,* 139 B.R. 902, 914 (Bankr. W.D. Mo. 1992) (law firm member resigned as assistant secretary of debtor).

## CONCLUSION

43.     In sum, the Firm's engagement by Development was fully disclosed and does not raise any conflict of interest in connection with the Firm's representation of the Debtor herein. Additionally, the Firm's efforts to clarify issues consistent with a Court order after a standstill with the Examiner does not create a basis for the extraordinary relief of disqualifying counsel. Such result, which in effect would bar the Debtor from ever raising any question or seeking Court guidance with respect to the Examiner, relief clearly reserved under the Examiner Order. In addition, disqualification of counsel at this critical juncture would also be extremely detrimental to the Debtor, its estate, all stakeholders (other than perhaps BSP, who is looking to derail the case), given the subject work already expended in the Chapter 11 Case and the fact that a plan of reorganization has been filed with confirmation set for next month.

For all of the foregoing reasons, the Debtor respectfully requests that the Court deny the Motion in its entirety with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: January 20, 2022
     New York, New York

Respectfully submitted,

By: */s/ Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910
Email: dspelfogel@mayerbrown.com
    leisenberg@mayerbrown.com
    dchung@mayerbrown.com

*Co-Counsel to the Debtor
and Debtor-in-Possession*

Mark Frankel
**BACKENROTH FRANKEL &
KRINSKY, LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor and Debtor-in-
Possession*

**<u>Exhibit A</u>**

**Goldwasser Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108 (RDD) |
| Debtor. | |

## DECLARATION OF DAVID GOLDWASSER

1.      My name is David Goldwasser.  Through my company G.C. Realty Advisors, L.L.C., I am the Chief Restructuring Officer of the above-captioned debtor, 96 Wythe Acquisition LLC (the "Debtor"), and I am authorized to make this declaration on behalf of the Debtor.

2.      I have read the *Debtor's Objection to United States Trustee's Motion to Disqualify Mayer Brown LLP as Debtor's Counsel*, which is being concurrently filed herewith (the "Objection").  The factual statements contained in the Objection, to the extent it relates to the Debtor or the Debtor's chapter 11 case, are true and correct to the best of my knowledge based on my personal knowledge of the information learned from my communications with and, information supplied to me by, the Debtor's professional advisors and/or members of the Debtor's management team, review of relevant documents, or investigation on behalf of the Debtor into matters asserted therein.

3.      Further, since its retention by the Debtor as co-counsel in August 2021, Mayer Brown LLP (the "Firm") has diligently served as the main counsel of the Debtor to represent the interests of the Debtor and its estate, to maximize recoveries, and to preserve the going concern value of the Hotel.

4.      The Firm's representation has culminated in the Court approval of the Debtor's disclosure statement and a pending confirmation hearing of the Debtor's proposed chapter 11 plan

of reorganization, which includes preservation of scores of jobs, the infusion of $9 million in new monies, and 100% payment to all creditors, including, mechanics lien holders, taxes, and general unsecured creditors.[1]  The disqualification of counsel at this critical juncture –just prior to the scheduled court ordered confirmation hearing – would be devastating for the Debtor's reorganization efforts and would most likely precipitate liquidation.

5.      Moreover, disqualification of the Firm will result in a severe prejudice even with Backenroth Frankel & Krinsky, LLP ("BFK"), the Debtor's co-counsel staying behind, given the extremely contentious nature of the Chapter 11 Case, the Firm's lead role with the Debtor's restructuring efforts, and the timing of the Motion in the Chapter 11 Case.  The Firm has taken the lead on nearly every matter since it was retained.  Disqualification of the Firm would result in the Debtor's loss of its primary counsel, with significant experience in the case, including with respect to claims objections, the adversary complaint against BSP, and in furtherance of the Court order mediation, and contested confirmation.  In addition, even if the Court is concerned with the Firm bringing claims, if any, in this regard, the more sensible resolution would be to simply have BFK or other conflicts' counsel, bring such actions, if any, if  and when any such viable (and cost effective) cause of action is identified.

6.      Lastly, with respect to the examiner appointment, at the behest of the Debtor, the Firm raised certain objections and sought clarification to address issues to protect the Debtor and the estate relating to maintaining the confidentiality of sensitive and propriety information, as well as to address the Debtor's concerns relating to the costs and scope of the examiner's appointment, the costs of which are borne by the Debtor.

---

[1] Under the Plan, creditors are to be paid over time with interest.

745806771

7.      In sum, the Firm has represented the Debtor zealously, and is essential to provide advice and counsel as the Debtor works to restructure its financial affairs, and emerge from bankruptcy in the next few weeks.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed on the 20th day of January, 2022.

_____

David Goldwasser

3