**Hearing Date and Time: March 8, 2022 @ 10:00 a.m. (ET)**

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

 *-and-*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York  10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108- (RDD) |
| Debtor. | |

**DEBTOR'S OMNIBUS RESPONSE TO OBJECTIONS TO SECOND AMENDED**
**CHAPTER 11 PLAN OF REORGANIZATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT THE U.S. TRUSTEE OBJECTION AND NBE OBJECTION ...............................3

I.      The Plan's Exculpation, Debtor Release, and Third-Party Release Provisions are
        Consistent with the Bankruptcy Code and Satisfy Section 1123(b)(6)....................3

        A.      The Exculpation Provision in Article 5.12 of the Plan is Appropriate. ...............4

        B.      The Debtor Releases are Appropriate. ............................................................7

        C.      The Third-Party Releases are Consensual and Appropriate..........................10

II.     The Plan Satisfies the Requirements of Section 1129(a)(4). .....................................12

III.    The Plan Satisfies the Absolute Priority Rule of 11 U.S.C. § 1129(b)(2)(B)............14

GRANDFIELD OBJECTION AND MENCIA OBJECTION........................................................16

IV.     The Plan is Proposed in Good Faith and Not by Any Means Forbidden by Law in
        Accordance with Section 1129(a)(3)...........................................................................16

V.      The Plan is Feasible in Accordance with Section 1129(a)(11)...................................19

CONCLUSION.......................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Bus. Sol., Inc.,*
341 B.R. 415 (Bankr. S.D.N.Y. 2003) ................................................................................19

*In re Adelphia Commc'ns Corp.,*
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...................................................................... 7, 8, 10

*In re Aegean Marine Petroleum Network Inc.,*
599 B.R. 717 (Bankr. S.D.N.Y. 2019) ..................................................................................4

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship,*
526 U.S. 434 (1999)............................................................................................................15

*In re BearingPoint, Inc.,*
453 B.R. 486 (Bankr. S.D.N.Y. 2011) .................................................................................5

*In re Briscoe Enters. Ltd, II,*
994 F.2d 1160 (5th Cir. 1993) ...........................................................................................19

*BT/SAP Pool C Assocs. v. Coltex Loop Cent. Three Partners,*
203 B.R. 527 (S.D.N.Y. 1996) ...........................................................................................15

*In re Calpine Corp.,*
No. 05-60200 (BRL), 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007) ..............4, 10

*In re Cenveo, Inc.,*
No. 18-22178 (RDD) (Bankr. S.D.N.Y. Aug. 21, 2018) .....................................................5

*In re Charter Commc'ns,*
419 B.R. 221 (Bankr. S.D.N.Y. 2009) ..............................................................................7, 8

*In re Chemtura Corp.,*
439 B.R. 561 (Bankr. S.D.N.Y. 2010) ................................................................... 4, 17, 18

*In re DBSD N. Am., Inc.,*
419 B.R. 179 (Bankr. S.D.N.Y. 2009) .................................................................................7

*In re Deluxe Media,*
No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 23, 2019), ECF No. 96..............................12

*In re Dewey & LeBoeuf LLP,*
478 B.R. 627 (Bankr. S.D.N.Y. 2012) .................................................................................9

*DISH Network Co. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.),*
    634 F.3d 79 (2d Cir. 2011) .................................................................................................... 14

*In re Ditech Holding Corp.,*
    606 B.R. 544 (Bankr. S.D.N.Y. 2019) ................................................................................. 17

*In re Eastman Kodak Co.,*
    No. 12-10202 (ALG) (Bankr. S.D.N.Y. Aug. 23, 2013) ...................................................... 5

*In re Eddington Thread Mfg. Co., Inc.,*
    181 B.R. 826 (Bankr. E.D. Pa. 1995) .................................................................................. 19

*Fixed Income Shares: Series M v. Citibank N.A.,*
    314 F. Supp. 3d 552 (S.D.N.Y. 2018) ................................................................................ 7, 8

*In re Genco Shipping & Trading Ltd.,*
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) ................................................................................. 10

*In re Ionosphere Clubs, Inc.,*
    156 B.R. 414 (S.D.N.Y. 1993) ............................................................................................. 8

*Kane v. Johns-Manville,*
    843 F.2d 636 (2d Cir. 1988) ........................................................................................... 17, 19

*In re Latam Airlines Grp. S.A.,*
    620 B.R. 722 (Bankr. S.D.N.Y. 2020) ..................................................................... 14, 15, 16

*In re Metromedia Fiber Network, Inc.,*
    416 F.3d 136 (2d Cir. 2005) ................................................................................................ 10

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),*
    478 F.3d 452 (2d Cir. 2007) .................................................................................................. 8

*In re NII Holdings, Inc.,*
    536 B.R. 61 (Bankr. S.D.N.Y. 2015) ................................................................................. 8, 9

*In re Northbelt, LLC,*
    630 B.R. 228 (Bankr. S.D. Tex. 2020) ................................................................................ 17

*Patterson v. Mahwah Bergen Retail Grp., Inc.,*
    No. 3:21cv167 (DJN), 2022 WL 135398 (E.D.Va. Jan. 13, 2022) ..................................... 11

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
    390 U.S. 414 (1968) .............................................................................................................. 8

*In re Purdue Pharma L.P.,*
    633 B.R. 53 (Bankr. S.D.N.Y. 2021) ............................................................................. 16, 17

*In re Purdue Pharma L.P.,*
    No. 21-cv-8566-CM, 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021) .................................. 11

*In re Red Mountain Mach. Co.,*
    448 B.R. 1 (Bankr. D. Ariz. 2011) ...................................................................................... 16

*In re Red Mountain Mach. Co.,*
    451 B.R. 897 (Bankr. D. Ariz. 2011) .................................................................................. 14

*In re Sabine Oil & Gas Corp.,*
    555 B.R. 180 (Bankr. S.D.N.Y. 2016) ................................................................................. 8

*In re Specialty Equip. Cos.,*
    3 F.3d 1043 (7th Cir. 1993) ............................................................................................... 10

*In re Stearns Holdings, LLC,*
    607 B.R. 781 (Bankr. S.D.N.Y. 2019) ................................................................................. 7

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.),*
    326 B.R. 497 (S.D.N.Y. 2005) ............................................................................................ 5

*In re Valley View Shopping Ctr., L.P.,*
    260 B.R. 10 (Bankr. D. Kan. 2001) ................................................................................... 17

*In re Windstream Holdings, Inc.,*
    No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 26, 2020), ECF No. 2243 ............................ 5, 10, 12

*In re WorldCom,*
    No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .................... 13

**Statutes, Rules and Regulations**

11 U.S.C. § 1123(b) ..............................................................................................................3, 4

11 U.S.C. § 1123(b)(3) ............................................................................................................. 4

11 U.S.C. § 1123(b)(6) ............................................................................................................. 3

11 U.S.C. § 1129(a)(3) ...............................................................................................3, 16, 17, 18

11 U.S.C. § 1129(a)(4) ...............................................................................................3, 12, 13, 14

11 U.S.C. § 1129(a)(11) .............................................................................................3, 18, 19, 20

11 U.S.C. § 1129(b)(2)(B) ........................................................................................... 14, 15, 16

N.Y. RLPC § 1.8(h)(1) ............................................................................................................. 7

745878574

96 Wythe Acquisition LLC, the above-captioned debtor and debtor in possession (the "Debtor") hereby files this omnibus response (the "Omnibus Response") to (i) the *United States Trustee's Objection to the Confirmation of Debtor's Second Amended Chapter 11 Plan*, January 19, 2022, ECF No. 318 (the "U.S. Trustee Objection"), (ii) the *Joinder of NBE Plumbing Corp to United States Trustee's Objection to the Confirmation of Debtor's Second Amended Chapter 11 Plan*, January 25, 2022, ECF No. 345 (the "NBE Objection"), (iii) *Attorney Affirmation* filed on behalf of Grandfield Realty Corp., January 13, 2022, ECF No. 297 (the "Grandfield Objection"), and (iv) the *Objection to Plan of Reorganization* filed by Gerson Mencia, January 13, 2022, ECF No. 290 (the "Mencia Objection" and together with the U.S Trustee Objection, the NBE Objection, and the Grandfield Objection, the "Objections"), and in support thereof states as follows:[1]

## PRELIMINARY STATEMENT

1.      The Debtor has succeeded in turning the Hotel around during some of the darkest days in the hospitality sector as a result of COVID-19, operating profitably, with occupancy rates significantly higher than at competitors across the city. In a market that severely impedes the Debtor's ability to sell the Hotel or refinance, the Debtor formulated a Chapter 11 plan that facilitates the Debtor's prompt exit from his case by, among other things, the infusion of $10 million in new monies, the preservation of the Hotel as a going concern, the retention of employees and the payment of the allowed claims of creditors in full, over time, with interest.[2]

2.      The Debtor owns and operates the Williamsburg Hotel (the "Hotel") located at 96 Wythe Avenue, Brooklyn, New York (the "Property").  Nearly one year ago, in the throes of the COVID-19 pandemic that has decimated the hotel industry, the Debtor commenced this

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.
[2] The Debtor is in the process of finalizing a further amended plan that, amongst other things, increases the cash infusion to $10 million.

Reorganization Case when it filed a voluntary petition for reorganization pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

3.      Today, as it operates profitably and exceeds its financial projections, the Debtor stands on the verge of a major achievement, which is to confirm a Chapter 11 plan of reorganization that, among other things, reduces its debt service obligations, provides for $10 million in new money to pay the allowed claims of creditors in full over time, with interest, preserves jobs and essential vendor relationships, and positions the Debtor for its growth and long-term viability emerging from the COVID-19 pandemic.

4.      On November 25, 2021, the Debtor filed its *Second Amended Chapter 11 Plan of Reorganization,* ECF No. 196 (as the same may be modified, amended, or supplemented from time to time, the "Plan"),[3] along with its *Third Amended Disclosure Statement for Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, November 25, 2021, ECF No. 196 (the "Disclosure Statement").

5.      This Omnibus Response addresses four (4) out of the five (5) filed objections to the Plan.[4]  As provided below, and as will be demonstrated at the hearing on Plan confirmation, the Objections are without basis and should be overruled. First, as to the U.S. Trustee Objection and the NBE Objection,[5] the exculpation and Debtor release provisions in the Plan satisfy the applicable standards for approval in this District. The same is true for the Plan's third-party releases, which, contrary to the U.S. Trustee's assertions, are consensual and appropriate. With respect to the U.S. Trustee's assertions as they relate to David Goldwasser, the Debtor's Chief Restructuring Officer (the

---

[3] The Debtor also intends to file a Third Amended Chapter 11 Plan of Reorganization to address certain of the issues raised by the Objections.

[4] The fifth filed objection is the *Lender's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization*, January 17, 2022, ECF No. 307, filed by Benefit Street Partners Realty Operating Partnership, L.P. ("BSP"), to which the Debtor will be filing a separate response (the "BSP Response").

[5] The Debtor notes that the U.S. Trustee has no economic interest in this Reorganization Case and therefore has questionable standing, if any, to raise its objections.

"CRO"), and his company, G.C. Realty Advisors L.L.C. ("G.C. Realty"), both the Disclosure Statement and the Plan make clear that compensation to be paid to either the CRO or G.C. Realty is subject to Court approval, such that Section 1129(a)(4) of the Bankruptcy Code is satisfied. As to the U.S. Trustee's complaints that the absolute priority rule is somehow triggered and violated, as will be set forth below and as will be shown at the Plan confirmation hearing (to the extent it even applies on account of the payment in full of all allowed claims), the rule is easily satisfied by the Debtor's insiders' substantial contribution towards the equity in the reorganized Debtor, which is reasonably equivalent to the residual equity value of the reorganized Debtor after accounting for existing claims.

6.      Second, as to both the Grandfield Objection and the Mencia Objection, the Debtor has and will demonstrate that Plan has been proposed in good faith and is feasible in accordance with Sections 1129(a)(3) and 1129(a)(11) of the Bankruptcy Code, respectively. As will be set forth below, the Plan represents the Debtor's sincere effort to pay all legitimate claims in full and the neither the Grandfield Objection nor the Mencia Objection set forth a scintilla of evidence that the Plan was not filed for an improper purpose or through an improper process. The Plan is also feasible as the Debtor will have sufficient cash to satisfy its Plan obligations from (i) the cash infusion of $10,000,000 being provided by the Debtor's principals, (ii) existing operating cash flow that will be in excess of $3,000,000 and (iii) amounts generated by the operations of the Hotel going forward.

7.      Accordingly, and for the reasons set forth below, the Objections should be overruled.

## ARGUMENT

## THE U.S. TRUSTEE OBJECTION AND NBE OBJECTION

**I.      The Plan's Exculpation, Debtor Release, and Third-Party Release Provisions are Consistent with the Bankruptcy Code and Satisfy Section 1123(b)(6).**

8.      Section 1123(b)(6) of the Bankruptcy Code provides that a plan may include "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). Among other things, Section 1123(b) of the Bankruptcy Code provides that a plan may

3

provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates, and include any other appropriate provision not inconsistent with the applicable provisions of chapter 11. *See* 11 U.S.C. §§ 1123(b)(3), (6). For the reasons described below, and contrary to the assertions in the U.S. Trustee Objection and the NBE Objection, the Debtor respectfully submits that the Plan's exculpation and release provisions are appropriate and satisfy Section 1123(b) of the Bankruptcy Code.

> **A.      The Exculpation Provision in Article 5.12 of the Plan is Appropriate.**

9.      This Court should approve the customary exculpation provision in favor of the Debtor and Released Parties[6] contained in Article 5.12 of the Plan (the "Exculpation"). The Exculpation is intended to prevent collateral attacks against estate fiduciaries and specified parties that have facilitated the Debtor's reorganization relating to acts or omissions (other than for conduct that constitutes gross negligence, willful misconduct, or a violation of U.S. criminal, tax, environmental, and antitrust laws) in connection with this Reorganization Case.

10.      Courts consider a number of factors when evaluating exculpation provisions, including whether the beneficiaries of the exculpation have participated in good faith in negotiating the plan and bringing it to fruition, and whether the provision is integral to the plan. *See In re Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019); *In re Chemtura Corp.*, 439 B.R. 561, 610-11 (Bankr. S.D.N.Y. 2010).

11.      Additionally, courts in this District have found exculpation provisions to be appropriate where they expressly carve out fraud, gross negligence, and willful misconduct, are narrow in scope, and are limited to prepetition and postpetition acts taken in connection with the debtor's restructuring efforts. *See, e.g., In re Calpine Corp.*, No. 05-60200 (BRL), 2007 WL 4565223, at *10 (Bankr.

---

[6] Pursuant to the Plan, "Released Parties" means "the Debtor and the Management Company and each of their respective agents, managers, members, officers, directors, shareholders, advisors, attorneys, and representatives. For the avoidance of doubt, BSP shall not be a Released Party." Plan, Art. 1.66.

745878574

S.D.N.Y. Dec. 19, 2007) (finding that exculpation provision that did not relieve any party of liability for gross negligence or willful misconduct was appropriate); *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 501 (S.D.N.Y. 2005) (same).

12.     Furthermore, courts in this District regularly approve exculpation provisions that cover both estate and non-estate fiduciaries. *See, e.g.*, Findings of Fact, Conclusions of Law and Order Confirming the First Am. Joint Chapter 11 Plan of Reorganization, ¶ 52, *In re Windstream Holdings, Inc.*, No. 19-22312 (RDD) (Bankr. S.D.N.Y. June 26, 2020), ECF No. 2243 ("Windstream Confirmation Order"); Findings of Fact, Conclusions of Law and Order Confirming the Fourth Am. Joint Chapter 11 Plan of Reorganization ¶¶ 46, 60, *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Aug. 21, 2018), ECF No. 685 (overruling U.S. Trustee objection to exculpation of both estate fiduciaries and non-fiduciaries from liability for "any cause of action for any claim related to any act or omission in connection with, relating to, or arising out of, the chapter 11 cases); Findings of Fact, Conclusions of Law and Order Confirming the First Am. Joint Chapter 11 Plan of Reorganization ¶ 40, *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Aug. 23, 2013), ECF No. 4966.

13.     The failure to include the Exculpation in the Debtor's Plan would chill the essential participation of the Debtor's management, professionals and advisors to the Debtor, as well as the Management Company, which is an essential stakeholder that has worked to formulate the Plan. Given the express carve-out for gross negligence, willful misconduct, and actual fraud, the standard of care established by the Exculpation is consistent with and appropriate under applicable precedent in the Second Circuit and is appropriate as a matter of public policy. *See In re BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011).

14.     The Debtor submits that the Debtor and Released Parties merit the protections of the Exculpation proposed in the Plan and that the protections it affords are reasonable and appropriate. Specifically, the Exculpation is the product of good-faith, arms'-length negotiation, and the failure to

745878574

include the Exculpation could have deterred the parties from collaborating to formulate the Plan and exit strategy from Chapter 11. The Exculpation is narrowly tailored, relates only to acts or omissions in connection with or arising out of the Debtor's Reorganization Case, and only benefits those parties who are traditionally considered estate fiduciaries or those (such as the Plan Sponsor, which is making the cash infusion of $10 million) that have made similar contributions to the Debtor's Reorganization Case. Ultimately, the scope of the Exculpation and the parties protected by it is consistent with established practice in this District.

15.    As to the U.S. Trustee's assertion that the Exculpation protects "insiders and management who may be subject to liability based on the Examiner's report," this assertion is inaccurate. *See* <u>U.S. Trustee Objection, at 13.</u> As noted, the Exculpation carves out gross negligence, willful misconduct, and actual fraud. Further, because the Examiner is charged only with investigating *transactions* that might give rise to potential claims by the Debtor's estate, when taking into account (i) the full amount of funds infused into the Debtor by its principals (approximately $21 million in equity and $6.5 million in loans) and the fraction they received back, (ii) the principals' infusion of $10 million and (iii) allowed claims are to be paid in full under the Plan, over time, with interest, U.S. Trustee's assertion that insiders and management should be fully excluded from the protections of the Exculpation goes too far. *See Second Am. Order Directing Appointment of an Examiner* 2-3, December 14, 2021, ECF No. 224. In short, no change to the scope of the Exculpation provision as it relates to the Examiner is either necessary or appropriate.

16.    The U.S. Trustee further argues the list of exculpated parties should be limited to the Debtor and its professionals, and should be limited to activities surrounding plan confirmation. *See* U.S. Trustee Objection, at 14. For the reasons set forth above, the Debtor submits that the U.S. Trustee's objection in this regard is out of step with applicable precedent in this District and should be overruled.

745878574

17.     Finally, the U.S. Trustee argues the Exculpation runs afoul of Rule 1.8(h)(1) of the New York Rules of Professional Conduct by limiting attorneys' liability to a client for malpractice and that the Exculpation should include a carve-out for attorneys' violation of the New York Rules of Professional Conduct. *See* U.S. Trustee Objection, at 14. The U.S. Trustee advanced a similar argument before Judge Chapman in *In re Stearns Holdings, LLC*, 607 B.R. 781, 790 (Bankr. S.D.N.Y. 2019). Judge Chapman overruled the objection, finding that "such a provision has no bearing on the standard of care established in an exculpation provision contained in a plan," and declined the U.S. Trustee's request that the plan be modified to include a caveat that the exculpation provision is consistent with Rule 1.8(h)(1). *Stearns Holdings*, 607 B.R. at 791. For the same reasons articulated in *Stearns Holdings*, the Debtor submits that the Exculpation is consistent with the New York Rules of Professional Conduct and need not be modified on that basis.

18.     For these reasons, the Exculpation is reasonable and appropriate, and the Debtor respectfully requests that this Court approve the Exculpation set forth in Article 5.12 of the Plan.

**B.     The Debtor Releases are Appropriate.**

19.     The Court should approve the Debtor's release of its claims and causes of action against the Released Parties (the "Debtor Releases"). It is long-established that a debtor may, in its sound business judgment, settle or releases its claims in a chapter 11 plan.  *See In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (applying business judgment standard to debtor's decision to release its claims); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 263 n. 289 (Bankr. S.D.N.Y. 2007) (noting that debtors have "considerable leeway" in granting debtor releases); *see also In re Charter Commc'ns*, 419 B.R. 221, 257 (Bankr. S.D.N.Y. 2009) ("Debtors are authorized to settle or release their claims in a chapter 11 plan.").

20.     Such releases are granted by courts in the Second Circuit where they are "fair and equitable" and in the "best interests of the estate." *Fixed Income Shares: Series M v. Citibank N.A.*, 314

F. Supp. 3d 552, 560 (S.D.N.Y. 2018) (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993)); *see Charter Commc'ns*, 419 B.R. at 257 ("When reviewing releases in a debtor's plan, courts consider whether such releases are in the best interest of the estate."). To determine whether the release is in the best interests of the Debtor's estate, the court is not required to conduct a "'mini-trial' of the facts or the merits underlying [each] dispute" and "the settlement need not be the best that the debtor could have obtained." *In re NII Holdings, Inc.*, 536 B.R. 61, 99 (Bankr. S.D.N.Y. 2015) (quoting *Adelphia*, 36 B.R. at 225); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (holding that in plan confirmation context, court must "determine that a proposed compromise forming part of a reorganization plan is fair and equitable"). Rather, the "court should instead 'canvass the [settled] issues [to] see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re NII Holdings*, 536 B.R. at 100 (quoting *Adelphia*, 368 B.R. at 225).

21.    Courts in this Circuit consider the following factors to determine whether a settlement is within the range of reasonableness: (a) the balance between the claim's possibility of success and the settlement's benefits; (b) the likelihood of complex and protracted litigation, including attendant expense, inconvenience, and delay; (c) the interests of creditors; (d) whether other interest parties support the settlement; (e) the nature and breadth of releases; (f) the competency and experience of counsel supporting, and the experience and knowledge of the judge reviewing, the settlement; and (g) the extent to which the settlement is the product of arms'-length bargaining. *Id.* (citing *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)).

22.    The ultimate determination of whether a proposed settlement falls within the range of reasonableness is committed to the discretion of the bankruptcy court. *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 256-57 (Bankr. S.D.N.Y. 2016) ("The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court."). While a court must make its own "considered and independent judgment" as to the reasonableness of the settlement, the court "may rely on the

8

opinions of the debtor, the parties to the settlement, and professionals in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *In re NII Holdings*, 536 B.R. at 99 (quoting *In re Dewey & LeBouef LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012)).

23.     In this case, the Debtor Releases are an essential component of the Plan and constitute a sound exercise of the Debtor's business judgment. Without the Debtor Releases, the Debtor and its stakeholders would have been unable to obtain the substantial benefits provided by the Plan, including allowing the Debtor to emerge from Chapter 11, the cash infusion in the amount of $10 million that will be used to fund distributions to creditors whose allowed claims will be paid in full over time with interest. Furthermore, while Article 6 of the Plan expressly provides for the Debtor's preservation of estate claims and causes of action, the Debtor believes it does not have material causes of action against any of the Released Parties that would justify the risk, expense, and delay of pursuing any such causes of action when compared against the immediate and substantial benefits that will be achieved under the Plan, including the $10 million infusion of new monies, and that the Plan provides for 100% payment overtime with interest. Moreover, the Debtor Releases also provide finality and avoid potentially significant delay in consummating the Plan. Accordingly, the inclusion of the Debtor Releases will benefit all of the Debtor's stakeholders. To the extent the U.S. Trustee is objecting to the Debtor Releases, the objection does nothing to address, much less refute, the showing that the Debtor Releases are appropriate and well within the range of reasonableness. For these reasons, the Debtor's agreement to provide the Debtor Releases constitutes a sound exercise of the Debtor's business judgment, is fair and equitable and in the best interests of the estate, and it should be approved.

745878574

C.    **The Third-Party Releases are Consensual and Appropriate.**

24.    In addition to the Debtor Releases, the Plan provides consensual third-party releases (the "Third-Party Releases") to the Released Parties, who have played an essential role in this Reorganization Case.

25.    Courts in the Second Circuit have held that a third-party release may be approved with the consent of the affected party. *See, e.g.*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) ("Nondebtor releases may also be tolerated if the affected creditors consent.") (citing *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993)); *Adelphia*, 368 B.R. at 268. Courts in this District generally agree that an affirmative vote to accept a plan that contains a third-party release constitutes express consent to the release. *See In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 271 (Bankr. S.D.N.Y. 2014) (granting third-party release with respect to affected parties that consented to the releases by voting in favor of the plan); *Adelphia*, 368 B.R. at 268 (upholding non-debtor releases for creditors who voted to accept the plan because creditors consented to the releases by voting to support the plan); *In re Calpine Corp.*, No. 05-60200 (BRL), 2007 WL 4565223, at *10 (Bankr. S.D.N.Y. Dec. 19, 2007) (same). Courts in this District have approved third-party releases as consensual where the plan provided for a third-party release, but the affected parties were given the opportunity to opt out of providing the release. *See, e.g.*, Windstream Confirmation Order, ¶ 51.

26.    The Debtor submits the Third-Party Releases satisfy the standards necessary to show that they are consensual in accordance with precedent in this District. Importantly, as set forth in Article 5.10 of the Plan, "[E]xcept as provided below, the Release shall not apply to the Released Parties (other than the Debtor) with respect to a holder of a Claim that is entitled to vote that elects to "opt-out" of such Release on its timely and properly-submitted ballot." *See* Plan, Art. 5.10. Consistent with the Plan, the Disclosure Statement and ballots distributed to holders of Claims entitled to vote conspicuously quoted the Third-Party Releases from Article 5.10 of the Plan and clearly

10

informed holders to simply check a box if they did not consent to the Third-Party Releases. *See* Disclosure Statement, at 51-52; *Order Approving the Third Am. Disclosure Statement Ex. 2A*, December 1, 2021, ECF. No. 204.

27.    With respect to holders of claims in Class 1 (priority claims), these claims are unimpaired and conclusively deemed to accept the Plan, and with respect to holders of claims in Class 6 (subordinated claims), these claims are impaired and conclusively presumed to reject the Plan . *See* Plan, Art. 3.2(a). The U.S. Trustee argues that these holders were not given the opportunity to opt out of the Third-Party Releases and thus that their Third-Party Releases are not consensual.  *See* U.S. Trustee Objection, at 12. The Debtor respectfully disagrees. Because holders of Class 1 claims were conclusively presumed to accept the Plan, have been served with notice of the Third-Party Releases, and have not objected to such Third-Party Releases, the Debtor submits that the Third-Party Releases are consensual as to Class 1. As to Class 6 (which class was established for any subordinated claims of BSP), there are no holders of Claims in such class as of the voting record date, so the U.S. Trustee's Objection as to Class 6 does not present a live issue bearing on whether the Third-Party Releases are consensual.

28.    The U.S. Trustee's Objection relies on recent cases from this District and others for the proposition that third-party non-consensual releases are not permissible. *See, e.g., In re Purdue Pharma L.P.*, No. 21-cv-8566-CM, 2021 WL 5979108 (S.D.N.Y. Dec. 16, 2021); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, No. 3:21cv167 (DJN), 2022 WL 135398 (E.D.Va. Jan. 13, 2022). For the reasons described above, contrary to the U.S. Trustee's Objection, the Third-Party Releases here are consensual and neither the recent *Purdue Pharma* nor the *Patterson* decision present an obstacle to approving the Third-Party Releases here.

29.    In addition to being consensual, the Third-Party Releases are reasonable and appropriate. Each Released Party has made significant contributions to the Debtor's restructuring

11

efforts that supports their release, including, but not limited to, negotiating and formulating the terms of the Plan that provides for a $10 million cash infusion by the Plan Sponsor, payment of allowed claims of creditors in full over time with interest, the preservation of critical business relationships and a prompt emergence from Chapter 11.

30.     The Released Parties also have made substantial commitments of time and effort in the Debtor's restructuring efforts. For example, the Management Company manages all relationships with Hotel vendors and employees, and contracts directly with vendors for services required and employs approximately eighty (80)- one-hundred twenty (120) full-time employees (and more employees seasonally) dedicated to servicing the Hotel and its gusts. Further, the Debtor's management has brought to bear its extensive industry knowledge during this Reorganization Case and will carry out the restructuring after it concludes.

31.     Ultimately, as the evidence will demonstrate, the proof of the Released Parties' contributions to the Debtor's restructuring is borne out most clearly by the fact that the Hotel is open and fully operational in the midst of a global pandemic (unlike many hotels in New York City), outperforming the overall New York hotel market, operating profitably, and in fact exceeding financial projections. Courts in this District have approved third-party releases under similar circumstances. *See, e.g.*, Windstream Confirmation Order; Order Approving the Disclosure Statement for and Confirming the Joint Prepackaged Plan of Reorganization, *In re Deluxe Media*, No. 19-23774 (RDD) (Bankr. S.D.N.Y. Oct. 23, 2019), ECF No. 96. In light of these facts and applicable precedent in this District, the Debtor submits the Third-Party Releases are reasonable and appropriate, in the best interests of the Debtor's estate, and should be approved.

## II.     The Plan Satisfies the Requirements of Section 1129(a)(4).

32.     Section 1129(a)(4) of the Bankruptcy Code requirements that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident

12

745878574

to the case, has been approved, or is subject to approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). This section requires that all payments of professional fees made from the debtor's estate be subject to bankruptcy court review and approval as to their reasonableness. *See In re WorldCom*, No. 02-13533 (AJG), 2003 WL 23861928, at *54 (Bankr. S.D.N.Y. Oct. 31, 2003).

33.     The U.S. Trustee argues that the Plan is silent as to how and when the CRO or G.C. Realty will be paid and as such, violates section 1129(a)(4) of the Bankruptcy Code. The U.S. Trustee's argument misses the mark. Article 3.1(c) of the Plan provides clearly that "[a]ny Professional Person seeking allowance of a Professional Fee Claim shall file, with the Bankruptcy Court, its final application for allowance of compensation for services rendered, and reimbursement of expenses incurred prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date." *See* Plan, at Art. 3.1(c). The Plan further provides that "[a]ll Professional Persons seeking allowance by the Bankruptcy Court of a Professional Fee Claim shall be paid in full in cash in such amounts as are approved by the Bankruptcy Court . . . ." *Id.*

34.     Further, the CRO/G.C. Realty have agreed to seek Court approvals of any compensation herein, which the Debtor believes Section III.5 of the Disclosure Statement also made sufficiently clear. *See* Disclosure Statement, § III.5 ("While the terms of Mr. Goldwasser's employment provides that the CRO shall receive compensation of $15,000.00 per month, to date, no such monthly payments have been made and the Debtor shall seek Bankruptcy Court approval of the same."). In brief, contrary to the U.S. Trustee's characterization, the Plan and Disclosure Statement cannot reasonably be construed as an attempt to "end-run" the applicable statutory requirements.

35.     The U.S. Trustee also makes various assertions to the effect that the CRO or G.C. Realty do not meet the statutory requirements for court approval of their retention. The Debtor reserves the right to seek court approval of payments to the CRO or G.C. Realty and does not concede

13

745878574

the U.S. Trustee's assertions in this regard. To the contrary, the Debtor vigorously disputes any suggestion that the retention of the CRO or G.C. Realty is anything but customary and appropriate.. For now, the Debtor simply notes that the U.S. Trustee's assertions do not raise legitimate plan confirmation issues, and for the reasons described above, the Debtor submits that the Plan satisfies Section 1129(a)(4).

### III.    The Plan Satisfies the Absolute Priority Rule of 11 U.S.C. § 1129(b)(2)(B).

36.     As an initial matter, as detailed in the Debtor's  BSP Response to its objection to confirmation, which is fully incorporated herein by reference, the absolute priority rule is inapplicable herein.  While the Debtor disputes its applicability, irrespective, the absolute priority rule is satisfied. To be "fair and equitable" as to holders of unsecured claims, Section 1129(b)(2)(B) of the Bankruptcy Code requires a plan to provide either (i) that each holder of the nonaccepting class will receive or retain on account of such claim property of a value equal to the allowed amount of such claim, or (ii) that a holder of a claim or interest that is junior to the claims of the nonaccepting class will not receive or retain any property under the plan. 11 U.S.C. § 1129(b)(2)(B). This rule includes a form of the absolute priority rule in that a plan "'may not give 'property' to the holders of any junior claims or interests 'on account of' those claims or interests, unless all classes of senior claims either receive the full value of their claims or give their consent.'" *See In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 797 (Bankr. S.D.N.Y. 2020) (quoting *DISH Network Co. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 88 (2d Cir. 2011)). A transfer of property under a plan to an existing shareholder triggers Section 1129(b)(2)(B) if the transfer is "on account of" the shareholder's "junior interest." *Id.*, 620 B.R. at 797.  Whether a plan gives old equity a property interest "on account of" its old ownership interest in violation of the absolute priority rule or for another, permissible reason, is a question of fact. *Id.* at 799 (citing *In re Red Mountain Mach. Co.*, 451 B.R. 897, 905 n. 18 (Bankr. D. Ariz. 2011)).

14

37.    If the absolute priority rule is triggered, a court next considers whether a debtor may invoke the "new value exception" to the absolute priority rule. *Id.* at 801. The new value exception provides that "the objection of an impaired class does not bar junior claim holders from receiving or retaining property interest in the debtor after reorganization, if they contribute new capital in money or money's worth, reasonably equivalent to the property's value, and necessary for successful reorganization of the restructured enterprise." *Id.* at 801 (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999)). In this Circuit, to invoke the new value exception, the capital contribution by old equity must be (1) new, (2) substantial, (3) money or money's worth, (4) necessary for a successful reorganization and (5) reasonably equivalent to the property that old equity is retaining or receiving. *Id.*, 620 B.R. at 801-02 (citing *BT/SAP Pool C Assocs. v. Coltex Loop Cent. Three Partners*, 203 B.R. 527, 534 (S.D.N.Y. 1996).

38.    The U.S. Trustee argues that the Plan violates the absolute priority rule in Section 1129(b)(2)(B) of the Bankruptcy Code because holders of Class 6 claims (subordinated claims) will not receive any distribution under the Plan, while the Plan Sponsor will receive 100% of the equity in the Reorganized Debtor. U.S. Trustee Objection, at 16.  The U.S. Trustee further argues that it is unclear whether the "new value exception" to the absolute priority rule applies because there is no record that the equity in the Reorganized Debtor has been market-tested or valued by experts, and because non-insiders have not had the opportunity to bid for the equity. *Id.* at 16-17.

39.    The U.S. Trustee's argument is incorrect. The Plan makes clear, and the evidence at the Plan confirmation hearing will further demonstrate, that the Plan Sponsor will receive equity in the Reorganized Debtor *exclusively* on account of the $10 million cash infusion, and not on account of any prior ownership interest. *See* Plan, Art. 3.2(g).  Therefore, the Plan does not trigger the absolute priority rule in Section 1129(b)(2)(B).

40.    Additionally, even assuming the absolute priority rule is triggered, there can be no reasonable dispute that the new value exception applies. The cash infusion of $10 million, which will be funded in cash by the Plan Sponsor on the Effective Date and used to make distributions under the Plan, plainly satisfies the requirement that the contribution be new, substantial, and money or money's worth. *See* Plan, Art. 5.4; *In re Red Mountain Mach. Co.*, 448 B.R. 1, 14-15 (Bankr. D. Ariz. 2011) (holding that cash infusion of approximately $1.25 million used to satisfy effective date obligations of Debtor and recapitalize the debtor going forward satisfied new value exception). The evidence at confirmation also will show that the Plan Sponsor's contribution is necessary to a successful reorganization because there is no alternative source of funding for the Debtor's reorganization, for reasons including the fact that the COVID-19 pandemic has made new financing unavailable for comparable hotels in New York City. *See Latam Airlines Grp.*, 620 B.R. at 802 (finding that debtor must prove that they need funds to reorganize and that it is necessary for old equity to contribute those funds); *Red Mountain Mach.*, 448 B.R. at 16 (finding that contribution was necessary because debtor did not otherwise have access to cash to pay administrative claims). Finally, the evidence will show that new value being contributed by the Plan Sponsor is reasonably equivalent to the value of the Reorganized Debtor's equity. For those reasons, the Plan complies with Section 1129(b)(2)(B) of the Bankruptcy Code.

**GRANDFIELD OBJECTION AND MENCIA OBJECTION**

**IV.    The Plan is Proposed in Good Faith and Not by Any Means Forbidden by Law in Accordance with Section 1129(a)(3).**

41.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Based on the statute's plain terms, the inquiry focuses primarily on "whether the proposal of the plan was in good faith, not on whether the plan generally is in good faith . . . [or on a] free ranging inquiry into fairness and equity." *See In re Purdue Pharma L.P.*, 633 B.R. 53, 74 (Bankr. S.D.N.Y. 2021). Whether a plan has been

16

proposed in good faith "must be viewed in the totality of the circumstances" and "speaks more to the process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010). The key issue is whether "the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Kane v. Johns-Manville*, 843 F.2d 636, 649 (2d Cir. 1988) (citation omitted).

42.     In evaluating compliance with section 1129(a)(3), courts within this District also consider whether the plan "will achieve a result consistent with the standards prescribed under the Bankruptcy Code." *See In re Purdue Pharma, L.P.*, 633 B.R. at 754 (summarizing case law and citing *In re Ditech Holding Corp.*, 606 B.R. 544, 578 (Bankr. S.D.N.Y. 2019)). As explained in *Ditech*, for example, those objectives include preserving going concerns, maximizing property available to satisfy creditors, giving debtors a fresh start, expeditious liquidation of claims and distribution of the estate to creditors, and achieving fundamental fairness. *In re Ditech Holding Corp.*, 606 B.R. at 578 (citations omitted).  This Court is in the best position to assess the good faith of the Debtor's proposal. *See In re Chemtura Corp.*, 439 B.R. at 608. *See also* Debtor's BSP Response, incorporated herein by reference.

43.     As set forth above, the Plan represents a sincere effort of the Debtor to pay all legitimate claims *in full* over a relatively short period of time—a rarity in Chapter 11 cases. *See, e.g.*,  *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 28-29 (Bankr. D. Kan. 2001) (holding that plan that paid secured and unsecured claims in full while preserving equity interests was proposed in good faith). And even if that were not the case, the good faith requirement for confirmation would still be met. *See In re Northbelt, LLC*, 630 B.R. 228, 278 (Bankr. S.D. Tex. 2020) (noting that "a single-asset debtor's desire to protect its equity can be a legitimate Chapter 11 objective" supporting a finding of good faith) (citation omitted).

44.     In this Reorganization Case, the Debtor has developed and proposed the Plan in good faith and with the purpose of maximizing value for the Debtor's estate during unprecedented times

given the devastating impact on the hospitality market from the COVID-19 pandemic. The Plan is the product of nearly a year of significant effort by the Debtor and its constituencies to reach a value-maximizing resolution, during which time, among other things, the Debtor has negotiated or mediated (or attempted to negotiate or mediate) in good faith and at arm's-length with all of its major creditors, attempted to expeditiously resolve claims (including filing objections to claims where necessary), which culminated in the Plan, which includes preservation of the Hotel, jobs, and the going concern value of the Hotel for the benefit of all stakeholders.   During this time, the Hotel has operated profitably and exceeded financial projections during the midst of a global pandemic that has battered the industry as a whole, thus further demonstrating the Debtor's ability to effectuate its restructuring going forward. The culmination of these efforts is a Plan under which the Plan Sponsor will make a cash infusion of $10 million and creditors will be paid in full over time. For these reasons, the Plan satisfies Section 1129(a)(3).

45.    The disputed claimants Grandfield and Mencia argue otherwise. The  gist of their argument in this regard appears to be that the Debtor is unable or unwilling to satisfy their general unsecured claims in accordance with the terms of the Plan. *See* Grandfield Objection, at 6-7; Mencia Objection, at 4-5. The Court should overrule this objection as unsupportable under the controlling precedent. First, it is more in the nature of a feasibility objection (discussed below) under Section 1129(a)(11) (addressed below) and is not a proper objection on good faith grounds. Second, and relatedly, the disputed claimants Grandfield and Mencia miss the fact that the good faith inquiry centers primarily on the plan development process and whether the proposal of the plan was in good faith. *See In re Chemtura Corp.*, 439 B.R. at 608.  Grandfield's and Mencia's objections do not, nor can they, reasonably dispute that the process the Debtor has undertaken over the past year, summarized above, to arrive at its proposal of the Plan has been in good faith and at arms'-length in accordance with Section 1129(a)(3).

18

745878574

## V.    The Plan is Feasible in Accordance with Section 1129(a)(11).

46.    Under Section 1129(a)(11) of the Bankruptcy Code, a court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

47.    Success does not have to be a certainty to satisfy section 1129(a)(11). The statute just requires that the debtor demonstrate a "reasonable assurance" that plan consummation is unlikely to result in a further need for financial reorganization once the debtor emerges. *See Kane v. Johns-Manville*, 843 F.2d 636, 649 (2d Cir. 1988); *In re Adelphia Bus. Sol., Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003); *see also In re Briscoe Enters. Ltd, II*, 994 F.2d 1160, 1166 (5th Cir. 1993) ("Only a reasonable assurance of commercial viability is required.") (citation omitted). Importantly, "the feasibility inquiry is peculiarly fact intensive and requires a case by case [sic] analysis, using as a backdrop the relatively broad parameters articulated in the statute . . . [T]here is a relatively low threshold of proof necessary to satisfy the feasibility requirement." *See In re Eddington Thread Mfg. Co., Inc.*, 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995).

48.    The Debtor's Plan is feasible and satisfies the requirements of section 1129(a)(11). The cash infusion of $10,000,000 being provided by the Debtor's principals, plus existing operating cash flow in excess of $3,000,000, as well as revenue generated by the operations of the Hotel going forward, will be sufficient to satisfy administrative claims and other claims that will be paid at or shortly following the effectiveness of the Plan and the deferred payments under the Plan will be easily satisfied once the hospitality market in New York stabilizes following the devastating effects of COVID.

49.    The Debtor, together with its financial advisors at Getzler Henrich and Hilco Real Estate, has prepared detailed projections of the post-emergence Debtor's budget, expenses, and distributions under the Plan, as well as detailed information regarding the Debtor's recent financial

19

performance. *See* Disclosure Statement, Ex. C, F, & G. As reflected in those projections and reports, the Debtor will be able to satisfy its obligations under the Plan. These projections also will show that the Debtor has been operating profitably and exceeding its past financial projections, which further supports a finding that the Plan is feasible.

50.     Disputed claimants Grandfield and Mencia argue that the Plan is not feasible because the Debtor, in their view, lacks the ability to pay their claims in full as proposed under the Plan. *See* Grandfield Objection, at 6-7; Mencia Objection, at 4. As an initial matter, it bears emphasizing that neither Grandfield nor Mencia meaningfully disputes the projections or reports attached to the Disclosure Statement that show the Plan is feasible. Furthermore, their proofs of claim are entirely without merit, and have no basis as a matter of fact or law. Accordingly, the Debtor has objected to their proofs of claim, requesting that they be disallowed and expunged, or alternatively, estimated at $0.00, for a variety of reasons set forth more fully in the Debtor's objections, including, that the claims are artificially inflated, contingent, require significant litigation in state court before such claims can be reduced to judgment and any allowed claim will be covered by applicable insurance coverage and other co-defendants. *See* Debtor's Objection to Claim No. 5 Filed by Grandfield Realty Corp., Dec. 23, 2021, ECF No. 247; Debtor's Objection to Claim No. 6 Filed by Gerson Mencia, Dec. 23, 2021, ECF No. 248.

51.     If the total amount of allowed unsecured claims is modestly higher than estimated, the Debtor's independently vetted projections establish that there is expected to be more than enough cash on hand to satisfy such claims. For these reasons, the Plan satisfies Section 1129(a)(11).

## **CONCLUSION**

52.     The Debtor has devised and proposed its Plan with the goal of preserving the Debtor as a going concern, maximizing distributions to creditors and a prompt exit from Chapter 11. Accordingly, the Objections should be overruled and the Plan should be confirmed.

745878574

Dated:  February 14, 2022
        New York, New York

Respectfully submitted,

By: */s/ Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email: dspelfogel@mayerbrown.com
      leisenberg@mayerbrown.com
      dchung@mayerbrown.com

-*and*-

Mark Frankel
**BACKENROTH FRANKEL &
KRINSKY, LLP**
800 Third Avenue
New York, New York  10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor and Debtor in Possession*

745878574