**SAUL EWING ARNSTEIN & LEHR LLP**
Stephen B. Ravin
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102-5426
Phone: (973) 286-6714
Fax: (973) 286-6800
stephen.ravin@saul.com

-and-

A. Mayer Kohn
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
mayer.kohn@saul.com

*Attorneys for Non-Debtor Third-Party Miriam Gross*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-22108 (RDD) |

**NON-DEBTOR THIRD-PARTY MIRIAM GROSS' MOTION
TO QUASH AND/OR MODIFY SUBPOENA DIRECTED TO
AND SERVED UPON JPMORGAN CHASE BANK, N.A.**

Non-Debtor Third-Party Miriam Gross ("**Ms. Gross**"), by and through her undersigned counsel, hereby files this Motion to Quash and/or Modify the Subpoena Directed and Served Upon JPMorgan Chase Bank, N.A. (the "**Motion**"), seeking entry of an order pursuant to Federal Rules of Bankruptcy Procedure 7026, 9014, and 9016 ("**Bankruptcy Rules**"), substantially in the form attached hereto as **Exhibit A**, quashing and/or modifying the subpoena directed and served upon

1

JPMorgan Chase Bank, N.A. ("**Chase**") demanding production of bank statements and checks from Ms. Gross' personal account ending in 3556 and others (the "**Chase Subpoena**"). In support of the Motion, Ms. Gross relies upon the Declaration of Ms. Gross, a copy of which is attached hereto as **Exhibit B** (the "**Gross Declaration**"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Ms. Gross is a non-debtor third-party in this matter. She is neither an owner, nor an executive, nor an insider of the Debtor (as that term is defined in 11 U.S.C. § 101), nor a relative of any of the same; she is neither an owner, nor an executive, nor an insider of the Debtor's affiliated Management Company, nor a relative of any of the same. Ms. Gross is a salaried employee with no control over the Debtor, the Debtor's affiliated Management Company, or their affiliates. She is also unrelated to Ms. Toby Moskovits ("**Ms. Moskovits**") and Mr. Michael Lichtenstein ("**Mr. Lichtenstein**").

2. As a non-debtor third-party, Ms. Gross' personal bank accounts are not linked to the Debtor's accounts nor are they linked to any affiliate of the Debtor's accounts; Ms. Gross' personal bank accounts are also not linked to the Debtor's affiliated Management Company's accounts nor are they linked to any affiliate of the affiliated Management Company's accounts, nor to accounts owned and operated by Ms. Moskovits or Mr. Lichtenstein.

3. As such, the Chase Subpoena directing Chase to produce "[a]ll bank statements and cancelled checks for [Ms. Gross'] Accounts [ending in 3556] from January 1, 2017 to present," *Chase Subpoena* at 5 attached hereto as **Exhibit C**, is plainly beyond the scope of the Court's Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c) (the "**Second Amended Examiner Order**"). The Second Amened Examiner Order limits the scope of examination topics to "potential claims . . . against Ms. Toby Moskovits, Mr. Michael

2

Lichtenstein and/or the Debtor's other insiders." [D.I. 224 at ¶ 2]. Likewise, as declared by Examiner Eric M. Huebscher (the "**Examiner**") under penalty of perjury (the "**Huebscher Declaration**"), the only bank records sought to be subpoenaed by the Examiner are the accounts of "(1) . . . the Debtor or the management company, **or** (2) an account which is linked online to such an account, **and** to which online banking transfers have been made or from which online banking transfers have been received, in each case, that are either substantial in amount or in number." [D.I. 244 at ¶ 23]. Therefore, by the Examiner's own words, Ms. Gross' personal account information (which is not linked to the Debtor's or the management company's accounts) is plainly beyond the scope of the Examiner's request and the Chase Subpoena should be quashed and/or modified in accordance therewith.

4.    Enforcement of the Chase Subpoena also presents an undue burden to Ms. Gross. The enactment of the federal Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 *et seq*. demonstrates that a private citizen maintains an inherent privacy interest in his or her bank records and that such information is not to be freely divulged unless a clear necessity is shown. Indeed, circuit level decisions, including from the Second Circuit, have made clear that privacy and confidentiality interests can serve as a basis to quash and/or modify a subpoena. Because revelation of Ms. Gross' personal bank statements and checks reveal various personal details about her daily life and shine a bright light upon her most private affairs, the Chase Subpoena presents an undue invasion of privacy sufficient to demonstrate an undue burden as imagined by Federal Rule of Civil Procedure 45.

5.    Therefore, given that Ms. Gross has already produced all remotely relevant bank statements to the Examiner and was fully transparent regarding her relationship with the Debtor when questioned, weighing the undue burden imposed by the Chase Subpoena (and the fact that

Ms. Gross' personal bank records fall outside the scope of the Examiner's charge and, by extension, provide no value to his investigation) against the needs of the case and the reasonable availability of such information from other sources, the Chase Subpoena should be quashed and/or modified to the extent it seeks information related to Ms. Gross' personal accounts ending in 3556 or any other.

## JURISDICTION AND VENUE

6.  The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated February 1, 2012.

7.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and, pursuant to Bankruptcy Rule 7008, Ms. Gross does not consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

8.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.  The bases for the relief requested herein include 11 U.S.C. §§ 105(a) and 1104(c), and Bankruptcy Rules 7026, 9014, and 9016.

10. Ms. Gross has standing to challenge the Chase Subpoena for the reasons articulated in *Chazin v. Lieberman*, 129 F.R.D. 97, 98 (S.D.N.Y. 1990) ("The moving defendants argue that they have personal privacy rights in the records sought by plaintiff. This claim is sufficient to give them standing to pursue their present motion."), *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (citing with approval a party's argument that "numerous cases

4

in this District hold that a party whose banking records are subpoenaed has standing to oppose the subpoena"), and their progeny. *See also Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, 1996 WL 525862, at *2 n.3 (S.D.N.Y. Sept.17, 1996); *Sierra Rutile Limited v. Katz*, 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994); *Trump v. Hyatt Corp.*, 1994 WL 168021, at *1 (S.D.N.Y. Apr. 29, 1994); *Carey v. Berisford Metals Corp.*, 1991 WL 44843, at *8 (S.D.N.Y. Mar. 28, 1991).

## BACKGROUND

11. On February 23, 2021 (the "**Petition Date**"), Debtor 96 Wythe Acquisition LLC (the "**Debtor**") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code initiating the above-captioned Chapter 11 Case (the "**Bankruptcy Case**"). The Debtor continues to operate its business as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. The Debtor owns and operates the property located at 96 Wythe Avenue in Brooklyn.

12. On November 8, 2021, the Court entered an Order Directing Appointment of an Examiner pursuant to U.S.C. § 1104(c) [D.I. 178] and, on November 16, 2021, the Court appointed Eric M. Huebscher as Examiner (the "**Examiner**") pursuant thereto. [D.I. 186].

13. On December 14, 2021, the Court entered the Second Amended Examiner Order, [D.I. 224], permitting the Examiner to issue subpoenas pursuant to Federal Rule of Civil Procedure 45 ("**Rule 45**") concerning materials that fell within the scope of "Examination Topics" defined therein. The Second Amended Examiner Order limited the "Examination Topics" to "those transactions, as determined by the Examiner in the Examiner's sole discretion, that might give rise to potential claims by the Debtor's estate, including, without limitation, actions under sections 544, 547, 548 of the Bankruptcy Code, against Ms. Toby Moskovits, Mr. Michael Lichtenstein and/or the Debtor's other insiders (as such terms is defined in the Bankruptcy Code)." [D.I. 224 at ¶ 2].

5

14. Within days, the Examiner issued subpoenas upon several banks, including the Chase Subpoena, a copy of which is attached hereto as **Exhibit C**. [D.I. 229]. The Chase Subpoena directed Chase to produce "[a]ll bank statements and cancelled checks for the Accounts from January 1, 2017 to present." *Chase Subpoena* at 5. As defined therein, the "Accounts" included accounts for unidentified Chase customers, including a personal account owned by Ms. Gross, ending in 3556.

15. On December 20, 2021, the Debtor filed a Motion to Clarify and Amend the Second Amended Examiner Order and/or to Limit and/or Quash Subpoenas that Exceed the Scope of Examination ("**Debtor's Motion to Quash**"). [D.I. 238]. Therein, the Debtor argued that the subpoenas and document requests issued by the Examiner sought materials from entities with no nexus to the Debtor and that such requests exceeded the scope of the Examiner's appointment and constituted an impediment to the Debtor's reorganization efforts.

16. On December 22, 2021, the Examiner filed a Motion to Enforce and Further Amend Second Amended Order Directing the Appointment of an Examiner ("**Examiner's Motion to Enforce**"). [D.I. 243]. In support thereof, the Examiner filed the Declaration of Eric M. Huebscher in Support of Examiner's Motion to Enforce and Further Amend Second Amended Order Directing Appointment of Examiner. [D.I. 244]. Therein, the Examiner lambasted the Debtor's objection to the Examiner's subpoenas and insisted that all of the subpoenas sought information related to only: "(1) an account of the Debtor or the management company, **or** (2) an account which is linked online to such an account, **and** to which online banking transfers have been made or from which online banking transfers have been received, in each case, that are either substantial in amount or in number." [D.I. 244 at ¶ 23].

17. Following briefing, several letters with the Court, and a hearing, the Court denied the Debtor's Motion to Quash, [D.I. 287], finding that the Motion did not state a basis for relief, and granted the Examiner's Motion to Enforce, [D.I. 288], finding that such relief was consistent with the Court's directive for the Examiner's investigation of the Examination Topics.

18. On January 25, 2022, Ms. Gross voluntarily produced for the Examiner material that she believed, in good faith, may be responsive to the Examiner's requests for information, including complete transparency as to bank statements demonstrating that Ms. Gross loaned money to the Debtor on six occasions in 2018 and 2019 and demonstrating that such loans were satisfied. Ms. Gross also included a narrative reconciling the dates the loans were issued and the dates of repayment by the Debtor. Ms. Gross also noted that, review of the Debtor's bank records (which are already in the possession of the Examiner), demonstrated that there are no other transactions between the Debtor and Ms. Gross other than those that she had disclosed. Nonetheless, the same day, the Examiner reissued and again served the Chase Subpoena. [D.I. 346].

19. On February 10, 2022, Ms. Gross became aware that several entities related to the Debtor, or its insiders, received notice from Chase that the bank had received the newly-issued Chase Subpoena and intended to timely comply therewith.

20. Because Ms. Gross did not receive such notice directly, counsel for Ms. Gross contacted the Chase legal department on February 11, 2022. A Chase representative informed counsel that a letter had been issued to Ms. Gross but could not advise whether Chase had yet produced any material regarding Ms. Gross' personal accounts. The Chase representative advised that she would escalate Ms. Gross' request for information on an emergent basis and that counsel

7

should expect a return call within two business days. As of this filing, counsel for Ms. Gross has not received a return call from Chase.

21. Also on February 11, 2022, counsel for Ms. Gross faxed a letter to JPMorgan Chase's legal department, per instructions by the aforementioned Chase representative, a copy of which is attached hereto as **Exhibit D,** notifying the bank that counsel represented Ms. Gross and that counsel intended to file a motion to quash and/or modify the Chase Subpoena as soon as practicable.

## ARGUMENT

### I. Ms. Gross' Personal Bank Account Falls Outside the Scope of the Second Amended Examiner's Order

22. The Second Amended Examiner Order, [D.I. 224], limits the scope of the Examiner's authority to only the "Examination Topics." The Second Amended Examiner Order defines the "Examination Topics" as "those transactions, as determined by the Examiner in the Examiner's sole discretion, that might give rise to potential claims by the Debtor's estate, including, without limitation, actions under sections 544, 547, 548 of the Bankruptcy Code, against Ms. Toby Moskovits, Mr. Michael Lichtenstein and/or the Debtor's other insiders (as such terms is defined in the Bankruptcy Code)." [D.I. 224 at ¶ 2].

23. Ms. Gross is a non-debtor third-party in this matter. She is neither an owner, nor an executive, nor an insider of the Debtor, nor a relative of any of the same nor of Ms. Moskovits or Mr. Lichtenstein. Ms. Gross is a salaried employee with no control over the Debtor or their operations.

24. Accordingly, by its terms, Ms. Gross' personal bank statements and/or checks provide no insight into potential claims by the Debtor's estate against Ms. Moskovits, Mr. Lichtenstein, and/or the Debtor's other insiders. The Chase Subpoena, therefore, must be quashed

and/or modified to the extent it seeks any information related to Ms. Gross and/or her personal bank accounts.

25. Indeed, to the extent it requests any information related to Ms. Gross' personal accounts, the Chase Subpoena exceeds the scope of the Examiner's own request. In the Examiner's Motion to Enforce filed on December 22, 2021, [D.I. 243], the Examiner asserted under penalty of perjury that all of the subpoenas requesting bank records issued in this case sought information related to: "(1) an account of the Debtor or the management company, **or** (2) an account which is linked online to such an account, **and** to which online banking transfers have been made or from which online banking transfers have been received, in each case, that are either substantial in amount or in number." [D.I. 244 at ¶ 23].

26. As a non-debtor third-party, Ms. Gross' personal bank accounts are not linked to the Debtor's accounts nor are they linked to any affiliate of the Debtor's accounts; they are also not linked to the Debtor's affiliated Management Company's accounts nor are they linked to any affiliate of the affiliated Management Company's accounts, nor to any account owned or operated by Ms. Moskovits or Mr. Lichtenstein.

27. Accordingly, by the Examiner's own admission, Ms. Gross' personal bank statements and/or checks exceed the scope of the Examiner's request. The Chase Subpoena, therefore, must be quashed and/or modified to the extent it seeks any information related to Ms. Gross and/or her personal bank accounts.

II. **Production of Ms. Gross' Personal Bank Account Information Imposes an Undue Burden**

28. A subpoena issued pursuant to Federal Rule of Civil Procedure 45 ("**Rule 45**") must fall within the scope of discovery permissible under Federal Rule of Civil Procedure 26(b) ("**Rule 26**"). *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011). Under Rule 26, "[p]arties

9

may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED.R.CIV.P. 26(b)(1). While Rule 26 is broad, its scope is explicitly limited by "the burden . . . of the proposed discovery . . . considering the needs of the case . . . and the importance of the discovery in resolving the issues." FED.R.CIV.P. 26(b)(2)(C)(iii). Where a subpoena issued pursuant to Rule 45 does not comply with Rule 26, Rule 45(c)(3) provides that, on timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it "subjects a person to undue burden." FED.R.CIV.P. 45(c)(3).

29. In assessing whether a Rule 45 subpoena imposes an undue burden, courts balance that burden imposed by the subpoena against the relative importance of the information sought and the needs of the case. *In re Glitnir banki hf.*, No. 08-14757 SMB, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011) ("When a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion into the affected individual's privacy interests."). When a subpoena requests documents relating to a non-party, such balancing necessarily favors that non-party to the extent a non-party's information is necessarily less relevant. *In re Cty. of Orange*, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997) ("[W]eight should be given to nonparty status in assessing the burden of compliance with a discovery request."); *see also In re Madison Williams & Co., LLC*, No. 11-15896, 2014 WL 56070, at *4 (Bankr. S.D.N.Y. Jan. 7, 2014) (noting that discovery in bankruptcy cases "cannot be used for 'purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry'").

30. Although the concept of "undue burden" is not defined in the Federal Rules of Civil Procedure, courts have defined such term expansively, and have concluded that a subpoena that unduly invades a party's privacy interest should be quashed and/or modified. *See, e.g., Fappiano*

*v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016) (concluding that a subpoenaed party's privacy interest warranted quashing and/or modifying a subpoena); *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (noting that a subpoena that implicates "significant concerns about customer privacy" imposes an undue burden under Rule 45); *In re Missouri Dep't of Corr.*, 839 F.3d 732, 736–37 (8th Cir. 2016) (finding that identification of personal information could impose an undue burden under Rule 45).

31. Although limited, it is undisputed that an individual maintains some measure of privacy interest in his or her personal bank account and that such privacy interests provide a basis for a court to quash and/or modify a subpoena. *Mackenzie Architects, P.C. v. VLG Real Ests. Devs., LLC*, No. 115CV1105TJMDJS, 2017 WL 4898743, at *3 (N.D.N.Y. Mar. 3, 2017) (refusing to compel production of bank records because such records reveal a host of irrelevant and confidential information"); *Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127, 2019 WL 2271804, at *5 (S.D. Cal. May 28, 2019) (denying compelled production of "bank records" which the court described as "private, confidential documents"); *Ma v. Department of Educ.*, No. C19-399, 2019 WL 1915663, at *6 (W.D. Wash. Apr. 30, 2019) (granting protective order against production because information from bank records "is highly sensitive"); *Elsayed v. Fam. Fare LLC*, No. 1:18CV1045, 2019 WL 8586708, at *4 (M.D.N.C. Oct. 31, 2019) (refusing to compel production of bank records based on their private nature).

32. Although this privacy interest is not absolute and varies based on the context in which it is asserted, Congressional intent to keep such individual bank records private is most evident in the federal Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 *et seq.*, a law that restricts release to government agencies of an individual's financial records and that unequivocally indicates Congressional intent to keep banking records private unless a clear necessity is shown.

33.     Here, Ms. Gross plainly maintains a privacy interest in her personal bank account. Ms. Gross' personal bank statements and checks reveal various personal details about her daily life and shine a bright light upon her most private affairs. The account statements reveal her annual salary, her day-to-day spending, including where she eats and with whom she spends her time, her financial stability, and many other personal details that are of no benefit to the Examiner's investigation. *Solow v. Conseco, Inc.*, No. 06 CIV. 5988 BSJTHK, 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008) ("The inquiry courts apply is whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take.").

34.     Likewise, as a non-debtor third-party, obtaining such information does not advance the interests of the Examiner within the scope of the Examiner's charge. That is, not only is release of Ms. Gross' confidential bank records an unduly burdensome invasion of her privacy, but such records provide no benefit to the Examiner or the Debtor's estate to the extent the Examiner himself has admitted that such records were beyond the scope of the request and to the extent the Court limited the Examiner's investigation to Ms. Moskovits, Mr. Lichtenstein, and the Debtor's insiders. Accordingly, weighed in context, the Chase Subpoena fails to comply with Rule 26 and Rule 45 and must be quashed and/or modified to the extent it requests information related to Ms. Gross' personal bank accounts.

35.     Indeed, these private details of Ms. Gross' life need not be revealed under the circumstances considering Ms. Gross has already provided the Examiner with bank statements demonstrating the **only** attenuated connection between her personal account and the account of the Debtor: several loans provided to the Debtor in 2018 and 2019. Ms. Gross' good faith production of documents obviates any need for further documents from Ms. Gross and further demonstrates the unduly burdensome nature of the Chase Subpoena.

### III. The Subpoena Failed to Comply with the Right to Financial Privacy Act of 1978

36. Pursuant to Section 3403 of the Right to Financial Privacy Act of 1978 ("**RFPA**"), "[n]o financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter." 12 U.S.C. § 3403.

37. Pursuant to Section 3407, a government authority may obtain such records by judicial subpoena only if: "(1) such subpoena is authorized by law and there is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry; (2) a copy of the subpoena has been served upon the customer or mailed to his last known address on or before the date on which the subpoena was served on the financial institution together with the following notice which shall state with reasonable specificity the nature of the law enforcement inquiry;" and "(3) ten days have expired from the date of service or fourteen days from the date of mailing of the notice to the customer and within such time period the customer has not filed a sworn statement and motion to quash in an appropriate court, or the customer challenge provisions of section 3410 of this title have been complied with." 12 U.S.C. § 3407.

38. The Chase Subpoena failed to comply with all of these requirements. First, the Chase Subpoena was not authorized by law to the extent it sought Ms. Gross' personal bank records which are plainly outside the scope of the Court's Second Amended Examiner Order and the Examiner's request. Second, the Chase Subpoena was never served upon Ms. Gross (the customer) with the necessary notice. Rather, the subpoena listed an "Unknown Bank Account Chase ending in -3556" and was never received by Ms. Gross. Third, and as a result of the lack

of notice to Ms. Gross, the Chase Subpoena has not yet provided the necessary ten-day period provided to Ms. Gross to object thereto.

39. As a result of the aforementioned failures to comply with the terms of the RFPA, Ms. Gross is entitled to civil penalties and injunctive relief thereunder.

40. For the reasons detailed above, the Chase Subpoena should be quashed and/or modified to the extent it seeks any account information related to Ms. Gross.

## **NOTICE**

41. Notice of this Motion will be provided to: (a) the Debtors; (b) Eric Huebscher, as Examiner; (c) the U.S. Trustee; (d) Benefit Street; (e) any party that requests service pursuant to Bankruptcy Rule 2002; and (f) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b) ((a) through (e) collectively, the "Notice Parties"). Ms. Gross respectfully submits that no other or further notice need be provided.

## **NO PRIOR REQUEST**

42. Although the Debtor has requested to quash and/or modify all of the subpoenas issued by the Examiner in this Bankruptcy Case, including the Chase Subpoena, neither Ms. Gross nor any party has specifically requested the relief sought in this Motion in this or any other court.

WHEREFORE, Ms. Gross respectfully requests that this Court enter the proposed order granting the relief requested herein and such other relief as this Court deems appropriate under the circumstances.

Dated: February 15, 2022  
Newark, New Jersey

**SAUL EWING ARNSTEIN & LEHR LLP**

By:     */s/ Stephen B. Ravin*  
Stephen B. Ravin  
One Riverfront Plaza  
1037 Raymond Blvd., Suite 1520  
Newark, NJ 07102-5426  
Phone: (973) 286-6714  
Fax: (973) 286-6800  
stephen.ravin@saul.com

-and-

A. Mayer Kohn  
Centre Square West  
1500 Market Street, 38th Floor  
Philadelphia, PA 19102  
Telephone: (215) 972-7777  
mayer.kohn@saul.com

*Attorneys for Non-Debtor Third-Party Miriam Gross*