GEORGIA PESTANA
Corporation Counsel of the City of New York
Attorney for the City of New York
  Department of Finance
100 Church Street
New York, New York 10007
(212) 356-2138
Hugh H. Shull
hughs@law.nyc.gov

Hearing Date and Time:
March 8, 2022 at 10:00 am

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                :
                                                    : Chapter 11
96 WYTHE ACQUISITION LLC,        : Case No. 21-22108 (RD)
                                                   :
                                                   :
           Debtor.                        :
-------------------------------------------------------------x

**NYC DEPARTMENT OF FINANCE'S OBJECTION TO CONFIRMATION**
**OF DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN**

      The New York City Department of Finance ("DOF"), by its counsel GEORGIA PESTANA, Corporation Counsel of the City of New York, hereby submits its objection (the "Objection") to confirmation of the Debtor's Second Amended Chapter 11 Plan of Reorganization (the "Plan") attached to the Third Amended Disclosure Statement (the "Disclosure Statement") [Dkt. No. 196]. Response in Opposition to the Objections to DOF Claims No. 14 and 18 dated January 14, 2022 (the "Objections") filed by 96 Wythe Acquisition LLC (the "Debtor") and respectfully states:

      1.     The Debtor has for years failed to pay hotel occupancy taxes owed to the City of New York (the "City"), despite evidently having collected such taxes from occupants of its hotel. The hotel occupancy taxes are trust fund taxes, i.e., held in trust by statute solely for the City's

benefit. The Debtor as owner of the hotel premises is an operator responsible for the payment of the tax, regardless of any understanding it has with the management company. Officers and partners are also personally liable for any unpaid hotel tax, and upon information and belief the principals of the management company and the Debtor overlap. The release and exculpation provisions of the Plan should not be permitted. Further, none of the hotel tax collected but never paid to the City can be used to fund plan payments.

2. DOF filed a claim for the hotel taxes as well as business income taxes. The hotel occupancy tax portion of the claim amounts to $2,667,547.75 in pre-petition principal. The claim also asserts pre-petition interest in the amount of $695,913.19, and penalties of $666,886.95. Because no returns had been filed for the hotel the claim was estimated. It was only thereafter that the management company filed hotel occupancy late tax returns for periods back to 2017 in late December and January of 2022. None of the taxes reflected in those returns have been paid and a substantial portion asserted in the DOF claim is clearly owed.

3. The Debtor continued to collect the hotel tax during the bankruptcy case. The Debtor's own bankruptcy filings clearly indicate that the Debtor owns the hotel and that it collected the room revenue during the case. The Debtor's own filed operating reports show room revenue and number of rented rooms which indicate that well over $400,000 in hotel occupancy taxes should have been collected during the case, most of which is already due and unpaid. Interest and penalties accrue. This does not even include the taxes for the portion of February and all of March for which revenue collection was not broken out by room revenue and other revenue, or for the as yet unreported January and February revenue.

4. The Debtor even may have collected the 5.875% of room revenue portion of the hotel occupancy tax during June, July and August of 2021, when that portion of the hotel

occupancy tax was suspended by Emergency Executive Orde, in which case if collected it still must be paid to DOF.

5.      The Debtor has never filed business income tax returns, either as a partnership or a corporation.   DOF also estimated that portion of the claim.  DOF also filed real property tax claims for both the pre- and post-petition period totaling over $3.984 million dollars.  However, during the case a representative of the Debtor signed an installment payment agreement with DOF to extend the payout period for those claimed amounts for 10 years.  This should not have been done without debtor's counsel discussing with corporation counsel.  This installment agreement has never been approved by the Court and is referenced in the Plan.  While the City's bankruptcy counsel has discussed a possible settlement appropriately documenting such an installment agreement, it objects to the Plan pending any such agreement.  The first installment of such a payout has not been paid in any event, although the Debtor may have intended such a payment, and since such payout would have included paying a portion of the pre-petition claim could not be done without court approval.  The payment was instead applied to post-petition taxes due January 1, 2022. However, a portion of the January 1, 2022 taxes are still owed.  $166,461.52 is owed for the January 1, 2022 taxes, failure to pay which is itself a default under the proposed installment agreement, plus the installment of $443,201.41 is past due, with interest, even if the installment plan is adopted.  Total real property taxes owed presently are $4,564,944.28.  The installment agreement would appear to be of questionable benefit top the estate and its creditors, since all the taxes would continue to accrue interest at the 18% statutory rate, compounded daily.

6. The City submits this Debtor's Plan cannot be confirmed. It has not paid trust fund taxes amounting to millions of dollars. The principals are personally liable. A trustee should be appointed to investigate the Debtor's affairs.

**BACKGROUND**

7. On or about February 23, 2021 (the "Petition Date"), the Debtor filed a petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor owns the real property known as 96 Wythe Avenue, Brooklyn, New York, Block 2295 Lot 21 (the "Property"). The Debtor owns the hotel at the Property. See hotel management agreement at docket number 83.

8. The Debtor "owns and operates" the hotel. See Disclosure Statement page 2, paragraph 1. The hotel located at 96 Wythe Avenue, Brooklyn, New York.

9. On or about July 26, 2021, the DOF filed proof of claim no. 10 for real property taxes in the amount of $606,729.04 ("Claim No. 10").

10. On or about July 28, 2021, DOF filed claim no. 11 in the amount of for real property taxes in the amount of $3,378,218.12 ("Claim No. 11").

11. Inadvertently, DOF asserted Claim No. 10 as a pre-petition secured claim and Claim No. 11 as an administrative claim, while in fact Claim No. 10 covers post-petition taxes during the administrative period and Claim No. 11 asserts taxes for the pre-petition period, as the DOF account printouts attached to the claims clearly show. Claim No. 10 and Claim No. 11 shall be collectively referred to as the Real Property Tax Claim

12. On or about December 9, 2021, DOF filed proof of claim no. 14 in the amount of $6,520,449.01 ("Claim No. 14").

4

13. On or about December 14, 2021, DOF filed claim no. 18 in the amount of $6,520,449.01 ("Claim No. 18") (Collectively, Claim No 14 and Claim No. 18 will be referred to as the "DOF Hotel Tax Claim", which includes both the hotel occupancy tax and business income taxes as aforesaid).

14. DOF only seeks allowance of the taxes owed once and does not seek duplicate payment. Claim No 18 duplicates Claim No. 14, as one was filed by mail and then a claim was filed electronically due to pending deadline. The DOF Hotel Tax Claim asserts claims for i) corporation tax ("CT") in the principal amount of $1,168,811.00 for the periods from calendar year 2017 through 2020, plus penalties and interest, ii) unincorporated business tax ("UBT") in the principal amount of $528,276.16 for the periods 2017 through 2020, plus penalties and interest, and hotel occupancy tax ("Hotel Tax") in the principal amount $2,667,547.75 for the tax years ending on February 28, 2017, 2018, 2019 and 2020, plus penalties and interest.

15. The Debtor objected to the Real Property Tax Claim, noting the reversal of the claim periods between pre-petition and administrative portions. Also, apparently a representative of the Debtor, without contacting the City's Office of Corporation Counsel, and after the Petition Date, signed a property collection installment agreement with DOF dated as of June 23, 2021 (the "Installment Agreement") for payment of real property taxes and charges in the amount of $3,928,923.57, payable in semi-annual installments over 10 years (20 installments) of $443,201.41, commencing with an installment due January 1, 2022. As of the time that the proofs of claim were prepared, Finance's records had not been updated to reflect the Installment Agreement, as the attachments to the proofs of claim indicate.

16. The City responded to the objection to the Real Property Tax Claim and said regardless of period, all of the taxes are secured claims, and that the Installment Agreement had

not been approved by the Court. The objection to claim has been adjourned to March 8, 2022, and the parties have been discussing a potential resolution, although the fact that pre and post-petition periods are included, that there has already been a default, and additional property taxes have come due, along with other issues, complicates matters. The City's Corporation Counsel should have been consulted prior to approaching Finance, especially in light of the pending bankruptcy and other ramifications.. The installment agreement does not stop the running of statutory interest at 18% and Court approval is required. Other creditors would have a right to object to a proposed 9019 stipulation. Over $4.56 million in real property taxes are now owed, including the January 1 installment if approved and over $160,000 in remaining January 1, 2022 real property taxes. The Installment Agreement would not change the periods during which the taxes accrued. DOF submits that the Real Property Tax Claims should be allowed as set forth herein, with Claim No 10 Allowed as an administrative claim (also secured) and Claim 11 allowed as a Secured Claim, or DOF should be given the opportunity to amend the claims to reflect the appropriate periods and administrative status.

17. Even more troublingly, the Debtor then objected Claim No. 14 and Claim No. 18, i.e. the DOF Hotel Tax Claim and claimed no liability for the hotel occupancy taxes and said its management was discussing a payment plan with DOF, implying these trust fund taxes already due were not ready to be immediately turned over.

18. On January 14, 2022 the Debtor filed the objections to the DOF Hotel Claim. In general the Debtor asserts it does not owe any CT or UBT because it did not have taxable income during the claim periods, and it does not owe Hotel Tax because it is not the Debtor's obligation but is the obligation of its management company, Washington Hotel BK LLC (the "Management Company"). In support of its assertion the Debtor attached the declaration of Daniel

Norensberg, an accountant for the Debtor and Management Company, that the Debtor had no taxable income during the periods in question for the CT and UBT portions of the DOF Claim, and that the Management has filed Hotel Tax returns for all of the periods in question, that Management "is making payments for these taxes," and that he is in contacts with representatives from DOF to ensure that they are aware that these payments "are forthcoming". .

19. The City responded to the objection to the Hotel Tax Claim, with the hearing adjourned to March 8, 2022. Since no returns were filed by the Debtor or the Management Company when the proofs of claim were prepared, the taxes were estimated. DOF does not seek both UBT and CT. The Debtor as a limited liability company and must make an election or otherwise assert its tax status. It must file returns. Upon review DOF will assert either UBT or CT, but in the interim estimated for each to reserve its rights.

20.. As for the Hotel Tax, while Management Company is also liable as an operator, the Debtor cannot contract away its own liability as an operator since it is the owner of the hotel premises. Further, Hotel Taxes are trust fund taxes, collected by as trustee for the City. The tax is due when the quarterly returns are due, even if returns have not been filed. Returns were only filed, late for the most part, after the proofs of claim were filed, according to DOF records. There is no indication to whom Debtor, the Management Company or its representatives are communicating with at Finance regarding an alleged payment plan and all payments for pre-petition and post-petition taxes are due. Millions of dollars in trust fund taxes are owed and have not been paid. The principals are also liable for the Hotel Tax. DOF is entitled to time to audit the returns filed by the Management Company. Nevertheless, the Debtor remains liable.

**ARGUMENT**

21. The Debtor clearly operates the hotel, as stated in the Disclosure Statement. All revenue from the Debtor's operations are operations is deposited into the main DIP account. Disclosure Statement page 24.

22. The Debtor denies responsibility for the Hotel Tax Claim even though its liability is clear. The Debtor provides releases to other parties liable for the Hotel Tax, including the Management Company and the principals.

23. DOF will prepare an administrative claim for the Hotel Tax for post-petition periods, even though it is ordinary course, and tax claimants do not need to file administrative expense request to the their administrative claims allowed under Bankruptcy Code 503(b)(1)(D).

24 It is relatively simple to show that the Debtor owes a significant amount of post-petition Hotel Occupancy Tax. However, DOF reserves the right to file a formal administrative claim, but the following calculations show significant post-petition hotel occupancy tax owed

25. The Debtor's amended operating report for March of 2021 shows revenue of $852,520.39. Sec ECF No. 30 page 2. Unlike later operating reports it does not break out paid rooms rented and room revenue from other revenue, such as bar and restaurant revenue, but rooms rented and revenue can be estimated from average ratio of such revenue. Under NYC Admin Code 11-2502 the hotel occupancy tax is $2 per room rented per day, and 5.875% of total room revenue.

26. The April operating report shows paid rented rooms for the period of 2716 and room revenue of $660,547.77. ECF No. 34 p. 19. The rented room portion of the hotel tax would then be calculated as $5,432.00 ($2 x 2716 rooms) plus 5.875% of the room revenue, or $38,807.1815, for a total indicated of $44,239.1815.

8

27. The May operating report shows paid rented rooms of 2733 and room revenue of $824,627.45. ECF No. 48 p. 16. This results in a hotel tax of $53,912.8627. That's $98,151.04 for just April and May months of the quarter ending May 31, 2021. March would have to be estimated and added.

28. At the normal tax rate, the June, July and August 2021 operating reports (ECF No. 72 p. 14, ECF No. 91 p. 12 and ECF No. 130 p. 12) would yield hotel occupancy tax of $240,147.77. However, by Emergency Executive Order No. 202 dated May 18, 2021 Mayor DeBlasio suspended the 5.875% portion of the hotel occupancy tax. That would result in a proper tax of $22,200 based on 11,100 paid rented rooms during the period taxed by $2 per room. However, if the Debtor collected the additional 5.875% of room revenue, it would owe the entire amount collected. See NYC Admin Code 11-2505. It could only seek refunds if it paid back the occupants, and occupants improperly charged can seek a refund if it was paid to DOF. Admin Code 11-2507.

29. Operating reports for the November Quarter would indicate a Hotel Occupancy Tax of $241,417.04, based on the number of rooms rented and the revenue. See September, October and November operating reports at ECF No. 149, p. 12, ECF 193, p.11 and ECF No. 263 p. 13. None of these taxes, which are due, have been paid, although the Management Company has now filed returns. Interest and penalties have accrued.

30. Although not yet due as part of the February 28, 2022 quarter, the December 2021 operating report (ECF No. 350 p.20) suggests a hotel occupancy tax of $71,884.20 which accrued during the administrative period. January and February 2022 hotel taxes will come due shortly after the March 8, 2022 plan hearing. Attached hereto as Exhibit A are the referenced pages of the filed operating reports.

31. The Debtor owes over $400,000 in post-petition hotel occupancy taxes, and $ millions in pre-petition by DOF's estimate.  With interest and penalties, the post-petition penalties being administrative. These are trust funds belonging to the City.  They are only held by the Debtor in trust.

32. The tax on occupancy of hotel rooms in the City is set forth.  11-2501 et seq of the Admin Code.

33. An Operator of a hotel includes any person operating a hotel in the City of New York, including, but not limited to, the owner or proprietor of such premises…".  Admin. Code 11-2501-2.  The Hotel Tax imposed on occupancy "shall be paid by the occupant to the operator as trustee for and on account of the City, and the operator shall be liable for the collection thereof and for the tax.  The operator and any officer of any corporate operator shall be liable for the tax collected or required to be collected under this chapter…" Admin Code 11-2502(f).  See City of New York v. Vaknin 2014 NY Misc. LEXIS 2609 (2010)(operator and any of its officers liable for hotel tax). A hotel operator is supposed to file a registration certificate with DOF under Admin Code 11-2514 to receive authority to collect the tax.  According to DOF records no such certification has been filed.  The hotel tax is to be held in trust and is not an asset of the estate. To the extent unpaid (and evidently absconded with), it is a priority under 11 USC 507(a)(8)(C) as "a tax required to be collected or withheld and for which the Debtor is liable in whatever capacity."

34. Under 11-2504 of the Admin Code tax returns are due quarterly, and under 11-2505 the tax is payable to DOF and due when the return is due, without regard to whether the return is filed and without regard to whether the return filed correctly shows the amount due. Admin Code 11-2505.

10

35. When a return is not filed, or a return is incorrect or insufficient, DOF can estimate the tax due. Admin Code 11-2506. The Management Company only filed returns after the proofs of claim were filed in December of 2021.

36. "Officers of a corporate operator and partners in a partnership which is an operator shall be personally liable for the tax collected or required to be collected by such corporation or partnership under this chapter, and subject to the penalties and interest imposed by this section." Admin Code 11-2515(h)(1). And neither the Management Company nor the Debtor registered to collect the tax under 11-2514 of the Admin Code. The officers can also be criminally liable.

37. The release and exculpation provisions would egregiously release the principals of the Management Company and the Debtor. The same people. The upshot of the Debtor's Plan and goal to knock out the Debtor's obligation for the claims would leave the City chasing a management company that only operates via disbursements from the Debtor's general fund.

38. DOF submits that the Debtor is liable for the Hotel Tax.

39. As for the Real Property Tax, over $4 million is owed, and paying in installments just kicks the can down the road with large interest amounts accruing. The statutory rate applies under Bankruptcy Code 511. The Debtor can't use trust fund taxes to pay down the Real Property Tax Claim, since they must be used to pay the Hotel Tax Claim. Nor can it pay other creditors and legal fees from such funds

40. Based on the foregoing DOF objects to confirmation, and joins with the objections filed by the lender and US Trustee with respect to the Absolute Priority Rule, new value, the releases and exculpation provisions, and feasibility.

Dated:   New York, New York
         February 15, 2022

                           GEORGIA PESTANA
                           Corporation Counsel of the City of New York
                           Attorney for the City of New York
                              Department of Finance

                   By:   /s/ Hugh H. Shull
                         Hugh H. Shull
                         100 Church Street
                         New York, New York 10007
                         (212) 356-2138