**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108 (RDD) |
| Debtor. | |

## MOTION TO CLARIFY PROTOCOL FOR RELEASE OF EXAMINER REPORT; CONFIRM DEADLINES, RESPONSE TO STATUS REPORT; AND RELATED RELIEF

96 Wythe Acquisition LLC, the above-captioned debtor and debtor in possession (the "Debtor"), by its undersigned attorneys, Mayer Brown LLP and Backenroth, Frankel & Krinsky, LLP, submits this motion (the "Motion") to clarify protocol for release of examiner report, confirm deadlines, response to status report, and for related relief in connection with the above-captioned chapter 11 case (the "Chapter 11 Case"). In support of this Motion, the Debtor respectfully states as follows:

746294800

## PRELIMINARY STATEMENT

1.      The within Motion seeks, amongst other things, to clarify the protocol for release of the examiner report and confirm deadlines with respect to the foregoing.  As detailed below, the Debtor is concerned with the potential release of the examiner's report without protecting against the release of information that may be subject to privilege, work product, confidentiality, and/or includes errors, without any guardrails.  In addition, the Examiner may have a  different (and erroneous) view as to what constitutes privileged documents, work product, and confidential information, and there may be errors (inadvertent or otherwise) in the report.  This may in turn result in the inadvertent (or intentional) release of information that should be protected.  The release of the report without addressing such, would be difficult, if not impossible, to remedy, to the extent any protected information is released.  This is particularly concerning, given that the Examiner has unilaterally released the report to BSP, and may release the report to other third parties, without permitting the Debtor an opportunity to address such.

## FACTUAL BACKGROUND

2.      On February 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code initiating the Chapter 11 Case.  The Debtor continues to operate its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtor owns and operates the property located at 96 Wythe Avenue in Brooklyn, including the 147-room Williamsburg Hotel with a restaurant and multiple bars (the "Hotel").  The Hotel is fully operational after being severely curtailed during the initial stages of the COVID-19 pandemic.

4.      The Chapter 11 Case has provided the Debtor with, among other things, a breathing spell to reorganize given the negative impact of the pandemic upon the hospitality industry and the Debtor's business, which had severely impaired the Debtor's ability to obtain replacement mortgage financing and continues to do so.  The Debtor's plan of reorganization provides for the infusion of $10 million and proposed payment plan to all creditors in full with interest over time. The confirmation hearing is  currently scheduled to begin on March 8, 2022.

5.      On November 8, 2021, the Court entered the *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 178], which order was subsequently amended by the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 193] (the "Amended Examiner Appointment Order") and the *Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [ECF # 224] (the "Second Amended Examiner Appointment Order").

6.      On November 16, 2021, the Court entered the *Order Approving Appointment of Examiner* [ECF # 186] (the "Huebscher Appointment Order"), appointing Eric M. Huebscher as the Examiner in the above-captioned chapter 11 case.

7.      On January 24, 2022, the Court so-ordered a stipulation and agreed order by and between Debtor, the Examiner, and Benefit Street Partners Realty Operating Partnership, L.P. ("BSP"), which among other things, extended the Examiner's deadline to file his report through and including February 11, 2022 (the "Report Deadline"), subject to further extensions for cause shown. [ECF # 339].

8.      On February 8, 2022, at a Court conference (the "Status Conference"), the Examiner advised that it was awaiting bank statements (the "Bank Statements") to complete its report, which he estimated would take a week to ten days.  At such time, the Court continued the

Report Deadline without date, pending receipt of the Bank Statements, and also provided certain guidelines for the filing of the examiner report, as discussed more fully below.

## **ARGUMENT**

9.      Based upon the Status Conference, it was the Debtor's understanding that the Examiner was to provide a draft report to the Debtor in advance of public dissemination (which the Debtor had understood would be by Friday, February 11, 2022) to provide an opportunity for it to review the draft for privilege and confidentiality issues, as well as well as to advise of any other proposed corrections (in the event of errors).  The Debtor also understood that the report would be made available to Judge Chapman, the Court appointed mediator, and that the parties would confer with Judge Chapman to coordinate the exchange of the draft reports in connection with the upcoming mediation.

10.      In furtherance of such, counsel for the Debtor had a meet and confer with counsel for the Examiner and BSP on Wednesday, February 9, 2022.  As a result of such call, the Debtor prepared a draft stipulation ("Draft Stipulation"), which provided a proposed protocol for exchange of the draft report, while providing the Debtor with a relatively brief opportunity (i.e. few days) to review the draft in advance of dissemination to address any privilege, confidentiality, and other errors as noted above.  The Parties also had a call with Judge Chapman's law clerk on Friday, February 11, 2022 to discuss the protocol for release of the report for purposes of the mediation.

11.      It is the Debtor's position, in particular, given the past disagreements as to what constitutes privileged documents, work product, and confidential information, and given errors in the examiner's process as outlined below (and based upon the discussion at the Status Conference), that the Debtor be provided with an initial draft report, to confirm if any issues and/or disagreements exist as to privilege, work product, confidentiality, and outright errors, and if so, any objectionable references be redacted pending further agreement of the parties or Court review.

12.     On the call with Judge Chapman's law clerk, the Parties were advised that any questions regarding the protocol for release of the report relating to the mediation should be brought to the Court's attention for review.  While no agreement was reached to resolve the issues, the Debtor was left with the impression that the Examiner would seek clarification from this Court, prior to unliterary releasing the draft report publicly.

13.     However, instead the Examiner filed a "status" report dated February 15, 2022 indicating that he intended to release the report simultaneously -- without given the Debtor an opportunity to review such -- to Benefit Street, the United States Trustee, and any creditor signing a confidentially agreement.

14.     This would defeat the purpose of putting in place a process to safeguard the release (whether inadvertent or otherwise) of privileged, work product, and/or confidential information, nor provide any opportunity for the Debtor to review such information prior to dissemination. Subsequent to the submission of the "status" report, and at the Debtor's request, the Parties had a meet and confer in an effort to resolve these issues consensually, whereupon it was the Debtor's understanding that the draft report would not be disseminated pending either agreement of the Parties, or pending a conference with the Court.  However, by email dated today, February 17, 2022, the Examiner transmitted the draft report to the Debtor, with copy to Judge Chapman (as agreed) and BSP.

15.     While the Debtor was hopeful that the Parties would work out an agreed protocol for the release of the report, based upon the history of the case, the Examiner's unilateral release of the report to BSP, and the potential that the report be further disseminated without protection from release of privileged documents, work product, confidentiality, and to address any errors,  the Debtor seeks intervention from the Court.

16.    In particular, as noted above, the Debtor is concerned with the potential release of the report without any guardrails and that the Examiner may have a different (and erroneous) view as to what constitutes privileged documents, work product, and confidential information, and there may be errors (inadvertent or otherwise) in the report.  This may in turn result in the inadvertent (or intentional) release of information that should be protected.  Based upon many of the errors made through the examination, the report may also contain additional errors.  The release of the report without addressing such, would be difficult, if not impossible, to remedy, to the extent any protected information is released.  This is particularly concerning, given that the Examiner has unilaterally released the report to BSP, and may release the report to other third parties, without permitting the Debtor an opportunity to address its concerns as to release of information that is subject to privilege (work product), confidential, and to address errors.

17.    While the Debtor has not reviewed the draft report as of yet, and reserves its rights to respond further, as to process, as provided in the attached declaration of Michael Lichtenstein, as well as detailed in the comprehensive declaration from Michael Lichtenstein [Doc. No. 354] (collectively, the two declarations, hereinafter, the "Lichtenstein Declarations"), attached hereto as **Exhibit "B"**, the Debtor highlights the misleading narrative advanced by the Examiner through the process.  In particular , the Examiner conflates production targeted to non-debtor third parties, with requests of the Debtor, and takes events out of context to create a false narrative.[1]  Other disagreements through the process have included exaggerated (or specious) claims by the Examiner regarding production of non-existent documents, and claims that privilege was inapplicable.  By way of brief examples of disagreements on process, the Debtor notes as follows:

---

[1] While complaining of lack of access to books and records, the Examiner was provided unlimited access to the books and records.  The management team was available and spent about 30 hours of time with the Examiner in meetings, reviews, and interviews, and provided over 10,000 pages of documents (including document provided by non-debtor third parties).

(a)    For example, on February 8, 2022, the Examiner showed up at the Hotel's offices with an "associate" who refused to identify himself or state who he worked for to gain access to the back office.  While the Debtor had no issue providing (and did provide) unlimited access to the Examiner, the "associate" was unwilling to show a business card or any identification, and acknowledged that he was not an employee of the Examiner's firm.  Another words, the Examiner brought a third party not employed by the Examiner's company, to see the Debtor's confidential information, without identifying themselves or their role.  As a result, the Debtor denied access for the unknown individual to the premises.  At the same time, the Debtor continued to offer to provide the Examiner access.

(b)    The Examiner also pressed for online access to QuickBooks, which the Debtor did not maintain in the normal course of business, including given security concerns with keeping the system on an open server.  Notwithstanding, as provided above, the Examiner was provided full access the books and records on site, and the Debtor repeatedly invited him to return further review.

(c)    In addition, the Examiner has created an adverse working environment through his tactics, including continually moving the goal posts in seeking ever expanding lists of information, often shooting first, asking questions after.  The foregoing strain on resources, ultimately undermined morale and damaged the Debtor who relies on the continuity of its management team and employees to keep the Hotel operating at a high level.  The Debtor also understands that the Examiner reached out to at least one plaintiff's counsel in pending litigation[2] against the Management Company and Mr. Lichtenstein, to gather information relating to a claim that the Debtor provided a personal suite in the Hotel to Mr. Lichtenstein.  While the Debtor understand that the allegations were denied, and relates to non-debtors, the efforts to interject himself in litigation relating to employment matters (where other avenues were available to confirm the use and occupancy of the Hotel),  is harmful to the Hotel operations, which as noted relies heavily on its staff to keep the operations running as one of the preeminent performing hotels in the area.

(d)    The examiner has also taken steps to delve outside his lane beyond a review of "transfers".    Including seemingly

---

[2] The pending lawsuit are unsubstantiated claims against the management company and Mr. Lichtenstein related to so-called harassment and other employment related issues in connection with operation of the Hotel.

investigating non-debtor third parties, which has the effect, if not
the intent of increasing the costs and draining resources.

18.    The Examiner also asserts that the bulk of information requested was missing.  This is erroneous.  The Examiner conflates the Debtor production with production by non-debtor third parties represented by others.  All Debtor documents were provided.  The issue regarding claims that  documents were not produced related to non-debtor third parties and were the subject to the prior motion to Clarify.  Once the Court ruled that documents needed to be provided, all such documents were provided by the Debtor and third parties.

19.    The Examiner also asserts that the Debtor creating its own summary report regarding transfers somehow impeded  his investigation.  That is nonsensical. The Examiner could take or leave the report as he saw fit, the fact that the Debtor assembled the information for his review was designed to aid in the process.

20.    Finally, the Examiner has investigated the PPP and EIDL loan transactions, which from the Debtor's understanding were not supposed to be part of examination (given amongst other things the separate settlement of such).  In this regard, the Examiner states that the EIDL funds were property of the Debtor, when the loans were made to the Management Company, and were subject to repayment by the Management Company, not the Debtor.

21.     In sum, given the history in this case, the Debtor is extremely concerned that the Examiner may release protected documents, whether because of disagreement, intent, or inadvertence, without any protocol in place to address such.  Given the foregoing, as detailed more fully above, and for good order, the Debtor submits that the Court enter the proposed Order, attached hereto as "**Exhibit A**", confirming the protocol and deadlines for exchange and filing of the subject report, and for such other relief as is just and proper.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Debtor respectfully requests that the Court grant the

Motion, implement the protocol as proposed, and/or such other protocol as reasonable to address

the concerns raised herein, confirm deadlines for submission and filing of the Examiner's report,

and grant such other and further relief as the Court deems just and proper.


Dated: February 17,  2022
      New York, New York

Respectfully submitted,

By:  */s/ Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email: dspelfogel@mayerbrown.com
     leisenberg@mayerbrown.com
     dchung@mayerbrown.com

*Co-Counsel to the Debtor*
*and Debtor in Possession*

Mark Frankel
**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:                                                    Chapter 11

96 WYTHE ACQUISITION LLC,                 Case No. 21-22108 (RDD)

              Debtor.

**PROPOSED ORDER GRANTING DEBTOR'S MOTION TO CLARIFY PROTOCOL
FOR RELEASE OF EXAMINER REPORT AND CONFIRM DEADLINES[1]**

The Court having considered the motion (the "<u>Motion</u>") of 96 Wythe Acquisition LLC, the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") to clarify protocol for release of examiner report and confirm deadlines, and a hearing having been held before the undersigned, and all objections having been withdrawn or overruled, and for good cause shown, it is hereby

ORDERED as follows:

1.      The Debtor may provide to the Examiner any objections relating to confidentiality and/or privilege (the "<u>Objections</u>"), as well as advise of any other proposed corrections (the "<u>Proposed Corrections</u>") to the draft report as detailed in the Motion, on or before _____. Each such Objection or Proposed Correction shall indicate the specific text to which the Debtor objects, and must be accompanied by specific reference to the document or other information that forms the basis for the Correction or Objection.

2.      The Debtor and/or Examiner may raise any dispute(s) arising from such Correction or Objections with the Court on an expedited basis to be filed with the Court on or before _____.

---

[1] Capitalized terms shall have the meaning ascribed in the Motion.

3.      Subject to the Court determination with respect to the release of any privileged or confidential information, the Examiner, nor any other party in possession of such, shall disclose and/or release such information, and the Examiner shall include redactions in any filing or dissemination of the report to address protection of any privilege and/or confidential information asserted pursuant to this Order.  The Examiner shall file its report by _____, and the Report Deadline shall be extended beyond the February 11, 2022 to _____.

4.      The report provided to Benefit Street Partners shall not be used outside of the Mediation pending its filing, and shall remain confidential and subject to the protocol in place for the Court ordered mediation.  In addition, the inclusion of any privileged information in the Report shall be deemed inadvertent and shall not waive any applicable privilege or protection from discovery in this case or any other federal or state proceeding.  This provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

5.      The Court shall have sole and exclusive jurisdiction to hear disputes arising out of or related to this Order.

Dated: February  ___, 2022
           White Plains, New York

_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

# LICHTENSTEIN DECLARATIONS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11- |
| 96 WYTHE ACQUISITION LLC, | Case No.:  21-22108 (RDD) |
| Debtor. | |

### DECLARATION OF MICHAEL LICHTENSTEIN
### WITH RESPECT TO MOTION TO CLARIFY PROTOCOL

1.     My name is Michael Lichtenstein, I am a managing member of 96 Wythe Acquisition LLC (the "Debtor"), in the above-captioned chapter 11 case (the "Chapter 11 Case"). I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtor.

2.     I work with the David Goldwasser, the Chief Restructuring Officer for the Debtor, and the Hotel's management team in connection with the within case.  I have reviewed and am generally familiar with the Debtor's operations, including its operation of the Williamsburg Hotel (the "Hotel"), and the Debtor's related financial records, agreements and other related documents. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtor's operations and finances, information learned from my review of relevant documents, information supplied to me by members of the Hotel's management team and other professional advisors, or my view based upon my experience and knowledge of the Debtor and its operations and financial condition.

3.     In terms of brief background, I previously submitted a declaration on January 26, 2022, attached, and incorporated by reference, which details the misleading narrative advanced by the Examiner through the process.

4.      While the Examiner claims non-compliance, this is false, wherein the Examiner conflates production targeted to non-debtor third parties, with requests of the Debtor, and takes events out of context to create a false narrative.  For example, while complaining of lack of access to books and records, the Examiner was provided unlimited access to the books and records.  The management team was available and spent about 30 hours of time with the Examiner in meetings, reviews, and interviews, and provided over 10,000 pages of documents (including document provided by non-debtor third parties).

5.      Other disagreements through the process have included exaggerated (or specious) claims by the Examiner regarding production of non-existent documents, and claims that privilege was inapplicable.  Examples are provided below, the foregoing is by way of illustration and is not exhaustive.

6.      More specifically, by way of example, on February 8, 2022, the Examiner showed up at the Hotel's offices with an "associate" who refused to identify himself or state who he worked for to gain access to the back office.  While the Debtor had no issue providing (and did provide) unlimited access to the Examiner, the "associate" was unwilling to show a business card or any identification, and acknowledged that he was not an employee of the Examiner's firm.  Another words, the Examiner brought a third party not employed by the Examiner's company, to see the Debtor's confidential information, without identifying themselves or their role. This despite the confidential nature of this examination, and court stipulated confidentiality agreement. As a result, the Debtor denied access for the unknown individual to the premises.  At the same time, the Debtor continued to offer to provide the Examiner access.

7.      The Examiner also pressed for online access to QuickBooks, which the Debtor did not maintain in the normal course of business, including given security concerns with

keeping the system on an open server.  Notwithstanding, as provided above, the Examiner was

provided full access the books and records on site, and the Debtor repeatedly invited him to

return further review.

8.    In addition, the Examiner has created an adverse working environment through

his tactics, including continually moving the goal posts in seeking ever expanding lists of

information, often shooting first, asking questions after.  The foregoing strain on resources,

ultimately undermined morale and damaged the Debtor who relies on the continuity of its

management team and employees to keep the Hotel operating at a high level.  The Debtor also

understands that the Examiner reached out to at least one plaintiff's counsel in pending litigation[1]

against myself and the Management Company, to gather information relating to a claim that the

Debtor provided a personal suite in the Hotel to me.  While the allegations were denied and

relates to non-debtors, the efforts to interject himself in litigation relating to employment matters

(where other avenues were available to confirm the use and occupancy of the Hotel), is harmful

to the Hotel operations, which as noted relies heavily on its staff to keep the operations running

as one of the preeminent performing hotels in the area.

9.    The examiner has also taken steps to delve outside his lane beyond a review of

"transfers".  Including seemingly investigating about a dozen of non-debtor third parties, which

has the effect, if not the intent of increasing the costs and draining resources.

10.    The Examiner also asserts that the bulk of information requested was missing.

This is erroneous.  The Examiner conflates the Debtor production with non-debtor third parties

represented by others.  All Debtor documents were provided.  The issue regarding claims that

documents were not produced related to non-debtor third parties  were the subject to the prior

---

[1] The pending lawsuit are unsubstantiated claims against me and the management company and related to so-called
harassment and other employment related issues in connection with operation of the Hotel.

motion to Clarify.   Once the court ruled that documents needed to be provided, all such documents were provided by the Debtor and third parties.

11.     The Examiner further asserts that the Debtor creating its own summary report regarding transfers somehow impeded  his investigation.  That is nonsensical and only displays the examiners agenda of distorting facts without reviewing the full facts.  The Examiner could take or leave the report as he saw fit, the fact that the Debtor assembled the information for his review was designed to aid in the process. The examiner attempting to portray the act of preparing a detailed report as an act of obstruction is another display false statements put forth by the examiner.

12.     Finally, the Examiner has investigated the PPP and EIDL loan transactions, which from the Debtor's understanding were not supposed to be part of examination (given amongst other things the separate settlement of such).  In this regard, the Examiner states that the EIDL funds were property of the Debtor, when the loans were made to the Management Company, and were subject to repayment by the Management Company, not the Debtor.

13.     As I already stated in the previous declaration, the examiner has been the opposite of a neutral examiner, but only had an agenda and set out from the beginning with a clear attempt to paint a negative picture.

14.     In sum, given the history in this case, wherein the Examiner has continually pushed the boundaries (and exceeded such) of his examination, conflated entities, and issues, sought release of privileged information, and otherwise attempted to paint a false narrative, the Debtor is extremely concerned that the Examiner may release protected documents, whether because of disagreement, intent, or inadvertence, without any protocol in place to address such.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed on the 17th day of February, 2022

_____

Michael Lichtenstein

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>                    Debtor. | Chapter -11<br><br>Case No.: 21-22108 (RDD) |

## <u>DECLARATION OF MICHAEL LICHTENSTEIN</u>

1.      My name is Michael Lichtenstein, I am a managing member of 96 Wythe

Acquisition LLC (the "<u>Debtor</u>"), in the above-captioned chapter 11 case (the "<u>Chapter 11</u>

<u>Case</u>").  I am over the age of 18 and authorized to submit this Declaration on behalf of the

Debtor.

2.      I work with the David Goldwasser, the Chief Restructuring Officer for the Debtor,

and the Hotel's management team in connection with the within case.  I have reviewed and am

generally familiar with the Debtor's operations, including its operation of the Williamsburg

Hotel (the "<u>Hotel</u>"), and the Debtor's related financial records, agreements and other related

documents.  Except as otherwise indicated herein, all facts set forth in this Declaration are based

upon my personal knowledge of the Debtor's operations and finances, information learned from

my review of relevant documents, information supplied to me by members of the Hotel's

management team and other professional advisors, or my view based upon my experience and

knowledge of the Debtor and its operations and financial condition.

3.      I have reviewed Mr. Huebscher's declaration filed in connection with its resolved

Motion for Extension of Time to Complete Examiner Report [Docket Nos. 315 & 316], and

respectfully submit the within declaration to clarify certain misleading and/or erroneous

statements.  While the Debtor has no objection and consented to the extension of time requested,

the Huebscher declaration contains false and misleading statements and discusses topics and conclusions relating to his examination prior to completion of his report.

4.      As an initial matter, the Debtor remains extremely concerned with the ballooning scope and costs of Mr. Huebscher's examination, in particular given that that the Debtor is a modest sized company with limited back office working tirelessly to restructure the business, and who must bear the costs of such review.  The Debtor is also concerned Mr. Huebscher has an agenda, which is namely to increase the budget and drag things out.  Mr. Huebscher continues to move the goal posts, and expand the nature, scope, and timing of the examination, all of which increase the costs.

5.      Further, Mr. Huebscher misleadingly suggests that the Debtor hasn't complied with his requests, disregarding the substantial production to date, conflates the Debtor with non-debtor entities, and paints with a broad brush claiming that actions by non-debtor are acts by Debtor.  Of course, the non-debtors are not in bankruptcy.  Each of the non-debtor's and other third parties are separate entities, with separate corporate structures, and independent counsel. Certain non-debtors are represented by Faegre Drinker Biddle & Reath; the management company, Davidoff Hutcher & Citron; the Mezz Lender, Kasowitz Benson; and the Chief Restructuring Officer,  Cullen and Dykman.

6.      In addition, despite Mr. Huebscher's statements, the Debtor (and non-debtor third parties) have produced over ten thousand pages of documents and complied with his requests to produce all bank statements known and available to the Debtor, including about 35 bank accounts, from companies that are mostly unrelated to the Debtor or its operations.  In addition, the Debtor has provided a full and complete repot of all transfers/loans/revenue of the Debtor, in

2

a 500 page report with annotations detailing transfers, with full back up, and several

supplemental productions.[1]

    7.    More particularly, Mr. Huebscher first contends that the bank statements were not

provided and/or are deficient.  This is patently false.  In addition to the thousands of pages of

documents the Debtor previously produced (covering virtually all of accounts requests), on

Friday, January 14, 2022, the Debtor and non-debtors produced non-redacted bank statements

from 33 bank accounts, identified by bank and the last four digits of each respective account

number:

| Bank of America | Chase |
|---|---|
| - 4102 | - 2297 |
| - 5758 | - 7255 |
| - 5246 | - 2128 |
| - 0696 | - 3138 |
| - 5051 | - 7387 |
| - 9641 | - 8878 |
| - 4076 | - 7071 |
| - 0588 | - 1379 |
| - 9625 | - 8898 |
| - 4662 | - 1798 |
| - 4483 | - 3509 |
| - 3283 | - 0988 |
| - 4421 | - 2699 |
| - 2536 | |
| - 4470 | |
| - 6409 | |
| - 6729 | |
| - 9138 | |
| - 4400 | |
| - 3162 | |

---

[1]  Contrary to Mr. Huebscher's contentions, consistent with the Examiner Order, the Debtor in consultation with the CRO, sought clarification regarding the scope of the examination and to limit or quash subpoenas relating to the expansive large-scale examination of years of records of non-debtors.  While Mr. Huebscher posits that his powers are unlimited, the Examiner Order permits any party to come back to the court to address any issues under the order, including, as relating to the scope of the appointment.  The Debtor did just that, which was designed to prevent the increase of costs, and a distraction to the reorganization efforts, when the Debtor's with limited staff are getting out claims' objections and moving to finalize confirmation of the Plan -- which would pay all creditors in full over time. Irrespective, to address Mr. Huebscher's concern regarding timing as relating to receiving the bank information, the Debtor agreed to a two week extension of time to complete his report

8.     This production which included approximately six thousand (6,000) pages,
constitutes everything the Debtor (and the non-debtors) could locate after conducting a thorough
review of their respective records.  The documents were provided with a covering letter and
annotated grids which checked off the all of the accounts requested.  The only accounts not
provided were such accounts that did not belong to the Debtor, such as one account of a hotel
employee, an account of the CRO, an account of a title company, and such others as explained
below.

9.     Subsequently, Mr. Huebscher requested additional months of records, while the
Debtor has no objection with such, (assuming the exam has reasonable limits in duration and
costs), these were not part of the date ranges on the original grids, and consequently, could not
have been produced.

10.    Regarding the non-debtors, Mr. Huebscher takes issue with certain bank accounts
that were "not" produced.  However, as an initial matter, none of these are Debtor accounts -  -
which have all been provided through the date ranges requested.  Moreover, the only accounts
not provided in the last production relate to accounts that don't exist or are not owned/controlled
by the debtor or non-debtors (or subject to new requests).

11.    For example, regarding account 0959 –  there is no such account.  The number
0959 is just an internal bank reference in the bank's wiring information in one of the wires sent
by the Debtor.  However, Mr. Huebscher states that there is an account ending with 0959, in
falsely claiming that the account has not been provided.

12.    With regard to account 0092 -  this is a bank account at First  Nationwide Title
Agency, a title company,  and not a Debtor or non-debtor bank account.  The title company held
non-debtor funds required to be delivered as part of the closing of the loan with Benefit Street in

4

2017.  While Mr. Huebscher should review the transaction if he believes it relevant, the Debtor
(or non-debtors) do not control or hold such account and cannot provide account statements for
accounts that don't belong to it.

13.     Re accounts 3162 and 4400, these are management company accounts that had
limited activity and were not listed on the original grids.  The account statements for the relevant
periods were provided with the other account statements provided pursuant to the document
production on January 14, 2022.

14.     Mr. Huebscher also continues to demand production of other accounts that are not
owned/controlled by either the Debtor or non-debtor third parties.  One relates to a company
owned by David Goldwasser, the CRO.  The other one being a personal bank account of an hotel
employee, Miriam Gross, and others accounts for the Mezz Lender.  Mr. Huebscher repeatedly
declares that Debtor is not providing these accounts.  However, these are all not Debtor accounts
(nor non-debtor accounts), and consequently, the Debtor has no control over such accounts, and
any production would need to be addressed to such parties directly.  Further, as discussed above,
Mr. Huebscher argues for more time and additional fees to complete his review, grounded in
these false arguments that the Debtor has not been cooperating in producing accounts which
don't exist or which are owned by others.

15.     With respect to the tax returns,  despite Mr. Huebscher statements, he was advised
that the Debtor filed for only its most recent calendar year.  The Debtor previously provided the
tax return to Mr. Huebscher, which was its federal return for 2020.  In addition, the copy of the
tax return provided was unsigned because they were electronically filed, which would not
contain physical signatures.  The electronic copy is all the Debtor has.  Notwithstanding, the
Debtor requested a call with respective counsel for Mr. Huebscher and Debtor's counsel to

5

discuss any open issues with respect to such, and has no issue providing a written certification

confirming that the return is a true and accurate copy (and if necessary can request such from the

IRS).

16.     In addition, Mr. Huebscher also raises issue that the Debtor's didn't have written

documentation confirming the closing of respective bank accounts and that it took too long to

obtain confirmations from the third party banks regarding such.  However, the banks do not

provide a receipt upon closing an account.  In addition, obtaining the third party confirmations,

from scores of accounts dating back years, required assistance from the third party banks over

the holidays and year end.  Notwithstanding, the Debtor has been working with the respective

banks to confirm open/close dates, and has already provided such documentation from the banks.

17.     In this regard, on Friday, January 21, 2022, the Debtor provided Mr. Huebscher a

break down received from the respective banks, Bank of America and JP Morgan Chase,

regarding such.  The open/close dates provided by the banks generally covered confirmation for

accounts opened/closed during the requested date range from 2017 to 2020, over a four-year

period leading up to the bankruptcy filing.  This confirms that no other statements exist in the

requested range.  However, now that Debtor has provided the proof of opening/closing bank

account,  Mr. Huebscher is now requesting additional bank information to confirm open/close

dates for every single Debtor and non-debtor account irrespective of whether it was opened years

prior or after a respective date range requested.  No explanation was provided by Mr. Huebscher

as to the relevance of when accounts where opened, if it is years prior to the review, and is

another example of arbitrary, time consuming and overreaching demands the examiner is

making.

6

18.    Another example of misleading statements made by the examiner is claimed
online links that do not exist.  The examiner keeps insisting that there is an online link between
the Debtor related accounts, and the accounts of the CRO.  As well, the examiner falsely claims
that there is an online link between the Debtor related accounts, and the personal account of
Miriam Gross, an employee of the hotel.  These statements are erroneous, made without any
basis -- and the examiner is using these false claims to expand his examination to non-debtor at
substantial costs and delay to the Debtor.

19.    Regarding meetings, I have (as has Mr. Rauch) offered repeatedly to meet with
Mr. Huebscher.  However, Mr. Huebscher continues to expand the scope of information sought,
and then delay these meetings pending completion of the ever expanding scope of review.  For
example, Mr. Huebscher sent an email Saturday, January 22, 2022, demanding that the hotel
management team assemble a series of reports for him, and announcing that he will not meet
with me, if the reports are not provided.  While the Debtor is assembling the information, this is
indicative of the moving goalposts.

20.    Now that the deadline of submitting the examiner report is coming up, Mr.
Huebscher is now asking for various reports from the Debtor.  However, in order to claim that he
cannot complete the report, he is attempting to make these reports the responsibility of the
Debtor, and now he can claim to the Court that he cannot complete his report on time, because
the Debtor is delaying him by not providing reports – such reports which should have been made
by the examiner 2 months ago, instead of the examiner reviewing tangential and unrelated
matters.  In addition, Mr. Huebscher, has been using his office to create a hostile work
environment amongst the Hotel employees, all in the name of its court mandate, which is

7

extremely demoralizing to the employees, and by extension is detrimental to the value of the hotel, which is the single asset of the Debtor.

21.    In summary, the Debtor is extremely concerned with the expanding scope and costs of Mr. Huebscher's examination, as he seeks to delay meetings, makes misleading and/or false statements, creates new demands, while he expands the nature and scope of the review, and increases his costs.   In addition, the Debtor is concerned Mr. Huebscher is biased and came in with a negative and critical opinion. In any case, Mr. Huebscher has an agenda, which is namely to increase the budget and drag things out. It does not matter how this came about, but these are the facts.  The Debtor has already provided a detailed report which shows all revenues/transfers of the Debtor, in great detail, and shows that significantly more moneys have been advanced to the Debtor then repaid.  This has been backed up by a review by Getzler Henrich.  Whatever critical report will come from the examiner will be reviewed by other experts, and the Debtor is certain that its report will stand as the true one.

22.    At the same time, it is  critical for the business that the Debtor move forward with its restructuring, which provides 100% payment over time to all creditors, including closing on its exit financing in advance of the start of the all-important spring travel and event season, to preserve and maximize the value of the Hotel. As such, it is important that the examiner complete his report, and submit it in time for the February 11th deadline without any further extensions.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed on the 26th day of January, 2022.

_____
Michael Lichtenstein

8