**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

**BACKENROTH FRANKEL &
KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Plaintiff*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No.: 21-22108 (RDD) |
| 96 WYTHE ACQUISITION LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>STATE NATIONAL INSURANCE COMPANY,<br>RLI INSURANCE COMPANY, GERSON<br>MENCIA, WILLIAM LEWIS, JUAN L.<br>RAMIREZ, CARMEN NINA RAMIREZ and<br>GRANDFIELD REALTY CORP.,<br><br>        Defendants. | Adv. Pro. No.: 22-_____ |

## ADVERSARY PROCEEDING COMPLAINT

96 Wythe Acquisition LLC, the above-captioned debtor and debtor in possession (the "Debtor" or the "Plaintiff" ), by its undersigned attorneys, Mayer Brown LLP and Backenroth, Frankel & Krinsky, LLP, submits this Complaint (the "Complaint") against Defendants STATE NATIONAL INSURANCE COMPANY ("SNIC") and RLI INSURANCE COMPANY ("RLI") (collectively, "Insurance Defendants"), and against interested parties GERSON MENCIA, WILLIAM LEWIS, JUAN L. RAMIREZ, CARMEN NINA RAMIREZ and GRANDFIELD REALTY CORP. (collectively "Underlying Plaintiffs") (with service upon counsel for the Underlying Plaintiffs), and allege as follows and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against SNIC and RLI to resolve insurance coverage disputes arising out of underlying bodily injury actions described below ("the Personal Injury Actions") and one (1) property damage action ("the Grandfield Action" and with the Personal Injury Actions, "the Underlying Actions") stemming from the construction of a building, the Williamsburg Hotel, located at 96 Wythe Avenue, Brooklyn, New York.

2.      The Personal Injury Actions for which Plaintiff is seeking coverage are (i) *Juan L. and Carmen Nina Ramirez v. The Williamsburg Hotel BK LLC*, et al., Supreme Court/Kings County - Index No. 514500/2017 (the "Ramirez Action"); (ii) *Gerson Mencia v. 96 Wythe Acquisition LLC, et al*, Supreme Court/Kings County – Index No. 513214/2016 (the "Mencia Action"); and (iii) William Lewis v. 96 Wythe Acquisition LLC, Supreme Court/Bronx County – Index No. 23716/2015E (the "Lewis Action").

3.      The Grandfield Action for which Plaintiff is seeking coverage is *Grandfield v. 96 Wythe Acquisition LLC, et al*, Supreme Court/Kings County - Index No. 507323/2014.

2

4.      Plaintiff is seeking a declaration of the Insurance Defendants' coverage obligations under a primary insurance policy issued by SNIC, Policy No. PUG1200249, effective 9/28/2012 – 9/28/2015 (the "SNIC Policy") and an excess insurance policy issued by RLI, Policy No. RLX021775, effective 11/30/12 - 11/30/15 (the "RLI Policy", and with the SNIC Policy, the "Policies"), under which Plaintiff and Dimyon Development Corp. ("Dimyon") are named insureds.

5.      Specifically, Plaintiff seeks a declaration that there is coverage for the Plaintiff and Dimyon in the Underlying Actions under the terms, conditions, exclusions and endorsements of the Policies.

6.      Upon information and belief, SNIC and RLI dispute Plaintiff's position that SNIC and RLI must indemnify the Plaintiff and Dimyon in the Underlying Actions pursuant to the Policies.

7.      Upon information and belief, SNIC is and has been providing a defense to the Plaintiff in the Underlying Actions and has paid out settlements in other actions under the Primary Policy.  As will be set forth below, in July 2020, SNIC reserved its right to disclaim coverage of the Underlying Actions based upon the Primary Policy's Designated Project Coverage Endorsement #17, which identifies the location of the project and includes therein a description of the project as "[t]he demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at: 96 Wythe Avenue Brooklyn, NY 11211." According to SNIC's July 29, 2020 reservation of rights letter, "[d]iscovery has revealed the project located at 96 Wythe Avenue in Brooklyn was for the construction of a 10-story building."

8.      Upon information and belief RLI disclaimed coverage of the Underlying Actions based upon the same "Designated Project Endorsement" and based upon a similar provision

3

contained in the RLI Policy, the "Designated Premises And/Or Projects Limitation," also claiming in 2020 that the building is more than seven (7) stories high.

9.      Insurance Defendants' reliance on the "Designated Project Coverage Endorsement and the "Designated Premises And/Or Projects Limitation" is misplaced and the disclaimers based on those policy provisions are erroneous and untimely.

10.     Upon information and belief RLI also disclaimed coverage of the Grandfield Action based on alleged late notice.

11.     RLI's disclaimer based on late notice is erroneous.

12.     Upon information and belief, this action will resolve these and other issues pertaining to (i) Insurance Defendants' obligations to provide insurance coverage to Plaintiff under the Policies and (ii) proofs of claim filed in the Debtor's Chapter 11 proceeding relating to both the Grandfield Action and the Mencia Action that are subject to claim objections and motions seeking estimation of such claims filed by the Debtor, discussed in more detail below.

## JURISDICTION AND VENUE

13.     This Adversary Proceeding arises in and relates to the Plaintiff's case pending before this Court under chapter 11 of the Bankruptcy Code (the "Case").

14.     This Adversary Proceeding is brought pursuant to 11 U.S.C. § 541 and Rules 7001(1) and 7001(9) of the Federal Rules of Bankruptcy Procedure to obtain a declaratory judgment regarding coverage and the recovery of the proceeds of Policies, which constitute property of the Debtor's estate.

15.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Plaintiff confirms its consent, pursuant to Bankruptcy Rule 7008, to entry of a final order by the Court.

4

16.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

17.     At all relevant times, the Plaintiff was and still is a domestic limited liability company that is duly authorized to do business in the State of New York, with a headquarters and principal place of business located in Brooklyn, New York 11249.

18.     At all relevant times, the Plaintiff was and still is the owner of The Williamsburg Hotel and real property located at 96 Wythe Avenue, Brooklyn, New York 11249.

19.     The Plaintiff and Dimyon are named insureds under the Policies.

20.     Defendant SNIC is an insurance company, duly licensed to issue insurance policies in the State of New York, with its office and principal place of business located in Bedford, Texas.

21.     Defendant RLI is a specialty insurance company organized under the laws of the State of Illinois with its principal place of business at 9025 North Lindbergh Drive, Peoria, Illinois 61615. RLI has multiple offices in New York City.

22.     Gerson Mencia ("Mencia") is a plaintiff in the Underlying Personal Injury Action *Gerson Mencia v. 96 Wythe Acquisition LLC, et al*, Supreme Court/Kings County, Index No. 513214/2016

23.     William Lewis ("Lewis") is a plaintiff in the Underlying Personal Injury Action *William Lewis v. 96 Wythe Acquisition LLC*, Supreme Court/Bronx County, Index No. 23716/2015E.

24.     Juan L. Ramirez ("Ramirez") and Carmen Nina Ramirez are plaintiffs in the Underlying Personal Injury Action *Juan L. and Carmen Nina Ramirez v. The Williamsburg Hotel BK LLC, et al.*, Supreme Court/Kings County - Index No. 514500/2017.

5

25.     Grandfield Realty Corp. ("Grandfield") is a plaintiff in the Underlying Grandfield Property Damage Action *Grandfield v. 96 Wythe Acquisition LLC, et al*, Supreme Court/Kings County - Index No. 507323/2014.

## FACTUAL BACKGROUND

26.     This action relates to liability insurance coverage and indemnity for lawsuits stemming from and arising in the context of the construction of the Williamsburg Hotel in Brooklyn, New York.

27.     The Plaintiff is a New York corporation and was formed in 2014 to purchase the premises at 96 Wythe Avenue, Brooklyn, New York to construct a 7-story hotel on it (the "Project").

28.     Dimyon, a New York corporation that performs construction services, was retained as the general contractor for the Project.

29.     The Project was originally scheduled to involve a construction of a 7-story hotel, with 5 guest room stories and a mechanical floor and parking, but was increased to include a hotel support floor below the guest rooms, a roof deck and water tower, at the same location, with the same number of guest room stories, the same number of rooms, and with the permission of the NYC Department of Buildings.

30.     The Project has been at the same height and number of floors since 2014, when the structure was completed. While interior construction continued thereafter, the height and size of the Project has been visible to any person, including inspectors on behalf of the Insurance Defendants and in any photos of the Project since 2014.

31.     The Project was completed and the hotel opened in December, 2016.

## I.     THE UNDERLYING ACTIONS

### A.     The Ramirez Action

32.     Juan Ramirez ("Ramirez") alleges that while using a grinder, he fell between 16" and 36" from a secondary (higher) scaffold platform to a lower primary platform in a construction related accident on August 21, 2016 and sustained bodily injury, while being employed at the Project.

33.     The claimed damages were not the result of additional building height or additional floors.

34.     Ramirez alleges liability under Labor Law §§ 200, 240(1) and 241(6) and general negligence.

35.     Carmen Nina Ramirez asserts loss of services in a derivative action.

36.     The Plaintiff and Dimyon are being defended by counsel assigned and paid for by SNIC.

37.     The Plaintiff notified its broker for the Policies at the inception of the claim in order to place RLI and SNIC on notice.

38.     Ramirez and the Debtor entered into a stipulation that was approved by this Court, wherein, among other things, Ramirez was granted limited relief from the automatic stay and Ramirez waived any claims against the Debtor's estate and agreed to seek recovery solely from available proceeds under the Policies. [Dkt. No. 120].

### B.     The Lewis Action

39.     Lewis alleges that, on November 5, 2014, while performing work loading beams at a worksite located at 96 Wythe Avenue, Brooklyn, New York, a beam fell on his toes in a construction related accident causing bodily injury.

40.     The Lewis's accident was not the result of additional building height or additional floor.

41.     Lewis alleges liability under Labor Law §§ 200, 240(1) and 241(6) and general negligence

42.     The Plaintiff and Dimyon are being defended by counsel assigned and paid for by Liberty Mutual Insurance Company, the insurance carrier for Lewis's employer All Island Masonry & Concrete.

43.     Lewis and the Debtor entered into a stipulation that was approved by this Court, wherein, among other things, Lewis was granted limited relief from the automatic stay to pursue the Lewis Action and Lewis waived any claims against the Debtor's estate and agreed to seek recovery solely from available proceeds under the Policies. [Dkt. No. 220].

**C.     The Mencia Action**

44.     Mencia alleges that, on September 18, 2015, he fell from a ladder onto the floor in a construction related accident at a worksite located at 96 Wythe Avenue, Brooklyn, New York and sustained bodily injury.

45.     The claimed damages (which are subject to dispute) were not the result of the additional building height or additional floors.

46.     Mencia alleges liability under Labor Law §§ 200, 240(1) and 241(6) and general negligence.

47.     The Plaintiff and Dimyon are being defended by counsel assigned and paid for by SNIC.

48.     The Plaintiff notified its broker for the Policies at the inception of the claim in order to place RLI and SNIC on notice.

D.      **The Grandfield Action**

49.      Grandfield is an owner of a neighboring property, and alleges that the Plaintiff excavated beneath Grandfield's property and improperly installed underpinning causing damage to Grandfield's property.

50.      In pertinent part, among other claims, Grandfield alleges negligence, trespass and nuisance.

51.      The claimed damages (which are subject to dispute) did not occur as a result of additional building height or additional floors.

52.      The Plaintiff notified its broker for the Policies at the inception of the claim in order to place RLI and SNIC on notice.

53.      The Plaintiff and Dimyon are being defended by counsel assigned and paid for by SNIC.

II.      **THE INSURANCE POLICIES**

A.      **The SNIC Insurance Policy**

54.      The Plaintiff purchased the SNIC Policy, a general liability insurance policy, from SNIC, with policy effective dates of 9/28/12-9/28/15 and a limit of liability of $1,000,000 for each occurrence.

55.      The Plaintiff is a named insured under the SNIC Policy.

56.      Dimyon is a named insured under the SNIC Policy, by amendment.

57.      The SNIC Policy provides: "We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies."  *See* **Exhibit A**.

58.      The SNIC Policy provides:

9

## ENDORSEMENT #17

## DESIGNATED PROJECT COVERAGE

Notwithstanding anything to the contrary hereunder, such coverage as provided by this policy will only apply to the construction project being performed at the following location:

The demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at:

96 Wythe Avenue
Brooklyn, NY 11211

Premium shall be deemed fully earned at the conclusion of the project. *Id.*

59.     All premiums owed for the SNIC Policy have been paid and accepted.

**B.     The RLI Insurance Policy**

60.     The Plaintiff purchased the RLI Policy, an excess liability insurance policy from RLI, Policy No. RXL0261775, with policy effective dates of 11/30/12-11/30/15 and a limit of liability of $10,000,000 for each occurrence.

> This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

*See* **Exhibit B**.

61.     The RLI Policy also provides:

> Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's ultimate net loss if such loss results from an occurrence insured by underlying insurance.

*Id.*

62.     Under "DESIGNATED PREMISES AND/OR PROJECTS LIMITAITON," the RLI Policy provides:

> As respects premises owned, maintained or used by the insured or projects performed by or on behalf of the insured, this insurance

10

applies only to bodily injury, property damage, personal injury and
advertising injury arising out of:

    1.   The ownership, maintenance or use of the premises shown
in the Schedule below and operations necessary or
incidental to those premises; or

    2.   The project shown in the Schedule.

**SCHEDULE**

Premises:

Project:

Ground up construction of a 7-story, 130 room hotel located
at 96 Wythe Avenue, Brooklyn, NY.

*Id*.

63.      All premiums for the RLI Policy have been paid and accepted.

64.      Upon information and belief, representatives of RLI have visited the site numerous

times and taken photos showing the exact height and number of floors.

### III.   <u>SNIC'S IMPROPER DENIAL OF COVERAGE</u>

65.      By reservation of rights letter dated July 29, 2020 (the "<u>July 29 ROR</u>") from SNIC's

counsel, Rubin, Fiorella, Friedman & Mercante LLP, SNIC provided a reservation of rights with

respect to the Underlying Personal Injury Actions of Ramirez and Mencia.

66.      The July 29 ROR advised that "[d]iscovery has revealed the project located at 96

Wythe Avenue in Brooklyn was for the construction of a 10-story building."  *See* **Exhibit C**.

67.      The July 29 ROR also advised that SNIC is defending both the Plaintiff and

Dimyon in those matters and will continue to do so pending resolution of the same.  *Id*.

68.      The July 29 ROR further advised that "with respect to the aggregate, there remains

$1.5M remaining because of prior indemnity payments."  *Id*.

69.      The July 29 ROR also advised that SNIC reserves the right to disclaim any indemnity obligation for any claims including Ramirez and Mencia, arising out of the Project "to the extent it is determined that the project was not for the construction of a 7 story, one hundred fifty-five (155) room hotel." *Id*.

70.      By reservation of rights letter dated October 20, 2014 (the "October 20 ROR", and with the July 29 ROR, the "SNIC ROR's") from SNIC's attorneys Farber Brocks & Zane, LLP, SNIC offered to provide a defense in the Grandfield Action to the Plaintiff, Dimyon and other members, officers, directors or employees, subject to a reservation of rights, pending further investigation and subject to SNIC's continuing investigation. *See* **Exhibit D**.

71.      The SNIC ROR's are based on inaccurate information.

72.      The SNIC ROR's are based on a misinterpretation of the SNIC Policy.

73.      SNIC's unreasonable delay vitiates any disclaimer by SNIC.

74.      The SNIC ROR's do not serve as a disclaimer or denial of coverage.

75.      SNIC has wrongfully refused to acknowledge that it has an obligation to indemnify the Plaintiff and Dimyon in the Underlying Actions.

76.      As a result, a justiciable controversy exists between SNIC on the one hand and the Plaintiff and Dimyon on the other hand, concerning the rights under the terms and conditions of the SNIC Policy with regard to coverage for the Plaintiff and Dimyon in the Underlying Actions.

77.      Plaintiff has no adequate remedy at law.

## IV.     RLI'S IMPROPER DENIAL OF COVERAGE

78.      By reservation of rights letter dated October 7, 2016 (the "October 7 ROR"), RLI reserved its rights to deny coverage of the   Lewis Action, citing numerous policy provisions including the Designated Premises And/Or Projects Limitation.

79.    By reservation of rights letter dated August 21, 2016 (the "August 21 ROR"), RLI reserved its rights to deny coverage of the Ramirez Underlying Personal Injury Action, citing numerous policy provisions including the Designated Premises And/Or Projects Limitation.

80.    By reservation of rights letter dated September 14, 2017 (the "September 14 ROR"), RLI reserved its rights to deny coverage of the Ramirez Underlying Personal Injury Action, citing numerous policy provisions including the Designated Premises And/Or Projects Limitation. *See* **Exhibit E**.

81.    By reservation of rights letter dated August 29, 2018 (the "August 29 ROR", and, with the October 7 ROR, the August 21 ROR and the September 14 ROR, the "RLI ROR's"), RLI reserved all rights to deny coverage of the Ramirez Underlying Personal Injury Action, citing numerous policy provisions including the Designated Premises And/Or Projects Limitation and further advised that RLI disclaims to the extent the Project was not the ground up construction of a 7-story, 130 room hotel and that RLI also disclaims coverage to the extent the accident occurred above 7 stories. *See* **Exhibit F**.

82.    By a subsequent letter dated April 22, 2020 (the "Ramirez Disclaimer Letter"), RLI disclaimed coverage of the Ramirez Underlying Personal Injury Action, stating:

> On March 24, 2020, RLI was provided with the deposition transcript of the plaintiff. In describing his accident, the plaintiff testified that has [sic] was on the exterior scaffold on the eighth floor of 96 Wythe Avenue, Brooklyn, NY when his accident occurred.

*See* **Exhibit G**.

83.    The Ramirez Disclaimer Letter further stated: "Based upon this new information it is RLI's position that there is no coverage available" for 96 Wythe, Dimyon and other parties for the Ramirez action. *Id*.

84.     By letter dated July 22, 2020 (the "Mencia Disclaimer Letter"), RLI disclaimed coverage of the Mencia Underlying Personal Injury Action, stating: "We have recently learned that the project located at 96 Wythe Avenue in Brooklyn was for the construction of a 10-story building. Based upon this new information it is RLI Insurance Company's ("RLI") position that there is no coverage available" for Plaintiff, Dimyon or any other party for the Mencia Action.  *See* **Exhibit H**.

85.     The RLI ROR's, the Ramirez Disclaimer Letter and the Mencia Disclaimer Letter are based on inaccurate information.

86.     The RLI ROR's, the Ramirez Disclaimer Letter and the Mencia Disclaimer Letter are based on a misinterpretation of the RLI policy and of the SNIC policy.

87.     RLI's unreasonable delay vitiates any disclaimers by RLI.

88.     The Ramirez Disclaimer Letter and the Mencia Disclaimer Letter do not serve as a disclaimer or denial of coverage.

89.     By letter dated March 6, 2020, RLI asserted, among other things, that the failure to give prompt written notice of the occurrence, claim and lawsuit in the Grandfield Action is a violation of the RLI Policy's conditions and voids coverage under the RLI Policy.  *See* **Exhibit I**.

90.     By letters to each of SNIC and RLI dated November 5, 2021, followed by second letters dated December 28, 2021, the Debtor disputed the Insurers' attempts to disclaim coverage and reserve rights.

91.     RLI does not assert that it has been prejudiced by the alleged late notice of the Grandfield Claim  or that ability of the RLI to investigate or defend the claim has been impaired.

92.     Upon information and belief, RLI's ability to investigate or defend the Grandfield Claim has in no way been impaired.

93.     RLI has wrongfully refused to acknowledge that it has an obligation to indemnify the Plaintiff and Dimyon in the Underlying Actions.

94.     As a result, a justiciable controversy exists between RLI on the one hand and the Plaintiff and Dimyon on the other hand, concerning the rights under the terms and conditions of the RLI Policy with regard to coverage for the Plaintiff and Dimyon in the Underlying actions.  Plaintiff as no adequate remedy at law.[1]

## V.     THE BANKRUPTCY PROCEEDINGS

### A.     General

95.     On February 23, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code initiating the Case. The Debtor continues to operate its business and manage its properties as debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### B.     The Debtor's Chapter 11 Plan

96.     On September 20, 2021, the Debtor filed its Chapter 11 Plan of Reorganization [Dkt. No. 115], which was followed by the filing of its Second Amended Plan dated November 24, 2021 [Dkt. No. 196] (the "Plan") and related disclosure statement.  On December 1, 2021, the Court entered an order approving the Debtor's third amended disclosure statement [Dkt. No. 204] (the "Disclosure Statement").  Subsequent Plan confirmation scheduling orders have been entered and a hearing on confirmation of the Plan is scheduled for April 7, 2022, at 10:00 a.m.

---

[1] The Debtor had filed a proceeding against the Insurers in state court, however, due to the exigencies of having the insurance disputes addressed in connection with claim estimation for Plan purposes, the Debtor determined the best course of action was to file an adversary proceeding complaint in this case.

C.    **The Mencia Claim and the Grandfield Claim**

97.    By order dated June 2, 2021 [Docket No. 41], the Court initially fixed July 15, 2021 as the last day by which general creditors would be permitted to file claims in the Case and by supplemental order dated November 5, 2021 [Docket No. 177], the Court fixed December 15, 2021 as the last day by which general creditors would be permitted to file claims in the Case.

98.    On May 20, 2021, Grandfield filed a claim (Claim No. 5) in the amount of $7,904,641.28, for claims arising from the Grandfield Action (the "Grandfield Claim").

99.    On December 27, 2021 the Debtor filed a combined objection seeking to disallow and expunge  the Grandfield Claim and motion to estimate the Grandfield Claim at $0 [Dkt. No. 247] (the "Grandfield Claim Objection").  The Grandfield Claim Objection, among other things, sets forth the basis for disallowing the Grandfield Claim, including Grandfield's failure to support its allegations, claims and damages and that any damages were pre-existing and/or not caused by the Debtor.  And like the Mencia Claim, even if liability against the Debtor were to be established, insurance coverage under the Policies are available.  For these reasons, the Debtor believes whatever amount of the Grandfield Claim is determined to be valid will be covered under the Policies, without the need for Grandfield to hold a direct claim against the Debtor's bankruptcy estate.

100.    On January 24, 2022 Grandfield filed an Opposition (the "Grandfield Opposition Motion") [Docket No 343].  A hearing to consider the Grandfield Claim Objection and Opposition Motion is scheduled for April 7, 2021.

101.     On May 25, 2021, Mencia filed a claim (Claim No. 6) in the amount of $8,000,000 for claims arising from the Mencia Action (the "Mencia Claim").

102.    On December 23, 2021, the Debtor filed a combined objection seeking to disallow and expunge  the Mencia Claim and motion to estimate the Mencia Claim at $0 [Dkt. No. 248] (the

"Mencia Claim Objection").  The Mencia Claim Objection, among other things, (i) sets forth the basis for disallowing the Mencia Claim, including that the Debtor and Dimyon can establish the equipment supplied to Mencia was sound but in any event were not provided by the Debtor or Dimyon and that the vast majority of Mencia's claimed damages are not related to the purported injury and (ii) sets forth the basis for estimating the Mencia Claim at $0, where, even if liability against the Debtor were to be established, there are many potential sources of recovery available without having to resort to a direct claim against the Debtor, including monthly workers' compensation payments, the subcontractor, and, most critically, insurance coverage under the Policies.  For these reasons, the Debtor believes whatever amount of the Mencia Claim is determined to be valid will be covered under the Policies, without the need for Mencia to hold a direct claim against the Debtor's bankruptcy estate

103.    On January 19, 2022, Mencia filed an *Opposition to the Motion by the Debtor Objecting to Claim No. 6 Filed by Gerson Mencia and for an Order Seeking to Estimate the Claim* (the "Mencia Opposition Motion") [Docket No 320].  A hearing to consider the Mencia Claim Objection and Opposition Motion is scheduled for April 7, 2021.

## CLAIMS FOR RELIEF

### First Cause of Action
### (Breach of Contract and Declaratory Judgment Against SNIC)

104.    The Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

105.    The SNIC Policy constitutes a binding contract.

106.    The Plaintiff has complied with all terms and conditions contained in the SNIC Policy.

107.    The Plaintiff has demanded SNIC's performance under the SNIC Policy.

108.    Under the terms of the SNIC Policy, SNIC is obligated to provide insurance coverage, including indemnity coverage, for any liability imposed against the Plaintiff in the Underlying Actions, subject only to the SNIC Policy's limits of liability.

109.    SNIC has indicated it may refuse to provide coverage to the Plaintiff in breach of its obligations under the SNIC Policy.

110.    As a direct and proximate result of SNIC's breach, the Plaintiff has incurred, and is likely to incur in the future, substantial actual costs and damages, and such costs are continuing.

111.    As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and SNIC regarding SNIC's obligations to provide indemnification to the Plaintiff in connection with the Underlying Actions, subject only to the SNIC Policy's limits of liability.

112.    The Plaintiff seeks a declaration and order that the SNIC Policy provides coverage for the Underlying Actions, subject only to the SNIC Policy's limits of liability.

## SECOND CAUSE OF ACTION
### (Breach of Contract and Declaratory Judgment Against RLI)

113.    The Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

114.    The RLI Policy constitutes a binding contract.

115.    The Plaintiff has complied with all terms and conditions contained in the RLI Policy.

116.    The Plaintiff has demanded RLI's performance under the RLI Policy.

117.    Under the terms of the RLI Policy, RLI is obligated to provide insurance coverage for any liability imposed against the Plaintiff in the Underlying Actions, subject only to the RLI Policy's limits of liability.

18

118.    RLI has wrongly declined to provide coverage to the Plaintiff in breach of its obligations under the RLI Policy.

119.    As a direct and proximate result of RLI's breach, the Plaintiff has incurred, and is likely in the future to incur, substantial actual costs and damages, and such costs are continuing.

120.    As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and RLI regarding RLI's obligations to provide indemnification to the Plaintiff in connection with the Underlying Actions, subject only to the RLI Policy's limits of liability.

121.    The Plaintiff seeks a declaration and order that the RLI Policy provides coverage for the Underlying Actions, subject only to RLI Policy limits of liability and that RLI thus has an obligation to pay any and all losses suffered, or to be suffered.

## PRAYER FOR RELIEF

**WHEREFORE**, The Plaintiff respectfully requests that this Court grant relief in their favor entering a declaration and order that the SNIC Policy provides coverage for the Underlying Actions and that the RLI Policy provides coverage for the Underlying Actions, along with any other relief the Court deems just and proper.

Dated:  March 23, 2022
        New York, New York

Respectfully submitted,

By:  */s/ Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910
Email: dspelfogel@mayerbrown.com
        leisenberg@mayerbrown.com
        dchung@mayerbrown.com

Mark Frankel
**BACKENROTH FRANKEL
& KRINSKY, LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Plaintiff*

**<u>EXHIBIT A</u>**



# PRIME SPECIALTY

28 West 44th Street
Suite 720
New York, NY 10036

---

Dear Policyholder:

We are pleased to enclose your Commercial General Liability Policy as bound with State National Insurance Company through our underwriting agency, Prime Specialty, Inc.  Please review it carefully.

In the event of a claim that may be covered under this policy, please forward all information pertaining to said incident to:

National Claim Services, Inc.
PO Box 500698 (31150)
1301 Hightower Trail
Suite 210
Atlanta, GA 30350

Attention:   Henrietta Dyer, Vice President
Phone:       800-424-0132
Fax:         770-670-4070
Email:       **hdyer@natlclaim.com**

Please feel free to contact your broker if you should have any questions, comments or concerns about your policy.

Very truly yours,

Kieran Xanthos

Kieran Xanthos

President and Chief Underwriting Officer
Commercial General Liability Dept.

Derek McGuire

Derek McGuire

Vice President
Commercial General Liability Dept.



**PRIME SPECIALTY**

28 West 44th Street
Suite 720
New York, NY 10036

P. 212-685-6000  F. 646-625-3889

In consideration of the payment of the premium, in reliance upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, the Company agrees with the Named Insured as follows:

### COMMERCIAL GENERAL LIABILITY
### (OCCURRENCE FORM)

COMPANY:    STATE NATIONAL INSURANCE COMPANY

### DECLARATIONS

**I.**   **NAMED INSURED:**                              96 Wythe Acquisition LLC and SYG Realties, LLC

**II.**   **NAMED INSURED ADDRESS:**        199 Lee Avenue, PMB 693
Brooklyn, NY 11211

**III.**   **POLICY PERIOD:**                              September 28, 2012 to September 28, 2015
**(Or until end of project, whichever comes first)**
Beginning and ending at 12:01 A.M. Local Standard Time at the address of the Named Insured.

**IV.**   **POLICY NUMBER:**                             PUG1200249

> **NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES
> ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE
> INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST
> MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW
> AND REGULATIONS.

**CLASS CODE:**        2-14000

**V.**  **LIMIT OF LIABILITY:**

| | | |
|---|---|---|
| A. | LIMIT EACH OCCURRENCE: | $1,000,000.00 |
| B. | PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT: | $2,000,000.00 |
| C. | PERSONAL INJURY AND ADVERTISING INJURY LIABILITY LIMIT: | $1,000,000.00 |
| D. | DAMAGE TO PREMISES RENTED TO YOU LIMIT: | $    50,000.00 |
| E. | MEDICAL EXPENSE LIMIT: | $     5,000.00 |
| F. | GENERAL AGGREGATE LIMIT: | $2,000,000.00 |

**VI.**  **DEDUCTIBLE:**                    Not Applicable
**OR**
**SELF-INSURED RETENTION:**    $5,000.00

**VII.**  **PREMIUM AND REPORTING:**
(A)    DEPOSIT PREMIUM:    $136,000.00

(B)    MINIMUM PREMIUM:    $136,000.00

(C)    PREMIUM ADJUSTMENT AND REPORTING:   The premium charged for this policy has been calculated at the rate of $8.50 per $100.00 of hard costs during the Policy Period.  On or before the 30th day following the expiration of this policy, the insured agrees to submit to Prime Specialty, Inc. a report of hard costs during the Policy Period.

Earned Premium will be calculated at the above rate, and any premium in excess of the Deposit Premium shall be immediately due and payable upon furnishing the aforesaid report.  In the event that the Earned Premium is less than the Deposit Premium but more than the Minimum Premium, the Company will return the difference between the Deposit Premium and the Earned Premium.  In the event that the Earned Premium is less than the Minimum Premium, the Minimum Premium will apply and the Company will return the difference (if any) between the Deposit Premium and the Minimum Premium.

(D)    AUDIT:   The insured shall keep an accurate record of hard costs during the Policy Period.  Prime Specialty, Inc. through its authorized representative shall be privileged to inspect the books and records of the insured pertaining to the subject matter of this insurance at all reasonable times during the life of this policy and for twenty four (24) months after the expiration or termination date of this insurance.  Any evasion by the insured in connection with statements shall void such policy and shall be an absolute defense to any suit or action brought under such policy.

(E)    <u>CANCELLATION:</u>  In the event of cancellation, the insured agrees to furnish the company with an accurate statement of <u>hard costs</u> for the period from the attachment date of this policy up to and including the date of cancellation, such statement to be the basis for premium adjustment as provided herein.  Revised Minimum and Deposit Premiums will be calculated as set forth below, and the Earned Premium for the amended Policy Period will be applied against these revised Minimum and Deposit Premiums in accordance with Declaration VII(C).

In the event of cancellation by the Company, the revised Deposit Premium will be calculated by subtracting the pro rata return premium due from the Deposit Premium set forth in Declaration VII(A).  The revised Minimum Premium will be determined by dividing the Minimum Premium set forth in Declaration VII(B) by the Deposit Premium set forth in Declaration VII(A) and multiplying the resultant fraction times the revised Deposit Premium.

In the event of cancellation by the insured, the revised Deposit Premium will be calculated by subtracting the "short-rate return premium" due from the Deposit Premium.  In such event, unless modified by specific endorsement, the revised Minimum Premium will be the same as the revised Deposit Premium.

(F)    <u>DEFINITIONS:</u>

1.    "Gross Receipts" means the gross amount of money charged by the Named Insured for "Your Product" and "Your Work" during the Policy Period, and includes taxes, other than taxes which the Named Insured collects as a separate item and remits directly to a governmental division.

2.    "Payroll" means the total remuneration paid to each employee for services rendered during the policy period excluding executive officers and employees engaged primarily in clerical operations and excluding extra wages paid for overtime.

3.    "Short-rate return premium" shall be defined to mean the amount obtained by multiplying the pro rata return premium times 90%.

**COUNTERSIGNED:  By**
**DATE    <u>October 19, 2012</u>**            **AUTHORIZED REPRESENTATIVE**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc.,  2000

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

  **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

  **(i)** Any insured; or

  **(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

  **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

  **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

  **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

© ISO Properties, Inc., 2000                    □

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C;**

   **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

  **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

  **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

   **(1)** Goods or products made or sold by you in the territory described in **a.** above;

   **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

   **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

         Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.



PRIME SPECIALTY

## <u>COMMON POLICY CONDITIONS</u>

All Coverage Parts included in this policy are subject to the following conditions:

**A.    CANCELLATION**

**1.**    The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.**    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.**    10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.**    30 days before the effective date of cancellation if we cancel for any other reason.

**3.**    We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.**    Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

**5.**    If this policy is canceled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund will be short-rate.  The cancellation will be effective even if we have not made or offered a refund.

**6.**    If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.    CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent.  This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.    EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.    INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

**1.**    Make inspections and surveys at any time;

**2.**    Give you reports on the conditions we find; and

**3.**    Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.  We do not make safety inspections.  We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

**1.**    Are safe or healthful; or

**2.**    Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.    PREMIUMS**

The first Named Insured shown in the Declarations:

**1.**    Is responsible for the payment of all premiums; and

**2.**    Will be the payee for any return premiums we pay.

**F.    TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## <u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>
## <u>NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT</u>
## <u>(Broad Form)</u>

**1.**    The insurance does not apply:

**A.**    Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)**    With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)**    Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.**    Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.**    Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)**    The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

**(2)**    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the "insured"; or

**(3)**    The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.**     As used in this endorsement:   "Hazardous properties" include radioactive, toxic or explosive properties; "Nuclear material" means "source material", "Special nuclear material" or "by-product material"; "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)**     Any "nuclear reactor";

**(b)**     Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

**(c)**     Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)**     Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. "Property damage" includes all forms of radioactive contamination of property.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada where the Company is incorporated or maintains a principal place of business, where the Named Insured is incorporated or maintains a principal place of business or where the cause of action arises.

It is further agreed that service of process in such suit may be made upon the Claim Managers of National Claims Services, Inc.,1301 Hightower Trail, Suite 210, Atlanta, GA 30350, (800) 424-0132, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or by the final decision of the Appellate Court in the event of any appeal.

The Claims Manager of National Claim Services, Inc. is authorized and directed to accept service of process on behalf of the company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the even such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the stature, or his successor or successors in office, as their true and lawful attorney upon who may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of Insurance, and hereby designate the above-named as the person to whom said officer is authorized to mail such process or a true copy thereof.

## ENDORSEMENT #1

## ABSOLUTE MINIMUM PREMIUM
## (25% MINIMUM)

Notwithstanding anything herein to the contrary, in the event that this policy is cancelled by the Named Insured, it is hereby agreed that this policy is subject to an absolute minimum premium of $34,000.00.  Such absolute minimum premium shall not be subject to pro rata or short rate adjustment.

In the event of cancellation by the Named Insured, the premium due under this policy will be the greater of the following:

(1)     The Minimum and Deposit premium shown in the Declarations multiplied times the applicable short-rate earned premium factor.

(2)     The earned premium based upon the policy rate multiplied times the hard costs, payroll or other premium adjustment basis for the policy period.

(3)     The absolute minimum premium shown above.

For purposes of this endorsement, cancellation of this policy for nonpayment of premium by the Named Insured's premium finance company shall be deemed to be cancellation by the Named Insured.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #2

## ASBESTOS EXCLUSION

In consideration of the premium charged and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that the coverage afforded by this policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of:

1)   inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2)   the use of asbestos in constructing or manufacturing any good, product or structure; or

3)   the removal of asbestos from any good, product or structure; or

4)   the manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or suit related to any of the above.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #3

## CHEMICAL, BIOLOGICAL, BIO – CHEMICAL, AND ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE

**A.   CHEMICAL, BIOLOGICAL, BIO – CHEMICAL, ELECTROMAGNETIC WEAPONS EXCLUSION CLAUSE**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

1.   In no case shall this insurance cover loss, damage, liability or expense, directly or indirectly caused by, or contributed to by, or arising from

   1.1   any chemical, biological, bio-chemical or electromagnetic weapon



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #4

## CONTINUOUS DAMAGE EXCLUSION

In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any claim for "property damage" arising out of "your work" within the "products-completed operations hazard" if:

1.  The "property damage" arises out of or is alleged to have arisen out of "your work" at a "single location" under a "single contract", and

2.  Such claim is at any time presented to a commercial general liability policy under which you are an insured that has an attachment date prior to the attachment date of this policy.

For purposes of this policy:

a)  A "single location" shall be defined to be the larger of the following:

    (i)    A single freestanding building;
    (ii)   A series of separate buildings on a single contiguous parcel of land that are under common ownership or control; or
    (iii)  A series of separate buildings or dwellings which are part of the same housing development.

b)  A "single contract" shall be all work performed at a "single location" unless "your work' is part of an annual maintenance agreement in which case each year shall be treated as a separate "single contract".

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #5

## EMPLOYMENT RELATIONS EXCLUSIONS

In consideration of the premium charged, it is hereby agreed that this policy shall not apply to "bodily injury", "property damage" or "personal injury" to:

(1)   An employee or former employee of any insured, whether or not arising out of or in the course of employment by the insured, or an applicant for employment with any insured, if the "bodily injury", "property damage" or "personal injury" arises out of any of the following:

   a.   Refusal to Employ or Rehire;
   b.   Termination of Employment, Lay-Off or Retirement;
   c.   Coercion;
   d.   Demotion or Non-Promotion;
   e.   Performance Evaluation;
   f.   Reassignment or Transfer;
   g.   Discipline;
   h.   Defamation;
   i.   Harassment;
   j.   Humiliation
   k.   Discrimination including but not limited to discrimination based upon race, color, creed, religion, political belief, age, physical type, physical limitation or handicap, medical condition, sex or sexual orientation;
   l.   Sexual abuse including rape, sodomy, sexual acts of a non-consenting nature, sexual harassment or humiliation, and assault and battery in connection with the foregoing;
   m.   Other employment related practices, policies, acts or omissions; or

(2)   The spouse, domestic partner, child, parent, brother, sister, or other relative of that employee, former employee or any applicant for employment as consequence of (1) above.

### ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

# ENDORSEMENT #6

## LEAD EXCLUSION

In consideration of the premium charged and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that the coverage afforded by this policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of:

1)    inhaling, ingesting or prolonged physical exposure to lead or goods or products containing lead; or

2)    the use of lead in construction or manufacturing any good, product or structure; or

3)    the removal of lead from any good, product or structure; or

4)    the manufacture, transportation, storage or disposal of lead or goods or products containing lead.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or suit related to any of the above.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #7

## LEASED WORKER EXCLUSION

Notwithstanding anything contained elsewhere herein to the contrary, it is hereby agreed that this policy specifically excludes any sum(s) for which the insured is or may become liable to pay including costs of defense, with respect to legal and/or contractual liability for Bodily Injury and/or Personal Injury to any LEASED WORKER.

The term "LEASED WORKER" as used in this endorsement is defined as any person who is working on behalf of the insured on either a temporary or permanent basis under an EMPLOYEE LEASING AGREEMENT.

EMPLOYEE LEASING AGREEMENT means an arrangement under contract or other agreement whereby an EMPLOYEE PROVIDER FIRM provides one or more LEASED WORKERS to a client company for any period of time regardless of duration.

EMPLOYEE PROVIDER FIRM means an entity whose principal business is providing personnel to client companies but retains the obligation to provide coverage for Workers Compensation and/or other statutory compensation acts.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

# ENDORSEMENT #8

## MOLD, FUNGUS, BACTERIA, VIRUS AND ORGANIC PATHOGEN EXCLUSION

In consideration of the premium charged, it is hereby agreed that this policy shall not apply:

1.  to "bodily injury", "property damage", or "personal and advertising injury";

2.  to damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;

3.  to any loss, cost or expense, including but not limited to fines and penalties, arising out of any governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize "organic pathogens", or

4.  to any litigation or administrative procedure in which an insured may be involved as a party;

arising directly, indirectly, or in concurrence or in any sequence out of actual, alleged or threatened existence, discharge, dispersal, release or escape of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.

In addition, this insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", loss, cost or expense arising out of or related to any form of "organic pathogens", whether or not such actual, alleged or threatened existence, discharge, dispersal, release or escape is intentionally caused, or whether or not such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of the insured.

"Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproduct such as mycotoxin, mildew, or biogenic aerosol.

"Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.

### ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

## ENDORSEMENT #9

## ABSOLUTE PCB EXCLUSION

It is hereby agreed that this policy shall not apply to any claim with respect to any actual, alleged, threatened or potential discharge, dispersal, release or escape of PCB or any material or substance containing or alleged to contain PCB into or upon any person, any structure, the land, the air or any watercourse or body of water, regardless of whether or not such discharge, dispersal, release or escape is cumulative, gradual, sudden or accidental.

The term PCB as used in this endorsement means polychlorinated biphenyl or any derivative thereof.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

# ENDORSEMENT #10

## EXCLUSION OF PREVIOUSLY REPORTED CLAIMS OR OCCURRENCES

In consideration of the premium charged, it is hereby agreed that this policy shall not apply to:

(1)   any claim or occurrence shown in the policy application on file with this company, or to

(2)   any claim or occurrence of which the insured had received written notice prior to the inception date of this policy, or to

(3)   any claim which is first made against any prior claims-made policy, or to

(4)   any claim which is covered under a prior claims-made policy by reason of a Notice of Circumstance, Extended Reporting or similar clause or which would have been covered by such prior claims-made policy but for the exhaustion of aggregate limits.  A Notice of Circumstance, Extended Reporting or similar clause shall be defined to include those clauses wherein an occurrence is reported to a prior insurance carrier during the policy term or extended reporting period of such prior claims-made policy and a claim is subsequently made within the time limit stipulated by the Notice of Circumstance, Extended Reporting or similar clause.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #11

## ABSOLUTE POLLUTION EXCLUSION

A.   In consideration of the premium charged, it is hereby agreed that this policy shall not apply to any liability for "bodily injury", "property damage" or "personal injury" arising directly or indirectly out of the actual, alleged or threatened "release" of "pollutants".

The intent and effect of this exclusion is to delete from such coverage as is afforded by this policy any "occurrence", claim, "suit", damages or expense in any way arising out of the actual or threatened "release" of "pollutants", regardless of when such "release" occurs or is likely to occur, and whether or not (i) such "release" arises out of the activities of the insured or the activities of others; (ii)  such "release" is sudden or gradual; or (iii) such "release" is expected, intended, foreseeable, accidental, fortuitous, inevitable or the result of natural chemical processes.

B.   Definitions:

(1)   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

The term "pollutants" shall include chemical compounds or elements that are knowingly or inadvertently contained within "your product" or "your work" that pose a threat to persons or property in the event of their release or escape, regardless of whether or not such release or escape is due to a sudden event or a gradual process.

The term "pollutants" shall also include any elements, chemical compounds or waste products which have escaped from, have been released from, or pose a threat of escape from, tanks, drums, pipelines, hoses, or any other conveyance or container and as a consequence pose a threat to persons or property.

(2)   "Release" means discharge, dispersal, seepage, release or escape of "pollutants" into the land, air (within a building or into the atmosphere) or any watercourse, water supply, reservoir or body of water.

C.   Without intent to limit the scope of the above Absolute Pollution Exclusion, but rather for the purpose of illustration, it is hereby agreed that this policy shall not apply to:

(1)   "Bodily injury", "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants":

(a)   At or from premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

(b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(c)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by any insured or by any person or organization for whom you may be legally responsible; or

(d)  At or from any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations  if the "pollutants" are brought on or to the premises, site or location in connection with the operations by such insured, contractor or subcontractor; or

(e)  Arising directly or indirectly out of "your product" or "your work".

(2)  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement than any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(3)  Any loss, cost, or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".



PRIME SPECIALTY

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #12

## PROFESSIONAL LIABILITY EXCLUSION

It is hereby agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any of the following professional services:

1)   Architect and Engineering Services, including the preparing, approving or failure to approve, maps, shop drawings, opinions, reports, surveys, field orders or drawings and specifications.

2)   Medical, Dental, Nursing or Long Term Care Services, including the prescribing of or the failure to prescribe drugs and/or a course of treatment.

3)   Legal, Accounting, Tax Preparation, Financial or Investment Services.

4)   Insurance Agent or Brokering Services, including the procurement of or the failure to procure insurance in respect of personal lines, commercial lines, accidental and health, life insurance or annuities.

5)   Real Estate Agent, Title Agent, Mortgage Broker or Home Financing Services.

6)   Software, Computer Hardware or Web Site design or installation.

It is further agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any supervisory, inspection, review or consultancy services performed in connections with any of the above professional services.

## ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

## ENDORSEMENT #13

## RESPIRATORY AILMENT EXCLUSION

It is hereby understood and agreed that this policy shall not apply to any liability for bodily injury, sickness, disease, disability or shock including death at anytime resulting therefrom caused by any of the following:

    (1)   Black Lung Disease,

    (2)   Mesothelioma,

    (3)   Emphysema,

    (4)   Pneumoconiosis,

    (5)   Pulmonary Fibrosis,

    (6)   Pleurisy,

    (7)   Asbestosis,

    (8)   Silicosis,

    (9)   Talcosis,

    (10)  Mycotoxin Poisoning, Mycotoxicosis

    (11)  Tricothecene Toxicosis

    (12)  Stachybotryotoxicosis

    (13)  Severe Acute Respiratory Syndrome (SARS)

or any lung cancer, disease or ailment caused by or aggravated by inhalation of dust and/or particulate matter.

The coverage afforded by this policy shall not apply to payment for the investigation or defense of any claim or suit related to any of the above or to any fine or penalty.

## ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

## ENDORSEMENT #14

### <u>SELF-INSURED RETENTION ENDORSEMENT</u>
### <u>(DEFENSE COSTS INCLUSIVE)</u>

IT IS AGREED THAT THIS INSURANCE IS SUBJECT TO THE FOLLOWING ADDITIONAL PROVISIONS.  IN THE EVENT OF CONFLICT WITH ANY PROVISIONS ELSEWHERE IN THE POLICY, THE PROVISIONS OF THIS ENDORSEMENT SHALL BE DEEMED TO APPLY.

(A)    The total liability of the Company for all damages shall not exceed the limits of liability as stated in the Policy Declarations, and shall apply in excess of the insured's self-insured retention, hereinafter called the Retained Limit.

RETAINED LIMIT

|                          |              |
|--------------------------|--------------|
| Each Occurrence:         | $5,000.00    |
| Aggregate, If Applicable: | Not Applicable |

(B)    No claim shall be payable under this policy unless the aggregate liability for any one occurrence, including all legal fees, loss adjustment expenses and premises medical payments, exceeds the above Retained Limit, and this sum shall be deducted from the amount payable hereunder.  For purposes of this endorsement the Each Occurrence Retained Limit shall apply to any and all coverages which are not otherwise excluded by this policy, including claims for "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" and "fire legal liability".

(C)    The section entitled "Supplementary Payments" shall not apply until the Each Occurrence Retained Limit is exceeded in accordance with Clause (B).  The Company, at its own expense, shall have the right and opportunity to associate with the insured in the defense, appeal or control of any claim or suit arising out of an occurrence to which this insurance applies seeking damages in excess of the Retained Limit.  In such event, the insured and Company shall cooperate fully.

(D)    Should any occurrence appear likely to exceed the Retained Limit, no loss expenses or legal expenses shall be incurred on behalf of the Company without its prior consent.

(E)    In the event that the Aggregate Retained Limit is exhausted by the sum total of payments within the Each Occurrence Retained Limit, then the provisions of this Retention Endorsement shall no longer apply, and all terms and conditions of this policy are reinstated to their full force and effect.  The Company shall then be obligated to assume charge of the settlement or defense of any claim or suit to which this insurance applies which has not yet been settled.

(F)    The Policy Condition with respect to the Insured's Duties in the Event of Occurrence, Claim or Suit is replaced by the following:

(1)    The insured shall report as soon as practicable to the Company each occurrence, claim or suit for which the insured's estimated amount of loss, including legal fees and expenses, equals 50% or more of the above Each Occurrence Retained Limit or $50,000., whichever amount is the lesser.

(2) Notwithstanding the above, the insured shall immediately report any incident which involves any of the following injuries:

    (a)    fatality
    (b)    spinal cord injuries, paralysis, quadriplegia or paraplegia
    (c)    disc or fusion surgery
    (d)    closed head injuries or head injuries resulting in impaired, mental or motor ability, seizures
    (e)    loss of hand, crushing injury to hand, multiple finger loss, loss of arm, foot or leg
    (f)    internal injuries resulting in impaired organ function
    (g)    severely impaired vision or blindness
    (h)    second or third degree burns over 20 percent or more of the body
    (I)    multiple fractures involving more than one limb
    (j)    rape or sexual assault
    (k)    medical specials exceed $25,000
    (l)    loss of taste, smell or hearing
    (m)    any other serious bodily injury which the insured feels is likely to involve this policy.

(3) The insured's report of loss should include written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances of loss, the names and addresses of the injured parties or property owner, and the identity of any known witnesses.

(4) In the event of suit, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(5) The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured. The insured shall attend hearings and trials and assist in securing and giving evidence and obtaining witnesses.

(6) WARRANTY: IT IS A CONDITION OF COVERAGE AND THE NAMED INSURED AGREES THAT AS A SELF-INSURER IT SHALL HAVE THE SAME LEGAL DUTIES AND OBLIGATIONS WITH REGARD TO THE COMPANY THAT A PRIMARY INSURER OWES TO AN EXCESS INSURER. THESE DUTIES AND OBLIGATIONS SHALL INCLUDE:

    (A)    A DUTY TO ACT AT ALL TIMES IN GOOD FAITH TOWARDS THE COMPANY.

    (B)    A DUTY TO ACCEPT ALL REASONABLE SETTLEMENT DEMANDS WITHIN THE RETAINED LIMIT.

    (C)    A DUTY TO EXPLORE REASONABLE SETTLEMENT POSSIBILITIES EVEN IN THE ABSENCE OF A SETTLEMENT DEMAND.

    (D)    A DUTY TO PROMPTLY REMIT ITS PORTION OF ANY SETTLEMENT AMOUNT AND ADJUSTMENT EXPENSES IN ORDER TO EFFECTUATE A SETTLEMENT.

(7)   If required the insured shall provide written reports of all occurrences, claims or suits including a description of each loss and amounts paid and/or reserved.

(G)   SPECIAL CONDITIONS

(1)   The insured shall employ the firm of <u>National Claim Services, Inc.,1301 Hightower Trail, Suite 210, Atlanta, GA 30350, (800) 424-0132</u> for the purpose of providing claims service. In the event of cancellation, expiration or revision of the contract between the insured and the Self-Insurance Service Company, the insured shall notify the Company within ten (10) days of the expiration or revision.

(2)   The insured may procure insurance for all or any part of the Retained Limit, however, the existence of any such insurance shall not relieve the insured of any of the duties or obligations contained in this endorsement unless specifically agreed by the Company and endorsed hereon.

(3)   At its own expense, the Company shall have the right to assume charge of the defense and/or settlement of any claim or suit brought against the insured and, upon written request from the Company, the insured shall tender such portion of the self-insured retention as the Company may deem necessary to complete the settlement of such claim or suit.

(4)   Failure of the insured to promptly remit amounts due within the retained limit in connection with settlements, judgments and loss adjustment expenses under this policy or any policy of which this policy is a renewal shall be deemed to be non-payment of premium.

(5)   Unless expressly endorsed to the contrary, each Named Insured under this policy shall be jointly and severally liable for amounts due within the Retained Limit.

This endorsement is subject to all the agreements, conditions and exclusions of the policy unless such agreements, conditions and exclusions are expressly modified or expressly eliminated hereby.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #15

## COVERAGE LIMITATION - SUBCONTRACTED WORK

It is hereby agreed that this policy shall not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of work performed on your behalf by a subcontractor "engaged" by you unless you have complied with at least one of the following conditions:

(1)    Contractual Indemnification:    You have entered into a valid and enforceable contract with each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.

   (a)    Such contract shall stipulate that such subcontractor "engaged" by you will agree to defend, hold harmless and indemnify you and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities, and construction managers).

   (b)    Such indemnification shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by any employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).

   (c)    Such indemnification shall apply unless such loss arises solely out of your negligence.

(2)    Insurance Coverage:    You and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities and construction managers) are named as additional insureds under a valid and collectible Commercial General Liability Policy written on behalf of each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.

   (a)    Such policy shall be written on terms no less broad than ISO Form CG 00 01 10 01 (2001 Occurrence Form) with limits of not less than $1,000,000. any one occurrence, $2,000,000. general aggregate and $1,000,000. products-completed operations aggregate.

   (b)    Such coverage shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by an employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).

   (c)    Such coverage shall apply to such loss unless such loss arises solely out of your negligence.

(d)     Such coverage shall be primary to any limits available under this policy, notwithstanding any other clause to the contrary, including but not limited to any Other Insurance Clause contained in this policy or subcontractor's policy.

(e)     You will endeavor to obtain certificates of insurance evidencing such coverage from all such subcontractors.

For purposes of this endorsement, "engaged" means obtained the services of, or contracted with, to perform work, regardless of whether or not there exists a formal, written contract.

## <u>UNINTENTIONAL ERRORS & OMISSIONS</u>

Notwithstanding the Coverage Limitation – Subcontracted Work Endorsement, shown above, it is hereby agreed that the following shall apply:

As a condition of binding coverage, you agree to have written procedures in place requiring indemnification from subcontractors "engaged" by you.

However, in the event of your unintentional non-compliance with Paragraph (1) of the Coverage Limitation – Subcontracted Work Endorsement where the subcontractor does not provide coverage in accordance with Paragraph (2) of the Coverage Limitation – Subcontracted Work Endorsement, the self-insured retention is amended to read <u>$25,000.00</u> with respect to any loss arising out of work performed on your behalf by such subcontractor.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #16

### TERRORISM EXCLUSION CLAUSE – ABSOLUTE

This policy excludes any loss, damage, liability or expense arising from:

a)    terrorism; and or

b)    steps taken to prevent, suppress, control or reduce the consequences of any actual, attempted, anticipated, threatened, suspected or perceived terrorism.

For the purpose of this clause, "terrorism" means any act(s) of any person(s) or organization(s) involving:

(i)    the causing, occasioning or threatening of harm of whatever nature and by whatever means;

(ii)    putting the public or any section of the public in fear,

in circumstances in which it is reasonable to conclude that the purpose(s) of the person(s) or organization(s) concerned are wholly or partly of a political, religious, ideological or similar nature.

**DERIVED FROM JOINT EXCESS LOSS COMMITTEE TERRORISM EXCLUSION CLAUSE 16/11/01 XL 2001/002.**

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## <u>ENDORSEMENT #17</u>

## <u>DESIGNATED PROJECT COVERAGE</u>

Notwithstanding anything to the contrary hereunder, such coverage as provided by this policy will only apply to the construction project being performed at the following location:

The demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at:

96 Wythe Avenue
Brooklyn, NY 11211

Coverage will be limited to the scheduled project, details of which are on file with Prime Specialty, Inc.

Premium shall be deemed fully earned at the conclusion of the project.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #18

## MTBE EXCLUSION

In consideration of the premium charged and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that the coverage afforded by this policy does not apply to "bodily injury", "personal and advertising injury" or "property damage" arising out of:

1)   inhaling, ingesting or prolonged physical exposure to Methyl Tertiary-Butyl Ether (MTBE) or goods or products containing MTBE; or

2)   the use of MTBE in construction or manufacturing any good, product or structure; or

3)   the removal of MTBE from any good, product or structure; or

4)   the manufacture, transportation, storage or disposal of MTBE or goods or products containing MTBE.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or suit related to any of the above.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #19

## EXTERIOR INSULATION FINISH SYSTEMS (EIFS) EXCLUSION – ABSOLUTE

In consideration of the premium charged, it is hereby agreed that coverage afforded by this policy does not apply to "bodily injury", "personal injury" or "property damage" arising out of:

1.   The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including removal, remodeling, service, correction or replacement of an "**exterior insulation and finish system**" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application of use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.

2.   Any work or operations with respect to any exterior component, fixture or feature of any structure if an "**exterior insulation and finish system**" is used on any part of that structure.

For the purposes of this endorsement, an "**exterior insulation and finish system**" means an exterior cladding or finish system used on any part of any structure and consisting of:

a)   a polystyrene insulation board that is attached to the substrate:

b)   a reinforced base coat; and

c)   a finish coat providing surface texture and color.

The coverage afforded by the policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or suit related to any of the above.

Notwithstanding the foregoing, this policy shall apply to claims for "Bodily Injury" sustained during the installation of an "exterior insulation and finish system".

## ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

## ENDORSEMENT #20

## SEXUAL AND/OR PHYSICAL ABUSE EXCLUSION

This policy shall not apply to any loss, cost, claim, damage or expense caused by, resulting from, or arising out of Sexual and/or Physical Abuse, Physical or Non-Physical Sexual Harassment, or Molestation by: (1) the insured, (2) any past or present employee of the insured, (3) subcontractors of the insured or any employees thereof, or (4) any person performing volunteer services by or on behalf of the insured.

It is further agreed that this policy shall not apply to any Sexual and/or Physical Abuse, Physical or Non-Physical Sexual Harassment, or Molestation as set forth above arising out of or alleged to have arisen out of "Negligent Employment."

"Negligent Employment" shall be defined to include any negligent act, error or omission in the hiring, background investigation, retention or "negligent supervision" of any person for whom the insured is or was legally responsible.  For purposes of this endorsement "negligent supervision" shall be defined to include any act, error or omission in reporting to or in failing to report federal, state or local administrative or regulatory body any actual or suspected Sexual and/or Physical Abuse, Physical or Non-Physical Sexual Harassment, or Molestation.

It is further agreed that the Company shall have no duty or obligation to provide or pay for the investigation or defense of any loss, claim or suit excluded hereunder.

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #21

## CROSS LIABILITY EXCLUSION

It is hereby agreed that this policy shall not apply to any liability of one Named Insured for "bodily injury" or "personal injury" to an employee of another Named Insured, nor shall it apply to "property damage" to real or personal property of another Named Insured.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #22

## SILICOSIS EXCLUSION

In consideration of the premium charged and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that this policy does not apply to "bodily injury" or "personal injury" arising out of the inhaling, ingesting or prolonged exposure to sand or silica dust or to goods or products containing sand or silica dust.  It is further agreed that this policy shall not apply to payment for investigation or defense of any loss, injury or damage or for any fine, penalty or punitive damages related to the foregoing.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #23

## OCCUPATIONAL DISEASE EXCLUSION

It is understood and agreed that this insurance shall not cover any liability, loss, damage or expense as regards bodily injury and/or personal injury (fatal or non-fatal) resulting from occupational disease sustained by any employee of the Named Insured.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #24

### CONSTRUCTION DEFECT EXCLUSION

In consideration of the premium charged, it is hereby agreed that the policy is amended as follows:

(A)    Exclusion 2.l set forth in Section I is amended to read:

**l.    Damage to Your Work**
   "Property damage" to "your work".

(B)    For purposes of the definition of "your work" set forth in Section V, "Work or operations performed by you or on your behalf" shall include but not be limited to work performed by your subcontractors or by any subcontractors of your subcontractors.

(C)    Clause 14.c. of the definition of "Personal and advertising injury" set forth in Section V, "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor," is deleted where the foregoing arises in whole or in part out of "your work".

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #25

### SUBCONTRACT AGREEMENT RIDER
### (CONTRACTOR/SUBCONTRACTOR)

In consideration of the premium charged, and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that in all instances in which the Named Insured engages a subcontractor, and prior to any operations performed by said subcontractor, the following Subcontract Agreement will be signed by both the Named Insured and the subcontractor:

The terms and conditions of this Rider shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties.

1.   **Indemnity.**   In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties.   This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.

2.   **Insurance.**   The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable.   Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

   2.1.   The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations.   The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY.   With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

   2.2.   The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the Insurance Service Office Inc.'s form and that no policy provisions shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Contractor's, Owner's (or others as required and as listed below) status as additional insured.

2.3. Not less than five (5) days prior to commencement of the Work and until final acceptance of the Work, Subcontractor shall provide Contractor with certificate(s) of insurance evidencing the required insurance coverage with the limits stated below or elsewhere in the Subcontract documents.  The Subcontractor shall provide Contractor thirty (30) days written notice of a change or cancellation in coverage. In addition, all insurance policies shall state that the insurer will provide Contractor thirty (30) days prior written notice of a change or cancellation in coverage.

2.4. Unless otherwise stipulated in the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:

    a)   Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence,  $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;

    b)   Comprehensive Automobile Liability insurance with minimum limits of $1,000,000 combined single limit each accident, including bodily injury and property damage liability;

    c)   Workers' Compensation and disability benefit insurance including Occupational Disease in the minimum amounts as required by the jurisdiction where the Work is performed.

2.5. The Subcontractor and his insurer shall waive all rights of subrogation against the Contractor, Owner and any other indemnified party, except as respects Worker's Compensation insurance.

2.6. If Subcontractor engages a Sub-Subcontractor, it is the affirmative duty of the Subcontractor to ensure that any Sub-Subcontractor complies with the insurance and indemnification requirements of this Contract Agreement.

List of Indemnified Parties and Additional Insureds:


Acknowledged by:

Contractor: _____    Subcontractor: _____

Signature: _____    Signature: _____

Name: _____    Name: _____

Title: _____    Title: _____

Date: _____    Date: _____


**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #26

### HIRING WARRANTY

With respect to the designated project covered hereunder, it is understood and agreed that all contractors at the project site are hired through or engaged by the General Contractor (**SYG Realties, LLC**).



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

# ENDORSEMENT #27

## ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE, LENDER OR RECEIVER

It is agreed that this Policy shall include as additional insureds the following mortgagee, assignee, lender, or receiver to whom the Named Insured has agreed by written contract to provide coverage, but only with respect to their liability as mortgagee, assignee, lender, or receiver and arising out of the ownership, maintenance, or use of the premises as described in **ENDORSEMENT #17 – DESIGNATED PROJECT COVERAGE** by you and only with respect to occurrences subsequent to the making of such written contract.

**ADDITIONAL INSURED:**

Downstate Capital Partners, LLC
One Baker Avenue
Suite 260
White Plains, NY 10601



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

## ENDORSEMENT #28

### PRIOR WORK EXCLUSION

It is understood and agreed that this policy shall exclude all liabilities arising out of work performed at the designated project site prior to <u>September 28, 2012</u>.



**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

PRIME SPECIALTY, INC.                    1                    PSG-043A

**EXHIBIT B**

Policy Number: RXL0261775

**RLI**®

# NOTICE TO OUR BROKERS AND AGENTS
# OF OUR CLAIM NOTIFICATION PROCEDURE

As part of our continuing effort to provide you with the best service available, ALL CLAIMS, OCCURRENCES, INCIDENTS and LAWSUITS under this policy are to be reported immediately to:

**RLI Insurance Company**

**Email (preferred):  <ins>New.Claim@rlicorp.com</ins>**

**Fax:  (866) 692-6796**

**Phone:  (800) 444-0406**

**Street Address:  9025 N. Lindbergh Drive, Peoria, IL  61615**

**Mailing Address:  P.O. Box 3961, Peoria, IL 61612-3961**

When reporting the incident, be prepared to supply a report of claim or the following information:

**1.**   Policy Number
**2.**   Contact Person information (name, address, phone, etc.)
**3.**   Nature of incident
**4.**   Date of incident

When reporting multiple incidents, please send each loss notice separately.

RIL 2131 (08/12)

Policy Number: RXL0261775



## RLI Insurance Company
Peoria, Illinois 61615

# ATTENTION POLICYHOLDER:

## <u>KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS</u>

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false, incomplete, or misleading information, or conceals information concerning any material fact thereto, commits a fraudulent insurance act, which is a crime punishable by incarceration, and shall also be subject to civil penalties.

Policy Number:   RXL0261775



**RLI Insurance Company**
Peoria, Illinois 61615

# ATTENTION POLICYHOLDER

## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

THIS NOTICE IS BEING PROVIDED TO YOU AT THE DIRECTION OF YOUR STATE. IT IS FOR YOUR INFORMATIONAL PURPOSES ONLY AND IS NOT PART OF THE POLICY.

THIS POLICY CONTAINS CERTAIN ENDORSEMENTS WHICH LIMIT OR EXCLUDE SPECIFIC COVERAGES. PLEASE READ IT CAREFULLY AND CONTACT THE COMPANY OR YOUR AGENT IF YOU HAVE ANY QUESTIONS.

UW 20126 (05/93)

Insured

Policy Number:   RXL0261775



**RLI Insurance Company**
Peoria, Illinois 61615

# IMPORTANT NOTICE

## LOSS CONTROL/ENGINEERING

### TO ALL POLICYHOLDERS

We appreciate you choosing RLI as your liability carrier. We share your interest in safety and loss prevention. Safety and loss control services and needs vary from insured to insured. We suggest that you discuss your needs with your agent or broker.

If you need our assistance in securing services that fit your needs, please contact us at:

**RLI INSURANCE COMPANY**

**9025 N. LINDBERGH DR.**

**PEORIA, ILLINOIS 61615**

**309-692-1000**

UW20130 (01/98)                                                                                                      Page 1 of 1

Insured



# IMPORTANT NOTICE TO POLICYHOLDERS

## TERRORISM RISK INSURANCE ACT, AS AMENDED

Under the Terrorism Risk Insurance Act, as amended (the "**Act**"), we must make coverage for "**certified acts of terrorism**" available in the policies we offer. We notified you at the time of offer and purchase of the policy to which this Notice is attached that this coverage was available and we gave you the right to reject our offer of such terrorism coverage. If you elected to purchase the coverage, the premium charged for such coverage is shown on the Declarations page of the policy. If you elected to reject the coverage we have not charged your policy for terrorism coverage and have attached a terrorism exclusion to your policy.

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses may be partially reimbursed by the United States government under a formula established by federal law. Under this formula, the United States government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Specific coverage terms for terrorism, including limitations and exclusions, are more fully described in endorsements attached to the policy. Your policy may contain an exclusion for losses that are not eligible for federal reinsurance under the Act.

Definitions:

"**Certified act of terrorism**," as defined in Section 102(1) of the Act, means an act that is certified by the Secretary of the Treasury – in concurrence with the Secretary of State, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Questions regarding your election should be directed to your agent or broker.**

Insured

# RLI

**RLI Insurance Company**
9025 North Lindbergh Drive
Peoria, Illinois 61615
Phone: (309) 692-1000
(herein called the "Company")

**NOTICE:**

THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**NEW YORK FREE TRADE ZONE ACCOUNT**

## EXCESS LIABILITY POLICY
## DECLARATIONS

**NO.  RXL0261775**
**New Policy**

**PRODUCER**  CRC Insurance Service
**01136**   **140 Broadway 36th Floor**
**New York, NY 10005**

**ITEM 1.  NAMED INSURED AND ADDRESS**
**96 Wythe Acquisition LLC**
**1274 49th Street**
**Suite 184**
**Brooklyn, NY 11211**

**ITEM 2.  POLICY PERIOD** (Mo./Day/Yr.)
FROM **11/29/2012** TO **09/28/2015**   12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**ITEM 3.  PREMIUM COMPUTATION**      Policy Minimum At Audit  **$N/A**
Advance Premium  **$125,000**      Estimated Exposure  **N/A**      Rate  **$FLAT**
Minimum Premium  **$125,000**      Premium Basis  **N/A**      Audit Period  **N/A**
CA Surcharge  $      Total Due  **$125,000**      (annual unless noted)

**ITEM 4.** The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific limit or limits of liability. As respects such coverages this policy shall apply as excess of the Underlying Insurance Limits of Liability and the Company shall be liable only for the Company Limits of Liability as shown below.

| COVERAGES | SECTION I COMPANY LIMITS OF LIABILITY | | SECTION II UNDERLYING INSURANCE LIMITS OF LIABILITY |
|---|---|---|---|
| A. Bodily Injury – Automobile | $ | Each Occurrence | $ |
| B. Bodily Injury – Other Than Automobile | $ $ | Each Occurrence Aggregate | $ $ |
| C. Property Damage – Automobile | $ | Each Occurrence | $ |
| D. Property Damage – Other Than Automobile | $ $ | Each Occurrence Aggregate | $ $ |
| E. Combined Single Limit Bodily Injury and Property Damage – Automobile | $ | Each Occurrence | $ |
| F. Combined Single Limit Bodily Injury and/or Property Damage – Other Than Automobile | **$10,000,000** **$10,000,000** **$10,000,000** | Each Occurrence General Aggregate Products-Completed Operations Aggregate | **$1,000,000** **$2,000,000** **$2,000,000** |
| G. Other | $ $ $ | | $ $ $ |

**ITEM 5.  SCHEDULE OF UNDERLYING INSURANCE**    Insurer, Policy Number and Dates
**GL: State National Insurance Company, Policy Number on File, 09/28/2012-09/28/2015.**

**ITEM 6.  FORMS AND ENDORSEMENTS ATTACHED AND MADE A PART OF THIS POLICY AT ISSUE**
**See Attached Schedule of Endorsements**

KS  12/4/2012

Countersigned by
Authorized Representative

CXL 130 (11/91)

Page 1 of 1

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL COVERAGE SCHEDULE OF ENDORSEMENTS

The following is a listing of endorsements by Form Number and Title that form a part of the policy at issue:

| | |
|---|---|
| **MXL-131(02/05)** | **Commercial Excess Liability Policy** |
| **CEE-238(11/91)** | **Designated Premises and/or Projects Limitation, Page 1** |
| **CEE-244(11/91)** | **Discrimination Exclusion** |
| **CEE-283(11/91)** | **Minimum Earned Premium Agreement** |
| **CEE-310(11/91)** | **Property Damage Limitation Real Property** |
| **CEE-335(11/91)** | **Unimpaired Aggregate Endorsement** |
| **CEE-357(05/12)** | **Pollution Exclusion** |
| **CEE-396(11/01)** | **Continuous or Progressive Injury and Damage Exclusion** |
| **CEE-397(12/01)** | **Breach of Contract Exclusion** |
| **CEE-402(03/00)** | **Property Damage Limitation - Personal Property** |
| **CEE-419(05/06)** | **Mold, Mildew and Fungus Exclusion** |
| **CEE-431(07/11)** | **New York Changes** |
| **CUE-600(11/03)** | **Exclusion - Residential Developments** |
| **CUE-604(05/04)** | **Amendment - Cancellation Provision** |
| **CUP-437(10/03)** | **Absolute Silica Exclusion** |
| **RIL-2126(11/09)** | **Exclusion - Terrorism** |

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

# COMMERCIAL EXCESS LIABILITY POLICY

## (Occurrence Form)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as an insured person under the terms of the **underlying insurance**.

Other words and phrases that appear in bold print have special meaning. Refer to **SECTION II. DEFINITIONS**.

In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:

## I. INSURING AGREEMENT

### A. Coverage

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada. If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

### B. Defense And Expense Of Claims And Suits

1. We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.

2. We shall not pay any expenses except as follows:

   a. If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.

   b. If an expense is incurred directly by us and solely at our discretion, then we will pay such expense.

   c. If a payment for damages is made under this policy, then we will pay related prejudgment interest for which the insured is legally liable, provided:

      (1) The **underlying insurance** pays prejudgment interest; and

      (2) Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.

3. Subject to all of the foregoing:

Insured

**a.** If the defense expense payments are included within the limit of liability of the **underlying insurance** by the terms of that policy, then any such expense payment we make shall reduce the limit of liability of this policy.

**b.** If the **underlying insurance** does not include defense expense payments within its limit of liability by the terms of that policy, then any such expense payment we make shall not reduce the limit of liability of this policy.

**C. Limits Of Liability**

**1.** The limit of liability stated in the Declarations as applicable to "each occurrence" shall be the total limit of our liability for all **ultimate net loss** sustained by any one person or as the result of any one occurrence as applied to the appropriate coverage.

**2.** Subject to the limit of liability for "each occurrence":

**a.** The limit of liability stated in the Declarations as "general aggregate" is the most we will pay during each policy period for all **ultimate net loss**, except **ultimate net loss** because of injury and damage included in the "products-completed operations hazard"; and

**b.** The limit of liability stated in the Declarations as "products-completed operations aggregate" is the most we will pay during each policy period for all **ultimate net loss** because of injury and damage included in the "products-completed operations hazard."

**3.** This insurance shall apply only as excess of the **underlying insurance** limits of liability shown in the Declarations. However, if the limit of liability of the **underlying insurance** shown in the Declarations has been reduced or exhausted because of payments for an occurrence which took place during our policy period, then this policy shall apply as excess of such reduced limit of liability of the **underlying insurance**.

**II. DEFINITIONS**

**A. Ultimate net loss** means all sums actually paid, or which the insured is legally obligated to pay, as

damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.

**Ultimate net loss** shall include defense expense payments made by the insurer of the **underlying insurance**, provided that such expenses are included within the limit of insurance of the **underlying insurance** by the terms of that policy.

**B. Underlying insurance** means the policy or policies of insurance in the Schedule of Underlying Insurance.

**III. EXCLUSIONS**

Regardless of whether or not such coverage is afforded by any **underlying insurance**, this policy does not apply:

**A. Pollution**

**1.** Advertising injury, bodily injury, personal injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**a.** That are, or that are contained in any property that is:

**(1)** Being moved from the place where such property or pollutants are accepted by an insured for movement into or onto an automobile;

**(2)** Being transported or towed by an automobile;

**(3)** Otherwise in the course of transit by or on behalf of an insured;

**(4)** Being stored, disposed of, treated or processed in or upon an automobile; or

**(5)** Being moved from an automobile to the place where such property or pollutants are finally delivered, disposed of or abandoned by an insured;

**b.** At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured;

Insured

**c.** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**d.** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom any insured may be legally responsible; or

**e.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

**(1)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants.

Paragraphs **1.a.(4)** and **1.b.** through **1.e.** above do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an automobile or its parts, if the pollutants escape, seep or migrate or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs **1.b.** through **1.e.** above do not apply to pollutants not in or upon an automobile if:

**a.** The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an automobile;

**b.** The discharge, dispersal, seepage, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage; and

**c.** The bodily injury or property damage is not otherwise excluded under Paragraph **1.a.** of this exclusion.

Paragraph **1.e.(1)** above does not apply to bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Paragraphs **1.b.** and **1.e.(1)** above do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

**2.** Any loss, cost or expense arising out of any:

**a.** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**b.** Claim or suit by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

As used in this exclusion:

**1.** Hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be; and

**2.** Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

Insured

**B. Nuclear Energy Liability Exclusion (Broad Form)**

This policy does not apply:

**1.** Under any Liability Coverage, to ultimate net loss:

**a.** With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**b.** Resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** Under any Medical Payment Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **ultimate net loss** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

**3.** Under any Liability Coverage, to **ultimate net loss** resulting from the hazardous properties of nuclear material, if:

**a.** The nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (b) has been discharged or dispersed therefrom;

**b.** The nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**c.** The loss arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility. If such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **3.** applies only to **ultimate net loss** to such nuclear facility and any property thereat.

As used in this policy:

Hazardous properties include radioactive, toxic or explosive properties;

Nuclear material means source material, special nuclear material or by-product material;

Source material, special nuclear material and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

Spent fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

Waste means any waste material (1) containing by-product material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under Paragraph **(a)** or **(b)** thereof;

Nuclear facility means:

**(a)** Any nuclear reactor;

**(b)** Any equipment or device designed or used for: (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste;

Insured

**(c)** Any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste;

And includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

Nuclear reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Ultimate net loss** includes all forms of radioactive contamination of property.

**C. Asbestos –** to any and all liability for bodily injury, sickness or disease, sustained by a person, including death at any time resulting therefrom, or for any occupational disease, or for property damage, for past, present or future claims arising in whole or in part, either directly or indirectly, including but not limited to claims arising from the manufacture, distribution, sale, resale, rebranding, installation, repair, removal, encapsulation, abatement, replacement or handling of, or exposure to, asbestos or products containing asbestos. This exclusion applies whether or not the asbestos is or was at any time airborne as fiber or particle, contained in a product, carried on clothing, inhaled, transmitted in any fashion, or found in any form whatsoever.

## IV. CONDITIONS

**A. Appeal –** In the event you or any underlying insurer elect not to appeal a judgment in excess of the amount of any **underlying insurance**, we may elect to appeal. Our limit of liability shall not be increased because of such appeal. Any appeal we elect to make will be at our cost and expense.

**B. Assignment –** Your interest in this policy may not be transferred to another; except by an endorsement issued by us which gives our consent. If you die, this policy shall apply: (1) to your legal representative, but only while acting within the scope of their duties as such; and (2) with respect to your property, to the person having proper temporary custody as an insured, but only until the appointment and qualification of the legal representative.

**C. Changes –** This policy may be changed only by an endorsement issued to form a part of the policy. Any endorsement must be signed by our duly authorized representative. Notice to you or to our agent or knowledge possessed by us, by our agent or by any other person shall not affect a waiver or a change in any part of this policy. Nor will such notice or knowledge prevent us from asserting any right under the terms of this policy.

**D. Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or any of our authorized agents advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** Sixty (60) days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will

Insured

be computed at ninety percent (90%) of pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

### E. Duties In The Event Of Occurrence, Claim Or Suit

You must see to it that we receive prompt written notice of an occurrence which may result in a claim under this policy. Notice should include how, when and where the occurrence took place. The names and addresses of any injured persons and witnesses must be included.

If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

You and any other insured involved must:

**1.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**2.** Authorize us to obtain records and other information;

**3.** Cooperate with us in the investigation, settlement, or defense of the claim or suit; and

**4.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.

### F. Bankruptcy Of The Underlying Insurer – In the event of the bankruptcy or insolvency of the insurer of any **underlying insurance**, the insurance afforded by this policy shall not replace such **underlying insurance**. Rather, this policy shall apply in the same manner as though such **underlying insurance** were available and collectible.

### G. Maintenance Of Underlying Insurance – You agree to maintain all **underlying insurance** in full force and effect as scheduled in the Schedule of Underlying Insurance at the inception of this policy and during our policy period except for reduction of aggregate limits of liability by payment of losses. If any **underlying insurance** is not maintained in full effect by the insured, or if there is any material change in the terms, conditions or scope of coverage, by endorsement or otherwise, of any **underlying insurance**, the insurance afforded by this policy shall apply in the same manner as though such underlying insurance had been in full effect, so maintained and unchanged. You agree to notify us promptly if any **underlying insurance** is cancelled or terminated.

### H. Premium – Premiums for this policy shall be stated in the Declarations and computed in accordance with our rules, rates, rating plans, premiums, and minimum premiums applicable to this insurance. If this policy is issued for a period in excess of one year, the premium for this policy may be revised on each annual anniversary. Any such revision will be in accordance with our manuals in effect at that time.

If the policy is issued on other than an audit basis, the Advance Premium becomes the policy premium, subject to the Minimum Premium shown in the Declarations.

If the policy is issued on an audit basis, the premium designated on the Declarations page as Advance Premium shall be credited to the amount of earned premium due at the end of the policy period. At the close of each audit period, the earned premium shall be computed for such period. Upon notice to you, it shall become due and payable. If the total earned premium exceeds the Advance Premium previously paid, the amount by which the earned premium exceeds the Advance Premium shall be due and payable to us by you. In no case shall the earned premium be less than the Minimum Premium shown on the Declarations page.

You shall maintain records of such information as is necessary for premium computation. You shall send copies of such records to us at the end of this policy period. You shall also send us copies of such records at such times during the policy period as we may direct.

### I. Legal Action Against Us – No legal action shall be brought against us unless the insured has fully complied with all terms of this policy. In addition,

no legal action shall be brought against us until the amount of the insured's obligation to pay has been finally determined. The insured's obligation to pay must be finally determined either by judgment against the insured after actual trial or by written agreement between us, the insured and the claimant.

**J.   Conformity –** Terms of this policy which are in conflict with the laws of the state wherein this policy is issued are hereby amended to conform to such laws.

**K.   Other Insurance –** If other insurance, whether collectible or not, is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of, and shall not contribute with, such other insurance.

**L.   Subrogation –** In the event of any payment under this policy, the insured must notify us of any of the insured's rights of recovery against any person or organization. We shall be subrogated to all such rights. The insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

Any amount recovered through subrogation or otherwise shall be apportioned in the inverse order of payment of the claim or claims involved to the extent of actual payment thereof by all interests. The expenses of all such recoveries and proceedings in connection therewith shall be apportioned in the ratio of respective recoveries. With respect to proceedings conducted solely by us, if there is no recovery, we will bear the expense thereof. If there is a recovery, we shall be reimbursed in full from such recovery for the amount of all expenses incurred by us before apportionment of such recovery as herein provided.

**M.   Salvage –** All salvage, recoveries, or payments recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to such settlement. All necessary adjustments shall then be made between the insured and us. Nothing in this clause shall be construed to mean that losses under this policy are not recoverable until the insured's ultimate net loss has been finally ascertained.

**N.   Inspection And Audit –** We shall be permitted but not obligated to inspect your property and operations at any time. Neither our rights to make inspections, nor the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of you or others, to determine or warrant that such property or operations are safe.

We may examine and audit your books and records at any time during the policy period and extensions thereof and within three (3) years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

**O.   Separation Of Insureds –** Except with respect to the limits of liability this insurance applies as if each Named Insured were the only Named Insured and separately to each insured against whom claim is made or suit is brought.

**P.   Payment Of Loss –** It is a condition of this policy that the insurance afforded under this policy shall apply only after the underlying insurance has been exhausted by payment of its limits of liability. Upon final determination by settlement, award or verdict of the liability of the insured, we will promptly pay you as you shall pay, or be required to pay, the amounts of any losses falling within the terms or limits of this insurance. All losses covered under this policy shall be due and payable by us within thirty (30) days after they are respectively claimed and proof of loss filed with us in conformity with this policy. Bankruptcy or insolvency of the insured shall not relieve us of any of our obligations hereunder.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary. However, the same shall not be binding upon us unless it has been countersigned on the Declarations page by a duly authorized agent of ours.

_____
Corporate Secretary

_____
President & COO

Insured

Policy Number: RXL0261775                                                    RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED PREMISES AND/OR PROJECTS LIMITATION

As respects premises owned, maintained or used by the insured or projects performed by or on behalf of the insured, this insurance applies only to **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule below and operations necessary or incidental to those premises; or

**2.** The project shown in the Schedule.

**SCHEDULE**

**Premises:**

**Project:**

**Ground up construction of a 7-story, 130 room hotel located at 96 Wythe Avenue, Brooklyn, NY.**

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CEE 238 (11/91)                                                              Page  1 of 1

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOLD, MILDEW AND FUNGUS EXCLUSION

In consideration of the premium for which this policy is issued, this insurance does not apply to, and we are not obligated to defend, any loss, demand, claim, cost, expense, **suit**, **bodily injury**, **property damage**, **personal injury**, medical payments, liability or other proceeding that in any way, in whole or in part, arises out of, relates to, or results from mold, mildew or fungus.

As used in this exclusion, mold, mildew and fungus include:

**(1)** The actual, alleged or threatened exposure to, consumption, ingestion of, inhalation of, contact with, absorption of, existence of, or presence of, mold, mildew or fungus in any manner or form whatsoever, including without limitation mold, mildew, fungus, yeast, spores, mycotoxins, endotoxins, or other pathogens, as well as any odors, particulates or by-products of any of the foregoing, either directly or indirectly;

**(2)** The actual or alleged failure to warn, advise or instruct regarding mold, mildew or fungus in any manner or form whatsoever; or

**(3)** The actual or alleged failure to prevent exposure to mold, mildew or fungus in any manner or form whatsoever.

This exclusion applies regardless of whether any other cause, event, material, product or condition, including but not limited to water damage or water intrusion, contributed concurrently or in any sequence to such loss, demand, claim, cost, expense, **suit**, **bodily injury**, **property damage**, **personal injury**, medical payments or liability.

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, loss of use, diminution in value, loss of market value, or in any way responding to, or assessing the effects of mold, mildew or fungus, as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising from or relating thereto.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY
EXCESS LIABILITY (FOLLOWING FORM)
EXCESS UMBRELLA LIABILITY
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any loss, claim, "suit" or other proceeding which alleges "Bodily Injury," "Property Damage," "Personal And Advertising Injury" caused directly or indirectly by or arising from "Terrorism."

"Terrorism" includes but is not limited to:

**A.** Acts or threatened acts of violence, hostility or criminal conduct by a foreign or domestic enemy, whether or not war has been declared;

**B.** The disruption or threatened disruption of financial, governmental, transportation, communication, computer or utility services which appears to be for political, religious, economic, ecological or racial ends;

**C.** The use or threatened use of force, violence or criminal conduct which appears to be for political, religious, economic, cultural, ethnic, ecological or racial ends;

**D.** The use or threatened use of force, violence or criminal conduct for the apparent purpose of or with the result of harming or intimidating a civilian population;

**E.** The use or threatened use of biological or chemical or nuclear substances for the apparent purpose of or with the result of harming or intimidating a civilian population;

**F.** Any act or threatened act of force, violence or criminal conduct by any person or persons acting on behalf of or in connection with any organization with a stated goal of overthrowing or influencing the policy of any government, whether lawful or otherwise; or

**G.** Any act or threatened act of force, violence or criminal conduct which has been labeled, identified or described as a terrorist act by the executive branch of the United States government.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

RIL 2126 (11/09)                                                                    Page 1 of 1

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISCRIMINATION EXCLUSION

It is agreed that this policy does not apply to any liability resulting from discrimination based on, but not limited to, race, color, creed, sex, religion, age, national origin, handicap or sexual preference, etc., whether or not for alleged violation of any federal, state or local governmental law or regulation prohibiting such discrimination.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

Policy Number: RXL0261775                                              RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM EARNED PREMIUM AGREEMENT

It is understood and agreed that in the event this policy is cancelled at the request of the Named Insured, or for nonpayment of premium, the Minimum Premium (as shown on the policy Declaration page), or the earned premium, whichever is greater, shall be charged.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CEE 283 (11/91)                                                              Page 1 of 1

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROPERTY DAMAGE LIMITATION
# REAL PROPERTY

It is agreed that this policy shall not apply to any liability for **property damage** to real property:

1. Owned or occupied by or rented to an **insured**;

2. Used by an **insured**; or

3. In the care, custody or control of an **insured** or as to which an **insured** is for any purpose exercising physical control.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNIMPAIRED AGGREGATE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.  All aggregate limits in the **underlying insurance** are in full force and effect on and as of the inception date of this policy;

2.  Any and all subsequent reductions in the aggregate(s) in the **underlying insurance**, for **occurrences** which took place prior to the effective date of this policy, regardless of when claim for same is first made to the **insured** or the underlying insurer, shall not affect the application of an unimpaired underlying insurance aggregate to the insurance afforded by this policy;

3.  Any and all such differences between the unimpaired and impaired underlying insurance aggregate(s) as created by **2.** above, shall become the sole responsibility of the **insured**, for his own account.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Policy Number: RXL0261775                                                                RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION EXCLUSION

This insurance does not apply to:

1. **Bodily injury**, **property damage**, **personal injury**, or **advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

   b. Claim or **suit** by or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, airborne fibers, fumes, acids, alkalis, chemicals and **waste**. **Waste** includes materials to be recycled, reconditioned or reclaimed. **Pollutants** also include electromagnetic fields and electromagnetic radiation across the entire frequency spectrum.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CEE 357 (05/12)                                                                          Page 1 of 1

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

This insurance does not apply to any damages because of or related to **bodily injury**, **property damage** or **personal injury**:

**1.**   Which first existed, or alleged to have first existed, prior to the inception date of this policy; or

**2.**   Which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged **bodily injury**, **property damage** or **personal injury** continues during this policy period; or

**3.**   Which were caused, or are alleged to have been caused, by the same condition which resulted in **bodily injury**, **property damage** or **personal injury** which first existed prior to the inception date of this policy.

We shall have no duty to defend any **insured** against any loss, claim, **suit**, or other proceeding alleging damages arising out of or related to **bodily injury**, **property damage** or **personal injury** to which this endorsement applies.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BREACH OF CONTRACT EXCLUSION

This insurance does not apply, nor do we have a duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of the following:

**1.**   Breach of express or implied contract;

**2.**   Breach of express or implied warranty;

**3.**   Fraud or misrepresentation regarding the formation, terms or performance of a contract; or

**4.**   Libel, slander or defamation arising out of or within the contractual relationship.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

Policy Number: RXL0261775

RLI Insurance Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Commercial Excess Liability
Commercial Excess Umbrella Liability

# PROPERTY DAMAGE LIMITATION – PERSONAL PROPERTY

This insurance does not apply to any liability for **property damage** to personal property:

**1.** Owned by, leased, or rented to an **insured**;

**2.** Used by an **insured**; or,

**3.** In the care, custody or control of an **insured** or as to which an **insured** is for any purpose exercising physical control.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

CEE 402 (03/00)

Page 1 of 1

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY POLICY
COMMERCIAL EXCESS UMBRELLA LIABILITY POLICY

**A.** Paragraph **I.** of **SECTION IV. CONDITIONS** is replaced by the following:

    **I.** **Legal Action Against Us**

        **1.** Except as provided in Paragraph **2.**, no legal action shall be brought against us unless the insured has fully complied with all terms of this policy. In addition, no legal action shall be brought against us until the amount of the insured's obligation to pay has been finally determined. The insured's obligation to pay must be finally determined either by judgment against the insured after actual trial or by written agreement between us, the insured and the claimant.

        **2.** With respect to bodily injury and personal and advertising injury claims, if we deny coverage or do not admit liability because an insured or the injured person, someone acting for the injured person or other claimant fails to give us written notice as soon as practicable, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether the denial of coverage or nonadmission of liability is based on the failure to provide timely notice.

        However, the injured person, someone acting for the injured person or other claimant may not bring an action if within sixty (60) days after we deny coverage or do not admit liability, we or an insured:

        **a.** Brings an action to declare the rights of the parties under the policy; and

        **b.** Names the injured person, someone acting for the injured person or other claimant as a party to the action.

**B.** The following provision is added and supersedes any provision to the contrary:

Failure to give notice to us as required under this policy shall not invalidate any claim made by the insured, injured person or any other claimant, unless the failure to provide such timely notice has prejudiced us. However, no claim made by the insured, injured person or other claimant will be invalidated if it shall be shown not to have been reasonably possible to give such timely notice and that notice was given as soon as was reasonably possible thereafter.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – RESIDENTIAL DEVELOPMENTS

This insurance does not apply to **bodily injury**, **property damage** or **personal and advertising injury** arising from **your work** on residential developments. However, this exclusion does not apply if:

**1.**   The work on residential developments:

    **a.**   Is performed for the individual dwellings owners;

    **b.**   The individual dwelling and its improvements were completed and certified for occupancy prior to the commencement of your operations; and

    **c.**   No more than fifty percent (50%) of the original square footage of that individual dwelling or its improvements is replaced in the course of your operations.

**2.**   The work is performed on apartment complexes.

    As used in this endorsement:

    Residential developments include but are not limited to single and multi-family dwellings (including condominiums), coach houses, driveways, retaining walls, detached garages, sewer and water lines, parking lots, fences, swimming pools, grading of land, and landscaping.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – CANCELLATION PROVISIONS

The **Cancellation** provisions under the policy Conditions are amended as follows:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or any of our authorized agents advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation:

    **a.** At least ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **b.** Equal to the number of days of cancellation of any underlying policy, but not to exceed sixty (60) days before the effective date of cancellation, if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be computed at ninety percent (90%) of pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE SILICA EXCLUSION

It is agreed that:

**1.** This policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica, or any product or action used or taken to protect any person from exposure to silica in any form.

**2.** This policy does not apply to "economic loss," "diminution of property," "abatement costs," or any other loss, cost, or expense including "equitable relief," in any way or to any extent arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

**3.** This policy provides no coverage for any fees, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or "suit" arising out of or involving silica, silica particles or dust, or any product containing silica or used to control silica or any product or action used or taken to protect any person from exposure to silica in any form.

For the purpose of this exclusion only, the following additional terms are defined:

"Abatement costs" means any actual or potential damages, costs, fees, or expenses, including the costs of inspection, removal or replacement.

"Diminution of property" means the diminishing or lessening in value of property.

"Economic loss" means any actual or potential damages, costs, fees, expenses, or lost profits arising out of or involving the manufacture or utilization of a good or product.

"Equitable relief" means any remedy or relief, including restitution or injunctive relief, sought in a court with equitable powers.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

Insured

**EXHIBIT C**

# Rubin, Fiorella, Friedman & Mercante LLP

Attorneys at Law
630 Third Avenue, 3rd Floor
New York, New York 10017
Telephone: (212) 953-2381 / Facsimile: (212) 953-2462

| | |
|---|---|
| Direct Dial: | (212) 447-4610 |
| E-Mail: | kfiorella@rubinfiorella.com |

**Via Certified Mail, RRR and Regular Mail**

July 29, 2020

96 Whyte Acquisition LLC
1274 49th Street, #184
Brooklyn, New York  11219

Dimyon Development Corp
55 North 19th Street
Brooklyn, NY 11249

Re:   *Juan L. Ramirez and Carmen Nina Ramirez v. The Williamsburg Hotel
BK LLC, et al.*
Supreme Court/Kings County – Index No. 514500/2017
*Gerson Mencia v. 96 Wythe Acquisition LLC, et ano.*
Supreme Court/Kings County – Index No. 513214/2016
Our File No.:  1017.42536

Dear Sir/Madam:

We represent State National Insurance Company ("SNIC") who issued policy number PUG1200249 to 96 Wythe Acquisition LLC ("96") and SYG Realties LLC, for the period of September 28, 2012 to September 28, 2015 (or until end of project, whichever comes first) beginning and ending at 12:01 A.M. Local Standard Time at the address of the Named Insured. Dimyon Development Corp. ("Dimyon") is an insured under the policy. The limits of liability are $1M per occurrence and $2M in the aggregate.

This letter will serve to advise you of SNIC's coverage position under the foregoing policy.

## FACTS

First, with respect to the aggregate, there remains $1.5M remaining because of prior indemnity payments. There remains two open matters, *Ramirez v. The Williamsburg Hotel,* et al., which is pending in the Supreme Court, Kings County, Index No. 514500/2017 ("the *Ramirez* matter"), and *Mencia v. 96 Wythe Acquisition LLC, et al.,* which is pending in the Supreme Court, Kings County, under Index No. 513214/2016 ("the *Mencia* matter"). SNIC is unaware of any other pending claims under the aforementioned policy.

SNIC is defending both 96 and Dimyon in those matters and will continue to do so pending resolution of the same.

In the *Ramirez* matter, plaintiff Juan L. Ramirez claims to have sustained serious bodily injury in a construction related accident that occurred on August 21, 2016 at a project located at

95 Wythe Acquisition LLC and
Dimyon Development Corp.
Page 2
Our File:  1017.42536

96 Wythe Avenue, Brooklyn, New York.  The complaint alleges, *inter alia*, 96 Wythe Acquisition LLC, was the owner of the premises, and Dimyon Development Corp, was the general contractor.  Plaintiff asserts claims against all of the defendants premised upon violations of the New York Law Labor and general principles of negligence.  A derivative cause of action is asserted by Nina Ramirez for loss of services.

In the *Mencia* matter, plaintiff claims to have sustained serious bodily injury in a construction related accident that occurred on September 18, 2015. At the time of the incident, Gerson Mencia, an employee of C.I. Interiors Inc., alleges that he was injured when he fell from a ladder at a worksite located at 96 Wythe Avenue, Brooklyn, New York.  Plaintiff alleges, *inter alia,* 96 Wythe Acquisition LLC, was the owner of the premises, and Dimyon Development Corp, was the general contractor. Plaintiff asserts claims premised upon violations of the New York Law Labor and general principles of negligence as against both 96 and Dimyon.

Discovery has revealed the project located at 96 Wythe Avenue in Brooklyn was for the construction of a 10-story building. Building records for the project confirm the same.

Based upon the foregoing, SNIC is reserving the right to disclaim any obligation to indemnify 96 and Dimyon in both the *Ramirez and Mencia* matters, to the extent it is determined that the project was for other than the demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at: 96 Wythe Avenue, Brooklyn, New York 11211.

In addition, to the extent there is an indemnity obligation owed by SNIC to any insured under the aforementioned policy, the payments will be limited to the per occurrence limit of $1M subject to the maximum payment of a total of $1.5M for any and all remaining claims or for any future claims that may be made.

## SNIC POLICY

The SNIC policy contains the following relevant provisions:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

      a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at

95 Wythe Acquisition LLC and
Dimyon Development Corp.
Page 3
Our File:  1017.42536

our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

\*    \*    \*

## SECTION III – LIMITS OF INSURANCE

1.     The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a.     Insureds;
   b.     Claims made or "suits" brought; or
   c.     Persons or organizations making claims or bringing "suits".

2.     The General Aggregate Limit is the most we will pay for the sum of:

   a.     Medical expenses under Coverage C;
   b.     Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c.     Damages under Coverage B.

3.     The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.     Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

95 Wythe Acquisition LLC and
Dimyon Development Corp.
Page 4
Our File:  1017.42536

5.      Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a.      Damages under Coverage A; and
b.      Medical expenses under Coverage C
because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.      Subject to 5. above, the Damage To Premises Rented To You Limitis the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.      Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

The policy further provides as follows:

## ENDORSEMENT #17

## DESIGNATED PROJECT COVERAGE

Notwithstanding anything to the contrary hereunder, such coverage as provided by this policy will only apply to the construction project being performed at the following location:

The demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at:
96 Wythe Avenue
Brooklyn, NY 11211

Coverage will be limited to the scheduled project, details of which are on file with Prime Specialty, Inc.

95 Wythe Acquisition LLC and
Dimyon Development Corp.
Page 5
Our File:  1017.42536

Premium shall be deemed fully earned at the conclusion of the project.

## ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.

The underlying insurance only provides coverage for the demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at 96 Wythe Avenue, Brooklyn, NY 11211.

## POSITION OF SNIC

SNIC reserves the right to disclaim any indemnity obligation for any claims, including the *Ramirez* and *Mencia* matters, arising out of the project at 96 Wythe Avenue, Brooklyn, New York to the extent it is determined that the project was not for the construction of a 7-story, one hundred fifty-five (155) room hotel.  SNIC is continuing to investigate this issue and will supplement its coverage position as may be necessary. Please be advised that SNIC will continue to defend 96 and Dimyon in connection with both the *Ramirez* and *Mencia* matters pending resolution of these matters.

Further, to the extent any insured under the foregoing is entitled to coverage, SNIC limits of liability is subject to the per occurrence limitation of $1M and the $2M aggregate limit, which is now reduced to $1.5M by reason of prior indemnity payments made on behalf of its insured(s).

This evaluation is based upon the information which is presently available to SNIC.  If you have any questions about this letter, or have other information that you would like SNIC to consider regarding its coverage position, please immediately send the other information to undersigned in writing.

As noted above, SNIC previously designated Gallo, Vittuci and Klar to represent your interests in both the *Ramirez* and *Mencia* matters. Notwithstanding, by reason of the asserted reservation of rights to disclaim any indemnity obligation in connection with the *Ramirez* and *Mencia* matters, you have the right to select your own counsel, with said counsel's reasonable fees to be paid by SNIC.

This letter is without prejudice to, or waiver of, any other defenses to coverage which may exist, including, without limitation, any defenses based on facts and grounds not now known or not expressly set forth herein.  SNIC does not waive, and explicitly reserves its rights under all policy conditions, exclusions and otherwise, including all rights under any and all applicable law. You are otherwise required to fully comply with all of the terms of the SNIC. SNIC's actions in defending, investigating, evaluating, and/or monitoring the *Ramirez* and *Mencia* matters should not be seen or construed as a waiver, estoppel, or other relinquishment of

95 Wythe Acquisition LLC and
Dimyon Development Corp.
Page 6
Our File:  1017.42536

SNIC's rights to limit or deny coverage, nor as an admission of any obligation under the RLI policy.

Should you wish to take this matter up with the New York State Department of Financial Services, you may file with the Department either on its website at http://www.dfs.ny.gov/consumer/filecomplaint.htm  or you may write to or visit the Consumer Services Assistance Unit, Financial Frauds and Consumer Protection Division, New York State Department of Financial Services, at: One State Street, New York, New York 10004; One Commerce Plaza, Albany, New York 12257; 163B Mineola Boulevard, Mineola, New York 11501; or Walter J. Mahoney Office Building, 65 Court Street, Buffalo, New York 14202.

Very truly yours,

Kenneth S. Fiorella

KSF/ew

cc:     **Via Certified Mail, RRR and Regular Mail**
        Hecht, Kleeger & Damashek
        Attorneys for Plaintiff in *Mencia* matter
        19 West 44th Street
        New York, New York

        **Via Certified Mail, RRR and Regular Mail**
        Gallo Vitucci Klar LLP
        Attorneys for the Defendants 96 and Dimyon
        in both the *Ramirez* and *Mencia* matters
        Three University Plaza, Suite 402
        Hackensack, New Jersey 07601

        **Via Certified Mail, RRR and Regular Mail**
        James Greenberg, PC
        Attorneys for the Plaintiffs in the *Ramirez* matter
        233 Broadway, Suite 900
        New York, New York 10279

        **Via Certified Mail, RRR and Regular Mail**
        Akerman LLP
        Attorneys for Defendant The Williamsburg Hotel BK, LLC in the *Ramirez* matter
        666 Fifth Avenue
        New York, New York 10103

95 Wythe Acquisition LLC and
Dimyon Development Corp.
Page 7
Our File:  1017.42536

**Via Certified Mail, RRR and Regular Mail**
Montfort Healy McGuire & Salley, LLP
Attorneys for Defendant Crossakiel Construction LLC in the *Ramirez* matter
840 Franklin Avenue
Garden City, New York 11530

**Via Certified Mail, RRR and Regular Mail**
Park Brokerage, Inc.
134 Broadway
Brooklyn, New York   11249

Rubin, Fiorella, Friedman & Mercante LLP
Attorneys at Law
630 Third Avenue, 3rd Floor
New York, New York 10017

96 Whyte Acquisition LLC
1274 49th Street, #184
Brooklyn, New York 11219

NEOPOST
07/29/2020
US POSTAGE $000.65⁰

FIRST-CLASS MAIL

ZIP 10017
041M11279087

**<u>EXHIBIT D</u>**

# FARBER BROCKS & ZANE L.L.P.

### ATTORNEYS AT LAW

400 GARDEN CITY PLAZA, SUITE 100 · GARDEN CITY, NEW YORK 11530
TEL. (516) 739-5100    FAX (516) 739-5103
www.fbzlaw.com

SHERRI N. PAVLOFF
PARTNER
spavloff@fbzlaw.com

October 20, 2014

**<u>VIA CERTIFIED MAIL,
RETURN RECEIPT REQUESTED
AND REGULAR MAIL</u>**

96 Wythe Acquisition LLC
199 Lee Avenue, PMB 693
Brooklyn, NY 11211
*(Receipt No.: 7014 1200 0001 6459 2608)*

96 W Development, LLC
199 Lee Avenue, PMB 693
Brooklyn, NY 11211
*(Receipt No.: 7014 1200 0001 6459 2615)*

Dim Yon Development Corp.
320 Roebling Street, Suite 127
Brooklyn, NY 11211
*(Receipt No.: 7012 1200 6459 2622)*

Toby Moskovits
13755 71st Avenue
Flushing, NY 11367
*(Receipt No.: 7014 1200 6459 2585)*

Mordechai Y. Furth
719 Flushing Avenue, Apt. 2R
Brooklyn, NY 11206
*(Receipt No.: 7014 1200 0001 6459 2639)*

1

Mordy Steinfeld
168 Summit Park Road
Spring Valley, NY 10977
*(Receipt No.: 7014 1200 0001 6459 2646)*

Zelig Weiss
50 Skillman Street, Apt. 1512
Brooklyn, NY 11205
*(Receipt No.: 7014 1200 0001 6459 2653)*

Re:    Grandfield Realty Corp. v. 96 W Development, LLC; 96
Wythe Acquisition, LLC, et. al.

| | | |
|---|---|---|
| Insured | : | 96 Wythe Acquisition, LLC |
| Claimant | : | Grandfield Realty Corp. |
| Date of Loss | : | July 2013 to mid 2014 |
| Policy No. | : | PUG 1200249 |
| Effective | : | September 28, 2012 to September 28, 2015 |
| Claim No. | : | 5076152 |
| Our File | : | 526-8103 |

Dear Sir/Madam:

Our law firm has been retained to represent the interests of State National Insurance Company ("State National"), which was notified of a lawsuit brought by Grandfield Realty Corp. ("Grandfield") against 96 W Development, LLC ("96W"); 96 Wythe Acquisition, LLC ("96 Wythe"); Dim Yon Development Corp. ("Dim Yon"), among others, pending in New York State Supreme Court, Kings County, under Index No. 507323-2014 ("the Grandfield Suit") under a policy of insurance issued by State National to 96 Wythe, policy number PUG 1200249, effective September 28, 2012 to September 28, 2015 ("the State National Policy").

The purpose of this letter is to advise that:

1.  State National is denying any obligation to defend, indemnify or provide insurance coverage to 96W with respect to the Grandfield Suit;

2.  State National is denying any obligation to defend, indemnify or provide insurance coverage to Toby Moskovits ("Moskovits"); Zelig Weiss ("Weiss"); Mordecai Y. Furth ("Furth"); and Mordy Steinfeld ("Steinfeld") to the extent that they are sued in their individual capacities and to the extent that Grandfield successfully pierces the corporate veil as to any of them as explained below;

2

FARBER BROCKS & ZANE L.L.P.

3. State National is reserving all of its rights to deny coverage to 96 Wythe, Dim Yon, Moskovits, Weiss, Furth and Steinfeld for many of the causes of action asserted in the Grandfield Suit;

4. State National will therefore pay for your choice of counsel to defend 96 Wythe, Dim Yon, and Moskovits, Weiss, Furth and Steinfeld in their capacity as members, officers, directors or employees of 96 Wythe and/or Dim Yon;

5. State National will, however, not pay for counsel to defend 96 W or Moskovits, Weiss, Furth and Steinfeld in their individual capacities, and this counsel must be separate from the counsel defending 96 Wythe, Dim Yon, and Moskovits, Weiss, Furth and Steinfeld in the capacity as members, officers, directors or employees of 96 Wythe and/or Dim Yon.

Finally, the purpose of this letter is to explain the basis for this coverage position.

The Grandfield Suit alleges that Grandfield owns the premises located at 54 North 11th Street in Brooklyn and leases portions of its building to tenants. The Grandfield Suit alleges that 96 Wythe and/or 96 W owns the premises at 96 Wythe Avenue ("the Premises") and that they purchased the Premises to develop a hotel ("the Hotel Project"). The Grandfield Suit alleges that Moskovits, Weiss, Furth and Steinfeld (collectively "the Project Principals") all have an ownership interest in 96 W, 96 Wythe and Dim Yon; and that the Project Principals, 96 W and/or 96 Wythe purchased the Premise through a series of transactions designed to avoid paying transfer taxes and "maintaining title in an entity which would be insolvent, undercapitalized and judgment proof during the construction of the hotel." (¶87).

The Grandfield Suit alleges that Dim Yon was the general contractor for the Hotel Project and that in late 2012, 96 Wythe and/or 96W commenced demolition, construction, excavation and underpinning activities in connection with the Hotel Project. The Grandfield Suit alleges that in August, 2013, Dim Yon and Furth obtained work permits for the Hotel Project and that beginning in July, 2013, they conducted excavation/foundation and earthwork which was inherently dangerous (¶155). Grandfield also alleges that defendants performed excavation and construction activities at a depth greater than 10 feet without notifying Grandfield.

Grandfield alleges that 96 Wythe and/or 96W excavated beneath Grandfield's property and improperly installed underpinning causing damage to Grandfield's premises. Grandfield alleges that on July 19, 2013, Grandfield's building shook and vibrated as a result of the work performed at the Hotel Project by defendants, which caused Grandfield's building to crack. Grandfield alleges that defendants ignored Plaintiff's notification of the damage and continued through August and September, 2013 to perform construction which continued to damage Grandfield's building. Grandfield alleges that at one point, one of defendant's construction machines hit Plaintiff's building during the construction activities. The Grandfield Suit alleges that as a result a stop work order was issued on September 5, 2013 by the NYC DOB. Further stop work orders are alleged to have been issued on December 23, 2013; February 19, 2014 and March 12, 2014. Other damage is alleged to have occurred daily to Plaintiff's premises from Defendants demolition, excavation, shoring, bracing, filling, backfilling, building, removal of

3

FARBER BROCKS & ZANE L.L.P.

debris, modification of the property, underpinning of Plaintiff's building, and installation of concrete and piles under Plaintiff's building, all of which is alleged to have been performed, negligently, recklessly, and to have trespassed on Plaintiff's property. (¶229, 233). The following damage is alleged to have occurred:

(a)    Significant separation cracks/openings on the walls and flooring along the excavated areas of the construction site.
(b)    A large separation opening on the concrete flooring.
(c)    Separation cracks on the brick walls at the rear building walls.
(d)    Separation cracks on the corner walls.
(e)    Separation cracks on bricks directly below the supports of the wooden floor joists.
(f)    Separation cracks on the interior building walls and above the door opening.
(g)    Separation cracks on the inside and outside of the left building walls and on the window openings.
(h)    Large cracks on the concrete flooring.
(i)    Separation cracks on the concrete flooring along the length of the rear building wall.

These facts give rise to 13 causes of action 9 of which are alleged against 96 W, 96 Wythe, Dim Yon, and the Project Principals which include: negligence per se, common law negligence, gross negligence, trespass and private nuisance. Also alleged is a cause of action requesting that the court pierce the corporate veil and hold the Project Principals individually liable because they intentionally undercapitalized and underinsured the corporate defendants. The Grandfield Suit then seeks a declaratory judgment that all defendants intentionally trespassed on Plaintiff's premises and an injunction to remove the encroaching structures. Grandfield seeks both compensatory and punitive damages.

State National issued a general liability insurance policy to 96 Wythe, policy number PUG 1200249, effective September 28, 2012 to September 28, 2015. Effective July 1, 2013, Dim Yon Properties was added as a named insured and SYG Realties, LLC was removed as an insured.

The State National Policy was issued to 96 Wythe and not only does it not identify 96W anywhere as an insured or additional insured, on August 28, 2014, State National specifically declined to add 96 W as an insured on the State National Policy.

The State National Policy provided coverage for a designated project located at 96 Wythe Ave., pursuant to the following terms and conditions:

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to

FARBER BROCKS & ZANE L.L.P.

which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

> (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

> (2) The "bodily injury" or "property damage" occurs during the policy period;

*     *     *

The State National Policy contains the following definitions:

*     *     *

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*     *     *

17.    "Property damage" means:

> a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

5

FARBER BROCKS & ZANE L.L.P.

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*    \*    \*

The State National Policy defined insureds as follows:

## SECTION II – WHO IS AN INSURED

1.    If you are designated in the Declarations as:

a.    An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.    A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\*    \*    \*

2.    Each of the following is also an insured:

a.    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

\*    \*    \*

The State National Policy was issued subject to the following endorsements:

## ENDORSEMENT #14

6

FARBER BROCKS & ZANE L.L.P.

**SELF-INSURED RETENTION ENDORSEMENT**
**(DEFENSE COSTS INCLUSIVE)**

IT IS AGREED THAT THIS INSURANCE IS SUBJECT TO THE FOLLOWING ADDITIONAL PROVISIONS. IN THE EVENT OF CONFLICT WITH ANY PROVISIONS ELSEWHERE IN THE POLICY, THE PROVISIONS OF THIS ENDORSEMENT SHALL BE DEEMED TO APPLY.

(A) The total liability of the Company for all damages shall not exceed the limits of liability as
stated in the Policy Declarations, and shall apply in excess of the insured's self-insured retention, hereinafter called the Retained Limit.

Retained Limit:

      Each Occurrence:      $5,000.00

\*   \*   \*

(B) No claim shall be payable under this policy unless the aggregate liability for any one occurrence, including all legal fees, loss adjustment expenses and premises medical payments, exceeds the above Retained Limit, and this sum shall be deducted from the amount payable hereunder. For purposes of this endorsement the Each Occurrence Retained Limit shall apply to any and all coverages which are not otherwise excluded by this policy, including claims for "bodily injury", "property damage", "personal injury", "advertising injury", "professional liability" and "fire legal liability".

(C) The section entitled "Supplementary Payments" shall not apply until the each Occurrence Retained Limit is exceeded in accordance with Clause (B). The Company, at its own expense, shall have the right and opportunity to associate with the insured in the defense, appeal or control of any claim or suit arising out of an occurrence to which this insurance applies seeking damages in excess of the Retained Limit. In such event, the insured and the Company shall cooperate fully.

(D) Should any occurrence appear likely to exceed the Retained Limit, no loss expenses or legal expenses shall be incurred on behalf of the Company without its prior consent.

\*   \*   \*

(F) The Policy Condition with respect to the Insured's duties in the Event of Occurrence, Claim or Suit is replaced by the following:

(1) The insured shall report as soon as practicable to the Company each occurrence, claim or suit for which the insured's estimated amount of loss, including legal fees and expenses, equals 50% or more of the above Each Occurrence Retained Limit or $50,000, whichever amount is the lesser.

\*   \*   \*

FARBER BROCKS & ZANE L.L.P.

(5)   The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured. The insured shall attend hearings and trials and assist in securing and giving evidence and obtaining witnesses.

## (G) SPECIAL CONDITIONS

(1) The insured shall employ the firm of National Claims Services, Inc., 1301 Hightower Trail, Suite 210, Atlanta, GA 30350, (800) 424-0132 for the purpose of providing claims service. In the event of cancellation, expiration or revision of the contract between the insured and the Self-Insurance Service Company, the insured shall notify the Company within ten (10) days of the expiration or revision.

(2) The insured may procure insurance for all or any part of the Retained Limit, however, the existence of any such insurance shall not relieve the insured of any of the duties or obligations contained in this endorsement unless specifically agreed by the Company and endorsed hereon.

(3) At its own expense, the Company shall have the right to assume charge of the defense and/or settlement of any claim or suit brought against the insured and, upon written request from the Company, the insured shall tender such portion of the self insured retention as the Company may deem necessary to complete the settlement of such claim or suit.

(4) Failure of the insured to promptly remit amounts due within the retained limit in connection with settlements, judgments and loss adjustment expenses under this policy or any policy of which this policy is a renewal shall be deemed to be nonpayment of premium.

(5) Unless expressly endorsed to the contrary, each Named Insured under this policy shall be jointly and severally liable for amounts due within the Retained Limit.

\*    \*    \*

## ENDORSEMENT #15
## COVERAGE LIMITATION· SUBCONTRACTED WORK

It is hereby agreed that this policy shall not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of work performed on your behalf by a subcontractor "engaged" by you unless you have complied with at least one of the following conditions:

(1) Contractual Indemnification: You have entered into a valid and enforceable contract with each subcontractor "engaged" by you out of whose work (or work performed by

8

FARBER BROCKS & ZANE L.L.P.

any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.

    (a) Such contract shall stipulate that such subcontractor "engaged" by you will agree to defend, hold harmless and indemnify you and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities, and construction managers).

    (b) Such indemnification shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by any employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).

    (c) Such indemnification shall apply unless such loss arises solely out of your negligence.

(2) Insurance Coverage:  You and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities and construction managers) are named as additional insureds under a valid and collectible Commercial General Liability Policy written on behalf of each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury" or " advertising injury arose.

    (a) Such policy shall be written on terms no less broad than ISO Form CG 00 01 10 01 (2001 Occurrence Form) with limits of not less than $1,000,000 any one occurrence, $2,000,000. general aggregate and $1,000,000 products-completed operations aggregate.

    (b) Such coverage shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by an employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).

    (c) Such coverage shall apply to such loss unless such loss arises solely out of your negligence.

    (d) Such coverage shall be primary to any limits available under this policy, notwithstanding any other clause to the contrary, including but not limited to any Other Insurance Clause contained in this policy or subcontractor's policy.

    (e) You will endeavor to obtain certificates of insurance evidencing such coverage from all such subcontractors.

For purposes of this endorsement, "engaged" means obtained the services of, or contracted with, to perform work, regardless of whether or not there exists a formal, written contract.

## UNINTENTIONAL ERRORS & OMISSIONS

9

FARBER BROCKS & ZANE L.L.P.

Notwithstanding the Coverage Limitation - Subcontracted Work Endorsement, shown above, it is hereby agreed that the following shall apply:

As a condition of binding coverage, you agree to have written procedures in place requiring indemnification from subcontractors "engaged" by you.

However, in the event of your unintentional non-compliance with Paragraph (1) of the Coverage Limitation - Subcontracted Work Endorsement and where the subcontractor does not provide coverage in accordance with Paragraph (2) of the Coverage Limitation - Subcontracted Work Endorsement, the self-insured retention is amended to read $25,000.00 with respect to any loss arising out of work performed on your behalf by such subcontractor.

\*   \*   \*

**ENDORSEMENT #25**
**SUCONTRACTOR AGREEMENT RIDER**
**(CONTRACTOR/SUBCONTRACTOR)**

In consideration of the premium charged, and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that in all instances in which the Named Insured engages a subcontractor, and prior to any operations performed by said subcontractor, the following Subcontract Agreement will be signed by both the Named Insured and the subcontractor:

The terms and conditions of this Rider shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties.

1. **Indemnity.** In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.

2. **Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or

10

FARBER BROCKS & ZANE L.L.P.

indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

2.2. The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the Insurance Service Office Inc.'s form and that no policy provisions shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Contractor's, Owner's (or others as required and as listed below) status as additional insured.

2.3. Not less than five (5) days prior to commencement of the Work and until final acceptance of the Work, Subcontractor shall provide Contractor with certificate(s) of insurance evidencing the required insurance coverage with the limits stated below or elsewhere in the Subcontractor documents. The Subcontractor shall provide Contractor thirty (30) days written notice of a change or cancellation in coverage. In addition, all insurance policies shall state that the insurer will provide Contractor thirty (30) days prior written notice of a change or cancellation in coverage.

2.4. Unless otherwise stipulated in the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:

     a) Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;
     b) Comprehensive Automobile Liability insurance with minimum limits of $1,000,000 combined single limit each accident, including bodily injury and property damage liability;
     c) Workers' Compensation and disability benefit insurance including Occupational Disease in the minimum amounts as required by the jurisdiction where the Work is performed.

2.5. The Subcontractor and his insurer shall waive all rights of subrogation against the Contractor, Owner and any other indemnified party, except as respects Worker's Compensation insurance.

2.6. If Subcontractor engages a Sub-Subcontractor, it is the affirmative duty of the

FARBER BROCKS & ZANE L.L.P.

Subcontractor to ensure that any Sub-Subcontractor complies with the insurance and indemnification requirements of this Contract Agreement.

\* \* \*

**ENDORSEMENT #26**
**HIRING WARRANTY**

With respect to the designated project covered hereunder, it is understood and agreed that all contractors at the project site are hired through or engaged by the General Contractor (SYG Realties, LLC)

\* \* \*

96W is not an insured or additional insured on the State National Policy. Therefore, State National hereby denies coverage to 96 W for the Grandfield Suit. This means that State National will neither defend nor indemnify 96 W for the Grandfield Suit.

The Grandfield Suit identifies, as defendants, Moskovits, Weiss, Furth and Steinfield. To the extent that Moskovits, Weiss, Furth and Steinfield are either members, officers, directors, or employees of 96 Wythe and/or Dim Yon, and to the extent that they are sued in that capacity and for acts within the scope of their business/employment, they are insured by State National, subject to the denials and reservations below. However, the Grandfield Suit seeks to pierce the corporate veil and hold Moskovits, Weiss, Furth and Steinfield personally liable based upon conduct which is not within the scope of their relationship to 96 Wythe and/or Dim Yon and intentional in any event. Thus, State National denies any obligation to defend or indemnify Moskovits, Weiss, Furth and Steinfield for conduct taken in their personal capacity, and for the cause of action which seeks to pierce the corporate veil and hold them personally responsible for the alleged damage.

To the extent that Moskovits, Weiss, Furth and Steinfield are insured and as respects 96 Wythe and Dim Yon, State National must additionally reserve all of its rights to deny coverage. To this end, although the first, second, seventh, eighth and ninth causes of action contain allegations of negligence, they also contain allegations that all defendants intentionally caused the damage alleged. Indeed, the twelfth and thirteenth causes of action only allege that defendants intentionally caused the damage alleged. Claims that any insured intentionally caused the alleged damage do not arise out of an occurrence as that term is defined above. Thus, State National denies any obligation to indemnify all entities which are entitled to insurance for damage which is or was intended and/or did not arise accidentally.

By way of the Subcontracted Work Coverage Limitation (Endorsement 15), State National can deny coverage for damage arising out of work performed by subcontractors engaged by 96 Wythe unless those subcontractors have either agreed to contractually indemnify 96 Wythe and/or name them as an additional insured on their insurance, as further specified by way of Endorsement 15 quoted above. To the extent that this did not occur because of an

12

FARBER BROCKS & ZANE L.L.P.

unintentional error, the coverage provided by State National will apply, but the retained limit specified in the Self Insured Retention (Endorsement 14) increases to $25,000.

We remain unaware of whether the damage claimed by the Grandfield Suit arose out of work performed on 96 Wythe's behalf by a subcontractor engaged by 96 Wythe. For this reason State National must reserve all rights to deny coverage to 96 Wythe, Dim Yon, Moskovits, Weiss, Furth and Steinfield for the Grandfield Suit.

In addition, by way of Endorsement 26, 96 Wythe was required to obtain a subcontract agreement the terms of which are quoted above. Presently, we are unaware of whether 96 Wythe complied with Endorsement 26 and thus, State National must reserve all of its rights arising out of said Endorsement.

Moreover, by way of the Hiring Warranty, State National only provides coverage for contractors hired by SYG Realties. Presently, we are unaware of whether, if a subcontractor performed the work which is the subject of the Grandfield Suit, the subcontractor was hired by SYG Realties. For this reason, also, State National must reserve all rights to deny coverage to 96 Wythe, Dim Yon, Moskovits, Weiss, Furth and Steinfield for the Grandfield Suit.

Finally, in addition to seeking recovery for compensatory damages, the Grandfield Suit also seeks an injunction and to recover punitive damages. The cost to comply with injunctive relief is not a covered damage provided for by the State National Policy. Further, insurance coverage for punitive damages is prohibited by New York law. For these reasons, therefore, State National denies any obligation to pay for these types of damage.

For the foregoing reasons and subject to the above denials and reservations:

1. State National will pay for your choice of counsel to defend 96 Wythe, Dim Yon, and Moskovits, Weiss, Furth and Steinfeld in their capacity as members, officers, directors or employees of 96 Wythe and/or Dim Yon;

2. State National will, however, not pay for counsel to defend 96 W or Moskovits, Weiss, Furth and Steinfeld in their individual capacities, and this counsel must be separate from the counsel defending 96 Wythe, Dim Yon, and Moskovits, Weiss, Furth and Steinfeld in the capacity as members, officers, directors or employees of 96 Wythe and/or Dim Yon.

This means that there must be two different law firms assigned. The first will be at State National's cost and will defend 96 Wythe, Dim Yon, and Moskovits, Weiss, Furth and Steinfeld in their capacity as members, officers, directors or employees of 96 Wythe and/or Dim Yon. The second is at your cost and will defend 96 W and Moskovits, Weiss, Furth and Steinfeld in their individual capacities.

Please advise of the two law firms and which one will be reporting to State National so that State National can contact them to discuss rates and ensure that they are reasonable, as well as to discuss their compliance with State National's defense counsel guidelines.

FARBER BROCKS & ZANE L.L.P.

Please be advised that in order to determine whether coverage exists, State National will be continuing its investigation. This investigation is performed subject to the above reservation of rights and without waiver to any other defenses which State National may have.

Finally, the policy provisions upon which State National's coverage position is based and the basis of State National's investigation have been brought to your attention so that you are aware of the existence and grounds for non-coverage that could exist. It is not designed to be exhaustive, however, and is subject to re-evaluation and analysis as further information is developed. Along these same lines, State National does not waive any of its rights under the law and/or under its policies with respect to any term, condition, provision, exclusion or limitation contained therein.

Very truly yours,

Sherri N. Pavloff

SNP/jh

14

FARBER BROCKS & ZANE L.L.P.

**EXHIBIT E**



CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P 800-444-0406
F 866-692-6796
RLICORP.COM

**RLI INSURANCE COMPANY**

September 14, 2017

**CERTIFIED MAIL RETURN RECEIPT REQUESTED** 9214 8969 0099 9790 1617 0605 21
**AND REGULAR MAIL**
96 Wythe Acquisition LLC
1274 49th Street – Ste. 184
Brooklyn, NY  11211

**CERTIFIED MAIL RETURN RECEIPT REQUESTED** 9214 8969 0099 9790 1617 0605 76
**AND REGULAR MAIL**
SYG Realties, LLC
199 Lee Avenue, PMB 693
Brooklyn, NY ·11211

Re:    RLI Claim Number:         443508
       RLI Policy Number:        RXL0261775
       RLI Policyholder:         96 Wythe Acquisition LLC
       Claimant:                 Juan L. Ramirez and Carmen Nina Ramirez
       Date of Loss:             August 21, 2016

Dear Sirs or Madams:

This letter is written regarding the claim and lawsuit relating to an alleged incident which occurred on
August 21, 2016, involving Juan L. Ramirez ("plaintiff"), an employee of subcontractor Crossakiel
Construction, LLC.  In the lawsuit filed in New York Supreme Court, Kings County (Index No.
514500/2017), plaintiff alleges that he sustained injuries while working on a construction project at 96
Wythe Avenue, Brooklyn, NY.  The complaint in the lawsuit names The Williamsburg Hotel BK LLC and
96 Wythe Acquisition LLC as defendants.  RLI Insurance Company (hereinafter "RLI") addresses RLI's
position under its project-specific excess policy insuring 96 Wythe Acquisition, LLC.

**Excess/Umbrella Coverage:**

RLI issued project-specific excess policy number RXL0261775, effective 11/29/2012 to 09/06/2016, to 96
Wythe Acquisition, LLC, with a $10,000,000 combined single limit.  The project insured is the construction
of a 7-story hotel located at 96 Wythe Avenue, Brooklyn, NY.

**Underlying Coverage:**

State National Insurance Company ("State National") issued policy number PUG1200249, effective
09/28/2015 to 09/06/2016, to 96 Wythe Acquisition, LLC and SYG Realties, LLC with $1,000,000 each
occurrence subject to a $2,000,000 aggregate limit.  Coverage under the policy is limited to the
designated 7-story hotel construction located at 96 Wythe Avenue, Brooklyn, NY.

Under the RLI policy, the **Commercial Excess Liability Policy** form MXL 131 (02/05) applies and reads
in part:

   *Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,
   duties and what is and is not covered.*

RLI INSURANCE COMPANY

*Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.*

<u>*The word "insured" means any person or organization qualifying as an insured person under the terms of the **underlying insurance***</u>.

*Other words and phrases that appear in bold print have special meaning. Refer to **SECTION II. DEFINITIONS**.*

*In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:*

## I. INSURING AGREEMENT

### A. Coverage

*Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** <u>if such loss results from an occurrence insured</u> by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada. <u>If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss</u>.*

*This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.*

Thus, if the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then RLI shall not pay such loss. The policy issued by RLI, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

\*\*\*

### B. Defense and Expense of Claims and Suits

1.  *We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.*

2.  *We shall not pay any expenses except as follows:*

RLI INSURANCE COMPANY

***a.***     *If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.*

***b.***     *If an expense is incurred directly by us and solely at our discretion, then we will pay such expense.*

***c.***     *If a payment for damages is made under this policy, then we will pay related prejudgment interest for which the insured is legally liable, provided:*

> ***(1)***     *the* **underlying insurance** *pays prejudgment interest; and*

> ***(2)***     *Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.*

***3.***     *Subject to all of the foregoing:*

> ***a.***     *If the defense expense payments are included within the limit of liability of the* **underlying insurance** *by the terms of that policy, then any such expense payment we make shall reduce the limit of liability of this policy.*

> ***b.***     *If the* **underlying insurance** *does not include defense expense payments within its limit of liability by the terms of that policy, then any such expense payment we make shall not reduce the limit of liability of this policy.*

***

## II. DEFINITIONS

**A. Ultimate net loss** *means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.*

**Ultimate net loss** *shall include defense expense payments made by the insurer of the* **underlying insurance***, provided that such expenses are included within the limit of insurance of the* **underlying insurance** *by the terms of that policy.*

**B. Underlying insurance** *means the policy or policies of insurance in the Schedule of Underlying Insurance.*

***

## IV. CONDITIONS

### E. Duties In The Event Of Occurrence, Claim Or Suit

*You must see to it that we receive prompt written notice of an occurrence which may result in a*

RLI INSURANCE COMPANY

*claim under this policy. Notice should include how, when and where the occurrence took place. The names and addresses of any injured persons and witnesses must be included.*

*If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.*

*You and any other insured involved must:*

*1. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;*

*2. Authorize us to obtain records and other information;*

*3. Cooperate with us in the investigation, settlement, or defense of the claim or suit; and*

*4. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

*It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.*

***

Please refer to form CEE 238 (11/91) which reads in part:

## DESIGNATED PREMISES AND/OR PROJECTS LIMITATION

As respects premises owned, maintained or used by the insured or projects performed by or on behalf of the insured, this insurance applies only to **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule below and operations necessary or incidental to those premises; or

**2.** The project shown in the Schedule.

## SCHEDULE

**Premises:**

**Project:**

**Ground up construction of a 7-story, 130 room hotel located at 96 Wythe Avenue, Brooklyn, NY.**

***

RLI INSURANCE COMPANY

Please also note form CEE 397 (12/01) which reads in part:

**BREACH OF CONTRACT EXCLUSION**

This insurance does not apply, nor do we have a duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of the following:

**1.** Breach of express or implied contract;
**2.** Breach of express or implied warranty;
**3.** Fraud or misrepresentation regarding the formation, terms or performance of a contract; or
**4.** Libel, slander or defamation arising out of or within the contractual relationship.

There is no coverage under the RLI policy for, and RLI has no duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of breach of express or implied contract; breach of express or implied warranty; fraud or misrepresentation regarding the formation, terms or performance of a contract; or libel, slander or defamation arising out of or within the contractual relationship.

\*\*\*

The State National policy includes Endorsement #7 *which reads as follows:*

### *LEASED WORKER EXCLUSION*

*Notwithstanding anything contained elsewhere herein to the contrary, it is hereby agreed that this policy specifically excludes any sum(s) for which the insured is or may become liable to pay including costs of defense, with respect to legal and/or contractual liability for Bodily Injury and/or Personal Injury to any LEASED WORKER.*

*The term "LEASED WORKER" as used in this endorsement is defined as any person who is working on behalf of the insured on either a temporary or permanent basis under an EMPLOYEE LEASING AGREEMENT.*

*EMPLOYEE LEASING AGREEMENT means an arrangement under contract or other agreement whereby an EMPLOYEE PROVIDER FIRM provides one or more LEASED WORKERS to a client company for any period of time regardless of duration.*

*EMPLOYEE PROVIDER FIRM means an entity whose principal business is providing personnel to client companies but retains the obligation to provide coverage for Workers Compensation and/or other statutory compensation acts.*

If plaintiff was a LEASED WORKER, as defined, coverage is excluded by application of Endorsement #7.

\*\*\*

The State National policy includes Endorsement #12 *which reads as follows:*

### *PROFESSIONAL LIABILITY EXCLUSION*

*It is hereby agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any of the following professional services:*

RLI INSURANCE COMPANY

*1) Architect and Engineering Services, including the preparing, approving or failure to approve, maps, shop drawings, opinions, reports, surveys, field orders or drawings and specifications.*

*2) Medical, Dental, Nursing or Long Term Care Services, including the prescribing of or the failure to prescribe drugs and/or a course of treatment.*

*3) Legal, Accounting, Tax Preparation, Financial or Investment Services.*

*4) Insurance Agent or Brokering Services, including the procurement of or the failure to procure insurance in respect of personal lines, commercial lines, accidental and health, life insurance or annuities.*

*5) Real Estate Agent, Title Agent, Mortgage Broker or Home Financing Services.*

*6) Software, Computer Hardware or Web Site design or installation.*

*It is further agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any supervisory, inspection, review or consultancy services performed in connections with any of the above professional services.*

No coverage is afforded under the State National policy if the alleged "bodily injury" arose out of professional services, as set forth in the above exclusion.

\*\*\*

### SPECIFIED OPERATIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*
*PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*

### SCHEDULE

**Specified Operations:**

*INTERIOR DEMOLITION*

*This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses caused by the operations shown in the Schedule.*

\*\*\*

Please also see Endorsement #15 under the State National policy, which reads as follows:

**COVERAGE LIMITATION - SUBCONTRACTED WORK**
*It is hereby agreed that this policy shall not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of work performed on your behalf by a subcontractor "engaged" by you unless you have complied with at least one of the following conditions:*

RLI INSURANCE COMPANY

*(1) Contractual Indemnification: You have entered into a valid and enforceable contract with each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.*

> *(a) Such contract shall stipulate that such subcontractor "engaged" by you will agree to defend, hold harmless and indemnify you and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities, and construction managers).*

> *(b) Such indemnification shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by any employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).*

> *(c) Such indemnification shall apply unless such loss arises solely out of your negligence.*

*(2) Insurance Coverage: You and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities and construction managers) are named as additional insureds under a valid and collectible Commercial General Liability Policy written on behalf of each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.*

> *(a) Such policy shall be written on terms no less broad than ISO Form CG 00 01 10 01 (2001 Occurrence Form) with limits of not less than $1,000,000. any one occurrence, $2,000,000. general aggregate and $1,000,000. products-completed operations aggregate.*

> *(b) Such coverage shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by an employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).*

> *(c) Such coverage shall apply to such loss unless such loss arises solely out of your negligence.*

> *(d) Such coverage shall be primary to any limits available under this policy, notwithstanding any other clause to the contrary, including but not limited to any Other Insurance Clause contained in this policy or subcontractor's policy.*

> *(e) You will endeavor to obtain certificates of insurance evidencing such coverage from all such subcontractors.*

> *For purposes of this endorsement, "engaged" means obtained the services of, or contracted with, to perform work, regardless of whether or not there exists a formal, written contract.*

### <u>UNINTENTIONAL ERRORS & OMISSIONS</u>

*Notwithstanding the Coverage Limitation – Subcontracted Work Endorsement, shown above, it is hereby agreed that the following shall apply:*

> *As a condition of binding coverage, you agree to have written procedures in place requiring indemnification from subcontractors "engaged" by you.*

> *However, in the event of your unintentional non-compliance with Paragraph (1) of the Coverage Limitation – Subcontracted Work Endorsement where the subcontractor does not provide*

RLI INSURANCE COMPANY

*coverage in accordance with Paragraph (2) of the Coverage Limitation – Subcontracted Work Endorsement, the self-insured retention is amended to read $25,000.00 with respect to any loss arising out of work performed on your behalf by such subcontractor.*

Based on Endorsement #15 of the State National policy, no coverage is afforded for other than unintentional non-compliance with the enumerated conditions.

\*\*\*

Please also see Endorsement #25 under the State National policy, which reads as follows:

### SUBCONTRACT AGREEMENT RIDER
### (CONTRACTOR/SUBCONTRACTOR)

*In consideration of the premium charged, and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that in all instances in which the Named Insured engages a subcontractor, and prior to any operations performed by said subcontractor, the following Subcontract Agreement will be signed by both the Named Insured and the subcontractor:*

*The terms and conditions of this Rider shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties.*

1.   **Indemnity.** *In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.*

2.   **Insurance.** *The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.*

   *2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.*

RLI INSURANCE COMPANY

*2.2. The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the Insurance Service Office Inc.'s form and that no policy provisions shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Contractor's, Owner's (or others as required and as listed below) status as additional insured.*

*2.3. Not less than five (5) days prior to commencement of the Work and until final acceptance of the Work, Subcontractor shall provide Contractor with certificate(s) of insurance evidencing the required insurance coverage with the limits stated below or elsewhere in the Subcontract documents. The Subcontractor shall provide Contractor thirty (30) days written notice of a change or cancellation in coverage. In addition, all insurance policies shall state that the insurer will provide Contractor thirty (30) days prior written notice of a change or cancellation in coverage.*

*2.4. Unless otherwise stipulated in the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:*

*a) Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;*

*b) Comprehensive Automobile Liability insurance with minimum limits of $1,000,000 combined single limit each accident, including bodily injury and property damage liability;*

*c) Workers' Compensation and disability benefit insurance including Occupational Disease in the minimum amounts as required by the jurisdiction where the Work is performed.*

*2.5.    The Subcontractor and his insurer shall waive all rights of subrogation against the Contractor, Owner and any other indemnified party, except as respects Worker's Compensation insurance.*

*2.6.    If Subcontractor engages a Sub-Subcontractor, it is the affirmative duty of the Subcontractor to ensure that any Sub-Subcontractor complies with the insurance and indemnification requirements of this Contract Agreement.*

*List of Indemnified Parties and Additional Insureds:*

*Acknowledged by:*
| | |
|---|---|
| *Contractor:* | *Subcontractor:* |
| *Signature:* | *Signature:* |
| *Name:* | *Name:* |
| *Title:* | *Title:* |
| *Date:* | *Date:* |

In this claim, plaintiff Juan Ramirez alleges that he was employed by subcontractor Crossakiel Construction, LLC.  If Crossakiel was engaged by its named insured herein as a subcontractor, no signed Subcontract Agreement Rider between Named Insured and Subcontractor, as shown above, was entered into.  No coverage applies to the named insureds, or any other insured or party under the RLI policy, based upon non-compliance with the requirements of Endorsement 25.

\*\*\*

Finally, the State National policy also contained Endorsement #26, which provides the following:

RLI INSURANCE COMPANY

### HIRING WARRANTY

*With respect to the designated project covered hereunder, it is understood and agreed that all contractors at the project site are hired through or engaged by the General Contractor (**SYG Realties, LLC**).*

RLI has not been provided with information to show that Crossakiel Construction, LLC, subcontractor on the specified project site, was hired through or engaged by SYG Realties, LLC.  Coverage may be avoided in its entirety for breach of the subject warranty contained in endorsement #26.

***

RLI Insurance Company reserves all of its rights to supplement and/or amend this letter. By issuing this letter, RLI Company does not intend to waive or otherwise forego any provision of the policy, or any provisions of the **underlying insurance,** or any other defense or limitation of coverage under the policy and available at law.

If you have any questions about this letter, or have other information that you would like RLI Insurance Company to consider regarding its coverage position, please immediately send the other information to my attention in writing.

For RLI Insurance Company,

Darryl B. Rahn
Claim Director
darryl.rahn@rlicorp.com
Direct: (315)802-5870

cc:

**CERTIFIED MAIL RETURN RECEIPT REQUESTED** 9214 8969 0099 9790 1617 0607 98
**AND REGULAR MAIL**
James Greenberg, P.C.
The Woolworth Building
233 Broadway, Suite 900
New York, NY  10279

**CERTIFIED MAIL RETURN RECEIPT REQUESTED** 9214 8969 0099 9790 1617 0611 39
**AND REGULAR MAIL**
The Williamsburg Hotel BK LLC
1274 49th Street, Ste. 184
Brooklyn, NY  11219

**Email:**  tom.koeppel@enstargroup.com

**EXHIBIT F**



CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P  800-444-0406
F  866-692-6796
RLICORP.COM

RLI INSURANCE COMPANY

August 29, 2018

**CERTIFIED MAIL RETURN RECEIPT REQUESTED 9214 8969 0099 9790 1623 2053 43
AND REGULAR MAIL**
96 Wythe Acquisition LLC
1274 49th Street – Ste. 184
Brooklyn, NY  11211

**CERTIFIED MAIL RETURN RECEIPT REQUESTED 9214 8969 0099 9790 1623 2054 04
AND REGULAR MAIL**
Dimyon Development Corp.
199 Lee Avenue
Suite 952
Brooklyn, NY  11211

**CERTIFIED MAIL RETURN RECEIPT REQUESTED 9214 8969 0099 9790 1623 2054 42
AND REGULAR MAIL**
SYG Realties, LLC
199 Lee Avenue
Suite 693
Brooklyn, NY  11211

Re:    RLI Claim Number:        443508
       RLI Policy Number:       RXL0261775
       RLI Policyholder:        96 Wythe Acquisition LLC
       Claimant:                Juan L. Ramirez and Carmen Nina Ramirez
       Date of Loss:            August 21, 2016

Dear Sirs or Madams:

This letter will serve to supplement our previous coverage letter written regarding the claim and lawsuit
relating to an alleged incident which occurred on August 21, 2016, involving Juan L. Ramirez ("plaintiff"),
an employee of subcontractor Crossakiel Construction, LLC.  In the lawsuit filed in New York Supreme
Court, Kings County (Index No. 514500/2017), plaintiff alleges that he sustained injuries while working on
a construction project at 96 Wythe Avenue, Brooklyn, NY.  The complaint in the lawsuit names The
Williamsburg Hotel BK LLC and 96 Wythe Acquisition LLC as defendants.  It has since been amended to
add Dimyon Development Corp.  RLI Insurance Company (hereinafter "RLI") addresses RLI's position
under its project-specific excess policy insuring the named insured 96 Wythe Acquisition, LLC.  The
excess policy also insures Dimyon Development Corp. to the extent they qualify as an insured under the
terms of the **underlying insurance**.

**Excess/Umbrella Coverage:**

RLI issued project-specific excess policy number RXL0261775, effective 11/29/2012 to 09/06/2016 (the
policy), to 96 Wythe Acquisition, LLC, with a $10,000,000 combined single limit.  The project insured is
the construction of a 7-story hotel located at 96 Wythe Avenue, Brooklyn, NY.

RLI INSURANCE COMPANY

**Underlying Coverage:**

State National Insurance Company ("State National") issued policy number PUG1200249, effective 09/28/2015 to 09/06/2016, to 96 Wythe Acquisition, LLC and SYG Realties, LLC with $1,000,000 each occurrence subject to a $2,000,000 aggregate limit.  Coverage under the policy is limited to the designated 7-story hotel construction located at 96 Wythe Avenue, Brooklyn, NY.

Under the RLI policy, the **Commercial Excess Liability Policy** form MXL 131 (02/05) applies and reads in part:

> *Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*
>
> *Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.*
>
> *The word "insured" means any person or organization qualifying as an insured person under the terms of the **underlying insurance**.*
>
> *Other words and phrases that appear in bold print have special meaning. Refer to **SECTION II. DEFINITIONS**.*
>
> *In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:*

*I. INSURING AGREEMENT*

*A. Coverage*

> *Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada. If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.*
>
> *This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.*

Thus, if the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then RLI shall not pay such loss. The policy issued by RLI, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

RLI INSURANCE COMPANY

\*\*\*

## B.  Defense and Expense of Claims and Suits

**1.**     We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.

**2.**     We shall not pay any expenses except as follows:

**a.**     If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.

**b.**     If an expense is incurred directly by us and solely at our discretion, then we will pay such expense.

**c.**     If a payment for damages is made under this policy, then we will pay related prejudgment interest for which the insured is legally liable, provided:

**(1)**     the **underlying insurance** pays prejudgment interest; and

**(2)**     Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.

**3.**     Subject to all of the foregoing:

**a.**     If the defense expense payments are included within the limit of liability of the **underlying insurance** by the terms of that policy, then any such expense payment we make shall reduce the limit of liability of this policy.

**b.**     If the **underlying insurance** does not include defense expense payments within its limit of liability by the terms of that policy, then any such expense payment we make shall not reduce the limit of liability of this policy.

\*\*\*

## II. DEFINITIONS

**A. Ultimate net loss** means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.

RLI INSURANCE COMPANY

***Ultimate net loss*** *shall include defense expense payments made by the insurer of the* ***underlying insurance****, provided that such expenses are included within the limit of insurance of the* ***underlying insurance*** *by the terms of that policy.*

**B. Underlying insurance** *means the policy or policies of insurance in the Schedule of Underlying Insurance.*

***

## IV. CONDITIONS

### E. Duties In The Event Of Occurrence, Claim Or Suit

*You must see to it that we receive prompt written notice of an occurrence which may result in a claim under this policy. Notice should include how, when and where the occurrence took place. The names and addresses of any injured persons and witnesses must be included.*

*If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.*

*You and any other insured involved must:*

*1. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;*

*2. Authorize us to obtain records and other information;*

*3. Cooperate with us in the investigation, settlement, or defense of the claim or suit; and*

*4. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

*It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.*

***

Please refer to form CEE 238 (11/91) which reads in part:

## DESIGNATED PREMISES AND/OR PROJECTS LIMITATION

As respects premises owned, maintained or used by the insured or projects performed by or on behalf of the insured, this insurance applies only to **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule below and operations necessary or incidental to those premises; or

**2.** The project shown in the Schedule.

RLI INSURANCE COMPANY

**SCHEDULE**

**Premises:**

**Project:**

**Ground up construction of a 7-story, 130 room hotel located
at 96 Wythe Avenue, Brooklyn, NY.**

The lawsuit alleges Juan L. Ramirez was injured while performing construction work, repairs, erection, excavation and renovations at 96 Wythe Avenue, Brooklyn, NY. The policy only provides coverage for the ground up construction of a 7-story, 130 room hotel located, at 96 Wythe Avenue, Brooklyn, NY. It is currently the understanding of RLI that this accident may have occurred on the 8th floor of the building at 96 Wythe Avenue, Brooklyn, NY. RLI disclaims coverage to the extent the project at 96 Wythe Avenue, Brooklyn, NY was not the ground up construction of a 7-story, 130 room hotel. RLI also disclaims coverage to the extent the accident occurred above 7 stories.

\*\*\*

Please also note form CEE 397 (12/01) which reads in part:

**BREACH OF CONTRACT EXCLUSION**

This insurance does not apply, nor do we have a duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of the following:

**1.** Breach of express or implied contract;
**2.** Breach of express or implied warranty;
**3.** Fraud or misrepresentation regarding the formation, terms or performance of a contract; or
**4.** Libel, slander or defamation arising out of or within the contractual relationship.

There is no coverage under the RLI policy for, and RLI has no duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of breach of express or implied contract; breach of express or implied warranty; fraud or misrepresentation regarding the formation, terms or performance of a contract; or libel, slander or defamation arising out of or within the contractual relationship.

\*\*\*

The State National policy includes Endorsement #7 which reads as follows:

*LEASED WORKER EXCLUSION*

*Notwithstanding anything contained elsewhere herein to the contrary, it is hereby agreed that this policy specifically excludes any sum(s) for which the insured is or may become liable to pay including costs of*

RLI INSURANCE COMPANY

defense, with respect to legal and/or contractual liability for Bodily Injury and/or Personal Injury to any LEASED WORKER.

The term "LEASED WORKER" as used in this endorsement is defined as any person who is working on behalf of the insured on either a temporary or permanent basis under an EMPLOYEE LEASING AGREEMENT.

EMPLOYEE LEASING AGREEMENT means an arrangement under contract or other agreement whereby an EMPLOYEE PROVIDER FIRM provides one or more LEASED WORKERS to a client company for any period of time regardless of duration.

EMPLOYEE PROVIDER FIRM means an entity whose principal business is providing personnel to client companies but retains the obligation to provide coverage for Workers Compensation and/or other statutory compensation acts.

If plaintiff was a LEASED WORKER, as defined, coverage is excluded by application of Endorsement #7.

***

The State National policy includes Endorsement #12 which reads as follows:

### PROFESSIONAL LIABILITY EXCLUSION

It is hereby agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any of the following professional services:

1) Architect and Engineering Services, including the preparing, approving or failure to approve, maps, shop drawings, opinions, reports, surveys, field orders or drawings and specifications.

2) Medical, Dental, Nursing or Long Term Care Services, including the prescribing of or the failure to prescribe drugs and/or a course of treatment.

3) Legal, Accounting, Tax Preparation, Financial or Investment Services.

4) Insurance Agent or Brokering Services, including the procurement of or the failure to procure insurance in respect of personal lines, commercial lines, accidental and health, life insurance or annuities.

5) Real Estate Agent, Title Agent, Mortgage Broker or Home Financing Services.

6) Software, Computer Hardware or Web Site design or installation.

It is further agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any supervisory, inspection, review or consultancy services performed in connections with any of the above professional services.

No coverage is afforded under the State National policy if the alleged "bodily injury" arose out of professional services, as set forth in the above exclusion.

***

RLI INSURANCE COMPANY

Please also see Endorsement #15 under the State National policy, which reads as follows:

**COVERAGE LIMITATION - SUBCONTRACTED WORK**
*It is hereby agreed that this policy shall not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of work performed on your behalf by a subcontractor "engaged" by you unless you have complied with at least one of the following conditions:*

*(1) Contractual Indemnification: You have entered into a valid and enforceable contract with each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.*
    *(a) Such contract shall stipulate that such subcontractor "engaged" by you will agree to defend, hold harmless and indemnify you and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities, and construction managers).*

    *(b) Such indemnification shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by any employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).*

    *(c) Such indemnification shall apply unless such loss arises solely out of your negligence.*

*(2) Insurance Coverage: You and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities and construction managers) are named as additional insureds under a valid and collectible Commercial General Liability Policy written on behalf of each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.*

    *(a) Such policy shall be written on terms no less broad than ISO Form CG 00 01 10 01 (2001 Occurrence Form) with limits of not less than $1,000,000. any one occurrence, $2,000,000. general aggregate and $1,000,000. products-completed operations aggregate.*

    *(b) Such coverage shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by an employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).*

    *(c) Such coverage shall apply to such loss unless such loss arises solely out of your negligence.*

    *(d) Such coverage shall be primary to any limits available under this policy, notwithstanding any other clause to the contrary, including but not limited to any Other Insurance Clause contained in this policy or subcontractor's policy.*

    *(e) You will endeavor to obtain certificates of insurance evidencing such coverage from all such subcontractors.*

*For purposes of this endorsement, "engaged" means obtained the services of, or contracted with, to perform work, regardless of whether or not there exists a formal, written contract.*

**<u>UNINTENTIONAL ERRORS & OMISSIONS</u>**

RLI INSURANCE COMPANY

*Notwithstanding the Coverage Limitation – Subcontracted Work Endorsement, shown above, it is hereby agreed that the following shall apply:*

> *As a condition of binding coverage, you agree to have written procedures in place requiring indemnification from subcontractors "engaged" by you.*
>
> *However, in the event of your unintentional non-compliance with Paragraph (1) of the Coverage Limitation – Subcontracted Work Endorsement where the subcontractor does not provide coverage in accordance with Paragraph (2) of the Coverage Limitation – Subcontracted Work Endorsement, the self-insured retention is amended to read $25,000.00 with respect to any loss arising out of work performed on your behalf by such subcontractor.*

Based on Endorsement #15 of the State National policy, no coverage is afforded for other than unintentional non-compliance with the enumerated conditions.

*** 

Please also see Endorsement #17 under the State National policy, which reads as follows:

### *ENDORSEMENT #17*

### *DESIGNATED PROJECT COVERAGE*

*Notwithstanding anything to the contrary hereunder, such coverage as provided by this policy will only apply to the construction project being performed at the following location:*

*The demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at:*

> *96 Wythe Avenue*
> *Brooklyn, NY 11211*

*Coverage will be limited to the scheduled project, details of which are on file with Prime Specialty, Inc.*

*Premium shall be deemed fully earned at the conclusion of the project.*

> ***ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.***

The lawsuit alleges Juan L. Ramirez was injured while performing construction work, repairs, erection, excavation and renovations at 96 Wythe Avenue, Brooklyn, NY. The **underlying insurance** only provides coverage for the demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at 96 Wythe Avenue, Brooklyn, NY 11211. It is currently the understanding of RLI that this accident may have occurred on the 8th floor of the building at 96 Wythe Avenue, Brooklyn, NY. RLI disclaims coverage to the extent the project at 96 Wythe Avenue, Brooklyn, NY was not the ground up construction of a 7-story, one hundred fifty-five (155) room hotel. RLI also disclaims coverage to the extent the accident occurred above 7 stories.

***

RLI INSURANCE COMPANY

Please also see Endorsement #25 under the State National policy, which reads as follows:

### SUBCONTRACT AGREEMENT RIDER
### (CONTRACTOR/SUBCONTRACTOR)

*In consideration of the premium charged, and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that in all instances in which the Named Insured engages a subcontractor, and prior to any operations performed by said subcontractor, the following Subcontract Agreement will be signed by both the Named Insured and the subcontractor:*

*The terms and conditions of this Rider shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties.*

1.  **Indemnity.** *In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.*

2.  **Insurance.** *The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.*

    *2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.*

    *2.2. The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the Insurance Service Office Inc.'s form and that no policy provisions shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Contractor's, Owner's (or others as required and as listed below) status as additional insured.*

RLI INSURANCE COMPANY

*2.3. Not less than five (5) days prior to commencement of the Work and until final acceptance of the Work, Subcontractor shall provide Contractor with certificate(s) of insurance evidencing the required insurance coverage with the limits stated below or elsewhere in the Subcontract documents. The Subcontractor shall provide Contractor thirty (30) days written notice of a change or cancellation in coverage. In addition, all insurance policies shall state that the insurer will provide Contractor thirty (30) days prior written notice of a change or cancellation in coverage.*

*2.4. Unless otherwise stipulated in the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:*

*a) Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;*

*b) Comprehensive Automobile Liability insurance with minimum limits of $1,000,000 combined single limit each accident, including bodily injury and property damage liability;*

*c) Workers' Compensation and disability benefit insurance including Occupational Disease in the minimum amounts as required by the jurisdiction where the Work is performed.*

*2.5.    The Subcontractor and his insurer shall waive all rights of subrogation against the Contractor, Owner and any other indemnified party, except as respects Worker's Compensation insurance.*

*2.6.    If Subcontractor engages a Sub-Subcontractor, it is the affirmative duty of the Subcontractor to ensure that any Sub-Subcontractor complies with the insurance and indemnification requirements of this Contract Agreement.*

*List of Indemnified Parties and Additional Insureds:*

*Acknowledged by:*
| *Contractor:* | *Subcontractor:* |
|---|---|
| *Signature:* | *Signature:* |
| *Name:* | *Name:* |
| *Title:* | *Title:* |
| *Date:* | *Date:* |

The plaintiff, Juan Ramirez, alleges that he was employed by subcontractor Crossakiel Construction, LLC. RLI has been provided with an agreement between Dimyon Development Corp. and Crossakiel Construction, LLC as well as a Subcontract Agreement Rider. The Subcontract Agreement Rider does not identify the Subcontractor. RLI disclaims coverage to the extent that Dimyon Development Corp. has not complied with the requirements of Endorsement #25 in its agreement with Crossakiel Construction, LLC.

***

Finally, the State National policy also contained Endorsement #26, which provides the following:

### HIRING WARRANTY

*With respect to the designated project covered hereunder, it is understood and agreed that all contractors at the project site are hired through or engaged by the General Contractor (**SYG Realties, LLC**).*

RLI INSURANCE COMPANY

RLI has been provided with a contract between Dimyon Development Corp., "the contractor", and Crossakiel Construction, LLC, "the subcontractor". Contrary to Endorsement #26 RLI has been advised that the General Contractor for the designated project covered under the **underlying insurance** is Dimyon Development Corp. rather than SYG Realties, LLC. RLI disclaims coverage to the extent that Crossakiel Construction, LLC was not hired or engaged by the General Contractor for the project at 96 Wythe Avenue, Brooklyn, NY.

\*\*\*

RLI Insurance Company continues to reserves all of its rights to supplement and/or amend this letter. By issuing this letter, RLI Insurance Company does not intend to waive or otherwise forego any provision of the policy, or any provisions of the **underlying insurance,** or any other defense or limitation of coverage under the policy and available at law.

This evaluation is based upon the information which is presently available to RLI.  If you have any questions about this letter, or have other information that you would like RLI Insurance Company to consider regarding its coverage position, please immediately send the other information to my attention in writing.

RLI's actions in investigating, evaluating, and/or monitoring this matter should not be seen or construed as a waiver, estoppel, or other relinquishment of RLI's rights to limit or deny coverage, nor as an admission of any obligation under the RLI policy.

Sincerely,

Robert Buzzelli
RLI Insurance Company

**CERTIFIED MAIL RETURN RECEIPT REQUESTED 9214 8969 0099 9790 1623 2055 27 AND REGULAR MAIL**
James Greenberg, P.C.
The Woolworth Building
233 Broadway, Suite 900
New York, NY  10279

**CERTIFIED MAIL RETURN RECEIPT REQUESTED 9214 8969 0099 9790 1623 2055 58 AND REGULAR MAIL**
The Williamsburg Hotel BK LLC
1274 49th Street, Ste. 184
Brooklyn, NY  11219

**Email:**  tom.koeppel@enstargroup.com



FIRST-CLASS MAIL
Hasler
08/29/2018
US POSTAGE $006.37
ZIP 61614
011E12650897



CERTIFIED MAIL™

9214 8969 0099 9790 1623 2055 58

The Williamsburg Hotel BK LLC
1274 49th Street, Ste. 184
Brooklyn, NY 11219



RLI®
RLI INSURANCE COMPANY

P.O. BOX 3961
PEORIA, IL 61612-3961

**EXHIBIT G**



CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P  800-444-0406
F  866-692-6796
RLICORP.COM

**RLI INSURANCE COMPANY**

April 22, 2020

**Certified Mail #9214 8969 0099 9790 1633 4395 92 Return Receipt Requested and Regular Mail**
96 Wythe Acquisition LLC
1274 49th Street – Ste. 184
Brooklyn, NY  11211

**Certified Mail #9214 8969 0099 9790 1633 4396 15 Return Receipt Requested and Regular Mail**
Dimyon Development Corp.
199 Lee Avenue Suite 952
Brooklyn, NY  11211

**Certified Mail # 9214 8969 0099 9790 1633 4396 39 Return Receipt Requested and Regular Mail**
SYG Realties, LLC
199 Lee Avenue Suite 693
Brooklyn, NY  11211

Re:    RLI Claim Number:        443508
       RLI Policy Number:       RXL0261775
       RLI Policyholder:        96 Wythe Acquisition LLC
       Claimant:                Juan L. Ramirez and Carmen Nina Ramirez
       Date of Loss:            August 21, 2016

Dear Sirs or Madams:

This letter will serve to supplement our previous coverage letters regarding the claim a Complaint in the lawsuit names The Williamsburg Hotel BK LLC, 96 Wythe Acquisition LLC, and Dimyon Development Corp. as defendants.  RLI Insurance Company (hereinafter "RLI") has since received additional information in connection with the lawsuit and thus is amending its coverage positon as discussed below.

On March 24, 2020, RLI was provided with the deposition transcript of the plaintiff.  In describing his accident, the plaintiff testified that has was on an exterior scaffold on the eighth floor of 96 Wythe Avenue, Brooklyn, NY when his accident occurred.  The plaintiff testified that he was standing on a plank approximately four feet above the platform of the scaffold on the eighth floor of the building.  While cleaning bricks on the building wall with a grinder, the plaintiff alleges that the grinder kicked back and fell on his right cheek.  The incident caused him to fall from the plank onto the scaffold platform on the eighth floor of the building.

Based upon this new information it is RLI's position that there is no coverage available for 96 Wythe Acquisition, LLC, Dimyon Development Corp., SYG Realties, LLC, or any other party for the lawsuit in connection with the project at 96 Wythe Avenue, Brooklyn, NY 11211.
In connection with RLI's determination of coverage for this matter, this letter will quote the policy language which, based upon the information presently available, is relevant to the coverage issues.  However, RLI reserves its rights to rely upon all of the policy provisions, whether or not specifically quoted in this letter.

**Excess/Umbrella Coverage:**

RLI issued project-specific excess policy number RXL0261775, effective 11/29/2012 to 09/06/2016 (the policy), to 96 Wythe Acquisition, LLC, with a $10,000,000 combined single limit.  The project insured is the construction of a 7-story hotel located at 96 Wythe Avenue, Brooklyn, NY.  The policy names 96 Wythe Acquisition, LLC as the named insured.  The policy also would potentially insure Dimyon Development Corp. to the extent it qualifies as an insured under the terms of the **underlying insurance**.

96 Wythe Acquisition LLC
April 22, 2020
Page 2

**RLI INSURANCE COMPANY**

## Underlying Coverage:

State National Insurance Company ("State National") issued policy number PUG1200249, effective 09/28/2015 to 09/06/2016, to 96 Wythe Acquisition, LLC and SYG Realties, LLC with $1,000,000 each occurrence subject to a $2,000,000 aggregate limit.  Coverage under the policy is limited to the designated 7-story hotel construction located at 96 Wythe Avenue, Brooklyn, NY.

Under the RLI policy, the **Commercial Excess Liability Policy** form MXL 131 (02/05) applies and reads in part:

*Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.*

*The word "insured" means any person or organization qualifying as an insured person under the*
*terms of the **underlying insurance**.*

*Other words and phrases that appear in bold print have special meaning. Refer to*
***SECTION II. DEFINITIONS**.*

*In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:*

*I.     **INSURING AGREEMENT***
*A.     **Coverage***
*Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**.  However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada. If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.*

*This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.*

*Thus, if the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then RLI shall not pay*

96 Wythe Acquisition LLC
April 22, 2020
Page 3

**RLI INSURANCE COMPANY**

such loss. The policy issued by RLI, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

\*\*\*

**B.    Defense and Expense of Claims and Suits**

1.    *We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.*

2.    *We shall not pay any expenses except as follows:*

   a.    *If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.*

   b.    *If an expense is incurred directly by us and solely at our discretion, then we will pay such expense.*

   c.    *If a payment for damages is made under this policy, then we will pay related prejudgment interest for which the insured is legally liable, provided:*

      (1)    *the **underlying insurance** pays prejudgment interest; and*

      (2)    *Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.*

3.    *Subject to all of the foregoing:*

   a.    *If the defense expense payments are included within the limit of liability of the **underlying insurance** by the terms of that policy, then any such expense payment we make shall reduce the limit of liability of this policy.*

   b.    *If the **underlying insurance** does not include defense expense payments within its limit of liability by the terms of that policy, then any such expense payment we make shall not reduce the limit of liability of this policy.*

\*\*\*

**II.    DEFINITIONS**

A.    ***Ultimate net loss*** *means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.*

***Ultimate net loss*** *shall include defense expense payments made by the insurer of the **underlying insurance**, provided that such expenses are*

96 Wythe Acquisition LLC
April 22, 2020
Page 4

**RLI INSURANCE COMPANY**

included within the limit of insurance of the **underlying insurance** by the terms of that policy.

**B.**     **Underlying insurance** means the policy or policies of insurance in the Schedule of Underlying Insurance.

\*\*\*

IV.     **CONDITIONS**

**E.**     **Duties In The Event Of Occurrence, Claim Or Suit**
You must see to it that we receive prompt written notice of an occurrence which may result in a claim under this policy. Notice should include how, when and where the occurrence took place.  The names and addresses of any injured persons and witnesses must be included.

If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

You and any other insured involved must:
1.     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
2.     Authorize us to obtain records and other information;
3.     Cooperate with us in the investigation, settlement, or defense of the claim or suit; and
4.     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.

\*\*\*

Please refer to form CEE 238 (11/91) which reads in part:

**DESIGNATED PREMISES AND/OR PROJECTS LIMITATION**

As respects premises owned, maintained or used by the insured or projects performed by or on behalf of the insured, this insurance applies only to **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of:
1.     The ownership, maintenance or use of the premises shown in the Schedule below and operations necessary or incidental to those premises; or
2.     The project shown in the Schedule.

**SCHEDULE**

**Premises:**

96 Wythe Acquisition LLC
April 22, 2020
Page 5

RLI INSURANCE COMPANY

**Project:**

**Ground up construction of a 7-story, 130 room hotel located at 96 Wythe Avenue, Brooklyn, NY.**

The lawsuit alleges Juan L. Ramirez was injured while performing construction work, repairs, erection, excavation, and renovations at 96 Wythe Avenue, Brooklyn, NY. According to Juan L. Ramirez's testimony his accident occurred when he fell from a plank above an exterior scaffold on the eighth floor of the building located at 96 Wythe Avenue, Brooklyn, NY.

The RLI policy only provides coverage for the ground up construction of a 7-story, 130 room hotel located, at 96 Wythe Avenue, Brooklyn, NY. RLI disclaims coverage for the project at 96 Wythe Avenue, Brooklyn, NY, because it was not the ground up construction of a 7-story, 130 room hotel. RLI also disclaims coverage for the project at 96 Wythe Avenue, Brooklyn, NY because Juan L. Ramirez's accident occurred above 7 stories.

\*\*\*

Please also note form CEE 397 (12/01) which reads in part:

**BREACH OF CONTRACT EXCLUSION**

This insurance does not apply, nor do we have a duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of the following:
1.     Breach of express or implied contract;
2.     Breach of express or implied warranty;
3.     Fraud or misrepresentation regarding the formation, terms or performance of a contract; or
4.     Libel, slander or defamation arising out of or within the contractual relationship.

There is no coverage under the RLI policy for, and RLI has no duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of breach of express or implied contract; breach of express or implied warranty; fraud or misrepresentation regarding the formation, terms or performance of a contract; or libel, slander or defamation arising out of or within the contractual relationship.

\*\*\*

The State National policy includes Endorsement #7 *which reads as follows:*

### *LEASED WORKER EXCLUSION*

*Notwithstanding anything contained elsewhere herein to the contrary, it is hereby agreed that this policy specifically excludes any sum(s) for which the insured is or may become liable to pay including costs of defense, with respect to legal and/or contractual liability for Bodily Injury and/or Personal Injury to any LEASED WORKER.*

96 Wythe Acquisition LLC
April 22, 2020
Page 6

**RLI INSURANCE COMPANY**

*The term "LEASED WORKER" as used in this endorsement is defined as any person who is working on behalf of the insured on either a temporary or permanent basis under an EMPLOYEE LEASING AGREEMENT.*

*EMPLOYEE LEASING AGREEMENT means an arrangement under contract or other agreement whereby an EMPLOYEE PROVIDER FIRM provides one or more LEASED WORKERS to a client company for any period of time regardless of duration.*

*EMPLOYEE PROVIDER FIRM means an entity whose principal business is providing personnel to client companies but retains the obligation to provide coverage for Workers Compensation and/or other statutory compensation acts.*

If plaintiff was a LEASED WORKER, as defined, coverage is excluded by application of Endorsement #7.

\*\*\*

The State National policy includes Endorsement #12 which reads as follows:

### PROFESSIONAL LIABILITY EXCLUSION

*It is hereby agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any of the following professional services:*
1)   *Architect and Engineering Services, including the preparing, approving or failure to approve, maps, shop drawings, opinions, reports, surveys, field orders or drawings and specifications.*
2)   *Medical, Dental, Nursing or Long Term Care Services, including the prescribing of or the failure to prescribe drugs and/or a course of treatment.*
3)   *Legal, Accounting, Tax Preparation, Financial or Investment Services.*
4)   *Insurance Agent or Brokering Services, including the procurement of or the failure to procure insurance in respect of personal lines, commercial lines, accidental and health, life insurance or annuities.*
5)   *Real Estate Agent, Title Agent, Mortgage Broker or Home Financing Services.*
6)   *Software, Computer Hardware or Web Site design or installation.*

*It is further agreed that this policy shall not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any supervisory, inspection, review or consultancy services performed in connections with any of the above professional services.*

No coverage is afforded under the State National policy if the alleged "bodily injury" arose out of professional services, as set forth in the above exclusion.

\*\*\*

Please also see Endorsement #15 under the State National policy, which reads as follows:

### COVERAGE LIMITATION - SUBCONTRACTED WORK

*It is hereby agreed that this policy shall not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of work performed on your behalf by a subcontractor "engaged" by you unless you have complied with at least one of the following conditions:*
(1)   *Contractual Indemnification: You have entered into a valid and enforceable contract with each subcontractor "engaged" by you out of whose work (or work*

96 Wythe Acquisition LLC
April 22, 2020
Page 7

RLI INSURANCE COMPANY

performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.

    (a)    Such contract shall stipulate that such subcontractor "engaged" by you will agree to defend, hold harmless and indemnify you and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities, and construction managers).

    (b)    Such indemnification shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by any employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).

    (c)    Such indemnification shall apply unless such loss arises solely out of your negligence.

(2)    Insurance Coverage: You and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities and construction managers) are named as additional insureds under a valid and collectible Commercial General Liability Policy written on behalf of each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.

    (a)    Such policy shall be written on terms no less broad than ISO Form CG 00 01 10 01 (2001 Occurrence Form) with limits of not less than $1,000,000. any one occurrence, $2,000,000. general aggregate and $1,000,000. products-completed operations aggregate.

    (b)    Such coverage shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by an employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).

    (c)    Such coverage shall apply to such loss unless such loss arises solely out of your negligence.

    (d)    Such coverage shall be primary to any limits available under this policy, notwithstanding any other clause to the contrary, including but not limited to any Other Insurance Clause contained in this policy or subcontractor's policy.

    (e)    You will endeavor to obtain certificates of insurance evidencing such coverage from all such subcontractors.

For purposes of this endorsement, "engaged" means obtained the services of, or contracted with, to perform work, regardless of whether or not there exists a formal, written contract.

### UNINTENTIONAL ERRORS & OMISSIONS

Notwithstanding the Coverage Limitation – Subcontracted Work Endorsement, shown above, it is hereby agreed that the following shall apply:

As a condition of binding coverage, you agree to have written procedures in place requiring indemnification from subcontractors "engaged" by you.

96 Wythe Acquisition LLC
April 22, 2020
Page 8

RLI INSURANCE COMPANY

> *However, in the event of your unintentional non-compliance with Paragraph (1) of the Coverage Limitation – Subcontracted Work Endorsement where the subcontractor does not provide coverage in accordance with Paragraph (2) of the Coverage Limitation – Subcontracted Work Endorsement, the self-insured retention is amended to read $25,000.00 with respect to any loss arising out of work performed on your behalf by such subcontractor.*

After counsel for 96 Wythe Acquisition LLC tendered to Crossakiel Construction LLC's insurance carrier, Preferred Contractor's Insurance Company, that carrier denied the tender on several grounds, including that the suit arose from an injury to its named insured Crossakiel Construction LLC's employee.  Based on Endorsement #15 of the State National policy, coverage is denied due to the failure to comply with each and every condition of the Coverage Limitation – Subcontracted work.

*\*\*\**

Please also see Endorsement #17 under the State National policy, which reads as follows:

### *ENDORSEMENT #17*

### *DESIGNATED PROJECT COVERAGE*

> *Notwithstanding anything to the contrary hereunder, such coverage as provided by this policy will only apply to the construction project being performed at the following location:*

> *The demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at:*

> *96 Wythe Avenue*
> *Brooklyn, NY 11211*

> *Coverage will be limited to the scheduled project, details of which are on file with Prime Specialty, Inc.*

> *Premium shall be deemed fully earned at the conclusion of the project.*

**ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.**

The lawsuit alleges Juan L. Ramirez was injured while performing construction work, repairs, erection, excavation and renovations at 96 Wythe Avenue, Brooklyn, NY.  According to Juan L. Ramirez's testimony his accident occurred when he fell from a plank above an exterior scaffold on the eighth floor of the building 96 Wythe Avenue, Brooklyn, NY.

The **underlying insurance** only provides coverage for the demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at 96 Wythe Avenue, Brooklyn, NY 11211.  RLI disclaims coverage for the project at 96 Wythe Avenue, Brooklyn, NY because it was not the ground up construction of a 7-story, one hundred fifty-five (155) room hotel.  RLI also disclaims coverage for the project at 96 Wythe Avenue, Brooklyn, NY because Juan L. Ramirez's accident occurred above 7 stories.

*\*\*\**

Finally, the State National policy also contained Endorsement #26, which provides the following:

### *HIRING WARRANTY*

96 Wythe Acquisition LLC
April 22, 2020
Page 9

RLI INSURANCE COMPANY

*With respect to the designated project covered hereunder, it is understood and agreed that all contractors at the project site are hired through or engaged by the General Contractor (**SYG Realties, LLC**).*

RLI has been provided with a contract between Dimyon Development Corp., "the contractor", and Crossakiel Construction, LLC, "the subcontractor". Contrary to Endorsement #26 RLI has been advised that the General Contractor for the designated project covered under the **underlying insurance** is Dimyon Development Corp. rather than SYG Realties, LLC. RLI disclaims coverage to the extent that Crossakiel Construction, LLC was not hired or engaged by the General Contractor SYG Realties LLC for the project at 96 Wythe Avenue, Brooklyn, NY.

\*\*\*

RLI Insurance Company continues to reserves all of its rights to supplement and/or amend this letter. By issuing this letter, RLI Insurance Company does not intend to waive or otherwise forego any provision of the policy, or any provisions of the **underlying insurance,** or any other defense or limitation of coverage under the policy and available at law.

This evaluation is based upon the information which is presently available to RLI. If you have any questions about this letter, or have other information that you would like RLI Insurance Company to consider regarding its coverage position, please immediately send the other information to my attention in writing.

RLI's actions in investigating, evaluating, and/or monitoring this matter should not be seen or construed as a waiver, estoppel, or other relinquishment of RLI's rights to limit or deny coverage, nor as an admission of any obligation under the RLI policy. .

Sincerely,

Robert Buzzelli
RLI Insurance Company

**Certified Mail #9214 8969 0099 9790 1633 4398 44 Return Receipt Requested and Regular Mail**
James Greenberg, P.C.
The Woolworth Building
233 Broadway, Suite 900
New York, NY 10279

**Certified Mail #9214 8969 0099 9790 1633 4398 68 Return Receipt Requested and Regular Mail**
The Williamsburg Hotel BK LLC
1274 49th Street, Ste. 184
Brooklyn, NY 11219

**Email:** Frank.Hocko@starstone.com

RLI | CA

RLI INSURANCE COMPANY,
MT HAWLEY INSURANCE CC
P.O. BOX 3961
PEORIA, IL 61612-3961

CERTIFIED MAIL™

9214 8969 0099 9790 1633 4398 68

The Williamsburg Hotel BK LLC
1274 49th Street, Ste. 184
Brooklyn, NY 11219

**EXHIBIT H**



CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
P 800-444-0406
F 866-692-6796
RLICORP.COM

**RLI INSURANCE COMPANY**

July 22, 2020

**CERTIFIED MAIL #9214 8969 0099 9790 1634 5265 81 RETURN RECEIPT REQUESTED AND REGULAR MAIL**
96 Wythe Acquisition LLC
1274 49th St, Suite 184
Brooklyn, NY 11219

**CERTIFIED MAIL #9214 8969 0099 9790 1634 5266 42 RETURN RECEIPT REQUESTED AND REGULAR MAIL**
Dimyon Development Corp.
199 Lee Avenue, Suite 952
Brooklyn, NY 11211

Re:     RLI Claim Number:        00427536
        RLI Policy Number:       RXL0261775
        RLI Policyholder:        96 Wythe Acquisition LLC
        Claimant:                Gerson Mencia
        Date of Loss:            September 18, 2015

Dear 96 Wythe Acquisition and Dimyon Development Corp,

This letter will serve to supplement our previous coverage letter regarding the claim and lawsuit relating to the alleged incident which occurred on September 18, 2015, involving Gerson Mencia, an employee of C.I. Interiors Inc.  Mr. Gerson alleges that he was injured when he fell from a ladder at a worksite located at 96 Wythe Avenue, Brooklyn, New York.  The insured, 96 Wythe Acquisition LLC, was the owner of the premises, and the insured, Dimyon Development Corp, was the general contractor.

We have recently learned that the project located at 96 Wythe Avenue in Brooklyn was for the construction of a 10-story building.

Based upon this new information it is RLI Insurance Company's ("RLI") position that there is no coverage available for 96 Wythe Acquisition, LLC, Dimyon Development Corp., or any other party for the lawsuit in connection with the project at 96 Wythe Avenue, Brooklyn, NY 11211.

For the reasons set forth in more detail below, RLI disclaims coverage in its entirety to 96 Wythe Acquisition, LLC, Dimyon Development Corp., or any other party, under the excess liability policy and RLI has no duty to defend or indemnify  96 Wythe Acquisition, LLC, Dimyon Development Corp., or any other party for this matter.

**Excess/Umbrella Coverage:**

RLI issued project-specific excess policy number RXL0261775, effective 11/29/2012 to 09/06/2016, to 96 Wythe Acquisition, LLC, with a $10,000,000 combined single limit.  The project insured is the construction of a 7-story hotel located at 96 Wythe Avenue, Brooklyn, NY.  The policy names 96 Wythe Acquisition, LLC as the named insured.  The policy also would potentially insure Dimyon Development Corp. to the extent it qualifies as an insured under the terms of the **underlying insurance**.

96 Wythe Acquisition LLC
July 23, 2020
Page **2** of 7

RLI INSURANCE COMPANY

**Underlying Coverage:**

State National Insurance Company ("State National") issued policy number PUG1200249, effective 09/28/2015 to 09/06/2016, to 96 Wythe Acquisition, LLC and SYG Realties, LLC with $1,000,000 each occurrence subject to a $2,000,000 aggregate limit.  Coverage under the policy is limited to the designated 7-story hotel construction located at 96 Wythe Avenue, Brooklyn, NY.

Under the RLI policy, the **Commercial Excess Liability Policy** form MXL 131 (02/05) applies and reads in part:

> *Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*
>
> *Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.*
>
> *<u>The word "insured" means any person or organization qualifying as an insured person under the terms of the **underlying insurance**</u>.*
>
> *Other words and phrases that appear in bold print have special meaning. Refer to **SECTION II. DEFINITIONS**.*
>
> *In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:*
>
> *I.     **INSURING AGREEMENT***
> > *A.     **Coverage***
> > > *Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** <u>if such loss results from an occurrence insured</u> by **underlying insurance**.  However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada. <u>If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss</u>.*
> > >
> > > *This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.*

Thus, if the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then RLI shall not pay such loss. The policy issued by RLI, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements,

96 Wythe Acquisition LLC
July 23, 2020
Page 3 of 7

**RLI INSURANCE COMPANY**

exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

\*\*\*

B.   ***Defense and Expense of Claims and Suits***

    1.   *We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured. However, we shall have the right and opportunity to be associated with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy. If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.*

    2.   *We shall not pay any expenses except as follows:*

        a.   *If the insured is legally liable for interest which accrues on a judgment after the entry of the judgment and before we have paid, offered to pay, or deposited in court the amount of the judgment to which this policy applies, then we will pay the interest on the amount of the judgment to which this policy applies.*

        b.   *If an expense is incurred directly by us and solely at our discretion, then we will pay such expense.*

        c.   *If a payment for damages is made under this policy, then we will pay related prejudgment interest for which the insured is legally liable, provided:*

            (1)   *the **underlying insurance** pays prejudgment interest; and*

            (2)   *Our share of prejudgment interest shall not exceed the proportion that payment for damages under this policy bears to the total damages determined by final judgment or settlement.*

    3.   *Subject to all of the foregoing:*

        a.   *If the defense expense payments are included within the limit of liability of the **underlying insurance** by the terms of that policy, then any such expense payment we make shall reduce the limit of liability of this policy.*

        b.   *If the **underlying insurance** does not include defense expense payments within its limit of liability by the terms of that policy, then any such expense payment we make shall not reduce the limit of liability of this policy.*

\*\*\*

II.   **DEFINITIONS**

    A.   ***Ultimate net loss*** *means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.*

96 Wythe Acquisition LLC
July 23, 2020
Page **4** of 7

RLI INSURANCE COMPANY

*Ultimate net loss* shall include defense expense payments made by the insurer of the **underlying insurance**, provided that such expenses are included within the limit of insurance of the **underlying insurance** by the terms of that policy.

B.    **Underlying insurance** means the policy or policies of insurance in the Schedule of Underlying Insurance.

\*\*\*

IV.    CONDITIONS

E.    **Duties In The Event Of Occurrence, Claim Or Suit**
You must see to it that we receive prompt written notice of an occurrence which may result in a claim under this policy. Notice should include how, when and where the occurrence took place.  The names and addresses of any injured persons and witnesses must be included.

If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

You and any other insured involved must:
1.    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
2.    Authorize us to obtain records and other information;
3.    Cooperate with us in the investigation, settlement, or defense of the claim or suit; and
4.    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.

\*\*\*

Please refer to form CEE 238 (11/91) which reads in part:

**DESIGNATED PREMISES AND/OR PROJECTS LIMITATION**

As respects premises owned, maintained or used by the insured or projects performed by or on behalf of the insured, this insurance applies only to **bodily injury**, **property damage**, **personal injury** and **advertising injury** arising out of:
1.    The ownership, maintenance or use of the premises shown in the Schedule below and operations necessary or incidental to those premises; or
2.    The project shown in the Schedule.

**SCHEDULE**

96 Wythe Acquisition LLC
July 23, 2020
Page **5** of **7**

**RLI INSURANCE COMPANY**

**Premises:**

**Project:**

**Ground up construction of a 7-story, 130 room hotel located
at 96 Wythe Avenue, Brooklyn, NY.**

The project involved construction of a 10-story building. The RLI policy only provides coverage for the ground up construction of a 7-story, 130 room hotel located, at 96 Wythe Avenue, Brooklyn, NY. RLI disclaims coverage for the project at 96 Wythe Avenue, Brooklyn, NY, because it was not the ground up construction of a 7-story, 130 room hotel.

***

Please also note form CEE 397 (12/01) which reads in part:

**BREACH OF CONTRACT EXCLUSION**

This insurance does not apply, nor do we have a duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of the following:

1.  Breach of express or implied contract;
2.  Breach of express or implied warranty;
3.  Fraud or misrepresentation regarding the formation, terms or performance of a contract; or
4.  Libel, slander or defamation arising out of or within the contractual relationship.

There is no coverage under the RLI policy for, and RLI has no duty to defend any claim or **suit** for **bodily injury**, **property damage**, **personal injury** or **advertising injury** arising directly or indirectly out of breach of express or implied contract; breach of express or implied warranty; fraud or misrepresentation regarding the formation, terms or performance of a contract; or libel, slander or defamation arising out of or within the contractual relationship.

***

The State National policy, includes endorsement #17 which reads as follows:

*__ENDORSEMENT #17__*

*__DESIGNATED PROJECT COVERAGE__*

*Notwithstanding anything to the contrary hereunder, such coverage as provided by this policy will only apply to the construction project being performed at the following location:*

*The demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at:*

*96 Wythe Avenue
Brooklyn, NY 11211*

*Coverage will be limited to the scheduled project, details of which are on file with Prime Specialty, Inc.*

96 Wythe Acquisition LLC
July 23, 2020
Page **6** of **7**

RLI INSURANCE COMPANY

*Premium shall be deemed fully earned at the conclusion of the project.*

***ALL OTHER TERMS AND CONDITIONS REMAINING UNCHANGED.***

The **underlying insurance** only provides coverage for the demolition of one (1) vacant commercial building and the ground up construction of a seven (7) story, one hundred fifty-five (155) room hotel, 90,000 SQ FT located at 96 Wythe Avenue, Brooklyn, NY 11211.  RLI disclaims coverage for the project at 96 Wythe Avenue, Brooklyn, NY because it was not the ground up construction of a 7-story, one hundred fifty-five (155) room hotel.

***

**RLI disclaims coverage in its entirety to 96 Wythe Acquisition, LLC, Dimyon Development Corp., or any other party, under the excess liability policy and RLI has no duty to defend or indemnify  96 Wythe Acquisition, LLC, Dimyon Development Corp., or any other party for this matter.**

RLI is reserving its rights to rely on all of the policy terms and conditions and to disclaim coverage on additional basis, if deemed appropriate. Any action RLI takes is not to be construed as a waiver of any rights under the policy terms and conditions.

RLI reserves all of its rights to supplement and/or amend this letter. By issuing this letter, RLI does not intend to waive or otherwise forego any provision of the policy, or any provisions of the underlying insurance, or any other defense or limitation of coverage under the policy and available at law.

This evaluation is based upon the information which is presently available to RLI.  If you have any questions about this letter, or have other information that you would like RLI Insurance Company to consider regarding its coverage position, please immediately send the other information to my attention in writing.

RLI's actions in investigating, evaluating, and/or monitoring this matter should not be seen or construed as a waiver, estoppel, or other relinquishment of RLI's rights to limit or deny coverage, nor as an admission of any obligation under the RLI policy.

For RLI Insurance Company,

Steven Yacco
Claim Manager
315-802-5869
Steven.Yacco@rlicorp.com

cc:    **CERTIFIED MAIL #9214 8969 0099 9790 1634 5270 38 RETURN RECEIPT REQUESTED AND REGULAR MAIL**
       Law Office of Craig Rosuck, PC
       Attorneys for Plaintiff
       360 Lexington Avenue, Suite 1501
       New York, NY 10017

96 Wythe Acquisition LLC
July 23, 2020
Page **7** of 7

**RLI INSURANCE COMPANY**

**CERTIFIED MAIL #9214 8969 0099 9790 1634 5270 52 RETURN RECEIPT REQUESTED AND REGULAR MAIL**
Dimyon Development Corp
55 North 19th Street
Brooklyn, NY 11249

**CERTIFIED MAIL #9214 8969 0099 9790 1634 5270 83 RETURN RECEIPT REQUESTED AND EMAIL** asilk@gvlaw.com; cparisi@gvlaw.com
Gallo Vitucci Klar LLO
Three University Plaza, Suite 402
Hackensack, NJ 07601

**EMAIL** doug@frlawpllc.com
Douglas Rosenzweig, Esq.
Fuchs Rosenzweig PLLC

**EMAIL** Frank.Hocko@starstone.com
Frank Hocko
Enstar Group

**REGULAR MAIL**
Park Brokerage, Inc.
PO Box 50330
Brooklyn, NY 11205

FIRST-CLASS MAIL

POSTAGE $005.90

ZIP 61615
011E12650897

CERTIFIED MAIL™

9214 8969 0099 9790 1634 5265 81

RLI | cbic | MH
an RLI Company

RLI INSURANCE COMPANY, CONTRACTORS BONDING AND INSURANCE COMPAN'
MT HAWLEY INSURANCE COMPANY
P.O. BOX 3961
PEORIA, IL 61612-3961

96 Wythe Acquisition LLC
1274 49th St, Suite 184
Brooklyn, NY 11219

**<u>EXHIBIT I</u>**



**RLI INSURANCE COMPANY**

CLAIM DEPARTMENT: P.O. BOX 3961 • PEORIA, IL 61612-3961
UPS/FEDEX: 9025 N. LINDBERGH DR • PEORIA, IL 61615-1431
**P** 800-444-0406
**F** 866-692-6796
**RLICORP.COM**

March 6, 2020

**Certified Mail 9214 8969 0099 9790 1632 8033 87 Return Receipt Requested and Regular Mail**

96 Wythe Acquisition LLC
1274 49th Street, Suite 184
Brooklyn, NY 11211

| Re: | Claim Number: | 480808 |
|---|---|---|
| | Policy Number: | RXL0261775 |
| | Policyholder: | 96 Wythe Acquisition LLC |
| | Claimant: | Grandfield Realty Corp. |
| | Date of Loss: | 11/29/12 |

Dear Ms. Gross:

RLI Insurance Company ("RLI") acknowledges receipt on February 13, 2020 of an email from Park Brokerage Inc. enclosing a copy of a Summons and Complaint ("Complaint") filed on August 11, 2014 by Grandfield Realty Corp. ("Plaintiff") against Toby Moskovits, 96 W Development LLC, 96 Wythe Acquisition LLC ("96 Wythe"), Zelig Weiss, Dim Yon Development Corp., Mordechai Y. Furth, Mordy Steinfeld, All Island Masonry & Concrete Inc., Thimmappa Srinivas, P.E., Southern Consulting Engineering, P.C., Glen J. Langer, P.E., Richard Acca, Economy Contracting Corp., All Phase Testing Inc., Sanford E. Lent, P.E., Regional Testing Corp., Eugene Takhtovich, P.E., Epic Testing Services Inc., Jahmal M. Sabaha, P.E., Narov Fruma, P.E. d/b/a Narov Associates Inc., City-Wide Testing Inc., Benito P. San Pedro, P.E., Salamon Engineering PLLC, David Salamon, P.E., Structural Engineering Technologies, and George Cambourakis, P.,E. in Supreme Court of the State of New York, County of Kings under Index No. 507323/2014. The Complaint alleges that Plaintiff "is seeking compensatory and punitive damages for major structural damages to its building, caused by Defendants recklessly conducting inherently dangerous excavation activities in the development of a hotel . . . adjacent to Plaintiff's property . . ." This was RLI's first notice of this matter.

Please be advised that for the reasons set forth in more detail below, RLI disclaims coverage in its entirety to 96 Wythe and any other person or organization in this matter for any loss, cost or expense incurred for this claim and lawsuit.

**RLI Excess Policy**

RLI issued policy number RXL0261775 effective September 28, 2012 through September 28, 2015 to 96 Wythe with a $10,000,000 per occurrence limit and aggregate limit. This policy is excess to a general liability policy issued by State National Insurance Company to 96 Wythe and SYG Realties, LLC effective September 28, 2012 through September 28, 2015 with a $1,000,000 per occurrence limit and a $2,000,000 aggregate limit.

The RLI policy contains the **Commercial Excess Liability Policy**, MXL 131 (02/05), which provides in part as follows:

*Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.*

96 Wythe Acquisition LLC
March 6, 2020
Page 2 of 9

**RLI INSURANCE COMPANY**

The word "insured" means any person or organization qualifying as an insured person under the terms of the **underlying insurance**.

Other words and phrases that appear in bold print have special meaning. Refer to **SECTION II. DEFINITIONS**.

In consideration of the payment of premium, in reliance upon the statements in the Declarations and Schedule of Underlying Insurance which are made a part of this policy, and subject to the terms, conditions and exclusions of this policy we agree with you as follows:

## I.    INSURING AGREEMENT

### A.    Coverage

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's ultimate net loss if such loss results from an occurrence insured by underlying insurance. However, the insurance afforded by this policy shall apply: (a) only in excess of the underlying insurance; (b) only after the underlying insurance has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada. If the underlying insurance does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects. This includes changes by endorsement.

### B.    Defense And Expense Of Claims And Suits

1.    We shall not be obligated to assume charge of or participate in the settlement or defense of any claim made, or suit brought, or proceedings instituted against the insured.  However, we shall have the right and opportunity to participate with the insured in the defense of any claim, suit or proceeding which, in our opinion, may create liability under the terms of this policy.  If we assume such right and opportunity, we shall not continue to defend or participate in the defense of any claim or suit after the applicable limit of liability of this policy has been exhausted.

## II.    DEFINITIONS

### A.    **Ultimate net loss** means all sums actually paid, or which the insured is legally obligated to pay, as damages in settlement or satisfaction of claims or suits for which insurance is afforded under this policy, after proper deduction for all recoveries or salvage.

**Ultimate net loss** shall include defense expense payments made by the insurer of the **underlying insurance**, provided that such expenses are included within the limit of insurance of the **underlying insurance** by the terms of that policy.

### B.    **Underlying insurance** means the policy or policies of insurance in the Schedule of Underlying Insurance.

96 Wythe Acquisition LLC
March 6, 2020
Page 3 of 9

**RLI INSURANCE COMPANY**

Pursuant to the above referenced policy language, RLI's policy is excess coverage to the underlying policy. If the underlying insurance does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then RLI shall not pay any loss under the excess policy. The excess policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects, including changes by endorsement. In addition, RLI has no obligation to pay indemnity to any insured under the terms of its policy unless and until the underlying policy pays its loss limit. Further, pursuant to the above referenced policy language, RLI does not have an obligation to defend any insured, whether a named insured or an additional insured.

### IV. CONDITIONS

#### E. Duties In The Event Of Occurrence, Claim Or Suit

*You must see to it that we receive prompt written notice of an occurrence which may result in a claim under this policy. Notice should include how, when and where the occurrence took place. The names and addresses of any injured persons and witnesses must be included.*

*If a claim is made or suit brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.*

*You and any other insured involved must:*

1. *Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;*

2. *Authorize us to obtain records and other information;*

3. *Cooperate with us in the investigation, settlement, or defense of the claim or suit; and*

4. *Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

*It is a requirement of this policy that you do not make any admission of liability. You shall not, unless we agree, incur any expense or make any payment. If you do, such liability, expense or payment will be at your own cost.*

Please note the above cited duties which must be complied with as a condition precedent for coverage to apply. The alleged property damage began in or about July 2013. The Complaint naming 96 Wythe and alleging damages in excess of twenty million dollars ($20,000,000) was filed on August 11, 2014 and served on 96 Wythe on October 22, 2014. RLI's first notice of the claim and the lawsuit was on February 13, 2020, more than six years after the alleged property damage began and more than five years after the date that 96 Wythe was brought into the lawsuit. The failure to give prompt written notice of the occurrence, claim and lawsuit is a violation of the excess policy's conditions and voids any coverage under this policy for this occurrence. RLI disclaims coverage in its entirety on this basis and will neither defend nor indemnify 96 Wythe, nor any other person or organization for any loss, cost or expense incurred for this claim and lawsuit.

The policy also contains the **Continuous or Progressive Injury and Damage Exclusion**, CEE 396 (11/01), which provides:

96 Wythe Acquisition LLC
March 6, 2020
Page 4 of 9

**RLI INSURANCE COMPANY**

*This insurance does not apply to any damages because of or related to **bodily injury, property damage** or **personal injury**:*

1. *Which first existed, or alleged to have first existed, prior to the inception date of this policy; or*
2. *Which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged **bodily injury, property damage** or **personal injury** continues during this policy period; or*
3. *Which were caused, or are alleged to have been caused, by the same condition which resulted in **bodily injury, property damage** or **personal injury** which first existed prior to the inception date of this policy.*

*We shall have no duty to defend any **insured** against any loss, claim, **suit**, or other proceeding alleging damages arising out of or related to **bodily injury, property damage** or **personal injury** to which this endorsement applies.*

Pursuant to the above referenced language, there is no coverage for property damage (1) which first existed or is alleged to have first existed, (2) which is or is alleged to be in the process of taking place, or (3) which was caused or is alleged to have been caused by the same condition which first existed prior to the inception date of the policy. RLI reserves the right to disclaim coverage on this basis.

**General Liability Policy**

Please note that the RLI policy provides follow-form coverage to the underlying policy (unless the terms of the RLI policy provide otherwise). However, although the excess policy incorporates the language used in certain parts of the underlying insurance policy, RLI is entitled to and shall make its own coverage determinations under the underlying insurance policy.

The underlying general liability policy contains the **Commercial General Liability Coverage Form**, CG 00 01 10 01, which provides:

*Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.*

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*

*The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.*

*Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.*

*SECTION I – COVERAGES*
*COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY*
1. *Insuring Agreement*
   a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

96 Wythe Acquisition LLC
March 6, 2020
Page 5 of 9

**RLI INSURANCE COMPANY**

    **(1)** *The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and*

    **(2)** *Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

    *No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.*

  **b.** *This insurance applies to "bodily injury" and "property damage" only if:*

    **(1)** *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

    **(2)** *The "bodily injury" or "property damage" occurs during the policy period; and*

    **(3)** *Prior to the policy period, no insured listed under Paragraph 1. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

  **c.** *"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.*

  **d.** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

    **(1)** *Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

    **(2)** *Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

    **(3)** *Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

**2.** **Exclusions**

  *This insurance does not apply to:*

  **a.** **Expected Or Intended Injury**

  *"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

  **j.** **Damage To Property**

  *"Property damage" to:*

    **(5)** *That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

    **(6)** *That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.*

**SECTION V – DEFINITIONS**

96 Wythe Acquisition LLC
March 6, 2020
Page 6 of 9

**RLI INSURANCE COMPANY**

13. *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

17. *"Property damage" means:*
    a. *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*
    b. *Loss of use of tangible property that is physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

22. *"Your work":*
    a. *Means:*
       (1) *Work or operations performed by you or on your behalf; and*
       (2) *Materials, parts or equipment furnished in connection with such work or operations.*
    b. *Includes*
       (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*
       (2) *The providing of or failure to provide warnings or instructions.*

Pursuant to the above referenced policy language, the commercial general liability policy applies to "property damage" caused by an "occurrence" as those terms are defined in the policy and set forth above. RLI reserves the right to disclaim coverage for damages which do not constitute "property damage" and which are not caused by an "occurrence." In addition, RLI reserves the right to disclaim coverage based on the above cited exclusions for "property damage" expected or intended from the standpoint of the insured, for "property damage" to that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations and for "property damage" to that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

The policy also contains the **Coverage Limitation-Subcontracted Work** endorsement, Endorsement #15, which provides:

*It is hereby agreed that this policy shall not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of work performed on your behalf by a subcontractor "engaged" by you unless you have complied with at least one of the following conditions:*
(1) *Contractual Indemnification: You have entered into a valid and enforceable contract with each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.*
   (a) *Such contract shall stipulate that such subcontractor "engaged" by you will agree to defend, hold harmless and indemnify you and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities, and construction managers).*
   (b) *Such indemnification shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by any employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).*
   (c) *Such indemnification shall apply unless such loss arises solely out of your negligence.*
(2) *Insurance Coverage: You and any person on whose behalf you are performing work and/or are required to defend, hold harmless and indemnify (including but not limited to property owners, general contractors, government entities and construction managers) are named as*

**RLI INSURANCE COMPANY**

*additional insureds under a valid and collectible Commercial General Liability Policy written on behalf of each subcontractor "engaged" by you out of whose work (or work performed by any person or entity "engaged" by such contractor) such "bodily injury", "property damage", "personal injury", or "advertising injury" arose.*

*(a) Such policy shall be written on terms no less broad than ISO Form CG 00 01 10 01 (2001 Occurrence Form) with limits of not less than $1,000,000. any one occurrence,$2,000,000. general aggregate and $1,000,000. products-completed operations aggregate.*

*(b) Such coverage shall apply to the fullest extent permitted by applicable law in the event of loss, including, but not limited to any "suit" arising out of any loss suffered by an employee of the subcontractor (and any person or any employee of any entity "engaged" by such subcontractor).*

*(c) Such coverage shall apply to such loss unless such loss arises solely out of your negligence.*

*(d) Such coverage shall be primary to any limits available under this policy, notwithstanding any other clause to the contrary, including but not limited to any Other Insurance Clause contained in this policy or subcontractor's policy.*

*(e) You will endeavor to obtain certificates of insurance evidencing such coverage from all such subcontractors.*

*For purposes of this endorsement, "engaged" means obtained the services of, or contracted with, to perform work, regardless of whether or not there exists a formal, written contract.*

*<u>UNINTENTIONAL ERRORS & OMISSIONS</u>*
*Notwithstanding the Coverage Limitation – Subcontracted Work Endorsement, shown above, it is hereby agreed that the following shall apply:*

*As a condition of binding coverage, you agree to have written procedures in place requiring indemnification from subcontractors "engaged" by you.*

*However, in the event of your unintentional non-compliance with Paragraph (1) of the Coverage Limitation – Subcontracted Work Endorsement where the subcontractor does not provide coverage in accordance with Paragraph (2) of the Coverage Limitation – Subcontracted Work Endorsement, the self-insured retention is amended to read $25,000.00 with respect to any loss arising out of work performed on your behalf by such subcontractor.*

The general liability policy also contains the **Subcontract Agreement Rider**, Endorsement #25, which provides:

*In consideration of the premium charged, and notwithstanding anything to the contrary contained in this policy, it is hereby agreed that in all instances in which the Named Insured engages a subcontractor, and prior to any operations performed by said subcontractor, the following Subcontract Agreement will be signed by both the Named Insured and the subcontractor:*

*The terms and conditions of this Rider shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties.*

*1. **Indemnity.** In consideration of the Contract Agreement, and to the fullest extent permitted by law, the Subcontractor shall defend and shall indemnify, and hold harmless, at Subcontractor's sole expense, the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner of the property, and the officers, directors, agents, employees, successors and assigns of each of them from and against all liability or claimed liability for bodily injury or death to any person(s), and for any and all property damage or economic*

96 Wythe Acquisition LLC
March 6, 2020
Page 8 of 9

RLI INSURANCE COMPANY

damage, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through the Subcontractor or by anyone for whose acts the Subcontractor may be held liable, excluding only liability created by the sole and exclusive negligence of the Indemnified Parties. This indemnity agreement shall survive the completion of the Work specified in the Contract Agreement.

2. **Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A-" or better by A.M. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the Owner is required to name (as set forth in the schedule below), and shall specifically include coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

2.2. The Subcontractor warrants that the coverage provided under the commercial general liability policy shall be written on an "occurrence" basis with coverage as broad as the Insurance Service Office Inc.'s form and that no policy provisions shall restrict, reduce, limit or otherwise impair contractual liability coverage or the Contractor's, Owner's (or others as required and as listed below) status as additional insured.

2.3. Not less than five (5) days prior to commencement of the Work and until final acceptance of the Work, Subcontractor shall provide Contractor with certificate(s) of insurance evidencing the required insurance coverage with the limits stated below or elsewhere in the Subcontract documents. The Subcontractor shall provide Contractor thirty (30) days written notice of a change or cancellation in coverage. In addition, all insurance policies shall state that the insurer will provide Contractor thirty (30) days prior written notice of a change or cancellation in coverage.

2.4. Unless otherwise stipulated in the Contract Agreement, the Subcontractor shall maintain no less than the limits specified for each of the following insurance coverages:
   a) Commercial General Liability using an industry standard unmodified coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;
   b) Comprehensive Automobile Liability insurance with minimum limits of $1,000,000 combined single limit each accident, including bodily injury and property damage liability;
   c) Workers' Compensation and disability benefit insurance including Occupational Disease in the minimum amounts as required by the jurisdiction where the Work is performed.

2.5 The Subcontractor and his insurer shall waive all rights of subrogation against the Contractor, Owner and any other indemnified party, except as respects Worker's Compensation insurance.

2.6. If Subcontractor engages a Sub-Subcontractor, it is the affirmative duty of the Subcontractor to ensure that any Sub-Subcontractor complies with the insurance and indemnification requirements of this Contract Agreement.

96 Wythe Acquisition LLC
March 6, 2020
Page 9 of 9

**RLI INSURANCE COMPANY**

Please note the above cited duties which must be complied with as a condition precedent for coverage under the general liability policy to apply. RLI reserves the right to disclaim coverage for failure to comply with these conditions precedent.

The policy also contains the **Hiring Warranty**, Endorsement #26, which provides:

> *With respect to the designated project covered hereunder, it is understood and agreed that all contractors at the project site are hired through or engaged by the General Contractor (SYG Realties, LLC).*

RLI also reserves the right to disclaim coverage if the above cited Hiring Warranty has not been complied with.

As set forth above, RLI disclaims coverage in its entirety and will neither defend nor indemnify 96 Wythe nor any other person or organization for any loss, cost or expense incurred for this claim and lawsuit. RLI further reserves its rights to further deny coverage as set forth herein and based on any other policy provisions or other applicable legal grounds. In addition, RLI reserves all of its rights to supplement and/or amend this letter. By issuing this letter, RLI does not intend to waive or otherwise forego any provision of the policy, or any provisions of the underlying insurance, or any other defense or limitation of coverage under the policy and available at law.

RLI's position is based upon the terms and provisions of the policy and the facts known to us at this time. If you have any questions about this letter or any additional information that you believe is pertinent to the issues raised herein, please provide that to us in writing for our further coverage consideration.

RLI Insurance Company,

*Mary E. Johnson*

Mary E. Johnson, SCLA, AIC
Claim Director
(315) 849-1693
Mary.Johnson@rlicorp.com

cc:

**Regular Mail**

CRC Insurance Service
140 Broadway 36th Floor
New York, NY 10005

**Regular Mail**

Joel Adler
Park Brokerage Inc.
P.O. Box 50330
Brooklyn, NY 11205

**RLi** | **cbi**
an RLi Compan

RLI INSURANCE COMPANY, CONTR
MT HAWLEY INSURANCE COMPAN'
P.O. BOX 3961
PEORIA, IL 61612-3961

CERTIFIED MAIL™

9214 8969 0099 9790 1632 8033 87

96 Wythe Acquisition LLC
1274 49th Street, Suite 184
Brooklyn, NY 11211

**RLi** | *chi*
*an RLi Compan*

RLI INSURANCE COMPANY, CONTR
MT HAWLEY INSURANCE COMPAN
P.O. BOX 3961
PEORIA, IL 61612-3961

**CERTIFIED MAIL™**

9214 8969 0099 9790 1632 8033 87

96 Wythe Acquisition LLC
1274 49th Street, Suite 184
Brooklyn, NY 11211