**Hearing Date and Time: April 7, 2022 @ 10:00 a.m. (ET)**

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email: dspelfogel@mayerbrown.com
        leisenberg@mayerbrown.com
        dchung@mayerbrown.com

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>          Debtor. | Chapter 11<br><br>Case No.: 21-22108 -(RDD) |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE**
**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ................................................................................................... 3

    A.    The Plan Satisfies the Requirements Under Section 1129(a)(1) of the Bankruptcy Code ............................................................................ 3

        1.    The Plan Satisfies the Requirements Under Section 1122(a) of the Bankruptcy Code ............................................................. 4

        2.    The Plan Satisfies the Requirements Under Section 1123(a) of the Bankruptcy Code ............................................................. 5

        3.    The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.............................................. 8

            a.    The Plan is Consistent with Sections 1123(b)(1)-(3) of the Bankruptcy Code ................................................. 8

            b.    The Plan's Additional Provisions are Not Inconsistent with the Bankruptcy Code, in Satisfaction of Section 1123(b)(6) ......... 9

                (i)    The Exculpation Provision in Article 5.12 of the Plan is Appropriate ............................................ 9

                (ii)    The Third-Party Releases are Consensual and Appropriate ................................................... 11

                (iii)    The PPP Settlement Is Within the Debtor's Business Judgment ........................................... 14

    B.    The Plan Complies with Section 1123(d) of the Bankruptcy Code .................... 17

    C.    The Plan Satisfies the Requirements Under Section 1129(a)(2) of the Bankruptcy Code ............................................................................ 17

    D.    The Plan Satisfies the Requirements Under Section 1129(a)(3) of the Bankruptcy Code ............................................................................ 19

    E.    The Plan Satisfies the Requirements Under Section 1129(a)(4) of the Bankruptcy Code ............................................................................ 23

    F.    The Plan Satisfies the Requirements Under Section 1129(a)(5) of the Bankruptcy Code ............................................................................ 24

    G.    The Plan Does Not Require Regulatory Approval of Rate Changes and Thus Satisfies the Requirements Under Section 1129(a)(6) of the Bankruptcy Code ............................................................................ 24

    H.    The Plan Satisfies the Requirements Under Section 1129(a)(7) of the Bankruptcy Code ............................................................................ 25

*i*

## TABLE OF CONTENTS
(continued)

Page

I.   The Plan is Confirmable Notwithstanding Section 1129(a)(8) of the Bankruptcy Code ............................................................................................ 26

J.   The Plan Satisfies the Requirements Under Section 1129(a)(9) of the Bankruptcy Code ............................................................................................ 27

K.   The Plan Satisfies the Requirements Under Section 1129(a)(10) of the Bankruptcy Code ............................................................................................ 28

L.   The Plan Satisfies the Requirements Under Section 1129(a)(11) of the Bankruptcy Code ............................................................................................ 28

M.   The Plan Satisfies the Requirements Under Section 1129(a)(12) of the Bankruptcy Code ............................................................................................ 31

N.   Sections 1129(a)(13) through (16) of the Bankruptcy Code are Satisfied, or in the Alternative, Do Not Apply to the Plan ...................................... 31

O.   The Plan Satisfies the "Cram Down" Requirements Under Section 1129(b) of the Bankruptcy Code ............................................................... 32

    1.   The Plan Does Not Discriminate Unfairly with Respect to the Impaired Classes That Have Not Voted to Accept the Plan (§ 1129(b)(1)) ...................................................................................... 32

    2.   The Plan is Fair and Equitable (§ 1129(b)(2)(B)(ii)) .............................. 34

        a.   The Plan is Fair and Equitable as to Class 2 (BSP Claims) ......... 34

        b.   The Plan is Fair and Equitable as to Rejecting Classes of Unsecured Claims or Interests ..................................................... 38

P.   The Plan Satisfies the Requirements Under Section 1129(c) of the Bankruptcy Code ............................................................................................ 38

Q.   The Plan Satisfies the Requirements Under Section 1129(d) of the Bankruptcy Code ............................................................................................ 38

R.   Good Cause Exists to Waive the Stay of the Proposed Confirmation Order ....... 38

CONCLUSION ............................................................................................................. 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Fixed Income Shares: Series M v. Citibank N.A.*,
  314 F. Supp. 3d 552 (S.D.N.Y. 2018)...................................................................................15

*In re 203 N. LaSalle St. Ltd. P'ship.*,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds sub nom.*, *Bank
  of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434
  (1999)............................................................................................................................33, 37

*In re Adelphia Bus. Sol., Inc.*,
  341 B.R. 415 (Bankr. S.D.N.Y. 2003)...................................................................................30

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007)...............................................................12, 13, 15, 26

*In re Aegean Marine Petroleum Network Inc.*,
  599 B.R. 717 (Bankr. S.D.N.Y. 2019)...................................................................................10

*In re Am. Trailer & Storage, Inc.*,
  419 B.R. 412 (Bankr. W.D. Mo. 2009)..................................................................................37

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) ...............................................................................33

*In re BearingPoint, Inc.*,
  453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011)...........................................................................12

*In re Boston Post Rd. Ltd. P'ship*,
  21 F.3d 477 (2d Cir. 1994)......................................................................................................5

*In re Breitburn Energy Partners LP*,
  582 B.R. 321 (Bankr. S.D.N.Y. 2018)....................................................................................7

*In re Buttonwood Partners, Ltd.*,
  111 B.R. 57 (Bankr. S.D.N.Y. 1990)....................................................................................34

*In re Calpine Corp.*,
  2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007).......................................................11, 13

*In re Cenveo, Inc.*,
  No. 18-22178 (Bankr. S.D.N.Y. Aug. 21, 2018), ECF No. 685 .............................................11

*In re Charter Commc'ns*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009) ...................................................................................15

*i*

*In re Chemtura Corp.*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ............................................................11, 20

*In re Crane Auto., Inc.*,
    88 B.R. 81 (Bankr. W.D. Pa. 1988) ...................................................................36

*In re Dana Corp.*,
    412 B.R. 53 (S.D.N.Y. 2008) ..............................................................................7

*In re DBSD N. Am., Inc.*,
    419 B.R. 179 (Bankr. S.D.N.Y. 2009) .................................................................15

*In re Deluxe Media*,
    No. 19-23774 (Bankr. S.D.N.Y. Oct. 23, 2019), ECF No. 96 ................................14

*In re Ditech Holding Corp.*,
    606 B.R. 544 (Bankr. S.D.N.Y. 2019) .............................................................18, 21

*In re Drexel Burnham Lambert Grp., Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992) ....................................................... *passim*

*In re Dupell*,
    2000 WL 192972 (Bankr. E.D. Pa. Feb. 15, 2000) ...............................................37

*In re Eastman Kodak Co.*,
    No. 12-10202 (Bankr. S.D.N.Y. Aug. 23, 2013), ECF No. 4966 ...........................11

*In re Eddington Thread Mfg. Co.*,
    181 B.R. 826 (Bankr. E.D. Pa. 1995) ..................................................................30

*In re Enron Corp.*,
    326 B.R. 497 (S.D.N.Y. 2005) ............................................................................11

*In re Euro-Am. Lodging Corp.*,
    365 B.R. 421 (Bankr. S.D.N.Y. 2007) .................................................................25

*In Matter of Excel Mar. Carriers Ltd.*,
    2013 WL 5155040 (Bankr. S.D.N.Y. Sept. 13, 2013) ...........................................23

*In re Freymiller Trucking, Inc.*,
    190 B.R. 913 (Bankr. W.D. Okla. 1996) ..............................................................33

*In re Geijsel*,
    480 B.R. 238 (Bankr. N.D. Tex. 2012) .............................................................20, 24

*In re Genco Shipping & Trading Ltd.*,
    513 B.R. 233 (Bankr. S.D.N.Y. 2014) .................................................................12

*In re Glob. Safety Textiles Holdings LLC*,
2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009) ..............................................................19

*In re Gramercy Twins Assocs.*,
187 B.R. 112 (Bankr. S.D.N.Y. 1995) ...................................................................................37

*In re Introgen Therapeutics, Inc.*,
429 B.R. 570 (Bankr. W.D. Tex. 2010) ..................................................................................38

*In re Johnston*,
140 B.R. 526 (B.A.P. 9th Cir. 1992) ......................................................................................38

*In re Joint E. & S. Dist. Asbestos Litig.*,
982 F.2d 721 (2d Cir. 1992), *op.* ............................................................................................7

*In re Kadlubek Fam. Revocable Living Tr.*,
545 B.R. 660 (Bankr. D.N.M. 2016) ......................................................................................21

*In re Latam Airlines Grp. S.A.*,
620 B.R. 722 (Bankr. S.D.N.Y. 2020) ...................................................................................38

*In re Leslie Fay Cos.*,
207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................................................................26

*In re LightSquared Inc.*,
513 B.R. 56 (Bankr. S.D.N.Y. 2014) .....................................................................................23

*In re Malkus, Inc.*,
2004 WL 3202212 (Bankr. M.D. Fla. Nov. 15, 2004) ....................................................22, 23

*In re Mendoza*,
2010 WL 1610120 (Bankr. N.D. Cal. Apr. 20, 2010) ...........................................................37

*In re Metromedia Fiber Network, Inc.*,
416 F.3d 136 (2d Cir. 2005).....................................................................................................12

*In re N. Star Contracting Corp.*,
128 B.R. 66 (Bankr. S.D.N.Y. 1991)......................................................................................25

*In re New Midland Plaza Assocs.*,
247 B.R. 877 (Bankr. S.D. Fla. 2000).....................................................................................38

*In re NII Holdings, Inc.*,
536 B.R. 61 (Bankr. S.D.N.Y. 2015)................................................................................15, 16

*In re Northbelt, LLC*,
630 B.R. 228 (Bankr. S.D. Tex. 2020) ...................................................................................21

*iii*

*In re Prosser*,
  2009 WL 3270865 (Bankr. D.V.I. Oct. 9, 2009) ....................................................23

*In re Purdue Pharma L.P.*,
  633 B.R. 53 (Bankr. S.D.N.Y. 2021) ..........................................................20, 21

*In re Quigley Co.*,
  377 B.R. 110 (Bankr. S.D.N.Y. 2007) ...............................................................5

*In re Red Mountain Mach. Co.*,
  448 B.R. 1 (Bankr. D. Ariz. 2011) ....................................................................38

*In re Riverbend Leasing LLC*,
  458 B.R. 520 (Bankr. S.D. Iowa 2011) ..............................................................35

*In re Sabine Oil & Gas Corp.*,
  555 B.R. 180 (Bankr. S.D.N.Y. 2016) ...............................................................16

*In re Tex. Grand Prairie Hotel Realty, L.L.C.*,
  710 F.3d 324 (5th Cir. 2013) ...........................................................................35

*In re Valley View Shopping Ctr., L.P.*,
  260 B.R. 10 (Bankr. D. Kan. 2001) ..................................................................21

*In re W.R. Grace & Co.*,
  729 F.3d 311 (3d Cir. 2013)...............................................................................7

*In re Windstream Holdings, Inc.*,
  No. 19-22312 (Bankr. S.D.N.Y. June 26, 2020), ECF No. 2243 ...........................11

*In re Worldcom, Inc.*,
  2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .............................19, 24, 34

*Kane v. Johns-Manville Corp.*,
  843 F.2d 636 (2d Cir. 1988)..........................................................4, 20, 21, 30

*Matter of Madison Hotel Assocs.*,
  749 F.2d 410 (7th Cir. 1984) .......................................................................1, 24

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968).........................................................................................15

*Till v. SCS Credit Corp.*,
  541 U.S. 465 (2004)...................................................................................35, 36

**Statutes**

11 U.S.C. § 109.................................................................................................4

*iv*

11 U.S.C. § 503(b) ................................................................................................................28

11 U.S.C. § 507(a)(1) ...........................................................................................................28

11 U.S.C. § 507(a)(2) ...............................................................................................6, 28, 31

11 U.S.C. § 507(a)(3) ..............................................................................................................6

11 U.S.C. § 507(a)(4)-(7) ....................................................................................................28

11 U.S.C. § 507(a)(8) ......................................................................................................6, 28

11 U.S.C. § 1114 ...................................................................................................................32

11 U.S.C. § 1121(a) ................................................................................................................4

11 U.S.C. § 1122 .......................................................................................................... passim

11 U.S.C. § 1122(a) ................................................................................................................5

11 U.S.C. § 1123 ...................................................................................................4, 5, 19, 20

11 U.S.C. § 1123(a) ................................................................................................................6

11 U.S.C. § 1123(a)(1) ...........................................................................................................6

11 U.S.C. § 1123(a)(1)-(7) ....................................................................................................6

11 U.S.C. § 1123(a)(2) ...........................................................................................................6

11 U.S.C. § 1123(a)(3) ...........................................................................................................6

11 U.S.C. § 1123(a)(4) ...........................................................................................................7

11 U.S.C. § 1123(a)(5) .......................................................................................................7, 8

11 U.S.C. § 1123(a)(5)(E) ...................................................................................................36

11 U.S.C. § 1123(a)(6) ...........................................................................................................8

11 U.S.C. § 1123(a)(7) ...........................................................................................................8

11 U.S.C. § 1123(b) ................................................................................................................9

11 U.S.C. § 1123(b)(1) ...........................................................................................................9

11 U.S.C. § 1123(b)(1)-(3) ....................................................................................................9

11 U.S.C. § 1123(b)(2) ...........................................................................................................9

11 U.S.C. § 1123(b)(3) ..................................................................................................9

11 U.S.C. § 1123(b)(3)(A) ...........................................................................................10

11 U.S.C. § 1123(b)(6) ..........................................................................................3, 9, 10

11 U.S.C. § 1123(d) ....................................................................................................18

11 U.S.C. § 1125 ....................................................................................................18, 20

11 U.S.C. § 1125(b) ....................................................................................................18

11 U.S.C. § 1126 ....................................................................................................18, 19

11 U.S.C. § 1126(c) ...............................................................................................19, 27

11 U.S.C. § 1126(f) ....................................................................................................27

11 U.S.C. § 1126(g) ....................................................................................................27

11 U.S.C. § 1127(a) ....................................................................................................19

11 U.S.C. § 1129 ...........................................................................................................1

11 U.S.C. § 1129(a) ....................................................................................................33

11 U.S.C. § 1129(a)(1) ..........................................................................................4, 29

11 U.S.C. § 1129(a)(2) ...........................................................................................18, 19

11 U.S.C. § 1129(a)(3) .....................................................................................20, 21, 23, 24

11 U.S.C. § 1129(a)(4) ...........................................................................................24, 25

11 U.S.C. § 1129(a)(5) ....................................................................................................25

11 U.S.C. § 1129(a)(6) ....................................................................................................25

11 U.S.C. § 1129(a)(7) ...........................................................................................26, 27

11 U.S.C. § 1129(a)(8) ...........................................................................................27, 33

11 U.S.C. § 1129(a)(9) ....................................................................................................28

11 U.S.C. § 1129(a)(9)(A) ..............................................................................................28

11 U.S.C. § 1129(a)(9)(B) ...........................................................................................28, 29

11 U.S.C. § 1129(a)(9)(C) ...........................................................................................28, 29

11 U.S.C. § 1129(a)(10)........................................................................................................29

11 U.S.C. § 1129(a)(11)..............................................................................................3, 29, 30

11 U.S.C. § 1129(a)(12).................................................................................................31, 32

11 U.S.C. § 1129(a)(13)........................................................................................................32

11 U.S.C. § 1129(a)(14)........................................................................................................32

11 U.S.C. § 1129(a)(15)........................................................................................................32

11 U.S.C. § 1129(a)(16)........................................................................................................32

11 U.S.C. § 1129(b).......................................................................................28, 33, 34, 39

11 U.S.C. § 1129(b)(1).................................................................................................33, 35

11 U.S.C. § 1129(b)(2)(A)....................................................................................................35

11 U.S.C. § 1129(b)(2)(b)(i).................................................................................................38

11 U.S.C. § 1129(b)(2)(B)(ii)...............................................................................35, 37, 38

11 U.S.C. § 1129(b)(2)(C)(ii)...............................................................................................35

11 U.S.C. § 1129(c)...............................................................................................................39

11 U.S.C. § 1129(d)...............................................................................................................39

11 U.S.C. § 1930.............................................................................................................31, 32

## Other Authorities

Fed. R. Bankr. P. 3002(e) .....................................................................................................39

Fed. R. Bankr. P. 3019....................................................................................................19, 20

Fed. R. Bankr. P. 3019(a) ...............................................................................................19, 20

Local Rule 3018-1.....................................................................................................................2

96 Wythe Acquisition LLC, the above-captioned debtor and debtor in possession (the "Debtor") respectfully submits this memorandum of law in support of confirmation of the Debtor's *Second Amended Chapter 11 Plan of Reorganization*, Nov. 25, 2021, ECF No. 196 (as may be modified, amended, or supplemented from time to time, the "Plan") pursuant to section 1129 of title 11 of the United States Code (the "Bankruptcy Code").[1]  The Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Debtor stands on the verge of a major achievement, which is to confirm a chapter 11 plan of reorganization that, among other things, provides for a fresh start, will provide for $10 million cash infusion to pay creditors in full, with interest, preserves jobs, essential vendor relationships, and the Hotel, and positions the Debtor for growth and long-term viability maximizing value as it emerges from the catastrophic effect of the COVID-19 pandemic.  Such a result was far from inevitable when this Reorganization Case began.

2.      The Debtor commenced this Reorganization Case in the throes of the COVID-19 pandemic on February 23, 2021 (the "Petition Date"), when it filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor owns and operates the property located at 96 Wythe Avenue in Brooklyn, including the 147-room Williamsburg Hotel with a restaurant and multiple bars (the "Hotel").  After being severely curtailed during the initial stages of the COVID-19 pandemic, the Hotel is fully operational.

3.      But not only is the Hotel fully operational, the Debtor has been operating successfully.  At hearing on confirmation of the Plan, the evidence will show that the Hotel has outperformed its competitors, is regularly ranked as a top hotel in Brooklyn, and enjoys strong

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

customer reviews. In the last three quarters of 2021, the Hotel exceeded projections on all key metrics, generating net profits (and cash on hand) of more than $3,000,000, despite the absence of any debtor-in-possession financing. To further support the Plan and viability of the emerging entity, the Debtor will be receiving a cash infusion of $10 million , which will bring total cash on hand to approximately $13 million, thus positioning the Debtor to implement the proposed Plan and perform fully thereunder.

4.     The Debtor filed the Plan on November 25, 2021, along with its *Third Amended Disclosure Statement for Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code*, Nov. 25, 2021, ECF No. 196 (the "Disclosure Statement").

5.     In accordance with the order approving the Disclosure Statement, on December 2, 2021, the Debtor commenced solicitation of votes on the Plan. The deadline for  the voting classes to accept or reject the Plan is March 24, 2022, at 4.p.m. (prevailing Eastern) (the "Voting Deadline").[2] Following the Voting Deadline, the Debtor will conduct an audit of all ballots received and complete its final tabulation of votes and thereafter file with the Court by March 29, 2022, a certification of votes consistent with the requirements of Local Rule 3018-1 (the "Voting Report").  The Debtor believes that the Voting Report will reflect that the Plan has achieved strong support.

6.     Nevertheless, certain parties have filed objections to confirmation of the Plan and the Debtor incorporates its responses to those objections here.[3]  Simply put, those objections are without support.

---

[2] *See Fourth Amended Confirmation Scheduling Order*, February 23, 2022, ECF No. 405 (setting Voting Deadline and deadline to file Voting Report).

[3] Seven (7) objections to the Plan have been filed, as follows: (i) the *Lender's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization*, January 17, 2022, ECF No. 307 (the "BSP Initial Objection") and the *Lender's Sur-Reply in Support of its Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan*

7.      As set forth herein, and as will be further demonstrated at the hearing on Plan confirmation, the Debtor respectfully submits that it has satisfied (or will satisfy by the Plan confirmation hearing) the various Bankruptcy Code requirements to support the confirmation of the Plan. As such, the Objections to the Plan should be overruled, and the Plan should be confirmed.

## **ARGUMENT**

### A.      **The Plan Satisfies the Requirements Under Section 1129(a)(1) of the Bankruptcy Code.**

8.      Section 1129(a)(1) of the Bankruptcy Code requires that a plan of reorganization comply with all applicable provisions of the Bankruptcy Code. According to the legislative history, a principal objective of this provision is to ensure compliance with the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of the Plan, respectively. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-

---

*of Reorganization*, March 1, 2022, ECF No. 425 (the "BSP Initial Objection Sur-Reply"), the *Lender's Supplemental Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization Following Examiner's Report*, March 3, 2022, ECF No. 428 (the "BSP Supplemental Objection"), and the *Lender's Sur-Reply in Support of its Supplemental Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization*, March 21, 2022, ECF No. 467 (the "BSP Supplemental Objection Sur-Reply"); (ii) the *United States Trustee's Objection to the Confirmation of Debtor's Second Amended Chapter 11 Plan*, January 19, 2022, ECF No. 318 (the "U.S. Trustee Objection"); (iii) the *Joinder of NBE Plumbing Corp to United States Trustee's Objection to the Confirmation of Debtor's Second Amended Chapter 11 Plan*, January 25, 2022, ECF No. 345 (the "NBE Objection"); (iv) *Attorney Affirmation* filed on behalf of Grandfield Realty Corp., January 13, 2022, ECF No. 297 (the "Grandfield Objection"); (v) the *Objection to Plan of Reorganization* filed by Gerson Mencia, January 13, 2022, ECF No. 290 (the "Mencia Objection"); (vi) *NYC Department of Finance's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan*, February 15, 2022, ECF No. 391 (the "DOF Objection"); and (vii) the *NYC Water Board's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan*, February 16, 2022, ECF No. 392 (the "Water Board Objection" and together with the BSP Initial Objection, BSP Initial Objection Sur-Reply, BSP Supplemental Objection, BSP Supplemental Objection Sur-Reply, U.S Trustee Objection, NBE Objection, Grandfield Objection, Mencia Objection, and DOF Objection, the "Objections"). In response to the BSP Initial Objection, the Debtor filed its *Debtor's Response to the Lender's Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization*, February 15, 2022, ECF No. 383 (the "Response to BSP's Initial Objection"). In response to the U.S. Trustee Objection, NBE Objection, Grandfield Objection, and Mencia Objection, the Debtor filed its *Debtor's Omnibus Response to Objections to Second Amended Chapter 11 Plan of Reorganization*, February 15, 2022, ECF No. 384 (the "Omnibus Response"). In response to the BSP Supplemental Objection, the Debtor filed its *Debtor's Response to the Lender's Supplemental Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan of Reorganization*, March 17, 2022, ECF No. 464 (the "Response to BSP Supplemental Objection"). The Debtor also intends to file a response to the DOF Objection and Water Board Objection.

49 (2d Cir. 1988) (citing S. Rep. No. 95-989, at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N.

5787, 5912); *see also In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr.

S.D.N.Y. 1992) (citing H.R. REP. NO. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N.

5963, 6368).

9.      The Debtor is an eligible debtor pursuant to section 109 of the Bankruptcy Code, is

a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code, and otherwise

complies with all applicable provisions of the Bankruptcy Code. Accordingly, and as explained

further below, the Plan complies with the requirements of sections 1122 and 1123 of the

Bankruptcy Code, as well as all other applicable provisions of the Bankruptcy Code.

### 1.      The Plan Satisfies the Requirements Under Section 1122(a) of the Bankruptcy Code.

10.     Section 1122(a) of the Bankruptcy Code provides that a plan "may place a claim or

an interest in a particular class only if such claim or interest is substantially similar to the other

claims or interests of such class." 11 U.S.C. § 1122(a). "[C]lassification is constrained by two

straight-forward rules: Dissimilar claims may not be classified together; similar claims may be

classified separately only for a legitimate reason." *In re Quigley Co.*, 377 B.R. 110, 116 (Bankr.

S.D.N.Y. 2007) (quoting *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996)). Plan

proponents have significant flexibility under this standard to place similar claims into different

classes as long as there is a rational basis for doing so. *See Drexel Burnham Lambert*, 138 B.R. at

757 ("A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if

there is a reasonable basis for the classification scheme and if all claims within a particular class

are substantially similar."); *In re Boston Post Rd. Ltd. P'ship*, 21 F.3d 477, 483 (2d Cir. 1994)

(recognizing similar claims may be separately classified unless sole purpose is to engineer

impaired assenting class).

11.     The Plan's classification complies with section 1122(a) by classifying Claims and Interests into seven Classes based on, among other things, their legal rights and their priority. *See* Plan, Art. 2.1, 2.2. For example, the BSP Claims and Secured Property Tax Claims are separately classified to account for their differing legal rights and different recoveries under the Plan. Because the Debtor has demonstrated legitimate reasons for the Plan's classification structure, the Plan satisfies the standard of section 1122(a).

### 2.     The Plan Satisfies the Requirements Under Section 1123(a) of the Bankruptcy Code.

12.     Section 1123(a) of the Bankruptcy Code sets forth seven mandatory requirements that every chapter 11 plan must meet. *See* 11 U.S.C. § 1123(a)(1)-(7).  As detailed below, the Plan meets each of these requirements.

13.     *First*, section 1123(a)(1) of the Bankruptcy Code requires a plan to "designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests[.]" Article 2 of the Plan properly designates Classes of Claims and Interests and thus satisfies this requirement. Accordingly, the Debtor respectfully submit that the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

14.     *Second*, section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan[.]" Article 2 of the Plan properly designates the claims that are not impaired under the Plan.  Here, Class 1 "Priority Claims" is the sole unimpaired class. Therefore, the Debtor respectfully submits that the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

15.     *Third*, section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan[.]" Accordingly,

5

Article 2 of the Plan designates the claims that are impaired under the Plan. Specifically, Class 2 "BSP Claims"; Class 3 "Secured Property Tax Claims"; Class 4 "Secured M&M Claims"; Class 5 "Unsecured Claims"; Class 6 "Subordinated Claims"; and Class 7 "Equity Interests" are all impaired Classes under the Plan. *See* Plan, Art. 2.2. Thus, the Debtor respectfully submits that the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

16.     *Fourth*, section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). This "same treatment" standard only "requires equality of treatment, not equality of result." *In re Breitburn Energy Partners LP*, 582 B.R. 321, 358 (Bankr. S.D.N.Y. 2018); *see In re Joint E. & S. Dist. Asbestos Litig*., 982 F.2d 721, 749 (2d Cir. 1992) ("Without question, the 'same treatment' standard of section 1123(a)(4) does not require that all claimants within a class receive the same amount of money."), *op. modified on rehearing*, 993 F.2d 7 (2d Cir. 1993). In practice, the "key inquiry under § 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity" to recover. *In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008); *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) ("What matters, then, is not that claimants recover the same amount but that they have equal opportunity to recover on their claims."). The Plan satisfies this requirement because each holder of an Allowed Claim or Interest will receive the same rights and treatment on account of such Claim or Interest as other holders within the same Class. Accordingly, the Plan satisfies section 1123(a)(4).

17.     *Fifth*, section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation. "Adequate means" includes but is not limited to, "transfer of all or any part of the property of the estate to one or more entities," "sale of all or any

part of the property of the estate," and "issuance of securities of the debtor . . . in exchange for claims or interests, or for any other appropriate purpose."  In this regard, Article 5.4 of the Plan currently provides that the "Plan Sponsor shall contribute $9,000,000.00 to the Reorganized Debtor upon the Effective Date, which amount is being increased to $10 million pursuant to a modified version of the Plan to be filed prior to the hearing on Confirmation of the Plan.

18.    Article 5.4 of the Plan also provides that the Debtor and Management Company have agreed to defer repayment of over $2,000,000.00 in claims until after all Allowed Claims have been Paid.  The Debtor and Management Company have further agreed that post-confirmation, upon a sale, if any, to an arm's length third party, the Debtor may terminate the Management Company upon thirty (30) days' notice.  The foregoing will be memorialized within the modified Plan to be filed prior to the hearing on Confirmation of the Plan.  The Debtor will also continue operating from the Effective Date and so ongoing income will be used to fund operating expenses and Plan payments.  Additionally, Article 5.3 provides that "the Debtor or Reorganized Debtor, as the case may be, will be authorized to take all necessary steps and perform all necessary acts to consummate the terms and conditions" of the Plan. *See* Plan, Art. 5.3. For these reasons, the Plan satisfies section 1123(a)(5).

19.    *Sixth*, section 1123(a)(6) requires that the Debtor's corporate documents prohibit the issuance of non-voting equity securities.  Under the Plan, the Plan Sponsor will receive 100% of the voting rights in the Reorganized Debtor. To the extent necessary, the corporate documents in the Reorganized Debtor will be amended to effectuate such prior to the Effective Date. Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

20.    *Seventh*, section 1123(a)(7) of the Bankruptcy Code requires that the manner of selection of any director, officer, or trustee, or any other successor thereto, be consistent with the

interests of creditors and equity security holders and with public policy.  As described in Article

5.5 of the Plan, the Reorganized Debtor will be owned by a newly formed Plan Sponsor, 96 Wythe

New Acquisition LLC, for which Toby Moskovits and Michael Lichtenstein are the operating

members and managers. Thus section 1123(a)(7)'s requirements are satisfied.

> **3.      The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.**

21.      Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions

that may be incorporated into a chapter 11 plan. Under this provision, a plan may among other

things: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the

assumption or rejection of executory contracts and unexpired leases; and (c) provide for the

settlement or adjustment of any claim or interest belonging to the debtor or the estates. *See* 11

U.S.C. § 1123(b)(1)-(3). In addition, section 1123(b)(6) states that a plan of reorganization may

"include any other appropriate provision not inconsistent with the applicable provisions of [title

11]." *See* 11 U.S.C. § 1123(b)(6). The Plan complies with all applicable provisions of section

1123(b).

> **a.      The Plan is Consistent with Sections 1123(b)(1)-(3) of the Bankruptcy Code.**

22.      The Plan's provisions are consistent with sections 1123(b)(1), (b)(2), and (b)(3) of

the Bankruptcy Code.

23.      *First*, section 1123(b)(1) provides that a plan may impair or leave unimpaired any

class of claims or interests. Consistent with this provision, the Plan provides that Class 1 is

unimpaired and Classes 2, 3, 4, 5, 6, and 7 are impaired. *See* Plan, Art. 2.2.

24.      *Second*, section 1123(b)(2) provides that a plan may provide for the assumption and

rejection of executory contracts and unexpired leases. Accordingly, Article 5.7 of the Plan provides

for the rejection of all executory contracts and unexpired leases not previously assumed or rejected,

with exceptions for the Management Agreement and the Property Payment Plan, which shall be assumed. *See* Plan, Art. 5.7. Pursuant to the modified version of the Plan, to be filed prior to the hearing on Confirmation, the Debtor intends to amend and restate the Management Agreement.

25.    *Third*, section 1123(b)(3)(A) states that a plan may provide for the settlement or adjustment of any claim or interest belonging to the debtor or to the estate. Consistent with that provision, the Plan provides for, among other things, the PPP Settlement between the Debtor and Management Company to resolve any claims with respect to the Management Company's receipt off the PPP Loans, and pursuant to which the Plan Sponsor will contribute $1,438,000.00 to the Reorganized Debtor that will be earmarked as a settlement payment with respect to the PPP Settlement. *See* Plan, Art. 5.4.[4] These provisions are consistent with applicable law and not inconsistent with the Bankruptcy Code and should be approved.

### b.    The Plan's Additional Provisions are Not Inconsistent with the Bankruptcy Code, in Satisfaction of Section 1123(b)(6).

26.    Section 1123(b)(6) of the Bankruptcy Code provides that a Plan may include "any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). Here, the Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code and other applicable law.

### (i)    The Exculpation Provision in Article 5.12 of the Plan is Appropriate.

27.    This Court should approve the customary exculpation provision in favor of the Debtor and Released Parties contained in Article 5.12 of the Plan (the "Exculpation"). The Exculpation is intended to prevent collateral attacks against estate fiduciaries and specified parties that have facilitated the Debtor's reorganization relating to acts or omissions (other than for

---

[4] Such payment is included in the aggregate $10 million cash infusion to be provided under the Plan

conduct that constitutes gross negligence, willful misconduct, or a violation of U.S. criminal, tax,

environmental, and antitrust laws) in connection with this Reorganization Case.

28.     Courts consider a number of factors when evaluating exculpation provisions,

including whether the beneficiaries of the exculpation have participated in good faith in negotiating

the plan and bringing it to fruition, and whether the provision is integral to the plan. *See In re*

*Aegean Marine Petroleum Network Inc.*, 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019); *In re*

*Chemtura Corp.*, 439 B.R. 561, 610-11 (Bankr. S.D.N.Y. 2010).

29.     Additionally, courts in this District have found exculpation provisions to be

appropriate where they expressly carve out fraud, gross negligence, and willful misconduct, are

narrow in scope, and are limited to prepetition and postpetition acts taken in connection with the

debtor's restructuring efforts. *See, e.g.*, *In re Calpine Corp.*, 2007 WL 4565223, at *10 (Bankr.

S.D.N.Y. Dec. 19, 2007) (finding that exculpation provision that did not relieve any party of

liability for gross negligence or willful misconduct was appropriate); *In re Enron Corp.*, 326 B.R.

497, 501 (S.D.N.Y. 2005) (same).

30.     Furthermore, courts in this District regularly approve exculpation provisions that

cover both estate and non-estate fiduciaries. *See, e.g.*, Findings of Fact, Conclusions of Law and

Order Confirming the First Am. Joint Chapter 11 Plan of Reorganization, ¶ 52, *In re Windstream*

*Holdings, Inc.*, No. 19-22312 (Bankr. S.D.N.Y. June 26, 2020), ECF No. 2243 ("Windstream

Confirmation Order"); Findings of Fact, Conclusions of Law and Order Confirming the Fourth

Am. Joint Chapter 11 Plan of Reorganization ¶¶ 46, 60, *In re Cenveo, Inc.*, No. 18-22178 (Bankr.

S.D.N.Y. Aug. 21, 2018), ECF No. 685 (overruling U.S. Trustee objection to exculpation of both

estate fiduciaries and non-fiduciaries from liability for "any cause of action for any claim related

to any act or omission in connection with, relating to, or arising out of, the chapter 11 cases);

Findings of Fact, Conclusions of Law and Order Confirming the First Am. Joint Chapter 11 Plan

of Reorganization ¶ 40, *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. Aug. 23, 2013),

ECF No. 4966.

31.     The failure to include the Exculpation in the Debtor's Plan would chill the essential

participation of the Debtor's management, professionals, and advisors to the Debtor, as well as

Management Company, which is an essential stakeholder that has worked to formulate the Plan.

Given the express carve-out for gross negligence, willful misconduct, and actual fraud, the

standard of care established by the Exculpation is consistent with and appropriate under applicable

precedent in the Second Circuit and is appropriate as a matter of public policy. *See In re*

*BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011).

32.     The Debtor submits that the Debtor and Released Parties merit the protections of

the Exculpation proposed in the Plan and that the protections it affords are reasonable and

appropriate. Specifically, the Exculpation is the product of good-faith, arms' length negotiation,

and the failure to include the Exculpation could have deterred the parties from collaborating to

formulate the Plan and exit strategy from chapter 11. The Exculpation is narrowly tailored, relates

only to acts or omissions in connection with or arising out of the Debtor's Reorganization Case,

and only benefits those parties who are traditionally considered estate fiduciaries or those (such as

the Plan Sponsor, which is making the cash infusion of $10 million) that have made similar

contributions to the Debtor's Reorganization Case. Ultimately, the scope of the Exculpation and

the parties protected by it is consistent with established practice in this District.

> **(ii)     The Third-Party Releases are Consensual and Appropriate.**

33.     In addition, the Plan provides consensual third-party releases (the "Third-Party

Releases") to the Released Parties, who have played an essential role in this Reorganization Case.

34.    Courts in the Second Circuit have held that a third-party release may be approved with the consent of the affected party. *See, e.g., In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) ("Nondebtor releases may also be tolerated if the affected creditors consent.") (citing *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993)); *Adelphia*, 368 B.R. at 268. Courts in this District generally agree that an affirmative vote to accept a plan that contains a third-party release constitutes express consent to the release. *See In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 271 (Bankr. S.D.N.Y. 2014) (granting third-party release with respect to affected parties that consented to the releases by voting in favor of the plan); *Adelphia*, 368 B.R. at 268 (upholding non-debtor releases for creditors who voted to accept the plan because creditors consented to the releases by voting to support the plan); *In re Calpine Corp.*, 2007 WL 4565223, at *10 (Bankr. S.D.N.Y. Dec. 19, 2007) (same). Courts in this District have approved third-party releases as consensual where the plan provided for a third-party release, but the affected parties were given the opportunity to opt out of providing the release. *See, e.g.*, Windstream Confirmation Order, ¶ 51.

35.    The Debtor submits the Third-Party Releases satisfy the standards necessary to show that they are consensual in accordance with precedent in this District. Importantly, as set forth in Article 5.10 of the Plan, "[E]xcept as provided below, the Release shall not apply to the Released Parties (other than the Debtor) with respect to a holder of a Claim that is entitled to vote that elects to "opt-out" of such Release on its timely and properly-submitted ballot." *See* Plan, Art. 5.10. Consistent with the Plan, the Disclosure Statement and ballots distributed to holders of Claims entitled to vote conspicuously quoted the Third-Party Releases from Article 5.10 of the Plan and clearly informed holders to simply check a box if they did not consent to the Third-Party

Releases. *See* Disclosure Statement, at 51-52; Order Approving the Third Am. Disclosure

Statement Ex. 2A, December 1, 2021, ECF. No. 204.

36.    In addition to being consensual, the Third-Party Releases are reasonable and

appropriate.  They exclude claims "for any act or omission that constitutes fraud, gross negligence,

or willful misconduct[.]" *See* Plan, Art. 5.10.  Additionally, each Released Party has made

significant contributions to the Debtor's restructuring efforts that supports their release, including,

but not limited to, negotiating and formulating the terms of the Plan that provides for a $10 million

cash infusion by the Plan Sponsor, payment of Allowed Claims of creditors in full over time with

interest, the preservation of critical business relationships, and a prompt emergence from Chapter

11.

37.    The Released Parties also have made substantial commitments of time and effort in

the Debtor's restructuring efforts. For example, the Management Company manages all

relationships with Hotel vendors and employees, and contracts directly with vendors for services

required and employs approximately eighty (80) to one-hundred twenty (120) full-time employees

(and more employees seasonally) dedicated to servicing the Hotel and its guests. Further, the

Debtor's management has brought to bear its extensive industry knowledge during this

Reorganization Case and will carry out the restructuring after it concludes.

38.    Ultimately, as the evidence will demonstrate, the proof of the Released Parties'

contributions to the Debtor's restructuring is borne out most clearly by the fact that the Hotel is

open and fully operational in the midst of a global pandemic (unlike many hotels in New York

City), outperforming the overall New York hotel market, operating profitably, and exceeding

financial projections.  Moreover, the Plan provides for 100% payment, with interest over time.

Courts in this District have approved third-party releases under similar circumstances. *See, e.g.*,

Windstream Confirmation Order; Order Approving the Disclosure Statement for and Confirming the Joint Prepackaged Plan of Reorganization, *In re Deluxe Media*, No. 19-23774 (Bankr. S.D.N.Y. Oct. 23, 2019), ECF No. 96. In light of these facts and applicable precedent in this District, the Debtor submits the Third-Party Releases are reasonable and appropriate, in the best interests of the Debtor's estate, and should be approved.

### (iii)    The PPP Settlement Is Within the Debtor's Business Judgment.

39.    The Court should approve the Debtor's release of its claims and causes of action against the Released Parties (the "Debtor Releases"). It is long-established that a debtor may, in its sound business judgment, settle or releases its claims in a chapter 11 plan. See *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (applying business judgment standard to debtor's decision to release its claims); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 263 n. 289 (Bankr. S.D.N.Y. 2007) (noting that debtors have "considerable leeway" in granting debtor releases); *see also In re Charter Commc'ns*, 419 B.R. 221, 257 (Bankr. S.D.N.Y. 2009) ("Debtors are authorized to settle or release their claims in a chapter 11 plan.").

40.    Such releases are granted by courts in the Second Circuit where they are "fair and equitable" and in the "best interests of the Debtors' estate." *Fixed Income Shares: Series M v. Citibank N.A.*, 314 F. Supp. 3d 552, 560 (S.D.N.Y. 2018) (quoting *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993)); *see Charter Commc'ns*, 419 B.R. at 257 ("When reviewing releases in a debtor's plan, courts consider whether such releases are in the best interest of the estate."). To determine whether the release is in the best interests of the Debtor's estate, the court is not required to conduct a "'mini-trial' of the facts or the merits underlying [each] dispute" and '[t]he settlement need not be the best that the debtor could have obtained.'" *In re NII Holdings, Inc.*, 536 B.R. 61, 99 (Bankr. S.D.N.Y. 2015) (quoting *Adelphia*, 368 B.R. at 225); *see also*

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (holding that in plan confirmation context, court must "determine that a proposed compromise forming part of a reorganization plan is fair and equitable"). Rather, the "court should instead 'canvass the [settled] issues [to] see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re NII Holdings*, 536 B.R. at 100 (quoting *Adelphia*, 368 B.R. at 225).

41.    Courts in this Circuit consider the following factors to determine whether a settlement is within the range of reasonableness: (a) the balance between the claim's possibility of success and the settlement's benefits; (b) the likelihood of complex and protracted litigation, including attendant expense, inconvenience, and delay; (c) the interests of creditors; (d) whether other interested parties support the settlement; (e) the nature and breadth of releases; (f) the competency and experience of counsel supporting, and the experience and knowledge of the judge reviewing, the settlement; and (g) the extent to which the settlement is the product of arms'-length bargaining. *Id*. (citing *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)).

42.    The ultimate determination of whether a proposed settlement falls within the range of reasonableness is committed to the discretion of the bankruptcy court. *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 256-57 (Bankr. S.D.N.Y. 2016) ("The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court."). While a court must make its own "'considered and independent judgment'" as to the reasonableness of the settlement, the court "may rely on the opinions of the debtor, the parties to the settlement, and professionals in evaluating the necessary facts, and it should factor in the debtor's exercise of its business judgment in recommending the settlement." *In re NII Holdings*, 536 B.R. at 99 (quoting *In re Dewey & LeBouef LLP*, 478 B.R. 627, 640-41 (Bankr. S.D.N.Y. 2012)).

43.    In this case, the Debtor Releases are limited to claims regarding the PPP Settlement, which are being settled pursuant to the Plan in exchange for a cash payment of the full amount asserted paid as part of the subject loan.[5]  Such payment is an essential component of the Plan and constitute a sound exercise of the Debtor's business judgment. Importantly, Article 5.10 of the Plan expressly excludes from the Debtor Releases claims "for any act or omission that constitutes fraud, gross negligence, or willful misconduct as determined by a final order of a court of competent jurisdiction," and Article 6 of the Plan preserves the Debtor's rights, Claims, and estate causes of action as detailed in the Plan.[6]

44.    Furthermore, without the Debtor Releases, the Debtor and its stakeholders would not have been able to obtain the substantial benefits provided by the Plan, including allowing the Debtor to emerge from Chapter 11, and the cash infusion in the amount of $10 million that will be used to fund distributions to creditors whose Allowed Claims will be paid in full over time with interest. The Debtor Releases also provide finality and avoid potentially significant delay in consummating the Plan.

45.    Accordingly, the inclusion of the Debtor Releases will benefit all of the Debtor's stakeholders. To the extent the U.S. Trustee, BSP, or any other party continues to object to the Debtor Releases, the objections do nothing to address, much less refute, the showing that the Debtor Releases are appropriate, limited to claims relating to the PPP Settlement, and well within the range of reasonableness.  For these reasons, the Debtor's agreement to provide the Debtor

---

[5] Approximately $600,000 was transferred to the Debtor and/or used for expenses related to the Debtor from the amounts received for the PPP Loan.

[6] The Debtor asserts that the *Report of Examiner, Eric M. Huebscher*, February 28, 2022, ECF No. 418 (the "Examiner Report") is fatally flawed and does not identify any material causes of action against any of the Released Parties that would justify the risk, expense, and delay of pursuing any such causes of action.  That said, it bears emphasizing that based on the Plan provisions just described, the Debtor Releases are limited, and do not cover any estate causes of action identified in the Examiner Report.

Releases constitutes a sound exercise of the Debtor's business judgment, is fair and equitable and in the best interests of the estate, and it should be approved.

**B.       The Plan Complies with Section 1123(d) of the Bankruptcy Code.**

46.       Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." Article 5.7 of the Plan provides for the assumption of the Property Payment Plan and the Management Agreement and the payment of certain agreed amounts in connection therewith. No cure amounts are due under either agreement. Accordingly, the Debtor respectfully submits that the Plan satisfies the requirements of section 1123(d).

**C.       The Plan Satisfies the Requirements Under Section 1129(a)(2) of the Bankruptcy Code.**

47.       Section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with all applicable provisions of the Code, including "the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code." *In re Ditech Holding Corp.*, 606 B.R. 544, 578 (Bankr. S.D.N.Y. 2019) (citing H.R. REP. NO. 95-595, at 412 (1977)); 11 U.S.C. § 1129(a)(2).

48.       Section 1125 of the Bankruptcy Code prohibits a debtor from soliciting acceptances or rejections of the Plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).

49.       Section 1126 of the Bankruptcy Code outlines the requirements for acceptance of the Plan. 11 U.S.C. § 1126. Under section 1126, only holders of allowed claims in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such

17

claims of equity interests may vote to accept or reject such plan. 11 U.S.C. § 1126. A class of claims has accepted a plan if at least two-thirds in amount and more than one-half in number of holders of allowed claims votes to accept the plan. 11 U.S.C. § 1126(c). Holders of claims in impaired classes that "are not otherwise deemed to reject the Plan" have been "conclusively presumed to have accepted the Plan." *In re Worldcom, Inc.*, 2003 WL 23861928, at *50 (Bankr. S.D.N.Y. Oct. 31, 2003).

50.     Consistent with these requirements, the Debtor distributed solicitation packages to creditors holding claims in the Classes entitled to vote on the Plan. *See* Certificate of Service of Solicitation Materials, December 6, 2021, ECF No. 213.  The Debtor expects that the Voting Report and evidence at hearing on Plan confirmation will demonstrate that the Debtor has satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

51.     Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation so long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code. *See* 11 U.S.C. § 1127(a).  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors who previously accepted the plan, if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor. *See* Fed. R. Bankr. P. 3019(a). Courts interpreting Bankruptcy Rule 3019 have held that a proposed modification to a previously accepted plan will be deemed accepted if such modification is not material or does not adversely affect the way creditors and stakeholders are treated. *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009).

52.     As noted above, the Debtor anticipates filing a modified version of the Plan that increases the cash infusion from $9 million to $10 million, provides the mechanism post-

confirmation for the termination of the Management Agreement, in the event of a sale to an arm's length third party that requests such termination, makes technical clarifications and enhancements, and resolves certain formal and informal comments to the Plan by parties in interest.  As so modified, the Plan complies with sections 1122 and 1123 of the Bankruptcy Code, and the Debtor has complied with section 1125.  Bankruptcy Rule 3019 is satisfied because the modifications do not "adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification."  Fed. R. Bankr. P. 3019(a).  The Debtor therefore submits that no additional solicitation or disclosure is required on account of the modifications, and that those modifications should be deemed accepted by all creditors that previously accepted the Plan.

**D.    The Plan Satisfies the Requirements Under Section 1129(a)(3) of the Bankruptcy Code.**

53.    Section 1129(a)(3) of the Code requires that, as a condition for plan confirmation, the plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). To satisfy the "good faith" test, the plan must have been "proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Johns-Manville*, 843 F.2d at 649 (internal quotation marks omitted). The inquiry focuses primarily on "whether the proposal of the plan was in good faith, not on whether the plan generally is in good faith . . . [or on a] free ranging inquiry into fairness and equity." *See In re Purdue Pharma L.P.*, 633 B.R. 53, 74 (Bankr. S.D.N.Y. 2021) (emphasis added).  The good faith analysis "speaks more to the process of plan development than to the content of the plan." *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010); *see In re Geijsel*, 480 B.R. 238, 256 (Bankr. N.D. Tex. 2012) (stating that good faith objection based on "aggregation of all things they say are wrong with the Plan" is "more properly addressed under the feasibility requirement").]

54. In evaluating compliance with section 1129(a)(3), courts also consider whether the plan "will achieve a result consistent with the standards prescribed under the Bankruptcy Code." *Purdue Pharma*, 633 B.R. at 75. Those objectives include preserving going concerns, maximizing distributions to creditors, giving debtors a fresh start, and expeditiously liquidating claims. *Ditech Holding*, 606 B.R. at 578.

55. The Plan easily meets these requirements. There is no question that, facing a matured mortgage loan held by an aggressive lender, and just beginning to come off of the worst of the COVID-19 pandemic, the Debtor is in need of a financial restructuring. *See Johns-Manville*, 843 F.2d at 649 (endorsing Bankruptcy Court's conclusion that good-faith requirement was met because "Johns-Manville was and remains 'a financially besieged enterprise in desperate need of reorganization of its crushing real debt, both present and future.'").

56. Additionally, the Plan provides for the payment of all allowed claims in full. The Debtor could easily have justified short-changing its unsecured creditors and paying them a fraction of what is owed. Instead, the Debtor formulated its plan to pay unsecured creditors in full over a relatively short period of time—a rarity in chapter 11 cases, especially during the COVID-19 pandemic. *See, e.g.*, *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 28 (Bankr. D. Kan. 2001) (holding that plan that paid secured and unsecured claims in full while preserving equity interests was proposed in good faith); *In re Northbelt, LLC*, 630 B.R. 228, 278 (Bankr. S.D. Tex. 2020) (noting that "a single-asset debtor's desire to protect its equity can be a legitimate Chapter 11 objective"); *In re Kadlubek Fam. Revocable Living Tr.*, 545 B.R. 660, 667 n.7 (Bankr. D.N.M. 2016) ("In a solvent estate . . . the debtor in possession/trustee must also take into account the interests of equity.").

57.     While the Plan does not reflect a negotiated agreement with BSP, the Plan is nevertheless the product of significant arm's-length negotiations with stakeholders over more than a year.  The Debtor also has been engaging continuously with unsecured creditors on claims allowance issues (and has objected to claims as necessary).  As a result, the Debtor has agreed to stipulations with creditors (or otherwise obtained orders) to reduce the allowed amount of claims by more than $16 million.  The Debtor has also negotiated a settlement with the City of New York to satisfy unpaid property taxes—a first priority secured claim—over time rather than up front, which resulting effect on cash flow benefits the Debtor, creditors, and the estate.[7]  In addition, the Debtor asserts a claim for refunds from alleged overpayments in taxes paid to the City of New York, and has filed objections to additional claims asserted by the City of New York relating to use and corporate taxes.  The Debtor submits that such claims are objectionable, overstated, subject to set off from refunds due as a result of the Debtor's tax abatement claim, and subject to pending settlement discussions.[8]

58.     The Debtor also worked to reach a consensual solution with BSP.  While the Debtor's efforts have been rebuffed, and BSP has sought to take steps to "steal" the Hotel, to the detriment of all other stakeholders, the Debtor continues to be open to work to narrow and/or resolve open issues, where possible.  Irrespective, the Debtor also has taken BSP's input regarding certain Plan and Disclosure Statement provisions, and increased the amount of cash being infused into the Debtor to $10 million.

59.     As detailed in the Debtor's Response to BSP's Objection, the Debtor also emphasizes that the cases BSP cites to support its good faith arguments are out of place. In *Malkus*,

---

[7] There are pending objections to certain other claims filed by the City of New York, which will either be resolved by agreement or litigated.

[8] As noted above, the Debtor will be separately responding to the DOF Objection.

for example, the lack of good faith was found (with minimal discussion of applicable law) where the debtor's shareholders "retain[ed] all equity interests with no new investment, while unsecured creditors receive virtually nothing," and the debtor's president paid himself while secured creditors went unpaid. *In re Malkus, Inc.*, 2004 WL 3202212, at *4 (Bankr. M.D. Fla. Nov. 15, 2004).  In addition to being contrary to the "good faith" standard discussed above, the facts in *Malkus* are distinguishable in that, here, creditors are paid in full and the Debtor's principals are making a substantial cash investment of $10 million.

60.    In addition, the Court's suggestion in *Excel Marine* that the good faith requirement might be lacking if "the unsecured creditors are left with only a death trap provision" has no bearing on this case. *In the Matter of Excel Mar. Carriers Ltd.*, 2013 WL 5155040, at *4 (Bankr. S.D.N.Y. Sept. 13, 2013). It was not the mere absence of creditor negotiations that determined whether the good faith requirement was met (as BSP argues), but the fact that creditors were potentially facing a plan that coercively provided greater benefits to accepting creditors than to dissenting ones absent negotiations.  *Id.*  Here, unsecured creditors are being paid in full whether or not they vote to accept the Plan, so the analysis in *Excel Marine* is inapplicable.

61.    Likewise, the extremely limited discussion in *LightSquared* concerning good faith is purely dicta. *In re LightSquared Inc.*, 513 B.R. 56, 100 (Bankr. S.D.N.Y. 2014) (denying confirmation on other grounds and making no findings as to section 1129(a)(3)).  And the *Prosser* case cited by BSP does not even discuss confirmation at all. *In re Prosser*, 2009 WL 3270865, at *33 (Bankr. D.V.I. Oct. 9, 2009) (denying Chapter 7 debtor's claims of exemptions where debtor was found, in bad faith, to have concealed assets).

62.    BSP's separate arguments with respect to the conduct of the Debtor and its principals before the bankruptcy case, or the merits of various substantive provisions of the Plan,

are irrelevant to the question of good faith. As noted above, the good faith requirement addresses the formulation and solicitation of the plan itself; it does not touch upon whether, at some point in history, a debtor's insiders engaged in conduct that parties now take issue with. *Matter of Madison Hotel Assocs.*, 749 F.2d 410, 424–25 (7th Cir. 1984) (holding that district court erred in considering pre-filing conduct); *Geijsel*, 480 B.R. at 255 ("Courts do not consider pre-petition actions when assessing the good faith of a proposed plan."). The Debtor's goal in the Plan is to provide for preservation of Debtor as a going concern for the benefit of the Debtor, its creditors, its equity holders, and the Williamsburg community while ensuring all parties receive at least their entitlement under the Bankruptcy Code.

63.    The Debtor respectfully submits that under these circumstances, the Plan comfortably satisfies section 1129(a)(3) of the Bankruptcy Code.

**E.    The Plan Satisfies the Requirements Under Section 1129(a)(4) of the Bankruptcy Code.**

64.    Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person issuing securities or acquiring property under the Plan, be subject to approval of the bankruptcy court as reasonable. 11 U.S.C. § 1129(a)(4). Courts have construed section 1129(a)(4) to require that all payments of professional fees that are made from estate assets be subject to review and approval by the Court for reasonableness. *See, e.g., In re Worldcom, Inc.*, 2003 WL 23861928, at *54; *Drexel Burnham Lambert*, 138 B.R. at 760.

65.    Article 3.1(c) of the Plan provides that "[a]ny Professional Person seeking allowance of a Professional Fee Claim shall file, with the Bankruptcy Court, its final application for allowance of compensation for services rendered, and reimbursement of expenses incurred prior to the Effective Date and in connection with the preparation and prosecution of such final

application no later than forty-five (45) calendar days after the Effective Date." *See* Plan, Art. 3.1(c). The Plan further provides that "[a]ll Professional Persons seeking allowance by the Bankruptcy Court of a Professional Fee Claim shall be paid in full in cash in such amounts as are approved by the Bankruptcy Court . . . ." *Id.*

66.    Based on the foregoing, the Debtor submits that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**F.    The Plan Satisfies the Requirements Under Section 1129(a)(5) of the Bankruptcy Code.**

67.    Section 1129(a)(5) requires the plan proponent to disclose the "identity and affiliations of" the proposed officers and directors of the reorganized debtors. 11 U.S.C. § 1129(a)(5). As described in Article 5.5 of the Plan, the Reorganized Debtor will be owned by 96 Wythe New Acquisition LLC, for which Toby Moskovits and Michael Lichtenstein are the operating members and managers.   In addition, their service to the Debtor has been instrumental to the Hotel's profitable operations, and the Debtor submits that their service going forward is essential to effectuating the $10 million cash infusion, and in carrying out a successful restructuring. For these reasons, the Plan satisfies the requirements of section 1129(a)(5).[9]

**G.    The Plan Does Not Require Regulatory Approval of Rate Changes and Thus Satisfies the Requirements Under Section 1129(a)(6) of the Bankruptcy Code.**

68.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan. The Debtor is not subject to any such regulation

---

[9] The BSP Initial Objection Sur-Reply appears to argue that *In re Euro-Am. Lodging Corp.*, 365 B.R. 421 (Bankr. S.D.N.Y. 2007) and *In re N. Star Contracting Corp.*, 128 B.R. 66 (Bankr. S.D.N.Y. 1991) stand for the proposition that section 1129(a)(5) of the Bankruptcy Code is not satisfied where the debtor has chronically failed to pay taxes and maintain proper financial records. *See* BSP Initial Objection Sur-Reply, at 7. In fact, neither case even mentions section 1129(a)(5).

and the Plan does not provide for any rate changes.  Accordingly, section 1129(a)(6) is satisfied, or in the alternative, does not apply.

**H.    The Plan Satisfies the Requirements Under Section 1129(a)(7) of the Bankruptcy Code.**

69.    Section 1129(a)(7) of the Code requires that impaired creditors "receive or retain under the plan . . . a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7). This standard, customarily known as the "best interests of creditors" test, is satisfied provided that the estimated recoveries for a debtor's creditors in a hypothetical chapter 7 liquidation would be less than or equal to the estimated recoveries under the debtor's plan of reorganization for a holder of an impaired claim that votes to reject the plan. The chapter 7 distribution scheme along with "the probable costs incident to such liquidation" must be accounted for in applying the best interests test. *Adelphia Commc'ns*, 368 B.R. at 252 ("[T]he court must measure what is to be received by rejecting creditors in the impaired classes under the plan against what would be received by them in the event of liquidation under chapter 7," factoring in, among other things, "the probable costs incident to such liquidation."); *In re Leslie Fay Cos.*, 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997) ("[T]he court 'must find that each dissenting creditor will receive or retain value that is not less than the amount he or she would receive if the debtor were liquidated.'" (internal quotations omitted, alterations incorporated)).

70.    The Plan unambiguously satisfies the best interests test.  The Debtor's liquidation analysis, which was attached to the Disclosure Statement, sets forth the Debtor's estimation of recoveries for each class of impaired creditors in a hypothetical chapter 7 liquidation scenario.  The liquidation analysis was prepared by Getzler Henrich and Hilco Realty, the Debtor's financial advisors and consultants, and in close consultation with the Debtor and its principals.  As described

therein, the estimated recoveries for holders of Allowed Unsecured Claims in a hypothetical chapter 7 liquidation is 35.8%, a dramatically worse outcome than under the Plan, which provides them a full recovery over time. *See* Disclosure Statement, Ex. B.  Every other class of impaired creditors will receive a full recovery under the Plan, which by definition satisfies the best interests test as to them.   Hence it is not surprising that no objecting party has meaningfully engaged with the liquidation analysis, much less actually rebutted it.[10]  Accordingly, the Debtor submits that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**I.      The Plan is Confirmable Notwithstanding Section 1129(a)(8) of the Bankruptcy Code.**

71.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests must accept the plan. Under section 1126(c) of the Bankruptcy Code, a class of claims accepts a plan if holders of at least two-thirds in amount and more than one half in number of the allowed claims in that class have accepted the plan. A class that is not impaired under a plan is presumed to have accepted, while a class is deemed to reject a plan if the plan provides that holders of claims or interest within that class do not receive or retain any property under the plan on account of such claims or interests. *See* 11 U.S.C. §§ 1126(f), (g).

72.     Here, the holders of Claims in Class 1 (Priority Claims) are unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan. *See* Plan, Art. 2.2.

73.     As noted above, the Debtor expects that the Voting Report and other evidence at the hearing on Plan confirmation will show that at least one voting impaired Class has affirmatively voted to accept the Plan.

---

[10] BSP has argued that the Plan does not satisfy section 1129(a)(7). For the reasons set forth more fully in the Response to BSP's Objection, incorporated herein by reference, BSP's argument is without merit because, among other things, the Plan provides for BSP to retain its mortgage and BSP will receive the full value of its Allowed Claim, with interest.

74.     The holders of Claims in Class 6 (Subordinated Claims) and Class 7 (Equity Interests) are deemed rejecting Classes for purposes of section 1129(a)(8) of the Bankruptcy Code. Because the Debtor expects that the evidence will show that there is at least one voting impaired Class that has accepted the Plan, as discussed further below, the Plan will be confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding rejection by Class 6 or Class 7, or any other Class entitled to vote that the Voting Report indicates has rejected the Plan.

**J.      The Plan Satisfies the Requirements Under Section 1129(a)(9) of the Bankruptcy Code.**

75.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments. In particular, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative expenses allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims. 11 U.S.C. § 1129(a)(9)(A). Each holder of a claim of a kind specified in section 507(a)(1) or sections 507(a)(4)-(7) of the Bankruptcy Code—generally domestic support obligations, wage, employee benefit, and deposit claims entitled to priority—also must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan). 11 U.S.C. § 1129(a)(9)(B). Finally, the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code— *i.e.*, priority tax claims—must receive cash as detailed below. 11 U.S.C. § 1129(a)(9)(C); *see also Drexel Burnham Lambert*, 138 B.R. at 761.

76.     The Plan satisfies section 1129(a)(9) of the Bankruptcy Code. First, the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because Article 3.1(a) provides that

Allowed Administrative Claims shall be paid in full in cash in accordance with and at the time set forth in the Plan. Second, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because Article 3.2 of the Plan provides that all holders of the types of Claims specified by section 1129(a)(9)(B), specifically Allowed Priority Claims, are unimpaired under the Plan. Finally, the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because Article 3.1(b) provides that holders of Allowed Priority Tax Claims shall receive deferred cash payments over five[11] years of a value as of the Effective Date of the Plan that is equal to the allowed amount of such Claims, consistent with section 1129(a)(9)(C).

77.     The Debtors therefore submit that the Plan satisfies the requirements of section 1129(a)(9)(C).

**K.     The Plan Satisfies the Requirements Under Section 1129(a)(10) of the Bankruptcy Code.**

78.     Section 1129(a)(10) of the Bankruptcy Code provides that, if a class of claims is impaired under the plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. 11 U.S.C. § 1129(a)(1).

79.     The Voting Report and evidence at the confirmation hearing will show that at least one impaired Class entitled to vote has accepted the Plan and that section 1129(a)(10) of the Bankruptcy Code will be satisfied.

**L.     The Plan Satisfies the Requirements Under Section 1129(a)(11) of the Bankruptcy Code.**

80.     Under Section 1129(a)(11) of the Code, a court must find that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial

---

[11] As stated above, the City of New York filed certain tax claims against the Debtor. The Debtor has contested such, asserts that it is entitled to a refund from the City of New York on accounts of a tax abatement claim, and has engaged in settlement discussions with the City of New York. Such claims will either be resolved by agreement, final order of the Court, and/or repaid over time to the fullest extent provided for under the statute.

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

81.     Success does not have to be a certainty to satisfy section 1129(a)(11). The statute just requires that the debtor demonstrate a "reasonable assurance" that plan consummation is unlikely to result in a further need for financial reorganization once the debtor emerges. *See Johns-Manville*, 843 F.2d at 649 ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Adelphia Bus. Sol., Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003) ("In making determinations as to feasibility . . . a bankruptcy court does not need to know to a certainty, or even a substantial probability, that the plan will succeed. All it needs to know is that the plan has a reasonable likelihood of success."); *In re Eddington Thread Mfg. Co.*, 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995) ("[T]here is a relatively low threshold of proof necessary to satisfy the feasibility requirement.").

82.     As an initial matter, the Debtor's experts, Getzler Henrich and Hilco Realty, have provided a thorough analysis detailing projections over the life of the Plan, showing there will be sufficient cash for effective-date payments and those shortly thereafter, plus sufficient free cash flow over the life of the Plan to cover deferred payments thereunder.  In fact, the Debtor is projecting it will have excess cash flow from operations of as much as $15 million by the end of the Plan's term, plus a hotel valued in excess of $152,000,000.  Further, Debtor's experts conclude that the market will have stabilized by then and the Debtor will be able to refinance (or sell) the Hotel.

83.     With respect to the more than $40 million of asserted unsecured claims, these are overstated and not supportable.  As to Effective Date payments, claims objections have been filed and are pending with respect to the vast majority (by dollar amount) of unsecured claims, and the

Debtor believes it will prevail or reach settlement on all such objections.  Indeed, as of the date hereof, more than $16,000,000 in asserted unsecured claims have already been disallowed.  To the extent the total amount of allowed unsecured claims is modestly higher than estimated, the Debtor's independently vetted projections establish there should be more than enough cash to satisfy such claims.  There is therefore no need for the Debtor to have cash on hand today to satisfy such disputed and unsupportable claims; the Debtor's profits could instead be put toward those claims in due course if necessary.  Further, the disputed and unliquidated claims of Gerson Mencia and Grandfield Realty Corp. are entirely baseless, and even if somehow allowed in part, are likely otherwise covered and would be paid by insurers and/or co-defendants. The Debtor has filed objections to the afore-referenced claims, and has sought to estimate the claims at zero for voting purposes.  The Debtor provides additional details regarding such objections in its Omnibus Response.

84.    In addition, the proposed balloon payment to BSP is also feasible.  As is set forth in the Debtor's expert reports—and as common sense suggests—the stabilization of the New York hospitality market following COVID-19, and the stabilization of the Hotel following several years of normal operations, will result in the Hotel's value increasing significantly.  Leitner Berman, a highly-qualified real estate appraiser, has valued the Hotel at $152,000,000 at the conclusion of the Plan period.  Both Hilco Realty and B. Riley Financial, Inc. have opined that, at such valuation, the BSP loan can be readily refinanced.  Accordingly, the Debtor will demonstrate that it should have no difficulty paying BSP in full through a refinancing or sale of the Hotel within the six-year period allotted under the Plan.

**M.**    **The Plan Satisfies the Requirements Under Section 1129(a)(12) of the Bankruptcy Code.**

85.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan." Further, section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.  Article 3.1(d) of the Plan provides for the full payment of all such outstanding fees as they come due, until such time as a final decree is entered closing the Reorganization Case, the Reorganization Case is converted or dismissed, or the Court orders otherwise.

86.    Accordingly, the Debtor respectfully submits that the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**N.**    **Sections 1129(a)(13) through (16) of the Bankruptcy Code are Satisfied, or in the Alternative, Do Not Apply to the Plan.**

87.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-emergence at the levels established in accordance with section 1114 of the Bankruptcy Code. The Debtor does not have a retiree benefits program. Thus, this section is satisfied, or in the alternative, does not apply.

88.    Section 1129(a)(14) imposes a domestic support obligation on individual debtors. 11 U.S.C. § 1129(a)(14).  Here, the Debtor is not an individual and does not have domestic support obligations. Thus, this section is satisfied, or in the alternative, does not apply.

89.    Section 1129(a)(15) imposes requirements on debtors who are individuals. 11 U.S.C. § 1129(a)(15). Here, the Debtor is not an individual and, accordingly, section 1129(a)(15) of the Bankruptcy Code is satisfied, or in the alternative, does not apply.

90.     Section 1129(a)(16) imposes requirements on non-business entities. 11 U.S.C. § 1129(a)(16).  Here, the Debtor entity is a business entity and so, section 1129(a)(16) of the Bankruptcy Code is satisfied, or in the alternative, does not apply.

**O.     The Plan Satisfies the "Cram Down" Requirements Under Section 1129(b) of the Bankruptcy Code.**

91.     Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are satisfied other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are met.  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must demonstrate that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to the non-accepting impaired classes.  11 U.S.C. § 1129(b)(1).

92.     As noted above, two Classes of Claims and Interests (Classes 6 and 7) are presumed to reject the Plan, and it appears that Class 2 (BSP Claims) also is likely to reject the Plan.  Even so, the Plan satisfies all applicable requirements under section 1129(b) of the Bankruptcy Code necessary to "cram down" the Plan over these and any other rejecting Classes.

**1.     The Plan Does Not Discriminate Unfairly with Respect to the Impaired Classes That Have Not Voted to Accept the Plan (§ 1129(b)(1)).**

93.     The Bankruptcy Code does not specify a standard for determining when "unfair discrimination" exists, so courts typically examine the facts and circumstances of each case to make the determination.  *See In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and

circumstances of each case to give meaning to the proscription against unfair discrimination."); *Cf. In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585–86 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."), *rev'd on other grounds sub nom.*, *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).

94.     The unfair discrimination standard prevents creditors and interest holders with similar legal rights from receiving materially different treatment under a proposed plan without a compelling justification.  *See In re WorldCom, Inc.*, 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct. 31, 2003).  Courts in this Circuit have ruled that "[u]nder section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment."  *Id.*; *see also In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990) (in evaluating unfair discrimination, courts assess whether "(i) there is a reasonable basis for discriminating, (ii) the debtor cannot consummate the plan without discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale," but also noting that the second prong assessing whether the debtor cannot consummate the plan without discrimination is not dispositive of the question of unfair discrimination).

95.     Here, the Plan does not discriminate unfairly because Classes of Claims and Interests with similar legal rights will not be receiving materially different treatment under the Plan.  As discussed above, classifications and recoveries under the Plan are based on factors including the legal rights of the holders of Claims and Interests, among other things.  Accordingly,

applying the reasonableness standard of section 1129(b), the Plan does not unfairly discriminate among Classes of Claims and Interests.

### 2.      The Plan is Fair and Equitable (§ 1129(b)(2)(B)(ii)).

96.      Section 1129(b)(1) of the Code provides that a plan of reorganization may be confirmed over the objection of a dissenting impaired class of creditors if the plan "is fair and equitable." 11 U.S.C. § 1129(b)(1).

97.      With respect to a class of impaired secured claims, the "fair and equitable" requirement means that the objecting secured creditors must: (i) retain their liens and receive deferred cash payments in at least the allowed amount of their claim, plus interest; (ii) the property securing the creditors' claims must be sold, with the liens attaching to the sale proceeds; or (iii) the secured creditors must receive the "indubitable equivalent" of their claims. 11 U.S.C. § 1129(b)(2)(A).  Importantly, there are no *per se* rules as to what payment terms are permissible with respect to a proposed cram-down of secured claims; non-amortizing, and even negative-amortizing terms are permitted under the right circumstances. *In re Riverbend Leasing LLC*, 458 B.R. 520, 534 (Bankr. S.D. Iowa 2011). Instead, a holistic assessment of the characteristics of the debtor, the plan, and the related risk factors is required. *In re Tex. Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 333-34 (5th Cir. 2013).

98.      A plan is considered "fair and equitable" pursuant to sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code if, with respect to a class of impaired unsecured claims or interests, the plan provides that no holder of any junior claim or interest will receive or retain any property under the plan on account of such junior claim or interest.

### a.      The Plan is Fair and Equitable as to Class 2 (BSP Claims).

99.      As described more fully in the Debtor's Response to BSP's Initial Objection (ECF No. 383), the Plan is fair and equitable as to BSP for several reasons.

100.    *First*, the Plan provides BSP an appropriate interest rate under *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).  The Debtor and BSP agree that because there is no efficient market for loans to provide financing as proposed by the Debtor under the Plan, the *Till* prime-plus" or "formula" rate applies.  *Id.* at 479-80.

101.    The interest rate the Plan provides BSP is permissible.  Section 1123(a)(5)(E) specifically allows for the "modification of any lien" in connection with confirming a chapter 11 plan. 11 U.S.C. § 1123(a)(5)(E).  Courts have held that Congress intended, through this section of the Code, to allow chapter 11 debtors to modify (among other things) the interest rate on secured claims in order to implement a plan of reorganization. *See, e.g.*, *In re Crane Auto., Inc.*, 88 B.R. 81, 83 (Bankr. W.D. Pa. 1988).

102.    Here, Debtor and BSP agree that there is no efficient market for loans to provide financing as proposed by the Debtor under the Plan.  Accordingly, the parties agree that the *Till* "prime-plus" or "formula" rate is applicable. *Till*, 541 U.S. at 479-80.  Under *Till*'s formula rate approach, courts begin with the prime rate and add a risk adjustment to compensate the creditor being crammed down for the risk they are being forced to bear. *Id.*  The Supreme Court in *Till* noted that "courts have generally approved adjustments of 1% to 3%" and that the rate should be "not so high as to doom the plan." *Id.* at 480 ("If the court determines that the likelihood of default is so high as to necessitate an 'eye-popping' interest rate, the plan probably should not be confirmed.") (citation omitted).  Where the Debtor and BSP disagree is on the appropriate risk adjustment to apply under *Till*.  As the evidence will demonstrate at hearing on confirmation, BSP's proposed *Till* rate of 10.30%—including an astounding risk adjustment of 7.05%—is unsupported and excessive, while the Debtor's proposed risk adjustments under the Plan (1.25% above prime for the first four years, and 1.75% for the remaining two years of Plan payments) are

appropriate based on *Till* and a sensible assessment of the risk factors facing BSP. This is particularly true, where the Hotel is an appreciating asset, which has been valued at over $152 million at the end of the term of the Plan.

103.    *Second*, the other terms of payment to BSP under the Plan are appropriate. The term, loan-to-value ratio, and lack of pre-maturity amortization of the BSP Undisputed Claim are consistent with applicable law and, as the evidence will establish, comports with market practices with respect to real estate mortgage loans.

104.    For example, in one case, the court was prepared to confirm a plan that provided for a mortgage lender to receive five years of monthly interest-only payments at 4.75% with a balloon payment at the end of the term, which closely tracks the Plan's treatment of BSP. *In re Mendoza*, 2010 WL 1610120, at *2 (Bankr. N.D. Cal. Apr. 20, 2010) (confirming revised plan with shorter term at lower rate). Similarly, in a case from this District, the court endorsed a five-year term of interest-only payments. *In re Gramercy Twins Assocs.*, 187 B.R. 112, 124 (Bankr. S.D.N.Y. 1995); *see also In re Am. Trailer & Storage, Inc.*, 419 B.R. 412, 432 (Bankr. W.D. Mo. 2009) (holding plan that provided for a balloon payment did not discriminate unfairly). And in *Dupell*, the court approved conceptually of a minimally amortizing payment over five years. *In re Dupell*, 2000 WL 192972, at *1 (Bankr. E.D. Pa. Feb. 15, 2000) (denying confirmation where source of balloon payment was "bonuses from [debtor's] separate employment with 'his wife's company'"). Additionally, the six-year term for BSP's note is appropriate, as the evidence will demonstrate.

105.    *Third*, the fact that the Plan Sponsor will receive 100% of the equity in the Reorganized Debtor does not violate the absolute priority rule. The Supreme Court has unequivocally stated that the source of the absolute priority rule is Section 1129(b)(2)(B)(ii), which

deals only with unsecured creditors. *See 203 N. LaSalle St. P'ship*, 526 U.S. at 449 (1999) ("[T]he absolute priority rule now on the books as subsection (b)(2)(B)(ii) may carry a new value corollary."). The rule thus is inapplicable to Class 2, and therefore BSP lacks standing to assert it on behalf of others. *See In re New Midland Plaza Assocs.*, 247 B.R. 877, 893 (Bankr. S.D. Fla. 2000) (holding that "fully secured creditor" lacked "standing to assert the absolute priority rule of § 1129(b)(2)(B)(ii)").[12] Moreover, the Plan makes clear and the evidence at hearing will further confirm that the Plan Sponsor will receive the equity in the Reorganized Debtor *exclusively* on account of the $10 million cash infusion[13], and not on account of any prior ownership interest. *See* Plan, Art. 3.2(g).

106. Even if the absolute priority rule were implicated, the evidence will make clear that the "new value exception" applies because the Plan Sponsor's infusion is new, substantial, money or money's worth, necessary for a successful reorganization, and reasonably equivalent to the property that the Plan Sponsor is receiving under the Plan. *See In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 801-02 (Bankr. S.D.N.Y. 2020) (citing *BT/SAP Pool C Assocs. v. Coltex Loop Cent. Three Partners*, 203 B.R. 527, 534 (S.D.N.Y. 1996)); *In re Red Mountain Mach. Co.*, 448 B.R. 1, 14-15 (Bankr. D. Ariz. 2011) (holding that cash infusion of approximately $1.25 million used to satisfy effective date obligations of debtor and recapitalize the debtor going forward satisfied new value exception).[14]

---

[12] The Debtor also notes that the absolute priority rule is inapplicable to unsecured creditors that are paid in full, as will be the case under the Plan. *See In re Johnston*, 140 B.R. 526, 530 (B.A.P. 9th Cir. 1992) ("Thus, in our evaluation of the absolute priority rule, we focus only on whether the plan provides that [the objecting unsecured creditor] will be paid in full"); *In re Introgen Therapeutics, Inc.*, 429 B.R. 570, 585 (Bankr. W.D. Tex. 2010) (noting unsecured creditors paid in full are covered by § 1129(b)(2)(b)(i), rather than § 1129(B)(2)(b)(ii)—the source of the absolute priority rule).

[13] Including funds for PPP Settlement.

[14] It also bears emphasizing, as the Debtor explained in its Response to BSP's Initial Objection, that any "market test" requirement under the new value exception has been satisfied based on the fact that BSP itself has made a competing plan proposal that includes the functional equivalent of an equity contribution of up to $10 million to backstop creditor

b.     **The Plan is Fair and Equitable as to Rejecting Classes of Unsecured Claims or Interests.**

107.   No Class of Claims or Interests junior to any rejecting Class is receiving a distribution under the Plan.  Additionally, no holders of Claims in senior Classes will receive more than a 100% recovery on account of their Allowed Claims.  Accordingly, the Debtor submits that the Plan is "fair and equitable" in accordance with section 1129(b) with respect to rejecting Classes of unsecured Claims or Interests.

**P.     The Plan Satisfies the Requirements Under Section 1129(c) of the Bankruptcy Code.**

108.   Section 1129(c) of the Bankruptcy Code states that "the court may confirm only one plan." 11 U.S.C. § 1129(c).  Here, there is only one Plan.  Because the Plan is the only plan before the Court, section 1129(c) is satisfied.

**Q.     The Plan Satisfies the Requirements Under Section 1129(d) of the Bankruptcy Code.**

109.   Section 1129(d) of the Bankruptcy Code states "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**R.     Good Cause Exists to Waive the Stay of the Proposed Confirmation Order.**

110.   Bankruptcy Rule 3002(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."  The Debtor submits that good cause exists for waiving any stay of the proposed Confirmation Order so that it will be effective immediately upon its entry.  The Plan has been vigorously negotiated

---

recoveries, which by any measure is reasonably equivalent to the cash infusion of $10 million on account of which the Plan Sponsor will receive the equity in the Reorganized Debtor.  *See* Disclosure Statement, Ex. H (definition of "Lender Contribution").

and contested among sophisticated parties, and the immediate effectiveness of the Plan will allow the Debtor to mitigate administrative and professional costs while not prejudicing any party in interest.  Accordingly, the Debtor requests a waiver of any stay of the Confirmation Order imposed by the Bankruptcy Rules.

## **CONCLUSION**

For the reasons set forth herein, the Court should confirm the Plan because it satisfies all applicable requirements of the Bankruptcy Code, and grant the Debtor such other and further relief as is just and proper.

Dated:  March 24, 2022
      New York, New York

Respectfully submitted,

By:    */s/ Douglas E. Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email: dspelfogel@mayerbrown.com
      leisenberg@mayerbrown.com
      dchung@mayerbrown.com

*and*

Mark Frankel
**BACKENROTH FRANKEL & KRINSKY, LLP**
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Debtor
and Debtor in Possession*