**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
=====================================

In re:

96 WYTHE ACQUISITION LLC,

              Debtor.

**Chapter 11**
Case No.: 21-22108 (RDD)

=====================================

**OPPOSITION TO THE DEBTOR'S EXIGENT MOTION REQUESTING EXPEDITED CONSIDERATION AND PRELIMINARY RULING ON THE DEBTOR'S OBJECTIONS TO CLAIM NO. 6 FILED BY GERSON MENCIA AND FOR AN ORDER SEEKING TO ESTIMATE THE CLAIM**

    Gerson Mencia ("Mencia"), by his attorneys, Kornfeld & Associates, P.C. and Hecht, Kleeger & Damashek, P.C. submits this opposition to the Debtor's exigent motion requesting expedited consideration and preliminary ruling on the Debtor's objection to Mencia's Claim No. 6 (the "Claim") and motion seeking to estimate the claim. Mencia is listed by the debtor as an unsecured creditor and is the plaintiff in a pending, but stayed State Court Action, *Mencia v. 96 Wythe Acquisition, LLC and Dimyon Development Corp.,* Index No. 513214/2016 (Sup. Ct. Kings Co.) ("The State Court Action"). Mencia has no opposition, at this time, to that part of the Debtor's motion seeking relief related to the underlying insurance coverage.

    1.    It is respectfully submitted that the portion of Debtor's motion for expedited consideration and preliminary ruling on the Debtor's objections to the Mencia claim and motion seeking to estimate the claim at $0 be denied should be denied in its entirety. The Debtor should not be entitled to any expedited relief as it relates to the Mencia claim as the Debtor failed to timely and expeditiously commence and prosecute the insurance coverage disputes for almost a year and Mencia should not be deprived of due process regarding the nature if his claim as a result. Moreover, as set forth Mencia's opposition to the Debtor's objection to Mencia's claim dated

(Dkt. 320) Mencia submitted the appropriate documentation in support of the Claim and the Debtor failed to request any additional documentation; the Debtor has failed to sustain its burden by submitting evidence challenging the validity and value of the Claim and the Claim is meritorious as the Debtor, as the owner of the subject property, is statutorily liable to Mencia pursuant to Labor Law § 240 and Mencia has sustained significant personal injuries and incurred significant economic losses.

## BACKGROUND

2.     The Mencia claim arises out of an incident that occurred on September 18, 2015, when plaintiff was caused to fall from an unsecured ladder while engaged in construction of a building at 96 Wythe Street, Brooklyn, New York that later became the Williamsburg Hotel. Mencia commenced an action against the Debtor, who was the owner of the premises and Dimyon Development Corp., ("Dimyon") who was the general contractor, alleging violations of the New York State Labor Law §§ 240 (1); 241(6) and 200. Thereafter, the Debtor and Dimyon commenced third-party actions against two additional contractors C.I. Interiors, Inc., ("CI") and Velocity Framers NY Inc., ("Velocity"). CI and Velocity failed to interpose answers and were adjudged in default by order of the Supreme Court dated October 18, 2017.  There is no available insurance for CI or Velocity.

3.     As a result of the fall from the ladder, Mencia sustained extremely serious injuries to his right knee and ankle that required multiple five surgeries and multiple injections. Since the incident plaintiff has undergone the following:

- **LEFT KNEE ARTHROSCOPY, PARTIAL MEDIAL AND LATERAL MENISCECTOMY, CHONDROPLASTY OF THE PATELLA, ANTERIOR RELEASE, LOOSE BODY REMOVAL VIA THE ARTHROSCOPE, MAJOR SYNOVECTOMY AND PLASTIC SURGERY PORTAL CLOSURE ON MAY 2, 2016;**

- **LEFT ANKLE ARTHROSCOPY, RESECTION OF HYPERTROPHIED SYNOVIUM, RESECTION OF SOFT TISSUE IMPINGEMENT, REPAIR OF OSTEOCHONDRAL LESION BY DEBRIDEMENT AND PRIMARY REPAIR OF THE ANTERIOR TALOFIBULAR LIGAMENT WITH AN ARTHOBROSTROM TECHNIQUE ON OCTOBER 28, 2016;**

- **LEFT ANKLE ARTHROSCOPY WITH EXTENSIVE DEBRIDEMENT, SYNOVECTOMY, REMOVAL OF PREVIOUS ARTHROBROSTROM SUTURE AND REPLACEMENT WITH ARTHROBROSTROM SUTURE TO REPAIR THE ANTERIOR TALOFIBULAR LIGAMENT, REPAIR OF DELTOID LIGAMENT VIA DEBRIDEMENT AND ABLATION REPAIR, REPAIR OF OSTEOCHONDRAL LESION ON THE ANTERIOR PORTION OF THE TIBIA VIA CHONDROPLASTY ON AUGUST 25, 2017;**

- **RIGHT KNEE ARTHROSCOPY, PARTIAL MEDIAL AND LATERAL MENISCECTOMY, CHONDROPLASTY OF MEDIAL TIBIAL PLATEAU, MAJOR SYNOVECTOMY AND PLASTIC SURGERY PARTIAL DISCLOSURE ON JANUARY 16, 2018.**

- **LEFT ANKLE ARTHROSCOPY WITH EXTENSIVE DEBRIDEMENT, SYNOVECTOMY, REPAIR OF OSTEOCHONDRAL LESION TIBIAL PLAFOND BY MICRODEBRIDEMENT AND MICRO FRACTURE, REPAIR OF ANTERIOR TALOFIBULAR LIGAMENT AND CALCANEOFIBULAR LIGAMENT BY ARTHOBROSTROM TECHNIQUE WITH INTERNAL BRACING ON DECEMBER 28, 2018;**

- **LEFT ANKLE INJECTION OF 4 CC OF 1% LIDOCAINE AND 10 MG OF KENALOG ON FEBRUARY 23, 2017;**

- **LEFT KNEE STEROID INJECTION WITH ULTRASOUND GUIDANCE ON OCTOBER 5, 2017; FUTURE NECESSITY FOR LEFT KNEE INJECTIONS;**

4.  Mencia has made a claim for pain and suffering and loss of enjoyment of life from the date of the incident to the present as well as a claim for future pain and suffering over for the remainder of plaintiff's life expectancy of 43 years. See, *New York State – Pattern Jury Instructions* - 2:280; 280.1; 2:281. Mencia has not been able to return to work as a construction worker and is still treating for the injuries sustained in the accident. Menica has sustained significant economic losses totaling $3,444,174 for both future medical care and past and future lost earnings.

5. All discovery in the State Court action has been completed and the note of issue has been filed. Mencia filed a motion for summary judgment pursuant to Labor Law § 240 seeking to hold the Debtor and Dimyon liable for the accident and Mencia's damages. (Dkt. 320 - Exhibit "A") The motion was filed on March 12, 2021 but has not yet been opposed or argued due to the stay from the instant bankruptcy proceedings. Mencia is extremely confident that the motion will be granted and the case will proceed to trial on the issue of damages.[1]

6. The Debtor has filed the instant application seeking expedited consideration and a preliminary ruling on the insurance coverage issues as well as its objection to the Mencia Claim. It is respectfully submitted that the relief requested as it relates to the Mencia Claim be denied in its entirety. It is undeniable that the Debtor has been aware of the coverage issues for and how they impact the Debtor's path through the Chapter 11 process for more than one year but failed to commence the declaratory judgment action. As such, any timing issues were created by the Debtor's own inactions and the instant application should be denied. that any expedited relief be denied a

**THE DEBTOR IS NOT ENTITLED TO EXPEDITED CONSIDERATION OR PRELIMINARY RULING AS THE DEBTOR FAILED TO ADDRESS THE COVERAGE ISSUES IN A TIMELY FASHION**

7. In July 2020, State National Insurance Company (hereinafter "SNIC"), the primary insurance carrier for the Debtor and RLI Insurance Company (hereinafter "RLI"), the excess insurance company, issued letters disclaiming coverage and refusing to defend and/or indemnify the Debtor in connection with the Mencia's accident.[2]

---

[1] Mencia filed a motion in the State Court Action to sever the claims against the Debtor, lift the stay and proceed against Dimyon. That motion was marked submitted on February 23, 2022 and we are awaiting a decision.

[2] To the extent relevant herein, Mencia maintains that the disclaimers are untimely, invalid and improper.

8. In October of 2020, counsel for Mencia reached out to Patrick Cooney of Gallo, Vitucci & Klar, counsel for the debtor in the State Court Action, to inquire as to whether the debtor intended to commence a declaratory judgment action to void the disclaimer and reinstate the policy. Mencia was advised at the debtor was conferring with counsel with the intent on commencing a declaratory judgment action against SNIC and RLI.

9. On October 13, 2020, an e-mail was sent to Mr. Cooney requesting the name of the attorney prosecuting the declaratory judgment action. On October 14, 2020, Mencia sent an e-mail recommending an attorney name Josh Zimring, at Lester, Schwab, Katz & Dwyer to prosecute the declaratory judgment action for the debtor. (Dkt. 163 - Exhibit "B") On November 4, 2020; December 18, 2020 and January 6, 2021, Mencia sent e-mails inquiring as to the status of the declaratory judgment action. (Dkt. 163 - Exhibit "C") On each occasion, Mencia was advised that the debtor was "working on it" and "deciding what to do".

10. On March 18, 2021, Mencia sent another e-mail advising Mr. Cooney that the debtor had not hired counsel to commence the declaratory judgment action. In response, Mencia was advised that debtor had decided it would **not pursue** the declaratory judgment action and instead would be filing for Chapter 11. See, **Exhibit "A"** annexed hereto.

11. Thereafter, Mencia contacted Mark Frankel and Jason Nagi, bankruptcy counsel for the Debtor, to discuss the insurance coverage issues and prospect of pursuing a declaratory judgment against SNIC and RLI.  On April 26, 2021, Mencia sent a letter to Mr. Frankel wherein Mencia expressed his disagreement with the validity of the disclaimers by SNIC and RLI and discussed the possibility of pursuing his own declaratory judgment action against the carriers. See, **Exhibit "B"** annexed hereto. On April 29, 202, Mencia followed-up with Mr. Frankel regarding

the declaratory judgment action and was advised that Debtor was "reviewing" and they would respond "shortly". See, **Exhibit "C"** annexed hereto.

12. Mencia sent follow-up inquiries regarding the status of the declaratory judgment actions against SNIC and RLI on May 6, 2021; July 20, 2021; July 27, 2021; August 9, 2021; August 17, 2021; August 23, 2021; and September 20, 2021. Copies of the various e-mails are annexed as Exhibit "D". The Debtor **failed to commence an action** against the insurance carriers or assign the rights to Mencia.

13. On October 31, 2021, Mencia filed a motion for an order seeking an assignment of the Debtor's rights to commence the declaratory judgment action to Mencia. (Dkt. 163) The Debtor opposed the motion (Dkt. 188). In paragraph 9 of the opposition papers the Debtor acknowledged that Mencia had repeatedly "demanded" that the Debtor "commence a declaratory action against the Insurers".

14. The motion was argued before the Court on November 22, 2021. (Dkt. 207). During oral argument, counsel for Mencia stated as follows:

> Page 9 – Line 12
>
> MR. HECHT: And, Your Honor, just -- just -- just to add to what Mr. Kornfeld had -- had stated: **We've been discussing this issue with the Debtor since last November…we introduced them to possible counsel for declaratory judgment. They elected not to do it**. I've spoken with someone who says that they're now presenting 96 Wythe in -- in a potential insurance case against SNIC and RLI. And I'm happy to -- and I have no objection; **we never had an objection to letting the Debtor do it themselves. We'd just like it to get done**.

15.     On page 13 of the transcript, counsel for the Debtor stated that the Debtor was "planning to bring a proceeding for coverage against the carriers..." More significantly, on page 14 counsel stated the "…we intend to bring that action, if need be, **within the next 30 to 60 days** so to give comfort to the Plaintiff that would be brought." Inexplicably, the Debtor failed to commence the declaratory judgment action within 30 or 60 days instead waiting nearly three months to file same in the Supreme Court, Kings County. [3]

16.     Contrary to the arguments set forth in support of the instant motion the Debtor's prosecution of the action against SNI and RLI has been anything but "aggressive". Mencia has been urging, if not begging, the Debtor to commence the declaratory judgment action against SNIC and RLI since October of 2020 but the Debtor refused to do so. Mencia sent multiple e-mails to counsel representing the Debtor in the Supreme Court Action as well as the Chapter 11 proceedings but nothing was done. During oral argument on Mencia's motion regarding the insurance coverage counsel stated that the declaratory judgment action would be commenced within the next "30 to 60 days" the action was not commenced until February 14, 2022, nearly three months later.

17.     It is most respectfully submitted that the Debtor's claim that they are entitled to "expedited consideration" and a "preliminary ruling" on Mencia's claim to "promote fair distributions" for the proposed plan be rejected out of hand. The Debtor had more than one year to commence an action in State or Bankruptcy Court and failed to do so. It stretches the limits of credulity for the Debtor to argue that there is not enough time to get a decision on the insurance issues when the alleged exigency was caused solely by the inaction of the Debtor.

---

[3] Upon information and belief the declaratory judgment action filed in Supreme Court is being discontinued and an adversarial proceeding has been commenced against RLI and SNIC in the Chapter 11 proceedings.

18.     It is respectfully submitted that the Debtor is not entitled to expedited consideration on its objection to the Mencia Claim. To grant such relief would deprive Mencia of his due process rights for a full and complete assessment of the merits of his claim. The Debtor had ample opportunity to address the insurance issues over the past year and sat on their hands. Mencia should not be deprived of his due process as a result of the Debtor's failures and as such, Mencia respectfully requests that relief requested as it relates to the Mencia Claim be denied.

### MENCIA SUBMITTED APPROPRIATE DOCUMENTATION AND HAS A VALID CLAIM AGAINST THE DEBTOR

19.     By filing dated December 23, 2021, the Debtor objected to the Mencia Claim and sought to have same valued at $0. (Dkt. 248). Mencia opposed the objection by affirmation dated January 17, 2022. (Dkt. 320) For the reasons set forth therein, the Debtor's objection should be denied and the Mencia Claim should be properly estimated at $8,000,000.00.

20.     Mencia filed his Claim timely on May 25, 2021 in the amount of $8,000,000.00.[4] In support of the Claim, Mencia provided a copy of the verified summons and complaint ("Complaint") that included a Mencia's allegations of liability and claims for damages, including but not limited to, claims for pain and suffering; past and future lost earnings and future medical care. The Debtor **failed to request and/or demand additional supporting documentation** from Mencia.

21.     On or about December 23, 2021, the Debtor filed an objection to the Claim seeking to disallow the Claim alleging that Mencia did not submit sufficient documentation to substantiate the validity of the Claim or in the alternative, to estimate the Claim at $0. It is undisputed that Mencia filed a proper and detailed Proof of Claim along with a verified summons and complaint

---

[4] The amount of the claim was estimated based on the economic losses of $3,500,000.00 and sustainable pain and suffering for five surgeries with continued medical care over 43 years, in the amount of $4,500,000.00.

detailing the specific theories of liability and damages on May 25, 2021. The Claim and supporting documentation was sufficient to establish the *prima facie* validity of the claim. At no time prior to the filing of the instant application did the Debtor request any additional documentation regarding the Claim and in fact, the Debtor failed to detail what additional documents were so required in its instant motion.

22. As set forth in the opposition to the Debtor's objection to the Mencia Claim, the Debtor failed to meet its burden to prove the Claim is invalid by submitting admissible evidence disputing same. The sole evidence submitted in support of the motion was the Declaration of Michael Lichtenstein, who has no direct knowledge of the underling facts surrounding the accident, Mencia's injuries and the medical treatment or claims for special damages. Finally, the motion should be denied as Menica has a valid claim against the Debtor under Labor Law § 240 and for injuries and economic losses.

23. On May 25, 2021, Mencia filed the Claim using Official Form 410 ("Form 410"). In the Claim, Mencia wrote that "Debtor is a defendant in a personal injury lawsuit for pain and suffering and economic loss". See below.

> 8. What is the basis of the claim?    Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
> Limit disclosing information that is entitled to privacy, such as healthcare information.
>
> The debtor is a defendant in a personal injury law suit for pain and suffering and economic loss

24. A review of form 410 shows that unlike claims based on a mortgage or other security interest, which provides for the attachment of a "mortgage, lien, certificate of title, financing statement or other document…" there are **no such requirements** for unsecured claims involving pending personal injuries. Notwithstanding the aforementioned, Mencia attached the

verified complaint listing the parties to the State Court Action; the underlying facts and allegations supporting the action; the theories of liability; the claims for pain and suffering and economic loss and the causes of action pursuant to the New York Labor Law. The Claim and the complaint satisfy the requirements set forth in Bankruptcy Rule 3001(c).

25.     Most significantly, upon receipt of the Claim back in May of 2021, the Debtor **failed to request any additional documents** with regards to the Claim. Moreover, the Debtor failed allege what additional supporting documents Mencia should have filed in support of the Claim. It is axiomatic that a Debtor cannot sit on its hands and fail demand or request additional documentation and then object to the Claim based on an alleged failure to properly provide. See *In re Minbatiwalla*, 424 B.R. 104 (Bankr. S.D.N.Y); *In re Benyamin*, 587 B.R. 242 (Bankr. SDNY 2018).

26.     In *Minbatiwalla*, supra, which dealt with a secured claim based on a mortgage, the Court expunged a claim without prejudice. Unlike here, in *Minbatiwalla*, the Court found that the creditor "failed to respond" to the debtor's request for additional "supporting documentation". The court ruled:

> "**Upon request of the debtor**, the creditor has an obligation to provide an additional documentation underlying its summary and affidavit (such as the original note and mortgage, or a written assignment), within two weeks after dispatch or communication of such a request, **or the debtor can file an objection based on a lack of adequate documentation**. Id., at p.117.

27.     Similarly, *In re Benyamin*, 587 B.R. 242 (Bankr. SDNY 2018) another case based on a secured property interest, the claim was expunged for lack of supporting documentation only after the **creditor failed to respond to repeated requests for additional documentation.** Here, the Debtor failed to request any additional documentation and thus the Claim should not be expunged for a baseless alleged failure of Mencia to submit same.

28. Notwithstanding that the Claim was sufficiently supported by the verified complaint and the Debtor failed to demand additional documentation, it is undeniable that Mencia has provided voluminous documents supporting the Claim by virtue of the Debtor being a defendant in the State Court Action.

29. Starting on August 1, 2016, the date the verified complaint was filed, until the filing of the petition for Chapter 11, Mencia served eight (8) verified bills/supplemental bills of particulars; fifteen (15) responses to discovery and inspection with medical records; operative reports; narrative reports authorizations and other similar documentation and four (4) expert exchanges pursuant to CPLR § 3101 (d) for Mencia's treating physicians and economist. (Dkt. 320 – Exhibits "B-D")

30. The Mencia Claim has been properly filed, submitted and is supported by adequate documentation and thus constitutes *prima facie* evidence of the validity of the claim. Even assuming arguendo that the Claim was not properly supported with additional documentation, which is simply not the case, this fact alone will not cause the claim to be expunged. As such, the within motion should be denied. See, *In re Minbatiwalla*, *supra*.

**Debtor Has Failed To Meet Its Burden
To Negate The Validity Of The Claim**

31. Bankruptcy Code § 501(a) provides that to claim an interest in a debtor's bankruptcy estate a "creditor…may file a proof of claim." 11 U.S.C § 501 (a). Bankruptcy Rule 3001 (f) states that "a proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity of the claim. Fed. R. Bankr.P. 3001 (f). See, *In Re South Side House, LLC*, 451 B.R. 248 (Bankr. S.D.N.Y 2011). When the averments in the filed claim meets the standard of sufficiency, it is *prima facie* valid and the burden shifts to the objector

to produce evidence sufficient to negate the prima facie validity. *Leonard v. HSBC Bank, NA,* 2021 WL 638210 (Bankr. S.D.N.Y 20210); *In Re Feinberg*, 442 B.R. 215 (Bankr. S.D.N.Y 2010).

32. To overcome the *prima facie* evidence of the validity of the claim, the objecting party must come forth with admissible evidence to refute the allegations essential to the claim. *In re Minbatiwalla,* 424 B.R. 104 (Bankr. S.D.N.Y); *Sherman v. Novak* (*In re Reilly*) 245 B.R. 768 (2d Cir. BAP). If the objector fails to introduce admissible evidence as to the invalidity of the claim or the excessiveness of the amount, the claimant need offer no further proof of the merits of the validity of the claim or the amount of same. *Leonard*, supra, p.4; *Minbatiwalla,* supra, p.112. Here, the Debtor failed to submit evidence to overcome the prima facia case and as such the objection to the Claim should be denied.

33. As set forth above, the sole evidence submitted by the Debtor in support of its objection to the Mencia Claim was the declaration ("declaration") of Michael Lichtenstein ("Lichtenstein"). Essentially, it's the Debtor's position that Mencia doesn't have a "valid cause of action" because Lichtenstein says so. It is respectfully submitted that the declaration is of no value and fails to satisfy the Debtor's burden with regards to this matter. In relevant part the declaration reads:

> "First, my understanding of the facts and circumstances surrounding Gerson Mencia's purported injury and the applicable law asserted in such an action indicates that he does not have a viable cause of action against the Debtor relating to such injury…"

34. This declaration has no evidentiary import whatsoever and should be disregarded by the Court. Lichtenstein fails to set forth the basis and/or source of his alleged "understanding" of the "facts and circumstances" surrounding the accident. Lichtenstein was not a witness to the accident; was not present at the job site on the date of Mencia's accident and has never spoken to Mencia about the accident. Lichtenstein did not supervise, direct and/or control Mencia's work

and has no personal knowledge as to the ladder Mencia was using or whether Mencia received any instructions regarding same. Any alleged information regarding the "facts and circumstances" surrounding the accident, which are not detailed or referenced in the declaration, would be based on out-of-court statements from unidentified individuals and thus are hearsay.

35. Lichtenstein's opinions as to the merits of plaintiff's claims pursuant to Labor Law § 240 are equally impermissible. Lichtenstein is not an expert on Labor Law claims and his opinion is clearly biased as a member of the Debtor who is currently a defendant in the State Court Action. Moreover, Lichtenstein's unspecified "understanding" of Labor Law § 240 is irrelevant and cannot possibly satisfy the debtors obligation to refute the prima facie validity of the claim.

36. The Debtor failed to submit any evidence disputing the value of the Claim. The Debtor alleges that Mencia's injuries are not severe and are not causally related to the incident. However, the Debtor fails to submit a single shred of evidence to satisfy its burden regarding this issue. Lichtenstein is not a physician and thus cannot comment as to the severity and degree of Mencia's injuries or whether the injuries are causally related to the accident. Lichtenstein has no direct knowledge as to the details and necessity of Mencia's continuing and future medical care. Lichtenstein has no personal knowledge as to the whether Mencia can return to work. Lichtenstein is not an economist and cannot offer any evidence as to the amount of Mencia's claim for lost earnings. The Debtor failed to annex any medical or other evidence refuting the severity of Mencia's injuries or the validity of the Claim and cannot do on reply.

37. By contrast, Mencia has submitted voluminous support concerning the validity of both the Debtor's liability under Labor Law § 240, (Dkt. 320 - Exhibit "A") and the injuries and economic losses suffered by Mencia. (Dkt. 320 - Exhibits "B-D")

38.     It should also be noted that all of Mencia's prior medical treatment, surgeries and injections have been approved by Workers Compensation Board and all of the physicians who examined Mencia on behalf of the workers carrier have <u>causally related</u> the injuries to the accident.

39.     In our estimation the Claim is easily worth $8,000,000 considering the 43 years of pain and suffering and the value of Mencia's economic losses. However, in light of the abject failure of the Debtor to sustain its burden on the instant motion and introduce admissible evidence as to the invalidity of the Claim or the excessiveness of the same the instant motion should be denied.

## Mencia Has A Viable Claim For Liability And Damages

40.     As previously set forth, the underlying incident occurred when an unsecured ladder moved causing plaintiff to fall 5-6 feet to the ground below. It is undisputed that Mencia was not provided with any safety devices to secure the ladder or prevent plaintiff from falling from a height. Mencia was not given ropes, chains, blocks, chocks or other similar devices to secure the ladder. The ladder was not being held by anyone at the time of the accident. At no time prior to the accident was Mencia instructed he could not use the ladder nor was he directed to use a different ladder or told not to place the ladder on the sheetrock. In light of the aforementioned, Mencia has a very strong claim against the Debtor.

41.     Labor Law §240(1) imposes absolute liability on the owner of a building being constructed, altered, repaired, cleaned and/or demolished, for the failure to utilize enumerated safety devices which proximately cause injury to a worker. The section provides that:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, <u>ladders</u>,

slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so <u>constructed</u>, <u>placed and operated as to give proper protection to a person so employed</u>...

42. Labor Law §240 (1) applies to accidents involving "falling worker" cases. In order for § 240 (1) to apply plaintiff must show that the accident occurred due to the absence or inadequacy of a safety device enumerated in the statute. *Narducci v. Manhasset Bay Associates*, 96 N.Y.2d 259, 750 N.E.2d 1085, 727 N.Y.S.2d 37 (2001). *Rocovich v. Consolidated Edison Company*, 78 N.Y.2d 509, 577 N.Y.S.2d 219 (1991); Owners and general contractors who fail to provide equipment which shield the workers from harm directly flowing from the application of the force of gravity are absolutely liable for any injuries resulting therefrom. *Rodriguez v. Forest City Jay Street Associates*, 234 A.D.2d 68, 650 N.Y.S.2d 229 (1st Dept. 1996); Labor Law § 240 (1) mandates that owners and contractors provide "devices which shall be so constructed, placed and operated as to give proper protection to persons performing work covered by the statute." *Kijak v. 330 Madison Avenue Corp.*, 251 A.D.2d 152, 675 N.Y.S.2d 341 (1st Dept. 1998).

43. Where a ladder is offered as a work-site safety device, it must be sufficient to provide proper protection. The failure to properly secure a ladder to ensure it remains steady and erect while being used, constitutes a violation of Labor Law § 240 (1) regardless of who provided the ladder. *Riccardi v. Bernard Janowitz Construction*, 49 A.D.3d 624, 853 N.Y.S.2d 373 (2d Dept. 2008); *Hernandez v. Bethel United Methodist Church*, 49 A.D.3d 251, 853 N.Y.S.2d 305 (1st Dept. 2008); *Reabr v. Connequot Central School District*, 57 A.D.3d 640, 870 N.Y.S.2d 72, (2d Dept. 2008); *Argueta v. Pomona Panorama Estates,* 39 A.D.3d 785, 835 N.Y.S.2d 358 (2d Dept. 2007); *Granillo v. Donna Karen Co.*, 17 A.D.3d 531, 793 N.Y.S.2d 465 (2d Dept 2005); *Montalvo v. J. Petrocelli Construction Corp.,* 8 A.D.3d 173, 780 N.Y.S.2d 558 (1st Dept. 2004*); Orellano v. 29 East 37th Street Realty Corp.,* 292 A.D.2d 289, 740 N.Y.S.2d 740 16 (1st Dept. 2002); *Bonano v. Port Authority of*

*NY & NJ*, 298 A.D.2d 269, 750 N.Y.S.2d 7 (1st Dept. 2002); *Wasilewski v. Museum of Modern Art*, 260 A.D.2d 271, 688 N.Y.S.2d 547 (1st Dept. 1999);

44. When a ladder collapses, slides, falls or otherwise malfunctions, there is a presumption that the ladder is insufficient as a matter of law under Labor Law § 240 (1). *Blake v. Neighborhood Housing Services of New York*, 1 N.Y.3d 280, 771 N.Y.S.2d 484, 803 N.E.2d 757 (2003); *Panek v. County of Albany*, 99 NY2d 452, 758 N.Y.S.2d 267, 788 N.E.2d 616 (2003). Furthermore, if the undisputed evidence shows that a ladder "slipped" or gave-way, causing plaintiff to fall, plaintiff is entitled to summary judgment pursuant to Labor Law § 240(1). *Panek v. County of Albany, supra*, at p.458. In the instant matter it is undisputed that the ladder moved and tilted causing both Mencia and the ladder to fall and as such Mencia will be granted a judgment as a matter of law against the Debtor.

45. In support of its objection to the Mencia Claim the Debtor argues, without any evidentiary support, that Mencia was the "sole proximate cause" of the accident. This argument is specious, unsubstantiated and not supported by the record herein or in the State Court. A plaintiff will be deemed the sole proximate cause of an accident where plaintiff misused a safety device, removed a safety device, failed to use an available safety device that would have prevented the accident, or knowingly chose to use an inadequate device despite the availability of an adequate device. *See, Robinson v. East Med. Ctr., LP*, 6 N.Y.3d 550, 814 N.Y.S.2d 589, (2006) (*Blake v Neighborhood Hous. Servs. of N.Y. City, (Letterese v. State of New York*, 33 A.D.3d 593, 821 N.Y.S.2d 468 (2nd Dept. 2006). There is absolutely no evidence that Mencia engaged in any such activity and as such Mencia cannot the sole proximate cause.

46. It is undisputed that Mencia was not provided with any safety devices to adequately secure the ladder and this was a proximate cause of the accident. Where there is a violation of Labor Law § 240 that is a proximate cause of the accident, as a matter of law, plaintiff's conduct cannot be the sole proximate cause. *Melchor v. Singh*, 90 A.D.3d 866, 935 N.Y.S.2d 106 (2d Dept. 2011); *Hernandez v. Bethel United Methodist Church of New York*, 49 A.D.3d 251, 853 N.Y.S2d 305 (1st Dept. 2008)

47. Similarly, Mencia has an extremely viable claims for pain and suffering and economic losses that support the estimation of $8,000,000.00. Mencia sustained serious injuries to both his left ankle and right knee that required multiple surgical procedures and will require future surgery as well. Mencia's treating doctors opined that Mencia will develop post-traumatic arthritis which will worsen over the course of his lifetime and further impact his ability to engage in activities of daily living. Mencia will also be required to take medication and continue various treatment modalities for the rest of his life. As set forth above, all of the past treatment has been paid for by Workers' Compensation and all of the physicians who examined the plaintiff in connection with the Workers' Compensation proceedings have <u>causally related the injuries to the subject accident</u>.

48. The Debtor argues that the claim should be set at $0 as there are alternative sources of compensation from the insurance policies obtained by the Debtor in connection with this project. This is simply not accurate. As of this moment SNIC, the primary carrier for the Debtor has issued a reservation of rights in connection with the Mencia Claim. In addition, RLI, the excess carrier has issued a full disclaimer. Mencia has been trying to convince the Debtor to commence a declaratory judgment action against both carriers since October of 2020. The Debtor failed to do

so. There are no other sources of compensation for Mencia and as such the Mencia claim should be estimated at $8,000,000.00.

49. In support of the instant motion the Debtor cites no rule or case law that would permit the relief requested. The Debtor previously filed an objection to the Mencia Claim and Mencia filed his objection to same. This entire application was formulated out of whole cloth with the express purpose of trying to deprive Mencia of his due process. It is respectfully requested that the instant motion for expedited relief and preliminary rulings with regards to the Mencia Claim be denied. Whatever alleged exigencies exist concerning the uncertainty of the insurance coverage, these issues were created by the inaction of the Debtor in failing to address same for more than one year. Mencia should not be denied his rights to full and fair proceedings concerning his claim simply because the Debtor finally woke up and realized it should have dealt with the coverage issues in a more timely manner.

WHEREFORE, it is respectfully requested that the debtor's motion be denied in all respects, together with such other and further relief as this Court deems just and proper.

Dated: March 30, 2020
      New York, New York

Yours ect.

_JORDAN HECHT_,
HECHT, KLEEGER & DAMASHEK, P.C.
Co-Counsel for Gerson Mencia
19 West 44th Street - Suite 1500
New York, New York 10036
(212) 490-5700

KORNFELD & ASSOCIATES, P.C.
Co-Counsel for Gerson Mencia
Randy M. Kornfeld
240 Madison Avenue
New York, New York 10016
(212) 759-6767