UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

HEARING DATE:  TO BE DETERMINED
HEARING TIME:   TO BE DETERMINED

------------------------------------------------------- x
                              :

In re                        :

                              :

96 WYTHE ACQUISITION LLC,     :

                              :

                 Debtor.     :

------------------------------------------------------- x

Chapter 11

Case No. 21-22108 (RDD)

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that upon this Notice of Motion, the Declaration of Greg M. Zipes, and the accompanying memorandum of law, William K. Harrington, the United States Trustee for Region 2, will move this Court before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court, 300 Quarropas Street, White Plains, NY 10601, on **a date to be determined** for an order directing the appointment of a chapter 11 trustee, and for such other and further relief as this Court may deem just and proper.  The original application and memorandum of law are on file with the Clerk of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion shall be filed with the Court and personally served on the United States Trustee, 201 Varick Street, Room 1006, New York, New York 10014, to the attention of Greg Zipes, Esq., **no later than seven (7) days prior to the return date**.  Such papers shall conform to the Federal Rules of Civil Procedure and identify the party on whose behalf the papers are submitted, the nature of the

response, and the basis for such response.

Dated: New York, New York
       March 31, 2022

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:    /s/ Greg M. Zipes_____
       Greg M. Zipes
       Trial Attorney
       201 Varick Street, Room 1006
       New York, New York 10014
       Tel. No. (212) 510-0500
       Fax. No. (212) 668-2255

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION**
**<u>FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND .............................................................................. 2

    A. Debtor and the Manager .................................................................................. 2

    B. The U.S. Trustee's Motion to Covert or Dismiss the Case .............................. 3

    C. Benefit Street's Motion to Appoint an Examiner ............................................. 4

    D. Examiner's Report Sets Forth Alleged Misconduct of the Debtor, Manager, and its
    Principals ............................................................................................................. 5

        1. Apparent Scheme to Siphon Money from Debtor to the Principals' Entities through the
        Principal-controlled Manager .............................................................................. 5

        2. Apparent Unauthorized Post-petition Transfers and Potential Pandemic Relief Loan
        Fraud .................................................................................................................... 6

        3. Apparent Failure to File Tax Returns and Timely Pay Taxes Pre-petition and Post-
        petition ................................................................................................................. 7

III. LEGAL ARGUMENT ...................................................................................... 9

    A. Statutory Predicates and Relevant Facts ......................................................... 9

        1. Debtor's inability to pursue causes of actions on behalf of the estate. ........... 10

        2. The apparent failure to pay pre-petition and post-petition taxes. ................... 12

        3. Apparent misuse of estate's funds. ................................................................ 12

        4. Failure to disclose material transactions in the monthly operating reports...... 13

        5. The Debtor's lack of credibility and transparency............................................ 14

    B. Appointing a trustee is in the best interest of the creditors under

    11 U.S.C. § 1104(a)(1) or (2)................................................................................ 16

i

# TABLE OF AUTHORITIES

**Cases**

*In re Ancona,* No. 14-10532 (MKV), 2016 Bankr. LEXIS 4114 (Bankr. S.D.N.Y. Nov. 30, 2016). ................................................................................................................. 9, 10, 17

*In re El Jamal*, No. 17-CV-7870 (KMK), 2017 WL 4735719 (S.D.N.Y. Sept. 28, 2018)........... 18

*In re Euro-Am. Lodging Corp.,* 365 B.R. 421 (Bankr. S.D.N.Y. 2007) ........................................ 12

*In re FiberMark, Inc*., 330 B.R. 480 (Bankr. D. Vt. 2005) ........................................................... 15

*In re FiberMark, Inc*., 339 B.R. 321 (Bankr. D. Vt. 2006) ........................................................... 14

*In re Ionosphere Clubs, Inc.,* 113 B.R. 164 (Bankr. S.D.N.Y. 1990)........................................... 17

In re *Prods. Int'l Co.,* 395 B.R. 101 (Bankr. D. Ariz. 2008)........................................................ 12

*In re The 1031 Tax Grp., LLC,* 374 B.R. 78 (Bankr. S.D.N.Y. 2007).................................... 10, 16

*In re Halal 4 U LLC,* 2010 WL 3810860 (Bankr. S.D.N.Y. Sept. 24, 2010) .............................. 13

**Statutes**

11 U.S.C. § 1104(a) ...................................................................................................................... 10

11 U.S.C. § 1104(e) ...................................................................................................................... 11

**Treatises**

7 Collier on Bankruptcy P 1104 (16th 2021)............................................................................... 18

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Chapter 11

------------------------------------------------------- x

Case No. 21-22108 (RDD)

In re:

96 WYTHE ACQUISITION LLC,

                         Debtor.

------------------------------------------------------- x

TO: THE HONORABLE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE:

       This memorandum of law is respectfully filed in support of the motion (the "Motion") of

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") for

an order directing the appointment of a trustee pursuant to 11 U.S.C. § 1104(a).  In support

thereof, the United States Trustee respectfully represents and states as follows:

## I. INTRODUCTION

       An investigation by the examiner Eric Huebscher (the "Examiner") uncovered evidence

"of a complex scheme to divert and siphon substantial amounts of money from the Debtor,

through a labyrinth of banking relationships between the Debtor and the Manager, and other

entities under common ownership and control of the Principals."  *See* Zipes Decl. Ex. <u>A</u>

(Examiner's Report) at 1.[1]  Although the Debtor filed a response finding fault with the

Examiner's ultimate conclusions, that response failed to address the most serious aspects of the

Examiner's Report.  *See* Zipes Decl. Ex. <u>B</u> (Debtor's response).  As demonstrated below, there

are ample grounds for the appointment of a Chapter 11 Trustee.  The Debtor – a tightly

---

[1] The Examiner's investigation focused on transactions that occurred four years before February 23, 2021 (the "Petition Date"). The investigation also led to discovery of potentially avoidable post-petition transactions, although the post-petition period was not the primary focus of the investigation. *See* Examiner's Report at 1, n. 1.

controlled limited liability company – is incapable of investigating itself, reviewing the detailed information uncovered by the Examiner during the course of his investigation, and taking action against its principals if such is required. This is abundantly clear because rather than investigating further into the detailed facts uncovered by the Examiner, the Debtor has unabashedly ignored those facts and conclusions, and instead, has proposed in its proposed plan of reorganization to bestow upon the Principals – who may have among other things caused federal funds to be transferred from the Debtor's estate - broad releases and exculpations solely for the benefit of those very same Principals (defined below). In sum, there are ample cause to appoint a Chapter 11 Trustee – an independent fiduciary – pursuant to 11 U.S.C. § 1104.

## II. FACTUAL BACKGROUND

### A. Debtor and the Manager

1.      On February 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition under Title 11 of the United States Code, 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code").  *See* Dkt. No. 1.

2.      The Debtor owns real property located in Brooklyn, New York, comprising a thirteen-story, 147-room hotel with a rooftop pool, a bar and restaurant and a separate, elevated, and enclosed bar that sits above the pool referred to as the Water Tower Bar (the "Hotel"). The Debtor has approximately 80 employees. *See* Local Rule Affidavit ¶ 2, Dkt. No. 8.

3.      The Hotel's day-to-day operation is managed by The Williamsburg Hotel BK LLC ("Manager") under a certain Management Agreement.[2] The Manager is controlled by Debtor's principals, Toby Moskovits and Michael Lichtenstein ("Principals").[3]

4.      According to Jeremy Rauch, Debtor's Director of Finance, 100% of all revenue earned by the Debtor is deposited into the Manager's bank accounts. *See* Decl. of Examiner in Support of Examiner's Motion to Enforce. Dkt. No. 244, ¶ 28; Examiner Report at 8.

5.      According to the Disclosure Statement filed by the Debtor, the Manager is the party that contracts with and is obligated to pay employees' salaries and other operating expenses for the Hotel. *See* Third Amended Disclosure Statement, dkt. No. 196 at 13.

**B. The U.S. Trustee's Motion to Covert or Dismiss the Case**

6.      On August 18, 2021, the United States Trustee filed a motion to convert this case to one under Chapter 7 or to dismiss this case (the "Motion to Convert"), in which Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street"), the Debtor's secured creditor, joined.  *See* Motion to Convert Dkt. No. 87; Lender's Joinder Dkt. No. 127.

7.      In the Motion to Convert, the United States Trustee asserted that Debtor maintained multiple unauthorized bank accounts that had disbursed sizable amounts of funds as shown on the Monthly Operating Report for June 2021, and that Debtor had made misleading statements regarding its business and relationships with third-party entities including but not

---

[2] The Disclosure Statement states that the operative management agreement was entered in November 2017 ("November agreement"). *See* Disclosure Statement at 13. However, the Examiner's report indicates that the assignment agreement entered in December 2017 is the operative agreement and has superseded the November agreement. *See* Examiner's Report at 7.

[3] The Debtor is a New York LLC. Dkt. No. 116. Lichtenstein is its managing member, and one of its ultimate owners "who control[s] the Debtor by and through the Debtor's parent entities." Dkt. Nos. 8, 354 ¶ 1, 397 at 14 ¶ 1. Moskovits is also an ultimate owner of the Debtor "who control[s] the Debtor by and through the Debtor's parent entities." Dkt. No. 8. The Debtor is managed by a non-debtor affiliate, the Williamsburg Hotel BK LLC (the "Management Company"), which employs approximately eighty (80) people. The Management Company is owned by Toby Moskovits and Michael Lichtenstein." Third Amended Disclosure Statement Dkt. No. 196 at 3.

limited to its Chief Restructuring Officer, David Goldwasser (the "CRO"), and his entities. *See* Dkt. No. 135 Motion to Convert ¶¶ 7-13.

8.     The Debtor objected to the Motion to Convert, and the Court denied the Motion to Convert.  *See* Dkt. Nos. 135, 142.

**C. Benefit Street's Motion to Appoint an Examiner**

9.     On October 15, 2021, Benefit Street filed the *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* (the "Examiner Motion") in which Benefit Street alleged *inter alia*, that a large amount of funds inexplicably left the Debtor, that certain loan proceeds were diverted to non-debtor affiliates, and that the management agreement between the Debtor and the Management Company, owned by the Debtor's principals, was not properly disclosed.  *See* Dkt. No. 147 ¶¶ 2, 11-12.

10.     In addition, Benefit Street expressed concerns over the plan provision that would release the Principals from any possible avoidance claims, especially when there had been no statutory committee or independent fiduciary in place to investigate and evaluate the potential claims. *See id.* ¶¶ 5-9.

11.     The Court granted the Examiner Motion on November 8, 2021 and entered the *Order Directing the United States Trustee to Appointment an Examiner Pursuant to 11 U.S.C. § 1104(c)* (the "Original Examiner Appointment Order"). [Dkt. No. 178]. On November 16, 2021, the Court entered the *Order Approving Appointment of the Examiner*, approving the United States Trustee's appointment of Eric Huebscher as the Examiner (the "Examiner"). Dkt. No. 186.

12.     On December 14, 2021, the Court entered the *Second Amended Examiner Appointment Order* ("Second Amended Examiner Order"), extending the deadline for the Examiner to file his report, permitting the examiner to issue subpoenas concerning the matters

4

within the scope of Examination Topics (defined below) without court order, and permitting a fee increase for cause upon notice. Dkt. No. 224.

13.    On February 28, 2022, the Examiner filed the Report of Examiner, Eric M. Huebscher (the "Examiner's Report"). Dkt. No. 418. On the same day, the Debtor filed the Counter Report and Response to Examiner Report, which consists of Michael Lichtenstein's declaration, rebutting seventeen allegedly false statements in the Examiner's Report. Dkt. No. 420.

**D. Examiner's Report Sets Forth Alleged Misconduct of the Debtor, Manager, and its Principals**

*1. Alleged Scheme to Siphon Money from Debtor to the Principals' Entities through the Principal-controlled Manager*

14.    The Examiner found that the Principals "engaged in a scheme to siphon off any monies generated by the Debtor's hotel operations, through the illegitimate control of the Manager, to unrelated entities owned by the Principals."  Examiner's Report at 24.

15.    Notably, among the entities that received or sent transfers to the Debtor and/or Manager, are (1) *FIA Capital Partners*, an entity owned by the Debtor's CRO, and (2) *286 Rider Ave Acquisition LLC*, a debtor that is currently in bankruptcy (Case No. 21-bk-11298 (LGB)) and owned indirectly by the Principals through 286 Rider Ave. Development LLC. Examiner's Report at 2.

16.    "In total, the Examiner has identified at least an aggregate net amount of $12.5 million sent from the Manager to many of the above entities [owned directly or indirectly by the Principals]." Examiner's Report at 2.

**2. *Apparent Unauthorized Post-petition Transfers and Potential Pandemic Relief Loan Fraud***

17.     According to the Examiner's Report, in July of 2021, five months after the Debtor's bankruptcy filing, the Manager received from the Small Business Administration (the "SBA") economic disaster impact funds ("EIDL proceeds") in the amount of $350,000. The EIDL loan program was designed to help businesses overcome the effects of the pandemic by providing working capital to meet operating expenses.[4] Based on public information regarding the goals of the EIDL program which would indicate that EIDL proceeds, by law, were to be used for helping the Hotel with its operating expenses, the Examiner's investigation revealed that these funds were soon transferred to Northside Acquisition Partners, LLC, is an entity owned, directly or indirectly, by Michael Lichtenstein.  Examiner's Report at 3.

18.     The existence of the EIDL proceeds were not disclosed in a monthly operating report. Michael Lichtenstein, who applied for the EIDL loan on behalf of the Hotel, declined to provide the Examiner with a copy of the EIDL loan application. Examiner's Report at 3.

19.     In addition, two days after petition, Manager transferred $252,100 to Northside Management LLC. This transfer was not disclosed in Debtor's monthly operating reports. *Id.*

20.     In or about April 2020, the Manager received proceeds of Paycheck Protection Program in the amount of $1,438,000 ("PPP Proceeds"). Although the PPP Proceeds are ostensibly to be used to cover payrolls and certain other expenses of the Hotel,[5] $824,241.07 was disbursed

---

[4] According to SBA's website, EIDL loan proceeds are to be used for working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past, present, or future). https://www.sba.gov/funding-programs/loans/covid-19-relief-options/covid-19-economic-injury-disaster-loan/about-covid-19-eidl

[5] *See* PPP loan details at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan#section-header-2

to "other business activity of the Manager," which is not disclosed or specified. *See* Third Amended Disclosure Statement at 18.

21.     While the Debtor does not disclose the "other business activity," according to the PPP Loan Analysis provided by the Examiner to the Office of the United States Trustee a portion of the funds went to *non-Debtor* businesses. The United States Trustee does not attach that analysis and the accompanying Examiner's email due to concerns that the Debtor will claim that such information is confidential.

### 3. Apparent Failure to File Tax Returns and Timely Pay Taxes Pre-petition and Post-petition

22.     "Despite the fact that approximately $24.5 million was deposited into (and approximately $25.5 million was withdrawn from) the Debtor's bank accounts during the period 2017 – 2020, the Debtor did not file tax returns for years 2017, 2018 or 2019." *See* Examiner's Report at 2. Debtor provided the Examiner an unsigned federal tax return for the year of 2020, which showed zero revenue or expenses. *Id.*

23.     "While approximately $68.2 million was deposited into (and approximately $68.7 million was withdrawn from) the Manager's bank accounts during the period 2017 – 2020, with the possible exception the year 2019, these deposits and withdrawals by the Manager have not been reported to any taxing authority." *Id*.

24.     Michael Lichtenstein informed the Examiner that the tax returns for the Debtor and Manager were not filed for the above-mentioned years and cited the reason therefor as "the entities did not make a profit." *Id.*

### 4.     The City's Objection

25.     According to the New York City Development of Finance (the "DOF")'s *Objection to the Confirmation of Debtor's Second Amended Chapter 11 Plan* (the "DOF's Objection"), filed

on February 15, 2022, the Debtor has for years failed to pay hotel occupancy taxes owed to the City of New York, despite evidently having collected such taxes from occupants of its hotel. *See* Zipes Decl Ex. C (DOF's Objection), ¶ 1; Dkt. No. 391. Notably, the hotel occupancy taxes are trust fund taxes, automatically collected and held in trust solely for the benefit of the city.  The Debtor is statutorily liable for such tax, regardless of what arrangement it has with the Manager, and Debtor's officers and partners are personally liable for any unpaid hotel occupancy tax.

26.     It was only after the DOF filed a proof of claim in the amount of $2.66 million in pre-petition principal, pre-petition interest of $695,913 and a penalty of $666,886,[6] that the Manager filed hotel occupancy tax returns back to 2017. Dkt. No. 391 ¶ 2. However, none of the taxes reflected on those tax returns have been paid, and thus it appears that the hotel occupancy tax is still owed from 2017 to at least February 2022. *Id.*

27.     During the pendency of the bankruptcy case, the Debtor continued to fail to pay hotel occupancy tax, despite the monthly operating reports showing room revenues.  Thus well over $400,000 should have been collected, but most is due and unpaid. Dkt. No. 391 ¶ 3.

28.     DOF's Objection has also confirmed that "the Debtor has *never* filed business income tax returns."  Dkt. No. 391 ¶ 5.

29.     During the pendency of the bankruptcy case, Debtor signed an installment payment agreement with DOF for unpaid real property tax, both pre and post-petition, totally over $3.984 million, without the Court's approval and without disclosing it in the disclosure statement or the Plan.  Unsurprisingly, Debtor immediately defaulted under this payment agreement. *Id.*

30.     In light of the Debtor's gross failure in its tax obligations, DOF has requested that a trustee be appointed to investigate Debtor's affairs. Dkt. No. 391 ¶ 6.

---

[6] The amount was estimated by DOF because no tax returns were filed at the time of the filing of proof of claim. Dkt. No. 391, ¶2.

## III. LEGAL ARGUMENT

### Appointment of a Chapter 11 trustee is Appropriate
### Under Both Paragraphs of 11 U.S.C. § 1104(a)

### A. Statutory Predicates and Relevant Facts

11 U.S.C. § 1104 states as follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

    (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

    (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

In addition to the enumerated grounds, other grounds warranting the appointment of a trustee under section 1104(a)(1) include "conflicts of interest, inappropriate relations between corporate parents and subsidiaries, misuse of assets and funds, inadequate record keeping and reporting, failure to disclose relevant and material information, lack of credibility and creditor confidence, and various other similar instances of conduct". *In re Ancona,* No. 14-10532 (MKV), 2016 Bankr. LEXIS 4114, at *31-32 (Bankr. S.D.N.Y. Nov. 30, 2016). If a debtor-in-possession defaults in its responsibilities and as estate' fiduciary, the debtor may be dispossessed of control of its business and a chapter 11 trustee should be appointed. *Id.* at 33. "The party seeking appointment of a chapter 11 trustee has the burden of showing, by clear and convincing evidence,

9

cause under § 1104(a)(1), or the need for a trustee under § 1104(a)(2)." *In re The 1031 Tax Grp., LLC,* 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007). Once the court makes a finding that cause exists under § 1104(a)(1), "there is no discretion; an independent trustee must be appointed." *Id.* at 86.

11 U.S.C. § 1104(e) requires the United States Trustee to file a motion on the finding of fraud or other malfeasance by the debtor or its representatives as follows:

> (e) The United States trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting.

11 U.S.C. § 1104(e).

Under subsection (e), "the U.S. Trustee must seek an order requiring appointment of a chapter 11 trustee whenever the 'reasonable grounds to suspect' standard is met." *In re The 1031 Tax Grp., LLC,* at 87. It should be noted that having "reasonable ground to suspect actual fraud, dishonesty, or criminal conduct" does not require the U.S. Trustee to establish a *prima facie* case of these acts. *See Id.* at 88, n. 9 ("it is important to note that "reasonable grounds" to suspect fraud is not the same as establishing a prima facie case of fraud.").

As discussed below, there are ample grounds for the appointment of a Chapter 11 trustee under either section 1104(a)(1) or (a)(2):

### *1. Debtor's inability to pursue causes of actions on behalf of the estate.*

"A debtor-in-possession's fiduciary duties impose upon him the duty to make impartial investigations and decisions in pursuing claims on behalf of the estate." *In re Ancona*, No. 14-10532 (MKV), 2016 Bankr. LEXIS 4114 *33 (internal citation omitted). In *Ancona,* the Court found that "the Debtor's unjustified refusal to evaluate his own pre-petition actions and to

investigate claims that are held by insiders evidences the unhealthy conflict of interest in this case and highlights the need to appoint a neutral trustee to carry out, in an unbiased manner, the Debtor's fiduciary duties." *Id.* at *34-35.

Here, the Debtor is a limited liability company that is tightly controlled by its Principals. It would be naïve to expect those Principals to direct the Debtor to take actions consistent with its responsibilities as a debtor-in-possession where such actions are against the best interests of the Principals. For example, the Examiner found significant irregularities with respect to the Debtor's use of federal funds received through the CARES Act. It is unlikely that the Debtor, however, will take immediate steps to recover those funds where those funds were transferred to other entities also controlled by the Debtor's Principals. What's more, the Plan effectively releases the Principals and their entities from avoidance actions, leaving the estate with no opportunity to pursue them if the Plan is confirmed. Plan §§ 5.10, 1.52, 1.66. When the Examiner was trying to investigate and identify potential avoidance claims, the Debtor, Manager, and their Principals obstructed the investigation at every turn. Such obstruction clearly shows the Debtor is unable to fulfill its fiduciary obligation to maximize estate's assets. The interests of the Debtor and the Examiner are in fact aligned – both would want to uncover improper conduct of the Principals and oppose attempts by the Principals to block reasonable discovery requests. Yet, the Debtor recently filed a memorandum in support of confirmation in which it deemed the Examiner's report "fatally flawed" and incredibly claim that it "does not identify any material causes of action against any Released Parties that would justify risk, expense and delay of pursuing any such causes of action." *See* Debtor Memorandum in Support [Dkt. No. 472], n. 6. The Principals' obstinance also caused ever-increasing administrative expenses borne by the

estate, including Debtor counsel's fees for litigating the discovery disputes and an increased fee cap of the Examiner.

### 2. The apparent failure to pay pre-petition and post-petition taxes.

"Gross mismanagement" under § 1104(a)(1) includes the chronic failure to pay taxes, particularly where the failure leads to liability for interest and penalties. *In re Euro-Am. Lodging Corp.,* 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007). In *Prods. Int'l Co.,* 395 B.R. 101 (Bankr. D. Ariz. 2008), the court appointed a chapter 11 trustee where the debtor failed to pay taxes under the current management's watch and failed to pursue avoidance actions to recover from the insiders. According to the proof of claim filed by the DOF on July 28, 2021, there appears to be approximately $1.2 million real estate tax liabilities that are due after the Petition Date (due dates ranging from July 1, 2021 to January 1, 2022) remaining unpaid. *See* Claim No. 11, Ex. A. The Debtor did not file hotel occupancy tax returns until nearly a year after the Petition Date and has so far tendered zero hotel occupancy tax payments for its pre and post-petition liabilities (hotel tax is due every three months throughout the year). [7]  In the post-petition period alone, the DOF estimates the Debtor is likely to owe about $400,000 in hotel occupancy tax. According to the proof of claim filed by DOF on December 9, 2021, Debtor owes corporation taxes, UBT-Partnership taxes, and hotel taxes, in the aggregate amount of $6.5 million including approximately $1 million in interest and $1 million in penalties, from 2017 to 2020. *See* Claim no. 14.  The Debtor's failure to pay taxes is chronic and habitual, and therefore constitutes gross management.

### 3. Apparent Misuse of estate's funds.

"The Examiner discovered that not only were the Debtor's and the Manager's bank accounts linked, numerous Principal-controlled entities' accounts were linked to the Manager's

---

[7] https://www1.nyc.gov/site/finance/taxes/business-hotel-room-occupancy-tax.page

bank accounts. These linkages (online banking connections) allowed for funds to flow seamlessly between the Manager and Debtor as well several unaffiliated business entities owned by the Principals, and, in some instances, individuals." Examiner's Report at 8.  "The banking system shows that significant sums were transferred in and out of the Debtor and Manager accounts to and from business enterprises that do not relate to the Debtor's business." *Id.* at 9. In total, the Examiner has identified at least an aggregate net amount of $12.5 million sent from the Manager to entities that are apparently not related to Debtor's business. The chart on page 15 of the Examiner's Report illustrates these questionable flows of funds.

This Debtor's actions appear to have violated the Debtor's own governing document, Debtor's Fourth Amended Operating Agreement (the "Operating Agreement"). *See* dkt. No. 428, Ex. A. The Operating Agreement requires the Debtor to "hold its assets and conduct its business solely in its own name and bars the Debtor from commingling its assets with any other entity." Section 3(c)(iv)-(vii). But contrary to these provisions, the Debtor allowed all its revenues to be received and held in accounts by and in the name of Manager. The Debtor and Manager implemented a complex banking scheme that commingled the Debtor's assets with those of both the Manager and the Manager's affiliates.

### 4. Failure to disclose material transactions in the monthly operating reports.

The Examiner's investigation identified unauthorized and undisclosed post-petition transfers, including (i) the Manager's receipt of the $350,000 EIDL grant in the name of Debtor's Hotel in July of 2021, which amount was transferred on August 3, 2021 from the Manager to Northside Acquisition Partners, LLC; and (ii) the transfer of $252,100 from the Manager to Northside Management NY, LLC, two days after the Petition Date. *See* Examiner's Report at 24.  These transfers were never disclosed in the monthly operating reports or the

disclosure statement, which is another basis for finding gross management of the estate. *See In re Halal 4 U LLC,* 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (finding gross mismanagement of the estate when the debtor failed to submit monthly operating report that satisfactorily depicts debtor's income and expenses).

### 5. The Debtor's lack of credibility and transparency.

The Debtor, Manager and the Principals have not been transparent in managing the estate and their representations lack credibility. To wit, (1) the Debtor represented to the Examiner that certain bank accounts had no relationship with the Debtor or the Manager, but they were in fact Manager's and were used to transfer funds to the Principal's entities; (2) PPP loan proceeds obtained in the name of the Debtor appear to have been used for non-payroll, non-operating expenses, and in certain instances were transferred to another company controlled by the Principals; (3) the EIDL loan, whose application requires submission of tax returns, was procured when Debtor and Manager did not file tax returns for the same period;[8] (4) the Debtor and the Principals used threatening tactics throughout the course of the Examiner's investigation.

### 6.    The Use of the Report and Counter Report in this Motion

The record compiled by the Examiner is meant to be a source of information that assists parties in identifying assets of the estate, evaluating a plan of reorganization, or describing likely and legitimate areas for recovery; in other words, the examiner's report serves as a road map for parties in interest as they evaluate and pursue their substantive rights. *In re FiberMark, Inc.*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006). It is not necessary to determine that the report is admissible or to admit it into evidence in order for the examiner's investigation and report to be of benefit to

---

[8] EIDL loan applicant is required to submit most recent 3 years of business tax returns. *See* SBA website at https://www.sba.gov/sites/default/files/articles/EIDL_Application_Checklist.pdf

the estate; instead, it is the duty of the parties to formulate a fuller version of the debate using the rules of evidence. *Id.*

To be sure, with respect to transfers of funds, the U.S. Trustee is not using the Examiner's Report as evidence for an adversary proceeding. That is left for a chapter 11 trustee's own evaluation and prosecution. The U.S. Trustee simply points out the existence of potential avoidance actions, consistent with the purpose and substance of the Examiner's Report, to show the necessity of an independent trustee. With respect to the chronic failure to pay tax, DOF's filed claims are in the record of the case, which itself constitutes prima facie evidence.

In *In re FiberMark, Inc*., 330 B.R. 480, 509 (Bankr. D. Vt. 2005), the court added a cautionary ledger noting that the accuracy of the report was subject to challenge. Here, in contrast, the Debtor and its Principals have had opportunity to dispute the report and in fact did so by filing their counter report – even though the counter-report was filed without seeking leave from the court. However, the counter report does not change the factual basis of this motion. Below are a few factual bases that were ostensibly countered by the Debtor in the counter report:

| Examiner's report and/or information on the docket | The Debtor' counter report | UST's position |
|---|---|---|
| Failure to file tax returns and pay taxes pre and post-petition on both federal and state/local level. *See* Examiner's Report at 2. | The Debtor made no mention of "paying" any of the pre or post-petition taxes. | The failure to demonstrate that taxes were actually paid requires an investigation. |
| Approximately $12 million funds were transferred out of Debtor/Manager accounts to unrelated entities controlled by the Principals. | One of the entities made a payment to the Debtor in the amount of $7.2 million and funds from Debtor/Manager were used to pay construction expenses. As a result, the amount of net transfer out of Debtor/ Manager is about $4.5 million. *See* dkt. No. 420 Counter Report ¶ 9. | Even accepting the Debtor's explanation, there was still $4.5 million transferred out of Debtor/Manager to unrelated entities. |

15

| | | |
|---|---|---|
| The proceeds of the PPP loan may have been used for unauthorized purposes. | The Debtor stated that "the $105,000 transferred to 286 Rider [another debtor] was from the PPP money and is outside the scope of this examination." Dkt. No. 420, ¶ 15, n. 4. | Even if it may be outside the scope of the Examiner's investigation, it is nevertheless relevant to Debtor's management of the estate. |
| The EIDL loan proceeds were transferred to one of Principals' entity, Northside Acquisition LLC, and such transfer was not disclosed in the monthly operating report. | The EIDL loan was issued to the Manager, and thus Debtor has no connection to its proceeds – the Debtor neither owns the funds nor is responsible to pay it back; therefore, transferring EIDL funds out of Manager is not a post-petition transfer of the property of the estate. Dkt. No. 420 ¶ 30. | According to the examiner's interview with Michael Lichtenstein, Manager applied for the the EIDL loan to help Hotel with its operating expenses. Therefore, Hotel has the right and interest to use the loan proceeds, and Hotel may be the only entity who can use the proceeds. Therefore, the Hotel has at least an equitable interest in the loan proceeds, and such equitable interest is property of the estate. |

## B. Appointing a trustee is in the best interest of the creditors under 11 U.S.C. § 1104(a)(1) or (2)

The Court should grant the motion under the specific provision of Section 1104(a)(1) and or the catchall of Section 1104(a)(2). The United States Trustee has "reasonable ground to suspect actual fraud, dishonesty, or criminal conduct." *See In re The 1031 Tax Grp., LLC*, at 88, n.9. ("it is important to note that "reasonable grounds" to suspect fraud is not the same as establishing a prima facie case of fraud."). As demonstrated in the chart above, the Examiner presented examples of misfeasance, which the Debtor had a chance to rebut, but did not. The Debtor appears to have not paid post-petition taxes.

Multiple causes exist under § 1104(a)(1) to appoint a chapter 11 trustee, as outlined above: (i) the Debtor is unable to pursue causes of actions on behalf of the estate and therefore is not able

to maximize estate value; (ii) Debtor habitually fails to pay taxes of various types on both federal and local level, resulting in penalties and priming liens; (iii) Debtor's Principals, through the entities they control, misuse funds (even including government subsidies) that either belong to or should be used to benefit the Debtor; (iv) the Debtor failed to disclose material transactions in the monthly operating reports, and thus failed to fulfill an essential duty as the debtor-in-possession; and (v) Debtor and its current management lack honesty and credibility. Any one or two of the above acts of malfeasance warrants the appointment of chapter 11 trustee. *See In re Ancona,* No. 14-10532 (MKV), 2016 Bankr. LEXIS 4114 (appointing a trustee when the debtor refused to evaluate and investigate pre-petition claims); *In re Euro-Am. Lodging Corp.,* 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007) (appointing a trustee when the debtor failed to pay real estate taxes and DOF imposed tax liens, interests and penalties); *In re Prods. Int'l Co.,* 395 B.R. 101 (Bankr. D. Ariz. 2008) (appointing a trustee when the debtor failed to pay taxes and to pursue avoidance actions). For these reasons, the U.S. Trustee submits cause exists under 11 U.S.C. § 1104(a)(1) to appoint a chapter 11 trustee.

Also, as established, a trustee is warranted under 11 U.S.C. § 1104(a)(2). This statute creates a flexible standard and allows the appointment of a trustee even when no "cause" exists; to that, courts look to the practical realities and necessities. *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Among the factors considered are: (i) the trustworthiness of the debtor, (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation, (iii) the confidence -or lack thereof - of the business community and of creditors in present management; and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. *Id*. (Internal citation omitted).

17

Creditors do not trust the current management. The New York Department of Finance, which holds priority claims in the aggregate amount of over $6 million, expressly called for the appointment of a trustee. Benefit Street, which holds the largest claim in this case, has filed a motion to appoint a chapter 11 trustee. Dkt. No. 476. *In re El Jamal*, No. 17-CV-7870 (KMK), 2017 WL 4735719, * 11 (S.D.N.Y. Sept. 28, 2018) (the debtor's lack of cooperation with creditors is a factor on whether to appoint a chapter 11 trustee).

Certainly, the appointment of trustee will involve a commission and professional fees, but such costs are "balanced against the costs incurred by the debtor's managers in running the chapter 11 case, costs that may be saved when a trustee takes over." 7 *Collier on Bankruptcy* P 1104.02 (16th 2021). The Debtor's conduct alone during this case has generated significant costs to the estate, such as interest and penalty in unpaid taxes. The Debtor has incurred a large legal bill in connection with Examiner's investigation, and in fact there are two law firms currently working as Debtor's counsel with insufficient information on how the work and cost are allocated. More fundamentally, the appointment of a trustee allows the parties to have confidence in the process.

This case presents facts more egregious than in the case of *In re El Jamal*, Case No. 15-22872-rdd. In *Jamal*, the Court appointed a trustee due to an inability of the parties to cooperate and because the two-year statute of limitations on avoidance actions was approaching without an investigation of avoidance actions. *In re El Jamal*, No. 17-CV-7870 (KMK), 2017 WL 4735719, * 11 (S.D.N.Y. Sept. 28, 2018). It should be noted that the trustee in *Jamal* eventually confirmed a plan that led to a recovery for creditors and a return to equity. *In re El Jamal*, Case No. 15-22872-rdd, Dkt. No. 906 (Trustee's final report).

18

WHEREFORE, the United States Trustee respectfully requests that the Court enter an

order directing the appointment of a Chapter 11 trustee and granting such other further relief as

may be deemed just and proper.

Dated: New York, New York
March 31, 2022

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:    /s/ Greg M. Zipes_____
  Greg M. Zipes
  Tara Tiantian
  Trial Attorneys
  201 Varick Street, Room 1006
  New York, New York 10014
  Tel. No. (212) 510-0500
  Fax. No. (212) 668-2255

19