**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Adam C. Rogoff
P. Bradley O'Neill
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Co-Counsel for Benefit Street Partners*
*Realty Operating Partnership, L.P.*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443
*Co-Counsel for Benefit Street Partners*
*Realty Operating Partnership, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| 96 WYTHE ACQUISITION LLC, | : Case No. 21-22108 (RDD) |
|  | : |
| Debtor. | : |
|  | : |

----------------------------------------------------------- X

## LENDER'S OBJECTION TO DEBTOR'S MOTION
## PURSUANT TO 11 U.S.C. § 105 AND FEDERAL RULE OF
## BANKRUPTCY PROCEDURE 9019 AUTHORIZING AND APPROVING A
## <u>SETTLEMENT BETWEEN THE DEBTOR AND WILLIAMSBURG HOTEL BK LLC</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 6

    A.    The PPP Loan ................................................................................................ 6

    B.    The PPP Settlement Under the Plan ........................................................... 8

OBJECTION ................................................................................................ 9

I.    The Debtor Has Not Shown that the Terms of the PPP Stipulation Are Fair,
Equitable, and in the Best Interests of the Estate ................................................ 9

    A.    The PPP Stipulation is Not the Result of an Arm's Length Negotiation
And Thus is Subject to Heightened Scrutiny ........................................... 11

    B.    The Settlement Does Not Make the Estate Whole But Rather Bestows
Additional Benefits on the Insiders While Shifting Risk to Creditors .................. 13

    C.    The Management Company's Agreement to Subordinate Its Claims Does
Not Constitute Additional Settlement Consideration Because Those
Claims Are Barred and Already Subordinated to the Lender's Claim ................. 15

    D.    The Debtor Has Failed to Demonstrate That All PPP Funds Were Used for
"Permissible" Expenses ........................................................................... 15

    E.    The Debtor Provides No Reasonable Basis For an Immediate Release of
Insiders ................................................................................................... 16

    F.    The PPP Stipulation Does Not Satisfy the Iridium Factors ................... 17

CONCLUSION ................................................................................................ 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ..............................................................11, 17

*In re Chemtura Corp.*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ........................................................................9

*In re Drexel Burnham Lambert Grp., Inc.*,
    134 B.R. 493 (Bankr. S.D.N.Y. 1991) ..................................................................11, 12

*HSBC Bank USA, NA. v. Fane (In re MF Glob. Inc.)*,
    466 B.R. 244 (Bankr. S.D.N.Y. 2012) ........................................................................9

*JPMorgan Chase Bank, NA. v. Charter Commc'ns Operating, LLC (In re Charter
    Commc'ns)*,
    419 B.R. 221 (Bankr. S.D.N.Y. 2009) ......................................................................11

*In re Matco Elecs. Grp., Inc.*,
    287 B.R. 68 (Bankr. N.D.N.Y. 2002) ...................................................................11, 12

*In re Miami Metals I, Inc.*,
    603 B.R. 531 (Bankr. S.D.N.Y. 2019) ......................................................................10

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating
    LLC)*,
    478 F.3d 452 (2d Cir. 2007) .................................................................9, 10, 11, 17

*In re The Present Co.*,
    141 B.R. 18 (Bankr. W.D.N.Y. 1992) .......................................................................11

*In re Remsen Partners, Ltd.*,
    294 B.R. 557 (Bankr. S.D.N.Y. 2003) ......................................................................10

*Urban Commons Queensway, LLC v. EHT Asset Mgmt., LLC (In re EHT US1,
    Inc.)*, Adv. Pro. No. 21-50476 (Bankr. D. Del. Nov. 15, 2021), ECF No. 113 .......................17

*Urban Commons Queensway, LLC v. EHT Asset Mgmt., LLC (In re EHT US1,
    Inc.)*, Adv. Pro. No. 21-50476 (Bankr. D. Del. Aug. 27, 2021), ECF No. 69 ........................17

*In re W.T. Grant Co.*,
    699 F.2d 599 (2d Cir. 1983) ...................................................................................10

**Statutes**

15 U.S.C. § 636(a)(36)(F) ................................................................................................16

**Rules**

Fed. R. Bankr. P. 9019 ................................................................................................9, 11

Benefit Street Partners Realty Operating Partnership, L.P.[1] ("**Benefit Street**" or "**Lender**") submits this objection to the *Motion of Debtor Pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9019 Authorizing and Approving a Settlement Between the Debtor and Williamsburg Hotel BK LLC* [ECF No. 153] (the "**9019 Motion**") filed by 96 Wythe Acquisition LLC (the "**Debtor**").[2]

## PRELIMINARY STATEMENT

1.    The PPP Stipulation is the product of a non-arm's-length, insider settlement "negotiated" by and among the controlling Insiders – Toby Moskovits and Michael Lichtenstein – to release themselves from liability for their own misconduct relating to the PPP Loan.[3]  Nearly nine months ago, the Lender uncovered the wrongful application for and diversion of federal PPP funds based upon the Hotel's operations.[4]  At the time, this Court expressed its concern over the acknowledged wrongdoing related to the PPP Loan.[5]  Caught red-handed, the controlling Insiders initially sought to "settle" the claims by allocating $1.438 million of the Insiders' Plan contribution

---

[1] Benefit Street is a wholly owned subsidiary of Franklin Resources, Inc. that, together with various subsidiaries, operates as Franklin Templeton.  Franklin BSP Realty Trust is a publicly traded entity on the New York Stock Exchange under the ticker symbol FBRT.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan (as defined below).  To the extent not a defined term in the Plan, capitalized terms in the Preliminary Statement shall have the meaning ascribed to them below.  Exhibits referenced herein are attached to the Declaration of Adam C. Rogoff that is submitted in connection with this objection (the "**Rogoff Decl.**").

[3] The PPP Loan is but one of numerous misdeeds, improper transactions, and acts of self-dealing undertaken by Ms. Moskovits and Mr. Lichtenstein on behalf of themselves and their related entities (collectively, the "**Insiders**") at the direct expense of the Debtor and its creditors, all as set forth more specifically in the Report of Examiner, Eric M. Huebscher [ECF No. 418] ("**Examiner's Report**") and the Supplemental Report and Rebuttal of Examiner, Eric M. Huebscher [ECF No. 465] ("**Supplemental Report**").

[4] The Lender also uncovered the controlling insiders' failed efforts to obtain a second PPP loan – which request was denied by Live Oak Bank, the PPP lender, based upon the insiders' false application.

[5] October 6, 2021 Hr'g Tr. ("**10/6/21 Hr'g Tr.**") 22:14-20 [ECF No. 140] (Court stating the PPP loan issue "is of great concern to me"), 34:21-22 (Court stating "the PPP point is a serious one"), 44:8-10 (Court stating that PPP issue constitutes "abuse . . . which I take seriously"), 50:10-12 (Court stating that appointment of independent fiduciary justified by "Debtor's admission of a significant portion of the PPP money not being devoted to the Debtor, which is serious").

to pay the full amount of the PPP Loan to the Debtor.  The Court then expressed concern that such payment should not be dependent upon the Plan being confirmed.[6]  The Insiders then crafted the PPP Stipulation currently before the Court, which provides a much less favorable "settlement" that goes into effect if the Plan is not confirmed.

2.        While the Lender would support an appropriate settlement under which the full PPP Loan proceeds were immediately paid over to the Debtor and the Hotel with appropriate interest, the PPP Stipulation falls far short of this in several ways.

3.        At the outset, the settlement is inherently suspect because it was negotiated by Insiders for their own benefit and was not subjected to any independent oversight or review.  While the Debtor states that the settlement is the result of arm's-length negotiations between the parties, including the Debtor's CRO and counsel for the Debtor and Management Company (*see* 9019 Motion ¶ 21), *all of these professionals (including the CRO) take direction from and report to Ms. Moskovits and Mr. Lichtenstein as principals*.[7]  Mr. Goldwasser confirmed at his deposition that

████████████████████████████████████████████████████████

█████████████████████████████████.  David Goldwasser Deposition Transcript

("**Goldwasser Dep.**") 109:17-111:4, relevant portions attached as Exhibit A to the Rogoff Decl.

As  Mr. Lichtenstein  candidly  testified,  ██████████████████████  Michael

---

[6] 10/6/21 Hr'g Tr. 71:9-17 (Court stating "I think that the management company and/or its principals should seriously consider resolving [the PPP loan issues] by agreeing - - separate and apart from their agreement in connection with the plan - - to cause the . . . payment of the amount that wasn't paid on account of the Debtor's expenses to the Debtor under any circumstances. It just seems to me that that would be appropriate.")

[7] The Court did not include the PPP Loan in the scope of what the Examiner reviewed and, as such, the Examiner did not provide any independent oversight to the proposed settlement terms or process. That said, the Examiner has raised serious concerns over the independence of the principals (Supplemental Report at 6) and the independent review and diligence undertaken by the Debtor's retained professionals in this case on other material transactions with the insiders (e.g., no independent review of whether alleged intercompany "loans" were, in fact, true loans).  *See* Examiner's Report at 16.  This, combined with the CRO's own admission that he did not independently analyze the settlement, further calls into question the so-called independent review by estate retained professionals.

Lichtenstein Deposition Transcript dated March 23, 2022 ("**3/23/22 Lichtenstein Dep.**") 293:16-

19, relevant portions attached as Exhibit B to the Rogoff Decl.

4.    As to why it was fair for the settlement to provide only partial return of the

$1,438,000 in diverted PPP funds, the supposedly impartial Mr. Goldwasser ██████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Goldwasser Dep. 114:7-11.  ██████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████  *Id.* at 114:12-15 (emphasis added).  In short, this

is not just a settlement *with* an insider, but a settlement wholly *between and among the same*

*insiders* subject to heightened scrutiny and entitled to zero business judgment deference.

5.    On the merits, the settlement fails to make the estate whole and only bestows

additional benefits on the Insiders as the Management Company – not surprising for an agreement

dictated by them without the involvement of an independent estate fiduciary.  No basis exists to

permit *a deferred, unsecured obligation* to pay only $50,000 per month over a one-year period,

interest-free and with a balloon payment at the end.  An *unsecured* promise to repay the diverted

funds is inadequate regardless of who the promisors are, but it is especially inappropriate here in

light of the Examiner's Report, which found that the Insiders "engaged in a scheme to siphon off"

the Debtor's funds to other unrelated, insider-affiliated companies.  Examiner's Report at 24.  An

unsecured promise from such Insiders is worthless.  Further, the Management Company has

admitted that it *already received $1.438 million in PPP Loan proceeds* and, based upon *the Hotel's*

*payment of covered payroll and related expenses using non-PPP funds*, it *already received*

*forgiveness* of the PPP Loan.  Having actually already received the PPP funds and loan forgiveness, *the Management Company should immediately pay the settlement funds to the Debtor's estate.*

6.      Nor has the Debtor demonstrated the Management Company's financial ability to make periodic payments over one year or the large, final balloon payment.   Given that the Management Company manages no other properties and appears to have no source of income other than the Hotel's revenues,[8] it is not clear how the Management Company can make these payments absent its continued retention – a necessary premise for a settlement that is supposed to be free-standing and *not* dependent on Plan confirmation.  Both Mr. Lichtenstein and Mr. Goldwasser ███████████████████████████████████████████████████████████████████████ ███████████████████████████████.  Goldwasser Dep. 117:16-118:7;[9] 3/23/22 Lichtenstein Dep. 293:20-295:25.[10]

7.      To be blunt, no credible, independent estate fiduciary would negotiate for a one-year payment plan with a large balloon payout at the end without any collateral, interest-free, nor

---

[8] The Management Company's director of finance, Jeremy Rauch, ████████████████████████████ ██████████████████████████████.  Jeremy Rauch Deposition Transcript ("**Rauch Dep.**") 165:5-20, relevant portions attached as Exhibit C to the Rogoff Decl.  Mr. Rauch further testified ████████████████████████████████.  *Id.* at 56:10-57:7.

[9] The flippant testimony of the Debtor's own CRO ██████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████. Goldwasser Dep. 119:8-24.

[10] In response to whether any due diligence was conducted, Mr. Lichtenstein ███████████████████████ ██████████████████████. 3/23/22 Lichtenstein Dep. 293:24-294:3.

would it ever grant immediate estate releases upon the effective date before a single payment had been made by a counterparty that faces the loss of its business (if the Plan is not confirmed).[11]

8.      The Debtor touts the Management Company's agreement to subordinate and defer payment of (alleged) outstanding management fees accrued through the Plan's effective date as consideration provided by the Management Company, but this "consideration," like so many claims of the Insiders, is illusory.  First, these management fees are already subordinate to the Lender.[12]  Second, the Management Company – which clearly had knowledge of the bar date – never filed a proof of claim (nor did the Debtor schedule the Management Company's alleged claims).  Its claim for management fees is thus clearly barred.

9.      In addition to the defective terms of the PPP Stipulation and its delayed payment – which shifts all risk of default to the Debtor's creditors if the Plan is not confirmed, the Debtor alleges that $613,758.93 of the PPP Loan proceeds were "reinvested" in the Debtor's business and therefore the Management Company is paying only the balance, $824,241.07.  9019 Motion ¶ 8. However, the Debtor has failed to show that the entire deducted amount was, in fact, used for the Hotel as required by the CARES Act – the basis upon which forgiveness was already obtained using payment of covered expenses *by the Hotel*.[13]

---

[11] The deferred payment terms are of further concern given the Examiner's conclusion that the insiders and their related entities, including the Management Company, may be subject to material avoidance action claims.  *See* Examiner's Report at 1, 20-24.

[12] *See* Assignment of Hotel Management Agreement and Subordination of Hotel Management Fees, dated December 13, 2017 ¶ 2 ("**Assignment and Subordination Agreement**"), attached as Exhibit D to the Rogoff Decl. (Management Company agreeing to subordinate any fees it is owed to Lender).

[13] The Examiner's Report confirms that the Debtor and its insiders routinely commingled funds and mismanaged accounts through an elaborate scheme of convoluted intercompany non-Debtor transfers to the detriment of the Hotel. Examiner's Report at 1-2, 11-18, 24.  In this context, an independent assessment should be made to verify whether and to what extent any of the PPP Loan proceeds were used for the benefit of the Hotel, certainly before providing any release to the Insiders for less than an immediate and full payment of the PPP Loan amount.

10.     Finally, the Debtor cannot justify providing broad releases to the Insiders now, before they have even begun to satisfy the terms of the settlement.

11.     In short, the Debtor has failed to show that the settlement is fair, equitable, and in the best interests of the estate, let alone meets the "heightened scrutiny" applied to an insider settlement.  Accordingly, the Court should deny the 9019 Motion unless and until revised to provide for an immediate payment in full, with interest, to the Debtor of all diverted funds.

## FACTUAL BACKGROUND

12.     On September 20, 2021, the Debtor filed a proposed chapter 11 plan, which was subsequently amended on November 3, 2021, and November 25, 2021 (the "**Plan**").  Second Amended Chapter 11 Plan, Exhibit A to Third Amended Disclosure Statement [ECF No. 196]. The Plan contemplates a settlement between the Debtor, on one hand, and its non-debtor affiliate, The Williamsburg Hotel BK LLC (the "**Management Company**"), on the other hand, in connection with a PPP loan obtained by the Management Company.  On October 22, 2021, the Debtor filed the 9019 Motion seeking approval for this settlement, which contemplates a settlement separate from Plan confirmation (if any).

### A.  The PPP Loan

13.     On April 14, 2020, the Management Company applied to Live Oak Bank for a PPP loan based upon the staff working at the Hotel (the "**PPP Loan**").  Ms. Moskovits signed that application for the Management Company, as an authorized representative.  As part of the PPP Loan agreement (the "**PPP Loan Agreement**"), Ms. Moskovits certified that the proceeds of the loan would be used "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments[.]"  *See* Ex. F to Lender's Objection to Motion to Quash Rule 2004 Subpoenas [ECF No. 90] ("**Lender Objection to Motion to Quash**"), at Ex. A § A [ECF No. 109], attached as Exhibit E to the Rogoff Decl.

14.    The application required the Management Company to list any business owned by, or under common management with, it or its owners, but it did not identify the Debtor, even though the Debtor was the owner of the Hotel.  *See* Ex. C to Lender Objection to Motion to Quash at 5. Ms. Moskovits, who owns 50% of both entities, certified that the list of affiliates that omitted the Debtor was "true and accurate in all material respects."  *Id.* at 2.[14]

15.    On April 21, 2020, Live Oak Bank wired $1,438,000 in PPP Loan proceeds to an account denominated as the "Master Account" for "The Williamsburg Hotel BK LLC DBA The Williamsburg Hotel."  Lender Objection to Motion to Quash, Ex. H.  Two days later, the loan proceeds were transferred to a separate account in the name of the Management Company (the "**Special Purpose Account**").  *Id.*

16.    The Special Purpose Account was created in April 2020 and, except for *de minimis* amounts, funded exclusively with PPP Loan proceeds.  According to the Debtor, less than a quarter of the proceeds – only $357,624.53 – was thereafter transferred into the Hotel Payroll Account. *See* Lender Objection to Motion to Quash ¶ 15.[15]  The Debtor has conceded that the Management Company transferred $824,241.07 of the remaining PPP Loan proceeds out of the Special Purpose Account to other affiliated businesses.  *See* Disclosure Statement § III.4.  It claims that $613,758.93 was spent on expenses related to the Hotel.  *Id.*

---

[14] In February 2021, the Management Company applied for a second PPP loan.  On February 25, 2021 – two days after the Petition Date – the bank declined to make the second loan, principally because of the Insiders' failure to disclose the Debtor as an affiliate in both loan applications.  *See* Letter from Live Oak Bank to The Williamsburg Hotel BK LLC, dated Feb. 25, 2021, attached as Ex. B to Lender's Confirmation Objection.

[15] ███████████████████████████████████████████████████████████████████████████████
████████.

### B.  The PPP Settlement Under the Plan

17.    In October 2021, the Debtor and the Management Company agreed to "settle" the Debtor's claims against the Management Company arising from the PPP Loan (the "**PPP Settlement**").  *See* 9019 Motion ¶ 10.  The PPP Settlement is to be effected under the Plan and gives Insiders (who control both the Debtor and the Management Company) the exclusive right to make a $9 million cash infusion[16] – $1,438,000 of which is earmarked as a "return" of the diverted PPP Loan proceeds – to retain their equity interests in the Debtor.  *See* Plan § 1.37; *id.* § 3.2(g)(i). No independent estate fiduciary was involved in the PPP Settlement negotiations.  Under the Plan, however, the full amount of the PPP Loan proceeds are to be paid on the Plan's effective date.

18.    Following the Court's expression of concern over the repayment being tied to confirmation and consummation of the Plan, Ms. Moskovits and Mr. Lichtenstein negotiated a second, non-arm's-length agreement.  This time, the Management Company agreed to return only the $824,241.07 that it admits was disbursed "into other business activity of the Hotel Manager," and not the remaining $613,758.93, which Ms. Moskovits and Mr. Lichtenstein maintain was "invested" in the Debtor's operations.  *See* Stipulation and Agreement Between the Debtor and Williamsburg Hotel BK LLC Resolving Claims Related to Certain Paycheck Protection Program Loans ¶¶ E, 3(a), attached as Ex. B to 9019 Motion (the "**PPP Stipulation**").

19.    Under the new settlement before the Court, if the Plan does not go effective by March 1, 2022, the Management Company – ████████████████████████████ ████████[17] – will still be obligated to make equal monthly payments to the Debtor of

---

[16] The Debtor has stated it will be filing a modified Plan that increases the cash contribution by $1 million.  *See* Memorandum of Law in Support of Confirmation of the Second Amended Chapter 11 Plan of Reorganization ¶ 17 [ECF No. 472].

[17] *See* Rauch Dep. 56:10-57:7.

$50,000 per month for one year, with a balloon payment of $274,241.07 due on the twelfth month. *Id.* ¶ 3(c). This obligation is both unsecured and interest-free. In addition, the Management Company agrees that any claim it has for unpaid management fees under the Management Agreement before the effective date will be subordinated and deferred unless and until all creditors with Allowed Claims (as defined in the Plan) are paid in accordance with the Plan. *Id.* ¶ 3(b).

20.    Although they are making "settlement" payments over the forthcoming year, the settlement provides the Debtor and Management Company and all related parties with a full release from all claims related to the PPP Loan *immediately upon approval of the settlement*, before *any* deferred payments are made. *Id.* ¶ 6.[18]

## OBJECTION

## I.    The Debtor Has Not Shown that the Terms of the PPP Stipulation Are Fair, Equitable, and in the Best Interests of the Estate

21.    To approve a settlement under Federal Rule of Bankruptcy Procedure 9019 ("**Rule 9019**"), a court must determine that the settlement is "fair, equitable, and in the best interests of the estate." *HSBC Bank USA, N.A. v. Fane* (*In re MF Glob. Inc.*), 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (identifying "paramount interests of the creditors" as a factor in determining whether to approve settlement); *In re Chemtura Corp.*, 439 B.R. 561, 593 (Bankr. S.D.N.Y. 2010) ("The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the 'best interests of the estate.'") (internal citations omitted). The proponent of the proposed settlement has the burden to persuade the court that this standard has been met. *See In re MF Glob.*, 466 B.R. at 248.

---

[18] Further facts regarding Benefit Street's discovery of the PPP Loan and related issues are set forth in the Lender Objection to Motion to Quash ¶¶ 6-26 [ECF No. 109].

22.    Even for a settlement negotiated by estate fiduciaries with third parties at arm's length, the court must conduct "an independent, full and fair assessment" and "may not simply rubber stamp the recommendation" of a debtor.  *In re Remsen Partners, Ltd.*, 294 B.R. 557, 565 (Bankr. S.D.N.Y. 2003) (internal citations omitted); *see also In re Miami Metals I, Inc.*, 603 B.R. 531, 535 (Bankr. S.D.N.Y. 2019) ("[T]he court must make an informed and independent judgment as to whether a proposed compromise is 'fair and equitable' after apprising itself of 'all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated.'"  (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))).

23.    Courts will "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotations omitted).  In determining whether a proposed settlement is fair and equitable, courts in the Second Circuit consider various interrelated factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (6) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*In re Iridium Operating LLC*, 478 F.3d at 462 (internal quotations omitted).

24.    However, settlements involving insiders – such as the settlement proposed here – are subject to "heightened" or "closer" scrutiny.  *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) ("We subjected the agreement to closer scrutiny

because it was negotiated with an insider, and hold that closer scrutiny of insider agreements should be added to the cook book list of factors that Courts use to determine whether a settlement is fair and reasonable."); *see also JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 419 B.R. 221, 240 (Bankr. S.D.N.Y. 2009) (subjecting plan settlement with controlling shareholder to "heightened scrutiny" and noting importance of review and approval of independent directors).

25.     Here, the settlement is not simply with an insider but was negotiated between insiders on both sides of the settlement (i.e., Ms. Moskovits and Mr. Lichtenstein) without any independent fiduciary oversight.  The 9019 Motion should be denied because the settlement fails under any level of scrutiny, much less can it survive the heightened scrutiny applied to a settlement controlled by insiders.

### A.  The PPP Stipulation is Not the Result of an Arm's Length Negotiation And Thus is Subject to Heightened Scrutiny

26.     The existence of genuine arm's length negotiations is critical to the *Iridium* analysis, because it indicates that the proposed settlement was "the result of vigorously negotiated process." *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 246 (Bankr. S.D.N.Y. 2007).  Courts have rejected settlements principally on the ground that they were negotiated between insiders and not at arm's length.  *See In re Matco Elecs. Grp., Inc.*, 287 B.R. 68, 76-79 (Bankr. N.D.N.Y. 2002) (denying approval of Rule 9019 settlement where party authorizing settlement on behalf of debtor was also insider of other settling parties); *In re The Present Co.*, 141 B.R. 18, 23-25 (Bankr. W.D.N.Y. 1992) (denying approval of Rule 9019 settlement where there had been no investigation by disinterested trustee or examiner and only parties supporting proposal were insiders and their counsel).

27.     The PPP Stipulation is not the result of an arm's-length bargain, despite the alleged involvement of Mr. Goldwasser as CRO and the Debtor's many separate law firms.  All of these are retained professionals *who take direction and payment from Ms. Moskovits and Mr. Lichtenstein as decision-makers and principals.*  It is the Insiders, and not the professionals, who retained the power to direct and approve the "settlement" on behalf of the Debtor *and* the Management Company.[19]  Simply put, the settlement was not even negotiated (let alone approved) by an independent fiduciary as principal or independent manager.[20]  *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 498 (subjecting insider settlement to "closer" scrutiny).

28.     Here, the only "evidence" offered to show the settlement is the result of arm's-length negotiations are self-serving statements contained in the 9019 Motion itself.[21]  This plainly was *not* an arm's-length settlement, and thus the merits of the settlement must be subjected to heightened scrutiny.  *See In re Matco Elecs. Grp.*, 287 B.R. at 76 (settlement proposed by

---

[19] For example, the "Bankruptcy Management Agreement" signed April 5, 2021, which governs Mr. Goldwasser's work, provides that G.C. Realty Advisors, LLC (the "**Manager**") *will report to 96 Wythe Acquisition, LLC.* The first paragraph states: "Manager's duties on behalf of client shall include but not be limited to the following, *it being understood that Manager's performance of any duties hereunder are subject to Client's prior approval: . . .*"  The agreement then lists broad services that Mr. Goldwasser may provide, including: "Provide advice and guidance to the Client regarding to all aspects of Bankruptcy, . . . as well as handle the direct, *non-binding negotiations* that will facilitate the settlement of debts. . . . Manager will not finalize or execute any purchase, modification, or re-casting *without written authorization from the company*."  Memorandum of Law of the United States Trustee in Support of Motion for an Order to Convert This Chapter 11 Case to a Chapter 7 Case or, Alternatively, to Dismiss this Chapter 11 Case, Exhibit C, Bankruptcy Management Agreement ¶ A [ECF No. 87-2] (emphasis added).  Nowhere in the agreement has Mr. Goldwasser been granted the independent authorization to enter into agreements or settlements on behalf of the Debtor and without the approval of the company (controlled by Ms. Moskovits and Mr. Lichtenstein). Further, Mr. Goldwasser may be terminated at any time, without cause, upon five days written notice. *Id.* ¶ 1.

[20] A review of estate claims in connection with the PPP Loan was excluded from the scope of the Examiner's investigation. *See* Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c) [ECF No. 178].

[21] Further, the Debtor did not provide any responses to Lender's requests for (i) documents and communications concerning the CRO's analysis of factual issues concerning the PPP Loans, (ii) documents and communications concerning the negotiation of the PPP Stipulation, including the decision to take a delayed payment, interest-free and without any collateral in the context of a settlement that "kicks in" if the Plan is not confirmed (and the Management Company displaced as manager), or (iii) documents supporting the Debtor's assertion that the PPP Stipulation is a "fair and prudent resolution" of PPP Loan issues, including the lesser settlement amount compared to the Plan settlement ($824,241.07 vs. $1.438 million).

interested party raises red flags and warrants closer scrutiny). Close scrutiny is particularly warranted here given the multiple instances of obstructionist behavior by the Insiders and their self-dealing scheme to manipulate the Debtor and Hotel for their benefit, as determined by the Examiner. Examiner's Report at 1-3, 18-22. In any event, as demonstrated below, the settlement fails under any level of scrutiny.

**B. <u>The Settlement Does Not Make the Estate Whole But Rather Bestows Additional Benefits on the Insiders While Shifting Risk to Creditors</u>**

29.    The Insiders got caught diverting the PPP funds for their own use (among other improprieties, as found by the Examiner). An arm's-length settlement would require them to repay – in full, immediately, with interest – any amounts that cannot be specifically documented as being used to pay the Debtor's payroll. Instead, the settlement they "negotiated" with themselves permits the Management Company to pay back only a portion of the funds, interest-free, over a period of one year with a balloon payment on the twelfth month. This is merely the appearance of settlement, not an actual settlement. If the Insider-sponsored Plan is not confirmed, the Debtor will be subject to a wholly unjustified discount in the amount actually owed and a delayed payment schedule – an arrangement that simply bestows *more benefits* on the Insiders while subjecting creditors to unreasonable risk.

30.    The Insiders used the staff and financial data of the Debtor to obtain the PPP Loan, transferred the funds out of the Debtor's account, and used the majority of the funds for their own purposes rather than to fund the Hotel's operations as contemplated by the CARES Act. In essence, the Management Company caused the Debtor to extend an interest-free loan for nearly two years. Allowing the Insiders to take another year to pay back improperly diverted funds simply rewards them with another interest-free loan. Further delay is especially unwarranted given that the PPP Loan *has already been forgiven* – again, based upon the Hotel's payment of expenses

covered under the CARES Act. *See* Michael Lichtenstein Deposition Transcript dated October 1, 2021 at 62:7-14, 112:21-113:5, 158:5-8, relevant portions attached as Exhibit F to the Rogoff Decl. Any rational counterparty, acting at arm's length, would insist that the Management Company make full, immediate repayment of the PPP monies, with interest.

31.     The Debtor has obtained no security for the Management Company's payment obligations, thus exposing the Debtor to undue risk. The settlement is based on the dubious – and entirely unsubstantiated – assumption that the Management Company has the ability to make payments from its own funds even if the Plan is not confirmed. To the contrary, the evidence suggests ██████████████████████████████████████████████████

████. Rauch Dep. 56:10-57:7; *see also* Examiner's Report at 1, n.15. Yet, since the PPP Stipulation *comes into effect only if the Plan is not consummated*, the ability of the Management Company to pay any of its obligations is highly suspect.[22]

32.     Even if a settlement with a delayed payment schedule were not otherwise objectionable, the Management Company should be required to provide suitable collateral to meet its obligations under the PPP Stipulation.

---

[22] The Management Company's financial wherewithal is particularly relevant here because there is already evidence of the Management Company not satisfying its obligations. In the Debtor's own filing, it concedes that the Management Company failed for years to pay Hotel occupancy taxes collected in trust for the benefit of New York City. *See* Debtor's (I) Objection to Claim No. 14 Filed by NYC Department of Finance and (II) Motion to Estimate Claim No. 14 Pursuant to Sections 105 and 502 of the Bankruptcy Code ¶ 13 [ECF No. 302]. As a result, not only does the City have a claim against the Debtor, but it has a multi-million dollar claim (in excess of $6 million) against the Management Company (and for which there is personal liability) as well. *See* NYC Department of Finance's Response in Opposition to Debtor's Objection to Proofs of Claim Nos. 14 and 18 ¶¶ 2, 3 [ECF No. 367] (asserting Debtor as owner of Hotel is liable for taxes and officers and partners are also personally liable for unpaid hotel taxes). In addition, based on the Examiner Report, the Management Company and the insiders may be liable to the Debtor's estate and creditors under substantial avoidance action claims. *See* Examiner's Report at 1-2, 18-22.

### C. **The Management Company's Agreement to Subordinate Its Claims Does Not Constitute Additional Settlement Consideration Because Those Claims Are Barred and Already Subordinated to the Lender's Claim**

33.     The Debtor also touts as consideration obtained for the PPP Stipulation the Management Company's alleged agreement to "subordinate" its claim against the Debtor for unpaid fees due under the Management Agreement.  But this consideration is completely illusory.

34.     First, putting aside the disputed validity of the Management Agreement (and thus any entitlement to fees thereunder), the Management Company failed to file a proof of claim, and the Debtor did not include any such claim on its schedules.  The order establishing deadlines for filing proof of claim does not exempt Insiders or affiliates from the requirement of filing a claim. *See* Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof at 1, 3 [ECF No. 41]; Supplemental Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof at 1, 3 [ECF No. 177]. The Insiders clearly had knowledge of the bar date and ample time to file a claim.  Any independent, unconflicted debtor would object to such a claim by the Management Company.

35.     Second, even if the claim were not barred, it is already contractually subordinated to the Lender's claim.  *See* Assignment and Subordination Agreement ¶ 2.  As a result, offering to defer payment of the alleged management fee claim until after Allowed Claims are paid under the Plan provides no additional consideration that might support the reasonableness of the settlement.[23]

### D. **The Debtor Has Failed to Demonstrate That All PPP Funds Were Used for "Permissible" Expenses**

36.     Unlike the PPP Loan settlement in the Plan – which provides for *full payment of the $1.438 million forgiven loan* – the Insiders seek to pay a *far lower amount* if the Plan is not

---

[23] This "value" is also tied to the confirmation of the Debtor's Plan and, therefore, provides no separate value if the Plan is not confirmed.

confirmed. The obligation to repay the PPP funds obtained and forgiven based on the Hotel's operations as covered by the CARES Act (*e.g.*, payroll and utilities), does not turn on whether a debtor or creditor plan is confirmed under Chapter 11. *See* 15 U.S.C. § 636(a)(36)(F). The settlement terms should be the same no matter which plan the Court ultimately approves.

37.    Pursuant to the PPP Stipulation, the Management Company backstops only $824,241.07 of the PPP Loan because, according to the Debtor, the remaining $613,758.93 was "reinvested" in the Hotel's operations. However, only $357,624.53 was allegedly transferred to payroll,[24] ███████████████████████████████████████████ (which are permissible PPP expenses). But the Debtor has not shown that the remaining ███████████ was spent for permissible purposes and it should not be entitled to a credit for this amount absent doing so.

### E.    The Debtor Provides No Reasonable Basis For an Immediate Release of Insiders

38.    Finally, the Debtor has offered no reasonable basis to support an *immediate* release to the Insiders – the Debtor Parties and Management Company Parties[25] – *who all receive an immediate release on the "Effective Date"* of the PPP Stipulation (*i.e.*, when the order is entered granting the 9019 Motion, *see* PPP Stipulation at ¶ 1) *prior to making any payment under the PPP Stipulation*. The absence of (i) the conditioning or deferral of the estate release until all payments are timely made or (ii) "snap-back" or other protections on the effectiveness of the release if all payments are not timely made reflects the inherent conflicts in allowing the Insiders to negotiate the PPP Stipulation amongst themselves.

39.    Nor are other aspects of the release proper. First, the Debtor has not presented even a basic analysis of the value of the estate causes of action subject to the release, including claims

---

[24] ██████████████████████████████████████████████. *See supra* note 15.

[25] Each as defined in the PPP Stipulation.

for usurping corporate opportunity or the improper use of Hotel revenues and payment of Hotel expenses to justify the obtaining and forgiveness of the PPP Loan, especially in light of the admitted diversion of PPP funds away from the Hotel.[26]  As a result, the Court has no evidence to evaluate whether the released causes of action approximate the value of the consideration offered, and therefore, whether the releases are reasonable, in general, let alone that they reasonably may be provided immediately despite the delay and risk in payment.

### F.  The PPP Stipulation Does Not Satisfy the Iridium Factors

40.    The shortcomings of the PPP Stipulation described above demonstrate that it fails to satisfy the *Iridium* factors, which are not all weighed equally.  *See In re Adelphia Commc'ns Corp.*, 368 B.R. at 246 (stating court would give arm's-length bargaining factor "much greater weight if [it] ever thought it had not been satisfied").  Application of these factors here – with or without the heightened scrutiny required for an insider settlement – warrants denial of the 9019 Motion.

- **The balance between the litigation's possibility of success and the settlement's future benefits**:  Diversion of the PPP funds was blatant and indefensible, suggesting a high likelihood of success in litigation to recover the funds.  The PPP Stipulation provides for a reduced payment (as compared to the Plan settlement) and adds the risks associated with payment over time.  The granting of immediate releases prior to any payments being made in exchange for a deferred unsecured promise to pay weighs against the future benefits of the settlement.

- **The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment**:  The PPP Loan was based upon the Debtor's Hotel operations and payment of expenses relating to the Hotel.  Upon information and belief, the PPP

---

[26] *See* Opinion at 1, *Urban Commons Queensway, LLC v. EHT Asset Mgmt., LLC (In re EHT US1, Inc.)*, Adv. Pro. No. 21-50476 ("**Urban Commons Queensway Adversary**") (Bankr. D. Del. Nov. 15, 2021), ECF No. 113 (finding debtors' investors were fraudsters for fraudulently obtaining PPP loan on behalf of the debtor and absconding with the proceeds); *see also* Letter Opinion at 3-4, Urban Commons Queensway Adversary (Bankr. D. Del. Aug. 27, 2021), ECF No. 69 (stating defendants had misrepresented or lied to U.S. authority by applying for and obtaining an SBA PPP loan to be used for wrongful purposes).

Loan's forgiveness was based upon expenses *paid by the Hotel using the Hotel's revenue*. This should not be a complicated litigation.

- **The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement**: First, all creditors benefit from having the funds immediately paid over to the Debtor's estate for operations and/or to fund payments to creditors – rather than assuming the risk of payment over time. In addition, the Lender's interests are the most directly affected here since its collateral was used to fund expenses that justified the forgiveness of the PPP Loan and, in any event, it is the single largest creditor in this case affected by the settlement.

- **Whether other parties in interest support the settlement**: To date, no party has supported the settlement.

- **The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement**: The lack of any independent principal acting on behalf of the estate clouds the integrity of any settlement, a concern only highlighted further by the Examiner's Report and repeated obstructionist behavior by the principals directing the Debtor professionals in the case.

- **The nature and breadth of releases to be obtained by officers and directors**: The releases are broad releases for the Insiders, including any officers, directors and managers, for any claims relating to the PPP Loan.

- **The extent to which the settlement is the product of arm's length bargaining**: As discussed above, this key factor fails.

41.     Accordingly, the Debtor has failed to satisfy its burden of showing that the PPP

Stipulation – as currently proposed – is fair, equitable, and in the interests of the estate.

## **CONCLUSION**

For the foregoing reasons, Benefit Street respectfully requests that the Court deny the 9019

Motion.

Dated: March 31, 2022
      New York, New York

                  KRAMER LEVIN NAFTALIS &FRANKEL LLP

                  /s/ *Adam C. Rogoff*
                  Adam C. Rogoff
                  P. Bradley O'Neill
                  Kramer Levin Naftalis & Frankel LLP
                  1177 Avenue of the Americas
                  New York, New York 10036
                  Telephone: (212) 715-9100
                  Facsimile:  (212) 715-8000
                  Email: arogoff@kramerlevin.com
                  boneill@kramerlevin.com

                  NELSON MULLINS RILEY & SCARBOROUGH, LLP
                  Lee B. Hart, Esq.
                  201 17th Street, Suite 1700
                  Atlanta, Georgia 30363
                  Telephone: (404) 322-6000
                  Facsimile: (404) 322-6050

                  Gary M. Freedman, Esq.
                  2 South Biscayne Blvd., 21st Floor
                  Miami, Florida 33131
                  Telephone: (305) 373-9400
                  Facsimile: (305) 373-9443

                  *Co-counsel for Benefit Street Partners*
                  *Realty Operating Partnership, L.P.*