**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

**BACKENROTH FRANKEL &
KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108 (RDD) |
| Debtor. | |

## NOTICE OF FILING OF THIRD AMENDED PLAN

**PLEASE TAKE NOTICE** that the Debtor hereby files the Third Amended Chapter 11 Plan of Reorganization attached hereto as <u>Exhibit 1</u> (the "<u>Third Amended Plan</u>").

**PLEASE TAKE FURTHER NOTICE** that a blackline of the Third Amended Plan marked against the Second Amended Plan is attached hereto as <u>Exhibit 2</u>.

**PLEASE TAKE FURTHER NOTICE** that the Debtor reserves the right to alter, amend, modify, or supplement the Third Amended Plan.

747733885

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Bankruptcy Court will consider Confirmation of the Third Amended Plan (the "Confirmation Hearing") will commence on **June 7, 2022 at 10:00 a.m.**, prevailing Eastern Time, before the Honorable Robert D. Drain, in the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 12601.

In accordance with General Order M-543, dated March 20, 2020, the Confirmation Hearing will only be conducted via Zoom®.  Any parties wishing to participate in the Confirmation Hearing are required to register their appearance by 4:00 PM the day before any scheduled Zoom® hearing at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl

**PLEASE TAKE FURTHER NOTICE** that a copy of the Third Amended Plan may be obtained by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

Dated: May 12, 2022
      New York, New York

**MAYER BROWN LLP**

*/s/ Douglas Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

**BACKENROTH FRANKEL & KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor
and Debtor in Possession*

2

## **EXHIBIT 1**

## **THIRD AMENDED PLAN**

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108 (RDD) |
| Debtor. | |

## THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION

## TABLE OF CONTENTS

**Page**

ARTICLE 1.    DEFINITIONS ................................................................................... 1

ARTICLE 2.    CLASSIFICATION OF CLAIMS ................................................. 8

   2.1    Classified Claims and Equity Interests ................................................. 8

   2.2    Classification ................................................................................ 9

   2.3    Resolution of Disputes ..................................................................... 9

ARTICLE 3.    TREATMENT OF CLAIMS AND INTERESTS .......................... 9

   3.1    Unclassified Claims ........................................................................ 10

   3.2    Classified Claims ........................................................................... 13

ARTICLE 4.    PAYMENT OF CLAIMS ............................................................ 19

   4.1    Payment of Allowed Claims .............................................................. 19

ARTICLE 5.    PLAN IMPLEMENTATION ISSUES .......................................... 22

   5.1    Conditions to the Effective Date ......................................................... 22

   5.2    Period Prior to Effective Date ............................................................ 23

   5.3    Consummation of Plan .................................................................... 23

   5.4    Means for Implementation of Plan ...................................................... 23

   5.5    Vesting of Assets in Post-Confirmation Debtor ....................................... 25

   5.6    Confirmation Order ........................................................................ 25

   5.7    Assumption and/or Rejection of Executory Contracts ............................... 25

   5.8    The Reorganized Debtor's Post-Confirmation Reporting and Retention of
      Independent Financial Oversight Services ............................................. 27

   5.9    Full and Final Satisfaction ............................................................... 29

   5.10   Releases ..................................................................................... 29

   5.11   Term of Injunctions or Stays ............................................................ 30

   5.12   Exculpation ................................................................................. 30

ARTICLE 6.    PRESERVATION OF CLAIMS AND CAUSES OF ACTION FOR
      THE ESTATE ........................................................................... 30

ARTICLE 7.    MISCELLANEOUS .................................................................... 31

   7.1    Bankruptcy Fees ........................................................................... 31

ARTICLE 8.    RETENTION OF JURISDICTION .............................................. 31

ARTICLE 9.    AMENDMENT AND INTERPRETATION OF THIS PLAN ......... 33

   9.1    Modification of the Plan .................................................................. 33

## TABLE OF CONTENTS
(continued)

**Page**

9.2     Headings ............................................................................................................ 33

9.3     Severability ....................................................................................................... 33

9.4     Successors and Assigns...................................................................................... 33

9.5     Rights if Plan Is Not Confirmed ........................................................................ 34

9.6     Internal References ............................................................................................ 34

96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession, hereby proposes the following Amended Chapter 11 Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE 1.

## DEFINITIONS

For the purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the meanings set forth in this section and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article 1 and, any term used in this Plan which is not defined below, but which is defined in the Bankruptcy Code, shall have the meaning designated in the Bankruptcy Code:

1.1    "**Administrative Claim**" means a Claim under sections 330, 331 or 503(b) of the Bankruptcy Code that is entitled to priority treatment under section 507(a)(1) of the Bankruptcy Code.

1.2    "**Administrative Period**" means the period beginning on the Filing Date and ending on the Confirmation Date.

1.3    "**Adversary Proceeding**" means any and all actions previously commenced, or to be commenced, by the Debtor to recover money or property on behalf of the Debtor's Estate.

1.4    "**Allowed Administrative Claim**" means an Allowed Claim that is entitled to priority as an Administrative Claim and that is not disputed.

1.5    "**Allowed Claim**" means: (a) any Claim listed on Debtor's Schedules filed in connection with its Reorganization Case, which is not designated as unliquidated, contingent or disputed; (b) any Claim against the Debtor, proof of which was filed on or before the Bar Date, Supplemental Bar Date or August 22, 2021, the governmental unit bar date, established by Orders of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for filing Claims against Debtor's Estate entered on June 2, 2021 and November 5, 2021, respectively, and for which no objection has been interposed in accordance with the Plan and the Disclosure Statement.  For clarity, if an objection is interposed, any such claim shall not be an Allowed Claim until adjudicated by Final Order or settled by written agreement with the Debtor or the Reorganized Debtor; and/or (c) any Claim against the Debtor which is designated as an Allowed Claim under the Plan and/or reduced to writing, consented to by the Debtor and liquidated in amount, which writing has been approved by a Final Order.

**1.6**    "**Allowed Interest**" means an Interest which has been allowed by Final Order of the Bankruptcy Court.

**1.7**    "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.8**    "**Allowed Secured Claim**" means that portion of an Allowed Claim excluding Priority Tax Claims, with a valid and enforceable lien against any property of the Debtor's Estate where such property has a value of which is equal to or greater than the amount of the Allowed Claim and as to which no objection has been interposed and to which the period for bringing such objection as provided hereunder has expired or which has been Allowed by Final Order.  In accordance with the definition set forth in section 506(a) of the Bankruptcy Code, "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a Creditor having a lien against any property of Debtor's Estate to the extent the value of such creditor's interest in the property is less than the amount of such Allowed Claim.

**1.9**    "**Allowed Unsecured Claim**" means any Allowed Claim not otherwise entitled to priority and not secured against the property of the Debtor.

**1.10**    "**Assets**" means all property of the Debtor or its estate, whether tangible or intangible, and any proceeds, products, rents or profits thereof.

**1.11**    "**Avoidance Actions**" means all claims, demands, proceedings, or causes of action of the Debtor against any Person or Entity which has been brought or could be brought in the name of the Debtor pursuant to sections 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or applicable state law.

**1.12**    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

**1.13**    "**Bankruptcy Court**" means the Honorable Robert D. Drain, United States Bankruptcy Judge, the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140, having jurisdiction over the Debtor's Reorganization Case, or any such other Court as may hereafter exercise primary jurisdiction over the Debtor's Reorganization Case.

**1.14**    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

**1.15**    "**Bar Date**" means July 15, 2021, the initial date set by order of the Bankruptcy Court as the last day for filing general proofs of claim in the Debtor's Reorganization Case, and means August 22, 2021, the date set by order of the Bankruptcy Court as the last day for filing proofs of claim solely by governmental units in the Debtor's Reorganization Case.

**1.16**    "**BSP**" means collectively, Benefit Street Partners Realty Operating Partnership, L.P. and BSPRT 2018-FL3 Issuer, Ltd. (as the successor-in-interest to Benefit Street Partners Realty Operating Partnership, L.P.).

**1.17** "**BSP Claims**" means collectively, the BSP Disputed Claim and the BSP Undisputed Claim.

**1.18** "**BSP Disputed Claim**" means the claim as described in Section 3.2 below.

**1.19** "**BSP Loan Agreement**" means that certain loan agreement, dated as of December 13, 2017, between the Debtor and BSP.

**1.20** "**BSP Undisputed Claim**" means the claim as described in Section 3.2 below.

**1.21** "**Business Day**" means any day other than a Saturday, Sunday, or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

**1.22** "**Cash Collateral Orders**" means the orders entered by the Bankruptcy Court on March 5, 2021, March 19, 2021, April 21, 2021, June 21, 2021, and September 13, 2021 [Docket Nos. 15, 21, 28, 52, and 111].

**1.23** "**Claim**" as defined in section 101(5) of the Bankruptcy Code means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.24** "**Claimant**" means the holder of a Claim.

**1.25** "**Claims**" means any group of Claims as classified in Article II of this Plan.

**1.26** "**Class**" means a class of Claims or Interests.

**1.27** "**Confirmation**" means entry of a Final Order confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

**1.28** "**Confirmation Date**" means the date the Confirmation Order is entered on the Bankruptcy Court docket.

**1.29** "**Confirmation Order**" means the order issued and entered confirming the Plan, pursuant to section 1129 of the Bankruptcy Code.

**1.30** "**Consummation of the Plan**" means the occurrence of the Effective Date.

**1.31** "**Debtor**" means 96 Wythe Acquisition LLC, as debtor-in-possession in the Reorganization Case.

**1.32** "**Disclosure Statement**" means the third amended disclosure statement dated November 24, 2021, regarding this Plan, filed pursuant to section 1125 of the Bankruptcy Code in connection with the Reorganization Case and approved by Final Order of the Bankruptcy Court as containing "adequate information" as that term is defined in section 1125(a)(1) of the Bankruptcy

Code, and all exhibits in connection therewith and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

**1.33** "**Disputed Claim**" means any Claim designated as disputed, contingent, or unliquidated in the Debtor's Schedules filed in connection with its Reorganization Case, or any Claim against which an objection to the allowance thereof has been interposed and as to which such objection a Final Order has not been entered or any Claim against which the period for bringing such objection as provided hereunder has not expired.

**1.34** "**Disputed Claim Holder**" means the holder of a Disputed Claim.

**1.35** "**Disputed Claims Reserve**" means one or more reserves established by the Debtor or the Reorganized Debtor with respect to Disputed Claims.

**1.36** "**Effective Date**" means a Business Day selected by the Debtor in its sole discretion, which is, unless the Confirmation Order directs otherwise, up to forty-five (45) Business Days after the date on which each of the conditions to the Plan's Effective Date set forth herein has either been satisfied or waived in accordance with the Plan.

**1.37** "**Equity Infusion**" means $11,252,000.00 in cash to be provided by the Plan Sponsor, of which $9,561,900 shall be allocated for capital contribution; $1,438,000.00 against the PPP Settlement; and $252,100 for occupancy taxes.

**1.38** "**Equity Interests**" means the Interests in the Debtor outstanding immediately prior to the Effective Date.

**1.39** "**Estate**" means the estate created in the Reorganization Case pursuant to section 541 of the Bankruptcy Code.

**1.40** "**Exhibits**" means the exhibits filed in support of this Plan.

**1.41** "**Filing Date**" means February 23, 2021, the date of the commencement of the Debtor's Reorganization Case.

**1.42** "**Final Distribution**" means final payment to Allowed Unsecured Claims under the Plan.

**1.43** "**Final Order**" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Debtor's Reorganization Case, which order or judgment has not been reversed, stayed, modified, or amended and the time to appeal such order has expired.

**1.44** "**Financial Reviewer**" means the financial reviewer appointed pursuant to the Plan.

**1.45** "**Force Majeure Event**" shall mean a significant global disruption in the markets caused by outbreak of war, terrorism, or other material incidents related to local, state, and federal

-4-

laws, rules, regulations of mandates related to, among other things, the COVID-19 or other pandemic.

1.46    "**Hotel**" means the 147-room Williamsburg Hotel located at 96 Wythe Avenue, Brooklyn, New York 11249.

1.47    "**Interest**" means the legal, equitable and contractual rights of a holder of an Equity Security (as that term is defined in section 101(16) of the Bankruptcy Code) in the Debtor as of the Filing Date.

1.48    "**Interest Disputed Claims Reserve**" means a reserve account established by the Debtor or the Reorganized Debtor with respect to the BSP Disputed Claim into which interest payments will be deposited at the same interest rate as the BSP Undisputed Claim and shall be held in escrow until entry of a final order adjudicating the BSP Disputed Claim or written agreement with the Debtor or the Reorganized Debtor (as applicable) and BSP.

1.49    "**Interest Reserve**" means a reserve account established by the Debtor or the Reorganized Debtor in the amount of $3,000,000.00 to fund payments of interest to BSP in accordance with Section 3.2(b) of the Plan.

1.50    "**M&M**" means the holder of a Secured Claim arising pursuant to the applicable mechanics and materialmen lien statute.

1.51    "**Management Agreemen**t" means that certain hotel management and services agreement dated as of November 21, 2017, as amended and restated by Agreement dated May 1, 2022, entered into between the Debtor and the Management Company.

1.52    "**Management Company**" means The Williamsburg Hotel BK, LLC

1.53    "**NYC Water Board Claim**" means the Allowed Claim held by the NYC Water Board in the amount of $100,522.64.

1.54    "**Other Secured Claim**" means any Secured Claim against the Debtor other than the BSP Disputed Claim and the BSP Undisputed Claim.

1.55    "**Person**" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

1.56    "**Property Payment Plan**" means that certain property collection agreement dated as of June 23, 2021, executed by the Debtor and the City of New York, Department of Finance, relating to the payment plan of certain real estate taxes, assessments, and related charges.

1.57    "**Plan**" means "that certain *Second Amended Plan of Reorganization*" dated November 24, 2021 [Docket No. 196, Exhibit A], and any exhibits annexed thereto and any documents delivered in connection therewith, as the same may be modified, amended, or supplemented from time to time, including this *Third Amended Plan of Reorganization*.

**1.58** "**Plan Supplement**" means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court.

**1.59** "**Post-Confirmation Expenses**" means all reasonable fees, expenses and disbursements of Professional Persons incurred after the Confirmation Date.

**1.60** "**PPP Loans**" means loans received by the Management Company pursuant to the Paycheck Protection Program in connection with the operation of the Hotel.

**1.61** "**PPP Settlement**" means that certain settlement between the Debtor and the Management Company to resolve any claims, if any, with respect the Management Company's receipt of the PPP Loans.

**1.62** "**PPP Stipulation**" means that certain stipulation and agreement between the Debtor and the Management Company relating to the PPP Loans and the PPP Settlement that is pending approval from the Bankruptcy Court.

**1.63** "**Priority Claim**" means all claims that are entitled to priority under section 507(a) of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

**1.64** "**Priority Tax Claim**" means a Claim entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

**1.65** "**Professional Fee Claim**" means a Claim owed to a Professional Person for Professional Fees.

**1.66** "**Professional Fees**" means all allowances of compensation, indemnification, or reimbursement of expenses Allowed, or to be allowed, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, to any Professional Person retained pursuant to section 327 of the Bankruptcy Code.

**1.67** "**Professional Person**" means any Entity retained in the Reorganization Case pursuant to a Final Order in accordance with sections 326, 327, and 328 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.68** "**Plan Sponsor**" means 96 Wythe New Acquisition LLC.

**1.69** "**Receiver**" means Constantino Sagonas.

**1.70** "**Released Parties**" means the Debtor and the Management Company and each of their respective agents, managers, members, officers, directors, shareholders, advisors, attorneys, and representatives.  For the avoidance of doubt, BSP shall not be a Released Party.

**1.71** "**Reorganization Case**" means the bankruptcy case of the Debtor designated as Chapter Case 11 No. 21-22108 (RDD), pending before United States Bankruptcy Judge Robert D.

Drain, commenced on the Filing Date by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and ending upon the entry of a Final Order closing the Debtor's case.

**1.72** "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

**1.73** "**Schedules**" mean the Chapter 11 schedules filed with the Bankruptcy Court on May 5, 2021 [Docket No. 31].

**1.74** "**Secured Claim**" means a Claim, excluding any Secured Property Tax Claims, the BSP Disputed Claim and the BSP Undisputed Claim, secured by a "lien", as that term is defined at section 101(37) of the Bankruptcy Code, against any property of the Debtor, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, but only to the extent such lien was properly perfected and of the "value", as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Estate's interest in such property.

**1.75** "**Secured Creditor**" means the holder of a Secured Claim.

**1.76** "**Secured M&M Claim**" means a Claim owed to an M&M.

**1.77** "**Secured Property Tax Claim**" means any claim owed to a Taxing Authority on account of any tax or assessment levied on real estate.

**1.78** "**Subordinated Claim**" means any Claim that is subordinated to the payment of Unsecured Claims under applicable law or equity, including, without limitation, pursuant to any subsection of section 510 of the Bankruptcy Code

**1.79** "**Supplemental Bar Date**" means December 15, 2021, the supplemental date set by order of the Bankruptcy Court as the last day for filing general proofs of claim in the Debtor's Reorganization Case in the Debtor's Reorganization Case.

**1.80** "**Taxing Authority**" means any federal, state, or local entity with the authority to assess and collect taxes.

**1.81** "**Unclaimed Distributions**" means those funds allocated under the Plan for payment to any holders of Allowed Claims which holders, after due diligence, the Debtor or its attorneys are unable to locate.

**1.82** "**Unsecured Claim**" means any Claim which does not qualify as an Administrative Claim, Secured Claim, or Priority Tax Claim.

**1.83** "**Unsecured Creditor**" means the holder of an Unsecured Claim.

**1.84** "**Unsecured Creditor Distribution Fund**" means the amount of $1,970,936 to $2,570,936.00, subject to final reconciliation, to be funded by the Debtor and/or the Reorganized Debtor, as applicable, to pay Allowed Unsecured Claims, with one-half (1/2) to be paid on the Effective Date and the remainder to be paid (180) days after the Effective Date. Holders of

Allowed Unsecured Claims shall also receive interest at 5% on account of their respective deferred distributions under the Plan.

     **1.85**   "**U.S. Trustee**" means the United States Trustee for the Southern District of New York.

     **1.86**   "**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

     **1.87**   "**Wythe Borrower**" means 96 Wythe Borrower DE LLC.

     **1.88**   "**Wythe Mezz**" means 96 Wythe Mezz DE LLC.

     A terms used and not defined herein or in the Bankruptcy Code shall have their common and ordinary meaning.

**ARTICLE 2.**

**<u>CLASSIFICATION OF CLAIMS</u>**

**2.1**    **Classified Claims and Equity Interests**

     The following table is a designation of the Classes of Claims and Interests under the Plan. This classification of Claims and Interests is made for purposes of voting on the Plan and making distributions hereunder and for ease of administration hereof.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article 3, have not been classified and thus are excluded from the Classes described below.

     A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent

that the Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and has not

been paid, released, or otherwise satisfied or dealt with prior to the Effective Date.

### 2.2     Classification

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | No | No (deemed to accept) |
| Class 2 | BSP Claims | Yes | Yes |
| Class 3 | Secured Property Tax Claims | Yes | Yes |
| Class 4 | Secured M&M Claims | Yes | Yes |
| Class 5 | Unsecured Claims | Yes | Yes |
| Class 6 | Subordinated Claims | Yes | No (deemed to reject) |
| Class 7 | Equity Interests | Yes | No (deemed to reject) |

### 2.3     Resolution of Disputes

Disputes regarding the proper classification of any Claim shall be resolved pursuant to the

procedures established by the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the

Bankruptcy Court, and this Plan, and such resolution shall not be a condition precedent to

Confirmation or Consummation of this Plan.

**ARTICLE 3.**

**<u>TREATMENT OF CLAIMS AND INTERESTS</u>**

In addition to any waivers or releases of Claims or other causes of action provided for

elsewhere in this Plan, Claims shall be treated as set forth below.  Except as explicitly provided in

this Plan, all distributions under this Plan shall be free and clear of all Claims, liens, security

interests and encumbrances of any nature or kind whatsoever.

### 3.1    Unclassified Claims

(a)    Administrative Claims

Administrative Claims are not classified under the Plan.  Administrative Claims are Allowed Claims against the Debtor for any costs or expenses of the Reorganization Case allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including all actual and necessary expenses of preservation of the Debtor's Estate.  Such Allowed Administrative Claims are to be paid in full (to the extent not already paid during the Reorganization Case), in cash on the later of: (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) such other date and upon such other terms as may be agreed upon by the holder of such Claim and the Debtor, or as ordered by the Bankruptcy Court.

All requests for payment of Administrative Claims that accrued out of the ordinary course of business during the Administrative Period shall be filed and served on the Debtor's Attorneys not later than thirty (30) calendar days after notice of the Confirmation Date, with the exception of the Administrative Claims of Professional Persons retained pursuant to order of the Bankruptcy Court, which are subject to Court approval after notice and hearing and shall be paid by the Debtor and/or the Reorganized Debtor on or before the Effective Date or as otherwise ordered by the Bankruptcy Court.  Notwithstanding anything in the Plan to the contrary, objections to such requests shall be filed and served within sixty (60) calendar days after filing of each such request.

Except as specified above, all Allowed Administrative Claims shall receive cash from the Reorganized Debtor in the amount of such Allowed Administrative Claim on the later of (i) the Effective Date and (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or at such other date and upon such other terms as may be agreed upon the holder of the Allowed Administrative Claims and the Debtor or ordered by the Bankruptcy Court.

Any Allowed Administrative Claim based on a liability incurred by the Debtor in the ordinary course of business during the Reorganization Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto, and any Allowed Administrative Claim may be paid on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor.

(b)    Priority Tax Claims

Priority Tax Claims are not classified under the Plan.  Unless otherwise agreed to by the Debtor and a holder of an Allowed Priority Tax Claim, such Allowed Claims will be paid 100% of the amount of their Allowed Claim in equal deferred cash payments on a quarterly basis, beginning on the later of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.  In either case:  (x) payments will take place over the period of five (5) years, measured from the date of the assessment of such taxes or, if there has been no assessment, from the Filing Date (such period, the "Priority Tax Payment Period"); (y) with interest at a rate equal to 5% per annum; (z) in equal installments sufficient to fully amortize the balance of such Claim over a period beginning on the Effective date and ending on the last day of the Priority Tax Payment Period; *provided*, *however*, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance thereof, in full at any time on or after the Effective Date without premium or penalty; *provided*, *further*, that no holder of an Allowed Priority Tax Claim shall be entitled to any payment on account of any pre-Effective Date interest arising after the Filing Date with respect to or in connection with such Allowed Claim.

(c)    The NYC Water Board Claim

The NYC Water Board Claim is not classified under the Plan. Unless otherwise agreed to by the Debtor and the NYC Water Board, the Reorganized Debtor shall pay the NYC Water Board

Claim in full, one-half (1/2) to be paid on the Effective Date and the remainder to be paid with

interest (180) days after the Effective Date.  Liens shall continue with respect to such claim, with

the same force and effect until such claim has been paid in full as provided under this Plan.

(d)     Professional Fee Claims

Professional Fee Claims are not classified under the Plan.  Any Professional Person seeking

allowance of a Professional Fee Claim shall file, with the Bankruptcy Court, its final application

for allowance of compensation for services rendered, and reimbursement of expenses incurred

prior to the Effective Date and in connection with the preparation and prosecution of such final

application no later than forty-five (45) calendar days after the Effective Date.  Any objections to

such Professional Fee Claims must be filed and served pursuant to the procedures set forth in the

Confirmation Order no later than sixty-five (65) calendar days after the Effective Date or such

other date as established by the Bankruptcy Court.

All Professional Persons seeking allowance by the Bankruptcy Court of a Professional Fee

Claim shall be paid in full in cash in such amounts as are approved by the Bankruptcy Court:

(i) upon the later of (x) the Effective Date and (y) fourteen (14) calendar days after the date upon

which the order relating to the allowance of any such Professional Fee Claim is entered; or

(ii) upon such other terms as may be mutually agreed upon between the holder of such Professional

Fee Claim and the Reorganized Debtor.  On the Effective Date, to the extent known, the

Reorganized Debtor shall reserve and hold in a segregated account cash in an amount equal to all

accrued but unpaid Professional Fee Claims as of the Effective Date, which cash shall be disbursed

solely to the holders of Allowed Professional Fee Claims with the remainder to be reserved until

all Professional Fee Claims have been either Allowed and paid in full or disallowed by a Final

Order, at which time any remaining cash in the segregated account shall become the sole and

exclusive property of the Reorganized Debtor.   All post-Confirmation Professional Fees and expenses for services rendered by the Professional Persons in connection with the Reorganization Case and the Plan shall be paid in the ordinary course by the Debtor or the Reorganized Debtor, as the case may be.

        (e)    U.S. Trustee Fees

The Debtor or the Reorganized Debtor, as applicable, shall pay all outstanding U.S. Trustee Fees of the Debtor on an ongoing basis on the date such U.S. Trustee Fees become due and payable, until such time as a final decree is entered closing the Reorganization Case, the Reorganization Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.2**    **Classified Claims**

        (a)    Class 1 - Priority Claims

        (i)    *Treatment*:  The legal, equitable, and contractual rights of the holders of Priority Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Claim agrees to different treatment, on the applicable distribution date, each holder of an Allowed Priority Claim shall receive cash in an amount equal to such Allowed Claim.

        (ii)    *Voting*: The Priority Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Claims.

        (b)    Class 2 - BSP Claims

        (i)    *Allowance*:  The BSP Undisputed Claim shall be allowed in the amount of $70,700,000.00.  The Debtor disputes the balance of any claims held by BSP, including the BSP Disputed Claim, and such claims shall be subject to subordination, disallowance, expungement, dismissal, and/or further agreement by and between the Debtor and BSP.

-13-

(ii)    Treatment:

(1)    **Treatment of the BSP Undisputed Claim.**  Subject to the Reorganized Debtor's right to pre-pay all or part of the BSP Undisputed Claim (and any portion of the BSP Disputed Claim that becomes an Allowed Claim) at any time without penalty, the BSP Undisputed Claim shall be paid in full, together with interest to be paid as follows: (i) the Reorganized Debtor shall pay BSP equal monthly payments of interest at a rate of 4.5% per annum commencing on the Effective Date for four (4) years; (ii) commencing on the fourth (4th) anniversary of the Effective Date, the Reorganized Debtor shall pay interest at a rate of 5% per annum for an additional two (2) years; and (iii) on the sixth (6th) anniversary of the Effective Date, the Reorganized Debtor shall make a final payment consisting of the balance of the BSP Undisputed Claim.  In addition, on the Effective Date, the Reorganized Debtor shall: (a) contribute $3,000,000.00 into an interest account to serve as the Interest Reserve for the Reorganized Debtor's payments on account of the BSP Undisputed Claim, which such account shall be established at a third-party bank selected by the Debtor in its sole discretion and drawn on by the Reorganized Debtor to pay BSP interest payments, in full or partially, in the event that the Reorganized Debtor has not paid the required monthly interest payment, in full or partially, by the twentieth (20th) of the month when such payment becomes due; and (b) pre-pay BSP the first two (2) monthly interest payments required to be paid under subsection (i) above, such that on the Effective Date the Reorganized Debtor shall pay BSP a total of the first two (2) monthly interest payments as provided hereunder.

(2)    **Treatment of the BSP Disputed Claim**.  Upon a Final Order adjudicating the BSP Disputed Claim or by written agreement between the Debtor or the Reorganized Debtor (as applicable) and BSP, and subject to the Debtor's right to seek an estimation of such claim pursuant to section 502(c) of the Bankruptcy Code, with BSP's right to oppose, the Debtor shall make additional distributions to BSP as follows: (i) in the event that amounts due to BSP are adjudicated by Final Order or by written agreement between the Debtor or the Reorganized Debtor (as applicable) and BSP to be in an amount that exceeds the BSP Undisputed Claim amount and if the BSP Disputed Claim is not subject to subordination, such additional Allowed Claim amounts shall receive the funds in the Interest Disputed Claim Reserve corresponding

to the interest payments otherwise payable on account of any such additional Allowed Claim amount, with ongoing interest payments from the time of such adjudication to be paid pursuant to the treatment of the BSP Undisputed Claim; and (ii) any excess amounts held in the Interest Disputed Claim Reserve above the amounts required for distributions to BSP under the Plan and as provided herein, shall be released to the Reorganized Debtor, free and clear of any liens, claims, and encumbrances.

(3)     **Alternate Treatment Option.** In exchange for BSP's agreement by Final Order to an Allowed Claim in the amount of Seventy-Five ($75) million dollars (the "BSP Agreed Claim") settling and resolving in full the pending Adversary Proceeding (and any other objections to such) with respect to the BSP Disputed Claim, which amount shall include any and all claims by BSP, including the BSP Undisputed Claim and BSP Disputed Claim, and subject to the Reorganized Debtor's right to pre-pay all or part of such BSP Agreed Claim, at any time without penalty, through the refinance and/or sale of the Hotel expressly as provided for below  (the "Take Out Event"), the Reorganized Debtor agrees to the following alternate treatment option:

(4)     The Take Out Event shall be effectuated through a process for the refinancing and sale of the Hotel over forty two  (42) months period. The refinance and sale paths shall be run by the Reorganized Debtor and staggered, with the refinancing path commenced as soon as practical after the Effective Date for an initial period of thirty six (36) months.  The sale process shall not commence until thirty six (36) months after the Effective Date, if the refinance has not occurred by month thirty six (36).

(5)     As soon as practicable after the Effective Date, the Reorganized Debtor shall initiate an independent refinance process. If within thirty six (36) months such a refinance shall not occur, then after the thirty six (36) months period, a sale process shall commence,  Starting thirty six  (36) months after the Effective Date, and in consultation with BSB, the Reorganized Debtor will hire a new nationally-recognized third-party Broker, reasonably acceptable to the Reorganized Debtor and BSP, to run a process for the sale over a six month period as provided above. Such sale process shall be through a public process of competitive bidding, for a fair market value to a bona fide third party with the BSP Agreed Claim to be paid  from  the  proceeds  of  the

-15-

refinancing and/or sale as provided for herein. Nothing in this Plan shall prohibit the Debtor from arranging refinancing during the six months sale period, and if Debtor arranges a refinance which pays off the BSP Agreed Claim during such six-month sale period, then the sale shall be curtailed.

(6)    Pending payment upon the BSP Agreed Claim, the Reorganized Debtor shall pay to BSP equal monthly payments of interest at a rate of 4.5% per annum commencing on the Effective Date.

(iii)    *Disputed Claim Reserve for the BSP Disputed Claims*. Subject to the Debtor's right to seek an estimation of the BSP Disputed Claim, any payments otherwise due to BSP on account of the BSP Disputed Claim shall be paid into the Interest Disputed Claim Reserve, concurrently with the payment of distributions to BSP on account of the BSP Undisputed Claim, and shall be subject to further Bankruptcy Court determination with respect to the allowance of the BSP Disputed Claim.

(iv)    *Loan Documents*: Except as provided for in this Plan which shall control in all respects, including with regard to payment terms, default terms, or any terms on pre-payment or refinance, all terms of the BSP Loan Agreement, and any related documents that cover the BSP Claims and collateral securing the BSP Claims shall apply. For clarity, the Reorganized Debtor's ownership structure, management, reporting, and payment terms as provided for under this Plan shall control in all respects and the Reorganized Debtor shall not be deemed to be in default under the BSP Loan Agreement (or any related documents) by virtue of the foregoing and/or because of any defaults arising prior to the Effective Date of the Plan and/or by virtue of any acts that would otherwise constitute compliance with the Plan.

(v)    *Voting*: The BSP Claims are impaired and BSP is therefore entitled to vote to accept or reject the Plan. Solely for purposes of voting, BSP shall be permitted to vote on account of the BSP Disputed Claim and the BSP Undisputed Claim.

-16-

    (c)    <u>Class 3 - Secured Property Tax Claims</u>

    (i)    *Treatment*:  Unless otherwise agreed to by the Debtor and a holder of an Allowed Secured Property Tax Claim, the Reorganized Debtor shall comply with its obligations under the Property Payment Plan as between the Debtor and the relevant Taxing Authority with respect to the payment of real estate taxes.  The Reorganized Debtor shall pay such amounts as provided for under the Property Payment Plan.  Liens shall continue with the same force and effect until such Allowed Secured Property Tax Claim has been paid in full as provided under this Plan.

    (ii)    *Voting*:  The Secured Property Tax Claims are impaired Claims. Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Secured Property Tax Claims.

    (d)    <u>Class 4 - Secured M&M Claims</u>

    (i)    *Treatment*:  Unless otherwise agreed to by the Debtor and such holder of an Allowed Secured M&M Claim, the Reorganized Debtor shall pay Allowed Secured M&M Claims in full, up to the amount of their Allowed Claim, one-half (1/2) to be paid on the Effective Date and the remainder to be paid with interest (180) days after the Effective Date.  Liens shall continue with respect to any Allowed Secured M&M Claim, with the same force and effect until such Allowed Secured M&M Claim has been paid in full as provided under this Plan.

    (ii)    *Voting*:  The Secured M&M Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Secured M&M Claims.

(e)      Class 5 - Unsecured Claims

(i)      *Treatment*:   Unless otherwise agreed by the Debtor and such Claimant, each holder of an Allowed Unsecured Claim shall be paid in full, up to the amount of their Allowed Claim, one-half (1/2) to be paid on the Effective Date and the remainder to be paid with interest (180) days after the Effective Date.

(ii)      *Voting*:   The Unsecured Claims are impaired Claims.   Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Unsecured Claims.

(f)      Class 6 - Subordinated Claims

(i)      *Treatment*:   Unless otherwise agreed by the Debtor and such claimant, holders of Allowed Subordinated Claims will be subordinated to Allowed Unsecured Claims and will not receive any distribution under the Plan.

(ii)      *Voting*:   The Subordinated Claims are impaired Claims and holders of Subordinated Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Subordinated Claims.

(g)      Class 7 - Equity Interests

(i)      *Treatment*:   All Equity Interests will be cancelled, and the Plan Sponsor will be issued new Interests in the Reorganized Debtor, constituting of 100% ownership of the Reorganized Debtor.   In exchange for its Interests in the Reorganized Debtor and in furtherance of the PPP Settlement and the PPP Stipulation, upon the Effective Date, the Plan Sponsor will contribute $11,252,000.00 into the Reorganized Debtor, $1,438,000.00 of which will be earmarked as a settlement payment with respect to the PPP Settlement (together with the

-18-

forgiveness of debt by the Management Company as provided for in Section 5.4 below), $252,100 of which will be earmarked for the occupancy tax payment, and $9,561,900.00 as the Equity Infusion to the Reorganized Debtor.  The Plan Sponsor agrees that Wythe Mezz shall receive new Interests in the Reorganized Debtor, which new Interests shall be junior to the new Interests issued to the Plan Sponsor and to any sources of new equity provided to the Reorganized Debtor as part of the Plan.  Wythe Mezz will be paid from excess proceeds, if any, upon sale and/or refinance after payment of all Claims under the Plan and expressly as agreed by the Plan Sponsor and the Reorganized Debtor.  Wythe Mezz shall have no voting or approval rights in the Reorganized Debtor, nor hold any position of control over or have any Claims and/or rights against the Debtor, the Reorganized Debtor, and/or any of their respective assets.

(ii)    *Voting*:  Equity Interests are impaired under this Plan.  The holders of Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equity Interests.

## ARTICLE 4.

## PAYMENT OF CLAIMS

### 4.1    Payment of Allowed Claims

Payment is to be made only to those holders of Allowed Claims of the various Classes. Notwithstanding anything to the contrary herein, the Debtor may pre-pay all or part of any Class of obligations under the Plan without penalty, at any time.

(a)    Objection to Claims

The Debtor may file objections to claims of record in order to correct erroneous or duplicative amounts or for any other reason that in its business judgment would be appropriate.

-19-

(i)    General Procedures.  The Debtor filed objections to certain disputed claims that were filed by the Bar Date and Supplemental Bar Date, including to the amount and classification thereof, ( and a complaint commencing an adversary proceeding) to certain proofs of claim and served a copy of such objection (or complaint) upon the holder of the claim to which such objection pertains.  The resolution of any such objection shall be governed by the Bankruptcy Code, the Bankruptcy Rules, and such provisions as may be established by the Bankruptcy Court, or by the procedural rules of the court in which such objection is to be litigated. Any Claim as to which an objection is not timely filed in accordance with the provisions of the Plan or orders of the Bankruptcy Court and to which the Debtor's time to interpose objection has expired, shall be an Allowed Claim, except that any Claim scheduled as disputed to which no proof of claim has been filed shall be deemed disallowed and is expunged.  Notwithstanding the foregoing, the Debtor shall have the right to enter into any settlement with respect to any Claim for an amount equal to or less than $300,000.00 without further approval of the Bankruptcy Court.

(ii)    Prosecution of Objections.    Unless otherwise ordered by the Bankruptcy Court, the Debtor and/or the Reorganized Debtor shall litigate its objections to Claims to judgment or settlement, or withdraw the objection at its sole and absolute discretion.

(iii)    Disputed Claims Reserve.  The Debtor shall establish one or more reserves for the benefit of a Disputed Claim, including the BSP Disputed Claim, consisting of the Interest Disputed Claim Reserve, or consisting of cash in an amount equal to the pro rata share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of:  (i) the liquidated amount set forth in the filed proof Claim relating to such Disputed Claims or if no proof of Claim has been filed the liquidated amount set forth in the Schedules; (ii) the amount in which the Disputed Claim has been estimated by the

Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as consisting and representing the maximum amount in which such Claim may ultimately become Allowed Claim; and (iii) such other amount as may be agreed upon by the holder of such Claim and the Debtor.

At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan.  Such distribution, if any, shall be made as soon as reasonably practicable after the date that the order or judgement of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order or the effective date of the relevant agreement between the Debtor and the holder of the applicable Disputed Claim.  No payments or distributions shall be made with respect to all or any portion of any Disputed Claim, including the BSP Disputed Claim, pending the entire resolution thereof by Final Order or agreement between the Debtor and the holder of the applicable Disputed Claim.

(b)    Setoffs

The Debtor preserves the right to seek to set off against any payment to be made pursuant to the Plan to a Claimant, including BSP, valid claims of any nature whatsoever that the Debtor may have or have had, against the holder of such Claim including, but not limited to, judgments obtained pursuant to sections 547 and 548 of the Bankruptcy Code, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that it may have or have had against any such Claimant.  Claimants shall be entitled to object to any assertion of a right of setoff, which right shall be determined by further order of the Court.

(c)    <u>Unclaimed Cash</u>

(i)    In the event any Claimant fails to claim any distribution within three (3) months from the date of such distribution, by failing to present such distribution check for payment to the Debtor's bank, such Claimant shall forfeit all rights thereto.  Thereafter, the distribution formerly available to the Claimant shall become the property of the Reorganized Debtor, and such Claimant shall have no further rights to share in any subsequent distributions that may be made.

(ii)    For purposes of mailing distribution checks, the Debtor may rely on the addresses for holders of Allowed Claims as set forth in the Schedules unless superseded by the address for such holders set forth in the proofs of Claim filed by the Claimants with the Bankruptcy Court.  If no proofs of Claim are filed and the Schedules filed by the Debtor fail to furnish valid addresses for holders of Allowed Claims, such Allowed Claims shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code at the expiration of the later of (a) six (6) months from the entry of the Confirmation Order and (b) three (3) months after an initial distribution is made to that Claimant and shall be returned to the Reorganized Debtor.

## ARTICLE 5.

## <u>PLAN IMPLEMENTATION ISSUES</u>

**5.1    Conditions to the Effective Date**

In order for the Plan to be deemed effective, the following events must occur:

(i)    the Disclosure Statement shall have been approved;

(ii)    financing from Lockwood Development Partners shall be fully committed and all documents and agreements necessary to effectuate and implement the financing shall have been executed and delivered by the relevant parties;

(iii)    entry of a Confirmation Order; and

(iv)     the Confirmation Order becoming a Final Order.

Upon the satisfaction on the conditions set forth herein, the Debtor may, but is not required to, accelerate the Effective Date.

**5.2     Period Prior to Effective Date**

During the period between the Confirmation Date and the Effective Date, the Debtor shall continue to exercise ownership and control of all Assets and property of its Estate.

**5.3     Consummation of Plan**

The Debtor anticipates that this Plan will be substantially consummated upon the commencement of distributions under this Plan on the Effective Date in accordance with section 1101(2)(C) of the Bankruptcy Code. The Plan is to be implemented in a manner consistent with section 1123 of the Bankruptcy Code. In addition, pursuant to the Confirmation Order and upon confirmation of this Plan, the Debtor or the Reorganized Debtor, as the case may be, will be authorized to take all necessary steps and perform all necessary acts to consummate the terms and conditions of this Plan. On or before the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, may file with the Bankruptcy Court any and all agreements and documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and may execute such documents without the need for any further approvals, authorizations or consents. There shall be no modification or stay of the Confirmation Order or entry of other court order prohibiting the transactions contemplated hereunder from being consummated.

**5.4     Means for Implementation of Plan**

The Plan Sponsor shall contribute $11,252,000.00 to the Reorganized Debtor upon the Effective Date, $9,561,900 of which shall be paid as a capital contribution as provided in Section 3.2(g) above. In addition, and as set forth more fully in the Disclosure Statement, while the Debtor and the Management Company dispute any allegations made with respect to the PPP Loans and

believe such claims are baseless, the Debtor and Management Company have agreed to settle any and all claims, if any, relating to the PPP Loans pursuant to the PPP Settlement and the PPP Stipulation.  Pursuant to the PPP Settlement, which is approved herein, the Management Company has agreed to defer repayment of over $2,000,000.00 in claims for fees due to the Management Company through the Plan's Effective Date, until after all Allowed Claims have been paid, and the Plan Sponsor has agreed to infuse an additional $1,438,000.00 to the Reorganized Debtor (for a total payment of $11,252,000.00 including such infusion, capital contribution of $9,561,900.00, and $252,100 for occupancy taxes) which shall be earmarked as a settlement payment (together with deferral of debt by the Management Company) pursuant to the PPP Settlement.  The PPP Stipulation will provide as a further back-stop as it requires, among other things, the Management Company to guaranty the settlement payment.

The Plan will be implemented by and through proceeds of the $11,252,000.00 in cash from the Plan Sponsor to be funded upon the Effective Date as part of the PPP Settlement and the Equity Infusion, any cash otherwise held by the Debtor upon the Effective Date, and ongoing income from the Debtor's operations.  The Reorganized Debtor will continue to operate from and after the Effective Date.  The Plan Sponsor's cash infusion and the income generated by the Debtor's and the Reorganized Debtor's operations will be used to fund operating expenses  and to pay the amounts necessary to fund the Plan payments.  The Plan Sponsor shall designate the managing member of the Debtor upon the Effective Date.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or

Interest may have with respect to any Allowed Claim or Interest or to any distribution to be made on account of such Allowed Claim or Interest, including, but not limited to, the PPP Settlement and the PPP Stipulation.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its estate, and holders of Claims and Interests and is fair, equitable, and reasonable.

### 5.5    Vesting of Assets in Post-Confirmation Debtor

As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all property, assets, and effects of the Debtor (including the Hotel) shall vest in the Reorganized Debtor free and clear of all Claims and Interests except as otherwise expressly provided in the Plan.  The post-Confirmation Debtor will be owned by 96 Wythe New Acquisition LLC.  Toby Moskovits and Michael Lichtenstein are the operating members and managers of 96 Wythe New Acquisition LLC.  Lockwood Development Partners may also designate one person as operating member and manager and will be a preferred equity holder of 96 Wythe New Acquisition LLC.

### 5.6    Confirmation Order

The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan is valid and enforceable pursuant to its terms.  If any provisions of the Plan are prohibited by the Bankruptcy Code, the Debtor reserves the right to sever such provisions from the Plan and to request that the Plan, as so modified, be confirmed.

### 5.7    Assumption and/or Rejection of Executory Contracts

Subject to the provisions of this paragraph and with the exception of the Management Agreement and the Property Payment Plan, all executory contracts and unexpired leases, not

previously assumed or rejected by the Debtor pursuant to an order entered by the Bankruptcy Court, and not terminated by their own terms, shall be deemed rejected as of the Effective Date under the Plan pursuant to section 365 of the Bankruptcy Code.  The Property Payment Plan shall be assumed by the Reorganized Debtor and the Management Agreement (as amended and restated) shall be assumed by the Reorganized Debtor as modified hereunder to provide for the following modifications: (i) the deferral of the payment of pre-Effective Date fees through the date of Final Distributions under the Plan and (ii) in the event that the Reorganized Debtor negotiates an arm's length sale of the Hotel to a non-affiliated third-party, (a) the Management Agreement may be terminated upon thirty-days' notice and concurrent with the closing on such sale and (b) nothing shall prohibit the new purchaser and the Management Company from negotiating a mutually agreeable  agreement by which the Management Company will continue operating and managing the Hotel post-closing unless or until such time as the new owner has identified and only if the new owner wishes to put in place a new management company for the Hotel.   The Management Company will be paid a capped fee of 3% of the gross revenues collected from operation of the Hotel on and after the Effective Date as provided for under the Management Agreement. Consistent with above, any amounts or fees due to the Management Company under the Management Agreement for the period prior to and through the Effective Date shall be deferred and shall not be paid under the Plan until after payment of all other Allowed Claims and Interests hereunder.

In addition, except with respect to the payment of Pre-Effective Date management fees due to the Management Company which shall be deferred as provided for above, upon the Effective Date, the Management Company, including, but limited to the Released Parties, have agreed and expressly waive all claims against the Debtor and Reorganized Debtor in relation to the payment

on account of the outstanding pre-petition loans and advances made to the Debtor and Management Company with respect to the Hotel operations pursuant to the line of credit loan agreement, in the amount of approximately $6,500,000. This waiver of claims is operative only upon the Plan being confirmed and the Effective Date.

Any Claim arising from the rejection of any executory contract or unexpired lease hereunder shall be filed with the Bankruptcy Court on or before the thirtieth (30th) calendar day after the Effective Date, or any counterparty to such executory contract or unexpired lease shall be forever barred from receiving any distribution under this Plan. Objections to any such claim(s) shall be filed by the Debtor not later than sixty (60) days after the filing of such claim(s) and the Bankruptcy Court shall determine any such objection. Any Claims arising from the rejection of an executory contract or unexpired lease shall, to the extent Allowed, be treated as a Class 5 Unsecured Claim or a Class 6 Subordinated Claim, as appropriate with respect to such Claim.

### 5.8    The Reorganized Debtor's Post-Confirmation Reporting and Retention of Independent Financial Oversight Services

The Reorganized Debtor shall continue its reporting requirements under the Loan Documents. The Reorganized Debtor shall also retain Getzler Henrich & Associates LLC on or about the Effective Date in the ordinary course of business and pursuant to a separate agreement to provide independent third-party financial oversight services, which shall include monthly review of the Reorganized Debtor's financials. The Management Company shall continue to operate the Reorganized Debtor and Hotel under the terms of the Management Agreement and hereunder.

Not later than the Effective Date of the Plan, Management Company shall retain <u>William Henrich</u> of the Getzler Henrich consulting and advisory firm (hereinafter, the "<u>Financial Reviewer</u>"). The Financial Reviewer shall receive copies of all bank statements issued/generated

by any depository or financial institution at which the Hotel and, in regards to any accounts of Management Company related in any respect to the Hotel, Management Company maintain such accounts, and the Financial Reviewer shall review such accounts and activities on a monthly basis and generate a report on a quarterly basis  that shall be provided to BSP for the duration of the period that any monies remain outstanding and owed to BSB (the "Quarterly Report"), with a copy each to the Reorganized Debtor and Management Company.

The Financial Reviewer shall meet with the Reorganized Debtor and Management Company at least once each month to review operations and financial performance , and the Quarterly Report shall include any material updates or changes relevant to Hotel operations and financial performance of the Hotel.  In the event that the Financial Reviewer reasonably believes, based on his ongoing review of the foregoing information and meetings with the Reorganized Debtor and Management Company, that any use of funds by Management Company or Reorganized Debtor  has occurred that is not spent properly , the Financial Reviewer shall promptly, and not later than the next Quarterly Report, notify Reorganized Debtor and BSP of such event, facts, or documents that give rise to such concern.  The Reorganized Debtor shall be responsible for paying all costs incurred and fees charged by the Financial Reviewer, and Management Company is authorized to make such payments from funds of the Hotel.  For avoidance of doubt, the Financial Reviewer shall be entitled to request and review any and all financial documents and materials, the books and records, and any financial records of the Hotel, starting from the period of time post confirmation and after the Effective Date, and until BSP is paid off, including but not limited to those maintained or in the possession of Management Company.

### 5.9    Full and Final Satisfaction

All payments, distributions, and transfers of cash and property under this Plan are in full and final satisfaction, settlement, release, and discharge of all Claims against the Debtor or of any nature whatsoever.    Notwithstanding anything contained in this Plan to the contrary, the Confirmation Order shall discharge the Debtor from any debt that arose prior to the Confirmation Date and any debt of a kind specified in sections 502(g) and 502(i) of the Bankruptcy Code.  Under no circumstances shall any additional consideration be payable by the Debtor to holders of any such Claims other than as expressly provided under this Plan.

### 5.10    Releases

**As an integral part and in consideration of the settlement and treatment of Claims and Interests under the Plan, any Persons and holders of any Claims or Interests that received actual or constructive notice of this Plan shall be and are permanently enjoined and precluded from asserting, commencing, or continuing in any manner any actions or from asserting any lien against the Debtor, the Released Parties, and against any of such parties' respective assets or properties, with respect to any debt, Claim, or interest, including any guarantee by any of the Released Parties based upon any document, instrument or act, omission, transaction, or other activity of any kind or nature arising out of, based upon, or in any way related to, the conduct, actions, and transactions of the Debtor or the Released Parties through the Confirmation Date, except for any act or omission that constitutes fraud, gross negligence, or willful misconduct as determined by a final order of a court of competent jurisdiction (the "Release"). For the avoidance of doubt, except as provided below, the Release shall not apply to the Released Parties (other than the Debtor) with respect to a holder of a Claim that is entitled to vote that elects to "opt-out" of such Release on its timely and properly-submitted ballot. Notwithstanding the foregoing, and for the avoidance of**

-29-

**doubt, the PPP Settlement and PPP Stipulation provides for a mutual, limited release which is a limited release solely with respect to any claims relating to the PPP Loans, if any.  As such, the opt-out provided for in the ballots that applies to the Release does not alter the effectiveness of the PPP Stipulation (including the release provided therein) if and to the extent that the PPP Stipulation is approved by separate order of the Court and/or release of claims under the Plan solely relating to the PPP Settlement herein.**

**5.11    Term of Injunctions or Stays**

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Reorganization Case under sections 105 or 362 of the Bankruptcy Code or otherwise, shall remain in full force and effect through and inclusive of the Effective Date.**

**5.12    Exculpation**

**Neither the Debtor nor any of the Released Parties shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of, the Reorganization Case, the Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan other than for conduct that constitutes gross negligence, willful misconduct, or a violation of the criminal, tax, environmental, and antitrust laws of the United States.**

## ARTICLE 6.

## PRESERVATION OF CLAIMS AND CAUSES OF ACTION FOR THE ESTATE

The Debtor has determined that it may commence any causes of action pursuant to (a) sections 502, 542, 544, 545, 546, 550, and 553 of the Bankruptcy Code, (b) any preference claims pursuant to section 547 of the Bankruptcy Code, (c) any fraudulent transfer claims pursuant to section 548 of the Bankruptcy Code, (d) any claims relating to post-petition transactions pursuant to section 549 of the Bankruptcy Code, or (e) any pre-petition and post-petition Claims

-30-

arising under applicable state law.  All of the Debtor's rights, Claims, and causes of action shall be, and hereby are, preserved, transferred and assigned to the Reorganized Debtor as of the Effective Date of the Plan, including, but not limited to, any and all Claims against BSP.

## ARTICLE 7.

## **MISCELLANEOUS**

### 7.1     **Bankruptcy Fees**

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on Confirmation of this Plan, shall be paid on or before the Effective Date.  Prior to entry of a final decree, any Post-Confirmation Expenses shall be paid by the Reorganized Debtor.  The Debtor will continue to file operating reports until such time as a final decree is issued.

## ARTICLE 8.

## **RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction of Debtor's case pursuant to and for the purposes set forth in section 1127(b) of the Bankruptcy Code and, inter alia, for the following purposes:

(a)     to determine any and all objections to the allowance, classification, and/or valuation of Claims or Interests;

(b)     to determine any and all applications for compensations and reimbursement of expenses for Professional Fees, Administrative Claims, and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(c)     to amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

-31-

(d)      to determine any and all controversies and disputes arising under or related to the Plan;

(e)      to construe and enforce any and all provisions of the Plan;

(f)      to determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases under section 365 of the Bankruptcy Code to which the Debtor is a party or with respect to which it may be liable, and to hear and determine and, if need be, to liquidate, any and all claims arising therefrom;

(g)      to determine the validity, priority, and extent of liens, Claims, and encumbrances upon property of the Estate and to determine any questions and issues regarding title to and interests in any property of the estate and to enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor;

(h)      to determine any and all controversies and disputes arising under or related to any settlement of any Adversary Proceeding or contested matter approved by the Bankruptcy Court, and with respect to prosecution of any Adversary Proceeding and/or Contested matter initiated prior to the Effective Date, either before or after the Confirmation Date;

(i)      to order the transfer of any Asset of Debtor's estate free and clear of liens, claims, and encumbrances and to effectuate payments under and performance of the provisions of the Plan;

(j)      to enforce any and all injunctions created pursuant to the terms of the Plan;

(k)      to enter a Final Order or decree in the Debtor's Reorganization Case; and

(l)      to determine such other matters as may be provided for in the Plan or Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code or the Bankruptcy Rules.

-32-

# ARTICLE 9.

## AMENDMENT AND INTERPRETATION OF THIS PLAN

### 9.1    Modification of the Plan

The Debtor reserves its right to modify, revoke, or withdraw this Plan at any time prior to the date of the entry of the Confirmation Order, except as provided in this Plan.  After the date of the Confirmation Order, the Debtor may, without approval of the Bankruptcy Court, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan so long as it does not materially or adversely affect Claimants.

### 9.2    Headings

The headings of Articles and Sections used in this Plan are inserted for convenience only, and neither constitute a portion of this Plan nor in any manner affect the provisions or interpretations hereof.

### 9.3    Severability

Should any provisions of this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions or provision of this Plan, except to the extent that any provision so determined to be unenforceable is or was a condition precedent to this Plan set forth in Article V of this Plan.  If there are any inconsistencies between the Plan and Disclosure Statement, the terms of the Plan shall control.

### 9.4    Successors and Assigns

The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the executors, administrators, successors, trustee, and assigns of such Person.

### 9.5 Rights if Plan Is Not Confirmed

If Confirmation of the Plan does not occur, the Plan shall be deemed null and void, and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

### 9.6 Internal References

The words "herein," "hereof," "hereto," "hereunder," and any other words of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan.

Dated: May 12, 2022
New York, New York

96 Wythe Acquisition LLC


*/s/ David Goldwasser*
David Goldwasser
Chief Restructuring Officer

**<u>EXHIBIT 2</u>**

**<u>BLACKLINE</u>**

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Jason I. Kirschner
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) ~~506-1910~~262-1910

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**BACKENROTH FRANKEL &**
**KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor*
*and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108 (RDD) |
| Debtor. | |

**~~SECOND~~THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

*[Different first page setting changed from off in original to on in modified.].*

**TABLE OF CONTENTS**
~~**TABLE OF CONTENTS**~~

**Page~~(s)~~**

~~ARTICLE~~ARTICLE 1. ...................................................................................DEFINITIONS 1

~~ARTICLE~~ARTICLE 2. .........................................................CLASSIFICATION OF CLAIMS .................................................................................................8

2.1~~.~~   Classified Claims and Equity Interests ........................................8

2.2~~.~~   Classification ...............................................................................~~8~~9

2.3~~.~~   Resolution of Disputes .................................................................9

~~ARTICLE~~ARTICLE 3. ...............................................TREATMENT OF CLAIMS AND INTERESTS ...........................................................................................9

3.1~~.~~   Unclassified Claims .....................................................................~~9~~10

3.2~~.~~   Classified Claims .........................................................................~~12~~13

~~ARTICLE~~ARTICLE 4. ............................................................PAYMENT OF CLAIMS .......................................................................................~~17~~19

4.1~~.~~   Payment of Allowed Claims .........................................................~~17~~19

~~ARTICLE~~ARTICLE 5. ...............................................PLAN IMPLEMENTATION ISSUES ........................................................................................~~20~~22

5.1~~.~~   Conditions to the Effective Date ..................................................~~20~~22

5.2~~.~~   Period Prior to Effective Date ......................................................~~21~~23

5.3~~.~~   Consummation of Plan ..................................................................~~21~~23

5.4~~.~~   Means for Implementation of Plan ..............................................~~22~~23

5.5~~.~~   Vesting of Assets in Post-Confirmation Debtor ...........................~~23~~25

5.6~~.~~   Confirmation Order .......................................................................~~24~~25

5.7~~.~~   Assumption and/or Rejection of Executory Contracts ..................~~24~~25

5.8~~.~~   The Reorganized Debtor's Post-Confirmation Reporting~~25~~ and Retention of Independent Financial Oversight Services .................................27

5.9~~.~~   Full and Final Satisfaction ...........................................................~~25~~29

5.10~~.~~  Releases .......................................................................................~~25~~29

5.11~~.~~  Term of Injunctions or Stays .......................................................~~26~~30

5.12~~.~~  Exculpation ..................................................................................~~26~~30

*[Different first page setting changed from off in original to on in modified.].*

-i-

745009432

*[Different first page setting changed from off in original to on in modified.].*

**TABLE OF CONTENTS**
(continued)
~~TABLE OF CONTENTS~~

**Page**

~~ARTICLE~~ARTICLE 6.PRESERVATION OF CLAIMS AND CAUSES OF ACTION FOR THE
ESTATE ...................................................................................................~~27~~30

~~ARTICLE~~ARTICLE
7. ....................................................................................MISCELLANEOUS
~~27~~31

7.1~~.~~    Bankruptcy Fees .....................................................................................~~27~~31

~~ARTICLE~~ARTICLE 8. ....................................................RETENTION OF
JURISDICTION ......................................................................................~~28~~31

~~ARTICLE~~ARTICLE 9. .................AMENDMENT AND INTERPRETATION OF THIS
PLAN .......................................................................................................~~29~~33

9.1~~.~~    Modification of the Plan ..........................................................................~~29~~33

9.2~~.~~    Headings ................................................................................................~~30~~33

9.3~~.~~    Severability ...........................................................................................~~30~~33

9.4~~.~~    Successors and Assigns ...........................................................................~~30~~33

9.5~~.~~    Rights if Plan Is Not Confirmed .............................................................~~30~~34

9.6~~.~~    Internal References ................................................................................~~30~~34

*[Different first page setting changed from off in original to on in modified.].*

96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession, hereby proposes the following Amended Chapter 11 Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

## ARTICLE 1.~~ARTICLE 1.~~

## DEFINITIONS

For the purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the meanings set forth in this section and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article 1 and, any term used in this Plan which is not defined below, but which is defined in the Bankruptcy Code, shall have the meaning designated in the Bankruptcy Code:

**1.1**    ~~1.1.~~ "**Administrative Claim**" means a Claim under sections 330, 331 or 503(b) of the Bankruptcy Code that is entitled to priority treatment under section 507(a)(1) of the Bankruptcy Code.

**1.2**    ~~1.2.~~ "**Administrative Period**" means the period beginning on the Filing Date and ending on the Confirmation Date.

**1.3**    ~~1.3.~~ "**Adversary Proceeding**" means any and all actions previously commenced, or to be commenced, by the Debtor to recover money or property on behalf of the Debtor's Estate.

**1.4**    ~~1.4.~~ "**Allowed Administrative Claim**" means an Allowed Claim that is entitled to priority as an Administrative Claim and that is not disputed.

**1.5**    ~~1.5.~~ "**Allowed Claim**" means: (a) any Claim listed on Debtor's Schedules filed in connection with its Reorganization Case, which is not designated as unliquidated, contingent or disputed; (b) any Claim against the Debtor, proof of which was filed on or before the Bar Date, Supplemental Bar Date or August 22, 2021, the governmental unit bar date, established by Orders of the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c) for filing Claims against Debtor's Estate entered on June 2, 2021 and November 5, 2021, respectively, and for which no objection has been interposed in accordance with the Plan and the Disclosure Statement.  For clarity, if an objection is interposed, any such claim shall not be an Allowed Claim until adjudicated by Final Order or settled by written agreement with the Debtor or the Reorganized Debtor; and/or (c) any Claim against the Debtor which is designated as an Allowed Claim under the Plan and/or reduced to writing, consented to by the Debtor and liquidated in amount, which writing has been approved by a Final Order.

*[Different first page link-to-previous setting changed from on in original to off in modified.].*

~~745009432~~

**1.6**    ~~1.6.~~ "**Allowed Interest**" means an Interest which has been allowed by Final Order of the Bankruptcy Court.

**1.7**    ~~1.7.~~ "**Allowed Priority Tax Claim**" means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.8**    ~~1.8.~~ "**Allowed Secured Claim**" means that portion of an Allowed Claim excluding Priority Tax Claims, with a valid and enforceable lien against any property of the Debtor's Estate where such property has a value of which is equal to or greater than the amount of the Allowed Claim and as to which no objection has been interposed or to which the period for bringing such objection as provided hereunder has expired or which has been Allowed by Final Order. In accordance with the definition set forth in section 506(a) of the Bankruptcy Code, "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a Creditor having a lien against any property of Debtor's Estate to the extent the value of such creditor's interest in the property is less than the amount of such Allowed Claim.

**1.9**    ~~1.9.~~ "**Allowed Unsecured Claim**" means any Allowed Claim not otherwise entitled to priority and not secured against the property of the Debtor.

**1.10**    ~~1.10.~~ "**Assets**" means all property of the Debtor or its estate, whether tangible or intangible, and any proceeds, products, rents or profits thereof.

**1.11**    ~~1.11.~~ "**Avoidance Actions**" means all claims, demands, proceedings, or causes of action of the Debtor against any Person or Entity which has been brought or could be brought in the name of the Debtor pursuant to sections 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or applicable state law.

**1.12**    ~~1.12.~~ "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

**1.13**    ~~1.13.~~ "**Bankruptcy Court**" means the Honorable Robert D. Drain, United States Bankruptcy Judge, the United States Bankruptcy Court for the Southern District of New York, located at 300 Quarropas Street, White Plains, New York 10601-4140, having jurisdiction over the Debtor's Reorganization Case, or any such other Court as may hereafter exercise primary jurisdiction over the Debtor's Reorganization Case.

**1.14**    ~~1.14.~~ "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

**1.15**    ~~1.15.~~ "**Bar Date**" means July 15, 2021, the initial date set by order of the Bankruptcy Court as the last day for filing general proofs of claim in the Debtor's Reorganization Case, and means August 22, 2021, the date set by order of the Bankruptcy Court as the last day for filing proofs of claim solely by governmental units in the Debtor's Reorganization Case.

**1.16**    ~~1.16.~~ "**BSP**" means collectively, Benefit Street Partners Realty Operating Partnership, L.P. and BSPRT 2018-FL3 Issuer, Ltd. (as the successor-in-interest to Benefit Street Partners Realty Operating Partnership, L.P.).

**1.17**    ~~1.17.~~ "**BSP Claims**" means collectively, the BSP Disputed Claim and the BSP Undisputed Claim.

**1.18**    ~~1.18.~~ "**BSP Disputed Claim**" means the claim as described in Section 3.2 below.

**1.19**    ~~1.19.~~ "**BSP Loan Agreement**" means that certain loan agreement, dated as of December 13, 2017, between the Debtor and BSP.

**1.20**    ~~1.20.~~ "**BSP Undisputed Claim**" means the claim as described in Section 3.2 below.

**1.21**    ~~1.21.~~ "**Business Day**" means any day other than a Saturday, Sunday, or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

**1.22**    ~~1.22.~~ "**Cash Collateral Orders**" means the orders entered by the Bankruptcy Court on March 5, 2021, March 19, 2021, April 21, 2021, June 21, 2021, and September 13, 2021 [Docket Nos. 15, 21, 28, 52, and 111].

**1.23**    ~~1.23.~~ "**Claim**" as defined in section 101(5) of the Bankruptcy Code means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.24**    ~~1.24.~~ "**Claimant**" means the holder of a Claim.

**1.25**    ~~1.25.~~ "**Claims**" means any group of Claims as classified in Article II of this Plan.

**1.26**    ~~1.26.~~ "**Class**" means a class of Claims or Interests.

**1.27**    ~~1.27.~~ "**Confirmation**" means entry of a Final Order confirming the Plan in accordance with section 1129 of the Bankruptcy Code.

**1.28**    ~~1.28.~~ "**Confirmation Date**" means the date the Confirmation Order is entered on the Bankruptcy Court docket.

**1.29**    ~~1.29.~~ "**Confirmation Order**" means the order issued and entered confirming the Plan, pursuant to section 1129 of the Bankruptcy Code.

**1.30**    ~~1.30.~~ "**Consummation of the Plan**" means the occurrence of the Effective Date.

**1.31**    ~~1.31.~~ "**Debtor**" means 96 Wythe Acquisition LLC, as debtor-in-possession in the Reorganization Case.

**1.32**    ~~1.32.~~ "**Disclosure Statement**" means the third amended disclosure statement dated November 24, 2021, regarding this Plan, filed pursuant to section 1125 of the Bankruptcy Code in connection with the Reorganization Case and approved by Final Order of the Bankruptcy Court as containing "adequate information" as that term is defined in section 1125(a)(1) of the Bankruptcy

~~3~~
~~745009432~~

Code, and all exhibits in connection therewith and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendment or modification.

**1.33**    ~~1.33.~~ "**Disputed Claim**" means any Claim designated as disputed, contingent, or unliquidated in the Debtor's Schedules filed in connection with its Reorganization Case, or any Claim against which an objection to the allowance thereof has been interposed and as to which such objection a Final Order has not been entered or any Claim against which the period for bringing such objection as provided hereunder has not expired.

**1.34**    ~~1.34.~~ "**Disputed Claim Holder**" means the holder of a Disputed Claim.

**1.35**    ~~1.35.~~ "**Disputed Claims Reserve**" means one or more reserves established by the Debtor or the Reorganized Debtor with respect to Disputed Claims.

**1.36**    ~~1.36.~~ "**Effective Date**" means a Business Day selected by the Debtor in its sole discretion, which is, unless the Confirmation Order directs otherwise, up to forty-five (45) Business Days after the date on which each of the conditions to the Plan's Effective Date set forth herein has either been satisfied or waived in accordance with the Plan.

**1.37**    ~~1.37.~~ "**Equity Infusion**" means $~~9,000,000.00~~11,252,000.00 in cash to be provided by the Plan Sponsor, of which $~~7,562,000.00~~9,561,900 shall be allocated for capital contribution ~~and;~~ $1,438,000.00 against the PPP Settlement; and $252,100 for occupancy taxes.

**1.38**    ~~1.38.~~ "**Equity Interests**" means the Interests in the Debtor outstanding immediately prior to the Effective Date.

**1.39**    ~~1.39.~~ "**Estate**" means the estate created in the Reorganization Case pursuant to section 541 of the Bankruptcy Code.

**1.40**    ~~1.40.~~ "**Exhibits**" means the exhibits filed in support of this Plan.

**1.41**    ~~1.41.~~ "**Filing Date**" means February 23, 2021, the date of the commencement of the Debtor's Reorganization Case.

**1.42**    ~~1.42.~~ "**Final Distribution**" means final payment to Allowed Unsecured Claims under the Plan.

**1.43**    ~~1.43.~~ "**Final Order**" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Debtor's Reorganization Case, which order or judgment has not been reversed, stayed, modified, or amended and the time to appeal such order has expired.

**1.44**    "**Financial Reviewer**" means the financial reviewer appointed pursuant to the Plan.

**1.45**    ~~1.44.~~ "**Force Majeure Event**" shall mean a significant global disruption in the markets caused by outbreak of war, terrorism, or other material incidents related to local, state,

4
~~745009432~~

and federal laws, rules, regulations of mandates related to, among other things, the COVID-19 or other pandemic.

**1.46** ~~1.45.~~ "**Hotel**" means the 147-room Williamsburg Hotel located at 96 Wythe Avenue, Brooklyn, New York 11249.

**1.47** ~~1.46.~~ "**Interest**" means the legal, equitable and contractual rights of a holder of an Equity Security (as that term is defined in section 101(16) of the Bankruptcy Code) in the Debtor as of the Filing Date.

**1.48** ~~1.47.~~ "**Interest Disputed Claims Reserve**" means a reserve account established by the Debtor or the Reorganized Debtor with respect to the BSP Disputed Claim into which interest payments will be deposited at the same interest rate as the BSP Undisputed Claim and shall be held in escrow until entry of a final order adjudicating the BSP Disputed Claim or written agreement with the Debtor or the Reorganized Debtor (as applicable) and BSP.

**1.49** ~~1.48.~~ "**Interest Reserve**" means a reserve account established by the Debtor or the Reorganized Debtor in the amount of $3,000,000.00 to fund payments of interest to BSP in accordance with Section 3.2(b) of the Plan.

**1.50** ~~1.49.~~ "**M&M**" means the holder of a Secured Claim arising pursuant to the applicable mechanics and materialmen lien statute.

**1.51** "**Management Agreement**" means that certain hotel management and services agreement dated as of November 21, 2017, as amended and restated by Agreement dated May 1, 2022, entered into between the Debtor and the Management Company.

**1.52** ~~1.50.~~ "**Management Company**" means The Williamsburg Hotel BK, LLC~~.~~

**1.53** "**NYC Water Board Claim**" means the Allowed Claim held by the NYC Water Board in the amount of $100,522.64.

**1.54** ~~1.51.~~ "**Other Secured Claim**" means any Secured Claim against the Debtor other than the BSP Disputed Claim and the BSP Undisputed Claim.

**1.55** ~~1.52.~~ "**Person**" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.56** ~~1.53.~~ "**Property Payment Plan**" means that certain property collection agreement dated as of June 23, 2021, executed by the Debtor and the City of New York, Department of Finance, relating to the payment plan of certain real estate taxes, assessments, and related charges.

**1.57** ~~1.54.~~ "**Plan**" means ~~this document entitled ""~~that certain *Second Amended Plan of Reorganization"* dated November 24, 2021 [Docket No. 196, Exhibit A], and any exhibits annexed ~~hereto~~thereto and any documents delivered in connection ~~herewith~~therewith, as the same may be modified, amended, or supplemented from time to time ~~by any duly authorized amendment or modification~~, including this *Third Amended Plan of Reorganization*.

**1.58**    **"Plan Supplement"** means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court.

**1.59**    ~~1.55.~~ "**Post-Confirmation Expenses**" means all reasonable fees, expenses and disbursements of Professional Persons incurred after the Confirmation Date.

**1.60**    ~~1.56.~~ "**PPP Loans**" means loans received by the Management Company pursuant to the Paycheck Protection Program in connection with the operation of the Hotel.

**1.61**    ~~1.57.~~ "**PPP Settlement**" means that certain settlement between the Debtor and the Management Company to resolve any claims, if any, with respect the Management Company's receipt of the PPP Loans.

**1.62**    ~~1.58.~~ "**PPP Stipulation**" means that certain stipulation and agreement between the Debtor and the Management Company relating to the PPP Loans and the PPP Settlement that is pending approval from the Bankruptcy Court.

**1.63**    ~~1.59.~~ "**Priority Claim**" means all claims that are entitled to priority under section 507(a) of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

**1.64**    ~~1.60.~~ "**Priority Tax Claim**" means a Claim entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

**1.65**    ~~1.61.~~ "**Professional Fee Claim**" means a Claim owed to a Professional Person for Professional Fees.

**1.66**    ~~1.62.~~ "**Professional Fees**" means all allowances of compensation, indemnification, or reimbursement of expenses Allowed, or to be allowed, pursuant to sections 330, 331, or 503(b) of the Bankruptcy Code, to any Professional Person retained pursuant to section 327 of the Bankruptcy Code.

**1.67**    ~~1.63.~~ "**Professional Person**" means any Entity retained in the Reorganization Case pursuant to a Final Order in accordance with sections 326, 327, and 328 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.68**    ~~1.64.~~ "**Plan Sponsor**" means 96 Wythe New Acquisition LLC.

**1.69**    ~~1.65.~~ "**Receiver**" means Constantino Sagonas.

**1.70**    ~~1.66.~~ "**Released Parties**" means the Debtor and the Management Company and each of their respective agents, managers, members, officers, directors, shareholders, advisors, attorneys, and representatives.  For the avoidance of doubt, BSP shall not be a Released Party.

**1.71**    ~~1.67.~~ "**Reorganization Case**" means the bankruptcy case of the Debtor designated as Chapter Case 11 No. 21-22108 (RDD), pending before United States Bankruptcy Judge Robert D. Drain, commenced on the Filing Date by the filing of a voluntary petition for relief under

6
~~745009432~~

Chapter 11 of the Bankruptcy Code and ending upon the entry of a Final Order closing the Debtor's case.

**1.72**    ~~1.68.~~ "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

**1.73**    ~~1.69.~~ "**Schedules**" mean the Chapter 11 schedules filed with the Bankruptcy Court on May 5, 2021 [Docket No. 31].

**1.74**    ~~1.70.~~ "**Secured Claim**" means a Claim, excluding any Secured Property Tax Claims, the BSP Disputed Claim and the BSP Undisputed Claim, secured by a "lien", as that term is defined at section 101(37) of the Bankruptcy Code, against any property of the Debtor, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, but only to the extent such lien was properly perfected and of the "value", as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Estate's interest in such property.

**1.75**    ~~1.71.~~ "**Secured Creditor**" means the holder of a Secured Claim.

**1.76**    ~~1.72.~~ "**Secured M&M Claim**" means a Claim owed to an M&M.

**1.77**    ~~1.73.~~ "**Secured Property Tax Claim**" means any claim owed to a Taxing Authority on account of any tax or assessment levied on real estate.

**1.78**    ~~1.74.~~ "**Subordinated Claim**" means any Claim that is subordinated to the payment of Unsecured Claims under applicable law or equity, including, without limitation, pursuant to any subsection of section 510 of the Bankruptcy Code

**1.79**    ~~1.75.~~ "**Supplemental Bar Date**" means December 15, 2021, the supplemental date set by order of the Bankruptcy Court as the last day for filing general proofs of claim in the Debtor's Reorganization Case in the Debtor's Reorganization Case.

**1.80**    ~~1.76.~~ "**Taxing Authority**" means any federal, state, or local entity with the authority to assess and collect taxes.

**1.81**    ~~1.77.~~ "**Unclaimed Distributions**" means those funds allocated under the Plan for payment to any holders of Allowed Claims which holders, after due diligence, the Debtor or its attorneys are unable to locate.

**1.82**    ~~1.78.~~ "**Unsecured Claim**" means any Claim which does not qualify as an Administrative Claim, Secured Claim, or Priority Tax Claim.

**1.83**    ~~1.79.~~ "**Unsecured Creditor**" means the holder of an Unsecured Claim.

**1.84**    ~~1.80.~~ "**Unsecured Creditor Distribution Fund**" means the amount of $1,970,936 to $2,570,936.00, subject to final reconciliation,  to be funded by the Debtor and/or the Reorganized Debtor, as applicable, to pay Allowed Unsecured Claims, with ~~20% of such amount paid thirty~~one-half (1/2) to be paid on the Effective Date and the remainder to be paid (~~30~~180)

~~7~~
~~745009432~~

calendar days after the Effective Date, with the balance paid in four (4) equal payments of 20% each on the first, second, third, and fourth anniversaries of the Effective Date.  Holders of Allowed Unsecured Claims shall also receive interest at 5% on account of their respective deferred distributions under the Plan.

**1.85    1.81.** "**U.S. Trustee**" means the United States Trustee for the Southern District of New York.

**1.86    1.82.** "**U.S. Trustee Fees**" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.87    1.83.** "**Wythe Borrower**" means 96 Wythe Borrower DE LLC.

**1.88    1.84.** "**Wythe Mezz**" means 96 Wythe Mezz DE LLC.

A terms used and not defined herein or in the Bankruptcy Code shall have their common and ordinary meaning.

## ARTICLE 2.ARTICLE 2.

## CLASSIFICATION OF CLAIMS

**2.1    2.1.** **Classified Claims and Equity Interests**

The following table is a designation of the Classes of Claims and Interests under the Plan. This classification of Claims and Interests is made for purposes of voting on the Plan and making distributions hereunder and for ease of administration hereof.  All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article 3, have not been classified and thus are excluded from the Classes described below.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent

8
745009432

that the Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and has not

been paid, released, or otherwise satisfied or dealt with prior to the Effective Date.

**2.2**    ~~2.2.~~ **Classification**

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | No | No (deemed to accept) |
| Class 2 | BSP Claims | Yes | Yes |
| Class 3 | Secured Property Tax Claims | Yes | Yes |
| Class 4 | Secured M&M Claims | Yes | Yes |
| Class 5 | Unsecured Claims | Yes | Yes |
| Class 6 | Subordinated Claims | Yes | No (deemed to reject) |
| Class 7 | Equity Interests | Yes | No (deemed to reject) |

**2.3**    ~~2.3.~~ **Resolution of Disputes**

Disputes regarding the proper classification of any Claim shall be resolved pursuant to the

procedures established by the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the

Bankruptcy Court, and this Plan, and such resolution shall not be a condition precedent to

Confirmation or Consummation of this Plan.

## ARTICLE 3.~~ARTICLE 3.~~

## TREATMENT OF CLAIMS AND INTERESTS

In addition to any waivers or releases of Claims or other causes of action provided for

elsewhere in this Plan, Claims shall be treated as set forth below.  Except as explicitly provided in

this Plan, all distributions under this Plan shall be free and clear of all Claims, liens, security

interests and encumbrances of any nature or kind whatsoever.

9
745009432

### 3.1   3.1. Unclassified Claims

(a)   Administrative Claims

Administrative Claims are not classified under the Plan. Administrative Claims are Allowed Claims against the Debtor for any costs or expenses of the Reorganization Case allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including all actual and necessary expenses of preservation of the Debtor's Estate. Such Allowed Administrative Claims are to be paid in full (to the extent not already paid during the Reorganization Case), in cash on the later of: (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) such other date and upon such other terms as may be agreed upon by the holder of such Claim and the Debtor, or as ordered by the Bankruptcy Court.

All requests for payment of Administrative Claims that accrued out of the ordinary course of business during the Administrative Period shall be filed and served on the Debtor's Attorneys not later than thirty (30) calendar days after notice of the Confirmation Date, with the exception of the Administrative Claims of Professional Persons retained pursuant to order of the Bankruptcy Court, which are subject to Court approval after notice and hearing and shall be paid by the Debtor and/or the Reorganized Debtor on or before the Effective Date or as otherwise ordered by the Bankruptcy Court. Notwithstanding anything in the Plan to the contrary, objections to such requests shall be filed and served within sixty (60) calendar days after filing of each such request.

Except as specified above, all Allowed Administrative Claims shall receive cash from the Reorganized Debtor in the amount of such Allowed Administrative Claim on the later of (i) the Effective Date and (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or at such other date and upon such other terms as may be agreed upon the holder of the Allowed Administrative Claims and the Debtor or ordered by the Bankruptcy Court.

Any Allowed Administrative Claim based on a liability incurred by the Debtor in the ordinary course of business during the Reorganization Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto, and any Allowed Administrative Claim may be paid on such other terms as may be agreed on between the holder of such Allowed Administrative Claim and the Debtor.

        (b)        <u>Priority Tax Claims</u>

Priority Tax Claims are not classified under the Plan.  Unless otherwise agreed to by the Debtor and a holder of an Allowed Priority Tax Claim, such Allowed Claims will be paid 100% of the amount of their Allowed Claim in equal deferred cash payments on a quarterly basis, beginning on the later of (i) the Effective Date and (ii) the date such Claim becomes an Allowed Claim.  In either case:  (x) payments will take place over the period of ~~six~~five (~~6~~5) years, measured from the date of the assessment of such taxes or, if there has been no assessment, from the Filing Date (such period, the "<u>Priority Tax Payment Period</u>"); (y) with interest at a rate equal to 5% per annum; (z) in equal installments sufficient to fully amortize the balance of such Claim over a period beginning on the Effective date and ending on the last day of the Priority Tax Payment Period; *provided*, *however*, that the Debtor reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance thereof, in full at any time on or after the Effective Date without premium or penalty; *provided*, *further*, that no holder of an Allowed Priority Tax Claim shall be entitled to any payment on account of any pre-Effective Date interest arising after the Filing Date with respect to or in connection with such Allowed Claim.

        (c)        <u>The NYC Water Board Claim</u>

<u>The NYC Water Board Claim is not classified under the Plan. Unless otherwise agreed to by the Debtor and the NYC Water Board, the Reorganized Debtor shall pay the NYC Water Board</u>

Claim in full, one-half (1/2) to be paid on the Effective Date and the remainder to be paid with interest (180) days after the Effective Date.  Liens shall continue with respect to such claim, with the same force and effect until such claim has been paid in full as provided under this Plan.

(d)    ~~(e)~~ Professional Fee Claims

Professional Fee Claims are not classified under the Plan.  Any Professional Person seeking allowance of a Professional Fee Claim shall file, with the Bankruptcy Court, its final application for allowance of compensation for services rendered, and reimbursement of expenses incurred prior to the Effective Date and in connection with the preparation and prosecution of such final application no later than forty-five (45) calendar days after the Effective Date.  Any objections to such Professional Fee Claims must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) calendar days after the Effective Date or such other date as established by the Bankruptcy Court.

All Professional Persons seeking allowance by the Bankruptcy Court of a Professional Fee Claim shall be paid in full in cash in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date and (y) fourteen (14) calendar days after the date upon which the order relating to the allowance of any such Professional Fee Claim is entered; or (ii) upon such other terms as may be mutually agreed upon between the holder of such Professional Fee Claim and the Reorganized Debtor.  On the Effective Date, to the extent known, the Reorganized Debtor shall reserve and hold in a segregated account cash in an amount equal to all accrued but unpaid Professional Fee Claims as of the Effective Date, which cash shall be disbursed solely to the holders of Allowed Professional Fee Claims with the remainder to be reserved until all Professional Fee Claims have been either Allowed and paid in full or disallowed by a Final Order, at which time any remaining cash in the segregated account shall become the sole and

exclusive property of the Reorganized Debtor. All post-Confirmation Professional Fees and expenses for services rendered by the Professional Persons in connection with the Reorganization Case and the Plan shall be paid in the ordinary course by the Debtor or the Reorganized Debtor, as the case may be.

(e)    (d) U.S. Trustee Fees

The Debtor or the Reorganized Debtor, as applicable, shall pay all outstanding U.S. Trustee Fees of the Debtor on an ongoing basis on the date such U.S. Trustee Fees become due and payable, until such time as a final decree is entered closing the Reorganization Case, the Reorganization Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

### 3.2    3.2. Classified Claims

(a)    Class 1 — Priority Claims

(i)    *Treatment*: The legal, equitable, and contractual rights of the holders of Priority Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Priority Claim agrees to different treatment, on the applicable distribution date, each holder of an Allowed Priority Claim shall receive cash in an amount equal to such Allowed Claim.

(ii)    *Voting*: The Priority Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Claims.

(b)    Class 2 — BSP Claims

(i)    *Allowance*: The BSP Undisputed Claim shall be allowed in the amount of $70,700,000.00. The Debtor disputes the balance of any claims held by BSP, including the BSP Disputed Claim, and such claims shall be subject to subordination, disallowance, expungement, dismissal, and/or further agreement by and between the Debtor and BSP.

13
745009432

    (ii)    Treatment:

        (1)    **Treatment of the BSP Undisputed Claim.**  Subject to the Reorganized Debtor's right to pre-pay all or part of the BSP Undisputed Claim (and any portion of the BSP Disputed Claim that becomes an Allowed Claim) at any time without penalty, the BSP Undisputed Claim shall be paid in full, together with interest to be paid as follows: (i) the Reorganized Debtor shall pay BSP equal monthly payments of interest at a rate of 4.5% per annum commencing on the Effective Date for four (4) years; (ii) commencing on the fourth (4th) anniversary of the Effective Date, the Reorganized Debtor shall pay interest at a rate of 5% per annum for an additional two (2) years; and (iii) on the sixth (6th) anniversary of the Effective Date, the Reorganized Debtor shall make a final payment consisting of the balance of the BSP Undisputed Claim.  In addition, on the Effective Date, the Reorganized Debtor shall: (a) contribute $3,000,000.00 into an interest account to serve as the Interest Reserve for the Reorganized Debtor's payments on account of the BSP Undisputed Claim, which such account shall be established at a third-party bank selected by the Debtor in its sole discretion and drawn on by the Reorganized Debtor to pay BSP interest payments, in full or partially, in the event that the Reorganized Debtor has not paid the required monthly interest payment, in full or partially, by the twentieth (20th) of the month when such payment becomes due; and (b) pre-pay BSP the first two (2) monthly interest payments required to be paid under subsection (i) above, such that on the Effective Date the Reorganized Debtor shall pay BSP a total of the first two (2) monthly interest payments as provided hereunder.

        (2)    **Treatment of the BSP Disputed Claim**.  Upon a Final Order adjudicating the BSP Disputed Claim or by written agreement between the Debtor or the Reorganized Debtor (as applicable) and BSP, and subject to the Debtor's right to seek an estimation of such claim pursuant to section 502(c) of the Bankruptcy Code, with BSP's right to oppose, the Debtor shall make additional distributions to BSP as follows: (i) in the event that amounts due to BSP are adjudicated by Final Order or by written agreement between the Debtor or the Reorganized Debtor (as applicable) and BSP to be in an amount that exceeds the BSP Undisputed Claim amount and if the BSP Disputed Claim is not subject to subordination, such additional Allowed Claim amounts shall receive the funds in the Interest Disputed Claim Reserve corresponding

14
745009432

to the interest payments otherwise payable on account of any such additional Allowed Claim amount, with ongoing interest payments from the time of such adjudication to be paid pursuant to the treatment of the BSP Undisputed Claim; and (ii) any excess amounts held in the Interest Disputed Claim Reserve above the amounts required for distributions to BSP under the Plan and as provided herein, shall be released to the  Reorganized Debtor, free and clear of any liens, claims, and encumbrances.

(3)      **Alternate Treatment Option.** In exchange for BSP's agreement by Final Order to an Allowed Claim in the amount of Seventy-Five ($75) million dollars (the "BSP Agreed Claim") settling and resolving in full the pending Adversary Proceeding (and any other objections to such) with respect to the BSP Disputed Claim, which amount shall include any and all claims by BSP, including the BSP Undisputed Claim and BSP Disputed Claim, and subject to the Reorganized Debtor's right to pre-pay all or part of such BSP Agreed Claim, at any time without penalty, through the refinance and/or sale of the Hotel expressly as provided for below  (the "Take Out Event"), the Reorganized Debtor agrees to the following alternate treatment option:

(4)      The Take Out Event shall be effectuated through a process for the refinancing and sale of the Hotel over forty two  (42) months period. The refinance and sale paths shall be run by the Reorganized Debtor and staggered, with the refinancing path commenced as soon as practical after the Effective Date for an initial period of thirty six (36) months. The sale process shall not commence until thirty six  (36) months after the Effective Date, if the refinance has not occurred by month thirty six (36).

(5)      As soon as practicable after the Effective Date, the Reorganized Debtor shall initiate an independent refinance process. If within thirty six (36) months such a refinance shall not occur, then after the thirty six (36) months period, a sale process shall commence,  Starting thirty six  (36) months after the Effective Date, and in consultation with BSB, the Reorganized Debtor will hire a new nationally-recognized third-party Broker, reasonably acceptable to the Reorganized Debtor and BSP, to run a process for the sale over a six month period as provided above. Such sale process shall be through a public process of competitive bidding, for a fair market value to a bona fide third party with the BSP Agreed Claim to be paid from the proceeds of the

15
745009432

refinancing and/or sale as provided for herein. Nothing in this Plan shall prohibit the Debtor from arranging refinancing during the six months sale period, and if Debtor arranges a refinance which pays off the BSP Agreed Claim during such six-month sale period, then the sale shall be curtailed.

(6)    Pending payment upon the BSP Agreed Claim, the Reorganized Debtor shall pay to BSP equal monthly payments of interest at a rate of 4.5% per annum commencing on the Effective Date.

(iii)    *Disputed Claim Reserve for the BSP Disputed Claims*. Subject to the Debtor's right to seek an estimation of the BSP Disputed Claim, any payments otherwise due to BSP on account of the BSP Disputed Claim shall be paid into the Interest Disputed Claim Reserve, concurrently with the payment of distributions to BSP on account of the BSP Undisputed Claim, and shall be subject to further Bankruptcy Court determination with respect to the allowance of the BSP Disputed Claim.

(iv)    *Loan Documents*: Except as provided for in this Plan which shall control in all respects, including with regard to payment terms, default terms, or any terms on pre-payment or refinance, all terms of the BSP Loan Agreement, and any related documents that cover the BSP Claims and collateral securing the BSP Claims shall apply. For clarity, the Reorganized Debtor's ownership structure, management, reporting, and payment terms as provided for under this Plan shall control in all respects and the Reorganized Debtor shall not be deemed to be in default under the BSP Loan Agreement (or any related documents) by virtue of the foregoing and/or because of any defaults arising prior to the Effective Date of the Plan and/or by virtue of any acts that would otherwise constitute compliance with the Plan.

(v)    *Voting*: The BSP Claims are impaired and BSP is therefore entitled to vote to accept or reject the Plan. Solely for purposes of voting, BSP shall be permitted to vote on account of the BSP Disputed Claim and the BSP Undisputed Claim.

(c)     Class 3 —- Secured Property Tax Claims

(i)     *Treatment*:  Unless otherwise agreed to by the Debtor and a holder of an Allowed Secured Property Tax Claim, the Reorganized Debtor shall comply with its obligations under the Property Payment Plan as between the Debtor and the relevant Taxing Authority with respect to the payment of real estate taxes.  The Reorganized Debtor shall pay such amounts as provided for under the Property Payment Plan.  Liens shall continue with the same force and effect until such Allowed Secured Property Tax Claim has been paid in full as provided under this Plan.

(ii)     *Voting*:  The Secured Property Tax Claims are impaired Claims. Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Secured Property Tax Claims.

(d)     Class 4 —- Secured M&M Claims

(i)     *Treatment*:  Unless otherwise agreed to by the Debtor and such holder of an Allowed Secured M&M Claim, the Reorganized Debtor shall pay Allowed Secured M&M Claims in full, up to the amount of their Allowed Claim, one-half (1/2) to be paid on the Effective Date and the remainder to be paid with interest (180) days after the Effective Date.  Liens shall continue with respect to any Allowed Secured M&M Claim, with the same force and effect until such Allowed Secured M&M Claim has been paid in full as provided under this Plan.

(ii)     *Voting*:  The Secured M&M Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Secured M&M Claims.

17
745009432

(e)    <u>Class 5 —- Unsecured Claims</u>

(i)    *Treatment*:  Unless otherwise agreed by the Debtor and such Claimant, each holder of an Allowed Unsecured Claim shall be paid in full, up to the amount of their Allowed Claim, one-half (1/2) to be paid on the Effective Date and the remainder to be paid with interest (180) days after the Effective Date.

(ii)    *Voting*:  The Unsecured Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Unsecured Claims.

(f)    <u>Class 6 —- Subordinated Claims</u>

(i)    *Treatment*:  Unless otherwise agreed by the Debtor and such claimant, holders of Allowed Subordinated Claims will be subordinated to Allowed Unsecured Claims and will not receive any distribution under the Plan.

(ii)    *Voting*:  The Subordinated Claims are impaired Claims and holders of Subordinated Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Subordinated Claims.

(g)    <u>Class 7 —- Equity Interests</u>

(i)    *Treatment*:  All Equity Interests will be cancelled, and the Plan Sponsor will be issued new Interests in the Reorganized Debtor, constituting of 100% ownership of the Reorganized Debtor.  In exchange for its Interests in the Reorganized Debtor and in furtherance of the PPP Settlement and the PPP Stipulation, upon the Effective Date, the Plan Sponsor will contribute $~~9,000,000.00~~11,252,000.00 into the Reorganized Debtor, $1,438,000.00 of which will be earmarked as a settlement payment with respect to the PPP Settlement (together

with the forgiveness of debt by the Management Company as provided for in Section 5.4 below) and  $7,562,000.00, $252,100 of which will be earmarked for the occupancy tax payment, and $9,561,900.00 as the Equity Infusion to the Reorganized Debtor.  The Plan Sponsor agrees that Wythe Mezz shall receive new Interests in the Reorganized Debtor, which new Interests shall be junior to the new Interests issued to the Plan Sponsor and to any sources of new equity provided to the Reorganized Debtor as part of the Plan.  Wythe Mezz will be paid from excess proceeds, if any, upon sale and/or refinance after payment of all Claims under the Plan and expressly as agreed by the Plan Sponsor and the Reorganized Debtor.  Wythe Mezz shall have no voting or approval rights in the Reorganized Debtor, nor hold any position of control over or have any Claims and/or rights against the Debtor, the Reorganized Debtor, and/or any of their respective assets.

(ii)     *Voting*:  Equity Interests are impaired under this Plan.  The holders of Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equity Interests.

## ARTICLE 4.ARTICLE 4.

## PAYMENT OF CLAIMS

### 4.1    4.1. Payment of Allowed Claims

Payment is to be made only to those holders of Allowed Claims of the various Classes. Notwithstanding anything to the contrary herein, the Debtor may pre-pay all or part of any Class of obligations under the Plan without penalty, at any time.

(a)     Objection to Claims

The Debtor may file objections to claims of record in order to correct erroneous or duplicative amounts or for any other reason that in its business judgment would be appropriate.

(i)    General Procedures.   The Debtor ~~intends to (i) file~~filed objections to ~~claims that were filed by Bar Date by December 23, 2021, and (ii) file objections to~~certain disputed claims that were filed by the Bar Date and Supplemental Bar Date ~~by January 7, 2022~~, including ~~objections~~ to the amount and classification thereof, ~~except Claims previously allowed by a Final Order, and shall serve~~( and a complaint commencing an adversary proceeding) to certain proofs of claim and served a copy of such objection (or complaint) upon the holder of the ~~Claim~~claim to which such objection pertains.  The resolution of any such objection shall be governed by the Bankruptcy Code, the Bankruptcy Rules, and such provisions as may be established by the Bankruptcy Court, or by the procedural rules of the court in which such objection is to be litigated.  Any Claim as to which an objection is not timely filed in accordance with the provisions of the Plan or orders of the Bankruptcy Court and to which the Debtor's time to interpose objection has expired, shall be an Allowed Claim, except that any Claim scheduled as disputed to which no proof of claim has been filed shall be deemed disallowed and is expunged.  Notwithstanding the foregoing, the Debtor shall have the right to enter into any settlement with respect to any Claim for an amount equal to or less than $300,000.00 without further approval of the Bankruptcy Court.

(ii)    Prosecution of Objections.   Unless otherwise ordered by the Bankruptcy Court, the Debtor and/or the Reorganized Debtor shall litigate its objections to Claims to judgment or settlement, or withdraw the objection at its sole and absolute discretion.

(iii)    Disputed Claims Reserve.  The Debtor shall establish one or more reserves for the benefit of a Disputed Claim, including the BSP Disputed Claim, consisting of the Interest Disputed Claim Reserve, or consisting of cash in an amount equal to the pro rata share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed

20
745009432

Claim in an amount equal to the lesser of: (i) the liquidated amount set forth in the filed proof Claim relating to such Disputed Claims or if no proof of Claim has been filed the liquidated amount set forth in the Schedules; (ii) the amount in which the Disputed Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as consisting and representing the maximum amount in which such Claim may ultimately become Allowed Claim; and (iii) such other amount as may be agreed upon by the holder of such Claim and the Debtor.

At such time as a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan. Such distribution, if any, shall be made as soon as reasonably practicable after the date that the order or judgement of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order or the effective date of the relevant agreement between the Debtor and the holder of the applicable Disputed Claim. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim, including the BSP Disputed Claim, pending the entire resolution thereof by Final Order or agreement between the Debtor and the holder of the applicable Disputed Claim.

(b)    Setoffs

The Debtor preserves the right to seek to set off against any payment to be made pursuant to the Plan to a Claimant, including BSP, valid claims of any nature whatsoever that the Debtor may have or have had, against the holder of such Claim including, but not limited to, judgments obtained pursuant to sections 547 and 548 of the Bankruptcy Code, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim that it may have or have had against any such Claimant. Claimants shall be entitled to

21
745009432

object to any assertion of a right of setoff, which right shall be determined by further order of the Court.

        (c)    <u>Unclaimed Cash</u>

        (i)    In the event any Claimant fails to claim any distribution within three (3) months from the date of such distribution, by failing to present such distribution check for payment to the Debtor's bank, such Claimant shall forfeit all rights thereto. Thereafter, the distribution formerly available to the Claimant shall become the property of the Reorganized Debtor, and such Claimant shall have no further rights to share in any subsequent distributions that may be made.

        (ii)    For purposes of mailing distribution checks, the Debtor may rely on the addresses for holders of Allowed Claims as set forth in the Schedules unless superseded by the address for such holders set forth in the proofs of Claim filed by the Claimants with the Bankruptcy Court. If no proofs of Claim are filed and the Schedules filed by the Debtor fail to furnish valid addresses for holders of Allowed Claims, such Allowed Claims shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code at the expiration of the later of (a) six (6) months from the entry of the Confirmation Order and (b) three (3) months after an initial distribution is made to that Claimant and shall be returned to the Reorganized Debtor.

## **ARTICLE 5.**~~ARTICLE 5.~~

### **PLAN IMPLEMENTATION ISSUES**

**5.1**   ~~5.1.~~ **Conditions to the Effective Date**

In order for the Plan to be deemed effective, the following events must occur:

        (i)    the Disclosure Statement shall have been approved;

(ii)    financing from Lockwood Development Partners shall be fully committed and all documents and agreements necessary to effectuate and implement the financing shall have been executed and delivered by the relevant parties;

(iii) there shall not have occurred a Force Majeure Event;

(iii)    (iv) entry of a Confirmation Order; and

(iv)    (v) the Confirmation Order becoming a Final Order.

Upon the satisfaction on the conditions set forth herein, the Debtor may, but is not required to, accelerate the Effective Date.

**5.2    5.2. Period Prior to Effective Date**

During the period between the Confirmation Date and the Effective Date, the Debtor shall continue to exercise ownership and control of all Assets and property of its Estate.

**5.3    5.3. Consummation of Plan**

The Debtor anticipates that this Plan will be substantially consummated upon the commencement of distributions under this Plan on the Effective Date in accordance with section 1101(2)(C) of the Bankruptcy Code. The Plan is to be implemented in a manner consistent with section 1123 of the Bankruptcy Code. In addition, pursuant to the Confirmation Order and upon confirmation of this Plan, the Debtor or the Reorganized Debtor, as the case may be, will be authorized to take all necessary steps and perform all necessary acts to consummate the terms and conditions of this Plan. On or before the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, may file with the Bankruptcy Court any and all agreements and documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and may execute such documents without the need for any further approvals, authorizations or consents. There shall be no modification or stay of the Confirmation Order or entry of other court order prohibiting the transactions contemplated hereunder from being consummated.

23
745009432

### 5.4    5.4. Means for Implementation of Plan

The Plan Sponsor shall contribute $9,000,000.00 11,252,000.00 to the Reorganized Debtor upon the Effective Date, $7,562,000.00 9,561,900 of which shall be paid as a capital contribution as provided in Section 3.2(g) above.  In addition, and as set forth more fully in the Disclosure Statement, while the Debtor and the Management Company dispute any allegations made with respect to the PPP Loans and believe such claims are baseless, the Debtor and Management Company have agreed to settle any and all claims, if any, relating to the PPP Loans pursuant to the PPP Settlement and the PPP Stipulation.  Pursuant to the PPP Settlement, which is approved herein, the Management Company has agreed to defer repayment of over $2,000,000.00 in claims for fees due to the Management Company through the Plan's Effective Date, until after all Allowed Claims have been paid, and the Plan Sponsor has agreed to infuse an additional $1,438,000.00 to the Reorganized Debtor (for a total payment of $9,000,000.00 11,252,000.00 including such infusion and, capital contribution of $7,562,000.00 9,561,900.00, and $252,100 for occupancy taxes) which shall be earmarked as a settlement payment (together with deferral of debt by the Management Company) pursuant to the PPP Settlement.  The PPP Stipulation will provide as a further back-stop as it requires, among other things, the Management Company to guaranty the settlement payment.

The Plan will be implemented by and through proceeds of the $9,000,000.00 11,252,000.00 in cash from the Plan Sponsor to be funded upon the Effective Date as part of the PPP Settlement and the Equity Infusion, any cash otherwise held by the Debtor upon the Effective Date, and ongoing income from the Debtor's operations.  The Reorganized Debtor will continue to operate from and after the Effective Date.  The Plan Sponsor's cash infusion and the income generated by the Debtor's and the Reorganized Debtor's operations will be used to fund operating expenses  and

24
745009432

to pay the amounts necessary to fund the Plan payments.  The Plan Sponsor shall designate the managing member of the Debtor upon the Effective Date.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest or to any distribution to be made on account of such Allowed Claim or Interest, including, but not limited to, the PPP Settlement and the PPP Stipulation.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its estate, and holders of Claims and Interests and is fair, equitable, and reasonable.

### 5.5      5.5. Vesting of Assets in Post-Confirmation Debtor

As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all property, assets, and effects of the Debtor (including the Hotel) shall vest in the Reorganized Debtor free and clear of all Claims and Interests except as otherwise expressly provided in the Plan.  The post-Confirmation Debtor will be owned by 96 Wythe New Acquisition LLC.  Toby Moskovits and Michael Lichtenstein are the operating members and managers of 96 Wythe New Acquisition LLC.  Lockwood Development Partners may also designate one person as operating member and manager and will be a preferred equity holder of 96 Wythe New Acquisition LLC.

### 5.6      5.6. Confirmation Order

The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan is valid and enforceable pursuant to its terms. If any provisions of the Plan are prohibited by the Bankruptcy Code, the Debtor reserves the right to sever such provisions from the Plan and to request that the Plan, as so modified, be confirmed.

**5.7** ~~5.7.~~ **Assumption and/or Rejection of Executory Contracts**

Subject to the provisions of this paragraph and with the exception of the Management Agreement and the Property Payment Plan, all executory contracts and unexpired leases, not previously assumed or rejected by the Debtor pursuant to an order entered by the Bankruptcy Court, and not terminated by their own terms, shall be deemed rejected as of the Effective Date under the Plan pursuant to section 365 of the Bankruptcy Code. The Property Payment Plan shall be assumed by the Reorganized Debtor and the Management Agreement (as amended and restated) shall be assumed by the Reorganized Debtor as modified hereunder to provide for the following modifications: (i) the deferral of the payment of pre-Effective Date fees ~~and extended~~ through the date of ~~the~~ Final ~~Distribution~~Distributions under the Plan and (ii) in the event that the Reorganized Debtor negotiates an arm's length sale of the Hotel to a non-affiliated third-party, (a) the Management Agreement may be terminated upon thirty-days' notice and concurrent with the closing on such sale and (b) nothing shall prohibit the new purchaser and the Management Company from negotiating a mutually agreeable agreement by which the Management Company will continue operating and managing the Hotel post-closing unless or until such time as the new owner has identified and only if the new owner wishes to put in place a new management company for the Hotel. The Management Company will be paid a capped fee of 3% of the gross revenues collected from operation of the Hotel on and after the Effective Date as provided for under the Management Agreement. ~~Any amounts Any~~Consistent with above, any amounts or fees due to the Management Company under the Management Agreement for the period prior to and through

the Effective Date shall be deferred and shall not be paid under the Plan until after payment of all other Allowed Claims and Interests hereunder.

In addition, except with respect to the payment of Pre-Effective Date management fees due to the Management Company which shall be deferred as provided for above, upon the Effective Date, the Management Company, including, but limited to the Released Parties, have agreed and expressly waive all claims against the Debtor and Reorganized Debtor in relation to the payment on account of the outstanding pre-petition loans and advances made to the Debtor and Management Company with respect to the Hotel operations pursuant to the line of credit loan agreement, in the amount of approximately $6,500,000.  This waiver of claims is operative only upon the Plan being confirmed and the Effective Date.

Any Claim arising from the rejection of any executory contract or unexpired lease hereunder shall be filed with the Bankruptcy Court on or before the thirtieth (30th) calendar day after the Effective Date, or any counterparty to such executory contract or unexpired lease shall be forever barred from receiving any distribution under this Plan.  Objections to any such claim(s) shall be filed by the Debtor not later than sixty (60) days after the filing of such claim(s) and the Bankruptcy Court shall determine any such objection.  Any Claims arising from the rejection of an executory contract or unexpired lease shall, to the extent Allowed, be treated as a Class 5 Unsecured Claim or a Class 6 Subordinated Claim, as appropriate with respect to such Claim.

### 5.8       5.8. The Reorganized Debtor's Post-Confirmation Reporting and Retention of Independent Financial Oversight Services

The Reorganized Debtor shall continue its reporting requirements under the Loan Documents. The Reorganized Debtor shall also retain Getzler Henrich & Associates LLC on or about the Effective Date byin the ordinary course of business and pursuant to a separate agreement to review and assist withprovide independent third-party financial oversight services, which shall

27
745009432

include monthly review of the Reorganized Debtor's ~~reporting.~~ financials. The Management Company shall continue to operate the Reorganized Debtor and Hotel under the terms of the Management Agreement and hereunder.

Not later than the Effective Date of the Plan, Management Company shall retain William Henrich of the Getzler Henrich consulting and advisory firm (hereinafter, the "Financial Reviewer"). The Financial Reviewer shall receive copies of all bank statements issued/generated by any depository or financial institution at which the Hotel and, in regards to any accounts of Management Company related in any respect to the Hotel, Management Company maintain such accounts, and the Financial Reviewer shall review such accounts and activities on a monthly basis and generate a report on a quarterly basis  that shall be provided to BSP for the duration of the period that any monies remain outstanding and owed to BSB (the "Quarterly Report"), with a copy each to the Reorganized Debtor and Management Company.

The Financial Reviewer shall meet with the Reorganized Debtor and Management Company at least once each month to review operations and financial performance , and the Quarterly Report shall include any material updates or changes relevant to Hotel operations and financial performance of the Hotel.  In the event that the Financial Reviewer reasonably believes, based on his ongoing review of the foregoing information and meetings with the Reorganized Debtor and Management Company, that any use of funds by Management Company or Reorganized Debtor  has occurred that is not spent properly , the Financial Reviewer shall promptly, and not later than the next Quarterly Report, notify Reorganized Debtor and BSP of such event, facts, or documents that give rise to such concern.  The Reorganized Debtor shall be responsible for paying all costs incurred and fees charged by the Financial Reviewer, and Management Company is authorized to make such payments from funds of the Hotel.  For

avoidance of doubt, the Financial Reviewer shall be entitled to request and review any and all financial documents and materials, the books and records, and any financial records of the Hotel, starting from the period of time post confirmation and after the Effective Date, and until BSP is paid off, including but not limited to those maintained or in the possession of Management Company.

### 5.9    5.9. Full and Final Satisfaction

All payments, distributions, and transfers of cash and property under this Plan are in full and final satisfaction, settlement, release, and discharge of all Claims against the Debtor or of any nature whatsoever. Notwithstanding anything contained in this Plan to the contrary, the Confirmation Order shall discharge the Debtor from any debt that arose prior to the Confirmation Date and any debt of a kind specified in sections 502(g) and 502(i) of the Bankruptcy Code. Under no circumstances shall any additional consideration be payable by the Debtor to holders of any such Claims other than as expressly provided under this Plan.

### 5.10    5.10. Releases

**As an integral part and in consideration of the settlement and treatment of Claims and Interests under the Plan, any Persons and holders of any Claims or Interests that received actual or constructive notice of this Plan shall be and are permanently enjoined and precluded from asserting, commencing, or continuing in any manner any actions or from asserting any lien against the Debtor, the Released Parties, and against any of such parties' respective assets or properties, with respect to any debt, Claim, or interest, including any guarantee by any of the Released Parties based upon any document, instrument or act, omission, transaction, or other activity of any kind or nature arising out of, based upon, or in any way related to, the conduct, actions, and transactions of the Debtor or the Released Parties through the Confirmation Date, except for any act or omission that constitutes fraud,**

gross negligence, or willful misconduct as determined by a final order of a court of competent jurisdiction (the "Release"). For the avoidance of doubt, except as provided below, the Release shall not apply to the Released Parties (other than the Debtor) with respect to a holder of a Claim that is entitled to vote that elects to "opt-out" of such Release on its timely and properly-submitted ballot. Notwithstanding the foregoing, and for the avoidance of doubt, the PPP Settlement and PPP Stipulation provides for a mutual, limited release which is a limited release solely with respect to any claims relating to the PPP Loans, if any.  As such, the opt-out provided for in the ballots that applies to the Release does not alter the effectiveness of the PPP Stipulation (including the release provided therein) if and to the extent that the PPP Stipulation is approved by separate order of the Court and/or release of claims under the Plan solely relating to the PPP Settlement herein.

### 5.11 ~~5.11.~~ Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Reorganization Case under sections 105 or 362 of the Bankruptcy Code or otherwise, shall remain in full force and effect through and inclusive of the Effective Date.

### 5.12 ~~5.12.~~ Exculpation

Neither the Debtor nor any of the Released Parties shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, or arising out of, the Reorganization Case, the Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan other than for conduct that constitutes gross negligence, willful misconduct, or a violation of the criminal, tax, environmental, and antitrust laws of the United States.

### ARTICLE 6.~~ARTICLE 6.~~

## PRESERVATION OF CLAIMS AND CAUSES OF ACTION FOR THE ESTATE

The Debtor has determined that it may commence any causes of action pursuant to (a) sections 502, 542, 544, 545, 546, 550, and 553 of the Bankruptcy Code, (b) any preference claims pursuant to section 547 of the Bankruptcy Code, (c) any fraudulent transfer claims pursuant to section 548 of the Bankruptcy Code, (d) any claims relating to post-petition transactions pursuant to section 549 of the Bankruptcy Code, or (e) any pre-petition and post-petition Claims arising under applicable state law.  All of the Debtor's rights, Claims, and causes of action shall be, and hereby are, preserved, transferred and assigned to the Reorganized Debtor as of the Effective Date of the Plan, including, but not limited to, any and all Claims against BSP.

### ARTICLE 7.ARTICLE 7.

### MISCELLANEOUS

### 7.1    7.1.Bankruptcy Fees

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on Confirmation of this Plan, shall be paid on or before the Effective Date.  Prior to entry of a final decree, any Post-Confirmation Expenses shall be paid by the Reorganized Debtor.  The Debtor will continue to file operating reports until such time as a final decree is issued.

### ARTICLE 8.ARTICLE 8.

### RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of Debtor's case pursuant to and for the purposes set forth in section 1127(b) of the Bankruptcy Code and, inter alia, for the following purposes:

(a)    to determine any and all objections to the allowance, classification, and/or valuation of Claims or Interests;

(b)      to determine any and all applications for compensations and reimbursement of expenses for Professional Fees, Administrative Claims, and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(c)      to amend or modify the Plan to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan to the extent authorized by the Bankruptcy Code or the Bankruptcy Rules;

(d)      to determine any and all controversies and disputes arising under or related to the Plan;

(e)      to construe and enforce any and all provisions of the Plan;

(f)      to determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases under section 365 of the Bankruptcy Code to which the Debtor is a party or with respect to which it may be liable, and to hear and determine and, if need be, to liquidate, any and all claims arising therefrom;

(g)      to determine the validity, priority, and extent of liens, Claims, and encumbrances upon property of the Estate and to determine any questions and issues regarding title to and interests in any property of the estate and to enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor;

(h)      to determine any and all controversies and disputes arising under or related to any settlement of any Adversary Proceeding or contested matter approved by the Bankruptcy Court, and with respect to prosecution of any Adversary Proceeding and/or Contested matter initiated prior to the Effective Date, either before or after the Confirmation Date;

32
745009432

(i)      to order the transfer of any Asset of Debtor's estate free and clear of liens, claims, and encumbrances and to effectuate payments under and performance of the provisions of the Plan;

(j)      to enforce any and all injunctions created pursuant to the terms of the Plan;

(k)      to enter a Final Order or decree in the Debtor's Reorganization Case; and

(l)      to determine such other matters as may be provided for in the Plan or Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code or the Bankruptcy Rules.

## ARTICLE 9.~~ARTICLE 9.~~

## AMENDMENT AND INTERPRETATION OF THIS PLAN

### 9.1      ~~9.1.~~ Modification of the Plan

The Debtor reserves its right to modify, revoke, or withdraw this Plan at any time prior to the date of the entry of the Confirmation Order, except as provided in this Plan.  After the date of the Confirmation Order, the Debtor may, without approval of the Bankruptcy Court, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan so long as it does not materially or adversely affect Claimants.

### 9.2      ~~9.2.~~ Headings

The headings of Articles and Sections used in this Plan are inserted for convenience only, and neither constitute a portion of this Plan nor in any manner affect the provisions or interpretations hereof.

### 9.3      ~~9.3.~~ Severability

Should any provisions of this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions or

33
745009432

provision of this Plan, except to the extent that any provision so determined to be unenforceable is or was a condition precedent to this Plan set forth in Article V of this Plan.  If there are any inconsistencies between the Plan and Disclosure Statement, the terms of the Plan shall control.

### 9.4    ~~9.4.~~ Successors and Assigns

The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the executors, administrators, successors, trustee, and assigns of such Person.

### 9.5    ~~9.5.~~ Rights if Plan Is Not Confirmed

If Confirmation of the Plan does not occur, the Plan shall be deemed null and void, and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

### 9.6    ~~9.6.~~ Internal References

The words "herein," "hereof," "hereto," "hereunder," and any other words of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan.

Dated: ~~November 24~~ May 12, ~~2021~~2022
New York, New York

96 Wythe Acquisition LLC


/s/ David Goldwasser
David Goldwasser
Chief Restructuring Officer

34
745009432

35
745009432

| Summary report: | |
|---|---|
| **Litera® Change-Pro for Word 10.10.0.103 Document comparison done on 5/12/2022 12:11:10 PM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** 96 Wythe - Second Amended Chapter 11 Plan as of 11-24 Final (745009432_2) (002).DOCX | |
| **Modified filename:** WH3RDAmendedPlanFinal(^) (747716965_8).DOCX | |
| **Changes:** | |
| Add | 253 |
| Delete | 255 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 4 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 512 |