WILLIAM K. HARRINGTON
United States Trustee for Region 2
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, New York 10014
Telephone: (212) 510–0500
By: Greg M. Zipes
    Tara Tiantian
    Shara Cornell
    Trial Attorneys

UNITED STATES BANKRUPTCY COURT      HEARING DATE:  May 17, 2022
SOUTHERN DISTRICT OF NEW YORK      HEARING TIME:   10:00 AM

-------------------------------------------------------- x
                                  :       Chapter 11
In re:                              :
                                  :       Case No. 21-22108 (RDD)
96 WYTHE ACQUISITION LLC,         :
                                  :
                     Debtor.       :
-------------------------------------------------------- x

**REPLY IN SUPPORT OF MOTION OF UNITED STATES TRUSTEE FOR
APPOINTMENT OF A CHAPTER 11 TRUSTEE**

TO THE HONORABLE ROBERT D. DRAIN,

       William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**")

hereby submits his reply (the "**Reply**") to Debtor's Omnibus Objection [ECF Dkt. No. 539] (the

"**Debtor Objection**") to the Motion for Appointment of a Chapter 11 Trustee [ECF Dkt. No. 491]

(the "**Motion**").  In support of the Reply, the United States Trustee respectfully represents and states

as follows:

### I.       Introduction

       The United States Trustee has established cause for a trustee.  The Debtor had an opportunity

with the Debtor Objection to address and explain specific examples of improper transactions and

breaches of fiduciary duty, as identified in the Motion.  Yet, in its 42-page pleading, the Debtor failed

1

to dispute many of the underlying bad acts alleged in the Motion or the Examiner's Report.[1] For example, with respect to the improper diversion of certain PPP loan proceeds, the Objection solely focuses on a management negotiated settlement and planned repayment without explaining where the proceeds went and how they were used; the mere repayment of improperly diverted funds is insufficient.

The Debtor's current management and owners appear to have engaged in fraud, dishonesty, and self-dealing and evidence of the same was unearthed by the Examiner in the course of his investigation. The Debtor's conduct in impeding the good faith efforts of a Court-appointed fiduciary to investigate the facts points to the need for a trustee.  Even now, the Debtor has been uncooperative in stipulating to basic facts in connection with the Motion.  For example, the Debtor objected to the admissibility of its own documents, some sworn under the penalties of perjury.[2]

In summary, the Debtor is completely conflicted and cannot investigate itself.  In stark contrast to an entity taking direction from its management insiders, a trustee can review the sources of funds for the plan, ensure the plan is feasible, and create a structure for the review and possible avoidance of the transfers described in the Examiner Report. The Debtor has been forced to be somewhat more accountable under Bankruptcy Court supervision, but that accountability will largely cease if this case confirms without a thorough review by a third-party fiduciary.

---

[1] This Reply hereby incorporates by references the facts and allegations contained in the Motion.

[2] For example, the United States Trustee proposed the Debtor's Local Rule 1007 declaration as a joint exhibit, as one of the United States Trustee's 25 proposed exhibits.  The Debtor refused, on the grounds of "Relevance" and "Hearsay."  As to the counter report, the Debtor also refused to designate this document, citing "Relevance," "Hearsay," "Hearsay within hearsay," "Lack of foundation," Speculation/lack of personal knowledge," and "Violates existing Court Order precluding testimony from Examiner or use of work product."

**II.    Facts**

1.      On February 23, 2021 (the "**Petition Date**"), 96 Wythe Acquisition LLC (the

"**Debtor**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code

(the "**Bankruptcy Code**"). The Debtor continues to operate its business and manage its affairs as

debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      On November 8, 2021, the Court entered the Examiner Order, which provides, among

other things, that an examiner shall be appointed to investigate certain transactions, without

limitation, which might give rise to potential claims by the Debtor's estate (the "**Examination

Topics**"). Examiner Order at ¶ 2.

3.      On February 28, 2022, the Examiner filed the Report of Examiner, Eric M. Huebscher

(the "**Examiner's Report**"). ECF Dkt. No. 418. On the same day, the Debtor filed the Counter

Report and Response to Examiner Report, which consists of Michael Lichtenstein's declaration,

rebutting seventeen allegedly false statements in the Examiner's Report. ECF Dkt. No. 420.

4.      On March 31, 2022, the United States Trustee filed his Motion seeking entry of an

order directing the appointment of a chapter 11 trustee.  As recounted in the Motion, the Examiner

found "a complex scheme to divert and siphon substantial amounts of money from the Debtor,

through a labyrinth of banking relationships between the Debtor and the Manager, and other entities

under common ownership and control of the Principals." Examiner's Report at 1, n. 1.

5.      As also stated in the Motion, multiple causes exist under § 1104(a)(1) to appoint a

chapter 11 trustee, including that: (i) the Debtor is unable to pursue causes of actions on behalf of the

estate and therefore is not able to maximize estate value; (ii) Debtor habitually failed to pay taxes of

various types on both federal and local level, resulting in penalties and priming liens; (iii) the

Debtor's Principals, through the entities they control, misused funds (even including government

subsidies) that either belonged to or should have been used to benefit the Debtor; (iv) the Debtor

failed to disclose material transactions in the monthly operating reports, and thus failed to fulfill an

essential duty as the debtor-in-possession; and (v) Debtor and its current management lack honesty

and credibility.

**III.    "Cause" Has Been Established for the Appointment an Independent Fiduciary as Contemplated Under 11 U.S.C. § 1104(a)(1).**

The well-documented questionable dealings of Debtor's current management are

uncontroverted and support the United States Trustee's contention that an independent trustee should

be appointed under section 1104(a)(1). *See In re PRS Ins. Group, Inc*., 274 B.R. 381, 387 (Bankr. D.

Del. 2001) (concluding that the use of corporate assets for the personal benefits of insiders resulting

in the deterioration of the debtors' assets mandates the appointment of a chapter 11 trustee.).

Everyone in control of the Debtor right now – management and estate professionals – are all being

bankrolled by the Principals. *See, e.g.*, Application to Employ Mayer Brown LLP as Co-Counsel to

Debtor and Debtor in Possession. ECF Dkt. No. 89 at ¶ 23 ("The Retainer was paid by Heritage

Equity Partners ('Heritage'), the developer of the Hotel, and is being held in a client trust account. In

addition, Heritage has also agreed to pay 50% of the fees billed and 100% of any out-of-pocket

expenses incurred on a monthly basis").

The Debtor Objection was an opportunity to rebut or explain the points in the Motion.  The

following summarizes the Debtor's responses, if any, to the United States Trustee chart in the

Motion:

| Examiner Report and/or information on the docket | The Debtor's counter report | UST's position prior to the filing of the Debtor Objection (as set forth in the Motion) | Debtor Objection |
|---|---|---|---|
| Failure to file tax returns and pay taxes pre and post-petition on both federal and state/local level. *See* Examiner's Report at 2. | The Debtor made no mention of "paying" any of the pre or post-petition taxes. | The failure to demonstrate that taxes were actually paid requires an investigation. | "Debtor and Hotel Manager were doing the best they could to stay afloat during serial financial challenges not of its own making, as discussed above, rather than trying to expropriate trust fund taxes for personal uses."[3] Debtor Objection ¶ 57 (quoting Moskovits Dep.).<br><br>"With that background, it is unsurprising, and ultimately irrelevant, that Debtor previously failed to file federal income tax returns in prior years before the bankruptcy filing." Debtor Objection ¶¶ 49-50. |
| Approximately $12 million in Debtor funds | One of the entities made a payment to the Debtor in the | Even accepting the Debtor's explanation, there | The Debtor acknowledges the transfer, but states it was to |

---

[3] The deposition testimony was in response to the question about whether the Debtor used self-help in deciding not to remit the occupancy tax but instead used it to cover Hotel's operating expenses. Moskovits Dep. 258:2-19.
The city's tax law provides that, "The tax shall be paid by the occupant to the operator as trustee for and on account of the City, and **kept separate from all other funds in the possession of the operator** and the operator shall be liable for the collection thereof and for the tax" The Rules of the City of New York § 12-08(a).

| | | | |
|---|---|---|---|
| were transferred out of Debtor/Manager accounts to unrelated entities controlled by the Principals. | amount of $7.2 million and funds from Debtor/Manager were used to pay construction expenses. As a result, the amount of net transfer out of Debtor/ Manager is about $4.5 million. *See* dkt. No. 420 Counter Report ¶ 9. | was still $4.5 million transferred out of Debtor/Manager to unrelated entities. | reduce a line of credit.  Debtor Objection at ¶ 42. |
| The proceeds of the PPP loan may have been used for unauthorized purposes. | The Debtor stated that "the $105,000 transferred to 286 Rider [another debtor] was from the PPP money and is outside the scope of this examination." Dkt. No. 420, ¶ 15, n. 4. | Even if it may be outside the scope of the Examiner's investigation, it is nevertheless relevant to Debtor's management of the estate. | "As to the PPP loan, while Benefit Street suggests that this is a new issue, this issue is being resolved under the Plan and PPP loan settlement through the payment into Debtor's estate of the full $1.438 million advanced in connection with the PPP loan, even though nearly half of the PPP loan was reinvested into the Hotel operations."  Debtor Objection ¶ 68. |
| The EIDL loan proceeds were transferred to one of Principals' entity, Northside Acquisition LLC, and such transfer was not disclosed in the monthly operating report. | The EIDL loan was issued to the Manager, and thus Debtor has no connection to its proceeds – the Debtor neither owns the funds nor is responsible to pay it back; therefore, transferring EIDL funds out of Manager is not a post-petition transfer of the property of the estate. Dkt. No. 420, ¶ 30. | According to the Examiner's interview with Michael Lichtenstein, the Manager applied for the EIDL loan to help Hotel with its operating expenses. Therefore, the Hotel has at least an equitable interest in the loan proceeds, and such equitable interest is property of the estate. | The EIDL loan is not property of the estate and the estate has no interest in it.  Debtor Objection at ¶ 66. |

The Debtor has failed to adequately explain these specific instances of improper conduct. Moreover, the Court should view all the Debtor's explanations with skepticism as the review of these transfers appears to have been conducted, in part, by the very parties who received the funds.  The Debtor Objection discusses at length alleged "advances" and "lines of credit" that in turn "capitalized [the Debtor] with an infusion of $21 million, approximately $17 million from Debtor's principals." Objection at ¶¶ 37, 38.  However, an independent third-party fiduciary must review the documents, if any, behind these alleged advances.  In deposition testimony on May 13, 2022, the Debtor's retained financial advisor stated that he never reviewed the documents establishing these loans.

Another example of the Debtor's failure to explain its misconduct is the Debtor's response to the allegations of misuse of its PPP loans.  Instead of responding to the allegations that the Debtor improperly funneled the funds to non-Debtor entities (presumably because it cannot), the Debtor focuses on a settlement that it believes will make the parties whole. First, the fact that the Debtor's Principals and/or management negotiated the settlement does not negate the inappropriate transfer. Second, the actors accused of the wrongdoing cannot be entrusted to craft a settlement where it allegedly resolves the PPP issue and "will result in the estate being whole, one way or another." Debtor Objection at ¶ 71.

It should be noted that, while the Examiner Report is a stepping off point for the Motion, the Motion stands without the Examiner Report.  The inappropriate transfers are unrebutted, as is the fact that the transferees control the Debtor's investigation.

A trustee has the statutory power to investigate potential causes of action belonging to the estate pursuant to sections 547, 548, and 549 without conflict or bias concerning the connections and

dealings the Principals and management had with the Debtors and whether they personally profited from this relationship. *In re Microwave Products of America, Inc*., 102 B.R. at 676 (appointing a trustee in part "because the debtor is not in a strong position to pursue possible claims that have resulted from conflicts and fraudulent transfers…").  The idea that current management will act as a truly disinterested fiduciary while also investigating itself and the Principals would be laughable if it weren't so serious.  A chapter 11 trustee will not be burdened by questions about his or her allegiance to former management and will provide the necessary independence required in this case. The appointment of a trustee is the only statutory remedy that will ensure transparency and provide true independence for all creditors and investors.

## IV.    Conclusion

The United States Trustee has met his burden of proof establishing grounds for the appointment of a chapter 11 trustee under 11 U.S.C. §1104(a)(1) and for other relief as the Court deems appropriate. Accordingly, the Court should grant the Motion.


Dated: New York, New York
May 13, 2022

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:    /s/ Greg M. Zipes
Greg M. Zipes
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. No. (212) 510-0500
Fax. No. (212) 668-2255