**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Adam C. Rogoff
P. Bradley O'Neill
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Co-Counsel for Benefit Street Partners*
*Realty Operating Partnership, L.P.*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443
*Co-Counsel for Benefit Street Partners*
*Realty Operating Partnership, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                                        :
In re:                                                  :
                                                        :    Chapter 11
96 WYTHE ACQUISITION LLC,                               :
                                                        :    Case No. 21-22108 (RDD)
                        Debtor.                         :
                                                        :
--------------------------------------------------------- X

**LENDER'S MOTION IN LIMINE TO ADMIT THE EXAMINER'S TESTIMONY**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 4

ARGUMENT ........................................................................................................................ 6

I.     THE TESTIMONY OF THE EXAMINER IS ADMISSIBLE ............................................. 6

II.    SUMMARIES OF FINANCIAL DOCUMENTS CONTAINED IN THE
       EXAMINER REPORT ARE ADMISSIBLE UNDER FED R. EVID. 1006...................... 13

III.   THE EXAMINER'S DESCRIPTIONS OF HIS INVESTIGATION ARE NOT
       HEARSAY OR ARE SUBJECT TO HEARSAY EXCEPTIONS AND THEREFORE
       ADMISSIBLE................................................................................................... 15

  A.   The Examiner Can Independently Testify Concerning His Investigation ........................ 15

  B.   Other Statements Made to the Examiner By Representatives or Agents of the
       Debtor Are Non-Hearsay Admissions .............................................................. 16

  C.   The Examiner Can Testify Concerning Other Facts in His Report Because They
       Either Do Not Involve Hearsay or Are Subject to Hearsay Exceptions. .......................... 21

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bayou Group, LLC*,
   396 B.R. 810 (Bankr. S.D.N.Y. 2008), *aff'd in part, rev'd in part*, 439 B.R.
   284 (S.D.N.Y. 2010) ............................................................................................13

*Condus v. Howard Sav. Bank*,
   986 F. Supp. 914 (D.N.J. 1997) .........................................................................18

*In re Congaree Triton Acquisitions, LLC*,
   492 B.R. 843 (Bankr. D.S.C. 2012) ....................................................................15

*Crawford v. Franklin Credit Mgmt. Corp.*,
   No. 08-CV-6293 (KMW), 2015 WL 1378882 (S.D.N.Y. Mar. 26, 2015) .............22

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*,
   623 F. Supp. 2d 798 (S.D. Tex. 2009) ..............................................................9, 11

*In re FiberMark, Inc.*,
   339 B.R. 321 (Bankr. D. Vt. 2006) ................................................................ *passim*

*Fleming v. MaxMara USA, Inc.*,
   644 F.Supp.2d 247 (E.D.N.Y. 2009) ...................................................................18

*FTC v. Vyera Pharma., LLC*,
   No. 20-cv-00706 (DLC), 2021 WL 5236333 (S.D.N.Y. Nov. 10, 2021) ..............19

*In re Gen. Dev. Corp.*,
   147 B.R. 610 (Bankr. S.D. Fla. 1992) ...................................................................6

*Green v. City of N.Y.*,
   465 F.3d 65 .........................................................................................................18

*Hassan v. Maersk Lines, Ltd.*,
   No. CV 2004-5443 (DLI)(MDG), 2005 WL 5712849 (E.D.N.Y. Apr. 15,
   2005) ...............................................................................................................17, 19

*In re Hermanos Torres Perez Inc.*,
   No. 09-05585, 2011 WL 5854929 (D.P.R. Nov. 21, 2011) ..................................10

*Hosain-Bhuiyan v. Barr Lab'ys, Inc.*,
   No. 17-cv-114 (VB), 2019 WL 3740614 (S.D.N.Y. Aug. 8, 2019) .................16, 21

KL3 3385959.5

*In re Indus. Com. Elec., Inc.*,
  304 B.R. 24 (Bankr. D. Mass. 2004), *rev'd on other grounds*, 319 B.R. 35 (D.
  Mass. 2005) ..................................................................................................................6, 11

*Kennedy v. Supreme Forest Prods., Inc.*,
  No. 3:14-cv-01851 (JAM), 2017 WL 2225557 (D. Conn. May 22, 2017).............................18

*Liberty Mut. Ins. Co. v. Rotches Pork Packers*,
  969 F.2d 1384 (2d Cir. 1992).................................................................................................23

*Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*,
  No. 06 Civ. 7784 (GEL), 2008 WL 904728 (S.D.N.Y. Apr. 3, 2008) ...................................22

*In re Parmalat Sec. Litig.*,
  640 F. Supp. 2d 243 (S.D.N.Y. 2009).....................................................................................20

*Pitter v. Metro-N. Commuter R.R.*,
  826 F. Supp. 2d 612 (S.D.N.Y. 2011).....................................................................................22

*In re PWS Holding Corp.*,
  228 F.3d 224 (3d Cir. 2000)................................................................................................7, 9

*In re Rickel & Assocs., Inc.*,
  272 B.R. 74 (S.D.N.Y. 2002)....................................................................................................8

*Rosenberg v. Curry Chevrolet Sales & Serv., Inc.*,
  152 F.3d 920 (2d Cir. 1998)...................................................................................................22

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)......................................................................................................23

*Rueda v. City of NY*,
  2017 WL 4221081 (S.D.N.Y. Sept. 21, 2017)........................................................................19

*In re Saraland, LLLP*,
  No. 12-30113, 2013 WL 1403338 (S.D. Ga. Mar. 27, 2013).......................................6, 10, 11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  592 B.R. 513 (Bankr. S.D.N.Y. 2018).....................................................................................14

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  610 B.R. 197 (Bankr. S.D.N.Y. 2019).............................................................................13, 14

*Sherif v. AstraZeneca*,
  No. Civ. A. 00-3285, 2002 WL 32350023 (E.D. Pa. May 9, 2002) ........................................19

*United States v. Coplan*,
  703 F.3d 46 (2d Cir. 2012)......................................................................................................16

*United States v. Fernandez*,
    172 F. Supp. 2d 1265 (C.D. Cal. 2001) ...............................................................17

*United States v. Oguns*,
    921 F.2d 442 (2d Cir. 1990).................................................................................16

*United States v. Shepherd*,
    739 F.2d 510 (10th Cir. 1984) ..............................................................................17

*Walsh v. N.Y. City Hous. Auth.*,
    No. 11-cv-5248 (VSB), 828 F.3d 70 (2d Cir. 2016)...............................................19

*In re Washington Mutual Inc.*,
    No. 08-12229-MFW (Bankr. D. Del. 2008) (Dec. 7, 2010) (ECF No. 6265) ............10, 11, 13

*Worley v. City of New York*,
    No. 17 Civ. 4337 (LS), 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020)....................16

*Wright v. Urban Outfitters, Inc.*,
    No. 1:06-cv-13389, 2009 WL 10736929 (S.D.N.Y. Nov. 30, 2009) ......................18

## Other Authorities

Fed. R. Evid. 706 .......................................................................................6, 8, 9, 11

Fed. R. Evid. 801(a) ............................................................................................15

Fed. R. Evid. 801(c) ...........................................................................................3, 21

Fed. R. Evid. 801(d)(2) ................................................................................. *passim*

Fed. R. Evid. 801(d)(2)(A) ...............................................................................17, 18

Fed. R. Evid. 801(d)(2)(B)...................................................................................22

Fed. R. Evid. 801(d)(2)(D) ........................................................................... 17-19, 21

Fed. R. Evid. 803(6)............................................................................................13

Fed. R. Evid. 1006 ............................................................................................3, 13

5 *Weinstein's Federal Evidence* § 801.11[2a] (Joseph M. Mclaughlin Ed., 2d ed. 1997 & Supp.
    2013) ..............................................................................................................10

Benefit Street Partners Realty Operating Partnership, L.P.[1] ("Benefit Street" or

"Lender"), secured creditor of 96 Wythe Acquisition, LLC ("Debtor"), by and through counsel,

hereby files this motion *in limine* requesting that the Court admit the testimony of court-

appointed examiner Eric M. Huebscher (the "Examiner"), submitted by the Declaration of Eric.

M. Huebscher dated May 11, 2022 ("Examiner Decl.") and exhibits thereto pursuant to

paragraph 13 of the Court's April 25, 2022 Scheduling Order (ECF No. 548, collectively, the

"Testimony"), at the Court's upcoming hearings on Lender's Renewed Motion for the

Appointment of a Chapter 11 Trustee [ECF No. 476], on confirmation of the Debtor's Third

Amended Chapter 11 Plan of Reorganization ("Plan") [ECF No. 551], and on Debtor's Fed. R.

Bankr. P. 9019 motion [Dkt. 153].[2]

## PRELIMINARY STATEMENT

**This motion does not seek the wholesale admission of the Examiner's Report**

**and Supplemental Report.  Rather, it seeks the admission of the Examiner's testimony and**

**portions of those reports on various evidentiary bases.**

Benefit Street will call the Examiner as a witness, and offer his Testimony into

evidence in support of Lender's motion to appoint a trustee.[3]  The Examiner's Testimony

incorporates the findings and conclusions of his investigation as documented by his February 28,

---

[1] Benefit Street is a wholly owned subsidiary of Franklin Resources, Inc. that, together with various subsidiaries, operates as Franklin Templeton. Franklin BSP Realty Trust is a publicly traded entity on the New York Stock Exchange under the ticker symbol FBRT.

[2] Lender is introducing the Examiner's testimony pursuant to paragraph 13 of the Court's April 25, 2022 Scheduling Order.  Notwithstanding that the Examiner's testimony is by sworn declaration as requested by the Court, the Examiner is acting as an independent fiduciary and not as an advocate for the Lender or any other party in interest.

[3] The same relief would be requested as it relates to Benefit Street's objections to confirmation and Debtor's Fed. R. Bankr. P. 9019 motion, if such objections are heard by the Court.

2022 report (the "Report") and his March 21, 2022 supplemental report (the "Supplemental

Report"; together with the Report, the "Reports").

      The great majority of the Examiner's Testimony is admissible.  The Examiner has

voluntarily submitted his direct testimony and will appear for cross-examination.  Although not

binding on the Court, it is well settled that an examiner's conclusions are admissible as opinion

testimony, even if the facts underlying those conclusions require an independent basis to be

admitted.  Mr. Huebscher is qualified to offer such conclusions here as a Certified Public

Accountant and Certified Fraud Examiner with more than 20 years of experience in bankruptcy

practice and in conducting forensic and fraud investigations.  In addition, admitting such

testimony is essential to properly implement the role of an examiner.  As the Court in *In re

FiberMark, Inc.*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006) observed: "if bankruptcy courts were

unable to consider the findings and recommendations of an examiner's report, the process of

appointing an examiner would be an exercise in futility."

      That observation is particularly apt here because Mr. Huebscher is the sole

independent party in interest that has investigated potential estate claims against the Insiders.

That, moreover, was by the Court's design.  Rather than permit the investigation to be conducted

by the parties as part of the confirmation process, the Court concluded that time and money

would be "spent more efficiently and with more credibility if an examiner [is] appointed to look

at potential claims against – by the Debtors against insiders."  (October 29, 2021 Hearing Tr.

41:20-22).  The Court, moreover, made clear that other parties would not be permitted to conduct

a duplicative investigation: "Benefit Street is not gonna, you know, reinvent the wheel or do its

own analysis and discovery on that as if it were doing the same sort of inquiry that the examiner

was." (*Id.* at 43:9-11).  And the Court indicated that it would view the Examiner's conclusions

and findings to be credible, warning the parties that "if after an examiner issues a report either side spends an unusual amount of time challenging it, I'll take that into account as far as their credibility is concerned … [i]n other words, this is not step 1 followed by step 2 which is a whole separate litigation over the same issues …" (*Id.* at 34:15-21). The relief sought by Benefit Street is fully consistent with the Court's direction. Given the Examiner's exclusive responsibility to investigate these critical issues, the Court should hold that his Testimony is admissible as proposed in this brief.

The Examiner's high level conclusions aside, other supporting aspects of his report are independently admissible. Unlike many other examiner's reports, Mr. Huebscher's does not revolve around out-of-court witness interviews. Rather, it centers primarily around an accounting analysis of transactions reflected in identified voluminous bank account statements. Benefit Street will introduce these bank account statements at the hearing. The availability of this evidence renders Mr. Huebscher's charts and other analyses of the bank transactions themselves admissible pursuant to Fed. R. Evid. 1006 as summaries of voluminous documents.

Furthermore, Mr. Huebscher has personal knowledge and is therefore competent to testify about the facts of his investigation, which is relevant. His testimony concerning the conduct of witnesses of Debtor and its management company, Williamsburg Hotel BK, LLC (the "Manager"), during interviews, which documents he reviewed in the course of his investigation, and the content of documents in evidence, are not hearsay. Similarly, statements by Debtor and Management Company witnesses, such as refusals to answer questions or produce documents, are conduct, not hearsay statements under Fed. R. Evid. 801(c). Finally, to the extent the Examiner's Testimony relies on out-of-court statements by the Debtor, its representatives, and its

agents for the truth of the matters asserted, such statements are admissions that are non-hearsay statements of a party opponent admissible under Fed. R. Evid. 801(d)(2).

The Testimony is attached as Exhibit 1.  Additionally, attached as Exhibit 2 for the Court's convenience are highlighted copies of the Reports (the "Annotated Reports"), identifying the specific portions of the Reports to be admitted and the basis to do so.  Statements in the Annotated Reports are highlighted to correspond to the basis of their admissibility as follows:

- Statements highlighted in yellow are admissible because they are the Examiner's conclusions and opinions, as discussed in Section I;

- Statements in orange are admissible under Fed. R. Evid. 1006, as discussed in Section II;

- Statements in blue are admissible because they are based on personal knowledge and/or not offered for the truth of the matter asserted, as discussed in Section III.A;

- Statements in purple are admissible because they are admissions of a party opponent, as discussed in Section III.B; and

- Statements in green are admissible because they are offered subject to connection through other introduced evidence, discussed in Section III.C.

## BACKGROUND

In November 2021, the Court appointed the Examiner, Eric M. Huebscher, to investigate and file a report on transactions which might give rise to potential estate claims, including claims against Ms. Moskovits, Mr. Lichtenstein, and others.  (Examiner Decl. ¶ 5; ECF Nos. 178, 184).  The order directing the appointment of an examiner was amended on November 23, 2021 and again on December 14, 2021.  [ECF Nos. 193, 224].

Over three months of investigation, the Examiner reviewed records from 50 bank accounts, conducted 11 interviews, and reviewed over 10,000 pages of documents.  (Examiner Decl. Ex. F at 1).  During the course of his investigation, the Examiner "observed an unparalleled

effort by the Debtor's principals (Toby Moskowitz and Michael Lichtenstein) to obstruct the Examination." (Examiner Decl. ¶ 6). Specifically, "[w]ith support, assistance and guidance of counsel to the Debtor, Moskovitz and Lichtenstein did everything possible to thwart the [Examiner's] investigation, including attempting to limit or eliminate access to critical pieces of information and attempting to conceal evidence of possible bankruptcy crimes, money laundering, and tax evasion." (*Id.*).

On February 28, 2022, the Examiner filed his Report. [ECF No. 418]. On March 21, 2022, the Examiner filed his Supplemental Report [ECF No. 465] to respond to certain alleged "flaws" raised for the first time by the Debtor in a purported "Counter Report" authored by one of the very Insiders who is the subject of the Examiner's investigation [ECF No. 420].

The Examiner concluded, among other things, that the Insiders "engaged in a scheme to siphon off any monies generated by the Debtor's hotel operations, through the illegitimate control of the Manager, to unrelated entities owned by the Principals," which "diverted millions of dollars from the Debtor." (Examiner Decl. Ex. F at 24). He concluded that the "Manager received 100% of all revenue generated by the Debtor" and that "the only business conducted by the Manager was managing the Debtor." (*Id.* at 11-12). The Examiner identified "not less than $14.5 million in potentially avoidable transactions" that "have not been adequately addressed by the Debtor," including an aggregate of at least $12.5 million of Debtor's revenue received by Manager and transferred to entities directly or indirectly owned by the Insiders. (Examiner Decl. ¶ 17, Ex. F at 15).

These transactions include not just pre-petition transactions between Debtor, Manager, and entities then and now controlled by the Insiders, but also unauthorized post-petition transactions. Specifically, the Examiner concluded that the Insiders failed to disclose to

the Court two bank accounts used by the Manager, received approximately $252,000 in hotel
collections and a $350,000 EIDL loan/grant in the name of Williamsburg Hotel, and after the
filing of the petition transferred more than $600,000 of those proceeds to non-Debtor affiliated
entities controlled by the Insiders. (*Id.* ¶ 7). Additionally, the Examiner concluded that Debtor
failed to file tax returns for the years 2017 through 2020, and that the Insiders' explanations for
not doing so "are baseless, inaccurate and point to the potential of a large scale tax evasion." (*Id.*
¶ 8).

## ARGUMENT

## I.    THE TESTIMONY OF THE EXAMINER IS ADMISSIBLE

It is well established that, while examiner reports may contain hearsay, the
conclusions of a qualified examiner are admissible into evidence as opinion testimony. In fact,
courts have routinely permitted examiners to provide live expert testimony concerning the
conclusions of their investigations. *See, e.g.*, *In re Indus. Com. Elec., Inc.*, 304 B.R. 24, 31
(Bankr. D. Mass. 2004) (bankruptcy court permitted examiner to testify as an expert concerning
matters as to which the examiner "did not have any first-hand knowledge"), *rev'd on other
grounds*, 319 B.R. 35 (D. Mass. 2005); *In re Gen. Dev. Corp.*, 147 B.R. 610, 617 (Bankr. S.D.
Fla. 1992) (noting that "[t]he Examiner testified as an expert on behalf of the Reorganized
Debtor" and "[t]he Court finds the Examiner's testimony to have been persuasive"); *In re
Saraland, LLLP*, No. 12-30113, 2013 WL 1403338, at *2 (S.D. Ga. Mar. 27, 2013) (admitting
examiner report into evidence because "[t]he examiner was present and testified subject to cross-
examination"). This is what Benefit Street seeks to do here.

The Court should hold that the conclusions and opinions of the Examiner described in his Testimony are admissible as expert testimony under Fed. R. Evid. 706.[4] The Examiner—appointed by the Court for this very investigation—is more than qualified to provide expert opinions concerning a forensic analysis of bank statements and potential bankruptcy claims and crimes that may arise from them. The Examiner holds degrees in accounting and finance, as well as certifications as a Certified Public Accountant and Certified Fraud Examiner. (Examiner Decl. ¶ 2). Over his decades-long career, he has served in numerous capacities in Chapter 11 bankruptcies, including as a trustee on numerous cases, as well as plan administrator, litigation trustee, financial advisor, and examiner. (*Id.* ¶¶ 3-4, Ex. A). He has also "worked on numerous fraud and forensic assignments over the past 20 years," recently leading a forensic investigation of a mortgage fraud scheme in collaboration with the United States Attorney's Office. (*Id.* ¶¶ 3-4). Additionally, he has served as a receiver in state and federal courts. (*Id.* Ex. A). He was also advised by well-respected counsel throughout the process.

Admitting the Testimony into evidence is consistent with the decision of Judge Brown in *FiberMark*, which the Court has previously indicated it finds persuasive (March 8, 2022 Hearing Tr. 34:11-23). The debtors in *In re FiberMark, Inc.*, 339 B.R. 321 (Bankr. D. Vt. 2006) moved to admit the examiner's report, which concerned "the parties' motives in relation to a dispute among the members of the [Creditors] Committee" into evidence as an expert opinion. The *FiberMark* Court noted a plethora of other decisions relying on the conclusions of examiner reports when the examiner was "appointed to investigate questions that could be answered in purely objective terms, and based upon objective data from their field of expertise," including when examiners were assigned to investigate "causes of action available to the estate." *Id.* at 326

---

[4] The Examiner's conclusions and opinions are highlighted in the color yellow in the Annotated Reports.

(citing *In re Apex Oil*, 118 B.R. 683, 688 (E.D. Mo. Aug. 16, 1990) (court relied on an examiner's report that analyzed causes of action available to the estate and examiner testified at confirmation hearing); *In re PWS Holding Corp.*, 228 F.3d 224, 231 (3d Cir. 2000) (court appointed independent examiner to evaluate legal claims of the debtor); *In re Best Products Co.*, 168 B.R. 35, 45 (Bankr. S.D.N.Y. 1994) (examiner appointed to examine potential legal claims of the estate)).  The court there characterized such investigations of legal claims of the debtor as "answer[able] in purely objective terms, and based upon objective data from their field of expertise," and therefore "there was little reason to dispute the reliability of the premises upon which those examiners based their conclusions." *Id.* at 326.  While the investigation of the examiner in *FiberMark* of the bankruptcy parties' motives in connection with certain transactions did not fall into that category, the Court still held that "Fed. R. Evid. 706 can be used to justify the admission of the Examiner's conclusions." *Id.* at 327.  That conclusion was consistent with the Court's observation that "if bankruptcy courts were unable to consider the findings and recommendations of an examiner's report, the process of appointing an examiner would be an exercise in futility."[5] *Id.* at 325.

Here, the Court should, consistent with the holding of *FiberMark*, admit the Examiner's testimony concerning his conclusions and opinions, as requested by Benefit Street.[6]

---

[5] The *FiberMark* court also cited *In re Rickel & Assocs., Inc.*, 272 B.R. 74 (S.D.N.Y. 2002) for the proposition that examiner reports are hearsay.  There, debtor, a bankrupt broker-dealer, sold stock warrants in a certain issuer to insiders at what turned out to be far below their worth, and debtor sued for fraud.  Defendants moved for summary judgment and alleged that debtor was on notice of the alleged omissions by defendants based almost exclusively on the examiner's report in the case, but the Court denied summary judgment, holding, among other things, that the report was "hearsay" and the examiner "was not charged-nor could he be—with the duty to 'hear and determine' any claims in this case." *Id.* at 87.  That decision does not suggest that an examiner's report, in whole or in part, is never admissible.

[6] The admissibility of the Examiner's Testimony concerning the Insiders' obstruction of his investigation is addressed in Section III.A below.

These conclusions and opinions include, among other things, that:

- The Insiders engaged in "an unparalleled effort … to obstruct the Examination" and "did everything possible to thwart the [Examiner's] investigation, including attempting to limit or eliminate access to critical pieces of information and attempting to conceal evidence of possible bankruptcy crimes, money laundering, and tax evasion." (Examiner Decl. ¶ 6).

- The Insiders "engaged in a scheme to siphon off any monies generated by the Debtor's hotel operations, through the illegitimate control of the Manager," which "received 100% of all revenue generated by the Debtor," that "diverted millions of dollars from the Debtor." (Examiner Decl. Ex. F at 11-12, 24).

- Debtor, under the control of the Insiders, engaged in "not less than $14.5 million in potentially avoidable transactions" that "have not been adequately addressed by the Debtor," including an aggregate of at least $12.5 million of Debtor's revenue received by Manager and transferred to entities directly or indirectly owned by the Insiders. (Examiner Decl. ¶ 17, Ex. F at 15).

- The Insiders failed to disclose the existence of two bank accounts used by Debtor, and engaged in unauthorized post-petition transactions using those accounts, including obtaining a $350,000 EIDL loan and transferring a total of more than $600,000 from the accounts, including the loan, to non-affiliate entities controlled by the Insiders. (Examiner Decl. ¶ 7).

- Debtor failed to file tax returns for the years 2017 through 2020, and the Insiders' explanations for not doing so "are baseless, inaccurate and point to the potential of a large scale tax evasion." (Examiner Decl. ¶ 8).

The conclusions of the Examiner are not hearsay, but expert opinion testimony that the *FiberMark* court held admissible under Fed. R. Evid. 706. Courts have relied on *FiberMark* for the proposition that "where the Examiner is shown to be qualified as an expert in the field at issue … his conclusions and opinions may be admissible under Fed. R. Evid. 706." *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 623 F. Supp. 2d 798, 823 n.21 (S.D. Tex. 2009) (observing that "*In re FiberMark* is the only decision addressing whether [examiner reports] are admissible as expert opinion over a hearsay objection," and allowing plaintiffs to designate the examiner as an expert and to introduce his conclusions as evidence because the report served "as one of the major and most comprehensive sources of information about the collapse of Enron");

*see also In re PWS Holding Corp.*, 228 F.3d 224, 229 (3d Cir. 2000) (holding that there was "no error in the District Court's decision to accept the Examiner's findings and legal conclusions regarding the viability of the claims").[7]

Courts have also determined that admitting an examiner's report into evidence is appropriate when an examiner appears and testifies at an evidentiary hearing. The court in *In re Saraland, LLLP*, admitted the examiner's report into evidence because "[t]he examiner was present and testified subject to cross-examination. He is well qualified and duly carried out his examiner duties. The report is not admitted for the truth of the matter asserted. The report is an aid to the Court and is the basis of the examiner's opinion and conclusions." 2013 WL 1403338, at *2. The Court further explained that the U.S. Trustee "established 'cause' to admit the examiner report through the testimony of the examiner … [t]he examiner's report is admitted as an aid to the Court in understanding the conclusions of the examiner, but does not establish facts." *Id.* at *2; s*ee also In re Hermanos Torres Perez Inc.*, No. 09-05585, 2011 WL 5854929, at *1 (D.P.R. Nov. 21, 2011) (admitting the examiner's report "into evidence as direct testimony in substitution of [the examiner's] live testimony").

Here, the Court can and should determine that the Report and exhibits thereto are admissible. The Examiner's conclusions and opinions are admissible as expert testimony, and certain summaries of bank statements and facts described in Sections II and III below, respectively, are not hearsay or are otherwise independently admissible. Even if some statements in the Report are not admissible for their truth, those statements would "not [be]

---

[7] A special master in *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2013 WL 12191891, at *11 (S.D.N.Y. Mar. 11, 2013) cited *FiberMark* in declining to consider the examiner's report from a years-prior bankruptcy proceeding as the sole evidence in support of an allegation regarding a proposed fraud on plaintiffs' motion for summary judgment, but plaintiffs made no argument concerning its admissibility at trial. *Id.* at *11 n.13.

admitted for the truth of the matter asserted" but "as an aid to the Court in understanding the conclusions of the examiner." *In re Saraland, LLLP*, 2013 WL 1403338, at *2.

Benefit Street has identified no decision that has excluded from evidence an examiner's live testimony concerning the conclusions of his or her report. The only bankruptcy case in which a court excluded an examiner's report from evidence altogether, *In re Washington Mutual Inc.*, No. 08-12229-MFW (Bankr. D. Del. 2008) (Dec. 7, 2010) (ECF No. 6265), involved markedly different circumstances. [8] The examiner in *Washington Mutual* investigated the fairness of the proposed settlement—the very issue before the court at the plan confirmation hearing—and relied extensively on witness interviews and work product provided by debtors. In contrast, here, the Examiner did not opine on the subjective issue of whether the Court should approve Debtor's confirmation plan, but investigated the objective issue of whether potential causes of action belonging to the Debtor and its estate existed, principally by analyzing bank statements. Such an investigation was recognized by *FiberMark* as "answer[able] in purely objective terms, and based upon objective data from [the examiner's] field of expertise," and therefore creating "little reason to dispute the reliability of the premises upon which th[e] examiner[s] based [his] conclusions." *FiberMark*, 339 B.R. at 326. This is unlike the *Washington Mutual* examiner's investigation of the settlement's fairness and the *FiberMark* examiner's investigation of the parties' intent. Thus, the case for the admissibility of the Examiner's conclusions and opinions here is even stronger than in *FiberMark*.

---

[8] Debtor has previously cited comments in *Matter of Baldwin United Corp.*, 46 B.R. 314, 315-16 (Bankr. S.D. Ohio 1985), a case in which plaintiffs in civil securities litigation sought discovery from the examiner in the bankruptcy proceeding, for the proposition that an examiner's "findings" do not "have the evidentiary character of an opinion by a Court expert appointed pursuant to Rule 706." [ECF No. 503 at 2]. That issue was not before the Court, however, and in the nearly 40 years since *Baldwin*, courts in *FiberMark*, *Enron*, *Saraland*, *In re Indus. Com. Elec.*, and others have made clear that the conclusions and opinions of a qualified examiner are admissible under Fed. R. Evid. 706.

Additionally, unlike *Washington Mutual* and *FiberMark*, the Examiner is willing to voluntarily testify and undergo cross-examination concerning his investigation. And also unlike *Washington Mutual*, the Examiner analyzed bank records to which the Debtor and its affiliates have total access, and interviewed witnesses under the control of the Debtor and its insiders. Indeed, Debtor prepared and filed a "counter-report" criticizing the Examiner's conclusion within hours of the filing of the Examiner's Report. [ECF No. 420]. To the extent the Examiner comments on those witnesses' obstruction of his investigation, they are entirely familiar with their own action or inaction.

Moreover, in appointing the Examiner, the Court specifically stated that the Examiner, and not the other parties in interest, would investigate these aspects of the case. The Court expressly contemplated that the Examiner's Report and conclusions would obviate the development of evidence on these issues by the parties. In doing so, the Court determined that time and money would be "spent more efficiently and with more credibility if an examiner [is] appointed to look at potential claims against – by the Debtors against insiders," and ordered that the Examiner, rather than the parties, conduct discovery specifically related to those claims. (October 29, 2021 Tr. 41:20-22). Indeed, the Court contemplated that, after it appointed the Examiner, "Benefit Street is not gonna, you know, reinvent the wheel or do its own analysis and discovery on that as if it were doing the same sort of inquiry that the examiner was," and that "[i]n other words, this is not step 1 followed by step 2 which is a whole separate litigation over the same issues …" (*Id.* at 34:19-21, 43:9-11). The Court further expressly discouraged parties from conducting a similar investigation after the Examiner has issued his Report, warning the parties that "if after an examiner issues a report either side spends an unusual amount of time challenging it, I'll take that into account as far as their credibility is concerned." (*Id.* 34:15-20).

The best way to preserve the efficiency and purpose of appointing the Examiner to investigate

the claims of the Debtor against the Insiders is to admit the Reports in connection with his

testimony in the manner requested herein.

## II.    SUMMARIES OF FINANCIAL DOCUMENTS CONTAINED IN THE EXAMINER REPORT ARE ADMISSIBLE UNDER FED R. EVID. 1006

The Examiner's Report in this case differs from many similar reports in other

cases in a way that renders many of the Examiner's factual conclusions admissible.  Unlike

*FiberMark* or *Washington Mutual*, where the examiner's report was largely premised upon

witness interviews and other out of court statements that constitute classic hearsay, one of the

central elements of the Examiner's Report here is an analysis of documents: specifically, bank

statements that will be introduced into evidence as business records under Fed. R. Evid. 803(6) at

the hearing in this matter.  The Examiner's Report summarizes the transactions reflected in those

bank statements, and includes several charts reflecting the flow of funds among the Debtor,

Manager and numerous non-debtor affiliates controlled by the Insiders.  Report at 12-18, 21-24

(the "Summaries").

The Summaries are admissible under Fed. R. Evid. 1006.[9]  That rule states that a

"proponent may use a summary, chart, or calculation to prove the content of voluminous

writings, recordings, or photographs that cannot be conveniently examined in court."  Such

summaries and charts are admissible when "the underlying evidence are available for inspection

and copying and are admissible in evidence, but the documents underlying the summary do not

have to be introduced into evidence."  *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs.*

*LLC*, 610 B.R. 197, 226 (Bankr. S.D.N.Y. 2019).

---

[9] The Summaries include pp. 13, 15, and 17 of the Examiner's Report (Examiner Decl. Ex. F), and the Examiner's explanation of the Summaries on pp. 11-18 of the Report, highlighted in the color orange in the Annotated Reports.

The Summaries fall squarely within the contours of Fed. R. Evid. 1006.  The

Summaries merely summarize tens of thousands of entries across hundreds of bank accounts of

entities controlled by the Insiders to illustrate the cash flows between Debtor, Manager, and other

affiliates of the Insiders.  (Report at 1).  This Court has routinely held that such summaries of

cash flows reflected in bank or other business records are admissible under Fed. R. Evid. 1006.

In *In re Bayou Group, LLC*, 396 B.R. 810, 841 (Bankr. S.D.N.Y. 2008), *aff'd in part, rev'd in

part*, 439 B.R. 284, 336-37 (S.D.N.Y. 2010), the Court addressed the admissibility of an expert

report that consisted of "no more nor less than a compilation and calculation of" asset values and

cash flows.  The Court held that the compilations and summaries from the report were admissible

because the methodology used to create the summaries "is fundamentally unassailable—there is

no other way to go about determining the facts than that described in the" report and therefore

"[t]here can be no question that the compilations and summaries which comprise [the report] are

appropriate and proper under Rule 1006."  *Id*.  Similarly, here, there was no other way for the

Examiner to calculate the aggregate transfers between Debtor, Manager, and Insiders than to

compile the transactions reflected on the bank statements.  Likewise, the Court in *Sec. Inv. Prot.

Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 225-26 (Bankr. S.D.N.Y. 2019)

admitted "certain charts, tables and attachments … relied on by the experts" under Rule 1006

when "the summaries represented compilations of information culled from BLMIS and third-

party books and records" because they "represented compilations or graphic depictions of

voluminous data … and the objections to the admission of BLMIS's books and records have

been overruled."  *See also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 592 B.R.

513, 533–34 (Bankr. S.D.N.Y. 2018) (admitting calculations of principal of customer accounts

because "[t]he relevant customer statements were voluminous" and "the underlying monthly

statements are admissible under the business records exception"). The Court should find that the

Summaries in the Examiner's Report of cash flows between Debtor, Manager, and other

affiliates of the Insiders are admissible.

### III. THE EXAMINER'S DESCRIPTIONS OF HIS INVESTIGATION ARE NOT HEARSAY OR ARE SUBJECT TO HEARSAY EXCEPTIONS AND THEREFORE ADMISSIBLE

### A. The Examiner Can Independently Testify Concerning His Investigation

The Examiner's Report details the Examiner's methodology in conducting his

examination, the documents he requested and received, and the parties he interviewed. He also

details actions by the Insiders that reflected a failure to cooperate with or "actively obstruct[] the

[Examiner's] investigation." (Examiner Decl. Ex. F at 10). Specifically, the Examiner's Report

states that the Debtor and its insiders repeatedly refused to answer his questions, withheld

documents, altered documents they did produce, misrepresented that certain Manager accounts

did not relate to the Manager, and forced the Examiner to subpoena banks for records that were

in the Debtor's possession only to then seek (unsuccessfully) to quash those subpoenas, and

separately wrote to the banks urging them not to comply with the subpoenas while that motion

was pending. (*Id.* at 10-11, 10 n.2). These are observations of events and (mis)conduct that are

within the Examiner's personal knowledge and to which he can testify.[10]

As explained in Lender's Renewed Motion for Appointment of a Chapter 11

Trustee [ECF No. 476] and its Supplemental Objection to Confirmation [ECF No. 428], this

noncooperation and obstruction is highly relevant to the trustee motions. And courts regularly

permit examiners to testify concerning their investigations, including as to whether the parties

cooperated. For instance, in *In re Congaree Triton Acquisitions, LLC*, 492 B.R. 843, 848, 854

---

[10] Statements in the Examiner's Report concerning the Insiders' obstruction of his investigation that are admissible because they are within his personal knowledge are highlighted in the color blue in the Annotated Reports.

(Bankr. D.S.C. 2012), the examiner there testified at a hearing on a motion to convert the case to

Chapter 7 or to appoint a trustee "that the Debtor and its representatives failed to cooperate with

several of his requests for information." *Id.* at 848.

Such testimony is not even arguably hearsay.  Only a statement can be hearsay,

and the Insiders' refusal to produce documents, refusal to answer questions, and other conduct

detailed by the Examiner are not "statements" offered for the truth of their content within the

meaning of Rule 801.  Fed. R. Evid. 801(a) ("'Statement' means a person's oral assertion,

written assertion, or nonverbal conduct, if the person intended it as an assertion."); *see, e.g.*,

*Worley v. City of New York*, No. 17 Civ. 4337 (LS), 2020 WL 730326, at *7 n.2 (S.D.N.Y. Feb.

12, 2020) (testimony regarding conduct that witness observed "is not hearsay because it is not an

out-of-court statement") (citing Fed. R. Evid. R. 801(c)).

Rather, they are offered for the fact that they were said or are simply descriptions

of the Insiders' conduct.  As such, these statements are offered for purposes other than the truth

of the matter asserted and therefore are not hearsay.  *See, e.g.*, *Hosain-Bhuiyan v. Barr Lab'ys,

Inc.*, No. 17-cv-114 (VB), 2019 WL 3740614, at *5 n.4 (S.D.N.Y. Aug. 8, 2019) (finding that

portions of a report that summarized communications were not hearsay because the content of

the communications were not offered for their truth).  These statements are instead offered

because they "raise[] concerns regarding the honesty and transparency of the Principals."  Report

at 34.

**B.     Other Statements Made to the Examiner By Representatives or Agents of the
         Debtor Are Non-Hearsay Admissions**

The Examiner conducted 11 interviews with representatives or agents of the

Debtor in the course of his investigation. *See* Examiner's Report [ECF No. 418] at 1.  The

Examiner should be allowed to testify concerning these interviews.[11]

First, the Examiner's testimony concerning his questions, directives, and requests is admissible non-hearsay evidence. Because a question is not an assertion and is not being offered for its truth, it is not hearsay. *See United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) ("as a matter of law, questions are not 'assertions' within the meaning of Rule 801"); *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an assertion, and accordingly is not and cannot be a hearsay statement." (internal quotations and citations omitted)). The same is true of a directive or request. *See* 5 *Weinstein's Federal Evidence* § 801.11[2A] (Joseph M. McLaughlin ed., 2d ed. 1997 & Supp. 2013) ("[I]mperatives are not hearsay because they are not assertions of fact. For example, the imperative 'tell the truth' does not expressly assert anything.'") (citing *United States v. Hayes*, 369 F.3d 564, 568 (D.C. Cir. 2004) (imperative statements such as "tell the truth" "are not assertive and therefore do not express a 'truth' for which they could be offered")); *see also United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984) ("An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth."); *United States v. Fernandez*, 172 F. Supp. 2d 1265, 1275 (C.D. Cal. 2001) ("An instruction to do something is not an assertion and cannot be either true or false. Therefore, it is not hearsay.").

Second, testimony concerning statements made to the Examiner by the Debtor or its representatives or its agents is also admissible non-hearsay evidence. Under Rule 801(d)(2), an out-of-court statement is not hearsay if it "is offered against an opposing party and: . . . was made by the party in an individual or representative capacity" or "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid.

---

[11] Statements by witnesses interviewed by the Examiner that are non-hearsay evidence and admissible are highlighted in the color purple in the Annotated Reports.

801(d)(2)(A), (D).  "[T]he Second Circuit and the Advisory Committee Notes to Rule 801 have

recognized that admissibility under this rule should be granted freely.'"  *Hassan v. Maersk Lines,

Ltd.*, No. CV 2004-5443 (DLI)(MDG), 2005 WL 5712849, at *2 (E.D.N.Y. Apr. 15, 2005)

(quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)).

These out-of-court statements are admissible as non-hearsay admissions of the

Debtor notwithstanding the fact that they were made to the Examiner rather than to Benefit

Street or the U.S. Trustee. Rule 801(d)(2) does not require that out-of-court statements by a party

opponent have been made *to* the party seeking to introduce them into evidence.  Rather, such

statements are admissible as non-hearsay evidence where they are "*offered against* an opposing

party."  Rule 801(d)(2) (emphasis added).  *See, e.g.*, *Green v. City of N.Y.*, 465 F.3d 65, 77

(testimony of third-party witness regarding statements made to witness by party admissible under

Rule 801(d)(2); *Wright v. Urban Outfitters, Inc.*, No. 1:06-cv-13389, 2009 WL 10736929, at *4

(S.D.N.Y. Nov. 30, 2009) (documents published by party admissible as non-hearsay evidence

under Rule 801(d)(2)); *Fleming v. MaxMara USA, Inc.*, 644 F.Supp.2d 247, 259 n.9 (E.D.N.Y.

2009) (finding that if defendant had made statement directly to testifying non-party witness, then

the statement would be admissible as a non-hearsay admission of a party opponent under Rule

801(d)(2), but ultimately finding statement inadmissible on grounds not applicable here).

Because these statements are being offered against an opposing party (the Debtor) by Benefit

Street, Rule 801(d)(2) is satisfied here.

Statements made by Ms. Moskovits and Mr. Lichtenstein were made as managers

(and fiduciaries) of the Debtor (First Day Declaration at 1 [ECF No. 8]), and are therefore

admissible as non-hearsay party admissions under Rule 801(d)(2)(A).  *See Kennedy v. Supreme

Forest Prods., Inc.*, No. 3:14-cv-01851 (JAM), 2017 WL 2225557, *3 (D. Conn. May 22, 2017)

(statements made by managers of a party company are admissions of that party under Rule 801(d)(2)(A)).  Moreover, because Ms. Moskovits and Mr. Lichtenstein are agents of the Debtor, their statements are also admissible as non-hearsay evidence under Rule 801(d)(2)(D).  The same is true for Mr. Goldwasser, who is the Debtor's Chief Restructuring Officer and therefore also its agent and retained for such purpose in this case.

Similarly, statements of employees of the Manager were made as agents of the Debtor and therefore not hearsay under Rule 801(d)(2)(D).  *See Condus v. Howard Sav. Bank*, 986 F. Supp. 914, 915 (D.N.J. 1997) (where agency relationship exists between management company and party, management company's out-of-court statements are admissible against that party under Rule 801(d)(2)(D)); *see also Sherif v. AstraZeneca*, No. Civ. A. 00-3285, 2002 WL 32350023, at *3 (E.D. Pa. May 9, 2002) (admitting statements by officers of non-party predecessor company against party successor company under Rule 801(d)(2), holding that it would "elevate form over substance" to do otherwise given overlap in companies and management).

A party offering a statement by a party's agent must establish "1) the existence of an agency relationship; 2) the statement was made during the course of the relationship; and 3) it relates to a matter within the scope of the agency." *Hassan*, 2005 WL 5712849, at *2 (citing *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537(2d Cir. 1992)).  The existence and scope of an agency relationship may be established by circumstantial evidence. *Id.* (citing *Pappas*, 963 F.2d. at 538).  When assessing whether a statement relates to a matter within the scope of the agency, "it is sufficient if the statement relates to the declarant's duties." *Id.* (citing *United States v. Lauersen*, 348 F.3d 329, 340 (2d Cir. 2003)).  An agent or employee need not hold decision-making authority; a statement is admissible if it relates to a matter in which the

agent or employee was a significant participant or advisor. *Walsh v. N.Y. City Hous. Auth.*, No.

11-cv-5248 (VSB), 828 F.3d 70, 79 (2d Cir. 2016); *see also Rueda v. City of NY*, 2017 WL

4221081, at *6-7 (S.D.N.Y. Sept. 21, 2017) (statement made by personnel officer to plaintiff

candidate was admissible against the city in an employment discrimination case because the

officer served as an advisor in the hiring decision-making process); *FTC v. Vyera Pharma., LLC*,

No. 20-cv-00706 (DLC), 2021 WL 5236333, at *3 (S.D.N.Y. Nov. 10, 2021) (citing *Lauersen*,

348 F.3d at 340) ("The statement must concern matters on which the [agent or] employee had the

authority to take action, to speak, or to participate.").

      Here, the Manager acts for the Debtor pursuant to a written management

agreement that renders it an agent.[12]  Under the Hotel Management Agreement that was attached

to the Assignment of Hotel Management Agreement and Subordination of Hotel Management

Fees, dated as of December 13, 2017 (the "December HMA"), the Manager is required to

"perform all work in connection with on-site management of" the hotel and to employ "all

personnel and facilities necessary and appropriate to enable it to perform the services required of

it . . . ."[13]

      The Examiner interviewed Mr. Rauch, Mr. Kirschner and Ms. Gross; as subagents

appointed by the Manager, they are agents of both the Manager and the Debtor.  Mr. Rauch is the

Director of Finance, Mr. Kirschner is the finance manager, and Ms. Gross is the human resources

manager of the Manager, and each were interviewed concerning the transactions described in the

---

[12] Notwithstanding the dispute as to which management agreement governs the relationship, the Insiders concede that the Debtor is managed by the Manager (Disclosure Statement at II.1 [ECF No. 196]), and is therefore its agent.

[13] The Debtor asserts that its hotel management relationship is instead governed by a Hotel Management and Services Agreement that purports to be effective as of November 21, 2017 (the "November HMA").  However, the terms of the November HMA would likewise render the Manager an agent of the Debtor.  For instance, Sections 3.01 and 3.02 of the November HMA empowers the Manager to manage and operate the hotel and to enter into contracts on the Debtor's behalf.

Examiner's report and their involvement in them.  *See In re Parmalat Sec. Litig.*, 640 F. Supp. 2d 243, 252 (S.D.N.Y. 2009) (quoting Restatement (Third) of Agency § 3.15(1) (2006)) ("According to traditional agency principles, an agent may appoint subagents to perform the tasks or functions the agent has agreed to perform for the principal.  As the Restatement describes it, '[t]he relationships between a subagent and the appointing agent and between the subagent and the appointing agent's principal are relationships of agency.'").  Their statements made to the Examiner in interviews while employed in that capacity and concerning matters within the scope of their employment are therefore admissible against the Debtor as non-hearsay evidence under Rule 801(d)(2)(D).  Likewise, the statements of Mr. Podgainy, Debtor's financial advisor and therefore agent, concerning his work for Debtor and the declaration he prepared for the Examiner on its behalf are admissible as non-hearsay evidence under Rule 801(d)(2)(D) as well.

**C.**     **The Examiner Can Testify Concerning Other Facts in His Report Because They Either Do Not Involve Hearsay or Are Subject to Hearsay Exceptions.**

The other key facts described in the Examiner's Report are also the proper subject of testimony by the Examiner and do not involve inadmissible hearsay.

First, the Examiner's Report refers to numerous out-of-court statements that are offered for purposes other than the truth of the matter asserted.  Such statements are not hearsay under Rule 801(c) (hearsay includes only statements offered "to prove the truth of the matter asserted in the statement").  *See, e.g.*, *Hosain-Bhuiyan v. Barr Lab'ys, Inc.*, No. 17-cv-114(VB), 2019 WL 3740614, at *5 n.4 (S.D.N.Y. Aug. 8, 2019).  Non-hearsay statements offered for purposes other than the truth of the matters asserted include, but are not limited to:[14]

---

[14] The statements discussed in Section III.C that are admissible because they are offered subject to connection through other introduced evidence are highlighted in the color green in the Annotated Reports.  That evidence includes BSP Exs. 3-5, 11, 20, 26, 31-36, 38-42, 45, 46, 55-57, 69, 70, 101-116, and 167-68.

- Letters from Debtor's counsel to third parties instructing them not to comply with subpoenas. *See* Report at 10 n.22. Testimony regarding these communications is offered not for the truth of any matter asserted in the letters, but as evidence that the Debtor attempted to obstruct the Examiner's investigation.[15]

- The Debtor's alteration of documents produced to the Examiner. *See* Report at 10-11. Testimony regarding the Debtor's alteration of documents produced to the Examiner does not rely on the truth of any out-of-court statements and therefore is not hearsay.

- The Podgainy Declaration. *See* Report at 18-20; Declaration of Mark Podgainy, dated January 4, 2022 [ECF No. 268 Ex. B]. Testimony regarding this declaration is not offered for the truth of the matter asserted and therefore is not hearsay.

- Tax returns. *See* Report at 2-3, 12. Testimony regarding tax returns is not offered for the truth of any matter asserted in the returns, but as evidence of what returns were and were not filed and what those returns did and did not disclose.[16]

Second, as discussed above in Section III.B with respect to the Examiner's

interviews, out-of-court statements by the Debtor are admissible as non-hearsay admissions of a

party opponent under Rule 801(d)(2). Such statements include, but are not limited to:

- Monthly operating reports ("MORs") filed by the Debtor in this case. *See* Report at 3,6. Testimony concerning these MORs does not implicate hearsay because these filings are non-hearsay admissions of the Debtor. *See, e.g.*, *Pitter v. Metro-N. Commuter R.R.*, 826 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (court filings by party are admissible against it as non-hearsay admissions of a party opponent under Rule 801(d)(2)); *see also Rosenberg v. Curry Chevrolet Sales & Serv., Inc.*, 152 F.3d 920 (2d Cir. 1998) ("The law is clear that pleadings constitute admissions under Rule 801(d)(2) and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party.") (internal quotations and citations omitted); *cf. Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, No. 06 Civ. 7784 (GEL), 2008 WL 904728, at *8 n.8 (S.D.N.Y. Apr. 3, 2008) (finding that the representations made in an SEC filing were not hearsay and were admissible under Rule 801(d)(2)).

- The Debtor's organizational structure, including org chart appearing as Exhibit A to Examiner's Report. *See* Report at Ex. A. The Debtor generated this org chart,

---

[15] In any event, any statements by Debtor's counsel offered for their truth would be non-hearsay admission by an agent of a party opponent via counsel under Rule 801(d)(2).

[16] In any event, the Debtor's tax returns are non-hearsay admissions of a party opponent under Rule 801(d)(2), and the Debtor's admission that returns were not filed for several years is likewise admissible non-hearsay.

which was attached to the Loan Agreement between Benefit Street and the Debtor. Moreover, Ms. Moskovits, as a Rule 30(b)(6) representative witness for the Debtor, adopted this same chart as a true and correct representation of the Debtor's org chart. Moskovits Tr. 32:20-33:16; Moskovits Ex. 2; *see* Fed. R. Evid. 801(d)(2)(B) (out-of-court statement is not hearsay if it "is one the party manifested that it adopted or believed to be true").

Third, the Loan Agreement between Benefit Street and the Debtor, as well as other associated agreements, have independent legal significance. The Examiner's description of their terms therefore does not involve hearsay. *See Crawford v. Franklin Credit Mgmt. Corp.*, No. 08-CV-6293 (KMW), 2015 WL 1378882, at *3-4 (S.D.N.Y. Mar. 26, 2015) (finding that loan documents were not hearsay where the documents were offered "not for the truth of the terms contained within the documents, but to establish that [Plaintiff] had entered into a contract with Defendants.").

Fourth, the Examiner's testimony concerning the existence of other bankruptcies by affiliates of the Insiders does not rely on inadmissible hearsay. *See* Report at 1-2, 29. On the contrary, the Court can take judicial notice of the fact of these other proceedings. *In re 232 Seigel Acquisition LLC*, Case No. 7:20-bk-22845 (S.D.N.Y.); *In re 232 Seigel Development LLC*, Case No. 7:20-bk-22844 (S.D.N.Y.); *In re MY2011 Grand LLC*, Case No. 7:19-bk-23957 (S.D.N.Y.); *In re 286 Rider Ave Acquisition LLC*, Case No. 1:21-bk-11298 (S.D.N.Y.). *See Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint in another action; "Pursuant to Fed. R. Evid. 201(b), we take judicial notice of the Midway complaint as a public record"); *Liberty Mut. Ins. Co. v. Rotches Pork Packers*, 969 F.2d 1384, 1388 (2d Cir. 1992) ("a court may take judicial notice of a document filed in another court, not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

## CONCLUSION

For all of the foregoing reasons, the Court should grant Lender's motion *in limine*

and hold that the Examiner's Testimony is admissible.

Dated: May 14, 2022
        New York, New York

**KRAMER LEVIN NAFTALIS &FRANKEL LLP**

/s/  P. Bradley O'Neill
Adam C. Rogoff
P. Bradley O'Neill
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile:  (212) 715-8000
Email: arogoff@kramerlevin.com
        boneill@kramerlevin.com

*Co-Counsel for Benefit Street Partners Realty Operating
Partnership, L.P.*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443

*Co-Counsel for Benefit Street Partners
Realty Operating Partnership, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 14, 2022, I caused a true and correct copy of the foregoing document to be served by the Bankruptcy Court's ECF system and by e-mail to all parties that have filed a notice of appearance in this case.

<u>/s/ P. Bradley O'Neill</u>
P. Bradley O'Neill