**MAYER BROWN LLP**
Douglas Spelfogel
Gina M. Parlovecchio
Charles S. Kelley (*pro hac vice*)
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*-and-*

**BACKENROTH FRANKEL & KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544

*Co-Counsel to the Debtor
and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>                    Debtor. | Chapter 11<br><br>Case No.: 21-22108 (RDD) |

**DEBTOR'S OBJECTION TO LENDER'S MOTION IN LIMINE TO EXCLUDE
DEBTOR'S EVIDENCE RELATING TO ITS (I) PLAN OF REORGANIZATION
AND (II) OPERATING RESULTS IN CONNECTION WITH
<u>MOTIONS TO APPOINT A CHAPTER 11 TRUSTEE</u>**

96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession (the "<u>Debtor</u>"), by and through its undersigned counsel, hereby files this opposition (this "<u>Objection</u>") to the *Lenders' Motion In Limine to Exclude the Debtor's Evidence Relating to Its (i) Plan of Reorganization and (ii) Operating Results in Connection with Motions to Appoint to*

*Appoint a Chapter 11 Trustee* [ECF No. 564] (the "Motion In Limine") filed by lender Benefit Street Partners Realty Operating Partnership LP ("BSP") and, in support of this Objection, states as follows:

**PRELIMINARY STATEMENT**

1. BSP's Motion In Limine has nothing to do with the admission or exclusion of evidence. It is instead a transparent attempt to poison the well in advance of the upcoming hearing on the Trustee Motions (defined below) by misrepresenting the record in front of this Court and in an attempt to paint the Debtor and its principals as bad actors. If BSP can somehow succeed in excluding evidence that it knows undermines its position, all the better for it, but this Court should not reward BSP's gamesmanship.[1] But as discussed herein, the law supports consideration of Debtor's operating performance and Plan in respect of a Motion to Appoint a Trustee under Section 1141(a)(i) of the Bankruptcy Code.

2. In support of its *Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance* [ECF No. 476] (the "BSP Trustee Motion") and the *Memorandum of Law in Support of the United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee* [ECF No. 491] (together with the BSP Trustee Motion, the "Trustee Motions"), BSP filed, among other things, the instant Motion In Limine seeking to preclude the Debtor from introducing evidence on its proposed plan of reorganization (as amended, restated, or modified, the "Plan") and the Debtor's operating results. BSP previews that it intends to "introduce evidence of numerous instances of serious misconduct", which purportedly includes, among other things, misrepresentations, fraud, lies, failures, diversion of funds, and obstruction.

---

[1] Further, the Debtor suspects that the United State Trustee's decision to withdraw its motion to the extent it previously sought relief under section 1104(a)(2) of the Bankruptcy Code was orchestrated by BSP for the very purpose of excluding evidence favorable to the Debtor, however remote a possibility that may be.

2

Mot. In Limine, ¶ 3. Notwithstanding the fact that such allegations are fervently disputed by the Debtor in its omnibus objection to the Trustee Motions, BSP argues, with no legal support (and, in fact, contrary to the statute and case law), that the Debtor's Plan and its operating performance should be excluded as evidence altogether, as the Debtor is "planning to change the subject, presenting evidence concerning the merits of its [Plan] and its alleged success in operating the Hotel."  Mot. In Limine, ¶ 5.

3.  BSP's apparent position in the Motion In Limine offers a stark contrast with the fact that its own Trustee Motion has cited extensively to the Plan as evidence of wrongdoing of "cause" warranting an appointment of a chapter 11 trustee under section 1104(a)(1) of the Bankruptcy Code.  Indeed, issues concerning the appointment of a trustee and the confirmation of the Debtor's Plan are plainly intertwined.  Relatedly, the Motion in Limine also runs contrary to decretal paragraph 16 of the *Scheduling Order on Motions to Appoint a Chapter 11 Trustee* [ECF No. 529] (the "Scheduling Order"), where the Court ordered that the evidence and counterevidence presented in connection with the Trustee Motions shall be deemed as evidence presented in connection with the confirmation of the Debtor's Plan.  Scheduling Order, ¶ 16.

4.  The Motion in Limine does not even bother going through the purported legal basis for excluding evidence of the Debtor's Plan and operations at the upcoming hearing.  For that reason alone, the Motion In Limine should be denied.  Of course, the reason BSP has not provided any such legal basis is because there is none, as set forth in more detail below.

5.  The Motion in Limine—although it does not say as much—appears to sound in Rule 402 of the Federal Rules of Evidence, which provides that relevant evidence is generally admissible and irrelevant evidence is not.  The threshold for admissibility under FRE 402 is a low one.  *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 2017 WL 2602332, at *4 (Bankr. S.D.N.Y. June

3

15, 2017) ("The bar for relevancy . . . is 'very low,' and 'evidence should not be excluded on a motion in limine unless such evidence is clearly inadmissible on all potential grounds.'") (cleaned up).

6. This is especially the case in the context of a bench trial, where motions *in limine* asserting relevancy objections are typically considered to be superfluous and unnecessary. *Id.* ("The usefulness of *in limine* motions is largely negated in bench trials. . . . 'Because the judge rules on this evidentiary motion, in the case of a bench trial, a threshold ruling is generally superfluous. It would be, in effect, "coals to Newcastle," asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence.'") (citations omitted).

7. As discussed below, the evidence the Debtor proposes to present—and BSP seeks to exclude—is highly relevant, not just to the Debtor's defenses to the appointment of a chapter 11 trustee, but to BSP's own bases for claiming that appointment of a trustee is proper. Accordingly, the Motion In Limine should be denied, and the Debtor should be permitted to present all relevant evidence in its own defense.

## ARGUMENT

8. The law of this land (and even the case law cited in the Motion In Limine) demonstrates that this Court has wide discretion to determine whether there is "cause" under section 1104(a)(1) of the Bankruptcy Code. 7 Collier on Bankruptcy, ¶ 1104.02[3][b][iii] (16th ed. 2022); *In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019) (finding that bankruptcy courts have wide discretion in considering the relevant facts under section 1104(a)); *see In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *10 (Bankr. S.D.N.Y. Mar. 31, 2015) ("a court is given wide latitude in determining **whether the challenged conduct rises to the level of 'cause'**"

4

21-22108-rdd    Doc 567    Filed 05/16/22    Entered 05/16/22 16:17:21    Main Document
Pg 5 of 12

under section 1104(a)(1)) (emphasis added); *In re Plaza de Retiro, Inc.*, 417 B.R. 632, 640 (Bankr. D.N.M. 2009) (citing *In re Sundale, Ltd.*, 400 B.R. 890, 901 (Bankr. S.D. Fla. 2009)).

9. Echoing this well-established and widely accepted law, many courts, in exercising their considerable discretion, have gone through an intensive, fact-sensitive determination and found that there is insufficient cause to warrant the appointment of a trustee, even while acknowledging certain shortcomings (even very serious ones) by the respective debtor. To take one example, in *In re Sundale, Ltd.*, the court accepted certain shortcomings of the debtor – such as sloppy accounting, lack of corporate formalities, failure to pay taxes, and flow of money in and out of the debtor – and yet ruled for the debtor, considering "the cumulative or collective impact of the alleged problems or issues" in deciding whether the conduct or failure to act rose to a level sufficient to warrant the appointment of a trustee. *In re Sundale, Ltd.*, 400 B.R. at 901. The inquiry into whether cause exists to appoint a trustee is therefore a holistic one that requires consideration of all relevant factors.

10. Accordingly, BSP's request to preclude the Debtor's Plan and operating performance from evidence should be denied. Contrary to what BSP argues (without legal support), the factors that may be considered by a court in analyzing section 1104(a)(1) include the debtor's proposed plan of reorganization and the debtor's operating performance (which is directly tied to allegations of mismanagement, dishonesty, and/or fraud). For example, in *In re Skytec, Inc.*, the bankruptcy court found that the contents of the debtor's proposed plan of reorganization counteracted against the court's finding of "cause." *In re Skytec, Inc*, 610 B.R. 14, 22-27 (Bankr. D.P.R. 2019) (stating that the debtor's proposal to appoint a third plan administrator as part of the proposed plan of reorganization offsets against showing of "cause" under section 1104(a)(1)). Similarly, bankruptcy courts have considered a plan of reorganization (or the absence thereof) in

the context of section 1104(a)(1) of the Bankruptcy Code. *Matter of PMH Corp.*, 116 B.R. 644, 646-9 (Bankr. N.D. Ind. 1989) (finding that a debtor-in-possession's failure to timely file a plan of reorganization is "cause" warranting appointment of a chapter 11 trustee under section 1104(a)(1)); *cf. In re Thomas*, 596 B.R. 350, 364 (Bankr. W.D. Tenn., 2019).

11. Likewise, BSP's request to strike evidence relating to the Debtor's operating performance from evidence should be denied. To be clear, the Debtor is not seeking to have a mini-plan confirmation hearing or to get ahead of certain issues that may be more appropriately addressed later in the confirmation hearing of this chapter 11 case. That said, BSP cannot, in the BSP Trustee Motion, accuse the Debtor of drafting a plan of reorganization that improperly favors insiders (including plan releases and assumption of the management agreement) and then reproach the Debtor for rebutting BSP's accusations by explaining (in the context of the Plan) that the argument is a red herring. BSP also cannot assert alleged mismanagement and fraud in operating the Hotel, including submitting its own expert reports questioning the management of the Hotel and then, in the Motion In Limine, argue that the Court should disregard the actual operating results submitted by the Debtor as evidence of the Debtor's ability, as well as its good-faith efforts to successfully operate the Hotel and emerge from bankruptcy.

12. If anything, the Debtor must be allowed to present all relevant evidence on the topics raised by the Trustee Motions (as amended) so that the Court may consider all the facts surrounding the hard work of the Debtor—including heavily negotiating with the plan sponsor for more than $11 million of new money, formulating a plan with 100% recovery for creditors, and turning around operations and outperforming its peers by as much as 20% higher occupancy rates, as the number one ranked hotel in Brooklyn, and generating millions of dollars in profits during the second half of 2021, all during a challenging time for the hospitality industry (including the

6

December 2021 – February 2022 resurgence of the Omicron strain of COVID-19) as it continues to struggle with the lingering impact of COVID-19—and its estate to achieve the right result to the company.

13. Moreover, even a cursory glance at the BSP's Trustee Motion demonstrates the relevance of the evidence that BSP seeks to exclude, notwithstanding BSP's efforts in the Motion in Limine to misrepresent the record, mislead the Court, and waste the time and energy of all affected parties.

14. For example, BSP's Trustee Motion discusses the implications of the releases granted under the Plan as grounds for appointment of a trustee. BSP Trustee Mot., ¶ 6. BSP cannot use the Plan as evidence of the Plan's content for the appointment of a trustee while preventing the Debtor from using the content of the Plan to oppose the same. Any use of the Plan and "evidence concerning" the Plan will necessarily include evidence not only of the terms of the Plan itself, but also of the fact that the Plan presents the best possible outcome for creditors, that the alleged claims against the Debtor's insiders purportedly released by the Plan are not actually released (and, in any event, lack merit), that chapter 5 actions against insiders under the Plan which recoveries benefit only insiders, makes no sense, and other aspects of the Debtor's Plan process. These are not just "confirmation issues" but are substantive issues that are closely related to the Trustee Motions—and are even discussed on the face of the Trustee Motions themselves.

15. In connection, BSP's own "evidence" submitted in connection with the BSP Trustee Motion touches upon the exact issues on which the Debtor seeks to present evidence. For example, BSP submits a declaration and report of Gary Isenberg [ECF No. 553] (the "Isenberg Declaration"), the purported goal of which is to render an opinion "on the impact of a change in management of the Williamsburg Hotel[.]" Isenberg Decl. p. 2. Further, in forming that opinion,

7

Mr. Isenberg discusses at length the operational performance of the Debtor, even citing to the monthly operating reports that BSP seeks to exclude from evidence. BSP cannot seriously believe that there is any legal basis to use evidence as the foundation for such an expert report in their case-in-chief while excluding the underlying evidence or evidence that otherwise contests the "expert's" conclusions.

16. Mr. Isenberg also opines as to the role of existing management in the Williamsburg Hotel, falsely claiming, among other things, that it is misconceived that the "DNA for the Williamsburg is in the walls, floors, ceilings, rooms, décor, employees, amenities, products, services, programing, neighborhood, and the guests themselves" and that the involvement of existing management is apparently irrelevant now that the Hotel "has a life of its own." Isenberg Decl. pp. 13-20. The Debtor is surely entitled to present counterevidence as to the unique role that the Debtor's existing management plays in ensuring its success, including how that success has been borne out in the Debtor's strong operational performance. Likewise, the ability of the Debtor's insiders to secure third-party material funding from Lockwood—an implicit endorsement of the existing management of the Debtor and their ability to perform for the benefit of creditors and other interested parties—is relevant to the issues presented in the Isenberg Declaration, as well as in the Trustee Motions.

17. BSP similarly makes a lot of noise about issues surrounding EIDL and PPP Loans incurred by the hotel manager (which were, in any event, above board and, with respect to the PPP Loans, have also been settled).[2] Part and parcel of rebutting BSP's false claims is demonstrating how, irrespective of the lack of harm to the Debtor from the use of such loans, the Debtor's

---

[2] The Motion in Limine argues that the PPP Loan defrauded Live Oak Bank and violated the CARES Act. These claims are both false but, in any case, are irrelevant to the admissibility of operational and Plan-related evidence.

8

principals, through the Plan, are nonetheless making the Debtor more than whole with respect to any such loan proceeds that it conceivably could have been entitled to.

18. Along similar lines, BSP submits a declaration and report of Luis O. Rivera [ECF No. 554] (the "Rivera Declaration") purporting to render an opinion focusing on the "payment, or avoidance, of taxes." Rivera Decl. ¶ 2. The Rivera Declaration presents a new (and egregiously false) claim not previously brought out in BSP's filings—that the Debtor, hotel manager, and their principals have purportedly been, amongst other things, running a Ponzi scheme, without a scintilla of evidence to support such absurd claim. The Rivera Declaration is suspect for many reasons, including that Mr. Rivera's methodology was so unsound that his conclusions had to be substantially revised just two days after initially reporting them to BSP (but before his declaration was filed). This suggests that the Rivera Declaration, like the Motion In Limine, is another effort to poison the well by making numerous salacious allegations against the Debtor's principals, only to furtively recant many of those allegations later.

19. In any event, if BSP is going to accuse the Debtor's principals, in public court filings and an open court hearing, of a years-long tax fraud scheme facilitated by the Debtor and hotel manager and other operational misdeeds, the Debtor is entitled to present evidence refuting that claim. Other than the real estate taxes, which are not at issue in the Rivera Declaration, the Debtor's (and hotel manager's) tax obligations are directly tied to its operations.

20. As has been discussed at length in the context of local taxes and contrary to the City of New York's initial claims, the Debtor previously did not pay income taxes because no amounts were owed due to the Hotel's nascent operations.[3] The same reasoning

---

[3] Similarly, disregarding for the moment the fact that the hotel occupancy taxes are a hotel manager obligation and not a Debtor obligation, the City of New York's initial claimed prepetition occupancy tax balance is severely inflated for the variety of reasons discussed in the Debtor's other filings, and all postpetition amounts have been paid.

9

applies to federal income taxes, although in a different manner; regardless of whether the Hotel's revenues are attributed to the Hotel manager or the Debtor, both pass-through entities, if the hotel generated no net income during periods that it could pass through to its ownership, then the entities' common owners could not possibly have evaded taxes on account of such income. Again, the Debtor's operational performance is central to this issue, and, accordingly, such evidence is plainly admissible.[4]

21. BSP is also wrong on its own terms, even if all of the foregoing were disregarded. BSP takes the position that the mismanagement of the Debtor is grounds for appointment of a trustee. But management of the Debtor is not merely a question of looking at one data point or another. Instead, the Court can and should consider all aspects of the Debtor's management—including the Debtor's going-forward plans for the hotel as embodied in the Plan, its strong and improving operational performance, and the overall popularity of the Hotel as one of the top hotels in New York City, and its high occupancy rate—to determine whether it believes the Debtor was, in fact, "mismanaged" as BSP alleges.

22. More broadly, and contrary to its misleading comments in its Motion in Limine, BSP, too, has taken the position that the interests of creditors and the estate should be considered and support the appointment of a chapter 11 trustee. BSP Trustee Mot., ¶ 5 ("A Chapter 11 trustee should be appointed for the benefit of the Debtor's estate and creditors."). The Debtor submits that BSP's position in its Trustee Motion fails to take into account the significant delay and devastating impediment a trustee appointment would have on confirming a plan of reorganization in the instant chapter 11 case, including, among other things, whether the infusion of third party

---

[4] Among its many issues, the Rivera Declaration also makes a variety of improper legal conclusions, misinterprets the references to "hotel fees" in the filed tax returns, and is simply wrong that the IRS could not have contacted the Debtor's accountant, Daniel Norensberg, but those issues can be properly addressed at the forthcoming hearing.

capital will go away.. *See* 7 Collier on Bankruptcy. ¶ 1104.02[3][a]("court considering a motion to appoint a trustee should generally balance the benefit to be gained from such an appointment against the detriment to the reorganization effort and the rights of the debtor that may result from such an appointment"); *cf. In re Skytec, Inc.*, 610 B.R. at 27.

23.     BSP's transparent efforts to block introduction of evidence favorable to the Debtor and its actual performance and operations post-petition, including a well-formulated Plan, when Confirmation is mere weeks away, should be rejected, and the Debtor therefore should not be precluded from presenting evidence of its strong operational performance and its Plan to emerge from bankruptcy in the near future, which likely provides the best possible outcome for all creditors and other interested parties and preserves jobs, vendor relationships, and the going concern value of the Hotel.

## CONCLUSION

The Debtor submits that BSP has failed provide any legal support as to why the Court's hand should be tied in considering the Trustee Motions under section 1104(a)(1), let alone specifically why Debtor's (i) Plan or (ii) the operating results should be excluded. For this reason, as set out in this Objection, Debtor respectfully opposes the Motion In Limine and asks that the Court deny it and admit as evidence materials relating to the Debtor's (i) Plan of Reorganization and (ii) operating results.

## RESERVATION OF RIGHTS

Debtor expressly reserves all rights to amend, modify, or withdraw this request in writing or during the hearing to consider this Objection.

11

| | |
|---|---|
| Dated: May 16, 2022<br>New York, New York | Respectfully submitted,<br><br>*/s/ Douglas E. Spelfogel*<br>Douglas Spelfogel<br>Gina M. Parlovecchio<br>Charles S. Kelley (*pro hac vice*)<br>Leah Eisenberg<br>Dabin Chung<br>**MAYER BROWN LLP**<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 506-2500<br>Facsimile: (212) 262-1910<br><br>Mark Frankel<br>**BACKENROTH FRANKEL<br>& KRINSKY, LLP**<br>800 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 593-1100<br>Facsimile: (212) 644-0544<br>Email: mfrankel@bfklaw.com<br><br>*Co-Counsel to the Debtor<br>and Debtor in Possession* |