**Hearing Date: August 2, 2022, at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: July 29, 2022, at 4:00 p.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| 96 Wythe Acquisition, LLC, | : | Case No. 21-22108 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |

-------------------------------------------------------------x

### NOTICE OF ZOOM HEARING ON
### TRUSTEE'S APPLICATION FOR ENTRY OF AN ORDER
### AUTHORIZING IMPLEMENTATION OF A
### NON-INSIDER EMPLOYEE INCENTIVE PLAN

**PLEASE TAKE NOTICE** that a hearing will be held on **August 2, 2022, at 10:00 a.m. (ET)** (the "Hearing Date"), before the Honorable Sean H. Lane, United States Bankruptcy Judge, to consider the annexed Motion[1] of Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the "Debtor"), for entry of an order (the "Order"), a true and complete copy of which is annexed to the Motion as Exhibit A, authorizing the Trustee to implement a non-insider employee incentive plan.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE THAT** in light of the COVID-19 pandemic, the Hearing will take place via Zoom for Government.  Those wishing to appear before the Court at the Hearing, must register their appearance utilizing the Electronic Appearance portal located on the Court's website: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Appearances must be entered no later than <u>4:00 p.m. (Prevailing Eastern Time) one business day before the hearing.</u>

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Order must be made in writing and conform with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and be filed with the Clerk of the Bankruptcy Court at the address set forth above, with a copy delivered directly to Bankruptcy Judge Lane's Chambers, and served upon the undersigned proposed attorneys for the Trustee, so as to be filed and actually received by all of them not later than July 29, 2022 at 4:00 p.m. (the "<u>Objection Deadline</u>").

**PLEASE TAKE FURTHER NOTICE THAT** if no objections to the entry of the Proposed Order are timely filed and served on or before the Objection Deadline, the Proposed Order may be entered by the Court.

*[remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that, you may also obtain copies of any

pleadings by visiting the Court's website at https://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

DATED:   July 19, 2022
          New York, New York

                     STEPHEN S. GRAY
                     Not Individually But Solely in His
                     Capacity as Chapter 11 Trustee
                     By His Attorneys,
                     TOGUT, SEGAL & SEGAL LLP
                     By:

                     */s/ Frank A. Oswald*
                     ALBERT TOGUT
                     FRANK A. OSWALD
                     NEIL BERGER
                     One Penn Plaza, Suite 3335
                     New York, New York 10119
                     (212) 594-5000

**Hearing Date:  August 2, 2022 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline:  July 29, 2022 at 4:00 p.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                          :
In re:                                                    :        Chapter 11
                                                          :
96 WYTHE ACQUISITION LLC,                                 :        Case No. 21-22108 (SHL)
                                                          :
                        Debtor.                           :
                                                          :
-------------------------------------------------------------x

### CHAPTER 11 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING THE IMPLEMENTATION OF A NON-INSIDER EMPLOYEE INCENTIVE PLAN

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Stephen S. Gray, not individually but solely in his capacity as the

Chapter 11 trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the

"Debtor"), by his attorneys, Togut, Segal & Segal LLP, hereby submits this application

(the "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 363(b), and 503(c)(3) of

title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the

implementation of a non-insider employee incentive plan (the "Incentive Plan").  In

support of this Motion, the Trustee submits his declaration, a copy of which is attached

hereto as **Exhibit B** (the "Declaration"), which is incorporated herein by reference.  In

further support of this Motion, the Trustee, by and through his counsel, respectfully represents:

## JURISDICTION AND VENUE

1.      This United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.) (the "Amended Standing Order").  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Trustee confirms his consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The predicates for the relief requested herein are sections 105(a), 363(b), and 503(c)(3) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

## BACKGROUND

4.      On February 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

5.      No official committee of unsecured creditors has been appointed in this Chapter 11 case (the "Chapter 11 Case").

6.      On October 15, 2021, Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street" or "Secured Lender") filed its *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 147], which was granted by the

2

Court on November 8, 2021 by entry of the *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 178], which order was subsequently amended on November 23, 2021 by entry of the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 193] and on December 14, 2021 by entry of the *Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 224].

7.      On November 16, 2021, the Court entered the *Order Approving Appointment of Examiner* [Dkt. No. 186], and Eric M. Huebscher was appointed as the examiner (the "Examiner") in this Chapter 11 Case.

8.      On February 28, 2022, the Examiner issued his report (the "Examiner Report") [Dkt. No. 418] wherein the Examiner found that there were sufficient grounds to appoint a trustee.  On March 21, 2022, the Examiner issued a supplemental report [Dkt. No. 465].

9.      On March 28, 2022, Benefit Street filed its *Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance* [Dkt. No. 476] and on March 31, 2022, the United States Trustee filed its *Motion for an Order Directing the Appointment of a Chapter 11 Trustee* [Dkt. No. 491], raising concerns of potential impropriety on behalf of the Debtor's management and requesting the appointment of a Chapter 11 trustee.

10.      Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, 2022 [Dkt. No. 598], on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Dkt. No. 591].

11.      On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Dkt. No. 592] and filed an application for the appointment of a Chapter 11 trustee [Dkt. No. 593], subject to Court approval.

3

12.     The Court entered its *Order Granting the Application for Appointment of Chapter 11 Trustee* [Dkt. No. 594] approving the appointment of the Trustee on May 31, 2022.

## THE INCENTIVE PLAN

13.     Since his appointment, the Trustee has been focused on smoothly transitioning the management of the Debtor's operations and affairs away from its existing owners and prior managers and in a manner that maximizes the value of the Debtor's sole operating asset, the Williamsburg Hotel (the "Hotel").

14.     The Debtor operates in a highly competitive industry, and New York City has no shortage of hotels.  In order for the Debtor to remain successful, the Debtor must maintain its goodwill. Imperative to success in the hotel and hospitality industry is service that consistently exceeds expectations.

15.     Employees are the lifeblood of the Debtor's operations.  The Debtor has approximately 219 employees, consisting of approximately 176 hourly employees who perform tasks related to the Hotel's restaurant and lodging operations (like receptionists, cooks, bartenders, waitstaff, and cleaning services) and approximately 43 salaried employees who perform tasks related to the Hotel's management, sales and marketing efforts, operations and accounting, and other similar tasks.  Employees at varying levels serve as guest touchpoints and are therefore inextricably bound to the success of the Debtor, and ultimately this Chapter 11 Case. Thus, continually motivating the Debtor's employees is critical to maximizing the value of the estate and the Hotel.[1]

---

[1] Since the Trustee's appointment, all of the employees are employed by and paid by the Debtor.

4

16.     While the Debtor's operations have generally been profitable and improving since the appointment of the Trustee, the Debtor and its employees face several challenges.  Among other things, the Debtor has been in bankruptcy for almost 18 months (and may be in bankruptcy almost two years (or more) by the time this case concludes), the state of recovery from the COVID-19 pandemic and the very competitive labor market, particularly for management personnel in the hospitality sector, continue to create challenges for the Debtor such as staff shortages.  Employee satisfaction and retention has fallen as this Chapter 11 Case continues, and the Trustee believes that it is important to provide appropriate incentives for the Employees as described in greater detail below.

17.     The Trustee and his team have been working extensively to improve employee moral while, at the same time, imposing additional responsibilities on management and staff to resolve a number of pending operational issues. Additional responsibilities imposed include, but are not limited to, addressing the backlog of bookkeeping and financial reporting, building deferred maintenance and compliance, upholding management structure and accountability, developing new marketing programs, and enforcing basic job performance standards. The Trustee has also empowered management with the responsibility and authority to meet the Debtor's 2022 business plan, neither of which it had under the Debtor's prior management. Trustee has done all of this and more while contending with the staffing difficulties described above.

18.     In addition, the Trustee is working towards a value-maximizing resolution of this Chapter 11 Case, either pursuant to a sale and/or chapter 11 plan. In either scenario, maintaining and maximizing the Debtor's operations and revenues

and presenting the best possible Hotel to third parties will be key to maximizing creditors' recoveries.

19.    To that end, the Trustee, with the assistance of his advisors and the support of Benefit Street, has developed the Incentive Plan for the 43 salaried employees who remain employed by the Debtor (the "Eligible Employees") through the earlier of the closing of the Debtor's books for the year 2022 (expected around February 2023) or the closing of a sale of the Debtor's assets or the consummation of a plan of reorganization (the "Distribution Date").[2]

20.    The Incentive Plan provides for the distribution of $500,000 (subject to adjustment as provided for below, the "Distribution Amount") based on the achievement of the EBITDA projected in the Debtor's 2022 business plan, as amended by the Trustee (the "Plan") as follows (the "Compensation Structure"):

- 50% of the Distribution Amount upon the achievement of 80% of the Plan;

- 75% of the Distribution Amount upon the achievement of 90% of the Plan;

- 100% of the Distribution Amount upon the achievement of 100% of the Plan;

- 125% of the Distribution Amount upon the achievement of 110% of the Plan; and

- 150% of the Distribution Amount upon the achievement of 120% or more of the Plan.

---

[2] The Trustee reserves the right to modify the Incentive Plan, including to add or remove Eligible Employees. Nothing in this Motion should be construed as a waiver of the right to initiate additional employee plans or to designate other employees as Eligible Employees. The selection of who participates and remains eligible under the Incentive Plan shall be in the sole discretion of the Trustee (in consultation with Benefit Street), and no employees shall have an entitlement to any payment under the Incentive Plan. All Eligible Employees must be employed in good standing as determined by the Trustee on the Distribution Date.

Thus, depending on the level of EBITDA achieved, the Distribution Amount will vary from between $250,000 to $750,000.

21.    The Distribution Amount will be distributed pro rata to Eligible Employees based on the employees' annual salary as a percentage of the total salary pool for Eligible Employees on the Distribution Date.

22.    The Incentive Plan is designed to enhance the Debtor's value for the benefit of the Debtor's creditors and estate, complies with the Bankruptcy Code, and is reasonable under the circumstances.  As a practical matter, the payments under the Compensation Structure will be paid using Benefit Street's cash collateral as part of an amended cash collateral budget and order being negotiated with Benefit Street. Benefit Street is supportive of the Incentive Plan and this Motion and of ensuring that the Eligible Employees are properly incentivized to maximize the value of the Hotel. In addition, the Trustee discussed this Motion with the U.S. Trustee, which indicated that he has no objection to the relief requested herein.

## RELIEF REQUESTED

23.    The Trustee seeks entry of the Proposed Order authorizing the implementation of the Incentive Plan.

## BASIS FOR RELIEF

**A.    Implementing the Incentive Plan is a
         Sound Exercise of the Debtor's Business Judgment**

24.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). The decision to use assets outside the ordinary course of business is entrusted to the sound business judgment of the debtor. *See, e.g., In re Dana Corp.* ("*Dana II*"), 358 B.R. 567, 581

n.20 (Bankr. S.D.N.Y. 2006) ("Under applicable case law, in this and other circuits, courts should authorize business transactions outside the ordinary course of business if the Debtors have exercised sound business judgment.") (citing *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983)). Indeed, the business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Sub. Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotation marks omitted). "Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." *Id.* (citations omitted). Therefore, courts "uphold [a debtor's] decision as long as they are attributable to any rational business purpose." *Id.* (citation omitted). "Parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." *Id.* (citation omitted); see also *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

25.    This Court has recognized that implementation of an incentive plan can be an appropriate and valid business decision. *In re Residential Capital, LLC*, 491 B.R. 73, 85–86 (Bankr. S.D.N.Y. 2013) (approving the plan as an exercise of sound business judgment); *In re Borders Grp., Inc.*, 453 B.R. 459, 473-74 (Bankr. S.D.N.Y. 2011) (MG) (same); *In re Mesa Air Grp., Inc.*, Case No. 10-10018 (MG), 2010 WL 3810899, at *3-*4 (Bankr. S.D.N.Y. Sept. 24, 2010) (same); *Dana II*, 358 B.R. at 584 (same). Other courts are in accord. See *In re Global Home Prods., LLC.*, 369 B.R. 778, 784 (Bankr. D.

Del. 2007) ("The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment.") (citation omitted); *In re Am. West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) ("It is a proper use of a Debtor's business judgment to propose bonuses for employees who helped propel the Debtor successfully through the confirmation process.") (citation omitted); *In re Interco Inc.*, 128 B.R. 229, 232-34 (Bankr. E. D. Mo. 1991) (debtor's business judgment review governed incentive plan that included "confirmation awards" that were reduced each month the debtors failed to emerge from chapter 11 after a certain date). Significantly, courts have acknowledged that they "must exercise great deference in reviewing a corporation's decision to pay its employees." *See In re Crystal Apparel*, 207 B.R. 406, 410 (S.D.N.Y. 1997).

26.     Given the importance of the Eligible Employees to this Chapter 11 Case, the implementation of the Incentive Plan is a sound exercise of the Debtor's reasonable business judgment.  The Trustee believes that the Incentive Plan will appropriately incentivize the Eligible Employees for the benefit of the Debtor's continued operations under the management of the Trustee and through the conclusion of this Chapter 11 Case, particularly under a chapter 11 plan and/or sale.  The Eligible Employees have experienced increased workloads as a result of the Debtor's ordinary course operations because of the challenges presented by this case and the recovery from the COVID-19 pandemic.  The circumstances leading to the appointment of the Chapter 11 Trustee for cause further warrants stabilizing the workplace environment for the Eligible Employees, many of whom work directly with Hotel guests or otherwise directly support the Trustee and his professionals.  The Trustee believes that the Incentive Plan will continue to retain and motivate the Eligible Employees and maintain morale by providing sufficient incentives for them to continue to provide top-notch

9

customer service in the highly competitive hospitality sector in which the debtor operates.

27.     Thus, the Trustee respectfully submits that approval of the Incentive Plan is in the best interest of the Debtor, its estate, and its stakeholders, and constitutes a sound exercise of the Debtor's business judgment and should be approved.

**B.     Section 503(c) Does Not Prohibit the Debtor
        From Implementing the Incentive Plan**

28.     Section 503(c) of the Bankruptcy Code restricts a debtor's ability to make payments to insiders for retention or severance, or payments that are outside of the ordinary course and not justified by the facts and circumstances of the debtor's case. *See* 11 U.S.C. § 503(c).  As explained in greater detail below, sections 503(c)(1), 503(c)(2), and 503(c)(3) do not preclude the Debtor from making any payments under the Incentive Plan.

i.     The Incentive Plan is Not Subject to Section 503(c)(1) or Section 503(c)(2) of the Bankruptcy Code

29.     Sections 503(c)(1) and 503(c)(2) of the Bankruptcy Code, which prohibit certain retention and severance payments to insiders, are not applicable to the Incentive Plan because (a) the Incentive Plan does not provide for any retention or severance payments, and (b) none of the Eligible Employees are "insiders" of the Debtor within the meaning of section 101(31) of the Bankruptcy Code or relevant case law.

30.     The term "insider" is specifically defined by section 101(31)(B) of the Bankruptcy Code in the context of a corporation as a:  (a) director of the debtor; (b) officer of the debtor;  (c) person in control of the debtor;  (d) partnership in which the debtor is a general partner; (e) general partner of the debtor; or  (f) relative of a

general partner, director, officer, or person in control of the debtor. *See* 11 U.S.C.

§ 101(31)(B). None of the Eligible Employees satisfy any the statutorily defined

categories of insiders.

31.    Courts have also found that insider status can be determined based

on a totality of the circumstances, including the degree of an individual's involvement

in a debtor's affairs. *See In re Velo Holdings*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012)

(citing *CPY Company v. Ameriscribe Corp. (In re Chas. P. Young Company)*, 145 B.R. 131,

136 (Bankr. S.D.N.Y. 1992)); *see also In re Global Aviation Holdings Inc.*, 478 B.R. 142, 148

(Bankr. E.D.N.Y. 2021) (citations omitted). Significantly, under the totality of the

circumstance analysis, insiders must have "'at least a controlling interest in the debtor

or . . . exercise sufficient authority over the debtor so as to unqualifiably dictate

corporate policy and the disposition of corporate assets.'" *In re Velo Holdings*, 472 B.R.

at 208 (citations omitted); *In re Borders Grp., Inc.*, 453 B.R. at 460 (citations omitted,

applying same test); *In re Global Aviation Holdings Inc.*, 478 B.R. at 148 (citations

omitted, applying same test).

32.    It is beyond dispute that the Eligible Employees did not and

currently do not dictate corporate policy or the disposition of the Debtor's assets.

Indeed, the Eligible Employees had and currently have no meaningful decision-

making authority with respect to the Debtor's overall strategy, which is determined

by the Trustee. None of the Eligible Employees are an officer of the Debtor nor any of

the Debtor's managing members. The Eligible Employees have no influence over

corporate policy, nor do they have any authority regarding disposition of the Debtor's

assets. Any substantive decisions that they make on behalf of the estate, to the extent

applicable, must ultimately be approved by the Trustee.

ii.    The Incentive Plan is Justified by the Facts and Circumstances

33.    The Trustee submits that the Incentive Plan is not prohibited by section 503(c)(3) of the Bankruptcy Code, which restricts certain payments made outside the ordinary course of business if such payments are not justified by "the facts and circumstances of the case."  11 U.S.C. § 503(c)(3).

34.    In this and other districts, courts have concluded that whether payments to employees are justified by the "facts and circumstances" of a case is to be determined by application of the business judgment rule.  *See In re Velo Holdings, Inc.*, 472 B.R. at 209 ("[The] facts and circumstances language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *see also In re Borders Grp., Inc.*, 453 B.R. at 473–74 (evaluating the debtors' KERP under the business judgment rule under both section 363(b) and section 503(c)(3) of the Bankruptcy Code); *Dana II*, 358 B.R. at 576–77 (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code); *In re Global Home Prods.*, 369 B.R. at 783 (holding that the "more liberal business judgment standard review [of] § 363" applies to "plans intended to incentivize management").  Accordingly, the determination of whether an incentive or retention payment, or other transfer made, or obligation incurred outside of the ordinary course is justified by the facts and circumstances of the case and the analysis of whether the approval of such plan is a sound exercise of the debtor's business judgment are the same.

35.    Courts in this jurisdiction look to a number of factors in determining whether compensation plan meets the business judgment standard in satisfaction of section 503(c)(3) of the Bankruptcy Code, namely:

- whether there is a reasonable relationship between the plan proposed and the results to be obtained, *i.e.*, whether the key employee will stay for as long as it takes for the debtor to reorganize or market its assets, or whether the plan is calculated to achieve the desired performance;

- whether the cost of the plan is reasonable within the context of the debtor's assets, liabilities, and earning potential;

- whether the scope of the plan is fair and reasonable, *i.e.*, whether it applies to all employees or discriminates unfairly;

- whether the plan is consistent with industry standards;

- whether the debtor engaged in due diligence related to the need for the plan, the employees that needed to be incentivized, and what types of plans are generally applicable in a particular industry; and

- whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

*See Dana II*, 358 B.R. at 576-77 (collected citations omitted); *see also In re Residential Capital, LLC*, 491 B.R. 73, 85–86 (Bankr. S.D.N.Y. 2013) (applying the *Dana II* factors to the debtors' retention plan for non-insiders and approving the plan as an exercise of sound business judgment); *In re Borders Grp., Inc.*, 453 B.R. at 473–77 (same). No single factor is dispositive, and the Court has discretion to weigh each of these factors based on the specific facts and circumstances before it. *See, e.g., In re AMR Corp.*, 490 B.R. 158, 166 (Bankr. S.D.N.Y. 2013) ("Section 503(c)(3) gives the court discretion as to bonus and incentive plans, which are not primarily motivated by retention of or in the nature of severance.") (quoting *Dana II*, 358 B.R. at 576). Even the total absence of a factor may be permissible, so long as the interests of the Debtor are sufficiently protected. *See In re Borders Grp., Inc.*, 453 B.R. at 477 (finding that the lack of independent counsel was "not fatal" where the presence of other factors ensured "that [the] [d]ebtors' interests were sufficiently protected"); *In re Global Aviation Holdings Inc.*, 478 B.R. at 154 (noting that

13

"the relatively modest size of the proposed bonus payouts made the retention of independent legal counsel economically inefficient").

36.     For the reasons set forth above in paragraphs 25-26, the Trustee respectfully submits that implementation of the Incentive Plan is an exercise of its sound business judgment, justified by the facts and circumstances of this Chapter 11 Case, and is in the best interests of the Debtor, its estate, and its creditors.

## NOTICE

37.     Notice of this Motion and its exhibits have been given to (the "Notice Parties"):  (i) the United States Trustee for the Southern District of New York; (ii) counsel for the Debtor;  (iii) counsel for the Examiner;  (iv) Benefit Street Partners Realty Operating Partnership, L.P.;  (v) Williamsburg Hotel BK LLC;  and (vi) all parties who have filed a Notice of Appearance in this Chapter 11 Case.  The Trustee respectfully submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

38.     No previous request for the relief sought herein has been made to this Court or any other court.

*[Remainder of page left blank intentionally]*

14

## CONCLUSION

**WHEREFORE,** the Trustee respectfully requests that the Court enter the

Proposed Order granting the relief requested in this Motion and such other and further

relief as may be just and proper.

DATED:  July 19, 2022
   New York, New York

        STEPHEN S. GRAY
        Not Individually But Solely in His
        Capacity as Chapter 11 Trustee
        By His Attorneys,
        TOGUT, SEGAL & SEGAL LLP
        By:

        */s/ Frank A. Oswald*
        ALBERT TOGUT
        FRANK A. OSWALD
        NEIL BERGER
        One Penn Plaza, Suite 3335
        New York, New York 10119
        (212) 594-5000

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                              :
In re:                                        :        Chapter 11
                                              :
96 WYTHE ACQUISITION LLC,                     :        Case No. 21-22108 (SHL)
                                              :
                              Debtor.         :
                                              :
-----------------------------------------------------------------x

## ORDER AUTHORIZING THE IMPLEMENTATION
## OF A NON-INSIDER EMPLOYEE INCENTIVE PLAN

Upon the application (the "Motion")[1] of the Trustee, by his attorneys,

Togut, Segal & Segal LLP, for entry of an order (this "Order") pursuant to

sections 105(a), 363(b)(1), and 503(c)(3) of the Bankruptcy Code and Bankruptcy

Rules 2002 and 6004, authorizing, but not directing, the implementation of a non-insider

employee incentive plan (the "Incentive Plan"), all as more fully set forth in the Motion

and the Declaration;  and the Court having jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334 the Amended Standing Order;  and the Court having found

that this is a core proceeding pursuant to 28 U.S. § 157(b)(2) and that the Court may

enter a final order consistent with Article III of the United States Constitution;  and the

Court having reviewed the Motion and the Declaration in support thereof;  and the

Court being satisfied that due and sufficient notice of the Motion has been given under

the particular circumstances;  and it appearing that no other or further notice of the

Motion need be provided;  and it appearing that the relief requested by the Motion is in

the best interests of the Debtor, its estate, its creditors, its stakeholders, and other parties

in interest;  and that the legal and factual bases set forth in the Motion establish just

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion.

cause for the relief granted herein; and the Court having considered the Motion at a

hearing, if any (the "Hearing"); and upon the record of the Hearing, after due

deliberation, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtor is authorized, but not directed, to (a) implement the

Incentive Plan on the terms and conditions described in the Motion, and (b) take all

actions necessary to implement the Incentive Plan, including making any payments that

become due thereunder. Notwithstanding anything to the contrary in the *Tenth Interim*

*Order for Use of Cash Collateral*, entered on March 8, 2022 [Dkt. No. 449] (the "Tenth

Interim Cash Collateral Order"), the Debtor is authorized to use Cash Collateral (as

defined in the Tenth Interim Cash Collateral Order) and/or the proceeds of a sale of the

Hotel to make payments under the Incentive Plan.

3.      The Trustee is authorized to amend the Incentive Plan, including to

add or remove Eligible Employees, without further order of the Court, by providing no

less than five (5) business days' notice of any such changes, and a description thereof, to

the U.S. Trustee and counsel for Benefit Street (which notice may be via e-mail between

the parties); *provided* that if either the U.S. Trustee or counsel for Benefit Street indicate

an objection to any such changes, the Trustee's rights are reserved to amend the

Incentive Plan by seeking a further order of the Court in accordance with the

Bankruptcy Code and the Bankruptcy Rules.

4.      The Trustee shall serve a copy of this Order upon the Notice Parties

by email not later than two (2) business days after the date of entry of this Order.

5.      Notwithstanding the applicability of any Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  New York, New York
        _____, 2022

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                              :
                                                    :
96 Wythe Acquisition, LLC,                          :
                                                    :
                        Debtor.                     :
                                                    :
-------------------------------------------------------------x

Chapter 11

Case No. 21-22108 (SHL)

### DECLARATION OF STEPHEN S. GRAY
### IN SUPPORT OF MOTION FOR AN ORDER AUTHORIZING THE
### IMPLEMENTATION OF A NON-INSIDER EMPLOYEE INCENTIVE PLAN

Stephen S. Gray, pursuant to section 1746 of title 28 of the United States

Code, hereby declares as follows:

1.      I am the chapter 11 trustee (the "Trustee") of the estate of 96 Wythe

Acquisition LLC (the "Debtor") in the above-captioned Chapter 11 case (the "Chapter

11 Case"), and I am duly authorized to make this declaration (the "Declaration").

2.      I have more than forty (40) years of experience in developing and

implementing restructuring and crisis management plans for public and private

companies, creditors, and judicial bodies.  As an officer, restructuring advisor,

fiduciary, and turnaround consultant, I have led the successful operational and/or

financial restructuring of hundreds of companies.  Moreover, I have served in a

fiduciary capacity in the bankruptcy context in hundreds of cases, including as chapter

11 trustee in more than twenty (20) cases.  I am also a fellow in the American College of

Bankruptcy.

       3.     I respectfully submit this Declaration in support of the *Chapter 11 Trustee's Application for an Order Authorizing Implementation of a Non-Insider Employee Incentive Plan* (the "Motion"),[1] filed contemporaneously herewith.

       4.     Unless otherwise stated, all facts set forth in this Declaration are based upon:  (a) my personal knowledge;  (b) my role as Trustee in this Chapter 11 Case since my appointment;  (c) information provided to me by, and discussions with, my professionals.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

       5.     Since my appointment as Trustee, I have been focused on smoothly transitioning the management of the Debtor's operations and affairs away from its existing owners and prior managers and in a manner that maximizes the value of the Debtor's sole operating asset, the Williamsburg Hotel (the "Hotel").

       6.     The Debtor operates in a highly competitive industry, and New York City has no shortage of hotels.  In order for the Debtor to remain successful, the Debtor must maintain its goodwill. Imperative to success in the hotel and hospitality industry is service that consistently exceeds expectations.

       7.     Employees are the lifeblood of the Debtor's operations.  The Debtor has approximately 219 employees, consisting of approximately 176 hourly employees who perform tasks related to the Hotel's restaurant and lodging operations (like receptionists, cooks, bartenders, waitstaff, and cleaning services) and approximately 43 salaried employees who perform tasks related to the Hotel's management, sales and

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2

marketing efforts, operations and accounting, and other similar tasks.  Employees at varying levels serve as guest touchpoints and are therefore inextricably bound to the success of the Debtor, and ultimately this Chapter 11 Case.  Thus, continually motivating the Debtor's employees is critical to maximizing the value of the estate and the Hotel.[2]

8.      While the Debtor's operations have generally been profitable and improving since my appointment as Trustee, the Debtor and its employees face several challenges.  Among other things, the Debtor has been in bankruptcy for almost 18 months (and may be in bankruptcy almost two years (or more) by the time this case concludes), the state of recovery from the COVID-19 pandemic and the very competitive labor market, particularly for management personnel in the hospitality sector, continue to create challenges for the Debtor such as staff shortages.  Employee satisfaction and retention has fallen as this Chapter 11 Case continues, and I believe that it is important to provide appropriate incentives for the Employees as described in greater detail below.

9.      My team and I have been working extensively to improve employee moral while, at the same time, imposing additional responsibilities on management and staff to resolve a number of pending operational issues. Additional responsibilities imposed include, but are not limited to, addressing the backlog of bookkeeping and financial reporting, building deferred maintenance and compliance, upholding management structure and accountability, developing new marketing programs, and enforcing basic job performance standards. I have also empowered management with the responsibility and authority to meet the Debtor's 2022 business

---

[2] Since my appointment, all of the employees are employed by and paid by the Debtor.

3

plan, neither of which it had under the Debtor's prior management. I have done all of this and more while contending with the staffing difficulties described above.

10.    In addition, I am working towards a value-maximizing resolution of this Chapter 11 Case, either pursuant to a sale and/or chapter 11 plan.  In either scenario, maintaining and maximizing the Debtor's operations and revenues and presenting the best possible Hotel to third parties will be key to maximizing creditors' recoveries.

11.    To that end, I, with the assistance of my advisors and the support of Benefit Street, have developed the Incentive Plan for the 43 salaried employees who remain employed by the Debtor (the "Eligible Employees") through the earlier of the closing of the Debtor's books for the year 2022 (expected around February 2023) or the closing of a sale of the Debtor's assets or the consummation of a plan of reorganization (the "Distribution Date").[3]

12.    The Incentive Plan provides for the distribution of $500,000 (subject to adjustment as provided for below, the "Distribution Amount") based on the achievement of the EBITDA projected in the Debtor's 2022 business plan, as amended by the Trustee (the "Plan") as follows (the "Compensation Structure"):

- 50% of the Distribution Amount upon the achievement of 80% of the Plan;

- 75% of the Distribution Amount upon the achievement of 90% of the Plan;

---

[3] The Trustee reserves the right to modify the Incentive Plan, including to add or remove Eligible Employees. Nothing in this Motion should be construed as a waiver of the right to initiate additional employee plans or to designate other employees as Eligible Employees.  The selection of who participates and remains eligible under the Incentive Plan shall be in the sole discretion of the Trustee (in consultation with Benefit Street), and no employee shall have an entitlement to any payment under the Incentive Plan. All Eligible Employees must be employed in good standing as determined by the Trustee on the Distribution Date.

- 100% of the Distribution Amount upon the achievement of 100% of the Plan;

- 125% of the Distribution Amount upon the achievement of 110% of the Plan; and

- 150% of the Distribution Amount upon the achievement of 120% or more of the Plan.

Thus, depending on the level of EBITDA achieved, the Distribution Amount will vary from between $250,000 to $750,000.

13.    The Distribution Amount will be distributed pro rata to Eligible Employees based on the employees' annual salary as a percentage of the total salary pool for Eligible Employees on the Distribution Date.

14.    I believe that the Incentive Plan is designed to enhance the Debtor's value for the benefit of the Debtor's creditors and estate, complies with the Bankruptcy Code, and is reasonable under the circumstances.  As a practical matter, the payments under the Compensation Structure will be paid using Benefit Street's cash collateral as part of an amended cash collateral budget and order being negotiated with Benefit Street.  I understand that Benefit Street is supportive of the Incentive Plan and this Motion and of ensuring that the Eligible Employees are properly incentivized to maximize the value of the Hotel.  In addition, I have discussed this Motion with the U.S. Trustee, which indicated that he has no objection to the relief requested herein.

*                              *                              *

15.    For the reasons described herein and in the Motion, I believe that implementation of the Incentive Plan, on the terms and conditions described in the Motion, is a sound exercise of the Debtor's reasonable business judgment and is in the best interest of the Debtor's estate and its creditors.

5

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

Dated:   New York, New York
         July 19, 2022

                                        /s/ Stephen S. Gray
                                        STEPHEN S. GRAY
                                        Not Individually But Solely in His
                                        Capacity as Chapter 11 Trustee