HEARING DATE: AUGUST 2, 2022
HEARING TIME: 10:00 A.M.

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for The Williamsburg Hotel BK LLC, et al.*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Robert A. Wolf, Esq.
Jill Makower, Esq.
smarkowitz@tarterkrinsky.com
rwolf@tarterkrinsky.com
jmakower@tarterkrinsky.com

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

In re:

96 WYTHE ACQUISITION LLC,

　　　　　　　　　　Debtor.

Chapter 11

Case No. 21-22108 (RDD)

---

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE WILLIAMSBURG
HOTEL BK LLC, TOBY MOSKOVITS AND MICHAEL LICHTENSTEIN TO
CHAPTER 11 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING
<u>REJECTION OF MANAGEMENT AGREEMENTS</u>**

TO:　THE HONORABLE SEAN H. LANE
　　　UNITED STATES BANKRUPTCY JUDGE:

　　　The Williamsburg Hotel BK LLC ("<u>Manager</u>"), its principals Toby Moskovits ("<u>Moskovits</u>") and Michel Lichtenstein ("<u>Lichtenstein</u>" and, together with the Manager and Moskovits, the "<u>Objectors</u>"), by their attorneys, Tarter Krinsky & Drogin LLP, submit this limited objection and reservation of rights in response to the motion (the "<u>Motion</u>") of Chapter 11 trustee Stephen S. Gray (the "<u>Trustee</u>") of the estate of 96 Wythe Acquisition LLC (the "<u>Debtor</u>") to

1

reject the Management Agreements (defined below), *nunc pro tunc* to May 31, 2022, pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6006 of the Federal Rules of Bankruptcy Procedure and Rule 6006-1(a) of the Local Bankruptcy Rules for the Southern District of New York, and respectfully represent:

## PRELIMINARY STATEMENT

1. The Trustee's Motion seeks to reject the following two agreements (together, the "Management Agreements") which are subject to various disputes between the Trustee and the Manager: (i) the *Hotel Management and Services Agreement*, dated November 21, 2017, by and between the Debtor and the Manager (the "November Agreement"),[1] and (ii) the unsigned and undated one page *Hotel Management Agreement* (the "December Agreement")[2] which was annexed as Exhibit A to the document entitled *Assignment Of Hotel Management Agreement And Subordination Of Hotel Management Fees* dated December 13, 2017, executed by the Debtor, as borrower, by Benefit Street Partners Realty Operating Partnership, L.P., as lender, and by the Manager (the "Assignment").

2. The Management Agreements relate to the management of the Williamsburg Hotel (the "Hotel") owned by the Debtor.

3. Although the Trustee has the right to reject the Management Agreements under the deferential business judgment standard, the Trustee's request for *nunc pro tunc* rejection is by no means akin to the fairly common motion for retroactive rejection of a non-residential real property lease where the debtor has vacated the premises.

4. The Debtor has benefitted from the team the Manager put together which includes vendors, business plan, brand equity and the Manager's marketing expertise since the opening of the Hotel in 2016. Through the Manager's efforts, the Hotel is generating significant operating

---

[1] A copy of the November Agreement is annexed hereto as **Exhibit 1**.
[2] A copy of the December Agreement is annexed hereto as **Exhibit 2**.

2

profits and exceeding budgeted revenue projections. Since the Trustee's appointment, he has continued to rely on the Manager's employees, vendors, brand equity and infrastructure which the Manager developed and implemented. Virtually every contract with the Hotel's service providers and vendors were through the Manager. The rejection of the Management Agreements without notice to the numerous counter parties to contracts with the Manager creates uncertainty as to who is responsible for payment and when vendors can expect payment. Since the Trustee's appointment, almost two months ago, the Trustee has continued to utilize the existing infrastructure which the Manager created and implemented. If the Trustee rejects the Management Agreements, all vendor contracts related to the Debtor to which the Manager is a party, need to be terminated by the Manager or re-executed by the Trustee on behalf of the Debtor. This includes software vendors, equipment leases and maintenance contracts, credit card processing etc. In addition, there are Manager bank accounts which need to be shut down which the Manager has not shut down in order to support an orderly transition. In short, through the Objectors' years of hard work, financial commitment and brand creation, the Hotel generates significant net operating income, and the Trustee is taking over the operation of a profitable and valuable hotel.

5. The Objectors dispute the Trustee's right to simultaneously argue the Management Agreements are not valid while maintaining the right to preserve the Assignment.

6. The Objectors do not oppose the Trustee's rejection of the Management Agreements. However, the Trustee has failed to establish any basis for "the extraordinary equitable remedy of retroactive rejection." *In re Romacorp, Inc*., 2006 WL 6544083 at *6 (Bankr. N.D. Tex. 2006).

7. The balance of the equities does not support retroactive rejection, primarily because the estate has continued to benefit from the Management Agreements subsequent to the Trustee's

appointment, to the prejudice of the Objectors. Most notably, (i) all or virtually all of the approximately 200 Hotel workers - - who were employees of the Manager - - were hired by the Trustee and are now on the Debtor's payroll, (ii) the Trustee or Hotel employees working for the Trustee apparently continue contracting with vendors under the name of the Manager and all vendors, and (iii) the Manager and its principals, Moskovits and Lichtenstein (who are also the principals of the Debtor) are unfairly at a risk of various liabilities resulting from Trustee's usage of the Manager's services and employees and from obligations under contracts and leases to which Manager is a party, for goods and services provided to the Debtor.

8. The Objectors have certain rights which need to be protected in any order rejecting the Management Agreements and in any order approving the sale of the Hotel.

A. **The Vendors, Service Providers And Equipment Lessors Should Be Paid By The Estate**

9. The Trustee claims he has no need for the Management Agreements now that he has taken over management of the Debtor's operations and business affairs. See Declaration of Steven S. Gray, ¶8, ¶9 ("Termination of the Management Agreements is consistent with my attempts to preserve the Debtor's assets for the benefit of its estate…"). However, as is customary in the hotel industry, the Hotel was managed by a third-party management company - - here, the Manager - - and Hotel vendors invoiced the Manager, and the Debtor, in turn would transfer funds to the Manager in the ordinary course of business.

10. Subsequent to his appointment, the Trustee, upon information and belief, continued to use the Manager for a period of time. A process needs to be established to assure vendors, equipment lessors and service providers which provided goods and services to the Hotel under contracts to which the Manager is a party which are being used by the Debtor to operate the

Hotel paid in full prior to being terminated. The Manager will need to terminate all existing contracts related to the Hotel or the Trustee must transition the contracts to the Debtor.

**B.  The Trademarks and Trade Names May Not Be Used After Trustee's Rejection Of The Management Agreements**

11.  The Debtor has no ownership or control of any trade names, trademarks, logos, etc. owned, created or licensed by the Manager or any Affiliate thereof.

12.  Moskovits is the registered owner of the trademark "The Williamsburg Hotel" (the "Hotel Trademark"). See **Exhibit 3** hereto. Moskovits is also the registered owner of the trademark "Sleep With A Local" (the "Local Trademark"). See **Exhibit 4** hereto. The Objectors reserve their rights with respect to the Hotel Trademark, the Local Trademark and all other trademarks and trade names they own along with all the logos, marketing and branding collateral created by the Manager in connection with the use of the name "The Williamsburg Hotel".

13.  After Trustee's rejection of the Management Agreements, the Trustee and the Debtor may not use or sell the Hotel Trademark or the Local Trademark or any other trademarks and trade names or the use of the branding collateral owned by any of the Objectors absent their consent. However, the Objectors are amenable to negotiating a short-term licensing agreement to facilitate a smooth transition.

**C.  *Nunc Pro Tunc* Rejection Is Unwarranted**

14.  The Trustee's Proposed Order provides the rejection of the Management Agreements will be effective *nunc pro tunc* to May 31, 2022, the date the United States Trustee appointed the Trustee.

15.  The Trustee has failed to establish his burden of proving entitlement to "the extraordinary equitable remedy of retroactive rejection." *Romacorp.*, 2006 2L 6544088 at *6. *See also Epic Energy Res., Inc. v. Terrace Point P'ship, LLC*, No. 12-CV-01046-RBJ, 2013 WL

5

427060, at *6 (D. Colo. Feb. 4, 2013)(concluding "there is a basis in the facts in this record for the court to have found that the circumstances here were not exceptional" and "the bankruptcy court's exercise of its discretion not to make the date of rejection of the lease retroactive to the petition date was not an abuse of discretion"); *TW, Inc. v. Angelastro* (*In re TW, Inc.*), No. 03–10785 (MFW), Civ. 03–533–SLR, 2004 WL 115521 at * 1–2 (D. Del. Jan. 14, 2004) ("An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only after a balancing of the equities in a particular case. It is the burden of the moving party to show that relief, of this character, is appropriate").

16. As the Trustee appears to concede, only after balancing the equities in a particular case, should the Court approve a retroactive rejection under Bankruptcy Code section 365(a). <u>See</u>, *e.g. In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) ("Moreover, the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)…Thus, only after balancing the equities in a particular case, should the court approve a retroactive rejection of nonresidential lease.")[citation omitted].

17. The balance of the equities does not support *nunc pro tunc* rejection of the Management Agreements. Retroactive rejection of the Management Agreements is not warranted here given the Trustee's apparent usage of the Manager's accounts for several weeks after his appointment and the Trustee's hiring of virtually all of the Manager's employees. In fact, retroactive rejection is wholly inappropriate and prejudicial to the Objectors in view of the fact the there needs to be a transition of all existing contracts from the Manager to the Debtor in connection with the rejection of the Management Agreements. Alternatively, Manager needs the right as part of the rejection to terminate all vendor contracts that have not been re-executed with the Debtor.

18.     Rejection *nunc pro tunc* to May 31, 2022 is also unwarranted because the Trustee waited 45 days to file his Motion. This is an inordinate amount of time.

19.     Based on the Trustee's failure to establish the equities favor retroactive rejection, the Trustee's request for retroactive rejection should be denied. <u>See</u>, <u>e.g</u>. *Chi-Chi's*, 305 B.R. at 399 (denying debtor's request to reject leases as of the petition date where the debtors had not surrendered the premises to the landlords, the premises were subject to subleases/sub-subleases and the tenants remained on the premises, and determining the rejection date should be "the day the Debtors surrendered the premises to the Landlords, and the Landlords were able to enter into agreements with the current tenants."); *Epic Energy Res., Inc.*, 2013 WL 427060, at *6; *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003)(holding, *inter alia*, that retroactive rejection was not warranted as to properties which the debtor continued to occupy and benefit from in the form of collecting rent); *Romacorp, Inc.*, 2006 WL 6544088, at *4-6 (holding that a debtor gave "illusory" notice of its intent to reject that left a landlord to guess as to whether or not rejection had occurred when it failed to remove its personal property from the premises and the landlord was prevented by the automatic stay from removing the property so that it could make use of the property); *TW, Inc.*, 2004 WL 115521 at * 1-2 (refusing to overturn bankruptcy court's decision not to grant retroactive rejection to debtor who, despite having closed a store and given notice of intention to reject lease to landlord, failed to turn over keys to property prepetition, because bankruptcy court's finding that equities did not favor debtor was not clearly erroneous).

20. *Nunc pro tunc* rejection of the Management Agreements is also inappropriate herein in view of the recent United States Supreme Court decision *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696 (2020).

Dated: New York, New York
July 26, 2022

                **TARTER KRINSKY & DROGIN LLP**
                *Attorneys for The Williamsburg Hotel BK LLC, et al.*

By: /s/ Scott S. Markowitz
      Scott S. Markowitz, Esq.
      Robert A. Wolf, Esq.
      Jill Makower, Esq.
      1350 Broadway, 11th Floor
      New York, New York 10018
      Telephone: (212) 216-8000
      smarkowitz@tarterkrinsky.com
      rwolf@tarterkrinsky.com
      jmakower@tarterkrinsky.com