**EXHIBIT 1**

# HOTEL MANAGEMENT AND SERVICES AGREEMENT

between

**96 Wythe Acquisition LLC**
**("Owner")**

and

**The Williamsburg Hotel BK LLC**
**("Manager")**

**November 21, 2017**

This **HOTEL MANAGEMENT AND SERVICES AGREEMENT** is executed as of November 21, 2017 ("Effective Date"), by and between 96 Wythe Acquisition, a New York limited liability company ("Owner"), and The Williamsburg Hotel BK, LLC, a New York limited liability company ("Manager").

## RECITALS:

A.     Owner is the owner of a property located at 96 Wythe Avenue, Brooklyn, New York (the "Property"), and has developed a new building on the Property, including 147 guest rooms, lobby, restaurant, bars, rooftop, and other amenities (the "Hotel");

B.     Manager has overseen design, branding, programming, furnishing, promoting, managing and operating the property during the pre-development and development phase; and

C.     Owner desires to use the Williamsburg Hotel brand and to retain Manager to brand, manage and operate the Hotel in accordance with this Agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants, conditions, agreements and obligations hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which being hereby acknowledged by the parties hereto, Owner and Manager agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01    Definitions. As used herein, the following terms shall have the indicated meanings:

Affiliate means, with respect to any Person, any other Person that directly or indirectly through one or more intermediaries controls or is controlled by or is under common control with such Person. For purposes of this definition, the term "control," when used with respect to any Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Agreement means this Hotel Management Agreement and all amendments, modifications, supplements, consolidations, extensions and revisions to this Hotel Management Agreement from time to time approved in writing by Owner and Manager.

Books and Records means the books and records of account maintained by the Manager necessary to prepare customary accounting records and financial reports in connection with the operation of the Hotel, but expressly excluding any and all sales and marketing files, guest lists and profiles (including Manager Owned Customer Lists), guest histories, detailed employee records and all standard Manager's materials.

Brand Name means The Williamsburg Hotel.

Budget means a proposed budget for the Hotel setting forth all anticipated income and expenditures to be received or incurred for any Fiscal Year and the marketing and operating plan for any Fiscal Year.

Competitor means a Person engaged, directly or indirectly through an Affiliate, in the business of owning, operating, licensing (as licensor), franchising (as franchisor), or managing a hotel brand or lodging system of hotels that is competitive with Manager or its Affiliates.

Emergency Repairs means, without limitation, repairs which, in Manager's good faith reasonable judgment are necessary to prevent (a) imminent personal injury, (b) imminent damage to the property of third parties, (c) imminent damage to the Hotel, (d) imminent loss or diminution of any material licenses or right to operate the Hotel for its intended purposes, (e) imminent loss or material diminution of any parking, ingress, egress or access relating to the Hotel or (f) a violation of any material Legal Requirements.

FF&E means all furniture, furnishings, wall coverings, fixtures, equipment and systems (except equipment and fixtures attached to and forming a part of the Improvements) located at the Hotel and required for the operation of the Improvements as a hotel, including (a) office furnishings and equipment, (b) specialized hotel equipment necessary for the operation of any portion of the Improvements as a hotel, including equipment for kitchens, laundries, dry cleaning facilities, bars, restaurants, dining rooms, public rooms, commercial spaces, and recreational facilities, including Operating Equipment, and all artwork, (c) all other furnishings and equipment (except equipment and fixtures attached to and forming a part of the Improvements) as necessary or desirable in the operation of the Hotel in accordance with the terms and conditions set forth in this Agreement.

Fiscal Year means (i) the period commencing on the first date that the Hotel generates any Gross Revenues and ending on December 31 of the calendar year in which such date occurs, and (ii) any successive yearly period (beginning January 1 and ending December 31) thereafter.

Force Majeure Event means (a) strikes, labor lock-outs, other industrial disputes, accidents, need to remove Hazardous Substances, inability to procure materials, loss of permitting or licensing, recession, governmental action or restriction, regulation or control, failure of power, water, fuel, electricity or other utilities, riots, insurrection, civil commotion, enemy or terrorist action or threat, war, acts of God (including inordinately severe weather conditions), fire or other casualty and (b) any other matter, cause or circumstances which is beyond the reasonable control of Manager in each case to the extent the same has not arisen by reason of any breach by Manager of any of Manager's obligations under this Agreement.

Gross Revenues means any and all income and proceeds of sales received for the use, occupancy or enjoyment of the Hotel or for the sale of any goods, services or other items sold on, or provided from, the Hotel including all proceeds from insurance and all income received from tenants, transient guests, licensees, concessionaires, lessees of retail space, spa and food and beverage service operations at the Hotel excluding the following: (i) any excise, sales or use taxes or similar government charges collected directly from patrons or guests, or as a part of the sales price of any goods, services or displays, such as gross receipts, value added, admission, cabaret or similar or (ii) any security deposits of Hotel tenants, subtenants, or concessionaires (unless and until applied) and any payments by such tenants, subtenants or concessionaires for taxes; (iii) proceeds of collection of accounts receivable; (iv) consideration received at the Hotel for hotel accommodations, goods and services to be provided at other hotels arranged by, for or on behalf of Manager; and (v) discounts, allowances and refunds or credits to patrons or guests.

Improvements means all buildings, structures, improvements and betterments now located or hereafter constructed on the Property and all fixtures and equipment attached to and forming a part of such buildings, structures and improvements (including heating, lighting, plumbing, sanitary sewer, air-conditioning, laundry, refrigeration, kitchen, elevators and similar items).

Independent Accountant means a third party independent certified public accounting firm jointly selected by Owner and Manager.

Legal Requirements means all present and future laws, statutes, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations and requirements pertaining to the Hotel and its operation including any applicable insurance, environmental, human health and safety, zoning or building, laws or regulations, Americans with Disabilities Act, fire and fire safety system laws, land use laws, ordinances, rules or regulations and all covenants, restrictions and conditions now or hereafter of record which may be applicable to the Hotel or any portion thereof, or to the use, occupancy, possession, operation, maintenance, alteration, construction or repair of any of the Improvements, including any rules, regulations and requirements of competent authorities relating to permits, consents, licenses and the like which are required for the use, occupancy, possession, operation, maintenance, alteration, construction or repair of any of the Hotel and/or Improvements.

Manager Directed Customers means customers of the Manager or its Affiliates, whether or not such customers have at any point in time stayed at the Hotel, hosted an event or was a guest at a food and beverage venue, or who were introduced to the Hotel by Manager or its Affiliates or through their historical relationship with Manager or its Affiliates, during the term of this agreement.

Manager Owned Customer Lists means the customer and guest information, preference and history relating to Manager Directed Customers.

Manager's Expenses means the out-of-pocket expenses and disbursements which are included in the Budget and are reasonably and necessarily incurred by Manager in the performance of its obligations under this Agreement, provided, however, that the same cost shall not be included in more than one category of expense.  Manager's Expenses may include the following expenses: travel, business entertainment costs, telephone, air express and other incidental expenses.  This shall include: (i) reasonable and customary out-of-pocket expenses properly incurred by Manager on behalf of the Hotel or Owner in order to facilitate the performance of Manager's duties under this Agreement; (ii) other reasonable and customary direct expenses incurred by the Manager in connection with the management or operation of the Hotel; (iii) all costs and expenses incurred by Manager on behalf of the Hotel or Owner, including out-of-pocket expenses related to the time spent by, and travel of, specifically to and from the Hotel in order to facilitate the transition of services in connection with the termination of this Agreement, and (iv) third party contracts with providers in the name of Manager or its Affiliates for the benefit of the Hotel (such as Google search terms, PMX and Synxis) that may be done on a group or individual basis, which amounts shall be included in the Budget (the "Third Party Contract Expenses").

Manager's Fees means, collectively, the Base Management Fee, the Incentive Fee, and any other fees payable to the Manager.

Operating Account means the bank account(s) opened and maintained in Owner's or Manager's name, with a banking institution selected by Manager and reasonably approved by Owner, into which all income, receipts and proceeds included in the definition of Gross Revenues (without exclusion of any of the items excluded from the definition of such term) shall be deposited and from which disbursements shall be made.

Operating Equipment means linens, chinaware, glassware, uniforms, utensils and other items of similar nature.

Person means an individual (and the heirs, executors, administrators, or other legal representatives of an individual), a partnership, a corporation, a limited liability company, a government or any department or agency thereof, a trustee, a trust and any unincorporated organization.

Personnel means all individuals performing services for the benefit of the Hotel as employees of Manager or an Affiliate of Manager.

Personnel Costs means all costs associated with the hiring, employment or termination of Personnel (x) located at and providing services directly and exclusively to the Hotel, on behalf of the Manager, (y) who provide services to the Hotel, and other hotels under developed or operated by Manager and its Affiliates, on a non-exclusive basis, or (z) who are shared employees of any current or future hotels owned and/or operated by Manager or an Affiliate of Manager, including, in each case, compensation (i.e., salaries and bonuses) and benefits, employment taxes, social security contributions, training and severance payments, costs in connection with litigation or consultation and, subject to the Approved Budget, recruitment expenses and the costs of moving executive level Personnel, their families and their belongings to the area in which the Hotel is located at the commencement of their employment.

Working Capital means funds reasonably necessary for the day-to-day operation of the Hotel.

3

## ARTICLE II

### TERM OF AGREEMENT

Section 2.01    Term.  The initial term of this Agreement (the "Initial Term") shall begin on the Effective Date and, subject to the termination rights expressly set forth herein, will terminate on the last day of the tenth (10th) full Fiscal Year.  Thereafter, the Term shall automatically be extended for two successive terms of five (5) years each (each, a "Renewal Term") on the same terms and conditions as set forth in this Agreement unless Manager notifies Owner of its election not to renew at least six (6) months before the end of the Initial Term, or then current Renewal Term. The Initial Term and each Renewal Term are collectively, the "Term." In the event that the Owner is required to terminate this agreement due to lender covenants, immediately upon restoration of the Owner's rights to control the Property, this Agreement shall be immediately reinstated. At any time that the Manager is not in full control of the Property, use of all brand collateral, trademarks, digital and design assets, online presence including website and social media accounts in the name of The Williamsburg Hotel, shall ceased to be associated with the property in any manner and control and ownership of all brand collateral and online and social media accounts shall remain with the Manager.

## ARTICLE III

### OPERATION OF THE HOTEL

Section 3.01    Operation of the Hotel.  Owner hereby retains Manager to manage and operate the Hotel commencing on the Effective Date in a professional manner in accordance with and subject to the terms of this Agreement, and to provide or cause to be provided all amenities in connection with the Hotel which are reasonable and customary for such an operation.

Section 3.02    Manager's Control and Discretion.  Subject to the terms of this Agreement and the Budget, Manager shall manage and operate the Hotel.  Without limiting the generality of the foregoing but subject to the other provisions of this Agreement, Manager's control and discretion shall include, and Manager shall be responsible for, the operation of the Hotel for all customary purposes, and, without limitation thereof, at its discretion to do the following:

(a)      Hire, directly or through an Affiliate, the general manager, the financial controller and other managerial and hourly staff of the Hotel who shall work solely and exclusively for the Manager; provided, that Owner shall have a reasonable opportunity to meet with the general manager before Manager shall hire such person; provided, further, however, that Owner shall have no approval right with respect to any such hiring. Manager shall also have the right to hire, supervise, promote and discharge all employees performing services in or about the Hotel, all of whom shall be employees of Manager or an Affiliate of Manager. Owner shall have no right to hire, supervise, promote or discharge any employees of the Hotel, and Owner agrees not to attempt to do so and, not in limitation of the foregoing, in no event shall Owner cause, suffer or permit any Affiliate of Owner, or any person holding, directly or indirectly, a beneficial interest in Owner (other than Manager or an Affiliate of Manager), to participate in or interfere with such supervision.  On reasonable advance notice from Owner to Manager, senior executives of Manager's corporate office (as designated by Manager) shall meet with Owner, either in person or by telephone (at Manager's discretion), to review with Owner the financial performance the Hotel.

(b)      Retain such specialists and consultants as Manager may from time to time reasonably determine to be necessary for the successful operation of the Hotel.

(c)      Determine and implement all labor policies, including with respect to wage and salary rates and terms, fringe benefits, pension, retirement, vacation, bonus and employee benefit plans, all consistent with industry practice.

(d)     Supervise and maintain accurate Books and Records, including the books of account and accounting procedures of the Hotel.

(e)     Negotiate, enter into, and modify, leases, subleases, licenses and concession agreements for stores, restaurants, bars and other facilities, and services at the Hotel.

(f)     Make or cause to be made all necessary repairs, replacements and/or additions to the Hotel so that it shall be adequately maintained and furnished at a level of a luxury boutique hotel

(g)     Negotiate and enter into service contracts and software licenses in Owner's or Manager's name required in the ordinary course of business in operating the Hotel, including contracts for electricity, gas, telephone, detective agency protection, information technology, cleaning, trash removal, extermination and other services which Manager deems advisable.

(h)     Select and obtain Consumable Supplies, Operating Equipment and FF&E for the operation of the Hotel in the normal course of business.

(i)     Determine all terms for admittance, charges and rate schedules for guest rooms, function rooms, commercial space privileges, entertainment and food and beverages.

(j)     Determine all credit policies with respect to the operation of the Hotel, including entering into customary credit card and barter agreements.

(k)     Establish food and beverage policies (including pricing) with respect to the Hotel, including the right to conduct catering operations outside the Hotel but for the account of the Hotel.

(l)     Establish and implement all advertising, public relations and promotional policies with respect to the Hotel including exercising the sole and exclusive control over all public statements, whether written or oral and no matter how disseminated, advertising, press releases and conferences;.

(m)     Retain attorneys and other professionals as Manager may reasonably deem necessary to provide advice with respect to operating the Hotel, including with respect to zoning, environmental, employment and litigation matters, and institute any and all legal actions or proceedings as shall be reasonably necessary in the Manager's judgment to collect charges, rent or other income of the Hotel.

(n)     Appear in, defend against and/or settle all legal actions or proceedings brought against Manager or Owner or both in connection with the operation of the Hotel.

(o)     Establish any other policy or perform any other act or function which in the reasonable discretion of Manager is necessary or desirable to operate the Hotel on a day-to-day basis in accordance with the Operating Standard and the terms of this Agreement and perform all other acts within the scope of Manager's duties hereunder.

Section 3.03   <u>Manager Affiliate Services</u>. In fulfilling its obligations under this Agreement, Manager is hereby authorized to use the services of Manager's Affiliates provided that such services and fees therefor shall be furnished on terms and conditions which are not less favorable to Owner than those obtained in the competitive, open market.


ARTICLE IV

MANAGER STATUS; EMPLOYEES

Section 4.01   <u>Manager Status</u>. Nothing herein shall constitute or be construed to be or create a partnership, joint venture or any other similar type of association between Owner and Manager. Owner covenants that Manager's engagement under this Services Agreement hereunder and right to occupy and manage the Hotel shall be exclusive and undisturbed, subject only to the limitations of this Management

5

and Services Agreement. Owner further covenants that all intellectual property, including brand name, trademarks issued and filed, customer lists, website, social media accounts and all content including photos of the property are the sole property of the Manager. The Manager retains unlimited rights to any content including photos of the property utilized in the any media including all social media accounts of the Williamsburg Hotel, included but not limited to Instagram and Facebook.

Section 4.02    Employees.

(a)    All Personnel shall be employees of Manager or an Affiliate of Manager; provided, however, that Owner shall be obligated to reimburse Manager for all Personnel Costs for such Personnel in accordance with the terms of this Agreement. Reimbursement for Personnel Costs includes any costs incurred as a result of the termination of any Personnel including if such termination is as a result of the termination or sooner expiration of this Agreement. Manager shall have the right to transfer the Personnel to an Affiliate or cause an Affiliate to hire the Personnel, and notwithstanding the foregoing, Manager and its Affiliates shall, in their sole discretion, have any and all rights regarding such Personnel provided hereunder, and in relation thereto. Owner shall not give orders or instructions to any Personnel, including with respect to the operation of the Hotel. In furtherance of the foregoing, Owner and Manager hereby agree that the Manager shall determine, in its sole discretion, the number of employees required to operate the Hotel, the working conditions at the Hotel, the organizational concept and any necessary reorganization and the like in order to properly perform the duties of the Manager under this Agreement.

Section 4.03    Reimbursement of Employee Expenses. All Personnel Costs shall be billed by Manager to, and be reimbursed by, Owner as an operating expense under this Management services agreement. Manager may assign employees of Manager or any of Manager's Affiliates to perform services for the Hotel and Owner shall reimburse Manager for Personnel Costs associated with such employees as an Operating Expense. Employees of Manager other than those regularly employed at the Hotel or otherwise in the New York City metropolitan area shall be entitled to free room and board at such times as they visit the Hotel in connection with the management of the Hotel or are assigned temporarily to the Hotel to perform services for the Hotel. Owner shall reimburse Manager for all reasonable travel expenses to and from the Hotel for such employees. Not in limitation of the provisions of the foregoing, Owner authorizes Manager to make available to employees of Manager and its Affiliates certain benefits in the form of discounted room use at the Hotel as determined in accordance with Manager's then-effective employee discount policy, not to exceed 200 room nights per any calendar year. Owner hereby approves such benefits and acknowledges that it has no claim against Manager with respect thereto, to the extent such discounts do not materially exceed those customary to the hotel industry in the geographic region where the Hotel is located.

ARTICLE V

INDEMNIFICATION

Section 5.01    Indemnification by Owner.

(a)    Owner shall indemnify, defend, and hold Manager and its Affiliates and their respective directors, members, trustees, officers, employees, agents and assigns (collectively, "Manager Indemnified Parties") harmless from and against any and all claims, demands, damages, cost, expense, actions (including enforcement proceedings initiated by any government agency), penalties, suits, and liabilities (including the cost of defense, settlement, appeal, reasonable attorneys' fees and costs and any other amounts that Manager is required to pay to third parties in connection with such matters) which they or any of them may have alleged against them, incur, become responsible for, or pay out for any reason related to the design, management, operation or maintenance of the Hotel or the performance by Manager of the responsibilities and obligations provided in this Agreement, provided, however, that in no event shall Owner's indemnification obligations cover or extend to conduct of Manager or any of Manager's Affiliates that constitutes gross negligence, willful misconduct or fraud. In case of any action, suit or proceeding

6

brought against Manager arising from or relating to matters covered by the indemnity Manager will notify Owner of such action, suit or proceeding, and Manager may, at Owner's expense, by notice to Owner, elect to defend such action, suit or proceeding or cause the same to be defended. Any compromise, settlement or offer of settlement of any claim, action or proceeding that Owner shall be obligated to indemnify Manager Indemnified Parties pursuant to the terms of this Agreement shall require the prior written consent of Manager; provided that no such consent shall be required for any such compromise, settlement or offer which provides for a full release of Manager and its Affiliates.

Section 5.02    Indemnification by Manager.  Manager shall indemnify, defend and hold Owner and its Affiliates and their respective directors, members, officers, employees, agents and assigns (collectively, "Owner Indemnified Parties") harmless from and against any and all claims, demands, damages, cost, expense, actions (including enforcement proceedings initiated by any government agency), penalties, suits, and liabilities (including the cost of defense, settlement, appeal, reasonable attorneys' fees and costs and any other amounts the Owner is required to pay to third parties in connection with such matters, but excluding consequential damages sustained by Owner), which they or any of them may have alleged against them, incur, become responsible for, or pay out for any reason, to the extent such matters are caused by conduct of Manager's or Manager's Affiliates corporate personnel that constitutes gross negligence, willful misconduct or fraud. In case of any action, suit or proceeding brought against Owner arising from or relating to matters covered by the indemnity, Owner will notify Manager of such action, suit, or proceeding, and Manager may, at Manager's expense, by notice to Owner, defend such action, suit, or proceeding, or cause the same to be defended. Any compromise, settlement or offer of settlement of any claim, action or proceeding that Manager shall be obligated to indemnify pursuant to the terms of this Agreement shall require the prior written consent of Owner; provided that no such consent shall be required for any such compromise, settlement or offer which provides for a full release of Owner and its Affiliates.

Section 5.03    Survival of Indemnity.  The obligations set forth shall survive any termination or assignment of this Agreement.  In no event shall the settlement by either party in good faith of any claim brought by a third party (including Personnel) in connection with the ownership or operation of the Hotel be deemed to create any presumption of the validity of the claim. Notwithstanding any contrary provisions, Owner and Manager mutually agree for the benefit of each other to look first to the appropriate insurance coverages in effect in the event any claim or liability occurs as a result of injury to person or damage to property, regardless of the cause of such claim or liability.

ARTICLE VI

BUDGETS

Section 6.01    Budget.  Not later than sixty (60) days prior to the commencement of each Fiscal Year, Manager shall submit the Budget to Owner for Owner's review and approval. The Budget shall contain (i) an estimated profit and loss statement on a monthly basis, (ii) a budget of receipts and expenditures required for the operation of the Hotel pursuant to the terms of this Agreement, (iii) a description of proposed capital improvements to be made and itemized capital expenses, (iv) a statement of cash flow, including a schedule of Working Capital which may be maintained in a sub-account of the Operating Account and (v) any anticipated requirements for funding by Owner. Owner shall give its written approval or disapproval of the proposed Budget not later than thirty (30) days after receipt thereof. If Owner does not provide its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within such thirty (30) day period, and Manager gives notice (the "Reminder Notice") to Owner of such failure by Owner, then, if Owner still does not provide its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within thirty (30) days after receipt of the Reminder Notice, Owner shall be deemed to have approved such proposed Budget as submitted by Manager. Owner acknowledges that the projections contained in each proposed Budget and the Approved Budget are estimates and are subject to and may be affected by changes in financial, economic and other conditions and circumstances beyond Manager's reasonable control, and the giving of such

7

projections shall not be construed as a guarantee or warranty by Manager to Owner of any matter or in any way whatsoever.

Section 6.02    Adherence to Budget.

(a)    If the usage of all or any portion of an income-producing facility of the Hotel or the guest occupancy related to such facility, in any period exceeds the usage or occupancy for such facility projected in the Approved Budget for such period, the expense categories in the Approved Budget for such period directly related to servicing such increase in usage or occupancy shall automatically be deemed increased by such reasonable amount as is necessary to accommodate such increased usage or occupancy. Subject to the foregoing sentence and the next following sentence, Manager shall, in the performance of its duties hereunder, (i) adhere to the Budget with respect to expense items set forth in such Budget (it being agreed that Manager shall have no liability for cost overruns beyond its reasonable control) and (ii) use its reasonable good faith efforts to adhere to or exceed the Budget with respect to income items set forth in such Budget.

(b)    If at any time during any Fiscal Year Manager shall, in the performance of its duties hereunder, determine that the Budget relating to such Fiscal Year is no longer appropriate because of unforeseen changes, Manager shall submit to Owner for Owner's review, a revised budget (the "Revised Budget") for the remainder of such Fiscal Year. Owner shall give its written approval or disapproval of the proposed Revised Budget not later than thirty (30) days after receipt thereof. If Owner does not give its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within such thirty (30) day period, and Manager gives the Reminder Notice to Owner, then, if Owner still does not provide its written approval or disapproval (and in the case of disapproval, specifying in reasonable detail its objections) within thirty (30) days after receipt of the Reminder Notice, Owner shall be deemed to have approved such proposed Revised Budget as submitted by Manager

## ARTICLE VII

## OPERATING EXPENSES

Section 7.01    Payment of Operating Expenses. In performing its authorized duties hereunder, Manager shall promptly pay all Operating Expenses to the extent of available Working Capital. All Operating Expenses incurred by Manager in performing its authorized duties in accordance with the terms of this Agreement shall be reimbursed or borne by Owner. To the extent the funds necessary therefor are not generated by the operation of the Hotel, they shall be supplied by Owner to Manager in the manner provided in Article VIII. Manager shall in no event be required to advance any of its own funds for Operating Expenses.

## ARTICLE VIII

## WORKING CAPITAL AND BANK ACCOUNTS

Section 8.01    Working Capital.

(a)    Owner shall provide the initial funds necessary to supply the Hotel with Working Capital in accordance with the Budget. Thereafter, subject to the Budget, upon request of Manager, Owner shall promptly provide any additional funds necessary to maintain Working Capital at levels reasonably determined by Manager to be necessary to satisfy the needs of the Hotel as its management and operation may from time to time require. Working Capital so provided shall remain the property of Owner throughout the Term, subject to expenditure for Operating Expenses. Upon termination of this Agreement, Owner shall retain any unused Working Capital.

(b)    If Owner does not provide the additional funds required pursuant to Section 8.01(a) or as otherwise required hereunder within five (5) business days after the request is made therefor by

8

Manager, Manager may elect, but shall have no obligation, to provide such additional funds, and shall be promptly reimbursed therefor by Owner with interest thereon at a rate equal to the prime commercial lending rate (the "Prime Rate") plus six percent (6%) per annum, or the highest legal rate, whichever is lower, compounded monthly, such interest accruing from the date the Manager provides such additional funds through and including the date of reimbursement. If Manager is not reimbursed by Owner within five (5) days after Manager so provides such additional funds, Manager may reimburse itself (with interest as set forth above) out of the Operating Account. The aforementioned right of reimbursement shall be in addition to any other rights which Manager may have with respect to any provision of this Agreement or otherwise.

Section 8.02    Bank Accounts. All funds to be made available to Manager by Owner for the maintenance and operation of the Hotel shall be deposited in the Operating Account Manager may open separate accounts which are linked to the Operating Account for certain operational purposes, such as by way of example, payment of payroll expenses and travel agent commissions. Such bank accounts shall be opened and maintained in Manager's name, at the same bank as the Operating Account and provisions in this Agreement regarding the Operating Account shall apply to those accounts. Manager shall pay all Operating Expenses (including Manager's Expenses and Manager's Fees) and all other amounts as required in connection with the maintenance and operation of the Hotel in accordance with the provisions of this Agreement out of the Operating Accounts.

Section 8.03    Authorized Signatures. The Operating Account shall be in Owner's or Manager's name and Manager shall be authorized signatory. Checks or other documents of withdrawal shall be signed by duly authorized individual representatives of Manager; Upon expiration or termination of this Agreement, as provided in this Agreement, all remaining amounts in the referenced accounts shall be made available to Owner, subject to the obligation to pay all amounts due to Manager hereunder.

Section 8.04    Disbursements to Owner. Contemporaneously with furnishing each Monthly Statement and commencing after the first Fiscal Year, Manager shall disburse to Owner, in the manner directed by Owner, any funds remaining in the Operating Account at the end of such immediately preceding calendar month after: (i) payment of all Operating Expenses to be paid by Manager under this Agreement, Manager's Fees, Centralized Expenses, Manager's Expenses, and any other amounts Manager is permitted or required to make pursuant to this Agreement, (ii) retention of amounts in the Operating Account necessary to fund Working Capital if any and any other reserves reasonably established by Manager (such as a reserve for litigation costs) and (iii) payment or retention of such other amounts as may be agreed to in writing from time to time by Owner and Manager. Prior to the expiration of the first Fiscal Year, in order to allow the Hotel to stabilize, Manager shall not be required to make the foregoing monthly disbursements to Owner but shall use commercially reasonable efforts to disburse excess funds to Owner in Manager's discretion. Manager's willingness to defer payment of Management Fees shall not constitute a waiver of monies due to the Manager.

## ARTICLE IX

### BOOKS, RECORDS AND STATEMENTS

Section 9.01    Books and Records. Manager shall keep full and adequate Books and Records reflecting the results of operation of the Hotel on an accrual basis,, with such exceptions as may be required by the provisions of this Agreement. All Books and Records, wherever kept, shall be available to Owner and its representatives at all reasonable times for examination. Upon any termination of this Agreement, a copy of all of such Books and Records forthwith shall be turned over to Owner so as to insure the orderly continuance of the operation of the Hotel, but the original Books and Records, shall be retained by Manager.

## ARTICLE X

### MANAGER'S FEES

Section 10.01    Base Management Fee.  On the tenth (10th) day of each month during each Fiscal Year, , Owner shall pay to Manager a base management fee (the "Base Management Fee") equal to three percent (3.0%) of Gross Revenues in the first Fiscal Year and for all remaining Fiscal Years in the Term. The Base Management Fee shall be based on the actual monthly Gross Revenues as shown on the monthly Statement for the prior month.

Section 10.02    Reimbursement of Expenses.  From time to time as incurred, Owner shall promptly reimburse Manager for any Manager's Expenses to the extent such Manager's Expenses are incurred by Manager in accordance with the provisions of this Agreement.

Section 10.03    Incentive Fee.   Within ten (10) days after receipt of the Certified Financial Statements, Owner shall pay Manager an annual incentive management fee in an amount equal to ten percent (10%) of net operating income (the "Incentive Fee").

Section 10.04    Disbursement of Fees.   Manager is authorized to disburse to itself from the Operating Account the amounts owing as the Manager's Fees and for reimbursements provided for in the Budget or otherwise expressly permitted by this Agreement, all at the times and in the amounts provided for in this Agreement, but, if insufficient funds are available to do so, such amounts shall accrue with interest thereon at the Prime Rate plus six percent (6%) per annum, or the highest legal rate, whichever is lower, compounded monthly, from the date such payment is due through and including the date of payment, and Owner shall pay same to Manager within ten (10) days after demand by Manager.

### ARTICLE XI

### REPAIRS AND MAINTENANCE AND CAPITAL IMPROVEMENTS

Section 11.01    Repairs and Maintenance.

(a)    Manager shall from time to time make such expenditures for repairs and maintenance to the Hotel, and repairs, maintenance, replacements, renewals and additions to the FF&E, and minor capital improvements (collectively, "Repairs") as are set forth in the Budget.  Notwithstanding the foregoing, Manager shall not require the consent of Owner for, and shall be authorized to undertake, Emergency Repairs whether or not the cost of performing such repairs are in the Budget, and Manager may deviate from the Budget and incur additional expenses for Repairs.

### ARTICLE XII

### REAL AND PERSONAL PROPERTY TAXES,
### LOCAL TAXES, LEVIES AND OTHER ASSESSMENTS

Section 12.01    Payment of Real Estate Taxes. Manager shall pay from the Operating Account prior to the dates the same become delinquent all real estate and personal property taxes and all betterment assessments levied against the Hotel or any of its component parts.  If Owner shall pay the real estate taxes, Owner shall furnish Manager proof of payments thereof upon request from Manager.

Section 12.02    Owner's Right to Contest.  Notwithstanding the foregoing, Owner may, as an Operating Expense, contest the validity or the amount of any such tax or assessment.  Manager agrees to cooperate with Owner and execute any documents or pleadings required for such purpose, provided that Manager is satisfied that the facts set forth in such documents or pleadings are accurate and that such execution or cooperation does not impose any unreasonable obligations on Manager, and Owner agrees to reimburse Manager as an Operating Expense for all expenses occasioned to Manager for any such cooperation.

ARTICLE XIII

TRADEMARKS AND HOTEL NAME

Section 13.01    <u>Primary Name; Other Marks</u>.  During the term of this Agreement, the Hotel shall at all times be known and designated by the name The Williamsburg Hotel (the "<u>Hotel Brand</u>").  Owner acknowledges the Brand Name is the property of the Manager.

(a)    <u>Manager's Tradename</u>.  Owner and Manager agree that if the Manager utilizes any tradenames, trademarks, service marks, logos or designs owned, created or licensed by Manager or any Affiliate thereof (collectively, "<u>Manager's Tradename</u>") in connection with the management, operation and marketing of the Hotel, such Manager Tradenames shall remain within the sole control and ownership of the Manager.  Manager shall have the right to cease using such agreed-upon Primary Name and any other Manager's Tradename with respect to the Hotel if at any time this Agreement is terminated or Owner prevents Manager from operating the Hotel at a level consistent with the Approved Budget and the Operating Standard.  Owner hereby acknowledges that it has no right, title or interest in and to Manager's Tradename and covenants (i) not to claim any such interest and (ii) to take such steps as are necessary, in the negotiation, execution and delivery of agreements with third parties, and in any other circumstances which might otherwise suggest erroneously that Manager's Tradename is the property of Owner, to represent that Manager's Tradename is the property of Manager.  Except as otherwise expressly provided herein, Owner shall have no right, at any time, to use Manager's Tradename, or any derivation thereof, or the name of any other hotel managed or operated by Manager or its Affiliates, or any derivation thereof, for any reason or purpose whatsoever, without obtaining the prior written consent of Manager, which consent may be withheld in Manager's sole discretion.  As between Owner and Manager, all right, title and interest in Manager's Tradename shall, at all times, remain with Manager.  Upon the termination of this Agreement for any reason or upon termination of the license agreement governing the use of Manager's Tradenames between Owner and Manager, Manager shall have the right to promptly remove Manager's Tradename from the Hotel and all items (including, by way of example and not by limitation, the Hotel building, all facilities, FF&E, advertising and marketing materials and Consumable Supplies) used at, in connection with or in reference to the Hotel.

(b)    <u>Manager's Materials and Manager's Design Work</u>.  Owner acknowledges that in the design, operation and management of the Hotel, Manager will make use of confidential information regarding Manager's business, operations, clients, investors and business partners and/or information not generally known by Owner in the form in which it is used by Manager, and which gives Owner a competitive advantage over other companies which do not have access to this information, including secret, confidential, or valuable proprietary information, trade secrets or work product of Manager and its Affiliates, conveyed orally or reduced to a tangible form in any medium, including but not limited to information concerning the operations, business plans, financial data and financial plans, architectural plans and designs, marketing plans, techniques and arrangements, manuals and form contracts, Personnel information and files, pricing policies, proprietary databases, internal communication and correspondence, including with Personnel, mailing lists, guest profiles and records, technology, research, future plans, business models, strategies, business methods and employees of Manager and its Affiliates, as well as information about Manager's and its Affiliates' customers, clients and business partners and its operations (collectively, the "<u>Manager's Materials</u>").  During the Term, in the event Owner has access to any Manager's Materials, its use of such Manager's Materials shall not (a) violate the terms of this Agreement, any applicable law or any privacy policies of Manager or any of its Affiliates, (b) interfere with, or be detrimental to, the use and exclusive operation of the Hotel by Manager, and (c) interfere with, or be detrimental to, the financial performance of the Hotel.  Owner also acknowledges that in the design, operation and management of the Hotel, Manager may create logos and/or designs and commission artwork, photographs, website design, images of the Hotel, or other decorative specialty items (collectively, the "<u>Manager's Design Work</u>") to be used in connection with Manager's operation of the Hotel. Owner hereby acknowledges that it has no right,

11

title or interest in and to Manager's Materials or Manager's Design Work and covenants (i) not to claim any such interest, (ii) not to disclose or distribute, or contract to disclose or distribute, Manager's Materials or Manager's Design Work to any person without Manager's express written consent except as otherwise expressly provided herein or to the extent required by law, (iii) not to use Manager's Materials or Manager's Design Work in any manner except with the prior consent of Manager which may be withdrawn at any time, and (iv) upon termination of this Agreement for any reason, to cease all use of Manager's Materials (or any part thereof) and Manager's Design Work (or any part thereof) and return to Manager all copies and/or originals of Manager's Material and Manager's Design Work in its possession.  When using Manager's Materials or Manager's Design Work with Manager's consent, the same shall be used only for the purpose of furthering the business of the Hotel and not for any other reason.  All right, title and interest in and to Manager's Materials and Manager's Design Work, including all copyrights, trademarks and trade secret rights, shall always remain with Manager and may be removed from the Hotel by Manager at any time, including upon a termination or expiration of the Agreement, and Owner shall have no rights with respect thereto.

(c)    <u>Solicitation</u>.  Owner shall not, and shall ensure that its Affiliates do not, directly, or indirectly, for itself or on behalf of any other person, firm or corporation, solicit, hire, retain as a consultant, or use the services of, any person who is, or was in the previous eighteen (18) months (other than a person whose services were terminated by Manager), either an employee (including Personnel) of Manager or an Affiliate of Manager, without Manager's express prior written approval.  This provision shall survive for eighteen (18) months after the termination or expiration of this Agreement.

(d)    <u>Sales of Merchandise</u>.  Owner acknowledges that Manager's Materials, Manager's Design Work and Manager's Tradename are of great commercial value and that, without the covenants contained herein with respect thereto and with respect to Manager's employees set forth above, Manager would not enter into this Agreement.  Nothing herein shall prohibit Manager from placing in rooms and other places at and around the Hotel items, such as picture books, identifying other hotels managed or operated by Manager and its Affiliates.  In addition, Manager shall have the right to sell merchandise in the rooms in an unobtrusive manner or in the gift shop, at the front desk or in other appropriate locations at the Hotel, <u>provided</u> that the proceeds from such sales shall constitute Gross Revenues and Manager shall provide such merchandise to Owner at a price no less favorable to Owner than that which Manager provides such merchandise to any other hotel operated by Manager or its Affiliates.

ARTICLE XIV

ASSIGNMENTS; SALE OF HOTEL

Section 14.01    <u>Assignment by Owner</u>.  Owner shall have no right to transfer or assign any of Owner's interest in this Agreement without the prior written consent of Manager (which consent of Manager may be withheld by Manager in Manager's sole and absolute discretion), except that in connection with a sale of the Hotel or a permitted lease Owner shall, on thirty (30) days' prior written notice to Manager, cause this Agreement to be assigned to, and assumed by, the purchaser of the Hotel. For the avoidance of doubt, if Owner shall sell, assign, transfer or convey the Hotel or a controlling interest therein (including by transfer of ownership interest, merger or other disposition, in one or a series of related transactions) at any time during the Term, Owner shall have no right to terminate this Agreement as a result thereof, and, subject to Manager's right to terminate, this Agreement shall continue in full force and effect and bind Manager and Owner's successors and assigns.

Section 14.02    <u>Assignment by Manager</u>.  Manager is not entitled to assign this Agreement to a third party without the written consent of the Owner, except in connection with a merger or transfer of substantially all of the assets of its parent entity to any corporation, limited liability company, partnership or other business entity, provided that (i) the assignee will assume the obligations of Manager under this

Agreement, and (ii) the Hotel will continue to be operated under the Hotel Brand, in substantially the same manner as it was operated prior to such transfer.

ARTICLE XV

TERMINATION

Section 15.01    Termination By Owner.

(a)    Owner shall have the right to terminate this Agreement, without the payment of any fee or penalty, other than Manager's Expenses and accrued and unpaid Manager's Fees payable pursuant to this Agreement and the return of all monies advanced by the Manager, for the following reason only (each, following the provision of notice and the lapse of any applicable cure periods, an "Event of Default"):   the commission by Manager of fraud or willful misconduct in the performance of the duties of Manager under this Agreement

(b)    Owner shall have no right to terminate this Agreement unless Owner shall have given notice of any such event to Manager and such event shall continue unremedied for a period of ninety (90) days after notice, or if the breach is not susceptible of cure within ninety (90) days, such additional period as may be necessary to effect such cure provided that Manager commences such cure promptly within such sixty (60) day period and diligently prosecutes such cure to completion. In addition, but not in limitation of the foregoing, Owner shall have no right to terminate this Agreement unless Owner shall have given notice to Manager of the occurrence of the event which Owner claims is the basis for such termination, such notice to be given within 180 days after the date Owner first obtains actual knowledge of such occurrence or, if such occurrence is ongoing, the date on which Owner first obtains actual knowledge that such occurrence has ceased. Failure by Owner to give such notice within said 180-day period will constitute a waiver of the rights of Owner to terminate this Agreement by reason of the particular occurrence which would have been the basis for such termination, but not, for the avoidance of doubt, with respect to any other occurrence, and shall not limit Owner's other rights and remedies, if any, arising out of such occurrence.

(c)    IN NO EVENT SHALL MANAGER BE DEEMED IN BREACH OF ITS DUTIES HEREUNDER, OR OTHERWISE AT LAW OR IN EQUITY, SOLELY BY REASON OF (I) THE FAILURE OF THE FINANCIAL PERFORMANCE OF THE HOTEL TO MEET OWNER EXPECTATIONS OR INCOME PROJECTIONS OR OTHER MATTERS INCLUDED IN THE OPERATING PLAN, (II) THE ACTS OF HOTEL PERSONNEL, (III) THE INSTITUTION OF LITIGATION OR THE ENTRY OF JUDGMENTS AGAINST OWNER, MANAGER OR THE HOTEL WITH RESPECT TO HOTEL OPERATIONS, OR (IV) ANY OTHER ACTS OR OMISSIONS NOT OTHERWISE CONSTITUTING A BREACH OF THIS AGREEMENT, IT BEING THE INTENTION AND AGREEMENT OF THE PARTIES THAT MANAGER'S SOLE OBLIGATION HEREUNDER SHALL BE TO ACT IN CONFORMITY WITH THE STANDARD OF SKILL, CARE AND DILIGENCE REQUIRED BY THE OPERATING STANDARD, AND OTHERWISE IN CONFORMITY WITH THE EXPRESS TERMS OF THIS AGREEMENT.

Section 15.02    Termination by Manager.

(a)    Manager shall have the right to terminate this Agreement for the following reasons (each, following the provision of notice and the lapse of any applicable cure periods, an "Event of Default"): (i) a monetary or a material non-monetary breach of obligations by Owner under the terms of this Agreement;  (ii) the event of any suspension for a period in excess of thirty (30) days or withdrawal or revocation of any material license or permit required for the Manager's performance under this Agreement or the operation of the Hotel in accordance with the terms hereof, but only if such suspension, withdrawal or revocation is due to circumstances beyond Manager's control or any Force Majeure Event; (iii) Manager is materially limited in operating and maintaining the Hotel in accordance with the requirements of this

Agreement because of (x) governmental laws, rules or regulations hereafter enacted of which Manager so notifies Owner in writing, and/or (y) Owner's failure to fund any amounts as required pursuant to the terms of this Agreement; (v) Manager makes a reasonable determination that continued operation of the Hotel will result in an imminent danger to public health or safety; (vi) a failure by Owner to deposit in the Operating Account funds requested by Manager in accordance with the terms hereof; (vii) Owner contests in any court or proceeding Manager's ownership of any of the Manager's Materials, Manager's Design Work and Manager's Tradename; (viii) Owner conceals revenue, maintains false books and records of accounts, submits false reports or information to Manager or otherwise attempts to defraud Manager.

Section 15.03    Transition Procedures.    Upon the expiration or termination of this Agreement, Owner and Manager shall have the following rights and cause the following to occur each of which shall be a covenant of the party obligated hereunder:

(a)    Licenses and Permits.    Manager shall execute all documents and instruments reasonably necessary to transfer (if transferable) to Owner all governmental permits and licenses held by Manager necessary to operate the Hotel.

(b)    Leases and Concessions.    Manager shall assign to Owner or its nominee, and Owner and its nominee, if any, shall assume, all leases and concession agreements in effect with respect to the Hotel in Manager's name.

(c)    Books and Records.    A copy of all Books and Records for the Hotel kept by Manager shall be turned over to Owner, so as to ensure the orderly continuance of the operation of the Hotel, but the original Books and Records, may be kept by Manager.

(d)    Bookings.    Manager shall provide to Owner a complete list of all future bookings together with the pertinent information relevant to such bookings, (i) to be used by Owner solely to honor and complete such bookings and for no other purpose (including marketing) and (ii) subject to Owner's written agreement to Manager's then-current data protection terms, including its privacy, security, access, correction, deletion, data transfer, and incident notification and response requirements. Manager may remove from the Hotel any information (whether in electronic or hard copy format) pertaining to the Manager Owned Customer Lists and/or Manager Directed Customers and Owner shall have no right to retain any originals or copies of the same. In addition, Manager may retain a copy and utilize, any other customer and guest information, preference and history relating to customers of the Hotel other than Manager Directed Customers without charge. Owner shall have no rights whatsoever to Manager's guest loyalty programs, lists or the information contained therein, or any lists of followers, guests, held in any program utilized by Manager to manage the property, as well as social media platform included but not limited to Instagram and Facebook.

Owner shall pay to Manager all accrued Manager's Fees and Manager's Expenses due through the date of termination of this Agreement as a condition to effective termination. Any and all costs incurred by the Manager and/or its Affiliates, including costs related to the time of, and costs incurred by Personnel, in connection with facilitating the foregoing transition procedures, shall be borne solely by Owner. Manager shall be entitled to take reasonable measures, including restricting access to computer servers or hard copies of files, in order to protect and prevent dissemination of any of the foregoing items set or otherwise that are the property of Manager.

Section 15.04    Termination Procedure.    Upon an election of a non-defaulting party to exercise their right to terminate this Agreement under, the non-defaulting party may, at its option, give to the defaulting party notice of intention to terminate this Agreement, which termination shall be effective after the expiration of a period of ninety (90) days following the date of such termination notice and, upon the expiration of such period, the Term shall expire on the date specified in the notice. Such termination shall be without prejudice to any right to any and all other remedies available at law or in equity subject to the terms of this Agreement.

# ARTICLE XVI

## NOTICES

Section 16.01   <u>Notices</u>.

(a)   Any notice, statement or demand required to be given under this Agreement shall be in writing and shall be deemed given or rendered if (i) delivered by hand (against a signed receipt), (ii) sent by certified or registered mail, postage prepaid, return receipt requested, (iii) sent by express or overnight courier, such as by FedEx or UPS, or (iii) sent by facsimile or email transmission, with a confirmation copy sent in a manner provided in one of subclauses (i)-(iii) above, addressed to the parties hereto at their respective addresses listed on <u>Exhibit A</u>.

(b)   All notices, statements, demands and requests shall be effective upon receipt or refusal of delivery. By giving to the other party at least thirty (30) days written notice thereof, either party shall have the right from time to time and at any time during the term of this Agreement to change their respective addresses for notices, statements, demands and requests, provided such new address shall be within the United States of America. Any consent required to be given under this Agreement in writing shall be delivered in accordance with the terms of this <u>Section 18.01</u>.

# ARTICLE XVII

## ADJUDICATON BY JURY

Section 17.04   <u>Adjudication</u>. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by a Court of Law in New York, NY, before a judge and jury.

# ARTICLE XVIII

## MISCELLANEOUS

Section 18.01   <u>Representations</u>.

(a)   Owner, as an inducement to Manager to enter into this Agreement, hereby represents and warrants and covenants as follows: (a) this Agreement has been duly authorized, executed and delivered and constitutes the legal, valid and binding obligation of Owner enforceable in accordance with the terms hereof; (b) there is no claim, litigation, proceeding or governmental investigation pending (or, to Owner's knowledge, threatened) against Owner, the properties or business of Owner or the

Section 18.02   <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of Owner, its successors and/or permitted assigns, shall be binding upon and inure to the benefit of Manager, its successors and/or permitted assigns.

Section 18.03   <u>Governing Law</u>. This Agreement shall be construed and enforced in accordance with the laws of the State of New York.

Section 18.04   <u>Confidentiality</u>. Except disclosure to obtain the advice of professionals or consultants, in connection with the financing of the Hotel from a potential lender, to investors or potential investors in the Hotel, Owner, Manager or any of their respective Affiliates, in furtherance of a permitted assignment of this Agreement, or as may be required by law or by the order of any government or tribunal, Manager, Owner, the direct and indirect beneficial owners of Owner and their respective Affiliates shall each ensure that the terms of this Agreement are not disclosed to the press or to any other third party or entity without the prior consent of Owner and Manager. In addition, the parties agree to keep confidential

15

all information of a proprietary or confidential nature about or belonging to Owner or Manager to which such Person gains or has access by virtue of the relationship between Owner and Manager. Furthermore, Manager may not disclose any specific information regarding financial performance of the Hotel to any third party, except (i) to obtain the advice of professionals or consultants, (ii) as provided in this Agreement, (iii) on a confidential basis to potential partners and/or investors in the Manager or its Affiliates or to potential new owners of Standard branded properties, or (iv) to a professional data reporting agency in accordance with standard industry practice. The obligations set forth shall survive any termination of this Agreement for a period of two (2) years following such termination. The parties shall coordinate with one another on all public statements, whether written or oral and no matter how disseminated, regarding their contractual relationship as set forth in this Agreement, or the performance by either Owner or Manager of their respective obligations hereunder. Neither party shall have any liability under this Section if such Person uses commercially reasonable efforts to maintain the confidentiality required hereby.

Section 18.05    Standard of Liability; Fiduciary Duties; Irrevocability of Contract; Competition.

(a)    Standard of Liability. Anything contained in any other provision of this Agreement to the contrary notwithstanding, Manager shall not be liable to Owner in any respect, whether during the Term or after any expiration or termination thereof, for the actions or activities of any employees, contractors, consultants or advisors employed or retained by the Hotel, whether or not recommended by Manager or employed by Manager or Manager's Affiliates other than for the gross negligence, fraud or willful misconduct on the part of Manager's corporate personnel in the performance of its duties hereunder. In addition, if an Event of Default by Manager shall have occurred and be continuing hereunder, Owner may seek compensation for actual damages sustained by Owner by reason of such breach, provided, however, that Owner shall not have the right to seek such damages from Manager for Manager's negligent (but not, for the avoidance of doubt, grossly negligent) conduct of its supervisory duties and in no event shall Manager be liable for punitive, exemplary, statutory or treble damages or any incidental or consequential damages with respect to any breach of a material obligation under this Agreement.

(b)    Competition and Corporate Opportunities. Except as provided in subsection (d) below, none of Manager, its Affiliates, nor any of their respective partners, principals, directors, officers, members, managers and employees, shall have any duty to refrain from engaging, directly or indirectly, in (i) the same or similar business activities or lines of business as the Owner or (ii) the business of managing hotels other than the Hotel. In the event that Manager, its Affiliate or any of their respective partners, principals, directors, officers, members, managers and employees, acquire knowledge of a potential transaction or matter which may be a corporate opportunity for any of Owner or Owner's Affiliates (i) neither Owner nor any Affiliate of Owner shall have any expectancy in such corporate opportunity, (ii) such Persons shall not have any duty to communicate or offer such corporate opportunity to Owner or any Affiliate of Owner and (C) such Persons may pursue or acquire such corporate opportunity or direct such corporate opportunity to another Person, including to Manager or any Affiliate of Manager.

Section 18.06    Entire Agreement. This Agreement constitutes the entire Agreement between the parties relating to the subject matter hereof, superseding all prior agreements or undertakings, oral or written. Owner and Manager hereby represent each to the other, that in entering into this Agreement neither has relied on any projection of earnings, statements as to possibility of future success or other similar matters.

Section 18.07    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. Such executed counterparts may be delivered by facsimile or electronic mail (via portable document format (pdf)) which, upon transmission to the other Party, shall have the same force and effect as delivery of the original signed counterpart.

Section 18.08    <u>Force Majeure</u>.    A party will not be liable to the other party for its inability or failure to perform, or delay in performing, any of its obligations under this Agreement caused by a Force Majeure Event provided that the party affected takes all reasonable steps to reduce the effect of such Force Majeure Event. If a party is unable to perform, in whole or in part, its obligations under this Agreement by reason of a Force Majeure Event, then such party shall be relieved of those obligations to the extent such party is so unable to perform them and such inability to perform so caused shall not make such party liable to the other.

*[Signature page follows]*

IN WITNESS WHEREOF, Owner and Manager have executed this Management and Services Agreement as of the day and year first above written.

**OWNER:**

**96 WYTHE ACQUISITION LLC**

By:  96 W Development LLC, its sole member

By:  96 Wythe Holdings LLC, its Manager

By: _____
Name:  Toby Moskovits
Title:  Authorized Signatory

**MANAGER:**

**WILLIAMSBURG HOTEL BK LLC**

By: _____
Name:  Yechial Michael Lichtenstein,
Title:  Authorized Signatory

# Exhibit A

96 Wythe Acquisition LLC,
96 Wythe Avenue
Brooklyn, New York 11249
Attn:  Toby Moskovits

The Williamsburg Hotel BK, LLC
1274 49TH  Street, Suite 184
Brooklyn, New York 11219
Attn: Yechial Michael Lichtenstein