**EXHIBIT 2**

**Execution Copy**

## ASSIGNMENT OF HOTEL MANAGEMENT AGREEMENT AND
## SUBORDINATION OF HOTEL MANAGEMENT FEES

**THIS ASSIGNMENT OF HOTEL MANAGEMENT AGREEMENT AND SUBORDINATION OF HOTEL MANAGEMENT FEES** (as amended, restated, replaced, supplemented or otherwise modified from time to time, this "**Assignment**") is made as of the 13th day of December, 2017, by **96 WYTHE ACQUISITION LLC**, a New York limited liability company, having an address at 1274 49th Street, Suite 184, Brooklyn, New York 11219 (together with its successors and permitted assigns, "**Borrower**"), to **BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P.**, a Delaware limited partnership, having an address at 142 West 57th Street, Suite 1201, New York, New York 10019 (together with its successors and assigns, "**Lender**"), and is consented and agreed to by **WILLIAMSBURG HOTEL BK LLC**, a New York limited liability company, having its principal place of business at 1274 49th Street, Suite 184, Brooklyn, New York 11219 (together with its successors and permitted assigns, "**Manager**").

### RECITALS:

A.   Borrower, by its Consolidation, Extension and Restatement of Notes Agreement of even date herewith given to Lender (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "**Note**"), is indebted to Lender in the principal sum of up to $68,000,000.00 advanced pursuant to that certain Loan Agreement, dated as of the date hereof, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), in lawful money of the United States of America, with interest from the date thereof at the rates set forth in the Loan Agreement and the Note (the indebtedness evidenced by the Loan Agreement and the Note, together with such interest accrued thereon, shall collectively be referred to as the "**Loan**"), principal and interest to be payable in accordance with the terms and conditions provided in the Loan Agreement and the Note. Initially capitalized terms used but not defined herein shall have the meanings set forth in the Loan Agreement.

B.   The Loan is secured by, among other things, the Security Instrument, which grants Lender a first lien on the Property.

C.   Borrower and Manager have agreed that Manager will manage the Property on terms set forth on <u>Exhibit A</u> attached hereto (the "**Hotel Management Agreement**") and Manager is entitled to certain hotel management fees (the "**Hotel Management Fees**") thereunder.

D.   Lender requires as a condition to the making of the Loan that Borrower assign the Hotel Management Agreement to Lender and that Manager subordinate its interest in the Hotel Management Fees in lien and payment to the Security Instrument as set forth below.

### AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

MIA 31354908v7

1. <u>Assignment of Hotel Management Agreement</u>. As additional collateral security for the Loan, Borrower hereby conditionally transfers, sets over and assigns to Lender all of Borrower's right, title and interest in and to the Hotel Management Agreement, said transfer and assignment to automatically become a present, unconditional assignment, at Lender's option, in the event of a default under the Loan Agreement or any of the other Loan Documents and the failure of Borrower to cure such default within any applicable grace period.

2. <u>Subordination of Hotel Management Agreement</u>. Manager hereby agrees that the Hotel Management Agreement, the Hotel Management Fees and any and all liens, rights, privileges and interests (whether choate or inchoate and including, without limitation, all mechanic's and materialmen's liens under applicable law) owed, claimed or held by Manager in and to the Property pursuant to the Hotel Management Agreement or otherwise, are and shall be in all respects subordinate and inferior in lien, payment and terms to the lien, payment and terms of the Security Instrument, the Note, the Loan Agreement and the other Loan Documents, and to any renewals, extensions, modifications, assignments, replacements or consolidations thereof, and to the rights, privileges and powers of Lender thereunder.

3. <u>Estoppel</u>. Each of Borrower and Manager represents and warrants that (a) the Hotel Management Agreement is in full force and effect and has not been modified, amended or assigned other than pursuant to this Assignment and constitutes the entire agreement between Manager and Borrower with respect to management of the Property, (b) neither Manager nor Borrower is in default under any of the terms, covenants or provisions of the Hotel Management Agreement and neither Borrower or Manager knows of any event which, but for the passage of time or the giving of notice or both, would constitute an event of default by either Borrower or Manager under the Hotel Management Agreement, (c) neither Manager nor Borrower has commenced any action or given or received any notice for the purpose of terminating the Hotel Management Agreement, (d) the Hotel Management Fees and all other sums due and payable to Manager under the Hotel Management Agreement have been paid in full, as of the date hereof, and (e) Manager is aware that the Leases and the Rents relating to the Property have been assigned to Lender pursuant to the Loan Documents.

4. <u>Agreement by Borrower and Manager</u>. Borrower and Manager hereby agree (a) not to materially amend, modify, replace, substitute, cancel or terminate the Hotel Management Agreement without Lender's prior written consent which will not be unreasonably withheld, delayed or conditioned and (b) that in the event of a default (continuing beyond any applicable grace or cure period) under the Note, the Security Instrument, the Loan Agreement or any of the other Loan Documents (each, an "**Event of Default**") during the term of this Assignment or upon the occurrence of any event which would entitle Lender to terminate, or cause the termination of, the Hotel Management Agreement in accordance with the Loan Agreement, Lender may require Borrower to terminate the Hotel Management Agreement and require Manager to transfer its responsibility for the management of the Property to a Qualified Manager in accordance with the terms of the Loan Agreement, effective as of the date set forth in Lender's notice to Manager. In such event, Manager shall apply all rents, security deposits, issues, proceeds and profits of the Property in accordance with Lender's written directions to Manager. Notwithstanding anything to the contrary contained herein or in any other Loan Document, so long as Manager is the initial Manager named herein, Lender shall not exercise its rights under this Section 4 or Section 5 hereinbelow unless either (i) a monetary Event of Default

2

(including failure to repay the Debt on the Maturity Date) has occurred and is continuing or (ii) a Default or an Event of Default attributable or relating to, or arising from, any acts, omissions, circumstances, conditions or events giving rise to liability under Article 12 of the Loan Agreement has occurred.

5. <u>Lender's Right to Replace Manager</u>. In addition to the foregoing, in the event that Lender, in Lender's reasonable discretion, at any time during the term of this Assignment, determines that the Property is not being managed in accordance with generally accepted management practices for properties similar in location, size, class, use, operation and value as the Property, Lender may deliver written notice thereof to Borrower and Manager, which notice shall specify with particularity the grounds for Lender's determination. If Lender reasonably determines that the conditions specified in Lender's notice are not remedied to Lender's reasonable satisfaction by Borrower or Manager within thirty (30) days from receipt of such notice or that Borrower or Manager have failed to diligently undertake correcting such conditions within such thirty (30) day period, Lender may direct Borrower to terminate Manager as manager of the Property and terminate the Hotel Management Agreement and to replace Manager with a Qualified Manager in accordance with the terms of the Loan Agreement, in which event Manager shall apply all rents, security deposits, issues, proceeds and profits of the Property in accordance with Lender's written directions to Manager.

6. <u>Hotel Management Fees</u>.

(a) Borrower and Manager hereby agree that Manager shall not be entitled to receive any Hotel Management Fees or other fee, commission or other amount payable to Manager under the Hotel Management Agreement from and after the occurrence of an Event of Default; <u>provided</u>, <u>however</u>, that notwithstanding anything to the contrary contained herein, Manager shall not be obligated to return or refund to Lender any Hotel Management Fees or other fee, commission or other amount received by Manager prior to the occurrence of the Event of Default, and to which Manager was entitled under the Hotel Management Agreement and this Assignment.

(b) Neither Manager nor any other Person shall be entitled to a termination fee, liquidated damages or any other fees or payments as a result of the replacement of Manager pursuant to the terms of this Assignment or the Loan Agreement.

(c) Manager agrees that, notwithstanding anything to the contrary contained in the Hotel Management Agreement, Manager shall not be entitled to receive compensation for its services conducted in connection with the Property in excess of three percent (3.0%) of gross rent collected from the Property.

7. <u>Consent and Agreement by Manager</u>. Manager hereby acknowledges and consents to the terms and provisions of this Assignment and Article 8 and Section 4.20 of the Loan Agreement. Manager agrees that it will act in conformity with the provisions of this Assignment, such provisions of the Loan Agreement and Lender's rights hereunder or otherwise related to the Hotel Management Agreement. In the event that the responsibility for the management of the Property is transferred from Manager in accordance with the provisions hereof or otherwise, Manager shall fully cooperate in transferring its responsibility to a new

3

management company and effectuate such transfer no later than thirty (30) days from the date the Hotel Management Agreement is terminated. Further, Manager shall (a) not contest or impede the exercise by Lender of any right it has under or in connection with this Assignment and (b) give at least thirty (30) days prior written notice to Lender of its intention to terminate the Hotel Management Agreement or otherwise discontinue its management of the Property. After exercise of Lender's rights under Section 1 of this Assignment, (i) Manager shall, subject to the terms and conditions contained herein, continue to provide management services in accordance with, and to the extent provided for in, the Hotel Management Agreement (and, if applicable, shall continue to maintain the liquor licenses at the Property for and on behalf of Lender and shall cooperate with Lender in any application by Lender to obtain new liquor licenses) and shall take no further instruction from Borrower or any Person (other than Lender) in connection therewith and (ii) neither Lender nor any successor owner of the Property shall be responsible or liable for any representation or warranty made by Borrower under the Hotel Management Agreement or for any act, omission or default by Borrower under the Hotel Management Agreement which occurred prior to exercise of Lender's rights under Section 1.

8.  Termination. At such time as the Loan is paid in full and the Security Instrument is released or assigned of record, this Assignment and all of Lender's right, title and interest hereunder with respect to the Hotel Management Agreement shall terminate.

9.  Notices. All notices or other communications hereunder shall be in writing and shall be given in accordance with Section 15.5 of the Loan Agreement. Any notice or other communication to Manager shall be addressed as follows (or at such other address and Person as shall be designated by Manager from time to time):

If to Manager:    Williamsburg Hotel BK, LLC
                  1274 49th Street, Suite 184,
                  Brooklyn, New York 11219

10. No Verbal Change. This Assignment, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated verbally or by any act or failure to act on the part of Borrower, Lender or Manager, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

11. Liability. This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and permitted assigns forever. Lender shall have the right to assign or transfer its rights under this Assignment in connection with any assignment of the Loan and the Loan Documents. Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Assignment. Neither Borrower nor Manager shall have the right to assign or transfer its rights or obligations under this Assignment without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

12. Inapplicable Provisions. If any provision of this Assignment is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Assignment, such provision shall be fully severable and this Assignment shall be construed and

enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Assignment, and the remaining provisions of this Assignment shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Assignment, unless such continued effectiveness of this Assignment, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

13. <u>Governing Law; Submission to Jurisdiction</u>. The governing law and related provisions set forth in Section 15.4 of the Loan Agreement are hereby incorporated by reference as if fully set forth herein (with Borrower and Manager substituted in all places where Borrower appears thereunder) and shall be deemed fully applicable to Borrower and Manager hereunder. Borrower and Manager hereby certify that they have received and reviewed the Loan Agreement (including, without limitation, Section 15.4 thereof). In the event of any conflict or inconsistency between any of the other terms and conditions of this Agreement and this Section 13, this Section 13 shall control.

14. <u>Headings, etc</u>. The headings and captions of the various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

15. **<u>Waiver Of Trial By Jury</u>**. BORROWER, MANAGER AND LENDER EACH HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS ASSIGNMENT OR ANY OTHER LOAN DOCUMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, MANAGER AND LENDER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

16. <u>Duplicate Originals, Counterparts</u>. This Assignment may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

17. <u>Number and Gender</u>. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

18. <u>Secondary Market</u>. Lender may sell, transfer and deliver the Note and assign the Security Instrument, this Assignment and the other Loan Documents to one or more investors in

5

the secondary mortgage market and, in connection with such sale, Lender may retain or assign responsibility for servicing the Loan, including the Note, the Security Instrument, this Assignment and the other Loan Documents, or may delegate some or all of such responsibility and/or obligations to a servicer including, but not limited to, any subservicer or master servicer. All references to Lender herein shall refer to and include any such servicer to the extent applicable.

19.   Lender's Reliance on Representations. Manager has executed this Agreement in order to induce Lender to accept the Security Instrument and the Loan Documents and with full knowledge that Lender shall rely upon the representations, warranties and agreements herein contained, and that but for this Assignment and the representations, warranties and agreements herein contained, Lender would not take such actions.

20.   Management. Borrower and Manager hereby agree that Manager will perform the management services for the Property set forth in the Hotel Management Agreement.

21.   Manager Not Entitled to Gross Revenues. At all times during the term of the Loan, all portions of the Rents, security deposits, issues, proceeds, profits and other revenues of the Property collected by Manager, if any, shall be handled and applied in accordance with Article 8 of the Loan Agreement. Manager acknowledges and agrees that all portions of the Rents, security deposits, issues, proceeds, profits and other revenues of the Property collected by it shall be solely in it is capacity as the agent for the Borrower, such monies are the sole property of the Borrower, encumbered by the lien of the Security Instrument and other Loan Documents in favor of Lender and Manager has no right to, or title in, such monies except as provided in the Management Agreement, or at law or equity. In any bankruptcy, insolvency or similar proceeding the Manager, or any trustee acting on behalf of the Manager, waives any claim to such monies other than pursuant to the terms and conditions of the Management Agreement or at law or equity.

22.   Miscellaneous.

(a)   Wherever pursuant to this Assignment (i) Lender exercises any right given to it to approve or disapprove any matter, (ii) any arrangement or term is to be satisfactory to Lender, or (iii) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove such matter, all decisions that arrangements or terms are satisfactory or not satisfactory to Lender and all other decisions and determinations made by Lender, shall be in the sole and absolute discretion of Lender and shall be final and conclusive, except as may be otherwise expressly and specifically provided herein.

(b)   Wherever pursuant to this Assignment it is provided that Borrower shall pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable legal fees and disbursements of Lender.

(c)   If more than one Person has executed this Assignment as "Borrower" or as "Manager," the obligations of all such Persons hereunder shall be joint and several.

6

23. <u>Inconsistencies</u>.  In the event of any inconsistency between the terms and conditions of this Assignment and the terms and conditions of the Hotel Management Agreement, the terms and conditions set forth in this Assignment shall govern.

**[NO FURTHER TEXT ON THIS PAGE]**

IN WITNESS WHEREOF the undersigned have executed this Assignment as of the date and year first above written.

**BORROWER:**

**96 WYTHE ACQUISITION LLC,**
a New York limited liability company

By: *[signature]*
Name: Toby Moskovits
Title: Authorized Signatory

**LENDER:**

**BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P.,**
a Delaware limited partnership

By: _____
Name: Micah Goodman
Title: Authorized Signatory

**MANAGER:**

**WILLIAMSBURG HOTEL BK LLC,**
a New York limited liability company

By: *[signature]*
Name: Michael Lichtenstein
Title: Authorized Signatory

Assignment of Management Agreement

IN WITNESS WHEREOF the undersigned have executed this Assignment as of the date and year first above written.

**BORROWER:**

**96 WYTHE ACQUISITION LLC,**
a New York limited liability company

By: _____
Name: Toby Moskovits
Title: Authorized Signatory

**LENDER:**

**BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P.,**
a Delaware limited partnership

By: _____
Name: Micah Goodman
Title: Authorized Signatory

**MANAGER:**

**WILLIAMSBURG HOTEL BK LLC,**
a New York limited liability company

By: _____
Name: _____
Title: _____

Assignment of Management Agreement

## EXHIBIT A

## HOTEL MANAGEMENT AGREEMENT

Manager a real estate development and management firm, shall perform all work in connection with the on-site management of Property, including F&B operations. Manager will employ at its expense all personnel and facilities necessary and appropriate to enable it to perform the services required of it hereunder.

All accounting duties, including the keeping of proper and complete books of account for the Borrower shall be kept by or under the supervision of the Borrower. The Manager shall assist in providing any information in its possession necessary or helpful for the accounting function.

Manager shall receive a management fee in the amount of 3.0% of the gross rents as of January 1 of each year, payable on the first day of each month throughout the calendar year.

The term of the management services required hereunder shall be for one year, and shall automatically renew for an additional one-year term unless notice of termination is given by Borrower or Manager at least thirty (30) days prior to the expiration of the then current term. Thereafter, for successive one-year terms unless such notice of termination is given as provided above.