Hearing Date: August 2, 2022, at 10:00 a.m.

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in*
*His Capacity as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                :
In re:                                          :    Chapter 11
                                                :
96 WYTHE ACQUISITION LLC,                       :    Case No. 21-22108 (SHL)
                                                :
                    Debtor.                     :
                                                :
----------------------------------------------------------------x

**CHAPTER 11 TRUSTEE'S REPLY TO LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE WILLIAMSBURG HOTEL BK LLC, TOBY MOSKOVITS AND MICHAEL LICHTENSTEIN TO CHAPTER 11 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING REJECTION OF MANAGEMENT AGREEMENTS**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the estate (the "Estate") of 96 Wythe Acquisition LLC (the "Debtor"), by his attorneys, Togut, Segal & Segal LLP, hereby submits this reply (the "Reply") to the limited objection and reservation of rights [Dkt. No. 634] (the "Limited Objection") filed by Williamsburg Hotel BK LLC (the "Manager"), Toby Moskovits and Michael Lichtenstein (together, the "Principals" and, together with the Manager, the "Objectors") filed in response to the *Chapter 11 Trustee's Application for an Order Authorizing Rejection of Management Agreements*, filed on July 15, 2022 [Dkt. No.

623] (the "Motion").[1] In support of the Motion and this Reply, the Trustee respectfully states:

### PRELIMINARY STATEMENT

The only matter presented by the Motion is the Trustee's right to reject the Management Agreements between the Debtor and the Manager.

The Principals are the equity owners of both the Debtor and the Manager, and on May 26, 2022, this Court determined that the Principals and the Manager should not be permitted to manage the Hotel, and that a trustee should be appointed to do so. For that reason, the Trustee filed the Motion to reject the Management Agreements as of the date of his appointment.

The Objectors do not dispute the Trustee's right to reject the Management Agreements[2], and the Trustee has negotiated the form of an order (the "Proposed Order") that is acceptable to the Trustee, the Objectors and Benefit Street, the Debtor's secured lender. Clean and red-lined versions of the Proposed Order are annexed hereto as Exhibits "1" and "2," respectively, to highlight the revisions to the order that was filed with the Motion.

Entry of the Proposed Order will, subject to approval by this Court, fully resolve the relief sought by the Trustee's Motion to preserve and protect the Estate, and it will avoid any doubt that the Trustee, and only the Trustee, is authorized to manage the Hotel and the Debtor's affairs.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

[2] "The Objectors do not oppose the Trustee's rejection of the Management Agreements." Ltd. Obj. ¶6.

Other matters and assertions contained in the Limited Objection are inaccurate, unsupported by evidence, and although not before the Court for adjudication, require responses to avoid prejudice to the Trustee and the Debtor's Estate.

## RESPONSE

1. On May 26, 2022, following a two-day evidentiary hearing, the Court determined that there was cause to remove the Manager and for the appointment of a Chapter 11 trustee pursuant to section 1104(a)(1) of the Bankruptcy Code.[3] Bankruptcy Judge Drain held:

> "I believe the evidence is clear and convincing [that] one cannot trust the Debtor's principals to deal like fiduciaries with this Debtor. In multiple ways, they have not done so. I believe they've created documents after the fact to increase their leverage or to make their legal position stronger. And that's cause for appointment of a trustee…
>
> [i]t is clear to me that Congress would require their replacement for what they have done pre-petition and what they have not done in terms of fair and honest dealings with the Court and creditors post-petition." May 26, 2022 Tr. of Hr'g (the "May 26 Hearing Transcript") at 123:10-19, 124:7-11

2. Since his appointment on May 26, 2022, the Trustee has reached out to no less than three separate law firms who have represented the Objectors to seek their assistance including, without limitation, the turnover of not less than $602,000 of property of the Estate that was transferred to the Objectors and their affiliates after the

---

[3] *See Order Granting Motions to Appoint a Chapter 11 Trustee* [Dkt No. 591] (the "Trustee Appointment Order") (appointing a Chapter 11 trustee pursuant to section 1104(a)(1) of the Bankruptcy Code, which includes "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . . .")

3

Petition Date.[4]  To date, the Managers have not complied with those demands. Moreover, the Objectors have otherwise interfered with the Trustee's operation of the Hotel which, among other things, required the Trustee to address the Manger's actions that impeded the Trustee's operation of the Hotel's online reservation system, which is at the heart of the Hotel's revenue and enterprise value.

3.    It is against this backdrop, that the Trustee is constrained to respond to misrepresentations contained in the Limited Objection.

A.    **Hotel Employees, Vendors and Accounts**

4.    The Objectors assert, incorrectly, that since his appointment, the Trustee has relied "on the Manager's employees, vendors, brand equity and infrastructure . . ." *See* Ltd. Obj. ¶ 4.  That assertion is incorrect, and it is at odds with the Debtor's prior representations to the Court.

5.    In the *Local Rule Statement* filed by the Debtor, David Goldwasser, the Debtor's chief restructuring officer, declared under oath: "[t]he Debtor has approximately 80 employees" and "[t]he Debtor has reopened and employs 80 workers."  *See* Local Rule Statement, Dkt. No. 8, ¶¶ 3, 39.

6.    While the initial payroll cycles for the Hotel employees were processed through a payroll service established by the Manager during the period immediately following the Trustee's appointment for convenience and value-preservation only, the Trustee now processes the payroll for the employees at the Hotel through an account that he established.  Thus, they are employees of the Trustee.

7.    Similarly, immediately following his appointment, the Trustee took

---

[4]    *See* Report of Examiner, Eric M. Huebscher, p.p. 24, 28.  The Examiner's Report also identifies millions of dollars of avoidable transfers to and for the benefit of the Objectors and their affiliates.

4

control of all of the Debtor's and Manager's bank accounts and he established his own trustee accounts to manage the Hotel and the Debtor's affairs.[5]

8. Next, contrary to the assertions contained in the Limited Objection, the Trustee has not interrupted the provision of any goods and services to the Hotel. Indeed, he has and will continue to timely pay all valid vendors and contract counterparties for allowed amounts on account of post-petition goods and services to the Hotel. Moreover, the Trustee has paid and brought current 44 separate post-petition vendor accounts that were delinquent and owed $263,262 when he was appointed.

9. The Trustee has actively engaged with the providers of post-petition goods and services to ensure a seamless transition to the Trustee as he manages the Hotel. The Trustee has also communicated with the Objectors' current counsel to begin to implement any remaining transition of third-party goods and services to the Hotel that require the Objectors involvement. He will determine, in his business judgment, which third-party vendor contracts should be assigned to the Debtor or be replaced with new direct agreements with the Debtor.

10. The Manager's only known business was to manage the Hotel, which is owned by the Debtor. Employees at the Hotel have always considered themselves employees of the Hotel, and their loyalty is to the Hotel, not the Manager. Similarly, the Trustee has discovered that vendors to the Hotel have always viewed the Hotel as its customer.

---

[5] Certain of the Manager's bank accounts remain open while the Trustee transitions certain credit card processors from the Manager's bank accounts to the Trustee's accounts. However, those accounts have been under the Trustee's exclusive control since his appointment pursuant to the Court's *Order Granting the Application for Appointment of Chapter 11 Trustee* [Dkt. No. 594].

11.     The Trustee alone is authorized to operate the Hotel and the Debtor's affairs, and he has done so successfully notwithstanding the Objectors' actions and failures to cooperate.[6]

**B.    Intellectual Property**

12.     The Trustee believes that the Debtor has interests in the Hotel's name and the other intellectual property associated with the Hotel, and he disputes the Manager's assertions to the contrary. See Ltd. Obj. at ¶¶11-13.

13.     The registration of the name "The Williamsburg Hotel" that is annexed as Exhibit 3 to the Limited Objection displays a registration in favor of Toby Moskovits on March 2, 2021, *after* the February 23, 2021 Petition Date, and that registration follows "First Use 12-31-2016: In Commerce 12-31-2016."

14.     The Trustee intends to promptly retain special intellectual property counsel to address the Debtor's rights in all intellectual properties, and he will investigate how the Debtor's name was registered in favor of Ms. Moskovits, an insider of both the Debtor and the Manager, post-petition.

15.     In the interim, the Hotel will continue to use its name as it has done since the commencement of this case without objection by, or compensation to, Ms. Moskovits and the Manager, with all of the parties' rights and claims being preserved.

---

[6] The Hotel has operated on a positive cashflow basis under the Trustee's supervision. In the first month of the Trustee's tenure, the Hotel produced $1 million of net operating income.

6

## CONCLUSION

16. The Trustee has and will continue to act to preserve and enhance the value of the Hotel and the Debtor's Estate, and he respectfully requests entry of the Proposed Order, and such other and further relief that may be appropriate.

DATED: August 1, 2022
         New York, New York

                              STEPHEN S. GRAY
                              Not Individually But Solely in His
                              Capacity as Chapter 11 Trustee
                              By His Attorneys,
                              TOGUT, SEGAL & SEGAL LLP
                              By:

                              */s/ Neil Berger*
                              ALBERT TOGUT
                              FRANK A. OSWALD
                              NEIL BERGER
                              One Penn Plaza, Suite 3335
                              New York, New York 10119
                              (212) 594-5000

# EXHIBIT 1

**Revised Proposed Order**
**(Clean)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
96 WYTHE ACQUISITION LLC, : Case No. 21-22108 (SHL)
: 
Debtor. : 
: 
---------------------------------------------------------------x

### ORDER GRANTING CHAPTER 11 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING REJECTION OF MANAGEMENT AGREEMENTS

Upon the application (the "Motion")[1] of the Trustee, by his attorneys, Togut, Segal & Segal LLP, for entry of an order (this "Order") pursuant to section 365(a) of the Bankruptcy Code, Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6006-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing the rejection of the Management Agreements, all as more fully set forth in the Motion and the Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 the Amended Standing Order; and the Court having found that this is a core proceeding pursuant to 28 U.S. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having reviewed the Motion and the Declaration in support thereof, and the limited objection and reservation of rights filed by the Manager and the Principals [ECF No. 634]; and the Court being satisfied that due and sufficient notice of the Motion has been given under the particular circumstances; and it appearing that no other or further notice of the Motion need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtor, its estate, its creditors, its stakeholders, and

---

[1]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the Motion at a hearing, if any (the "Hearing"); and upon the record of the Hearing, after due deliberation, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is GRANTED to the extent set forth herein.

2. Pursuant to section 365(a) of the Bankruptcy Code, the Management Agreements are rejected, effective as of May 31, 2022 (the "Rejection Date").

3. Nothing contained herein affects the status of (or rights and obligations under) the Assignment Agreement.

4. The Debtor shall not be liable for any administrative expenses arising from or in connection with the Management Agreements after the Rejection Date. As of the Rejection Date, the Debtor is relieved from any and all payments or performance due under such Management Agreements; *provided*, *however*, that nothing herein shall constitute a determination of any claims arising from or related to the Management Agreements or the rejection of them, and the Trustee's, the Manager's and Benefit Street's rights are expressly preserved in full and not waived.

5. The rights of third-party vendors and contract counterparties who are not affiliates of the Debtor, the Manager, and the Principals to assert Chapter 11 administrative claims against the Debtor for goods supplied or services rendered to the Debtor which were invoiced to the Manager are expressly preserved, and nothing contained herein waives or otherwise impairs the Trustee's rights to inspect and challenge such invoices and claims. The Manager shall not be

2

liable for any claims by such third parties for any services rendered or goods supplied to the Debtor after the Rejection Date.

6. Notwithstanding the rejection of the Management Agreements authorized by this order, nothing contained herein shall be deemed to address the issues of ownership and/or use of any trademarks, brand and brand collateral associated with the operation of the Debtor's Hotel.

7. To be timely, any claim asserted by the Manager on account of rejection damages or arising from or relating to the Management Agreements must be filed not later than forty-five (45) days from the date hereof.

8. The Trustee shall serve a copy of this order upon the Notice Parties by email not later than two (2) business days after the date of entry of this Order.

9. This Order is effective immediately notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

10. The Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

11. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  New York, New York
        August __, 2022

                                            _____
                                            **HONORABLE SEAN H. LANE**
                                            **UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT 2

**Proposed Order**
**(Redlined)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re:                                          :     Chapter 11
:
96 WYTHE ACQUISITION LLC,                       :     Case No. 21-22108 (SHL)
:
Debtor.                         :
:
------------------------------------------------------------x

# ORDER GRANTING CHAPTER 11 TRUSTEE'S APPLICATION FOR AN ORDER AUTHORIZING REJECTION OF MANAGEMENT AGREEMENTS

Upon the application (the "Motion")[1] of the Trustee, by his attorneys, Togut, Segal & Segal LLP, for entry of an order (this "Order") pursuant to section 365(a) of the Bankruptcy Code, Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6006-1(a) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), authorizing the rejection of the Management Agreements, all as more fully set forth in the Motion and the Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 the Amended Standing Order; and the Court having found that this is a core proceeding pursuant to 28 U.S. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having reviewed the Motion and the Declaration in support thereof, and the limited objection and reservation of rights filed by the Manager and the Principals [ECF No. 634]; and the Court being satisfied that due and sufficient notice of the Motion has been given under the particular circumstances; and it appearing that no other or further notice of the Motion need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtor, its estate, its creditors, its stakeholders, and

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the Motion at a hearing, if any (the "Hearing"); and upon the record of the Hearing, after due deliberation, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is GRANTED to the extent set forth herein.

2. Pursuant to section 365(a) of the Bankruptcy Code, the Management Agreements are rejected, effective as of May 31, 2022 (the "Rejection Date").

3. ~~For the avoidance of doubt, the rejection of the Management Agreements does not include the rejection of~~ Nothing contained herein affects the status of (or rights and obligations under) the Assignment Agreement.

4. The Debtor shall not be liable for any administrative expenses arising from or in connection with the Management Agreements after the Rejection Date. As of the Rejection Date, the Debtor is relieved from any and all payments or performance due under such Management Agreements; *provided*, *however*, that nothing herein shall constitute a determination of any claims arising from or related to the Management Agreements or the rejection of them, and the Trustee's, the Manager's and Benefit Street's rights are expressly preserved in full and not waived.

5. The rights of third-party vendors and contract counterparties who are not affiliates of the Debtor, the Manager, and the Principals to assert Chapter 11 administrative claims against the Debtor for goods supplied or services rendered to the Debtor which were invoiced to the Manager are expressly preserved, and nothing contained herein waives or otherwise impairs the Trustee's rights to inspect and challenge such invoices and claims. The Manager shall not be

liable for any claims by such third parties for any services rendered or goods supplied to the Debtor after the Rejection Date.

6. Notwithstanding the rejection of the Management Agreements authorized by this order, nothing contained herein shall be deemed to address the issues of ownership and/or use of any trademarks, brand and brand collateral associated with the operation of the Debtor's Hotel.

7. To be timely, any claim asserted by the Manager on account of rejection damages or arising from or relating to the Management Agreements must be filed not later than forty-five (45) days from the date hereof.

~~5.~~8. The Trustee shall serve a copy of this order upon the Notice Parties by email not later than two (2) business days after the date of entry of this Order.

~~6.~~9. This Order is effective immediately notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

~~7.~~10. The Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

~~8.~~11. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  New York, New York
         ~~_____,~~August __, 2022

                                                      **HONORABLE SEAN H. LANE**
                                                      **UNITED STATES BANKRUPTCY JUDGE**