Hearing Date: October 19, 2022, at 2:00 p.m. (Prevailing Eastern Time)
Objection Deadline: September 30, 2022, at 4:00 p.m. (Prevailing Eastern Time)

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Bryan M. Kotliar
Amy M. Oden

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

In re:                                          :
                                                :          Chapter 11
                                                :
96 Wythe Acquisition, LLC,                      :
                                                :          Case No. 21-22108 (SHL)
                           Debtor.              :
                                                :
---------------------------------------------------------------x

### NOTICE OF ZOOM HEARING ON CHAPTER 11 TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.

**PLEASE TAKE NOTICE** that a hearing will be held on **October 19, 2022, at 2:00 p.m. (ET)** (the "Hearing Date"), before the Honorable Sean H. Lane, United States Bankruptcy Judge, to consider the annexed Motion[1] of Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the "Debtor"), for entry of an order (the "Order"), a true and complete copy of which is annexed to the Motion as Exhibit A, approving the Settlement Agreement between the Trustee and Benefit Street Partners Realty Operating Partnership, L.P. ("BSP" or "Lender" and, together with the Trustee, the "Parties"), a copy of which is attached to the Proposed Order as **Exhibit 1** (the "Settlement Agreement").

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**PLEASE TAKE FURTHER NOTICE THAT** in light of the COVID-19 pandemic, the Hearing will take place via Zoom for Government.  Those wishing to appear before the Court at the Hearing, must register their appearance utilizing the Electronic Appearance portal located on the Court's website: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl.  Appearances must be entered no later than 4:00 p.m. (Prevailing Eastern Time) one business day before the hearing.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Order must be made in writing and conform with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and be filed with the Clerk of the Bankruptcy Court at the address set forth above, with a copy delivered directly to Bankruptcy Judge Lane's Chambers, and served upon (i) the undersigned attorneys for the Trustee and (ii) the Office of the United States Trustee, Attn:  Greg M. Zipes, Trial Attorney (Greg.Zipes@usdoj.gov), so as **to be filed and actually received by all of them not later than 4:00 p.m. (prevailing Eastern Time) on September 30, 2022 (the "Objection Deadline")**.  If no timely written objections are filed and received in accordance with the foregoing, the Order may be signed by the Court.

**PLEASE TAKE FURTHER NOTICE THAT** if no objections to the entry of the Proposed Order are timely filed and served on or before the Objection Deadline, the Proposed Order may be entered by the Court.

*[remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that, you may also obtain copies of any

pleadings by visiting the Court's website at https://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

DATED:    September 13, 2022
            New York, New York

                                  STEPHEN S. GRAY
                                  Not Individually But Solely in His
                                  Capacity as Chapter 11 Trustee
                                  By His Attorneys,
                                  TOGUT, SEGAL & SEGAL LLP
                                  By:

                                  */s/ Frank A. Oswald*
                                  ALBERT TOGUT
                                  FRANK A. OSWALD
                                  BRYAN M. KOTLIAR
                                  AMY M. ODEN
                                  One Penn Plaza, Suite 3335
                                  New York, New York 10119
                                  (212) 594-5000

**Hearing Date and Time:  October 19, 2022 at 2:00 p.m. (Eastern Time)**
**Objection Deadline:  September 30, 2022 at 4:00 p.m. (Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Bryan M. Kotliar
Amy M. Oden

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re:                                                      :        Chapter 11
                                                            :
96 WYTHE ACQUISITION LLC,                                   :        Case No. 21-22108 (SHL)
                                                            :
                              Debtor.                       :
                                                            :
------------------------------------------------------------x

## CHAPTER 11 TRUSTEE'S
## APPLICATION TO APPROVE SETTLEMENT AGREEMENT
## WITH BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11

Trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the "Debtor") in the

above-captioned case (the "Chapter 11 Case"), hereby makes this application

(the "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), approving the Settlement Agreement between the

Trustee and Benefit Street Partners Realty Operating Partnership, L.P. ("BSP"

or "Lender" and, together with the Trustee, the "Parties"), a copy of which is attached

to the Proposed Order as **Exhibit 1** (the "Settlement Agreement").[1]  In support of this

Motion, the Trustee submits his declaration, a copy of which is attached hereto as

**Exhibit B** (the "Gray Declaration"), which is incorporated herein by reference.  In

further support of this Motion, the Trustee, by and through his counsel, respectfully

represents:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C.

§ 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012

(Preska, C.J.) (the "Amended Standing Order").  This is a core proceeding pursuant to

28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and

1409.

2.     The Trustee confirms his consent, pursuant to Bankruptcy Rule

7008, to the entry of a final order by the Court in connection with this Motion to the

extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection with this Motion consistent with

Article III of the United States Constitution.

3.     The predicates for the relief sought herein are sections 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

### GENERAL BACKGROUND

4.     On February 23, 2021 (the "Petition Date"), the Debtor filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the Southern District of New York (the "Court").

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in
the Settlement Agreement.

5.    No official committee of unsecured creditors has been appointed in this Chapter 11 Case.

6.    On October 15, 2021, BSP filed its *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Docket No. 147], which was granted by the Court on November 8, 2021 pursuant to the *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Docket No. 178].  That order was amended on November 23, 2021 by the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Docket No. 193], and on December 14, 2021 by the *Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Docket No. 224].

7.    On November 16, 2021, the Court entered the *Order Approving Appointment of Examiner* [Docket No. 186], and Eric M. Huebscher was appointed as the examiner (the "Examiner") in this Chapter 11 Case.

8.    On February 28, 2022, the Examiner issued his report (the "Examiner Report") in which he reported that the Principals had exhibited "extreme resistance to [his] investigation" and found that the Principals "engaged in a scheme to siphon off any monies generated by the Debtor's hotel operations, through the illegitimate control of the [Debtor's management company, Williamsburg Hotel BK, LLC (the "Manager")], to unrelated entities owned by the Principals[,]" which "scheme diverted millions of dollars from the Debtor" [Docket No. 418].  The Examiner concluded that further investigation of the Debtor's affairs is warranted.

9.    On March 21, 2022, the Examiner issued a supplemental report which stated that the Principals and their affiliates continued to frustrate his investigative efforts, and he reiterated his conclusion that "[o]verwhelming evidence exists to support continuation of the investigation by the Examiner or others" [Docket No. 465].

10.     On March 28, 2022, BSP filed its *Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance* [Docket No. 476], raising concerns of impropriety in the Debtor's management, and requesting the appointment of a chapter 11 trustee.

11.     Following an evidentiary hearing conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, 2022, and after reading its ruling into the record on May 26, 2022, the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* on May 27, 2022 [Docket No. 591].  On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the Trustee's appointment as Chapter 11 Trustee [Docket No. 593].

12.     On May 31, 2022, the Court entered its *Order Granting the Application for Appointment of Chapter 11 Trustee* [Docket No. 594], pursuant to which the Trustee was appointed as Chapter 11 Trustee herein.  The Trustee has duly qualified and is acting as Chapter 11 Trustee and since then he has been managing and operating the Debtor.

## **BACKGROUND SPECIFIC TO THIS MOTION**

### A.     **The Loan and Defaults**

13.     On December 13, 2017, BSP made a loan to the Debtor in the principal amount of $68 million to finance the construction and operation of the Williamsburg Hotel (the "Loan"), governed and evidenced by, among other things, a certain Loan Agreement by and between BSP and the Debtor dated December 13, 2017

(the "Loan Agreement").[2]  On December 10, 2018, BSP sent the Debtor a notice of default, notifying the Debtor that it had defaulted under the Loan based on (1) the Debtor's failure to make the December 2018 interest payment, and (2) the Debtor's failure to fund $581,323.33 of additional amounts that were required to be deposited into the Interest Reserve Account (as defined in the Loan Agreement) in November 2018.[3]  BSP thereafter sent the Debtor additional default notices in January, March, and June of 2019 for failure to make payments under the Loan, including the failure to repay the full balance of the Loan upon its maturity.[4]

**B.    The State Court Litigation and Appellate Decision**

14.    On June 11, 2019, BSP commenced a foreclosure action in the Supreme Court of the State of New York, New York County, Index No. 653396/2019 (the "Foreclosure Action").[5]  On August 30, 2019, the Debtor filed its answer, affirmative defenses, and counterclaims (the "Foreclosure Counterclaims") in the Foreclosure Action (collectively, the "Foreclosure Answer").[6]

15.    In the Foreclosure Counterclaims, the Debtor alleged that the Lender's conduct gave rise to liability that it could set off against the Loan.  Broadly, the Debtor's factual allegations relate to the following topics:  (1) the Debtor's failure to complete the Business Plan Work (as defined in the Loan Agreement); (2) the Lender's right to charge additional 0.5% interest due to the Debtor's failure to timely perform

---

[2]    *See* Adv. Pro. No. 22-07002 (RDD) (Bankr. S.D.N.Y. Jan. 6, 2022) (the "Adversary Proceeding"), Verified Foreclosure Complaint [Docket No. 1] (the "Adversary Complaint") ¶ 24 & Ex. A.

[3]    *Id.* ¶ 68.

[4]    *Id.* ¶¶ 78, 80, 87.

[5]    *Id.* ¶ 104.

[6]    Foreclosure Action, 96 Wythe Acquisition LLC, Toby Moskovits, and Yechiel Michael Lichtenstein's Amended Verified Answer to Verified Complaint with Counterclaims [Docket No. 32].

under the Loan Agreement; (3) the Debtor's failure to replenish the Interest Reserve Account in accordance with the Loan Agreement; (4) the Lender's acceptance of cure payments from the Debtor's mezzanine lender and communications with the mezzanine lender regarding amounts required for such cure; (5) the Lender's calling of defaults under the Loan Agreement for, among other things, the Debtor's failure to replenish the Interest Reserve Account as required and repay the Loan on maturity; and (6) the Debtor's inability to refinance the Loan due to its defaults under the Loan Agreement.[7]

16.     Upon these allegations, the Debtor alleged counterclaims for Breach of Contract, Breach of Duty of Good Faith and Fair Dealing, and Declaratory Judgment seeking a declaration that the Loan was not in default, that the Debtor was entitled to a credit of interest, and that the Debtor was entitled to exercise an extension option under the Loan.[8]

17.     Moreover, the Debtor asserted various affirmative defenses,[9] including, without limitation:

- the doctrine of unclean hands (*see* Eighth Affirmative Defense (citing "bad faith conduct in wrongfully attempting to hold Defendants in default, preventing Borrower from extending the loan, charging default interest to Borrower, and incorrectly increasing the amounts Plaintiff alleges it is owed"));

- breach of contract;

- breach of covenant of good faith and fair dealing; and

---

[7]     *See generally* Foreclosure Counterclaims ¶¶ 11–72.

[8]     *See generally id.* ¶¶ 73–87.

[9]     *See generally* Foreclosure Answer ¶¶ 152–68.

- set-off and recoupment (citing "Plaintiff's willful and egregious conduct in unjustifiably calling a default when none actually existed").

18.     BSP moved for summary judgment on its foreclosure claim and Debtor's Foreclosure Counterclaims and affirmative defenses.[10]  After substantial briefing on the merits and litigation, on April 9, 2020, the Supreme Court entered a Decision and Order on Motion [Docket No. 178] (the "Summary Judgment Order"). While the Supreme Court denied BSP's motion for summary judgment on its foreclosure claim, it did dismiss the Debtor's Second (assignment), Fourth (statute of limitations), Fifth (laches), Eleventh (statute of frauds), Twelfth (good faith and fair dealing), Thirteenth (res judicata or collateral estoppel) and Sixteenth (culpable conduct of others) Affirmative Defenses.  *Id.* at 8.  Moreover, the Supreme Court dismissed the Debtor's Second Counterclaim for breach of covenant of good faith and fair dealing and the Third Counterclaim seeking declaratory judgment, each as duplicative of the Debtor's breach of contract claim.  *Id.* at 7.

19.     BSP appealed the Summary Judgment Order.[11]  The appeal was docketed in the First Department as Appellate Case No. 2020-03532 (the "Appeal").  The First Department agreed with BSP and, in its ruling dated February 16, 2021, partially reversed the Summary Judgment Order and granted summary judgment in full for BSP (the "Appellate Decision").[12]

---

[10]    Foreclosure Action, Plaintiff's Order to Show Cause for Summary Judgment and an Order of Reference [Docket No. 136].

[11]    Foreclosure Action, Notice of Appeal [Docket No. 279].

[12]    *See Benefit St. Partners Operating P'Ship, L.P. v. 96 Wythe Acquisition LLC*, 191 A.D.3d 520, 138, N.Y.S.3d. 348 (2021).

20.    On Appeal, both parties made a thorough briefing of the issues previously argued before the trial court on the merits.  BSP argued that:  (1) the trial court erred in denying summary judgment on the Debtor's defaults, (2) BSP never prevented or excused the Debtor's performance under the Loan Agreement, (3) all of the Debtor's affirmative defenses should have been dismissed, and (4) the Debtor's breach of contract counterclaim should have been dismissed.[13]  Debtor reargued its case that BSP had perpetrated alleged various bad acts that supported the trial court's denial of summary judgment and otherwise should support the various affirmative defenses and counterclaims that the trial court dismissed.[14]  In reply, BSP emphasized, among other things, that the Debtor failed to rebut the existence of defaults under the Loan and reinforced the propriety of the trial court's dismissal of their various affirmative defenses, including those alleging inequitable conduct.[15]  BSP also argued that the Debtor conceded that it waived all of its affirmative defenses in the Loan Documents and that the Debtor had failed to establish that it met basic conditions for obtaining an extension of the Loan by, among other things, failing to even seek such an extension.[16]

21.    Upon these briefs and a comprehensive record of more than 2,000 pages, the First Department rendered its Appellate Decision, which held as follows:

> Plaintiff established prima facie entitlement to summary judgment by producing the mortgage, note, and guaranty executed by defendants, and evidence of defendants' default on their obligations thereunder, including their failure to timely repay the principal balance of the loan.  Defendants failed to rebut that evidence, and they waived their affirmative defenses and counterclaims. The record does not

---

[13]    *See generally* Appeal, Brief for Plaintiff-Appellant [Docket No. 8].

[14]    *See generally* Appeal, Brief for Defendants-Respondents [Docket No. 16].

[15]    *See generally* Appeal, Reply Brief for Plaintiff-Appellant [Docket No. 18].

[16]    *Id.*

> support defendants' contention that the waiver of defenses
> provisions was rendered ineffective because the lender
> caused or contributed to the loan default. In any event, the
> defenses and counterclaims were not viable.

Appellate Decision at 521.

22.    Justice Ostrager of the New York Supreme Court noted in a hearing

on February 18, 2021, two days after the First Department handed down the Appellate

Decision and just five days before the Petition Date:

> You're all aware that the Appellate Division rendered a
> decision in the last couple of days which essentially granted
> the plaintiffs motion for summary judgment on the
> foreclosure aspect of the case. And therefore, the next thing
> that we should be doing would be preparing to implement
> the Appellate Division's decision allowing the plaintiff to
> foreclose on its mortgage.

February 18, 2021, Hearing Transcript in Case Number 653396-2019 [Docket No. 34],

3:2–8.

## C.    Debtor's Adversary Proceeding Against BSP

23.    At the very first hearing in the Debtor's Chapter 11 Case, on March

2, 2021, after having read the dispositive Appellate Decision rendered shortly before the

Petition Date, the Court[17] expressed concern over the Debtor's intended use of the

bankruptcy process to relitigate state law matters already adjudicated. In that regard,

the Court and Debtor's counsel had the following exchange:

> THE COURT:    I did read the Appellate Division decision that was
> attached to the -- BSP's objection. And while obviously it
> dealt with the Debtor, and not rights of Creditors, that it
> would be independent, it appears to be pretty definitive.
> I think if -- if the Debtor intends to still pursue those *types*
> of claims, including in connection with seeking retention
> of litigation counsel, it needs to really explain to me why
> that's warranted in light of the Appellate Division

---

[17]    Judge Drain presided over the Debtor's Chapter 11 Case from the Petition Date through July 1, 2022,
whereupon the case was assigned to Judge Lane, currently presiding.

decision. I'm not saying, Mr. Geiger (phonetic), you should do it today; I just -- this is a heads-up. I think that, you know, there -- a lot of this motion was spent on arguments that it appears to me -- although I don't have the pleadings in the foreclosure action, the Appellate Division -albeit, in a very short opinion, although also a very definitive opinion -- seems to have shut the door on most, if not all of them, at least from the Debtor's side. So, it's just a heads-up as far as any -- any strategy going forward. If --if you're gonna be seeking permission for things that's based on that strategy, you -- you need to explain to me why it's a viable one.

MR. FRANKEL: *We -- we understand the Appellate Division. We -- order -- and we -- we are going to honor it. The reason we filed now was not to challenge it*, but because --largely because the -- the receiver was going to be moving on; he's in ill health. And it was an appropriate time to save that expense going forward, and -- and with the Debtor being one of the more successful operations, even with a receiver, we also thought that it was the right time to start in the COVID environment being able to look for re-capitalization, refinancing opportunities, and -- and try to save this -- this business before it's too late.

THE COURT:    Okay. That's fine.

March 2, 2021, Hearing Transcript in Case Number 21-22108 [Docket No. 17], 20:11–25,

21:7, 21:12–24 (emphasis added).

24.    Notwithstanding Debtor's representations to the Court on March 2,

2021 quoted above, on January 6, 2022, less than ten (10) months later, Debtor filed the

Adversary Complaint seeking to reduce the amount of BSP's claim, principally based

upon the same facts and theories already adjudicated in the New York State Court.

Debtor asserted few additional allegations in the Adversary Complaint that do not

appear in the Debtor's Foreclosure Answer including, allegations that BSP has not

supported the mathematical computation of its claim (the "Mathematical

Computation"), and that BSP allegedly set off amounts in reserve post-petition

(collectively, the "Post-Petition Allegations").

10

25.     In response to the Adversary Complaint, on February 7, 2022, BSP filed its Partial Motion to Dismiss [Adversary Proceeding Docket No. 4] and Memorandum of Law in Support of Partial Motion to Dismiss [Adversary Proceeding Docket No. 5].  On March 18, 2022, Debtor filed its Response to Partial Motion to Dismiss [Adversary Proceeding Docket No. 12].  On May 11, 2022, BSP filed its Reply in Support of Partial Motion to Dismiss [Adversary Proceeding Docket No. 19].  Because of the appointment of the Trustee, the hearing on BSP's Partial Motion to Dismiss was adjourned.

26.     With respect to the Post-Petition Allegations and Mathematical Computation, the Trustee is advised that BSP planned to file a Motion for Summary Judgment and, on April 25, 2022, sent to the Court a letter requesting a pre-motion conference in accordance with Rule 7056-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").  This pre-motion conference was adjourned in connection with the Trustee's appointment.  BSP has shared with the Trustee a draft of its Memorandum of Law in Support of Motion for Summary Judgment, which adequately addresses Debtor's objection to BSP's proof of claim, and also addresses Debtor's contention that a portion of BSP's claim should be equitably subordinated.  BSP has independently provided the Trustee with support for its claim, including the Mathematical Computation.  Moreover, Debtor's contention that BSP set off on certain reserves post-petition is belied by BSP documentary proof that the subject setoff on reserves occurred long before the Petition Date, and as a result neither violated the automatic stay nor exercised control over property of the Debtor's estate.

**D.     BSP Proof of Claim**

27.     On June 2, 2021, the Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No.

41], setting July 15, 2021 as the general bar date for all prepetition claims (the "Bar Date"), and on November 5, 2021 the Court entered the *Supplemental Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 177], extending the Bar Date to December 15, 2021.  Prior to the Bar Date, on July 13, 2021, BSP filed proof of claim number 8, and amended such claim on February 15, 2022 (as amended, the "BSP Proof of Claim").[18]  The BSP Proof of Claim asserts a secured claim in the aggregate amount of $89,543,755.49 on account of unpaid principal, interest, fees, and expenses under the Loan Agreement (plus continuing additional interest, fees, and expenses).

E.     **The Settlement Agreement**

28.     The BSP Proof of Claim is by far the largest claim asserted against the Debtor's estate, including the largest secured claim.  Following the Trustee's appointment, the Trustee and his advisors worked to review claims filed against the estate, including the BSP Proof of Claim, and analyze whether the Trustee should seek to reduce (by negotiations or objections, if necessary) or agree with such claims.

29.     Following his review of the BSP Proof of Claim, the Trustee and his counsel and BSP and its counsel engaged in extensive discussions regarding the BSP Proof of Claim and the Adversary Proceeding.  In addition, the Trustee's advisors have reviewed all relevant pleadings and apprised the Trustee of the facts and circumstances giving rise to the BSP Proof of Claim and the claims asserted by the Debtor in the Adversary Proceeding, including an assessment of the likelihood of prevailing on those

---

[18]    The amended proof of claim corrects certain typographical errors but does not alter the amount asserted.

claims and the concomitant costs and expense to the estate of litigating those claims to fruition.

30.    Resolving the BSP Proof of Claim and the Adversary Proceeding is an important step towards a value-maximizing resolution for this Chapter 11 Case and the best path to an orderly exit from Chapter 11.  The Trustee and his advisors are pursuing a sale process for substantially all of the Debtor's assets, which sale process is being funded by BSP's continued consent to the Trustee's use of cash collateral.[19]  The Trustee recognizes that a timely and cost-effective emergence from bankruptcy requires the cooperation of BSP, both in terms of the continuing use of BSP's cash collateral and, depending upon the outcome of the sale, potentially a carve-out, subordination, and/or reduction from BSP's collateral in order to fund recoveries for administrative, priority, and general unsecured claims, as well as any post-confirmation litigation trust. Otherwise, given the asserted amount of the BSP Proof of Claim and the potential for continually accruing postpetition interest, costs, fees, and other amounts under the Loan Agreement, there is a potential that creditors other than BSP receive no recoveries.[20]

31.    In furtherance of obtaining clarity on the BSP Proof of Claim in light of the pending sale process (including the amount that BSP can credit bid in any

---

[19]    In fact, as part of the overall consensual process leading up to this settlement, BSP has greatly enhanced the uses of and benefits to the Trustee and the estate from the continued use of cash collateral.

[20]    Since the Trustee's appointment, he and his advisors have thoroughly reviewed all proofs of claim filed in the Chapter 11 Case, as well as the docket, hearing transcripts, motions, and other pleadings. The Trustee has already resolved several claims by stipulation and is continuing to negotiate additional stipulations that would significantly reduce the claims pool. The Trustee currently estimates that approximately $1 million to $3 million in general unsecured claims will ultimately be allowed.

such sale), the Trustee and his advisors have negotiated the Settlement Agreement with

BSP and its advisors.

32.    A summary of the salient provisions of the Settlement Agreement is

as follows:[21]

| | |
|---|---|
| BSP Allowed Claim<br><br>(Settlement Agreement § 3) | In the event of the confirmation of a Qualified Chapter 11 Plan, BSP shall have the following allowed claims as of August 14, 2022, with interest and fees accruing thereafter as provided by the Loan Documents:<br><br>a.    A senior secured claim in the amount of $95,952,130.85 (the "Senior Secured Amount"), comprised of principal, contract rate interest, and costs and legal fees, to be paid to BSP at closing of the sale of the Hotel without further order of the Court; and<br><br>b.    A subordinated secured claim in the amount of $12,736,655.90 (the "Subordinated Secured Amount"), comprised of the Exit Fee, Protective Advance Interest, Default Interest, Late Fees, and Miscellaneous Fees, which shall be subordinated to all allowed administrative, priority, and general unsecured claims (other than those held by insiders) but senior to equity interests, and disbursed pursuant to the provisions of a chapter 11 plan. |
| Credit Bid<br><br>(Settlement Agreement § 2) | BSP shall be entitled to credit bid [he full amount of its claims for the Collateral at a sale thereof pursuant to Section 363(k) of the Bankruptcy Code. |
| Qualified Chapter 11 Plan<br><br>(Settlement Agreement § 4) | A Qualified Chapter 11 Plan will contain the following provisions:<br><br>a.    a sale of the Hotel and related assets approved by the Bankruptcy Court on or before December 23, 2022 providing for a closing date (inclusive of the effective date of a Qualified Chapter 11 Plan (the "Effective Date")) of no later than December 31, 2022, which permits BSP to "credit bid" its Senior Secured Amount and otherwise participate in the auction. |

---

[21]    In the event of any conflict between the summary provided herein and the provisions of the Settlement Agreement, the Settlement Agreement will control.

|  |  |
|---|---|
|  | b.   payment to BSP of all proceeds of the sale of the Hotel and related assets up to the Senior Secured Amount at closing without further order of the Bankruptcy Court, net of an agreed carve-out for fees of the Trustee, his professionals and post-Effective Date litigation. |
|  | c.   pursuit of post-Effective Date litigation by the Trustee or pursuant to the creation of a litigation trust managed by a trustee acceptable to BSP in its reasonable discretion, which will administer, liquidate, pursue and settle all claims of the Debtor and its estate for the benefit of holders of allowed claims and interests and make distributions of the proceeds thereof. |
|  | d.   releases of BSP and its affiliates, shareholders, members, managers, partners, officers, directors, employees, agents, and professionals, and releases and exculpation for the Trustee and his professionals. |
| Receiver and Related Claims<br><br>(Settlement Agreement § 6) | BSP shall assign to the Trustee all of BSP's right, title, and interest into and to the bond posted by Constantino Sagonas, as receiver for the Debtor in the Foreclosure Action, and the rights to make a claim and recover thereunder; *provided*, that BSP shall retain its rights to receive distributions of the proceeds of such bond to the extent flowing to BSP on account of the Subordinated Secured Amount. |
| Mutual Releases<br><br>(Settlement Agreement §§ 7, 8) | BSP will release the Trustee and the Debtor for all claims and causes of action relating to or arising out of any of the Adversary Proceeding, the Loan, the Hotel, the Bankruptcy Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of the Trustee or the Trustee Related Parties with respect thereto.<br><br>The Trustee, on behalf of himself (in his capacity as Trustee for the Debtor's estate) releases BSP and certain related parties elating to or arising out of any of the Adversary Proceeding, the Loan, the Hotel, the Bankruptcy Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of BSP with respect thereto, or the enforcement of any of BSP's rights or remedies with respect to the Lender, the Insiders or any other person or entity with respect to the Loan. |

| Adversary Proceeding (Settlement Agreement § 5) | The Trustee and BSP shall stipulate to, and the Trustee shall file, a notice of dismissal of the Adversary Proceeding with prejudice within five (5) business days after the Court enters an order approving the Settlement Agreement. |
|---|---|

## RELIEF REQUESTED

33.    By this Motion, the Trustee respectfully requests that the Court enter the Proposed Order in substantially the form attached hereto as **Exhibit A** approving the Settlement Agreement and authorizing the Trustee to take all actions contemplated thereunder.

## BASIS FOR RELIEF

**A.    Legal Standards**

34.    Bankruptcy Rule 9019(a) provides that "after notice and a hearing, the court may approve a compromise or settlement."  In addition, section 105(a) empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

35.    A starting point in analyzing any proposed settlement is the general policy that "settlements . . . are favored in bankruptcy and, in fact, encouraged." *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010); *In re N.Y., New Haven & Hartford R.R. v. Smith*, 632 F.2d 955, 959 (2d Cir. 1980) (stating that courts generally favor compromises as compromises are "a normal part of the process of reorganization") (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939) (internal quotation marks omitted)); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522–23 (S.D.N.Y. 1993) (noting that approval of settlements should not be overturned absent a clear abuse of discretion, as lenient standards are designed to encourage settlement); *In re Pursuit Holdings (NY), LLC*, No. 18-12738 (MG), 2019 WL 1220928, slip op. at 10

16

(Bankr. S.D.N.Y. March 12, 2019) ("[Courts] may give weight to the informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable.") (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 505 (internal quotation marks omitted)).

36.     Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate.  *See, e.g., Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. 414, 424 (1968*); In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) ("The settlement need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted); *Nellis v. Shugrue*, 165 B.R. 115, 121 (S.D.N.Y. 1994) (Sotomayor, J.) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it.") (citing *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. at 505).  In general, compromises in the bankruptcy context should be approved unless they "fall below the lowest point in the range of reasonableness."  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983).

37.     Courts in the Second Circuit evaluate whether a settlement is "fair and equitable" and thus worthy of approval after considering the following interrelated factors, known as the "*Iridium*" factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay" . . .;
>
> (3) the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

(4) whether other parties in interest support the settlement;

(5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

(6) "the nature and breadth of releases to be obtained by officers and directors"; and

(7) "the extent to which the settlement is the product of arm's length bargaining."

*Iridium LLC v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*)*,* 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)); *see also In re Motors Liquidation Co.*, 555 B.R. 355, 365 (Bankr. S.D.N.Y. 2016); *In re LATAM Airlines Grp. S.A.*, Case No. 20-11254 (JLG) (Bankr. S.D.N.Y. Jan. 28, 2022) [Docket No. 4210] (analyzing in depth the *Iridium* factors with respect to two settlement agreements and holding that the *Iridium* factors were satisfied and that the settlements did not fall below the lowest level of reasonableness)

38.     A court's evaluation does not require "[a] trial or 'mini trial' on the merits." *Id.* Instead, the court will evaluate facts that are necessary to "canvass the issues" and determine whether the settlement meets the minimal standard of reasonableness. *In re Kerner*, 599 B.R. 751, 755 (Bankr. S.D.N.Y. 2019) (quoting *In re Chemtura Corp.*, 439 B.R. at 594); *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) ("Although a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim.").

## B.     The Settlement Agreement Satisfies Bankruptcy Rule 9019

39.     For the reasons discussed below and in the Gray Declaration, the Trustee believes the Settlement Agreement is fair and equitable, in the best interests of the estate, and well within the range of reasonableness as required by Bankruptcy Rule 9019.

40.     <u>First</u>, the Settlement Agreement is in the best interests of the estate because it resolves potentially expensive and time-consuming litigation regarding the amount and priority of BSP's claims against the Debtor.  This expensive and time-consuming litigation could jeopardize the Trustee's ability to run a sale process to maximize the value of the Debtor's assets.  The Trustee submits that absent the Settlement Agreement, the estate would incur substantial postpetition legal fees and expenses that would not be outweighed by any reasonably anticipated recovery to the estate.  Among other things, as described above, the Appellate Division already ruled in favor of BSP in the Foreclosure Action and determined that the Debtor's counterclaims and affirmative defenses were not viable.  Because the Adversary Proceeding appears to have been an attempt to re-litigate these same issues, most of the causes of action asserted in the Adversary Complaint are barred by collateral estoppel *res judicata*, *Rooker-Feldman* and defeated as a matter of law.  Accordingly, expending more of the estate's limited resources on the Adversary Proceeding would be unlikely to yield any net recovery.

41.     <u>Second</u>, the Settlement Agreement resolves uncertainty regarding the amount of BSP's claims—by far the largest claims in the Chapter 11 Case—and establishes the maximum amount that BSP may credit bid for the Debtor's assets during the sale process.  By establishing this amount now ahead of the sale process, the Trustee is obtaining certainty for bidders that know how much and to what extent BSP can credit bid as part of that process.

42.     <u>Third</u>, the subordination of nearly $13 million of BSP's claim likely will allow (non-insider) holders of general unsecured claims to receive a distribution (depending on the sale price and resolution of disputed administrative expense claims).

19

43.     <u>Fourth</u>, the Settlement Agreement was crafted over months of intense, good faith, and arm's-length negotiations among the Parties and their advisors and reflects compromises on both sides, including as noted, a substantial compromise on BSP's treatment as a senior secured creditor.

44.     <u>Fifth</u>, the Parties have been represented by skilled and experienced bankruptcy practitioners in the negotiations to successfully consummate the Settlement Agreement.  Courts have given this factor considerable weight.  *See In re Adelphia Commc'ns Corp.*, 327 B.R. at 164; *see also In re Chemtura Corp.*, 439 B.R. at 608 ("No argument has been made, nor could any argument be made that counsel who put the Settlement together were anything less than highly skilled in their craft . . . .").

45.     Accordingly, the Trustee submits that the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

## NOTICE

46.     The Trustee will provide notice of this Motion to:  (a) the United States Trustee; (b) counsel for the Debtor; (c) BSP; and (d) all parties that have filed a Notice of Appearance in this Chapter 11 Case.  In light of the nature of the relief requested herein, the Trustee respectfully submits that no other or further notice is necessary.

## NO PRIOR REQUEST

47.     No prior request for the relief requested herein has been made to this or any other Court.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that this Court (a) enter the Proposed Order granting the relief requested in this Motion and (b) grant such other and further relief as may be just and proper.

Dated: September 13, 2022
      New York, New York

STEPHEN S. GRAY
Not Individually But Solely in His
Capacity as Chapter 11 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Frank A. Oswald*
ALBERT TOGUT
FRANK A. OSWALD
BRYAN M. KOTLIAR
AMY M. ODEN
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

**Exhibit A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :
96 WYTHE ACQUISITION LLC,               :        Case No. 21-22108 (SHL)
                                        :
                          Debtor.       :
                                        :
---------------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT
## WITH BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.

Upon the Motion[1] of Stephen S. Gray, not individually but solely in his

capacity as the Chapter 11 Trustee (the "Trustee") of the estate of 96 Wythe Acquisition

LLC  (the "Debtor") in the above-captioned case (the "Chapter 11 Case") for entry of an

order (this "Order") approving the Settlement Agreement between the Trustee and BSP,

attached hereto as **Exhibit 1** (the "Settlement Agreement") pursuant to section 105(a) of

the Bankruptcy Code and Bankruptcy Rule 9019; and upon the Gray Declaration; and

the Court having reviewed the Motion and the Gray Declaration, and having heard the

statements in support of the relief requested therein at a hearing before the Court, if any

(the "Hearing"); and the Court having determined that the legal and factual bases set

forth in the Motion and on the record of the Hearing establish just cause for the relief

granted herein; and all objections to the Motion (if any) having been withdrawn or

overruled; and the Court having found that the relief requested in the Motion is in the

best interests of the Debtor, its estate, its creditors, and other parties in interest; and

upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor;

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
      terms in the Motion.

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.  Consideration of the Motion and the requested relief is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, and the Court may enter a final order consistent with Article III of the United States Constitution.

B.    The notice given by the Trustee of the Motion and the Hearing constitutes proper, timely, adequate, and sufficient notice thereof and complies with the title 11 of the United States Code, the Bankruptcy Rules, and applicable local rules, and no other or further notice is necessary.

C.    The terms and conditions of the Settlement Agreement are incorporated as if fully set forth herein.  The terms and conditions thereunder are fair, reasonable, and reflect the Trustee's exercise of sound business judgment.

D.    The Settlement Agreement is within the range of reasonableness and the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

E.    Based on the record before the Court, the Trustee has demonstrated good and sufficient basis for the Court to approve the Motion.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED to the extent provided herein.

2.    The Settlement Agreement is hereby approved and "so ordered," and the Trustee is authorized to enter into the Settlement Agreement pursuant to Bankruptcy Rule 9019.  No further action shall be required of the Trustee or BSP to

effectuate the allowance of the BSP Proof of Claim as set forth in the Settlement

Agreement.

       3.    This Order shall be binding in all respects upon, and shall inure to

the benefit of the Debtor, its estate, its creditors, and all other parties in interest; BSP,

and all of their respective affiliates, successors, and assigns; and any affected third

parties.

       4.    The Trustee is authorized to take all actions necessary to effectuate

the relief granted pursuant to this Order and to implement the terms of the Settlement

Agreement.

       5.    The terms and provisions of this Order shall be immediately

effective and enforceable upon its entry. The effectiveness of this Order shall not be

stayed pursuant to Bankruptcy Rules 6004(h) or otherwise.

       6.    The Court shall retain jurisdiction with respect to any matters,

claims, rights, or disputes arising from or related to the Motion or the implementation,

interpretation, or enforcement of the Settlement Agreement or this Order.


Dated: _____, 2022         _____
        White Plains, New York        HONORABLE SEAN H. LANE,
                                       UNITED STATES BANKRUPTCY JUDGE

<u>**Exhibit 1**</u>

**Settlement Agreement**

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "<u>Agreement</u>") is made as of September 13, 2022, by and between BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P., a Delaware limited partnership ("<u>BSP</u>"), and STEPHEN S. GRAY, solely in his capacity as the Chapter 11 Trustee for the Chapter 11 bankruptcy estate of 96 Wythe Acquisition LLC (the "<u>Trustee</u>", and together with BSP, collectively, the "<u>Parties</u>").

## RECITALS

**WHEREAS**, on December 13, 2017, BSP made a loan to 96 Wythe Acquisition LLC, a New York limited liability company (the "<u>Debtor</u>"), in the face principal amount of $68,000,000.00 (the "<u>Loan</u>"), secured by first priority liens and security interests in The Williamsburg Hotel, a boutique hotel located at 96 Wythe Avenue, Brooklyn, New York 11249 (the "<u>Hotel</u>") and all other assets described in the mortgage and other loan documents evidencing and governing the Loan (collectively, the "<u>Collateral</u>");

**WHEREAS**, on June 11, 2019, BSP commenced a foreclosure action in the Supreme Court of the State of New York, New York County, Index No. 653396/2019 (the "<u>Foreclosure Action</u>"), in which the court denied BSP's motion for summary judgment. BSP appealed such denial, which was docketed in the First Department of the Appellate Division as Appellate Case No. 2020-03532, and in a ruling on February 16, 2021, the entered an order partially reversing the trial court and granting summary judgment in favor of BSP (the "<u>Appellate Decision</u>");

**WHEREAS**, shortly following entry of the Appellate Decision, on February 23, 2021, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing Case No. 21-22108 (the "<u>Bankruptcy Case</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>");

**WHEREAS**, BSP filed a proof of claim in the Bankruptcy Case in the amount of $89,543,755.49 as of July 14, 2021, which specified, among other things, that interest and expenses would continue to accrue thereafter pursuant to the parties' loan documents [Proof of Claim 8-1 and 8-2] (collectively, the "<u>Proof of Claim</u>");

**WHEREAS**, on January 6, 2022, the Debtor filed a Complaint against BSP commencing Adversary Proceeding No. 22-07002 associated with the Bankruptcy Case (the "<u>Adversary Proceeding</u>"), asserting various claims against BSP and objecting to BSP's Proof of Claim;

**WHEREAS**, BSP vigorously disputes the merits of the claims asserted by the Debtor in the Adversary Proceeding;

**WHEREAS**, on February 7, 2022, BSP filed a Partial Motion to Dismiss in the Adversary Proceeding [Adv. Proc. Docket Nos. 4, 5, and 19], arguing, among other things, that bulk of the Debtor's claims in the Adversary Proceeding were precluded by the Appellate Decision under doctrines of *res judicata,* collateral estoppel and/or *Rooker-Feldman*, which the Debtor disputed [Adv. Proc. Docket No. 12];

**WHEREAS**, on March 28, 2022, BSP filed Lender's Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance [Docket Nos. 476, 477, 533 and 561], and on March 31, 2022, the United States Trustee filed its Motion for the Appointment of a Chapter 11 Trustee [Docket No. 491] (collectively, the "Chapter 11 Trustee Motions");

**WHEREAS**, the Bankruptcy Court heard evidence on the Trustee Motions on May 17 and 25, 2022 and post-hearing oral argument on May 26, 2022;

**WHEREAS**, on May 26, 2022, the Bankruptcy Court announced its ruling on the record and granted the Chapter 11 Trustee Motions, upon which the Bankruptcy Court entered the Order Granting Motions to Appoint a Chapter 11 Trustee on May 27, 2022 [Docket No. 591];

**WHEREAS**, on May 31, 2022, the Court entered the Order Approving the Appointment of Chapter 11 Trustee [Docket No. 594], which appointed Stephen S. Gray as the Chapter 11 Trustee of the Debtor's estate pursuant to 11 U.S.C. § 1104(a)(2) of the Bankruptcy Code (the "Chapter 11 Trustee Order"); and

**WHEREAS**, since entry of the Chapter 11 Trustee Order, the Trustee and BSP have been negotiating regarding the allowance of BSP's Proof of Claim and resolution of the Adversary Proceeding, which negotiations have yielded the resolutions set forth herein.

**NOW THEREFORE**, for good and valuable consideration, it is hereby stipulated, consented to and agreed by and between the Parties as follows:

1.      **No Admission of Wrongdoing.** Nothing in this Agreement shall be deemed an admission of any liability by BSP regarding any of the allegations in the Adversary Proceeding.

2.      **Allowance of Proof of Claim.** BSP's Proof of Claim shall be allowed in its entirety as a secured claim secured by the Collateral, provided that any amounts of such claim in excess of BSP's collateral for the Loan shall constitute an allowed unsecured claim, each pursuant to Section 506 of the Bankruptcy Code. BSP reserves all rights with respect to the Proof of Claim, including any rights under Section 1111(b) of the Bankruptcy Code and otherwise. BSP shall be entitled to credit bid up to the Senior Secured Amount (defined below) for the Collateral at a sale thereof, either under a confirmed Chapter 11 plan or in a sale outside a plan pursuant to Section 363(k) of the Bankruptcy Code. Payment of the full amount of BSP's Proof of Claim shall be made at closing of the sale of its Collateral, subject to an agreed carveout for the Trustee's professionals provided in any pending cash collateral order, and subject further to the provisions of a confirmed Qualified Chapter 11 Plan, if any, governed by Section 3 hereof. The component parts of BSP's claim shall be the following, as of August 14, 2022, with contract interest and default interest, expenses, legal fees and other amounts continuing to accrue thereafter as provided under the Loan Documents:

| Description | Amount |
|---|---|
| Outstanding Principal Balance | $68,000,000.00 |
| All Legal Fees and Expenses (through 8/14/22) | $11,745,182.00 |
| Contract Interest (through 8/14/22) | $16,706,948.85 |
| Exit Fee (0.50% of the Note) | $340,000.00 |
| Protective Advances Interest (through 8/14/22) | $408,289.09 |
| Default Interest (through 8/14/22) | $11,242,810.21 |
| Late Fees | $245,556.60 |
| **Total Due (8/14/22)** | **$108,688,786.76** |

3.      **Bifurcation of Proof of Claim in connection with a Qualified Chapter 11 Plan.**
Upon confirmation of (and subject to the occurrence of the effective date under) a Qualified Chapter
11 Plan, BSP will agree to bifurcate its Proof of Claim into the following parts, allowed and paid as
follows:

(a)      <u>Allowed Senior Secured Claim</u>.  BSP shall have an allowed secured claim,
secured by the Collateral, to be paid by the Trustee and Debtor's estate at closing of a sale of
the Hotel without further order of the Court, in the following amounts as of August 14, 2022,
with contract interest, expenses and legal fees continuing to accrue thereafter at the non-
default rate as provided under the Loan Documents (the "<u>Senior Secured Amount</u>"):

| Description | Amount |
|---|---|
| Outstanding Principal Balance | $68,000,000.00 |
| Legal Fees and Expenses (through 8/14/22) | $11,245,182.00 |
| Contract Interest (through 8/14/22) | $16,706,948.85 |
| **Total Due (8/14/22)** | **$95,952,130.85** |

(b)      <u>Allowed Subordinated Secured Claim</u>. BSP shall have an allowed secured
claim, which shall be subordinated to all allowed unsecured claims but senior to all equity
interests and any claims held by (i) Heritage Equity Partners, (ii) Toby Moskovits, (iii)
Michael Lichtenstein, (iv) The Williamsburg Hotel BK LLC, and/or any of their respective
family members or affiliated entities of any of the foregoing subsections (i) through (iv)
(collectively, the "<u>Insiders</u>"), which shall be secured by all remaining assets of the Debtor's
estate (whether acquired pre-petition or post-petition), and shall paid pursuant to the
provisions of a Chapter 11 Plan, in the following amounts as of August 14, 2022, with default
interest, fees and other expenses continuing to accrue thereafter at the default rate as provided
under the Loan Documents (the "<u>Subordinated Secured Amount</u>"):

| Description | Amount |
|---|---|
| Exit Fee (0.50% of the Note) | $340,000.00 |
| Protective Advances Interest (through 8/14/22) | $408,289.09 |
| Deferred Legal Fees (through 8/14/22) | $500,000.00 |
| Default Interest (through 8/14/22) | $11,242,810.21 |
| Late Fees | $245,556.60 |
| **Total Due (8/14/22)** | **$12,736,655.90** |

4. **Qualified Chapter 11 Plan.** The term "Qualified Chapter 11 Plan" shall mean a Chapter 11 Plan confirmed by an order in the Bankruptcy Case by the Bankruptcy Court containing the following provisions, which may become effective notwithstanding any stay or appeal period (which the parties shall request, and the Bankruptcy Court may agree, to waive), any of which may be waived or modified by the Trustee and BSP in writing in each of their respective sole and absolute discretion without further order of the Bankruptcy Court:

    (a)    a sale of the Hotel and related assets approved by the Bankruptcy Court on or before December 23, 2022 (subject to the Bankruptcy Court's calendar) providing for a closing date (inclusive of the effective date of a Qualified Chapter 11 Plan (the "Effective Date")) of no later than December 31, 2022, which permits BSP to "credit bid" its Senior Secured Amount and otherwise participate in the auction;

    (b)    Payment to BSP of all proceeds of the sale of the Hotel and related assets, net of the agreed carve-outs set forth in any orders approving use of cash collateral (the "Cash Collateral Order Carve-Outs") and post-Effective Date litigation in an amount of $750,000.00, provided that BSP is paid an amount equal to the Senior Secured Amount at closing without further order of the Bankruptcy Court (it being understood that, for the avoidance of doubt, in a sale of the Hotel and related assets closed outside of a confirmed Chapter 11 plan, any outstanding Cash Collateral Order Carveouts not paid in the ordinary course in accordance with the applicable cash collateral order(s) shall be paid in full and in cash, *first*, from the proceeds of such sale in excess of BSP's Senior Secured Amount, and, if such excess should be insufficient, *second*, from proceeds netted out of the Senior Secured Amount to be paid to BSP to the extent of any deficiency);

    (c)    Pursuit of post-Effective Date litigation by the Trustee or pursuant to the creation of a litigation trust managed by a trustee acceptable to BSP in its reasonable discretion, which will administer, liquidate, pursue and settle all claims of the Debtor and its estate for the benefit of holders of allowed claims and interests and make distributions of the proceeds thereof pursuant to a confirmed plan; and

    (d)    Releases of BSP and its affiliates, shareholders, members, managers, partners, officers, directors, employees, agents and professionals and releases and exculpation for the Trustee and his professionals.

5. **Dismissal of Adversary Proceeding.** Upon entry of an order by the Bankruptcy Court approving this Agreement, BSP and the Trustee shall be deemed to have stipulated to the dismissal of the Adversary Proceeding, with prejudice, pursuant to Fed. R. Bankr. P. 7041 and Fed. R. Civ. P. 41(a)(1)(A)(2). Within five (5) business days after entry of an order approving this Agreement, the Trustee and BSP shall jointly file a notice of dismissal dismissing the Adversary Proceeding with prejudice reflecting this stipulation.

6. **Assignment of Rights to Claim under Bond.** On February 26, 2020, Constantino Sagonas, as receiver (in such capacity, the "Receiver"), and SureTec Insurance Company, posted a Bond of Temporary Receiver filed on February 26, 2020 in the case styled *BSPRT 2018-FL3 Issuer,*

*Ltd. v. 96 Wythe Acquisition, LLC, et al.*, Index No. 653396/2019, Supreme Court of New York for the State of New York, County of New York, in the amount of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000.00) (the "Receiver's Bond"). BSP hereby assigns, transfers and conveys to the Trustee and Debtor's estate all of BSP's right, title and interest in and to the Receiver's Bond and any claims or causes of action against the Receiver and its rights to pursue or file a claim upon the Receiver's Bond for the purposes of pursuing or filing a claim upon the Receiver's Bond; provided, however, that BSP shall retain its rights to receive any distribution of proceeds of the Receiver's Bond to the extent made to BSP by the Debtor's estate or successor thereto. Notwithstanding the foregoing, (a) BSP shall retain the right to participate in and consult with the Trustee upon pursuit of and claims made under the Receiver's Bond, and (b) if the Trustee fails to commence a claim upon the Receiver's Bond by the Effective Date, BSP shall have the right, upon no less than ten (10) days' notice to the Trustee, to revoke the assignment of rights under this Section 6, in which case such assignment of rights shall become null and void *ab initio*, and all rights to pursue and file a claim under the Receiver's Bond shall immediately revert back to BSP.

7.      **Release of BSP**. In consideration of the agreements with and value provided herein by BSP to the Trustee and the Debtor's estate and other good and valuable consideration, the Trustee, on behalf of himself (in his capacity as Chapter 11 trustee for the Debtor's estate), the Debtor and the Debtor's estate (collectively, the "Releasors"), each hereby waives, remises, releases and forever discharges BSP, its predecessors, successors, assigns, affiliates, shareholders, partners, members, managers, directors, officers, accountants, attorneys, employees, agents, representatives and servants of, from and against any and all claims, actions, causes of action, suits, proceedings, defenses, counterclaims, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity or otherwise, which any of the Releasors ever had or now has for or by reason of any matter, cause or anything whatsoever to this date relating to or arising out of any of the Adversary Proceeding, the Loan, the Hotel, the Bankruptcy Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of BSP with respect thereto, or the enforcement of any of BSP's rights or remedies with respect to the Lender, the Insiders or any other person or entity with respect to the Loan.

8.      **Release of Trustee**.  In consideration of the agreements with and value provided herein and other good and valuable consideration, BSP, on behalf of itself its predecessors, successors, assigns, affiliates, shareholders, partners, members, managers, directors, officers, accountants, attorneys, employees, agents, representatives and servants (collectively, the "BSP Releasors"), each hereby waives, remises, releases and forever discharges the Trustee, his accountants, attorneys, agents, representatives and servants (for avoidance of doubt, such persons and entities released hereunder shall not include the Debtor, the Debtor's estate, Toby Moskovits, Michael Lichtenstein or any of the Debtor's other insiders (as such term is defined in 11 U.S.C. § 101(31), the Debtor's bankruptcy professionals, including Meyer Brown LLP and David Goldwasser and his affiliated entities, and the Debtor's prepetition receiver, Constantino Segonas, and his affiliated entities) (collectively, the "Trustee Related Parties") of, from and against any and all claims, actions, causes of action, suits, proceedings, defenses, counterclaims, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity or otherwise, which any of the BSP Releasors ever had or now has for or by reason of any matter, cause or anything whatsoever to this date relating to or arising out of any of the Adversary Proceeding, the Loan, the Hotel, the Bankruptcy Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of the Trustee or the Trustee Related Parties with respect thereto, and, in

all cases, solely to the extent that the same first occurred on or after the appointment of the Trustee as the Chapter 11 Trustee for the Debtor's estate (with any such liabilities arising prior to such appointment expressly preserved against all persons and entities); provided, however, that this <u>Section 8</u> shall not extend to the Trustee's obligations under this Agreement.

9.      **Counterparts.** This Agreement may be executed in counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same.

10.     **Transmittal.** This Agreement may be signed and transmitted electronically or by facsimile, which shall be deemed to have the full force and effect of original ink signatures.

11.     **Representation of Authority.** The undersigned represent and warrant that they have full authority to execute this Agreement on behalf of their respective party or client and have obtained all necessary approvals. This Agreement constitutes a valid and binding agreement against the parties' signatory hereto.

12.     **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties' respective assigns and successors, including trustees and receivers.

13.     **Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over the subject matter of this Agreement to resolve all disputes relating thereto and to enforce the settlement and releases set forth herein.

14.     **Not Construed Against Drafter.** In the event of any ambiguity or question of intent or interpretation of this Agreement, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

15.     **Severability.** The terms of this Agreement, including paragraph subparts, are severable, and if any part or subpart is found to be unenforceable, the other terms shall remain in full force and effect and are valid and enforceable.

16.     **Titles of Paragraphs.** The titles of paragraphs in this Agreement are intended solely for convenience of reference, and are not intended and shall not be deemed for any purpose whatsoever to modify, explain or place a construction upon any of the provisions of this Agreement and shall not affect the meaning or interpretation of this Agreement.

17.     **Entire Agreement**. The parties acknowledge that this Agreement represents the entire understanding between the parties.

18.     **Attorney's Fees and Costs**. Each Party shall be responsible for its own costs, expenses and attorney's fees incurred in connection with the Adversary Proceeding and negotiation of this Agreement. If any legal action, arbitration, or other proceedings are commenced for enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement brought by one of the Parties against the other, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled.

**IN WITNESS THEREOF,** each party to this Agreement has caused it to be executed on the date indicated in the opening paragraph above, intending it to be legally bound by the terms and conditions hereof.

**IN WITNESS THEREOF,** each party to this Agreement has caused it to be executed on the date indicated in the opening paragraph above, intending it to be legally bound by the terms and conditions hereof.

**STEPHEN S. GRAY,** in individually, but solely in his capacity as Chapter 11 Trustee for 96 Wythe Acquisition, LLC, a New York limited liability company

_____

STEPHEN S. GRAY, as Chapter 11 Trustee

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

**[SIGNATURE CONTINUED FROM PRIOR PAGE]**

**BENEFIT STREET PARTNERS REALTY
OPERATING PARTNERSHIP, L.P.,** a
Delaware limited partnership

By: _____
Name:  Micah Goodman
Title:    Authorized Signatory

**Exhibit B**

**Gray Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                             :

In re:                                           :          Chapter 11

                                           :

96 WYTHE ACQUISITION LLC,      :          Case No. 21-22108 (SHL)

                                           :

                            Debtor.           :

                                           :

----------------------------------------------------------------x

**DECLARATION OF STEPHEN S. GRAY IN SUPPORT OF CHAPTER 11
TRUSTEE'S MOTION TO APPROVE SETTLEMENT AGREEMENT
WITH BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.**

        Stephen S. Gray, pursuant to section 1746 of title 28 of the United States

Code, hereby declares as follows:

        1.        I am the chapter 11 trustee (the "<u>Trustee</u>") of the estate of 96 Wythe

Acquisition LLC (the "<u>Debtor</u>") in the above-captioned chapter 11 case.  I am duly

authorized to make this declaration (the "<u>Declaration</u>").

        2.        I have more than forty (40) years of experience in developing and

implementing restructuring and crisis management plans for public and private

companies, creditors, and judicial bodies.  As an officer, restructuring advisor,

fiduciary, and turnaround consultant, I have led the successful operational and/or

financial restructuring of hundreds of companies.  Moreover, I have served in a

fiduciary capacity in the bankruptcy context in hundreds of cases, including as

chapter 11 trustee in more than twenty (20) cases.  I am also a fellow in the American

College of Bankruptcy.

        3.        I respectfully submit this Declaration in support of my motion

(the "<u>Motion</u>")[1] to approve the Settlement Agreement between the Trustee and Benefit

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the
Motion.

Street Partners Realty Operating Partnership, L.P. ("BSP" or "Lender" and, together

with the Trustee, the "Parties"), a copy of which is attached to the Proposed Order as

Exhibit 1 (the "Settlement Agreement"), pursuant to section 105(a) of the Bankruptcy

Code and Bankruptcy Rule 9019.

4.      I understand that the BSP Proof of Claim is by far the largest claim

asserted against the Debtor's estate, including the largest secured claim.  Following my

appointment, my advisors and I worked to review claims filed against the estate,

including the BSP Proof of Claim, and analyze whether I should seek to reduce (by

negotiations or objections, if necessary) or agree with such claims.

5.      Following my review of the BSP Proof of Claim, my counsel and I

and BSP and its counsel have engaged in extensive discussions regarding the BSP Proof

of Claim and the Adversary Proceeding.  In addition, my advisors have reviewed all

relevant pleadings and apprised me of the facts and circumstances giving rise to the

BSP Proof of Claim and the asserted by the Debtor in the Adversary Proceeding,

including an assessment of the likelihood of prevailing on those claims and the

concomitant costs and expense to the estate of litigating those claims to fruition.

6.      BSP has shared with me and my advisors a draft of its

Memorandum of Law in Support of Motion for Summary Judgment with respect to the

Adversary Proceeding, which I believe adequately addresses the Debtor's objection to

BSP's proof of claim and also addresses the Debtor's contention that a portion of BSP's

claim should be equitably subordinated.  BSP has independently provided me and my

advisors with support for its claim, including the Mathematical Computation.  BSP has

also provided me and my advisors with documentary proof that BSP's setoff on

reserves occurred long before the Petition Date (not postpetition, as the Debtor

asserted), and as a result, I believe BSP neither violated the automatic stay nor exercised control over property of the Debtor's estate.

7.    I believe that resolving the BSP Proof of Claim and the Adversary Proceeding is an important step towards a value-maximizing resolution for this Chapter 11 Case.  With the assistance of my advisors, I am pursuing a sale process for substantially all of the Debtor's assets, which sale process is being funded by BSP's continued consent to the estate's use of cash collateral.  I recognize that a timely and cost-effective emergence from bankruptcy requires the cooperation of BSP, both in terms of the continuing use of BSP's cash collateral and, depending upon the outcome of the sale, potentially a carve-out, subordination, and/or reduction from BSP's collateral in order to fund recoveries for administrative, priority, and general unsecured claims.  Otherwise, given the asserted amount of the BSP Proof of Claim and the potential for continually accruing postpetition interest, costs, fees, and other amounts under the Loan Agreement, I understand that there is a potential that creditors other than BSP receive no recoveries.[2]

8.    Accordingly, in furtherance of obtaining clarity on the BSP Proof of Claim in light of the pending sale process (including the amount that BSP can credit bid in any such sale), my advisors and I negotiated the Settlement Agreement with BSP and its advisors.

---

[2]    Since my appointment, my advisors and I have thoroughly reviewed all proofs of claim filed in the Chapter 11 Case, as well as the docket, hearing transcripts, motions, and other pleadings.  I have already resolved several claims by stipulation and is continuing to negotiate additional stipulations that would significantly reduce the claims pool.  I estimate that approximately $1 million to $3 million in general unsecured claims will ultimately be allowed.

3

9.      Based upon my discussions with counsel, I believe the *Iridium* factors weigh strongly in favor of approving the Settlement Agreement, and the terms amply satisfy the *TMT Trailer* standards for approval of a settlement.

10.     <u>First</u>, I believe the Settlement Agreement is in the best interests of the estate because it resolves potentially expensive and time-consuming litigation regarding the amount and priority of BSP's claims against the Debtor.  This expensive and time-consuming litigation could jeopardize my ability to run a sale process to maximize the value of the Debtor's assets.  I submit that absent the Settlement Agreement, the estate would incur substantial postpetition legal fees and expenses that would not be outweighed by any reasonably anticipated recovery to the estate.  I understand that the Appellate Division already ruled in favor of BSP in the Foreclosure Action and determined that the Debtor's counterclaims and affirmative defenses were not viable.  Based on my discussions with counsel, I understand that most of the causes of action asserted in the Adversary Complaint are barred by collateral estoppel *res judicata* and defeated as a matter of law.  Accordingly, I believe that expending more of the estate's limited resources on the Adversary Proceeding would be unlikely to yield any net recovery

11.     <u>Second</u>, I believe the Settlement Agreement resolves uncertainty regarding the amount of BSP's claims—which I understand to be the largest claim in the Chapter 11 Case—and establishes the maximum amount that BSP may credit bid for the Debtor's assets during the sale process.  I believe it is important to establish this amount now ahead of the sale process to obtain certainty for bidders regarding how much and to what extend BSP can credit bid as part of that process.

4

12.     <u>Third</u>, the subordination of nearly $13 million of BSP's claim likely will allow holders of general unsecured claims to receive a distribution (depending on the sale price).

13.     <u>Fourth</u>, the Settlement Agreement was crafted over months of intense, good faith, and arm's-length negotiations among the Parties and their advisors and reflects compromises on both sides.

14.     <u>Fifth</u>, I believe the Parties have been represented by skilled and experienced bankruptcy practitioners in the negotiations to successfully consummate the Settlement Agreement.

15.     Accordingly, I believe that the Settlement Agreement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:   September 13, 2022
         New York, New York

                                        */s/ Stephen S. Gray*
                                        STEPHEN S. GRAY
                                        Not Individually But Solely in His
                                        Capacity as Chapter 11 Trustee

5