**Hearing Date and Time: October 19, 2022 at 2:00 p.m. (prevailing Eastern Time)**

**MAYER BROWN LLP**
Douglas Spelfogel
Charles Kelley
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 21-22108 (SHL) |

**MAYER BROWN LLP'S LIMITED OBJECTION AND RESERVATION
OF RIGHTS TO CHAPTER 11 TRUSTEE'S APPLICATION TO APPROVE
SETTLEMENT AGREEMENT WITH BENEFIT STREET PARTNERS
OPERATING PARTNERSHIP, L.P.**

Mayer Brown LLP hereby files this limited objection and reservation of rights (the "Limited Objection") with respect to the *Chapter 11 Trustee's Application To Approve Settlement Agreement with Benefit Street Partners Operating Partnership L.P.* [ECF No. 679] (the "Motion")[1] and in support thereof states as follows:

**PRELIMINARY STATEMENT**

1. Mayer Brown has reached out to the Trustee, through counsel, in an effort to work out clarifying language in the proposed order approving the proposed Settlement Agreement, if any, to address certain concerns and ambiguities with the Settlement Agreement as highlighted below. While Mayer Brown is hopeful that the open questions will be resolved consensually, to

---

[1] Capitalized terms used but not defined herein have the meanings given in the Motion.

750222732

preserve all rights, and pending the foregoing, Mayer Brown submits the within Limited Objection and reservation of rights.

2. Specifically, while Mayer Brown does not object to the proposed Settlement Agreement in concept, it files this Limited Objection to ensure that (i) the Settlement Agreement's purported treatment of BSP as an over secured creditor entitled to post-petition interest and fees is contingent on the realization of cash proceeds from the sale of the Collateral, net of carve outs, in excess of the amount of BSP's purported secured claim and (ii) the Settlement Agreement is consistent with the priority scheme established by the Bankruptcy Code.

3. As counsel to the Debtor prior to appointment of the Trustee, Mayer Brown asserts an administrative expense claim against the Debtor's estate. Specifically, an application for interim allowance of compensation for services rendered by Mayer Brown was previously approved by the Court by Order dated April 14, 2022 [Dkt. 508], in the total amount of $2,263,418.89 (including allowed fees and expenses), and an application for final allowance and payment of Mayer Brown's administrative expense claim is forthcoming. Accordingly, Mayer Brown has its own stake in resolution of the Motion, which affects the distribution of funds from the Debtor's estate.

4. There are two principal issues with the Settlement Agreement that have the potential to prejudice the Debtor's stakeholders, including Mayer Brown. *First*, the Settlement Agreement improperly (and prematurely) grants BSP post-petition interest and other charges in the absence of a determination on the value of the Collateral securing the Loan, in violation of Section 506(b) of the Bankruptcy Code. This potentially prejudices all interested parties by (i) giving BSP a larger share of the value held by the Debtor than it may otherwise be entitled to and (ii) chilling bids for the Hotel (as a result of BSP's potentially inflated credit bid). However, as

set forth herein, this issue can easily be resolved without disrupting the framework of the Settlement Agreement by, among other things, conditioning BSP's entitlement to post-petition interest and other charges (including its ability to credit bid those amounts) on a sale of the Collateral in an amount in excess of the amount of BSP's claim, net of the carve-outs.

5.      *Second*, the Settlement Agreement has the potential to disrupt the Bankruptcy Code's priority scheme by favoring some administrative expense claimants over others and, potentially, authorizing priority-skipping distributions. This, too, can be mitigated by minor clarifications or modifications to the Settlement Agreement, including (i) clarifying that BSP's Subordinated Secured Amount is subordinated to *all* allowed administrative, priority, and general unsecured creditors consistent with the Motion and (ii) providing that any administrative expense claims paid as a result of the Settlement Agreement are paid on an interim basis only, subject to clawback, unless and until it is established that the Debtor's estate is administratively solvent following a sale of the Collateral.

6.      In light of the above issues, this Court should not approve the Settlement Agreement as fair and equitable unless modifications, along the lines of those described herein, are made to ensure that creditors other than BSP are treated fairly and are not improperly prejudiced.[2]

## LIMITED OBJECTION

### A.    The Settlement Agreement Prematurely Assumes BSP Is Oversecured

---

[2] The Second Circuit requires that "when the rights of non-settling parties are implicated by the terms of a settlement, the court cannot approve it without considering the interests of those non-settling parties." *In re Miami Metals I, Inc.*, 603 B.R. 531, 535 (Bankr. S.D.N.Y. 2019) (citing *In re Stanwich Fin. Servs. Corp.*, 377 B.R. 432, 437 (Bankr. D. Conn. 2007) (citing *In re Drexel Burnham Lambert Grp.*, 995 F.2d 1138, 1146-47 (2d Cir. 1993)). Moreover, "an outcome determinative settlement that would have the same effect as a sub rosa plan" cannot be approved. *Id.* at 536 (citing *In Re Biolitec, Inc.* 528 B.R. 261, 269-72 (Bankr D.N.J. 2014)).

3

7.       A secured creditor like BSP is only entitled to the accrual of post-petition interest if the value of the collateral securing such creditor's claim exceeds the amount of the secured claim. 11 U.S.C. § 506(b). *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 134 B.R. 528, 531 (Bankr. S.D.N.Y. 1991) ("No interest accrues on an undersecured claim post-petition."). Similarly, while an oversecured creditor is entitled to collect reasonable and otherwise allowable attorneys' fees as part of its secured claim, an undersecured creditor's fee claims should be treated as unsecured. *See In re Empresas Inabon, Inc.*, 358 B.R. 487, 526 (Bankr. D.P.R. 2006) (stating that "excess postpetition fees, costs and charges constitute an unsecured claim against the estate"). Further, the secured creditor bears the burden of establishing the amount and extent of its lien. *In re Residential Cap., LLC*, 501 B.R. 549, 590 (Bankr. S.D.N.Y. 2013).[3]

8.       Here, irrespective of what happens in the Debtor's plan and sale process, the Settlement Agreement grants BSP an allowed secured claim that appears to include *at least* $9 million in additional interest that accrued post-petition since the filing of the BSP Proof of Claim, plus an estimated $3.5 million in post-petition interest that appears to be included in the BSP Proof of Claim, for a total of approximately (and at least) $12.5 million in post-petition interest allowed pursuant to the Settlement Agreement without a final determination as to the value/proceeds of the Collateral.[4]

---

[3] Although the Settlement Agreement (appropriately) purports to bifurcate BSP's claim into secured and unsecured portions based upon the value of the Collateral, such bifurcation may end up being illusory in light of (1) the retention of BSP's ability to make a Section 1111(b) election, (2) the unconditional allowance of BSP's post-petition interest, (3) the ability to credit bid the Senior Secured Amount in the absence of a valuation of the Collateral, and (4) the requirement to pay post-petition interest as part of the Senior Secured Amount.

[4] The Settlement Agreement grants BSP an allowed secured claim that includes nearly $17 million in contract-rate interest on the Loan, more than $11 million in default-rate interest, and more that $11 million in legal fees and expenses. However, the Settlement Agreement does not specify what fraction of the $28 million in interest and $11 million in attorneys' fees was accrued prepetition and how much has accrued since the Petition Date, nor does the BSP Proof of Claim. The BSP Proof of Claim includes interest calculations as of July 14, 2021 rather than as of the Petition Date. The foregoing post-petition amounts are estimates of the *minimum* amounts of allowed post-petition interest based on the Settlement Agreement and BSP Proof of Claim.

9. In addition to prematurely granting BSP rights under Section 506(b) of the Bankruptcy Code, the Settlement Agreement's authorization for BSP to credit bid the full Senior Secured Amount, including post-petition interest and attorneys' fees, has the potential to chill bidding in a forthcoming sale of the Collateral to the detriment of the estate and its creditors.[5]

10. Indeed, if the Collateral is not ultimately sold for more than BSP's Senior Secured Amount as allowed under the Settlement Agreement, approval of the Settlement Agreement could leave the Debtor's estate administratively insolvent. In that case, a Qualified Chapter 11 Plan could not be confirmed and conversion to Chapter 7 would likely result. *See* 11 U.S.C. §§ 1129(a)(9)(A) (conditioning plan confirmation upon payment in full of administrative expenses); 1112(b)(2) & (b)(4)(J) (requiring conversion or dismissal for cause where plan is not timely confirmed). It would be improper in such a circumstance for BSP to retain the full asserted amount of its secured claim (including post-petition interest and other charges) on a senior basis to the detriment of the Debtor's other creditors, including administrative expense claimants.[6]

11. Notwithstanding, the undersigned does not believe that a time-consuming and expensive valuation fight would be an effective use of the estate's limited resources. Rather, to

---

[5] Note, however, that there is a conflict between the Motion and the Settlement Agreement on this point. The Motion indicates that "BSP shall be entitled to credit bid [the] full amount of its claims for the Collateral[.]" Motion ¶ 32. However, the Settlement Agreement itself does not so provide, and instead indicates that "BSP shall be entitled to credit bid up to the Senior Secured Amount[.]" Settlement Agreement ¶ 2. The undersigned presumes that the terms of the Settlement Agreement itself will control but, for the avoidance of doubt, the Trustee and/or BSP should confirm on the record that BSP may not credit bid any amount in excess of the Senior Secured Amount (and subject to the modifications of the Senior Secured Amount proposed herein).

[6] Such concern about administrative insolvency is underscored by BSP's own previous assertions that the Collateral is not worth as much as the Debtor believed it to be prior to the appointment of the Trustee. For example, BSP submitted a Rebuttal Expert Report of Cynthia Nelson, dated February 3, 2022, which calculated an "in-use" value of the Hotel at $82 million. BSP's objection to plan confirmation, filed July 17, 2022 [ECF No. 307], simultaneously asserted that the Hotel could be sold for $113 million, ¶ 57, and then asserted that it did not accept the Debtor's $113 million valuation, implying that the proper valuation was actually lower and that BSP's LTV could exceed 100%, ¶ 92. Therefore, at a minimum, there is an open issue as to what the available proceeds will be from a sale of the Collateral.

resolve the foregoing issues without the need for added cost (and while potentially making the bidding process more robust), the undersigned proposes the following:

(a)    <u>First</u>, the allowance of post-petition interest and the secured status of post-petition attorneys' fees pursuant to the Settlement Agreement, should be conditioned upon and limited to the extent of the realization of cash proceeds from the sale of the Collateral, net of the carve-outs, in excess of the amount of the balance of BSP's claim.

(b)    <u>Second</u>, BSP should not be permitted to credit bid the entire Senior Secured Amount at a sale of the Collateral (at least, not prior to the Trustee's receipt of a cash bid in excess of the Senior Secured Amount plus carve-outs), and, instead, such amount should be reduced by at least the amount of post-petition interest and post-petition attorneys' fees included therein.

(c)    <u>Third</u>, the bifurcation of BSP's claim into the Senior Secured Amount and the Subordinated Secured Amount should not be made contingent upon the effectiveness of a Qualified Chapter 11 Plan, and should instead be effective upon approval of the Settlement Agreement.

12.    The foregoing modifications to the Settlement Agreement benefit the Debtor's estate and all of its stakeholders without depriving BSP of any rights to which it is entitled under the Bankruptcy Code, and while respecting the conceptual framework agreed to between the Trustee and BSP.

**B.    <u>The Settlement Agreement Must Adhere to the Bankruptcy Code's Priority Scheme</u>**

13.    It is well-established that settlements and 363 sales that are structured in a way that violates the Bankruptcy Code's priority scheme are impermissible. *See, e.g.*, *In re Biolitec, Inc.*, 528 B.R. at 266 (noting that to be "fair and equitable" a settlement must give senior interests full priority over junior ones). Similarly, the Supreme Court has held that bankruptcy courts lack the

power to approve of any "structured dismissal that provides for distributions that do not follow ordinary priority rules without the affected creditors' consent[.]" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). The Court reasoned that the "Code's priority system constitutes a basic underpinning of business bankruptcy law" that has "long been considered fundamental to the Bankruptcy Code's operation." *Id.* at 983-84.

14. Moreover, a key aspect of the Bankruptcy Code's priority scheme is horizontal priorities, and as relevant here, administrative expense claimants generally must be treated equally. *See In re First Hartford Corp.*, 23 B.R. 729, 732 (Bankr. S.D.N.Y. 1982) (noting that administrative expense priority provision of the Bankruptcy Code "treats all such expenses equally"); *see also In re MS Freight Distribution, Inc.*, 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) ("The general rule is that all administrative expense creditors must be treated with absolute equality unless a creditor agrees to subordinate its claims or unless the Code specifically provides otherwise."). Indeed, courts faced with an administratively insolvent debtor typically require *pro rata* distributions on account of administrative expense claims, and may even require disgorgement of previously distributed administrative expense payments to ensure equal treatment. *See, e.g., In re Chute*, 235 B.R. 700, 702 (Bankr. D. Mass. 1999) (collecting cases and noting that "as a general rule, administrative claimants in administratively insolvent cases should receive the proceeds of the estate on a pro rata basis").

15. Here, some aspects of the Settlement Agreement threaten to upset the Bankruptcy Code's priority scheme, and present a real risk of prejudicing some administrative expense claimants at the expense of others. First, while the Motion states that the Subordinated Secured Amount is subordinated to administrative, priority and general unsecured claims (other than Insider claims), the Settlement Agreement only states that the Subordinated Secured Amount is

subordinated to unsecured claims (other than Insider claims).  *See* Motion ¶ 32 (stating that Subordinated Secured Amount "shall be subordinated to all allowed administrative, priority, and general unsecured claims" other than Insider claims); Settlement Agreement ¶ 3(b) (stating that Subordinated Secured Amount "shall be subordinated to all allowed unsecured claims" other than Insider claims).  The undersigned presumes that the intent of the referenced language from the Settlement Agreement is that the Subordinated Secured Amount is also subordinate to administrative and priority claims.  However, the Trustee and BSP should confirm that no priority-skipping is contemplated by paragraph 3(b) of the Settlement Agreement

16. In addition, and consistent with the issue described above, where the sale price of the Collateral has not been established to ensure that sale proceeds along with other estate assets will be sufficient to satisfy BSP's Senior Secured Amount plus all administrative claims, any order approving the Settlement Agreement should expressly provide that any administrative expense claims paid as a result of the Settlement Agreement, are paid on an interim basis only, subject to potential clawback, unless and until it is established that the Debtors' estate, following such sale, is not administratively insolvent.

## RESERVATION OF RIGHTS

17. Mayer Brown expressly reserves all rights with respect to the Motion and proposed Settlement Agreement, including the right to supplement or add to the legal and factual arguments raised in this Limited Objection and specifically reserves the right to further object to the Motion on any basis whatsoever at the hearing on the same.  For the avoidance of doubt, nothing herein,

8

including any omission, shall be interpreted or construed as a waiver or limitation on any rights or claims asserted by Mayer Brown, and Mayer Brown reserves all rights with respect thereto.[7]

## CONCLUSION

For the foregoing reasons, the undersigned respectfully requests that this Court decline to approve the Settlement Agreement in its present form without first curing the issues discussed herein and grant such other and further relief as this Court deems appropriate under the circumstances.

Dated: October 7, 2022
       New York, New York

Respectfully submitted,

*/s/ Douglas E. Spelfogel*
Douglas Spelfogel
Charles Kelley
Leah Eisenberg
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

---

[7] The Trustee set an objection deadline that is earlier than what the Local Bankruptcy Rules provide for. Mayer Brown reserves all rights with respect to the same.