**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Adam C. Rogoff, Esq.
P. Bradley O'Neill, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Co-Counsel for Benefit Street Partners Realty*
*Operating Partnership, L.P.*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443
*Co-Counsel for Benefit Street Partners*
*Realty Operating Partnership, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 Wythe Acquisition, LLC<br><br>Debtor. | Chapter 11<br><br>Case No. 21-22108-RDD |

**BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P.'S OPPOSITION TO MAYER BROWN LLP'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO CHAPTER 11 TRUSTEE'S APPLICATION TO APPROVE SETTLEMENT AGREEMENT WITH BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.**

Benefit Street Partners Realty Operating Partnership, L.P. ("BSP"), secured creditor of the Debtor, files this Opposition (the "Opposition") to Mayer Brown LLP's *Limited Objection and Reservation of Rights to Chapter 11 Trustee's Application to Approve Settlement Agreement with Benefit Street Partners Operating Partnership, L.P.* [Docket No. 735] (the "Limited Objection").

Mayer Brown filed the Limited Objection to object to the Settlement Agreement attached to the *Application to Approve Settlement Agreement with Benefit Street Partners Operating Partnership, L.P.* filed by the Trustee [Docket No. 679] (the "Proposed Settlement").[1]  BSP is constrained to respond to what appears to be Mayer Brown's clear purpose to force upon BSP a deal to which BSP never agreed, in obvious effort to divert a portion of BSP's secured-creditor-recovery to Mayer Brown, even after Mayer Brown spent over a year prosecuting a tortured and highly contested strategy to enrich the Debtor's insiders – removed for misconduct and other cause – at the expense of the Debtor's creditors, including BSP.  Indeed, due to a barrage of misguided litigation,[2] obstructionist conduct,[3] discovery games,[4] and introduction and litigation of fraudulently-prepared documents,[5] among other things, this bankruptcy case was far more protracted and expensive than it ever should have been.

Indeed, Mayer Brown's furtherance of the Debtor's insiders' interests to the detriment of the estate forced BSP to spend millions of dollars in legal fees to seek and obtain the appointment of the Trustee as an honest fiduciary to move the case forward.  The Debtor's delay tactics – enabled by Mayer Brown – also resulted in millions of dollars of accrued contract and default rate interest to which BSP is entitled under its documents.  While the question of Mayer Brown's entitlement to <u>any</u> compensation as an estate fiduciary for furthering the insiders' fraud and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Proposed Settlement.

[2] *See* AP No. 22-07002-SHL filed on January 6, 2022 against BSP; Litigation surrounding BSP's cash collateral in the main case at Docket Nos. 4, 11, 12 & 37; Litigation surrounding Debtor's Chapter 11 disclosure statement and plan at Docket Nos. 115, 116, 117, 118, 148, 159, 162, 166, 167, 196, 290, 307, 318, 345, 383, 384, 391, 392, 425, 428, 464, 467, 472, 551, 564, 567 & 584.

[3] *E.g.* Docket Nos. 239, 241, 274, 282, 285, 520, 526 & 527.

[4] Docket Nos. 451, 458, 459 & 460.

[5] Transcript of May 25, 2022 Hearing on Application to Appoint a Chapter 11 Trustee: Page 116, Lines 8–19; Page 122, Lines 15–25; Page 123, Lines 1–19.

misconduct is a matter left for another day, the Court should not countenance this attempt to further injure BSP by seeking to squeeze available cash from sale of the Debtor's assets – BSP's collateral – to pay whatever claim the Court may ultimately allow to Mayer Brown, if any.

Luckily, the Court need not do so. The Proposed Settlement was heavily negotiated between BSP and the Trustee. The Proposed Settlement is, without a doubt, certainly compliant with *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) ("In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge… [is] to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness'") and Fed. R. Bankr. P. 9019, in that it is above the lowest point in a range of reasonableness in context of the facts and prevailing economics. Most importantly, the Proposed Settlement provides **real, tangible value** to the estate: where a Chapter 11 plan and distribution to creditors beyond BSP may otherwise be impossible given the size of BSP's claim, BSP has agreed to **subordinate – and not credit bid – in excess of $12 million** in order to allow for confirmation of a Qualified Chapter 11 Plan that makes a distribution to creditors. *Absent BSP's voluntary claim subordination and credit bid cap, it is unclear that any plan could be confirmed*. And other than the negotiated carve-outs and other material funding provided for in the cash collateral orders, BSP has *no obligation to fund any payments for the benefit of other creditors, especially Mayer Brown*.

BSP has done its part. At this point, a plan will be confirmable if (1) the Debtor's assets sell for sufficient cash, and (2) the Debtor's allowed administrative (and priority) claims – including any purported claim by Mayer Brown – are in an acceptable amount or otherwise reduced by Court order or agreement among the parties to a reasonable amount. The Proposed Settlement should be approved.

3

## RESPONSE TO LIMITED OBJECTION

**A.    Despite Mayer Brown's mischaracterizations, the Proposed Settlement properly liquidates BSP's claim and provides for a subordination under a Qualified Chapter 11 Plan to permit a distribution to other creditors.**

Mayer Brown mischaracterizes various terms of the Proposed Settlement, presumably as pretext to make various "clarifications" which, in actuality, seek to change the deal and force a set aside of cash to pay its alleged claim.

The Proposed Settlement properly liquidates BSP's claim (which was never really in dispute) and encourages competitive bidding by capping an otherwise allowable (and much higher) credit bid. As a preliminary matter, the claims and objections advanced by the Debtor in its adversary proceeding against BSP were *facially meritless*. As BSP has already explained at length in pleadings, *see* Adv. Pro. No. 22-07002-SHL, Docket Nos. 4, 5, 7 & 19 (briefing BSP's motion to dismiss the Debtor's adversary proceeding), the Debtor largely reasserted its state law claims that were previously denied on appeal by the First Department by attempting to recast them as bankruptcy causes of action. This, even though the Debtor's counsel, and Mayer Brown's co-counsel, represented to the Court on the record at the Debtor's first day hearings that *the Debtor did not intend to relitigate these old and decided claims*. Further, the "new" claims in the adversary proceeding were either easily refuted based on simple math or a review of documents in the Debtor's own possession at the time it filed the adversary proceeding.[6] Unlike the Debtor and its advisors, these were analyses readily undertaken by the Trustee in negotiating the Proposed Settlement. Since the alleged claims against BSP are meritless, the consideration provided by BSP is more than fair in exchange for such claims' dismissal.

---

[6] It was and remains outrageous that the Debtor and its professionals concocted a "stay violation" claim for a reserve setoff undertaken well before the petition date, while they were *in possession of* documents produced by BSP proving this claim meritless.

4

Moreover, the Proposed Settlement is compliant with the law and imminently fair to the estate. In its eagerness to extract cash from BSP's collateral proceeds to create a fund for itself, Mayer Brown makes a number of mischaracterizations regarding the substance of the Proposed Settlement. BSP corrects these mischaracterizations here.

In Section 2 of the Proposed Settlement, BSP and the Trustee stipulated to the allowance of BSP's Proof of Claim filed in this Bankruptcy Case [Proofs of Claim 8-1 and 8-2] as "allowed in its entirety as a secured claim secured by the Collateral, provided that any amounts of such claim in excess of BSP's collateral for the Loan shall constitute an allowed unsecured claim, each pursuant to Section 506 of the Bankruptcy Code." Mayer Brown's assertion that the Proposed Settlement "improperly (and prematurely) grants BSP post-petition interest and other charges in absence of a determination on the value of the Collateral securing the Loan, in violation of Section 506(b) of the Bankruptcy Code," *see* Limited Objection, ¶ 4, is therefore false. The Proposed Settlement very clearly allows BSP's claim consistent with its filed proofs of claim yet bifurcates the secured and unsecured portions with specific reference and pursuant to Section 506.

Importantly, in Section 2 of the Proposed Settlement, BSP agreed to limit its credit bid to its voluntarily reduced Senior Secured Amount, which will, at the time of the auction, be at least ***$13 million lower*** than the full amount of BSP's claim that it could otherwise credit bid. Thus, contrary to Mayer Brown's suggestion that the Proposed Settlement will chill bids for the Debtor's assets, *see* Limited Objection, ¶¶ 4(ii) and 9, *BSP has agreed to a meaningful, eight-figure reduction in its maximum credit bid in order to encourage and facilitate competitive cash bidding to generate recovery opportunity for unsecured creditors even before BSP recovers on the balance of its claim.*

5

BSP further agreed that, under a Qualified Chapter 11 Plan, BSP would subordinate its default interest, protective advance interest, exit fee, certain legal fees and late fees in the amount of approximately $12.7 million (as of August 14, 2022, with interest accruing subsequently thereon). This agreement will facilitate confirmation of a plan and payments to all creditors on account of allowed claims, *except* claims held by insiders. *See* Proposed Settlement, ¶¶ 3(a) and (b).

Mayer Brown's concern that BSP's Subordinated Secured Amount is subordinated just to unsecured claims other than insider claims under the Qualified Chapter 11 Plan, *see* Limited Objection, ¶ 15, is unfounded based on the plain language of the Proposed Settlement. *See* Proposed Settlement, ¶ 3(b) ("BSP shall have allowed secured claim, which shall be subordinated to all allowed unsecured claims but senior to all equity interests and claims held by [insiders]…") A Qualified Chapter 11 Plan cannot be confirmed unless allowed administrative expense and priority claims are <u>paid in full</u>, which is necessary to permit the Subordinated Secured Amount to exist. To be clear, if any such allowed administrative expense and priority claims are too high such that a Qualified Chapter 11 Plan cannot be confirmed based upon sale proceeds, then the Debtor's assets would be sold outside of a plan with no voluntary claim subordination by BSP.

The contours of a Qualified Chapter 11 Plan are clearly delineated in the Proposed Settlement. To paraphrase, in order for BSP to bifurcate its claim and subordinate a portion thereof, the Trustee must be able to confirm a plan that (i) closes the sale of the Debtor's assets by the end of 2022, (ii) pays BSP its reduced Senior Secured Amount, plus all allowed administrative and priority claims, (iii) sets aside a fund for post-effective date liquidation, (iv) provides for a liquidation trust to pursue post-effective date liquidation, and (v) releases BSP and its affiliates. Absent such a plan, BSP does not agree to any claim subordination. The Trustee has agreed to

6

this settlement framework and recommended it to the Court for approval. BSP has not – and will not – agree to subordinate millions of dollars of its claims now, absent a Qualified Chapter 11 Plan, simply in order to fund a recovery to any of the Debtor's professionals. *See* Limited Objection, ⁋ 12. Mayer Brown does not have the authority to force such a settlement upon BSP or the Trustee.

B.     **The Proposed Settlement properly provides for allowance of BSP's claim and permits BSP its right as a secured creditor to credit bid for its collateral.**

Mayer Brown, ignoring Supreme Court and Second Circuit precedent, incorrectly argues that BSP's credit bid should be limited to pre-petition interest and fees unless its collateral is formally valued or a cash bidder overbids BSP's Senior Secured Amount. No such restriction exists. BSP is entitled to credit bid the *full amount of its allowed claim without limitation under section 506*. *See* 3 COLLIER ON BANKRUPTCY P 363.09 (16th 2022) ("The creditor may bid in an amount up to its entire claim; the offset is not limited to any previously determined secured claim. Thus, the right is unaffected by any prior valuation under section 506(a) or lack of a valuation that may have divided an allowed claim into an allowed secured claim and an allowed unsecured claim due to a perceived lack of collateral value.").

In *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 US 639, 644 n.2 (2012), the Supreme Court recognized that the ability to credit bid "helps to protect a creditor against the risk that its collateral will be sold at a depressed price" and "enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan." The text of the relevant statute agrees with this proposition. Section 363(k) does not limit a credit bid to the "secured portion of a claim;" rather, it permits a creditor to credit bid the entire allowed amount of its claim. *See* 11 U.S.C. § 363(k) ("…such holder may offset such claim against the purchase price of such property.")

While Section 506(a)(1) does bifurcate a secured creditor's claim between a secured and unsecured portion based upon the value of the collateral, nothing in this statute requires the collateral be valued before a secured party can credit bid.  On the contrary, in *Tennenbaum Capital Partners L.L.C. v.* Kennedy, 372 Fed. Appx. 180, 181 (2d Cir. 2010), the Second Circuit held that the value of collateral sold at auction, and thus the amount of debt credited to the lender, was established by the winning credit bid, irrespective of the post- auction valuation of the property. *Accord In re GSC, Inc.* 453 B.R. 132, 179 (Bankr. S.D.N.Y. 2011) ("Regardless of what subsequent allocation is made between the joint bidders, as to the assets or interests allocated, those assets will have a value equal to the credit bid that extinguished the underlying loan.")

There is absolutely no reason, in the statute or citing authority, that BSP's credit bid should be limited to pre-petition interest or fees.  The auction of the Debtor's assets will establish their value and, thus, the secured portion of BSP's claim.  If BSP tenders a credit bid that is the successful bid, that will serve to value the assets sold.  And that value, under Section 506(a)(1), will constitute part of BSP's secured claim, subject to any additional collateral left to be liquidated.  As a matter of law, Mayer Brown's argument in this regard is simply wrong.  Without the reduction agreed to by BSP, it would have the right to bid substantially higher.  *In fact, the cap – which applies to a sale under a plan <u>or</u> outside of a plan – is intended by BSP to <u>encourage bidding</u>*.

**C.     The Proposed Settlement does not contravene the Bankruptcy Code's priority scheme.**

The Proposed Settlement does not contravene the Bankruptcy Code's priority scheme.  As discussed above, for purposes of a Qualified Chapter 11 Plan, BSP has agreed to subordinate its Subordinate Secured Amount to all allowed administrative and other priority claims, and allowed unsecured claims, *other than* insider claims and equity interests.  By definition, there is simply no impermissible priority skipping.

8

In essence, Mayer Brown complains that BSP agreed to a negotiated carveout to fund operating expenses and the Trustee and his professionals while not providing any money for the Debtor's professionals in the absence of a Qualified Chapter 11 Plan. *See* Limited Objection, ¶¶ 14-15. To be clear, the carveout to which BSP agreed in the *Eleventh Interim Order for Use of Cash Collateral* entered on September 19, 2022 [Docket No. 685] (the "Eleventh Cash Collateral Order") constitutes a voluntary allowance by BSP of certain proceeds of its collateral solely to fund certain expenses approved by BSP under a negotiated budget. *In none of the prior ten cash collateral orders has BSP ever consented to use of its cash collateral to pay Mayer Brown or any of the Debtor's other professionals.*[7] While Judge Drain did allow, on an interim basis, certain fees to Mayer Brown, *see* Docket No. 508, such fees remained subject to final approval and specifically shall not be paid from BSP's cash collateral. And, BSP at all times has reserved and continues to reserve the right to object to all such fees.

In any event, Mayer Brown's remorse over the scope of the carveout in the Eleventh Cash Collateral Order was a cash collateral matter, not a settlement matter. Mayer Brown cannot wrest from BSP's agreed carveout now memorialized in a signed order funds allocated to operating expenses, including Hotel employees, and Trustee expenses and redirect those funds to its own pocket. *BSP does not, and will not, consent to carve funds out of its secured claim recovery to pay claims of Mayer Brown or any of the Debtor's other professionals who are culpable for the situation in which the estate now finds itself.*

---

[7] BSP agreed to a limited payment to the Debtor's appraiser, Leitner Berman. Otherwise, no payments using cash collateral were ever authorized to the Debtor's professionals. *See e.g.*, *Tenth Interim Order for Use of Cash Collateral* entered on March 8, 2022 [Docket No. 449] at ¶2. Mayer Brown is well aware of this limitation which was expressly negotiated with it as part of numerous cash collateral orders.

9

**CONCLUSION**

The Limited Objection mischaracterizes the Proposed Settlement and is wrong on the law. The Proposed Settlement has made confirmation of a Qualified Chapter 11 Plan possible. BSP has done its part to aid the Trustee's efforts on behalf of the estate. The Proposed Settlement should be approved as filed.

Respectfully submitted, this 14th day of October, 2022.

        NELSON MULLINS RILEY &
        SCARBOROUGH, LLP

        */s/ Lee B. Hart*
        Lee B. Hart
        201 17th Street, Suite 1700
        Atlanta, Georgia 30363
        Telephone: (404) 322-6000
        Facsimile: (404) 322-6050
        Lee.Hart@nelsonmullins.com

        Gary M. Freedman
        2 South Biscayne Blvd., 21st Floor
        Miami, Florida 33131
        Telephone: (305) 373-9400
        Facsimile: (305) 373-9443
        Gary.Freedman@nelsonmullins.com

        KRAMER LEVIN NAFTALIS &
        FRANKEL LLP
        Adam C. Rogoff, Esq.
        P. Bradley O'Neill, Esq.
        1177 Avenue of the Americas
        New York, New York 10036
        Telephone: (212) 715-9100
        Facsimile: (212) 715-8000

        *Co-Counsel for Benefit Street Partners*
        *Realty Operating Partnership, L.P.*