Hearing Date and Time:  October 19, 2022 @ 2:00 p.m. (prevailing Eastern Time)

**MAYER BROWN LLP**
Douglas Spelfogel
Charles Kelley
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 21-22108 (SHL) |

**MAYER BROWN LLP'S REPLY SUPPORTING LIMITED OBJECTION
AND RESERVATION OF RIGHTS TO CHAPTER 11 TRUSTEE'S
APPLICATION TO APPROVE SETTLEMENT AGREEMENT WITH
BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.**

Mayer Brown LLP hereby files this reply (the "Reply")[1] in support of its limited objection and reservation of rights [ECF No. 735] (the "Limited Objection") with respect to the *Chapter 11 Trustee's Application To Approve Settlement Agreement with Benefit Street Partners Operating Partnership L.P.* [ECF No. 679] (the "Motion"),[2] and in response to Benefit Street Partners Realty Operating Partnership, L.P.'s Opposition to the Limited Objection [ECF No. 742] (the "BSP Opposition)" and the Chapter 11 Trustee's Reply to the Limited Objection [ECF No. 741] (the

---

[1] Mayer Brown files this Reply, and respectfully requests the Court's consideration of the same, in order to address certain misstatements, oversights and mischaracterizations in the Oppositions (defined below).  Further, the Trustee set an arbitrary objection deadline as to the Motion that is earlier than what the Local Bankruptcy Rules provide for, therefore allowing Mayer Brown less time to prepare and file the Limited Objection, while allowing the Trustee and BSP extra time to prepare and file the Oppositions.

[2] Capitalized terms used but not defined herein have the meanings given in the Motion.  Additionally, while irrelevant to the subject Motion, the misleading and/or erroneous rhetoric asserted in the BSP Opposition is vigorously contested and Mayer Brown expressly reserves all rights with respect to the same.

750399595

"Trustee Opposition" and, together with the BSP Opposition, the "Oppositions"), and in support thereof states as follows:

## REPLY

1. Section 502(b)(2) of the Bankruptcy Code provides for the disallowance of any claim to the extent that "such claim is for unmatured interest[.]" 11 U.S.C. § 502(b)(2). In other words, section 502(b)(2) establishes a "general rule disallowing postpetition interest." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 373 (1988). Section 506(b) of the Bankruptcy Code codified "a limited exception to the general rule of disallowance of post-petition interest in the case of oversecured creditors." *In re Chateaugay Corp.*, 150 B.R. 529, 538 (Bankr. S.D.N.Y. 1993). However, notwithstanding that limited exception, section 506(b) otherwise has the "substantive effect of denying undersecured creditors postpetition interest on their claims -- just as it denies oversecured creditors postpetition interest to the extent that such interest, when added to the principal amount of the claim, will exceed the value of the collateral." *Timbers* 484 U.S. at 372.

2. It is the above issue—which was raised in the Limited Objection but is misstated in the Oppositions—that drives Mayer Brown's limited objection to approval of the Settlement Agreement.[3] As written, the Settlement Agreement circumvents the important protections for bankruptcy estates built into sections 506(b) and 502(b)(2). The Settlement Agreement first *assumes* that BSP is oversecured[4] and, as a result thereof, grants it an allowed claim for postpetition interest under section 506(b) (which amount would have to be disallowed were BSP

---

[3] This issue is entirely distinct from the issues BSP and the Trustee focus on in their Oppositions: the bifurcation of an allowed undersecured claim into secured and unsecured portions and a secured party's ability to credit bid both the secured and unsecured amounts.

[4] It may be the case that the Trustee has evidence demonstrating unequivocally that BSP is oversecured, in which case the Limited Objection is moot. However, the Trustee has not shared any such evidence with the undersigned nor placed any such evidence in the record.

2

undersecured). Next, the Settlement Agreement *retroactively ratifies* that assumption by allowing BSP to credit bid such postpetition interest. This ensures that, irrespective of actual market conditions, the "sale price" for and deemed value of the Hotel is high enough to trigger section 506(b)'s allowance of such postpetition interest, even if no cash comes into the estate as a result of BSP's credit bid.

3. Initially, the Trustee acknowledges that "the Settlement resolves the amount of the Lender's claim," Trustee Opposition ¶ 9, albeit while failing to challenge that doing so contravenes sections 502(b)(2) and 506(b) given the allowance of postpetition interest and related charges.[5] However, the Trustee then appears to contradict himself in the subsequent paragraph, stating that "[o]utside of the plan context, the Settlement does not contain any provisions providing for allowance of the Lender's claims for postpetition interest, fees, and charges in the absence of the valuation of its Collateral." Trustee Opposition ¶ 10. This latter assertion is plainly false, as paragraph 2 of the Settlement Agreement allows BSP's claim in the amount of at least $108,688,786.76—including the postpetition interest and other charges described therein—independent of the outcome of any sale or plan process. If it is the intent of the Trustee that the *allowed* amount of BSP's claim should not be determined prior to the auction, then such intent is absent from the Settlement Agreement.

4. The undersigned proposed a straightforward fix for the above concerns. As an initial matter, the determination regarding value should be postponed until after the auction, consistent with sections 502(b)(2) and 506(b). In addition, at the outset of the auction, BSP should be able to credit bid the amount of its claim that would be allowed irrespective of the value of the

---

[5] BSP apparently agrees with this interpretation of the Settlement Agreement, claiming that the agreement "properly liquidates BSP's claim" and that the Trustee "stipulated to the allowance of BSP's Proof of Claim." BSP Response pp. 4, 5.

Collateral.  Then, if, during the course of the auction, the market demonstrates that the value of the Hotel is greater than the amount of the initial credit bid through the Trustee obtaining a cash bid higher and better than BSP's initial credit bid, BSP should be permitted to credit bid that greater amount if it is so inclined.  This framework both aligns with the agreement negotiated between BSP and the Trustee and respects the Bankruptcy Code's unequivocal disallowance of postpetition interest on undersecured claims.

5. If the result of a sale of the Hotel is that BSP's claim is oversecured, then the above proposed modification to the Settlement Agreement hurts nobody.  Indeed, a lower initial credit bid by BSP may encourage more third-parties to offer cash bids for the Hotel, resulting in a more robust auction process that benefits everybody.  However, if it turns out that there are no other bidders for the Hotel (especially in light of BSP's potentially inflated credit bidding rights under the current Settlement Agreement), then the Settlement Agreement would have actively harmed the estate.  Deferring allowance of BSP's postpetition interest (and, by extension, its right to credit bid that amount) prevents BSP from potentially extracting extra value from the estate that otherwise would be prohibited under section 502(b)(2).

6. The materials cited by BSP misstate the arguments and do not even attempt to address the concerns raised in the Limited Objection.  In *RadLAX*, the Supreme Court addressed the question of whether the cramdown provisions of the Bankruptcy Code allow for confirmation of a plan pursuant to which the debtors' property was sold at an auction in which the secured lender was *barred* from credit bidding its claim.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 642 (2012).  The Court held that the debtors could not "obtain confirmation of a Chapter 11 cramdown plan that provides for the sale of collateral free and clear of the Bank's lien, but does not permit the Bank to credit-bid at the sale[.]"  *Id.* at 649.  Here, the question is not

4

whether BSP may credit bid its allowed claim, but whether portions of its claim may be allowed in the first place, and at no point in its *RadLAX* decision did the Supreme Court opine as to either the allowance of postpetition interest for potentially undersecured claims or the ability to credit bid such amounts when potentially disallowed by section 502(b)(2).

7. Similarly, the proposition for which BSP cites the Collier treatise—that a secured creditor may credit bid its *allowed* claim under section 363(k)—is undisputed. The question here is, in light of section 502(b)(2) and 506(b), what portion of BSP's claim may be allowed up-front under the Settlement Agreement and which portion must not be allowed, if at all, until after there is a determination the that value of the Collateral is sufficient to permit such allowance as a matter of law.

8. Likewise, the *Tennenbaum* decision cited in the BSP Response stands for the unremarkable proposition that the price obtained at a sale, not a subsequently obtained market valuation,[6] is the amount that is used for determining the extent to which a secured claim is satisfied through that sale. *Tennenbaum Cap. Partners L.L.C. v. Kennedy*, 372 F. App'x 180, 181 (2d Cir. 2010). This, too, has no bearing on the manner in which sections 502(b)(2) and 506(b) apply in advance of a valuation being obtained through a sale of collateral.

9. It is not clear how a settlement that has the potential to violate the Bankruptcy Code to the detriment of the estate's stakeholders other than BSP by agreeing to the allowance of claims that may be barred as a matter of black letter bankruptcy law is fair and equitable or consistent with the Trustee's business judgment. Even if such were the case, which is contested, it is well

---

[6] The Limited Objection doesn't assert that a post-auction valuation should dictate the allowance or bifurcation of a claim secured by the collateral sold at such auction, so it is unclear why BSP expends so much energy rebutting that proposition. Both Oppositions appear to acknowledges that the Subordinated Secured Amount is subordinated to administrative claims consistent with the Motion, accordingly, it is unclear why there is objection to clarifying such, in particular, where the Trustee has filed an amended order to clarify claims asserted by another party.

established that a trustee or debtor in possession may not enter into a settlement that contravenes the Bankruptcy Code's priority scheme or otherwise non-consensually interferes with the rights of non-settling parties. *See* Limited Objection ¶¶ 6 n.2, 13. Accordingly, unless the premature allowance of postpetition interest and charges is removed from the Settlement Agreement, this Court should withhold its approval and/or direct that revisions be made in accordance with the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully requests that this Court decline to approve the Settlement Agreement in its present form without first curing the issues discussed herein and in the Limited Objection and grant such other and further relief as this Court deems appropriate under the circumstances.

Dated:  October 17, 2022
      New York, New York

Respectfully submitted,

*/s/ Douglas E. Spelfogel*
Douglas Spelfogel
Charles Kelley
Leah Eisenberg
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910