**Hearing Date: November 10, 2022 at 2:00 p.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Bryan M. Kotliar
Amanda C. Glaubach

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
In re:                                :        Chapter 11
                                      :
96 Wythe Acquisition, LLC,            :        Case No. 21-22108 (SHL)
                                      :
                    Debtor.           :        Related Docket Nos. 752 & 771
                                      :
------------------------------------------------------------x
```

**NOTICE OF FILING OF REVISED**
**ORDER (A) APPROVING BID PROCEDURES FOR**
**THE SALE OF THE DEBTOR'S ASSETS; (B) ESTABLISHING**
**PROCEDURES TO DESIGNATE A STALKING HORSE BIDDER AND**
**ENTER INTO A STALKING HORSE AGREEMENT WITH BID**
**PROTECTIONS; (C) SCHEDULING AN AUCTION AND SALE HEARING;**
**(D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF;**
**AND (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND**
**ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES; AND (F) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE** that on October 21, 2022, Stephen S. Gray, not

individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the

estate of 96 Wythe Acquisition, LLC, by and through his undersigned counsel, filed and

served the *Chapter 11 Trustee's Motion for Entry Of Orders (I)(A) Approving Bid Procedures*

*For The Sale Of Substantially All Of The Debtor's Assets; (B) Establishing Procedures To*

*Designate A Stalking Horse Bidder and Enter Into a Stalking Horse Agreement with Bid*

*Protections; (C) Scheduling an Auction and Sale Hearing; (D) Approving The Form and*

*Manner of Notice Thereof; (E) Approving Procedures For Assumption and Assignment of*

*Certain Executory Contracts and Unexpired Leases; and (F) Granting Related Relief; and*
*(II)(A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances;*
*(B)Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases;*
*and (C) Granting Related Relief* [Docket No. 752] (the "<u>Motion</u>"), which included a
proposed form of order attached thereto as <u>Exhibit A</u> (the "<u>Original Proposed Order</u>").[1]

      **PLEASE TAKE FURTHER NOTICE** that the Trustee hereby files a revised
proposed order approving the Motion, a copy of which is attached hereto as **Exhibit A**
(the "<u>Revised Proposed Order</u>").  A redline showing the changes to the Original
Proposed Order as set forth in the Revised Proposed Order is attached hereto as **Exhibit
B**.

      **PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval
of the Motion will be held before the Honorable Sean H. Lane, United States
Bankruptcy Judge, via Zoom for Government, **on November 10, 2022 (the "<u>Hearing
Date</u>") at 2:00 p.m. (prevailing Eastern Time).**  Those wishing to appear before the
Court at the Hearing, must register their appearance utilizing the Electronic
Appearance portal located on the Court's website: https://ecf.nysb.uscourts.gov/cgi-
bin/nysbAppearances.pl.  Appearances must be entered no later than <u>4:00 p.m.</u>
<u>(Prevailing Eastern Time) one business day before the hearing</u>.

*[Concludes on following page]*

---

[1]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

**PLEASE TAKE FURTHER NOTICE** that, you may also obtain copies of any

pleadings by visiting the Court's website at https://www.nysb.uscourts.gov in

accordance with the procedures and fees set forth therein.

DATED:   November 7, 2022
         New York, New York

                        STEPHEN S. GRAY
                        Not Individually But Solely in His
                        Capacity as Chapter 11 Trustee
                        By His Attorneys,
                        TOGUT, SEGAL & SEGAL LLP
                        By:

                        */s/ Frank A . Oswald*
                        ALBERT TOGUT
                        FRANK A. OSWALD
                        BRYAN M. KOTLIAR
                        AMANDA C. GLAUBACH
                        One Penn Plaza, Suite 3335
                        New York, New York 10119
                        (212) 594-5000

## EXHIBIT A

**Revised Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                  :
In re:                                            :          Chapter 11
                                                  :
96 WYTHE ACQUISITION LLC,                         :          Case No. 21-22108 (SHL)
                                                  :
                              Debtor.             :
                                                  :
---------------------------------------------------------------x

**ORDER (A) APPROVING BID PROCEDURES FOR
THE SALE OF THE DEBTOR'S ASSETS; (B) ESTABLISHING
PROCEDURES TO DESIGNATE A STALKING HORSE BIDDER AND
ENTER INTO A STALKING HORSE AGREEMENT WITH BID
PROTECTIONS; (C) SCHEDULING AN AUCTION AND SALE HEARING;
(D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF;
AND (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[1] of Stephen S. Gray, not individually but

solely in his capacity as the Chapter 11 Trustee (the "<u>Trustee</u>") of the estate of 96 Wythe

Acquisition LLC (the "<u>Debtor</u>") in the above-captioned case (the "<u>Chapter 11 Case</u>"), for

entry of an order (this "<u>Bid Procedures Order</u>"), (a) approving the bid procedures

attached hereto as **Exhibit 1** (the "<u>Bid Procedures</u>") in connection with the Sale of the

Debtor's Assets;  (b) establishing procedures for the Trustee to designate a Stalking

Horse Bidder or Stalking Horse Budders with respect to certain or all of the Assets and

to enter into a Stalking Horse Agreement or Stalking Horse Agreements with a Break-

Up Fee and Expense Reimbursement (each as defined below, and together the "<u>Bid</u>

<u>Protections</u>"); (c) establishing certain dates and deadlines for the sale process, including

scheduling an Auction and the Sale Hearing; (d) approving the form and manner of

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in
       the Motion or the Bid Procedures (as defined below), as applicable.

notice of the Auction and Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (the "Assumption and Assignment Procedures"), including the form and manner of notice of contract assumption, substantially in the form attached hereto as **Exhibit 3** (the "Contract Assumption Notice"); and (f) granting related relief; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and upon the Declaration of Emilio Amendola in Support of Chapter 11 Trustee's Bid Procedure Motion [Docket No. 771] (the "Amendola Declaration"), filed on November 2, 2022; and it appearing that venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having considered the Amendola Declaration and having heard the statements of counsel with respect to the Motion at a hearing (the "Hearing"); and this Court having determined that the relief requested in the Motion with respect to the entry of this Bid Procedures Order is in the best interests of the Debtor, the estate, its creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that, except as otherwise ordered herein, no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

    A.    This Court has jurisdiction to hear and determine the Motion and to

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they

grant the relief set forth herein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Trustee's proposed notice of the Auction, the Sale and the other matters to be considered at the Sale Hearing pursuant to the Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bid Procedures, Auction, Sale Hearing, and Sale.

C.      The Bid Procedures are fair, reasonable, appropriate and are designed to maximize the value of the Assets and recoveries to the Debtor's estate, its creditors, and other parties in interest.

D.      The Trustee has demonstrated compelling and sound business justifications for (i) the ability to designate a Stalking Horse Bidder or Stalking Horse Bidders, and to enter into a Stalking Horse Agreement or Stalking Horse Agreements with Bid Protections, which include (a) a break-up fee in the range of 1% to 3% in the Trustee's discretion, in consultation with the Consultation Parties, of the cash consideration to be paid (the "Break-Up Fee") and (b) reimbursement of reasonable, documented and necessary out-of-pocket expenses incurred in connection with such Stalking Horse Bid not to exceed $150,000 (the "Expense Reimbursement") and (ii) the Assumption and Assignment Procedures.  The foregoing are fair, reasonable, and appropriate under the circumstances.

E.      The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bid Procedures, the Auction,

---

are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the Sale Hearing, and the Sale free and clear of any liens, claims, interests, or

encumbrances pursuant to section 363(f) of the Bankruptcy Code (with such liens,

claims, interests, or encumbrances attaching to the proceeds of any such sale, which

shall be first applied to satisfy the Secured Lender in cash in full), and any and all

objection deadlines related thereto, and no other or further notice shall be required for

the Motion.

F.     Based on the record before the Court, the Trustee has demonstrated

good and sufficient basis for the Court to approve the Motion as it relates to the entry

of this Bid Procedures Order.

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED to the extent set forth herein.

2.     Any and all objections, including *Toby Moskovits' and Michael
Lichtenstein's Limited Objection to Chapter 11 Trustee's Sale Procedures Motion* [Docket No.
772], filed on November 3, 2022, made relating to the Bid Procedures and the Motion
that have not been withdrawn or resolved prior to or at the Hearing are hereby
overruled on the merits with prejudice.

3.     The Bid Procedures attached hereto as **Exhibit 1** are hereby
approved in all respects.

4.     Subject to the terms of this Order and the Bid Procedures, the
Trustee may, with the reasonable consent of the Secured Lender, at closing of the sale of
the Assets subject to the Stalking Horse Bid, make certain payments to the Stalking
Horse Bidder in consideration of its tendering the Stalking Horse Bid, including (a) a
break-up fee in the range of 1% to 3% in the Trustee's discretion, in consultation with
the Consultation Parties, of the cash consideration to be paid (the "Break-Up Fee") and
(b) reimbursement of reasonable, documented and necessary out-of-pocket expenses

4

incurred in connection with such Stalking Horse Bid not to exceed $150,000 (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").

5.    If the Trustee designates a Stalking Horse Bidder or Stalking Horse Bidders with respect to certain or all of the Assets, the Trustee shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) shall file with the Court, and serve on the applicable parties, a notice that contains: (a)  the identity of the Stalking Horse Bidder or Stalking Horse Bidders;  (b) any connections the Stalking Horse Bidder or Stalking Horse Bidders have with the Trustee, the Debtor's Principals, including Toby Moskovits and Michael Lichtenstein, or any affiliates including, but not limited to Northside Acquisition, LLC, etc.;  (c) the material terms of the Stalking Horse Bid, including the Stalking Horse Agreement and the Bid Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Bidder").

6.    Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse Bidder, including any Bid Protections pursuant to the terms and provisions of a Stalking Horse agreement, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder, and served on (i) counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and (ii)  co-counsel to the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (Arogoff@kramerlevin.com) and

Nelson Mullins Riley & Scarborough, LLP, Attn.: Lee B. Hart, Esq.

(lee.hart@nelsonmullins.com).

7.     If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed Bid Protections will not be deemed approved until the Stalking Horse Objection is resolved by agreement of the objecting party, the Trustee, and the Secured Lender, or by order of the Court.

8.     If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bid Procedures, the Bid Protections shall be deemed approved without further order of the Court upon the expiration of the objection deadline.

9.     No other bidder, nor any party making a credit bid (irrespective of whether it is a Stalking Horse Bidder) will be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment; provided, that neither the Bid Procedures Order nor the Bid Procedures shall impair or prejudice the rights of the Secured Lender to collect its fees in accordance with the Loan Agreement and related documents.

10.     The Sale Notice substantially in the form attached hereto as **Exhibit 2** is approved.  As soon as reasonably practicable, but in no event later than the third (3rd) business day after entry of this Bid Procedures Order, the Trustee shall serve or shall cause to be served the Sale Notice by e-mail (where available) or first-class mail postage prepaid (if e-mail is not available) upon:  (a) all entities reasonably known to have expressed an interest in the acquisition, directly or indirectly, of the Assets; (b) all entities known to have asserted any claims, liens, interests, or encumbrances on any of the Assets; (c) the Office of the United States Trustee for the Southern District of New York, Region 2 (the "U.S. Trustee"); (d) counsel to the Secured Lender; (e) the Internal

Revenue Service; (f) all parties to executory contracts to be assumed and assigned, or

rejected as part of the Sale; (g) all other parties who have requested notice pursuant to

Bankruptcy Rule 2002 as of the date hereof.

11.    The procedures set forth herein regarding the assumption and

assignment of the executory contracts to be assumed by the Trustee pursuant to section

365(b) of the Bankruptcy Code and assigned to a Successful Bidder or Successful

Bidders in connection with the Sale (the "Assumption Procedures") are hereby

approved.  The Contract Assumption Notice substantially in the form attached hereto

as **Exhibit 3** is approved.

12.    The Assumption Procedures shall govern the assumption and

assignment of all of the Trustee's executory contracts and unexpired leases to be

assumed and assigned in connection with the Sale (each, an "Assigned Contract," and,

collectively, the "Assigned Contracts"), subject to the payment of any payments

necessary to cure any defaults arising under any Assigned Contract (the "Cure

Payments"):

     a.  **Contract Assumption Notice.**  No later than three (3) business days
following entry of the Bid Procedures Order,  (the "Assumption and
Assignment Service Deadline"), the Trustee shall serve a notice of
contract assumption in substantially the form of the Contract
Assumption Notice via first-class mail (or email where available) on:
(a) all counterparties to all potential Assigned Contracts; (b) all entities
reasonably known to have expressed an interest in the acquisition,
directly or indirectly, of the Assets; (c) all entities known to have
asserted any claims, liens, interests or encumbrances on any of the
Assets; (d) the Office of the United States Trustee for the Southern
District of New York, Region 2; (e) counsel to Benefit Street; (f) the
Internal Revenue Service; (g) all other parties who have requested
notice pursuant to Bankruptcy Rule 2002 as of the date hereof,  and
provide a copy of the same to any Stalking Horse Bidder and the
Consultation Parties, which copy may be provided via email.  The
Contract Assumption Notice shall inform each recipient of the timing
and procedures relating to the potential assumption and assignment of
the Assigned Contracts to a Successful Bidder or Successful Bidders
upon entry of the Sale Order, and, to the extent applicable, (i) Trustee's

good faith estimates of the Cure Payments (if any) required in connection with the executory contract or unexpired lease, as applicable, (ii) whether the potential Assigned Contract is anticipated to be assumed and assigned to any Stalking Horse Bidder in connection with a Stalking Horse Bid; (iii) the Cure Objection Deadline; (iv) the Sale Objection Deadline; and (v) the Supplemental Sale Objection Deadline; *provided, however,* that service of a Contract Assumption Notice does not constitute an admission that any contract is executory or that the stated Cure Payment related to any contract or unexpired lease constitutes a claim against the estate or a right against any Stalking Horse Bidder (all rights with respect thereto being expressly reserved).  Further, the inclusion of a contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

b. **Cure Payments and Adequate Assurance of Future Performance.**  The payment of the applicable Cure Payments by any Successful Bidder shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

c. **Additions.**  The Trustee may also designate additional executory contracts or unexpired leases as agreements to be assumed by the Trustee and assigned to a Successful Bidder (the "Additional Assigned Contracts") until consummation of the Sale.  Following the addition of an Additional Assigned Contract, the Trustee shall as soon as reasonably practicable thereafter serve a Contract Assumption Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Trustee intends to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the applicable Successful Bidder, and (ii) the corresponding Cure Payment.

d. **Eliminations.** The Trustee may remove any executory contract or unexpired lease, as applicable, to be assumed by the Trustee and assigned to a Successful Bidder (the "Eliminated Agreements") until consummation of the Sale.  Following the removal of an Eliminated Agreement, the Trustee shall, as soon as reasonably practicable thereafter serve a notice (a "Removal Notice") on each of the impacted counterparties and their counsel of record, if any, indicating that the Trustee no longer intends to assign the counterparty's contract or unexpired lease, as applicable, to the applicable Successful Bidder in connection with the Sale.

e. **Supplemental Contract Assumption Notice.**  Although the Trustee intends to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with the Sale, the Trustee may discover certain executory contracts inadvertently

8

omitted from the Assigned Contracts list or Successful Bidders may identify other executory contracts that they desire to assume and assign in connection with a Sale. Accordingly, the Trustee reserves the right, but only in accordance with the Successful Bidder Purchase Agreement (as defined in the Bid Procedures) or any Stalking Horse Agreement, as applicable, or as otherwise agreed by the Trustee and the Successful Bidder or Successful Bidders, any time after the closing of the Sale and before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposed be assumed and assigned to it in connection with a Sale, or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Trustee exercises any of these reserved rights, the Trustee will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such contracts and their counsel of record, if any, and the Consultation Parties; *provided, however,* the Trustee may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Trustee by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to the list of Assigned Contracts that was included in the Contract Assumption Notice, or in the event of removal, information required in a Removal Notice.

f.  **Objections.** Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Trustee and counsel to the applicable Successful Bidder (if such counsel is known), as applicable, on or before **December 12, 2022 at 5:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline")**, or such deadline set forth in the applicable Supplemental Assumption Notice.

The deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be **December 16, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

13.     Any party failing to timely file an objection to the proposed Cure
Payment, the proposed assumption and assignment of an Assigned Contract or
Additional Assigned Contract listed on a Contract Assumption Notice or Supplemental
Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment,
(b) the assumption and assignment of such Assigned Contract or Additional Assigned
Contract (including the adequate assurance of future payment), (c) the related relief
requested in the Motion, and (d) the Sale.  Such party shall be forever barred and
estopped from objecting to the Cure Payments, the assumption and assignment of the
Assigned Contract, the Additional Assigned Contract, adequate assurance of future
performance, the relief requested in the Motion, whether applicable law excuses such
counterparty from accepting performance by, or rendering performance to, the
Successful Bidder or Successful Bidders for purposes of section 365(c)(1) of the
Bankruptcy Code and from asserting any additional cure or other amounts against the
Trustee and the Successful Bidder or Successful Bidders, as applicable, with respect to
such party's Assigned Contract or Additional Assigned Contract.

14.     Unless otherwise provided in the Sale Order, the Trustee shall have
no liability or obligation with respect to defaults relating to the Assigned Contracts
arising, accruing, or relating to a period on or after the effective date of assignment.

15.     At the Sale Hearing, the Trustee shall (i) present evidence necessary
to demonstrate adequate assurance of future performance by the Successful Bidder or
the Stalking Horse Bidder, as applicable; and (ii) request entry of an order granting
approval of the assumption and assignment of any Assigned Contracts to the Successful
Bidder or the Stalking Horse Bidders, as applicable.

16. The Auction is scheduled for **11:00 a.m. (ET) on December 14, 2022** to be conducted at a location to be determined, or at another place and time designated by the Trustee in a prior written notice emailed to all Qualified Bidders.

17. The deadline for objecting to the Sale of the Assets shall be **5:00 p.m. (ET) on December 12, 2022** (the "Sale Objection Deadline"), and the supplemental objection deadline for the Sale of the Assets to the Successful Bidder or Successful Bidders shall be **4:00 p.m. (ET) on December 16, 2022** (the "Supplemental Sale Objection Deadline"). All objections to the Sale must be: (a) in writing; (b) state with specificity the basis of the objection, (c) signed by counsel or attested to by the objecting party; (d) in conformity with the Bankruptcy Rules and the Local Rules; (e) filed with the Court; and (f) served on (i) the U.S. Trustee, (ii) counsel for the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com), and (iii) co-counsel to the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (arogoff@kramerlevin.com) and Nelson Mullins Riley & Scarborough, LLP, Attn.: Lee B. Hart, Esq. (lee.hart@nelsonmullins.com) so as to be actually received on or before the Sale Objection Deadline.

18. Failure to object to the relief requested in the Motion with respect to the Sale by the Sale Objection Deadline shall be deemed a waiver of the right to object to the Sale, and any party failing to object shall be forever barred from objecting to the relief requested in the Motion with respect to the Sale.

19. The Sale Hearing shall be held in this Court at **2:00 p.m. (ET) on December 20, 2022**. The Sale Hearing may be adjourned or continued from time to time by the Court or the Trustee without further notice other than an announcement in open court or as indicated in any notice or hearing agenda that is filed with the Court.

20.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms of and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Bid Procedures Order is hereby waived.

21.      Prior to filing and serving the Sale Notice and the Contract Assumption Notice, the Trustee may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Bid Procedures Order, and make such other, non-material changes as the Trustee deems necessary or appropriate.

22.      The Trustee is authorized and empowered to take all actions necessary to effectuate the relief granted in this Bid Procedures Order.

23.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Bid Procedures Order.

Dated: _____, 2022
      New York, New York

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

## The Bid Procedures

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                        :
In re:                                  :        Chapter 11
                                        :
96 WYTHE ACQUISITION LLC,               :        Case No. 21-22108 (SHL)
                                        :
                      Debtor.           :
                                        :
-------------------------------------------------------------x

## BID PROCEDURES

### I.    Overview

On February 23, 2021 (the "Petition Date"), 96 Wythe Acquisition LLC (the "Debtor") commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). On May 31, 2022, the Court approved the appointment of Stephen S. Gray as the Chapter 11 Trustee (the "Trustee") for the Debtor.[1]

On [_____] [__], 2022, the Court entered an order [Docket No. [__]] (the "Bid Procedures Order"), approving these bid procedures (the "Bid Procedures") and certain other relief set forth in the Trustee's motion [Docket No. [__]].[2] These Bid Procedures set forth the process by which the Trustee is authorized to solicit bids for and conduct an auction (the "Auction") for the sale (the "Sale") of the Debtor's assets (the "Assets") pursuant to section 363 of the Bankruptcy Code. In addition, at any time, the Trustee may, but is not required to, designate one or more stalking horse bidder(s) with respect to certain or all of the Assets (each, a "Stalking Horse Bidder").

Approval of the Sale may be considered by the Court together with or separate from any hearing to confirm a chapter 11 plan of liquidation for the Debtor, and the closing of the Sale (the "Sale Closing") may be consummated pursuant to a chapter 11 plan or outside of a plan pursuant to sections 363 and 365 of the Bankruptcy Code.

---

[1] Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591]. On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the appointment of Stephen S. Gray, as the Chapter 11 Trustee (the "Trustee") of the estate of the Debtor [Docket No. 593].

[2] Capitalized terms used but not otherwise defined herein, shall have the meanings ascribed to such terms in the Bid Procedures Order.

## II.    Description of the Assets

The Trustee is offering for sale the Assets, which include substantially all of the Debtor's real and personal property, including, without limitation, the 10-story, 147-room hotel located at 96 Wythe Avenue, Brooklyn, NY 11249 (the "Hotel"), and all lands, estates, development rights, easements, improvements, rights-of-way or use, improvements, equipment, fixtures, leases, rents, awards, refunds, rebates, credits, agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents relating to the occupation, construction, management or operation of the Hotel and any part thereof, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Hotel, and inventory and accounts receivables.

The ownership of certain intellectual property used at or in connection with the Assets is subject to dispute by the Debtor's former management company and insiders. Potential bidders may include such intellectual property in the Assets they seek to purchase; however, in light of the dispute, the Trustee will deliver only the estate's right, title and interest in and to such intellectual property, if any, without any representations or warranties whatsoever unless this dispute is resolved by the Court or otherwise prior to the Auction.

Except as otherwise provided in a Successful Bidder Purchase Agreement (as defined below) or an order of the Court (including any exhibits or schedules thereto), all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, interests, and encumbrances (collectively, the "Interests") to the maximum extent permitted by sections 363 and 1146 of the Bankruptcy Code, with such Interests to attach to the proceeds of the Sale of the Assets paid directly to the Trustee and Secured Lender at closing (through a title or escrow agent as applicable) in accordance with the Secured Lender Settlement,[3] and the portion of which proceeds paid to the Trustee to be held by the Trustee pending the distribution of such proceeds to holders of other liens in accordance with the priority of their respective liens and otherwise subject to orders entered by the Court in the Chapter 11 Case, including without limitation the Secured Lender Settlement) with the same validity and priority as such Interests applied against the Assets.

## III.    Bid Process

The Trustee and his advisors, in consultation with the Consultation Parties (as defined below) shall (a) determine whether any person is a Qualified Bidder, (b) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, (c) receive offers from Potential Bidders, (d) negotiate any offers made to purchase the Assets;  and (e) determine if any Qualified Bidder should be selected as a Stalking Horse Bidder in accordance with the procedures set forth below.

---

[3]    The "Secured Lender Settlement" refers to that certain Settlement Agreement, dated as of September 13, 2022 (as may be amended, modified, or restated) between the Trustee and the Secured Lender, a copy of which is attached as an exhibit to the *Chapter 11 Trustee's Application to Approve Settlement Agreement with Benefit Street Partners Operating Partnership, L.P.*, filed on September 13, 2022 [Docket No. 679].

IV.    <u>Key Dates for Potential Bidders</u>

The Bid Procedures provide interested parties with the opportunity to qualify for and participate in the Auction and to submit competing bids for the Assets. The Trustee and his advisors shall assist Potential Bidders in conducting their respective due diligence investigations and shall accept Bids (as defined below) until **December 2, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>") for the Assets.

**All information (and bids) that must be provided under these Bid Procedures must be provided to the Trustee's Co-Brokers, A&G Real Estate Partners, LLC, Attn.: Emilio Amendola (emilio@agrep.com) and Eastdil Secured, LLC, Attn.: Andy Wimsatt (awimsatt@eastdilsecured.com)** with a copy to:

(i)     The Trustee, Stephen S. Gray (ssg@grayandcompanyllc.com);

(ii)    counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com);  and

(iii)   financial advisor to the Trustee, CohnReznick LLP, Attn.: Chris Creger (Chris.Creger@CohnReznick.com) and Molly Jobe (Molly.Jobe@CohnReznick.com).

The key dates for the Sale process are as follows:[4]

| Key Event | Deadline |
|---|---|
| Bid Deadline | Monday, December 12, 2022 at 5:00 p.m. (ET) |
| Sale Objection Deadline | Monday, December 12, 2022 at 5:00 p.m. (ET) |
| Proposed Assumption / Cure Amounts Objection Deadline | Monday, December 12, 2022 at 5:00 p.m. (ET) |
| Deadline for Trustee to notify bidders of their status as Qualified Bidders | Tuesday, December 13, 2022 at 12:00 p.m. (ET) |
| Auction (if necessary) | Wednesday, December 14, 2022 at 11:00 a.m. (ET) |
| File Notice of Successful Bidder | Thursday, December 15, 2022 at 4:00 p.m. (ET) |
| Supplemental Sale Objection Deadline | Friday, December 16, 2022 at 4:00 p.m. (ET) |

---

[4]     The Trustee reserves the right to modify the deadlines set forth herein (in consultation with the Consultation Parties).

| Key Event | Deadline |
|---|---|
| Adequate Assurance of Future Performance Objection Deadline | Friday, December 16, 2022 at 4:00 p.m. (ET) |
| Sale Briefing and any Replies | Monday, December 19, 2022 at 12:00 p.m. (ET) |
| Sale Hearing | Tuesday, December 20, 2022 at 2:00 p.m. (ET) |
| Deadline for Sale Closing | Friday, December 30, 2022 at [____] [__].m. |

## V.    Due Diligence

### A.  Access to Diligence Materials

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party, other than the Secured Lender, must submit to the Trustee (i) an executed confidentiality agreement in such a form reasonably satisfactory to the Trustee, unless such an agreement has been previously executed and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale, in cash, as reasonably determined by the Trustee. A party that qualifies for access to Diligence Materials pursuant to the prior sentence shall be a "Potential Bidder." For the avoidance of doubt, the Secured Lender shall have access to Diligence Materials.

The Trustee will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Trustee, including access to the electronic data room and other information that a Potential Bidder may reasonably request; *provided, however,* that the Trustee shall not be obligated to furnish any due diligence information after the applicable Bid Deadline to any party that has not submitted a Qualified Bid. The availability of additional due diligence to a Qualified Bidder will cease on the Auction except in the sole discretion of the Trustee; *provided, however,* that any Successful Bidder shall be permitted to continue to conduct due diligence until the closing of the Sale. The Trustee reserves the right to withhold any Diligence Materials that the Trustee determines are necessary to protect attorney client privilege, are business-sensitive, competitively sensitive, or otherwise not appropriate for disclosure to a Potential Bidder that is a competitor of the Debtor or is affiliated with any competitor of the Debtor. Neither the Trustee nor his representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

All due diligence requests must be directed to the attention of Trustee's Co-Brokers, A&G Real Estate Partners, LLC, Attn.:  Emilio Amendola (emilio@agrep.com) and Eastdil Secured, LLC, Attn.: Andy Wimsatt (awimsatt@eastdilsecured.com).

4

**B. Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Trustee or his advisors regarding the ability of such Potential Bidder to consummate a Sale.

**C. Communications with Potential Bidders**

There must be no communications with respect to Bids (as defined below) or potential Bids between and amongst Potential Bidders, or between Potential Bidders and the Consultation Parties, unless the Trustee has previously authorized such communication in writing or with the participation of representatives of the Trustee or his advisors. Should any Potential Bidder attempt to communicate directly with a Consultation Party regarding a Bid or potential bid, such Consultation Party shall immediately direct the Potential Bidder to the Trustee's counsel and financial advisors. The Trustee reserves the right, in his reasonable business judgment, to disqualify any Potential Bidders that have engaged in communications between or amongst themselves without the participation of the Trustee (or a representative of the Trustee) or the Trustee's prior written consent. The Trustee further reserves the right, in his reasonable business judgment, to strip any Consultation Party that violates this provision of its consultation rights hereunder with approval of the Court.

**VI.  Qualified Bidder Status**

In order to be considered as a Qualified Bidder to participate in the Auction each Potential Bidder, must deliver to the Trustee and the Trustee's advisors a written, irrevocable offer, solicitation or proposal (each, a "<u>Bid</u>") prior to the Bid Deadline, that must be determined by the Trustee, in his reasonable business judgment, and in consultation with the Consultation Parties, to satisfy each of the following conditions; *provided* that the Trustee may waive any of the below requirements in the exercise of his reasonable business judgment in consultation with the Consultation Parties, to the extent that the Trustee reasonably believes that doing so will maximize the value of the Assets:

a. *Good Faith Offer:* Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all of the Assets.  Any potential bidder seeking to purchase intellectual property from the Trustee shall itemize in its Bid specifically what intellectual property is included in its Bid and shall ascribe a value to such intellectual property.

b. *Purchase Price:* All Bids (other than a credit bid by the Secured Lender) must be for cash to be paid at closing.  The Bid must clearly set forth the cash purchase price, and any other non-cash consideration (with the form of such consideration specified such as assumption of contract cure amounts), to be paid (the "<u>Purchase Price</u>").

    c.  *Good Faith Deposit*: Each Bid (other than a credit bid by the Secured Lender) must be accompanied by a deposit in the amount of ten (10%) percent of the cash consideration portion of the Purchase Price, before any reductions for assumed liabilities or other adjustments (the "<u>Good Faith Deposit</u>"). The Good Faith Deposit must come in the form of a wire transfer, certified check other form acceptable to the Trustee. Each Good Faith Deposit must be deposited prior to the Bid Deadline with the Trustee's counsel as escrow holder ("<u>Escrow Holder</u>").

    d.  *Executed Agreement*: Each Bid (other than a credit bid by the Secured Lender) must be based on the proposed purchase agreement prepared by the Trustee in consultation with the Consultation Parties, which will be posted to the data room (the "<u>Purchase Agreement</u>"). Each Potential Bidder must provide a markup of the Purchase Agreement (each, a "<u>Potential Bidder Purchase Agreement</u>"). Each Potential Bidder Purchase Agreement must include forms of any other transaction documents, pursuant to which the Potential Bidder proposes to effectuate a Sale. To the extent applicable, each Bid must also include a copy of the Potential Bidder Purchase Agreement marked against the Purchase Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Trustee may determine how such Bid compares to the terms of competing Bids). Each Potential Bidder Purchase Agreement must provide a commitment to close within two business days after all closing conditions are satisfied.

    e.  *Designation of Assigned Contracts and Leases*: A Bid must identify any and all executory contracts and unexpired leases that the Potential Bidder wishes to assume pursuant to the Sale. A Bid must state that the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate may be provided by the Trustee).

    f.  *Designation of Assumed Liabilities:* A Bid must identify all liabilities that the Potential Bidder proposes to assume.

    g.  *Identity of Bidders; Purchase Participants:* The identity of each entity that will be participating in connection with such Bid and taking ownership of the assets (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the sale transaction) and a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Bid and any connections with the Trustee, and the Debtor's Principals, including Toby Moskovits and Michael Lichtenstein, or any affiliates including, but not limited to Northside Acquisition LLC, etc. The provisions of this subsection (g) shall not apply to a credit bid tendered by the Secured Lender.

h. *Contact Information and Affiliates:* A Bid must provide the identity and contact information for the Potential Bidder and full disclosure of any parent companies, controlling investors, or fund managers of the Potential Bidder.

i. *Proof of Financial Ability to Perform:* A Bid (other than a credit bid by the Secured Lender) must include written evidence of available cash without contingency, executed commitment papers for financing (not subject to any conditions), and such other evidence of ability to consummate the transaction contemplated by the Bid and compliance with the Bid Procedures Order, the Bid Procedures in each case, as determined by the Trustee in his business judgment.

j. *Conditions / Contingencies:* A Bid must not be subject to further due diligence or any financing contingency.

k. *Bid Irrevocable:* Subject to the following sentence with respect to the requirement to serve as a Backup Bidder, a Bid (other than a credit bid by the Secured Lender) must provide that it is irrevocable until two business days after the closing of the Sale; provided that if such Bid is accepted as the Successful Bid or the Backup Bid, such Bid shall continue to remain irrevocable as and to the extent provided in the Potential Bidder Purchase Agreement. Each Potential Bidder that submits a Bid further agrees that, if not chosen as a Successful Bidder, such Potential Bidder shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the relevant Successful Bidder with respect to a Sale fails to close as provided in the Successful Bidder Purchase Agreement, as modified, if at all, and the applicable Sale Order (as defined below).

l. *Consent to Jurisdiction*: Each Potential Bidder must (i) submit to the jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Trustee, the Bid Procedures, any Auction, any Potential Bidder Purchase Agreement, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Trustee, the Bid Procedures, any Auction, any Potential Bidder Purchase Agreement, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Trustee, the Bid Procedures, any Auction, any Potential Bidder Purchase Agreement, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

m. *No Bid Protections:* Except with respect to any Stalking Horse Bidder designated by the Trustee with the consent of the Secured Lender as provided for herein, a Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or

any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder (other than the Secured Lender) presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale.

n.  *Acknowledgement of Chapter 11 Plan:*  Each bid must acknowledge that the Sale may close under and pursuant to a chapter 11 plan for the Debtor; *provided* that if the Trustee is unable to confirm a chapter 11 plan, the Sale may be consummated outside of a chapter 11 plan, pursuant to section 363 of the Bankruptcy Code.

A Bid received from a Potential Bidder prior to the applicable Bid Deadline that meets the above requirements, as determined by the Trustee in his sole discretion, shall constitute a "Qualified Bid" for such Assets (and such Potential Bidder, a "Qualified Bidder"); *provided* that if the Trustee receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Trustee may, after consultation with the Consultation Parties, provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction. Any Stalking Horse Bidder will be deemed a Qualified Bidder at all times. For the avoidance of doubt, a Bid submitted after the Bid Deadline (other than a credit bid by the Secured Lender) shall not be a Qualified Bid.

In addition, the Secured Lender shall be a Qualified Bidder and shall be permitted to credit bid up to the Senior Secured Amount (as defined in the Secured Lender Settlement) at the Auction.[5]

The Secured Lender shall not be required to comply with the requirement of this Section prior to the Auction.  To the extent the Secured Lender submits a credit bid at the Auction, such credit bid shall comply with this Section VI (a),(h), and (j)-(l) (unless specifically stated otherwise in such sections) and shall include cash consideration in an amount equal to the Bid Protections granted to a Stalking Horse Bidder.

For the avoidance of doubt, and as reflected in the section titled "The Consultation Parties" below, in the event that the Secured Lender elects to participate at the Auction as a Qualified Bidder, the Secured Lender shall no longer be a Consultation Party with respect to the Assets such party or parties bid upon at the Auction; provided that if the Secured Lender elects to submit a Bid as a Qualified Bidder, it must so elect (i) at or prior to the commencement of the Auction and only after receiving the initial bids for the Auction selected by the Trustee in consultation with the Consultation Parties; or (ii) if, after receiving the initial bids and after the commencement of the Auction, such initial bids are altered or modified during the Auction to the extent that such alteration or modification adversely

---

[5]  For illustrative purposes, the Secured Lender Settlement Provides that the Senior Secured Amount consists of $$95,952,130.52 (calculated as of August 14, 2022), plus subsequently accruing interest at the contract rate, expenses and legal fees accruing thereafter.

impacts the value of the Secured Lender's collateral; *provided, however*, that in no event shall any Qualified Bidder be permitted to reduce the aggregate amount of consideration of their Bid after the applicable Bid Deadline.  If the Secured Lender withdraws as a bidder at the Auction and is not the Successful Bidder or Back-Up Bidder, such parties shall resume their full role as a Consultation Party.

Within one (1) day after the Bid Deadline, the Trustee and his advisors (in consultation with the Consultation Parties) will determine which Potential Bidders are Qualified Bidders and whether Bids submitted constitute Qualified Bids. Any Bid that is not deemed a Qualified Bid will not be considered by the Trustee. Any Stalking Horse Agreement submitted by a Stalking Horse Bidder will be deemed a Qualified Bid, qualifying such Stalking Horse Bidder to participate in the Auction. To the extent there is any dispute regarding whether a Bid submitted prior to the Bid Deadline is a Qualified Bid, such dispute may be raised with the Court on an expedited basis prior to the commencement of the Auction.  If any Bid is determined by the Trustee not to be a Qualified Bid, the Trustee will refund such Potential Bidder's Good Faith Deposit on or within five (5) business days after the Bid Deadline.

Prior to the Auction, the Trustee and his advisors, in consultation with the Consultation Parties, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's reasonable business judgment, the highest or otherwise best bid (the "Starting Bid") with respect to a proposed Sale.  In making such determination, the Trustee will take into account, among other things, the execution risk of non-consummation attendant to any submitted Qualified Bids.  No later than 24 hours before the start of the Auction, the Trustee will notify each Qualified Bidder who has timely submitted a Bid with respect to a Sale that its Bid is a Qualified Bid so as to enable such Qualified Bidders to bid at the Auction.  As soon as practicable prior to the Auction the Trustee will further (a) notify each Qualified Bidder who has submitted a Qualified Bid and the Consultation Parties as to which Qualified Bid is the Starting Bid with respect to a Sale; and (b) distribute copies of the Potential Bidder Purchase Agreement(s) or any Stalking Horse Agreement, as applicable, associated with such Starting Bid(s) to each Qualified Bidder who has submitted a Qualified Bid with respect to a Sale and to the Consultation Parties.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bid Procedures and agrees not to submit a bid or seek to reopen the Auction after such Auction.

## VII.    Procedures for the Designation of a Stalking Horse Bidder and Bid Protections

Prior to the commencement of the Auction, the Trustee, in the exercise of his reasonable business judgment, with the reasonable consent of the Secured Lender, may designate one or more minimum acceptable bids as a stalking horse purchaser with respect to certain or all of the Assets (each, a "Stalking Horse Bid") and provide any such Stalking Horse Bidder with Bid Protections (as defined below) pursuant to an agreement with such Stalking Horse Bidder (the "Stalking Horse Agreement"); *provided* that no insider or affiliate of the Debtor or the Debtor's former management company,

the Williamsburg Hotel BK LLC shall be entitled to any Bid Protections.  Any dispute among the Trustee and the Consultation Parties with respect to the designation of a Stalking Horse Bidder may be resolved by the Court.

If the Trustee designates a Stalking Horse Bidder or Stalking Horse Bidders with respect to certain or all of the Assets, the Trustee shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) shall file with the Court, and serve on the applicable parties, a notice that contains: (a)  the identity of the Stalking Horse Bidder or Stalking Horse Bidders; (b) any connections the Stalking Horse Bidder or Stalking Horse Bidders have with the Trustee, the Debtor's Principals, including Toby Moskovits and Michael Lichtenstein, or any Affiliates including, but not limited to Northside Acquisition, LLC, etc.;  (c) the material terms of the Stalking Horse Bid, including the Stalking Horse Agreement and the Bid Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Bidder").

The Trustee may, with the reasonable consent of the Secured Lender, at closing of the sale of the Assets subject to the Stalking Horse Bid, make certain payments to the Stalking Horse Bidder in consideration of its tendering the Stalking Horse Bid, including (a) a break-up fee of 1% of the cash consideration to be paid (the "Break-Up Fee") and (b) reimbursement of reasonable, documented and necessary out-of-pocket expenses incurred in connection with such Stalking Horse Bid not to exceed $150,000 (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").

Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse Bidder, including any Bid Protections, pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder, and served on (i) counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and (ii) co-counsel to the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (Arogoff@kramerlevin.com) and Nelson Mullins Riley & Scarborough, LLP, Attn: Lee B. Hart, Esq. (lee.hart@nelsonmullins.com).

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed Bid Protections will not be deemed approved until the Stalking Horse Objection is resolved by agreement of the objecting party, the Trustee and the Secured Lender, or by order of the Court.

If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bid Procedures, the Bid Protections shall be deemed approved without further order of the Court upon the expiration of the objection deadline.

No other bidder, nor any party making a credit bid (irrespective of whether it is a Stalking Horse Bidder) will be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment; provided, that neither the Bid Procedures Order nor the Bid Procedures shall impair or prejudice the rights of the Secured Lender to collect its fees in accordance with the Loan Agreement and related documents.

For the avoidance of doubt, the Trustee is not required to designate a Stalking Horse Bidder or Stalking Horse Bidders, and may proceed to open the Auction without first designating a Stalking Horse Bidder or Stalking Horse Bidders as set forth below.

## VIII.  <u>Auction</u>

If two or more Qualified Bids with respect to all of the Assets or individual Assets are received by the Bid Deadline (or the Secured Lender tenders a Bid as provided for herein), the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid with respect to such Assets. This determination shall take into account any factors the Trustee (in consultation with the Consultation Parties) reasonably deems relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following: (a) the amount and nature of the cash consideration and assumed liabilities; (b) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the Sale of the Assets and the cost to the estate of such modifications or delay, and whether such modifications increase the risk of non-consummation; (d) which Assets the Qualified Bid covers and the likelihood that any other potential bidders would have interest in separately acquiring remaining Assets; (e) the total consideration to be received by the estate; (f) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (g) the net benefit to the estate, taking into account, if applicable, any Stalking Horse Bidder's right to any Break-Up Fee or Expense Reimbursement or similar fee; (h) the impact on employees, the number or percentage of employees to be retained post-closing, employee claims against the Debtor's estate; (i) in a Sale seeking to acquire only certain Assets, the execution risk and additional costs related to separate documentation regarding the sale(s), if any, of the remaining Assets; and (j) any other qualitative or quantitative factor the Trustee deems reasonably appropriate under the circumstances (collectively, the "<u>Bid Assessment Criteria</u>").

If two or more Qualified Bids are not received by the Bid Deadline (or, in the case of the Secured Lender, as provided for herein), the Trustee may, after consulting with the Consultation Parties, determine not to conduct the Auction. If only one Qualified Bid with respect to a Sale is received by the Bid Deadline, the Trustee may, after consulting with the Consultation Parties, select the Potential Bidder Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder with respect to the applicable Sale, provided that the Trustee may not select a Successful Bid that provides total cash consideration less than the maximum credit bid then available to the Secured Lender absent the prior written consent of the Secured Lender.

In the event that two or more Qualified Bids are submitted in accordance with these Bid Procedures, the Trustee shall conduct the Auction.  The **Auction will take place at 10:00 a.m. (prevailing Eastern Time) on December 6, 2022** (such date, or such other date allowed under these Bid Procedures as the Trustee may notify any Qualified Bidder who has submitted a Qualified Bid, and counsel to the Secured Lender, the "Auction Date") and be held at a location to be determined.  The Auction shall be recorded.  Only a Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidder or Stalking Horse Bidders) will be eligible to participate at the Auction, subject to such limitations as the Trustee may impose in good faith.  A reasonable number of representatives of the professional advisors of any Qualified Bidder will be permitted to attend and observe the Auction.  The Trustee may, in the exercise of his business judgment, with the consent of the Secured Lender, adjourn the Auction.

### A. Auction Bid Submission Procedures

Auction bidding shall be subject to the following procedures:

    a. For a Qualifying Bid to be considered and in order for a Qualifying Bidder to further bid at the Auction, Qualifying Bidders must appear at the Auction, or through a duly authorized representative, unless alternative arrangements are agreed upon in advance by the Trustee.

    b. Only Qualifying Bidders shall be entitled to make any subsequent bids at the Auction.

    c. Bidding will commence with the announcement of the highest or best Qualifying Bid, which shall be determined solely by the Trustee in his business judgment, in consultation with the Consultation Parties.  Any Qualifying Bidder may then submit successive bids in minimum increments of no less than $500,000, provided that if a Stalking Horse Bidder is selected the initial overbid shall also include the Bid Protections (the "Minimum Overbid Amount").

    d. If one or more Qualifying Bids are received by the Trustee, each such Qualifying Bidder shall have the right to improve its respective bid at the Auction.

    e. Other than a credit bid submitted by the Secured Lender, each successive bid submitted by any bidder at the Auction must contain an actual cash purchase price that exceeds the then existing highest bid by at least the Minimum Overbid Amount.  At commencement of the Auction, the Trustee may announce procedural and related rules governing the Auction, including time periods available to all Qualifying Bidders to submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

### B.  Selection of Highest or Otherwise Best Bid

At the Auction, the Trustee, in consultation with the Consultation Parties, will be permitted to request best and final offers from the Qualified Bidders (including any Stalking Horse Bidders).  The Trustee, in consultation with the Consultation Parties, may identify the highest or otherwise best Qualified Bid(s) as the successful bid(s) (such Bid, the "Successful Bid," the Qualified Bidder submitting such Successful Bid, the "Successful Bidder" and the Qualified Bidder's purchase agreement, the "Successful Bidder Purchase Agreement") with respect to the Sale. The Auction shall close when a Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid with respect to the Sale.  Notwithstanding anything herein to the contrary, the Trustee may, in his reasonable business judgment and in consultation with the Consultation Parties, at any time announce the conclusion of the Auction.

Promptly following the conclusion of the Auction, the Trustee shall announce the Successful Bid or Successful Bids and Successful Bidder or Successful Bidders with respect to the Sale and shall file with the Court notice of such Successful Bid or Successful Bids and Successful Bidder or Successful Bidders. The Trustee shall serve such notice by email (where available) and overnight mail (where email is unavailable) on counterparties to Assumed Contracts that are to be assumed and assigned in connection with such Successful Bid or Successful Bids.

For the avoidance of doubt, the Trustee may, with the prior consent of the Secured Lender (which may be granted or withheld at its discretion), withdraw the Assets at issue, from the Sale at any time before or during the Auction, and to make subsequent attempts to market the same, if the Trustee, with the prior consent of the Secured Lender (which may be granted or withheld at its discretion), determines that highest or otherwise best Qualified Bid is not acceptable to the Trustee.

### C.  Designation of Backup Bidder

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted with respect to a Sale Transaction, the Qualified Bidder with the next highest or otherwise best Bid with respect to the Sale at the Auction, as determined by the Trustee (in consultation with the Consultation Parties), in the exercise of his business judgment, will be designated as the backup bidder (the "Backup Bidder") for the Sale. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submitted one or more Overbids at the applicable Auction, the Backup Bidder's final Overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is at least 60 calendar days after the date of entry of the Sale Order (the "Outside Backup Date"), or (ii) the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction with respect to the Assets that are the subject of the Successful Bid, the Backup Bidder will be deemed to have the new prevailing Bid with respect to such Assets, and the Trustee will be authorized, but not required, without further

order of the Court, to consummate the transaction with the Backup Bidder with respect to such Assets.

In the event that a Successful Bidder does not consummate the Sale and a Backup Bidder(s) has been previously identified, the Trustee shall (1) file and serve a Notice of Intent to Proceed with Backup Bid, and (2) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances, at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory contracts that do not consent to the proposed assumption and assignment to the Backup Bidder(s) solely with respect to issues relating to adequate assurance. The Backup Bidder(s), as identified in the Notice of Successful Bidder, shall be approved at the Sale Hearing in all respects other than with respect to issues relating to adequate assurance, and affected landlords and other contract counterparties shall not be required to object to the Backup Bidder(s) on adequate assurance grounds prior to the filing and service of the Notice of Intent to Proceed with Backup Bid.

## IX.    Sale Hearing

The Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Court approval.  A hearing to consider approval of the Successful Bid with respect to the Sale in the accordance with these Bid Procedures (the "Sale Hearing") is presently scheduled to take place on December 20, 2022, at 2:00 p.m. (**prevailing Eastern Time**).

At the Sale Hearing the Trustee will present the Successful Bid or Successful Bids to the Court for approval.

The Sale Hearing may be adjourned by the Trustee in consultation with the Consultation Parties and the Successful Bidder, from time to time, upon the filing of a notice of adjournment with the Court.

If no Backup Bidder is selected and the Successful Bidder fails to close, or if the Backup Bidder fails to close, the Trustee may submit a proposed order to the Court to approve the closing of a sale to the Secured Lender via a credit bid without further hearing provided that the Court has approved a credit bid by the Secured Lender as a Backup Bid.

## X.    Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders (including any Stalking Horse Bidders) will be held in escrow by the Escrow Holder and while held in escrow will not become property of the estate unless released to the Trustee from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Court. The Escrow Holder will retain the Good Faith Deposits of the Successful Bidder until the closing of the sale transactions in respect of such Successful Bid unless otherwise ordered by the Court.  The Good Faith Deposits of the Qualified Bidders other than the Successful Bidder will be returned no later than five (5) Business Days after the date of the Closing of the Sale.  If the Backup Bidder is not designated the Successful Bidder

with respect to a Sale Transaction, the Good Faith Deposit of such Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the applicable transaction with the Successful Bidder and (b) the Outside Backup Date with respect to such transaction. At the closing of the sale transactions contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that has accrued thereon.

XI.    **"As Is, Where Is" Sale**

Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind by the Trustee, his representatives, or the estate, except and solely to the extent expressly set forth in the final purchase agreement approved by the Court. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid. Except as may be set forth in the applicable Successful Bidder Purchase Agreement or the applicable Sale Order, the Assets are sold free and clear of any liens, claims, interests, or encumbrances of any kind of nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, or encumbrances to attach to the proceeds of sale paid directly to the Trustee and Secured Lender at closing (through a title or escrow agent, as applicable) in accordance with the Secured Lender Settlement, and the portion of which proceeds paid to the Trustee to be held by the Trustee pending distribution of such proceeds to holders of other liens in accordance with the priority of their respective liens and otherwise subject to orders entered by the Court in the Chapter 11 Case, including without limitation the Secured Lender Settlement, with the same validity and priority as such interests applied against the Assets.

XII.    **The Consultation Parties**

The Trustee shall consult with the Secured Lender and the Secured Lender's advisors (the "Consultation Parties") with respect to any Bids, as explicitly provided for in the Bid Procedures; *provided, however,* that the Trustee shall not be required to consult with the Secured Lender if the Secured Lender formally submits a credit bid at or prior to the Auction.

In addition, the Trustee will (a) provide the Consultation Parties (i) continued access to the Trustee's advisors, including access to sale and marketing materials, and consultation with the Trustee on the marketing process; and (ii) copies of all Bids and letters of intent as soon as reasonably practicable but in no event later than twenty-four (24) hours following the Trustee's receipt of the same; and (b) consult with the Consultation Parties with respect to all Bids received; *provided, however,* that if the Secured Lender submits a Bid, formally declaring its intention to be a Qualified Bidder, or elects at or prior to the Auction to be a Qualified Bidder, the Trustee shall not be required to provide such copies of Bids or letters of intent to the Secured Lender and instead shall provide such information to the Secured Lender's counsel, on an advisors'-

eyes-only basis, who shall keep such information confidential without the express prior written consent of the Trustee.

## XIII. <u>Supplementation of Bid Procedures</u>

The Trustee in his business judgment (in consultation with the Consultation Parties) may supplement these Bid Procedures with any terms or procedures that are reasonable and enhance the auction processes and/or clarifies any matters not currently delineated herein.

## XIV. <u>Trustee's Reservation of Rights</u>

Except as otherwise provided in the Purchase Agreement, any Stalking Horse Agreement, the Bid Procedures, or the Bid Procedures Order, the Trustee (in consultation with the Consultation Parties) further reserves the right as he may reasonably determine to be in the best interest of the estate and in the exercise of his fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine whether to enter into a Stalking Horse Agreement; (d) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal with respect to the Sale; (e) reject any Bid that is (1) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bid Procedures, or (2) contrary to the best interests of the estate, creditors, interest holders, or parties-in-interest; (f) waive terms and conditions set forth herein otherwise applicable to all potential bidders other than the requirement that all bids be for cash and assumed liabilities other than the credit bids, and except as otherwise expressly set forth herein with respect to the Bids of the Secured Lender; (g) impose additional terms and conditions with respect to all potential bidders (except as otherwise expressly set forth herein with respect to the Bids of the Secured Lender; (h) modify the deadlines set forth herein subject to any ruling or order entered by the Court, or to accommodate the Court's calendar; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bid Procedures and implement additional procedural rules that the Trustee determines, in his business judgment, after consulting with the Consultation Parties, will better promote the goals of the bidding process and discharge the Trustee's fiduciary duties and are not inconsistent with any Court order.

Nothing in these Bid Procedures shall prejudice the substantive rights of any party, including with respect to the Trustee's evaluation of any Bid.

## Exhibit 2

## The Sale Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                    :

In re:                               :         Chapter 11
                                     :

96 WYTHE ACQUISITION LLC,     :         Case No. 21-22108 (SHL)
                                     :

                   Debtor.       :

                                     :
-----------------------------------------------------------------x

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On February 23, 2021 (the "<u>Petition Date</u>"), 96 Wythe Acquisition LLC (the "<u>Debtor</u>") commenced the above-captioned case (the "<u>Chapter 11 Case</u>") by filing a voluntary petition for relief under title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"). On May 31, 2022, the Court approved the appointment of Stephen S. Gray as the Chapter 11 Trustee (the "<u>Trustee</u>") for the Debtor.[1]

2. On October 21, 2022, the Trustee filed a motion (the "<u>Motion</u>")[2] seeking, among other things, entry of an order (the "<u>Bid Procedures Order</u>") (a) approving the Auction (as defined below) and the bid procedures (the "<u>Bid Procedures</u>") to be used in connection with the sale (the "<u>Sale</u>") of the Debtor's assets, including the Property (collectively, the "<u>Assets</u>"); (b) establishing procedures for the Trustee to designate a stalking horse bidder or stalking horse bidders with respect to certain or all of the Assets (each a "<u>Stalking Horse Bidder</u>") and to enter into a stalking horse agreement or stalking horse agreements (each, a "<u>Stalking Horse Agreement</u>") with a Break-Up Fee and Expense Reimbursement (together, the "<u>Bid Protections</u>"); (c) establishing certain dates and deadlines for the Sale process, including scheduling an auction of the Assets (the "<u>Auction</u>"), if necessary, in accordance with the Bid Procedures, and the hearing with respect to the approval of the Sale (the "<u>Sale Hearing</u>"); (d) approving the form and manner of notice of the Auction and Sale Hearing; and (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "<u>Assumption and Assignment Procedures</u>") [Docket No. 752].

---

[1] Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591]. On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the appointment of Stephen S. Gray, as the Chapter 11 Trustee (the "<u>Trustee</u>") of the estate of the Debtor [Docket No. 593].

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or the Bid Procedures, as applicable.

3.   On [____] [__], 2022, the Court entered the Bid Procedures Order [Docket No. __].
The Bid Procedures provide as follows:

a. **Auction**.  If two or more Qualified Bids with respect to all of the Assets are
received by the Bid Deadline, the Trustee will conduct the Auction to
determine the highest or otherwise best Qualified Bid with respect to such
Assets.  The **Auction will take place at 10:00 a.m. (prevailing Eastern Time)
on December 6, 2022** (such date, or such other date allowed under these Bid
Procedures as the Trustee may notify any Qualified Bidder who has submitted
a Qualified Bid, and counsel to the Secured Lender, the "Auction Date") and
be held at a location to be determined.  The Auction shall be recorded.  Only a
Qualified Bidder that has submitted a Qualified Bid (including any Stalking
Horse Bidder or Stalking Horse Bidders) will be eligible to participate at the
Auction, subject to such limitations as the Trustee may impose in good faith.
A reasonable number of representatives of the professional advisors of any
Qualified Bidder will be permitted to attend and observe the Auction.  The
Trustee may, in the exercise of his business judgment, adjourn the Auction.
Any Qualified Bidder that wishes to take part in this process and submit a bid
for the Assets must submit their competing Bid prior to the Bid Deadline and
in accordance with the Bid Procedures.  If two or more Qualified Bids are not
received by the Bid Deadline, the Trustee may, after consulting with the
Consultation Parties, determine not to conduct the Auction.  If only one
Qualified Bid with respect to a Sale is received by the Bid Deadline, the
Trustee may, after consulting with the Consultation Parties, select the
Potential Bidder Purchase Agreement or Stalking Horse Agreement, as
applicable, of such Qualified Bidder to be the Successful Bid and such
Qualified Bidder shall be the Successful Bidder with respect to the applicable
Sale.

b. **Sale Hearing**.  The hearing to consider approval of the Successful Bid with
respect to the Sale in accordance with the Bid Procedures (the "Sale Hearing")
is scheduled to take place on **December 20, 2022 at 2:00 p.m. (prevailing
Eastern Time).**  At the Sale Hearing, the Trustee will present the Successful
Bid or Successful Bids to the Court for approval.  The Sale Hearing may be
adjourned by the Trustee in consultation with the Consultation Parties and the
Successful Bidder, from time to time, upon the filing of a notice of
adjournment with the Court.

c. **Sale Objection Deadlines**.  Objections, if any, to the Sale of the Assets free
and clear of all liens, claims, interests, and encumbrances must:  (a) be in
writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the
Local Rules, and any orders of this Court; (c) state with particularity the legal
and factual basis for the objection and the specific grounds therefor; and (d) be
filed with the Court no later than (i) **December 12, 2022 at 5:00 p.m.
(prevailing Eastern Time)**, with respect to the proposed Sale of the Assets, or
(ii) **December 16, 2022 at 4:00 p.m. (prevailing Eastern Time)**, with respect to
the Sale of any Assets, and served on: (i) counsel to the Trustee, Togut, Segal &
Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and
Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and (ii)  co-counsel to

3

the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (Arogoff@kramerlevin.com) and Nelson Mullins Riley & Scarborough, LLP, Attn.: Lee B. Hart, Esq. (lee.hart@nelsonmullins.com). Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Court and the Court may grant the relief requested without further hearing and notice.

4.   **Key Dates and Deadlines**.  The key dates for the Sale process are as follows:

| Key Event | Deadline |
| --- | --- |
| Bid Deadline | Monday, December 12, 2022 at 5:00 p.m. (ET) |
| Sale Objection Deadline | Monday, December 12, 2022 at 5:00 p.m. (ET) |
| Proposed Assumption / Cure Amounts Objection Deadline | Monday, December 12, 2022 at 5:00 p.m. (ET) |
| Deadline for Trustee to notify bidders of their status as Qualified Bidders | Tuesday, December 13, 2022 at 12:00 p.m. (ET) |
| Auction (if necessary) | Wednesday, December 14, 2022 at 11:00 a.m. (ET) |
| File Notice of Successful Bidder | Thursday, December 15, 2022 at 4:00 p.m. (ET) |
| Supplemental Sale Objection Deadline | Friday, December 16, 2022 at 4:00 p.m. (ET) |
| Adequate Assurance of Future Performance Objection Deadline | Friday, December 16, 2022 at 4:00 p.m. (ET) |
| Sale Briefing and any Replies | Monday, December 19, 2022 at 12:00 p.m. (ET) |
| Sale Hearing | Tuesday, December 20, 2022 at 2:00 p.m. (ET) |
| Deadline for Sale Closing | Friday, December 30, 2022 at [____] [__].m. |

*[Concludes on Following Page]*

4

5. **Conclusion**.   This notice (the "Sale Notice") and any Sale Hearing are subject to the fuller terms and conditions of the Motion and the Bid Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties in interest to review such documents in their entirety.  Parties interested in receiving more information regarding the Sale of the Debtor's Assets or copies of any related document, including the Motion or the Bid Procedures Order, may make a written request to counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com).  In addition, copies of the Motion, the Bid Procedures Order, and this Sale Notice can be found on the Court's website at https://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

DATED:  New York, New York
            [_____] [___], 2022

> STEPHEN S. GRAY
> Not Individually But Solely in His
> Capacity as Chapter 11 Trustee
> By His Attorneys,
> TOGUT, SEGAL & SEGAL LLP
> By:
>
> _DRAFT_____
> ALBERT TOGUT
> FRANK A. OSWALD
> BRYAN M. KOTLIAR
> AMANDA C. GLAUBACH
> One Penn Plaza, Suite 3335
> New York, New York 10119
> (212) 594-5000

<u>**Exhibit 3**</u>

<u>**Contract Assumption Notice**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                        :
In re:                                                  :        Chapter 11
                                                        :
96 WYTHE ACQUISITION LLC,                               :        Case No. 21-22108 (SHL)
                                                        :
                              Debtor.                   :
                                                        :
---------------------------------------------------------------x

## NOTICE OF PROPOSED ASSUMPTION
## AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

---

**PLEASE TAKE NOTICE OF THE FOLLOWING DEADLINES:**

**Cure Objection Deadline:**  On or before **December 12, 2022** at 5:00 (**prevailing Eastern Time**), or such deadline set forth in the applicable Supplemental Assumption Notice.

Deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder adequate assurance of future performance of the applicable Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be **December 16, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

---

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.  On February 23, 2021 (the "Petition Date"), 96 Wythe Acquisition LLC (the "Debtor") commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").  On May 31, 2022, the Court approved the appointment of Stephen S. Gray as the Chapter 11 Trustee (the "Trustee") for the Debtor.[1]

2.  On October 21, 2022, the Trustee filed a motion (the "Motion")[2] seeking, among other things, entry of an order (the "Bid Procedures Order") (a) approving the Auction (as defined below) and the bid procedures (the "Bid Procedures") to be

---

[1]  Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591].  On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the appointment of Stephen S. Gray, as the Chapter 11 Trustee (the "Trustee") of the estate of the Debtor [Docket No. 593].

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or the Bidding Procedures, as applicable.

used in connection with the sale (the "<u>Sale</u>") of the Debtor's assets, including the Property (collectively, the "<u>Assets</u>"); (b) establishing procedures for the Trustee to designate a stalking horse bidder or stalking horse bidders with respect to certain or all of the assets (each a "<u>Stalking Horse Bidder</u>") and to enter into a stalking horse agreement or stalking horse agreements (each, a "<u>Stalking Horse Agreement</u>") with a Break-Up Fee and Expense Reimbursement (together, the "<u>Bid Protections</u>"); (c) establishing certain dates and deadlines for the Sale process, including scheduling an auction of the Assets (the "<u>Auction</u>"), if necessary, in accordance with the Bid Procedures, and the hearing with respect to the approval of the Sale (the "<u>Sale Hearing</u>"); (d) approving the form and manner of notice of the Auction and Sale Hearing; and (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "<u>Assumption and Assignment Procedures</u>") [Docket No. 752].

3. On [_____] [__], 2022, the Court entered the Bid Procedures Order [Docket No. [__]. Pursuant to the Bid Procedures Order, the Trustee hereby provides notice that the Debtor is seeking to assume and assign to a Successful Bidder or Successful Bidders in connection with the Sale the executory contracts or unexpired leases (each, an "<u>Assigned Contract</u>") listed on **<u>Exhibit A</u>** attached hereto.

4. If the Trustee assumes and assigns to a Successful Bidder or Successful Bidders an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, such Successful Bidder or Successful Bidders will pay you the amount the Trustee's records reflect is owing for prepetition arrearages as set forth on **<u>Exhibit A</u>** (the "<u>Cure Payment</u>"). The Trustee's records reflect that all postpetition amounts owing under your Assigned Contract have been paid and will continue to be paid until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no defaults under the Assigned Contract. Cure Payment amounts that include postpetition balances that are paid shall be reduced accordingly.

5. The Trustee's inclusion of an executory contract or unexpired lease as an Assigned Contract on Exhibit A is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to any Successful Bidder or Successful Bidders. Should it be determined that an Assigned Contract will not be assumed and assigned, the Trustee shall notify such party to the Assigned Contract in writing of such decision.

6. Under the terms of the Bid Procedures Order, the Trustee may modify the list of Assumed Contracts on **<u>Exhibit A</u>** until consummation of the Sale, and the Trustee reserves the right, but only in accordance with the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, as applicable, or as otherwise agreed by the Trustee and the Successful Bidder or Successful Bidders, at any time before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in

connection with a Sale, or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts.  In the event the Trustee exercises any of these reserved rights, the Trustee will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such contracts and their counsel of record, if any, and the Consultation Parties; *provided, however,* the Trustee may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Trustee by order of the Court.  Each Supplemental Assumption Notice will include the same information with respect to the list of Assigned Contracts that was included in the Contract Assumption Notice, or in the event of removal, information required in a Removal Notice.  Any Supplemental Assumption Notice will be served as soon as reasonably practicable following the Successful Bidder's identification of any such omissions, removals, or modifications to any Assigned Contracts, but not later than 24 hours following notice to the Trustee of such omissions, removals, or modifications.

7.  Any objection to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actual received by counsel to the Trustee and counsel to the applicable Successful Bidder (if such counsel is known), as applicable, on or before **December 12, 2022 at 5:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline")**, or such deadline set forth in the applicable Supplemental Assumption Notice.  Notwithstanding anything to the contrary in these Assumption and Assignment Procedures, if the Trustee makes any reduction to a proposed Cure Payment or designates any Additional Assigned Contracts, the Trustee will provide at least seven days' notice of any applicable Cure Objection Deadline if the relevant Contract Assumption Notice of Supplemental Assumption Notice is served by email or overnight mail, and at least ten days' notice of any applicable Cure Objection Deadline if the relevant Contract Assumption Notice of Supplemental Assumption Notice is served by first class mail.

8.  The deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be the Supplemental Sale Objection Deadline.  Any objections must (1) be in writing, (2) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (3) state with specificity the nature of the objection, and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof.

9.  If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing will take place at the Sale Hearing at **2:00**

4

**p.m. (prevailing Eastern Time) on December 20, 2022,** or at a later hearing, as determined by the Trustee.  A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Trustee and the applicable Successful Bidder or Successful Bidders until after the closing of the Sale.

10. Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, the Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Trustee and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

11. After the Auction, the Trustee will file and serve as set forth in the Bid Procedures, a notice that identifies the Successful Bidder or Successful Bidders. The Trustee or any Successful Bidder reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on <u>Exhibit A</u> hereto.  Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on <u>Exhibit A</u> hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of section 365 of the Bankruptcy Code; and (b) shall be subject to the Trustee's or any Successful Bidder's right to conduct further confirmatory diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly.  In the event that the Trustee or the Successful Bidder determines that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such modification.

12. Any party desiring to receive any notices served by the Trustee in connection with the Sale process  may make a written request to counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com).  In addition, copies of the Motion, the Bid Procedures Order, and this Sale Notice can be found on the Court's website at https://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

13. Counterparties to any Assigned Contracts may submit their email addresses to the Trustee's counsel, pursuant to paragraph 12 hereof to receive service via email of any of the following, to the extent so requested by email:

a.   Upon the designation of any Stalking Horse Bidder, (i) the identity of any such Stalking Horse Bidder, (ii) whether the counterparty's Assigned Contract is contemplated to be assumed and assigned under such Stalking Horse Agreement, and (iii) any such Stalking Horse Bidder's non-confidential financial information within 24 hours of entry into any such Stalking Horse Agreement; *provided* that any Stalking Horse Bidder may be permitted to add or remove Assigned Contracts under the applicable Stalking Horse Agreement pursuant to the Assumption Procedures.

b.   The identity of all Qualified Bidders that submit Bids by the Bid Deadline, by no later than [__]:[__] p.m. (prevailing Eastern Time) on [___] [__], 2022, and in all events as soon as practicable after they are determined by the Trustee to be a Qualified Bidder, but no more than 12 hours after such determination; along with (ii) any non-confidential financial information included with the applicable Qualified Bid; and (iii) only if the Qualified Bidder agrees, a contact email address for each Qualified Bidder for the contract counterparty to be able to use to contact such Qualified Bidder if they have any questions for the Qualified Bidder; and

c.   (i) the identity of any Successful Bidder, (ii) whether the counterparty's Assigned Contract is contemplated to be assumed and assigned under any Successful Bidder Purchase Agreement if and when known, and (iii) any non-confidential financial information from any such Successful Bidder as soon as practicable after the Auction, but no later than [__]:[__] (prevailing Eastern Time) on [___] [__], 2022.

*[Concludes on Following Page]*

6

DATED:   New York, New York
         [_____] [____], 2022

STEPHEN S. GRAY
Not Individually But Solely in His
Capacity as Chapter 11 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*DRAFT*_____
ALBERT TOGUT
FRANK A. OSWALD
BRYAN M. KOTLIAR
AMANDA C. GLAUBACH
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

## EXHIBIT B

### Redline of Revised Proposed Order

## EXHIBIT A

### BID PROCEDURES ORDER

### Revised Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                               :
In re:                       :          Chapter 11
                               :
96 WYTHE ACQUISITION LLC,   :          Case No. 21-22108 (SHL)
                               :
                Debtor.    :
                               :
-----------------------------------------------------------------x

## ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS; (B) ESTABLISHING PROCEDURES TO DESIGNATE A STALKING HORSE BIDDER AND ENTER INTO A STALKING HORSE AGREEMENT WITH BID PROTECTIONS; (C) SCHEDULING AN AUCTION AND SALE HEARING; (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (F) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 Trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), for entry of an order (this "Bid Procedures Order"), (a) approving the bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") in connection with the Sale of the Debtor's Assets;  (b) establishing procedures for the Trustee to designate a Stalking Horse Bidder or Stalking Horse Budders with respect to certain or all of the Assets and to enter into a Stalking Horse Agreement or Stalking Horse Agreements with a Break-Up Fee and Expense Reimbursement (each as defined below, and together the "Bid Protections"); (c) establishing certain dates and deadlines for the sale process, including scheduling an Auction and the Sale Hearing; (d) approving the form and manner of

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion or the Bid Procedures (as defined below), as applicable.

notice of the Auction and Sale Hearing, substantially in the form attached hereto as

**Exhibit 2** (the "Sale Notice"); (e) approving procedures for the assumption and

assignment of executory contracts and unexpired leases in connection with the Sale (the

"Assumption and Assignment Procedures"), including the form and manner of notice

of contract assumption, substantially in the form attached hereto as **Exhibit 3** (the

"Contract Assumption Notice"); and (f) granting related relief; and it appearing that

this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334

and the Amended Standing Order;  and upon the Declaration of Emilio Amendola in

Support of Chapter 11 Trustee's Bid Procedure Motion [Docket No. 771] (the

"Amendola Declaration"), filed on November 2, 2022;  and it appearing that venue of

the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§

1408 and 1409;  and it appearing that this matter is a core proceeding pursuant to 28

U.S.C. § 157(b);  and the Court having considered the Amendola Declaration and

having heard the statements of counsel with respect to the Motion at a hearing (the

"Hearing");  and this Court having determined that the relief requested in the Motion

with respect to the entry of this Bid Procedures Order is in the best interests of the

Debtor, the estate, its creditors and other parties in interest;  and it appearing that

proper and adequate notice of the Motion has been given and that, except as otherwise

ordered herein, no other or further notice is necessary;  and after due deliberation

thereon; and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

    A.    This Court has jurisdiction to hear and determine the Motion and to

---

[2]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they

2

grant the relief set forth herein pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Trustee's proposed notice of the Auction, the Sale and the other matters to be considered at the Sale Hearing pursuant to the Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bid Procedures, Auction, Sale Hearing, and Sale.

C.      The Bid Procedures are fair, reasonable, appropriate and are designed to maximize the value of the Assets and recoveries to the Debtor's estate, its creditors, and other parties in interest.

D.      The Trustee has demonstrated compelling and sound business justifications for (i) the ability to designate a Stalking Horse Bidder or Stalking Horse Bidders, and to enter into a Stalking Horse Agreement or Stalking Horse Agreements with Bid Protections, which include (a) a break-up fee ~~of 1%~~in the range of 1%  to 3% in the Trustee's discretion, in consultation with the Consultation Parties, of the cash consideration to be paid (the "Break-Up Fee") and (b) reimbursement of reasonable, documented and necessary out-of-pocket expenses incurred in connection with such Stalking Horse Bid not to exceed $150,000 (the "Expense Reimbursement") and (ii) the Assumption and Assignment Procedures.  The foregoing are fair, reasonable, and appropriate under the circumstances.

E.      The Sale Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bid Procedures, the Auction,

---

are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

the Sale Hearing, and the Sale free and clear of any liens, claims, interests, or

encumbrances pursuant to section 363(f) of the Bankruptcy Code (with such liens,

claims, interests, or encumbrances attaching to the proceeds of any such sale, which

shall be first applied to satisfy the Secured Lender in cash in full), and any and all

objection deadlines related thereto, and no other or further notice shall be required for

the Motion.

      F.      Based on the record before the Court, the Trustee has demonstrated

good and sufficient basis for the Court to approve the Motion as it relates to the entry

of this Bid Procedures Order.

               IT IS HEREBY ORDERED THAT:

      1.      The Motion is GRANTED to the extent set forth herein.

      2.      *Any and all objections, including Toby Moskovits' and Michael*

*Lichtenstein's Limited Objection to Chapter 11 Trustee's Sale Procedures Motion* [Docket No.

772], filed on November 3, 2022, made relating to the Bid Procedures and the Motion

that have not been withdrawn or resolved prior to or at the Hearing are hereby

overruled on the merits with prejudice.

      2.3.      The Bid Procedures attached hereto as **Exhibit 1** are hereby

approved in all respects.

      3.4.      Subject to the terms of this Order and the Bid Procedures, the

Trustee may, with the reasonable consent of the Secured Lender, at closing of the sale of

the Assets subject to the Stalking Horse Bid, make certain payments to the Stalking

Horse Bidder in consideration of its tendering the Stalking Horse Bid, including (a) a

break-up fee of 1%in the range of 1% to 3% in the Trustee's discretion, in consultation

with the Consultation Parties, of the cash consideration to be paid (the "Break-Up Fee")

and (b) reimbursement of reasonable, documented and necessary out-of-pocket

expenses incurred in connection with such Stalking Horse Bid not to exceed $150,000 (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").

4.5.    If the Trustee designates a Stalking Horse Bidder or Stalking Horse Bidders with respect to certain or all of the Assets, the Trustee shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) shall file with the Court, and serve on the applicable parties, a notice that contains: (a)  the identity of the Stalking Horse Bidder or Stalking Horse Bidders;  (b) any connections the Stalking Horse Bidder or Stalking Horse Bidders have with the Trustee, the Debtor's Principals, including Toby Moskovits and Michael Lichtenstein, or any affiliates including, but not limited to Northside Acquisition, LLC, etc.;  (c) the material terms of the Stalking Horse Bid, including the Stalking Horse Agreement and the Bid Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Bidder").

5.6.    Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse Bidder, including any Bid Protections pursuant to the terms and provisions of a Stalking Horse agreement, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder, and served on (i) counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and (ii)  co-counsel to the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (Arogoff@kramerlevin.com) and

Nelson Mullins Riley & Scarborough, LLP, Attn.: Lee B. Hart, Esq.

(lee.hart@nelsonmullins.com).

6.7.    If a timely Stalking Horse Objection is filed and served in

accordance with the preceding paragraph, the proposed Bid Protections will not be

deemed approved until the Stalking Horse Objection is resolved by agreement of the

objecting party, the Trustee, and the Secured Lender, or by order of the Court.

7.8.    If no timely Stalking Horse Objection is filed and served with

respect to an applicable Stalking Horse Agreement in accordance with the Bid

Procedures, the Bid Protections shall be deemed approved without further order of the

Court upon the expiration of the objection deadline.

8.9.    No other bidder, nor any party making a credit bid (irrespective of

whether it is a Stalking Horse Bidder) will be entitled to any Bid Protections or any

other expense reimbursement, break-up fee, termination fee or any other similar fee or

payment; provided, that neither the Bid Procedures Order nor the Bid Procedures shall

impair or prejudice the rights of the Secured Lender to collect its fees in accordance

with the Loan Agreement and related documents.

9.10.   The Sale Notice substantially in the form attached hereto as

**Exhibit 2** is approved.  As soon as reasonably practicable, but in no event later than the

third (3rd) business day after entry of this Bid Procedures Order, the Trustee shall serve

or shall cause to be served the Sale Notice by e-mail (where available) or first-class mail

postage prepaid (if e-mail is not available) upon:  (a) all entities reasonably known to

have expressed an interest in the acquisition, directly or indirectly, of the Assets; (b) all

entities known to have asserted any claims, liens, interests, or encumbrances on any of

the Assets; (c) the Office of the United States Trustee for the Southern District of New

York, Region 2 (the "U.S. Trustee"); (d) counsel to the Secured Lender; (e) the Internal

Revenue Service; (f) all parties to executory contracts to be assumed and assigned, or rejected as part of the Sale; (g) all other parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof.

10.11.  The procedures set forth herein regarding the assumption and assignment of the executory contracts to be assumed by the Trustee pursuant to section 365(b) of the Bankruptcy Code and assigned to a Successful Bidder or Successful Bidders in connection with the Sale (the "Assumption Procedures") are hereby approved.  The Contract Assumption Notice substantially in the form attached hereto as **Exhibit 3** is approved.

11.12.  The Assumption Procedures shall govern the assumption and assignment of all of the Trustee's executory contracts and unexpired leases to be assumed and assigned in connection with the Sale (each, an "Assigned Contract," and, collectively, the "Assigned Contracts"), subject to the payment of any payments necessary to cure any defaults arising under any Assigned Contract (the "Cure Payments"):

    a.  **Contract Assumption Notice.**  No later than three (3) business days following entry of the Bid Procedures Order,  (the "Assumption and Assignment Service Deadline"), the Trustee shall serve a notice of contract assumption in substantially the form of the Contract Assumption Notice via first-class mail (or email where available) on: (a) all counterparties to all potential Assigned Contracts; (b) all entities reasonably known to have expressed an interest in the acquisition, directly or indirectly, of the Assets; (c) all entities known to have asserted any claims, liens, interests or encumbrances on any of the Assets; (d) the Office of the United States Trustee for the Southern District of New York, Region 2; (e) counsel to Benefit Street; (f) the Internal Revenue Service; (g) all other parties who have requested notice pursuant to Bankruptcy Rule 2002 as of the date hereof,  and provide a copy of the same to any Stalking Horse Bidder and the Consultation Parties, which copy may be provided via email.  The Contract Assumption Notice shall inform each recipient of the timing and procedures relating to the potential assumption and assignment of the Assigned Contracts to a Successful Bidder or Successful Bidders upon entry of the Sale Order, and, to the extent applicable, (i) Trustee's

good faith estimates of the Cure Payments (if any) required in connection with the executory contract or unexpired lease, as applicable, (ii) whether the potential Assigned Contract is anticipated to be assumed and assigned to any Stalking Horse Bidder in connection with a Stalking Horse Bid; (iii) the Cure Objection Deadline; (iv) the Sale Objection Deadline; and (v) the Supplemental Sale Objection Deadline; *provided, however,* that service of a Contract Assumption Notice does not constitute an admission that any contract is executory or that the stated Cure Payment related to any contract or unexpired lease constitutes a claim against the estate or a right against any Stalking Horse Bidder (all rights with respect thereto being expressly reserved).  Further, the inclusion of a contract or unexpired lease, as applicable, on the Contract Assumption Notice is not a guarantee that such contract or unexpired lease, as applicable, will ultimately be assumed and assigned.

b.  **Cure Payments and Adequate Assurance of Future Performance.**  The payment of the applicable Cure Payments by any Successful Bidder shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

c.  **Additions.**  The Trustee may also designate additional executory contracts or unexpired leases as agreements to be assumed by the Trustee and assigned to a Successful Bidder (the "Additional Assigned Contracts") until consummation of the Sale.  Following the addition of an Additional Assigned Contract, the Trustee shall as soon as reasonably practicable thereafter serve a Contract Assumption Notice on each of the counterparties to such Additional Assigned Contracts and their counsel of record, if any, indicating (i) that the Trustee intends to assume and assign the counterparty's executory contract or unexpired lease, as applicable, to the applicable Successful Bidder, and (ii) the corresponding Cure Payment.

d.  **Eliminations.** The Trustee may remove any executory contract or unexpired lease, as applicable, to be assumed by the Trustee and assigned to a Successful Bidder (the "Eliminated Agreements") until consummation of the Sale.  Following the removal of an Eliminated Agreement, the Trustee shall, as soon as reasonably practicable thereafter serve a notice (a "Removal Notice") on each of the impacted counterparties and their counsel of record, if any, indicating that the Trustee no longer intends to assign the counterparty's contract or unexpired lease, as applicable, to the applicable Successful Bidder in connection with the Sale.

e.  **Supplemental Contract Assumption Notice.**  Although the Trustee intends to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with the Sale, the Trustee may discover certain executory contracts inadvertently

omitted from the Assigned Contracts list or Successful Bidders may identify other executory contracts that they desire to assume and assign in connection with a Sale. Accordingly, the Trustee reserves the right, but only in accordance with the Successful Bidder Purchase Agreement (as defined in the Bid Procedures) or any Stalking Horse Agreement, as applicable, or as otherwise agreed by the Trustee and the Successful Bidder or Successful Bidders, any time after the closing of the Sale and before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposed be assumed and assigned to it in connection with a Sale, or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Trustee exercises any of these reserved rights, the Trustee will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such contracts and their counsel of record, if any, and the Consultation Parties; *provided, however,* the Trustee may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Trustee by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to the list of Assigned Contracts that was included in the Contract Assumption Notice, or in the event of removal, information required in a Removal Notice.

f.   **Objections.** Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by counsel to the Trustee and counsel to the applicable Successful Bidder (if such counsel is known), as applicable, on or before **December 2̶12, 2022 at 4̶5:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline")**, or such deadline set forth in the applicable Supplemental Assumption Notice.

The deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be **December 1̶216, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

12.13.  Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, the Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Trustee and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

13.14.  Unless otherwise provided in the Sale Order, the Trustee shall have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

14.15.  At the Sale Hearing, the Trustee shall (i) present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder or the Stalking Horse Bidder, as applicable; and (ii) request entry of an order granting approval of the assumption and assignment of any Assigned Contracts to the Successful Bidder or the Stalking Horse Bidders, as applicable.

15.16.  The Auction is scheduled for **1011:00 a.m. (ET) on December 614,** **2022** to be conducted at a location to be determined, or at another place and time designated by the Trustee in a prior written notice emailed to all Qualified Bidders.

16.17.  The deadline for objecting to the Sale of the Assets shall be **45:00** **p.m. (ET) on December 212, 2022** (the "Sale Objection Deadline"), and the supplemental objection deadline for the Sale of the Assets to the Successful Bidder or Successful Bidders shall be **4:00 p.m. (ET) on December 1216, 2022** (the "Supplemental Sale Objection Deadline").   All objections to the Sale must be:  (a) in writing; (b) state with specificity the basis of the objection, (c) signed by counsel or attested to by the objecting party; (d) in conformity with the Bankruptcy Rules and the Local Rules; (e) filed with the Court; and (f) served on (i) the U.S. Trustee, (ii) counsel for the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com), and (iii) co-counsel to the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (arogoff@kramerlevin.com) and Nelson Mullins Riley & Scarborough, LLP, Attn.: Lee B. Hart, Esq. (lee.hart@nelsonmullins.com) so as to be actually received on or before the Sale Objection Deadline.

17.18.  Failure to object to the relief requested in the Motion with respect to the Sale by the Sale Objection Deadline shall be deemed a waiver of the right to object to the Sale, and any party failing to object shall be forever barred from objecting to the relief requested in the Motion with respect to the Sale.

18.19.  The Sale Hearing shall be held in this Court at **[__]:2:00 [__].p.m.** **(ET) on December [16],20, 2022**.  The Sale Hearing may be adjourned or continued from time to time by the Court or the Trustee without further notice other than an

announcement in open court or as indicated in any notice or hearing agenda that is filed with the Court.

19.20.  Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any applicable provisions of the Bankruptcy Rules or the Local Rules or otherwise stating the contrary, the terms of and conditions of this Bid Procedures Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Bid Procedures Order is hereby waived.

20.21.  Prior to filing and serving the Sale Notice and the Contract Assumption Notice, the Trustee may fill in any missing dates and other information, conform the provisions thereof to the provisions of this Bid Procedures Order, and make such other, non-material changes as the Trustee deems necessary or appropriate.

21.22.  The Trustee is authorized and empowered to take all actions necessary to effectuate the relief granted in this Bid Procedures Order.

*[Concludes on Following Page]*

22.23.  This Court retains jurisdiction with respect to all matters arising

from or related to the implementation, interpretation, or enforcement of this Bid

Procedures Order.

Dated: _____, 2022
            New York, New York

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

## The Bid Procedures

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                              :
In re:                                                      :        Chapter 11
                                              :
96 WYTHE ACQUISITION LLC,                :        Case No. 21-22108 (SHL)
                                              :
                           Debtor.                :
                                              :
------------------------------------------------------------------x

## BID PROCEDURES

### I.    Overview

On February 23, 2021 (the "Petition Date"), 96 Wythe Acquisition LLC (the "Debtor") commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). On May 31, 2022, the Court approved the appointment of Stephen S. Gray as the Chapter 11 Trustee (the "Trustee") for the Debtor.[1]

On [_____] [__], 2022, the Court entered an order [Docket No. [__]] (the "Bid Procedures Order"), approving these bid procedures (the "Bid Procedures") and certain other relief set forth in the Trustee's motion [Docket No. [__]].[2] These Bid Procedures set forth the process by which the Trustee is authorized to solicit bids for and conduct an auction (the "Auction") for the sale (the "Sale") of the Debtor's assets (the "Assets") pursuant to section 363 of the Bankruptcy Code. In addition, at any time, the Trustee may, but is not required to, designate one or more stalking horse bidder(s) with respect to certain or all of the Assets (each, a "Stalking Horse Bidder").

Approval of the Sale may be considered by the Court together with or separate from any hearing to confirm a chapter 11 plan of liquidation for the Debtor, and the closing of the Sale (the "Sale Closing") may be consummated pursuant to a chapter 11 plan or outside of a plan pursuant to sections 363 and 365 of the Bankruptcy Code.

---

[1] Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591]. On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the appointment of Stephen S. Gray, as the Chapter 11 Trustee (the "Trustee") of the estate of the Debtor [Docket No. 593].

[2] Capitalized terms used but not otherwise defined herein, shall have the meanings ascribed to such terms in the Bid Procedures Order.

## II.    Description of the Assets

The Trustee is offering for sale the Assets, which include substantially all of the Debtor's real and personal property, including, without limitation, the 10-story, 147-room hotel located at 96 Wythe Avenue, Brooklyn, NY 11249 (the "Hotel"), and all lands, estates, development rights, easements, improvements, rights-of-way or use, improvements, equipment, fixtures, leases, rents, awards, refunds, rebates, credits, agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents relating to the occupation, construction, management or operation of the Hotel and any part thereof, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Hotel, and inventory and accounts receivables.

The ownership of certain intellectual property used at or in connection with the Assets is subject to dispute by the Debtor's former management company and insiders. Potential bidders may include such intellectual property in the Assets they seek to purchase; however, in light of the dispute, the Trustee will deliver only the estate's right, title and interest in and to such intellectual property, if any, without any representations or warranties whatsoever unless this dispute is resolved by the Court or otherwise prior to the Auction.

Except as otherwise provided in a Successful Bidder Purchase Agreement (as defined below) or an order of the Court (including any exhibits or schedules thereto), all of the Debtor's right, title and interest in and to the Assets subject thereto shall be sold free and clear of any liens, claims, interests, and encumbrances (collectively, the "Interests") to the maximum extent permitted by sections 363 and 1146 of the Bankruptcy Code, with such Interests to attach to the proceeds of the Sale of the Assets paid directly to the Trustee and Secured Lender at closing (through a title or escrow agent as applicable) in accordance with the Secured Lender Settlement,[3] and the portion of which proceeds paid to the Trustee to be held by the Trustee pending the distribution of such proceeds to holders of other liens in accordance with the priority of their respective liens and otherwise subject to orders entered by the Court in the Chapter 11 Case, including without limitation the Secured Lender Settlement) with the same validity and priority as such Interests applied against the Assets.

## III.    Bid Process

The Trustee and his advisors, in consultation with the Consultation Parties (as defined below) shall (a) determine whether any person is a Qualified Bidder, (b) coordinate the efforts of Potential Bidders in conducting their due diligence investigations, (c) receive offers from Potential Bidders, (d) negotiate any offers made to purchase the Assets;  and (e) determine if any Qualified Bidder should be selected as a Stalking Horse Bidder in accordance with the procedures set forth below.

---

[3]    The "Secured Lender Settlement" refers to that certain Settlement Agreement, dated as of September 13, 2022 (as may be amended, modified, or restated) between the Trustee and the Secured Lender, a copy of which is attached as an exhibit to the *Chapter 11 Trustee's Application to Approve Settlement Agreement with Benefit Street Partners Operating Partnership, L.P.*, filed on September 13, 2022 [Docket No. 679].

IV.    **Key Dates for Potential Bidders**

The Bid Procedures provide interested parties with the opportunity to qualify for and participate in the Auction and to submit competing bids for the Assets. The Trustee and his advisors shall assist Potential Bidders in conducting their respective due diligence investigations and shall accept Bids (as defined below) until **December 2, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") for the Assets.

**All information (and bids) that must be provided under these Bid Procedures must be provided to the Trustee's Co-Brokers, A&G Real Estate Partners, LLC, Attn.: Emilio Amendola (emilio@agrep.com) and Eastdil Secured, LLC, Attn.: Andy Wimsatt (awimsatt@eastdilsecured.com)** with a copy to:

(i)    The Trustee, Stephen S. Gray (ssg@grayandcompanyllc.com);

(ii)    counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and

(iii)    financial advisor to the Trustee, CohnReznick LLP, Attn.: Chris Creger (Chris.Creger@CohnReznick.com) and Molly Jobe (Molly.Jobe@CohnReznick.com).

The key dates for the Sale process are as follows:[4]

| Key Event | Deadline |
|---|---|
| Bid Deadline | ~~Friday~~Monday, December ~~2~~12, 2022 at ~~4~~5:00 p.m. (ET) |
| Sale Objection Deadline | ~~Friday~~Monday, December ~~2~~12, 2022 at ~~4~~5:00 p.m. (ET) |
| Proposed Assumption / Cure Amounts Objection Deadline | ~~Friday~~Monday, December ~~2~~12, 2022 at ~~4~~5:00 p.m. (ET) |
| Deadline for Trustee to notify bidders of their status as Qualified Bidders | ~~Monday~~Tuesday, December ~~5~~13, 2022 at 12:00 p.m. (ET) |
| Auction (if necessary) | ~~Tuesday~~Wednesday, December ~~6~~14, 2022 at ~~10~~11:00 a.m. (ET) |
| File Notice of Successful Bidder | Thursday, December ~~8~~15, 2022 at 4:00 p.m. (ET) |

---

[4]    The Trustee reserves the right to modify the deadlines set forth herein (in consultation with the Consultation Parties).

| Key Event | Deadline |
|---|---|
| Supplemental Sale Objection Deadline | ~~Monday~~Friday, December 1216, 2022 at 4:00 p.m. (ET) |
| Adequate Assurance of Future Performance Objection Deadline | ~~Monday~~Friday, December 1216, 2022 at 4:00 p.m. (ET) |
| Sale Briefing and any Replies | ~~Thursday~~Monday, December 1519, 2022 at 12:00 p.m. (ET) |
| Sale Hearing | ~~Friday~~Tuesday, December 1620, 2022 at ~~[____]~~ [___].2:00 p.m. (ET) |
| Deadline for Sale Closing | Friday, December 30, 2022 at [____] [__].m. |

**V.    Due Diligence**

    **A.   Access to Diligence Materials**

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party, other than the Secured Lender, must submit to the Trustee (i) an executed confidentiality agreement in such a form reasonably satisfactory to the Trustee, unless such an agreement has been previously executed and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale, in cash, as reasonably determined by the Trustee. A party that qualifies for access to Diligence Materials pursuant to the prior sentence shall be a "Potential Bidder." For the avoidance of doubt, the Secured Lender shall have access to Diligence Materials.

The Trustee will afford any Potential Bidder the time and opportunity to conduct reasonable due diligence, as determined by the Trustee, including access to the electronic data room and other information that a Potential Bidder may reasonably request; *provided, however,* that the Trustee shall not be obligated to furnish any due diligence information after the applicable Bid Deadline to any party that has not submitted a Qualified Bid. The availability of additional due diligence to a Qualified Bidder will cease on the Auction except in the sole discretion of the Trustee; *provided, however,* that any Successful Bidder shall be permitted to continue to conduct due diligence until the closing of the Sale. The Trustee reserves the right to withhold any Diligence Materials that the Trustee determines are necessary to protect attorney client privilege, are business-sensitive, competitively sensitive, or otherwise not appropriate for disclosure to a Potential Bidder that is a competitor of the Debtor or is affiliated with any competitor of the Debtor. Neither the Trustee nor his representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

All due diligence requests must be directed to the attention of Trustee's Co-Brokers, A&G Real Estate Partners, LLC, Attn.: Emilio Amendola (emilio@agrep.com) and Eastdil Secured, LLC, Attn.: Andy Wimsatt (awimsatt@eastdilsecured.com).

**B. Due Diligence from Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Trustee or his advisors regarding the ability of such Potential Bidder to consummate a Sale.

**C. Communications with Potential Bidders**

There must be no communications with respect to Bids (as defined below) or potential Bids between and amongst Potential Bidders, or between Potential Bidders and the Consultation Parties, unless the Trustee has previously authorized such communication in writing or with the participation of representatives of the Trustee or his advisors. Should any Potential Bidder attempt to communicate directly with a Consultation Party regarding a Bid or potential bid, such Consultation Party shall immediately direct the Potential Bidder to the Trustee's counsel and financial advisors. The Trustee reserves the right, in his reasonable business judgment, to disqualify any Potential Bidders that have engaged in communications between or amongst themselves without the participation of the Trustee (or a representative of the Trustee) or the Trustee's prior written consent. The Trustee further reserves the right, in his reasonable business judgment, to strip any Consultation Party that violates this provision of its consultation rights hereunder with approval of the Court.

**VI.   Qualified Bidder Status**

In order to be considered as a Qualified Bidder to participate in the Auction each Potential Bidder, must deliver to the Trustee and the Trustee's advisors a written, irrevocable offer, solicitation or proposal (each, a "Bid") prior to the Bid Deadline, that must be determined by the Trustee, in his reasonable business judgment, and in consultation with the Consultation Parties, to satisfy each of the following conditions; *provided* that the Trustee may waive any of the below requirements in the exercise of his reasonable business judgment in consultation with the Consultation Parties, to the extent that the Trustee reasonably believes that doing so will maximize the value of the Assets:

    a. *Good Faith Offer:* Each Bid must constitute a good faith, bona fide offer to purchase all or substantially all of the Assets. Any potential bidder seeking to purchase intellectual property from the Trustee shall itemize in its Bid specifically what intellectual property is included in its Bid and shall ascribe a value to such intellectual property.

    b. *Purchase Price:* All Bids (other than a credit bid by the Secured Lender) must be for cash to be paid at closing. The Bid must clearly set forth the

cash purchase price, and any other non-cash consideration (with the form of such consideration specified such as assumption of contract cure amounts), to be paid (the "Purchase Price").

c.  *Good Faith Deposit*: Each Bid (other than a credit bid by the Secured Lender) must be accompanied by a deposit in the amount of ten (10%) percent of the cash consideration portion of the Purchase Price, before any reductions for assumed liabilities or other adjustments (the "Good Faith Deposit"). The Good Faith Deposit must come in the form of a wire transfer, certified check other form acceptable to the Trustee. Each Good Faith Deposit must be deposited prior to the Bid Deadline with the Trustee's counsel as escrow holder ("Escrow Holder").

d.  *Executed Agreement*: Each Bid (other than a credit bid by the Secured Lender) must be based on the proposed purchase agreement prepared by the Trustee in consultation with the Consultation Parties, which will be posted to the data room (the "Purchase Agreement"). Each Potential Bidder must provide a markup of the Purchase Agreement (each, a "Potential Bidder Purchase Agreement"). Each Potential Bidder Purchase Agreement must include forms of any other transaction documents, pursuant to which the Potential Bidder proposes to effectuate a Sale. To the extent applicable, each Bid must also include a copy of the Potential Bidder Purchase Agreement marked against the Purchase Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Trustee may determine how such Bid compares to the terms of competing Bids). Each Potential Bidder Purchase Agreement must provide a commitment to close within two business days after all closing conditions are satisfied.

e.  *Designation of Assigned Contracts and Leases*: A Bid must identify any and all executory contracts and unexpired leases that the Potential Bidder wishes to assume pursuant to the Sale. A Bid must state that the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate may be provided by the Trustee).

f.  *Designation of Assumed Liabilities:* A Bid must identify all liabilities that the Potential Bidder proposes to assume.

g.  *Identity of Bidders; Purchase Participants:* The identity of each entity that will be participating in connection with such Bid and taking ownership of the assets (including any equity owners or sponsors, if the Potential Bidder is an entity formed for the purpose of consummating the sale transaction) and a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed and to consummate the transaction contemplated by the Bid and any connections with the Trustee, and the Debtor's Principals, including Toby Moskovits and

Michael Lichtenstein, or any affiliates including, but not limited to Northside Acquisition LLC, etc.  The provisions of this subsection (g) shall not apply to a credit bid tendered by the Secured Lender.

h.  *Contact Information and Affiliates:*  A Bid must provide the identity and contact information for the Potential Bidder and full disclosure of any parent companies, controlling investors, or fund managers of the Potential Bidder.

i.  *Proof of Financial Ability to Perform:*  A Bid (other than a credit bid by the Secured Lender) must include written evidence of available cash without contingency, executed commitment papers for financing (not subject to any conditions), and such other evidence of ability to consummate the transaction contemplated by the Bid and compliance with the Bid Procedures Order, the Bid Procedures in each case, as determined by the Trustee in his business judgment.

j.  *Conditions / Contingencies:* A Bid must not be subject to further due diligence or any financing contingency.

k.  *Bid Irrevocable:* Subject to the following sentence with respect to the requirement to serve as a Backup Bidder, a Bid (other than a credit bid by the Secured Lender) must provide that it is irrevocable until two business days after the closing of the Sale; provided that if such Bid is accepted as the Successful Bid or the Backup Bid, such Bid shall continue to remain irrevocable as and to the extent provided in the Potential Bidder Purchase Agreement. Each Potential Bidder that submits a Bid further agrees that, if not chosen as a Successful Bidder, such Potential Bidder shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Trustee at the Sale Hearing, in the event the relevant Successful Bidder with respect to a Sale fails to close as provided in the Successful Bidder Purchase Agreement, as modified, if at all, and the applicable Sale Order (as defined below).

l.  *Consent to Jurisdiction*: Each Potential Bidder must (i) submit to the jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Trustee, the Bid Procedures, any Auction, any Potential Bidder Purchase Agreement, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Trustee, the Bid Procedures, any Auction, any Potential Bidder Purchase Agreement, or the construction and enforcement of documents relating to any Sale, and (iii) commit to the entry of a final order or judgment in any way related to the Trustee, the Bid Procedures, any Auction, any Potential Bidder Purchase Agreement, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

   m.  *No Bid Protections:* Except with respect to any Stalking Horse Bidder
       designated by the Trustee with the consent of the Secured Lender as
       provided for herein, a Bid must not entitle the Potential Bidder to any
       break-up fee, termination fee, transaction fee, expense reimbursement, or
       any similar type of payment or reimbursement and, by submitting a Bid,
       the Potential Bidder waives the right to pursue a substantial contribution
       claim under 11 U.S.C. § 503 related in any way to the submission of its
       Bid or participation in any Auction. Each Potential Bidder (other than the
       Secured Lender) presenting a Bid will bear its own costs and expenses
       (including legal fees) in connection with any proposed Sale.

   n.  *Acknowledgement of Chapter 11 Plan:* Each bid must acknowledge that the
       Sale may close under and pursuant to a chapter 11 plan for the Debtor;
       *provided* that if the Trustee is unable to confirm a chapter 11 plan, the Sale
       may be consummated outside of a chapter 11 plan, pursuant to section
       363 of the Bankruptcy Code.

A Bid received from a Potential Bidder prior to the applicable Bid Deadline
that meets the above requirements, as determined by the Trustee in his sole
discretion, shall constitute a "Qualified Bid" for such Assets (and such Potential
Bidder, a "Qualified Bidder"); *provided* that if the Trustee receives a Bid prior to the
Bid Deadline that is not a Qualified Bid, the Trustee may, after consultation with the
Consultation Parties, provide the Potential Bidder with the opportunity to remedy
any deficiencies prior to the Auction. Any Stalking Horse Bidder will be deemed a
Qualified Bidder at all times. For the avoidance of doubt, a Bid submitted after the
Bid Deadline (other than a credit bid by the Secured Lender) shall not be a Qualified
Bid.

In addition, the Secured Lender shall be a Qualified Bidder and shall be
permitted to credit bid up to the Senior Secured Amount (as defined in the Secured
Lender Settlement) at the Auction.[5]

The Secured Lender shall not be required to comply with the requirement of
this Section prior to the Auction.  To the extent the Secured Lender submits a credit
bid at the Auction, such credit bid shall comply with this Section VI (a),(h), and (j)-(l)
(unless specifically stated otherwise in such sections) and shall include cash
consideration in an amount equal to the Bid Protections granted to a Stalking Horse
Bidder.

For the avoidance of doubt, and as reflected in the section titled "The
Consultation Parties" below, in the event that the Secured Lender elects to
participate at the Auction as a Qualified Bidder, the Secured Lender shall no longer
be a Consultation Party with respect to the Assets such party or parties bid upon at
the Auction; provided that if the Secured Lender elects to submit a Bid as a
Qualified Bidder, it must so elect (i) at or prior to the commencement of the Auction

---

[5]  For illustrative purposes, the Secured Lender Settlement Provides that the Senior Secured Amount
     consists of $$95,952,130.52 (calculated as of August 14, 2022), plus subsequently accruing interest at
     the contract rate, expenses and legal fees accruing thereafter.

and only after receiving the initial bids for the Auction selected by the Trustee in consultation with the Consultation Parties; or (ii) if, after receiving the initial bids and after the commencement of the Auction, such initial bids are altered or modified during the Auction to the extent that such alteration or modification adversely impacts the value of the Secured Lender's collateral; *provided, however*, that in no event shall any Qualified Bidder be permitted to reduce the aggregate amount of consideration of their Bid after the applicable Bid Deadline. If the Secured Lender withdraws as a bidder at the Auction and is not the Successful Bidder or Back-Up Bidder, such parties shall resume their full role as a Consultation Party.

Within one (1) day after the Bid Deadline, the Trustee and his advisors (in consultation with the Consultation Parties) will determine which Potential Bidders are Qualified Bidders and whether Bids submitted constitute Qualified Bids. Any Bid that is not deemed a Qualified Bid will not be considered by the Trustee. Any Stalking Horse Agreement submitted by a Stalking Horse Bidder will be deemed a Qualified Bid, qualifying such Stalking Horse Bidder to participate in the Auction. To the extent there is any dispute regarding whether a Bid submitted prior to the Bid Deadline is a Qualified Bid, such dispute may be raised with the Court on an expedited basis prior to the commencement of the Auction. If any Bid is determined by the Trustee not to be a Qualified Bid, the Trustee will refund such Potential Bidder's Good Faith Deposit on or within five (5) business days after the Bid Deadline.

Prior to the Auction, the Trustee and his advisors, in consultation with the Consultation Parties, will evaluate Qualified Bids and identify the Qualified Bid that is, in the Trustee's reasonable business judgment, the highest or otherwise best bid (the "Starting Bid") with respect to a proposed Sale. In making such determination, the Trustee will take into account, among other things, the execution risk of non-consummation attendant to any submitted Qualified Bids. No later than 24 hours before the start of the Auction, the Trustee will notify each Qualified Bidder who has timely submitted a Bid with respect to a Sale that its Bid is a Qualified Bid so as to enable such Qualified Bidders to bid at the Auction. As soon as practicable prior to the Auction the Trustee will further (a) notify each Qualified Bidder who has submitted a Qualified Bid and the Consultation Parties as to which Qualified Bid is the Starting Bid with respect to a Sale; and (b) distribute copies of the Potential Bidder Purchase Agreement(s) or any Stalking Horse Agreement, as applicable, associated with such Starting Bid(s) to each Qualified Bidder who has submitted a Qualified Bid with respect to a Sale and to the Consultation Parties.

By submitting its Bid, each Potential Bidder is agreeing with each other Potential Bidder to abide by and honor the terms of these Bid Procedures and agrees not to submit a bid or seek to reopen the Auction after such Auction.

## VII. Procedures for the Designation of a Stalking Horse Bidder and Bid Protections

Prior to the commencement of the Auction, the Trustee, in the exercise of his reasonable business judgment, with the reasonable consent of the Secured Lender, may designate one or more minimum acceptable bids as a stalking horse purchaser with

respect to certain or all of the Assets (each, a "Stalking Horse Bid") and provide any such Stalking Horse Bidder with Bid Protections (as defined below) pursuant to an agreement with such Stalking Horse Bidder (the "Stalking Horse Agreement"); *provided* that no insider or affiliate of the Debtor or the Debtor's former management company, the Williamsburg Hotel BK LLC shall be entitled to any Bid Protections.  Any dispute among the Trustee and the Consultation Parties with respect to the designation of a Stalking Horse Bidder may be resolved by the Court.

If the Trustee designates a Stalking Horse Bidder or Stalking Horse Bidders with respect to certain or all of the Assets, the Trustee shall promptly upon execution of a Stalking Horse Agreement (and in no event more than one (1) calendar day following such execution) shall file with the Court, and serve on the applicable parties, a notice that contains: (a)  the identity of the Stalking Horse Bidders or Stalking Horse Bidders; (b) any connections the Stalking Horse Bidder or Stalking Horse Bidders have with the Trustee, the Debtor's Principals, including Toby Moskovits and Michael Lichtenstein, or any Affiliates including, but not limited to Northside Acquisition, LLC, etc.;  (c) the material terms of the Stalking Horse Bid, including the Stalking Horse Agreement and the Bid Protections, and attaches the proposed Stalking Horse Agreement (the "Notice of Stalking Horse Bidder").

The Trustee may, with the reasonable consent of the Secured Lender, at closing of the sale of the Assets subject to the Stalking Horse Bid, make certain payments to the Stalking Horse Bidder in consideration of its tendering the Stalking Horse Bid, including (a) a break-up fee of 1% of the cash consideration to be paid (the "Break-Up Fee") and (b) reimbursement of reasonable, documented and necessary out-of-pocket expenses incurred in connection with such Stalking Horse Bid not to exceed $150,000 (the "Expense Reimbursement" and, together with the Break-Up Fee, the "Bid Protections").

Any objections (each, a "Stalking Horse Objection") to the designation of a Stalking Horse Bidder, including any Bid Protections, pursuant to the terms and provisions of a Stalking Horse Agreement, must (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court within ten (10) calendar days after the filing of the relevant Notice of Stalking Horse Bidder, and served on (i) counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and (ii) co-counsel to the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (Arogoff@kramerlevin.com) and Nelson Mullins Riley & Scarborough, LLP, Attn: Lee B. Hart, Esq. (lee.hart@nelsonmullins.com).

If a timely Stalking Horse Objection is filed and served in accordance with the preceding paragraph, the proposed Bid Protections will not be deemed approved until the Stalking Horse Objection is resolved by agreement of the objecting party, the Trustee and the Secured Lender, or by order of the Court.

If no timely Stalking Horse Objection is filed and served with respect to an applicable Stalking Horse Agreement in accordance with the Bid Procedures, the Bid Protections shall be deemed approved without further order of the Court upon the expiration of the objection deadline.

No other bidder, nor any party making a credit bid (irrespective of whether it is a Stalking Horse Bidder) will be entitled to any Bid Protections or any other expense reimbursement, break-up fee, termination fee or any other similar fee or payment; provided, that neither the Bid Procedures Order nor the Bid Procedures shall impair or prejudice the rights of the Secured Lender to collect its fees in accordance with the Loan Agreement and related documents.

For the avoidance of doubt, the Trustee is not required to designate a Stalking Horse Bidder or Stalking Horse Bidders, and may proceed to open the Auction without first designating a Stalking Horse Bidder or Stalking Horse Bidders as set forth below.

## VIII.    **Auction**

If two or more Qualified Bids with respect to all of the Assets or individual Assets are received by the Bid Deadline (or the Secured Lender tenders a Bid as provided for herein), the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid with respect to such Assets. This determination shall take into account any factors the Trustee (in consultation with the Consultation Parties) reasonably deems relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following: (a) the amount and nature of the cash consideration and assumed liabilities; (b) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder; (c) the extent to which such modifications or provisions are likely to delay closing of the Sale of the Assets and the cost to the estate of such modifications or delay, and whether such modifications increase the risk of non-consummation; (d) which Assets the Qualified Bid covers and the likelihood that any other potential bidders would have interest in separately acquiring remaining Assets; (e) the total consideration to be received by the estate; (f) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (g) the net benefit to the estate, taking into account, if applicable, any Stalking Horse Bidder's right to any Break-Up Fee or Expense Reimbursement or similar fee; (h) the impact on employees, the number or percentage of employees to be retained post-closing, employee claims against the Debtor's estate; (i) in a Sale seeking to acquire only certain Assets, the execution risk and additional costs related to separate documentation regarding the sale(s), if any, of the remaining Assets; and (j) any other qualitative or quantitative factor the Trustee deems reasonably appropriate under the circumstances (collectively, the "Bid Assessment Criteria").

If two or more Qualified Bids are not received by the Bid Deadline (or, in the case of the Secured Lender, as provided for herein), the Trustee may, after consulting with the Consultation Parties, determine not to conduct the Auction. If only one Qualified Bid with respect to a Sale is received by the Bid Deadline, the Trustee may, after consulting with the Consultation Parties, select the Potential Bidder Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder with respect

11

to the applicable Sale, provided that the Trustee may not select a Successful Bid that provides total cash consideration less than the maximum credit bid then available to the Secured Lender absent the prior written consent of the Secured Lender.

In the event that two or more Qualified Bids are submitted in accordance with these Bid Procedures, the Trustee shall conduct the Auction.  The **Auction will take place at 10:00 a.m. (prevailing Eastern Time) on December 6, 2022** (such date, or such other date allowed under these Bid Procedures as the Trustee may notify any Qualified Bidder who has submitted a Qualified Bid, and counsel to the Secured Lender, the "Auction Date") and be held at a location to be determined.  The Auction shall be recorded.  Only a Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidder or Stalking Horse Bidders) will be eligible to participate at the Auction, subject to such limitations as the Trustee may impose in good faith.  A reasonable number of representatives of the professional advisors of any Qualified Bidder will be permitted to attend and observe the Auction.  The Trustee may, in the exercise of his business judgment, with the consent of the Secured Lender, adjourn the Auction.

### A.  Auction Bid Submission Procedures

Auction bidding shall be subject to the following procedures:

a.  For a Qualifying Bid to be considered and in order for a Qualifying Bidder to further bid at the Auction, Qualifying Bidders must appear at the Auction, or through a duly authorized representative, unless alternative arrangements are agreed upon in advance by the Trustee.

b.  Only Qualifying Bidders shall be entitled to make any subsequent bids at the Auction.

c.  Bidding will commence with the announcement of the highest or best Qualifying Bid, which shall be determined solely by the Trustee in his business judgment, in consultation with the Consultation Parties.  Any Qualifying Bidder may then submit successive bids in minimum increments of no less than $500,000, provided that if a Stalking Horse Bidder is selected the initial overbid shall also include the Bid Protections (the "Minimum Overbid Amount").

d.  If one or more Qualifying Bids are received by the Trustee, each such Qualifying Bidder shall have the right to improve its respective bid at the Auction.

e.  Other than a credit bid submitted by the Secured Lender, each successive bid submitted by any bidder at the Auction must contain an actual cash purchase price that exceeds the then existing highest bid by at least the Minimum Overbid Amount.  At commencement of the Auction, the Trustee may announce procedural and related rules governing the Auction, including time periods available to all Qualifying Bidders to

submit successive bid(s) in an amount equivalent to at least the Minimum Overbid Amount.

**B.  Selection of Highest or Otherwise Best Bid**

At the Auction, the Trustee, in consultation with the Consultation Parties, will be permitted to request best and final offers from the Qualified Bidders (including any Stalking Horse Bidders).  The Trustee, in consultation with the Consultation Parties, may identify the highest or otherwise best Qualified Bid(s) as the successful bid(s) (such Bid, the "Successful Bid," the Qualified Bidder submitting such Successful Bid, the "Successful Bidder" and the Qualified Bidder's purchase agreement, the "Successful Bidder Purchase Agreement") with respect to the Sale. The Auction shall close when a Successful Bidder submits fully executed sale and transaction documents memorializing the terms of the Successful Bid with respect to the Sale.  Notwithstanding anything herein to the contrary, the Trustee may, in his reasonable business judgment and in consultation with the Consultation Parties, at any time announce the conclusion of the Auction.

Promptly following the conclusion of the Auction, the Trustee shall announce the Successful Bid or Successful Bids and Successful Bidder or Successful Bidders with respect to the Sale and shall file with the Court notice of such Successful Bid or Successful Bids and Successful Bidder or Successful Bidders. The Trustee shall serve such notice by email (where available) and overnight mail (where email is unavailable) on counterparties to Assumed Contracts that are to be assumed and assigned in connection with such Successful Bid or Successful Bids.

For the avoidance of doubt, the Trustee may, with the prior consent of the Secured Lender (which may be granted or withheld at its discretion), withdraw the Assets at issue, from the Sale at any time before or during the Auction, and to make subsequent attempts to market the same, if the Trustee, with the prior consent of the Secured Lender (which may be granted or withheld at its discretion), determines that highest or otherwise best Qualified Bid is not acceptable to the Trustee.

**C.  Designation of Backup Bidder**

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted with respect to a Sale Transaction, the Qualified Bidder with the next highest or otherwise best Bid with respect to the Sale at the Auction, as determined by the Trustee (in consultation with the Consultation Parties), in the exercise of his business judgment, will be designated as the backup bidder (the "Backup Bidder") for the Sale. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submitted one or more Overbids at the applicable Auction, the Backup Bidder's final Overbid) (the "Backup Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is at least 60 calendar days after the date of entry of the Sale Order (the "Outside Backup Date"), or (ii) the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction with respect to the Assets that are the subject of the Successful

Bid, the Backup Bidder will be deemed to have the new prevailing Bid with respect to such Assets, and the Trustee will be authorized, but not required, without further order of the Court, to consummate the transaction with the Backup Bidder with respect to such Assets.

In the event that a Successful Bidder does not consummate the Sale and a Backup Bidder(s) has been previously identified, the Trustee shall (1) file and serve a Notice of Intent to Proceed with Backup Bid, and (2) schedule a telephonic status conference, which may be expedited, upon reasonable notice under the circumstances, at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory contracts that do not consent to the proposed assumption and assignment to the Backup Bidder(s) solely with respect to issues relating to adequate assurance. The Backup Bidder(s), as identified in the Notice of Successful Bidder, shall be approved at the Sale Hearing in all respects other than with respect to issues relating to adequate assurance, and affected landlords and other contract counterparties shall not be required to object to the Backup Bidder(s) on adequate assurance grounds prior to the filing and service of the Notice of Intent to Proceed with Backup Bid.

**IX.     Sale Hearing**

The Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Court approval.  A hearing to consider approval of the Successful Bid with respect to the Sale in the accordance with these Bid Procedures (the "Sale Hearing") is presently scheduled to take place on December [16],20, 2022, at [__]:2:00 [__].p.m. (**prevailing Eastern Time**).

At the Sale Hearing the Trustee will present the Successful Bid or Successful Bids to the Court for approval.

The Sale Hearing may be adjourned by the Trustee in consultation with the Consultation Parties and the Successful Bidder, from time to time, upon the filing of a notice of adjournment with the Court.

If no Backup Bidder is selected and the Successful Bidder fails to close, or if the Backup Bidder fails to close, the Trustee may submit a proposed order to the Court to approve the closing of a sale to the Secured Lender via a credit bid without further hearing provided that the Court has approved a credit bid by the Secured Lender as a Backup Bid.

**X.     Return of Good Faith Deposits**

The Good Faith Deposits of all Qualified Bidders (including any Stalking Horse Bidders) will be held in escrow by the Escrow Holder and while held in escrow will not become property of the estate unless released to the Trustee from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Court. The Escrow Holder will retain the Good Faith Deposits of the Successful Bidder until the closing of the sale transactions in respect of such Successful Bid unless otherwise ordered by the Court.  The Good Faith Deposits of the Qualified Bidders other than the

Successful Bidder will be returned no later than five (5) Business Days after the date of the Closing of the Sale. If the Backup Bidder is not designated the Successful Bidder with respect to a Sale Transaction, the Good Faith Deposit of such Backup Bidder, if any, shall be returned to the Backup Bidder on the date that is the earlier of 72 hours after (a) the closing of the applicable transaction with the Successful Bidder and (b) the Outside Backup Date with respect to such transaction. At the closing of the sale transactions contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that has accrued thereon.

XI.    "As Is, Where Is" Sale

Any Sale will be on an "as is, where is" basis and without representations or warranties of any kind by the Trustee, his representatives, or the estate, except and solely to the extent expressly set forth in the final purchase agreement approved by the Court. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making its bid and that it has relied solely upon its own independent review and investigation in making its bid. Except as may be set forth in the applicable Successful Bidder Purchase Agreement or the applicable Sale Order, the Assets are sold free and clear of any liens, claims, interests, or encumbrances of any kind of nature to the fullest extent permissible under the Bankruptcy Code, with such liens, claims, interests, or encumbrances to attach to the proceeds of sale paid directly to the Trustee and Secured Lender at closing (through a title or escrow agent, as applicable) in accordance with the Secured Lender Settlement, and the portion of which proceeds paid to the Trustee to be held by the Trustee pending distribution of such proceeds to holders of other liens in accordance with the priority of their respective liens and otherwise subject to orders entered by the Court in the Chapter 11 Case, including without limitation the Secured Lender Settlement, with the same validity and priority as such interests applied against the Assets.

XII.    The Consultation Parties

The Trustee shall consult with the Secured Lender and the Secured Lender's advisors (the "Consultation Parties") with respect to any Bids, as explicitly provided for in the Bid Procedures; *provided, however,* that the Trustee shall not be required to consult with the Secured Lender if the Secured Lender formally submits a credit bid at or prior to the Auction.

In addition, the Trustee will (a) provide the Consultation Parties (i) continued access to the Trustee's advisors, including access to sale and marketing materials, and consultation with the Trustee on the marketing process; and (ii) copies of all Bids and letters of intent as soon as reasonably practicable but in no event later than twenty-four (24) hours following the Trustee's receipt of the same; and (b) consult with the Consultation Parties with respect to all Bids received; *provided, however*, that if the Secured Lender submits a Bid, formally declaring its intention to be a Qualified Bidder, or elects at or prior to the Auction to be a Qualified Bidder, the Trustee shall not be required to provide such copies of Bids or letters of intent to the Secured Lender and

15

instead shall provide such information to the Secured Lender's counsel, on an advisors'-eyes-only basis, who shall keep such information confidential without the express prior written consent of the Trustee.

XIII.    **Supplementation of Bid Procedures**

The Trustee in his business judgment (in consultation with the Consultation Parties) may supplement these Bid Procedures with any terms or procedures that are reasonable and enhance the auction processes and/or clarifies any matters not currently delineated herein.

XIV.    **Trustee's Reservation of Rights**

Except as otherwise provided in the Purchase Agreement, any Stalking Horse Agreement, the Bid Procedures, or the Bid Procedures Order, the Trustee (in consultation with the Consultation Parties) further reserves the right as he may reasonably determine to be in the best interest of the estate and in the exercise of his fiduciary duties to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine whether to enter into a Stalking Horse Agreement; (d) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal with respect to the Sale; (e) reject any Bid that is (1) not in conformity with the requirements of the Bid Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bid Procedures, or (2) contrary to the best interests of the estate, creditors, interest holders, or parties-in-interest; (f) waive terms and conditions set forth herein otherwise applicable to all potential bidders other than the requirement that all bids be for cash and assumed liabilities other than the credit bids, and except as otherwise expressly set forth herein with respect to the Bids of the Secured Lender; (g) impose additional terms and conditions with respect to all potential bidders (except as otherwise expressly set forth herein with respect to the Bids of the Secured Lender; (h) modify the deadlines set forth herein subject to any ruling or order entered by the Court, or to accommodate the Court's calendar; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bid Procedures and implement additional procedural rules that the Trustee determines, in his business judgment, after consulting with the Consultation Parties, will better promote the goals of the bidding process and discharge the Trustee's fiduciary duties and are not inconsistent with any Court order.

Nothing in these Bid Procedures shall prejudice the substantive rights of any party, including with respect to the Trustee's evaluation of any Bid.

**Exhibit 2**

**The Sale Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                :

In re:                            :          Chapter 11
                                :

96 WYTHE ACQUISITION LLC,      :          Case No. 21-22108 (SHL)
                                :

                 Debtor.       :
                                :
-----------------------------------------------------------------x

## NOTICE OF AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    1.   On February 23, 2021 (the "<u>Petition Date</u>"), 96 Wythe Acquisition LLC (the "<u>Debtor</u>") commenced the above-captioned case (the "<u>Chapter 11 Case</u>") by filing a voluntary petition for relief under title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").  On May 31, 2022, the Court approved the appointment of Stephen S. Gray as the Chapter 11 Trustee (the "<u>Trustee</u>") for the Debtor.[1]

    2.   On [_____] [__],October 21, 2022, the Trustee filed a motion (the "<u>Motion</u>")[2] seeking, among other things, entry of an order (the "<u>Bid Procedures Order</u>") (a) approving the Auction (as defined below) and the bid procedures (the "<u>Bid Procedures</u>") to be used in connection with the sale (the "<u>Sale</u>") of the Debtor's assets, including the Property (collectively, the "<u>Assets</u>"); (b) establishing procedures for the Trustee to designate a stalking horse bidder or stalking horse bidders with respect to certain or all of the Assets (each a "<u>Stalking Horse Bidder</u>") and to enter into a stalking horse agreement or stalking horse agreements (each, a "<u>Stalking Horse Agreement</u>") with a Break-Up Fee and Expense Reimbursement (together, the "<u>Bid Protections</u>"); (c) establishing certain dates and deadlines for the Sale process, including scheduling an auction of the Assets (the "<u>Auction</u>"), if necessary, in accordance with the Bid Procedures, and the hearing with respect to the approval of the Sale (the "<u>Sale Hearing</u>"); (d) approving the form and manner of notice of the Auction and Sale Hearing; and (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "<u>Assumption and Assignment Procedures</u>") [Docket No. [__]].752].

---

[1]   Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591].  On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the appointment of Stephen S. Gray, as the Chapter 11 Trustee (the "<u>Trustee</u>") of the estate of the Debtor [Docket No. 593].

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or the Bid Procedures, as applicable.

3.  On [____] [__], 2022, the Court entered the Bid Procedures Order [Docket No. __]. The Bid Procedures provide as follows:

a. **Auction**.  If two or more Qualified Bids with respect to all of the Assets are received by the Bid Deadline, the Trustee will conduct the Auction to determine the highest or otherwise best Qualified Bid with respect to such Assets.  The **Auction will take place at 10:00 a.m. (prevailing Eastern Time) on December 6, 2022** (such date, or such other date allowed under these Bid Procedures as the Trustee may notify any Qualified Bidder who has submitted a Qualified Bid, and counsel to the Secured Lender, the "Auction Date") and be held at a location to be determined.  The Auction shall be recorded.  Only a Qualified Bidder that has submitted a Qualified Bid (including any Stalking Horse Bidder or Stalking Horse Bidders) will be eligible to participate at the Auction, subject to such limitations as the Trustee may impose in good faith. A reasonable number of representatives of the professional advisors of any Qualified Bidder will be permitted to attend and observe the Auction.  The Trustee may, in the exercise of his business judgment, adjourn the Auction. Any Qualified Bidder that wishes to take part in this process and submit a bid for the Assets must submit their competing Bid prior to the Bid Deadline and in accordance with the Bid Procedures.  If two or more Qualified Bids are not received by the Bid Deadline, the Trustee may, after consulting with the Consultation Parties, determine not to conduct the Auction.  If only one Qualified Bid with respect to a Sale is received by the Bid Deadline, the Trustee may, after consulting with the Consultation Parties, select the Potential Bidder Purchase Agreement or Stalking Horse Agreement, as applicable, of such Qualified Bidder to be the Successful Bid and such Qualified Bidder shall be the Successful Bidder with respect to the applicable Sale.

b. **Sale Hearing**.  The hearing to consider approval of the Successful Bid with respect to the Sale in accordance with the Bid Procedures (the "Sale Hearing") is scheduled to take place on **[December] [16], 20, 2022 at [__]:[__] [_].2:00 p.m. (prevailing Eastern Time).**  At the Sale Hearing, the Trustee will present the Successful Bid or Successful Bids to the Court for approval.  The Sale Hearing may be adjourned by the Trustee in consultation with the Consultation Parties and the Successful Bidder, from time to time, upon the filing of a notice of adjournment with the Court.

c. **Sale Objection Deadlines**.  Objections, if any, to the Sale of the Assets free and clear of all liens, claims, interests, and encumbrances must:  (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of this Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than (i) **December 212, 2022 at 45:00 p.m. (prevailing Eastern Time)**, with respect to the proposed Sale of the Assets, or (ii) **December 1216, 2022 at 4:00 p.m. (prevailing Eastern Time)** with respect to the Sale of any Assets, and served on: (i) counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com); and (ii)  co-counsel to

the Secured Lender, Kramer Levin Naftalis & Frankel LLP, Attn.: Adam C. Rogoff, Esq. (Arogoff@kramerlevin.com) and Nelson Mullins Riley & Scarborough, LLP, Attn.: Lee B. Hart, Esq. (lee.hart@nelsonmullins.com). Unless an objection is timely served and filed in accordance with this notice, it may not be considered by the Court and the Court may grant the relief requested without further hearing and notice.

4. **Key Dates and Deadlines**. The key dates for the Sale process are as follows:

| Key Event | Deadline |
|---|---|
| Bid Deadline | ~~Friday~~Monday, December ~~2~~12, 2022 at ~~4~~5:00 p.m. (ET) |
| Sale Objection Deadline | ~~Friday~~Monday, December ~~2~~12, 2022 at ~~4~~5:00 p.m. (ET) |
| Proposed Assumption / Cure Amounts Objection Deadline | ~~Friday~~Monday, December ~~2~~12, 2022 at ~~4~~5:00 p.m. (ET) |
| Deadline for Trustee to notify bidders of their status as Qualified Bidders | ~~Monday~~Tuesday, December ~~5~~13, 2022 at 12:00 p.m. (ET) |
| Auction (if necessary) | ~~Tuesday~~Wednesday, December ~~6~~14, 2022 at ~~10~~11:00 a.m. (ET) |
| File Notice of Successful Bidder | Thursday, December ~~8~~15, 2022 at 4:00 p.m. (ET) |
| Supplemental Sale Objection Deadline | ~~Monday~~Friday, December ~~12~~16, 2022 at 4:00 p.m. (ET) |
| Adequate Assurance of Future Performance Objection Deadline | ~~Monday~~Friday, December ~~12~~16, 2022 at 4:00 p.m. (ET) |
| Sale Briefing and any Replies | ~~Thursday~~Monday, December ~~15~~19, 2022 at 12:00 p.m. (ET) |
| Sale Hearing | ~~Friday~~Tuesday, December ~~16~~20, 2022 at ~~[____]~~ ~~[__].~~2:00 p.m. (ET) |
| Deadline for Sale Closing | Friday, December 30, 2022 at [____] [__].m. |

[*Concludes on Following Page*]

5. **Conclusion**.  This notice (the "Sale Notice") and any Sale Hearing are subject to the fuller terms and conditions of the Motion and the Bid Procedures Order, which shall control in the event of any conflict, and the Trustee encourages parties in interest to review such documents in their entirety.  Parties interested in receiving more information regarding the Sale of the Debtor's Assets or copies of any related document, including the Motion or the Bid Procedures Order, may make a written request to counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com).  In addition, copies of the Motion, the Bid Procedures Order, and this Sale Notice can be found on the Court's website at https://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

DATED:  New York, New York
         [_____] [___], 2022

                                        STEPHEN S. GRAY
                                        Not Individually But Solely in His
                                        Capacity as Chapter 11 Trustee
                                        By His Attorneys,
                                        TOGUT, SEGAL & SEGAL LLP
                                        By:

                                        *DRAFT*
                                        ALBERT TOGUT
                                        FRANK A. OSWALD
                                        BRYAN M. KOTLIAR
                                        AMANDA C. GLAUBACH
                                        One Penn Plaza, Suite 3335
                                        New York, New York 10119
                                        (212) 594-5000

## Exhibit 3

## Contract Assumption Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                            :
In re:                                                      :          Chapter 11
                                                            :
96 WYTHE ACQUISITION LLC,                                   :          Case No. 21-22108 (SHL)
                                                            :
                              Debtor.                       :
                                                            :
-----------------------------------------------------------------x

## NOTICE OF PROPOSED ASSUMPTION
## AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS

---

**PLEASE TAKE NOTICE OF THE FOLLOWING DEADLINES:**

**Cure Objection Deadline:** On or before **December 2~~1~~2, 2022** at 4~~5~~:00 (**prevailing Eastern Time**), or such deadline set forth in the applicable Supplemental Assumption Notice.

Deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder adequate assurance of future performance of the applicable Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be **December 12~~16~~, 2022 at 4:00 p.m. (prevailing Eastern Time)** (the "Supplemental Sale Objection Deadline").

---

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1. On February 23, 2021 (the "Petition Date"), 96 Wythe Acquisition LLC (the "Debtor") commenced the above-captioned case (the "Chapter 11 Case") by filing a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). On May 31, 2022, the Court approved the appointment of Stephen S. Gray as the Chapter 11 Trustee (the "Trustee") for the Debtor.[1]

2. On [_____] [__],October 21, 2022, the Trustee filed a motion (the "Motion")[2] seeking, among other things, entry of an order (the "Bid Procedures Order") (a) approving the Auction (as defined below) and the bid procedures (the "Bid Procedures") to be

---

[1]   Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591]. On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Docket No. 592] and filed an application for an order approving the appointment of Stephen S. Gray, as the Chapter 11 Trustee (the "Trustee") of the estate of the Debtor [Docket No. 593].

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or the Bidding Procedures, as applicable.

used in connection with the sale (the "Sale") of the Debtor's assets, including the Property (collectively, the "Assets"); (b) establishing procedures for the Trustee to designate a stalking horse bidder or stalking horse bidders with respect to certain or all of the assets (each a "Stalking Horse Bidder") and to enter into a stalking horse agreement or stalking horse agreements (each, a "Stalking Horse Agreement") with a Break-Up Fee and Expense Reimbursement (together, the "Bid Protections"); (c) establishing certain dates and deadlines for the Sale process, including scheduling an auction of the Assets (the "Auction"), if necessary, in accordance with the Bid Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"); (d) approving the form and manner of notice of the Auction and Sale Hearing; and (e) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "Assumption and Assignment Procedures") [Docket No. [__]].752].

3. On [_____] [__], 2022, the Court entered the Bid Procedures Order [Docket No. [__]. Pursuant to the Bid Procedures Order, the Trustee hereby provides notice that the Debtor is seeking to assume and assign to a Successful Bidder or Successful Bidders in connection with the Sale the executory contracts or unexpired leases (each, an "Assigned Contract") listed on **Exhibit A** attached hereto.

4. If the Trustee assumes and assigns to a Successful Bidder or Successful Bidders an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, such Successful Bidder or Successful Bidders will pay you the amount the Trustee's records reflect is owing for prepetition arrearages as set forth on **Exhibit A** (the "Cure Payment"). The Trustee's records reflect that all postpetition amounts owing under your Assigned Contract have been paid and will continue to be paid until the assumption and assignment of the Assigned Contract, and that other than the Cure Payment, there are no defaults under the Assigned Contract. Cure Payment amounts that include postpetition balances that are paid shall be reduced accordingly.

5. The Trustee's inclusion of an executory contract or unexpired lease as an Assigned Contract on Exhibit A is not a guarantee that such executory contract or unexpired lease will ultimately be assumed and assigned to any Successful Bidder or Successful Bidders. Should it be determined that an Assigned Contract will not be assumed and assigned, the Trustee shall notify such party to the Assigned Contract in writing of such decision.

6. Under the terms of the Bid Procedures Order, the Trustee may modify the list of Assumed Contracts on **Exhibit A** until consummation of the Sale, and the Trustee reserves the right, but only in accordance with the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, as applicable, or as otherwise agreed by the Trustee and the Successful Bidder or Successful Bidders, at any time before the deadline for designation of additional Assigned Contracts or removal of potentially Assigned Contracts set forth in the Successful Bidder Purchase Agreement or any Stalking Horse Agreement, to (i) supplement the list of Assigned Contracts with previously omitted executory contracts, (ii) remove Assigned Contracts from the list of executory contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in

connection with a Sale, or (iii) modify the previously stated Cure Payment associated with any Assigned Contracts. In the event the Trustee exercises any of these reserved rights, the Trustee will promptly serve a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such contracts and their counsel of record, if any, and the Consultation Parties; *provided, however,* the Trustee may not add an executory contract to the list of Assigned Contracts that has been previously rejected by the Trustee by order of the Court. Each Supplemental Assumption Notice will include the same information with respect to the list of Assigned Contracts that was included in the Contract Assumption Notice, or in the event of removal, information required in a Removal Notice. Any Supplemental Assumption Notice will be served as soon as reasonably practicable following the Successful Bidder's identification of any such omissions, removals, or modifications to any Assigned Contracts, but not later than 24 hours following notice to the Trustee of such omissions, removals, or modifications.

7.  Any objection to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actual received by counsel to the Trustee and counsel to the applicable Successful Bidder (if such counsel is known), as applicable, on or before **December 2̶12, 2022 at 4̶5:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline")**, or such deadline set forth in the applicable Supplemental Assumption Notice. Notwithstanding anything to the contrary in these Assumption and Assignment Procedures, if the Trustee makes any reduction to a proposed Cure Payment or designates any Additional Assigned Contracts, the Trustee will provide at least seven days' notice of any applicable Cure Objection Deadline if the relevant Contract Assumption Notice of Supplemental Assumption Notice is served by email or overnight mail, and at least ten days' notice of any applicable Cure Objection Deadline if the relevant Contract Assumption Notice of Supplemental Assumption Notice is served by first class mail.

8.  The deadline for objections to the proposed assumption and assignment of an Assigned Contract *solely* with respect to (i) the identity of the Successful Bidder or Successful Bidders or (ii) adequate assurance of future performance provided by the Successful Bidder or Successful Bidders shall be the Supplemental Sale Objection Deadline. Any objections must (1) be in writing, (2) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (3) state with specificity the nature of the objection, and, if the objection pertains to the proposed amount of the Cure Payment, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof.

9.  If an objection to the Cure Payment or assumption and assignment is timely filed and not resolved by the parties, a hearing will take place at the Sale Hearing at

[__]:[__] [__]2:00 p.m. (prevailing Eastern Time) on December [16]20, 2022, or at a later hearing, as determined by the Trustee. A hearing regarding the Cure Payment, if any, may be continued at the discretion of the Trustee and the applicable Successful Bidder or Successful Bidders until after the closing of the Sale.

10. Any party failing to timely file an objection to the proposed Cure Payment, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Contract Assumption Notice or Supplemental Assumption Notice, or the Sale is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the Assigned Contract, the Additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder or Successful Bidders for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Trustee and the Successful Bidder or Successful Bidders, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

11. After the Auction, the Trustee will file and serve as set forth in the Bid Procedures, a notice that identifies the Successful Bidder or Successful Bidders. The Trustee or any Successful Bidder reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Exhibit A hereto. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on Exhibit A hereto (a) shall not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of section 365 of the Bankruptcy Code; and (b) shall be subject to the Trustee's or any Successful Bidder's right to conduct further confirmatory diligence with respect to the Cure Payment of each Assigned Contract and to modify such Cure Payment accordingly. In the event that the Trustee or the Successful Bidder determines that your Cure Payment should be modified, you will receive a notice, which will provide for additional time to object to such modification.

12. Any party desiring to receive any notices served by the Trustee in connection with the Sale process may make a written request to counsel to the Trustee, Togut, Segal & Segal LLP, Attn.: Frank A. Oswald, Esq. (frankoswald@teamtogut.com) and Amanda C. Glaubach, Esq. (aglaubach@teamtogut.com). In addition, copies of the Motion, the Bid Procedures Order, and this Sale Notice can be found on the Court's website at https://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

13. Counterparties to any Assigned Contracts may submit their email addresses to the Trustee's counsel, pursuant to paragraph 12 hereof to receive service via email of any of the following, to the extent so requested by email:

a.  Upon the designation of any Stalking Horse Bidder, (i) the identity of any such Stalking Horse Bidder, (ii) whether the counterparty's Assigned Contract is contemplated to be assumed and assigned under such Stalking Horse Agreement, and (iii) any such Stalking Horse Bidder's non-confidential financial information within 24 hours of entry into any such Stalking Horse Agreement; *provided* that any Stalking Horse Bidder may be permitted to add or remove Assigned Contracts under the applicable Stalking Horse Agreement pursuant to the Assumption Procedures.

b.  The identity of all Qualified Bidders that submit Bids by the Bid Deadline, by no later than [__]:[__] p.m. (prevailing Eastern Time) on [___] [__], 2022, and in all events as soon as practicable after they are determined by the Trustee to be a Qualified Bidder, but no more than 12 hours after such determination; along with (ii) any non-confidential financial information included with the applicable Qualified Bid; and (iii) only if the Qualified Bidder agrees, a contact email address for each Qualified Bidder for the contract counterparty to be able to use to contact such Qualified Bidder if they have any questions for the Qualified Bidder; and

c.  (i) the identity of any Successful Bidder, (ii) whether the counterparty's Assigned Contract is contemplated to be assumed and assigned under any Successful Bidder Purchase Agreement if and when known, and (iii) any non-confidential financial information from any such Successful Bidder as soon as practicable after the Auction, but no later than [__]:[__] (prevailing Eastern Time) on [___] [__], 2022.

*[Concludes on Following Page]*

DATED:  New York, New York
          [_____] [___], 2022

                         STEPHEN S. GRAY
                         Not Individually But Solely in His
                         Capacity as Chapter 11 Trustee
                         By His Attorneys,
                         TOGUT, SEGAL & SEGAL LLP
                         By:

                         *DRAFT*_____
                         ALBERT TOGUT
                         FRANK A. OSWALD
                         BRYAN M. KOTLIAR
                         AMANDA C. GLAUBACH
                         One Penn Plaza, Suite 3335
                         New York, New York 10119
                         (212) 594-5000