TOGUT, SEGAL & SEGAL LLP

ATTORNEYS AT LAW

ONE PENN PLAZA

NEW YORK, NEW YORK 10119

———

(212) 594-5000

NEIL BERGER
NEILBERGER@TEAMTOGUT.COM

December 2, 2022

**VIA EMAIL and ECF**

Honorable Sean H. Lane
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

Re:     *In re 96 Wythe Acquisition LLC*
        <u>Bankr. Case No. 21-22108 (SHL)</u>

Dear Judge Lane:

We represent Stephen S. Gray, not individually, but solely in his capacity as the Chapter 11 Trustee (the "<u>Trustee</u>") of 96 Wythe Acquisition LLC (the "<u>Debtor</u>") in the above-referenced chapter 11 case (the "<u>Chapter 11 Case</u>").  We write to respectfully request a conference concerning a dispute arising out of the Trustee's September 1, 2022 subpoena (the "<u>Subpoena</u>") issued to Mayer Brown LLP ("<u>Mayer Brown</u>*")* pursuant to this Court's August 8, 2022 *Order Authorizing Discovery Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "<u>Rule 2004 Order</u>") [Dkt. No. 647] that is impeding the Trustee's efforts to discharge his duties.

By way of background, prior to the Trustee's appointment by the Court, Mayer Brown served as the Debtor's lead bankruptcy counsel.  In connection with its prior representation, Mayer Brown has filed a final fee application in the Chapter 11 Case seeking payment of more than $6.5 million in legal fees and expenses, which remains pending [Dkt. No. 795].

Earlier in this case, the Court appointed Eric Huebscher (the "<u>Examiner</u>") to investigate and file a report with the Court regarding transactions that might give rise to potential claims by the Debtor's estate [Dkt. No. 224].  The Examiner noted in two reports[1] that his investigative efforts were frustrated by the Debtor's principals Michael Lichtenstein ("<u>Lichtenstein</u>") and Toby Moskovits ("<u>Moskovits</u>" and, together with Lichtenstein, the "<u>Principals</u>") and the Debtor's counsel, Mayer Brown [Dkt. Nos. 418 (the "<u>Examiner Report</u>") and 465 ("<u>Supplemental Report</u>")].  Specifically, the Examiner described how his investigation had been "significantly constrained by the

---

[1]     The Examiner filed a "Supplemental Report and Rebuttal" after the Principals and Mayer Brown responded to his initial report with a "Counter Report and Response" [Dkt. Nos. 420 and 465].

TOGUT, SEGAL & SEGAL LLP

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 2

litigious conduct undertaken on behalf of the Principals"—including litigation concerning the permissible scope of the Examiner's investigation—and described a "concerted effort designed to thwart the investigation and conceal critical information." Suppl. Report at 2, 8; *see* Examiner Report at 10-11, 26-29.  The Examiner ultimately concluded that "[o]verwhelming evidence exists to support continuation of the investigation by the Examiner or others."  Suppl. Report at 8.

The Trustee is continuing this investigation, including into the Debtor's potential causes of action and potential objections to proofs of claim filed against the Debtor's estate—which the Bankruptcy Code requires him to do, *see* 11 U.S.C. § 704(a)— pursuant to the authority the Court granted to him in the Rule 2004 Order.  For purposes of the instant dispute, the Trustee is investigating Mayer Brown's prior representation of the Debtor, and seeks to discover whether Mayer Brown had conflicts of interest that could form the bases of objections to Mayer Brown's $6.5 million administrative-priority claim.  The Trustee has cause to investigate Mayer Brown based upon the Examiner Report, the Supplemental Report, and the United States Trustee's ("UST") pending motion seeking to disqualify Mayer Brown in this case [Dkt. No. 275] (the "Motion to Disqualify"), particularly since the magnitude of Mayer Brown's administrative claim could impact a plan-confirmation process in the Chapter 11 Case.

In his Motion to Disqualify, the UST noted that the same Mayer Brown lead attorney representing the Debtor in the Chapter 11 Case simultaneously represented another entity wholly owned by the Principals, 286 Rider Ave. Development, LLC ("286 Development"), in another bankruptcy case, and that Mayer Brown did not initially disclose this representation when it filed its retention application.  While Judge Drain concluded at the January 27, 2022 initial hearing on the Motion to Disqualify that he saw no "basis for disqualifying [Mayer Brown] *on this record*" and decided to adjourn the motion "*until [he could] see what . . . the Examiner has*[,]" Judge Drain also said that "if there's a transfer between the . . . client in the other case and the Debtor, that's . . . a much more serious issue" and that "it may be that there would be additional allegations supported by sufficient evidence, which . . . would support either disqualification or some reduction in fees" [Dkt. No. 365 at 30-31, 37, 44].

Since Judge Drain adjourned the Motion to Disqualify, three notable developments have taken place.

First, the Examiner completed his investigation and issued his report on February 28, 2022, concluding that:  (1) "the investigation uncovered evidence of a complex scheme to divert and siphon substantial amounts of money from the Debtor, through a labyrinth of banking relationships between the Debtor and [the Debtor's managing agent's Williamsburg Hotel BK, LLC's (the "Manager")], and other entities under common ownership and control of" the Principals;  (2) the Debtor provided no explanation or documentation regarding over $105,675 that was transferred from the Debtor's or the Manager's bank accounts to 286 Development's wholly-owned subsidiary, 286 Rider Ave Acquisition, LLC ("286 Rider"), during the four years before the Petition Date in the instant case;  and, as discussed above, (3) Mayer Brown played a central role in the Principals' obstruction of his investigation.  *See* Examiner Report at 6,

TOGUT, SEGAL & SEGAL LLP

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 3

21; Suppl. Report at 8.  Also as noted above, the Examiner concluded that
"[o]verwhelming evidence exists to support continuation of the investigation by the
Examiner or others."  Suppl. Report at 8.

Second, the Trustee was appointed on May 27, 2022 [Dkt. No. 591], and
the Trustee and his professionals have continued the investigation into the Debtor's
affairs.  Based upon his investigation to date, the Trustee currently believes that
approximately $171,295 was paid from the Manager to 286 Rider, and $50,000 was paid
from 286 Rider to the Manager, during the year preceding the Petition Date in this case.
To date, no explanation has been given concerning these transactions, or any accounting
provided concerning the missing funds.[2]

And third, on August 8, 2022, the Court granted the Trustee the authority
to conduct a Rule 2004 investigation that, importantly, allows the Trustee to waive "any
applicable privilege in favor of the Debtor[.]"  Rule 2004 Order at 2.  The Trustee can
therefore go deeper than the Examiner could, and is authorized to review otherwise-
privileged documents.

The Trustee served the Subpoena to Mayer Brown pursuant to the Rule
2004 Order on September 1, 2022, an affidavit of service of which appears on the docket
at [Dkt. No. 708].  Thereafter, the Trustee and Mayer Brown negotiated and agreed
upon a number of search parameters to reduce Mayer Brown's burden in connection
with the production of electronically stored information, including:  (1) a limiting date
range;  (2) a limiting list of custodians;  and (3) a limiting list of search terms.  Pursuant
to those agreements, Mayer Brown has made a number of rolling productions of
documents and communications to the Trustee over the past three months.

But there are two categories of documents that Mayer Brown has refused
to produce:  (1) documents or communications that contain certain terms that, in Mayer
Brown's sole judgment, render those documents and communications "not relevant" to
the Trustee's Rule 2004 investigation (the "Excluded Documents");  and (2) documents
or communications that are internal to Mayer Brown, *i.e.*, have been communicated (if
at all) between and among Mayer Brown personnel alone (the "Internal Documents"
and, collectively with the Excluded Documents, the "Disputed Documents").  As
discussed below, the Trustee believes that the Disputed Documents that are responsive
to the Trustee's Subpoena must be produced, and seeks the Court's confirmation of the
same.

**Excluded Documents**

On October 3, 2022, Mayer Brown told the Trustee: "we are excluding
certain issues from our searches including other matters that are privileged and
confidential[.]"  The Trustee asked Mayer Brown to explain its methodology for

---

[2]    The Manager and its affiliates have not yet fully complied with subpoenas served to them by the
Trustee.

TOGUT, SEGAL & SEGAL LLP

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 4

excluding "issues" from a document production.  Ultimately, Mayer Brown explained
that they were running exclusionary search terms through the otherwise agreed-upon
pool of documents and communications—*i.e.*, documents and communications between
the agreed-upon custodians in the agreed-upon timeframe that hit upon the agreed-
upon search terms—and, if a document or communication in that pool also hit on one of
the exclusionary search terms that Mayer Brown unilaterally selected, the document or
communication would be removed from the pool and would not be produced to the
Trustee.

        The Trustee told Mayer Brown that using such exclusionary search terms
is unheard of and improper, and that the Excluded Documents—which Mayer Brown
has said include 7,967 documents and communications—must be produced to the
Trustee if responsive to the Subpoena.  Further, the Trustee expressed his view that if
another client's privileged or confidential information were to appear in a responsive
document or communication—which since responsive also contains information, *e.g.*,
"concerning the Debtor[,]" and is thus likely to evince a conflict of interest—the Rule
2004 Order and the *Stipulated Confidentiality and Protective Order* [Dkt. No. 128] (the
"Confidentiality Order") set forth the Court's directions for how to address those
concerns (*e.g.*, with privilege logs and appropriate confidentiality designations), not the
wholesale exclusion of the Excluded Documents from the Rule 2004 Order's reach.
Mayer Brown has continued to refuse to produce the Excluded Documents.

        Simply put, the Trustee is aware of no authority supporting Mayer
Brown's proposed course, and would be surprised to learn that any court allowed a
party served with a Rule 2004 subpoena to unilaterally control the scope of its discovery
obligations.  Rather, this Court has recently rejected such attempts,[3] and the Court
should do the same in this instance.

### Internal Documents

        Mayer Brown first expressed its unwillingness to produce Internal
Documents on October 3, 2022.  At various times since that date, Mayer Brown has
complained that by seeking Internal Documents, the Trustee:

> (1) impermissibly seeks privileged and confidential documents and
>     communications;
>
> (2) impermissibly seeks "irrelevant and objectionable" documents and
>     communications and has not "explain[ed] why such internal emails are
>     necessary" to the Trustee;  and

---

[3]    *See Anderson v. Credit One Bank, N.A. (In re Anderson)*, 641 B.R. 1, 29-30 (Bankr. S.D.N.Y. 2022)
       (discussing a recent Rule 2004 dispute in which a subpoenaed party "contended that it should not
       have to provide discovery that was 'irrelevant'" and "took the position that the requested documents
       would be limited" in the subpoenaed party's unilateral discretion, noting that Judge Drain "found
       [the subpoenaed party]'s narrowing of the [document] request . . . to be 'just ridiculous'").

Togut, Segal & Segal llp

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 5

     (3) has made no efforts to reduce the burden on Mayer Brown of producing Internal Documents.

     The Trustee has consistently responded by explaining his positions regarding the foregoing complaints:

     (1) The Trustee only seeks Internal Documents that are responsive to the Subpoena; the Debtor's privilege is waived to the extent necessary to secure the Internal Documents sought; and the Rule 2004 Order and Confidentiality Order set forth the Court's instructions for handling privilege and confidentiality issues;

     (2) The Trustee seeks to determine the nature and extent of the Debtor's bankruptcy estate, including by investigating whether he can bring causes of action against Mayer Brown or object to Mayer Brown's fees based upon alleged conflicts of interest; the only way to determine whether those conflicts existed is to comprehensively review those Internal Documents that are responsive, which are likely to be the only documentary evidence of such conflicts; Mayer Brown cannot limit its discovery obligations by unilaterally deciding what is "irrelevant"[4]; and Mayer Brown's demands that the Trustee articulate more detailed reasons for seeking the Internal Documents before the Trustee has the benefit of discovery impermissibly puts the cart before the horse[5]; and

     (3) The burden of producing the Internal Documents does not outweigh the Trustee's statutorily imposed duty to investigate Mayer Brown's representation of the Debtor for the benefit of the Debtor's estate, particularly in light of Mayer Brown's $6.5+ million claim against that estate.

     Since the parties articulated their respective views regarding the foregoing, Mayer Brown has produced no authority standing for the proposition that the Internal Documents can be shielded from discovery *in toto*, as internal documents and communications are clearly within Rule 2004's reach.[6] Instead, Mayer Brown has repeatedly claimed that: (1) Internal Documents <u>might be</u> subject to the work-product

---

[4]    *See id.*

[5]    *See In re Michalski*, 449 B.R. 273, 281 (Bankr. N.D. Ohio 2011) (holding that a party objecting to the UST's Rule 2004 subpoena "put the cart before the horse" by insisting that the UST had to "articulate a basis to dispute the [objecting party's] Proof of Claim before exercising his right to conduct a Rule 2004 examination[,]" noting: "A Rule 2004 examination is frequently used as a pre-litigation tool to determine sufficient facts to state a plausible claim for relief and, thus, withstand a motion to dismiss. If, prior to conducting a Rule 2004 examination, the UST (or any party in interest) had to specify the portions of the claim that were in dispute and articulate why such amounts were disputed, Rule 2004 would be rendered meaningless and moot.").

[6]    *See Anderson*, 641 B.R. at 29 (Judge Drain "made it clear that [the subpoenaed party] would have to provide [] internal communications" in response to the Rule 2004 subpoena there at issue).

TOGUT, SEGAL & SEGAL LLP

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 6

doctrine;  and (2) producing Internal Documents would be unduly burdensome while, as discussed below, engaging in a burdensome and unproductive back-and-forth in which Mayer Brown repeatedly declined the Trustee's requests that it substantiate the claimed burden.  And all of this has taken place while the clock has been running out on the Trustee's ability to use any responsive Internal Documents that might be produced, "render[ing the Rule 2004 Order] meaningless and moot."[7]

Regarding the work-product doctrine, the Trustee does not doubt that certain of the Internal Documents might generally implicate the federal work-product doctrine set forth by Federal Rule of Civil Procedure 26(b)(3).  However, the Court ordered in the Rule 2004 Order "that the production and examination required pursuant to this Order may not be withheld or refused based upon any applicable privilege in favor of the Debtor which, for cause shown in the Application, the Trustee, in his sole discretion, may waive to facilitate the turnover of any documents, communications, examinations or other forms of information to the Trustee[,]" Rule 2004 Order at 2, and the Trustee has told Mayer Brown that he has waived all applicable privileges that might otherwise shield the Internal Documents from discovery.  Further, the Trustee doubts that the work-product doctrine can be successfully invoked against him in these circumstances, since courts in the Second Circuit have held that the work-product doctrine cannot be invoked by an attorney to refuse discovery sought by the client for whose benefit the work product was created.[8]  But even assuming *arguendo* that Mayer Brown can avail itself of the work-product doctrine here, the Internal Documents that Mayer Brown believes meet the criteria for work-product protection— like any other privileged document—must be logged as provided in the Rule 2004 Order, rather than set aside as a class not subject to discovery.  *See* Rule 2004 Order at 3 (requiring privilege logs).  Were it otherwise, attorneys would have *carte blanche* to refuse to participate in discovery by unilaterally concluding that a group of documents need not be produced.  The Trustee respectfully asserts that this is not, and cannot be, the law.

Regarding burden, on October 21, 2022, the Trustee responded to Mayer Brown's claim that the burden of reviewing the Internal Documents would be "incredibly large[,]" stating:  "If the volume of documents to be reviewed are, as you say, 'incredibly large[,]' please deduplicate them against the documents that you've collected for the other searches and let us know that number.  If too voluminous, we are willing to discuss applying search terms to limit them."

Over a period of three weeks thereafter, Mayer Brown sent *eight more messages* to the Trustee protesting its unspecified burden, including unproductive

---

[7]   *Michalski, supra.*

[8]   *See Kleiman v. O'Neill*, Case No. 03-CV-3829 (ERK), 2008 WL 5582453, at *4 (E.D.N.Y. Dec. 30, 2008) (noting that the work-product doctrine under Federal Rule of Civil Procedure 26(b)(3) "'does not apply to the situation in which a client seeks access to documents or other tangible things created or amassed by his attorney during the course of the representation.'" (quoting *Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982)).

TOGUT, SEGAL & SEGAL LLP

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 7

speculations that, *e.g.*, the Internal Documents "would *likely* [amount to] *upwards of* 100,000 hits[.]"  After repeatedly insisting that Mayer Brown provide actual numbers without success, the Trustee suggested that Court intervention would be needed to resolve this dispute.  Finally, on November 12, 2021, Mayer Brown provided the numbers requested:  a total of 39,229 Internal Documents, which, when the agreed-upon limiting search terms applied to all of Mayer Brown's non-Internal Documents were applied to the Internal Documents, reduced the pool to 17,496 Internal Documents.

Within hours, the Trustee offered to limit the pool of Internal Documents to the 17,496 subset, provided that Mayer Brown would produce them quickly, noting that the Trustee was running out of time to complete his Rule 2004 investigation. Mayer Brown rejected the Trustee's offer, and instead suggested that the parties begin negotiating additional limiting search terms.  The Trustee asked Mayer Brown to confirm that it was unwilling to review and potentially produce the 17,496.  Mayer Brown responded with an assertion that "the Trustee has no real interest in a consensual resolution" and an allegation that the Trustee was operating in bad faith. This went too far, and now—regrettably—Mayer Brown's burden must be shared by the Court.

\*    \*    \*

Mayer Brown's strategy of delay is as obvious as it is obstructive to the Trustee's ability to conduct a Rule 2004 investigation for the benefit of the Debtor's estate.  It is also inconsistent with Mayer Brown's duties as an estate fiduciary, especially one that seeks payment of more than $6.5 million on an administrative-priority basis.

Plainly, Mayer Brown hopes to delay the production of the Disputed Documents as long as possible, in the hopes that the Trustee's marketing efforts to sell the Debtor's Hotel—well underway and set to conclude as early as the end of the year—obviates his need to investigate Mayer Brown's representation of the Debtor.  As in *Anderson*, where Judge Drain found that the subpoenaed party's refusal to produce internal documents and communications and improper attempt to unilaterally narrow the scope of its Rule 2004 obligations was "aimed to delay and thwart [the Trustee's Rule 2004] requests[,]"[9] Mayer Brown's strategy of delaying the production of the Disputed Documents aims to thwart the Trustee's performance of his statutory charge. The Trustee therefore respectfully requests that the Court direct Mayer Brown to produce those of the Disputed Documents that are responsive to the Trustee's Subpoena as soon as possible.

The Trustee respectfully requests that the Court schedule a telephonic conference during the week following the scheduled December 7, 2022 omnibus hearing in this Chapter 11 Case, or to address the parties' disputes regarding the Disputed Documents at that hearing.

---

9    *Anderson*, 641 B.R. at 29.

TOGUT, SEGAL & SEGAL LLP

Honorable Sean H. Lane
United States Bankruptcy Court
December 2, 2022
Page 8

In the interim, the Trustee will continue to confer with Mayer Brown to try to narrow the scope of their disagreements regarding the Disputed Documents.

Respectfully submitted,

TOGUT, SEGAL & SEGAL LLP
By:

_____ /s/ Neil Berger _____

cc:   Stephen S. Gray (via electronic mail)
      Albert Togut, Esq. (via electronic mail)
      Frank A. Oswald, Esq. (via electronic mail)
      Douglas Spelfogel, Esq. (via electronic mail)
      Derek Wright, Esq. (via electronic mail)
      Gregory Zipes, Esq. (via electronic mail)