

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
United States of America

T: +1 212.506.2151
F: +1 212.849.5973
mayerbrown.com

December 6, 2022

**_By Email and ECF_**

Hon. Sean H. Lane
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601-4140

Re:    ***In re: 96 Wythe Acquisition LLC,*** **Case No. 21-22108 (SHL)**

Dear Judge Lane:

We are writing in response to the Trustee's December 2, 2022 letter (the "Letter")[1] requesting a conference with the Court to address a purported discovery dispute related to the Trustee's Subpoena served on Mayer Brown. As an initial starting point, we feel it is important to alert the Court to the fact that Mayer Brown has been producing thousands of pages of documents, incurring substantial costs in so doing, and the Trustee takes issue with only two discrete issues. Fundamentally, the disputes are less about producing documents than the process in so gathering and reviewing the materials to efficiently provide fulsome and thorough responses, while attempting to manage burden and costs that the estate is not advancing as otherwise mandated. Fed. R. Civ. P. ("FRCP") 45.

Specifically, the Trustee submits an *eight-page* Letter asking the Court to address two discrete discovery issues (relating to certain exclusionary terms and internal documents discussed below), notwithstanding the fact that (i) Mayer Brown's document production is and has been ongoing with rolling productions over the past few months; (ii) to date, Mayer Brown has produced over 19,000 individual documents and over 184,000 total pages from custodial email files and work files, each page of which must be reviewed to prevent production of documents unrelated to the Debtor (and which may be subject to another client's privilege) and provide documents responsive to the requests; (iii) this week's rolling production will consist of approximately 5,600 additional documents; and (iv) the Trustee has *repeatedly* disregarded Mayer Brown's requests that the parties engage in standard production protocols of developing appropriate second-tier search terms to ensure rational protections from excessive and unnecessary production costs that can be avoided with reasonable care (and using appropriately tailored search terms).

As detailed below, the Trustee's requests are overly broad and burdensome, seeking, among other things, every piece of paper between the Mayer Brown timekeepers on this matter, regardless of whether it relates to other matters and clients or whether it is relevant to this matter. By seeking such extensive, and in many cases irrelevant and privileged documents, the Trustee

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Letter.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP

Hon. Sean H. Lane
December 6, 2022
Page 2

has not only imposed undue burden and expense on Mayer Brown (which the rules prohibit), but effectively, and improperly, asked the firm to violate its ethical and professional duties.

Although the Trustee states he is willing to meet and confer regarding discovery disputes, the Trustee, through his counsel, never would discuss Mayer Brown's proposed search terms, including whether and for what reason, if any, he finds them inappropriate or under-inclusive, and never proposed any additional or expansive (or alternative) terms – despite *multiple* requests by Mayer Brown to try and impose litigation-standard search parameters for gathering and reviewing electronically stored information ("ESI").  Nor did the Trustee confer with Mayer Brown regarding scheduling for his requested Court conference or briefing with respect to the Letter, which is effectively a (lengthy) motion seeking relief, and is now before the Court less than three business days after the Letter was filed (raising other concerns, such as notice issues, among other things).

Further, rather than limit the Letter to discovery issues, the Trustee also includes inaccurate assertions or characterizations regarding Mayer Brown and its actions in the Chapter 11 Case prior to the Trustee's appointment addressed below.  Those gratuitous or pejorative statements misstate the record and ignore Mayer Brown's exercise of its duty and obligations in providing substantial services to the estate in an effort to preserve value, save jobs and stabilize hotel operations during the unprecedented recovery from the devastating impact of the COVID-19 pandemic on the hospitality industry, for the benefit of all creditors and parties-in-interest.[2]

To be clear, Mayer Brown has engaged in fulsome cooperation on production of documents, and it is pleased to address the same with the Court; however, unfortunately, the Trustee's Letter grossly mischaracterizes both the two purported discovery issues *and* the prior proceedings before this Court.[3]  Indeed, against this backdrop – including Mayer Brown's massive, ongoing document production and repeated (unanswered) requests to discuss reasonable search parameters with the Trustee to reduce burden and costs to Mayer Brown (and the estate) – the Trustee's allegation that Mayer Brown "hopes to delay the production" is an unfortunate mischaracterization of the actual facts and substantial ongoing production.  Absent engagement by the Trustee on the standard protocols for ESI production, which would have avoided burdening the Court and expedited production, Mayer Brown will note that the Trustee fails to establish any entitlement to the over breadth of production beyond the reasonable steps Mayer Brown has already proposed and agreed to perform to capture the responsive materials so requested.  Perhaps most importantly, Mayer Brown proposed to run a correlation analysis on its search terms and responsive production which would show the successful hit rates using the search terms to allow the parties to evaluate further following production to ensure the validity of those search terms.

---

[2] Mayer Brown was not the legal counsel initially retained by the Debtor and which filed this bankruptcy case, and it was retained after substantially all of the actions giving rise to appointment of the Trustee.

[3] As described further below, such prior proceedings are irrelevant to any purported discovery issue, but appear to be raised by the Trustee here as an improper and premature argument related to Mayer Brown's administrative expense claim, despite the fact that the Trustee has yet to fully investigate or file any objection to that claim.

Mayer Brown LLP

Hon. Sean H. Lane
December 6, 2022
Page 3

This proposed back-stop process has been wholly ignored by the Trustee in his rush to engage the Court.

## TRUSTEE DISCOVERY REQUESTS

### *The Trustee's Broad Subpoena Imposes a Substantial Burden On Mayer Brown*

Specifically, the Subpoena includes extraordinarily broad requests seeking any and all documents in any way related to this bankruptcy case *and* all internal correspondence and documents between the five primary Mayer Brown custodians, including correspondence and documents from other unrelated and privileged client matters. It should be unsurprising to anyone that these five Mayer Brown custodians also concurrently worked on different, unrelated matters together, as well as independent matters. Such broad requests not only are improper, but impose a substantial burden and expense on Mayer Brown in order to collect, review and produce tens of thousands of documents from such custodians while preserving privilege due to other clients and matters and efficiently and cost-effectively culling the documents from which production should be obtained. After Mayer Brown timely filed its responses and objections to the Trustee's requests to protect its rights, including objections as to scope, relevance and burden, it immediately engaged in a robust meet and confer with the Trustee and constructively proposed reasonable search terms intended to target the documents relevant to the issues and purported needs identified by the Trustee. It should also be unsurprising that Mayer Brown is focused intently on trying to mitigate the overall burden and expense imposed on it, especially since no one can assure Mayer Brown that these costs will be reimbursed by the estate. As detailed below, Mayer Brown has repeatedly requested that the Trustee discuss the specific search terms proposed by Mayer Brown, or suggest alternative terms, but rather than engage in such discussions, the Trustee filed the Letter seeking Court intervention.

Further, we are concerned in that the Letter mischaracterizes the outstanding discovery issues and utterly ignores the reality of ongoing substantial production. Mayer Brown never "refused to produce" any category of documents, as the Trustee falsely states (Letter p. 3), but rather, it proposed search terms to narrow the scope, on which the Trustee has repeatedly refused to even engage to discuss, notwithstanding the requirement that the Trustee take steps to avoid imposing undue burden or expense on Mayer Brown. FRCP 45(d)(1) (incorporated herein by FRBP 9016). After the Trustee refused to engage (despite repeated entreaties by Mayer Brown to have such a discussion), Mayer Brown suggested proposed search terms, subject to (and in fact invited) any further input from the Trustee regarding such terms, and diligently proceeded to cull the materials, review and produce documents. Indeed, while the Trustee asserts Mayer Brown has refused to produce internal documents (Letter p. 3), that too is an untrue representation by the Trustee to this Court, as the Trustee was informed by Mayer Brown. After much discussion (detailed below), Mayer Brown has reviewed over 9,000 internal documents and will be producing those in its rolling production responsive to the Subpoena this week (in addition to the over 19,000 documents and 184,000 total pages produced to date). They would have been produced earlier

Hon. Sean H. Lane
December 6, 2022
Page 4

with cooperation in identifying the relevant search terms to implement a reasonable process for conducting the review of such materials.

### *Mayer Brown Proposed Terms Intended to Exclude Unrelated and/or Irrelevant Matters*

From the outset, Mayer Brown proposed standard and acceptable production methods for excluding unrelated and irrelevant matters from its search and collection in order to reduce its burden and expedite the production in response to the massive scope of the Subpoena. Specifically, after raising the issue in the parties' initial meet and confer conference and follow up correspondence, Mayer Brown provided its proposed methodology to apply specific exclusionary search terms intended to exclude documents from the entirely separate bankruptcy proceeding of 286 Rider Avenue Acquisition, LLC ("Acquisition") and related to creditor claim objections and related litigation that had nothing to do with the subject matter of the inquiry.[4]  The Trustee responded that he would consider such exclusionary terms subject to Mayer Brown providing "additional detail."  By way of example, there were sizeable third-party claims asserted against the estate (one by an adjacent property owner and a sizeable personal injury claim), which were involved in significant activity of Mayer Brown – none of which were relevant to any of the requests or issues articulated by the Trustee.  Mayer Brown proposed exclusionary terms intended to remove correspondence related to those two-party disputes from production burden.  Even though Mayer Brown provided all of the detail requested, the Trustee did not respond.  It wasn't until much later, on November 22, when counsel for the Trustee baldly stated: "[w]e've never agreed to your proposed exclusionary search terms…" after production had already commenced and was undergoing review.

By his Letter, the Trustee now claims that Mayer Brown has sought to "unilaterally control the scope of its discovery obligations" by applying such exclusionary terms.  Letter p. 4.  To be clear, Mayer Brown has never acted "unilaterally" in proposing and applying search terms, but has been completely transparent in providing reasonable proposed terms and requesting (repeatedly) for engagement from the Trustee in discussions regarding the same.[5]  However, to date, the Trustee has never explained (despite numerous requests) why the specific proposed exclusionary search terms are objectionable or what relevant documents, if any, would be improperly excluded by

---

[4] The proposed exclusionary search terms are Rider; Zurich American; Cohen & Gresser; NBE Plumbing; Grandfield; Mencia; Guarino; OES-Williamsburg; NYC Department of Finance; Ramirez; Town of Islip; Con Edison Company; National Grid; Fair Harbor; and New York State Department of Taxation.

[5] This is completely different from the facts in *Anderson v. Credit One Bank, N.A., (In re Anderson)*, 641 B.R. 1, 29-30 (Bankr. S.D.N.Y. 2022) relied on by the Trustee.  While the Trustee cites *Anderson* repeatedly for the proposition that a party may not "unilaterally control the scope of its discovery obligations," in *Anderson,* the subpoenaed party never proposed search terms as a means to narrow the scope of discovery as Mayer Brown did here, but simply refused to respond to discovery requests "based on arguments that it had either lost or that were inconsistent with the posture of the proceeding" and as the court put it, imposed its "unilateral view of the merits of the underlying dispute."  *Id*. at 29-31.  Such holding is inapposite, particularly where Mayer Brown has repeatedly requested that the Trustee engage in discussions as to appropriate search terms.

Mayer Brown LLP

Hon. Sean H. Lane
December 6, 2022
Page 5

applying such terms in Mayer Brown's efforts to reduce the document review burden. The Trustee has a duty (even under cases providing for production) to meet and confer and narrow its searches based upon relevancy, among other things, to reduce burden.[6] With respect to documents from the completely separate, irrelevant and privileged Acquisition case (which as described below do not relate to the Debtor), the Trustee argues that such documents should be collected, reviewed and if responsive, included on a privilege log. Letter p. 4. However, the Trustee unilaterally imposes this demand despite citing no authority to support such an obligation requiring a party responding to a subpoena to search documents from an entirely separate matter and provide a log of privileged documents from that matter. Nor does the Court's 2004 Order require this obligation, despite the Trustee's assertions to the contrary. *Id*. Indeed, the Trustee's attempt to expand the scope of its Subpoena to other privileged Mayer Brown client matters (as to which privileges the Trustee does not own nor control), necessarily creates the type of undue burden prohibited under the rules. With respect to the other terms, they address claimants in completely unrelated claim objections and related litigation (including litigation over insurance coverage issues and disputes concerning tort litigation as noted above, some of which have been settled successfully), which have no relevance to Mayer Brown or the Trustee's purported investigation regarding Mayer Brown (however baseless), and the Trustee has never stated differently.

***Mayer Brown Proposed Terms Intended to Target Only Those Internal Documents Relevant to the Trustee's Purported Need***

As described above, the Trustee initially requested *all* internal correspondence and documents between the five primary Mayer Brown custodians, including correspondence and documents from other, unrelated and privileged client matters, without regard to scope, relevance or responsiveness to the needs of the case. In short, the Trustee utterly ignores Federal Rule of Civil Procedure 26, which imposes such proportionality to the needs of the case restrictions. Specifically, the Trustee's counterproposals dated September 28 sought every document and communication between any of the five Mayer Brown custodians during the relevant time period regardless of whether it was a document or communication related to the current proceeding – *i.e.*, the Trustee did not agree to apply any case-specific search terms, including the 12 terms the parties agreed to apply to Mayer Brown's non-internal documents. Mayer Brown objected to such overly broad request, based on, among other things: (i) not proportional, (ii) relevance; (iii) Mayer Brown's ethical and professional obligations to

---

[6] As described above, FRCP 45(d)(1) requires that the Trustee avoid imposing undue burden on Mayer Brown. It is well-settled that "[w]hether a subpoena imposes an undue burden depends on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (*quoting United States v. Int'l Bus. Mach. Corp*., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). "Moreover, '[a]ny subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.'" *Id*. (*quoting Ireh v. Nassau Univ. Med. Ctr*., 2008 WL 4283344 at *5 (E.D.N.Y. Sept. 17, 2008)).

Mayer Brown LLP

Hon. Sean H. Lane
December 6, 2022
Page 6

maintain privilege and confidentiality with respect to other client matters; and (iv) the undue burden (including costs) in collecting, reviewing, producing and/or logging documents from entirely separate and privileged client matters.  In addition, Mayer Brown pointed to applicable authority recognizing an internal work product privilege, whereby courts have recognized that certain categories of internal law firm documents are protected in the same context where a client/trustee seeks documents from counsel, in the hopes of reigning in what was an exceptionally burdensome request.[7]

*Finally*, after weeks of discussion, and confirming that the Trustee's request resulted in nearly 40,000 total internal documents, on November 8, 2022, the Trustee requested, *for the first time*, that Mayer Brown apply the same 12 case-specific search terms to this set of internal documents that had previously been applied to Mayer Brown's non-internal documents, and agreed to by the Trustee.  It is disappointing that the Trustee was fully aware that Mayer Brown wanted to apply such search terms to cull internal documents for production, well before the Trustee baldly alleges before this Court that Mayer Brown was "refusing" to produce internal documents.  After applying these terms, 17,496 documents remained, which as Mayer Brown has repeatedly described to the Trustee, will require substantial additional time to review at costs that will likely exceed $100,000 (on top of the significant time and costs associated with prior review and productions).  To mitigate that burden, Mayer Brown proposed that the parties discuss a set of second-tier search terms intended to target the specific (and sole) issue identified by the Trustee as the purported basis for its request for such internal documents in the meet and confer discussions – *i.e.*, investigating whether any alleged conflict of interest existed related to Mayer Brown's representation of the Debtor (which Mayer Brown disputes as baseless).  Letter p. 5.  After the Trustee failed to respond to Mayer Brown's multiple requests to discuss such terms and to avoid further delay, Mayer Brown proposed and ran 12 second-tier search terms (as updated) within the pool of 17,496 remaining internal documents.[8]  As Mayer Brown advised the Trustee on November 18, those terms resulted in 9,691 hits, which Mayer Brown agreed to review and

---

[7] *See, e.g.*, *Lippe v. Bairnco Corp.,* No. 96-7600, 1998 U.S. Dist. LEXIS 20589 *3-4 (S.D.N.Y. Dec. 28, 1998) (Holding that certain categories of "internal firm documents" were properly withheld from production to trustees of a creditor trust); *In re Touch Am. Holdings, Inc.*, No. 03-11915, 2009 Bankr. LEXIS 1279 *7-8 (Bankr. D. Del. May 14, 2009) (Similarly holding that certain internal firm documents were properly withheld from production to the plan trustee.).  While the Trustee relies on *Kleiman* v. O'Neill, 2008 WL 5582453 (E.D.N.Y. Dec. 30, 2008), that case did not address or consider the "Internal Document Exception" confirmed in *Lippe* and *Touch*, which protects – even from clients – certain categories of internal firm documents.

[8] Those second-tier search terms included: (1) conflict of interest; (2) conflict report: (3) Toby Moskovitz; (4) Michael Lichtenstein;  (5) management agreement; (6) EIDL; (7) PPP; (8) SOFA or "statement of financial affairs"; (9) trustee; (10) schedule* w/10 assets, liabilities or bankruptcy; (11) "motion," "objection" or "litigation" w/20 "recommendation," "advise" or "strategy"; and (12) "intercompany transfer" or "intracompany transfer" w/5 "loan*" or "transfer*"

Mayer Brown LLP

Hon. Sean H. Lane
December 6, 2022
Page 7

produce on a rolling basis and, *again*, requested that the Trustee engage in a discussion regarding the terms and whether it felt additional terms should be added.[9]

In response, the Trustee again declined our invitation to discuss such terms (or propose any alternative terms), and rejected them out of hand. Instead, the Trustee demanded that Mayer Brown either immediately agree to review and produce all 17,496 documents or, in a rather punitive position if its unilateral demands were not instantly satisfied, revert to the unfiltered pool of 39,229 internal Mayer Brown documents including emails regarding completely unrelated (and privileged) matters for other clients that the Trustee has no entitlement to, and despite the Trustee's previous request that Mayer Brown narrow this group by the 12 case-specific search terms already used (and agreed to) with respect to other non-internal documents.[10]

Now, by its Letter, the Trustee further distorts and confuses the issue at hand.

*First*, the Trustee appears to rely on the false premise that Mayer Brown seeks to exclude internal documents from its production "*in toto*." Letter p. 5. However, as described above, Mayer Brown has already agreed to review and produce 9,691 of the 17,496 *internal* documents collected. That review is now complete and Mayer Brown is preparing such documents for production.

*Second*, the Trustee relies on authority for the proposition that internal documents may fall "within Rule 2004's reach." *Id*. However, such proposition is not without limitations, in particular, given the breadth and inclusion of documents from other non-related Mayer Brown client matters and undue burden (and we have agreed to review and produce internal documents).[11] While a 2004 subpoena may be broad in scope, it remains subject to the requirement in FRCP 45(d)(1) that the Trustee must take steps to avoid undue burden and expense – a fact the Trustee continues to ignore. *See* Rule 2004 Order incorporating FRBP 9016. Indeed, the Trustee baldly states that the burden of producing *all* internal documents does not outweigh the Trustee's duty to investigate Mayer Brown's administrative expense claim. Letter p. 5. That position utterly ignores the Federal and Bankruptcy rules. Further, the Trustee – after weeks of discussion and requests – has never explained why the subject search terms (which leave over 9,000 internal

---

[9] On November 28, Mayer Brown further suggested that the parties conduct a "correlation test" to confirm whether the chosen search terms were effective, and if not, Mayer Brown offered "to revisit appropriate terms to ensure we are not missing other responsive documents." The Trustee failed to respond.

[10] On November 28, Mayer Brown responded that the Trustee's "threat to now revert to a demand for this larger pool if we don't acquiesce, appears to be penal in nature and raised in bad faith," which the Trustee refers to in his Letter without providing any context. And as described below, it appears the Trustee may be following through with his threat, by now demanding all 39,229 internal Mayer Brown documents, including those from unrelated client matters.

[11] The Trustee cites *In re Anderson*, 641 B.R. at 29 for the undisputed proposition that internal documents may be responsive to a Rule 2004 subpoena. However, in *Anderson*, unlike here, the subpoenaed party "was not providing *any* internal communications, including emails, responsive to the Rule 2004 Order." 641 B.R. at 29 (emphasis added).

Hon. Sean H. Lane
December 6, 2022
Page 8

documents that Mayer Brown has agreed to review and produce) in any way hinder, delay or obstruct the Trustee's investigation.[12]

*Third*, it is unclear which set of internal documents the Trustee is now demanding. As described above, the Trustee previously requested that Mayer Brown apply the same 12 case-specific search terms to the internal documents that the parties agreed to apply to the non-internal documents, which resulted in 17,496 documents. Applying such case-specific terms only makes sense as the internal documents otherwise include documents from other non-related Mayer Brown client matters that are not the proper subject of the Subpoena and clearly impose an undue burden on Mayer Brown. Yet, by his Letter, the Trustee again appears to revert to the unfiltered pool of *all* "documents or communications that are internal to Mayer Brown personnel alone" (totaling nearly 40,000). Letter p. 3. In any case, the proper starting point must be the pool of 17,496 documents specific to this case, which Mayer Brown maintains should be further narrowed by the second-tier search terms described above.[13]

## **PRIOR PROCEEDINGS**

As noted above, rather than limit the Letter to discovery issues, the Trustee also includes inaccurate assertions or characterizations which are addressed in turn below, and without prejudice.

### *Mayer Brown's Representation of 286 Rider Avenue Development, LLC Did Not Give Rise to a Conflict of Interest*

The Trustee takes issue with Mayer Brown's (now completed) fully disclosed representation of 286 Rider Avenue Development, LLC ("Development"), a separate entity controlled by the former principals of the Debtor. Such was openly disclosed to the Court and was already raised and addressed in a motion by the UST rejected by Judge Drain as he made clear that

---

[12] The Trustee's reliance on *In re Michalski*, 449 B.R. 273, 281 (Bankr. N.D. Ohio 2011) is entirely misplaced. Mayer Brown has never suggested that to justify his 2004 requests the Trustee must articulate a basis to dispute Mayer Brown's administrative claim, as the Trustee asserts. Letter p. 5, n. 5. Rather, Mayer Brown's position is that the documents sought by the Trustee should at least be related to his purported investigation of Mayer Brown's claim, which the Trustee cites as the basis for his requests.

[13] Moreover, the Trustee has never agreed to pay Mayer Brown for any portion of its substantial (and mounting) costs incurred in responding to the Subpoena. While Mayer Brown believes these costs constitute an administrative expense, there is no guaranty the estate will have sufficient funds to cover such amount in full. FRCP 45(d) "authorizes a court to impose conditions to 'ensure[] that the subpoenaed person will be reasonably compensated.'" *Contant v. Bank of Am. Corp.*, 2020 U.S. Dist. LEXIS 105880 *10 (S.D.N.Y. July 17, 2020). Indeed, "[c]ost-shifting 'is particularly appropriate in the context of subpoenas, since *Rule 45* directs courts to minimize the burden on non-parties." *Id.* (*quoting U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-CV-06811, 2012 U.S. Dist. LEXIS 158448 *4 (S.D.N.Y. November 5, 2012)) (holding that cost-shifting some of the reasonable legal fees incurred by the subpoenaed party in complying with the plaintiff's subpoena was warranted).

Hon. Sean H. Lane
December 6, 2022
Page 9

there was no disclosure issue, nor conflict, in connection with Mayer Brown's representation of Development, a non-debtor equity owner of Acquisition in an unrelated matter. *See* 1/27/22 Hr'g Tr. [Dkt. No. 365] at 22:1-4. In addition, by way of further detail, in such referenced matter, Acquisition was controlled by its lender, Be-Aviv 286 Rider LLC, who replaced Development and appointed its designee to file the Chapter 11 of Acquisition. Development had nothing to do with such filing. Therein, Mayer Brown's engagement was limited to the dispute between Development, as displaced equity holder, and Be-Aviv, as lender.

Further, the Trustee incorrectly states that Mayer Brown did not disclose the Development representation at the time it was engaged in this case by the Debtor, perhaps caused by the Trustee's unfamiliarity with the underlying facts. Letter p. 2. The actual facts are that Mayer Brown did not represent Development until months after the Debtor's engagement of Mayer Brown. Specifically, Mayer Brown was engaged as co-counsel for the Debtor in August 2021 and, as would be expected, Mayer Brown filed its initial disclosures at that time. At that time, there was not an engagement by Development to disclose, as such did not arise until November 2021. Accordingly, there was nothing to set forth at the time of Mayer Brown's initial disclosures, and a supplemental disclosure was filed.

The Trustee also notes that Judge Drain left the door open for further discussion if "there's a transfer between the . . . *client* in the other case and the Debtor[.]" Letter p. 2 (quoting 1/27/22 Hr'g Tr. at 37:13-15) (emphasis added)). But nothing in the Examiner Report or the Trustee's Letter suggests Development received any potentially avoidable transfers from the Debtor (or, for that matter, the Manager), so the potential issue Judge Drain raised has not arisen or come into existence. And, even if any substantive disputes with Development adverse to the Debtor had arisen, that would not have justified disqualification or the assertion of claims against Mayer Brown in this Chapter 11 Case. Mayer Brown's representation of Development was limited in scope, and related solely to helping Development enforce its rights *vis-a-vis* the secured lender of Acquisition.

***Mayer Brown's Representation of the Debtor in Connection with the Examiner's Investigation Does Not Give Rise to Claims or Conflicts***

Although the Trustee was not involved at the time of the Examiner's investigation, and was not party to the various conferences held between the Debtor and Examiner concerning the procedures governing such investigation, the Trustee asserts that Mayer Brown's representation of the Debtor in connection with the investigation somehow could give rise to claims against Mayer Brown. Such assertions are similarly not supported by the record. In particular, while disputes arose between the Debtor and Examiner concerning confidentiality, scope of the exam, costs and privilege, such issues were brought to Judge Drain for expeditious determination, and his directives were implemented. The Examiner's contention that non-debtor parties were not complying with his directives (who were not only different entities, but represented by other counsel), had nothing to do with Mayer Brown's representation of the Debtor. Moreover, when refusing to grant the

Hon. Sean H. Lane
December 6, 2022
Page 10


UST's Motion to Disqualify, Judge Drain specifically noted that he had considered, and rejected the relevance of, Mayer Brown's role in the discovery disputes between the Examiner and Debtor. *See* 1/27/22 Hr'g Tr. 26:17-22 ("I am fully familiar with the discovery disputes over the Examiner's request for discovery. And I don't view that as the type of evidence for disqualification . . . ."). Again, when the Court addresses the facts and issues and resolves them, the Trustee's attempt to raise those issues again runs afield of the focus of these letters: discovery from Mayer Brown.

For these reasons, among others, Mayer Brown's current procedure for the collection, review and production of documents is entirely reasonable and complies with all applicable rules and the Court's Rule 2004 Order. Mayer Brown expects to complete its initial production this week and remains willing to discuss any particular documents or issues the Trustee believes are responsive to the Subpoena, but not included in Mayer Brown's current production.

Respectfully submitted,

**MAYER BROWN LLP**

*/s/ Douglas E. Spelfogel*
Douglas E. Spelfogel
Derek L. Wright
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2570
dspelfogel@mayerbrown.com
dwright@mayerbrown.com

Charles S. Kelley (*pro hac vice*)
700 Louisiana St., Suite 3400
Houston, TX 77002
Telephone: (713) 238-2634
ckelley@mayerbrown.com