TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger
John McClain

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
96 WYTHE ACQUISITION LLC,                                   :    Case No. 21-22108 (SHL)
                                                            :
                    Debtor.                                 :
                                                            :
------------------------------------------------------------x
                                                            :
STEPHEN S. GRAY, Not Individually but                       :
Solely in His Capacity as Chapter 11 Trustee                :
of the Estate of 96 Wythe Acquisition LLC                   :
                                                            :
                    Plaintiff,                              :
                                                            :
v.                                                          :    Adv. Pro. No. 22-_____ (SHL)
                                                            :
THE WILLIAMSBURG HOTEL BK, LLC,                             :
TOBY MOSKOVITS, and                                         :
MICHAEL LICHTENSTEIN,                                       :
                                                            :
                    Defendants.                             :
                                                            :
------------------------------------------------------------x

# COMPLAINT

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), by his attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), respectfully submits this complaint (the "Complaint") against The Williamsburg Hotel BK, LLC (the "Manager"); Toby Moskovits

("Moskovits"); and Michael Lichtenstein ("Lichtenstein" and, together with Moskovits, the "Principals," and the Manager and the Principals collectively, the "Defendants"), and alleges as follows upon information and belief:

## SUMMARY OF THE ACTION

1. The Trustee seeks entry of a judgment: (a) declaring that the proceeds of the Employee Retention Credit ("ERTC") tax refunds that were claimed by the Manager for the first through the third quarters of 2021 (the "ERTC Funds") are property of the Debtor's estate (the "Estate"); (b) directing the Defendants to immediately turn over to the Trustee the $1,540,687.10 that was claimed by and remitted to the Manager by the Internal Revenue Service (the "IRS") after the Petition Date (defined below) on account of ERTC refunds claimed by the Manager for the first and third quarters of 2021 (the "Paid ERTC Funds"), plus interest and costs; (c) directing the Defendants to immediately turn over to the Trustee the $764,816.70 ERTC refund that was claimed by the Manager after the Petition Date (the "Unpaid ERTC Funds") if and when they receive the Unpaid ERTC Funds from the IRS to the extent such amounts have not been escrowed with the Trustee's counsel, in which case the Trustee seeks the Court's direction that those funds may be released to the Trustee; (d) directing Defendants to produce to the Trustee a written accounting regarding the disposition(s) and transfer(s) of any Paid ERTC Funds including, to the extent any such transfer is alleged to have been made for the benefit of the Debtor, a detailed explanation for how such transfer benefited the Debtor; (f) awarding pre-judgment interest at the maximum legal rate running from the date(s) that Defendants received the Paid ERTC Funds from the IRS until the date on which the Court issues a final judgment with respect to this Complaint, and post-judgment interest until the full amount of such judgment is satisfied; (g) disallowing any claims filed by or on behalf of

2

the Defendants in the Debtor's bankruptcy case unless and until the ERTC Funds (less any amounts that the Court finds were expended for the Debtor's benefit) have been turned over to the Trustee; (h) awarding attorneys' fees and costs; and (i) granting such other relief as the Court deems just and proper.

2. To the extent that any Defendant(s) have filed proofs of claim, or have otherwise requested any payment from the Estate (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's right to object to the Claims for any reason including, but not limited to, section 502 of title 11 of the United States Code (the "Bankruptcy Code"), and such rights are expressly reserved.

### JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

4. This action is commenced pursuant to 28 U.S.C. § 2201; sections 502(d), 542, 549, and 550 of the Bankruptcy Code; and Rules 3007, 6009, and 7001 of the Federal Rules of Bankruptcy Procedure.

5. This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(1) and (2)(A), (B), (E), and (O), such that this Court has jurisdiction to hear and to determine this proceeding and to enter final orders and judgments in it. In the event that this Court or any other appropriate court finds any part of this adversary proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this proceeding under 28 U.S.C. § 1334 because such causes of action relate to the Debtor's bankruptcy case and will have a significant impact on the Estate.

6. Plaintiff consents to the entry of final orders and judgments by this Court in this adversary proceeding. Plaintiff also consents to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises in and is related to the Debtor's bankruptcy case pending in the Court.

### PARTIES

8. The Debtor owns the Williamsburg Hotel (the "Hotel") at 96 Wythe Avenue, Brooklyn, New York 11249 and is the Plaintiff in this adversary proceeding.

9. Plaintiff is the Chapter 11 Trustee of the Debtor.

10. Defendant Manager is a New York limited-liability company and maintains a place of business at 1274 49th Street, Suite 184, Brooklyn, New York 11219.

11. Before the Trustee's appointment on May 31, 2022, the Manager: (a) managed the Hotel's operations for the Debtor; (b) collected all revenue generated by the Debtor's business; (c) employed personnel who performed services at and for the Hotel, including but not limited to the Hotel's front desk staff, food and beverage staff, and cleaning staff; and (d) funded all expenses of the Debtor from the Hotel's revenues belonging to the Debtor, including, *inter alia*, the Hotel's payroll and employment taxes.

12. Upon information and belief and as set forth in the February 28, 2022 *Report of Examiner, Eric M. Huebscher* (the "Examiner Report") [Dkt No. 418], the Manager had no business operations other than the management of the Hotel at all relevant periods set forth herein.

13. Defendant Moskovits is a citizen of the State of New York who has ownership interests in the Debtor and the Manager and, before the Trustee's appointment, directly or indirectly controlled the Debtor and the Manager.

14. Moskovits is an insider of the Debtor and of the Manager as defined by section 101(31) of the Bankruptcy Code.

15. Defendant Lichtenstein is a citizen of the State of New York who has ownership interests in the Debtor and the Manager and, before the Trustee's appointment, directly or indirectly controlled the Debtor and the Manager.

16. Lichtenstein is an insider of the Debtor and of the Manager as defined by section 101(31) of the Bankruptcy Code.

## FACTUAL ALLEGATIONS

### The Chapter 11 Case

17. On February 23, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").

18. No official committee of unsecured creditors has been appointed in this Chapter 11 case (the "Chapter 11 Case").

19. On October 15, 2021, Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street" or "Secured Lender") filed its *Motion to Appoint an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 147], which was granted by the Court on November 8, 2021 by entry of the *Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 178], which order was subsequently amended on November 23, 2021 by entry of the *Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 193] and on December 14, 2021 by

5

entry of the *Second Amended Order Directing Appointment of an Examiner Pursuant to 11 U.S.C. § 1104(c)* [Dkt. No. 224].

20. On November 16, 2021, the Court entered the *Order Approving Appointment of Examiner* [Dkt. No. 186], and Eric M. Huebscher was appointed as the examiner (the "Examiner") in this Chapter 11 Case.

21. On February 28, 2022, the Examiner issued his report (the "Examiner Report") [Dkt. No. 418] wherein the Examiner found that there were sufficient grounds to appoint a trustee. On March 21, 2022, the Examiner issued a supplemental report [Dkt. No. 465].

22. On March 28, 2022, Benefit Street filed its Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance [Dkt. No. 476] and on March 31, 2022, the United States Trustee filed its Motion for an Order Directing the Appointment of a Chapter 11 Trustee [Dkt. No. 491], raising concerns of potential impropriety on behalf of the Debtor's management and requesting the appointment of a Chapter 11 trustee.

23. Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, 2022 [Dkt. No. 598], on May 27, 2022 the Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Dkt. No. 591].

24. On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Dkt. No. 592] and filed an application for the appointment of a Chapter 11 trustee [Dkt. No. 593], subject to Court approval.

25. The Court entered its *Order Granting the Application for Appointment of Chapter 11 Trustee* [Dkt. No. 594] approving the appointment of the Trustee on May 31, 2022.

6

### The ERTC

26. As part of its response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act of 2020 (the "CARES Act"), 134 Stat. 281.  Among other things, the CARES Act created various tax breaks to assist businesses from failing and employees from losing their jobs while the pandemic was addressed.

27. One of the tax breaks created by the CARES Act was the Employee Retention Credit, or ERTC, which reduced certain employment taxes that were otherwise owed to the IRS.[1]  The ERTC allowed qualifying employers to reduce the employment taxes that they otherwise owed to the IRS, claim refunds from the IRS of employment taxes already paid, and receive advance payments from the IRS if the employer's employment-tax obligations were less than the amount of the credit.

28. According to the IRS's website:

> The Employee Retention Credit is a refundable tax credit against certain employment taxes equal to 50% of the qualified wages an eligible employer pays to employees after March 12, 2020, and before January 1, 2021.[2]  Eligible employers can get immediate access to the credit by reducing employment tax deposits they are otherwise required to make.  Also, if the employer's employment tax deposits are not sufficient to cover the credit, the employer may get an advance payment from the IRS. . . . Employers, including tax-exempt organizations, are eligible for the credit

---

[1] The IRS administers the United States federal government's tax regime, and sends and receives tax payments and refunds on behalf of the United States Treasury.  For purposes of this Complaint, the Trustee refers to the IRS and the United States Treasury interchangeably.

[2] The ERTC as initially set forth by the CARES Act governed the credit with respect to employment taxes owed between March 12, 2020 and January 1, 2021.  The Taxpayer Certainty and Disaster Tax Relief Act, part of the Consolidated Appropriations Act of 2021, Pub. L. 116-260, amended the CARES Act's ERTC provisions, and governed the credit with respect to employment taxes owed for the January 1, 2021 to June 30, 2021 period.  The American Rescue Plan Act of 2021, Pub. L. 117-2, amended the ERTC provisions further, and governed the credit with respect to employment taxes owed from July 1, 2021 to December 31, 2021.  *See* https://www.irs.gov/newsroom/covid-19-related-employee-retention-credits-general-information-faqs.  The differences between the statutes do not appear to be material for purposes of the Complaint.

7

> *if they operate a* trade or business during calendar year 2020 and experience either: [1] the full or partial suspension of the operation of their trade or business during any calendar quarter because of governmental orders limiting commerce, travel or group meetings due to COVID-19, or [2] a significant decline in gross receipts. . . . The credit applies to qualified wages (including certain health plan expenses) paid during this period or any calendar quarter in which operations were suspended.
>
> In order to claim the new Employee Retention Credit, eligible employers will report their total qualified wages and the related health insurance costs for each quarter on their quarterly employment tax returns, which will be Form 941 for most employers, beginning with the second quarter. The credit is taken against the employer's share of Social Security tax but the excess is refundable under normal procedures. . . .[3]

(emphasis added).

29. The Manager reported its taxes to the IRS quarterly on Forms 941 and 941-X, including the employment taxes it paid in connection with the employment of individuals who worked at the Hotel.[4]

30. First, in a Form 941-X concerning the first quarter of 2021, the Manager claimed $408,263.92 in ERTC refunds and requested payment thereof. The IRS subsequently remitted $408,263.92 to the Manager by check post-petition in November 2021.

31. Second, in a Form 941-X concerning the second quarter of 2021, the Manager claimed $764,816.70 in ERTC refunds and requested payment thereof. Upon information and belief, the IRS has not paid these refunds to date.

32. And third, in its Form 941 concerning the third quarter of 2021, the Manager claimed $1,132,423.18 in ERTC refunds and requested payment thereof. The

---

3   *See* https://www.irs.gov/coronavirus/employee-retention-credit.

4   Form 941 is the form that employers file quarterly with the IRS, and Form 941-X is a form used to amend Form 941. The Trustee is in possession of the three tax forms discussed herein and will make them available to the Court, *e.g.*, by providing them to the Court for *in camera* review, should the Court so direct.

8

IRS subsequently remitted $1,132,423.18 to the Manager by check post-petition in November 2021.

33. Together, the Manager claimed $2,305,503.80 of ERTC Funds, of which the Trustee understands that $1,540,687.10 has been paid to the Manager and $764,816.70 remains unpaid by the IRS.

|  | Q1 2021 | Q2 2021 | Q3 2021 | Total |
|---|---|---|---|---|
| **ERTC Refunds Claimed** | $408,263.92 | $764,816.70 | $1,132,423.18 | $2,305,503.80 |
| **Refunds Paid by IRS** | X |  | X | $1,540,687.10 |
| **Refunds Unpaid by IRS** |  | X |  | $764,816.70 |

34. As demonstrated below, the ERTC Funds are property of the Debtor's Estate because, *inter alia*, all payroll-related taxes for the individuals who worked at the Hotel were paid by the Manager from and using the Debtor's funds, not the Manager's Funds.

### The Management Agreement

35. On December 13, 2017, the Debtor entered into an "Assignment of Hotel Management Agreement and Subordination of Hotel Management Fees" agreement (the "Assignment Agreement")[5] with the Manager and Benefit Street, the Debtor's secured lender. The Assignment Agreement was signed by Moskovits on behalf of the Debtor, Lichtenstein on behalf of the Manager, and Micah Goodman on behalf of Benefit Street.

36. Within the Assignment Agreement: (1) the Debtor and Manager agreed to a "Hotel Management Agreement" (the "December Management Agreement"), which is attached to the Assignment Agreement as an exhibit; (2) the Debtor assigned its rights under the December Management Agreement to Benefit

9

Street; and (3) the Manager subordinated its interest in the management fees that it would earn under the December Management Agreement (discussed below) to Benefit Street's lien against the Hotel.

37. Assignment Agreement Section 21 also set forth that the "Manager acknowledges and agrees that all portions of the Rents, security deposits, issues, proceeds, profits and other revenues of the Property[6] collected by [the Manager] shall be solely in [the Manager's] capacity as the agent for the [Debtor], [and that] such monies are the sole property of the [Debtor] . . . Manager has no right to, or title in, such monies except as provided in the [December] Management Agreement[.]"

38. The December Management Agreement provided that the Manager "shall perform all work in connection with the on-site management of [the] Property[,]" for which the Manager was entitled to a management fee.

39. The December Management Agreement also set forth that the "Manager will employ at its expense all personnel and facilities necessary and appropriate to enable it to perform the services required of it hereunder."

40. The arrangement described by the Assignment Agreement and December Management Agreement was clear: the Hotel's revenues belonged to the Debtor, and the Manager was responsible for personnel costs.

---

...(continued)
5   The Assignment Agreement (and the attached December Management Agreement) was attached to the Examiner Report and is available on the docket in this case at [Dkt. No. 418-5].

6   "Property" is not expressly defined within the Assignment Agreement or the December Management Agreement, but in light of the other provisions within those documents, the only reasonable interpretation is "Property" was intended to describe the Hotel. *See* Assignment Agreement Recitals ¶ B (noting that Benefit Street has a "first lien on the Property").

**The Manager Uses the Debtor's Money
To Pay the Manager's Employees' Wages and Corresponding Employment Taxes**

41. The above-described arrangement was not effected in practice.

42. While the Manager agreed to employ the individuals who worked at the Hotel "at its expense[,]" the Manager paid these individuals' wages (hereinafter, the "payroll") and the corresponding employment taxes directly from the Hotel's revenues that it received from the Debtor.

43. Based upon the Trustee's diligence to date, including his review of the Examiner's Report and the testimony given at the hearing on Benefit Street's motion seeking the appointment of a Chapter 11 trustee, the Manager never had any business operations other than managing the Hotel on the Debtor's behalf, and the Manager never had any other source of income.

44. Further, although the Manager was entitled to a management fee under the terms of the December Management Agreement (subordinated to Benefit Street's lien against the Hotel), the Manager never collected or accounted for any management fee.

45. Accordingly, upon information and belief, the Manager had no funds of its own with which to pay the Hotel's payroll and employment taxes.

46. The Manager paid $4,524,593.51 for the Hotel's payroll and employment taxes during the first through third quarters of 2021.

|  | Q1 2021 | Q2 2021 | Q3 2021 | Total |
|---|---|---|---|---|
| **Hotel's Payroll and Employment Taxes Paid by Manager** | $871,757.03 | $1,499,038.45 | $2,153,798.03 | $4,524,593.51 |

47. The tax payments totaling $4,524,593.51 was paid from the Hotel's revenues that belonged to the Debtor.

11

48. Despite that the December Management Agreement expressly provided that the Manager was required to "employ at its expense all personnel" necessary to manage the Hotel, the Principals and the Manager considered payment of the Hotel's payroll to be the Debtor's responsibility:

- In his March 23, 2022 deposition, Lichtenstein described "[o]ur debtor's weekly payroll."[7]

- During the May 26, 2022 hearing regarding Benefit Street's *Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance* [Dkt. No. 476], the Debtor's then-counsel admitted to Judge Drain that the Manager had paid out "millions of dollars of payroll expenses"[8] and that "the Debtor . . . reimbursed for the payroll."[9] Judge Drain agreed that "the Debtor spent" the payroll-related money.[10]

**The Manager Claims Millions of Dollars in Tax Credits
Against the Taxes that the Manager Paid with the Debtor's Money**

49. As discussed above, the Manager has claimed $2,305,503.80 of ERTC refunds for itself.

50. While the Debtor funded the employment taxes against which the ERTC credit was allowed, the Manager's claim of the ERTC credits ensured that their value flowed to the Manager and the Principals exclusively to improperly shelter those credits and refunds from the reach of the Debtor and its creditors.

---

[7] March 23, 2022 Deposition of Michael Lichtenstein Tr. at 107:5.

[8] May 26, 2022 Hearing Tr. at 25:25-26:1.

[9] *Id.* at 76:14.

[10] *Id.* at 76:15.

12

51. During the May 26, 2022 hearing regarding Benefit Street's *Renewed Motion for the Appointment of a Chapter 11 Trustee Based on Continuing Malfeasance* [Dkt. No. 476], the Debtor's then-counsel admitted to Judge Drain that the Manager had received "a windfall"[11] when it received federal funds pursuant to the Paycheck Protection Program—another federal program intended to ensure that employees kept their jobs while the COVID-19 pandemic was addressed—because the Debtor had funded the Hotel's payroll through the also-admitted "reimburse[ment]"[12] scheme that the Principals put into place despite the December Management Agreement's clear provisions to the contrary.

52. Any ERTC refund provided by the IRS on account of employment taxes funded by the Debtor must inure to the benefit of the Debtor as property of the estate, not as another "windfall" to the Manager and the Principals.

### The ERTC Funds Are Either In Defendants' Control or Have Been Transferred to Unknown Parties

53. Although the Manager's bank accounts are included in the Debtor's monthly operating reports filed on the docket in the Chapter 11 Case ("the "MORs"), the Paid ERTC Funds—paid in November 2021—are not reflected thereupon as having been received, despite the fact that the MORs were signed under penalty of perjury by the Debtor's Chief Restructuring Officer David Goldwasser, including that no payments were made outside of the ordinary course of business without court approval and that no payments were made to insiders of the Debtor. [*See* Dkt. No 263 (MOR for November 2021); Dkt. No. 250 (MOR for December 2021)].

---

[11]   *Id.* at 78:16.

[12]   *Id.* at 78:15.

13

54. Defendants either control the Paid ERTC Funds or caused the Paid ERTC Funds to be transferred after the Petition Date.

55. The Trustee has demanded that the Defendants escrow the Paid ERTC Funds. However, counsel for Defendants has represented to the Trustee that the Paid ERTC Funds have been transferred.

56. The Trustee has demanded an accounting of such transfers explaining to whom the Paid ERTC Funds were transferred and for what purpose, but as of the date of this Complaint, no accounting has been provided by the Defendants.

57. Counsel for the Defendants has agreed in principle to escrowing the Unpaid ERTC Funds upon receipt subject to either an agreed-upon stipulation with the Trustee or an order of the Court. As of the date of this Complaint, the Unpaid ERTC Funds have not been escrowed.

## RELIEF REQUESTED

58. The Trustee files this Complaint seeking entry of a judgment:

   (i) declaring that all of the ERTC Funds are property of the Debtor's Estate;

   (ii) directing the Defendants to immediately turn over to the Trustee the Paid ERTC Funds, plus interest and costs;

   (iii) directing the Defendants to immediately turn over the Unpaid ERTC Funds to the Trustee upon receipt from the IRS or, to the extent the Unpaid ERTC Funds have been escrowed with the Trustee's counsel, directing the Trustee that those funds may be released to the Trustee;

   (iv) directing Defendants to produce to the Trustee a written accounting regarding the disposition(s) and transfer(s) of any Paid ERTC Funds including, to the extent any such transfer is alleged to have been made for the benefit of the Debtor, a detailed explanation for how such transfer benefited the Debtor;

   (v) awarding pre-judgment interest at the maximum legal rate running from the date(s) that Defendants

14

        received the Paid ERTC Funds from the IRS until the date on which the Court issues a final judgment with respect to this Complaint, and post-judgment interest until the full amount of such judgment is satisfied;

(vi)    disallowing any claims filed by or on behalf of the Defendants in the Debtor's bankruptcy case unless and until the ERTC Funds (less any amounts that the Court finds were expended for the Debtor's benefit) have been turned over to the Trustee;

(vii)    awarding attorneys' fees and costs; and

(viii)    granting such other relief as the Court deems just and proper.

**COUNT I**
**DECLARATORY JUDGMENT**
**(Fed. R. Bankr. P. 7001(9); 28 U.S.C. § 2201)**

59. Plaintiff repeats and incorporates by reference the preceding allegations of this Complaint.

60. There is an actual and substantial controversy regarding whether the paid and unpaid ERTC Funds constitute property of the Debtor's Estate, making an award of declaratory relief at this time just, necessary, and proper.

61. Property of the estate is defined in section 541(a)(1) of the Bankruptcy Code as "all legal and equitable interests of the debtor in property as of the commencement of the case."

62. The funds that the Manager used to pay employment taxes for the individuals who worked at the Hotel, like the Hotel's payroll, came from the Hotel's revenues belonging to the Debtor.

63. Because such taxes were paid by the Manager using the Debtor's money—property of the Debtor's Estate—the IRS's refunds of these tax payments in the form of the ERTC Funds are refunds of property of the Debtor's Estate.

64. Based upon the foregoing, the ERTC Funds should be remitted to the Trustee for the benefit of the Estate.

15

65. A declaratory judgment will serve a useful purpose in clarifying and settling the question of who is the rightful owner of the ERTC Funds, and will relieve the parties from the uncertainty, insecurity, and controversy giving rise to these proceedings.

66. Accordingly, the Trustee respectfully requests that the Court issue a declaratory judgment setting forth that the ERTC Funds constitute property of the Debtor's estate within the meaning of 11 U.S.C. § 541(a)(1).

**COUNT II
TURNOVER
(11 U.S.C. § 542)**

67. Plaintiff repeats and incorporates by reference the preceding allegations of this Complaint.

68. The Paid ERTC Funds constitute property of the Estate pursuant to section 541 of the Bankruptcy Code.

69. The Paid ERTC Funds were transferred to the Defendants in November 2021, after the Petition Date.

70. The Defendants are in possession and/or control of the Paid ERTC Funds, or the Defendants transferred the Paid ERTC Funds to unknown parties for unknown purposes.

71. Pursuant to section 542 of the Bankruptcy Code, the Defendants are statutorily obligated to turn over the Paid ERTC Funds in their possession and/or control to the Trustee or to provide a written accounting detailing how and for what purposes the Paid ERTC Funds were transferred.

72. Defendants have failed to turn over the Paid ERTC Funds to the Trustee, and have failed to provide a written accounting regarding any transfers of the Paid ERTC Funds to the Trustee, despite written demands by the Trustee.

73. There is no justification for the Defendants' failure to turn over the Paid ERTC Funds to the Trustee or to provide a written accounting to the Trustee regarding the disposition(s) and transfer(s) of the Paid ERTC Funds.

74. Pursuant to section 542 of the Bankruptcy Code, an order should be entered directing all of the Defendants to immediately take all actions necessary to turn over the full amount of the Paid ERTC Funds to the Trustee, plus all interest that accrued or which should have accrued thereupon from the date that the Paid ERTC Funds were received, plus the costs and expenses incurred by the Estate in connection with this adversary proceeding.

75. Pursuant to section 542 of the Bankruptcy Code, the Trustee respectfully requests an order directing all of the Defendants to produce to the Trustee a written accounting regarding the disposition(s) and transfer(s) of any Paid ERTC Funds including, to the extent any such transfer is alleged to have been made for the benefit of the Debtor, a detailed explanation for how such transfer benefited the Debtor.

76. Pursuant to section 542 of the Bankruptcy Code, the Trustee respectfully requests an order directing the Defendants to immediately turn over the Unpaid ERTC Funds to the Trustee upon receipt from the IRS.

77. Pursuant to section 502(d) of the Bankruptcy Code, the Trustee respectfully requests an order disallowing any claim that any Defendant may have against the Debtor and its Estate until such time as all of the ERTC Funds are turned over to the Trustee.

### COUNT III
### UNJUST ENRICHMENT

78. Plaintiff repeats and incorporates by reference the preceding allegations of this Complaint.

79. To the extent that the Paid ERTC Funds cannot be turned over to the Trustee because some or all of the Paid ERTC Funds have been disposed of or transferred to other parties, the Defendants were unjustly enriched by the amount of the Paid ERTC Funds that cannot be returned to the Trustee.

80. Because the Paid ERTC Funds were property of the Debtor's Estate, any disposition or transfer of the Paid ERTC Funds enriched the Defendants at the Debtor's Estate's expense, and it would be against equity and good conscience to permit the Defendants to retain the value of the disposition(s) or transfer(s).

81. Thus, in the alternative, to the extent that any amount of the Paid ERTC Funds cannot be turned over to the Trustee, the Trustee respectfully requests an order granting a judgment against each of the Defendants for the amounts that cannot be turned over.

## RESERVATION OF RIGHTS

82. Plaintiff repeats and incorporates by reference the preceding allegations of this Complaint.

83. The Trustee does not waive and instead specifically reserves all of his rights, claims, and defenses as they pertain to the Debtor and to defend against any claims or liens that Defendants may assert against the Estate. The Trustee expressly reserves the right to amend and supplement this Complaint or to commence a new action against Defendants with other claims as his investigation continues.

## PRAYER FOR RELIEF

**WHEREFORE**, for the above-stated reasons, Plaintiff respectfully requests that this Court enter judgment against each of the Defendants:

(i) declaring that the ERTC Funds are property of the Debtor's Estate;

18

(ii)     directing each of the Defendants to immediately turn over to the Trustee the Paid ERTC Funds, plus interest and costs;

(iii)     directing each of the Defendants to immediately turn over the Unpaid ERTC Funds to the Trustee upon receipt from the IRS or, to the extent the Unpaid ERTC Funds have been escrowed with the Trustee's counsel, directing the Trustee that those funds may be released to him and the Debtor's estate;

(iv)     directing each of the Defendants to produce to the Trustee a written accounting regarding the disposition(s) and transfer(s) of any Paid ERTC Funds including, to the extent any such transfer is alleged to have been made for the benefit of the Debtor, a detailed explanation for how such transfer benefited the Debtor;

(v)     awarding pre-judgment interest at the maximum legal rate running from the date(s) that Defendants received the Paid ERTC Funds from the IRS until the date on which the Court issues a final judgment with respect to this Complaint, and post-judgment interest until the full amount of such judgment is satisfied;

(vi)     disallowing any claims filed by or on behalf of the Defendants in the Debtor's bankruptcy case unless and until the ERTC Funds (less any amounts that the Court finds were expended for the Debtor's benefit) have been turned over to the Trustee;

(vii)     awarding attorneys' fees and costs; and

      (viii)   granting such other relief as the Court deems just and proper.

DATED: New York, New York
December 19, 2022

                    STEPHEN S. GRAY, Not Individually But
Solely in His Capacity as Chapter 11 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

    */s/ Frank A. Oswald*
FRANK A. OSWALD
NEIL BERGER
Members of The Firm
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000