TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Bryan M. Kotliar

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
| In re: | : | Chapter 11 |
| | : | |
| 96 Wythe Acquisition, LLC, | : | Case No. 21-22108 (SHL) |
| | : | |
| Debtor. | : | |
| | : | |
------------------------------------------------------------x

## DECLARATION OF STEPHEN S. GRAY
## IN SUPPORT OF THE ORDER (A) APPROVING THE SALE FREE
## AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES;
## (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

Stephen S. Gray, pursuant to section 1746 of title 28 of the United States Code, hereby declares:

1. I am the chapter 11 trustee (the "Trustee") of the estate of 96 Wythe Acquisition LLC (the "Debtor") in the above-captioned Chapter 11 case (the "Chapter 11 Case"), and I am duly authorized to make this declaration (the "Declaration").

2. I have more than forty (40) years of experience in developing and implementing restructuring and crisis management plans for public and private companies, creditors, and judicial bodies.  As an officer, restructuring advisor, fiduciary, and turnaround consultant, I have led the successful operational and/or financial restructuring of hundreds of companies.  Moreover, I have served in a fiduciary capacity in the bankruptcy context in hundreds of cases, including as

chapter 11 trustee in more than twenty (20) cases. I am also a fellow in the American College of Bankruptcy.

3.  I respectfully submit this Declaration in support of the *Chapter 11 Trustee's Motion for Entry of Orders (I)(A) Approving Bid Procedures for the Sale of Substantially All of the Debtor's Assets; (B) Establishing Procedures to Designate a Stalking Horse Bidder and Enter Into a Stalking Horse Agreement with Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (F) Granting Related Relief; and (II)(A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief*, filed on October 21, 2022 [Docket No. 752] (the "Motion")[1] as it relates to the Trustee's request for the Court's approval of the sale (the "Sale") of certain of the Debtor's assets, including the Property (the "Assets") and the related assumption and assignment of executory contracts and unexpired leases (the "Assigned Contracts").

4.  Unless otherwise stated, all facts set forth in this Declaration are based upon: (a) my personal knowledge; (b) my role as Trustee in this Chapter 11 Case since my appointment; and (c) information provided to me by, and discussions with, my professionals. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bid Procedures Order (as defined below), as applicable.

2

**THE SALE AND MARKETING PROCESS**

5. On November 15, 2022, the Court entered the *Order (A) Approving Bid Procedures for the Sale of the Debtor's Assets; (B) Establishing Procedures to Designate a Stalking Horse Bidder and Enter into a Stalking Horse Agreement with Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (F) Granting Related Relief* [Docket No. 784] (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, the Court, among other things, approved the dates, deadlines, and procedures for conducting the sale and marketing process for the Sale of the Assets (the "Sale Process"), as set forth in Exhibit 1 to the Bid Procedures Order (the "Bid Procedures"), including scheduling an auction (the "Auction") if one or more Qualified Bids (as defined in the Bid Procedures Order) was received. The Bid Procedures Order also scheduled a hearing to consider approval of the Sale for December 20, 2022 at 2:00 p.m. (ET) (the "Sale Hearing").

6. As set forth in greater detail in the Motion and the *Declaration of Emilio Amendola in Support of Chapter 11 Trustee's Bid Procedure Motion*, filed on November 2, 2022 [Docket No. 771], prior to the entry of the Bid Procedures Order, the Trustee and his professionals, including A&G Real Estate Partners and Eastdil Secured, LLC (together, the "Co-Brokers") have been conducting the Sale Process by marketing the Assets for Sale. Following the entry of the Bid Procedures Order, the Trustee and his professionals, including the Co-Brokers, continued to conduct the Sale Process in accordance with the terms of the Bid Procedures Order.

7. I understand that more than approximately 190 potential bidders entered into confidentiality agreements and obtained access to the data room established by the Co-Brokers (the "Data Room") and that more than approximately 30

interested parties conducted inspection tours of the Property escorted or arranged by the Co-Brokers. Furthermore, the Trustee and his advisors, including the Co-Brokers and his counsel, engaged in extensive discussions with potential bidders and their advisors regarding the Property and related Assets.

8. Based on my experience, I believe that the Sale Process was conducted in accordance with the Bid Procedures and afforded potential bidders with sufficient time to formulate and submit offers for the Property and related Assets.

## THE AUCTION

9. The Trustee received several bids from interested parties prior to the December 12, 2022 bid deadline set forth in the Bid Procedures Order, all of which were below the Secured Lender's maximum credit bid rights pursuant to the Settlement Agreement between the Trustee and the Secured Lender, a copy of which was attached as Exhibit 1 to the *Order Approving Settlement Agreement with Benefit Street Partners Operating Partnership, L.P.*, entered on October 21, 2022 [Docket No. 753] (the "BSP Settlement Agreement"). Following discussions between the Trustee and his professionals and the Secured Lender and its professionals, the Trustee, in the exercise of his business judgment, determined to designate two bids as "Qualified Bids" in accordance with the Bid Procedures Order and invited the associated bidders to participate in the Auction.

10. On December 14, 2022, the Trustee commenced the Auction, with the Qualified Bidders and their advisors and the Secured Lender and its advisors in attendance. Despite multiple rounds of robust bidding and related discussions with the bidders, the maximum bid submitted by the Qualified Bidders at that time was still below the Secured Lender's credit bid rights under the BSP Settlement Agreement. Following consultation with the Secured Lender and its advisors, the Trustee

4

determined, in the exercise of his business judgment, to adjourn the auction until December 21, 2022. *See Notice of Adjournment of Auction and Sale Hearing*, filed on December 15, 2022 [Docket No. 841] (the "First Adjournment Notice"). The First Adjournment Notice also notified parties in interest that the Sale Hearing was adjourned until a date to be determined.

11. At the request of the Trustee, the Secured Lender prepared a term sheet for financing, which the Trustee made available to all potential bidders.[2] Each of the bids submitted by the Qualified Bidders was contingent on obtaining financing from the Secured Lender to close the proposed Sale. In light of this contingency, following the initial Auction date, the Secured Lender, in consultation with the Trustee, determined to offer improved financing terms in order to increase bids and therefore the amount of cash proceeds generated by the Sale.

12. On December 21, 2022, the Trustee continued the Auction with the Qualified Bidders and their advisors and the Secured Lender and its advisors again in attendance. At this Auction, the Secured Lender announced on the record that it would offer improved financing terms for each of the Qualified Bidders on identical terms provided to both. Following continued bidding, the proposed Sale price improved but was still below the Secured Lender's credit bid rights under the BSP Settlement Agreement. Following consultation with the Secured Lender and its advisors, the Trustee determined, in the exercise of his business judgment, to adjourn the auction several times to allow for continued discussions between the Qualified Bidders and Benefit Street regarding the terms of financing offered. *See* Docket Nos. 849, 859 & 863.

---

[2] I understand that a copy of a term sheet for financing offered by the Secured Lender was made available to all bidders in the Data Room.

5

13. During the time period afforded by the adjournment of the auction, the Trustee and his advisors worked extensively with the Qualified Bidder that had submitted the highest offer as of that time and the Secured Lender and its advisors regarding any remaining issues to finalize the proposed purchase agreement for the Sale and related matters. In particular, the Trustee and his advisors were focused on confirming that the purchase agreement ultimately entered into with a successful bidder would have a high likelihood of closing, in addition to analyzing whether a chapter 11 plan of liquidation for the Debtor was possible in light of the anticipated proceeds of the Sale given the results of the Auction to date and what steps were necessary to confirm such a chapter 11 plan.

14. On January 11, 2023, the Trustee again opened the Auction with the Qualified Bidders and their advisors and the Secured Lender and its advisors in attendance. At this time, the Trustee determined, in consultation with the Secured Lender and its advisors to designate Quadrum Development Corp. as the Successful Bidder (as defined in the Bid Procedures Order).

15. Also on January 11, 2023, the Trustee reconvened the Auction to designate the Successful Bidder pursuant to the Purchase and Sale Agreement (the "Proposed Purchase Agreement") and related proposed form of order approving the Sale (the "Proposed Sale Order"), copies of which were attached as **Exhibit A** and **Exhibit B**, respectively, to the *Notice of (I) Trustee's Designation of Successful Bidder; and (II) Filing of (A) Sale and Purchase Agreement with Successful Bidder and (B) Proposed Sale Order* [Docket No. 869]. If the transactions contemplated by the Proposed Purchase Agreement do not close, the Trustee will promptly reconvene the Auction to permit the Secured Lender to tender a credit bid in accordance with its rights in this case.

## THE PROPOSED SALE TO THE SUCCESSFUL BIDDER
## IS IN THE BEST INTERESTS OF THE ESTATE

16.   The terms of the proposed Sale to the Successful Bidder set forth in the Proposed Purchase Agreement and Proposed Sale Order are fair and reasonable and in the best interests of the Debtor and its estate.  The Proposed Purchase Agreement provides for a purchase price of $96 million less certain insignificant adjustments and prorations set forth therein.  The proposed Sale is expected to close sometime in February or March 2023, subject to the satisfaction of certain conditions and Court approval.  Importantly, I understand that the Successful Bidder is aware that the Trustee can close the sale on a stand-alone basis pursuant to section 363 of the Bankruptcy Code or pursuant to a confirmed chapter 11 plan for the Debtor, which is also set forth in the Proposed Sale Order.

17.   I believe that the terms of the proposed Sale to the Successful Bidder are fair, reasonable, and market-tested.  The Trustee has determined, in the exercise of his reasonable business judgment and in consultation with the Secured Lender, that moving forward with the proposed Sale is in the best interests of the Debtor, its estate, and is the best ways to maximize value to creditors and all other parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        January 12, 2023

/s/ *Stephen S. Gray*
STEPHEN S. GRAY
Not Individually But Solely in His
Capacity as Chapter 11 Trustee