**Presentment Date: February 17, 2023 at 12:00 p.m. (Prevailing Eastern Time)**
**Objection Deadline: February 17, 2023 at 11:00 a.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger
Bryan M. Kotliar

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                                                 :           Chapter 11
                                                                          :
96 Wythe Acquisition, LLC,                               :           Case No. 21-22108 (SHL)
                                                                          :
                              Debtor.                            :
                                                                          :
-------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF PROPOSED**
**TWELFTH INTERIM ORDER FOR USE OF CASH COLLATERAL**

**PLEASE TAKE NOTICE THAT**, on February 26, 2021, the above-captioned

debtor (the "Debtor") filed the *Application to Use Cash Collateral* [Docket No. 4] (the

"Cash Collateral Motion").

**PLEASE TAKE FURTHER NOTICE THAT**, on May 27, 2022, the Court entered

the *Order Granting Motions to Appoint a Chapter 11 Trustee* [Docket No. 591], and on

May 31, 2022, the Court entered the *Order Granting the Application for Appointment of*

*Chapter 11 Trustee* [Docket No. 594] approving the appointment of Stephen S. Gray as

the Chapter trustee for the Debtor (the "Trustee").

**PLEASE TAKE FURTHER NOTICE THAT**, as of the date hereof, the Court has

entered orders approving the Cash Collateral Motion on an interim basis [Docket

Nos. 15, 21, 28, 52, 111, 141, 181, 225, 353, 449, and 685], including most recently on

September 19, 2022, the *Eleventh Interim Order for Use of Cash Collateral* [Docket No. 449] (the "Eleventh Interim Cash Collateral Order").

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Eleventh Interim Cash Collateral Order, the Court authorized the Debtor's use of Cash Collateral (as that term is defined in section 363(a) of the Bankruptcy Code) of the Lender (as defined below) on an interim basis pending a final hearing.

**PLEASE TAKE FURTHER NOTICE THAT** following discussions between the Trustee and his advisors and the Lender and its advisors, the Trustee and the Lender have reached agreement on a further interim order allowing for continued use of Cash Collateral pending a final hearing.

**PLEASE TAKE FURTHER NOTICE THAT** the proposed form of twelfth interim order approving the use of Cash Collateral is attached hereto as **Exhibit A** (the "Proposed Twelfth Interim Cash Collateral Order") and a redline of the Proposed Twelfth Interim Order against the Eleventh Interim Cash Collateral Order is attached hereto as **Exhibit B**.[1]

**PLEASE TAKE FURTHER NOTICE THAT** the only changes set forth in the Proposed Twelfth Interim Cash Collateral Order from the Tenth Interim Cash Collateral Order are:

(1)    addition of a termination event if the Trustee or the purchaser under the Sale terminates the purchase agreement and the Sale contemplated thereunder fails to close (*see* Proposed Twelfth Interim Order ¶ 1);

(2)    extension of the outside Termination Date for use of Cash Collateral until March 31, 2023 (*see id.*);

(3)    modification of the Permitted Budget Variance (*see id.* ¶ 2);

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Proposed Twelfth Interim Cash Collateral Order.

(4)     authorization to use Cash Collateral to pay certain additional administrative expenses as well to pay the Litigation Funding Amount for a chapter 11 plan (*see id.* ¶¶ 2 & 3(a));

(5)     modification of the Trustee's reporting obligations (*see id.* ¶ 3(d));

(6)     removal of the Milestones (*see id.* ¶ 3);

(7)     documentation of certain agreements reached with the Trustee and the Trustee Professionals regarding the deferral of certain fees and expenses of the Trustee and the Trustee Professionals (*see id.* ¶ 4); and

(8)     waiver of the estate's right to surcharge the Lender and the Lender's collateral (including Cash Collateral) pursuant to sections 506(c) and 105(a) and the "equities of the case" exception under section 552(b) of the Bankruptcy Code (*see id.* ¶¶ 9 & 10); and

(9)     updated Budget (*see id.* at Ex. 1).

**PLEASE TAKE FURTHER NOTICE THAT**, the Trustee will present for signature the annexed Proposed Twelfth Interim Cash Collateral Order to the Honorable Sean H. Lane, United States Bankruptcy Judge, in his Chambers, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601-4140, **on February 17, 2023 (the "<u>Presentment Date</u>") at 12:00 p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Order must be made in writing and conform with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and be filed with the Clerk of the Bankruptcy Court at the address set forth above, with a copy delivered directly to Bankruptcy Judge Lane's Chambers, and served upon (i) the undersigned proposed attorneys for the Trustee and (ii) the Office of the United States Trustee, Attn:  Greg M. Zipes, Trial Attorney (Greg.Zipes@usdoj.gov), so as **to be filed and actually received by all of them not later than 11:00 a.m. (prevailing Eastern Time) on February 17,**

**2023**.  If no timely written objections are filed and received in accordance with the foregoing, the Order may be signed by the Court.

PLEASE TAKE FURTHER NOTICE that, you may also obtain copies of any pleadings by visiting the Court's website at https://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

DATED:  February 7, 2023
          New York, New York

                        STEPHEN S. GRAY
                        Not Individually But Solely in His
                        Capacity as Chapter 11 Trustee
                        By His Attorneys,
                        TOGUT, SEGAL & SEGAL LLP
                        By:

                        */s/ Frank A. Oswald*
                        ALBERT TOGUT
                        FRANK A. OSWALD
                        NEIL BERGER
                        BRYAN M. KOTLIAR
                        One Penn Plaza, Suite 3335
                        New York, New York 10119
                        (212) 594-5000

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:                                                                    Chapter 11

96 WYTHE ACQUISITION LLC,                                 Case No. 21-22108 (SHL)

                    Debtor.

------------------------------------------------------------- X

<u>**TWELFTH INTERIM ORDER FOR USE OF CASH COLLATERAL**</u>

Upon the motion (the "<u>Cash Collateral Motion</u>") of 96 Wythe Acquisition LLC, the debtor

herein (the "<u>Debtor</u>") seeking the entry of an order pursuant to §§ 363(c)(2)(B) and 506(c) of title

11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 4001(b) of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") (A) authorizing the Debtor to use cash collateral,

as that term is defined in § 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>") on an interim

basis in accordance with the Budget annexed to the Cash Collateral Motion as Exhibit A, pending

a final hearing (B) granting adequate protection to Benefit Street Partners Realty Operating

Partnership, L.P. (the "<u>Lender</u>") and scheduling a Final Hearing (defined below) pursuant to

Bankruptcy Rule 4001; and there being due and sufficient notice of the Cash Collateral Motion

and each of the interim hearings held thereon between the filing of the Cash Collateral Motion and

the date hereof; and upon this Court's prior orders dated March 5, 2021 [ECF No. 15] (the "<u>First</u>

<u>Interim Order</u>"), March 19, 2021 [ECF No. 21] (the "<u>Second Interim Order</u>"), April 21, 2021 [ECF

No. 28] (the "<u>Third Interim Order</u>"), June 21, 2021 [ECF No. 52] (the "<u>Fourth Interim Order</u>"),

September 13, 2021 [ECF No. 111] (the "<u>Fifth Interim Order</u>"), October 13, 2021 [ECF No. 141]

(the "<u>Sixth Interim Order</u>"), November 10, 2021 [ECF No. 181] (the "<u>Seventh Interim Order</u>"),

December 14, 2021 [ECF No. 225] (the "<u>Eighth Interim Order</u>"), January 26, 2022 [ECF No. 353]

(the "Ninth Interim Order"), March 8, 2022 [ECF No. 449] (the "Tenth Interim Order"), and

September 19, 2022 [ECF No. 685] (the "Eleventh Interim Order") authorizing the Debtor's use

of cash collateral pending the Final Hearing; and

The Court having considered the Cash Collateral Motion, the pleadings filed with the

Court, including the objection to the Cash Collateral Motion filed by the Lender, the evidence

submitted and arguments proffered or adduced at various interim hearings held between the

Petition Date and the date hereof, first interim hearing (the "First Interim Hearing") held before

the Court on March 2, 2021, the second interim hearing (the "Second Interim Hearing") held before

the Court on March 15, 2021, the third interim hearing (the "Third Interim Hearing") held before

the Court on April 5, 2021, the fourth interim hearing (the "Fourth Interim Hearing") held before

the Court on June 2, 2021, the fifth interim hearing (the "Fifth Interim Hearing") held before the

Court on September 10, 2021,the sixth interim hearing (the "Sixth  Interim Hearing") held before

the Court on October 6, 2021, the seventh interim hearing (the "Seventh Interim Hearing") held

before the Court on November 5, 2021, the eighth interim hearing (the "Eighth Interim Hearing")

held before the Court on December 13, 2021, the ninth interim hearing (the "Ninth Interim

Hearing") held before the Court on January 27, 2022, and the tenth interim hearing (the "Tenth

Interim Hearing") held before the Court on February 8, 2022,[1] and the eleventh interim hearing

(the "Eleventh Interim Hearing") held before the Court on September 12, 2022, and the Debtor

and Trustee's use of cash collateral having continued through the date hereof by consent of the

parties; and it appearing that granting the interim relief requested as and to the extent provided in

---

[1] Subsequent to entry of the Tenth Interim Order, on May 27, 2022, this Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Dkt. No. 591].  On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Dkt. No. 592] and filed an application for the appointment of a Chapter 11 trustee [Dkt. No. 593], subject to Court approval. The Court entered its *Order Granting the Application for Appointment of Chapter 11 Trustee* [Dkt. No. 594] approving the appointment of Stephen S. Gray as Chapter 11 Trustee for the Debtor (the "Trustee") on May 31, 2022.

this twelfth interim order (the "Twelfth Interim Order") and entering this Twelfth Interim Order is necessary to avoid immediate and irreparable harm to the Debtor, its creditors and its estate pending the final hearing to be scheduled by the Court in accordance with paragraph 13 of this Twelfth Interim Order  (the "Final Hearing") and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The request to use Cash Collateral is granted on a further interim basis solely in accordance with and subject to the terms and conditions of this Twelfth Interim Order and shall terminate on the earliest to occur of (the "Termination Date"): (i) March 31, 2023, unless such date is extended by the Lender or a further extension of authority is granted by the Court, (ii) the entry of an order of this Court terminating such authority; (iii) the dismissal of the chapter 11 case (the "Case") or conversion to a case under chapter 7 of the Bankruptcy Code; (iv) if the Trustee or purchaser under the Sale (as defined below) terminates the purchase agreement and the Sale contemplated thereunder fails to close; and (v) the date that is five (5) days after the Lender provides a written notice of an Event of Default (the period during which the Trustee is authorized to use Cash Collateral pursuant to this Twelfth Interim Order being referred to as the "Interim Period"), except to the extent the Court has entered a further interim or final order authorizing the Trustee's continued use of Cash Collateral beyond the Interim Period.

2.      The Trustee may use the Cash Collateral during the Interim Period solely to pay the ordinary, necessary and reasonable expenses of operating the Williamsburg Hotel (the "Hotel") that come due (and as they come due in the ordinary course of business) during the Interim Period solely in accordance with and subject to the budget attached hereto as **Exhibit 1** (as may be

3

amended or revised in accordance with the final sentence of this paragraph 2, the "Budget"),
provided that payment of fees and expenses to the Trustee Professionals[2] shall be made in
accordance with appropriate orders of the Court and subject to paragraph 4 hereof.  The Trustee's
operation of the estate shall not result in actual Gross Departmental Profit being less than ninety-
five percent (95%) of the Gross Departmental Profit projected on the Budget for any month during
the term of this Twelfth Interim Order, without the prior written consent of the Lender (the
"Permitted Budget Variance").  For the avoidance of doubt, each of the Trustee Professionals are
entitled to bill and collect strictly in accordance with the line item allocated to such firm on the
Professional Accrual Schedule (as defined below), from which any Trustee Professional may
deviate solely upon the prior written approval of the Lender.  The Budget and any revisions or
modification thereto shall be in form and substance acceptable to the Lender in its sole discretion.[3]

      3.      Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, the Lender
is entitled to adequate protection to the extent that the imposition of the automatic stay under
section 362 of the Bankruptcy Code, or any use, sale, lease, depreciation, or disposition of its
collateral during the Interim Period results in a diminution in the value of its interests (to the extent
valid, perfected and enforceable) in the collateral (including from the use of Cash Collateral) from
and after the Petition Date (a "Diminution"). The Lender shall receive the following as adequate
protection of such interests:

      (a)     ***Adequate Protection Liens.*** To the extent of any Diminution, the Lender is
hereby granted additional and replacement valid, binding, enforceable, non-

---

[2] As used herein, "Trustee Professionals" means (a) Togut, Segal & Segal LLP (the "Togut Firm"), CohnReznick LLP ("CohnReznick"), Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen"), Garfunkel Wild, P.C. ("Garfunkel"), Cowan Liebowitz & Latman PC ("Cowan"), Bernstein Redo & Savitsky P.C. ("Bernstein"), A&G Realty Partners, LLC ("A&G") and Eastdil Secured, L.L.C. ("Eastdil") and any other professionals retained by the Trustee pursuant to an order of the Court.

[3] The Trustee and the Lender have agreed to negotiate in good faith regarding the estate's liquidity needs during the term of this Twelfth Interim Order through the closing of the Sale (as defined below).

avoidable, and automatically perfected postpetition security interests in and liens on (the "Adequate Protection Liens"), without the necessity of the execution by the Trustee (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment, property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and non-wholly owned subsidiaries, money, investment property, and causes of action (including avoidance actions and the proceeds thereof), and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "Postpetition Collateral"). The Adequate Protection Liens shall be junior only to: (A) the Lender's prepetition liens, and (B) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Lender's prepetition liens; *provided*, however, that the Adequate Protection Liens shall be subject to (w) omitted, (x) the Debtor's payment of fees incurred under 28 U.S.C. § 1930, and any other fees accrued, due and/or payable to the U.S. Trustee under applicable law through the closing of the Sale (as defined below), (y) statutory fees required to be paid to the Clerk of the Court, and (z) payment of fees to the Trustee and the Trustee Professionals pursuant to order of the Court (and subject to the agreements provided for below on the payment of fees to the Trustee and Trustee Professionals as provided for herein), accrued payroll, bonuses earned and payable under the *Order Authorizing the Implementation of a Non-Insider Employee Incentive Plan* [ECF No. 674], subject to a maximum amount of $467,656.03 with respect to such bonuses, payroll taxes, and trust fund taxes, including, without limitation, sales, use, and hotel occupancy taxes (with respect to all such payroll and trust fund taxes, as and to the extent incurred by the Debtor and its estate after the May 31, 2022 appointment of the Trustee), and (z) the Litigation Funding Amount (as defined below) ((w) through (z), the "Carve-Out"). Notwithstanding the foregoing, if the Lender funds and agrees to the use of its cash collateral to pay obligations covered by the Carve-Out, the Lender shall be granted first priority, automatically perfected Adequate Protection

5

Liens in all Post-Petition Collateral, plus the proceeds of any claims or causes of action held by the estate, including but not limited to under Chapter 5 of the Bankruptcy Code, in the amount so funded.

(b)     ***Superpriority Claim.*** To the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Lender is hereby granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in the Case, with the exception of the Carve-Out, to the extent of any Diminution (the "Superpriority Claim").

(c)     ***Inspection Rights.*** In addition to any and all rights the Lender has under its prepetition loan documents (the "Prepetition Loan Documents"), upon reasonable notice, the Trustee shall permit representatives, agents and employees of the Lender to (i) have reasonable access to and inspect the Debtor's assets (which access shall not unreasonably interfere with the Trustee's operations at the Hotel), including without limitation the Hotel, the ballroom, the rooftop, the water tower, all kitchens and common areas and a reasonable number of unoccupied hotel rooms on the day of inspection and (ii) examine the Debtor's books and records. The Trustee shall also maintain records regarding the sources and uses of all cash proceeds generated by the Debtor's business (including without limitation the payment of all expenses pursuant to the Budget) and, upon request, in a timely fashion provide the Lender with access to, and copies of, all such records.

(d)     ***Reporting Rights.*** In addition to any and all rights the Lender has under the Prepetition Loan Documents, the Trustee shall, in addition to filing required operating reports, reasonably promptly after the time periods below deliver to the Lender the following:

(i)      monthly income statements due twenty (20) business days following the end of the reporting month; and

(ii)     monthly STR Reports due twenty (20) business days following Trustee's receipt of the report.

The Lender reserves the rights to seek all other information available and reporting required or allowable under the loan documents and applicable law.

(e)     ***Insurance.*** The Trustee shall maintain all necessary insurance as required under the Prepetition Loan Documents, naming the Lender as a notice party and additional insured, and shall promptly provide the Lender with proofs of such insurance for the Hotel (including the Lender's collateral) and copies of all documents related to any insurance premium financing arrangement the Debtor may have.

(f)  ***Excess Cash Account.*** The Trustee shall deposit all cash it collects from the date of his appointment and pay expenditures from the Trustee's bank account established with Metropolitan Commercial Bank as depository (the "Trustee Bank Account") and shall maintain such cash in the Trustee Bank Account until further order of the Court. For the avoidance of doubt, the Lender's security interests in and liens on the Cash Collateral shall extend to the cash in the Trustee Bank Account, and such liens shall be automatically perfected without the need to execute any security or control agreements.

4.  Certain Matters Regarding the Trustee and the Trustee Professionals

(a)  In connection with the Budget, the Trustee and the Trustee Professionals have agreed with the Lender to the deferral of payment of an aggregate amount of $1,900,109 of their fees and expenses otherwise payable under the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses*, entered on October 18, 2022 [ECF No. 744] (the "Interim Compensation Order") and any other orders of the Court, along with any fees or expenses that are incurred or accrued in excess of any line item of the Professional Accrual Schedule (defined in Paragraph 4(c) below) and not approved in advance by Lender in writing, which shall be payable after the closing of the Sale from recoveries of estate assets not sold under the Sale Order (as defined below) (the "Deferred Fees"). This amount may be adjusted upon receipt by the estate of Excess Cash as set forth in Section 4(e) hereof.

(b)  The Trustee and Trustee Professionals shall be entitled to receive payment on account of their allowed administrative claims pursuant to appropriate order of the Court in amounts not greater than $4,660,650 from proceeds of the sale closed under the Sale Order (the "Sale").

(c)  The Trustee and Trustee Professionals have agreed to incur and accrue fees and expenses for services provided to the estate pursuant to the professional fee accrual schedule attached hereto as **Exhibit 2** (the "Professional Accrual Schedule"). The Trustee and Trustee Professionals shall not incur or accrue fees or expenses in excess of any line item on the Professional Accrual Schedule for any applicable month except as otherwise approved in advance by Lender in writing. The Trustee and Trustee Professionals shall inform the Lender of any anticipated overage of accrual of fees or expenses in excess of any projected monthly accrual on the Professional Accrual Schedule promptly after such excess becomes reasonably foreseeable but before they are incurred.

(d)  In accordance with paragraph 27 of the *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief*, entered on January 26,

7

2023 [ECF No. 881] (the "Sale Order"), upon the Closing of the Sale (each as defined in the Sale Order), the Trustee is authorized to distribute all proceeds of the Sale to the Lender other than as necessary to pay accrued and outstanding amounts under the Budget and Professional Accrual Schedule or as otherwise agreed by the Lender, including any fees and expenses of the Trustee and Trustee Professionals payable under the Interim Compensation Order or any other orders of the Court other than the Deferred Fees.

(e)     The amount of the Deferred Fees contemplates a deferral of 20% of fees and expenses incurred and accrued by professionals of the Trustee (other than A&G and Eastdil) (the "Designated Professionals") prior to the Closing of the Sale in the aggregate amount of $672,304.20.  To the extent that the performance of the Hotel would permit Lender to actually receive proceeds at the closing of the Sale in excess of $88,704,697, as projected by the Trustee and agreed to by Lender (such excess amounts referred to herein as the "Excess Cash"), then such Excess Cash may be escrowed at the closing of the Sale for payment to the Designated Professionals in a maximum amount of $168,076.05 on account of their Deferred Fees and payable upon further order of the Court, such that the Deferred Fees incurred by the Designated Professionals shall be reduced to $504,228.15, with any Excess Cash over such maximum amount being paid to Lender to reduce, as applicable, its secured claim or Senior Secured Amount as defined and allowed under the *Order Approving Settlement Agreement with Benefit Street Partners [Realty] Operating Partnership, L.P.* [Docket No. 753], or as otherwise provided by a confirmed Chapter 11 plan.

(f)     Notwithstanding anything to the contrary ordered by the Court or agreed to by Lender, the funding to be carved out of the Lender's cash collateral solely to fund pursuit of estate causes of action under a confirmed Chapter 11 plan or such litigation efforts of a Chapter 7 trustee shall be $150,000 (the "Litigation Funding Amount"), which shall be part of the Carve-Out hereinabove.

5.     The following events shall each constitute an event of default hereunder (each, an "Event of Default"): (i) the Trustee's failure to comply with any of the terms of this Twelfth Interim Order (including, without limitation, compliance with the Budget or meeting of a Milestone); (ii) the obtaining of credit or incurring of indebtedness outside of the ordinary course of business that is either secured by a security interest or lien that is equal or senior to any security interest or lien of the Lender or entitled to priority administrative status that is equal or senior to that granted to the Lender; and (iii) entry of an order by the Court granting relief from or modifying

8

the automatic stay under section 362 of the Bankruptcy Code to allow a creditor to execute upon or enforce a lien or security interest in any collateral that would have a material adverse effect on the business, operations, property or assets of the Debtor.

6.     The automatic stay is hereby modified solely to the extent necessary to permit the Trustee to take all actions necessary to implement this Twelfth Interim Order.

7.     Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Lender hereunder is insufficient to compensate for any Diminution. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Lender that the adequate protection granted herein does in fact adequately protect the Lender against any Diminution.

8.     This Twelfth Interim Order is without prejudice to the rights of the Lender to seek a modification of this Twelfth Interim Order, including a request for additional adequate protection or the termination of the Trustee's right to use Cash Collateral, after notice and a hearing, including a hearing noticed on an emergency basis, or the Trustee's right to oppose such relief. The Lender has expressly reserved, and this Twelfth Interim Order is without prejudice to, any and all rights and remedies of the Lender, including as to the appropriateness of any adequate protection that may be proposed in connection with any authorization to use Cash Collateral after the Interim Period. The Trustee expressly reserves the right to seek the use of Cash Collateral beyond the Interim Period, and the Lender reserves the right to oppose such relief.

9.     Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Lender's collateral (including Cash Collateral) or the Lender pursuant to sections 506(c)

or 105(a), or any similar principle of law or equity, without the prior written consent of the Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

10.     The Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Trustee shall not invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the proceeds, products, offspring or profits of any of the Lender's prepetition collateral (including Cash Collateral).

11.     Notwithstanding applicability of any Bankruptcy Rules, the terms and conditions of this Twelfth Interim Order shall be immediately effective and enforceable upon its entry.

12.     The Court has and will retain jurisdiction to enforce this Twelfth Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Twelfth Interim Order.

13.     Counsel for the Trustee may contact the Court to schedule the Final Hearing with respect to the entry of a final order approving the use of Cash Collateral on a final basis (the "Final Order"). The Trustee shall file the proposed form of Final Order on the docket of the Chapter 11 Case in advance of the Final Hearing.

14.     Any party who wishes to attend the Final Hearing, which will be a Zoom.gov hearing, is required to make arrangements through http://www.nysb.uscourts.gov/ecourt-appearances.

Dated: _____, 2023
          White Plains, New York

                                        _____
                                        HONORABLE SEAN H. LANE
                                        UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Budget**

## 96 Wythe Acquisition LLC

Projected Income Statement

| ($)<br>Month Ending:<br>Year: | | 1<br>Jan 31<br>2023 | 2<br>Feb 28<br>2023 | 3<br>Mar 31<br>2023 | | Total<br>Mar 31<br>2023 |
|---|---|---|---|---|---|---|
| Room Sold | | 2,708 | 2,826 | 3,190 | | 8,724 |
| Room Occupied | | 2,728 | 2,846 | 3,210 | | 8,784 |
| Rooms Available | | 4,557 | 4,116 | 4,557 | | 13,230 |
| Occupancy %(Sold) | | 59.4% | 68.7% | 70.0% | | 65.9% |
| Occupancy %(Total) | | 59.9% | 69.1% | 70.4% | | 66.4% |
| ADR | $ | 192.52 | $ 221.52 | $ 243.96 | $ | 220.72 |
| RevPAR | $ | 114.40 | $ 152.10 | $ 170.77 | $ | 145.54 |
| **REVENUE** | | | | | | |
| Total Room Revenue | | 521,299 | 626,024 | 778,197 | | 1,925,519 |
| Total Food & Beverage Revenue | | 401,056 | 469,519 | 520,300 | | 1,390,876 |
| Total Other Revenues | | 5,021 | 5,239 | 5,909 | | 16,169 |
| **Total Gross Revenue** | $ | 927,376 | $ 1,100,782 | $ 1,304,406 | $ | 3,332,564 |
| **EXPENSES** | | | | | | |
| Total Rooms Division Expenses | | 323,032 | 308,256 | 355,001 | | 986,290 |
| Total F&B Division Expenses | | 633,283 | 446,532 | 509,166 | | 1,588,981 |
| **Total Departmental Expenses** | $ | 956,315 | $ 754,788 | $ 864,168 | $ | 2,575,271 |
| **Gross Departmental Profit** | $ | (28,939) | $ 345,994 | $ 440,238 | $ | 757,293 |
| *Gross Departmental Profit Margin* | | *-3%* | *31%* | *34%* | | *22.7%* |
| **UNDISTRIBUTED OPERATING EXPENSES** | | | | | | |
| Total Administrative & General Division Expenses | | 204,043 | 196,259 | 224,174 | | 624,476 |
| Total IT Division Expenses | | 21,178 | 21,326 | 21,419 | | 63,923 |
| Total Sales & Marketing Expenses | | 90,263 | 86,099 | 95,243 | | 271,605 |
| Total Property Operations & Maintenance Expenses | | 72,222 | 71,861 | 80,739 | | 224,822 |
| Utilities | | 59,673 | 58,452 | 54,490 | | 172,616 |
| **Total Undistributed Operating Expenses** | $ | 447,380 | $ 433,997 | $ 476,066 | $ | 1,357,442 |
| **Total Operating Expenses** | $ | 1,403,695 | $ 1,188,785 | $ 1,340,234 | $ | 3,932,713 |
| **Gross Operating Profit** | $ | (476,318) | $ (88,003) | $ (35,828) | $ | (600,150) |
| *Gross Operating Profit Margin* | | *-51%* | *-8%* | *-3%* | | *-18.0%* |
| Property & Liability Insurance | | 97,660 | 83,212 | 83,212 | | 264,084 |
| Property Taxes | | 115,000 | 115,000 | 115,000 | | 345,000 |
| **EBITDA** | | (688,979) | (286,215) | (234,040) | | (1,209,234) |
| *EBITDA Margin* | | *-74%* | *-26%* | *-18%* | | *-36.3%* |
| Replacement Reserve @ Funded Level - 4% | | 37,095 | 44,031 | 52,176 | | 133,303 |
| **EBITDA less Replacement Reserve** | | (726,074) | (330,247) | (286,216) | | (1,342,536) |
| *EBITDA less Replacement Reserve Margin* | | *-78.3%* | *-30.0%* | *-21.9%* | | *-40.3%* |
| Benefit Street Partners Realty Operating Partnership, L.P.[2] | | 348,411 | 932,312 | 938,168 | | 2,218,891 |
| **Income (Loss) Before Restructuring-Related Expenses** | | (1,074,485) | (1,262,558) | (1,224,384) | | (3,561,427) |
| **Restructuring-Related Expenses** | | | | | | |
| U.S. Trustee | | 14,831 | 10,548 | 13,902 | | 39,281 |
| Chapter 11 Trustee | | 27,807 | 26,420 | 26,066 | | 80,293 |
| Chapter 11 Trustee Professionals Fees | | 337,000 | 285,000 | 280,000 | | 902,000 |
| Ch. 11 Trustee Distribution Agent | | 7,500 | 7,500 | 7,500 | | 22,500 |
| Other Restructuring Related Expenses | | 10,000 | - | - | | 10,000 |
| Employee Performance Incentive Plan ("EPIP") | | 500,000 | - | - | | 500,000 |
| Deferred Maintenance and Capex Expenses | | 75,789 | - | - | | 75,789 |
| **Total Restructuring-Related Expenses** | | 1,058,857 | 350,718 | 348,718 | | 1,758,293 |
| **Total Net Income** | $ | (2,133,341) | $ (1,613,277) | $ (1,573,101) | $ | (5,319,720) |

**96 Wythe Acquisition LLC**

*Proposed January 2023 Projections to the Cash Collateral Budget*

| ($)<br>Month Ending:<br>Year: | I<br>Jan 31<br>2023 |
|---|---:|
| Beginning Cash Balance (Book) | 1,203,779 |
| **CASH RECEIPTS** | |
| Total Room Receipt | 406,129 |
| Total Food & Beverage Receipt | 401,056 |
| Total Other Receipts | 5,021 |
| **Net Cash Receipts** | **$ 812,206** |
| **OPERATING DISBURSEMENTS** | |
| Inventory Purchases | 90,057 |
| All Departments Salary & Wages | 610,214 |
| All Departments Payroll Taxes/Benefits | 151,741 |
| Prepaid Expenses | 21,252 |
| Other Operating Expenses | 618,337 |
| Property & Liability Insurance | 128,078 |
| Post-Petition Property Taxes | - |
| Utilities | 59,673 |
| **Total Operating Disbursements** | **$ 1,679,351** |
| **Net Cash Flow – Before Non-Operating Activities** | **$ (867,145)** |
| *Cumulative Net Cash Flow* | *(867,145)* |
| **NON-OPERATING DISBURSEMENTS** | |
| **Investing Disbursements** | |
| Capital Expenditures | 10,000 |
| **Total Investing Disbursements** | **10,000** |
| **Restructuring-Related Disbursements** | |
| Ch. 11 Trustee Fees | - |
| Ch. 11 Trustee Professionals Fees | - |
| Togut, Segal, & Segal LLP Fees | - |
| CohnReznick LLP Fees | - |
| Other Ch. 11 Professionals Fees | - |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel Fees | - |
| Garfunkel Wild, P.C. – Employment/RE Counsel Fees | - |
| Cowan Liebowitz & Latman PC Fees | - |
| Bernstein Redo & Savitsky P.C. Fees | - |
| Miller Advertising Agency, Inc. Fees | - |
| Ch. 11 Trustee Distribution Agent Fees | 7,500 |
| US Trustee Fees | 71,183 |
| Examiner and Professionals Fees | - |
| Other Restructuring Related Disbursements | 10,000 |
| Employee Performance Incentive Plan ("EPIP") | - |
| Deferred Maintenance and Capex | 75,789 |
| **Total Restructuring-Related Disbursements** | **164,472** |
| **Total Non-Operating Disbursements** | **$ 174,472** |
| **Net Cash Flow - After Restructuring Disbursements** | **(1,041,617)** |
| *Minimum Cash Balance* | *150,000* |
| **Book Cash Foll-forward:** | |
| Beginning Cash Balance (Book) | 1,203,779 |
| Net Cash Flow Change Increase / (Decrease) | (1,041,617) |
| Voluntary Contribution- Quadrum Draw | - |
| Voluntary Contribution- Quadrum Payment | - |
| **Ending Cash Balance (Book)** | **162,162** |

**96 Wythe Acquisition LLC**
Proposed February - March 2023 Projections to the Cash Collateral Budget

| ($)<br>Month Ending:<br>Year: | I<br>Feb 28<br>2023 | 2<br>Mar 3I<br>2023 | Total<br>Mar 3I<br>2023 |
|---|---|---|---|
| Beginning Cash Balance (Book) | I62,I62 | I50,000 | I62,I62 |
| ¹Accrued and Unpaid Operating Expenses | – | – | – |
| Net Beginning Cash Available (Book) | I62,I62 | I50,000 | I62,I62 |
| **CASH RECEIPTS** | | | |
| Total Room Receipt | 831,603 | 1,211,512 | 2,043,115 |
| Total Food & Beverage Receipt | 469,519 | 520,300 | 989,819 |
| Total Other Receipts | 5,239 | 5,909 | 11,148 |
| Net Cash Receipts | $ 1,306,362 | $ 1,737,72I | $ 3,044,082 |
| **OPERATING DISBURSEMENTS** | | | |
| Inventory Purchases | 106,603 | 135,726 | 242,329 |
| All Departments Salary & Wages | 568,359 | 650,157 | 1,218,516 |
| All Departments Payroll Taxes/Benefits | 131,157 | 129,559 | 260,716 |
| Prepaid Expenses | 21,372 | 21,676 | 43,049 |
| Other Operating Expenses | 304,272 | 332,473 | 636,745 |
| Property & Liability Insurance | 53,629 | 79,612 | 133,241 |
| Post-Petition Property Taxes | – | – | – |
| Utilities | 58,452 | 54,490 | 112,942 |
| Total Operating Disbursements | $ 1,243,845 | $ 1,403,693 | $ 2,647,538 |
| Net Cash Flow - Before Non-Operating Activities | $ 62,517 | $ 334,028 | $ 396,545 |
| *Cumulative Net Cash Flow* | *62,517* | *396,545* | *396,545* |
| **NON-OPERATING DISBURSEMENTS** | | | |
| **Investing Disbursements** | | | |
| Capital Expenditures | 10,000 | 10,000 | 20,000 |
| Total Investing Disbursements | 10,000 | 10,000 | 20,000 |
| **Restructuring-Related Disbursements** | | | |
| Ch. II Trustee Fees | – | – | – |
| Ch. II Trustee Professionals Fees | – | – | – |
| Togut, Segal, & Segal LLP Fees | – | – | – |
| CohnReznick LLP Fees | – | – | – |
| Other Ch. II Professionals Fees | – | – | – |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel Fees | – | – | – |
| Garfunkel Wild, P.C. – Employment/RE Counsel Fees | – | – | – |
| Cowan Liebowitz & Latman PC Fees | – | – | – |
| Bernstein Redo & Savitsky P.C. Fees | – | – | – |
| Miller Advertising Agency, Inc. Fees | – | – | – |
| Ch. II Trustee Distribution Agent Fees | 7,500 | 7,500 | 15,000 |
| US Trustee Fees | – | – | – |
| Examiner and Professionals Fees | – | – | – |
| Other Restructuring Related Disbursements | – | – | – |
| Employee Performance Incentive Plan ("EPIP") | 500,000 | – | 500,000 |
| Deferred Maintenance and Capex | – | – | – |
| Total Restructuring-Related Disbursements | 507,500 | 7,500 | 515,000 |
| Total Non-Operating Disbursements | $ 517,500 | $ 17,500 | $ 535,000 |
| Net Cash Flow - After Restructuring Disbursements | (454,983) | 316,528 | (138,455) |
| *Minimum Cash Balance* | I50,000 | I50,000 | I50,000 |
| **Book Cash Foll-forward:** | | | |
| Beginning Cash Balance (Book) | 162,162 | 150,000 | 162,162 |
| Net Cash Flow Change Increase / (Decrease) | (454,983) | 316,528 | (138,455) |
| Voluntary Contribution- Quadrum Draw | (442,821) | – | (442,821) |
| Voluntary Contribution- Quadrum Payment | – | 316,528 | 316,528 |
| Ending Cash Balance (Book) | I50,000 | I50,000 | I50,000 |
| ¹Accrued and Unpaid Operating Expenses | – | – | – |
| Net Ending Cash Available (Book) | I50,000 | I50,000 | I50,000 |

Notes:

1. Accrued and Unpaid Operating Expenses excludes the Real Estate Taxes, which are currently projected to be paid at the Effective Date out of transaction proceeds.

**<u>Exhibit 2</u>**

**Professional Accrual Schedule**

**96 Wythe Acquisition LLC**

Ch. 11 Trustee Professional Variance Summary

|  | | Original Close | | Projected Close | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ($)<br>Month Ending:<br>Year: | -6<br>Jun 30<br>2022 | -5<br>Jul 31<br>2022 | -4<br>Aug 31<br>2022 | -3<br>Sep 30<br>2022 | -2<br>Oct 31<br>2022 | -1<br>Nov 30<br>2022 | 0<br>Dec 31<br>2022 | 1<br>Jan 31<br>2023 | 2<br>Feb 28<br>2023 | 3<br>Mar 31<br>2023 | TOTAL<br>Mar 31<br>2023 |
| **Fee Accruals Projected per Filed Cash Collateral Budget** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ 325,000 | $ 410,000 | $ 375,000 | $ 375,000 | $ 350,000 | $ 350,000 | $ 300,000 | $ - | $ - | $ - | $ 2,485,000 |
| CohnReznick LLP | 347,200 | 266,950 | 159,800 | 129,950 | 150,000 | 172,000 | 187,450 | | | | 1,413,350 |
| **Total Fee Accruals Projected** | $ 672,200 | $ 676,950 | $ 534,800 | $ 504,950 | $ 500,000 | $ 522,000 | $ 487,450 | $ - | $ - | $ - | 3,898,350 |
| | | | | | | | | | | | |
| **Actual Fee Accruals (Through December 2022)** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ 328,559 | $ 390,794 | $ 429,406 | $ 383,379 | $ 455,556 | $ 350,000 | $ 285,000 | $ 185,000 | $ 175,000 | $ 175,000 | $ 3,157,094 |
| CohnReznick LLP | 308,019 | 234,760 | 285,458 | 150,574 | 234,075 | 165,466 | 168,000 | 152,000 | 110,000 | 105,000 | 1,913,353 |
| **Total Actual Fee Accruals** | $ 636,578 | $ 624,954 | $ 714,865 | $ 533,953 | $ 689,632 | $ 515,466 | $ 453,000 | $ 337,000 | $ 285,000 | $ 280,000 | $ 5,070,447 |
| | | | | | | | | | | | |
| **Variance by Month** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ (3,559) | $ 19,806 | $ (54,406) | $ (8,379) | $ (105,556) | $ - | $ 15,000 | N/A | N/A | N/A | $ (137,094) |
| CohnReznick LLP | 39,181 | 32,190 | (125,658) | (20,624) | (84,075) | 6,534 | 19,450 | N/A | N/A | N/A | (133,003) |
| **Total Variance by Month** | $ 35,622 | $ 51,996 | $ (180,065) | $ (29,003) | $ (189,632) | $ 6,534 | $ 34,450 | $ - | $ - | $ - | $ (270,097) |
| | | | | | | | | | | | |
| **Fee Payments Projected per Filed Cash Collateral Budget** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ - | $ - | $ 260,000 | $ 328,000 | $ 300,000 | $ 300,000 | $ 280,000 | $ - | $ - | $ - | $ 1,468,000 |
| CohnReznick LLP | - | - | 277,800 | 213,600 | 127,880 | 104,000 | 120,040 | | | | 843,320 |
| **Total Fee Payments Projected** | $ - | $ - | $ 537,800 | $ 541,600 | $ 427,880 | $ 404,000 | $ 400,040 | $ - | $ - | $ - | 2,311,320 |
| | | | | | | | | | | | |
| **Actual Fee Payments (Through December 2022)** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ - | $ - | $ - | $ - | $ - | $ 576,061 | $ 651,426 | $ - | $ - | $ - | $ 1,227,487 |
| CohnReznick LLP | - | - | - | - | - | 436,276 | 349,560 | | | | 785,836 |
| **Total Actual Fee Payments** | $ - | $ - | $ - | $ - | $ - | $ 1,012,337 | $ 1,000,986 | $ - | $ - | $ - | $ 2,013,323 |
| | | | | | | | | | | | |
| **Variance by Month** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ - | $ - | $ 260,000 | $ 328,000 | $ 300,000 | $ (276,061) | $ (371,426) | $ - | $ - | $ - | $ 240,513 |
| CohnReznick LLP | - | - | 277,800 | 213,600 | 127,880 | (332,276) | (229,520) | | | | 57,484 |
| **Total Variance by Month** | $ - | $ - | $ 537,800 | $ 541,600 | $ 427,880 | $ (608,337) | $ (600,946) | $ - | $ - | $ - | $ 297,997 |
| | | | | | | | | | | | |
| **Actual Rolling Accrued and Unpaid Fees** | | | | | | | | | | | |
| Togut, Segal & Segal LLP | $ 328,559 | $ 718,753 | $ 1,148,159 | $ 1,531,538 | $ 1,987,094 | $ 1,761,033 | $ 1,394,607 | $ 1,579,607 | $ 1,754,607 | $ 1,929,607 | $ 1,929,607 |
| CohnReznick LLP | 308,019 | 542,779 | 828,237 | 978,811 | 1,212,887 | 942,077 | 760,517 | 912,517 | 1,022,517 | 1,127,517 | 1,127,517 |
| **Total Variance by Month** | $ 636,578 | $ 1,261,532 | $ 1,976,397 | $ 2,510,350 | $ 3,199,981 | $ 2,703,110 | $ 2,155,124 | $ 2,492,124 | $ 2,777,124 | $ 3,057,124 | $ 3,057,124 |

**96 Wythe Acquisition LLC**

Ch. 11 Trustee Other Counsel Variance Summary

Original Close → column **0 (Dec 31 2022)**; Projected Close → column **3 (Mar 31 2023)**

| ($) Month Ending / Year | -6 Jun 30 2022 | -5 Jul 31 2022 | -4 Aug 31 2022 | -3 Sep 30 2022 | -2 Oct 31 2022 | -1 Nov 30 2022 | 0 Dec 31 2022 | 1 Jan 31 2023 | 2 Feb 28 2023 | 3 Mar 31 2023 | TOTAL Mar 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Fee Accruals Projected per Filed Cash Collateral Budget** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | 1,250 | 1,250 | 1,250 | 1,250 | - | - | - | 5,000 |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | 20,000 | 20,000 | 20,000 | 20,000 | - | - | - | 80,000 |
| Cowan Liebowitz & Latman PC | - | - | - | 37,500 | 37,500 | 37,500 | 37,500 | - | - | - | 150,000 |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | - | - | - | - | - | - |
| Miller Advertising Agency, Inc. | - | - | - | - | - | - | - | - | - | - | - |
| **Total Fee Accruals Projected** | - | - | - | 58,750 | 58,750 | 58,750 | 58,750 | - | - | - | 235,000 |
| **Actual Fee Accruals (Through December 2022)** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 8,750 |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | 10,939 | 30,682 | 12,010 | 33,369 | 47,180 | 20,000 | 20,000 | 174,180 |
| Cowan Liebowitz & Latman PC | - | - | - | - | - | 40,110 | 40,574 | 37,500 | - | - | 118,184 |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | 3,284 | - | - | - | - | 3,284 |
| Miller Advertising Agency, Inc. | - | - | - | - | 5,670 | - | - | - | - | - | 5,670 |
| **Total Actual Fee Accruals** | - | - | - | 12,189 | 37,602 | 56,654 | 75,193 | 85,930 | 21,250 | 21,250 | 310,067 |
| **Variance by Month** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | - | - | - | - | N/A | N/A | N/A | - |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | 9,061 | (10,682) | 7,990 | (13,369) | N/A | N/A | N/A | (7,000) |
| Cowan Liebowitz & Latman PC | - | - | - | 37,500 | 37,500 | (2,610) | (3,074) | N/A | N/A | N/A | 69,316 |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | (3,284) | - | N/A | N/A | N/A | (3,284) |
| Miller Advertising Agency, Inc. | - | - | - | - | (5,670) | - | - | N/A | N/A | N/A | (5,670) |
| **Total Variance by Month** | - | - | - | 46,561 | 21,148 | 2,096 | (16,443) | - | - | - | 53,363 |
| **Fee Payments Projected per Filed Cash Collateral Budget** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | - | - | - | - | - | - | - | - |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | - | - | - | - | - | - | - | - |
| Cowan Liebowitz & Latman PC | - | - | - | - | - | - | - | - | - | - | - |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | - | - | - | - | - | - |
| Miller Advertising Agency, Inc. | - | - | - | - | - | - | - | - | - | - | - |
| **Total Fee Payments Projected** | - | - | - | - | - | - | - | - | - | - | - |
| **Actual Fee Payments (Through December 2022)** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | - | - | - | - | - | - | - | - |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | - | - | - | - | - | - | - | - |
| Cowan Liebowitz & Latman PC | - | - | - | - | - | - | - | - | - | - | - |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | - | - | - | - | - | - |
| Miller Advertising Agency, Inc. | - | - | - | - | 5,670 | - | - | - | - | - | 5,670 |
| **Total Actual Fee Payments** | - | - | - | - | 5,670 | - | - | - | - | - | 5,670 |
| **Variance by Month** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | - | - | - | - | - | - | - | - |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | - | - | - | - | - | - | - | - |
| Cowan Liebowitz & Latman PC | - | - | - | - | - | - | - | - | - | - | - |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | - | - | - | - | - | - |
| Miller Advertising Agency, Inc. | - | - | - | - | (5,670) | - | - | - | - | - | (5,670) |
| **Total Variance by Month** | - | - | - | - | (5,670) | - | - | - | - | - | (5,670) |
| **Actual Rolling Accrued and Unpaid Fees** | | | | | | | | | | | |
| Fragomen, Del Rey, Bernsen & Loewy LLP – Immigration Counsel | - | - | - | 1,250 | 2,500 | 3,750 | 5,000 | 6,250 | 7,500 | 8,750 | 8,750 |
| Garfunkel Wild, P.C. – Employment/RE Counsel | - | - | - | 10,939 | 41,621 | 53,631 | 87,000 | 134,180 | 154,180 | 174,180 | 174,180 |
| Cowan Liebowitz & Latman PC | - | - | - | - | - | 40,110 | 80,684 | 118,184 | 118,184 | 118,184 | 118,184 |
| Bernstein Redo & Savitsky P.C. | - | - | - | - | - | 3,284 | 3,284 | 3,284 | 3,284 | 3,284 | 3,284 |
| Miller Advertising Agency, Inc. | - | - | - | - | - | - | - | - | - | - | - |
| **Total Variance by Month** | - | - | - | 12,189 | 44,121 | 100,774 | 175,967 | 261,897 | 283,147 | 304,397 | 304,397 |

**EXHIBIT B**

**Redline Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In re:                                                                          Chapter 11

96 WYTHE ACQUISITION LLC,                              Case No. 21-22108 (SHL)

                                      Debtor.

------------------------------------------------------------------ X

## ~~ELEVENTH~~TWELFTH INTERIM ORDER FOR USE OF CASH COLLATERAL

Upon the motion (the "Cash Collateral Motion") of 96 Wythe Acquisition LLC, the debtor herein (the "Debtor") seeking the entry of an order pursuant to §§ 363(c)(2)(B) and 506(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (A) authorizing the Debtor to use cash collateral, as that term is defined in § 363(a) of the Bankruptcy Code (the "Cash Collateral") on an interim basis in accordance with the Budget annexed to the Cash Collateral Motion as Exhibit A, pending a final hearing (B) granting adequate protection to Benefit Street Partners Realty Operating Partnership, L.P. (the "Lender") and scheduling a Final Hearing (defined below) pursuant to Bankruptcy Rule 4001; and there being due and sufficient notice of the Cash Collateral Motion and each of the interim hearings held thereon between the filing of the Cash Collateral Motion and the date hereof; and upon this Court's prior orders dated March 5, 2021 [ECF No. 15] (the "First Interim Order"), March 19, 2021 [ECF No. 21] (the "Second Interim Order"), April 21, 2021 [ECF No. 28] (the "Third Interim Order"), June 21, 2021 [ECF No. 52] (the "Fourth Interim Order"), September 13, 2021 [ECF No. 111] (the "Fifth Interim Order"), October 13, 2021 [ECF No. 141] (the "Sixth Interim Order"), November 10, 2021 [ECF No. 181] (the "Seventh Interim Order"), December 14, 2021 [ECF No. 225] (the "Eighth Interim Order"), January 26, 2022 [ECF No. 353]

(the "Ninth Interim Order"), and March 8, 2022 [ECF No. 449] (the "Tenth Interim Order"), and

September 19, 2022 [ECF No. 685] (the "Eleventh Interim Order") authorizing the Debtor's use

of cash collateral pending the Final Hearing; and

The Court having considered the Cash Collateral Motion, the pleadings filed with the

Court, including the objection to the Cash Collateral Motion filed by the Lender, the evidence

submitted and arguments proffered or adduced at various interim hearings held between the

Petition Date and the date hereof, first interim hearing (the "First Interim Hearing") held before

the Court on March 2, 2021, the second interim hearing (the "Second Interim Hearing") held before

the Court on March 15, 2021, the third interim hearing (the "Third Interim Hearing") held before

the Court on April 5, 2021, the fourth interim hearing (the "Fourth Interim Hearing") held before

the Court on June 2, 2021, the fifth interim hearing (the "Fifth Interim Hearing") held before the

Court on September 10, 2021,the sixth interim hearing (the "Sixth  Interim Hearing") held before

the Court on October 6, 2021, the seventh interim hearing (the "Seventh Interim Hearing") held

before the Court on November 5, 2021, the eighth interim hearing (the "Eighth Interim Hearing")

held before the Court on December 13, 2021, the ninth interim hearing (the "Ninth Interim

Hearing") held before the Court on January 27, 2022, and the tenth interim hearing (the "Tenth

Interim Hearing") held before the Court on February 8, 2022,[1] and the eleventh interim hearing

(the "Eleventh Interim Hearing") held before the Court on September 12, 2022, and the Debtor

and Trustee's use of cash collateral having continued through the date hereof by consent of the

parties; and it appearing that granting the interim relief requested as and to the extent provided in

---

[1] Subsequent to entry of the Tenth Interim Order, on May 27, 2022, this Court entered its *Order Granting Motions to Appoint a Chapter 11 Trustee* [Dkt. No. 591].  On May 31, 2022, the United States Trustee filed his *Notice of Appointment of Chapter 11 Trustee* [Dkt. No. 592] and filed an application for the appointment of a Chapter 11 trustee [Dkt. No. 593], subject to Court approval. The Court entered its *Order Granting the Application for Appointment of Chapter 11 Trustee* [Dkt. No. 594] approving the appointment of Stephen S. Gray as Chapter 11 Trustee for the Debtor (the "Trustee") on May 31, 2022.

this ~~eleventh~~twelfth interim order (the "~~Eleventh~~Twelfth _Interim Order_") and entering this ~~Eleventh~~Twelfth Interim Order is necessary to avoid immediate and irreparable harm to the Debtor, its creditors and its estate pending the final hearing to be scheduled by the Court in accordance with paragraph ~~10~~13 of this ~~Eleventh~~Twelfth Interim Order (the "_Final Hearing_") and otherwise is fair and reasonable and in the best interests of the Debtor, its estate and its creditors, and equity holders, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The request to use Cash Collateral is granted on a further interim basis solely in accordance with and subject to the terms and conditions of this ~~Eleventh~~Twelfth Interim Order and shall terminate on the earliest to occur of (the "_Termination Date_"): (i) ~~January~~March 31, 2023, unless such date is extended by the Lender or a further extension of authority is granted by the Court, (ii) the entry of an order of this Court terminating such authority; (iii) the dismissal of the chapter 11 case (the "_Case_") or conversion to a case under chapter 7 of the Bankruptcy Code; ~~and~~ ~~(iv)~~(iv) if the Trustee or purchaser under the Sale (as defined below) terminates the purchase agreement and the Sale contemplated thereunder fails to close; and (v) the date that is five (5) days after the Lender provides a written notice of an Event of Default (the period during which the Trustee is authorized to use Cash Collateral pursuant to this ~~Eleventh~~Twelfth Interim Order being referred to as the "_Interim Period_"), except to the extent the Court has entered a further interim or final order authorizing the Trustee's continued use of Cash Collateral beyond the Interim Period.

2.     The Trustee may use the Cash Collateral during the Interim Period solely to pay the ordinary, necessary and reasonable expenses of operating the Williamsburg Hotel (the "_Hotel_") that come due (and as they come due in the ordinary course of business) during the Interim Period solely in accordance with and subject to the budget attached hereto as **_Exhibit 1_** (as may be

3

amended or revised in accordance with the final sentence of this paragraph 2, the "Budget"), provided that payment of fees and expenses to the ~~Trustee's professionals~~ Trustee Professionals[2] shall be made in accordance with appropriate orders of the Court, and subject to paragraph 4 hereof.  The Trustee's ~~actual disbursements~~ operation of the estate shall not ~~exceed 110% of the cumulative net cash flow~~ result in actual Gross Departmental Profit being less than ninety-five percent (95%) of the Gross Departmental Profit projected on ~~a monthly basis~~ the Budget for any month during the term of this Twelfth Interim Order, without the prior written consent of the Lender (the "Permitted Budget Variance").  For the avoidance of doubt, each of the Trustee Professionals are entitled to bill and collect strictly in accordance with the line item allocated to such firm on the Professional Accrual Schedule (as defined below), from which any Trustee Professional may deviate solely upon the prior written approval of the Lender.  The Budget and any revisions or modification thereto shall be in form and substance acceptable to the Lender in its sole discretion.[3]

3.    Pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, the Lender is entitled to adequate protection to the extent that the imposition of the automatic stay under section 362 of the Bankruptcy Code, or any use, sale, lease, depreciation, or disposition of its collateral during the Interim Period results in a diminution in the value of its interests (to the extent valid, perfected and enforceable) in the collateral (including from the use of Cash Collateral) from

---

[2] As used herein, "Trustee Professionals" means (a) Togut, Segal & Segal LLP (the "Togut Firm"), CohnReznick LLP ("CohnReznick"), Fragomen, Del Rey, Bernsen & Loewy LLP ("Fragomen"), Garfunkel Wild, P.C. ("Garfunkel"), Cowan Liebowitz & Latman PC ("Cowan"), Bernstein Redo & Savitsky P.C. ("Bernstein"), A&G Realty Partners, LLC ("A&G") and Eastdil Secured, L.L.C. ("Eastdil") and any other professionals retained by the Trustee pursuant to an order of the Court.

[3] The Trustee and the Lender have agreed to negotiate in good faith regarding the estate's liquidity needs during the term of this Twelfth Interim Order through the closing of the Sale (as defined below).

4

and after the Petition Date (a "<u>Diminution</u>"). The Lender shall receive the following as adequate protection of such interests:

(a)     ***Adequate Protection Liens.*** To the extent of any Diminution, the Lender is hereby granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on (the "<u>Adequate Protection Liens</u>"), without the necessity of the execution by the Trustee (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all property, whether now owned or hereafter acquired or existing and wherever located, of the Debtor and the Debtor's "estate" (as created pursuant to section 541(a) of the Bankruptcy Code), of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment, property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), other equity or ownership interests, including equity interests in any subsidiaries and non-wholly owned subsidiaries, money, investment property, and causes of action (including ~~causes of action arising other than, for purposes of this Eleventh Interim Order,~~ avoidance actions and the proceeds thereof), and all products, proceeds and supporting obligations of the foregoing, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located (collectively, the "<u>Postpetition Collateral</u>"). The Adequate Protection Liens shall be junior only to: (A) the Lender's prepetition liens, and (B) other unavoidable liens, if any, existing as of the Petition Date that are senior in priority to the Lender's prepetition liens; *provided*, however, that the Adequate Protection Liens shall be subject to (w) ~~a $10,000 carve-out for chapter 7 administration expenses to the extent necessary~~<u>omitted</u>, (x) the Debtor's payment of fees incurred under 28 U.S.C. § 1930<u>, and any other fees accrued, due and/or payable to the U.S. Trustee under applicable law through the closing of the Sale (as defined below),</u> (y) statutory fees required to be paid to the Clerk of the Court, and (z) payment of fees to the Trustee and the ~~professionals of the~~ Trustee <u>Professionals</u> pursuant to order of the Court~~,~~<u> (and subject to the agreements provided for below on the payment of fees to the Trustee and Trustee Professionals as provided for herein),</u> accrued payroll, bonuses earned and payable under the *Order Authorizing the Implementation of a Non-Insider Employee Incentive Plan* [ECF No. 674], subject to a maximum amount of

$~~~750,000~~467,656.03 with respect to such bonuses, payroll taxes, and trust fund taxes, including, without limitation, sales, use, and hotel occupancy taxes (with respect to all such payroll and trust fund taxes, as and to the extent incurred by the Debtor and its estate after the May 31, 2022 appointment of the Trustee), and (z) the Litigation Funding Amount (as defined below) ((w) through (z), the "Carve-Out"). Notwithstanding the foregoing, if the Lender funds and agrees to the use of its cash collateral to pay obligations covered by the Carve-Out, the Lender shall be granted first priority, automatically perfected Adequate Protection Liens in all Post-Petition Collateral, plus the proceeds of any claims or causes of action held by the estate, including but not limited to under Chapter 5 of the Bankruptcy Code, in the amount so funded.

(b)     ***Superpriority Claim.*** To the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Lender is hereby granted an allowed administrative expense claim in the Case ahead of and senior to any and all other administrative expense claims in the Case, with the exception of the Carve-Out, to the extent of any Diminution (the "Superpriority Claim").

(c)     ***Inspection Rights.*** In addition to any and all rights the Lender has under its prepetition loan documents (the "Prepetition Loan Documents"), upon reasonable notice, the Trustee shall permit representatives, agents and employees of the Lender to (i) have reasonable access to and inspect the Debtor's assets (which access shall not unreasonably interfere with the Trustee's operations at the Hotel), including without limitation the Hotel, the ballroom, the rooftop, the water tower, all kitchens and common areas and a reasonable number of unoccupied hotel rooms on the day of inspection and (ii) examine the Debtor's books and records. The Trustee shall also maintain records regarding the sources and uses of all cash proceeds generated by the Debtor's business (including without limitation the payment of all expenses pursuant to the Budget) and, upon request, in a timely fashion provide the Lender with access to, and copies of, all such records.

(d)     ***Reporting Rights.*** In addition to any and all rights the Lender has under the Prepetition Loan Documents, the Trustee shall, in addition to filing required operating reports, reasonably promptly ~~(but no later than~~after the ~~dates set forth~~time periods below~~), provide~~ deliver to the Lender ~~and counsel to~~ the ~~Lender with accurate current reporting of operating and financial information, including~~following:

~~(i)     monthly forward booking reports for all revenue outlets (rooms, restaurant, banquet, etc.) due thirty (30) calendar days prior to the reporting month;~~

~~(ii)    monthly bank statements due fifteen (15) business days following the end of the reporting month;~~

6

(iii) ~~monthly income statements due twenty (20) business days following the end of the reporting month;~~

(iv) ~~monthly prepaid revenue reports due twenty (20) business days following the end of the reporting month;~~

(v) ~~monthly accounts receivable reports due twenty (20) business days following the end of the reporting month;~~

(vi) ~~monthly accounts payable reports due twenty (20) business days following the end of the reporting month;~~

(vii) ~~monthly report of position-by-position personnel expense with compensation reports due twenty (20) business days following the end of the reporting month;~~

(viii) ~~monthly report of staffing changes with respect to "salaried" staff for each month with support due thirty (30) calendar days after the reporting month;~~

~~(ix)~~(i) monthly forecast of real estate and ~~other taxes due thirty (30) calendar days prior to the reporting month;~~

~~(x)~~(ii) monthly STR Reports due twenty (20) business days following Trustee's receipt of the report~~;~~.

(xi) ~~monthly reports of (i) revenues, (ii) expenses, and (iii) budget variance comparing the Debtor's actual expenses as compared to the Trustee's budget projections, due (30) calendar days after the reporting month starting with the May reporting month; and~~

(xii) ~~copies of monthly operating reports required by the United States Trustee and copies of all other materials provided to the United States Trustee due within two (2) business days of providing such materials to the United States Trustee (collectively, the "Reports").~~

The Lender reserves the rights to seek all other information available and reporting required or allowable under the loan documents and applicable law.

(e)   **_Insurance._** The Trustee shall maintain all necessary insurance as required under the Prepetition Loan Documents, naming the Lender as a notice party and additional insured, and shall promptly provide the Lender with proofs of such insurance for the Hotel (including the Lender's collateral) and copies of all documents related to any insurance premium financing arrangement the Debtor may have.

7

(f)  **Excess Cash Account.** The Trustee shall deposit all cash it collects from the date of his appointment and pay expenditures from the Trustee's bank account established with Metropolitan Commercial Bank as depository (the "Trustee Bank Account") and shall maintain such cash in the Trustee Bank Account until further order of the Court. For the avoidance of doubt, the Lender's security interests in and liens on the Cash Collateral shall extend to the cash in the Trustee Bank Account, and such liens shall be automatically perfected without the need to execute any security or control agreements.

(g)  ~~**Bankruptcy Case Milestones.** The Trustee shall comply with the following milestones (the "Milestones"), which Milestones may not be modified without the prior written consent of the Lender:~~

~~(i)  The Trustee shall file a motion, in a form and substance reasonably satisfactory to Lender, seeking the entry of an order establishing and approving bidding procedures for the sale of substantially all of the Debtor's assets (the "Sale"), which the Bankruptcy Court shall approve in an order in a form and substance reasonably satisfactory to Lender on or before October 31, 2022 (subject to the Bankruptcy Court's calendar);~~

~~(ii)  On or before November 4, 2022 (subject to the Bankruptcy Court's calendar), the Trustee shall file a chapter 11 plan (the "Plan") and a disclosure statement for the Plan (the "Disclosure Statement"), in each case, in form and substance reasonably satisfactory to the Lender;~~

~~(iii)  On or before November 18, 2022 (subject to the Bankruptcy Court's calendar), the Bankruptcy Court shall have entered an order, in form and substance reasonably satisfactory to the Lender, (a) conditionally approving the Disclosure Statement on a provisional basis and (b) approving the procedures related to confirmation of the Plan;~~

~~(iv)  On or before December 23, 2022 (subject to the Bankruptcy Court's calendar), the Bankruptcy Court shall have entered one or more orders (a) approving the Sale, (b) approving the Disclosure Statement on a final basis, and (c) confirming the Plan, in each case, in form and substance reasonably satisfactory to the Lender; and~~

~~4.  On or before December 31, 2022, the closing of the Sale, and the effective date of the Plan, shall have occurred.~~<ins>Certain Matters Regarding the Trustee and the Trustee Professionals</ins>

<ins>(a)  In connection with the Budget, the Trustee and the Trustee Professionals have agreed with the Lender to the deferral of payment of an aggregate</ins>

amount of $1,900,109 of their fees and expenses otherwise payable under the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses*, entered on October 18, 2022 [ECF No. 744] (the "Interim Compensation Order") and any other orders of the Court, along with any fees or expenses that are incurred or accrued in excess of any line item of the Professional Accrual Schedule (defined in Paragraph 4(c) below) and not approved in advance by Lender in writing, which shall be payable after the closing of the Sale from recoveries of estate assets not sold under the Sale Order (as defined below) (the "Deferred Fees"). This amount may be adjusted upon receipt by the estate of Excess Cash as set forth in Section 4(e) hereof.

(b)     The Trustee and Trustee Professionals shall be entitled to receive payment on account of their allowed administrative claims pursuant to appropriate order of the Court in amounts not greater than $4,660,650 from proceeds of the sale closed under the Sale Order (the "Sale").

(c)     The Trustee and Trustee Professionals have agreed to incur and accrue fees and expenses for services provided to the estate pursuant to the professional fee accrual schedule attached hereto as **Exhibit 2** (the "Professional Accrual Schedule"). The Trustee and Trustee Professionals shall not incur or accrue fees or expenses in excess of any line item on the Professional Accrual Schedule for any applicable month except as otherwise approved in advance by Lender in writing. The Trustee and Trustee Professionals shall inform the Lender of any anticipated overage of accrual of fees or expenses in excess of any projected monthly accrual on the Professional Accrual Schedule promptly after such excess becomes reasonably foreseeable but before they are incurred.

(d)     In accordance with paragraph 27 of the *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief*, entered on January 26, 2023 [ECF No. 881] (the "Sale Order"), upon the Closing of the Sale (each as defined in the Sale Order), the Trustee is authorized to distribute all proceeds of the Sale to the Lender other than as necessary to pay accrued and outstanding amounts under the Budget and Professional Accrual Schedule or as otherwise agreed by the Lender, including any fees and expenses of the Trustee and Trustee Professionals payable under the Interim Compensation Order or any other orders of the Court other than the Deferred Fees.

(e)     The amount of the Deferred Fees contemplates a deferral of 20% of fees and expenses incurred and accrued by professionals of the Trustee (other than A&G and Eastdil) (the "Designated Professionals") prior to the Closing of the Sale in the aggregate amount of $672,304.20. To the extent that the performance of the Hotel would permit Lender to actually receive

9

proceeds at the closing of the Sale in excess of $88,704,697, as projected by the Trustee and agreed to by Lender (such excess amounts referred to herein as the "Excess Cash"), then such Excess Cash may be escrowed at the closing of the Sale for payment to the Designated Professionals in a maximum amount of $168,076.05 on account of their Deferred Fees and payable upon further order of the Court, such that the Deferred Fees incurred by the Designated Professionals shall be reduced to $504,228.15, with any Excess Cash over such maximum amount being paid to Lender to reduce, as applicable, its secured claim or Senior Secured Amount as defined and allowed under the *Order Approving Settlement Agreement with Benefit Street Partners [Realty] Operating Partnership, L.P.* [Docket No. 753], or as otherwise provided by a confirmed Chapter 11 plan.

(v)(f)    Notwithstanding anything to the contrary ordered by the Court or agreed to by Lender, the funding to be carved out of the Lender's cash collateral solely to fund pursuit of estate causes of action under a confirmed Chapter 11 plan or such litigation efforts of a Chapter 7 trustee shall be $150,000 (the "Litigation Funding Amount"), which shall be part of the Carve-Out hereinabove.

4.5.    The following events shall each constitute an event of default hereunder (each, an "Event of Default"): (i) the Trustee's failure to comply with any of the terms of this EleventhTwelfth Interim Order (including, without limitation, compliance with the Budget or meeting of a Milestone); (ii) the obtaining of credit or incurring of indebtedness outside of the ordinary course of business that is either secured by a security interest or lien that is equal or senior to any security interest or lien of the Lender or entitled to priority administrative status that is equal or senior to that granted to the Lender; and (iii) entry of an order by the Court granting relief from or modifying the automatic stay under section 362 of the Bankruptcy Code to allow a creditor to execute upon or enforce a lien or security interest in any collateral that would have a material adverse effect on the business, operations, property or assets of the Debtor.

5.6.    The automatic stay is hereby modified solely to the extent necessary to permit the Trustee to take all actions necessary to implement this EleventhTwelfth Interim Order.

6.7.    Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Lender hereunder is

insufficient to compensate for any Diminution. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Lender that the adequate protection granted herein does in fact adequately protect the Lender against any Diminution.

7.8.    This ~~Eleventh~~Twelfth Interim Order is without prejudice to the rights of the Lender to seek a modification of this ~~Eleventh~~Twelfth Interim Order, including a request for additional adequate protection or the termination of the Trustee's right to use Cash Collateral, after notice and a hearing, including a hearing noticed on an emergency basis, or the Trustee's right to oppose such relief. The Lender has expressly reserved, and this ~~Eleventh~~Twelfth Interim Order is without prejudice to, any and all rights and remedies of the Lender, including as to the appropriateness of any adequate protection that may be proposed in connection with any authorization to use Cash Collateral after the Interim Period. The Trustee expressly reserves the right to seek the use of Cash Collateral beyond the Interim Period, and the Lender reserves the right to oppose such relief.

9.    Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Lender's collateral (including Cash Collateral) or the Lender pursuant to sections 506(c) or 105(a), or any similar principle of law or equity, without the prior written consent of the Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

10.    The Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Trustee shall not invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the proceeds, products, offspring or profits of any of the Lender's prepetition collateral (including Cash Collateral).

11

8.11.    Notwithstanding applicability of any Bankruptcy Rules, the terms and conditions of this EleventhTwelfth Interim Order shall be immediately effective and enforceable upon its entry.

9.12.    The Court has and will retain jurisdiction to enforce this EleventhTwelfth Interim Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this EleventhTwelfth Interim Order.

10.13.   Counsel for the Trustee may contact the Court to schedule the Final Hearing with respect to the entry of a final order approving the use of Cash Collateral on a final basis (the "Final Order"). The Trustee shall file the proposed form of Final Order on the docket of the Chapter 11 Case in advance of the Final Hearing.

11.14.   Any party who wishes to attend the Final Hearing, which will be a Zoom.gov hearing, is required to make arrangements through http://www.nysb.uscourts.gov/ecourt-appearances.


Dated: _____, 20222023
       New YorkWhite Plains, New York

                                    _____
                                    HONORABLE SEAN H. LANE
                                    UNITED STATES BANKRUPTCY JUDGE

12