TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Neil Berger
Bryan M. Kotliar

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| 96 Wythe Acquisition, LLC, | : | Case No. 21-22108 (SHL) |
|  | : |  |
| Debtor. | : | **Related Docket Nos. 815, 816** |
|  | : |  |

--------------------------------------------------------------x

### NOTICE OF FILING OF (I) FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR THE BANKRUPTCY ESTATE OF 96 WYTHE ACQUISITION LLC, AS PROPOSED BY THE CHAPTER 11 TRUSTEE; AND (II) RELATED FIRST AMENDED DISCLOSURE STATEMENT

**PLEASE TAKE NOTICE** that on December 2, 2022, Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") of the estate of 96 Wythe Acquisition, LLC, by and through his undersigned counsel, filed and served the *Chapter 11 Plan of Liquidation for the Bankruptcy Estate of 96 Wythe Acquisition LLC, as Proposed by the Chapter 11 Trustee* [Docket No. 815] (the "Plan") and related disclosure statement [Docket No. 816] (the "Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE** that the Trustee hereby files:

- the first amended Plan, a copy of which is attached hereto as **Exhibit A** (the "First Amended Plan");

- a redline of the First Amended Plan showing the changes made to the original Plan, a copy of which is attached hereto as **Exhibit B**;

- the first amended Disclosure Statement, a copy of which is attached hereto as **Exhibit C** (the "First Amended Disclosure Statement"); and

- a redline of the First Amended Disclosure Statement showing the changes made to the original Disclosure Statement, a copy of which is attached hereto as **Exhibit D**.

**PLEASE TAKE FURTHER NOTICE** that the Trustee is seeking approval of the First Amended Disclosure Statement on a provisional basis as set forth in the *Notice of Presentment of Supplement to Chapter 11 Trustee's Application for an Order Approving (I) Certain Key Dates Relating to Confirmation of the Plan, Including Scheduling A Combined Hearing to Consider Approval of the Disclosure Statement and Plan; (II) The Form and Manner of Notice of the Combined Hearing; (III) The Disclosure Statement on a Provisional Basis; (IV) Procedures for Solicitation, Including the Forms of Ballots and Tabulation of Votes; and (V) Procedures for Objections* [Docket No. 898] (the "Solicitation Procedures Motion Supplement"), filed on February 10, 2023, for purposes of soliciting votes on the First amended Plan.  The deadline to object to the relief sought in the Solicitation Procedures Motion Supplement is February 17, 2023 at 11:00 a.m. (prevailing Eastern Time).  If no timely written objections to the Solicitation Procedures Motion Supplement are filed and served, the Court may enter an order granting the relief sought therein.

**PLEASE TAKE FURTHER NOTICE** that if the Court approves the Solicitation Procedures Motion Supplement, the Court will enter an order establishing the dates and deadlines for procedures regarding voting on, and objecting to, the First Amended Plan and the First Amended Disclosure Statement.

DATED:  February 14, 2023
       New York, New York

                        STEPHEN S. GRAY
                        Not Individually But Solely in His
                        Capacity as Chapter 11 Trustee
                        By His Attorneys,
                        TOGUT, SEGAL & SEGAL LLP
                        By:

                        */s/ Frank A. Oswald*
                        ALBERT TOGUT
                        FRANK A. OSWALD
                        NEIL BERGER
                        BRYAN M. KOTLIAR
                        One Penn Plaza, Suite 3335
                        New York, New York 10119
                        (212) 594-5000

## EXHIBIT A

**First Amended Plan**

> **NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST. THE PLAN IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND CERTAIN OTHER CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. ACCEPTANCES OR REJECTIONS WITH RESPECT TO THE PLAN ARE BEING SOLICITED PURSUANT TO THE ACCOMPANYING DISCLOSURE STATEMENT ONCE THE BANKRUPTCY COURT HAS PROVISIONALLY APPROVED SUCH DISCLOSURE STATEMENT, SUBJECT TO FINAL APPROVAL AT THE CONFIRMATION HEARING. ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN COMPLIANCE WITH APPLICABLE LAW.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                              :    Chapter 11
                                              :
In re:                                        :    Case No.: 21-22108 (SHL)
                                              :
96 WYTHE ACQUISITION LLC,                      :
                                              :
                          Debtor.             :
                                              :
-------------------------------------------------------------x
```

## FIRST AMENDED CHAPTER 11 PLAN OF
## LIQUIDATION FOR THE BANKRUPTCY ESTATE OF
## <u>96 WYTHE ACQUISITION LLC, AS PROPOSED BY THE CHAPTER 11 TRUSTEE</u>

**TOGUT, SEGAL & SEGAL LLP**
**One Penn Plaza, Suite 3335**
**New York, New York 10119**
**(212) 594-5000**

*Counsel for Stephen S. Gray,*
*not individually but solely in*
*his capacity as Chapter 11 Trustee*

**Dated: February 14, 2023**

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ..............................1

ARTICLE II CLASSIFICATION OF CLAIMS AND INTERESTS..................................13

    2.1    Classified Claims and Equity Interests..........................................13

    2.2    Classification ................................................................14

    2.3    Resolution of Disputes .......................................................14

ARTICLE III TREATMENT OF CLAIMS AND INTERESTS.........................................14

    3.1    Unclassified Claims...........................................................14

    3.2    Classified Claims ............................................................17

ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN ....................................21

    4.1    Acceptances by Classes Entitled to Vote.....................................21

    4.2    Presumed Acceptance of the Plan.............................................21

    4.3    Presumed Rejection of the Plan ..............................................21

    4.4    Elimination of Classes.......................................................21

    4.5    Cramdown....................................................................21

ARTICLE V IMPLEMENTATION OF THE PLAN ......................................................22

    5.1    Implementation of the Plan..................................................22

    5.2    The BSP Settlement Agreement................................................22

    5.3    Funding of the Plan and the Sale............................................22

    5.4    Powers and Obligations of the Plan Administrator .......................22

    5.5    Preservation of Causes of Action ...........................................24

    5.6    Section 1146(a) of the Bankruptcy Code......................................24

ARTICLE VI DISTRIBUTIONS.................................................................25

    6.1    Plan Distributions...........................................................25

    6.2    Address for Delivery of Distributions and Forfeiture of Claims............25

-i-

6.3    Distributions under Twenty-Five Dollars ......................................................26

6.4    Time Bar to Cash Payments ..........................................................................26

6.5    Distributions to Holders as of the Confirmation Date ...................................26

6.6    Abandoned Assets ..........................................................................................26

6.7    Windup ...........................................................................................................26

6.8    Distribution of Unclaimed Property ..............................................................27

6.9    Saturday, Sunday, or Legal Holiday ..............................................................27

6.10   Distributions on Disputed Claims ..................................................................27

ARTICLE VII CONDITIONS PRECEDENT ...........................................................................28

7.1    Conditions to the Effective Date ....................................................................28

7.2    Waiver of Conditions Precedent ....................................................................28

ARTICLE VIII PROCEDURES FOR DISPUTED CLAIMS ...................................................29

8.1    Allowance of Claims ......................................................................................29

8.2    Objections to Claims ......................................................................................29

8.3    Estimation of Disputed Claims ......................................................................30

8.4    Resolution of Claims ......................................................................................30

8.5    Disallowed Claims .........................................................................................30

ARTICLE IX TREATMENT OF EXECUTORY CONTRACTS .............................................31

9.1    Rejection of Executory Contracts ..................................................................31

9.2    Claims Based on Rejection of Executory Contracts ......................................31

9.3    Reservation of Rights .....................................................................................31

ARTICLE X EFFECT OF PLAN CONFIRMATION .............................................................32

10.1   Binding Effect ................................................................................................32

10.2   Exculpation and Limitation of Liability ........................................................32

10.3   Release of BSP ...............................................................................................32

10.4   Release of and by Debtor Professionals .........................................................33

10.5   No Release of Insiders ...................................................................33

10.6   No Discharge .................................................................................33

10.7   Term of Bankruptcy Injunction or Stays ......................................33

10.8   Post-Effective Date Retention of Professionals.............................34

ARTICLE XI RETENTION OF JURISDICTION ....................................34

11.1   Retention of Jurisdiction ..............................................................34

11.2   No Limitation on Enforcement by SEC or the U.S. Attorney's Office .......36

ARTICLE XII MISCELLANEOUS PROVISIONS ....................................36

12.1   Payment of Statutory Fees ...........................................................36

12.2   Amendment or Modification of the Plan .......................................36

12.3   Substantial Consummation ...........................................................36

12.4   Severability of Plan Provisions .....................................................36

12.5   Successors and Assigns .................................................................37

12.6   Revocation, Withdrawal, or Non-Consummation.........................37

12.7   Governing Law ..............................................................................37

12.8   Time ..............................................................................................37

12.9   Notice of Effective Date ...............................................................38

12.10  Immediate Binding Effect.............................................................38

12.11  Entire Agreement..........................................................................38

12.12  Notice............................................................................................38

ARTICLE XIII CONFIRMATION REQUEST ........................................40

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of 96 Wythe Acquisition LLC (the "Debtor"), hereby proposes the following first amended Chapter 11 plan of liquidation (the "Plan") pursuant to the provisions of title 11 of the United States Code (the "Bankruptcy Code").   Reference is made to the first amended Disclosure Statement filed with the Bankruptcy Court concurrently herewith for a discussion of certain transactions and other matters germane to the implementation of the Plan and the administration of the Debtor's Chapter 11 case, as well as a summary discussion of the terms and conditions of the Plan.   All holders of Claims (as defined herein) who are entitled to vote on the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety and consult with an attorney.

NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

## ARTICLE I

### DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms.*  For the purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the meanings set forth in this Section and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article I and, any term used in this Plan which is not defined below, but which is defined in the Bankruptcy Code, shall have the meaning designated in the Bankruptcy Code:

1.1    "Accrued Professional Compensation" means, at any date, all of a Professional's billed, accrued, and unpaid fees and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying any retainer that has been provided by the Debtor or any third party to such Professional and not previously applied.  No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.2    "Administrative Claim" means, except as otherwise set forth in this Plan, a Claim (or a portion of a Claim) for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's Estate, and all fees and charges assessed against the Debtor's Estate, as defined herein, pursuant to 28 U.S.C. § 1930. The term Administrative Claim does not include Trustee Fee Claims, Trustee Professional Fee Claims, Settling Debtor Fee Claims, or Priority Claims, as defined herein and which are treated separately in this Plan.

1.3    "Administrative Claims Bar Date" has the meaning set forth in Section 3.1(a) of this Plan.

1.4    "Allowed" means, with reference to any Claim (including any Administrative Claim) that portion of a Claim:  (i) which has been Allowed by a Final Order;  (ii) which is allowed under the terms of this Plan;  or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely and otherwise properly filed on or before the applicable Bar Date with the Bankruptcy Court, and with respect to Claims described in this clause (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof. Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the Bankruptcy Code and applicable law.

1.5    "Allowed Administrative Claim" means an Allowed Claim that is entitled to priority as an Administrative Claim and that is not disputed.

1.6    "Allowed Interest" means an Interest which has been allowed by Final Order of the Bankruptcy Court.

1.7    "Allowed Priority Tax Claim" means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.8    "Allowed Secured Claim" means that portion of an Allowed Claim, excluding Priority Tax Claims, with a valid and enforceable lien against any property of the Debtor's Estate where such property has a value of which is equal to or greater than the amount of the Allowed Claim and as to which no objection has been interposed and to which the period for bringing such objection as provided hereunder has expired or which has been Allowed by Final Order.  In accordance with the definition set forth in section 506(a) of the Bankruptcy Code, "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a Creditor having a lien against any property of Debtor's Estate to the extent the value of such creditor's interest in the property is less than the amount of such Allowed Claim.

1.9    "Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, Allowed Priority Claim or Allowed General Unsecured Claim.

1.10    "Assets" means all property of the Debtor or its estate, whether tangible or intangible, and any proceeds, products, rents, offspring or profits thereof.

1.11    "Avoidance Actions" means all claims, demands, proceedings, or causes of action of the Debtor against any Person or Entity which has been brought or could be brought in the name of the Debtor pursuant to sections 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or applicable state law.

-2-

1.12    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, et seq.

1.13    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

1.14    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.15    "Bar Date" means as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date, (ii) the Supplemental Bar Date, and (iii) the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) August 22, 2021 for Governmental Units; (e) the Interim Administrative Claims Bar Date and (f) the Administrative Claims Bar Date.

1.16    "BSP" means, collectively, Benefit Street Partners Realty Operating Partnership, L.P.

1.17    "BSP Secured Claim" means, collectively, the BSP Senior Secured Claim and the BSP Subordinated Secured Claim.

1.18    "BSP Senior Secured Claim" has the meaning set forth in the BSP Settlement Agreement, which Allowed amount shall be no less than $95,952,130.85 (as of August 14, 2022) plus additional accrued interest, fees and expenses in accordance with the BSP Settlement Agreement; provided, however, that BSP has agreed to accept the amount of $88,704,697 at Closing to facilitate the confirmation of this Plan, plus the BSP Senior Secured Claim Deferred Portion to the extent of available Cash to Distribute.

1.19    "BSP Senior Secured Claim Deferred Portion" means $5,500,000.

1.20    "BSP Settlement Agreement" means that certain Settlement Agreement entered into between BSP and the Trustee dated as of September 12, 2022, a copy of which is attached as Exhibit 1 to the BSP Settlement Agreement Order.

1.21    "BSP Settlement Agreement Order" means that certain order entered by the Bankruptcy Court on October 21, 2022 [Dkt No. 753] approving the BSP Settlement Agreement.

1.22    "BSP Subordinated Secured Claim" has the meaning set forth in the BSP Settlement Agreement, which Allowed amount shall consist of all amounts due and owing to BSP pursuant to the BSP Settlement Agreement after payment of the BSP Senior Secured Claim and the BSP Senior Secured Claim Deferred Portion in accordance with the Plan.

1.23    "Business Day" means any day other than a Saturday, Sunday, or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.24    "Cash" means legal tender of the United States of America and equivalents thereof.

1.25    "Cash Collateral Order" means that certain *Twelfth Interim Order for Use of Cash Collateral*, as approved by the Bankruptcy Court and any further cash collateral order entered with consent of BSP.

1.26    "Causes of Action" means, without limitation, (a) all pending suits to which the Debtor is a party, whether as plaintiff or defendant, as of the date the Confirmation Order becomes a Final Order, and (b) any and all other actions, proceedings, causes of action, liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date, during the course of the Chapter 11 Case (including through the Effective Date), including, without limitation, all Avoidance Actions and D&O Claims.

1.27    "Chapter 11 Case" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor and bearing the caption In re: 96 Wythe Acquisition LLC [SHL].

1.28    "Claim" as defined in section 101(5) of the Bankruptcy Code means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.29    "Claims" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code, including any group of Claims as classified in Article II of this Plan.

1.30    "Claims Objection Deadline" means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 90 days after the filing of a Proof of Claim or request for payment of an Administrative Claim; and (c) such later date as ordered by the Bankruptcy Court upon motion filed by the Trustee, or the Plan Administrator, as applicable.  The Claims Objection Deadline may be extended one or more times by the Bankruptcy Court upon the request of the Trustee or Plan Administrator, as applicable.

1.31    "Class" means a class of Claims or Interests.

1.32    "Closing" means the closing of the Sale.

1.33   "Confirmation" means the confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.34   "Confirmation Date" means the date the Confirmation Order is entered on the Bankruptcy Court docket.

1.35   "Confirmation Hearing" means the hearing or hearings held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

1.36   "Confirmation Order" means one or more orders issued and entered confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.37   "Consummation" means the occurrence of the Effective Date.

1.38   "Debtor Professional Fee Stipulation" means that certain *Stipulation and Order By and Between the Chapter 11 Trustee, Benefit Street Partners Realty Operating Partnership, and the Debtor's Professionals*, by and among, the Trustee, BSP, the Settling Debtor Professionals, as approved by the Bankruptcy Court.

1.39   "Debtor Professional Fee Deficiency" shall mean the Debtor Professional Fee Deficiency Claim, as such term is defined in the Debtor Professional Fee Stipulation, plus such other amounts as are due to other professionals retained by the estate (including Eric M. Huebscher, the Court-appointed Examiner in this Chapter 11 Case, and Locke Lord LLP, his counsel) to the extent allowed by order of the Court, as agreed to by the Trustee Benefit Street and the Relevant Professional.

1.40   "D&O Claim" means a claim or Cause of Action against any present or former director, officer or insider of the Debtor based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case; including, but not limited to, Causes of Action assertable against (i) Heritage Equity Partners, (ii) Toby Moskovits, (iii) Michael Lichtenstein and (iv) The Williamsburg Hotel BK LLC and/or any of their respective family members or affiliated entities of any of the foregoing.

1.41   "Debtor" means 96 Wythe Acquisition LLC, as the Debtor in the Chapter 11 Case.

1.42   "Designated Trustee Professionals" means the Professional Persons retained by the Trustee other than A&G Realty Partners, LLC and Eastdil Secured, L.L.C.

1.43   "Disallowed" means all or such part of a Claim or Interest (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction; (b) for reimbursement or contribution of an entity that is co-liable with the Debtor on the Claim of a creditor and such Claim is contingent on the Confirmation Date, pursuant to section 502(e)(1)(B) of the Bankruptcy Code; or (c) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly

filed;  unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

1.44    "Disclosure Statement" means the first amended disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be further amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.45    "Disputed Claim" means (a) any Claim as to which the Debtor, the Trustee or the Plan Administrator, as the case may be, or other party in interest has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, the Trustee, the Plan Administrator or other party in interest in accordance with applicable law, which objection has not been withdrawn, or determined by a Final Order;  (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed;  (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed;  or (d) any Claim prior to it having become an Allowed Claim.  For the avoidance of doubt, if no Proof of Claim has been filed by the applicable Bar Date and the Claim is not listed on the Schedules or has been or hereafter is listed on the Schedules as $0.00, Disputed, contingent, or unliquidated, such Claim shall be a Disallowed Claim and shall be expunged from the Claims Register without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of Distribution until it is no longer a Disputed Claim.

1.46    "Disputed Claim Holder" means the holder of a Disputed Claim.

1.47    "Distribution" means any transfer under the Plan of Cash or other property to a holder of an Allowed Claim.

1.48    "Distribution Date" means a date or dates, as determined by the Trustee or the Plan Administrator, as the case may be, in accordance with the terms of the Plan, on which one or more Distributions to holders of Allowed Claims will be made.

1.49    "Distribution Record Date" means the date of the Confirmation Hearing.

1.50    "Effective Date" means the first Business Day upon which each of the conditions in Section 7.1 of the Plan have been satisfied or waived pursuant to the terms of this Plan.

1.51    "Equity Interests" means the Interests in the Debtor outstanding immediately after the Effective Date.

1.52    "Estate" means the estate of the Debtor created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.53    "Excess Cash" means that, to the extent that the performance of the Property (as defined in the Sale Order) would permit BSP to actually receive proceeds on the Effective Date from the closing of the Sale in excess of $88,704,697, as projected by the Trustee and agreed to by BSP, such Excess Cash being in a maximum amount of $168,076.05.

1.54    "Exculpated Parties" means the following parties in their respective capacities as such: (a) the Trustee and (b) BSP and, with respect to each of the foregoing persons, each of their respective Related Parties.

1.55    "Executory Contract" means an unexpired contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.56    "Exhibits" means the exhibits filed in support of this Plan.

1.57    "Final Order" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Debtor's Chapter 11 Case, which order or judgment has not been reversed, stayed, modified, or amended and the time to appeal such order has expired.

1.58    "General Bar Date" means July 15, 2021, the initial date set by order of the Bankruptcy Court as the last day for filing general proofs of claim in the Debtor's Chapter 11 Case.

1.59    "General Unsecured Claim" means a Claim against the Debtor's Estate that is not an Administrative Claim, a Secured Claim, a Priority Claim or a Subordinated Insider Claim under this Plan.

1.60    "Gross Sale Proceeds" means the aggregate cash proceeds generated by the Sale.

1.61    "Interest" means the legal, equitable and contractual rights of a holder of an "equity security" (as that term is defined in section 101(16) of the Bankruptcy Code) in the Debtor as of the Filing Date.

1.62    "Interim Administrative Claims Bar Date" means November 21, 2022, the date established by the Bankruptcy Court [Dkt. No. 739] by which certain Administrative Claims arising from the Petition Date through and including September 30, 2022 were to be made in writing or filed against the Debtor's Estate.  The Interim Administrative Claims Bar Date does not apply to the following persons or entities: (a) any party that has already properly filed an Administrative Claim; (b) any holder of a Claim that heretofore has been allowed by order of the Bankruptcy Court; (c) any person or entity whose claim has been paid in full by the Debtor, the Trustee or the Purchaser;  (d) any holder of a Claim for which specific deadlines have previously been fixed by the Bankruptcy Court (including, for the avoidance of doubt, any holder of a claim arising under section 503(b)(9) of the Bankruptcy Code); and (e) the Trustee and the Trustee Professionals.

1.63    "M&M" means the holder of a Secured Claim arising pursuant to the applicable mechanics and materialmen lien statute.

1.64    "NYC DOF" means the New York City Department of Finance.

1.65    "NYC DOF Claim Stipulation" means that certain *Stipulation and Order By and Between the Chapter 11 Trustee and the NYC Department of Finance Regarding Proof of Claim Numbers 2, 10-1, 10-2, 11-1, 11-2, 14, 18, 19, 21-1*, entered on September 12, 2022 [Dkt No. 678].

1.66    "NYC Priority Initial Tax Claim Payment" means a payment in Cash equal to fifteen (15)% of the Allowed Priority Tax Claims relating to hotel occupancy taxes held by NYC DOF pursuant to the NYC DOF Claim Stipulation in the amount of $312,050.

1.67    "NYC Priority Deferred Tax Claim Amount" means the balance of the Allowed Priority Tax Claims relating to hotel occupancy taxes held by the New York City Department of Finance pursuant to the NYC DOF Claim Stipulation not paid on the Effective Date in the amount of $1,768,286.

1.68    "Other Priority Claim" means all Claims entitled to priority under section 507(a) of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

1.69    "Other Secured Claim" means any Secured Claim asserted against the Debtor's Estate other than the BSP Secured Claim.

1.70    "Person" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

1.71    "Petition Date" means February 23, 2021, the date of the commencement of the Debtor's Chapter 11 Case.

1.72    "Plan" means this first amended Chapter 11 plan of liquidation, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be further altered, amended, supplemented or modified from time to time.

1.73    "Plan Administrator" means, if applicable, Stephen S. Gray, as approved by the Bankruptcy Court pursuant to Article V of the Plan.

1.74    "Plan Administrator Agreement" means, if applicable, that certain agreement establishing and delineating the retention, terms and duties of the Plan Administrator, substantially in the form to be filed as part of the Plan Supplement.

1.75    "Plan Supplement" means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court.

1.76    "Post-Effective Date Available Cash" means the Post-Effective Date Proceeds less the Post-Effective Date Expenses.

1.77    "Post-Effective Date Debtor" means the Debtor on and after the Effective Date.

1.78    "Post-Effective Date Expenses" means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred or reasonably anticipated to be incurred by the Trustee or the Plan Administrator, as the case may be, after the Effective Date in connection with the implementation of the Plan and the administration of the post-Effective Date Estate, including, but not limited to: (a) Expenses in connection with administering and implementing the Plan, including any taxes incurred and accrued by the Trustee or the Plan Administrator, as the case may be, on or after the Effective Date;  (b) U.S. Trustee Fees, if any, which accrue after the Effective Date, (c) the Expenses of the Trustee or Plan Administrator, as the case may be, in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes, and filing tax returns, and (d) the Expenses of the Trustee or Plan Administrator, as applicable, and all independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Trustee or the Plan Administrator, as applicable, after the Effective Date.

1.79    "Post-Effective Date Proceeds" means (a) Cash in the Post-Effective Date Reserve and (b) any and all Cash, property, and/or proceeds obtained by the Post-Effective Date Debtor or the Plan Administrator, as applicable, and/or derived from the Debtor's assets on and after the Effective Date, including reducing the Retained Causes of Action to Cash.

1.80    "Post-Effective Date Reserve" means the account to be established by the Trustee or the Plan Administrator, as the case may be, for the purpose of satisfying Post-Effective Date Expenses, which account shall be funded (a) in the amount of $150,000 from the Gross Sale Proceeds plus any other Cash on hand as of the Effective Date not Distributed or reserved on the Effective Date pursuant to the Plan.

1.81    "Priority Claims" means all Claims that are Priority Tax Claims or Other Priority Claims under this Plan.

1.82    "Priority Tax Claim" means a Claim entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

1.83    "Professional Accrual Schedule" has the meaning set forth in the Cash Collateral Order.

1.84    "Professional Person" means any Entity retained in the Chapter 11 Case pursuant to a Final Order in accordance with sections 326, 327, and 328 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 326, 327, 328, 329, 330, or 331 of the Bankruptcy Code, and shall include, for purposes of this Plan, the Trustee.

1.85    "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

1.86    "Proof of Claim" means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.87    "Purchase Agreement" has the meaning set forth in the Sale Order.

1.88    "Purchaser" has the meaning set forth in the Sale Order.

1.89    "Related Parties" means with respect to any Exculpated Party, an Entity's predecessors, successors and assigns, managed accounts, or funds, and all of their respective current and former officers, managers, directors, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case solely to the extent such parties are acting in such capacity.

1.90    "Retained Assets" means all of the Debtor's and the Estate's property not otherwise sold pursuant to the Sale or liquidated or released hereunder, including, but not limited to (a) Retained Causes of Action and (b) remaining Cash after making all payments required by the Plan and the Sale.

1.91    "Retained Causes of Action" means all claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which the Debtor's Estate may hold against any Person, including without limitation the D&O Claims, and which Retained Causes of Action shall be (i) the subject of an Exhibit to the Plan Supplement to be filed by the Trustee in connection with the Plan, (ii) assertable on behalf of the Debtor's Estate by the Trustee or the Plan Administrator, as the case may be, after the Effective Date, and (iii) subject to (a) the BSP Settlement Agreement and (b) the Debtor Professional Fee Stipulation.

1.92    "Sale" has the meaning set forth in the Sale Order.

1.93    "Sale Order" means that certain *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief*, entered on January 26, 2023 [Dkt No. 881].

1.94    "Schedules" means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.95    "Secured Claim" means a Claim secured by a "lien", as that term is defined at section 101(37) of the Bankruptcy Code, against any property of the Debtor, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, but only to the extent such lien was properly perfected and of the "value", as determined by the Bankruptcy Court pursuant to section 506(a) of the

Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Estate's interest in such property.

1.96   "Secured Creditor" means the holder of a Secured Claim."

1.97   "Settling Debtor Professionals" means each of (a) Mayer Brown LLP, (b) GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services, (c) Fern Flomenhaf PLLC, (d) Getzler Henrich & Associates LLC and Hilco Real Estate LLC, (e) Leitner Berman, Inc., and (f) David Goldwasser, for himself and on behalf of G.C. Realty Advisors LLC.

1.98   "Settling Debtor Professional Fee Claims" means a Claim owed to a Settling Debtor Professional in accordance with the Debtor Professional Fee Stipulation.

1.99   "Settling Debtor Professional Fee Escrow" means an escrow account to be funded with the Debtor Professional Fee Escrow Amount on the Effective Date.

1.100   "Settling Debtor Professional Fee Escrow Amount" means $964,463.25.

1.101   "Settling Debtor Professional Deficiency Claim" means the amount of each Settling Debtor Professional's Allowed Debtor Professional Fee Claim that remains unpaid after disbursement and application of the Debtor Professional Fee Escrow Amount.

1.102   "Subordinated Insider Claim" means any Claim asserted against the Debtor's Estate by (i) Heritage Equity Partners, (ii) Toby Moskovits, (iii) Michael Lichtenstein  and (iv) The Williamsburg Hotel BK LLC and/or any of their respective family members, affiliated entities, or transferees (including subsequent transferees) of avoidable transfers made by any of the foregoing.

1.103   "Supplemental Bar Date" means December 15, 2021, the supplemental date set by order of the Bankruptcy Court as the last day for filing general Proofs of Claim in the Debtor's Chapter 11 Case.

1.104   "Taxing Authority" means any federal, state, or local entity with the authority to assess and collect taxes.

1.105   "Trustee" means Stephen S. Gray, not individually, but solely in his capacity as the Chapter 11 trustee for the Debtor.

1.106   "Trustee Deferred Compensation" means all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims not paid from the Gross Sale Proceeds or, in the case of the Trustee and the Designated Trustee Professionals, the Excess Cash.

1.107   "Trustee Fee Claims" means the commission of the Trustee pursuant to section 326(a) of the Bankruptcy Code and all other fees and expenses due

and owing to the Trustee to the extent allowed by order of the Bankruptcy Court.

1.108 "Trustee Professional" means the Professional Persons retained by the Trustee.

1.109 "Trustee Professional Fee Claim" means a Claim owed to a Trustee Professional Person for Trustee Professional Fees.

1.110 "Trustee Fee Escrow" means an escrow account to be funded with the Trustee Fee Escrow Amount on the Effective Date.

1.111 "Trustee Fee Escrow Amount" means (a) $4,660,650, plus any fees or expenses incurred or accrued in any line item of the Professional Accrual Schedule approved in advance by BSP in writing plus (b) the Excess Cash.

1.112 "Trustee Professional Fees" means all allowances of compensation, indemnification, or reimbursement of expenses Allowed, or to be Allowed, pursuant to sections 326, 330, 331, or 503(b) of the Bankruptcy Code, to any Trustee Professional Person retained pursuant to section 327 of the Bankruptcy Code.

1.113 "Unclaimed Distributions" means those funds allocated under the Plan for payment to any holders of Allowed Claims which holders, after due diligence, the Trustee or the Plan Administrator, as applicable, are unable to locate.

1.114 "Unsecured Claim" means any Claim which does not qualify as an Administrative Claim, Secured Claim, or Priority Claim.

1.115 "Unsecured Creditor" means the holder of an Unsecured Claim.

1.116 "U.S. Trustee" means the United States Trustee for the Southern District of New York.

1.117 "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

*Rules of Interpretation and Computation of Time*. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part

-12-

of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any Distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

*Exhibits.* All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court as part of the Plan Supplement. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to Debtors. The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

*Controlling Documents.* In the event of an inconsistency between this Plan and the Plan Supplement, the Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of this Plan and shall control and take precedence. To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls this Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.1    Classified Claims and Equity Interests

The following table is a designation of the Classes of Claims and Interests under the Plan. This classification of Claims and Interests is made for purposes of voting on the Plan and making Distributions hereunder and for ease of administration hereof. All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article III, have not been classified and thus are excluded from the Classes described below.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is

in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and has not been paid, released, or otherwise satisfied or dealt with prior to the Effective Date.

## 2.2    Classification

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | No | No (deemed to accept) |
| Class 2 | BSP Senior Secured Claim | Yes | Yes |
| Class 3 | Other Secured Claims | No | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Yes | Yes |
| Class 5 | BSP Subordinated Secured Claim | Yes | Yes |
| Class 6 | Subordinated Insider Claims | Yes | No (deemed to reject) |
| Class 7 | Equity Interests | Yes | No (deemed to reject) |

## 2.3    Resolution of Disputes

Disputes regarding the proper classification of any Claim shall be resolved pursuant to the procedures established by the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Bankruptcy Court, and this Plan, and such resolution shall not be a condition precedent to Confirmation or Consummation of this Plan.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

In addition to any waivers or releases of Claims or other causes of action provided for elsewhere in this Plan, Claims shall be treated as set forth below. Except as explicitly provided in this Plan, all distributions under this Plan shall be free and clear of all Claims, liens, security interests and encumbrances of any nature or kind whatsoever.

### 3.1    Unclassified Claims

(a)    Administrative Claims

Administrative Claims are not classified under the Plan. Allowed Administrative Claims are to be paid in full (to the extent not already paid during the Chapter 11 Case), in cash on the later of: (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) such other date and upon such other terms as may be agreed upon by the holder of such Claim and the Trustee or the Plan Administrator, as the case may be, or as ordered by the Bankruptcy Court.

All requests for payment of Administrative Claims (other than (i) Trustee Fee Claims and Trustee Professional Fee Claims, and (ii) Administrative Claims that have been Allowed on or before the Effective Date or (iii) were not made in writing or filed and required to be filed in connection with the Interim Administrative Bar Date), must be in writing and filed with the Bankruptcy Court and served on the Trustee or the Plan Administrator, as the case may be, BSP and the U.S. Trustee so as to be received by 5:00

p.m. (Eastern Time) on the date that is thirty (30) calendar days after the occurrence of the Effective Date (the "Administrative Claims Bar Date"). Such request for payment must include at a minimum: (A) the name of the holder of the asserted Administrative Claim; (B) the amount of the Administrative Claim; (C) the basis of the Administrative Claim; and (D) supporting documentation for the Administrative Claim. Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim. Notwithstanding anything in the Plan to the contrary, unless otherwise agreed to by the parties or by order of the Bankruptcy Court, objections to such requests shall be filed and served within thirty (30) calendar after filing of each such request.

On or as soon as reasonably practicable after the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Trustee or Plan Administrator, as applicable, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

(b)    Trustee Fee Claims and Trustee Professional Fee Claims

(i)    To the extent not filed prior to the Effective Date, the Trustee and Trustee Professionals shall submit final fee applications seeking approval of all Trustee Fee Claims and Trustee Professional Fee Claims by the Bankruptcy Court no later than thirty (30) calendar days after the occurrence of the Effective Date (the "Trustee Fee Claims Bar Date"). These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 326, 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(ii)    Trustee Professionals shall estimate in good faith their Accrued Professional Compensation rendering services to the Trustee and shall deliver such good faith estimate to the Trustee no later than five (5) Business Days prior to the anticipated Effective Date. If a Trustee Professional does not provide an estimate, the Trustee shall estimate in good faith the unpaid and unbilled fees and expenses of such Trustee Professional.

(iii)    No later than the Effective Date, the Trustee shall establish and fund the Trustee Fee Escrow with Cash equal to the Trustee Fee Escrow Amount, subject to the agreement of BSP, and no Liens, Claims, or interests shall encumber the Trustee Fee Escrow in any way, other than liens and claims held by BSP securing the BSP Secured Claim and otherwise granted by Order of the Bankruptcy Court. The Trustee Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Estate and (y) shall be held in trust for the Trustee and Trustee Professionals; provided, that any funds remaining in the Trustee Fee Escrow after all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee

-15-

Claims have been irrevocably paid in full shall become Post-Effective Date Available Cash as provided for in this Plan.

(iv)    Allowed Trustee Fee Claims (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (including the Excess Cash) up to the amount of the Trustee's amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Fee Claims.

(v)    Allowed Trustee Professional Fee Claims other than for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (excluding the Excess Cash) up to the amount of such Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

(vi)    Allowed Trustee Professional Fee Claims for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (including the Excess Cash) up to the amount of such Designated Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Designated Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

(vii)    The Trustee and/or the Plan Administrator, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

(c)    Priority Tax Claims

Priority Tax Claims are not classified under the Plan.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

Pursuant to an agreement between the Trustee and the NYC DOF, on account of the Allowed Priority Tax Claims held by the NYC DOF not paid prior to the Effective Date, the NYC DOF (a) shall be paid in Cash on the Effective Date in an amount equal to the NYC Priority Initial Tax Claim Payment and (b) with respect to the balance of the

-16-

NYC Priority Deferred Tax Claim Amount, one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation.

      (d)    Settling Debtor Professional Fee Claims:

      (i)    No later than the Effective Date, the Trustee shall establish and fund the Debtor Professional Fee Escrow with Cash equal to the Debtor Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Debtor Professional Fee Escrow in any way, other than liens securing the BSP Secured Claims and as otherwise granted by the Bankruptcy Court.  The Debtor Professional Fee Escrow (including the funds held therein) (x) shall be held in trust for the Settling Debtor Professionals; provided, that any funds remaining in the Debtor Professional Fee Escrow after all Allowed Debtor Professional Fee Claims have been irrevocably paid in full shall become Post-Effective Date Available Cash as provided for in this Plan.

      (ii)    Allowed Settling Debtor Professional Fee Claims (a) shall be paid in Cash from the Settling Debtor Professional Fee Escrow Pro Rata on account of such Settling Debtor Professionals' Reduced Claims (as defined in the Debtor Professional Fee Stipulation) or as otherwise agreed amongst the Settling Debtor Professionals and (b) with respect to the balance of the Settling Debtor Professional Deficiency Claim, shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Settling Debtor Professional Fee Claims after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, and the BSP Senior Secured Claim Deferred Portion.

**3.2**    **Classified Claims**

      (a)    Class 1 – Other Priority Claims

      (i)    Claims in Class:  Class 1 consists of all Other Priority Claims.

      (ii)    Treatment:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each holder of an Allowed Other Priority Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Claim, Cash in an amount equal to such holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.

      (iii)    Voting:  The Other Priority Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Priority Claims.

      (b)    Class 2 - BSP Senior Secured Claim

(i)       Claims in Class:  Class 2 consists of the BSP Senior Secured Claim.

(ii)      Treatment:  On or before the Effective Date, at closing of the Sale or otherwise agreed to between the Trustee and BSP without further order of the Court, the Allowed BSP Senior Secured Claim shall receive (a) $88,704,697 in Cash on the Effective Date and (b) one or more Distributions of Post-Effective Date Available Cash in an amount up to, but not to exceed, the BSP Senior Secured Claim Deferred Portion of $5.5 million after payment in full in Cash of the Trustee Deferred Compensation and the NYC Priority Deferred Tax Claim Amount; *provided* that, the balance of the BSP Senior Secured Claim arising under the BSP Settlement Agreement not paid pursuant to Class 2 shall be added to the BSP Subordinated Secured Claim.  The Trustee shall make such Distribution to BSP from the Gross Sale Proceeds and Post-Effective Date Available Cash.

(iii)     Voting:  The BSP Senior Secured Claim is impaired under the Plan.  The holder of the BSP Senior Secured Claim is therefore entitled to vote to accept or reject the Plan, and the vote of such holder will be solicited with respect to such Allowed Claim.

(c)     Class 3 – Other Secured Claims

(i)       Claims in Class:  Class 3 consists of all Other Secured Claims, but which, for the avoidance of doubt, excludes the BSP Senior Secured Claim and the BSP Subordinated Secured Claim.

(ii)      Treatment:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different, less favorable, each holder of an Allowed Other Secured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Other Secured Claim, Cash in an amount equal to the Allowed amount of such Other Secured Claim on the earlier of (x) the Closing Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed. Distributions in satisfaction of Allowed Other Secured Claims shall be made from the Gross Sale Proceeds. For the avoidance of doubt, the amount of any Allowed Other Secured Claim shall be equal to the value of its collateral and, pursuant to Section 506 of the Bankruptcy Code, any such claimed amount in excess of the value of its collateral shall receive a Distribution as a General Unsecured Claim under Class 4.

(iii)     Voting:  The Other Secured Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively

presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

(d)    Class 4 – General Unsecured Claims

    (i)    Claims in Class:  Class 4 consists of all General Unsecured Claims.

    (ii)    Treatment:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, all such Allowed Claims, each holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed General Unsecured Claim, one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, and the Debtor Professional Fee Deficiency, in an amount up to, but not to exceed, the Allowed amount of such holder's Other General Unsecured Claim.

    (iii)    Voting:  The General Unsecured Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed General Unsecured Claims.

(e)    Class 5 – BSP Subordinated Secured Claim

    (i)    Claims in Class:   Class 5 consists of the BSP Subordinated Secured Claim.

    (ii)    Treatment:  The BSP Subordinated Secured Claim shall be secured by all assets of the Debtor's estate, including cash. Commencing on the Effective Date and thereafter, the holder of the Allowed BSP Subordinated Secured Claim shall receive one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Amount, the Debtor Professional Fee Deficiency, and Allowed General Unsecured Claims, in an amount up to, but not to exceed, the Allowed amount of such Claim in full and final

-19-

satisfaction, settlement, and release of, and in exchange for, the Allowed BSP Subordinated Secured Claim.

(iii)    Voting:  The BSP Subordinated Secured Claim is impaired under the Plan.  The holder of the BSP Subordinated Secured Claim is therefore entitled to vote to accept or reject the Plan, and the vote of such holder will be solicited with respect to such Allowed Claim.

(f)    Class 6 - Subordinated Insider Claims

(i)    Claims in Class:  Class 6 consists of all Subordinated Insider Claims.

(ii)    Treatment:  Except to the extent that a holder of an Allowed Subordinated Insider Claim agrees to less favorable treatment and only after each Allowed General Unsecured Claim and the Allowed BSP Subordinated Secured Claim have been paid in full or otherwise satisfied in accordance with the terms of this Plan, then each holder of an Allowed Subordinated Insider Claim shall receive one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, the Debtor Professional Fee Deficiency, Allowed General Unsecured Claims, and the BSP Subordinated Secured Claim, in an amount up to, but not to exceed, the Allowed amount of such Other Subordinated Insider Claim in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Claim.

(iii)    Voting:  The Subordinated Insider Claims are impaired Claims.  The holders of Subordinated Insider Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Subordinated Insider Claims.

(g)    Class 7 - Equity Interests

(i)    Interests in Class:  Class 7 consists of All Equity Interests.

(ii)    Treatment:    Except as provided for herein, the holders of Equity Interests are impaired and, as of the Effective Date, shall retain their Equity Interests in the Debtor and the right to receive any surplus remaining in the Estate after all Allowed Claims have been paid or otherwise resolved and the Chapter 11 Case fully administered and closed.

-20-

    (iii)    Voting:  Equity Interests are impaired under this Plan.  The holders of Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equity Interests.

## ARTICLE IV

## <u>ACCEPTANCE OR REJECTION OF THIS PLAN</u>

### 4.1    Acceptances by Classes Entitled to Vote

Class 2 (BSP Senior Secured Claim), Class 4 (General Unsecured Claims) and Class 5 (BSP Subordinated Secured Claim) are the only Classes of Claims of the Debtor that are entitled to vote to accept or reject the Plan.  Such Classes shall have accepted the Plan if (a) the holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in any Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

### 4.2    Presumed Acceptance of the Plan

Classes 1 (Other Priority Claims), and Class 3 (Other Secured Claims) are not impaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

### 4.3    Presumed Rejection of the Plan

Classes 6 (Subordinated Insider Claims) and 7 (Equity Interests) are not anticipated to receive any Distribution under the Plan.  Therefore, the holders of Claim and Interests in such Classes are deemed to have rejected the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

### 4.4    Elimination of Classes

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

### 4.5    Cramdown

The Trustee requests Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Trustee reserves the right to

modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

### 5.1    Implementation of the Plan

Following the Effective Date, the Plan will be implemented by the Trustee or the Plan Administrator, as the case may be, in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

### 5.2    The BSP Settlement Agreement

The Plan is based on the BSP Settlement Agreement entered into between the Trustee and BSP and approved by the Bankruptcy Court.  Both the treatment of the BSP Secured Claim under this Plan and the Sale are premised on the BSP Settlement Agreement except as may otherwise be modified herein.

### 5.3    Funding of the Plan and the Sale

The primary source of funding the Distributions and payments required to be made under this Plan shall be the Gross Sale Proceeds generated by the Sale. Additionally, the net proceeds, if any, resulting from the possible prosecution of claims and causes of action by the Trustee or the Plan Administrator, as the case may be, on behalf of the Debtor's Estate shall serve as an additional source of funding Distributions to holders of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim, the Debtor Professional Deficiency Amount, Allowed Unsecured Claims, and the BSP Subordinated Secured Claim.

### 5.4    Powers and Obligations of the Plan Administrator

(a)    The Confirmation Order may provide for the appointment of the Plan Administrator.  The compensation of the Plan Administrator shall be as set forth in the Plan Supplement.  The Plan Administrator shall be deemed the Estate representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

(b)    The Plan Administrator may act for the Debtor's Estate in a fiduciary capacity for the Estate, subject to the provisions of the Plan.  On the Effective Date, if appointed, the Plan Administrator shall succeed to all of the rights of the Trustee with respect to the assets of the Estate.  The powers and duties of the Plan Administrator or the Trustee, as the case may be, shall include, without further order of the Court, except where expressly stated otherwise, the following rights or obligations:

(i)     to take such steps as may be necessary or otherwise desirable to administer and close any and all of the transactions as may be contemplated by the terms of the Sale, the Settlement Agreement or this Plan;

(ii)    to invest Cash and withdraw and make Distributions of Cash to holders of Allowed Claims and to pay taxes and other obligations owed by the Estate or incurred by the Trustee or the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(iii)   to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in connection with administering the Assets;

(iv)    to engage attorneys, consultants, agents, employees and all professional persons, to assist with respect to the Trustee and/or Plan Administrator's responsibilities;

(v)     to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Trustee and/or the Plan Administrator and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Estate in accordance with the Plan;

(vi)    to satisfy any liabilities, expenses and other Claims incurred by the Trustee and/or Plan Administrator in the ordinary course of business and without further order of the Bankruptcy Court;

(vii)   to execute and deliver all documents, and take all actions, necessary to consummate the Plan and close the Chapter 11 Case;

(viii)  to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Assets in accordance with the terms provided for herein;

(ix)    to oversee compliance with the Estate's accounting, finance and reporting obligations;

(x)     to prepare such periodic reports as may be required by the U.S. Trustee;

(xi)    except as otherwise provided for in the Plan, to object to Claims against the Debtor's Estate;

(xii)   except as otherwise provided for in the Plan, to compromise

-23-

and settle Claims against the Debtor's Estate;

(xiii)  to implement and/or enforce all provisions of the Plan;

(xiv)  to implement and/or enforce all agreements entered into prior to the Effective Date;

(xv)  to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(xvi)  to investigate, prosecute, settle and collect upon Retained Causes of Action;  and

(xvii)  to use such other powers as may be vested in or assumed by the Trustee or the Plan Administrator, as the case may be, pursuant to the Plan or Bankruptcy Court Order or as may be necessary and proper to carry out the provisions of the Plan.

## 5.5  Preservation of Causes of Action

On and after the Effective Date, the Trustee or the Plan Administrator, as applicable, may pursue on behalf of the Debtor's Estate any Retained Cause of Action in his or her sole discretion.  No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Retained Causes of Action against them as any indication that the Trsutee or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against them.  The failure of the Trustee to specifically list any claim, right of action, suit, proceeding, or other Retained Cause of Action in this Plan, the Plan Supplement, the Disclosure Statement, or otherwise, does not, and will not, be deemed to constitute a waiver or release by the Trustee or the Plan Administrator, as applicable, of such claim, right of action, suit, proceeding, or other Retained Cause of Action.  The Trustee and the Plan Administrator, as applicable, will retain the right to pursue such claims, rights of actions, suits, proceedings, and other Retained Causes of Action in their sole discretion and, therefore, the failure to list a claim, right of action, suit, proceeding, or other Retained Cause of Action shall not result in a limitation of the right to pursue the same on and after the Effective Date based on any preclusion doctrine, including, but not limited to, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches.

## 5.6  Section 1146(a) of the Bankruptcy Code

As set forth in paragraph 26 of the Sale Order, pursuant to section 1146(a) of the Bankruptcy Code, the sale of the Purchased Assets (as defined in the Sale Order) shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States.

# ARTICLE VI

# DISTRIBUTIONS

## 6.1    Plan Distributions

(a)    The Trustee or the Plan Administrator, as applicable, shall make Distributions to holders of Allowed Claims in accordance with Article III of the Plan on, or as soon as reasonably practicable after, the Effective Date.  From time to time, the Trustee or Plan Administrator, as applicable, shall make Pro Rata Distributions to holders of Allowed Claims in accordance with Article III of the Plan.

(b)    Notwithstanding the foregoing Section 6.1(a), subject to the Cash Collateral Order, the Trustee or Plan Administrator, as applicable, may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Assets of the Estate during the winding up and closing of the Chapter 11 Case, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Trustee and/or the Plan Administrator and the fees, costs and expenses of all professionals retained by the Trustee and/or the Plan Administrator, and any taxes imposed in respect of the Assets), (iii) to satisfy other liabilities to which the Assets are otherwise subject, in accordance with the Plan, and (iv) to establish any necessary reserve.  All Distributions to the holders of Allowed Claims shall be made in accordance with the Plan.  The Trustee or the Plan Administrator, as applicable, may withhold from amounts distributable to any Person any and all amounts determined in the Trustee or the Plan Administrator's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.  Holders of Allowed Claims shall, as a condition to receiving Distributions, provide such information and take such steps as the Trustee or the Plan Administrator, as applicable, may reasonably require to ensure compliance with withholding and reporting requirements and to enable them to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  In the event that a holder of an Allowed Claim does not comply with the Trustee or the Plan Administrator's requests in the preceding sentence within thirty (30) calendar days, no Distribution shall be made on account of such Allowed Claim, such holder shall have forfeited its right to Distributions under the Plan, and the Trustee or the Plan Administrator, as applicable, shall reallocate such Distribution for the benefit of all other holders of Allowed Claims as the case maybe, in accordance with the Plan.

## 6.2    Address for Delivery of Distributions and Forfeiture of Claims

If any Distribution is returned to the Trustee or Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Trustee or Plan Administrator is notified of such holder's then current address within sixty (60) calendar days after such Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distributions shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.  Moreover, any holder of a Claim who has not filled out and returned documents to the Trustee or Plan Administrator necessary to receive a Distribution (such as a signed form W-9, if applicable) shall forfeit its Claim and

accompanying Distribution if such holder fails to fill out and return such documents within thirty (30) days after notice by the Trustee or Plan Administrator.

### 6.3     Distributions under Twenty-Five Dollars

Neither the Trustee nor the Plan Administrator, as applicable, shall be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Trustee or the Plan Administrator on or before twenty (20) days after the Effective Date.  Any such Distributions not subject to a timely request for payment shall be distributed by the Trustee or the Plan Administrator to the other holders of Allowed Claims in accordance with the provisions of the Plan.

### 6.4     Time Bar to Cash Payments

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Trustee or Plan Administrator, as applicable, by the holder of the Allowed Claim to whom such check was originally issued within one hundred eighty (180) days of the date of issuance thereof.  If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those holders of Allowed Claims set forth in the Plan.

### 6.5     Distributions to Holders as of the Confirmation Date

As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. Neither the Trustee nor the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan) with only those holders of record as of the close of business on the Confirmation Date.

### 6.6     Abandoned Assets

The Plan Administrator may abandon any Assets, which book value shall not exceed $10,000, without the need for additional approval of the Bankruptcy Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate and will instead revert to the Post-Effective Date Debtor.

### 6.7     Windup

The Trustee or the Plan Administrator, as applicable, may seek to close the Chapter 11 Case and be discharged at such time as (i) all of the Assets have been distributed pursuant to the Plan, (ii) the Trustee or the Plan Administrator, as the case may be, determines, in his or her sole discretion, that the administration of any remaining Assets is not likely to yield sufficient additional Post-Effective Date Available

Cash to justify further pursuit, or (iii) all Distributions required to be made by the Trustee or the Plan Administrator, as applicable, under the Plan have been made.  If at any time the Trustee or the Plan Administrator, as applicable, determines in reliance upon such professionals as they may retain that the expense of administering the Plan and the Debtor's Estate so as to make a final Distribution to holders of Allowed Unsecured Claims is likely to exceed the value of the Assets remaining in the Estate, the Trustee or the Plan Administrator may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to seek and obtain an Order of the Bankruptcy Court closing the Chapter 11 Case and discharging the Trustee and/or the Plan Administrator, (y) transfer the balance to BSP in account of its Senior Secured Claim or Subordinate Secured Claim, as applicable.

**6.8     Distribution of Unclaimed Property**

Any Distribution of Assets (Cash or otherwise) provided for under the Plan which is unclaimed after ninety (90) days following such Distribution shall irrevocably revert to the Estate for re-Distribution in accordance with the Plan.

**6.9     Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

**6.10    Distributions on Disputed Claims**

(a)     *No Distributions Pending Allowance.*  Notwithstanding any provision to the contrary in the Plan, and except as otherwise agreed by the relevant parties, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

(b)     *Special Rules for Distributions to Holders of Disputed Claims.*  All Distributions made pursuant to the Plan on account of a Disputed Claim that is later deemed an Allowed Claim by the Bankruptcy Court shall be made together with any other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to holders of Allowed Claims included in the applicable Class (or holders of unclassified Claims, as applicable);  provided, however, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law.

## ARTICLE VII

## CONDITIONS PRECEDENT

### 7.1    Conditions to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)    the Trustee Fee Escrow shall have been funded with the Trustee Fee Escrow Amount, and the Settling Debtor Professional Fee Escrow shall have been funded with the Settling Debtor Professional Fee Escrow Amount;

(c)    the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(d)    the Sale shall have closed;

(e)    the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(f)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;  and

(g)    all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

### 7.2    Waiver of Conditions Precedent

Each of the conditions precedent in Section 7.1 may be waived only if waived in writing by the Trustee and BSP to the extent required by the Settlement Agreement, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

## ARTICLE VIII

## PROCEDURES FOR DISPUTED CLAIMS

**8.1     Allowance of Claims**

After the Effective Date, the Trustee and the Plan Administrator, as the case may be, shall have and retain any and all rights and defenses the Debtor and/or its Estate had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

**8.2     Objections to Claims**

(a)     *Authority.*  The Trustee or the Plan Administrator, as applicable, or any party in interest shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Trustee or the Plan Administrator, as applicable, unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)     *Amendments to Claims.*  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Trustee or the Plan Administrator, as applicable, unless the holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)     *Objection Deadline.*  As soon as practicable, but no later than the Claims Objection Deadline, the Trustee or the Plan Administrator, as applicable, may file objections with the Bankruptcy Court and serve such objections on the holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Trustee or the Plan Administrator, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon the filing of a notice by the Trustee or the Plan Administrator, as applicable.

**8.3    Estimation of Disputed Claims**

For purposes of calculating and making Distributions and establishing reserves under the Plan, the Trustee or the Plan Administrator, as applicable, may at any time after the Confirmation Date in good faith request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Trustee of the Plan Administrator previously objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trustee or the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**8.4    Resolution of Claims**

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Trustee or the Plan Administrator, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Trustee or the Plan Administrator, as the case may be, or their respective successors may pursue Retained Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Estate and Creditors.

**8.5    Disallowed Claims**

All Claims held by persons or entities against whom the Debtor or the have commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed Disallowed pursuant to this Section 8.5 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Trustee or the Plan Administrator on behalf of the Estate from such party have been paid.

## ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS

**9.1      Rejection of Executory Contracts**

Except as may otherwise be provided in the Plan, on the Effective Date, all Executory Contracts shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract:  (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order);  (b) is the subject of a motion to assume filed on or before the Effective Date;  or (c) has expired or terminated pursuant to its own terms.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts in the Plan will be effective as of the Effective Date.  Each Executory Contract assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Trustee on behalf of the Debtors Estate;  or the assignee, in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.  For the avoidance of doubt, any Executory Contracts assumed and assigned to the Purchaser (or its designee) in connection with the Sale and as approved by the Sale Order shall not be affected by the Plan and/or the Confirmation Order.

**9.2      Claims Based on Rejection of Executory Contracts**

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts pursuant to the Plan must be filed no later than the applicable Bar Date.  Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts that are not timely filed by the applicable Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor's Estate, the Trustee or the Plan Administrator without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

**9.3      Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Trustee that any particular contract or lease is in fact an Executory Contract, as applicable, or that the Debtor's Estate has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Trustee or the Plan Administrator, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

**10.1    Binding Effect**

Following the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor's Estate, the Trustee, all present and former holders of Claims and Interests, whether or not such holders voted in favor of the Plan, and their respective successors and assigns.

**10.2    Exculpation and Limitation of Liability**

**NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE PLAN ADMINISTRATOR AGREEMENT, THE PLAN SUPPLEMENT, THE BSP SETTLEMENT AGREEMENT, THE SALE, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE DOES NOT EXCULPATE ANY OF THE EXCULPATED PARTIES' POST-EFFECTIVE DATE OBLIGATIONS UNDER THE PLAN, THE BSP SETTLEMENT AGREEMENT, THE SALE ORDER, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING, BUT NOT LIMITED TO, THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.**

**10.3    Release of BSP**

**In consideration of the BSP Settlement Agreement, the Sale and the treatment of its Allowed Secured Claim as provided herein and other good and valuable consideration given by BSP to the Trustee as it relates to the Debtor's Estate, the Trustee, on behalf of himself (in his capacity as Chapter 11 trustee for the Debtor's**

-32-

Estate), the Debtor and the Debtor's Estate (collectively, the "Releasors"), each hereby waives, remises, releases and forever discharges BSP, its predecessors, successors, assigns, affiliates, shareholders, partners, members, managers, directors, officers, accountants, attorneys, employees, agents, representatives and servants of, from and against any and all claims, actions, causes of action, suits, proceedings, defenses, counterclaims, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity or otherwise, which any of the Releasors ever had or now has for or by reason of any matter, cause or anything whatsoever to the Effective Date relating to or arising out of any of the Adversary Proceeding, the Loan, the Assets, the Chapter 11 Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of BSP with respect thereto, or the enforcement of any of BSP's rights or remedies with respect to the Debtor, the Debtor's Estate, the Insiders or any other person or entity with respect to the Loan.  Any capitalized terms used in this Section 10.3 not otherwise defined in the Plan shall have the meanings ascribed to them in the BSP Settlement Agreement.

**10.4    Release of and by Debtor Professionals**

The releases set forth in paragraphs 7 and 8 of the Debtor Professional Fee Stipulation are hereby incorporated herein and restated as of the Effective Date.

**10.5    No Release of Insiders**

For the avoidance of doubt, nothing set forth herein, and no action taken by the Trustee or BSP in regard to implementation of the same, are intended to and shall not serve to release any claims against Toby Moskovits, Michael Lichtenstein, their affiliated entities and professionals (except in regards to releases by and among certain Debtor professionals, as expressly agreed to by BSP and the Trustee and approved by the Court), any of the Debtor's other insiders (as such term is defined in 11 U.S.C. § 101(31)), the Williamsburg Hotel BK LLC, the Debtor's prepetition receiver, Constantino Segonas and his affiliated entities and professionals, or any transferees (including subsequent transferees) of avoidable transfers made by any of the foregoing.

**10.6    No Discharge**

Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code.

**10.7    Term of Bankruptcy Injunction or Stays**

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

**10.8    Post-Effective Date Retention of Professionals**

Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Trustee and the Plan Administrator, as applicable, may employ and pay professionals in the ordinary course of business.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

**11.1    Retention of Jurisdiction**

Pursuant to sections 105(e) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor and its Estate that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(d)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from, or obligations incurred in connection with, the Plan or such documents;

(e)    modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order,

the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(f)     hear and determine all applications for compensation and reimbursement of expenses of the Trustee and the Trustee Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; provided, however, that from and after the Effective Date the payment of fees and expenses by the Trustee or the Plan Administrator, as applicable, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(h)     adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)     resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation, and Distribution;

(j)     hear and determine retained causes of action by the Trustee or the Plan Administrator, as applicable, or on behalf of the Debtor's Estate;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(l)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with the foregoing;

(m)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)     enter an order closing the Chapter 11 Case.

**11.2    No Limitation on Enforcement by SEC or the U.S. Attorney's Office**

Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

**ARTICLE XII**

**MISCELLANEOUS PROVISIONS**

**12.1    Payment of Statutory Fees**

All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Trustee or Plan Administrator, as the case may be, until the earlier of the conversion or dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code or the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  The Trustee or the Plan Administrator, as the case may be, shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within fifteen (15) days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

**12.2    Amendment or Modification of the Plan**

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Trustee reserves the right to alter, amend, or modify the Plan or any Plan Supplement at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan, subject to the express written consent of BSP.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such holder.

**12.3    Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.4    Severability of Plan Provisions**

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court, at the request of the Trustee and with the consent of BSP (not to be unreasonably withheld), to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to

make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 12.5   Successors and Assigns

The Plan shall be binding upon and inure to the benefit of the Debtor's Estate and the Trustee and his successors and assigns, including the Plan Administrator, as applicable. The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

## 12.6   Revocation, Withdrawal, or Non-Consummation

The Trustee reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other chapter 11 plans. If the Trustee revokes or withdraws the Plan, or if Confirmation or Consummation of the Plan does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Estate or the Trustee or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor's Estate, the Trustee or any other Person.

## 12.7   Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit or Plan Supplement document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

## 12.8   Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.9    Notice of Effective Date**

On or before five (5) Business Days after the Effective Date, the Trustee shall mail or cause to be mailed to all holders of Claims and Interests a notice that informs such Entities of (a) the Confirmation of the Plan and occurrence of the Effective Date, (b) notice of the Administrative Claims Bar Date and Trustee Fee Claims Bar Date, and (c) such other matters as the Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**12.10   Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor's Estate, the Trustee, the holders of Claims and Interests, the Exculpated Parties, and each of their respective successors and assigns, including the Plan Administrator.  The Trustee will request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.

**12.11   Entire Agreement**

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.12   Notice**

All notices, requests, and demands to or upon the Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or other electronic transmission, when received and telephonically confirmed, addressed as follows:

> **TOGUT, SEGAL & SEGAL LLP**
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn:  Frank A. Oswald, Esq. and Bryan M. Kotliar, Esq.
> E-mail: frankoswald@teamtogut.com and bkotliar@teamtogut.com
>
> *Attorneys for the Trustee*
>
> -and-
>
> **Kramer Levin Naftalis & Frankel LLP**
> 1177 Avenue of the Americas
> New York, New York 10036

(212) 715-9100
Attn.:  Adam C. Rogoff, Esq.
Email:  arogoff@kramerlevin.com

**Nelson Mullins Riley & Scarborough LLP**
201 17th Street, suite 1700
Atlanta, Georgia 30363
(404) 322-6000
Attn.:  Lee B. Hart, Esq.
Email:  lee.hart@nelsonmullins.com

*Co-counsel for BSP*

*[Remainder of Page Left Blank Intentionally]*

## ARTICLE XIII

### CONFIRMATION REQUEST

The Trustee requests Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

Dated: February 14, 2023
       New York, New York

By: /s/ *Stephen S. Gray*
Not individually but solely in His
capacity as Chapter 11 Trustee

TOGUT, SEGAL & SEGAL LLP
Counsel for the Chapter 11 Trustee

By: /s/ *Frank A. Oswald*
Frank A. Oswald
A Member of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

**EXHIBIT B**

**Redlined First Amended Plan**

**NOTHING CONTAINED IN THIS CHAPTER 11 PLAN OF LIQUIDATION IS AN OFFER, ACCEPTANCE, OR A LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST.  THE PLAN IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND CERTAIN OTHER CONDITIONS. THE PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. ACCEPTANCES OR REJECTIONS WITH RESPECT TO THE PLAN ARE BEING SOLICITED PURSUANT TO THE ACCOMPANYING DISCLOSURE STATEMENT ONCE THE BANKRUPTCY COURT HAS PROVISIONALLY APPROVED SUCH DISCLOSURE STATEMENT, SUBJECT TO FINAL APPROVAL AT THE CONFIRMATION HEARING.  ANY SOLICITATION OF THE PLAN WILL ONLY OCCUR IN COMPLIANCE WITH APPLICABLE LAW.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |
|---|---|
| | : Chapter 11 |
| | : |
| In re: | : Case No.: 21-22108 (SHL) |
| | : |
| 96 WYTHE ACQUISITION LLC, | : |
| | : |
| Debtor. | : |
| | : |
| | : |

------------------------------------------------------------x

**FIRST AMENDED CHAPTER 11 PLAN OF**
**LIQUIDATION FOR THE BANKRUPTCY ESTATE OF**
**96 WYTHE ACQUISITION LLC, AS PROPOSED BY THE CHAPTER 11 TRUSTEE**

**TOGUT, SEGAL & SEGAL LLP**
**One Penn Plaza, Suite 3335**
**New York, New York 10119**
**(212) 594-5000**

*Counsel for Stephen S. Gray,*
*not individually but solely in*
*his capacity as Chapter 11 Trustee*

**Dated:  December 2, 2022February 14, 2023**

**TABLE OF CONTENTS**

**Page**

ARTICLE I
DEFINED TERMS AND RULES OF INTERPRETATION ..................................................11

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS..................................................15

2.1    Classified Claims and Equity Interests....................................................15

2.2    Classification ...............................................................................................16

2.3    Resolution of Disputes ..............................................................................16

ARTICLE III
TREATMENT OF CLAIMS AND INTERESTS ..................................................16

3.1    Unclassified Claims ...................................................................................16

3.2    Classified Claims .......................................................................................19

ARTICLE IV
ACCEPTANCE OR REJECTION OF THIS PLAN..................................................23

4.1    Acceptances by Classes Entitled to Vote................................................23

4.2    Presumed Acceptance of the Plan ...........................................................24

4.3    Presumed Rejection of the Plan ...............................................................24

4.4    Elimination of Classes ...............................................................................24

4.5    Cramdown....................................................................................................24

ARTICLE V
IMPLEMENTATION OF THE PLAN ..................................................24

5.1    Implementation of the Plan......................................................................24

5.2    The BSP Settlement Agreement ...............................................................24

5.3    Funding of the Plan and the Sale............................................................25

5.4    Powers and Obligations of the Plan Administrator .............................25

5.5    Preservation of Causes of Action ............................................................27

5.6    Section 1146(a) of the Bankruptcy Code..................................................27

ARTICLE VI
DISTRIBUTIONS ................................................................................................27

    6.1    Plan Distributions................................................................................27

    6.2    Address for Delivery of Distributions and Forfeiture of Claims................28

    6.3    Distributions under Twenty-Five Dollars.........................................28

    6.4    Time Bar to Cash Payments ..............................................................28

    6.5    Distributions to Holders as of the Confirmation Date .....................29

    6.6    Abandoned Assets.............................................................................29

    6.7    Windup ..............................................................................................29

    6.8    Distribution of Unclaimed Property .................................................30

    6.9    Saturday, Sunday, or Legal Holiday.................................................30

    6.10   Distributions on Disputed Claims.....................................................30

ARTICLE VII
CONDITIONS PRECEDENT .............................................................................30

    7.1    Conditions to the Effective Date.......................................................30

    7.2    Waiver of Conditions Precedent.......................................................31

ARTICLE VIII
PROCEDURES FOR DISPUTED CLAIMS.........................................................31

    8.1    Allowance of Claims ........................................................................31

    8.2    Objections to Claims ........................................................................32

    8.3    Estimation of Disputed Claims.........................................................32

    8.4    Resolution of Claims ........................................................................33

    8.5    Disallowed Claims............................................................................33

ARTICLE IX
TREATMENT OF EXECUTORY CONTRACTS ................................................33

    9.1    Rejection of Executory Contracts.....................................................33

    9.2    Claims Based on Rejection of Executory Contracts .......................34

    9.3    Reservation of Rights .......................................................................34

ARTICLE X
EFFECT OF PLAN CONFIRMATION ......................................................................34

    10.1   Binding Effect ................................................................................34

    10.2   Exculpation and Limitation of Liability ..................................35

    10.3   Release of BSP ...............................................................................35

    10.4   Release of and by Debtor Professionals....................................36

    10.5   No Release of Insiders.................................................................36

    10.6   No Discharge ................................................................................36

    10.57   Term of Bankruptcy Injunction or Stays ...............................36

    10.68   Post-Effective Date Retention of Professionals........................36

ARTICLE XI
RETENTION OF JURISDICTION ...........................................................................37

    11.1   Retention of Jurisdiction ............................................................37

    11.2   No Limitation on Enforcement by SEC or the U.S. Attorney's Office .......38

ARTICLE XII
MISCELLANEOUS PROVISIONS ...........................................................................39

    12.1   Payment of Statutory Fees ..........................................................39

    12.2   Amendment or Modification of the Plan .................................39

    12.3   Substantial Consummation .......................................................39

    12.4   Severability of Plan Provisions ..................................................39

    12.5   Successors and Assigns ...............................................................40

    12.6   Revocation, Withdrawal, or Non-Consummation...................40

    12.7   Governing Law ............................................................................40

    12.8   Time ...............................................................................................40

    12.9   Notice of Effective Date ..............................................................40

    12.10   Immediate Binding Effect ...........................................................41

    12.11   Entire Agreement.........................................................................41

12.12   Notice...................................................................................................................41

ARTICLE XIII
CONFIRMATION REQUEST ............................................................................................4343

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of 96 Wythe Acquisition LLC (the "Debtor"), hereby proposes the following first amended Chapter 11 plan of liquidation (the "Plan") pursuant to the provisions of title 11 of the United States Code (the "Bankruptcy Code").   Reference is made to the first amended Disclosure Statement filed with the Bankruptcy Court concurrently herewith for a discussion of certain transactions and other matters germane to the implementation of the Plan and the administration of the Debtor's Chapter 11 case, as well as a summary discussion of the terms and conditions of the Plan.   All holders of Claims (as defined herein) who are entitled to vote on the Plan are strongly encouraged to read the Plan and the Disclosure Statement in their entirety and consult with an attorney.

NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH HAVE BEEN AUTHORIZED BY THE COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms.*  For the purposes of this Plan, and to the extent not otherwise provided herein, the terms below shall have the meanings set forth in this Section and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article I and, any term used in this Plan which is not defined below, but which is defined in the Bankruptcy Code, shall have the meaning designated in the Bankruptcy Code:

1.1    "Accrued Professional Compensation" means, at any date, all of a Professional's billed, accrued, and unpaid fees and reimbursable expenses for services rendered in the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (b) after applying any retainer that has been provided by the Debtor or any third party to such Professional and not previously applied.  No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

1.21.1  "Administrative Claim" means, except as otherwise set forth in this Plan, a Claim (or a portion of a Claim) for any cost or expense of administration in connection with the Chapter 11 Case, including, without limitation, any actual, necessary costs and expenses of preserving the Debtor's Estate, and all fees and charges assessed against the Debtor's Estate, as defined herein, pursuant to 28 U.S.C. § 1930. The term Administrative Claim does not include Trustee Fee Claims, Trustee Professional Fee Claims, Settling Debtor Fee Claims, or Priority Claims, as defined herein and which are treated separately in this Plan.

1.31.1  "Administrative Claims Bar Date" has the meaning set forth in Section 3.1(a) of this Plan.

1.41.1  "Allowed" means, with reference to any Claim (including any Administrative Claim) that portion of a Claim:  (i) which has been Allowed by a Final Order;  (ii) which is allowed under the terms of this Plan;  or (iii) (a) which has been scheduled by the Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely and otherwise properly filed on or before the applicable Bar Date with the Bankruptcy Court, and with respect to Claims described in this clause (iii) as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, the Plan, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof. Except as otherwise specifically set forth in this Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the Bankruptcy Code and applicable law.

1.51.1  "Allowed Administrative Claim" means an Allowed Claim that is entitled to priority as an Administrative Claim and that is not disputed.

1.61.1  "Allowed Interest" means an Interest which has been allowed by Final Order of the Bankruptcy Court.

1.71.1  "Allowed Priority Tax Claim" means an Allowed Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.81.1  "Allowed Secured Claim" means that portion of an Allowed Claim, excluding Priority Tax Claims, with a valid and enforceable lien against any property of the Debtor's Estate where such property has a value of which is equal to or greater than the amount of the Allowed Claim and as to which no objection has been interposed and to which the period for bringing such objection as provided hereunder has expired or which has been Allowed by Final Order.  In accordance with the definition set forth in section 506(a) of the Bankruptcy Code, "Allowed Secured Claim" specifically excludes that portion of an Allowed Claim of a Creditor having a lien against any property of Debtor's Estate to the extent the value of such creditor's interest in the property is less than the amount of such Allowed Claim.

1.91.1  "Allowed Unsecured Claim" means any Allowed Claim that is not an Allowed Secured Claim, Allowed Priority Claim or Allowed General Unsecured Claim.

1.101.1 "Assets" means all property of the Debtor or its estate, whether tangible or intangible, and any proceeds, products, rents, offspring or profits thereof.

1.11   "Available Cash" means all Cash held by the Trustee and/or the Plan Administrator, as the case may be, on behalf of the Debtor's Estate on and or after the Effective Date not needed to pay the Allowed BSP Senior Secured Claim but otherwise available to make such Distributions and payments as may be required by the terms and conditions of this Plan.

-2-

1.121.1 "Avoidance Actions" means all claims, demands, proceedings, or causes of action of the Debtor against any Person or Entity which has been brought or could be brought in the name of the Debtor pursuant to sections 510, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or applicable state law.

1.131.1 "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, et seq.

1.141.1 "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

1.151.1 "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

1.161.1 "Bar Date" means as applicable:  (a) the General Bar Date; (b) the later of (i) the General Bar Date, (ii) the Supplemental Bar Date, and (iii) the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) August 22, 2021 for Governmental Units; (e) the Interim Administrative Claims Bar Date and (f) the Administrative Claims Bar Date.

1.17 "Bidding Procedures Order" means that certain *Order (A) Approving Bid Procedures for the Sale of the Debtor's Assets; (B) Establishing Procedures to Designate a Stalking Horse Bidder and Enter Into a Stalking Horse Agreement with Bid Protections; (C) Scheduling an Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; (E) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (F) Granting Related Relief,* entered on November 15, 2022 [Dkt. No. 784].

1.181.1 "BSP" means, collectively, Benefit Street Partners Realty Operating Partnership, L.P.

1.191.1 "BSP Secured Claim" means, collectively, the BSP Senior Secured Claim and the BSP Subordinated Secured Claim, as described in Sections 2 and 3 of the BSP Settlement Agreement, which aggregate Allowed Claim amount shall not be less than $108,688,786.76 as of August 14, 2022.

1.201.1 "BSP Senior Secured Claim" has the meaning set forth in the BSP Settlement Agreement, which Allowed amount shall not be no less than $95,952,130.85 (as of August 14, 2022) plus additional accrued interest, fees, and expenses in accordance with the BSP Settlement Agreement.; provided, however, that BSP has agreed to accept the amount of $88,704,697 at Closing to facilitate the confirmation of this Plan, plus the BSP Senior Secured Claim Deferred Portion to the extent of available Cash to Distribute.

1.1    "BSP Senior Secured Claim Deferred Portion" means $5,500,000.

1.211.2"BSP Settlement Agreement" means that certain Settlement Agreement entered into between BSP and the Trustee dated as of September 12, 2022, a copy of which is attached as Exhibit 1 to the BSP Settlement Agreement Order.

1.221.1"BSP Settlement Agreement Order" means that certain order entered by the Bankruptcy Court on October 21, 2022 [Dkt No. 753] approving the BSP Settlement Agreement.

1.231.1"BSP Subordinated Secured Claim" has the meaning set forth in the BSP Settlement Agreement, which Allowed amount shall not be less than $12,736,655.90 asconsist of August 14, 2022, plus additional accrued interest, fees,all amounts due and expensesowing to BSP pursuant to the BSP Settlement Agreement after payment of the BSP Senior Secured Claim and the BSP Senior Secured Claim Deferred Portion in accordance with the BSP Settlement AgreementPlan.

1.241.1"Business Day" means any day other than a Saturday, Sunday, or "legal holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.1    "BuyerCash" means legal tender of the Successful Bidder or Successful Bidders (United States of America and equivalents thereof.

1.251.2"Cash Collateral Order" means that certain *Twelfth Interim Order for Use of Cash Collateral,* as defined inapproved by the Bidding Procedures Order).Bankruptcy Court and any further cash collateral order entered with consent of BSP.

1.261.1"Causes of Action" means, without limitation, (a) all pending suits to which the Debtor is a party, whether as plaintiff or defendant, as of the date the Confirmation Order becomes a Final Order, and (b) any and all other actions, proceedings, causes of action, liabilities, obligations, suits, accounts, controversies, agreements, rights to legal remedies, rights to equitable remedies, rights to payment and claims, damages, judgments, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, existing or hereafter arising, to which the Debtor had any rights or obligations whatsoever, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date, during the course of the Chapter 11 Case (including through the Effective Date), including, without limitation, all Avoidance Actions and D&O Claims.

1.271.1"Chapter 11 Case" means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor and bearing the caption In re: 96 Wythe Acquisition LLC [SHL].

1.281.1"Claim" as defined in section 101(5) of the Bankruptcy Code

-4-

means: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.291.1 "Claims" means any "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code, including any group of Claims as classified in Article II of this Plan.

1.301.1 "Claims Objection Deadline" means for all Claims, the later of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 90 days after the filing of a Proof of Claim or request for payment of an Administrative Claim; and (c) such later date as ordered by the Bankruptcy Court upon motion filed by the Trustee, or the Plan Administrator, as applicable. The Claims Objection Deadline may be extended one or more times by the Bankruptcy Court upon the request of the Trustee or Plan Administrator, as applicable.

1.311.1 "Class" means a class of Claims or Interests.

1.1 "Closing" means the closing of the Sale.

1.321.2 "Confirmation" means the confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

1.331.1 "Confirmation Date" means the date the Confirmation Order is entered on the Bankruptcy Court docket.

1.341.1 "Confirmation Hearing" means the hearing or hearings held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

1.351.1 "Confirmation Order" means one or more orders issued and entered confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.361.1 "Consummation" means the occurrence of the Effective Date.

1.1 "Debtor Professional Fee Stipulation" means that certain *Stipulation and Order By and Between the Chapter 11 Trustee, Benefit Street Partners Realty Operating Partnership, and the Debtor's Professionals*, by and among, the Trustee, BSP, the Settling Debtor Professionals, as approved by the Bankruptcy Court.

1.2 "Debtor Professional Fee Deficiency" shall mean the Debtor Professional Fee Deficiency Claim, as such term is defined in the Debtor Professional Fee Stipulation, plus such other amounts as are due to other professionals retained by the estate (including Eric M. Huebscher, the Court-appointed Examiner in this Chapter

11 Case, and Locke Lord LLP, his counsel) to the extent allowed by order of the Court, as agreed to by the Trustee Benefit Street and the Relevant Professional.

1.37 1.3 "D&O Claim" means a claim or Cause of Action against any present or former director, officer or insider of the Debtor based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case; including, but not limited to, Causes of Action assertable against (i) Heritage Equity Partners, (ii) Toby Moskovits, (iii) Michael Lichtenstein and (iv) The Williamsburg Hotel BK LLC and/or any of their respective family members or affiliated entities of any of the foregoing.

1.38 1.1 "Debtor" means 96 Wythe Acquisition LLC, as the Debtor in the Chapter 11 Case.

1.1    "Designated Trustee Professionals" means the Professional Persons retained by the Trustee other than A&G Realty Partners, LLC and Eastdil Secured, L.L.C.

1.39 1.2 "Disallowed" means all or such part of a Claim or Interest (a) that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction; (b) for reimbursement or contribution of an entity that is co-liable with the Debtor on the Claim of a creditor and such Claim is contingent on the Confirmation Date, pursuant to section 502(e)(1)(B) of the Bankruptcy Code; or (c) proof of which was required to be filed but as to which a Proof of Claim was not timely or properly filed; unless Allowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

1.40 1.1 "Disclosure Statement" means the first amended disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be further amended, supplemented, or modified from time to time and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.41 1.1 "Disputed Claim" means (a) any Claim as to which the Debtor, the Trustee or the Plan Administrator, as the case may be, or other party in interest has interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, the Trustee, the Plan Administrator or other party in interest in accordance with applicable law, which objection has not been withdrawn, or determined by a Final Order; (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim. For the avoidance of doubt, if no Proof of Claim has been filed by the applicable Bar Date and the Claim is not listed on the Schedules or has been or hereafter is listed on the Schedules as $0.00, Disputed, contingent, or unliquidated, such Claim shall be a Disallowed Claim and shall be expunged from the Claims Register without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. A Claim that is Disputed as to its amount shall not be Allowed in any amount for purposes of Distribution until it is no longer a Disputed

Claim.

1.421.1"Disputed Claim Holder" means the holder of a Disputed Claim.

1.43—"Disputed Claims Reserve" means an account to established and administered by the Trustee or the Plan Administrator, as the case may be, for the payment of Disputed Unsecured Claims that become Allowed Unsecured Claims after the Effective Date. For the avoidance of doubt, the amount retained on account of a Disputed Claim shall be the lesser of the amount of such Claim as (i) asserted by the holder of such Claim against the Debtor, or (ii) estimated for the purposes of the Plan by Final Order of the Bankruptcy Court; provided, however, the Trustee shall not be required to retain any amount on account of contingent or unliquidated Claims. Any portion of a Disputed Claim that is disallowed by Final Order of the Bankruptcy Court, or waived by the holder of such Claim, shall be distributed in accordance with the terms and conditions of the Plan.

1.441.1"Distribution" means any transfer under the Plan of Cash or other property to a holder of an Allowed Claim.

1.451.1"Distribution Date" means a date or dates, as determined by the Trustee or the Plan Administrator, as the case may be, in accordance with the terms of the Plan, on which one or more Distributions to holders of Allowed Claims will be made.

1.461.1"Distribution Record Date" means the date of the Confirmation Hearing.

1.471.1"Effective Date" means the first Business Day upon which each of the conditions in Section 7.1 of the Plan have been satisfied or waived pursuant to the terms of this Plan.

1.481.1"Equity Interests" means the Interests in the Debtor outstanding immediately after the Effective Date.

1.491.1"Estate" means the estate of the Debtor created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.1    "Excess Cash" means that, to the extent that the performance of the Property (as defined in the Sale Order) would permit BSP to actually receive proceeds on the Effective Date from the closing of the Sale in excess of $88,704,697, as projected by the Trustee and agreed to by BSP, such Excess Cash being in a maximum amount of $168,076.05.

1.501.2"Exculpated Parties" means the following parties in their respective capacities as such: (a) the Trustee and (b) BSP and, with respect to each of the foregoing persons, each of their respective Related Parties.

1.511.1"Executory Contract" means an unexpired contract or lease to which the Debtor is a party that is subject to assumption or rejection under

-7-

section 365 of the Bankruptcy Code.

1.52~~1.1~~ "Exhibits" means the exhibits filed in support of this Plan.

1.53~~1.1~~ "Final Order" means an order or judgment entered by the Bankruptcy Court, or another court of competent jurisdiction, in connection with the Debtor's Chapter 11 Case, which order or judgment has not been reversed, stayed, modified, or amended and the time to appeal such order has expired.

1.54~~1.1~~ "General Bar Date" means July 15, 2021, the initial date set by order of the Bankruptcy Court as the last day for filing general proofs of claim in the Debtor's Chapter 11 Case.

1.55~~1.1~~ "General Unsecured Claim" means a Claim against the Debtor's Estate that is not an Administrative Claim, a Secured Claim, a Priority Claim or a Subordinated Insider Claim under this Plan.

1.56~~1.1~~ "Gross Sale Proceeds" means the aggregate cash proceeds generated by the Sale.

1.57~~1.1~~ "Interest" means the legal, equitable and contractual rights of a holder of an "equity security" (as that term is defined in section 101(16) of the Bankruptcy Code) in the Debtor as of the Filing Date.

1.58~~1.1~~ "Interim Administrative Claims Bar Date" means November 21, 2022, the date established by the Bankruptcy Court [Dkt. No. 739] by which certain Administrative Claims arising from the Petition Date through and including September 30, 2022 were to be made in writing or filed against the Debtor's Estate.  The Interim Administrative Claims Bar Date does not apply to the following persons or entities: (a) any party that has already properly filed an Administrative Claim; (b) any holder of a Claim that heretofore has been allowed by order of the Bankruptcy Court; (c) any person or entity whose claim has been paid in full by the Debtor, the Trustee or the ~~Buyer~~Purchaser;  (d) any holder of a Claim for which specific deadlines have previously been fixed by the Bankruptcy Court (including, for the avoidance of doubt, any holder of a claim arising under section 503(b)(9) of the Bankruptcy Code); and (e) ~~Professionals retained by~~ the Trustee and ~~approved by order of~~ the ~~Bankruptcy Court seeking interim or final compensation~~Trustee Professionals.

1.59~~1.1~~ "M&M" means the holder of a Secured Claim arising pursuant to the applicable mechanics and materialmen lien statute.

1.1    "~~Net Available Cash~~"NYC DOF" means the ~~Net Sale Proceeds less such amounts needed by~~ New York City Department of Finance.

1.2    "NYC DOF Claim Stipulation" means that certain *Stipulation and Order By and Between* the *Chapter 11 Trustee* and~~ / or~~ the ~~Plan Administrator, as the case may be,~~*NYC Department of Finance Regarding Proof of Claim Numbers 2, 10-1, 10-2, 11-1,*

*11-2, 14, 18, 19, 21-1,* entered on September 12, 2022 [Dkt No. 678].

1.3    "NYC Priority Initial Tax Claim Payment" means a payment in Cash equal to ~~satisfy or otherwise fund (i)~~fifteen (15)% of the Allowed Priority Tax Claims relating to hotel occupancy taxes held by NYC DOF pursuant to the ~~Plan Reserve; (ii)~~NYC DOF Claim Stipulation in the ~~Professional Fee Escrow and (iii)~~amount of $312,050.

~~1.60~~1.4"NYC Priority Deferred Tax Claim Amount" means the ~~Post~~ balance of the Allowed Priority Tax Claims relating to hotel occupancy taxes held by the New York City Department of Finance pursuant to the NYC DOF Claim Stipulation not paid on the Effective Date ~~Reserve~~in the amount of $1,768,286.

~~1.61—"Net Sale Proceeds" means the Gross Sale Proceeds less the amounts needed to satisfy (i) the Allowed BSP Senior Secured Claim, (ii) any Allowed Other Secured Claims and (ii) any costs and expenses associated with the Sale that are payable by, or reimbursable to, the Buyer, the Trustee or any other person in accordance with the terms and conditions of the Sale Order.~~

~~1.62~~1.1"Other Priority Claim" means all Claims entitled to priority under section 507(a) of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

~~1.63~~1.1"Other Secured Claim" means any Secured Claim asserted against the Debtor's Estate other than the BSP Secured Claim.

~~1.64~~1.1"Person" means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

~~1.65~~1.1"Petition Date" means February 23, 2021, the date of the commencement of the Debtor's Chapter 11 Case.

~~1.66~~1.1"Plan" means this first amended Chapter 11 plan of liquidation, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be further altered, amended, supplemented or modified from time to time.

~~1.67~~1.1"Plan Administrator" means, if applicable, the ~~Person or Entity selected by the Trustee and~~ Stephen S. Gray, as approved by the Bankruptcy Court ~~as Plan Administrator~~ pursuant to Article V of the Plan.

~~1.68~~1.1"Plan Administrator Agreement" means, if applicable, that certain agreement establishing and delineating the retention, terms and duties of the Plan Administrator, substantially in the form to be filed as part of the Plan Supplement.

~~1.69—"Plan Reserve Account" means an account to be funded by the Trustee or the Plan Administrator, as the case may be, from the Net Sale Proceeds on or before the Effective Date, which account shall be used solely to pay the Plan Reserve~~

Obligations until such Plan Reserve Obligations are satisfied in full or otherwise Disallowed.

1.70——"Plan Reserve Obligations" means the Allowed Administrative Claims (other than Professional Fee Claims) and Allowed Priority Claims that are not satisfied as of the Effective Date.

1.711.1"Plan Supplement" means the supplement or supplements to the Plan containing certain Exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court.

1.1     "Post-Effective Date Available Cash" means the Post-Effective Date Proceeds less the Post-Effective Date Expenses.

1.721.2"Post-Effective Date Debtor" means the Debtor on and after the Effective Date.

1.731.1"Post-Effective Date Expenses" means all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred or reasonably anticipated to be incurred by the Trustee or the Plan Administrator, as the case may be, after the Effective Date in connection with the implementation of the Plan and the administration of the post-Effective Date Estate, including, but not limited to:  (a) Expenses in connection with administering and implementing the Plan, including any taxes incurred and accrued by the Trustee or the Plan Administrator, as the case may be, on or after the Effective Date;  (b) U.S. Trustee Fees, if any, which accrue after the Effective Date, (c) the Expenses of the Trustee or Plan Administrator, as the case may be, in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes, and filing tax returns, and (d) the Expenses of the Trustee or Plan Administrator, as applicable, and all independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Trustee or the Plan Administrator, as the case may be.applicable, after the Effective Date.

1.1     "Post-Effective Date Proceeds" means (a) Cash in the Post-Effective Date Reserve and (b) any and all Cash, property, and/or proceeds obtained by the Post-Effective Date Debtor or the Plan Administrator, as applicable, and/or derived from the Debtor's assets on and after the Effective Date, including reducing the Retained Causes of Action to Cash.

1.741.2"Post-Effective Date Reserve" means the account to be established by the Trustee or the Plan Administrator, as the case may be, for the purpose of satisfying Post-Effective Date Expenses, which account shall be funded (a) in the amount of (a) $750$150,000 in accordance withfrom the BSP Settlement AgreementGross Sale Proceeds plus (b) any additional Cash after paying Allowed Administrative Claims, Allowed Priority Claims and any other Allowed Claims to be paid Cash on hand as of the Effective Date undernot Distributed or reserved on the Effective Date pursuant to the Plan (excluding, for the avoidance of doubt, any amounts

-10-

funded into escrow in accordance with this Plan).

1.751.1"Priority Claims" means all Claims that are Priority Tax Claims or Other Priority Claims under this Plan.

1.761.1"Priority Tax Claim" means a Claim entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code.

1.77——"Professional Fee Claim" means a Claim owed to a Professional Person for Professional Fees.

1.781.1"Professional Fee Escrow" means an escrow account to be funded withAccrual Schedule" has the Professional Fee Escrow Amount on meaning set forth in the Effective Date.Cash Collateral Order.

1.79——"Professional Fee Escrow Amount" means the aggregate Accrued Professional Compensation incurred, or estimated to be incurred, through the Effective Date as estimated by the Professionals in accordance with Section 3.1(b) of the Plan.

1.80——"Professional Fees" means all allowances of compensation, indemnification, or reimbursement of expenses Allowed, or to be Allowed, pursuant to sections 326, 330, 331, or 503(b) of the Bankruptcy Code, to any Professional Person retained pursuant to section 327 of the Bankruptcy Code, which shall include the compensation earned by and awarded to the Trustee.

1.811.1"Professional Person" means any Entity retained in the Chapter 11 Case pursuant to a Final Order in accordance with sections 326, 327, and 328 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to sections 326, 327, 328, 329, 330, or 331 of the Bankruptcy Code, and shall include, for purposes of this Plan, the Trustee.

1.821.1"Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

1.831.1"Proof of Claim" means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

1.841.1"Purchase Agreement" means that certain Purchase and Sale Agreement, betweenhas the Trustee andmeaning set forth in the Buyer, as contemplated by the Bidding Procedures Sale Order.

1.1     "Purchaser" has the meaning set forth in the Sale Order.

1.851.2"Related Parties" means with respect to any Exculpated Party, an Entity's predecessors, successors and assigns, managed accounts, or funds, and all of their respective current and former officers, managers, directors, principals, members, employees, agents, independent contractors, management companies, investment advisors, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants,

-11-

representatives, and other professionals, and such Persons' respective heirs, executors, estates, servants, and nominees, in each case solely to the extent such parties are acting in such capacity.

1.861.1"Retained Assets" means all of the Debtor's and the Estate's property not otherwise sold pursuant to the Sale or liquidated or released hereunder, including, but not limited to (a) Retained Causes of Action and (b) remaining Cash after making all payments required by the Plan and the Sale.

1.871.1"Retained Causes of Action" means all claims, Causes of Action, rights of action, suits, and proceedings, whether in law or in equity, whether known or unknown, which the Debtor's Estate may hold against any Person, including without limitation the D&O Claims, and which Retained Causes of Action shall be (i) the subject of an Exhibit to the Plan Supplement to be filed by the Trustee in connection with the Plan, (ii) assertable on behalf of the Debtor's Estate by the Trustee or the Plan Administrator, as the case may be, after the Effective Date, and (iii) subject to (a) the BSP Settlement Agreement. and (b) the Debtor Professional Fee Stipulation.

1.88 "Sale" means the transaction to sell the Property (as defined in the Purchase Agreement) to the Buyer, as contemplated by the Bidding Procedures Order.

1.89 "Sale Order" means that certain order of the Bankruptcy Court approving the Sale and granting certain related relief, as contemplated by the Bidding Procedures Order.

1.1    "Sale" has the meaning set forth in the Sale Order.

1.2    "Sale Order" means that certain *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief,* entered on January 26, 2023 [Dkt No. 881].

1.901.3"Schedules" means the Debtor's schedules of assets and liabilities and statements of financial affairs, filed under section 521 of the Bankruptcy Code and the Bankruptcy Rules, as amended, supplemented, or modified.

1.911.1"Secured Claim" means a Claim secured by a "lien", as that term is defined at section 101(37) of the Bankruptcy Code, against any property of the Debtor, including, but not limited to, a "judicial lien" as that term is defined at section 101(36) of the Bankruptcy Code, but only to the extent such lien was properly perfected and of the "value", as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 or as otherwise agreed to, of such Creditor's interest in the Estate's interest in such property.

1.921.1"Secured Creditor" means the holder of a Secured Claim."

1.1    "Settling Debtor Professionals" means each of (a) Mayer Brown LLP, (b) GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services,

(c) Fern Flomenhaf PLLC, (d) Getzler Henrich & Associates LLC and Hilco Real Estate LLC, (e) Leitner Berman, Inc., and (f) David Goldwasser, for himself and on behalf of G.C. Realty Advisors LLC.

1.2    "Settling Debtor Professional Fee Claims" means a Claim owed to a Settling Debtor Professional in accordance with the Debtor Professional Fee Stipulation.

1.3    "Settling Debtor Professional Fee Escrow" means an escrow account to be funded with the Debtor Professional Fee Escrow Amount on the Effective Date.

1.4    "Settling Debtor Professional Fee Escrow Amount" means $964,463.25.

1.5    "Settling Debtor Professional Deficiency Claim" means the amount of each Settling Debtor Professional's Allowed Debtor Professional Fee Claim that remains unpaid after disbursement and application of the Debtor Professional Fee Escrow Amount.

1.931.6"Subordinated Insider Claim" means any Claim asserted against the Debtor's Estate by (i) Heritage Equity Partners, (ii) Toby Moskovits, (iii) Michael Lichtenstein  and (iv) The Williamsburg Hotel BK LLC and/or any of their respective family members or, affiliated entities, or transferees (including subsequent transferees) of avoidable transfers made by any of the foregoing.

1.941.1"Supplemental Bar Date" means December 15, 2021, the supplemental date set by order of the Bankruptcy Court as the last day for filing general Proofs of Claim in the Debtor's Chapter 11 Case.

1.951.1"Taxing Authority" means any federal, state, or local entity with the authority to assess and collect taxes.

1.1    "Trustee" means Stephen S. Gray, not individually, but solely in his capacity as the Chapter 11 trustee for the Debtor.

1.2    "Trustee Deferred Compensation" means all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims not paid from the Gross Sale Proceeds or, in the case of the Trustee and the Designated Trustee Professionals, the Excess Cash.

1.3    "Trustee Fee Claims" means the commission of the Trustee pursuant to section 326(a) of the Bankruptcy Code and all other fees and expenses due and owing to the Trustee to the extent allowed by order of the Bankruptcy Court.

1.4    "Trustee Professional" means the Professional Persons retained by the Trustee.

1.5    "Trustee Professional Fee Claim" means a Claim owed to a Trustee Professional Person for Trustee Professional Fees.

-13-

1.6    "Trustee Fee Escrow" means an escrow account to be funded with the Trustee Fee Escrow Amount on the Effective Date.

1.7    "Trustee Fee Escrow Amount" means (a) $4,660,650, plus any fees or expenses incurred or accrued in any line item of the Professional Accrual Schedule approved in advance by BSP in writing plus (b) the Excess Cash.

1.8    "Trustee Professional Fees" means all allowances of compensation, indemnification, or reimbursement of expenses Allowed, or to be Allowed, pursuant to sections 326, 330, 331, or 503(b) of the Bankruptcy Code, to any Trustee Professional Person retained pursuant to section 327 of the Bankruptcy Code.

1.961.9 "Unclaimed Distributions" means those funds allocated under the Plan for payment to any holders of Allowed Claims which holders, after due diligence, the Trustee or the Plan Administrator, as applicable, are unable to locate.

1.971.1 "Unsecured Claim" means any Claim which does not qualify as an Administrative Claim, Secured Claim, or Priority Claim.

1.981.1 "Unsecured Creditor" means the holder of an Unsecured Claim.

1.991.1 "U.S. Trustee" means the United States Trustee for the Southern District of New York.

1.1001.1          "U.S. Trustee Fees" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

1.101   *Rules of Interpretation and Computation of Time*.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with,

-14-

federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; (k) "including" means "including without limitation;" and (l) with reference to any Distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

1.102 *Exhibits*. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court as part of the Plan Supplement. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to Debtors. The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

1.103 *Controlling Documents*. In the event of an inconsistency between this Plan and the Plan Supplement, the Plan shall control. The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, that, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of this Plan and shall control and take precedence. To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtors and any third party, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls this Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 2.1    Classified Claims and Equity Interests

The following table is a designation of the Classes of Claims and Interests under the Plan. This classification of Claims and Interests is made for purposes of voting on the Plan and making Distributions hereunder and for ease of administration hereof. All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes described below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below in Article III, have not been classified and thus are excluded from the Classes described below.

A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and has not been paid, released, or otherwise satisfied or dealt with prior to the Effective Date.

## 2.2    Classification

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | No | No (deemed to accept) |
| Class 2 | BSP Senior Secured Claim | NoYes | No (deemed to accept)Yes |
| Class 3 | Other Secured Claims | No | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Yes | Yes |
| Class 5 | BSP Subordinated Secured Claim | Yes | Yes |
| Class 6 | Subordinated Insider Claims | Yes | No (deemed to reject) |
| Class 7 | Equity Interests | Yes | No (deemed to reject) |

## 2.3    Resolution of Disputes

Disputes regarding the proper classification of any Claim shall be resolved pursuant to the procedures established by the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Bankruptcy Court, and this Plan, and such resolution shall not be a condition precedent to Confirmation or Consummation of this Plan.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

In addition to any waivers or releases of Claims or other causes of action provided for elsewhere in this Plan, Claims shall be treated as set forth below. Except as explicitly provided in this Plan, all distributions under this Plan shall be free and clear of all Claims, liens, security interests and encumbrances of any nature or kind whatsoever.

### 3.1    Unclassified Claims

(a)    Administrative Claims

Administrative Claims are not classified under the Plan. Allowed Administrative Claims are to be paid in full (to the extent not already paid during the Chapter 11 Case), in cash on the later of: (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) such other date and upon such other terms as may be agreed upon by the holder of such Claim and the Trustee or the Plan Administrator, as the case may be, or as ordered by the Bankruptcy Court.

All requests for payment of Administrative Claims (other than (i) Trustee Fee Claims and Trustee Professional Fee Claims, and (ii) Administrative Claims that have been Allowed on or before the Effective Date or (iii) were not made in writing or filed and required to be filed in connection with the Interim Administrative Bar Date), must be in writing and filed with the Bankruptcy Court and served on the Trustee or the Plan Administrator, as the case may be, BSP and the U.S. Trustee so as to be received by 5:00 p.m. (Eastern Time) on the date that is thirty (30) calendar days after the occurrence of the Effective Date (the "Administrative Claims Bar Date"). Such request for payment must include at a minimum: (A) the name of the holder of the asserted Administrative

-16-

Claim;  (B) the amount of the Administrative Claim;  (C) the basis of the Administrative Claim;  and (D) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.  Notwithstanding anything in the Plan to the contrary, unless otherwise agreed to by the parties or by order of the Bankruptcy Court, objections to such requests shall be filed and served within thirty (30) calendar after filing of each such request.

On or as soon as reasonably practicable after the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Trustee or Plan Administrator, as applicable, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

Distributions in satisfaction of Allowed Administrative Claims Trustee Fee Claims after the Effective Date shall be made from the Plan Reserve Account.

(b)      and Trustee Professional Fee Claims:

(i)      To the extent not filed prior to the Effective Date or otherwise subject to the Interim Administrative Bar Date,, the Trustee and Trustee Professionals shall submit final fee applications seeking approval of all Trustee Fee Claims and Trustee Professional Fee Claims by the Bankruptcy Court no later than thirty (30) calendar days after the occurrence of the Effective Date. (the "Trustee Fee Claims Bar Date").  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 326, 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

(ii)      Trustee Professionals shall estimate in good faith their Accrued Professional Compensation rendering services to the Trustee and shall deliver such good faith estimate to the Trustee no later than five (5) Business Days prior to the anticipated Effective Date.  If a Trustee Professional does not provide an estimate, the Trustee shall estimate in good faith the unpaid and unbilled fees and expenses of such Trustee Professional.

(iii)      No later than the Effective Date, the Trustee shall establish and fund the Professional Trustee Fee Escrow with Cash equal to the Professional Trustee Fee Escrow Amount, subject to the agreement of BSP, and no Liens, Claims, or interests shall encumber the Professional Trustee Fee Escrow in any way., other than liens and claims held by BSP securing the BSP Secured Claim and otherwise granted by Order of the Bankruptcy Court.  The Professional Trustee Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Estate and (y) shall be held in trust for the Trustee and Trustee Professionals; provided, that any funds remaining in the Professional Trustee Fee Escrow after all Allowed Trustee

Fee Claims and Allowed Trustee Professional Fee Claims have been irrevocably paid in full shall become NetPost-Effective Date Available Cash as provided for in this Plan.

(iv)     Allowed ProfessionalTrustee Fee Claims (a) shall be paid in Cash to such Professionals from the funds held in the ProfessionalTrustee Fee Escrow when such Claims are Allowed by an order(including the Excess Cash) up to the amount of the Bankruptcy Court; provided, that to the extent there are insufficient funds Trustee's amounts set forth in the Professional Fee Escrow to pay all Professional Fee Claims in full, each holderAccrual Schedule and (b) with respect to any balance of a Professional Fee Claimthe Trustee Deferred Compensation shall receive itsone or more Distributions of Post-Effective Date Available Cash on a Pro Rata share of the remaining funds basis with all Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Fee Claims.

(v)     Allowed Trustee Professional Fee Claims other than for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (excluding the Excess Cash) up to the amount of such Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

(iv)(vi)     Allowed Trustee Professional Fee Claims for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow. (including the Excess Cash) up to the amount of such Designated Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Designated Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

(v)(vii)     The Trustee and/or the Plan Administrator, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

(c)     Priority Tax Claims:

Priority Tax Claims are not classified under the Plan.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

Distributions in satisfaction of Allowed Priority Tax Claims after the Effective

Date shall be made from the Plan Reserve Account.

Pursuant to an agreement between the Trustee and the NYC DOF, on account of the Allowed Priority Tax Claims held by the NYC DOF not paid prior to the Effective Date, the NYC DOF (a) shall be paid in Cash on the Effective Date in an amount equal to the NYC Priority Initial Tax Claim Payment and (b) with respect to the balance of the NYC Priority Deferred Tax Claim Amount, one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation.

(d)     Settling Debtor Professional Fee Claims:

(i)     No later than the Effective Date, the Trustee shall establish and fund the Debtor Professional Fee Escrow with Cash equal to the Debtor Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Debtor Professional Fee Escrow in any way, other than liens securing the BSP Secured Claims and as otherwise granted by the Bankruptcy Court.  The Debtor Professional Fee Escrow (including the funds held therein) (x) shall be held in trust for the Settling Debtor Professionals; provided, that any funds remaining in the Debtor Professional Fee Escrow after all Allowed Debtor Professional Fee Claims have been irrevocably paid in full shall become Post-Effective Date Available Cash as provided for in this Plan.

(ii)     Allowed Settling Debtor Professional Fee Claims (a) shall be paid in Cash from the Settling Debtor Professional Fee Escrow Pro Rata on account of such Settling Debtor Professionals' Reduced Claims (as defined in the Debtor Professional Fee Stipulation) or as otherwise agreed amongst the Settling Debtor Professionals and (b) with respect to the balance of the Settling Debtor Professional Deficiency Claim, shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Settling Debtor Professional Fee Claims after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, and the BSP Senior Secured Claim Deferred Portion.

**3.2     Classified Claims**

(a)     Class 1 – Other Priority Claims

(i)     Claims in Class:  Class 1 consists of all Other Priority Claims.

(ii)     Treatment:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each holder of an Allowed Other Priority Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Claim, Cash in an amount equal to such holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.  Distributions in satisfaction of Allowed Other Priority Claims shall be made from the Plan Reserve Account.

-19-

(iii)    Voting:  The Other Priority Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Priority Claims.

(b)    Class 2 - BSP Senior Secured Claim

(i)    Claims in Class:  Class 2 consists of the BSP Senior Secured Claim.

(ii)    Treatment:  On or before the Effective Date, at closing of the Sale or otherwise agreed to between the Trustee and BSP without further order of the Court, the Allowed BSP Senior Secured Claim shall be paid in full, receive (a) $88,704,697 in Cash, by on the Effective Date and (b) one or more Distributions of Post-Effective Date Available Cash in an amount up to, but not to exceed, the BSP Senior Secured Claim Deferred Portion of $5.5 million after payment in full in Cash of the Trustee in accordance with the terms of the Deferred Compensation and the NYC Priority Deferred Tax Claim Amount; *provided* that, the balance of the BSP Senior Secured Claim arising under the BSP Settlement Agreement. not paid pursuant to Class 2 shall be added to the BSP Subordinated Secured Claim.  The Trustee shall make such Distribution to BSP from the Gross Sale Proceeds. and Post-Effective Date Available Cash.

(iii)    Voting:  The BSP Senior Secured Claim is not an impaired Claim.  In accordance with section 1126(f) of under the Bankruptcy Code, the Plan.  The holder of the BSP Senior Secured Claim is conclusively presumed to accept this Plan and is not therefore entitled to vote to accept or reject the Plan, and the vote of such holder will not be solicited with respect to such Allowed Claim.

(c)    Class 3 – Other Secured Claims

(i)    Claims in Class:  Class 3 consists of all Other Secured Claims, but which, for the avoidance of doubt, excludes the BSP Senior Secured Claim and the BSP Subordinated Secured Claim.

(ii)    Treatment:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different, less favorable, each holder of an Allowed Other Secured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Other Secured Claim, Cash in an amount equal to the Allowed amount of such Other Secured Claim on the earlier of (x) the Closing Date and (y) as soon as practicable after its Other Secured Claim becomes

Allowed. Distributions in satisfaction of Allowed Other Secured Claims shall be made from the Gross Sale Proceeds. For the avoidance of doubt, the amount of any Allowed Other Secured Claim shall be equal to the value of its collateral and, pursuant to Section 506 of the Bankruptcy Code, any such claimed amount in excess of the value of its collateral shall receive a Distribution as a General Unsecured Claim under Class 4.

(iii)   Voting:  The Other Secured Claims are not impaired Claims. In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

(d)   Class 4 – General Unsecured Claims

(i)   Claims in Class:  Class 4 consists of all General Unsecured Claims.

(ii)   Treatment:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, all such Allowed Claims, each holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed General Unsecured Claim, one or more Distributions of ~~Cash~~Post-Effective Date Available Cash on a Pro Rata basis after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, and the Debtor Professional Fee Deficiency, in an amount up to, but not to exceed, the Allowed amount of such holder's Other General Unsecured Claim. ~~Distributions in satisfaction of Allowed General Unsecured Claims shall be made on a Pro Rata basis from the Net Available Cash.~~

(iii)   Voting:  The General Unsecured Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed General Unsecured Claims.

(e)   Class 5 – BSP Subordinated Secured Claim

-21-

(i)     Claims in Class:   Class 5 consists of the BSP Subordinated Secured Claim.

(ii)    Treatment:  The BSP Subordinated Secured Claim shall be secured by all assets of the Debtor's estate, including cash. Commencing on the Effective Date and thereafter, the holder of the Allowed BSP Subordinated Secured Claim shall receive one or more Distributions of CashPost-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Amount, the Debtor Professional Fee Deficiency, and Allowed General Unsecured Claims, in an amount up to, but not to exceed, the Allowed amount of such Claim in full and final satisfaction, settlement, and release of, and in exchange for, the Allowed BSP Subordinated Secured Claim. Distributions in satisfaction of the Allowed BSP Subordinated Secured Claim shall be made from Net Available Cash, but only after all Allowed General Unsecured Claims in Class 4 have been paid in full in Cash or otherwise satisfied in accordance with the terms of this Plan.

(iii)   Voting:  The BSP Subordinated Secured Claim is impaired under the Plan.  The holder of the BSP Subordinated Secured Claim is therefore entitled to vote to accept or reject the Plan, and the vote of such holder will be solicited with respect to such Allowed Claim.

(f)     Class 6 - Subordinated Insider Claims

(i)     Claims in Class:  Class 6 consists of all Subordinated Insider Claims.

(ii)    Treatment:  Except to the extent that a holder of an Allowed Subordinated Insider Claim agrees to less favorable treatment and only after each Allowed General Unsecured Claim and the Allowed BSP Subordinated Secured Claim have been paid in full or otherwise satisfied in accordance with the terms of this Plan, then each holder of an Allowed Subordinated Insider Claim shall receive one or more Distributions of CashPost-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, the Debtor Professional Fee Deficiency, Allowed General Unsecured Claims, and the BSP Subordinated Secured Claim, in an amount up to, but not to exceed, the Allowed amount of such Other Subordinated Insider Claim in full

and final satisfaction, settlement, and release of, and in exchange for, such Allowed Claim.  Distributions in satisfaction of Allowed Subordinated Insider Claims shall be made on a Pro Rata basis from the Net Available Cash, only after all Allowed General Unsecured Claims and the Allowed BSP Subordinated Secured Claim have been paid in full in Cash or otherwise satisfied in accordance with the terms of this Plan.

(iii)    Voting:  The Subordinated Insider Claims are impaired Claims.  The holders of Subordinated Insider Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Subordinated Insider Claims.

(g)    Class 7 - Equity Interests

(i)    Interests in Class:  Class 7 consists of All Equity Interests.

(ii)    Treatment:    Except as provided for herein, the holders of Equity Interests are impaired and, as of the Effective Date, shall retain their Equity Interests in the Debtor and the right to receive any surplus remaining in the Estate after all Allowed Claims have been paid or otherwise resolved and the Chapter 11 Case fully administered and closed.

(iii)    Voting:  Equity Interests are impaired under this Plan.  The holders of Equity Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equity Interests.

**ARTICLE IV**

**ACCEPTANCE OR REJECTION OF THIS PLAN**

**4.1    Acceptances by Classes Entitled to Vote**

Class 2 (BSP Senior Secured Claim), Class 4 (General Unsecured Claims) and Class 5 (BSP Subordinated Secured Claim) are the only Classes of Claims of the Debtor that are entitled to vote to accept or reject the Plan.  Such Classes shall have accepted the Plan if (a) the holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code.  If there are no votes cast in any Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

**4.2     Presumed Acceptance of the Plan**

Classes 1 (Other Priority Claims), 2 (the BSP Senior Secured Claim)  andand Class 3 (Other Secured Claims) are not impaired.  Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

**4.3     Presumed Rejection of the Plan**

Classes 6 (Subordinated Insider Claims) and 7 (Equity Interests) are not anticipated to receive any Distribution under the Plan.  Therefore, the holders of Claim and Interests in such Classes are deemed to have rejected the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

**4.4     Elimination of Classes**

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.5     Cramdown**

The Trustee requests Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Trustee reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

**5.1     Implementation of the Plan**

Following the Effective Date, the Plan will be implemented by the Trustee or the Plan Administrator, as the case may be, in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

**5.2     The BSP Settlement Agreement**

The Plan is based on the BSP Settlement Agreement entered into between the Trustee and BSP and approved by the Bankruptcy Court.  Both the treatment of the BSP Secured Claim under this Plan and the Sale are premised on the BSP Settlement Agreement. except as may otherwise be modified herein.

**5.3    Funding of the Plan and the Sale**

The primary source of funding the Distributions and payments required to be made under this Plan shall be the Gross Sale Proceeds generated by the Sale. Additionally, the net proceeds, if any, resulting from the possible prosecution of claims and causes of action by the Trustee or the Plan Administrator, as the case may be, on behalf of the Debtor's Estate shall serve as an additional source of funding Distributions to holders of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim, the Debtor Professional Deficiency Amount, Allowed Unsecured Claims, and the BSP Subordinated Secured Claim.

**5.4    Powers and Obligations of the Plan Administrator**

(a)    The Confirmation Order may provide for the appointment of the Plan Administrator.  The compensation of the Plan Administrator shall be as set forth in the Plan Supplement.  The Plan Administrator shall be deemed the Estate representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

(b)    The Plan Administrator may act for the Debtor's Estate in a fiduciary capacity for the Estate, subject to the provisions of the Plan.  On the Effective Date, if appointed, the Plan Administrator shall succeed to all of the rights of the Trustee with respect to the assets of the Estate.  The powers and duties of the Plan Administrator or the Trustee, as the case may be, shall include, without further order of the Court, except where expressly stated otherwise, the following rights or obligations:

(i)    to take such steps as may be necessary or otherwise desirable to administer and close any and all of the transactions as may be contemplated by the terms of the Sale, the Settlement Agreement or this Plan;

(ii)    to invest Cash and withdraw and make Distributions of Cash to holders of Allowed Claims and to pay taxes and other obligations owed by the Estate or incurred by the Trustee or the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(iii)    to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in connection with administering the Assets;

(iv)    to engage attorneys, consultants, agents, employees and all professional persons, to assist with respect to the Trustee and/or Plan Administrator's responsibilities;

(v)     to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Trustee and/or the Plan Administrator and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Estate in accordance with the Plan;

(vi)    to satisfy any liabilities, expenses and other Claims incurred by the Trustee and/or Plan Administrator in the ordinary course of business and without further order of the Bankruptcy Court;

(vii)   to execute and deliver all documents, and take all actions, necessary to consummate the Plan and close the Chapter 11 Case;

(viii)  to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Assets in accordance with the terms provided for herein;

(ix)    to oversee compliance with the Estate's accounting, finance and reporting obligations;

(x)     to prepare such periodic reports as may be required by the United StatesU.S. Trustee;

(xi)    except as otherwise provided for in the Plan, to object to Claims against the Debtor's Estate;

(xii)   except as otherwise provided for in the Plan, to compromise and settle Claims against the Debtor's Estate;

(xiii)  to implement and/or enforce all provisions of the Plan;

(xiv)   to implement and/or enforce all agreements entered into prior to the Effective Date;

(xv)    to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(xvi)   to investigate, prosecute, settle and collect upon Retained Causes of Action;  and

(xvii)  to use such other powers as may be vested in or assumed by the Trustee or the Plan Administrator, as the case may be, pursuant to the Plan or Bankruptcy Court Order or as may be necessary and proper to carry out the provisions of the

-26-

Plan.

**5.5    Preservation of Causes of Action**

On and after the Effective Date, the Trustee or the Plan Administrator, as applicable, may pursue on behalf of the Debtor's Estate any Retained Cause of Action in his or her sole discretion. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Retained Causes of Action against them as any indication that the Trsutee or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against them. The failure of the Trustee to specifically list any claim, right of action, suit, proceeding, or other Retained Cause of Action in this Plan, the Plan Supplement, the Disclosure Statement, or otherwise, does not, and will not, be deemed to constitute a waiver or release by the Trustee or the Plan Administrator, as applicable, of such claim, right of action, suit, proceeding, or other Retained Cause of Action. The Trustee and the Plan Administrator, as applicable, will retain the right to pursue such claims, rights of actions, suits, proceedings, and other Retained Causes of Action in their sole discretion and, therefore, the failure to list a claim, right of action, suit, proceeding, or other Retained Cause of Action shall not result in a limitation of the right to pursue the same on and after the Effective Date based on any preclusion doctrine, including, but not limited to, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches.

**5.6    Section 1146(a) of the Bankruptcy Code**

As set forth in paragraph 26 of the Sale Order, pursuant to section 1146(a) of the Bankruptcy Code, the sale of the Purchased Assets (as defined in the Sale Order) shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States.

**ARTICLE VI**

**DISTRIBUTIONS**

**6.1    Plan Distributions**

(a)    The Trustee or the Plan Administrator, as applicable, shall make Distributions to holders of Allowed Claims in accordance with Article III of the Plan on, or as soon as reasonably practicable after, the Effective Date. From time to time, the Trustee or Plan Administrator, as applicable, shall make Pro Rata Distributions to holders of Allowed Claims in accordance with Article III of the Plan.

(b)    Notwithstanding the foregoing Section 6.1(a), subject to the Cash Collateral Order, the Trustee or Plan Administrator, as applicable, may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Assets of the Estate during the winding up and closing of the Chapter 11 Case, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Trustee and/or the Plan Administrator and the fees, costs and expenses of all professionals retained by the Trustee and/or the Plan Administrator, and any taxes imposed in respect of the Assets), (iii) to satisfy other liabilities to which the

Assets are otherwise subject, in accordance with the Plan, and (iv) to establish any necessary reserve. All Distributions to the holders of Allowed Claims shall be made in accordance with the Plan. The Trustee or the Plan Administrator, as applicable, may withhold from amounts distributable to any Person any and all amounts determined in the Trustee or the Plan Administrator's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Holders of Allowed Claims shall, as a condition to receiving Distributions, provide such information and take such steps as the Trustee or the Plan Administrator, as applicable, may reasonably require to ensure compliance with withholding and reporting requirements and to enable them to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law. In the event that a holder of an Allowed Claim does not comply with the Trustee or the Plan Administrator's requests in the preceding sentence within thirty (30) calendar days, no Distribution shall be made on account of such Allowed Claim, such holder shall have forfeited its right to Distributions under the Plan, and the Trustee or the Plan Administrator, as applicable, shall reallocate such Distribution for the benefit of all other holders of Allowed Claims as the case maybe, in accordance with the Plan.

**6.2    Address for Delivery of Distributions and Forfeiture of Claims**

If any Distribution is returned to the Trustee or Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Trustee or Plan Administrator is notified of such holder's then current address within sixty (60) calendar days after such Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distributions shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan. Moreover, any holder of a Claim who has not filled out and returned documents to the Trustee or Plan Administrator necessary to receive a Distribution (such as a signed form W-9, if applicable) shall forfeit its Claim and accompanying Distribution if such holder fails to fill out and return such documents within thirty (30) days after notice by the Trustee or Plan Administrator.

**6.3    Distributions under Twenty-Five Dollars**

Neither the Trustee nor the Plan Administrator, as applicable, shall be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Trustee or the Plan Administrator on or before twenty (20) days after the Effective Date. Any such Distributions not subject to a timely request for payment shall be distributed by the Trustee or the Plan Administrator to the other holders of Allowed Claims in accordance with the provisions of the Plan.

**6.4    Time Bar to Cash Payments**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Trustee or Plan Administrator, as applicable, by the holder of the Allowed Claim to whom such check was originally issued within one hundred eighty (180) days of the date of issuance

thereof.  If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those holders of Allowed Claims set forth in the Plan.

**6.5    Distributions to Holders as of the Confirmation Date**

As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. Neither the Trustee nor the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan) with only those holders of record as of the close of business on the Confirmation Date.

**6.6    Abandoned Assets**

The Plan Administrator may abandon any Assets, which book value shall not exceed $10,000, without the need for additional approval of the Bankruptcy Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate and will instead revert to the Post-Effective Date Debtor.

**6.7    Windup**

The Trustee or the Plan Administrator, as applicable, may seek to close the Chapter 11 Case and be discharged at such time as (i) all of the Assets have been distributed pursuant to the Plan, (ii) the Trustee or the Plan Administrator, as the case may be, determines, in his or her sole discretion, that the administration of any remaining Assets is not likely to yield sufficient additional Post-Effective Date Available Cash to justify further pursuit, or (iii) all Distributions required to be made by the Trustee or the Plan Administrator, as applicable, under the Plan have been made.  If at any time the Trustee or the Plan Administrator, as applicable, determines in reliance upon such professionals as they may retain that the expense of administering the Plan and the Debtor's Estate so as to make a final Distribution to holders of Allowed Unsecured Claims is likely to exceed the value of the Assets remaining in the Estate, the Trustee or the Plan Administrator may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to seek and obtain an Order of the Bankruptcy Court closing the Chapter 11 Case and discharging the Trustee and/or the Plan Administrator, (y) ~~donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, the Trustee, and the Plan Administrator, if applicable, and (z) close the Chapter 11 Case.~~ transfer the balance to BSP in account of its Senior Secured Claim or Subordinate Secured Claim, as applicable.

**6.8    Distribution of Unclaimed Property**

Any Distribution of Assets (Cash or otherwise) provided for under the Plan which is unclaimed after ninety (90) days following such Distribution shall irrevocably revert to the Estate for re-Distribution in accordance with the Plan.

**6.9    Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

**6.10    Distributions on Disputed Claims**

    (a)    *No Distributions Pending Allowance.*  Notwithstanding any provision to the contrary in the Plan, and except as otherwise agreed by the relevant parties, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

    (b)    *Special Rules for Distributions to Holders of Disputed Claims.*  All Distributions made pursuant to the Plan on account of a Disputed Claim that is later deemed an Allowed Claim by the Bankruptcy Court shall be made together with any other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to holders of Allowed Claims included in the applicable Class (or holders of unclassified Claims, as applicable);  provided, however, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law.

    (c)    *Disputed Claims Reserve.*  The Trustee or the Plan Administrator, as applicable, shall establish and administer the Disputed Claims Reserve. Each holder of a Disputed Unsecured Claim that becomes an Allowed Unsecured Claim after the Effective Date shall receive the treatment set forth in Section 3.2 of the Plan.

**ARTICLE VII**

**CONDITIONS PRECEDENT**

**7.1    Conditions to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

    (a)    the Bankruptcy Court shall have entered the Confirmation Order, and the

Confirmation Order shall have become a Final Order;

(b)    the ~~Professional~~Trustee Fee Escrow ~~Account~~ shall have been funded with the Trustee Fee Escrow Amount, and the Settling Debtor Professional Fee Escrow shall have been funded with the Settling Debtor Professional Fee Escrow Amount~~, the Plan Reserve Account shall have been funded with an amount sufficient to pay or otherwise satisfy all Plan Reserve Obligations, and the Post-Effective Date Reserve shall have been established and funded;~~;

(c)    the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(d)    the Sale shall have closed;

(e)    the Trustee shall have made all Distributions required to be made on or before the Effective Date;

~~(e)~~(f)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;  and

~~(f)~~(g)    all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

**7.2    Waiver of Conditions Precedent**

Each of the conditions precedent in Section 7.1 may be waived only if waived in writing by the Trustee and BSP to the extent required by the Settlement Agreement, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**ARTICLE VIII**

**<u>PROCEDURES FOR DISPUTED CLAIMS</u>**

**8.1    Allowance of Claims**

After the Effective Date, the Trustee and the Plan Administrator, as the case may be, shall have and retain any and all rights and defenses the Debtor and/or its Estate had with respect to any Claim immediately before the Effective Date.  Except as

-31-

expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

**8.2   Objections to Claims**

(a)   *Authority*.  The Trustee or the Plan Administrator, as applicable, or any party in interest shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Trustee or the Plan Administrator, as applicable, unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)   *Amendments to Claims*.  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Trustee or the Plan Administrator, as applicable, unless the holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)   *Objection Deadline*.  As soon as practicable, but no later than the Claims Objection Deadline, the Trustee or the Plan Administrator, as applicable, may file objections with the Bankruptcy Court and serve such objections on the holders of the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Trustee or the Plan Administrator, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon the filing of a notice by the Trustee or the Plan Administrator, as applicable.

**8.3   Estimation of Disputed Claims**

For purposes of calculating and making Distributions and establishing reserves under the Plan, the Trustee or the Plan Administrator, as applicable, may at any time after the Confirmation Date in good faith request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Trustee of the Plan Administrator previously objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to any such objection.  In the event that the

Bankruptcy Court estimates any Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trustee or the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## 8.4    Resolution of Claims

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Trustee or the Plan Administrator, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Trustee or the Plan Administrator, as the case may be, or their respective successors may pursue Retained Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Estate and Creditors.

## 8.5    Disallowed Claims

All Claims held by persons or entities against whom the Debtor or the have commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed Disallowed pursuant to this Section 8.5 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Trustee or the Plan Administrator on behalf of the Estate from such party have been paid.

## ARTICLE IX

## TREATMENT OF EXECUTORY CONTRACTS

## 9.1    Rejection of Executory Contracts

Except as may otherwise be provided in the Plan, on the Effective Date, all Executory Contracts shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract:  (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order);  (b) is the subject of a motion to assume filed on or before the Effective Date;  or (c) has expired or terminated pursuant to its own terms.  The Confirmation Order will constitute an order

of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts in the Plan will be effective as of the Effective Date. Each Executory Contract assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Trustee on behalf of the Debtors Estate, or the assignee, in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. For the avoidance of doubt, any Executory Contracts assumed and assigned to the ~~Buyer~~Purchaser (or its designee) in connection with the Sale and as approved by the Sale Order shall not be affected by the Plan and/or the Confirmation Order.

## 9.2    Claims Based on Rejection of Executory Contracts

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts pursuant to the Plan must be filed no later than the applicable Bar Date. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts that are not timely filed by the applicable Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor's Estate, the Trustee or the Plan Administrator without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

## 9.3    Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Trustee that any particular contract or lease is in fact an Executory Contract, as applicable, or that the Debtor's Estate has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Trustee or the Plan Administrator, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter and to provide appropriate treatment of such contract or lease.

## ARTICLE X

## EFFECT OF PLAN CONFIRMATION

## 10.1    Binding Effect

Following the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor's Estate, the Trustee, all present and former holders of Claims and Interests, whether or not such holders voted in favor of the Plan, and their respective successors and assigns.

**10.2    Exculpation and Limitation of Liability**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE PLAN ADMINISTRATOR AGREEMENT, THE PLAN SUPPLEMENT, THE BSP SETTLEMENT AGREEMENT, THE SALE, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE DOES NOT EXCULPATE ANY OF THE EXCULPATED PARTIES' POST-EFFECTIVE DATE OBLIGATIONS UNDER THE PLAN, THE BSP SETTLEMENT AGREEMENT, THE SALE ORDER, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING, BUT NOT LIMITED TO, THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

**10.3    Release of BSP**

In consideration of the BSP Settlement Agreement, the Sale and the treatment of its Allowed Secured Claim as provided herein and other good and valuable consideration given by BSP to the Trustee as it relates to the Debtor's Estate, the Trustee, on behalf of himself (in his capacity as Chapter 11 trustee for the Debtor's Estate), the Debtor and the Debtor's Estate (collectively, the "Releasors"), each hereby waives, remises, releases and forever discharges BSP, its predecessors, successors, assigns, affiliates, shareholders, partners, members, managers, directors, officers, accountants, attorneys, employees, agents, representatives and servants of, from and against any and all claims, actions, causes of action, suits, proceedings, defenses, counterclaims, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity or otherwise, which any of the Releasors ever had or now has for or by reason of any matter, cause or anything whatsoever to the Effective Date relating to or arising out of any of the Adversary Proceeding, the Loan, the Assets, the Chapter 11 Case, the

Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of BSP with respect thereto, or the enforcement of any of BSP's rights or remedies with respect to the Debtor, the Debtor's Estate, the Insiders or any other person or entity with respect to the Loan.  Any capitalized terms used in this Section 10.3 not otherwise defined in the Plan shall have the meanings ascribed to them in the BSP Settlement Agreement.

### 10.4    Release of and by Debtor Professionals

The releases set forth in paragraphs 7 and 8 of the Debtor Professional Fee Stipulation are hereby incorporated herein and restated as of the Effective Date.

### 10.5    No Release of Insiders

For the avoidance of doubt, nothing set forth herein, and no action taken by the Trustee or BSP in regard to implementation of the same, are intended to and shall not serve to release any claims against Toby Moskovits, Michael Lichtenstein, their affiliated entities and professionals (except in regards to releases by and among certain Debtor professionals, as expressly agreed to by BSP and the Trustee and approved by the Court), any of the Debtor's other insiders (as such term is defined in 11 U.S.C. § 101(31)), the Williamsburg Hotel BK LLC, the Debtor's prepetition receiver, Constantino Segonas and his affiliated entities and professionals, or any transferees (including subsequent transferees) of avoidable transfers made by any of the foregoing.

### 10.4 10.6    No Discharge

Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code.

### 10.5 10.7    Term of Bankruptcy Injunction or Stays

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

### 10.6 10.8    Post-Effective Date Retention of Professionals

Upon the Effective Date, any requirement that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate and the Trustee and the Plan Administrator, as applicable, may employ and pay professionals in the ordinary course of business.

-36-

## ARTICLE XI

## RETENTION OF JURISDICTION

**11.1    Retention of Jurisdiction**

Pursuant to sections 105(e) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(b)    decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor and its Estate that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

(c)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(d)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from, or obligations incurred in connection with, the Plan or such documents;

(e)    modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(f)    hear and determine all applications for compensation and reimbursement of expenses of the Trustee and the Trustee Professionals under the Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code;

-37-

provided, however, that from and after the Effective Date the payment of fees and expenses by the Trustee or the Plan Administrator, as applicable, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(g)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(h)     adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

(i)     resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including without limitation, the Bar Date, related notice, claim objections, allowance, disallowance, estimation, and Distribution;

(j)     hear and determine retained causes of action by the Trustee or the Plan Administrator, as applicable, or on behalf of the Debtor's Estate;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(l)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with the foregoing;

(m)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(n)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(o)     enter an order closing the Chapter 11 Case.

## 11.2    No Limitation on Enforcement by SEC or the U.S. Attorney's Office

Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

**ARTICLE XII**

**MISCELLANEOUS PROVISIONS**

**12.1    Payment of Statutory Fees**

All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Trustee or Plan Administrator, as the case may be, until the earlier of the conversion or dismissal of the Chapter 11 Case under section 1112 of the Bankruptcy Code or the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.  The Trustee or the Plan Administrator, as the case may be, shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within fifteen (15) days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree.  Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

**12.2    Amendment or Modification of the Plan**

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Trustee reserves the right to alter, amend, or modify the Plan or any Plan Supplement at any time prior to or after the Confirmation Date but prior to the substantial consummation of the Plan, subject to the express written consent of BSP ~~to the extent required by the BSP Settlement Agreement.~~  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such holder.

**12.3    Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.4    Severability of Plan Provisions**

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court, at the request of the Trustee and with the consent of BSP (not to be unreasonably withheld), to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each

term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.5    Successors and Assigns**

The Plan shall be binding upon and inure to the benefit of the Debtor's Estate and the Trustee and his successors and assigns, including the Plan Administrator, as applicable.  The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**12.6    Revocation, Withdrawal, or Non-Consummation**

The Trustee reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other chapter 11 plans.  If the Trustee revokes or withdraws the Plan, or if Confirmation or Consummation of the Plan does not occur, then:  (a) the Plan shall be null and void in all respects;  (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void;  and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Estate or the Trustee or any Person in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor's Estate, the Trustee or any other Person.

**12.7    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit or Plan Supplement document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of law thereof.

**12.8    Time**

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.9    Notice of Effective Date**

On or before five (5) Business Days after the Effective Date, the Trustee shall mail or cause to be mailed to all holders of Claims and Interests a notice that informs such Entities of (a) the Confirmation of the Plan and occurrence of the Effective Date, (b) notice of the Administrative Claims Bar Date and ~~Professional~~Trustee Fee Claims Bar Date, and (c) such other matters as the Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**12.10   Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor's Estate, the Trustee, the holders of Claims and Interests, the Exculpated Parties, and each of their respective successors and assigns, including the Plan Administrator. The Trustee will request that the Confirmation Order include a finding by the Bankruptcy Court that, notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry.

**12.11   Entire Agreement**

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.12   Notice**

All notices, requests, and demands to or upon the Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or other electronic transmission, when received and telephonically confirmed, addressed as follows:

> **TOGUT, SEGAL & SEGAL LLP**
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn:  Frank A. Oswald, Esq., and Bryan M. Kotliar, Esq., and Amy M. Oden, Esq..
> E-mail: frankoswald@teamtogut.com, and bkotliar@teamtogut.com, and aoden@teamtogut.com
>
> *Attorneys for the Trustee*
>
> -and-
>
> **Kramer Levin Naftalis & Frankel LLP**
> 1177 Avenue of the Americas
> New York, New York 10036
> (212) 715-9100
> Attn.:  Adam C. Rogoff, Esq.
> Email:  arogoff@kramerlevin.com
>
> **Nelson Mullins Riley & Scarborough LLP**
> 201 17th Street, suite 1700

Atlanta, Georgia 30363
(404) 322-6000
Attn.:  Lee B. Hart, Esq.
Email:  lee.hart@nelsonmullins.com

**Co-counsel for BSP**

*[Remainder of Page Left Blank Intentionally]*

## ARTICLE XIII

## <u>CONFIRMATION REQUEST</u>

The Trustee requests Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

Dated: ~~December 2, 2022~~February 14, 2023
   New York, New York

         By: /s/ *Stephen S. Gray*
         Not individually but solely in His
         capacity as Chapter 11 Trustee


TOGUT, SEGAL & SEGAL LLP
Counsel for the Chapter 11 Trustee

By: /s/ *Frank A. Oswald*
Frank A. Oswald
A Member of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

**<u>EXHIBIT C</u>**

**First Amended Disclosure Statement**

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN FOR THE BANKRUPTCY ESTATE OF 96 WYTHE ACQUISITION LLC IN THIS CHAPTER 11 CASE. ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO AMENDMENT PRIOR TO SUCH APPROVAL BEING GRANTED.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>96 WYTHE ACQUISITION LLC,<br><br>          Debtor. | Chapter 11<br><br>Case No.: 21-22108 (SHL) |

**FIRST AMENDED DISCLOSURE STATEMENT**
**RELATING TO THE FIRST AMENDED CHAPTER 11**
**PLAN OF LIQUIDATION FOR THE BANKRUPTCY ESTATE OF**
**96 WYTHE ACQUISITION LLC, AS PROPOSED BY THE CHAPTER 11 TRUSTEE**

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Neil Berger
Frank A. Oswald
Bryan Kotliar
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel to Stephen S. Gray,*
*not individually, but solely in*
*his capacity as Chapter 11 Trustee*

Dated: February 14, 2023
      New York, New York

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND SUMMARY ...........................................................................1

        A.      Executive Summary............................................................................................1

        B.      Overview of Chapter 11.....................................................................................4

II.     HISTORY OF THE DEBTOR AND THE BANKRUPTCY FILING .........................4

        A.      History of the Debtor and Description of the Debtor's Business ................4

        B.      Loan Background................................................................................................5

        C.      Disputes with BSP and State Court Litigation ...............................................5

        D.      Description of Debtor's Assets and Management ...........................................6

III.    POST-PETITION DEVELOPMENTS........................................................................6

        A.      The Appointment of the Examiner and the Trustee.......................................6

        B.      The BSP Settlement Agreement.......................................................................6

        C.      The Sale ..............................................................................................................8

IV.     CLAIMS.........................................................................................................................8

        A.      BSP Secured Claim ...........................................................................................9

        B.      The NYC Tax Settlement ..................................................................................9

                (i)     The Real Estate Tax Claims ...............................................................9

                (ii)    Hotel Claims.......................................................................................10

                (iii)   Water Board Claim ...........................................................................11

                (iv)    Tax Adversary Proceeding ...............................................................11

                (v)     NYC Tax Stipulation ........................................................................11

                (vi)    Subsequent Developments.................................................................12

        C.      The Management Company's Claims .............................................................13

        D.      Claims Filed by the Debtor's Professionals and CRO ................................13

        E.      Claims Filed by the Examiner .......................................................................14

        F.      Claims Filed by the Receiver..........................................................................15

        G.      General Unsecured Claims..............................................................................15

i

V.      THE PLAN OF LIQUIDATION ...................................................................15

        A.      Who May Vote .................................................................................16

        B.      Voting Procedures ...........................................................................16

                (i)     Solicitation Period...............................................................16

                (ii)    Ballots ..................................................................................17

        C.      Confirmation Hearing......................................................................17

                (i)     Objections to Confirmation .................................................17

                (ii)    Requirements for Confirmation of the Plan.........................17

VI.     OVERVIEW OF THE PLAN .......................................................................18

        A.      Treatment of Claims Under the Plan ...............................................18

        B.      Priority of Distribution from BSP Senior Secured Claim and
                Proceeds of Non-Real Estate Assets................................................26

        C.      Acceptance or Rejection of The Plan...............................................27

        D.      Implementation of the Plan..............................................................27

        E.      Preservation of Causes of Action ....................................................30

        F.      Plan Distributions............................................................................30

                (i)     Address for Delivery of Distributions and Forfeiture of
                        Claims..................................................................................31

                (ii)    Distributions under Twenty-Five Dollars.............................31

                (iii)   Time Bar to Cash Payments .................................................31

                (iv)    Distributions to Holders as of the Confirmation Date .........31

                (v)     Abandoned Assets ...............................................................32

        G.      Wind-Up ...........................................................................................32

        H.      Distributions on Disputed Claims....................................................32

                (i)     No Distributions Pending Allowance....................................32

                (ii)    Special Rules for Distributions to Holders of Disputed
                        Claims..................................................................................32

        I.      Conditions to the Effective Date......................................................33

        J.      Waiver of Conditions Precedent.......................................................33

        K.      Procedures for Disputed Claims ......................................................34

ii

        (i)     Allowance of Claims ................................................................34

        (ii)    Objections to Claims.............................................................34

        (iii)   Estimation of Disputed Claims.............................................35

L.     Resolution of Claims. ..........................................................................35

M.    Disallowed Claims...............................................................................35

N.     Treatment of Executory Contracts .....................................................36

O.     Exculpation and Limitation of Liability ............................................36

P.     Release of BSP ....................................................................................37

Q.     Release of and by Debtor Professionals..............................................37

R.     No Release of Insiders.........................................................................38

S.     No Discharge .......................................................................................38

VII.    TAX CONSEQUENCES OF THE PLAN ....................................................38

VIII.   RISK FACTORS...........................................................................................38

A.     Risk of Non-Confirmation of the Plan...............................................39

B.     Nonconsensual Confirmation..............................................................39

C.     Risk that Conditions to Effectiveness Will Not Be Satisfied.......................39

D.     There May Not Be Recoveries for the Holders of Allowed General Unsecured Claims and the Allowed BSP Subordinated Secured Claim ...................................................................................................39

E.     Recoveries on Account of Retained Causes of Action are Speculative and Uncertain ...................................................................40

F.     Risk of Delayed Effective Date .........................................................40

G.     No Representations Outside This Disclosure Statement Are Authorized............................................................................................40

IX.    ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF REJECTION ..................................................................................................40

A.     Alternative Plans.................................................................................40

B.     Chapter 7 Liquidation ........................................................................41

C.     No Limitation on Enforcement by SEC or the U.S. Attorney's Office .......41

X.     RECOMMENDATION AND CONCLUSION ...........................................42

**<u>EXHIBITS</u>**

EXHIBIT A              Chapter 11 Plan

EXHIBIT B              BSP Settlement Agreement

EXHIBIT C              Sale Order

## I.    INTRODUCTION AND SUMMARY

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of 96 Wythe Acquisition LLC (the "Debtor"), submits this first amended Disclosure Statement to holders of Claims against the Debtor's Estate entitled to vote on the first amended Chapter 11 plan of liquidation proposed by the Trustee, a copy of which is attached hereto as **Exhibit A** (as it may be further amended, supplemented, or otherwise modified from time to time, the "Plan").[1]

The purpose of this Disclosure Statement is to provide holders of Claims in Class 2 (BSP Senior Secured Claim), Class 4 (General Unsecured Claims), and Class 5 (BSP Subordinated Secured Claim) entitled to vote on the Plan with adequate information to make an informed judgment as to whether to vote to accept or reject the Plan. The Trustee is providing you with the information in this Disclosure Statement because you may be a creditor entitled to vote on the Plan. This Disclosure Statement is to be used solely in connection with evaluation of the Plan and not for any other purposes.

To be counted, your Ballot must be duly completed, executed, and underlined actually received by 5:00 p.m. (Eastern Time) on [_____], 2023 (the "Voting Deadline"). Ballots may be **delivered by either (a) United States Mail or (b) overnight or same day courier service to the attention of: 96 Wythe Ballot Processing, c/o Togut Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attention: Frank A. Oswald, Esq. and Bryan Kotliar, Esq.), or (c) via email to jgallego@teamtogut.com.**

For the reasons set forth herein, the Trustee believes that the Plan is in the best interests of creditors and other stakeholders and is a fair means of moving this Chapter 11 Case towards an efficient resolution. All creditors entitled to vote on the Plan are urged to vote in favor of it.

The Trustee reserves the right to supplement this Disclosure Statement and provide additional information to creditors entitled to vote on the Plan and other parties in interest prior to the Voting Deadline.

### A.    Executive Summary

Following an extensive marketing and auction process, the Bankruptcy Court has approved the Trustee's sale of substantially all of the Debtor's assets, including the Hotel, to the Purchaser for an aggregate sale price of $96 million. The closing of the Sale is subject to certain conditions precedent and is expected to occur on or before March 31, 2023. All of the proceeds of the Sale are subject to the liens and claims of BSP, the Debtor's senior secured lender, which the Bankruptcy Court approved in the amount of no less than $108,688,786.76 (as of August 14, 2022, plus additional accruing interest, fees, and other charges). Thus, absent an agreement with Benefit Street Partners Realty Operating Partnership, LP ("BSP"), the Debtor's senior secured mortgage lender, there would be no sale proceeds available to pay any amounts necessary to confirm a chapter

---

[1]    Capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan.

11 plan, such as administrative claims and priority claims, or any funding to pursue additional recoveries for the benefit of creditors on account of estate claims and causes of action against third parties.

Following extensive arm's length negotiations between the Trustee and his advisors and BSP and its advisors, BSP has agreed to carve-out from its liens and claims a substantial amount of the sale proceeds to provide for sufficient funding to confirm this chapter 11 plan, subject to the agreements and deferrals described below reached with certain administrative and priority creditors.

The Plan provides that upon the Effective Date of the Plan and consummation of the Sale, the Trustee will (a) distribute a portion of the Sale proceeds to BSP on account its senior secured claims and pay (or reserve for) certain administrative expenses and priority claims and (b) use the remainder of the sale proceeds consisting of $150,000 to fund a reserve that will be used by the post-Effective Date Estate representative to pursue recoveries on account of claims and causes of action not released under the Plan. To accomplish this result, the Plan contains several agreements regarding the deferral of certain administrative and other claims that would otherwise be necessary to pay in cash (or reserve) on the Effective Date of the Plan to the extent allowed by the Court:

- The Trustee and the Trustee Professionals have agreed to receive payment of a portion of their allowed fees and expenses in the amount of $4,660,650 from the Sale proceeds and defer a substantial portion of their fees and expenses in the amount of $1,900,109 (subject to certain adjustments for certain professionals depending upon the operation of the Hotel prior to the Effective Date) to recovery from Post-Effective Date Available Cash[2]

---

[2]    "Post-Effective Date Available Cash" is defined in the Plan as the Post-Effective Date Proceeds less the Post-Effective Date Expenses.  These terms are defined as:

"Post-Effective Date Proceeds" means "(a) Cash in the Post-Effective Date Reserve and (b) any and all Cash, property, and/or proceeds obtained by the Post-Effective Date Debtor or the Plan Administrator, as applicable, and/or derived from the Debtor's assets on and after the Effective Date, including reducing the Retained Causes of Action to Cash."

"Post-Effective Date Expenses" means "all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred or reasonably anticipated to be incurred by the Trustee or the Plan Administrator, as the case may be, after the Effective Date in connection with the implementation of the Plan and the administration of the post-Effective Date Estate, including, but not limited to:  (a) Expenses in connection with administering and implementing the Plan, including any taxes incurred and accrued by the Trustee or the Plan Administrator, as the case may be, on or after the Effective Date; (b) U.S. Trustee Fees, if any, which accrue after the Effective Date, (c) the Expenses of the Trustee or Plan Administrator, as the case may be, in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes, and filing tax returns, and (d) the Expenses of the Trustee or Plan Administrator, as applicable, and all independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Trustee or the Plan Administrator, as applicable, after the Effective Date."

(*i.e.*, the post-Effective Date recoveries on account of claims and causes of action belonging to the estate, net of the post-Effective Date costs).[3]

- The NYC DOF has agreed that its Allowed Priority Tax Claims on account of unpaid hotel occupancy taxes will be paid 15% in cash on the Effective Date of the Plan (which equates to $312,050) with the balance of such claims in the amount of $1,768,286 to be paid from Post-Effective Date Available Cash after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses described in the first bullet above.

- During the Chapter 11 Case, BSP previously agreed to subordinate a substantial portion of its allowed claims in the amount of at least $12.7 million (as of August 14, 2022, plus additional accruing interest, fees, and other charges) to General Unsecured Claims. In light of the insufficiency of Sale proceeds to pay its Senior Secured Claim in full as required, BSP has further agreed to (a) reduce the amount of its Senior Secured Claim payable on the Effective Date to $88,704,697 and (b) defer a substantial portion of the recovery otherwise available to it on account of its Senior Secured Claim in the amount of $5.5 million to be paid from Post-Effective Date Available Cash after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses and the deferred portion of the unpaid hotel and occupancy taxes owing to the NYC DOF described in the first and second bullets above.

- The Trustee and BSP have reached an agreement in principle with certain of the professionals retained by the Debtor prior to the appointment of the Trustee to reduce their requests for fees and expenses from more than approximately $7.9 million by 25%, which reduced fees and expenses, if approved by the Bankruptcy Court, will be paid pro rata from a reserved fund of $964,463.25, with the balance of such unpaid fees and expenses to be paid from Post-Effective Date Available Cash after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses, the deferred portion of the unpaid hotel and occupancy taxes owing to the NYC DOF, and the deferred portion of the BSP Senior Secured Claim equal to $5.5 million, each described in the first, second and third bullets above.[4]

After payment of the above-described amounts, any additional Post-Effective Date Available Cash will be paid first to holders of allowed general unsecured claims (Class 4) pro rata until such claims are paid in full, second to BSP on account of its subordinated secured claim (Class 5), third to holders of allowed subordinated claims

---

[3] The Trustee's and his professionals' agreements to defer payment of their fees and expenses is set forth in the Twelfth Interim Cash Collateral Order.

[4] The agreement described in this bullet is subject to further definitive documentation, which the Trustee expects to file with the Bankruptcy Court prior to the Confirmation Hearing.

held by insiders of the Debtor (Class 6), and finally to holders of the Debtor's equity interests (Class 7).

Other persons and entities have asserted administrative expense claims, which will either be paid in full on the Effective Date, estimated at zero dollars for distribution purposes or voluntarily compromised on the as part of confirmation of the Chapter 11 Plan. Failure of any of the trustee's efforts in this regard with respect to each claim will cause the failure of the Chapter 11 Plan and a likely conversion of this Bankruptcy Case to a Chapter 7 liquidation.

### B.      Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. The commencement of a Chapter 11 case creates an Estate that is comprised of all of the legal and equitable Interests of the Debtor as of the filing date. Confirmation and consummation of a plan of reorganization or liquidation are the principal objectives of a Chapter 11 case. In this Chapter 11 Case, the Plan contemplates a liquidation of the assets of the Debtor's Estate and is therefore referred to as a "plan of liquidation."

In general, confirmation of a plan by the Bankruptcy Court makes the plan binding upon a debtor, any Person acquiring assets under the plan, and any holder of a Claim or Interest of a debtor whether or not they vote to accept the plan. Before soliciting acceptances of a proposed plan, however, section 1125 of the Bankruptcy Code requires a trustee to prepare a disclosure statement containing "adequate information" of a kind, and in sufficient detail, to enable a creditor to make an informed judgment in voting to accept or reject the plan. The Trustee is submitting this Disclosure Statement to holders of Claims against the Estate to satisfy the requirements of section 1125 of the Bankruptcy Code.

## II.      HISTORY OF THE DEBTOR AND THE BANKRUPTCY FILING

### A.      History of the Debtor and Description of the Debtor's Business

The Debtor is a New York limited liability company with its principal place of business in Brooklyn, New York. The Debtor owns and operates the Williamsburg Hotel, a successful 10-story, 147-room independent hotel, constructed in 2017, and located at 96 Wythe Avenue, Brooklyn, New York (the "Hotel"). The Hotel is upscale and full-service, featuring a full food and beverage operation that includes a restaurant, a lobby bar, outdoor café, a lounge bar, water tower bar, and event ballrooms. Other amenities include additional meeting and conference rooms, an on-site fitness center, and a rooftop pool and bar with spectacular panoramic views across the East River to the New York City skyline. Prior to the Trustee's appointment, the Debtor was managed by a non-debtor affiliate, the Williamsburg Hotel BK LLC (the "Management Company. The Management Company is owned by Toby Moskovits ("Moskovits") and Michael Lichtenstein ("Lichtenstein" and, together with Moskovits, the "Principals").

### B.    Loan Background

On December 13, 2017, the Debtor and Benefit Street Partners Realty Operating Partnership, L.P. (together with BSPRT 2018-FL3 Issuer, Ltd., as successor, collectively, "BSP") entered into a $68 million loan transaction, which consolidated approximately fourteen (14) mortgages, by entering into that certain loan agreement, dated as of December 13, 2017 (the "Loan Agreement," together with any related documents, including consolidated note and mortgage, and guarantees, collectively, the "Loan Documents"). BSP asserts that the Debtor's obligations under the Loan Agreement are secured by all-asset and fixture filings with respect to the Hotel, as more fully set forth in the Loan Documents, as well as financing statements on Hotel revenues. The Loan Agreement was originally set to mature on June 9, 2019 (the "Initial Maturity Date"); however, the Debtor had two options to extend the terms of the Loan Agreement beyond the Initial Maturity Date for two successive 6-month terms, to: (a) December 9, 2019, if the Debtor exercised the first option; and (b) June 9, 2020, if the Debtor exercised the second option. Exercising these options was subject to the satisfaction of certain conditions precedent under the Loan Agreement, including the absence of any events of default and payment of an extension fee.

At the closing of the Loan Agreement, funds were set aside for "Business Plan Reserve Funds" in a "Construction Reserve Account" to complete the agreed-upon construction of the Hotel and to ensure adequate funding for the Debtor's capital expenditures to complete the Hotel. The Loan Documents required BSP to reimburse the Debtor from this account upon the satisfaction of certain conditions, including: (i) certifications; (ii) the release of applicable liens; and (iii) BSP completing an onsite inspection.

After the parties entered into the Loan Agreement, construction on the Hotel continued. On March 22, 2018, the Debtor submitted its first draw request in compliance with the Loan Documents. After an inspection on March 27, 2018 by CBRE, a third-party engineer that conducted the onsite inspections at the Hotel, BSP funded the first draw request on June 1, 2018. On May 23, 2018, the Debtor submitted its second draw request, which BSP funded on June 14, 2018. On June 20, 2018, the Debtor submitted its third draw request, which BSP funded on June 27, 2018.

### C.    Disputes with BSP and State Court Litigation

On June 11, 2019, BSP commenced a foreclosure action in the Supreme Court of the State of New York, New York County, Index No. 653396/2019 (the "Foreclosure Action"). Constantino Sagonas was appointed as receiver for the Debtor in the Foreclosure Action (the "Receiver"). In the Foreclosure Action, the New York State Court denied BSP's motion for summary judgment. BSP appealed such denial, which was docketed in the First Department of the Appellate Division as Appellate Case No. 2020-03532, and in a ruling on February 16, 2021, the First Department entered an order partially reversing the trial court and granting summary judgment in favor of BSP. Shortly after the First Department granted summary judgment in favor of BSP, the Debtor filed the voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case.

### D.      Description of Debtor's Assets and Management

The Debtor's primary asset is the Hotel.  The day-to-day operations of the Hotel were previously managed by one of the Debtor's affiliates, the Management Company, pursuant to a purported Hotel Management and Services Agreement (the "Management Agreement").  The Receiver retained the Management Company in the Foreclosure Action and, following the Receiver's discharge upon the Chapter 11 filing, the Debtor continued to retain the Management Company.  Under the Management Agreement, the Management Company was the party that was contracted with and was obligated to pay the employees' salaries, as well as the other operating expenses for the Hotel.  However, since the Trustee's appointment (described below), the Trustee has managed the Hotel and other Estate assets, and moved to reject the Management Agreement, which motion was granted by the Bankruptcy Court on August 8, 2022.

## III.     POST-PETITION DEVELOPMENTS

### A.      The Appointment of the Examiner and the Trustee

On October 15, 2021, BSP filed a motion to appoint an examiner, which was granted by the Bankruptcy Court by an order entered on November 8, 2021 (and subsequently amended on November 23 and December 14, 2021).  On November 16, 2021, the Bankruptcy Court entered an order approving the appointment of an examiner, and Eric M. Huebscher was appointed to serve as the examiner (the "Examiner").  On February 28, 2022, the Examiner issued his report which found sufficient grounds to appoint a trustee.  On March 28, 2022, BSP filed its renewed motion to appoint a Chapter 11 trustee, raising concerns of potential impropriety by the Debtor's management and requesting the appointment of a Chapter 11 trustee.  On March 31, 2022, the U.S. Trustee also filed a motion to appoint a Chapter 11 trustee. Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, the Bankruptcy Court entered an order on May 27, 2022 directing the appointment of a Chapter 11 trustee.  On May 31, 2022, the United States Trustee filed a notice and application for an order approving the Trustee's appointment. On May 31, 2022, the Bankruptcy Court granted the application for an order appointing the Trustee.  Since then, the Trustee has duly qualified and has been acting as the Trustee in this Chapter 11 Case.

### B.      The BSP Settlement Agreement

On July 13, 2021, BSP filed a Proof of Claim and amended such Claim on February 15, 2022.  BSP's Proof of Claim asserted a Secured Claim in the aggregate amount of at least $89,543,755.49 on account of unpaid principal, as well as accrued and accruing interest, fees, and expenses related to the Loan Agreement.  Fees, expenses and interest and the contract and default rate continued to accrue during the course of this Bankruptcy Case on BSP's claim pursuant to BSP's loan documents with the Debtor.

On September 13, 2022, the Trustee filed a motion to approve the BSP Settlement Agreement between BSP and the Trustee, which, once approved, would quantify the amount of the largest Claim asserted against the Debtor's Estate, and pave the way for a more streamlined Sale and Plan process where no Chapter 11 plan would have been

6

otherwise possible, including the capping of any credit bid by BSP to the amount of its Senior Secured Claim in a sale closed pursuant to a Chapter 11 plan. The BSP Settlement Agreement also resolved the proposed treatment of BSP's Secured Claim by permitting the consensual subordination of the BSP Subordinated Secured Claim to Allowed General Unsecured Claims under the Plan. Moreover, the BSP Settlement Agreement resolved, through dismissal, the adversary proceeding filed by the Debtor against BSP, seeking to relitigate the otherwise dispositively resolved Foreclosure Action.

In summary, the BSP Settlement Agreement apportions BSP's Claim into two component parts: (i) the BSP Senior Secured Claim; and (ii) the BSP Subordinated Secured Claim. Moreover, the BSP Settlement Agreement affords BSP the right to credit bid the full amount of its Senior Secured Claim at the Sale of the Hotel and related Assets pursuant to section 363(k) of the Bankruptcy Code subject to a cap to which BSP voluntarily subjected in a sale closed under a Chapter 11 plan. The BSP Settlement Agreement also identified certain terms and conditions to be included in the Plan, discussed in Section VI of this Disclosure Statement. Furthermore, the BSP Settlement Agreement provides for BSP to assign all of its rights, title, and interest in, and to, the bond posted by the Receiver for the Debtor in the Foreclosure Action, and the rights to make a claim and recover thereunder; provided, that BSP shall retain its right to receive a Distribution of the proceeds of such bond to the extend flowing to BSP on account of the BSP Subordinated Secured Claim. The BSP Settlement Agreement also provides for mutual releases between the Trustee and BSP for all claims and causes of action relating to or arising out of, among other things, the BSP Adversary Proceeding, the Loan, the Hotel, the Bankruptcy Case, the Collateral (as defined in the Settlement Agreement), the Foreclosure Action, and the Debtor's appeal of the Foreclosure Action.

On October 7, 2022, Debtor's co-counsel, Mayer Brown LLP filed a limited objection to the Trustee's motion to approve the BSP Settlement Agreement, arguing that the BSP Settlement Agreement prematurely assumed that BSP was over-secured, and that the BSP Settlement Agreement did not abide by the Bankruptcy Code's priority scheme. The Trustee and BSP each filed replies to Mayer Brown LLP's objection on October 14, 2022, to which Mayer Brown LLP filed a sur-reply on October 17, 2022.

On October 19, 2022, following discussions among the Trustee, BSP and Mayer Brown, the Trustee filed a notice of a revised settlement agreement between the Trustee and BSP. The revisions to the BSP Settlement Agreement included additional language clarifying that the BSP Secured Claim would be "reduced dollar for dollar by any amount that such claim exceeds the amount permitted by [s]ection 506(b) of the Bankruptcy Code, which shall be determined based upon a valuation of [BSP]'s Collateral established by a sale thereof that is approved by the Bankruptcy Court or other recoveries on account of such Collateral" and that "the [BSP Subordinated Secured Claim] shall be reduced dollar for dollar by any amount that the sum of the [BSP Senior Secured Claim] and [BSP Subordinated Secured Claim] exceeds the amount permitted by [s]ection 506(b) of the Bankruptcy Code, which shall be determined based upon a valuation of [BSP]'s Collateral established by a sale thereof that is approved by the Bankruptcy Court or other recoveries on account of such collateral."

Following the filing of the notice of a revised settlement agreement, Mayer Brown withdrew its objection and, at a hearing held on October 19, 2022, the Bankruptcy Court granted the motion to approve the BSP Settlement Agreement and entered the BSP Settlement Agreement Order on October 21, 2022.[5]

## C.    The Sale

The Trustee, in an exercise of his business judgment, concluded that a sale of the assets of the Debtor's Estate was in the best interest of its creditors and other stakeholders.  On October 21, 2022, the Trustee filed a motion for entry of an order approving bidding procedures related to the Sale of the Hotel and related assets, and on November 15, 2022, the Bankruptcy Court entered an order approving the bidding procedures and scheduling an auction, if necessary (the "Bidding Procedures Order").

Following an extensive marketing and auction process conducted in accordance with the Bidding Procedures Order, on January 11, 2023, the Trustee, in consultation with BSP, designated Quadrum Development Corp. (the "Purchaser") as the Successful Bidder (as defined in the Bidding Procedures Order).

On January 26, 2023, the Bankruptcy Court entered the *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 881] (the "Sale Order"), which approved the sale of substantially all of the Debtor's assets to the Purchaser pursuant to the Purchase and Sale Agreement, dated as of January 11, 2023, between the Trustee and the Purchaser, a copy of which was attached as Exhibit A to the Sale Order (the "Purchase Agreement").[6] The closing of the sale is subject to certain conditions precedent set forth in the Sale Order and Purchase Agreement and is expected to occur on or before March 31, 2023.

If the Plan is not confirmed or the Plan does not go effective, the Trustee has reserved the right, and the Sale Order allows for, the Sale to close on a standalone basis pursuant to section 363 of the Bankruptcy Code.

## IV.    CLAIMS

On June 2, 2021, the Bankruptcy Court entered an order establishing July 15, 2021 as the initial deadline for filing general proofs of claim in the Chapter 11 Case.  To date, a total of forty (40) Claims have been filed against the Debtor's Estate.  Certain of these Claims have been Allowed, reduced and Allowed, or expunged.  The Trustee is in the process of evaluating the validity and appropriateness of the remaining Claims and will object to Claims as appropriate.

---

[5]    A copy of the BSP Settlement Agreement Order, which includes a copy of the BSP Settlement Agreement, is attached hereto as **Exhibit B**.

[6]    A copy of the Sale Order, which includes a copy of the Purchase Agreement, is attached hereto as **Exhibit C**.

On October 14, 2022, the Bankruptcy Court entered an order establishing November 21, 2022 as the deadline for filing certain administrative expense claims arising from the Petition Date through and including September 30, 2022. A total of thirteen (13) Administrative Claims were filed against the Debtor's Estate (excluding Administrative Claims filed by the Debtor's professionals) in the aggregate amount of $1,563,123.96.

### A.     BSP Secured Claim

As described above, the BSP Settlement Agreement apportions BSP's Secured Claim to provide BSP with: (a) the BSP Senior Secured Claim comprising of principal, contract rate interest, and costs and legal fees, to be paid at the closing of the sale of the Hotel; and (b) the BSP Subordinated Secured Claim comprising of certain fees and interest, which is to be subordinated to all Allowed Administrative, Priority, and General Unsecured Claims, but senior to both Subordinated Insider Claims and Equity Interests, and to be disbursed pursuant to the provisions of the Plan.

As discussed above, the Sale proceeds are insufficient to pay BSP's Senior Secured Claim in full. In order to accommodate the Trustee's ability to file and confirm the Plan and facilitate the opportunity for distribution to other creditors, BSP has agreed to subordinate a portion of its Senior Secured Claim equal to $5.5 million and receive such amounts as otherwise described herein from post-closing recoveries from non-real estate assets (provided that such $5.5 million is separate from and paid senior to BSP's Subordinated Secured Claim).

### B.     The NYC Tax Settlement

#### (i)     *The Real Estate Tax Claims*

On July 26 and 28, 2021, respectively, the New York City Department of Finance (the "NYC DOF") filed two Proofs of Claim represented on the Debtor's claims register as Claim Nos. 10-1 and 11-1. Claim No. 10-1 asserted a Secured Claim of $606,749.04 for certain post-petition real property taxes, charges and interest, but was filed as a pre-petition Claim. Claim No. 11-1 asserted that the NYC DOF was entitled to a Secured Claim in the amount of $3,378,218.12 for certain pre-petition real property taxes, charges and interest, but was filed as an Administrative Claim. On December 23, 2021, the Debtor objected to Claim Nos. 10-1 and 11-1.

On January 20, 2022, the NYC DOF filed a response to the Debtor's objection to Claim Nos. 10-1 and 11-1, stating that the NYC DOF inadvertently asserted Claim No. 10-1 as a pre-petition Secured Claim and Claim No. 11-1 as an Administrative Claim, while in fact Claim No. 10-1 covered post-petition taxes during the administrative period, and Claim No. 11-1 asserted a Claim for taxes during the pre-petition period. On March 2, 2022, the NYC DOF filed an amendment to Claim No. 10-1 asserting $3,125,061.56 for pre-petition real property taxes and charges, with statutory interest through the Petition Date, as secured by a lien on Hotel.

On March 9, 2022, the NYC DOF filed Claim No. 11-2, an amendment to Claim No. 11-1 asserting a claim of $687,104.18 for certain real property taxes and charges that

accrued after the Petition Date through December 31, 2021, with statutory interest through February 25, 2022, as an Administrative Claim secured by a lien against the real property upon which the Hotel is situated.  On March 2, 2022, the NYC DOF inadvertently filed Claim No. 19 which was intended to amend Claim No. 10-1, but was a duplicate of Claim No. 10-2.

Prior to objecting to Claim Nos. 10-1 and 11-1, the Debtor and the NYC DOF entered into an installment agreement dated as of June 23, 2021, fixing the Claims at $3,928,923.57 as of June 23, 2021, which consisted of all real property taxes, assessments and related charges through the real property taxes due on July 1, 2021 and outstanding statutory interest as of June 23, 2021.  The installment agreement provided for, among other things, an agreed-upon payment schedule of outstanding real property taxes, assessments and related charges to be paid in semi-annual installments of $443,201.41 over ten (10) years.  The installment agreement was not submitted to the Bankruptcy Court for approval as required by, *inter alia*, Bankruptcy Rule 9019.  Since the Petition Date, the Debtor made some payments to the NYC DOF on account of the real property taxes.  The Debtor owed $606,599.16 in principal for the second half of the tax years of 2021-2022, which was due on January 1, 2022.  The NYC DOF applied payments made by the Debtor on December 21, 2021, and February 8, 2022 to the taxes due on January 1, 2022, leaving a balance of $169,150.48.

On March 9, 2022, the NYC DOF filed a Proof of Claim, represented on the Debtor's claims register as Claim No. 21-1, asserting an Administrative Claim of $169,150.48 on account of the taxes that were due on January 1, 2022, with statutory interest through February 25, 2022 for $163,815.31 in principal and $5,335.17 in interest.

On March 23, 2022, the Debtor paid the NYC DOF $612,351.89 of which:  (i) $169,150.48 was applied to the balance of the taxes that were due on January 1, 2022, thereby satisfying Claim No. 21-1;  and (ii) $443,201.41 representing the initial installment amount under the installment agreement.  As of August 23, 2022, the total pre-petition unpaid real property taxes totaled $3,603,879.84, including statutory interest through August 17, 2022.  The total post-petition unpaid real property taxes with statutory interest as of August 17, 2022 was $735,468.13.

(ii)     *Hotel Claims*

The NYC DOF also filed Proofs of Claim Nos. 14 and 18 in the amount of $6,520.449.01 each for estimated outstanding partnership taxes, estimated Unincorporated Business Taxes and estimated Hotel Occupancy Taxes.  Claim No. 14 was filed in the amount of $4,364,634.91 in principal, $1,086,985.47 in interest, and $1,068,828.63 in penalty.  Claim No. 18 is a duplicate of Claim No. 14.  Claim Nos. 14 and 18 were accruing interest at the statutory rate (eight (8) percent).  On January 14, 2022, the Debtor filed objections to the Claim Nos. 14 and 18.  On February 8, 2022, the NYC DOF filed a response to the Debtor's objections.

Claim Nos. 14 and 18 include hotel occupancy taxes, unincorporate business tax ("UBT"), and corporate tax, but only either UBT or corporate tax was owed, not both.  However, the Claim Nos. 14 and 18 included both, since the Debtor had not elected

10

how to be treated for tax purposes.  Subsequently, the Debtor filed business tax returns electing to be treated as a partnership.

Following the filing of the tax returns, the pre-petition hotel occupancy taxes were $2,497,908.61.  Of that amount, $1,638,297.41 constituted principal, $310,919.74 constituted interest, and $548,591.46 constituted penalties.

With interest and penalties through August 17, 2022, the total pre-petition hotel occupancy tax Claim is $2,868,722.42, with principal remaining $1,638,397.41, penalties of $692,617.22, and interest of $537,707.79.  Additionally, post-petition hotel occupancy tax, interest and penalties totaled $40,063.83 as of August 17, 2022.

### (iii)   Water Board Claim

On March 30, 2021, the New York City Water Board filed a Proof of Claim represented on the Debtor' claim register as Claim No. 2.  Claim No. 2 asserted a pre-petition Secured Claim against the Debtor in the amount of $100,522.64 for water services provided to Debtor.  Interest was accruing and compounding daily at the current rate of fourteen (14) percent.

### (iv)   Tax Adversary Proceeding

On April 18, 2022, the Debtor commenced an adversary proceeding against the NYC DOF seeking, among other things, a declaration that the Debtor was entitled to a tax abatement in connection with the Debtor's construction of the Hotel.  On May 20, 2022, the NYC DOF filed a motion to dismiss the adversary proceeding.

### (v)   NYC Tax Stipulation

Following his appointment on May 31, 2022, the Trustee engaged with the NYC DOF in good faith discussions concerning the Debtor's liability relating to the various Claims asserted by the NYC DOF.  As discussed above, interest accrued and compounded daily at a rate fourteen (14) percent for Claim Nos. 2, 10-2, 11-2, and 21-1, and eight (8) percent compounded monthly on Claim Nos. 14 and 18.

The Trustee, in an exercise of his business judgment, and in consultation with BSP, determined that the NYC DOF's Claims needed to be paid promptly to end the continued accrual of the statutory interest charge.  Also in consultation with BSP, the Trustee determined to fix and liquidate Claim Nos. 14 and 18, and dismiss the adversary proceeding that had been filed by the Debtor against the NYC DOF.

On August 23, 2022, the Trustee filed on presentment a stipulation and proposed order between the Trustee and the NYC DOF resolving the NYC Tax Claims (the "NYC Tax Stipulation").

On August 30, 2022, the Management Company and the Principals jointly filed an objection to the NYC Tax Stipulation.  Consequently, the various parties negotiated a release provision in the NYC Tax Stipulation in favor of the Principals in connection with their potential liability on account of Claim Nos. 14 and 18  in consideration for the

11

Management Company's turnover of funds constituting Estate Assets that were being held in a PNC Bank account in the Management Company's name.  Accordingly, on September 9, 2022, the Management Company and the Principals withdrew their objection.

On September 12, 2022, the Bankruptcy Court entered the order approving the NYC Tax Stipulation (the "NYC Tax Stipulation and Order").  The NYC Tax Stipulation and Order provided for:

      a.   the disallowance of Claim No. 10-1 and Claim No. 11-1;

      b.   the allowance of Claim No. 10-2 as an Allowed Secured Claim in the amount of $3,603,879.84;

      c.   the allowance of Claim No. 11-2 as an Allowed Administrative Claim for post-petition taxes under  section 503(b)(1) of the Bankruptcy Code in the amount of $735,468.13;

      d.   the allowance of Claim No. 2 as an Allowed Secured Claim in the amount of $113,285.83;

      e.   the disallowance of Claim No. 14;  and

      f.   the allowance of Claim No. 18 in two parts;  (a) first,  as an Allowed Priority Tax Claim plus interest as provided in section 1128(a)(9)(C) of the Bankruptcy Code in the amount of $2,175,105.20 plus additional accruing interest;  and (b) second, as an Allowed General Unsecured Claim in the amount of $692,117.22, subordinated to other Allowed General Unsecured Claims to the extent the priority portion of  the Claim is satisfied under any such plan.

The NYC Tax Stipulation and Order also provided for the dismissal of the adversary proceeding brought against the NYC DOF with prejudice, and the full and final release of the Claim Nos. 2, 10-2, 11-2, and 21-1.

      *(vi)*   *Subsequent Developments*

As described in greater detail above, pursuant to an agreement between the Trustee and the NYC DOF on account of the Allowed Priority Tax Claims held by the NYC DOF not paid prior to the Effective Date arising from hotel and occupancy taxes, the NYC DOF (a) shall be paid $312,050 in Cash on the Effective Date, an amount representing 15% of the outstanding amount of such claims, and (b) with respect to the balance of such claims in the amount of $1,768,286, the NYC DOF shall be receive one or more distributions of Post-Effective Date Available Cash after payment in full in cash of the deferred fees and expenses of the Trustee and the Trustee Professionals.

### C.   The Management Company's Claims

On September 22, 2022, the Management Company filed a Proof of Claim for $9,366,380.96 on account of rejection damages resulting from the Trustee's rejection of the Management Agreement between the Debtor and the Management Company.  At the hearing where the Bankruptcy Court found cause to appoint the Trustee, the Bankruptcy Court stated that the Management Agreement upon which the Management Company now seeks rejection damages appeared to be fraudulent.  The Trustee is in the process of evaluating the Management Company's Claim for rejection damages and will object to the Claim if and when appropriate.  Under the Plan, if and to the extent Allowed, the Proof of Claim (and the Management Company's purported Administrative Claims described below) filed by the Management Company would be classified as a Subordinated Insider Claim.

The Management Company has filed five (5) Administrative Claims seeking an aggregate of $913,256.85, including an Administrative Claim in the amount of $792,505.82 allegedly representing three percent (3%) of the gross revenue from the Hotel's operations for the period March 1, 2021 through May 31, 2022 – which amount the Management Company asserts it is owed under the Management Agreement.  The Plan does not provide for any payment to the Administrative Claims filed by the Management Company and the Trustee expects to file an objection to such claims.  Among other reasons, the estate holds numerous offsets, defenses and claims against the Management Company and its insiders relating to their prepetition and postpetition conduct, the invalidity of the alleged agreements purporting to govern the Management Company's business relationship with the Debtor, and the lack of any benefit to the Debtor and its estate provided by the Management Company postpetition.

### D.   Claims Filed by the Debtor's Professionals and CRO

During the Chapter 11 Case, the Debtor retained the following professionals by order of the Bankruptcy Court:  (a) Mayer Brown LLP ("Mayer Brown"), (b) Backenroth Frankel & Krinsky, LLP ("Backenroth"), (c) GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley"), (d) Fern Flomenhaft PLLC ("Fern Flomenhaft"), (e) Getzler Henrich & Associates LLC and Hilco Real Estate LLC (together, "Getzler Henrich"), and (f) Leitner Berman, Inc. ("Leitner Berman").  The Debtor also engaged Mr. David Goldwasser and his company GC Realty Advisors LLC ("Goldwasser/G.C. Realty") as its chief restructuring officer, which engagement was not approved by order of the Bankruptcy Court.

The foregoing professionals have asserted the following amounts of fees and expenses as of October 31, 2022, subject to a reservation of rights to assert additional amounts accruing after October 31, 2022:

| Firm | Requested Fees | Requested Expenses | Total |
|---|---|---|---|
| Mayer Brown | $6,564,468.40 | $142,846.71 | $6,707,315.11 |
| Backenroth | $216,805.00 | $473.00 | $217,278.00 |

| Firm | Requested Fees | Requested Expenses | Total |
|---|---|---|---|
| Getzler Henrich | $411,930.50 | $29,082.20 | $441,012.70 |
| Leitner Berman | $71,000.00 | $0.00 | $71,000.00 |
| Fern Flomenhaft | $41,242.50 | $488.44 | $41,730.90 |
| B. Riley | $197,572.67 | $615.06 | $198,187.73 |
| Goldwasser/G.C. Realty | $276,852.50 | $0.00 | $276,852.50 |
| Total: | $7,779,871.57 | $173,505.41 | $7,953,376.98 |

The Trustee and BSP have disputed the foregoing requested amounts and questioned whether the Debtor's Estate may hold claims and causes of action against certain of the Debtor's professionals, in addition to the right to seek disallowance of the requested fees and expenses. These allegations are disputed by the Debtor's professionals.

Following negotiations among the Trustee, BSP and certain of the Debtor's professionals, the parties have reached an agreement in principle whereby the Debtor's professionals will reduce their requested fees and expenses by 25%, which, if approved by the Bankruptcy Court, will be paid pro rata from a reserve established on the Effective Date in the amount of $964,463.25, funded with the cash proceeds of the sale of the hotel. Note that neither the Debtor nor BSP has stipulated to the allowance of any claim to Debtor professionals in any amount; rather, the Debtor and BSP have simply agreed not to object to any application for allowance of fees and expenses in amounts up to the reduced amount. The balance of such claims allowed by the Bankruptcy Court will be paid from Post-Effective Date Available Cash, if any, after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses, the deferred portion of the unpaid hotel and occupancy taxes owing to the NYC DOF, and the deferred portion of the BSP senior secured claims. In exchange, the Trustee and BSP have agreed to release certain claims and causes of action against the Debtor's professionals who are parties to this agreement.

The foregoing agreement is subject to further negotiation of definitive documentation, which the Trustee expects to file prior to the Confirmation Hearing. Upon completion of the definitive documentation, the Trustee expects to revise the Plan to incorporate the foregoing releases, effective as of the Effective Date. Absent such agreement, the Plan will not be pursued and the Debtor's professionals will not receive any distribution or releases in this Chapter 11 Case.

### E.   Claims Filed by the Examiner

The Examiner, Mr. Huesbcher has asserted a Professional Fee Claim in the amount of $22,844.50. Mr. Huebscher's counsel, Locke Lord LLP, has likewise asserted a Professional Fee Claim in the amount of $233,477.26. In late December 2022, the

Debtor made a one-time payment to Locke Lord LLP in the amount of $85,000 on account of its asserted Professional Fee Claim, which reduces the amount of such claim.

### F.    Claims Filed by the Receiver

On November 21, 2022, Constantino Sagonas, the Temporary Receiver appointed by Justice Ostrager of the Supreme Court of the State of New York, County of New York to control the Hotel's rents and profits during the pendency of *Benefit Street Partners Operating Partnership, L.P. v. 96 Wythe Acquisition LLC, et al.* (Index no. 653396/2019) (the "Foreclosure Action"), filed a Proof of Claim requesting payment of (1) $15,000.00 in purportedly outstanding Receiver Fees; (2) $45,000.00 of surety-bond fees; (3) $500.00 related to certain information-technology assistance allegedly incurred in responding to certain document requests by Benefit Street in June 2021; (4) $32,890.00 of attorneys' fees purportedly incurred during the period prior to the Petition Date; and (5) $93,668.00 of attorneys' fees purportedly incurred after the Petition Date, all on an administrative-priority basis. The Plan does not provide for any payment to the Administrative Claims filed by Mr. Sagonas and the Trustee expects to file an objection to such claims. The Trustee also expects to commence litigation against the Receiver to recover under the receiver's bond posted by order of the Supreme Court of the State of New York.

### G.    General Unsecured Claims

Total General Unsecured Claims asserted against the Debtor's estate aggregate approximately $9.7 million. Based on the investigations and analyses conducted by the Trustee and his professionals to date, it is currently anticipated that Allowed General Unsecured Claims will not exceed $1 million to $3 million in the aggregate.

## V.    THE PLAN OF LIQUIDATION

**THIS SECTION OF THE DISCLOSURE STATEMENT PRESENTS ONLY A SUMMARY OF THE PLAN OF LIQUIDATION, WHICH IS ATTACHED HERETO AS EXHIBIT A. CREDITORS ARE URGED TO CONSULT WITH COUNSEL IN ORDER TO DETERMINE WHETHER TO VOTE FOR OR AGAINST THE PLAN**.

This Disclosure Statement has been provisionally approved by an order of the Bankruptcy Court dated February [_], 2023 [Dkt No. [__]] as containing information of a kind and in sufficient detail that will enable holders of Claims in Classes 2, 4 and 5 to make an informed decision about the Plan. Accordingly, this Disclosure Statement is being used in connection with the solicitation of acceptances of the Plan from holders of Claims in Classes 2, 4 and 5 entitled to vote thereon.

In order for the Plan to be confirmed, various statutory conditions prescribed by the Bankruptcy Code must be satisfied, including: (a) acceptance of the Plan by at least one impaired Class entitled to vote on the Plan; (b) provision for payment or distribution under the Plan to each creditor of money and/or other property at least equal in value to what that creditor would have received in a Chapter 7 liquidation of the Debtor; (c) a finding by the Bankruptcy Court that the Plan is feasible; and (d) with respect to each Class, either acceptance by that Class or a finding by the Bankruptcy

Court that the Plan is "fair and equitable" and does not "discriminate unfairly" against that Class.

### A.    Who May Vote

Only Classes that are impaired under the Plan are entitled to vote to accept or reject the Plan.  Generally, section 1124 of the Bankruptcy Code provides that a Class of Claims or Interests is considered impaired unless the Allowed amount of all Claims in such Class are paid in full upon consummation of the Plan or a plan does not alter the legal, equitable, and contractual rights of the holder of the Claim or Interest.

The holders of Claims and Interests in Classes 2, 4, 5, 6 and 7 are impaired by the Plan, but only the holders of Claims in Classes 2, 4 and 5 are entitled to vote to accept or reject the Plan.  The Trustee does not anticipate that there will be any value remaining in the Debtor's Estate to make Distributions to holders of Claims in Class 6 or holders of Equity Interests in Class 7 and such holders are, therefore, deemed to conclusively reject the Plan, and are not entitled to vote to accept or reject the Plan.  Thus, only the holders of Claims in Classes 2, 4 and 5 are entitled to vote to accept or reject the Plan.

A creditor is entitled to vote only if either:  (i) its Claim has been scheduled by the Debtor as not disputed, contingent, or unliquidated;  or (ii) it has filed a Proof of Claim on or before the applicable Bar Date as established by the Bankruptcy Court and no objection to such Claim is pending.

ANY HOLDER OF A CLAIM AS TO WHICH AN OBJECTION HAS BEEN FILED AND IS PENDING IS ENTITLED TO VOTE IN RESPECT OF SUCH CLAIM ONLY UP TO THE UNDISPUTED AMOUNT OF SUCH CLAIM, IF ANY, UNLESS THE CREDITOR HAS OBTAINED AN ORDER OF THE BANKRUPTCY COURT TEMPORARILY ALLOWING THE CLAIM FOR THE PURPOSE OF VOTING ON THE PLAN.

### B.    Voting Procedures

*(i)    Solicitation Period*

In order to be counted, a ballot must be RECEIVED at the following address no later than 5:00 p.m. (prevailing Eastern time), on March [__], 2023:

> 96 Wythe Ballot Processing
> c/o Togut, Segal & Segal LLP
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn: Frank A. Oswald, Esq. and Bryan M. Kotliar, Esq.,
>
> Or electronically by email to jgallego@teamtogut.com

(ii)    *Ballots*

A ballot will be sent to each holder of a Claim in Classes 2, 4 and 5 (the only Classes eligible to vote on the Plan), which will serve as the ballot for indicating acceptance or rejection of the Plan pursuant to the requirements of sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018(c).

## C.    Confirmation Hearing

Section 1128 of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan.  The Bankruptcy Court will schedule a hearing on confirmation of the Plan through Zoom for Government (the "Confirmation Hearing").  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan, regardless of whether such party is entitled to vote.

(i)    *Objections to Confirmation*

The Bankruptcy Court has directed that, on or before 5:00 p.m. (prevailing Eastern Time) on March [__], 2023, any objections to the Plan are required to be in writing and filed with the Bankruptcy Court, and a copy served upon the U.S. Trustee and counsel for the Trustee, BSP and the Purchaser.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.  **IF AN OBJECTION TO CONFIRMATION IS NOT TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT**.

(ii)    *Requirements for Confirmation of the Plan*

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(b) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court may enter an order confirming the Plan.  These requirements include the following:

## a.    Best Interests Test

Confirmation of the Plan requires that with respect to each impaired Class of Claims, each holder of an Allowed Claim in such Class has either accepted the Plan or will receive under the Plan property of a value, as of the Effective Date, that is not less than the amount the holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  It is the Trustee's belief that creditors will receive a greater distribution pursuant to the Plan than through a liquidation of the Debtor's Assets under Chapter 7 of the Bankruptcy Code or outside the bankruptcy context in the event the Chapter 11 Case is simply dismissed and not converted.  In this regard, the Trustee believes that the orderly Sale of the Hotel will maximize the value of the Estate.  This, coupled with the BSP Settlement Agreement as well as BSP's additional agreements and concessions described herein, is the foundation of the Plan.  In a Chapter 7 liquidation, the value of the Debtor's Assets would decrease, and the Estate would lose the material benefit of BSP's commitment in the BSP Settlement Agreement

to subordinate its right of payment on account of the BSP Secured Claim by at least the amount represented by the BSP Subordinated Secured Claim (which amount was at least $12.7 million as of August 14, 2022, plus subsequently accruing interest, fees and expenses), but only in the context of the Plan proposed by the Trustee.  Accordingly, the value of the Debtor's Estate available to satisfy Allowed Claims would be significantly less in a Chapter 7 liquidation than under the proposed Chapter 11 Plan.

### b.      Feasibility of the Plan

In order for the Plan to be confirmed, the Bankruptcy Court must determine that it is feasible; *i.e.*, that as a practical matter, there are sufficient resources to meet the obligations under the Plan on a timely basis.

In this regard, as stated above, the funds necessary to effectuate the Plan will be derived from the Gross Sale Proceeds of the Sale.

## VI.   OVERVIEW OF THE PLAN

**THIS SECTION PROVIDES A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS UNDER, ALONG WITH THE STRUCTURE AND MEANS OF IMPLEMENTATION OF, THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND THE EXHIBITS ATTACHED THERETO.**

**THE PLAN ITSELF AND THE DOCUMENTS REFERENCED THEREIN WILL CONTROL THE TREATMENT OF CLAIMANTS AND OTHER PARTIES IN INTEREST UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST THE DEBTOR.   AS INDICATED ABOVE, ANY CAPITALIZED TERMS THAT ARE NOT DEFINED IN THIS SECTION OF THE DISCLOSURE STATEMENT ARE DEFINED IN THE PLAN. IT IS RECOMMENDED THAT ONE REFER TO THOSE DEFINITIONS WHEN READING THIS SECTION.**

### A.      Treatment of Claims Under the Plan

Subject to Section VI(B) hereof, the following describes the Plan's classification of Claims against the Debtor and the treatment that holders of Allowed Claims would receive under the Plan.  The treatment of Claims set forth below is consistent with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

#### (i)     Unclassified Claims

As provided in section 1123(a) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims are not classified for purposes of voting on or receiving Distributions under the Plan.  All such Claims are instead treated separately in accordance with the terms and conditions set forth in Article III of the Plan.

### a.    Administrative Claims

Administrative Claims are not classified under the Plan.  Allowed Administrative Claims are to be paid in full (to the extent not already paid during the Chapter 11 Case), in cash on the later of:  (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) such other date and upon such other terms as may be agreed upon by the holder of such Claim and the Trustee or the Plan Administrator, as the case may be, or as ordered by the Bankruptcy Court.

All requests for payment of Administrative Claims (other than (i) Professional Fee Claims, (ii) Administrative Claims that have been Allowed on or before the Effective Date, or  (iii) Administrative Claims that were subject to the Interim Administrative Bar Date but were not made in writing or timely filed, which are now barred by order of the Court), must be in writing and filed with the Bankruptcy Court and served on the Trustee or the Plan Administrator, as the case may be, BSP and the U.S. Trustee so as to be received by 5:00 p.m. (Eastern Time) on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "Administrative Claims Bar Date").  Such request for payment must include at a minimum:  (A) the name of the holder of the asserted Administrative Claim;  (B) the amount of the Administrative Claim;  (C) the basis of the Administrative Claim;  and (D) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, or recover such Administrative Claim.  Objections to such requests must be filed and served within thirty (30) calendar days after filing of each such request.

On or as soon as reasonably practicable after the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Trustee or Plan Administrator, as applicable, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, cash equal to the unpaid portion of such Allowed Administrative Claim.

### b.    Trustee Fee Claims and Trustee Professional Fee Claims

To the extent not filed prior to the Effective Date, the Trustee and Trustee Professionals shall submit final fee applications seeking approval of all Trustee Fee claims and Trustee Professional Fee Claims by the Bankruptcy Court no later than thirty (30) calendar days after the occurrence of the Effective Date (the "Trustee Claims Bar Date").  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 326, 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

Trustee Professionals shall estimate in good faith their Accrued Professional Compensation rendering services to the Trustee and shall deliver such good faith estimate to the Trustee no later than five (5) Business Days prior to the anticipated

19

Effective Date.  If a Trustee Professional does not provide an estimate, the Trustee shall estimate in good faith the unpaid and unbilled fees and expenses of such Trustee Professional.

No later than Effective Date, the Trustee shall establish and fund the Trustee Fee Escrow with Cash equal to the Trustee Fee Escrow Amount, subject to the agreement of BSP, and no Liens, Claims, or interests shall encumber the Trustee Fee Escrow in any way, other than liens and claims held by BSP securing the BSP Secured Claim and otherwise granted by Order of the Bankruptcy Court.  The Trustee Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the Estate and (y) shall be held in trust for the Trustee and Trustee Professionals; provided, that any funds remaining in the Trustee Fee Escrow after all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims have been irrevocably paid in full shall become Post-Effective Date Available Cash as provided for in this Plan.

Allowed Trustee Fee Claims (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (including the Excess Cash) up to the amount of the Trustee's amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Fee Claims.

Allowed Trustee Professional Fee Claims other than for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (excluding the Excess Cash) up to the amount of such Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

Allowed Trustee Professional Fee Claims for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (including the Excess Cash) up to the amount of such Designated Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Designated Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

The Trustee and/or the Plan Administrator, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

### c.        Priority Tax Claims

Priority Tax Claims are not classified under the Plan.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

Pursuant to an agreement between the Trustee and the NYC DOF, on account of the Allowed Priority Tax Claims held by the NYC DOF not paid prior to the Effective Date, the NYC DOF (a) shall be paid in Cash on the Effective Date in an amount equal to the NYC Priority Initial Tax Claim Payment and (b) with respect to the balance of the NYC Priority Deferred Tax Claim Amount, one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation.

### d.        Settling Debtor Professional Fee Claims

No later than the Effective Date, the Trustee shall establish and fund the Debtor Professional Fee Escrow with Cash equal to the Debtor Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Debtor Professional Fee Escrow in any way, other than liens securing the BSP Secured Claims and as otherwise granted by the Bankruptcy Court.  The Debtor Professional Fee Escrow (including the funds held therein) (x) shall be held in trust for the Settling Debtor Professionals; provided, that any funds remaining in the Debtor Professional Fee Escrow after all Allowed Debtor Professional Fee Claims have been irrevocably paid in full shall become Post-Effective Date Available Cash as provided for in this Plan.

Allowed Settling Debtor Professional Fee Claims (a) shall be paid in Cash from the Settling Debtor Professional Fee Escrow Pro Rata on account of such Settling Debtor Professionals' Reduced Claims (as defined in the Debtor Professional Fee Stipulation) or as otherwise agreed amongst the Settling Debtor Professionals and (b) with respect to the balance of the Settling Debtor Professional Deficiency Claim, shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Settling Debtor Professional Fee Claims after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, and the BSP Senior Secured Claim Deferred Portion.

### (ii)    *Classified Claims*

#### a.        Class 1 – Other Priority Claims

i.        Claims in Class:  Class 1 consists of all Other Priority Claims.

ii.       Treatment:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each holder of an Allowed

Other Priority Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Claim, Cash in an amount equal to such holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.

iii.   Voting:  The Other Priority Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Priority Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Priority Claims.

b.   Class 2 – BSP Senior Secured Claim

i.   Claims in Class:  Class 2 consists of the BSP Senior Secured Claim.

ii.   Treatment:  On or before the Effective Date, at closing of the Sale or otherwise agreed to between the Trustee and BSP without further order of the Court, the Allowed BSP Senior Secured Claim shall receive (a) $88,704,697 in Cash on the Effective Date and (b) one or more Distributions of Post-Effective Date Available Cash in an amount up to, but not to exceed, the BSP Senior Secured Claim Deferred Portion of $5.5 million after payment in full in Cash of the Trustee Deferred Compensation and the NYC Priority Deferred Tax Claim Amount; *provided* that, the balance of the BSP Senior Secured Claim arising under the BSP Settlement Agreement not paid pursuant to Class 2 shall be added to the BSP Subordinated Secured Claim.  The Trustee shall make such Distribution to BSP from the Gross Sale Proceeds and Post-Effective Date Available Cash.

iii.   Voting:  The BSP Senior Secured Claim is impaired under the Plan.  The holder of the BSP Senior Secured Claim is therefore entitled to vote to accept or reject the Plan, and the vote of such holder will be solicited with respect to such Allowed Claim.

22

c.      Class 3 – Other Secured Claims

iv.     Claims in Class:  Class 3 consists of all Other Secured Claims but which, for the avoidance of doubt, excludes the BSP Senior Secured Claim and the BSP Subordinated Secured Claim.

v.      Treatment:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different, less favorable, each holder of an Allowed Other Secured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Other Secured Claim, Cash in an amount equal to the Allowed amount of such Other Secured Claim on the earlier of (x) the Closing Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed. Distributions in satisfaction of Allowed Other Secured Claims shall be made from the Gross Sale Proceeds.  For the avoidance of doubt, the amount of any Allowed Other Secured Claim shall be equal to the value of its collateral and, pursuant to Section 506 of the Bankruptcy Code, any such claimed amount in excess of the value of its collateral shall receive a Distribution as a General Unsecured Claim under Class 4.

vi.     Voting:  The Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

d.      Class 4 – General Unsecured Claims

i.      Claims in Class:   Class 4 consists of all General Unsecured Claims.

ii.     Treatment:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, all such Allowed Claims, each holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed General Unsecured Claim, one or more Distributions of Post-Effective

23

Date Available Cash on a Pro Rata basis after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, and the Debtor Professional Fee Deficiency, in an amount up to, but not to exceed, the Allowed amount of such holder's Other General Unsecured Claim.

iii.    Voting:  The General Unsecured Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed General Unsecured Claims.

e.    Class 5 – BSP Subordinated Secured Claim

i.    Claims in Class:   Class 5 consists of the BSP Subordinated Secured Claim.

ii.    Treatment:  The BSP Subordinated Secured Claim shall be secured by all assets of the Debtor's estate, including cash.  Commencing on the Effective Date and thereafter, the holder of the Allowed BSP Subordinated Secured Claim shall receive one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Amount, the Debtor Professional Fee Deficiency, and Allowed General Unsecured Claims, in an amount up to, but not to exceed, the Allowed amount of such Claim in full and final satisfaction, settlement, and release of, and in exchange for, the Allowed BSP Subordinated Secured Claim.

iii.    Voting:  The BSP Subordinated Secured Claim is impaired under the Plan.  The holder of the BSP Subordinated Secured Claim is therefore entitled to vote to accept or reject the Plan, and the vote of such holder will be solicited with respect to such Allowed Claim.

f.    Class 6 - Subordinated Insider Claims

i.    Claims in Class:  Class 6 consists of all Subordinated Insider Claims.

24

        ii.     Treatment:  Except to the extent that a holder of an Allowed Subordinated Insider Claim agrees to less favorable treatment and <u>only</u> <u>after</u> each Allowed General Unsecured Claim and the Allowed BSP Subordinated Secured Claim have been paid in full or otherwise satisfied in accordance with the terms of this Plan, then each holder of an Allowed Subordinated Insider Claim shall receive one or more Distributions of Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, the Debtor Professional Fee Deficiency, Allowed General Unsecured Claims, and the BSP Subordinated Secured Claim, in an amount up to, but not to exceed, the Allowed amount of such Other Subordinated Insider Claim in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Claim.

        iii.    Voting:  The Subordinated Insider Claims are impaired Claims.  The holders of Subordinated Insider Claims are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Subordinated Insider Claims.

g.    Class 7 - Equity Interests

    i.     Interests in Class:  Class 7 consists of all Equity Interests.

    ii.     Treatment:    Except as provided for herein, the holders of Equity Interests are impaired and, as of the Effective Date, shall retain their Equity Interests in the Debtor and the right to receive any surplus remaining in the Estate after all Allowed Claims have been paid or otherwise resolved and the Chapter 11 Case fully administered and closed.

    iii.    Voting:  Equity Interests are impaired under the Plan, as they are not anticipated to receive any Distribution under the Plan.  Therefore, the holders of Equity Interests are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equity Interests.

25

**B.    Priority of Distribution from BSP Senior Secured Claim and Proceeds of Non-Real Estate Assets**

In order to facilitate confirmation of the Plan, and notwithstanding the foregoing described treatment, Benefit Street has agreed to allow for distribution of amounts owed to it on account of its Senior Secured Claim and Subordinated Secured Claim from proceeds of the Closing of the sale of the hotel and proceeds of non-real estate assets recovered after the Effective Date in the following order of priority:

*Proceeds Disbursed at Closing*: At Closing, BSP will receive $88,704,697 (or such other amount to which BSP and the Trustee have agreed under the Twelfth Interim Cash Collateral Order), with the balance of such Closing proceeds being: (i) escrowed for payment to the Trustee and Trustee professionals on account of accrued and unpaid fees, to be paid pursuant to subsequent Order of the Court; (ii) paid at Closing as transaction costs to parties facilitating closing as required under the Purchase and Sale Agreement approved by the Sale Order; (iii) escrowed in the amount of $150,000 to fund the post-Effective Date litigation trust created by the Plan; and (iv) $964,463.25 escrowed for payment to professionals of the Debtor to pay each such claimant's pro rata share of its Claim (or as otherwise agreed amongst such professionals) once Allowed by the Bankruptcy Court, with the balance of such claim (the "Debtor Professional Deficiency Claim") paid after Closing pursuant to the below waterfall.

*Proceeds Disbursed After Closing.*  After Closing, proceeds of liquidation of non-real estate assets will be distributed on account of Allowed Claims in the following order of priority, unless a different treatment is accepted by any holder of any Claim, the Trustee and BSP:

(i)     *First*, to the Trustee and Trustee professionals for their approved reasonable compensation earned after the Closing of the Sale;

(ii)    *Second,* to the Trustee and Trustee professionals for their amount of agreed compensation deferred but earned prior to the closing of the Sale and as approved by the Court;

(iii)   *Third,* to the balance of allowed priority tax claims owed to the City and State of New York in the amount of $1,768,286;

(iv)    *Fourth,* on account of BSP's Senior Secured Amount, $5.5 million to BSP (with the balance of BSP's Senior Secured Amount being added to BSP's Subordinated Secured Amount) (each such term as defined in the BSP Settlement Agreement);

(v)     *Fifth,* to the Debtor Professionals, *pro rata* (or in such manner as otherwise agreed upon as between the Debtor Professionals) on account of the Debtor Professional Deficiency Claim, and to other professionals retained by the estate to the extent allowed by order of the Court, as agreed between the Trustee, Benefit Street and the relevant professional;

26

(vi)    *Sixth*, to general unsecured creditors on account of allowed general unsecured claims;

(vii)   *Seventh*, to BSP on account of its Subordinated Secured Amount (as defined in the BSP Settlement Agreement, plus additional amounts subordinated as described herein); and

(viii)  *Eighth*, to insiders of the Debtor on account of any of their allowed claims and interests.

## C.    Acceptance or Rejection of The Plan

Class 2 (BSP Secured Claim), Class 4 (General Unsecured Claims) and Class 5 (BSP Subordinated Secured Claim) are the only Classes of Claims of the Debtor that are entitled to vote to accept or reject the Plan. Such Classes shall have accepted the Plan if (a) the holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code. If there are no votes cast in any Class that is entitled to vote on the Plan, then the Plan shall be deemed accepted by such Class. Classes 1 (Other Priority Claims) and 3 (Other Secured Claims) are not impaired. Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan. Classes 6 (Subordinated Insider Claims) and 7 (Equity Interests) are not anticipated to receive any Distributions under the Plan. Therefore, such Classes are deemed to have rejected the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

The Trustee requests Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Trustee reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## D.    Implementation of the Plan

Following the Effective Date, the Plan will be implemented by the Trustee or the Plan Administrator, as the case may be, in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

The Plan is based on the BSP Settlement Agreement entered into between the Trustee and BSP and approved by the Bankruptcy Court. Both the treatment of the BSP

Secured Claim under this Plan and the Sale of the Hotel and related Assets are premised on the BSP Settlement Agreement except as may be modified by the Plan.

The primary source of funding the Distributions and payments required to be made under the Plan shall be the Gross Sale Proceeds generated by the Sale of the Debtor's Hotel and related Assets. Additionally, the net proceeds, if any, resulting from the possible prosecution of claims and causes of action by the Trustee or the Plan Administrator, as the case may be, on behalf of the Debtor's Estate shall serve as an additional source of funding Distributions to holders of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim, the Debtor Professional Deficiency Amount, Allowed Unsecured Claims, and the BSP Subordinated Secured Claim.

The Confirmation Order may provide for the appointment of the Plan Administrator. The compensation of the Plan Administrator shall be as set forth in the Plan Supplement. The Plan Administrator shall be deemed the Estate representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

The Plan Administrator may act for the Debtor's Estate in a fiduciary capacity for the Estate, subject to the provisions of the Plan. On the Effective Date, if appointed, the Plan Administrator shall succeed to all of the rights of the Trustee with respect to the Assets of the Estate. The powers and duties of the Plan Administrator or the Trustee, as the case may be, shall include, without further order of the Bankruptcy Court, except where expressly stated otherwise, the following rights or obligations:

(i)     to take such steps as may be necessary or otherwise desirable to administer and close any and all of the transactions as may be contemplated by the terms of the Sale, the Settlement Agreement or the Plan;

(ii)    to invest Cash and withdraw and make Distributions of Cash to holders of Allowed Claims and to pay taxes and other obligations owed by the Estate or incurred by the Trustee or the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(iii)   to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in connection with administering the Assets;

(iv)    to engage attorneys, consultants, agents, employees, and all professional persons, to assist with respect to the Trustee and/or Plan Administrator's responsibilities;

(v)     to pay the fees and expenses of for the attorneys, consultants, agents, employees, and professional persons engaged by the Trustee and/or the Plan Administrator and

28

to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Estate in accordance with the Plan;

(vi) to satisfy any liabilities, expenses and other Claims incurred by the Trustee and/or Plan Administrator in the ordinary course of business and without further order of the Bankruptcy Court;

(vii) to execute and deliver all documents, and take all actions, necessary to consummate the Plan and close the Chapter 11 Case;

(viii) to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Assets in accordance with the terms of the Plan;

(ix) to oversee compliance with the Estate's accounting, finance, and reporting obligations;

(x) to prepare such periodic reports as may be required by the U.S. Trustee;

(xi) except as otherwise provided for in the Plan, to object to Claims against the Debtor's Estate;

(xii) except as otherwise provided for in the Plan, to compromise and settle Claims against the Debtor's Estate;

(xiii) to implement and/or enforce all provisions of the Plan;

(xiv) to implement and/or enforce all agreements entered into prior to the Effective Date;

(xv) to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(xvi) to investigate, prosecute, settle and collect upon Retained Causes of Action;  and

(xvii) to use such other powers as may be vested in or assumed by the Trustee or the Plan Administrator, as the case may be, pursuant to the Plan or Bankruptcy Court Order or as may be necessary and proper to carry out the provisions of the Plan.

### E.    Preservation of Causes of Action

On and after the Effective Date, the Trustee or the Plan Administrator, as applicable, may pursue on behalf of the Debtor's Estate any Retained Cause of Action in his or her sole discretion. No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Retained Causes of Action against them as any indication that the Trsutee or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against them. The failure of the Trustee to specifically list any claim, right of action, suit, proceeding, or other Retained Cause of Action in this Plan, the Plan Supplement, the Disclosure Statement, or otherwise, does not, and will not, be deemed to constitute a waiver or release by the Trustee or the Plan Administrator, as applicable, of such claim, right of action, suit, proceeding, or other Retained Cause of Action. The Trustee and the Plan Administrator, as applicable, will retain the right to pursue such claims, rights of actions, suits, proceedings, and other Retained Causes of Action in their sole discretion and, therefore, the failure to list a claim, right of action, suit, proceeding, or other Retained Cause of Action shall not result in a limitation of the right to pursue the same on and after the Effective Date based on any preclusion doctrine, including, but not limited to, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches.

### F.    Plan Distributions

The Trustee or the Plan Administrator, as applicable, shall make Distributions to holders of Allowed Claims in accordance with Article III of the Plan on, or as soon as reasonably practicable after, the Effective Date. From time to time, the Trustee or Plan Administrator, as applicable, shall make Pro Rata Distributions to holders of Allowed Claims in accordance with Article III of the Plan.

Notwithstanding Section 6.1(a) of the Plan, subject to the Cash Collateral Order, the Trustee or Plan Administrator, as applicable, may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Assets of the Estate during the winding up and closing of the Chapter 11 Case, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Trustee and/or the Plan Administrator and the fees, costs and expenses of all professionals retained by the Trustee and/or the Plan Administrator, and any taxes imposed in respect of the Assets), (iii) to satisfy other liabilities to which the Assets are otherwise subject, in accordance with the Plan, and (iv) to establish any necessary reserve. All Distributions to the holders of Allowed Claims shall be made in accordance with the Plan. The Trustee or the Plan Administrator, as applicable, may withhold from amounts distributable to any Person any and all amounts determined in the Trustee or the Plan Administrator's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Holders of Allowed Claims shall, as a condition to receiving Distributions, provide such information and take such steps as the Trustee or the Plan Administrator, as applicable, may reasonably require to ensure compliance with withholding and reporting requirements and to enable them to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law. In the event that a holder of an Allowed Claim does not comply with the Trustee or the Plan Administrator's requests in the preceding sentence within thirty (30) calendar days, no

30

Distribution shall be made on account of such Allowed Claim, such holder shall have forfeited its right to Distributions under the Plan, and the Trustee or the Plan Administrator, as applicable, shall reallocate such Distribution for the benefit of all other holders of Allowed Claims as the case maybe, in accordance with the Plan.

       (i)     *Address for Delivery of Distributions and Forfeiture of Claims*

If any Distribution is returned to the Trustee or Plan Administrator as undeliverable, no Distributions shall be made to such holder unless the Trustee or Plan Administrator is notified of such holder's then current address within sixty (60) calendar days after such Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distributions shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan. Moreover, any holder of a Claim who has not filled out and returned documents to the Trustee or Plan Administrator necessary to receive a Distribution (such as a signed form W-9, if applicable) shall forfeit its Claim and accompanying Distribution if such holder fails to fill out and return such documents within thirty (30) days after notice by the Trustee or Plan Administrator.

       (ii)    *Distributions under Twenty-Five Dollars*

Neither the Trustee nor the Plan Administrator, as applicable, will be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Trustee or the Plan Administrator, as applicable, on or before twenty (20) days after the Effective Date. Any such Distributions not subject to a timely request for payment shall be distributed to the other holders of Allowed Claims in accordance with the provisions of the Plan.

       (iii)   *Time Bar to Cash Payments*

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check must be made directly to the Trustee or the Plan Administrator, as applicable, by the holder of the Allowed Claim to whom such check was originally issued within one hundred eighty (180) days of the date of issuance thereof. If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those holders of Allowed Claims set forth in the Plan.

       (iv)   *Distributions to Holders as of the Confirmation Date*

As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. Neither the Trustee or the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan) with only those holders of record as of the close of business on the Confirmation Date.

*(v)     Abandoned Assets*

The Plan Administrator may abandon any Assets, which book value shall not exceed $10,000, without the need for additional approval of the Bankruptcy Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate and will instead be deemed to revert to the Post-Effective Date Debtor.

## G.     Wind-Up

The Trustee or the Plan Administrator, as applicable, may seek to close the Chapter 11 Case and be discharged at such time as (i) all of the Assets have been distributed pursuant to the Plan, (ii) the Trustee or the Plan Administrator, as the case may be, determines, in his or her sole discretion, that the administration of any remaining Assets is not likely to yield sufficient additional Post-Effective Date Available Cash to justify further pursuit, or (iii) all Distributions required to be made by the Trustee or the Plan Administrator, as applicable, under the Plan have been made.  If at any time the Trustee or the Plan Administrator, as applicable, determines in reliance upon such professionals as they may retain that the expense of administering the Plan and the Debtor's Estate so as to make a final Distribution to holders of Allowed Unsecured Claims is likely to exceed the value of the Assets remaining in the Estate, the Trustee or the Plan Administrator may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to seek and obtain an Order of the Bankruptcy Court closing the Chapter 11 Case and discharging the Trustee and/or the Plan Administrator, (y) transfer the balance to BSP in account of its Senior Secured Claim or Subordinate Secured Claim, as applicable.

Any Distribution of Assets (Cash or otherwise) provided for under the Plan which is unclaimed after ninety (90) days following such Distribution shall irrevocably revert to the Estate for re-Distribution in accordance with the Plan.

## H.     Distributions on Disputed Claims

*(i)     No Distributions Pending Allowance.*

Notwithstanding any provision to the contrary in the Plan, and except as otherwise agreed by the relevant parties, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

*(ii)     Special Rules for Distributions to Holders of Disputed Claims.*

All Distributions made pursuant to the Plan on account of a Disputed Claim that is later deemed an Allowed Claim by the Bankruptcy Court shall be made together with any other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to holders of Allowed Claims included in the

applicable Class (or holders of unclassified Claims, as applicable);  provided, however, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law.

### I.    Conditions to the Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)    the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)    the Trustee Fee Escrow shall have been funded with the Trustee Fee Escrow Amount, and the Settling Debtor Professional Fee Escrow shall have been funded with the Settling Debtor Professional Fee Escrow Amount;

(c)    the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(d)    the Sale shall have closed;

(e)    the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(f)    all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;  and

(g)    all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

### J.    Waiver of Conditions Precedent

Each of the conditions precedent to the Effective Date may be waived only if waived in writing by the Trustee and BSP to the extent required by the Settlement Agreement, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

### K.    Procedures for Disputed Claims

*(i)    Allowance of Claims*

After the Effective Date, the Trustee and the Plan Administrator, as the case may be, shall have and retain any and all rights and defenses the Debtor and/or its Estate had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

*(ii)    Objections to Claims*

(a)    Authority.  The Trustee or the Plan Administrator, as applicable, or any party in interest shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Trustee or the Plan Administrator, as applicable, unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)    Amendments to Claims.  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Trustee or the Plan Administrator, as applicable, unless the holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)    Objection Deadline.  As soon as practicable, but no later than the Claims Objection Deadline, the Trustee or the Plan Administrator, as applicable, may file objections with the Bankruptcy Court and serve such objections on the holders of the Claims to which such objections are made.  Nothing contained in the Plan is intended to limit the right of the Trustee or the Plan Administrator, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon the filing of a notice by the Trustee or the Plan Administrator, as applicable.

(iii)    *Estimation of Disputed Claims*

For purposes of calculating and making Distributions and establishing reserves under the Plan, the Trustee or the Plan Administrator, as applicable, may at any time after the Confirmation Date in good faith request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Trustee of the Plan Administrator previously objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trustee or the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**L.    Resolution of Claims.**

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Trustee or the Plan Administrator, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith.  The Trustee or the Plan Administrator, as the case may be, or their respective successors may pursue Retained Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Estate and Creditors.

**M.    Disallowed Claims**

All Claims held by persons or entities against whom the Debtor or the have commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed Disallowed pursuant to this Section 8.5 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Trustee or the Plan Administrator on behalf of the Estate from such party have been paid.

### N.     Treatment of Executory Contracts

Rejection: Except as may otherwise be provided in the Plan, on the Effective Date, all Executory Contracts shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract:  (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); (b) is the subject of a motion to assume filed on or before the Effective Date;  or (c) has expired or terminated pursuant to its own terms.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described herein as of the Effective Date.  Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts in the Plan will be effective as of the Effective Date.  Each Executory Contract assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Trustee on behalf of the Debtors Estate, or the assignee, in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.  For the avoidance of doubt, any Executory Contracts assumed and assigned to the Purchaser (or its designee) in connection with the Sale and as approved by the Sale Order shall not be affected by the Plan and/or the Confirmation Order.

Claims for Rejection: Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts pursuant to the Plan must be filed no later than the applicable Bar Date.  Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts that are not timely filed by the applicable Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor's Estate, the Trustee or the Plan Administrator without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

### O.     Exculpation and Limitation of Liability

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE PLAN ADMINISTRATOR AGREEMENT, THE PLAN SUPPLEMENT, THE BSP SETTLEMENT AGREEMENT, THE SALE, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF

THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN.  NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE DOES NOT EXCULPATE ANY OF THE EXCULPATED PARTIES' POST-EFFECTIVE DATE OBLIGATIONS UNDER THE PLAN, THE BSP SETTLEMENT AGREEMENT, THE SALE ORDER, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING, BUT NOT LIMITED TO, THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

### P.    Release of BSP

Pursuant to the Plan, in consideration of the BSP Settlement Agreement, the Sale and the treatment of its Allowed Secured Claim as provided herein and other good and valuable consideration given by BSP to the Trustee as it relates to the Debtor's Estate, the Trustee, on behalf of himself (in his capacity as Chapter 11 trustee for the Debtor's Estate), the Debtor and the Debtor's Estate (collectively, the "Releasors"), each hereby waives, remises, releases and forever discharges BSP, its predecessors, successors, assigns, affiliates, shareholders, partners, members, managers, directors, officers, accountants, attorneys, employees, agents, representatives and servants of, from and against any and all claims, actions, causes of action, suits, proceedings, defenses, counterclaims, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity or otherwise, which any of the Releasors ever had or now has for or by reason of any matter, cause or anything whatsoever to the Effective Date relating to or arising out of any of the Adversary Proceeding, the Loan, the Assets, the Chapter 11 Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of BSP with respect thereto, or the enforcement of any of BSP's rights or remedies with respect to the Debtor, the Debtor's Estate, the Insiders or any other person or entity with respect to the Loan.  Any capitalized terms used in this Section 10.3 not otherwise defined in the Plan shall have the meanings ascribed to them in the BSP Settlement Agreement.

### Q.    Release of and by Debtor Professionals

The releases set forth in paragraphs 7 and 8 of the *Stipulation and Order by and between the Chapter 11 Trustee, Benefit Street Partners Realty Operating Partnership, and the Debtor's Professionals*, by and among the Trustee, BSP and certain of the Debtor's professionals are hereby incorporated into the Plan and restated as of the Effective Date pursuant to the Confirmation Order.

37

### R.    No Release of Insiders

For the avoidance of doubt, nothing set forth herein, and no action taken by the Trustee or BSP in regard to implementation of the same, are intended to and shall not serve to release any claims against Toby Moskovits, Michael Lichtenstein, their affiliated entities and professionals (except in regards to releases by and among certain Debtor professionals, as expressly agreed to by BSP and the Trustee and approved by the Court), any of the Debtor's other insiders (as such term is defined in 11 U.S.C. § 101(31)), the Williamsburg Hotel BK LLC, the Debtor's prepetition receiver, Constantino Segonas and his affiliated entities and professionals, or any transferees (including subsequent transferees) of avoidable transfers made by any of the foregoing.

### S.    No Discharge

Because the Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

### VII.    TAX CONSEQUENCES OF THE PLAN

Given both the complexity of federal, state, local, and foreign tax laws and the interplay between those tax laws and the Bankruptcy Code, each holder of a Claim or Interest should consult with its own tax advisor as to the specific tax consequences to such holder of the confirmation and implementation of the Plan, including the application and effect of federal, state, local, and foreign tax laws.  The Trustee and his attorneys and other advisors make no representations as to the tax consequences of the Plan.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS IN CIRCULAR 230, YOU ARE HEREBY INFORMED THAT (I) ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE IRC AND (II) THE ADVICE IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED IN THE DISCLOSURE STATEMENT.

### VIII.    RISK FACTORS

HOLDERS OF ALL CLASSES OF CLAIMS AND INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.

### A.      Risk of Non-Confirmation of the Plan

Although the Trustee believes that the Plan will satisfy all requirements necessary for Confirmation by the Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  There can also be no assurance that modifications of the Plan will not be required for Confirmation, that any negotiations regarding such modifications would not adversely affect the holders of the Allowed Claims or that any such modifications would not necessitate the re-solicitation of votes.

### B.      Nonconsensual Confirmation

In the event any impaired class of claims does not accept a plan of reorganization or liquidation, a bankruptcy court may nevertheless confirm such plan of reorganization or liquidation at the proponent's request if at least one impaired class has accepted the plan of reorganization (with such acceptance being determined without including the acceptance of any "insider" in such class) and, as to each impaired class that has not accepted the plan of reorganization or liquidation, the Bankruptcy Court determines that the plan of reorganization or liquidation "does not discriminate unfairly" and is "fair and equitable" with respect to non-accepting impaired classes.  Consequently, in the event that any Impaired Class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Trustee reserves the right to request nonconsensual Confirmation of the Plan in accordance with section 1129(b) of the Bankruptcy Code.

### C.      Risk that Conditions to Effectiveness Will Not Be Satisfied

Article X of the Plan contains certain conditions precedent to the effectiveness of the Plan.  There can be no assurances that the conditions contained in Article X of the Plan will be satisfied.  In particular, there is a risk that the conditions precedent to closing the Sale set forth in the Purchase Agreement are not satisfied and that the Sale does not close.

In addition, as described herein, whether the Plan can go effective requires that the Bankruptcy Court disallow or, in the alternative, estimate at zero for purposes of distribution, certain administrative expense claims that have been asserted against the Debtor's Estate.  If the Bankruptcy Court ultimately allows such claims at amounts greater than zero, there is a risk that the proceeds of the Sale will not be sufficient to satisfy the Allowed BSP Senior Secured Claim, Allowed Administrative Claims and Allowed Priority Claims and otherwise establish and fund the requisite reserves under the Plan necessary for the Effective Date to occur.  In such a case, the Trustee may seek to withdraw the Plan and close the Sale pursuant to section 363 of the Bankruptcy Code outside of the Plan as permitted by the Bankruptcy Court.

### D.      There May Not Be Recoveries for the Holders of Allowed General Unsecured Claims and the Allowed BSP Subordinated Secured Claim

The potential recovery to holders of Allowed Claims in Classes 2, 4 and 5 depends on, among other things, the proceeds, if any, generated by pursuit of the Retained Causes of Action by the Trustee or the Plan Administrator, as applicable.

Accordingly, the Trustee is unable at this time to project or estimate the level of recoveries, if any, holders of the Allowed BSP Senior Secured Claim in Class 2, the holders of Allowed General Unsecured Claims in Class 4, or the holder of the Allowed BSP Subordinated Secured Claim in Class will receive under the Plan.

### E.   Recoveries on Account of Retained Causes of Action are Speculative and Uncertain

The ultimate recoveries, if any, that could be obtained by the Trustee or the Plan Administrator, as applicable, on behalf of holders of General Unsecured Claims is partially contingent on the Retained Causes of Action.  Recoveries on account of any of the Retained Causes of Action are speculative and uncertain due to the risk of success on the merits and the potential difficulties of collection and enforcement of any judgments.

### F.   Risk of Delayed Effective Date

There can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).  Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.  If the Plan is not consummated, there can be no assurance that the Chapter 11 Case would not be converted to a Chapter 7 liquidation case or that any alternative Chapter 11 plan would be as favorable to holders of General Unsecured Claims as the current Plan.  Either outcome may materially reduce or eliminate distributions to holders of Allowed General Unsecured Claims.

### G.   No Representations Outside This Disclosure Statement Are Authorized

No representations concerning or related to the Debtor's Estate, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

## IX.   ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF REJECTION

Among the possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan are the following: (1) an alternative plan could be proposed or confirmed; or (2) the Chapter 11 Case could be converted to liquidation case under Chapter 7 of the Bankruptcy Code.

### A.   Alternative Plans

As previously mentioned, with respect to an alternative plan, the Trustee and his professional advisors have explored various alternative scenarios and believe that the Plan enables the holders of Claims to realize the maximum recovery under the circumstances.  The Trustee believes the Plan is the best plan that can be proposed and serves the best interests of the Estate and other parties-in-interest.

## B.        Chapter 7 Liquidation

The alternative to the Plan would be a conversion of the Debtor's case from Chapter 11 to Chapter 7.  However, as stated above and explained below, liquidation under Chapter 7 would result in a significant reduction in value given the state of the current hospitality market, and an additional layer of administrative expenses, including Chapter 7 trustee commissions and fees for professionals retained by the Chapter 7 trustee, such as attorneys, accountants, and brokers.  Pursuant to the provisions of the Bankruptcy Code, these commissions and fees are required to be paid prior to Allowed General Unsecured Claims.

As discussed above with respect to the BSP Senior Secured Claim in Class 2, the General Unsecured Claims in Class 4 and the BSP Subordinated Secured Claim in Class 5, either each holder of a Claim in such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.  The Trustee believes that, in addition to significant additional costs and possible claims that may be incurred by the Debtor's Estate, there may be a corresponding diminution in value of the Estate's principal asset (the Hotel), all as a result of the delay and additional expense that would be caused by conversion of the case to a case under Chapter 7.  If this were to occur, the Trustee believes it could result in significantly reduced Distributions, if any, to holders of Class 2, 4 and 5 Claims.

Based on the anticipated decrease in the value of the Debtor's Assets in Chapter 7, the significant increase in the amount of Administrative Claims which would result from a conversion to Chapter 7, and loss of the material benefit resulting from BSP's agreement in the BSP Settlement Agreement to subordinate is right of payment on account of the BSP Secured Claim by at least $12.7 million (the BSP Subordinated Secured Claim amount as of August 14, 2022), but only in the context of the Plan proposed by the Trustee, the value of the Debtor's Estate available to satisfy Allowed General Unsecured Claims will be significantly less in a forced liquidation under Chapter 7 than under the instant Plan proposed by the Trustee.

Accordingly, the Trustee believes that his Plan provides holders of Claims with the best chance of receiving a greater distribution on account of their respective Allowed Claims.

## C.        No Limitation on Enforcement by SEC or the U.S. Attorney's Office

Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

## X.    RECOMMENDATION AND CONCLUSION

The Trustee believes that the Plan provides for the fair and equitable treatment to creditors and therefore recommends that holders of eligible Allowed Claims in Classes 2, 4 and 5 vote to accept the Plan.

Date:  February 14, 2023
       New York, New York

**STEPHEN S. GRAY, not individually but solely in his capacity as Trustee**

By: /s/ *Stephen S. Gray*
       Stephen S. Gray

**TOGUT, SEGAL & SEGAL LLP**
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Frank A. Oswald
Bryan M. Kotliar

*Counsel to Stephen S. Gray,*
*not individually, but solely in*
*his capacity as Chapter 11 Trustee*

**<u>EXHIBIT A</u>**

**CHAPTER 11 PLAN**

**(to be attached separately)**

**<u>EXHIBIT B</u>**

**BSP SETTLEMENT AGREEMENT ORDER**

**(to be attached separately)**

## EXHIBIT C

## SALE ORDER

**(to be attached separately)**

## EXHIBIT D

**Redlined First Amended Disclosure Statement**

> **THIS IS NOT A SOLICITATION OF ACCEPTANCES OF THE CHAPTER 11 PLAN FOR THE BANKRUPTCY ESTATE OF 96 WYTHE ACQUISITION LLC IN THIS CHAPTER 11 CASE. ACCEPTANCES MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AND IS SUBJECT TO AMENDMENT PRIOR TO SUCH APPROVAL BEING GRANTED.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| 96 WYTHE ACQUISITION LLC, | Case No.: 21-22108 (SHL) |
| Debtor. |  |

**FIRST AMENDED DISCLOSURE STATEMENT**
**RELATING TO THE FIRST AMENDED CHAPTER 11**
**PLAN OF**
**LIQUIDATION FOR THE BANKRUPTCY ESTATE OF**
**96 WYTHE ACQUISITION LLC, AS PROPOSED BY THE CHAPTER 11 TRUSTEE**

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Neil Berger
Frank A. Oswald
Bryan Kotliar
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

*Counsel to Stephen S. Gray,*
*not individually, but solely in*
*his capacity as Chapter 11 Trustee*

Dated: December 2, 2022February 14, 2023
    New York, New York

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY ................................................................1

    A.      Executive Summary ..............................................................................1

    B.      Overview of Chapter 11 ........................................................................2

II.     HISTORY OF THE DEBTOR AND THE BANKRUPTCY FILING ........................2

    A.      History of the Debtor and Description of the Debtor's Business ...........................2

    B.      Loan Background ..................................................................................2

    C.      Disputes with BSP and State Court Litigation ........................................3

    D.      Description of Debtor's Assets and Management ....................................3

III.    POST-PETITION DEVELOPMENTS ..............................................................4

    D.      The NYC Tax Settlement ......................................................................7

    E.      The Administrative Claims Bar Date ....................................................11

IV.     CLAIMS ..................................................................................................11

    F.      General Unsecured Claims ..................................................................13

V.      THE PLAN OF LIQUIDATION ....................................................................13

    A.      Who May Vote ....................................................................................13

    B.      Voting Procedures ..............................................................................14

        (i)      Solicitation Period ....................................................................14

        (ii)     Ballots ....................................................................................14

    C.      Confirmation of the Plan ....................................................................14

    D       Confirmation Hearing ........................................................................15

        (i)      Objections to Confirmation ........................................................15

        (ii)     Requirements for Confirmation of the Plan ................................15

VI.     OVERVIEW OF THE PLAN ........................................................................16

    A.      Treatment of Claims Under the Plan ....................................................16

B.    Acceptance or Rejection of The Plan .................................................................. 22

C.    Implementation of the Plan .............................................................................. 23

D.    Preservation of Causes of Action ....................................................................... 25

E.    Plan Distributions ........................................................................................... 25

F.    Wind-Up ........................................................................................................ 26

G.    Distributions on Disputed Claims ..................................................................... 27

H.    Conditions to the Effective Date ....................................................................... 28

I.    Waiver of Conditions Precedent ......................................................................... 28

J.    Procedures for Disputed Claims ......................................................................... 29

K.    Resolution of Claims ....................................................................................... 30

L.    Treatment of Executory Contracts ..................................................................... 30

M.    Exculpation and Limitation of Liability ............................................................. 31

N.    Release of BSP ............................................................................................... 32

O.    No Discharge ................................................................................................. 32

VII.    TAX CONSEQUENCES OF THE PLAN ................................................................. 32

VIII.    RISK FACTORS .................................................................................................. 33

A.    Risk of Non-Confirmation of the Plan ............................................................... 33

B.    Nonconsensual Confirmation ........................................................................... 33

C.    Risk that Conditions to Effectiveness Will Not Be Satisfied ................................ 33

D.    There May Not Be Recoveries for Holders of Allowed General Unsecured
Claims .......................................................................................................... 34

E.    Recoveries on Account of Retained Causes of Action are Speculative and
Uncertain ...................................................................................................... 34

F.    Risk of Delayed Effective Date ......................................................................... 34

G.    No Representations Outside This Disclosure Statement Are Authorized .............. 34

IX.    ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF
REJECTION .......................................................................................................... 34

A.       Alternative Plans.................................................................................35

B.       Chapter 7 Liquidation.........................................................................35

C.       No Limitation on Enforcement by SEC or the U.S. Attorney's Office................36

X.     RECOMMENDATION AND CONCLUSION .........................................................36

I. .......................................................................................INTRODUCTION AND SUMMARY ...............................................................................................................1

    A.      Executive Summary.................................................................................2

    B.      Overview of Chapter 11........................................................................4

II.        HISTORY OF THE DEBTOR AND THE BANKRUPTCY FILING ......................5

    A.      History of the Debtor and Description of the Debtor's Business .................5

    B.      Loan Background..................................................................................5

    C.      Disputes with BSP and State Court Litigation .......................................6

    D.      Description of Debtor's Assets and Management ...................................6

III.      POST-PETITION DEVELOPMENTS.............................................................6

    A.      The Appointment of the Examiner and the Trustee..............................6

    B.      The BSP Settlement Agreement...........................................................7

    C.      The Sale...............................................................................................8

IV.      CLAIMS......................................................................................................10

    A.      BSP Secured Claim ...........................................................................10

    B.      The NYC Tax Settlement....................................................................12

            (i)      The Real Estate Tax Claims ...............................................12

            (ii)     Hotel Claims .....................................................................13

            (iii)    Water Board Claim ............................................................13

            (iv)   Tax Adversary Proceeding .................................................13

            (v)     NYC Tax Stipulation .........................................................14

            (vi)   Subsequent Developments .................................................15

    C.      The Management Company's Claims ..................................................15

    D.      Claims Filed by the Debtor's Professionals and CRO ...........................18

    E.      Claims Filed by the Examiner ............................................................19

    F.      Claims Filed by the Receiver ..............................................................19

    G.      General Unsecured Claims ..................................................................19

V.       THE PLAN OF LIQUIDATION ..................................................................19

A.      Who May Vote ................................................................................20

B.      Voting Procedures ..........................................................................21

         (i)      Solicitation Period ............................................................21

         (ii)     Ballots ..............................................................................21

C.      Confirmation Hearing ....................................................................21

         (i)      Objections to Confirmation ..............................................21

         (ii)     Requirements for Confirmation of the Plan.....................22

VI.    OVERVIEW OF THE PLAN .......................................................................22

A.      Treatment of Claims Under the Plan ..............................................23

B.      Priority of Distribution from BSP Senior Secured Claim and
         Proceeds of Non-Real Estate Assets...............................................31

C.      Acceptance or Rejection of The Plan ..............................................32

D.      Implementation of the Plan .............................................................33

E.      Preservation of Causes of Action ...................................................35

F.      Plan Distributions ...........................................................................35

         (i)      Address for Delivery of Distributions and Forfeiture of
                  Claims ...............................................................................36

         (ii)     Distributions under Twenty-Five Dollars .........................36

         (iii)    Time Bar to Cash Payments ..............................................37

         (iv)     Distributions to Holders as of the Confirmation Date ......37

         (v)      Abandoned Assets..............................................................37

G.      Wind-Up ...........................................................................................37

H.      Distributions on Disputed Claims ...................................................38

         (i)      No Distributions Pending Allowance.................................38

         (ii)     Special Rules for Distributions to Holders of Disputed
                  Claims................................................................................38

I.       Conditions to the Effective Date.....................................................38

J.       Waiver of Conditions Precedent ......................................................39

K.      Procedures for Disputed Claims .....................................................39

         (i)      Allowance of Claims .........................................................39

        (ii)     Objections to Claims............................................................40

        (iii)    Estimation of Disputed Claims...........................................40

L.     Resolution of Claims. ................................................................41

M.    Disallowed Claims.....................................................................41

N.     Treatment of Executory Contracts ............................................41

O.     Exculpation and Limitation of Liability ...................................42

P.     Release of BSP ..........................................................................43

Q.    Release of and by Debtor Professionals....................................43

R.     No Release of Insiders...............................................................43

S.     No Discharge .............................................................................44

VII.    TAX CONSEQUENCES OF THE PLAN ..................................................44

VIII.   RISK FACTORS.........................................................................................44

A.     Risk of Non-Confirmation of the Plan......................................44

B.     Nonconsensual Confirmation....................................................45

C.     Risk that Conditions to Effectiveness Will Not Be Satisfied.......45

D.    There May Not Be Recoveries for the Holders of Allowed General
        Unsecured Claims and the Allowed BSP Subordinated Secured
        Claim .........................................................................................45

E.     Recoveries on Account of Retained Causes of Action are
        Speculative and Uncertain ........................................................46

F.     Risk of Delayed Effective Date ................................................46

G.     No Representations Outside This Disclosure Statement Are
        Authorized.................................................................................46

IX.     ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF
      REJECTION ...............................................................................................46

A.     Alternative Plans.......................................................................46

B.     Chapter 7 Liquidation ...............................................................46

C.     No Limitation on Enforcement by SEC or the U.S. Attorney's Office .......47

X.      RECOMMENDATION AND CONCLUSION ...........................................47

**EXHIBITS**

EXHIBIT A            Chapter 11 Plan

EXHIBIT B            BSP Settlement Agreement

EXHIBIT C            Bidding Procedures            Sale Order

## I.    INTRODUCTION AND SUMMARY

A.——Executive Summary

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of 96 Wythe Acquisition LLC (the "Debtor"), submits this first amended Disclosure Statement to holders of Claims against the Debtor's Estate entitled to vote on the first amended Chapter 11 plan of liquidation proposed by the Trustee, a copy of which is attached hereto as **Exhibit A** (as it may be further amended, supplemented, or otherwise modified from time to time, the "Plan").[1]

The Plan is based upon the BSP Settlement Agreement and provides for the Distribution to holders of Allowed Claims of all Available Cash, consisting of the aggregate net proceeds of the Estate's Assets, including  proceeds of Retained Causes of Action, after taking into account payments necessary to satisfy Allowed Administrative Claims and Priority Claims for the Plan to go effective.  Whether the Debtor obtains sufficient cash for the Plan to go effective depends upon the amount of the proceeds of the Sale as described in Part VI below.  The Trustee believes that the Estate holds colorable claims and causes of action with respect to certain of the Debtor's Professional Persons and that the fees and expenses requested by such Professional Persons may be subject to disallowance by the Bankruptcy Court.  **In the event the Debtor lacks sufficient cash to make the payments to Allowed Administrative Claims and Allowed Priority Claims necessary for the Plan to go effective, the Trustee may withdraw the Plan and seek to close the proposed Sale on a standalone basis pursuant to section 363 of the Bankruptcy Code and as approved by the Bankruptcy Court.**

The purpose of this Disclosure Statement is to provide holders of Claims in ClassesClass 2 (BSP Senior Secured Claim), Class 4 and(General Unsecured Claims), and Class 5 (BSP Subordinated Secured Claim) entitled to vote on the Plan with adequate information to make an informed judgment as to whether to vote to accept or reject the Plan.  The Trustee is providing you with the information in this Disclosure Statement because you may be a creditor entitled to vote on the Plan.  This Disclosure Statement is to be used solely in connection with evaluation of the Plan and not for any other purposes.

To be counted, your Ballot must be duly completed, executed, and <u>actually received</u> by 5:00 p.m. (Eastern Time) on January [__],[_____], 2023 (the "Voting Deadline").  Ballots may be **delivered by either (a) United States Mail or (b) overnight or same day courier service to the attention of:  96 Wythe Ballot Processing, c/o Togut Segal & Segal LLP, One Penn Plaza, Suite 3335, New York, NY 10119 (Attention: Frank A. Oswald, Esq. and Bryan Kotliar, Esq.).), or (c) via email to jgallego@teamtogut.com.**

TheFor the reasons set forth herein, the Trustee believes that the Plan is in the

---

[1]    Capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan.

best interests of creditors and other stakeholders and is a fair means of moving this Chapter 11 Case towards an efficient resolution. All creditors entitled to vote on the Plan are urged to vote in favor of it.

The Trustee reserves the right to supplement this Disclosure Statement and provide additional information to creditors entitled to vote on the Plan and other parties in interest prior to the Voting Deadline.

## A.    Executive Summary

Following an extensive marketing and auction process, the Bankruptcy Court has approved the Trustee's sale of substantially all of the Debtor's assets, including the Hotel, to the Purchaser for an aggregate sale price of $96 million. The closing of the Sale is subject to certain conditions precedent and is expected to occur on or before March 31, 2023. All of the proceeds of the Sale are subject to the liens and claims of BSP, the Debtor's senior secured lender, which the Bankruptcy Court approved in the amount of no less than $108,688,786.76 (as of August 14, 2022, plus additional accruing interest, fees, and other charges). Thus, absent an agreement with Benefit Street Partners Realty Operating Partnership, LP ("BSP"), the Debtor's senior secured mortgage lender, there would be no sale proceeds available to pay any amounts necessary to confirm a chapter 11 plan, such as administrative claims and priority claims, or any funding to pursue additional recoveries for the benefit of creditors on account of estate claims and causes of action against third parties.

Following extensive arm's length negotiations between the Trustee and his advisors and BSP and its advisors, BSP has agreed to carve-out from its liens and claims a substantial amount of the sale proceeds to provide for sufficient funding to confirm this chapter 11 plan, subject to the agreements and deferrals described below reached with certain administrative and priority creditors.

The Plan provides that upon the Effective Date of the Plan and consummation of the Sale, the Trustee will (a) distribute a portion of the Sale proceeds to BSP on account its senior secured claims and pay (or reserve for) certain administrative expenses and priority claims and (b) use the remainder of the sale proceeds consisting of $150,000 to fund a reserve that will be used by the post-Effective Date Estate representative to pursue recoveries on account of claims and causes of action not released under the Plan. To accomplish this result, the Plan contains several agreements regarding the deferral of certain administrative and other claims that would otherwise be necessary to pay in cash (or reserve) on the Effective Date of the Plan to the extent allowed by the Court:

- The Trustee and the Trustee Professionals have agreed to receive payment of a portion of their allowed fees and expenses in the amount of $4,660,650 from the Sale proceeds and defer a substantial portion of their fees and expenses in the amount of $1,900,109 (subject to certain adjustments for certain professionals depending upon the operation of the Hotel prior to

the Effective Date) to recovery from Post-Effective Date Available Cash[2] (*i.e.*, the post-Effective Date recoveries on account of claims and causes of action belonging to the estate, net of the post-Effective Date costs).[3]

- The NYC DOF has agreed that its Allowed Priority Tax Claims on account of unpaid hotel occupancy taxes will be paid 15% in cash on the Effective Date of the Plan (which equates to $312,050) with the balance of such claims in the amount of $1,768,286 to be paid from Post-Effective Date Available Cash after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses described in the first bullet above.

- During the Chapter 11 Case, BSP previously agreed to subordinate a substantial portion of its allowed claims in the amount of at least $12.7 million (as of August 14, 2022, plus additional accruing interest, fees, and other charges) to General Unsecured Claims.  In light of the insufficiency of Sale proceeds to pay its Senior Secured Claim in full as required, BSP has further agreed to (a) reduce the amount of its Senior Secured Claim payable on the Effective Date to $88,704,697 and (b) defer a substantial portion of the recovery otherwise available to it on account of its Senior Secured Claim in the amount of $5.5 million to be paid from Post-Effective Date Available Cash after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses and the deferred

---

[2]   "Post-Effective Date Available Cash" is defined in the Plan as the Post-Effective Date Proceeds less the Post-Effective Date Expenses.  These terms are defined as:

> "Post-Effective Date Proceeds" means "(a) Cash in the Post-Effective Date Reserve and (b) any and all Cash, property, and/or proceeds obtained by the Post-Effective Date Debtor or the Plan Administrator, as applicable, and/or derived from the Debtor's assets on and after the Effective Date, including reducing the Retained Causes of Action to Cash."

> "Post-Effective Date Expenses" means "all voluntary and involuntary, costs, expenses, charges, obligations, or liabilities of any kind or nature, whether unmatured, contingent or unliquidated (collectively, the "Expenses") incurred or reasonably anticipated to be incurred by the Trustee or the Plan Administrator, as the case may be, after the Effective Date in connection with the implementation of the Plan and the administration of the post-Effective Date Estate, including, but not limited to:  (a) Expenses in connection with administering and implementing the Plan, including any taxes incurred and accrued by the Trustee or the Plan Administrator, as the case may be, on or after the Effective Date; (b) U.S. Trustee Fees, if any, which accrue after the Effective Date, (c) the Expenses of the Trustee or Plan Administrator, as the case may be, in making the Distributions required by the Plan, including Allowed Administrative Claims, paying taxes, and filing tax returns, and (d) the Expenses of the Trustee or Plan Administrator, as applicable, and all independent contractors and professionals (including, without limitation, attorneys, advisors, accountants, brokers, consultants, experts, professionals, and other Persons) providing services to the Trustee or the Plan Administrator, as applicable, after the Effective Date."

[3]   The Trustee's and his professionals' agreements to defer payment of their fees and expenses is set forth in the Twelfth Interim Cash Collateral Order.

portion of the unpaid hotel and occupancy taxes owing to the NYC DOF described in the first and second bullets above.

- The Trustee and BSP have reached an agreement in principle with certain of the professionals retained by the Debtor prior to the appointment of the Trustee to reduce their requests for fees and expenses from more than approximately $7.9 million by 25%, which reduced fees and expenses, if approved by the Bankruptcy Court, will be paid pro rata from a reserved fund of $964,463.25, with the balance of such unpaid fees and expenses to be paid from Post-Effective Date Available Cash after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses, the deferred portion of the unpaid hotel and occupancy taxes owing to the NYC DOF, and the deferred portion of the BSP Senior Secured Claim equal to $5.5 million, each described in the first, second and third bullets above.[4]

After payment of the above-described amounts, any additional Post-Effective Date Available Cash will be paid first to holders of allowed general unsecured claims (Class 4) pro rata until such claims are paid in full, second to BSP on account of its subordinated secured claim (Class 5), third to holders of allowed subordinated claims held by insiders of the Debtor (Class 6), and finally to holders of the Debtor's equity interests (Class 7).

Other persons and entities have asserted administrative expense claims, which will either be paid in full on the Effective Date, estimated at zero dollars for distribution purposes or voluntarily compromised on the as part of confirmation of the Chapter 11 Plan.  Failure of any of the trustee's efforts in this regard with respect to each claim will cause the failure of the Chapter 11 Plan and a likely conversion of this Bankruptcy Case to a Chapter 7 liquidation.

## B.    Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  The commencement of a Chapter 11 case creates an Estate that is comprised of all of the legal and equitable Interests of the Debtor as of the filing date.  Confirmation and consummation of a plan of reorganization or liquidation are the principal objectives of a Chapter 11 case.  In this Chapter 11 Case, the Plan contemplates a liquidation of the assets of the Debtor's Estate and is therefore referred to as a "plan of liquidation."

In general, confirmation of a plan by the Bankruptcy Court makes the plan binding upon a debtor, any Person acquiring assets under the plan, and any holder of a Claim or Interest of a debtor whether or not they vote to accept the plan.  Before soliciting acceptances of a proposed plan, however, section 1125 of the Bankruptcy Code requires a trustee to prepare a disclosure statement containing "adequate information" of a kind, and in sufficient detail, to enable a creditor to make an informed

---

[4]    The agreement described in this bullet is subject to further definitive documentation, which the Trustee expects to file with the Bankruptcy Court prior to the Confirmation Hearing.

judgment in voting to accept or reject the plan. The Trustee is submitting this Disclosure Statement to holders of Claims against the Estate to satisfy the requirements of section 1125 of the Bankruptcy Code.

## II.   HISTORY OF THE DEBTOR AND THE BANKRUPTCY FILING

### A.   History of the Debtor and Description of the Debtor's Business

The Debtor is a New York limited liability company with its principal place of business in Brooklyn, New York. The Debtor owns and operates the Williamsburg Hotel, a successful 10-story, 147-room independent hotel, constructed in 2017, and located at 96 Wythe Avenue, Brooklyn, New York (the "Hotel"). The Hotel is upscale and full-service, featuring a full food and beverage operation that includes a restaurant, a lobby bar, outdoor café, a lounge bar, water tower bar, and event ballrooms. Other amenities include additional meeting and conference rooms, an on-site fitness center, and a rooftop pool and bar with spectacular panoramic views across the East River to the New York City skyline. Prior to the Trustee's appointment, the Debtor was managed by a non-debtor affiliate, the Williamsburg Hotel BK LLC (the "Management Company. The Management Company is owned by Toby Moskovits ("Moskovits") and Michael Lichtenstein ("Lichtenstein" and, together with Moskovits, the "Principals").

### B.   Loan Background

On December 13, 2017, the Debtor and Benefit Street Partners Realty Operating Partnership, L.P. (together with BSPRT 2018-FL3 Issuer, Ltd., as successor, collectively, "BSP") entered into a $68 million loan transaction, which consolidated approximately fourteen (14) mortgages, by entering into that certain loan agreement, dated as of December 13, 2017 (the "Loan Agreement," together with any related documents, including consolidated note and mortgage, and guarantees, collectively, the "Loan Documents"). BSP asserts that the Debtor's obligations under the Loan Agreement are secured by all-asset and fixture filings with respect to the Hotel, as more fully set forth in the Loan Documents, as well as financing statements on Hotel revenues. The Loan Agreement was originally set to mature on June 9, 2019 (the "Initial Maturity Date"); however, the Debtor had two options to extend the terms of the Loan Agreement beyond the Initial Maturity Date for two successive 6-month terms, to: (a) December 9, 2019, if the Debtor exercised the first option; and (b) June 9, 2020, if the Debtor exercised the second option. Exercising these options was subject to the satisfaction of certain conditions precedent under the Loan Agreement, including the absence of any events of default and payment of an extension fee.

At the closing of the Loan Agreement, funds were set aside for "Business Plan Reserve Funds" in a "Construction Reserve Account" to complete the agreed-upon construction of the Hotel and to ensure adequate funding for the Debtor's capital expenditures to complete the Hotel. The Loan Documents required BSP to reimburse the Debtor from this account upon the satisfaction of certain conditions, including: (i) certifications; (ii) the release of applicable liens; and (iii) BSP completing an onsite inspection.

After the parties entered into the Loan Agreement, construction on the Hotel continued.  On March 22, 2018, the Debtor submitted its first draw request in compliance with the Loan Documents.  After an inspection on March 27, 2018 by CBRE, a third-party engineer that conducted the onsite inspections at the Hotel, BSP funded the first draw request on June 1, 2018.  On May 23, 2018, the Debtor submitted its second draw request, which BSP funded on June 14, 2018.  On June 20, 2018, the Debtor submitted its third draw request, which BSP funded on June 27, 2018.

### C.    Disputes with BSP and State Court Litigation

On June 11, 2019, BSP commenced a foreclosure action in the Supreme Court of the State of New York, New York County, Index No. 653396/2019 (the "Foreclosure Action").  Constantino Sagonas was appointed as receiver for the Debtor in the Foreclosure Action (the "Receiver").  In the Foreclosure Action, the New York State Court denied BSP's motion for summary judgment.  BSP appealed such denial, which was docketed in the First Department of the Appellate Division as Appellate Case No. 2020-03532, and in a ruling on February 16, 2021, the First Department entered an order partially reversing the trial court and granting summary judgment in favor of BSP.  Shortly after the First Department granted summary judgment in favor of BSP, the Debtor filed the voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case.

### D.    Description of Debtor's Assets and Management

The Debtor's primary asset is the Hotel.  The day-to-day operations of the Hotel were previously managed by one of the Debtor's affiliates, the Management Company, pursuant to a purported Hotel Management and Services Agreement (the "Management Agreement").  The Receiver retained the Management Company in the Foreclosure Action and, following the Receiver's discharge upon the Chapter 11 filing, the Debtor continued to retain the Management Company.  Under the Management Agreement, the Management Company was the party that was contracted with and was obligated to pay the employees' salaries, as well as the other operating expenses for the Hotel.  However, since the Trustee's appointment (described below), the Trustee has managed the Hotel and other Estate assets, and moved to reject the Management Agreement, which motion was granted by the Bankruptcy Court on August 8, 2022.

## III.   POST-PETITION DEVELOPMENTS

### A.    A.   The Appointment of the Examiner and the Trustee

On October 15, 2021, BSP filed a motion to appoint an examiner, which was granted by the Bankruptcy Court by an order entered on November 8, 2021 (and subsequently amended on November 23 and December 14, 2021).  On November 16, 2021, the Bankruptcy Court entered an order approving the appointment of an examiner, and Eric M. Huebscher was appointed to serve as the examiner (the "Examiner").  On February 28, 2022, the Examiner issued his report which found sufficient grounds to appoint a trustee.  On March 28, 2022, BSP filed its renewed motion to appoint a Chapter 11 trustee, raising concerns of potential impropriety by the Debtor's management and requesting the appointment of a Chapter 11 trustee.  On

March 31, 2022, the U.S. Trustee also filed a motion to appoint a Chapter 11 trustee. Following evidentiary hearings conducted on May 17 and 25, 2022 and post-hearing oral argument on May 26, the Bankruptcy Court entered an order on May 27, 2022 directing the appointment of a Chapter 11 trustee. On May 31, 2022, the United States Trustee filed a notice and application for an order approving the Trustee's appointment. On May 31, 2022, the Bankruptcy Court granted the application for an order appointing the Trustee. Since then, the Trustee has duly qualified and has been acting as the Trustee in this Chapter 11 Case.

      **B.**      **B.**    **The BSP Settlement Agreement**

On July 13, 2021, BSP filed a Proof of Claim and amended such Claim on February 15, 2022. BSP's Proof of Claim asserted a Secured Claim in the aggregate amount of at least $89,543,755.49 on account of unpaid principal, as well as accrued and accruing interest, fees, and expenses related to the Loan Agreement. Fees, expenses and interest and the contract and default rate continued to accrue during the course of this Bankruptcy Case on BSP's claim pursuant to BSP's loan documents with the Debtor.

On September 13, 2022, the Trustee filed a motion to approve the BSP Settlement Agreement between BSP and the Trustee, which, once approved, would quantify the amount of the largest Claim asserted against the Debtor's Estate, and pave the way for a more streamlined Sale and Plan process where no Chapter 11 plan would have been otherwise possible, including the capping of any credit bid by BSP to the amount of its Senior Secured Claim in a sale closed pursuant to a Chapter 11 plan. The BSP Settlement Agreement also resolved the proposed treatment of BSP's Secured Claim by permitting the consensual subordination of the BSP Subordinated Secured Claim to Allowed General Unsecured Claims under the Plan. Moreover, the BSP Settlement Agreement resolved, through dismissal, the adversary proceeding filed by the Debtor against BSP, seeking to relitigate the otherwise dispositively resolved Foreclosure Action.

In summary, the BSP Settlement Agreement apportions BSP's Claim into two component parts: (i) the BSP Senior Secured Claim; and (ii) the BSP Subordinated Secured Claim. Moreover, the BSP Settlement Agreement affords BSP the right to credit bid the full amount of its Senior Secured Claim at the Sale of the Hotel and related Assets pursuant to section 363(k) of the Bankruptcy Code. subject to a cap to which BSP voluntarily subjected in a sale closed under a Chapter 11 plan. The BSP Settlement Agreement also identified certain terms and conditions to be included in the Plan, discussed in Section VI of this Disclosure Statement. Furthermore, the BSP Settlement Agreement provides for BSP to assign all of its rights, title, and interest in, and to, the bond posted by the Receiver for the Debtor in the Foreclosure Action, and the rights to make a claim and recover thereunder; provided, that BSP shall retain its right to receive a Distribution of the proceeds of such bond to the extend flowing to BSP on account of the BSP Subordinated Secured Claim. The BSP Settlement Agreement also provides for mutual releases between the Trustee and BSP for all claims and causes of action relating to or arising out of, among other things, the BSP Adversary Proceeding, the Loan, the Hotel, the Bankruptcy Case, the Collateral (as defined in the Settlement Agreement), the Foreclosure Action, and the Debtor's appeal of the Foreclosure Action.

On October 7, 2022, Debtor's co-counsel, Mayer Brown LLP filed a limited objection to the Trustee's motion to approve the BSP Settlement Agreement, arguing that the BSP Settlement Agreement prematurely assumed that BSP was over-secured, and that the BSP Settlement Agreement did not abide by the Bankruptcy Code's priority scheme.  The Trustee and BSP each filed replies to Mayer Brown LLP's objection on October 14, 2022, to which Mayer Brown LLP filed a sur-reply on October 17, 2022.

On October 19, 2022, following discussions among the Trustee, BSP and Mayer Brown, the Trustee filed a notice of a revised settlement agreement between the Trustee and BSP.  The revisions to the BSP Settlement Agreement included additional language clarifying that the BSP Secured Claim would be "reduced dollar for dollar by any amount that such claim exceeds the amount permitted by [s]ection 506(b) of the Bankruptcy Code, which shall be determined based upon a valuation of [BSP]'s Collateral established by a sale thereof that is approved by the Bankruptcy Court or other recoveries on account of such Collateral" and that "the [BSP Subordinated Secured Claim] shall be reduced dollar for dollar by any amount that the sum of the [BSP Senior Secured Claim] and [BSP Subordinated Secured Claim] exceeds the amount permitted by [s]ection 506(b) of the Bankruptcy Code, which shall be determined based upon a valuation of [BSP]'s Collateral established by a sale thereof that is approved by the Bankruptcy Court or other recoveries on account of such collateral."

Following the filing of the notice of a revised settlement agreement, Mayer Brown withdrew its objection and, at a hearing held on October 19, 2022, the Bankruptcy Court granted the motion to approve the BSP Settlement Agreement and entered the BSP Settlement Agreement Order on October 21, 2022.[5]

C.    C.    The Bid and Sale Process

(i)    Overview

The Trustee, in an exercise of his business judgment, concluded that a sale of the assets of the Debtor's Estate was in the best interest of the its creditors and other stakeholders.  AccordinglyOn October 21, 2022, the Trustee has undertaken various steps filed a motion for entry of an order approving bidding procedures related to sellthe Sale of the Hotel and related assets, including the retention of brokers, the establishment of bidding procedures, and the initiation of a sale process that can be consummated either  pursuant to the Plan or, in the alternative,  on a stand alone basis pursuant to section 363 ofNovember 15, 2022, the Bankruptcy Code.Court entered an order approving the bidding procedures and scheduling an auction, if necessary (the "Bidding Procedures Order").



(ii)    Retention of Co-Brokers

---

[5]    A copy of the BSP Settlement Agreement Order, which includes a copy of the BSP Settlement Agreement, is attached hereto as **Exhibit B**.

On July 26, 2022, the Trustee filed an application seeking to retain A&G Real Estate Partners, LLC and Eastdil Secured, LLC as co-brokers (together, the "Co-Brokers").

As prominent brokers in the hotel and hospitality sector, the Trustee sought to retain the Co-Brokers to assist him with, among other things: (a) preparing and implementing a  Following an extensive marketing plan to sell the Hotel; (b) conducting the and auction process for the Sale; (c) representing the Trustee, along with his counsel, in negotiating the terms of the Sale, and (d) assisting the Trustee and his counsel in the documentation of the Sale. On August 12, 2022, the Court entered an order authorizing the retention and employment of the Co-Brokers.

(iii)   *The Bid Procedures Order*

On October 21, 2022, the Trustee filed a motion for entry of an order approving the bidding procedures related to the Sale of the Hotel and related assets (the "Bid Procedures").

The Bid Procedures are designed to facilitate the Sale, consisting of substantially all of the Debtor's Assets (excluding Retained Causes of Action), including the Hotel, all lands, estates, development rights, easements, improvements, rights-of-way or use, improvements, equipment, fixtures, leases, rents, awards, refunds, rebates, credits, agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents relating to the occupation, construction, management or operation of the Hotel and any part thereof, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Hotel, and inventory and accounts receivables.

The Bid Procedures also provide for the designation of a stalking horse bidder. The Trustee and his advisors are currently in the process of evaluating potential stalking horse bidder proposals. The Bid Procedures provide certain bid protections to any selected stalking horse bidder(s), who will be provided a break-up fee in the range of 1-3% of the cash consideration to be paid, and expense reimbursements of up to $150,000.

As provided for by the BSP Settlement Agreement, BSP is entitled to credit bid up to the amount of the BSP Senior Secured Claim in a sale consummated either pursuant to a confirmed Chapter 11 plan sale or on a stand-alone basis pursuant to section 363 of the Bankruptcy Code.

On November 3, 2022, the Principals filed a limited objection to the Bid Procedures, protesting the proposed timeline to conduct the Sale as contemplated by the Bid Procedures. The Bankruptcy Court overruled the Principals' objection and approved the Bid Procedures at a hearing conducted on November 10, 2022. The in accordance with the Bidding Procedures Order was entered by the Bankruptcy Court on November 15, 2022.

The Bidding Procedures Order established the following dates and deadlines, on January 11, 2023, the Trustee, in consultation with BSP, designated Quadrum

Development Corp. (the "Purchaser") as the Successful Bidder (as defined in the Bidding Procedures Order):).

On January 26, 2023, the Bankruptcy Court entered the *Order (A) Approving the Sale Free and Clear of All Liens, Claims, Interests, and Encumbrances; (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 881] (the "Sale Order"), which approved the sale of substantially all of the Debtor's assets to the Purchaser pursuant to the Purchase and Sale Agreement, dated as of January 11, 2023, between the Trustee and the Purchaser, a copy of which was attached as Exhibit A to the Sale Order (the "Purchase Agreement").[6] The closing of the sale is subject to certain conditions precedent set forth in the Sale Order and Purchase Agreement and is expected to occur on or before March 31, 2023.

If the Plan is not confirmed or the Plan does not go effective, the Trustee has reserved the right, and the Sale Order allows for, the Sale to close on a standalone basis pursuant to section 363 of the Bankruptcy Code.

## IV.    CLAIMS

On June 2, 2021, the Bankruptcy Court entered an order establishing July 15, 2021 as the initial deadline for filing general proofs of claim in the Chapter 11 Case.  To date, a total of forty (40) Claims have been filed against the Debtor's Estate.  Certain of these Claims have been Allowed, reduced and Allowed, or expunged.  The Trustee is in the process of evaluating the validity and appropriateness of the remaining Claims and will object to Claims as appropriate.

On October 14, 2022, the Bankruptcy Court entered an order establishing November 21, 2022 as the deadline for filing certain administrative expense claims arising from the Petition Date through and including September 30, 2022.  A total of thirteen (13) Administrative Claims were filed against the Debtor's Estate (excluding Administrative Claims filed by the Debtor's professionals) in the aggregate amount of $1,563,123.96.

### A.    BSP Secured Claim

As described above, the BSP Settlement Agreement apportions BSP's Secured Claim to provide BSP with:  (a) the BSP Senior Secured Claim comprising of principal, contract rate interest, and costs and legal fees, to be paid at the closing of the sale of the Hotel;  and (b) the BSP Subordinated Secured Claim comprising of certain fees and interest, which is to be subordinated to all Allowed Administrative, Priority, and General Unsecured Claims, but senior to both Subordinated Insider Claims and Equity Interests, and to be disbursed pursuant to the provisions of the Plan.

- Bid Deadline of December 12, 2022 at 5:00 p.m. (ET)
- Sale Objection Deadline of December 12, 2022 at 5:00 p.m. (ET)

---

[6]    A copy of the Sale Order, which includes a copy of the Purchase Agreement, is attached hereto as **Exhibit C.**

- Proposed Assumption/Cure Amounts Objection Deadline of December 12, 2022 at 5:00 p.m. (ET)
- Deadline for Trustee to notify bidders of their status as Qualified Bidders of December 13, 2022 at 12:00 p.m. (ET)
- Auction Date of December 14, 2022 at 11:00 a.m. (ET)
- Deadline to File Notice of Successful Bidder of December 15 2022 at 4:00 p.m. (ET)
- Supplemental Sale Objection Deadline of December 16, 2022 at 4:00 p.m. (ET)
- Adequate assurance of Future Performance Objection Deadline of December 16, 2022 at 4:00 p.m. (ET)
- Sale Briefing and any Replies Deadline of December 19, 2022 at 12:00 p.m. (ET)
- A Sale Hearing on December 20, 2022 at 2:00 p.m. (ET)
- A Deadline for the Sale Closing on Friday December 30, 2022.

(v) Interest to Date

Immediately following the execution of the engagement agreements between the Co-Brokers and the Trustee, the Co-Brokers began their work to facilitate the Sale. In doing so, the Co-Brokers first began by engaging in informal discussions with various parties the Co-Brokers believed would be interested in purchasing the Hotel. Then, on September 6, 2022, the Co-Brokers began formal marketing efforts by distributing a one-page "teaser" mailing to more than potentially interested parties. Additionally, the Hotel was also listed on the Co-Brokers' respective websites; and discussed the Hotel with any parties that had expressed an interest in properties similar to the Hotel, but were not on the list of potential investors and brokers previously contacted.

Following distribution of the "teaser" materials, the Co-Brokers executed more than 180 non-disclosure agreements with interested parties and distributed confidential information memoranda and other similar marketing material packages to those parties. Moreover, the Co-Brokers have conducted approximately 30 inspection tours of the Hotel. Consequently, the Trustee and the Co-Brokers have received multiple offers, and anticipate additional offers. To encourage the possibility of further, better offers, the Trustee intends to negotiate among the interested buyers for one to act as a stalking horse bidder and to conclude the Sale, either under the Plan or on stand-alone basis pursuant to section 363 of the Bankruptcy Code.

D. As discussed above, the Sale proceeds are insufficient to pay BSP's Senior Secured Claim in full. In order to accommodate the Trustee's ability to file and confirm the Plan and facilitate the opportunity for distribution to other creditors, BSP has agreed to subordinate a portion of its Senior Secured Claim equal to $5.5 million and receive such amounts as otherwise described herein from post-closing recoveries from non-real estate assets (provided that such $5.5 million is separate from and paid senior to BSP's Subordinated Secured Claim).

11

**B.**     **The NYC Tax Settlement**

(i)         (i)    The Real Estate Tax Claims

On July 26 and 28, 2021, respectively, the New York City Department of Finance (the "NYC DOF") filed two Proofs of Claim represented on the Debtor's claims register as Claim Nos. 10-1 and 11-1. Claim No. 10-1 asserted a Secured Claim of $606,749.04 for certain post-petition real property taxes, charges and interest, but was filed as a pre-petition Claim. Claim No. 11-1 asserted that the NYC DOF was entitled to a Secured Claim in the amount of $3,378,218.12 for certain pre-petition real property taxes, charges and interest, but was filed as an Administrative Claim. On December 23, 2021, the Debtor objected to Claim Nos. 10-1 and 11-1.

On January 20, 2022, the NYC DOF filed a response to the Debtor's objection to Claim Nos. 10-1 and 11-1, stating that the NYC DOF inadvertently asserted Claim No. 10-1 as a pre-petition Secured Claim and Claim No. 11-1 as an Administrative Claim, while in fact Claim No. 10-1 covered post-petition taxes during the administrative period, and Claim No. 11-1 asserted a Claim for taxes during the pre-petition period. On March 2, 2022, the NYC DOF filed an amendment to Claim No. 10-1 asserting $3,125,061.56 for pre-petition real property taxes and charges, with statutory interest through the Petition Date, as secured by a lien on Hotel.

On March 9, 2022, the NYC DOF filed Claim No. 11-2, an amendment to Claim No. 11-1 asserting a claim of $687,104.18 for certain real property taxes and charges that accrued after the Petition Date through December 31, 2021, with statutory interest through February 25, 2022, as an Administrative Claim secured by a lien against the real property upon which the Hotel is situated. On March 2, 2022, the NYC DOF inadvertently filed Claim No. 19 which was intended to amend Claim No. 10-1, but was a duplicate of Claim No. 10-2.

Prior to objecting to Claim Nos. 10-1 and 11-1, the Debtor and the NYC DOF entered into an installment agreement dated as of June 23, 2021, fixing the Claims at $3,928,923.57 as of June 23, 2021, which consisted of all real property taxes, assessments and related charges through the real property taxes due on July 1, 2021 and outstanding statutory interest as of June 23, 2021. The installment agreement provided for, among other things, an agreed-upon payment schedule of outstanding real property taxes, assessments and related charges to be paid in semi-annual installments of $443,201.41 over ten (10) years. The installment agreement was not submitted to the Bankruptcy Court for approval as required by, *inter alia*, Bankruptcy Rule 9019. Since the Petition Date, the Debtor made some payments to the NYC DOF on account of the real property taxes. The Debtor owed $606,599.16 in principal for the second half of the tax years of 2021-2022, which was due on January 1, 2022. The NYC DOF applied payments made by the Debtor on December 21, 2021, and February 8, 2022 to the taxes due on January 1, 2022, leaving a balance of $169,150.48.

On March 9, 2022, the NYC DOF filed a Proof of Claim, represented on the Debtor's claims register as Claim No. 21-1, asserting an Administrative Claim of $169,150.48 on account of the taxes that were due on January 1, 2022, with statutory interest through February 25, 2022 for $163,815.31 in principal and $5,335.17 in interest.

On March 23, 2022, the Debtor paid the NYC DOF $612,351.89 of which: (i) $169,150.48 was applied to the balance of the taxes that were due on January 1, 2022, thereby satisfying Claim No. 21-1; and (ii) $443,201.41 representing the initial installment amount under the installment agreement. As of August 23, 2022, the total pre-petition unpaid real property taxes totaled $3,603,879.84, including statutory interest through August 17, 2022. The total post-petition unpaid real property taxes with statutory interest as of August 17, 2022 was $735,468.13.

(ii)   ~~(ii)~~   *Hotel Claims*

The NYC DOF also filed Proofs of Claim Nos. 14 and 18 in the amount of $6,520.449.01 each for estimated outstanding partnership taxes, estimated Unincorporated Business Taxes and estimated Hotel Occupancy Taxes. Claim No. 14 was filed in the amount of $4,364,634.91 in principal, $1,086,985.47 in interest, and $1,068,828.63 in penalty. Claim No. 18 is a duplicate of Claim No. 14. Claim Nos. 14 and 18 were accruing interest at the statutory rate (eight (8) percent). On January 14, 2022, the Debtor filed objections to the Claim Nos. 14 and 18. On February 8, 2022, the NYC DOF filed a response to the Debtor's objections.

Claim Nos. 14 and 18 include hotel occupancy taxes, unincorporate business tax ("UBT"), and corporate tax, but only either UBT or corporate tax was owed, not both. However, the Claim Nos. 14 and 18 included both, since the Debtor had not elected how to be treated for tax purposes. Subsequently, the Debtor filed business tax returns electing to be treated as a partnership.

Following the filing of the tax returns, the pre-petition hotel occupancy taxes were $2,497,908.61. Of that amount, $1,638,297.41 constituted principal, $310,919.74 constituted interest, and $548,591.46 constituted penalties.

With interest and penalties through August 17, 2022, the total pre-petition hotel occupancy tax Claim is $2,868,722.42, with principal remaining $1,638,397.41, penalties of $692,617.22, and interest of $537,707.79. Additionally, post-petition hotel occupancy tax, interest and penalties totaled $40,063.83 as of August 17, 2022.

(iii)   ~~(iii)~~   *Water Board Claim*

On March 30, 2021, the New York City Water Board filed a Proof of Claim represented on the Debtor' claim register as Claim No. 2. Claim No. 2 asserted a pre-petition Secured Claim against the Debtor in the amount of $100,522.64 for water services provided to Debtor. Interest was accruing and compounding daily at the current rate of fourteen (14) percent.

(iv)   ~~(iv)~~   *Tax Adversary Proceeding*

13

On April 18, 2022, the Debtor commenced an adversary proceeding against the NYC DOF seeking, among other things, a declaration that the Debtor was entitled to a tax abatement in connection with the Debtor's construction of the Hotel.  On May 20, 2022, the NYC DOF filed a motion to dismiss the adversary proceeding.

(v)    (v)    NYC DOF Tax Stipulation

Following his appointment on May 31, 2022, the Trustee engaged with the NYC DOF in good faith discussions concerning the Debtor's liability relating to the various Claims asserted by the NYC DOF.  As discussed above, interest accrued and compounded daily at a rate fourteen (14) percent for Claim Nos. 2, 10-2, 11-2, and 21-1, and eight (8) percent compounded monthly on Claim Nos. 14 and 18.

The Trustee, in an exercise of his business judgment, and in consultation with BSP, determined that the NYC DOF's Claims needed to be paid promptly to end the continued accrual of the statutory interest charge.  Also in consultation with BSP, the Trustee determined to fix and liquidate Claim Nos. 14 and 18, and dismiss the adversary proceeding that had been filed by the Debtor against the NYC DOF.

On August 23, 2022, the Trustee filed on presentment a stipulation and proposed order between the Trustee and the NYC DOF resolving the NYC Tax Claims (the "NYC Tax Stipulation").

On August 30, 2022, the Management Company and the Principals jointly filed an objection to the NYC Tax Stipulation.  Consequently, the various parties negotiated a release provision in the NYC Tax Stipulation in favor of the Principals in connection with their potential liability on account of Claim Nos. 14 and 18 in consideration for the Management Company's turnover of funds constituting Estate Assets that were being held in a PNC Bank account in the Management Company's name.  Accordingly, on September 9, 2022, the Management Company and the Principals withdrew their objection.

On September 12, 2022, the Bankruptcy Court entered the order approving the NYC Tax Stipulation (the "NYC Tax Stipulation and Order").  The NYC Tax Stipulation and Order provided for:

a. the disallowance of Claim No. 10-1 and Claim No. 11-1;

b. the allowance of Claim No. 10-2 as an Allowed Secured Claim in the amount of $3,603,879.84;

c. the allowance of Claim No. 11-2 as an Allowed Administrative Claim for post-petition taxes under section 503(b)(1) of the Bankruptcy Code in the amount of $735,468.13;

d. the allowance of Claim No. 2 as an Allowed Secured Claim in the amount of $113,285.83;

e.   the disallowance of Claim No. 14;  and

f.   the allowance of Claim No. 18 in two parts;  (a) first,  as an Allowed Priority Tax Claim plus interest as provided in section 1128(a)(9)(C) of the Bankruptcy Code, ~~with the intent being that this portion would be paid on the effective date of any confirmed plan~~ in the amount of $2,175,105.20 plus additional accruing interest; and (b) second, as an Allowed General Unsecured Claim in the amount of $692,117.22, subordinated to other Allowed General Unsecured Claims to the extent the priority portion of  the Claim is satisfied under any such plan.

The NYC Tax Stipulation and Order also provided for the dismissal of the adversary proceeding brought against the NYC DOF with prejudice, and the full and final release of the Claim Nos. 2, 10-2, 11-2, and 21-1.

~~E.       The Administrative Claims Bar Date~~

~~On September 8, 2022, the Trustee filed an application for entry of an order establishing the Interim Administrative Claims Bar Date for entities, including governmental units, to file Proofs of Claim on account of any Claim that arose between the Petition Date and September 30, 2022.  The Interim Administrative Claims Bar Date was necessary to assist the Trustee in promulgating the Plan and preparing this Disclosure Statement relating to the Plan, because the satisfaction of Allowed Administrative Claims is a requirement of confirmation of the Plan under section 1129 of the Bankruptcy Code.~~

~~On October 14, 2022, the Bankruptcy Court entered (on an uncontested basis) an order establishing November 21, 2022 as the Interim Administrative Claims Bar Date. Pursuant to the Bankruptcy Court's order, the Trustee published notice of the Interim Administrative Claims Bar Date in the October 20, 2022 local edition of the New York Times.~~

*(vi)     Subsequent Developments*

As described in greater detail above, pursuant to an agreement between the Trustee and the NYC DOF on account of the Allowed Priority Tax Claims held by the NYC DOF not paid prior to the Effective Date arising from hotel and occupancy taxes, the NYC DOF (a) shall be paid $312,050 in Cash on the Effective Date, an amount representing 15% of the outstanding amount of such claims, and (b) with respect to the balance of such claims in the amount of $1,768,286, the NYC DOF shall be receive one or more distributions of Post-Effective Date Available Cash after payment in full in cash of the deferred fees and expenses of the Trustee and the Trustee Professionals.

C.       The Management Company's Claims

~~IV.~~I.    CLAIMS

To date, a total of forty (40) Claims have been filed against the Debtor's Estate. Certain of these Claims have been Allowed, reduced and Allowed, or expunged. The Trustee is in the process of evaluating the validity and appropriateness of the remaining Claims and will object to Claims as appropriate.

**A.    Secured Claims**

**A.**         *(i)*    **BSP Secured Claim**

As described above, the BSP Settlement Agreement apportions BSP's Secured Claim to provide BSP with: (a) the BSP Senior Secured Claim comprising of principal, contract rate interest, and costs and legal fees, to be paid at the closing of the sale of the Hotel; and (b) the BSP Subordinated Secured Claim comprising of certain fees and interest, which is to be subordinated to all Allowed Administrative, Priority, and General Unsecured Claims, but senior to both Subordinated Insider Claims and Equity Interests, and to be disbursed pursuant to the provisions of the Plan.

*(ii)    NYC DOF Secured Claim*

As described above, the NYC Tax Stipulation and Order provided for the allowance of Claim No. 10-2 as an Allowed Secured Claim in the amount of $3,603,879.84; and the allowance of Claim No. 2 as an Allowed Secured Claim in the amount of $113,285.83.

**B.    Administrative Claims**

*(i)    Non-Professional Fee Administrative Claims*

With the Interim Administrative Claims Bar Date having passed on November 21, 2022, a total of eighteen (18) Administrative Claims have been filed against the Debtor's Estate. However, five of these Claims were filed by Professional Persons (see immediately below) and, thus, also constitute Professional Fee Claims. Excluding Professional Fee Claims, the Administrative Claims, as filed, aggregate $1,563,123.96.

The Management Company has filed five (5) Administrative Claims seeking an aggregate of $913,256.85, including an Administrative Claim in the amount of $792,505.82 allegedly representing three percent (3%) of the gross revenue from the Hotel's operations for the period March 1, 2021 through May 31, 2022 – which amount the Management Company asserts it is owed under the Management Agreement.

GC Realty Advisors LLC has also asserted an Administrative Claim in the amount of $276,852.50. Mr. David Goldwasser, the Debtor's former chief restructuring officer, is the principal of GC Realty and the Administrative Claim asserted by it purports to be for fees, costs and expenses earned and/or incurred by Mr. Goldwasser in his former position with the Debtor.

*(ii)    Professional Fee Claims*

Of all the filed Administrative Claims, an overwhelming amount consisted of Professional Fee Claims asserted by the Professional Persons that had been retained by

the Debtor;  including:  (a) Debtor's co-counsel Mayer Brown, LLP, which  requests payment of $6,707,315.1;  (b) Debtor's co-counsel, Backenroth Frankel & Krinsky, LLP, which requests payment of $206,629;  and (c) Debtor's financial advisors,  Getzler Henrich & Associates LLC & HILCO Real Estate LLC, which request payment of $441,012.70.  The Professional Fee Claims being asserted by the Debtor's Professional Persons comprise roughly 85% of the total dollar amount of all filed Administrative Claims.  The Trustee is closely reviewing these Professional Fee Claims and evaluating their appropriateness.

Additionally, the Examiner, Mr. Huesbcher has asserted a Professional Fee Claim in the amount of $22,844.50.  Mr. Huebscher's counsel, Locke Lorde LLP, has likewise asserted a Professional Fee Claim in the amount of $233,477.26.

**D.     NYC DOF's Priority Tax Claim**

As described in the NYC Tax Stipulation and Order, Claim No. 18 is an Allowed Priority Tax Claim in the amount of $2,175,105.20, plus interest as provided for in section 1128(a)(9)(C) of the Bankruptcy Code -- with the intent being that this portion of the Claim would be satisfied on the Effective Date of the Plan.

**E.     Rejection Damage Claim by Management Company**

On September 22, 2022, the Management Company filed a Proof of Claim for $9,366,380.96 on account of rejection damages resulting from the Trustee's rejection of the Management Agreement between the Debtor and the Management Company.  At the hearing where the Bankruptcy Court found cause to appoint the Trustee, the Bankruptcy Court stated that the Management Agreement upon which the Management Company now seeks rejection damages appeared to be fraudulent.  The Trustee is in the process of evaluating the Management Company's Claim for rejection damages and will object to the Claim if and when appropriate.  Under the Plan, if and to the extent Allowed, the Proof of Claim (and the Management Company's purported Administrative Claims described below) filed by the Management Company would be classified as a Subordinated Insider Claim.

The Management Company has filed five (5) Administrative Claims seeking an aggregate of $913,256.85, including an Administrative Claim in the amount of $792,505.82 allegedly representing three percent (3%) of the gross revenue from the Hotel's operations for the period March 1, 2021 through May 31, 2022 – which amount the Management Company asserts it is owed under the Management Agreement.  The Plan does not provide for any payment to the Administrative Claims filed by the Management Company and the Trustee expects to file an objection to such claims.  Among other reasons, the estate holds numerous offsets, defenses and claims against the Management Company and its insiders relating to their prepetition and postpetition conduct, the invalidity of the alleged agreements purporting to govern the Management Company's business relationship with the Debtor, and the lack of any benefit to the Debtor and its estate provided by the Management Company postpetition.

### D.        Claims Filed by the Debtor's Professionals and CRO

During the Chapter 11 Case, the Debtor retained the following professionals by order of the Bankruptcy Court:  (a) Mayer Brown LLP ("Mayer Brown"), (b) Backenroth Frankel & Krinsky, LLP ("Backenroth"), (c) GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley"), (d) Fern Flomenhaft PLLC ("Fern Flomenhaft"), (e) Getzler Henrich & Associates LLC and Hilco Real Estate LLC (together, "Getzler Henrich"), and (f) Leitner Berman, Inc. ("Leitner Berman").  The Debtor also engaged Mr. David Goldwasser and his company GC Realty Advisors LLC ("Goldwasser/G.C. Realty") as its chief restructuring officer, which engagement was not approved by order of the Bankruptcy Court.

The foregoing professionals have asserted the following amounts of fees and expenses as of October 31, 2022, subject to a reservation of rights to assert additional amounts accruing after October 31, 2022:

| Firm | Requested Fees | Requested Expenses | Total |
|---|---|---|---|
| Mayer Brown | $6,564,468.40 | $142,846.71 | $6,707,315.11 |
| Backenroth | $216,805.00 | $473.00 | $217,278.00 |
| Getzler Henrich | $411,930.50 | $29,082.20 | $441,012.70 |
| Leitner Berman | $71,000.00 | $0.00 | $71,000.00 |
| Fern Flomenhaft | $41,242.50 | $488.44 | $41,730.90 |
| B. Riley | $197,572.67 | $615.06 | $198,187.73 |
| Goldwasser/G.C. Realty | $276,852.50 | $0.00 | $276,852.50 |
| Total: | $7,779,871.57 | $173,505.41 | $7,953,376.98 |

The Trustee and BSP have disputed the foregoing requested amounts and questioned whether the Debtor's Estate may hold claims and causes of action against certain of the Debtor's professionals, in addition to the right to seek disallowance of the requested fees and expenses.  These allegations are disputed by the Debtor's professionals.

Following negotiations among the Trustee, BSP and certain of the Debtor's professionals, the parties have reached an agreement in principle whereby the Debtor's professionals will reduce their requested fees and expenses by 25%, which, if approved by the Bankruptcy Court, will be paid pro rata from a reserve established on the Effective Date in the amount of $964,463.25, funded with the cash proceeds of the sale of the hotel.  Note that neither the Debtor nor BSP has stipulated to the allowance of any claim to Debtor professionals in any amount; rather, the Debtor and BSP have simply agreed not to object to any application for allowance of fees and expenses in amounts

up to the reduced amount.  The balance of such claims allowed by the Bankruptcy Court will be paid from Post-Effective Date Available Cash, if any, after payment in full of the deferred portions of the Trustee's and Trustee Professionals' fees and expenses, the deferred portion of the unpaid hotel and occupancy taxes owing to the NYC DOF, and the deferred portion of the BSP senior secured claims.  In exchange, the Trustee and BSP have agreed to release certain claims and causes of action against the Debtor's professionals who are parties to this agreement.

The foregoing agreement is subject to further negotiation of definitive documentation, which the Trustee expects to file prior to the Confirmation Hearing. Upon completion of the definitive documentation, the Trustee expects to revise the Plan to incorporate the foregoing releases, effective as of the Effective Date.  Absent such agreement, the Plan will not be pursued and the Debtor's professionals will not receive any distribution or releases in this Chapter 11 Case.

### E.    Claims Filed by the Examiner

The Examiner, Mr. Huesbcher has asserted a Professional Fee Claim in the amount of $22,844.50.  Mr. Huebscher's counsel, Locke Lord LLP, has likewise asserted a Professional Fee Claim in the amount of $233,477.26.  In late December 2022, the Debtor made a one-time payment to Locke Lord LLP in the amount of $85,000 on account of its asserted Professional Fee Claim, which reduces the amount of such claim.

### F.    Claims Filed by the Receiver

On November 21, 2022, Constantino Sagonas, the Temporary Receiver appointed by Justice Ostrager of the Supreme Court of the State of New York, County of New York to control the Hotel's rents and profits during the pendency of *Benefit Street Partners Operating Partnership, L.P. v. 96 Wythe Acquisition LLC, et al.* (Index no. 653396/2019) (the "Foreclosure Action"), filed a Proof of Claim requesting payment of (1) $15,000.00 in purportedly outstanding Receiver Fees;  (2) $45,000.00 of surety-bond fees;  (3) $500.00 related to certain information-technology assistance allegedly incurred in responding to certain document requests by Benefit Street in June 2021;  (4) $32,890.00 of attorneys' fees purportedly incurred during the period prior to the Petition Date;  and (5) $93,668.00 of attorneys' fees purportedly incurred after the Petition Date, all on an administrative-priority basis.  The Plan does not provide for any payment to the Administrative Claims filed by Mr. Sagonas and the Trustee expects to file an objection to such claims.  The Trustee also expects to commence litigation against the Receiver to recover under the receiver's bond posted by order of the Supreme Court of the State of New York.

### F.G.    General Unsecured Claims

Total General Unsecured Claims asserted against the Debtor's estate aggregate approximately $9.7 million.  Based on the investigations and analyses conducted by the Trustee and his professionals to date, it is currently anticipated that Allowed General Unsecured Claims will not exceed $1 million to $3 million in the aggregate.

## V.    THE PLAN OF LIQUIDATION

**THIS SECTION OF THE DISCLOSURE STATEMENT PRESENTS ONLY A SUMMARY OF THE PLAN OF LIQUIDATION, WHICH IS ATTACHED HERETO AS <u>EXHIBIT A</u>.  CREDITORS ARE URGED TO CONSULT WITH COUNSEL IN ORDER TO DETERMINE WHETHER TO VOTE FOR OR AGAINST THE PLAN**.

This Disclosure Statement has been provisionally approved by an order of the Bankruptcy Court dated ~~December [__], 2022~~February [ ], 2023 [Dkt No. [ ]] as containing information of a kind and in sufficient detail that will enable holders of Claims in Classes 2, 4 and 5 to make an informed decision about the Plan.  Accordingly, this Disclosure Statement is being used in connection with the solicitation of acceptances of the Plan from holders of Claims in Classes 2, 4 and 5 entitled to vote thereon.

In order for the Plan to be confirmed, various statutory conditions prescribed by the Bankruptcy Code must be satisfied, including:  (a) acceptance of the Plan by at least one impaired Class entitled to vote on the Plan;  (b) provision for payment or distribution under the Plan to each creditor of money and/or other property at least equal in value to what that creditor would have received in a Chapter 7 liquidation of the Debtor;  (c) a finding by the Bankruptcy Court that the Plan is feasible;  and (d) with respect to each Class, either acceptance by that Class or a finding by the Bankruptcy Court that the Plan is "fair and equitable" and does not "discriminate unfairly" against that Class.

**A.    Who May Vote**

Only Classes that are impaired under the Plan are entitled to vote to accept or reject the Plan.  Generally, section 1124 of the Bankruptcy Code provides that a ~~class~~Class of ~~claims~~Claims or ~~interests~~Interests is considered impaired unless the Allowed amount of all ~~claims~~Claims in such ~~class~~Class are paid in full upon consummation of the ~~plan~~Plan or a plan does not alter the legal, equitable, and contractual rights of the holder of the ~~claim~~Claim or ~~interest~~Interest.

The ~~Holders~~holders of Claims and Interests in Classes 2, 4, 5, 6 and 7 are impaired by the Plan, but only the holders of Claims in Classes 2, 4 and 5 are entitled to vote to accept or reject the Plan.  The Trustee does not anticipate that there will be any value remaining in the Debtor's Estate to make Distributions to holders of Claims in Class 6 or holders of Equity Interests in Class 7 and such holders are, therefore, deemed to conclusively reject the Plan, and are not entitled to vote to accept or reject the Plan.  Thus, only the holders of Claims in Classes 2, 4 and 5 are entitled to vote to accept or reject the Plan.

A creditor is entitled to vote only if either:  (i) its Claim has been scheduled by the Debtor as not disputed, contingent, or unliquidated;  or (ii) it has filed a Proof of Claim on or before the applicable Bar Date as established by the Bankruptcy Court and no objection to such Claim is pending.

ANY HOLDER OF A CLAIM AS TO WHICH AN OBJECTION HAS BEEN FILED AND IS PENDING IS ENTITLED TO VOTE IN RESPECT OF SUCH CLAIM ONLY UP TO THE UNDISPUTED AMOUNT OF SUCH CLAIM, IF ANY, UNLESS

THE CREDITOR HAS OBTAINED AN ORDER OF THE BANKRUPTCY COURT TEMPORARILY ALLOWING THE CLAIM FOR THE PURPOSE OF VOTING ON THE PLAN.

### B.    Voting Procedures

##### (i)    Solicitation Period

~~The Trustee shall commence the transmission of solicitation packages on or about December [___], 2022.~~ In order to be counted, a ballot must be RECEIVED at the following address no later than ~~4~~5:00 p.m. (prevailing Eastern time), on ~~January~~March [___], 2023:

> 96 Wythe Ballot Processing
> c/o Togut, Segal & Segal LLP
> One Penn Plaza, Suite 3335
> New York, New York 10019
> (212) 594-5000
> Attn: Frank A. Oswald, Esq. and Bryan M. Kotliar, Esq.,
>
> Or electronically by email to jgallego@teamtogut.com

##### (ii)    Ballots

A ballot will be sent to each holder of a Claim in ~~Class~~Classes 2, 4 and 5 (the only ~~Class~~Classes eligible to vote on the Plan), which will serve as the ballot for indicating acceptance or rejection of the Plan pursuant to the requirements of sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018(c).

### ~~C.    Confirmation of the Plan~~

~~Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:~~

### C.    ~~D~~    Confirmation Hearing

Section 1128 of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan.  The Bankruptcy Court will schedule a hearing on confirmation of the Plan through ~~zoom.gov~~Zoom for Government (the "Confirmation Hearing").  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan, regardless of whether such party is entitled to vote.

##### (i)    ~~(i)~~    Objections to Confirmation

The Bankruptcy Court has directed that, on or before ~~4~~5:00 p.m. (prevailing Eastern Time) on ~~January~~March [___], 2023, any objections to the Plan are required to be in writing and filed with the Bankruptcy Court, and a copy served upon the U.S. Trustee and counsel for the Trustee, BSP and the ~~Buyer~~Purchaser.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. **IF AN OBJECTION TO CONFIRMATION IS NOT TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT**.

<em>(i)       (ii)              Requirements for Confirmation of the Plan</em>

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(b) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court may enter an order confirming the Plan. These requirements include the following:

### a.        Best Interests Test

Confirmation of the Plan requires that with respect to each impaired Class of Claims, each holder of an Allowed Claim in such Class has either accepted the Plan or will receive under the Plan property of a value, as of the Effective Date, that is not less than the amount the holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. It is the Trustee's belief that creditors will receive a greater distribution pursuant to the Plan than through a liquidation of the Debtor's Assets under Chapter 7 of the Bankruptcy Code or outside the bankruptcy context in the event the Chapter 11 Case is simply dismissed and not converted. In this regard, the Trustee believes that the orderly Sale of the Hotel will maximize the value of the Estate. This, coupled with the BSP Settlement Agreement as well as BSP's additional agreements and concessions described herein, is the foundation of the Plan. In a Chapter 7 liquidation, the value of the Debtor's Assets would decrease, and the Estate would lose the material benefit of BSP's commitment in the BSP Settlement Agreement to subordinate its right of payment on account of the BSP Secured Claim by at least the amount represented by the BSP Subordinated Secured Claim (which amount was at least $12.7 million as of August 14, 2022, plus subsequently accruing interest, fees and expenses), but only in the context of the Plan proposed by the Trustee. Accordingly, the value of the Debtor's Estate available to satisfy Allowed Claims would be significantly less in a Chapter 7 liquidation than under the proposed Chapter 11 Plan.

### b.        Feasibility of the Plan

In order for the Plan to be confirmed, the Bankruptcy Court must determine that it is feasible; *i.e.*, that as a practical matter, there are sufficient resources to meet the obligations under the Plan on a timely basis.

In this regard, as stated above, the funds necessary to effectuate the Plan will be derived from the ~~Net~~Gross Sale Proceeds of the Sale.

## VI.    OVERVIEW OF THE PLAN

**THIS SECTION PROVIDES A SUMMARY OF THE CLASSIFICATION AND TREATMENT OF CLAIMS UNDER, ALONG WITH THE STRUCTURE AND MEANS OF IMPLEMENTATION OF, THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, AND THE EXHIBITS ATTACHED THERETO.**

**THE PLAN ITSELF AND THE DOCUMENTS REFERENCED THEREIN WILL CONTROL THE TREATMENT OF CLAIMANTS AND OTHER PARTIES IN INTEREST UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST THE DEBTOR.   AS INDICATED ABOVE, ANY CAPITALIZED TERMS THAT ARE NOT DEFINED IN THIS SECTION OF THE DISCLOSURE STATEMENT ARE DEFINED IN THE PLAN. IT IS RECOMMENDED THAT ONE REFER TO THOSE DEFINITIONS WHEN READING THIS SECTION.**

### A.    Treatment of Claims Under the Plan

The Subject to Section VI(B) hereof, the following describes the Plan's classification of Claims against the Debtor and the treatment that holders of Allowed Claims would receive under the Plan.  The treatment of Claims set forth below is consistent with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

### (i)    Unclassified Claims

As provided in section 1123(a) of the Bankruptcy Code, Administrative Claims (including Professional Fee Claims) and Priority Tax Claims are not classified for purposes of voting on or receiving Distributions under the Plan.  All such Claims are instead treated separately in accordance with the terms and conditions set forth in Article III of the Plan.

### a.    Administrative Claims

Administrative Claims are not classified under the Plan.  Allowed Administrative Claims are to be paid in full (to the extent not already paid during the Chapter 11 Case), in cash on the later of:  (i) the Effective Date; (ii) the date such Claim becomes Allowed; and (iii) such other date and upon such other terms as may be agreed upon by the holder of such Claim and the Trustee or the Plan Administrator, as the case may be, or as ordered by the Bankruptcy Court.

All requests for payment of Administrative Claims (other than (i) Professional Fee Claims, (ii) Administrative Claims that have been Allowed on or before the Effective Date, or  (iii) Administrative Claims that were subject to the Interim Administrative Bar Date but were not made in writing or timely filed, which are now barred by order of the Court), must be in writing and filed with the Bankruptcy Court and served on the Trustee or the Plan Administrator, as the case may be, BSP and the U.S. Trustee so as to be received by 5:00 p.m. (Eastern Time) on the date that is thirty (30) days after the service of notice of occurrence of the Effective Date (the "Administrative Claims Bar Date").  Such request for payment must include at a minimum:  (A) the name of the holder of the asserted Administrative Claim;  (B) the amount of the Administrative Claim;  (C) the basis of the Administrative Claim;  and (D) supporting documentation for the Administrative Claim.  Failure to file and serve such proof of Administrative Claim timely and properly shall result in the Administrative Claim being forever barred and released and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to

collect, offset, or recover such Administrative Claim.  Objections to such requests must be filed and served within thirty (30) calendar days after filing of each such request.

On or as soon as reasonably practicable after the earlier of (a) the Effective Date or (b) the first Business Day after the date that is thirty (30) calendar days after the date on which an Administrative Claim becomes Allowed or payable under any agreement related thereto, unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Trustee or Plan Administrator, as applicable, each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, settlement, and release, and in exchange for, such Allowed Administrative Claim, cash equal to the unpaid portion of such Allowed Administrative Claim.

Distributions in satisfaction of Allowed Administrative Claims shall be made from the Plan Reserve Account.

**b.    ~~Professional~~Trustee Fee Claims and Trustee Professional Fee Claims**

1.    To the extent not filed prior to the Effective Date ~~or otherwise subject to the Interim Administrative Bar Date, Professional Persons must~~ , the Trustee and Trustee Professionals shall submit final fee applications seeking approval of all Trustee Fee claims and Trustee Professional Fee Claims by the Bankruptcy Court no later than thirty (30) calendar days after the ~~Trustee serves~~ occurrence of the Effective Date ~~Notice.~~(the "Trustee Claims Bar Date").  These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 326, 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable.

2.    ~~Professional Persons~~Trustee Professionals shall estimate in good faith their Accrued Professional Compensation rendering services to the Trustee ~~before and as of the Effective Date~~ and shall deliver such good faith estimate to the Trustee no later than five (5) Business Days prior to the anticipated Effective Date.  If a Trustee Professional does not provide an estimate, the Trustee shall estimate in good faith the unpaid and unbilled fees and expenses of such Trustee Professional.

3.    ~~As soon as reasonably practicable after the Confirmation Date and no~~No later than ~~the~~ Effective Date, the Trustee shall establish and fund the ~~Professional~~Trustee Fee Escrow with Cash equal to the ~~Professional~~Trustee Fee Escrow Amount, subject to the agreement of BSP, and no Liens, Claims, or interests shall encumber the ~~Professional~~Trustee Fee Escrow in any way.  ~~The Professional~~, other than liens and claims held by BSP securing the BSP Secured Claim and otherwise granted by Order of the Bankruptcy Court.  The Trustee Fee Escrow (including the funds held therein) (x) shall not be and shall not be deemed property of the Debtor or the ~~or the~~ Estate and (y) shall be held in trust for the Trustee and Trustee Professionals; provided, that any funds remaining in the ~~Professional~~Trustee Fee Escrow after all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims have been irrevocably paid in full shall become ~~Net~~Post-Effective Date Available Cash as provided for in ~~the~~this Plan.

Allowed ~~Professional~~Trustee Fee Claims (a) shall be paid in Cash ~~to such Professionals~~ from the funds held in the ~~Professional~~Trustee Fee Escrow ~~when such Claims are Allowed by an order of the Bankruptcy Court;  provided, that~~(including the Excess Cash) up to the ~~extent there are insufficient funds in the Professional Fee Escrow to pay all~~ amount of the Trustee's amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Professional Fee Claims in ~~full, each holder of a Professional~~ an amount up to, but not to exceed, the Allowed Trustee Fee ~~Claim shall receive its Pro Rata share of the remaining funds in the~~ Claims.

Allowed Trustee Professional Fee Claims other than for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (excluding the Excess Cash) up to the amount of such Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

4.      Allowed Trustee Professional Fee Claims for the Designated Trustee Professionals (a) shall be paid in Cash from the funds held in the Trustee Fee Escrow (including the Excess Cash) up to the amount of such Designated Trustee Professionals' amounts set forth in the Professional Accrual Schedule and (b) with respect to any balance of the Trustee Deferred Compensation for such Designated Trustee Professionals shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Trustee Fee Claims and Allowed Trustee Professional Fee Claims in an amount up to, but not to exceed, the Allowed Trustee Professional Fees.

5.      The Trustee and/or the Plan Administrator, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

### c.      Priority Tax Claims

Priority Tax Claims are not classified under the Plan.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

Pursuant to an agreement between the Trustee and the NYC DOF, on account of the Allowed Priority Tax Claims held by the NYC DOF not paid prior to the Effective Date, the NYC DOF (a) shall be paid in Cash on the Effective Date in an amount equal to the NYC Priority Initial Tax Claim Payment and (b) with respect to the balance of the NYC Priority Deferred Tax Claim Amount, one or more Distributions of Post-Effective

Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation.

#### d.      Settling Debtor Professional Fee Claims

No later than the Effective Date, the Trustee shall establish and fund the Debtor Professional Fee Escrow with Cash equal to the Debtor Professional Fee Escrow Amount, and no Liens, Claims, or interests shall encumber the Debtor Professional Fee Escrow in any way, other than liens securing the BSP Secured Claims and as otherwise granted by the Bankruptcy Court.  The Debtor Professional Fee Escrow (including the funds held therein) (x) shall be held in trust for the Settling Debtor Professionals; provided, that any funds remaining in the Debtor Professional Fee Escrow after all Allowed Debtor Professional Fee Claims have been irrevocably paid in full shall become Post-Effective Date Available Cash as provided for in this Plan.

Allowed Settling Debtor Professional Fee Claims (a) shall be paid in Cash from the Settling Debtor Professional Fee Escrow Pro Rata on account of such Settling Debtor Professionals' Reduced Claims (as defined in the Debtor Professional Fee Stipulation) or as otherwise agreed amongst the Settling Debtor Professionals and (b) with respect to the balance of the Settling Debtor Professional Deficiency Claim, shall receive one or more Distributions of Post-Effective Date Available Cash on a Pro Rata basis with all Allowed Settling Debtor Professional Fee Claims after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, and the BSP Senior Secured Claim Deferred Portion.

*(ii)    Classified Claims*

a.    Class 1 – Other Priority Claims

i.    Claims in Class:  Class 1 consists of all Other Priority Claims.

ii.    Treatment:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a different, less favorable treatment, each holder of an Allowed Other Priority Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed Claim, Cash in an amount equal to such holder's Allowed Other Priority Claim on the earlier of (x) the Effective Date and (y) as soon as practicable after its Other Priority Claim becomes Allowed.  Distributions in satisfaction of Allowed Other Priority Claims shall be made from the Plan Reserve Account.

iii.    Voting:  The Other Priority Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Priority Claims are conclusively presumed to accept this Plan

and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Priority Claims.

b.    Class 2 – BSP Senior Secured Claim

i.    Claims in Class:  Class 2 consists of the BSP Senior Secured Claim.

ii.    Treatment:  On or before the Effective Date, at closing of the Sale or ~~as~~ otherwise agreed to between the Trustee and BSP without further order of the Court, the Allowed BSP Senior Secured Claim shall ~~be paid in full,~~receive (a) $88,704,697 in Cash, ~~by the Trustee in accordance with the terms~~ on the Effective Date and (b) one or more Distributions of Post-Effective Date Available Cash in an amount up to, but not to exceed, the BSP Senior Secured Claim Deferred Portion of $5.5 million after payment in full in Cash of the Trustee Deferred Compensation and the NYC Priority Deferred Tax Claim Amount; *provided* that, the balance of the BSP Senior Secured Claim arising under the BSP Settlement Agreement.~~ not paid pursuant to Class 2 shall be added to the BSP Subordinated Secured Claim.~~  The Trustee shall make such ~~Distributions~~ Distribution to BSP from the Gross Sale Proceeds and Post-Effective Date Available Cash.

iii.    Voting:  The BSP Senior Secured Claim is ~~not an~~ impaired ~~Claim.  In accordance with section 1126(f) of~~under the ~~Bankruptcy Code, the~~Plan.  The holder of the BSP Senior Secured Claim is ~~conclusively presumed to accept this Plan and is not~~therefore entitled to vote to accept or reject the Plan, and the vote of such holder will ~~not~~ be solicited with respect to such Allowed Claim.

c.    Class 3 – Other Secured Claims

iv.    Claims in Class:  Class 3 consists of all Other Secured Claims but which, for the avoidance of doubt, excludes the BSP Senior Secured Claim and the BSP Subordinated Secured Claim.

v.    Treatment:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different, less favorable ~~treatment~~, each holder of an Allowed Other Secured Claim will receive, in full and final

satisfaction, settlement, and release of and in exchange for such Allowed Other Secured Claim, Cash in an amount equal to the Allowed amount of such Other Secured Claim on the earlier of (x) the Closing Date and (y) as soon as practicable after its Other Secured Claim becomes Allowed.  Distributions in satisfaction of Allowed Other Secured Claims shall be made from the Gross Sale Proceeds.  For the avoidance of doubt, the amount of any Allowed Other Secured Claim shall be equal to the value of its collateral and, pursuant to Section 506 of the Bankruptcy Code, any such claimed amount in excess of the value of its collateral shall receive a Distribution as a General Unsecured Claim under Class 4.

vi.    Voting:  The Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

d.    Class 4 – General Unsecured Claims

i.    Claims in Class:   Class 4 consists of all General Unsecured Claims.

ii.    Treatment:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, all such Allowed Claims, each holder of an Allowed General Unsecured Claim will receive, in full and final satisfaction, settlement, and release of and in exchange for such Allowed General Unsecured Claim, one or more Distributions of CashPost-Effective Date Available Cash on a Pro Rata basis after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, and the Debtor Professional Fee Deficiency, in an amount up to, but not to exceed, the Allowed amount of such holder's Other General Unsecured Claim.  Distributions in satisfaction of Allowed General Unsecured Claims shall be made on a Pro Rata basis from the Net Available Cash.

28

       iii.     Voting:  The General Unsecured Claims are impaired Claims.  Holders of such Claims are therefore entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed General Unsecured Claims.

e.     Class 5 – BSP Subordinated Secured Claim

       i.     Claims in Class:   Class 5 consists of the BSP Subordinated Secured Claim.

       ii.     ~~Treatment:~~Treatment:  The BSP Subordinated Secured Claim shall be secured by all assets of the Debtor's estate, including cash.  Commencing on the Effective Date and thereafter, the holder of the Allowed BSP Subordinated Secured Claim shall receive one or more Distributions of ~~Cash~~Post-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Amount, the Debtor Professional Fee Deficiency, and Allowed General Unsecured Claims, in an amount up to, but not to exceed, the Allowed amount of such Claim in full and final satisfaction, settlement, and release of, and in exchange for, the Allowed BSP Subordinated Secured Claim. ~~ Distributions in satisfaction of the Allowed BSP Subordinated Secured Claim shall be made from Net Available Cash, but only after all Allowed General Unsecured Claims in Class 4 have been paid in full in Cash or otherwise satisfied in accordance with the terms of this Plan.~~

       iii.     Voting:  The BSP Subordinated Secured Claim is impaired under the Plan.  The holder of the BSP Subordinated Secured Claim is therefore entitled to vote to accept or reject the Plan, and the vote of such holder will be solicited with respect to such Allowed Claim.

f.     Class 6 - Subordinated Insider Claims

       i.     Claims in Class:  Class 6 consists of all Subordinated Insider Claims.

       ii.     Treatment:  Except to the extent that a holder of an Allowed Subordinated Insider Claim agrees to less favorable treatment and only after each Allowed General Unsecured Claim and the Allowed BSP Subordinated Secured Claim ~~has~~have been paid in

29

full or otherwise satisfied in accordance with the terms of this Plan, then each holder of an Allowed Subordinated Insider Claim shall receive one or more Distributions of CashPost-Effective Date Available Cash after payment in full in Cash of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim Deferred Portion, the Debtor Professional Fee Deficiency, Allowed General Unsecured Claims, and the BSP Subordinated Secured Claim, in an amount up to, but not to exceed, the Allowed amount of such Other Subordinated Insider Claim in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Claim. Distributions in satisfaction of Allowed Subordinated Insider Claims shall be made on a Pro Rata basis from the Net Available Cash, only after all Allowed General Unsecured Claims and the Allowed BSP Subordinated Secured Claim have been paid in full in Cash or otherwise satisfied in accordance with the terms of this Plan.

    iii.    Voting:  The Subordinated Insider Claims are impaired Claims, and they are not anticipated to receive any Distribution under the Plan.  Therefore, the.  The holders of Subordinated Insider Claims are conclusively presumed to have rejectedreject the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Subordinated Insider Claims.

  (b)g.   Class 7 - Equity Interests

    i.    Interests in Class:  Class 7 consists of Allall Equity Interests.

    ii.    Treatment:    Except as provided for herein, the holders of Equity Interests are impaired and, as of the Effective Date, shall retain their Equity Interests in the Debtor and the right to receive any surplus remaining in the Estate after all Allowed Claims have been paid or otherwise resolved and the Chapter 11 Case fully administered and closed.

    iii.    Voting:  Equity Interests are impaired under the Plan, as they are not anticipated to receive any Distribution under the Plan.  Therefore, the holders of Equity Interests are conclusively presumed to have rejected

the Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Equity Interests.

**B.    Priority of Distribution from BSP Senior Secured Claim and Proceeds of Non-Real Estate Assets**

In order to facilitate confirmation of the Plan, and notwithstanding the foregoing described treatment, Benefit Street has agreed to allow for distribution of amounts owed to it on account of its Senior Secured Claim and Subordinated Secured Claim from proceeds of the Closing of the sale of the hotel and proceeds of non-real estate assets recovered after the Effective Date in the following order of priority:

*Proceeds Disbursed at Closing*: At Closing, BSP will receive $88,704,697 (or such other amount to which BSP and the Trustee have agreed under the Twelfth Interim Cash Collateral Order), with the balance of such Closing proceeds being: (i) escrowed for payment to the Trustee and Trustee professionals on account of accrued and unpaid fees, to be paid pursuant to subsequent Order of the Court; (ii) paid at Closing as transaction costs to parties facilitating closing as required under the Purchase and Sale Agreement approved by the Sale Order; (iii)  escrowed in the amount of $150,000 to fund the post-Effective Date litigation trust created by the Plan; and (iv) $964,463.25 escrowed for payment to professionals of the Debtor to pay each such claimant's pro rata share of its Claim (or as otherwise agreed amongst such professionals) once Allowed by the Bankruptcy Court, with the balance of such claim (the "Debtor Professional Deficiency Claim") paid after Closing pursuant to the below waterfall.

*Proceeds Disbursed After Closing*.  After Closing, proceeds of liquidation of non-real estate assets will be distributed on account of Allowed Claims in the following order of priority, unless a different treatment is accepted by any holder of any Claim, the Trustee and BSP:

(i)      *First*, to the Trustee and Trustee professionals for their approved reasonable compensation earned after the Closing of the Sale;

(ii)     *Second,* to the Trustee and Trustee professionals for their amount of agreed compensation deferred but earned prior to the closing of the Sale and as approved by the Court;

(iii)    *Third,* to the balance of allowed priority tax claims owed to the City and State of New York in the amount of $1,768,286;

(iv)    *Fourth,* on account of BSP's Senior Secured Amount, $5.5 million to BSP (with the balance of BSP's Senior Secured Amount being added to BSP's Subordinated Secured Amount) (each such term as defined in the BSP Settlement Agreement);

(v)     *Fifth*, to the Debtor Professionals, *pro rata* (or in such manner as otherwise agreed upon as between the Debtor Professionals) on account of the Debtor

Professional Deficiency Claim, and to other professionals retained by the estate to the extent allowed by order of the Court, as agreed between the Trustee, Benefit Street and the relevant professional;

(vi)   *Sixth*, to general unsecured creditors on account of allowed general unsecured claims;

(vii)   *Seventh*, to BSP on account of its Subordinated Secured Amount (as defined in the BSP Settlement Agreement, plus additional amounts subordinated as described herein); and

(viii)   *Eighth*, to insiders of the Debtor on account of any of their allowed claims and interests.

**B.C.   Acceptance or Rejection of The Plan**

Class 2 (BSP Secured Claim), Class 4 (General Unsecured Claims) and Class 5 (BSP Subordinated Secured Claim) are the only Classes of Claims of the Debtor that are entitled to vote to accept or reject the Plan. Such Classes shall have accepted the Plan if (a) the holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code. If there are no votes cast in any Class that is entitled to vote on the Plan, then the Plan shall be deemed accepted by such Class. Classes 1 (Other Priority Claims), 2 (the BSP Senior Secured Claim),) and 3 (Other Secured Claims) are not impaired. Therefore, such Classes are deemed to have accepted the Plan by operation of law and are not entitled to vote to accept or reject the Plan. Classes 6 (Subordinated Insider Claims) and 7 (Equity Interests) are not anticipated to receive any Distributions under the Plan. Therefore, such Classes are deemed to have rejected the Plan by operation of law and are not entitled to vote to accept or reject the Plan.

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from the Plan for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code.

The Trustee requests Confirmation of this Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Trustee reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### C.D.    Implementation of the Plan

Following the Effective Date, the Plan will be implemented by the Trustee or the Plan Administrator, as the case may be, in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

The Plan is based on the BSP Settlement Agreement entered into between the Trustee and BSP and approved by the Bankruptcy Court.  Both the treatment of the BSP Secured Claim under this Plan and the Sale of the Hotel and related Assets are premised on the BSP Settlement Agreement except as may be modified by the Plan.

The primary source of funding the Distributions and payments required to be made under the Plan shall be the Gross Sale Proceeds generated by the Sale of the Debtor's Hotel and related Assets.  Additionally, the net proceeds, if any, resulting from the possible prosecution of the Retained Causesclaims and causes of Actionaction by the Trustee or the Plan Administrator, as the case may be, on behalf of the Debtor's Estate shall serve as an additional source of funding Distributions to holders of the Trustee Deferred Compensation, the NYC Priority Deferred Tax Claim Amount, the BSP Senior Secured Claim, the Debtor Professional Deficiency Amount, Allowed Unsecured Claims, and the BSP Subordinated Secured Claim and Allowed General Unsecured Claims..

The Confirmation Order may provide for the appointment of the Plan Administrator.  The compensation of the Plan Administrator shall be as set forth in the Plan Supplement.  The Plan Administrator shall be deemed the Estate representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under sections 704 and 1106 of the Bankruptcy Code.

The Plan Administrator may act for the Debtor's Estate in a fiduciary capacity for the Estate, subject to the provisions of the Plan.  On the Effective Date, if appointed, the Plan Administrator shall succeed to all of the rights of the Trustee with respect to the Assets of the Estate.  The powers and duties of the Plan Administrator or the Trustee, as the case may be, shall include, without further order of the Bankruptcy Court, except where expressly stated otherwise, the following rights or obligations:

> (i)     to take such steps as may be necessary or otherwise desirable to administer and close any and all of the transactions as may be contemplated by the terms of the Sale, the Settlement Agreement or the Plan;

> (ii)    to invest Cash and withdraw and make Distributions of Cash to holders of Allowed Claims and to pay taxes and other obligations owed by the Estate or incurred by the Trustee or the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

> (iii)   to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in

connection with administering the Assets;

(iv)   to engage attorneys, consultants, agents, employees, and all professional persons, to assist with respect to the Trustee and/or Plan Administrator's responsibilities;

(v)   to pay the fees and expenses of for the attorneys, consultants, agents, employees, and professional persons engaged by the Trustee and/or the Plan Administrator and to pay all other expenses in connection with administering the Plan and for winding down the affairs of the Estate in accordance with the Plan;

(vi)   to satisfy any liabilities, expenses and other Claims incurred by the Trustee and/or Plan Administrator in the ordinary course of business and without further order of the Bankruptcy Court;

(vii)   to execute and deliver all documents, and take all actions, necessary to consummate the Plan and close the Chapter 11 Case;

(viii)   to dispose of, and deliver title to others of, or otherwise realize the value of, all the remaining Assets in accordance with the terms of the Plan;

(ix)   to oversee compliance with the Estate's accounting, finance, and reporting obligations;

(x)   to prepare such periodic reports as may be required by the United StatesU.S. Trustee;

(xi)   except as otherwise provided for in the Plan, to object to Claims against the Debtor's Estate;

(xii)   except as otherwise provided for in the Plan, to compromise and settle Claims against the Debtor's Estate;

(xiii)   to implement and/or enforce all provisions of the Plan;

(xiv)   to implement and/or enforce all agreements entered into prior to the Effective Date;

(xv)   to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(xvi)   to investigate, prosecute, settle and collect upon Retained

34

Causes of Action.; and

(xvii)  to use such other powers as may be vested in or assumed by the Trustee or the Plan Administrator, as the case may be, pursuant to the Plan or Bankruptcy Court Order or as may be necessary and proper to carry out the provisions of the Plan.

### D.E.  Preservation of Causes of Action

In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Trustee or the Plan Administrator, as the case may be, may pursue all Retained Causes of Action on behalf of the Debtor's estate, including, without limitation, all causes of action under Chapter 5 of the Bankruptcy Code.  Any Distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Trustee or the Plan Administrator, as the case may be, to pursue and prosecute any and all causes of action on behalf of the Debtor's Estate against third parties.  Except as otherwise set forth in the Plan, all claim and causes of action belonging to the Debtor's Estate shall survive Confirmation.

On and after the Effective Date, the Trustee or the Plan Administrator, as applicable, may pursue on behalf of the Debtor's Estate any Retained Cause of Action in his or her sole discretion.  No Entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Retained Causes of Action against them as any indication that the Trsutee or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against them.  The failure of the Trustee to specifically list any claim, right of action, suit, proceeding, or other Retained Cause of Action in this Plan, the Plan Supplement, the Disclosure Statement, or otherwise, does not, and will not, be deemed to constitute a waiver or release by the Trustee or the Plan Administrator, as applicable, of such claim, right of action, suit, proceeding, or other Retained Cause of Action.  The Trustee and the Plan Administrator, as applicable, will retain the right to pursue such claims, rights of actions, suits, proceedings, and other Retained Causes of Action in their sole discretion and, therefore, the failure to list a claim, right of action, suit, proceeding, or other Retained Cause of Action shall not result in a limitation of the right to pursue the same on and after the Effective Date based on any preclusion doctrine, including, but not limited to, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches.

### E.F.  Plan Distributions

The Trustee or the Plan Administrator, as applicable, shall make Distributions to holders of Allowed Claims in accordance with Article IVIII of the Plan on, or as soon as reasonably practicable after, the Effective Date.  From time to time, the Trustee or the Plan Administrator, as applicable,  shall make Pro Rata Distributions to holders of Allowed Class 4 Claims and the holder of the Allowed BSP Subordinated Secured Claim in Class 5 in accordance with Article IVIII of the Plan.

The Trustee or theNotwithstanding Section 6.1(a) of the Plan, subject to the Cash Collateral Order, the Trustee or Plan Administrator, as applicable, may retain such amounts (i) as are reasonably necessary to meet contingent liabilities and to maintain

the value of the Assets of the Estate during the winding up and closing of the Chapter 11 Case, (ii) to pay reasonable administrative expenses (including the costs and expenses of the Trustee and/or the Plan Administrator, ~~as applicable,~~ and the fees, costs and expenses of all professionals retained by ~~either of them~~the Trustee and/or the Plan Administrator, and any taxes imposed in respect of the Assets)), (iii) to satisfy other liabilities to which the Assets are otherwise subject, in accordance with the Plan, and (iv) to establish any necessary reserve.  All Distributions to the holders of Allowed Claims shall be made in accordance with the Plan.  The Trustee or the Plan Administrator, as applicable, ~~will have the right to~~may withhold from amounts distributable to any Person any and all amounts determined in the Trustee or the Plan Administrator's reasonable sole discretion ~~of the Trustee or the Plan Administrator, as applicable,~~ to be required by any law, regulation, rule, ruling, directive or other governmental requirement.  Holders of Allowed Claims shall, as a condition to receiving Distributions, provide such information and take such steps as the Trustee or the Plan Administrator, as applicable, may reasonably require to ensure compliance with withholding and reporting requirements and to enable ~~the Trustee or the Plan Administrator, as applicable,~~them to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.  In the event that a holder of an Allowed Claim does not comply with the Trustee or the Plan Administrator's requests in the preceding sentence within thirty (30) calendar days, no Distribution shall be made on account of such Allowed Claim, such holder shall have forfeited its right to Distributions under the Plan, and the Trustee or the Plan Administrator, as applicable, shall reallocate such Distribution for the benefit of all other holders of Allowed Claims as the case maybe, in accordance with the Plan.

(i)      *Address for Delivery of Distributions and Forfeiture of Claims*

If any Distribution is returned to the Trustee or ~~the~~ Plan Administrator, ~~as applicable,~~ as undeliverable, no Distributions shall be made to such holder unless the Trustee or ~~the~~ Plan Administrator is notified of such holder's then current address within ~~ninety (90)~~sixty (60) calendar days after such Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Distribution, and the undeliverable Distributions shall be reallocated and distributed to holders of Allowed Claims in accordance with the Plan.  Moreover, any holder of a Claim who has not filled out and returned documents to the Trustee or Plan Administrator necessary to receive a Distribution (such as a signed form W-9, if applicable) shall forfeit its Claim and accompanying Distribution if such holder fails to fill out and return such documents within thirty (30) days after notice by the Trustee or Plan Administrator.

(ii)      *Distributions under Twenty-Five Dollars*

Neither the Trustee nor the Plan Administrator, as applicable, will  be required to make any Cash payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to the Trustee or the Plan Administrator, as applicable, on or before twenty (20) days after the Effective Date.  Any such Distributions not subject to a timely request for payment shall be distributed to the other holders of Allowed Claims in accordance with the provisions of the Plan.

(iii)     *Time Bar to Cash Payments*

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check must be made directly to the Trustee or the Plan Administrator, as applicable, by the holder of the Allowed Claim to whom such check was originally issued within one hundred eighty (180) days of the date of issuance thereof.  If no request is made as provided in the preceding sentence, any Claims in respect of such void check shall be discharged and forever barred and such unclaimed Distribution shall be reallocated and distributed to those holders of Allowed Claims set forth in the Plan.

(iv)     *Distributions to Holders as of the Confirmation Date*

As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims.  Neither the Trustee or the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan) with only those holders of record as of the close of business on the Confirmation Date.

(v)     *Abandoned Assets*

The Plan Administrator may abandon any Assets, which book value shall not exceed $10,000, without the need for additional approval of the Bankruptcy Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate and will instead be deemed to revert to the Post-Effective Date Debtor.

### ~~F.~~G.    **Wind-Up**

The Trustee or the Plan Administrator, as ~~the case may be~~applicable, may seek to close the Chapter 11 Case and be discharged at such time as (i) all of the Assets have been distributed pursuant to the Plan, (ii) the Trustee or the Plan Administrator, as the case may be, determines, in his or her sole discretion, that the administration of any remaining Assets is not likely to yield sufficient additional Post-Effective Date Available Cash to justify further pursuit, or (iii) all Distributions required to be made by the Trustee or the Plan Administrator, as applicable, under the Plan have been made.  If at any time the Trustee or the Plan Administrator, as applicable, determines in reliance upon such professionals as they may retain that the expense of administering the Plan and the Debtor's Estate so as to make a final Distribution to holders of Allowed Unsecured Claims is likely to exceed the value of the Assets remaining in the Estate, the Trustee or the Plan Administrator may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to seek and obtain an Order of the Bankruptcy Court closing the Chapter 11 Case and discharging the Trustee and/or the Plan Administrator, (y) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation," as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtor, the Trustee, and any insider of the

Liquidating Trust, and (z) close the Chapter 11 Case.transfer the balance to BSP in account of its Senior Secured Claim or Subordinate Secured Claim, as applicable.

Any Distribution of Assets (Cash or otherwise) provided for under the Plan which is unclaimed after ninety (90) days following such Distribution shall irrevocably revert to the Estate for re-Distribution in accordance with the Plan. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

**G.H.   Distributions on Disputed Claims**

*(i)      (i)      No Distributions Pending Allowance.*

Notwithstanding any provision to the contrary in the Plan, and except as otherwise agreed by the relevant parties, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

*(ii)      (ii)      Special Rules for Distributions to Holders of Disputed Claims.*

All Distributions made pursuant to the Plan on account of a Disputed Claim that is later deemed an Allowed Claim by the Bankruptcy Court shall be made together with any other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates distributions were previously made to holders of Allowed Claims included in the applicable Class (or holders of unclassified Claims, as applicable);  provided, however, that no interest shall be paid on account of such Allowed Claims unless required under applicable bankruptcy law.

*(iii)      Disputed Claims Reserve.*

The Trustee or the Plan Administrator, as applicable, shall establish and administer the Disputed Claims Reserve.  Each holder of a Disputed Unsecured Claim that becomes an Allowed Unsecured Claim after the Effective Date shall receive the treatment set forth in Section 3.2 of the Plan.

**H.I.   Conditions to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms hereof:

(a)      the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order;

(b)——the Plan SupplementTrustee Fee Escrow shall have been filedfunded with the Bankruptcy Court.

(c)(b)   Trustee Fee Escrow Amount, and the Settling Debtor Professional Fee Escrow Account shall have been funded with the Settling Debtor Professional Fee Escrow Amount, the Plan Reserve Account shall have been funded with an amount sufficient to pay or otherwise satisfy all Plan Reserve Obligations, and the Post-Effective Date Reserve shall have been established and funded;

(c)      the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(d)      the Sale shall have closed;

(e)      the Trustee shall have made all Distributions required to be made on or before the Effective Date;

(f)      all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained, if any, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

(g)      all documents and agreements necessary to implement the Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

**I.J.   Waiver of Conditions Precedent**

Each of the conditions precedent to the Effective Date set forth in Section 7.1 may be waived only if waived in writing by the Trustee and BSP to the extent required by the Settlement Agreement, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**J.K.   Procedures for Disputed Claims**

(i)      (i)               *Allowance of Claims*

After the Effective Date, the Trustee orand the Plan Administrator, as applicablethe case may be, shall have and retain any and all rights and defenses the Debtor and /or its Estate had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

(ii)    (ii)    *Objections to Claims*

(a)    Authority.  The Trustee or the Plan Administrator, as applicable, or any party in interest shall have authority to (i) file objections to any Claim, and to withdraw any objections to any Claim that they may file, (ii) settle, compromise, or litigate to judgment any objections to any Claim, and (iii) except as may otherwise required by the Plan set forth above, resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Trustee or the Plan Administrator, as applicable, unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.

(b)    Amendments to Claims.  After the Confirmation Date, a Proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Trustee or the Plan Administrator, as applicable, unless the holder of such Claim has obtained prior Bankruptcy Court authorization to file the amendment.

(c)    Objection Deadline.  As soon as practicable, but no later than the Claims Objection Deadline, the Trustee or the Plan Administrator, as applicable, may file objections with the Bankruptcy Court and serve such objections on the holders of the Claims to which such objections are made.  Nothing contained in the Plan is intended to limit the right of the Trustee or the Plan Administrator, as applicable, to object to Claims, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon the filing of a notice by the Trustee or the Plan Administrator, as applicable.

(iii)    (iii)    *Estimation of Disputed Claims*

For purposes of calculating and making Distributions and establishing reserves under the Plan, the Trustee or the Plan Administrator, as applicable, may at any time after the Confirmation Date in good faith request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Trustee of the Plan Administrator previously objected to such Disputed Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, the amount so estimated shall

constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trustee or the Plan Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

> **K.L.   Resolution of Claims.**

Except as otherwise provided ~~in the Plan~~herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Trustee or the Plan Administrator, as applicable, shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, ~~Retained~~ Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or ~~its~~the Estate may hold against any Person, without the approval of the Bankruptcy Court, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement. entered into in connection herewith.  The Trustee or the Plan Administrator, as ~~applicable,~~the case may be, or their respective successors may pursue ~~such retained Claims, rights,~~ Retained Causes of Action, suits, or proceedings, as appropriate, in accordance with the best interests of the Estate and ~~its creditors~~Creditors.

> **M.    Disallowed Claims**

> All Claims held by persons or entities against whom the Debtor or the have commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and holders of such Claims shall not be entitled to vote to accept or reject the Plan.  Claims that are deemed Disallowed pursuant to this Section 8.5 shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Trustee or the Plan Administrator on behalf of the Estate from such party have been paid.

> **L.N.   Treatment of Executory Contracts**

Rejection: Except as may otherwise be provided in the Plan, on the Effective Date, all Executory Contracts shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (a) has previously been assumed by order of the Bankruptcy Court in effect as of the Effective Date (which order may be the Confirmation Order); (b) is the subject of a motion to assume filed on or before the Effective Date;  or (c) has expired or terminated pursuant to its own terms.  The Confirmation Order will constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the assumptions or assumption and assignments or rejections described ~~in the Plan~~herein as of the Effective Date.  Unless otherwise

indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts in the Plan will be effective as of the Effective Date. Each Executory Contract assumed or assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the Trustee on behalf of the Debtor'sDebtors Estate, or the assignee, in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. For the avoidance of doubt, any Executory Contracts assumed and assigned to the Purchaser (or its designee) in connection with the Sale and as approved by the Sale Order shall not be affected by the Plan and/or the Confirmation Order.

Claims for Rejection: Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of Executory Contracts pursuant to the Plan must be filed no later than the applicable Bar Date. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts that are not timely filed by the applicable Bar Date shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor's Estate, the Trustee or the Plan Administrator without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

### M.O. Exculpation and Limitation of Liability

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE, TO THE EXTENT PERMITTED UNDER SECTION 1125(e) OF THE BANKRUPTCY CODE AND PROFESSIONAL RULES OF CONDUCT, THE EXCULPATED PARTIES SHALL NOT HAVE OR INCUR ANY LIABILITY FOR ANY ACT OR OMISSION TAKEN OR NOT TAKEN BETWEEN THE PETITION DATE AND THE EFFECTIVE DATE IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE, THE NEGOTIATION AND FILING OF THE DISCLOSURE STATEMENT, THE PLAN OR ANY DOCUMENT IMPLEMENTING THE PLAN, THE PLAN ADMINISTRATOR AGREEMENT, THE PLAN SUPPLEMENT, THE BSP SETTLEMENT AGREEMENT, THE SALE, THE FILING OF THE CHAPTER 11 CASE, THE SETTLEMENT OF CLAIMS OR RENEGOTIATION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS THAT ARE DETERMINED BY A FINAL ORDER TO BE THE RESULT OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT (INCLUDING FRAUD) OR ANY OBLIGATIONS THAT THEY HAVE UNDER OR IN CONNECTION WITH THE PLAN OR THE TRANSACTIONS CONTEMPLATED IN THE PLAN, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND OBLIGATIONS UNDER THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE EXCULPATION SET FORTH ABOVE DOES NOT EXCULPATE ANY OF THE EXCULPATED PARTIES' POST-EFFECTIVE DATE OBLIGATIONS UNDER THE PLAN, THE BSP SETTLEMENT AGREEMENT, THE

SALE ORDER, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING, BUT NOT LIMITED TO, THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.

### N.P.    Release of BSP

Pursuant to the Plan, in consideration of the BSP Settlement Agreement, the Sale and the treatment of its Allowed Secured Claim as provided for in the Planherein and other good and valuable consideration given by BSP to the Trustee as it relates to the Debtor's Estate, the Trustee, on behalf of himself (in his capacity as Chapter 11 trustee for the Debtor's Estate), the Debtor and the Debtor's Estate (collectively, the "Releasors"), each hereby waives, remises, releases and forever discharges BSP, its predecessors, successors, assigns, affiliates, shareholders, partners, members, managers, directors, officers, accountants, attorneys, employees, agents, representatives and servants of, from and against any and all claims, actions, causes of action, suits, proceedings, defenses, counterclaims, contracts, judgments, damages, accounts, reckonings, executions, and liabilities whatsoever of every name and nature, whether known or unknown, whether or not well founded in fact or in law, and whether in law, at equity or otherwise, which any of the Releasors ever had or now has for or by reason of any matter, cause or anything whatsoever to the Effective Date relating to or arising out of any of the Adversary Proceeding, the Loan, the HotelAssets, the Chapter 11 Case, the Collateral, the Foreclosure Proceeding, the Appeal, and/or any actual or alleged acts or omissions of BSP with respect thereto, or the enforcement of any of BSP's rights or remedies with respect to the Debtor, the Debtor's Estate, the Insiders or any other person or entity with respect to the Loan.  Any capitalized terms used in this discussion of the release BSP is receiving that are notSection 10.3 not otherwise defined in the Plan shall have the meanings ascribed to them in the BSP Settlement Agreement.

### Q.      Release of and by Debtor Professionals

The releases set forth in paragraphs 7 and 8 of the *Stipulation and Order by and between the Chapter 11 Trustee, Benefit Street Partners Realty Operating Partnership, and the Debtor's Professionals*, by and among the Trustee, BSP and certain of the Debtor's professionals are hereby incorporated into the Plan and restated as of the Effective Date pursuant to the Confirmation Order.

### R.      No Release of Insiders

For the avoidance of doubt, nothing set forth herein, and no action taken by the Trustee or BSP in regard to implementation of the same, are intended to and shall not serve to release any claims against Toby Moskovits, Michael Lichtenstein, their affiliated entities and professionals (except in regards to releases by and among certain Debtor professionals, as expressly agreed to by BSP and the Trustee and approved by the Court), any of the Debtor's other insiders (as such term is defined in 11 U.S.C. § 101(31)), the Williamsburg Hotel BK LLC, the Debtor's prepetition receiver, Constantino Segonas and his affiliated entities and professionals, or any transferees (including subsequent transferees) of avoidable transfers made by any of the foregoing.

O.S.    **No Discharge**

Because the Post-Effective Date Debtor is liquidating, it is not entitled to a discharge of obligations pursuant to section 1141 of the Bankruptcy Code.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

## VII.    TAX CONSEQUENCES OF THE PLAN

Given both the complexity of federal, state, local, and foreign tax laws and the interplay between those tax laws and the Bankruptcy Code, each holder of a Claim or Interest should consult with its own tax advisor as to the specific tax consequences to such holder of the confirmation and implementation of the Plan, including the application and effect of federal, state, local, and foreign tax laws.  The Trustee and his attorneys and other advisors make no representations as to the tax consequences of the Plan.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS IN CIRCULAR 230, YOU ARE HEREBY INFORMED THAT (I) ANY TAX ADVICE CONTAINED IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES UNDER THE IRC AND (II) THE ADVICE IS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED IN THE DISCLOSURE STATEMENT.

## VIII.    RISK FACTORS

HOLDERS OF ALL CLASSES OF CLAIMS AND INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.

### A.    Risk of Non-Confirmation of the Plan

Although the Trustee believes that the Plan will satisfy all requirements necessary for Confirmation by the Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  There can also be no assurance that modifications of the Plan will not be required for Confirmation, that any negotiations regarding such modifications would not adversely affect the holders of the Allowed Claims or that any such modifications would not necessitate the re-solicitation of votes.

B.      **Nonconsensual Confirmation**

In the event any impaired class of claims does not accept a plan of reorganization or liquidation, a bankruptcy court may nevertheless confirm such plan of reorganization or liquidation at the proponent's request if at least one impaired class has accepted the plan of reorganization (with such acceptance being determined without including the acceptance of any "insider" in such class) and, as to each impaired class that has not accepted the plan of reorganization or liquidation, the Bankruptcy Court determines that the plan of reorganization or liquidation "does not discriminate unfairly" and is "fair and equitable" with respect to non-accepting impaired classes.  Consequently, in the event that any Impaired Class of Claims fails to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, the Trustee reserves the right to request nonconsensual Confirmation of the Plan in accordance with section 1129(b) of the Bankruptcy Code.

C.      **Risk that Conditions to Effectiveness Will Not Be Satisfied**

Article X of the Plan contains certain conditions precedent to the effectiveness of the Plan.  There can be no assurances that the conditions contained in Article X of the Plan will be satisfied.  In particular, there is a risk that the conditions precedent to closing the Sale set forth in the Purchase Agreement are not satisfied and that the Sale does not close.

In particular, there is a risk that the Trustee, on behalf of the Estate, does not receive sufficient proceeds from the SaleIn addition, as described herein, whether the Plan can go effective requires that the Bankruptcy Court disallow or, in the alternative, estimate at zero for purposes of distribution, certain administrative expense claims that have been asserted against the Debtor's Estate.  If the Bankruptcy Court ultimately allows such claims at amounts greater than zero, there is a risk that the proceeds of the Sale will not be sufficient to satisfy the Allowed BSP Senior Secured Claim, Allowed Administrative Claims and Allowed Priority Claims and otherwise establish and fund the requisite reserves under the Plan necessary for the Effective Date to occur.  In such a case, the Trustee may seek to withdraw the Plan and close the Sale pursuant to section 363 of the Bankruptcy Code outside of the Plan as permitted by the Bankruptcy Court.

D.      **There May Not Be Recoveries for the Holders of Allowed General Unsecured Claims and the Allowed BSP Subordinated Secured Claim**

The potential recovery to holders of Allowed Claims in Classes 2, 4 and 5 depends on, among other things, the outcome of the claims reconciliation and objection process (particular as to the Professional Fee Claims filed by the Debtor's former Professional Persons), the Net Sale Proceeds generated by the Sale and the proceeds, if any, generated by pursuit of the Retained Causes of Action by the Trustee or the Plan Administrator, as applicable.  Accordingly, the Trustee is unable at this time to project or estimate the level of recoveries, if any, holders of the Allowed BSP Senior Secured Claim in Class 2, the holders of Allowed General Unsecured Claims in Class 4, or the holder of the Allowed BSP Subordinated Secured Claim in Class will receive under the Plan.

E.      **Recoveries on Account of Retained Causes of Action are Speculative and Uncertain**

The ultimate recoveries, if any, that could be obtained by the Trustee or the Plan Administrator, as applicable, on behalf of holders of General Unsecured Claims is partially contingent on the Retained Causes of Action.  Recoveries on account of any of the Retained Causes of Action are speculative and uncertain due to the risk of success on the merits and the potential difficulties of collection and enforcement of any judgments.

F.      **Risk of Delayed Effective Date**

There can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived).  Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.  If the Plan is not consummated, there can be no assurance that the Chapter 11 Case would not be converted to a Chapter 7 liquidation case or that any alternative Chapter 11 plan would be as favorable to holders of General Unsecured Claims as the current Plan.  Either outcome may materially reduce or eliminate distributions to holders of Allowed General Unsecured Claims.

G.      **No Representations Outside This Disclosure Statement Are Authorized**

No representations concerning or related to the Debtor's Estate, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

## IX.      <u>ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF REJECTION</u>

Among the possible consequences if the Plan is rejected or if the Bankruptcy Court refuses to confirm the Plan are the following: (1) an alternative plan could be proposed or confirmed; or (2) the Chapter 11 Case could be converted to liquidation case under Chapter 7 of the Bankruptcy Code.

A.      **Alternative Plans**

As previously mentioned, with respect to an alternative plan, the Trustee and his professional advisors have explored various alternative scenarios and believe that the Plan enables the holders of Claims to realize the maximum recovery under the circumstances.  The Trustee believes the Plan is the best plan that can be proposed and serves the best interests of the Estate and other parties-in-interest.

B.      **Chapter 7 Liquidation**

The alternative to the Plan would be a conversion of the Debtor's case from Chapter 11 to Chapter 7.  However, as stated above and explained below, liquidation

under Chapter 7 would result in a significant reduction in value given the state of the current hospitality market, and an additional layer of administrative expenses, including Chapter 7 trustee commissions and fees for professionals retained by the Chapter 7 trustee, such as attorneys, accountants, and brokers.  Pursuant to the provisions of the Bankruptcy Code, these commissions and fees are required to be paid prior to Allowed General Unsecured Claims.

As discussed above with respect to the BSP Senior Secured Claim in Class 2, the General Unsecured Claims in Class 4 and the BSP Subordinated Secured Claim in Class 5, either each holder of a Claim in such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.  The Trustee believes that, in addition to significant additional costs and possible claims that may be incurred by the Debtor's Estate, there may be a corresponding diminution in value of the Estate's principal asset (the Hotel), all as a result of the delay and additional expense that would be caused by conversion of the case to a case under Chapter 7.  If this were to occur, the Trustee believes it could result in significantly reduced Distributions, if any, to holders of Class 2, 4 and Class 5 Claims.

Based on the anticipated decrease in the value of the Debtor's Assets in Chapter 7, the significant increase in the amount of Administrative Claims which would result from a conversion to Chapter 7, and loss of the material benefit resulting from BSP's agreement in the BSP Settlement Agreement to subordinate is right of payment on account of the BSP Secured Claim by at least $12.7 million (the BSP Subordinated Secured Claim amount as of August 14, 2022), but only in the context of the Plan proposed by the Trustee, the value of the Debtor's Estate available to satisfy Allowed General Unsecured Claims will be significantly less in a forced liquidation under Chapter 7 than under the instant Plan proposed by the Trustee.

Accordingly, the Trustee believes that his Plan provides holders of Claims with the best chance of receiving a greater distribution on account of their respective Allowed Claims.

## C.    No Limitation on Enforcement by SEC or the U.S. Attorney's Office

Notwithstanding any language to the contrary contained herein, in the Disclosure Statement, or in the Confirmation Order, no provision of the Plan or the Confirmation Order shall (a) preclude the SEC or the U.S. Attorney's Office from enforcing its police or regulatory powers;  or (b) enjoin, limit, impair, or delay the SEC or the U.S. Attorney's Office from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

## X.    RECOMMENDATION AND CONCLUSION

The Trustee believes that the Plan provides for the fair and equitable treatment to creditors and therefore recommends that holders of eligible Allowed Claims in Classes 2, 4 and 5 vote to accept the Plan.

Date:  ~~December 2, 2022~~February 14, 2023
       New York, New York

                              **STEPHEN  S.  GRAY**, **not  individually  but
                              solely in his capacity as Trustee**

                         By: */s/ Stephen S. Gray*_____
                              Stephen S. Gray


**TOGUT, SEGAL & SEGAL LLP**
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Neil Berger
Frank A. Oswald
Bryan M. Kotliar


*Counsel to Stephen S. Gray,*
*not individually, but solely in*
*his capacity as Chapter 11 Trustee*