TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Frank A. Oswald
Bryan M. Kotliar

*Attorneys for Stephen S. Gray,*
*Not Individually But Solely in His Capacity*
*as Chapter 11 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                      :
In re:                                :      Chapter 11
                                      :
96 WYTHE ACQUISITION LLC,             :      Case No. 21-22108 (SHL)
                                      :
                    Debtor.           :
                                      :
-------------------------------------------------------------x
```

## CHAPTER 11 TRUSTEE'S
## (I) STATEMENT IN SUPPORT OF ENTRY OF PROPOSED TWELFTH INTERIM CASH COLLATERAL ORDER AND (II) JOINDER TO RESPONSE OF BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. TO THE OBJECTION TO THE TWELFTH INTERIM CASH COLLATERAL ORDER FILED BY ERIC HUEBSCHER AND LOCKE LORD LLP

Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 trustee (the "Trustee") hereby files this (i) statement in support of the entry of the *Proposed Twelfth Interim Order for Use of Cash Collateral* [Docket No. 891, Ex. A] (the "Proposed Interim Order") and (ii) joinder to the response (the "BSP Response") filed by Benefit Street Realty Operating Partnership, L.P. ("Benefit Street") to the *Objection to the Twelfth Interim Cash Collateral Order* [Docket No. 911] (the "Objection") filed by Eric Huebscher (the "Examiner") and his counsel, Locke Lord LLP ("Locke Lord" and, together with the Examiner, the "Objectors"). As set forth in this Joinder and Statement in Support and in the BSP Response, the Trustee respectfully requests that the Court overrule the Objection and enter the Proposed Interim Order.

## STATEMENT IN SUPPORT OF PROPOSED INTERIM ORDER

1.      Since his appointment on May 31, 2022, the Trustee and his advisors have worked tirelessly to maximize the value of the Debtor's estate for the benefit of its creditors.  Those efforts have included expending substantial time and resources, with Benefit Street's consent and support, to among other things, (a) pursue a sale of the Hotel and related assets and obtain Court approval for the highest and best bid obtained after a robust auction and marketing process, (b) conduct discovery into potential additional claims and causes of action (which has been met in many cases with substantial resistance as this Court is aware), (c) diligence, reconcile, and resolve claims, including through agreements reached with substantial administrative and priority claimants for payment deferrals to allow for confirmation of a chapter 11 plan, (d) negotiate and file a chapter 11 plan and related disclosure statement that is now out for solicitation that provides for an orderly winddown of the estate and a path to payment of creditors that otherwise might not exist in a chapter 7 conversion, and (e) stabilize and operate the Hotel and maintain it in a saleable condition through the date of a closing, which would fund a chapter 11 plan providing a pathway for recovery to creditors who would otherwise have none.

2.      In light of Benefit Street's position as the estate's only secured lender, with liens on all of the Debtor's assets and by far the estate's largest creditor, the Trustee and his advisors have negotiated extensively with Benefit Street and its advisors for the consensual use of its collateral to fund these workstreams to pursue a value-maximizing outcome for this case.  To allow for a more streamlined sale process that capped Benefit Street's credit bidding rights and resolved the estate's largest claim, the Trustee entered into, and the Court approved as in the best interests of the Debtor's estate, the Settlement Agreement with Benefit Street (the "BSP Settlement Agreement").

2

*See Order Approving Settlement Agreement with Benefit Street Partners Operating Partnership, L.P.*, entered on October 21, 2022 [Docket No. 753].  The BSP Settlement Agreement provided the framework for a chapter 11 plan by subordinating a substantial portion of Benefit Street's otherwise senior secured claims under a chapter 11 plan, provided that the economics obtained on account of the sale allowed for sufficient proceeds to do so.  Around the same times as the Trustee's entry into the BSP Settlement Agreement, the Trustee and his advisors negotiated and obtained from Benefit Street entry of the *Eleventh Interim Order for Use of Cash Collateral* [Docket No. 685] (the "Eleventh Interim Cash Collateral Order") to allow the chapter 11 case to continue with sufficient funding through the completion of the sale process and the closing of the sale—and consummation of a chapter 11 plan—by the end of the year. The Eleventh Interim Cash Collateral Order included an expanded carve-out for various administrative expenses that Benefit Street agreed to pay from its collateral that substantially exceeded that set forth in prior cash collateral orders.

3.      Since the Trustee's entry into the BSP Settlement Agreement and the Court's entry of the Eleventh Interim Cash Collateral Order, the Trustee concluded the robust sale and marketing process, conducted the auction, and obtained Court approval for the $96 million bid submitted by Quantum Development Corp. (the "Purchaser").  While the $96 million sale proceeds are the best available under the circumstances, they are disappointingly below the level at which is required to pay all allowed administrative and priority claims in full, as well as Benefit Street's allowed claims—even with the benefit of the BSP Settlement Agreement—in sufficient amounts to confirm a chapter 11 plan.

4.      While Benefit Street could claim all of the sale proceeds on account of its liens and claims and terminate cash collateral use, it did not.  Instead, Benefit

3

Street negotiated a further interim cash collateral order, in the form of the Proposed

Interim Order, that extended the timeline of this case from January 31, 2023 through

March 31, 2023 to permit closing of the now-approved sale and fund a chapter 11 plan,

and agreed to further reduce its claims to allow for a chapter 11 plan to be confirmed.

That plan provides a pathway for additional recoveries, including by deferring

substantial administrative and priority claims with the consent of the holders of such

claims, and by further subordinating a portion of Benefit Street's senior secured claim

amounts.  All told, Benefit Street has agreed to almost $20 million of concessions and

accommodations off of its senior secured claim to permit confirmation of the pending

chapter 11 plan, as well as agreeing to pay for millions of dollars of estate expenses out

of its cash collateral through a voluntary carveout proposed in the Proposed Interim

Order.

5.       The Proposed Interim Order before the Court is the product of

extensive negotiations between the Trustee and his advisors and Benefit Street and its

advisors.  Following these negotiations, the Trustee, in the exercise of his business

judgment, determined that the Proposed Interim Order is in the best interest of the

Debtor and its estate in light of the many benefits of the pathway to plan confirmation

and carve-outs that it provides to allow the estate to continue to pursue closing of the

sale and confirm a chapter 11 plan rather than an immediate conversion of the case

where all creditors will very possibly receive no recovery.

6.       The Objectors attempt to cherry pick the Proposed Interim Order

for a single provision, the section 506(c) waiver, without articulating how either the

removal of that waiver, or, more importantly, the failure of the Court to approve the

Proposed Interim Order, will benefit their claims.  The Court should take note that as of

the date hereof, the Objectors have already received payment of a far greater percentage

4

of their claims than the Trustee and his professionals, who have not been paid any amounts since November 2022, and who have agreed to defer over $4 million of fees until closing of the sale and nearly $2 million of fees to post-closing recoveries on account of potential claims and causes of action.  Indeed, the Trustee's professionals have agreed to accept 80% of their compensation upon closing of the sale (while deferring the rest to recovery upon non-real estate assets post-closing), but the Examiner himself has received a far greater share of his requested compensation (92%), and Locke Lord has received almost as much of its requested compensation (75%).  The Debtor's professionals, on the other hand, will receive much less if the agreement currently under negotiation with them is finalized and approved.

7.    If there is any inequity, it is that the Examiner and Locke Lord have received too much compensation relative to available funds and other similarly situated administrative claimants.  The Court need not consider the treatment of administrative claims argued by the Objectors at this time, which is an issue for confirmation of the plan (or if no plan is confirmed, may be dealt with separately, and the Trustee, on behalf of the Debtor's estate, reserves all rights in that regard).

### JOINDER

8.    For the foregoing reasons, the Trustee hereby joins the BSP Response and supports Benefit Street's arguments and reasoning set forth therein. Nothing contained herein shall constitute a waiver of any rights or remedies of the Trustee, on behalf of the Debtor's estate, under the Bankruptcy Code or applicable law, including, without limitation, the right to (a) amend, modify, or supplement this Joinder and Statement in Support or (b) raise any other additional arguments at a later date.

5

## CONCLUSION

**WHEREFORE,** for the reasons set forth herein, the Trustee joins in the

Response and respectfully requests that the Court (a) overrule the Objection, (b) enter

the Proposed Interim Order, and (c) such other and further relief as may be just in

proper.

DATED:  February 27, 2023
        New York, New York

                                      STEPHEN S. GRAY
Not Individually But Solely in His
Capacity as Chapter 11 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Frank A. Oswald*
FRANK A. OSWALD
BRYAN M. KOTLIAR
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000