**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
Adam C. Rogoff, Esq.
P. Bradley O'Neill, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Co-Counsel for Benefit Street Partners Realty Operating Partnership, L.P.*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443
*Co-Counsel for Benefit Street Partners Realty Operating Partnership, L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| ---------------------------------------------------------x | |
|---|---|
| In re: | |
| 96 WYTHE ACQUISITION, LLC, | Chapter 11 |
| Debtor. | Case No.: 21-22108 (SHL) |
| ---------------------------------------------------------x | |

**RESPONSE OF BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. TO THE OBJECTION TO TWELFTH INTERIM CASH COLLATERAL ORDER FILED BY ERIC HUEBSCHER AND LOCKE LORD LLP**

Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street"), hereby responds to the *Objection to Twelfth Interim Cash Collateral Order* [ECF No. 911] (the "Objection") filed by Eric Huebscher (the "Examiner") and his counsel, Locke Lord LLP ("Locke

Lord"; collectively with the Examiner, the "Objectors").[1] As set forth below, the arguments raised by the Objectors are without merit and, with respect to Locke Lord, contradictory to a written agreement regarding treatment of its administrative claim. The *Proposed Twelfth Interim Order for Use of Cash Collateral* [ECF No. 898] (the "Proposed Interim Order") should be entered as requested in the *Notice of Presentment of Proposed Twelfth Interim Order for Use of Cash Collateral* [ECF No. 891] filed by Stephen S. Gray, not individually but solely in his capacity as the Chapter 11 Trustee of the above-captioned Debtor (the "Trustee") on February 7, 2023 (the "Notice of Presentment").

## I. Preliminary Statement

This case is administratively insolvent. Not only is there insufficient money to pay all allowed administrative claims in full, but there is insufficient value to pay Benefit Street's first priority secured claim in full and no ability for the estate to provide Benefit Street with adequate protection absent its consent. The foregoing notwithstanding, Benefit Street continues to authorize use of cash collateral to administer this case, including substantial sums already paid to the Objectors, in furtherance of the confirmation of a Chapter 11 plan providing for an orderly winddown of the estate and a path to payment of creditors.

As part of its agreement to use cash collateral to pay ordinary course operating expenses through the anticipated closing of the sale and to fund substantial additional amounts pursuant to the carve-out, Benefit Street has required, and the Trustee has agreed to include, in the Proposed Interim Order a waiver of the Section 506(c) surcharge (the "506(c) Waiver"). As set forth in the Trustee's statement in his support and joinder to this Response, the Trustee determined in his

[1] The Trustee and Benefit Street intend to pay the Examiner the allowed amount of his administrative claim upon the Effective Date of the Plan, which has been communicated to the Examiner numerous times. If the Plan is not confirmed, there may not be funds available for the Examiner or other administrative claimants (subject to agreed carveouts).

business judgment that the 506(c) Waiver is appropriate and in the best interest of the Debtor's estate. Importantly, pursuant to the carve-out, the estate is already effectively surcharging Benefit Street's collateral substantial amounts which would otherwise be subject to Benefit Street's liens and claims, but Benefit Street has agreed to pay to continue this case towards a successful conclusion under a Chapter 11 plan where recoveries for creditors are greater than the alternative scenario if the case were converted to chapter 7. To be clear, Benefit Street will not continue to agree to the Trustee's use of its cash collateral to fund this chapter 11 case—the estate's only source of funding given Benefit Street's liens and claims and the economic realities of the outcome of the sale—absent the 506(c) Waiver.

Apparently dissatisfied with the favorable treatment they have already received (which is disproportionate to other administrative creditors in this case), the Objectors now object to the 506(c) Waiver in derogation of a written agreement Locke Lord previously made with Benefit Street and without any meritorious basis in order to force payment of alleged claims with money that does not exist. The Examiner and Locke Lord have already been paid from Benefit Street's cash collateral $263,086.76 and $702,256.42, representing approximately 92% and 75% of their asserted claims, respectively, which is a far greater percentage that received by the Trustee and his professionals to date or any other administrative claimant in this case (other than trade creditors). For the reasons set forth below, the Objection should be overruled, and the Proposed Interim Order entered in the form attached to the Notice of Presentment.

## II.    Background Facts

96 Wythe Acquisition LLC (the "Debtor") filed the above-captioned case (the "Bankruptcy Case") on February 23, 2021 (the "Petition Date"). Benefit Street is the Debtor's single largest creditor and its primary pre-petition secured creditor under a loan made to the Debtor in the face

principal amount of $68,000,000.00 (the "Loan"). The Loan is secured by first-priority liens and security interests in The Williamsburg Hotel, located at 96 Wythe Avenue, Brooklyn, New York 11249 (the "Hotel") and other assets described in the mortgage and other loan documents governing the Loan. Benefit Street filed its proof of claim in the Bankruptcy Case on July 14, 2021, in the amount of $89,543,755.49, with interest and expenses continuing to accrue thereafter under the loan documents.

The Debtor filed its *Application to Use Cash Collateral* [ECF No. 4] on February 26, 2021, and interim orders authorizing use of cash collateral were entered on March 5, 2021 [ECF No. 15], March 19, 2021 [ECF No. 21], April 21, 2021 [ECF No. 28], June 21, 2021 [ECF No. 52], September 13, 2021 [ECF No. 111], October 13, 2021 [ECF No. 141], November 10, 2021 [ECF No. 181], December 14, 2021 [ECF No. 225], January 26, 2022 [ECF No. 353], and March 8, 2022 [ECF No. 449]. After the Trustee's appointment, Benefit Street and the Trustee negotiated a further interim order and revised budget, which included a substantially expanded carve-out from that set forth in prior orders, which was entered on September 19, 2022 [ECF No. 685].

Benefit Street moved to appoint an examiner. The Court granted this motion on November 8, 2021, and appointed the Examiner. On December 6, 2021, the Court approved the Examiner's application to employ Locke Lord as his counsel. The Examiner issued his report on February 28, 2022. On March 28, 2022, Benefit Street filed a renewed motion to appoint a chapter 11 trustee, and on March 31, 2022, the United States Trustee also moved for appointment of a trustee. After a three-day trial, the Court entered an order directing the appointment of a trustee, and the Court appointed the Trustee on May 31, 2022.

On October 21, 2022, the Court entered an order approving a settlement between Benefit Street and the Trustee under which Benefit Street was allowed a secured claim in the amount of

$95,952,130.85, plus subsequently accruing fees, expenses and contract rate interest, and a subordinated claim in the amount of $12,736,655.90, plus subsequently accruing default rate interest.

Following an auction conducted by the Trustee under procedures approved by the Court, on January 26, 2023, the Court entered an order approving the sale of the Hotel and certain related assets to a third-party buyer for approximately $96,000,000.00 (the "Sale"). ECF No. 881. On February 14, 2023, the Trustee filed a First Amended Plan of Liquidation (the "Plan") under which Benefit Street would receive $88,704,697.00 from the proceeds of the Sale upon closing or the effective date of the Plan, with the balance of its allowed secured claim deferred for possible recovery from other assets, including post-petition assets. In total, Benefit Street's subordinations and deferrals from its senior secured claim exceed $19 million, plus subsequently accruing default rate interest, all in an effort to confirm the Plan and pave the way for a recovery to creditors where none would otherwise exist.

On December 2, 2022, while the estate was in the midst of the auction and wrestling with a much lower than projected likely sale price, Locke Lord sent a letter to the Trustee and Benefit Street demanding immediate payment of all outstanding fees before year end (the "Demand Letter"), a true and correct copy of which is attached hereto as Exhibit A. Failing such payment, Locke Lord threatened to move to compel. Later that day, counsel for Benefit Street sent an email response to Locke Lord, explaining there were no available funds in the estate to make such payment, that all professionals (both estate and secured lender) had taken substantial reductions to see to the successful conclusion of the case in view of its administrative insolvency, and offering a 50% payment of Locke Lord's outstanding amount in full and final satisfaction of Locke Lord

and the Examiner's fees (the "Response Email"). A true and correct copy of the Response Email is attached as Exhibit B.

After subsequent lengthy discussions, Benefit Street and Locke Lord reached an agreement memorialized in an email dated December 6, 2022 (the "Locke Lord Agreement"). In summary, Locke Lord agreed to the following treatment:

a. Locke Lord would receive payment of $85,000 from the estate, using Benefit Street's cash collateral, prior to December 25 to aid Locke Lord in its year-end collection drive, despite the estate's business being in its slow season and cash reserves being low;

b. Locke Lord would retain the balance of its allowed administrative claim;

c. Locke Lord's allowed administrative claim would be paid *pari passu* with other administrative claims if the Bankruptcy Case culminated in a chapter 11 plan;

d. If the Bankruptcy Case terminated in some way other than through a plan, then Locke Lord's administrative claim would be paid *pari passu* with other allowed administrative claims, subject to and not including the administrative claims in the cash collateral carveout;

e. Locke Lord agreed not to object to a plan or sale of the Hotel that did not provide for payment in full of its administrative claim, so long as Locke Lord's administrative claim received the same treatment as other administrative claims (subject to the carveout, if applicable); and

f. Benefit Street agreed to work with the Trustee in good faith to minimize the administrative expense claims of certain of the Debtor's former professionals whose conduct arguably resulted in the Bankruptcy Case's administrative insolvency in order not to dilute the balance of Locke Lord's claims.

A true and correct copy of the Locke Lord Agreement is attached hereto as Exhibit C.

In reliance on Locke Lord's commitments under the Locke Lord Agreement:

*First*, the Estate performed its obligations and paid Locke Lord $85,000 of Benefit Street's cash collateral—with Benefit Street's authorization—out of an estate with already dangerously low working capital, in order to cease further expenditure on Locke Lord's demands for immediate payment of funds at year end to aid in Locke Lord's firm collection drive; and

*Second*, Benefit Street approved the economics of the Sale and Plan in reliance upon Locke Lord's agreement to be treated pro rata and *pari passu* with other administrative claims, which Benefit Street and the Trustee were negotiating contemporaneously with the Debtor's professionals. Benefit Street and the Trustee intend to honor the Locke Lord agreement under the Plan and pay Locke Lord *pari passu* with these claims.

The Trustee performed. Benefit Street relied. Now, in blatant violation of the Locke Lord Agreement, the Objectors prosecute the Objection, seeking to block cash collateral use being authorized to further the Plan in order to ultimately grab additional funds that are simply not available in the estate and force Benefit Street to grant *even more* concession, over and above the $19 million plus default interest already conceded, to become the only estate professional to recover 100% of their requested claims from this administratively insolvent case. Locke Lord is liable to the estate and Benefit Street for breach of its agreement, and Benefit Street reserves its rights to bring suit against Locke Lord seeking $85,000 for violation of its agreement and otherwise disgorge all fees received in this case as overpayment on account of alleged and unapproved administrative claims, as well as other theories. The Court should deny the Objection, both because it is a violation of Locke Lord's agreement—upon which the Trustee performed and Benefit Street relied—and because it fails under the law.

## III. Argument

### A. Locke Lord violated the Locke Lord Agreement by filing the Objection.

This case is administratively insolvent, and every interested party has had to accept that it will receive less than the full value of its claims. Locke Lord and the Examiner have been paid a greater portion of their earned compensation than any other administrative claimant in this case—all from Benefit Street's cash collateral—as demonstrated by the following table:

| | Examiner | Locke Lord |
|---|---|---|
| Fees Requested | $285,931.25 | $935,733.68 |
| Fees Paid to Date | $263,086.75 | $702,256.42 |
| Percent Paid to Date | 92% | 75%[2] |
| Fees Claimed Owing | $22,844.50 | $156,531.81 |

The Trustee and his professionals have not been paid since November of 2022 and agreed to defer over $4 million of fees until closing and almost $2 million of fees to post-closing recoveries on causes of action. The Trustee and Benefit Street have offered the Debtors' professionals their *pro rata* share of approximately $1 million in satisfaction of their claims. Benefit Street's own counsel has written off and deferred millions of dollars of legal fees. Benefit Street itself has conceded over $19 million, plus default interest, of its senior secured claim, all in furtherance of a successful resolution of this case under a plan that provides a recovery to creditors.

Yet despite the foregoing, the Objectors continue to demand immediate payment of all their fees ***in full***, from an administratively insolvent estate, this time disguised as an objection to the 506(c) Waiver in the Proposed Interim Order so that they may seek to surcharge Benefit Street with the balance of their claims. The Trustee and Benefit Street agreed to pay $85,000 from Benefit Street's cash collateral to Locke Lord at the end of 2022 in order to put an end to and stop the unnecessary incurrence of fees arising from these ongoing demands, to which Locke Lord agreed, and the Locke Lord Agreement was papered in the email attached hereto as Exhibit C.

The Proposed Interim Order provides the Trustee with cash authorization to confirm the Plan. Under the Plan, the Debtor's professionals will be paid according to an agreement currently under negotiation, which the Trustee and Benefit Street will share with Locke Lord once it is substantially completed.[3] The balance of Locke Lord's claims not already paid will receive the

[2] The $85,000 payment made by the Trustee under the Locke Lord Agreement is included in the calculation of the total amount and percentage paid to Locke Lord.

[3] Benefit Street and the Trustee have directly told Locke Lord that they will share the Debtor professional stipulation once it is substantially final, but in any event have said that the Debtors' professionals will recover approximately

same treatment, pro rata and *pari passu* with the unpaid portions of the Debtors' professionals' allowed administrative claims, under the Plan, in line with the Locke Lord Agreement. The Locke Lord Agreement was designed to avoid specifically the type of dispute brought by the Objection, and Locke Lord's abandonment of its commitment, if permitted, threatens to disrupt the careful balance that would otherwise permit the Plan to be confirmed. Locke Lord should be held to their commitments under the Locke Lord Agreement, and the Objection should be denied.

**B. The 506(c) Waiver is substantively appropriate.**

The Objectors' substantive objections to the inclusion of the 506(c) Waiver in the Proposed Interim Order should be overruled. The Objectors' starting point is the misapprehension that Benefit Street has not conferred a material benefit to the estate. To the contrary, every dollar spent administering the Bankruptcy Case—including the material funds already paid to the Examiner and Locke Lord, totaling in excess of $965,000—has come from Benefit Street's pocket, including in excess of $19 million, plus subsequently accruing default interest, of its secured claim that it agreed to subordinate or defer in order to facilitate a plan providing for recovery to creditors. And furthermore, Benefit Street has already agreed to what is effectively a substantial surcharge of its collateral in addition to these amounts in the form of a significantly expanded carve-out for Trustee professionals in the prior cash collateral order and the current Proposed Interim Order. Surcharging Benefit Street's collateral even more would be inappropriate under the facts of the Bankruptcy Case and contrary to Second Circuit precedent.

In *Flagstaff I*, the Second Circuit held that a secured creditor may only be surcharged for fees for services that benefited the secured creditor, and not the debtor or other creditors. *Gen.*

12.5% on their administrative claims at closing. Locke Lord will receive the same percentage recovery under the Plan at closing, with the balance of Locke Lord's allowed administrative claim paid pro rata and *pari passu* with the Debtors' professionals' allowed administrative claims.

*Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 75-76 (2d Cir. 1984) ("*Flagstaff I*"). Then, in *Flagstaff II*, the Second Circuit further refined the point it made in *Flagstaff I*: in order to recover under Section 506(c), a trustee or debtor-in-possession "must show that its funds were expended ***primarily*** for the benefit of the creditor and that the creditor directly benefited from the expenditure." *Gen. Elec. Credit Corp. v. Peltz et al. (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10, 11 (2d Cir. 1985) ("*Flagstaff II*") (emphasis added). In both cases the Second Circuit declined to surcharge the secured creditor.

The facts of this Bankruptcy Case square with the facts of the *Flagstaff* cases. The Examiner was appointed as an independent on behalf of the estate as a whole, not for the primary or sole benefit of Benefit Street. The Examiner's report aided Benefit Street and the United States Trustee in their efforts to oust the debtor-in-possession and have the Trustee appointed – again an action for the benefit of the estate as a whole. The Trustee evaluated all options, including a reorganization plan, before determining to pursue the sale of the Hotel. The Sale, and the Plan proposed in this case, pave the way to continue the Hotel and Debtor's operation as going concerns for the benefit of employees, vendors, guests, and the taxing authorities and facilitate a recovery for all creditors. Benefit Street chose to support the Sale and the Plan, rather than seeking stay relief to foreclose on the Hotel or insisting on a quick sale followed by conversion to chapter 7, and as set forth above Benefit Street is accepting a substantial, more than $19 million (plus additional default interest) deferral from payment in full of its secured claim in order to support confirmation of the Plan. Any benefit received by Benefit Street is incidental to and a part of the aggregate benefit to the estate and numerous other creditors and parties in interest affected by appointment of the Trustee.

It is also unclear that the Examiner's report provided direct benefit to Benefit Street. The Court declined to admit the report into evidence at the trial leading to the appointment of the Trustee. As a result, while the Examiner's efforts certainly framed the Court's ruling and provided a backdrop for the relief being sought by Benefit Street and the United States Trustee, Benefit Street nevertheless had to prove up its own case, using its own admissible evidence developed outside of the Examiner's report. As noted in *Flagstaff II*, "possible or hypothetical" benefits are insufficient grounds for a 506(c) surcharge. 762 F.2d at 12.

In any event, the Objection conflates the question of whether a surcharge would be appropriate with the real question: whether the Section 506(c) Waiver represents a sound exercise of the Trustee's business judgment. Benefit Street submits that it does, as does the Trustee as evidenced by the Trustee's contemporaneously filed joinder. Under the circumstances—including Benefit Street's funding of the entire Bankruptcy Case to date (despite no payments to Benefit Street in over five years or any adequate protection since the inception of this case over two years ago), its collaboration with the Trustee to provide fair and equitable treatment to all administrative claimants under difficult circumstances, its agreement to subordinate and defer in excess of $19 million (plus default interest) of its secured claim to see to the confirmation of the Plan for the benefit of all creditors, and its unwillingness to consent to the further use of its cash collateral absent the protection offered by the 506(c) Waiver—the terms of the Proposed Interim Order, including the 506(c) Waiver, are reasonable.

Even the cases cited by Objectors support the inclusion of the 506(c) Waiver in the Proposed Interim Order. Objectors' selective quoting from *Metaldyne* should be expanded: "While the Court is ordinarily skeptical of the need for a § 506(c) waiver . . . the Court is satisfied in this instance that it is appropriate" because "***[the prepetition secured lenders] are therefore***

***funding these cases, and should not be surcharged for the privilege of doing so***." *In re Metaldyne Corp.*, No. 09-13412 MG, 2009 WL 2883045 at *5 (Bankr. S.D.N.Y. June 23, 2009) (emphasis added). And in *Gen. Growth Props.*, the court approved a Section 506(c) waiver, without meaningful discussion, "In light of the [l]enders' agreement to subordinate their liens and superpriority claims to the Carve–Out . . . ." *In re Gen. Growth Props., Inc.*, 412 B.R. 122, 127. Like in *Gen. Growth Properties*, the Proposed Interim Order contains a subordination of Benefit Street's adequate protection liens to a carve-out to fund the administrative expenses in furtherance of confirmation of the Plan.

The Objectors cannot establish that a surcharge on Benefit Street's collateral is appropriate under Section 506(c), and the Trustee's waiver of surcharge rights is a reasonable exercise of his business judgment, especially taking into account the substantial funding from Benefit Street's cash collateral (including the material and disproportionate payments already made to the Examiner and Locke Lord). The terms of the Proposed Interim Order are appropriate, and it should be entered as presented.

### C. Including the 506(c) Waiver in the Proposed Interim Order is procedurally appropriate.

The Objectors argue that the Proposed Interim Order is procedurally deficient on the theory that the 506(c) Waiver amounts to compromise of a claim belonging to the estate or abandonment of property of the estate that requires additional service and process. As a result, the Objectors contend, they and other parties in interest have been denied due process because the Trustee has not sought relief under Bankruptcy Rule 9019 or Section 554 of the Bankruptcy Code.

As a preliminary matter, these procedural arguments are a red herring. The Objectors had sufficient notice to prepare and file the Objection, and creditors had seven days' notice of the Proposed Interim Order, pursuant to the Court's rules, plus additional time leading up to this

hearing. Nothing further is to be gained from a due process standpoint by interjecting additional and unnecessary procedural hurdles between the estate's authorization to use cash collateral on the terms negotiated and agreed to by Benefit Street.

The Objectors' technical procedural arguments are flawed. As the sole representative of the estate, the Trustee has the exclusive right to decide whether to seek a surcharge under Section 506(c). *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("Here, the statute appears quite plain in specifying who may use § 506(c)— "[t]he trustee" . . . The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes.").[4] There is nothing to be abandoned, or bargained away, and there is no dispute ripe for resolution. Rather, Section 506(c) provides the Trustee with a decision point, and the 506(c) Waiver simply represents a reasonable exercise of the Trustee's decision making authority, in order to ensure that the estate may continue to use Benefit Street's cash collateral. Therefore, the Trustee is not required to treat the 506(c) waiver as abandonment under Section 554 or as a compromise under Rule 9019.

Moreover, Objectors' position defies common sense, as requiring a trustee or debtor in possession to seek Section 544 or Rule 9019 approval every time they elect <u>not</u> to pursue an available option would sink bankruptcy cases into a state of perpetual paralysis. The law clearly cannot—and does not—require that, which presumably is why the Objectors cite no case law in support of their argument alleging procedural impropriety.

The holding in *Hartford Underwriters* is reinforced by the basic statutory premise that only the trustee may act as the estate's representative. 11 U.S.C. § 323(a); *see also Smart World Techs., LLC*, 423 F.3d at 182 (holding that the debtor-in-possession is the legal representative of the estate

[4] The holding in *Hartford Underwriters* extends to debtors-in-possession. 530 U.S. at n. 3.

and authorized to make decisions on its behalf, even over Section 1109(b) in a Chapter 11 case). It follows that Section 506(c) serves as protection for the estate, not creditors. *See Hartford Underwriters*, 530 U.S. at 1948-49 (Section 506(c) "trace[s] its origin to early cases establishing an equitable principle that where a court has custody of property, costs of administering and preserving the property are a dominant charge").

Creditors have other remedies under the Bankruptcy Code to protect their rights. *Id.* at 1950 ("limiting § 506(c) to the trustee does not leave those who provide goods or services without other means of protecting themselves as against other creditors"). In the Objectors' case, those other protections include moving for immediate allowance and payment of their claims. However, presumably because no funds are presently available to make such payment, the Objectors seek to force the Trustee to deny the 506(c) Waiver and surcharge Benefit Street for their fees, which under *Hartford*, the Objectors do not even have standing to do. Objectors have asserted their standing to object to the 506(c) Waiver under the Proposed Interim Order. From a procedural standpoint, their rights have been protected.

The Objectors also complain that the Proposed Interim Order violates Local Rule 4001-2(g)(9), which they assert to be an absolute prohibition against the inclusion of Section 506(c) waivers in interim cash collateral orders. But that is not what the rule says; Local Rule 4001-2(g)(9) properly reads: "***Unless expressly and separately addressed by the Court***, an interim order approving use of cash collateral . . . may not contain, and any application requesting such provisions in an interim order shall be deemed denied, with respect to any provisions waiving any rights under section 506(c) . . ." (emphasis added). The Trustee has complied with the Local Rule; his Notice of Presentment highlights the inclusion of the Section 506(c) waiver as a change from

previous interim cash collateral orders, providing the opportunity for the Court to "expressly and separately address" it, which it is now doing.

Further, the Objectors and other parties in interest have received due process because they have been afforded notice and a right to be heard, as demonstrated by the filing of the Objection itself. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (procedural due process simply means notice "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections")). Due process concerns are satisfied as long as parties in interest have received actual notice and the opportunity to be heard, even if the form of notice is not precisely correct. *See, e.g., Lynch v. Mascini Holdings Ltd. (In re Kirwan Offs. S.À.R.L.)*, 792 F. App'x 99, 102 (2d Cir. Dec. 20, 2019) (citing *Espinosa*, 559 U.S. at 272).

The Objectors clearly have had actual notice and opportunity to be heard on this point. The Objection should be denied, and Proposed Interim Order granted as presented.

**Conclusion**

Despite having been paid far more than other administrative claimants in this administratively insolvent case from cash collateral, the Objectors have chosen to ignore (in Locke Lord's case) a written agreement with Benefit Street (in exchange for another payment from cash collateral) and to advance the Objection in an effort to extract additional recovery on their claims while pushing Benefit Street even further out of the money, despite an already more than $19 million concession to further a plan. The Objectors' position is equitably unfair and legally unsupported; the 506(c) Waiver is within the trustee's business judgment and procedurally proper.

Entry of the Proposed Interim Order in the form attached to the Notice of Presentment is necessary to support the Plan and maximize the available recovery to all creditors.

WHEREFORE Benefit Street requests that the Objection be overruled in each and every respect; that the Proposed Interim Order be entered as presented; and for such other relief as the Court deems appropriate.

Respectfully submitted this 27th day of February 2023.

[SIGNATURES ON FOLLOWING PAGE]

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

*/s/ Lee B. Hart*
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443

Adam C. Rogoff, Esq.
P. Bradley O'Neill, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Co-Counsel for Benefit Street Partners Realty Operating Partnership, L.P.*

**EXHIBIT "A"**



Pg 19 of 28

Brookfield Place, 200 Vesey Street
20th Floor
New York, NY 10281-2101
Telephone: 212-415-8600
Fax: 212-303-2754
www.lockelord.com

Stephanie Wickouski
Direct Telephone: 212-912-2822
Direct Fax: 212-812-8366
swickouski@lockelord.com

December 2, 2022

**Via Email**

Frank Oswald, Esq.
Neil Berger, Esq.
Togut, Segal & Segal LLP
One Penn Plaza, Suite 3335
New York, NY 10119
Email: frankoswald@teamtogut.com

Adam Rogoff, Esq.
Bradley O'Neill, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Email: arogoff@kramerlevin.com
boneill@kramerlevin.com

Lee Hart, Esq.
Nelson Mullins
Atlantic Station
201 17th Street NW
Suite 1700
Atlanta, GA 30363
Email: lee.hart@nelsonmullins.com

Re: 96 Wythe Acquisition LLC, Case No. 21-22108-rdd (Bankr. S. D. N.Y.)

Gentlemen:

As you are aware, my firm is counsel to Eric Huebscher, the court appointed examiner in the above case. We are writing regarding fees and expenses of our firm, which were allowed under the Order entered November 2, 2022 [ECF #769] and have remained unpaid.

The estate has more than sufficient funds on hand to pay these fees. In the weeks since the entry of the Order, I have spoken to several of you regarding payment and have received a variety of responses, none of which explain, much less excuse, the refusal to pay. What I have gleaned is as follows: Benefit Street, the party that moved for the appointment of the examiner (and

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles
Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

130823834v.2

subsequently relied on the examiner's work to move for a trustee) is blocking payment to the examiner, ostensibly to preserve estate funds for its own recovery.

The history of the case is well known by all parties, but especially, by Benefit Street and Stephen Gray, the chapter 11 trustee in the case (the "Trustee"). The obstruction of the examiner's investigation by the debtor and its principals, who even commenced litigation against the examiner to stop his investigation, increased the fees and costs of the examiner (although those costs are perhaps the lowest of the estate's professionals in the case). Both the Trustee and Benefit Street have acknowledged, at hearings and in pleadings filed with the Court, the examiner's extraordinary efforts in uncovering fraud and his invaluable contribution to the case. But for the work of the examiner and his counsel, there would be no chapter 11 trustee in control of the assets of the estate.

Based on this history, there is simply no reason or basis to withhold payment of the allowed fees owing to the examiner's counsel. The failure to make the remaining payment cannot be squared with either the positions taken by Benefit Street in its request for an examiner, the nature and role of an independent and appointed examiner under Chapter 11, or the order of the Court allowing the fees in full. We find it particularly concerning that allowed examiner's fees are being placed at issue and at risk in a case where the examiner fulfilled his assignment to the letter, and uncovered facts and circumstances supporting the appointment of a trustee. How can examiners function independently and effectively in the Chapter 11 system if their professional fees can be blocked and withheld by the parties seeking their appointment (or, for that matter, the parties subject to the investigation)?

We ask for your confirmation that the outstanding fees and expenses be paid in full no later than December 23, 2022. Absent our receipt of satisfactory confirmation on this point no later than December 6, 2022, we intend to file a motion to compel payment, which we will ask the Court to hear on December 20, 2022, when other matters in the case are scheduled. We thank you for your prompt attention to this important matter.

Sincerely yours,

Stephanie Wickouski

Stephanie Wickouski

cc: Greg Zipes, Office of US Trustee greg.zipes@udoj.gov

**EXHIBIT "B"**

**Lee Hart**

**From:** Lee Hart
**Sent:** Friday, December 2, 2022 5:25 PM
**To:** Hawkins, Naima; frankoswald@teamtogut.com; arogoff@kramerlevin.com; boneill@kramerlevin.com; greg.zipes@udoj.gov
**Cc:** Wickouski, Stephanie
**Subject:** RE: 96 Wythe Acquisition LLC, Case No. 21-22108-rdd (Bankr. S. D. N.Y.)

Stephanie,

We're in receipt of your letter demanding payment this month. Your letter is premised on the assumption that the estate has sufficient cash to pay all of its bills. That is not the case, so I am going to abstain from writing a formal response at this point to keep the costs down and hope that we can iron something out informally so as to not bother the Court and estate with yet another dispute and its attendant expense.

As a preliminary matter, as you well know, this case has been very expensive. There are a lot of reasons for that, but none of them is the fault of the secured lender. There is a cash collateral budget, approved by the lender and entered after notice upon everybody, which does not contemplate paying the examiner or his professionals prior to the sale of the hotel. That notwithstanding, in recognition of Eric's work, BSP allowed payment of all of his personal bills beyond the cash collateral budget. Indeed, the Trustee and his professionals are having to live within the cash collateral budget as well and comport themselves appropriately.

This is not a cash with enormous amounts of equity – or even any equity, for that matter. All the professionals – trustee, debtor, examiner alike - need to be judicious. We, as lawyers for BSP, have given substantial discounts, deferrals and writeoffs to our client in order to make the economics of this case more bearable to our client. We're all voluntary participants in this process and bear the risk of administrative insolvency.

BSP is simply not going to consent to payment of your fees in full prior to the closing of sale of the property and determination of available funds to pay professionals. That said, if you insist on payment now (which I assume relates simply to your third interim fee app for $150,937.99), BSP is willing to authorize payment of 50% of that amount of $75,468.99 in full and final satisfaction of all of your firm's outstanding fees int his case. Very little has been requested of Eric since the Chapter 11 Trustee hearings in May, and we would ask that he and your firm stand down from any continuing work at this point unless specifically requested, the payment of which we'll need to authorize in advance (or otherwise be authorized by the Court).

Thanks and let me know if this works. I'm sorry to have to deliver this message, but this case is very tight and the professionals need to be mindful of the secured creditor's legal entitlement to be made whole on its (now voluntarily substantially reduced) secured claim.

Lee

NELSON MULLINS

LEE B. HART PARTNER
lee.hart@nelsonmullins.com

ATLANTIC STATION | SUITE 1700
201 17TH STREET NW | ATLANTA, GA 30363
T 404.322.6349 F 404.322.6050

NELSONMULLINS.COM VCARD **VIEW BIO**

**From:** Hawkins, Naima <Naima.Hawkins@lockelord.com>
**Sent:** Friday, December 2, 2022 10:47 AM
**To:** frankoswald@teamtogut.com; arogoff@kramerlevin.com; boneill@kramerlevin.com; Lee Hart <lee.hart@nelsonmullins.com>; greg.zipes@udoj.gov
**Cc:** Wickouski, Stephanie <swickouski@lockelord.com>
**Subject:** 96 Wythe Acquisition LLC, Case No. 21-22108-rdd (Bankr. S. D. N.Y.)

◀**External Email**▶ - From: naima.hawkins@lockelord.com

Gentlemen:

Please see the attached correspondence dated December 2, 2022 from Stephanie Wickouski.

Thank you.

*Naima*

***Naima Hawkins***
***Secretary***
***Locke Lord LLP***
*Brookfield Place*
*200 Vesey Street, 20th Fl*
*New York, NY 10281*
*T: 212-912-2846*
*F: 212-308-4844*
*naima.hawkins@lockelord.com*
Visit **lockelord.com**





Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

**EXHIBIT "C"**

**Lee Hart**

**From:** Wickouski, Stephanie <swickouski@lockelord.com>
**Sent:** Tuesday, December 6, 2022 6:48 PM
**To:** Lee Hart
**Subject:** Re: Williamsburg Fees

Thank you Lee. Much appreciated.

**Stephanie Wickouski Partner**
**Locke Lord LLP**
Brookfield Place
200 Vesey, 20th Floor
New York, NY 10281
T: (212) 912-2822
F: (212) 812-8366
swickouski@lockelord.com
Visit lockelord.com

On Dec 6, 2022, at 6:40 PM, Lee Hart <lee.hart@nelsonmullins.com> wrote:

**** External Email -- Sender: lee.hart@nelsonmullins.com ****

Stephanie – I just received word from the trustee that you'll be paid the $85K by 12/25. I'm glad that we were able to work this out on the terms of my bullets below.

Thanks
Lee

LEE B. HART PARTNER
lee.hart@nelsonmullins.com
ATLANTIC STATION | SUITE 1700
201 17TH STREET NW | ATLANTA, GA 30363
T 404.322.6349 F 404.322.6050
NELSONMULLINS.COM VCARD VIEW BIO

**From:** Wickouski, Stephanie <swickouski@lockelord.com>
**Sent:** Tuesday, December 6, 2022 5:43 PM

**To:** Lee Hart <lee.hart@nelsonmullins.com>
**Subject:** RE: Williamsburg Fees

Lee,

Thank you for this email, and my apologies for not responding sooner - I was in an all-day client meeting and am just catching up on emails now. To clarify, it is my understanding that my firm will file a final fee application once an order discharging the examiner is entered (which we will of course not oppose), and any allowed fees will be treated as you described below. I will await a confirming email as to the trustee's agreement regarding the payment of $85,000 this year, and will not file any request with the Court pending his confirmation. Please thank your client for their accommodation in this regard.

Best regards,
Stephanie

**Stephanie Wickouski**
**Partner**
**Locke Lord LLP**
Brookfield Place
200 Vesey, 20th Floor
New York, NY 10281
T: (212) 912-2822
F: (212) 812-8366
swickouski@lockelord.com
Visit lockelord.com

**From:** Lee Hart <lee.hart@nelsonmullins.com>
**Sent:** Tuesday, December 6, 2022 12:30 PM
**To:** Wickouski, Stephanie <swickouski@lockelord.com>
**Subject:** Williamsburg Fees

** **External Email -- Sender:** lee.hart@nelsonmullins.com **

Stephanie –

Following up on our discussions earlier, here's what I'm authorized to send you for BSP:

1. $85K in cash paid by the Trustee prior to Christmas 2022
2. Locke Lord retains the balance of its allowed administrative claim
3. Allowed administrative claim paid pari passu with other allowed administrative claims under a plan
4. Outside of a plan, allowed administrative claim paid pari passu with other allowed administrative claims, subject to and not including the allowed administrative claims in the carveout
5. Locke Lord will not object to a plan or sale and will not refuse to take less than 100% of its claim in a plan or sale so long as it is pro rata and pari passu with other admin claims (subject to carveout professionals if applicable; see prior bullet [provided further that carveout professionals in a plan may negotiate better treatment])

6. BSP to work with trustee in good faith to minimize other debtor admin claims who we all believe are not entitled to full payment and who caused this problem, provided that BSP has no independent obligation to file our own objection to anybody

I'll tell you, separately, that I don't have authorization from the Trustee yet for payment. We of course can't instruct him to make payments, and given where we are in this process, you might need to file something. I've said to you, and will reiterate, that I hate seeing estate professionals go unpaid, but in this case we're really all running up against very likely administrative insolvency, and all the professionals – including us for the secured lender – are looking at steep discounts to get this over the finish line. I'll keep talking with the Trustee over the day but don't know if we'll get there before close of business.

Lee

Lee B. Hart
Nelson Mullins Riley & Scarborough
201 17th Street, Suite 1700
Atlanta, Georgia 30363
T: (404) 322-6349
Lee.hart@nelsonmullins.com

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

---

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from Locke Lord LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.